IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG. PHILIPS LCD CO., LTD.,              )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )          Civil Action No. 06-726 (JJF)
                                        )
CHI MEI OPTOELECTRONICS                 )
CORPORATION; AU OPTRONICS               )
CORPORATION, AU OPTRONICS               )
CORPORATION OF AMERICA;                 )
TATUNG COMPANY; TATUNG                  )
COMPANY OF AMERICA, INC.; AND           )
VIEWSONIC CORPORATION,                  )
                                        )
          Defendants.                   )
                                        )

## OPENING BRIEF IN SUPPORT OF CHI MEI OPTOELECTRONICS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENCY OF SERVICE OF PROCESS

OF COUNSEL:

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
(216) 586-3939

Dated: April 6, 2007

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING..........................................................1

SUMMARY OF ARGUMENT .................................................................................1

BACKGROUND AND STATEMENT OF FACTS ......................................................2

    A. LPL Cannot Establish Personal Jurisdiction Over CMO Under The
        Delaware Long-Arm Statute. ...................................................................2

    B. CMO Does Not Have Sufficient Contacts With Delaware To Subject It
        To Personal Jurisdiction In This Court. ....................................................4

ARGUMENT ......................................................................................................7

I. THERE IS NO BASIS FOR PERSONAL JURISDICTION OVER CMO IN
   DELAWARE. ...................................................................................................7

    A. The Delaware Long-Arm Statute Provides No Basis For Personal
        Jurisdiction Over CMO...........................................................................8

    B. The Delaware Long-Arm Statute Provides No Basis For Specific
        Jurisdiction Over CMO...........................................................................9

        1.      Section 3104(c)(1) of the Delaware long-arm statute.................9

        2.      Section 3104(c)(3) of the Delaware long-arm statute...............10

    C. The Delaware Long-Arm Statute Provides No Basis For General
        Jurisdiction Over CMO.........................................................................11

    D. The Requirements of Due Process Prevent This Court From Asserting
        Personal Jurisdiction Over CMO. ..........................................................13

II. LPL'S COMPLAINT AGAINST CMO MUST BE DISMISSED BECAUSE
    IT FAILED TO COMPLY WITH THE RULES FOR SERVICE UPON
    ENTITIES IN A FOREIGN COUNTRY. ..............................................................16

    A. LPL's Attempt To Serve Process Under 10 *Del. C.* § 3104(d) Is
        Ineffective. .........................................................................................16

    B. LPL's Attempt To Serve Process Fails To Comply With Fed. R. Civ. P.
        4(f)(2)(A). ..........................................................................................18

    C. LPL's Attempt To Serve Process Fails To Comply With Fed. R. Civ. P.
        4(f)(2)(C)(ii)........................................................................................19

    D. LPL's Attempt To Serve Process Fails To Comply With Fed. R. Civ. P.
        4(f)(3)................................................................................................20

CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Akro Corp. v. Luker,*
    45 F.3d 1541 (Fed. Cir. 1995)..................................................................7, 14

*Applied Biosys., Inc. v. Cruachem, Ltd.,*
    772 F. Supp.1458 (D. Del. 1991)...............................................................8, 10

*Asahi Metal Industry Co. v. Superior Court,*
    480 U.S. 102 (1987)...................................................................................14

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
    21 F.3d 1558 (Fed. Cir. 1994).............................................................11, 12

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)...................................................................................13

*C.R. Bard Inc. v. Guidant Corp.,*
    997 F. Supp. 556 (D. Del. 1998)..............................................................7, 8,

*Casson v. Matt Slap Subaru, Inc.,*
    1988 WL 77761 (Del. Super., 1988)...........................................................18

*Casson v. Matt Slap Subaru, Inc.,*
    1988 WL 130394 (Del. Super., 1988).........................................................18

*Citinental Trading Co. v. Naporano Iron & Metal Co.,*
    1997 WL 297661 (D. Del. May 27, 1997)..................................................7, 8

*Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.,*
    395 F.3d 1315 (Fed. Cir. 2005).................................................................11

*Cordis Corp. v. Advanced Cardiovascular Sys., Inc.,*
    1999 WL 805284 (D. Del. Sept. 17, 1999)................................................7, 9

*County Security Agency v. Ohio Dep't of Commerce,*
    296 F.3d 477 (6th Cir. 2002) ....................................................................16

*Falcon Steel Co., Inc. v. HCB Contractors,*
    1990 WL 105065 (Del. Super. 1990)..........................................................17

*Farm Credit Bank v. Ferrera-Goitia,*
    316 F.3d 62 (1st Cir. 2003).......................................................................16

## TABLE OF AUTHORITIES (cont.)

**Cases**                                                                                    **Page(s)**

*G & H Partners, Ltd. v. Boer Goat Int'l,*
    896 F. Supp. 660 (W.D. Tex. 1995)
    *aff'd,* 84 F.3d 432 (5th Cir. 1996).................................................................20

*Graphic Controls Corp. v. Utah Med. Prods., Inc.,*
    149 F.3d 1382 (Fed. Cir. 1998).................................................................7

*Greenly v. Davis,*
    486 A.2d 669 (Del. Super. 1984).................................................................8

*Hanson v. Denckla,*
    357 U.S. 235 (1958).................................................................13

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984).................................................................13

*HollyAnne Corp. v. TFT, Inc.,*
    199 F.3d 1304 (Fed. Cir. 1999).................................................................7, 14

*Intel Corp. v. Silicon Storage Tech.,*
    20 F. Supp. 2d 690 (D. Del. 1998).................................................................7, 8, 9, 11

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945).................................................................13

*Lampe v. Xouth, Inc.,*
    952 F.2d 697 (3d Cir. 1991).................................................................19

*Purnell v. Dodman,*
    297 A.2d 391 (Del. Super. 1972).................................................................18

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998).................................................................8

*Sears, Roebuck & Co. v. Sears,*
    744 F. Supp. 1297 (D. Del. 1990).................................................................8, 11

*Time Share Vacation Club v. Atlantic Resorts, Ltd.,*
    735 F.2d 61 (3d Cir. 1984).................................................................7

*Viam Corp. v. Iowa Export-Import Trading Co.,*
    84 F.3d 424 (Fed. Cir. 1996).................................................................11, 12

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980).................................................................13, 15

## TABLE OF AUTHORITIES (cont.)

**Cases**                                                                 **Page(s)**

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969)..................................................................................................16


**STATUTES & RULES**

Article 123 of the Taiwan Code of Civil Procedure ...........................................................19

Article 124 of the Taiwan Code of Civil Procedure ...........................................................19

Article 142 of the Taiwan Code of Civil Procedure ...........................................................17

Fed. R. Civ. P. 4..................................................................................................... Passim

Fed. R. Civ. P. 12(b)(2).................................................................................................1

Fed. R. Civ. P. 12(b)(5)...............................................................................................1, 17

10 *Del. C.* § 3104 ..................................................................................................... Passim


**OTHER AUTHORITIES**

4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    § 1134 (3d ed. 2002). .............................................................................................20

## NATURE AND STAGE OF THE PROCEEDING

Defendant Chi Mei Optoelectronics Corp. ("CMO") respectfully submits this memorandum of law, together with the Declaration of Li-Yi Chen ("Chen Declaration") (filed concurrently herewith), in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5), to dismiss Plaintiff's Complaint for patent infringement filed on December 1, 2006 on the grounds of lack of personal jurisdiction and insufficient service of process.

## SUMMARY OF ARGUMENT

1.      In its Complaint, LG.Philips LCD Co., Ltd. ("Plaintiff" or "LPL") alleges that defendant CMO has directly infringed, or has induced others to infringe, United States Patent Nos. 4,624,737; 5,019,002; and 5,825,449 relating to liquid crystal displays.

2.      Although the Complaint names CMO, it does not contain a single allegation of any act that would be sufficient to subject it to personal jurisdiction in Delaware.  Such pleading is insufficient to invoke the power of this Court over a non-resident corporation such as CMO, an exercise of jurisdiction which implicates vital concerns of state statutory law, constitutional due process, international law and comity. CMO has never infringed, or induced the infringement of, the patents-in-suit in Delaware or elsewhere.

3.      Under all applicable standards, including those imposed by the Delaware long-arm statute and federal constitutional due process, this Court lacks personal jurisdiction over CMO.  Accordingly, CMO's motion to dismiss should be granted.

4.      Plaintiff's Complaint also should be dismissed for insufficiency of service of process.  LPL's attempt to serve process upon CMO in accordance with the Delaware long-arm statute was ineffective, contravened the Federal Rules of Civil Procedure, and

offends CMO's due process rights. In particular, LPL failed to follow the requirements of Rules 4(f) and (h) of the Federal Rules of Civil Procedure when attempting to serve CMO.

## BACKGROUND AND STATEMENT OF FACTS

**A.    LPL Cannot Establish Personal Jurisdiction
Over CMO Under The Delaware Long-Arm Statute.**

On December 1, 2006, LPL filed this action against CMO and others, claiming infringement of three of its patents relating to liquid crystal display modules. Two months later, on February 15, 2007, LPL attempted to serve CMO with process by delivering a copy of the Summons and Complaint for Patent Infringement and Demand for Trial by Jury on the Delaware Secretary of State in accordance with the provisions of the Delaware long-arm statute, 10 *Del. C.* § 3104. Thereafter, on February 16, 2007, LPL's counsel purported to give notice of the claimed service by mailing a copy of a notice letter along with copies of the Summons and Complaint to CMO's offices in Sinshih Township, Tainan County, Taiwan by registered mail, return receipt requested. While delivery of the letter was attempted in Taiwan on or about March 1, 2007, CMO never accepted service or signed a receipt for it. Subsequently, on February 20, 2007, LPL filed a notice with this Court allegedly detailing how it served process on CMO pursuant to the Delaware long-arm statute. (*See* Exh. 1 to Declaration of Arthur P. Licygiewicz, filed concurrently herewith, Notice of Service on Defendant Chi Mei Optoelectronics Corporation Pursuant to 10 *Del. C.* § 3104).

Even though CMO has not conducted business in the state of Delaware, LPL still attempted to use the Delaware long-arm statute as the means to serve process on CMO. The service provisions of the Delaware long-arm statute, however, only can be utilized to

serve process when the non-resident defendant already is subject to the jurisdiction of the Delaware courts.

Section 3104(b) provides that any non-resident of the state of Delaware who commits any of the acts set forth in § 3104(c) submits to the jurisdiction of the Delaware courts and as a result appoints the Secretary of State of Delaware as the person's agent for acceptance of legal process in any civil action brought against them. Specifically, the statute provides that:

> (b) Any person who commits any of the acts hereinafter enumerated thereby submits to the jurisdiction of the Delaware courts and is deemed thereby to have appointed and constituted the Secretary of State of this State the person's agent for the acceptance of legal process in any civil action against such nonresident person arising from the following enumerated acts. The acceptance shall be an acknowledgement of the agreement of such nonresident that any process when so served shall have the same legal force and validity as if served upon such nonresident personally within the State, and that such appointment of the Secretary of State shall be irrevocable and binding upon the personal representative.
>
> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
>> (1) Transacts any business or performs any character of work or service in the State;
>>
>> (2) Contracts to supply services or things in this State;
>>
>> (3) Causes tortious injury in the State by an act or omission in this State;
>>
>> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>>
>> (5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

If a non-resident has engaged in any of these acts, a plaintiff may serve legal process in accordance with the terms of 10 *Del. C.* § 3104(d), which specifically provides that:

(d) Service of the legal process provided for in this section with the fee of $2 shall be made upon the Secretary of State of this State in the same manner as is provided by law for service of writs of summons, and when so made shall be as effectual to all intents and purposes as if made personally upon the defendant within this State; provided, that not later than 7 days following the filing of the return of services of process in the court in which the civil action is commenced or following the filing with the court of the proof of the nonreceipt of notice provided for in subsection (g) of this section, the plaintiff or a person acting in the plaintiff's behalf shall send by registered mail to the nonresident defendant, or to the defendant's executor or administrator, a notice consisting of a copy of the process and complaint served upon the Secretary of State and the statement that service of the original of such process has been made upon the Secretary of State of this State, and that under this section such service is as effectual to all intents and purposes as if it had been made upon such nonresident personally within this State.

CMO, however, has not conducted business in Delaware and is not subject to personal jurisdiction under the Delaware long-arm statute.

## B.    CMO Does Not Have Sufficient Contacts With Delaware To Subject It To Personal Jurisdiction In This Court.

CMO is a Taiwanese corporation organized and existing under the laws of Taiwan. (Chen Declaration, ¶2). Its principal place of business is in Sinshih Township, Tainan County in southern Taiwan. (*Id.*)

CMO has never purposefully conducted business activities in Delaware. (*Id.,* ¶4). Nor has it ever purposefully directed business activities to Delaware. (*Id.*) While CMO owns stock in a subsidiary, Chi Mei Optoelectronics USA, Inc., which is a Delaware

corporation with its principal place of business in California and, after the Complaint was filed, became a partner in a joint venture company named iZ3D, LLC, which was formed as a Delaware company and has its principal place of business in California. CMO is not currently, and never has been, qualified, authorized, or otherwise chartered, registered, or licensed to conduct or transact business in Delaware.[1]  (*Id.*)  It has never had any officers, employees, sales representatives, distributors, brokers, agents, or other representatives in Delaware.  (Chen Declaration, ¶4).  CMO has never had an office or telephone listing in Delaware.  (*Id.*)  CMO has never used, owned, leased, or rented any real or personal property in Delaware.  (*Id.*)

CMO has never maintained a bank account in Delaware.  (*Id.*, ¶5).  It has never paid income or property taxes in Delaware.  (*Id.*)  Nor has the company ever borrowed or invested any money in Delaware.  (Chen Declaration, ¶5).

In addition, CMO has never sold components for liquid crystal displays to consumers or retailers, including consumers or retailers in Delaware.  (*Id.*, ¶6).  It has never sold components to original equipment manufacturers (OEMs) or others with the intent or for the purpose of selling those products in Delaware.  (*Id.*)  CMO has never designed, manufactured, packaged, marketed, advertised, sold, or distributed any products, services, or raw materials in Delaware or to consumers in Delaware.  (*Id.*)  The company has never caused, instructed, or directed any third party to design, manufacture, package, market, advertise, sell, or distribute any products, services, or raw materials in Delaware or to consumers in Delaware.  (*Id.*)  CMO has never conducted any research or testing activities in Delaware.  (Chen Declaration, ¶6).  It has never advertised in

---

[1] Neither Chi Mei Optoelectronics USA, Inc. nor iZ3D, LLC are named as defendants in this litigation.

Delaware newspapers or any other Delaware medium. (*Id.*) Nor has it ever had or made any arrangements to market its products in Delaware. (*Id.*) Indeed, CMO has never had any business plan to target Delaware residents as customers for its products or to deliver products to consumers in Delaware. (*Id.*)

CMO has never maintained any inventory in Delaware, shipped any inventory to Delaware, or received raw materials or supplies from Delaware. (*Id.*, ¶7). It has not caused, instructed, or directed any third party to maintain inventory in Delaware, ship inventory to Delaware, or receive raw materials or supplies from Delaware. (Chen Declaration, ¶7). Nor has CMO ever exported, imported, shipped, or otherwise transferred products, raw materials, or supplies into or out of Delaware. (*Id.*) In addition, CMO has never transferred proprietary information, raw materials, or supplies into or out of Delaware. (*Id.*)

CMO has never executed any contract in Delaware, or contracted with any party to manufacture, buy, sell or distribute products or services in Delaware. (*Id.*, ¶8). It has never maintained, or caused, instructed, or directed any third parties to maintain, any agents, distributors, brokers, wholesalers, or other representatives in Delaware for the transaction of business of any nature. (*Id.*) Nor, has CMO ever maintained, or caused, instructed, or directed any third parties to maintain, any agents, distributors, brokers, wholesalers, or other representatives for the purpose of transacting business in Delaware. (Chen Declaration, ¶8). CMO has no agent to accept service of process in Delaware. (*Id.*) CMO has never commenced any legal action or proceeding in Delaware. (*Id.*, ¶9).

CMO has never offered a warranty on products, warranty services, or repair services for products in Delaware or to consumers in Delaware. (*Id.*, ¶10). It does not

provide advice or support services to consumers in Delaware. (*Id.*) CMO has never offered or provided customer support via telephone, its internet website (which is operated and hosted for CMO in Taiwan), or otherwise for products in Delaware or to any consumers located in Delaware. (Chen Declaration, ¶10). CMO's products or services cannot be purchased or otherwise obtained through its website. (*Id.*)

Against this background, Plaintiff fails to allege any basis for jurisdiction over CMO in Delaware. LPL does not, and cannot, allege any contacts between CMO and Delaware or acts by CMO in Delaware that would be sufficient to subject CMO to personal jurisdiction in the state.

## ARGUMENT

### I.   THERE IS NO BASIS FOR PERSONAL JURISDICTION OVER CMO IN DELAWARE.

LPL has the burden of establishing personal jurisdiction over CMO.[2] *See C.R. Bard Inc. v. Guidant Corp.,* 997 F. Supp. 556, 559 (D. Del. 1998); *Citinental Trading Co. v. Naporano Iron & Metal Co.,* 1997 WL 297661, at *2 (D. Del. May 27, 1997) (attached as Exh. B).

LPL may not "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67, n.9 (3d Cir. 1984) (citation

---

[2] Federal Circuit law applies when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer. *See Cordis Corp. v. Advanced Cardiovascular Sys., Inc.,* 1999 WL 805284, at *3 (D. Del. Sept. 17, 1999) (attached as Exh. A), citing *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed. Cir. 1995). However, the Federal Circuit defers to the interpretations of the relevant state courts in interpreting the meaning of their long-arm statutes, including whether or not such statutes are intended to reach to the limit of federal due process. *See HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1307 (Fed. Cir. 1999); *Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1386 (Fed. Cir. 1998). Delaware courts do not collapse the long-arm inquiry into the due process inquiry. *See Intel Corp. v. Silicon Storage Tech.,* 20 F. Supp. 2d 690, 694 (D. Del. 1998).

omitted). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Id.*; *see also Greenly v. Davis*, 486 A.2d 669, 670 (Del. Supr. 1984) (holding that the trial court properly relied on defendants' specific factual assertions and gave little weight to plaintiff's vague, general assertions). Here, LPL fails to allege sufficient facts to make a prima facie showing that this Court has personal jurisdiction over CMO.

Where the defendant is an out of state resident, determining whether personal jurisdiction exists involves two inquiries: (1) whether the state's long-arm statutes permit service of process on the defendant, and if so, (2) whether the assertion of jurisdiction would violate Constitutional due process requirements. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). This Court may exercise personal jurisdiction over CMO only if both of these conditions are met. *See, e.g., C.R. Bard Inc.*, 997 F. Supp. at 559; *Citinental Trading Co.*, 1997 WL 297661, at *2.

LPL, however, is unable to meet these conditions. In fact, it has not alleged a single fact that is sufficient to support this Court's jurisdiction over CMO. In such case, courts applying Delaware law uniformly dismiss complaints. *See, e.g., Intel Corp.*, 20 F. Supp. 2d at 694; *Applied Biosys., Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1462 (D. Del. 1991); *Sears, Roebuck & Co. v. Sears*, 744 F. Supp. 1297, 1301 (D. Del. 1990).

### A.    The Delaware Long-Arm Statute Provides No Basis For Personal Jurisdiction Over CMO.

The Court should first consider whether the specific requirements of the Delaware long-arm statute are met before addressing the constitutional issues. *Intel Corp.*, 20 F. Supp. 2d at 695. The Delaware long-arm statute, 10 *Del. C.* § 3104(c), provides in relevant part that:

a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent:

(1)    Transacts any business or performs any character of work or service in the State;

\*    \*    \*    \*

(3)    Causes tortious injury in the State by an act or omission in this State;

(4)    Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in State.

\*    \*    \*    \*

Subsections(c)(1) and (c)(3) of the long-arm statute provide for specific jurisdiction, and subsection (c)(4) provides for general jurisdiction. *See Intel Corp.*, 20 F. Supp. 2d at 695, 698. Neither type of jurisdiction exists here.

**B.    The Delaware Long-Arm Statute Provides No Basis For Specific Jurisdiction Over CMO.**

**1.    Section 3104(c)(1) of the Delaware long-arm statute.**

To obtain jurisdiction under § 3104(c)(1), LPL must demonstrate both: (1) an act (or acts) occurred in Delaware that gave rise to the cause of action, and (2) that the act (or acts) constitute "transacting business" in Delaware (*i.e.*, that the defendants purposely availed themselves of the privileges and benefits of Delaware law). *See Cordis Corp. v. Advanced Cardiovascular Sys., Inc.,* 1999 WL 805284, at *4 (D. Del. Sept. 17, 1999). It cannot do this.

LPL does not, and cannot, allege that the action for patent infringement arises from acts of CMO in Delaware. CMO is incorporated, and situated, in Sinshih Township, Tainan County in southern Taiwan. (Chen Declaration, ¶2). It does not do business in Delaware. (*Id.,* ¶4). CMO has never purposefully directed business activities to

Delaware. (*Id.*) It is not currently, and never has been, qualified, authorized, or otherwise chartered, registered, or licensed to conduct or transact business in Delaware. (*Id.*)

In addition, CMO does not make, use, offer to sell, or sell any products in Delaware, nor does it induce others to do so. (*Id.,* ¶¶6-7). It has never sold components for liquid crystal displays to consumers or retailers in Delaware. (Chen Declaration, ¶6). CMO has never sold components to OEMs or others with the intent or for the purpose of selling those products in Delaware. (*Id.*) It does not transfer products, materials, or proprietary information into or out of Delaware. (*Id.,* ¶7). CMO does not purposefully direct its activities towards the state and has never had any business plan to target Delaware residents as customers for its products. (*Id.,* ¶6). Indeed, CMO has never purposefully availed itself of the privilege of doing business in Delaware.

### 2.    Section 3104(c)(3) of the Delaware long-arm statute.

The requirements for specific jurisdiction under § 3104(c)(3) are even more demanding. To obtain jurisdiction under § 3104(c)(3), LPL must demonstrate that both the alleged tortious act itself (*i.e.*, patent infringement) and the resulting harm occurred in Delaware. *See Applied Biosys.*, 772 F. Supp. at 1466. As with § 3104(c)(1), LPL cannot avail itself of § 3104(c)(3).

CMO has never sold components for liquid crystal displays to consumers or retailers, in Delaware. (Chen Declaration, ¶6). It has never sold components to OEMs or others with the intent or for the purpose of selling those products in Delaware. (*Id.*) CMO has never designed, manufactured, packaged, marketed, advertised, sold, or distributed any products, services, or raw materials in Delaware or to consumers in

Delaware. (*Id.*) Nor has it ever caused, instructed, or directed any third party to design, manufacture, package, market, advertise, sell, or distribute any products, services, or raw materials in Delaware or to consumers in Delaware. (*Id.*) CMO has never conducted any research or testing activities in Delaware. (*Id.*) It has never advertised in Delaware newspapers or any other Delaware medium. (Chen Declaration, ¶6). In fact, CMO has never had or made any arrangements to market its products in Delaware. (*Id.*)

**C.    The Delaware Long-Arm Statute Provides No Basis For General Jurisdiction Over CMO.**

To obtain general jurisdiction under § 3104(c)(4), Plaintiff must demonstrate that CMO's activities in Delaware are "continuous and substantial." *Sears*, 744 F. Supp. at 1304. This high standard is almost never met. *See, Id.*[3] It certainly cannot be met here.

Plaintiff does not, and cannot, allege that CMO engaged in a "persistent course of conduct" in Delaware or derived "substantial revenue" from activities in Delaware as the statute requires. Nor, can LPL demonstrate that CMO placed its components into the stream of commerce to intentionally exploit the markets in Delaware. Indeed, such purposeful availment remains the touchstone for determining minimum contacts and is central to the personal jurisdiction analysis. *See Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005). *Cf. Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996) (personal jurisdiction found over foreign defendant who knowingly and intentionally exploited the California market through its exclusive distributor); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994) (personal jurisdiction found over foreign defendant

---

[3] The *Sears* court found only one case, from 1952, in which the Supreme Court upheld the exercise of personal jurisdiction over a defendant where the claim was not related to the defendant's activities in the forum. *Id.; see also, Intel Corp.*, 20 F. Supp. 2d at 698.

who knowingly and purposefully shipped the accused products into the forum through its distributor).

Unlike in *Viam Corp.* and *Beverly Hills Fan Co.*, CMO has never purposefully conducted business activities in Delaware.[4]  (Chen Declaration, ¶4).  It has never purposefully directed business activities to Delaware.  (*Id.*)  Nor does it manufacture, design, advertise, package, sell, or distribute any products or raw materials in Delaware.  (*Id.*)  Indeed, CMO has never maintained, or caused, instructed, or directed any third parties to maintain, any agents, distributors, brokers, wholesalers, or other representatives in Delaware for the transaction of business of any nature.  (*Id.,* ¶8).  Nor has CMO maintained, or caused, instructed, or directed any third parties to maintain, any agents, distributors, brokers, wholesalers, or other representatives for the purpose of transacting business in Delaware.  (*Id.*)  In fact, CMO also has never executed any contract in Delaware, or contracted with any party to manufacture, buy, sell or distribute products or services in Delaware.  (Chen Declaration, ¶8).

Moreover, CMO is not currently, and never has been, qualified, authorized, or otherwise chartered, registered, or licensed to conduct or transact business in Delaware.  (*Id.,* ¶4).  CMO has never had any officers, employees, sales representatives, distributors, brokers, agents, or other representatives in Delaware.  (*Id.*)  It has never had an office or

---

[4] In *Beverly Hills Fan Co.*, one of the defendants offered a warranty to customers who purchased its fans in Virginia.  The Court found that this fact was another factor supporting the exercise of personal jurisdiction.  *Beverly Hills Fan Co.*, 21 F.3d. at 1560.  In contrast, CMO has never offered a warranty on products, warranty services, or repair services for products in Delaware or to consumers in Delaware.  (Chen Declaration, ¶10).  CMO does not provide advice or support services to consumers in Delaware.  Nor does CMO offer or provide customer support via telephone, its internet website (which is operated and hosted for CMO in Taiwan), or otherwise for products in Delaware or to any consumers located in Delaware.  (*Id.*)

-12-

telephone listing in Delaware. (*Id.*) It has never had a bank account in Delaware. (*Id.*) CMO has never used, owned, leased, or rented any real or personal property in Delaware. (Chen Declaration, ¶4).

Based on the record in this case, there is no basis to exercise personal jurisdiction over CMO.

### D.   The Requirements of Due Process Prevent This Court From Asserting Personal Jurisdiction Over CMO.

Even if Plaintiff could demonstrate that jurisdiction was proper under Delaware's long-arm statute, which it cannot, the exercise of jurisdiction over CMO would be unconstitutional under the Due Process Clause.

The Due Process Clause prohibits the exercise of jurisdiction over a non-resident defendant unless "the defendant purposefully established 'minimum contacts' in the forum state," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985), such that the exercise of jurisdiction would not violate "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984), *citing, International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Under this analysis, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Indeed, the "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Federal Circuit has urged a three-prong jurisdictional analysis in this context, guided by the following inquiries: 1) has the defendant purposefully directed its activities

at residents of the forum; 2) do the claims arise out of or relate to those activities; and 3) is the assertion of personal jurisdiction reasonable and fair? *See, HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307-08 (Fed. Cir. 1999), *citing Akro Corp. v. Luker,* 45 F.3d 1541, 1545-46 (Fed. Cir. 1995).

As to the first inquiry, the foregoing amply demonstrates that CMO has not directed activities at the residents of Delaware. It transacts no business in Delaware either directly or through an agent, has no property, no offices, and no employees in Delaware.

As to the second inquiry, it is axiomatic that Plaintiff's claims cannot relate to activities of CMO in Delaware, when CMO has not purposefully directed any activities to the residents of Delaware to begin with. Moreover, Plaintiff's burden under this second prong is particularly onerous because, by alleging patent infringement, Plaintiff must demonstrate that CMO made, used, offered for sale, or sold Plaintiff's patented invention in Delaware, or induced others to do so. *HollyAnne Corp.*, 199 F.3d at 1308. Plaintiff has not, and cannot, specifically allege any such acts by CMO in Delaware. None exist.

Finally, the assertion of personal jurisdiction over CMO would offend the traditional notions of fair play and substantial justice that are at the core of the Due Process protections. The Supreme Court has recognized that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 114 (1987). The Supreme Court identified factors for a court to consider in deciding the reasonableness of jurisdiction:

-14-

> A court must consider the burden on the defendant, the
> interests of the forum State, and the plaintiff's interest in
> obtaining relief. It must also weigh in its determination
> "the interstate judicial system's interest in obtaining the
> most efficient resolution of controversies; and the shared
> interest of the several States in furthering fundamental
> substantive social policies."

480 U.S. 102, 113 (1987) (*quoting World-Wide Volkswagen*, 444 U.S. at 292).

In *Asahi*, the Supreme Court held that the California court's exercise of personal jurisdiction over Asahi was severe, unreasonable and unfair in violation of the Due Process Clause. Asahi merely manufactured a tire valve assembly in Japan and sold the part to several foreign manufacturers who incorporated the part into finished motorcycle tires that were ultimately sold throughout the world, including in the United States. Like CMO, it was not involved in, and it did not control, the manufacture of the finished goods, their sale, or their eventual distribution into the United States.

Like in *Asahi*, the burden on CMO of litigating this complex case from abroad would be substantial. Like Asahi, CMO merely manufactures components that are incorporated into finished goods (in this case, liquid crystal display monitors) that foreign manufacturers sell through various intermediaries throughout the world, including into the United States. The assertion of jurisdiction over CMO, which is situated in Sinshih Township, Tainan County, in southern Taiwan, would be particularly unreasonable. All of CMO's factual witnesses in this matter, as well as all potentially relevant CMO documents are believed to be located in various places in Taiwan. Although Delaware has an interest in enforcement of contracts according to its law, this case does not involve Delaware law. Patent infringement determinations are made on the basis of federal law,

35 U.S.C. § 1, *et seq.* Thus, Delaware has no special interest in seeing this alleged dispute resolved in its own Courts, or under its own law.

Weighing all these factors together, even if CMO could arguably be considered to have "minimum contacts" with Delaware (which it does not), any attempt by this Court to exercise jurisdiction over CMO would not comport with "traditional notions of fair play and substantial justice." Because the present cause of action did not arise from any alleged contact between CMO and Delaware, specific jurisdiction is not appropriate or proper. Moreover, because CMO has not purposefully availed itself of the privilege of conducting business in Delaware, its conduct is not such that it should reasonably anticipate being haled into court there, and, therefore, this Court cannot properly exercise jurisdiction over CMO.

## II.    LPL'S COMPLAINT AGAINST CMO MUST BE DISMISSED BECAUSE IT FAILED TO COMPLY WITH THE RULES FOR SERVICE UPON ENTITIES IN A FOREIGN COUNTRY.

### A.    LPL's Attempt To Serve Process Under 10 Del. C. § 3104(d) Is Ineffective.

Plaintiff's attempted service of process under 10 *Del. C.* § 3104 is ineffective.[5] The provisions of 10 *Del. C.* § 3104(d) can only be used to effectuate service upon a nonresident defendant who is otherwise subject to personal jurisdiction in Delaware. *See*

---

[5] Absent waiver (which has not occurred), this Court can acquire personal jurisdiction over CMO – provided the Delaware long-arm statute and due process considerations are also satisfied (which in this case they are not)– only through effective service of process under Fed. R. Civ. P. 4. *See e.g., Farm Credit Bank v. Ferrera-Goitia*, 316 F.3d 62, 68 (1st Cir. 2003). Unless and until proper service is made, this Court lacks jurisdiction over CMO, and CMO cannot be bound by the Court's orders. *See, e.g., County Security Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002) ("It is elementary that one is not bound by a judgment *in personam* resulting from litigation . . . to which he has not been made a party by service of process.") (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969)).

*Falcon Steel Co., Inc. v. HCB Contractors*, 1990 WL 105065 (Del. Super. 1990) (attached as Exh. C). As demonstrated above, CMO does not meet this requirement.

Moreover, under § 3104(d) of Delaware's long-arm statute, service is complete only if plaintiff sends "by registered mail to the nonresident defendant . . . a notice consisting of a copy of the process and complaint served upon the Secretary of State . . . ." This provision necessarily requires the delivery of judicial papers internationally and necessitates compliance with Fed. R. Civ. P. 4(f) and (h). As demonstrated below, LPL's transmission of the Summons and Complaint to CMO via registered mail does not comply with these rules and thus does not constitute effective service of process.[6] Accordingly, the Court should dismiss the claims against CMO pursuant to Fed. R. Civ. P. 12(b)(5).

---

[6] Under Section 142 of the Taiwan Code of Civil Procedure, if process cannot be served on a defendant because the defendant either refused service or was absent when service was attempted, the server may return the documents to the court who initiated the service and such service is considered legally ineffective.

In addition, in order to effect service under 10 *Del. C.* § 3104(g) when a potential defendant refuses service or there is no evidence of receipt of service, "[t]he plaintiff or the plaintiff's counsel of record in the action may within 7 days following the return of any undelivered notice mailed in accordance with subsection (d) of this section other than a notice, delivery of which is shown by the notation of the postal authorities on the original envelope to have been refused by the defendant or the defendant's agent, file with the court in which the civil action is commenced proof of the nonreceipt of the notice by the defendant or the defendant's agent, which proof shall consist of the usual receipt given by the post office at the time of mailing to the person mailing the registered article containing the notice, the original envelope of the undelivered registered article and an affidavit made by or on behalf of plaintiff specifying:

(1) The date upon which the envelope containing the notice was mailed by registered mail;

(2) The date upon which the envelope containing the notice was returned to the sender;

(3) That the notice provided for in subsection (d) of this section was contained in the envelope at the time it was mailed; and

(4) That the receipt, obtained at the time of mailing by the person mailing the envelope containing the notice, is the receipt filed with the affidavit.

**B.**    **LPL's Attempt To Serve Process Fails To Comply With Fed. R. Civ. P. 4(f)(2)(A).**

Because CMO has no physical presence or statutory agent in the United States, plaintiff must serve any judicial papers on CMO abroad. *See* Fed. R. Civ. P. 4(f)(1), (h)(1) & (2). Service of judicial papers abroad is controlled by Fed. R. Civ. P. 4(h)(2). Fed. R. Civ. P. 4(h)(2) provides that service on a foreign corporation outside the United States may be effected in a manner prescribed for individuals by Fed. R. Civ. P. 4(f), except that personal service under Fed. R. Civ. P. 4(f)(2)(C)(i) cannot be used to effect service on a foreign corporation.[7]

To the extent that LPL's transmission of a purported notice of service could be considered an attempt to effect service, it is defective under Fed. R. Civ. P. 4(f)(2)(A). Fed. R. Civ. P. 4(f)(2)(A) provides that service of process can be made "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction."

---

(continued...)

Case law requires that in order to perfect service under 10 *Del. C.* § 3104, proof of receipt of notice be provided through registered return receipt mail. *Casson v. Matt Slap Subaru, Inc.*, 1988 WL 130394 (Del. Super. 1988) (citation omitted) (attached as Exh. D). Counsel for LPL, however, never provided such proof of service to the Court. (*See* Exh. 1 to Declaration of Arthur P. Licygiewicz). Nor did it comply with the requirements of 10 *Del. C.* § 3104(g). Failure to follow the procedures of 10 *Del. C.* § 3104 justifies dismissal. *Purnell v. Dodman*, 297 A.2d 391, (Del.Super. 1972*), Casson v. Matt Slap Subaru, Inc.,* 1988 WL 77761 (Del. Super. 1988) (attached as Exh. E). Accordingly, LPL's failure to follow the procedures of 10 *Del. C.* § 3104, including § 3104(g), provides yet another independent ground justifying dismissal of the Complaint against CMO for insufficiency of service of process.

[7] Since Taiwan is not a signatory to the Hague Convention and there is no internationally agreed upon means for service between the United States and Taiwan, service cannot be made upon CMO under Fed. R. Civ. P. 4(f)(1). In addition, LPL has not sought the issuance of a Letter Rogatory and thus service of process upon CMO cannot be made in accordance with Fed. R. Civ. P. 4(f)(2)(B).

LPL's attempted method of service upon CMO does not comply with the Taiwan Code of Civil Procedure. Article 123 of the Taiwan Code of Civil Procedure provides that except where it is otherwise provided, service of process shall be effected by the clerk of the local Taiwanese court. Article 124 of the Taiwan Code of Civil Procedure provides that service of process shall be effected by the clerk of the court by delivering the documents to the process-server or the post office for execution. LPL's counsel, not the clerk of court, addressed and dispatched the Summons and Complaint to CMO. (*See* Exh. 1 to Declaration of Arthur P. Licygiewicz, (Dkt. No. 12) (indicates summons and complaint were sent from The Bayard Firm in Wilmington, Delaware). Consequently, service is defective and the action against CMO must be dismissed.

### C.    LPL's Attempt To Serve Process Fails To Comply With Fed. R. Civ. P. 4(f)(2)(C)(ii).

To the extent that LPL's transmission of a purported notice of service could be considered an attempt to effect service, such an attempt is defective. Fed. R. Civ. P. 4(f)(2)(C)(ii), provides that service upon an entity in a foreign country may be effected by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served." (emphasis added).

As demonstrated above, the return receipt provided by LPL establishes that its counsel, not the clerk of court, addressed and dispatched the Summons and Complaint to CMO. (*See* Exh. 1 to Declaration of Arthur P. Licygiewicz, (Dkt. No. 12) (indicates summons and complaint were sent from The Bayard Firm in Wilmington, Delaware). Thus, the action must be dismissed. *See, e.g., Lampe v. Xouth, Inc.,* 952 F.2d 697, 702 (3d Cir. 1991) (dismissing complaint against foreign corporation in part because plaintiff's counsel addressed and dispatched the summons and complaint instead of the

-19-

clerk in contravention of Rule 4(f)(2)(C)(ii)); *G & H Partners, Ltd. v. Boer Goat Int'l*, 896 F. Supp. 660, 663 (W.D. Tex. 1995), *aff'd*, 84 F.3d 432 (5th Cir. 1996) (holding service on foreign corporation defective because summons and complaint were addressed and dispatched by plaintiffs instead of the clerk); 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1134 (3d ed. 2002) ("[S]ervice by mail is improper if addressed and dispatched by the plaintiff rather than by the clerk of the court.").

**D.   LPL's Attempt To Serve Process Fails To Comply With Fed. R. Civ. P. 4(f)(3).**

To the extent that LPL's transmission of a purported notice of service could be considered an attempt to effect service, it also is defective under Fed. R. Civ. P. 4(f)(3). Fed. R. Civ. P. 4(f)(3) provides that service can be made upon a foreign corporation "by other means not prohibited by international agreement as may be directed by the court."

To CMO's knowledge, there has been no direction by this Court relative to service of process. Therefore, service of process has not been effected pursuant to Fed. R. Civ. P. 4(f)(3).

## CONCLUSION

The dismissal of this case against CMO will not prevent LPL from attempting to enforce its patent rights against others, who unlike CMO, may be subject to personal jurisdiction in this Court. LPL could bring an action for patent infringement against any of the retailers and/or original equipment manufacturers that may, unlike CMO, purposefully avail themselves of doing business in Delaware. As demonstrated herein, CMO has not engaged in any act that would be sufficient to subject it to personal jurisdiction in Delaware. Indeed, any attempt to exercise personal jurisdiction over CMO

would offend the traditional notions of fair play and substantial justice that are at the core

of the Due Process protections.  Thus, for at least the foregoing reasons, CMO's motion

to dismiss the Complaint for lack of personal jurisdiction and insufficiency of service of

process should be granted and final judgment of dismissal should be entered in favor of

Chi Mei Optoelectronics Corporation.


                                        POTTER ANDERSON & CORROON LLP


OF COUNSEL:

Kenneth R. Adamo                     By:  /s/ Philip A. Rovner
Robert C. Kahrl                            Philip A. Rovner (#3215)
Arthur P. Licygiewicz                      Hercules Plaza
Jones Day                                  P. O. Box 951
North Point                                Wilmington, DE  19899
901 Lakeside Avenue                        (302) 984-6000
Cleveland, OH  44114-1190                  provner@potteranderson.com
(216) 586-3939

                                     *Attorneys for Defendant*
Dated:  April 6, 2007                *Chi Mei Optoelectronics Corporation*
787779

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on April 6, 2007, the within document was

filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to

the following; that the document was served on the following counsel as indicated; and that the

document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY**

Richard E. Kirk, Esq.
Ashley Blake Stitzer, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE  19899
rkirk@bayardfirm.com
astitzer@bayardfirm.com

**BY HAND DELIVERY**

Edmond D. Johnson, Esq.
Thomas H. Kovach, Esq.
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE  19899-1709
johnsone@pepperlaw.com
kovacht@pepperlaw.com

I hereby certify that on April 6, 2007 I have sent the foregoing document by

Federal Express to the following non-registered participants:

Gaspare J. Bono, Esq.
Matthew T. Bailey, Esq.
Lora A. Brzezynski, Esq.
Cass W. Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006

John N. Zarian, Esq.
Samia E. McCall, Esq.
J. Walter Sinclair, Esq.
Stoel Rives LLP
101 S. Capitol Boulevard
Suite 1900
Boise, ID  83702

/s/ Philip A. Rovner
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 805284 (D.Del.)
**(Cite as: 1999 WL 805284 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
CORDIS CORPORATION, Plaintiff,
v.
ADVANCED CARDIOVASCULAR SYSTEMS, INC.
and Guidant Corporation Defendants.
**No. Civ.A. 97-635-SLR.**

Sept. 17, 1999.

Steven J. Balick, and John S. Grimm, of Ashby & Geddes, Wilmington, Delaware, Fred H. Bartlit, Jr., David Berten, and Mary S. Moore, of Bartlit Beck Herman Palenchar & Scott, Chicago, Illinois, and Henry W. Collins, of Johnson & Johnson, Miami Lakes, Florida, for plaintiff, of counsel.

Frederick L. Cottrell, III, and Jeffrey L. Moyer, of Richards, Layton & Finger, Wilmington, Delaware, Charles E. Lipsey, J. Michael Jakes, and Howard A. Kwon, of Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Washington, D.C., and Aldo A. Badini, and Jack Kaufmann, of Dewey Balantine LLP, New York, New York, for defendants, of counsel.

MEMORANDUM OPINION
ROBINSON, J.

I. INTRODUCTION

*1 Presently pending before the court is a motion to dismiss submitted by defendant Guidant Corporation ("Guidant"). Guidant, along with its wholly-owned subsidiary Advanced Cardiovascular Systems, Inc. ("ACS"), has been sued for patent infringement by Cordis Corporation ("Cordis"), pursuant to 35 U.S.C. § 271. (D.I.1) [FN1] In its motion, Guidant contends that the court lacks personal jurisdiction over it, requiring dismissal pursuant to Fed.R.Civ.P. 12(b)(2).

For the reasons that follow, Guidant's motion shall be granted.

II. FACTS

The record assembled in connection with this motion demonstrates the following: Guidant is a holding company incorporated in Indiana, with its principal place of business in Indianapolis, Indiana. Guidant has a number of wholly-owned subsidiaries, including ACS. ACS is a California corporation having its principal place of business in Santa Clara, California.

At issue in this patent infringement action is the "ACS RX ROCKET Coronary Dilatation Catheter" ("ACS RX ROCKET") accused of infringing several of Cordis' patents that pertain to balloons used in coronary angioplasty procedures. While ACS disputes infringement, it claims to have designed, manufactured, marketed, and distributed the ACS RX ROCKET. Specifically, ACS concedes that the RX ROCKET has been sold in Delaware. ACS has submitted to this court's jurisdiction.

Guidant contests personal jurisdiction based on the following averments:

. Guidant has no offices, manufacturing plants, warehouses or other facilities or telephone listing anywhere in the State of Delaware and has no employees, agents or distributors in Delaware. Guidant has never had a regular and established place of business in Delaware and has never been registered to do business in Delaware. Guidant does not hold any bank accounts in Delaware and does not hold any interest in real or personal property in Delaware.

(D.I.16) The above assertion is not disputed.

. Guidant and each of its subsidiaries maintain separate books and accounting records, and all of the accounting between Guidant and its subsidiaries is kept precisely to ensure strict traceability of the subsidiary.

(D.I.16) The above assertion is not disputed.

. ACS has its own employees who manage the day to day operations of ACS.

. Guidant is not actively involved in determining who is employed at ACS, what products ACS makes or sells, what prices ACS sets for its products, or what press releases are issued by ACS, even if they bear Guidant's corporate name.

. It is Guidant's corporate policy that all of its subsidiaries should use the Guidant name on all letterhead, product literature and press releases to help establish the corporate identification of Guidant. In all cases,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 805284 (D.Del.)
(Cite as: 1999 WL 805284 (D.Del.))

however, each individual subsidiary is responsible for its own communications with its customers.

. Guidant transacts only business related to its role as a holding company. Guidant does not design, manufacture, sell or otherwise distribute any products, including any balloons for use in coronary angioplasty procedures.

*2 (D.I.16) The record does contain contrary, or at a minimum, inconsistent evidence. For instance, according to Guidant's discovery responses, at least the following individuals are employed currently by both Guidant and ACS: [FN2]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 805284 (D.Del.)
(Cite as: 1999 WL 805284 (D.Del.))

| Name | ACS Title | Guidant Title |
| --- | --- | --- |
| Ginger L. Howard | President and CEO | Vice President and President, Vascular Intervention Group |
| Bruce J. Barclay | General Counsel and Secretary | Deputy General Counsel |
| Cynthia L. Lucchese | Treasurer | Treasurer |
| Thomas R. Peterson | Assistant Secretary | Senior Counsel and Assistant Secretary |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 805284 (D.Del.)
**(Cite as: 1999 WL 805284 (D.Del.))**

Page 4

(D.I.41, Ex. 6) Moreover, all three (3) members of the ACS board of directors--Ronald W. Dollens, Keith E. Braver, and Ginger L. Howard--are Guidant officers. In this regard, Guidant has explained that

> ACS' board of directors normally acts through consent resolutions. Accordingly, the members of ACS' board of directors [had] not formally met [as of February 1998] since January 1, 1994 with the exception of a meeting held on or about June 8, 1994, via telephone.

(D.I.41, Ex. 6)

According to the record, the 800 number listed for Customer Service regarding the ACS RX ROCKET elicits an operator who answers the phone: "Guidant Customer Service." (D.I.41, ¶ 8) This representation is consistent with the literature of record, which instructs potential customers to "[t]alk to your Guidant Vascular Intervention representative for more information on the full line of ACS Rapid Exchange products." (D.I.41, Ex. 7)

Some of the promotional literature of record concerning the ACS RX ROCKET characterize ACS as follows:

Guidant Vascular Intervention Headquarters
ACS DVI
3200 Lakeside Drive
Santa Clara, CA 95054, USA
Guidant Vascular Intervention Manufacturing Facility
ACS DVI
26531 Ynez Road
Temecula, CA 92591 USA

(D.I.41, Ex. 7) At best, aside from identifying the product at issue as the "ASC RX ROCKET Coronary Dilatation Cathether," ACS is identified in the following manner:

GUIDANT
Advanced Cardiovascular Systems, Inc.
26531 Ynez Road
Temecula, California 92591-4628 U.S.A.
800-227-9902 FAX 800-601-8874
OR
GUIDANT
Advanced Cardiovascular Systems, Inc.
3200 Lakeside Drive
Santa Clara, CA 95052-8167, U.S.A.
(408) 235-3000
ACS Manufacturing Facility

26531 Ynez Road
Temecula, CA 92591-4618, U.S.A.
CUSTOMER SERVICE:
800-227-9902 FAX 800-601-8874

(D.I.41, Exs.1, 2) In none of the literature of record is ACS specifically identified as the corporate entity solely responsible for designing, manufacturing, marketing, or selling the product at issue.

Finally, on November 7, 1997, Guidant issued a press release under its own name announcing FDA approval of the ACS RX ROCKET. Here follow some highlights of the press release:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 805284 (D.Del.)
**(Cite as: 1999 WL 805284 (D.Del.))**

Page 5

GUIDANT                                          About Guidant
            Cardiac Rhythm              Minimally        Vascular
            Management    Invasive Systems  Intervention

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 805284 (D.Del.)
**(Cite as: 1999 WL 805284 (D.Del.))**

Guidant Receives FDA Approval to Market New Rapid
Exchange Catheter

*3 Indianapolis, IN--November 7, 1997--Guidant Corporation (N.Y.SE and PCX: GDT), a world leader in the treatment of coronary artery disease, today announced that it has received U.S. Food and Drug Administration approval to market the ACS RX ROCKET TM Coronary Dilatation Catheter....
The ACS RX ROCKET Coronary Dilatation Catheter is Guidant's first dilatation catheter to feature XCELON TM Nylon Balloon Material HYDROCOAT TM Hydrophilic Coating.

...

\* \* \*

"The ACS RX ROCKET Coronary Dilatation Catheter marks a new era in rapid exchange technology," commented Ginger L. Howard, president of the Guidant Vascular Intervention Group....

\* \* \*

A leader in the medical device industry, Guidant provides innovative, cost-effective products and services to the global cardiology and minimally invasive surgery marketplaces.
© 1997 Guidant Corporation. All Rights Reserved. Do not duplicate or distribute in any form.
(D.I.41, Ex. 3) According to Guidant's discovery responses, ACS sought FDA approval for the ACS RX ROCKET under the name "Guidant/ACS." (D.I.41, Ex. 6) Following issuance of the press release, the instant suit was commenced.

III. STANDARD OF REVIEW

Cordis, as plaintiff, bears the burden of establishing, through sworn affidavits or other competent evidence, that this court may exercise personal jurisdiction over defendant Guidant. *Patterson v. FBI,* 893 F.2d 595, 603- 04 (3d Cir.1990). When personal jurisdiction is contested without the benefit of an evidentiary hearing, however, the record is viewed in the light most favorable to the plaintiff. See *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1462 (D.Del.1991); *Computer People, Inc. v. Best Int'l Group, Inc.,* No. Civ. A. 16648, 1999 WL 288119, at *4 & n.5 (Del. Ch. Apr. 27, 1999). According

to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995).

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for "lack of jurisdiction over the person." According to the United States Supreme Court,

before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987). The principle announced above is traditionally described in this court as a two-step analysis. The court will determine, first, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

*4 Rule 4(e)(1) of the Federal Rules of Civil Procedure states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed "broadly ... to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). As noted by this court in *Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F.Supp.2d 690, 694 (D.Del.1998), however, "[t]he Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, nor does it substitute federal due process analysis for state long-arm analysis." *Accord Hercules, Inc. v. Leu Trust & Banking (Bahamas) Ltd.,* 611 A.2d 476, 480-81 (Del.1992); *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods. Inc.,* Civ. A. No. 12036, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991); *Ramada Inns v. Drinkhall,* No. Civ. A. 83C-AU-56, 1984 WL 247023, at *2 (Del.Super. May 17, 1984). Therefore, the court must determine whether the exercise of personal jurisdiction is compatible with both

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 805284 (D.Del.)
(Cite as: 1999 WL 805284 (D.Del.))

the specific requirements of the Delaware long-arm statute and with defendant's constitutional right to due process. [FN3]

Delaware's long-arm statute provides in relevant part:
    (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-resident, or a personal representative, who in person or through an agent:
    (1) Transacts any business or performs any character of work or service in the State....
10 Del. C. § 3104(c)(1) (emphasis added).

As explained by the Delaware Supreme Court in LaNuova,
    [t]he conduct embraced in subsections (1) and (2), the transaction of business or performance of work and contracting to supply services or things in the State, may supply the jurisdictional basis for suit only with respect to claims which have a nexus to the designated conduct. Where personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction.
LaNuova, 513 A.2d at 768. Therefore, in order to establish transactional or specific jurisdiction, plaintiff must demonstrate not only that an act or acts occurred in Delaware but also that its causes of action arise from the act or acts. According to relevant caselaw, plaintiff also must demonstrate that the act or acts occurring in Delaware actually constitute "transacting business" in Delaware, i.e., that defendant "purposefully avail[ed itself] of the privileges and benefits of Delaware law." Computer People, Inc., 1999 WL 288119, at *8; see also Thorn EMI N. Am. v. Micron Tech., Inc., 821 F.Supp. 272, 274 (D.Del.1993) (stating that the designated conduct "must be directed at residents of the State of Delaware and the protection of its laws"). With this requirement in mind, courts have concluded that "[m]ere solicitation does not arise to transacting business, nor does the isolated shipment of goods into Delaware." Id. (citing Moore v. Little Giant Indus., Inc., 513 F.Supp. 1043, 1047 (D.Del.1981); Waters v. Deutz Corp., 460 A.2d 1332, 1335 (Del.Super.1983)). The distinction between isolated business activities and those giving rise to personal jurisdiction has been explained on the basis of whether the conduct is "part of a general business plan ... to solicit

business in Delaware and deliver products to customers in Delaware." Thorn EMI, 821 F.Supp. at 274.

*5 The court must further determine whether the exercise of personal jurisdiction over Guidant comports with federal due process considerations. The Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945), held that
    due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."
Id. at 316 (citation omitted). The Court in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), added the requirement that the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." Id. at 475 n.18. Therefore, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. at 477. In Luker, the Federal Circuit suggested a three-prong jurisdictional analysis: 1) has the defendant purposefully directed its activities at residents of the forum?; 2) do the claims arise out of or relate to those activities?; 3) is the assertion of personal jurisdiction reasonable and fair? See Luker, 45 F.3d at 1545-46.

IV. DISCUSSION

Based on evidence presented in a related case, [FN4] Cordis maintains that Guidant and ACS "share" key employees. Cordis refers to the product and advertising literature of record in support of its assertion that "Guidant is regularly involved in the daily affairs of ACS, particularly as it relates to the marketing of the [ACS RX ROCKET]." (D.I. 76 at 5) Cordis concludes: "It is precisely this type of 'close connection' between a corporation and the cause of action that supports a finding of jurisdiction under the 'agency theory' in Delaware." (D.I. 76 at 5) [FN5]

As explained by this court in Applied Biosystems, the agency theory
    examines the degree of control which the parent exer-

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 805284 (D.Del.)
(Cite as: 1999 WL 805284 (D.Del.))

cises over the subsidiary.... The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant....

If any agency relationship is found to exist, courts will not ignore the separate corporate identities of parent and subsidiary, but will consider the parent corporation responsible for specific jurisdictional acts of the subsidiary.

772 F.Supp. at 1463. An agency relationship alone, however, is not sufficient to confer jurisdiction.

*6 Rather, the result of finding such an agency relationship is simply that we may attribute certain of [ACS'] acts to [Guidant] in assessing whether the requirements of the Delaware long-arm statute have been satisfied.

Id. at 1464.

With respect to whether Cordis has demonstrated that an agency relationship exists between Guidant and ACS, the court finds that Cordis has carried its burden of proof in this regard. Although Guidant and ACS may honor corporate formalities and maintain separate corporate finances, there is evidence that, at least in the case of the ACS RX ROCKET, Guidant has controlled and directed the marketing campaign of record. Indeed, but for Mr. Peterson's averments, one could not readily discern from the promotional literature itself which corporation designed, manufactured, marketed or sold the RX ROCKET. The court finds, therefore, that a limited agency relationship exists between Guidant and ACS as to the marketing of the ACS RX ROCKET.

The existence of an agency relationship is not enough, however, to confer personal jurisdiction over Guidant. Rather, Cordis must establish that the activities directed or controlled by Guidant are the jurisdictional acts of ACS. Cordis has failed in this regard. While ACS' sales activities in Delaware [FN6] may well be related to the marketing efforts directed by Guidant, the court declines to make this intellectual leap without an evidentiary basis in fact. Therefore, the court concludes that the exercise of personal jurisdiction over Guidant pursuant to 10 Del. C. § 3104(c)(1) is not warranted. [FN7]

Even if Guidant's relationship with ACS passed muster under the Delaware long-arm statute, the court finds that the exercise of personal jurisdiction over Guidant under these circumstances would not comport with " 'traditional notions of fair play and substantial justice." ' International Shoe Co. 326 U.S. at 316 (citation omitted).

The constitutionality of an exercise of specific jurisdiction turns on whether the defendant has "purposefully directed" its activity toward the forum state. If so, and if the litigation arises out of those activities, the defendant may have established the requisite minimum contacts with the forum despite the lack of any physical contacts.

Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F.Supp. at 1470.

In the product liability suit of Waters v. Deutz Corp., 460 A .2d 1332, 1337-38 (Del.Super.1983), the Delaware Superior Court exercised personal jurisdiction over a German tractor manufacturer pursuant to 10 Del. C. § 3104(c)(1). The manufacturer, which had no direct contacts with the State, had developed an agency relationship with its exclusive United States distributor which, in turn, imported the manufacturer's tractors through the Port of Wilmington, sold at least five tractors in Delaware, maintained a district manager in Delaware, and actively solicited Delaware business.

The extent and nature of the Delaware contacts in the present case are imprecisely described. ACS has sold the RX ROCKET in Delaware, but there is no description of record of defendants' solicitation efforts or how such efforts affected, it at all, ACS' sales activities. The court is not inclined to find that Guidant purposefully directed its activity toward Delaware based on such a record.

V. CONCLUSION

*7 For the reasons stated, Guidant's motion to dismiss shall be granted. An appropriate order shall issue.

FN1. Plaintiff alleges in the complaint that defendants ACS and Guidant "manufacture and sell a medical device ... that infringes...." (D.I.1, ¶ 10)

FN2. In related litigation, even certain ACS employees were uncertain as to the identity of their employer. (See C.A. No. 97-550, D.I. 346, 347)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 805284 (D.Del.)
(Cite as: 1999 WL 805284 (D.Del.))

Page 9

FN3. The Federal Circuit has instructed that, "in‑ interpreting the meaning of state long-arm stat‑ utes, we ... defer to the interpretations of the rel‑ evant state and federal courts, including their de‑ terminations regarding whether or not such stat‑ utes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1386 (Fed.Cir.1998). Thus, in *Luker,* the Federal Cir‑ cuit's analysis followed that of the Sixth Circuit's holding in *R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc.,* 811 F.2d 967 (6th Cir.1987): " 'This Ohio [long-arm] statute has been construed to extend to the outer limits of due process, and thus an Ohio personal jurisdiction analysis be‑ comes an examination of constitutional limita‑ tions." ' *Luker,* 45 F.3d at 1544 (quoting *Dribeck,* 811 F.2d at 969). By contrast, as noted above, the Delaware state courts do not collapse the long-arm inquiry into the due process inquiry and neither shall this court.

FN4. The court, in *Cordis Corp. v. Advanced Cardiovascular Systems, Inc., et al.,* C.A. No. 97-550-SLR, concluded that the exercise of per‑ sonal jurisdiction over Guidant was appropriate where Guidant "share[d] personnel ..., financial management ..., and research and marketing re‑ sponsibilities...." (D.I.76, Ex. 1) Since that order issued, and in support of its motion for reargu‑ ment, Guidant has submitted affidavits recanting earlier deposition testimony. See, e.g., C.A. No. 97-550, D.I. 346:

At my deposition, I stated that I was Vice-President of Global Marketing for "vascular in‑ tervention" and I reported to Ginger Howard. Ms. Howard is President of ACS and, in this re‑ gard, my activities at Global Marketing are un‑ dertaken on behalf of ACS.

At the time of my testimony, I was treating ACS as a division of Guidant when I stated that I was employed by Guidant. I have been informed by counsel for ACS that ACS is a separate legal en‑ tity.

See also D.I. 347:

At my deposition, I was asked about my employ‑ er and I stated that I was employed by Guidant

Corporation. I also noted that I was the Director of Research and Development for the "stent busi‑ ness unit." Although I was not asked, it is my un‑ derstanding that the "stent business unit" is a portion of Advanced Cardiovascular Systems ("ACS"), an independent subsidiary of Guidant Corporation. In light of this fact, and upon a fur‑ ther review of my records, I have confirmed that I am an employee of ACS, not Guidant.

FN5. To the extent asserted by Cordis, the court finds that the record does not support exercising personal jurisdiction over Guidant based on its own conduct in Delaware or based on an alter ego theory.

FN6. The sales activities themselves are not spe‑ cifically described in the record.

FN7. The court reaches this conclusion some‑ what reluctantly, as it does not seem appropriate that Guidant, for business reasons, be permitted to hold itself out to the public as the corporate entity responsible for the ACS RX ROCKET only to disclaim legal responsibility for the same product based on corporate formalities.

Not Reported in F.Supp.2d, 1999 WL 805284 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:97cv00635 (Docket) (Dec. 02, 1997)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 297661 (D.Del.)
**(Cite as: 1997 WL 297661 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
CITINENTAL TRADING CO., Plaintiff,
v.
NAPORANO IRON & METAL CO. and SGS Control
Services, Inc., Defendants.
SGS CONTROL SERVICES, INC., Third-Party Plaintiff,
v.
PETER B. KELMAN, INC., a New Jersey corporation,
Third-Party Defendant.
**Civil Action No. 95-304 MMS.**

May 27, 1997.

Francis G.X. Pileggi, Pileggi, Pileggi & Pileggi, Wilmington, DE, for plaintiff Citinental Trading Co.

Craig B. Smith, Smith, Katzenstein & Furlow, Wilmington, DE, defendant Naporano Iron & Metal Co.

Francis X.D. Nardo, Tybout, Redfearn & Pell, Wilmington, DE, for defendant and third-party plaintiff SGS Control Services, Inc.

John D. Balaguer, White and Williams, Wilmington, DE, for third-party defendant Peter B. Kelman, Inc.

*MEMORANDUM OPINION*
MURRAY M. SCHWARTZ, Senior District Judge.

I. INTRODUCTION
**\*1** In May of 1995, Citinental Trading Co. ("Citinental") brought suit against Naporano Iron & Metal Co. ("Naporano") and SGS Control Services, Inc., ("SGS") for breach of contract, negligent and fraudulent misrepresentation, and negligence. On September 30, 1995, SGS filed a third-party complaint against Peter B. Kelman, Inc. ("Kelman"). Pending before the Court is Kelman's motion to dismiss SGS's third-party complaint for lack of personal jurisdiction. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332. [FN1] For the reasons below, the Court grants Kelman's motion to dismiss.

FN1. According to the verified complaint, Citin-

ental and SGS hail from different states. Docket Item ("D.I.") 1 at ¶¶ 3, 4. Citinental also alleged the amount in controversy exceeds $50,000, D.I. 1 at ¶ 5, which met the requirements of 28 U.S.C. § 1332 as of 1995, when the verified complaint was filed. The amount of controversy requirement has been upped, of course, and now stands at $75,000.

II. FACTUAL BACKGROUND
In 1994, Citinental, a Delaware corporation, contracted with Naporano, a New Jersey corporation, for the purchase of 25,000 metric tons of steel, plus or minus ten percent at Naporano's option, to be delivered to the Port of Newark, New Jersey. Docket Item ("D.I.") 1 at Exhibit ("Exh.") A. The contract also contemplated that SGS, another New Jersey corporation, would perform draft surveys of the quantity and quality of steel delivered by Naporano to the Port of Newark. *Id.* The contract between Citinental and Naporano was executed in Delaware. *Id.* Naporano then contracted with SGS in New Jersey.

SGS chose to perform the survey of the quality of the steel itself and subcontract for the survey of the quantity of steel. To that end, it entered into a separate, oral contract with Kelman whereby Kelman would survey the quantity of steel delivered by Naporano. This contract was executed in a telephone conversation between SGS, in New Jersey, and Kelman, which is incorporated and headquartered in New Jersey.

The steel was delivered by Naporano to the Port of Newark. After delivery, the steel was loaded aboard the ship M/V Le-Chang-Ling, destined for China. On June 7, 1994, Kelman surveyed the quantity of steel loaded onto the ship by Naporano, and provided a written report to SGS. Laden with steel, the ship departed for China.

The ship arrived in China on July 24, 1994. After inspecting the cargo, the China Commodity Inspection Bureau concluded the ship carried only 24,000 tons of steel. This was approximately 500 tons less than the amount the Bureau was apparently expecting, and more importantly for our purpose, the amount Citinental had paid for. Operating on the reasonable assumption that 500 tons of steel do not easily vanish, Citinental sued SGS for its fail-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 297661 (D.Del.)
**(Cite as: 1997 WL 297661 (D.Del.))**

Page 2

ure to survey accurately the quantity of steel, as it was contractually obligated to do. SGS, in turn, sued Kelman as a third-party defendant.

Kelman moved for dismissal, arguing it lacked sufficient contacts with Delaware to be subject to personal jurisdiction. D.I. 65. The parties stipulated to a brief period of discovery on this issue, which revealed the following:

Kelman's president is Peter B. Kelman ("Mr.Kelman"), who resides in Annandale, New Jersey. D.I. 67 at Exh. 3, ¶ 1. Kelman performs draft surveys and condition surveys on ships and barges. *Id.* at ¶ 3. A survey entails a two or three hour evaluation of the ship before it is loaded, then another two or three hour evaluation after it is loaded. D.I. 82 at Exh. B, p. 13. Apparently, the weight of the cargo is determined by the difference in the amounts of water displaced by the vessel before and after it is loaded with cargo. For a survey on a ship, Kelman charges $600.00, and for a survey of a barge, Kelman charges between $150.00 and $175.00. *Id.* at ¶ 8. Since 1990. Kelman has performed five (5) surveys in Delaware, all at the Port of Wilmington. [FN2] *Id.* at ¶ 9. These surveys represented 0.0013 percent of Kelman's total gross revenues since 1990. *Id.* at ¶ 10. Mr. Kelman recalled doing one or two surveys from between 1985 to 1990, and possibly one or two before that, dating back to 1970. D.I. 82 at Exh. B, pp. 44-45. In addition, Kelman employees remember performing surveys in New Jersey on boats that are registered in Wilmington, Delaware. [FN3] *Id.* at Exh. A, p. 6. Finally, Kelman has done work in Baltimore, Maryland, and presumably has driven through Delaware to get to Baltimore.

> FN2. The breakdown of those five surveys by year is as follows:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 297661 (D.Del.)
**(Cite as: 1997 WL 297661 (D.Del.))**

```
1990--0 surveys (or 1 survey, see text below)
1991--0 surveys
1992--1 survey
1993--2 surveys
1994--1 survey
1995--0 survey
1996--1 survey
```

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 297661 (D.Del.)
(Cite as: 1997 WL 297661 (D.Del.))

D.I. 67 at Exh. 3, ¶ 9. The actual number of surveys from 1990 to 1996 may be six, however; Mr. Kelman's diary reveals he performed a draft survey of a ship in Wilmington, Delaware on February 12 of 1990.

FN3. The term "registered" was used by Kelman employees, and is probably not meant as a term of legal art. The Court is unaware of any registry for commercial boats in Wilmington, and counsel were unable to explain how a boat could be "registered" in Wilmington. It seems, rather, that by saying a boat was "registered" in Wilmington, Kelman's employees simply meant the owner of the boat was from Wilmington.

*2 The community of ship surveyors seems to be a small one, and a person who has been in the business for a long period of time apparently can achieve a certain level of name recognition. Kelman, for example, has never advertised, and receives its business "strictly by word of mouth." *Id.* at p. 16. When asked whether he has told prospective clients Kelman's services were not available in Delaware, Mr. Kelman responded, "I don't recall having said that our services are not available in Delaware. I don't recall having said that our services are available in Delaware. I don't recall having specifically mentioned Delaware in any capacity." *Id.* at p. 22. [FN4]

FN4. When pressed further as to whether he would tell a prospective client now that Kelman's services are available in Delaware, Mr. Kelman, perhaps soured by his brief experience as a named defendant, responded, "As of this case, the commencement of this case, I would say they're not." D.I. 82 at Exh. A, p. 22.

SGS argues that the fact Kelman appeared voluntarily and without subpoena as a witness for depositions in Delaware should be considered as a meaningful contact for purposes of both the Delaware Long Arm statute and the constitutionality of exercising personal jurisdiction over Kelman. Without commenting on the novelty of SGS's theory, it is sufficient to say that even counting these contacts would not provide this Court with personal jurisdiction over Kelman.

### III. DISCUSSION

Under Rule 4(e) of the Federal Rules of Civil Procedure, a federal district court may only exercise jurisdiction to the extent authorized by the long-arm statute of the state in which it sits. [FN5] The Delaware long-arm statute provides:

FN5. In applying state law, this Court is bound in this case to follow the decisions of the Delaware Supreme Court. When the Supreme Court has not opined on a particular issue, this Court must predict its path, considering "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data ..." *Scotts African Union Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church,* 98 F.3d 78, 92 (3d Cir.1996), *cert. denied,* 519 U.S. 1058, 117 S.Ct. 688, 136 L.Ed.2d 612 (1997). In making that prediction, the Court may be guided by decisions of intermediate state courts, but such decisions are not dispositive. *Continental Ins. Co. v. Pipher,* 934 F.Supp. 639, 642 (D.Del.1996).

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through his agent:

* * *

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

DEL. CODE ANN., tit. 10, § 3104 (1994).

In Delaware, there are two steps in determining whether personal jurisdiction of a non-resident defendant can be obtained. First, the Court must determine whether the Delaware long-arm statute provides an adequate basis for the assertion of personal jurisdiction. Second, if the Delaware long-arm statute does provide an adequate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 297661 (D.Del.)
(Cite as: 1997 WL 297661 (D.Del.))

basis, the Court must decide whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *Jeffreys v. Exten,* 784 F.Supp. 146 (D.Del.1992); *Transportes Aereos De Angola v. Ronair, Inc.* 544 F.Supp. 858 (D.Del.1982).

SGS bears the burden of establishing this Court may exercise jurisdiction. *See Carteret Savings Bank, FA v. Shushan,* 954 F.2d 141, 146 (3d Cir.1992). SGS asserts § 3104(c)(4) provides a basis for the exercise of jurisdiction over Kelman; [FN6] accordingly, SGS must show that Kelman (1) regularly does or solicits business in Delaware, (2) engages in any other persistent course of conduct in Delaware, or (3) derives substantial revenue from services, or things used or consumed in Delaware.

> FN6. DEL. CODE tit. 10, § 3104(c)(1) allows for jurisdiction over a non-resident when that non-resident "[t]ransacts any business or performs any character of work or service in the State[,]" but this provision serves as a jurisdictional basis only for claims which have a nexus to the designated conduct. *LaNuova D & B. S.p.A v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). Here, SGS's claim does not arise out of any of the surveys performed by Kelman in Delaware.

SGS has failed to make such a showing. Kelman has made, at most, six trips, spaced sporadically, over the last six years to Delaware on business. Kelman has made, at most, another two trips to Delaware from 1985 to 1990, and another two trips from 1970 to 1985. Thus, Kelman has made--again, at most--a grand total of ten business-related forays to Delaware since 1970. This can hardly be considered regular or persistent. SGS argues that Kelman does not advertise other than by word-of-mouth, does not turn down work in Delaware, and sometimes may survey ships in New Jersey which are "registered" in Wilmington. These acts are passive, however--Kelman itself does not provide the word-of-mouth, its customers do--and are a far cry from the requirement that a non-resident defendant "solicit[ ]" business in Delaware under 10 DEL CODE tit. 3104(c)(4). Moreover, surveys performed by Kelman in New Jersey do not constitute doing business in Delaware, no matter where the ships are registered.

*3 Nor does Kelman derive substantial revenue from Delaware, either in absolute dollars, or as a percentage of its gross income. Assuming that all of the surveys Kelman performed in Delaware were on ships, not barges, and assuming his fee far performing surveys on ships remained constant at $600 per since 1970 (both overly generous and unrealistic assumptions), Kelman received the munificent sum of $6,000 over twenty-six years for its work in Delaware--or about $230.77 a year. Since 1990, of course, Kelman's work in Delaware has accounted for just a fraction over 1/10 of 1% of its gross income. *See United States v. Consolidated Rail Corp.,* 674 F.Supp. 138, 144 (D.Del.1987) ( "At most, Globe's annual revenue from Delaware residents was $6,107 in 1985, less than one percent of total advertising revenue. Neither the absolute dollar amounts nor the percentage is large enough to form a basis for jurisdiction.") (internal citations to record omitted); *cf. Stephens v. Bank of Delaware,* 1993 WL 331093, at *4 (Del.Super.Ct. July 20, 1993) (finding jurisdiction over nonresident defendant under § 3104(c)(4) because "by receiving $479,311 in fees in 1992 from B.O.D. [Bank of Delaware] for servicing these mortgages [on land in Delaware and from mortgagors who reside in Delaware], PNC has derived substantial revenue from Delaware.").

The cases cited by SGS do not support a finding of personal jurisdiction in this case. In SGS's strongest case, an unreported case from the Superior Court of Delaware, the court found a prima facie showing that the defendant, a manufacturer of insulated blankets from nearby Sharon Hill, Pennsylvania, had enough contacts with Delaware to satisfy DEL. CODE tit. 10, § 3104(c)(4). *Mumford v. Carey's Diesel, Inc.,* No. 93C-06-032, 1995 WL 108885, at *4 (Del.Super.Ct. Feb.6, 1995). In that case, however, the manufacturer either shipped or had a representative personally deliver the blankets to Delaware on four occasions over a period of a year and half. *Id.* Here, the contacts are both fewer and farther between; to find Kelman had "a substantial volume of business" or "continuity of operation," *id.,* would be to expand the terms of § 3104(c)(4) beyond their natural meanings. [FN7] *See Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc.,* Civ. A. No. 13950, 1995 WL 694397, at *10 (Del. Ch. Ct. Nov. 21, 1995) (finding that repeated payments of $50 fee, amounting to $2000 in all, was "too insignificant to serve as a predicate for 'presence' or 'doing business' " under §

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 297661 (D.Del.)
(Cite as: 1997 WL 297661 (D.Del.))

3104(c)(4)). [FN8]

FN7. Similarly, in *Magid v. Marcal Paper Mills, Inc., 517 F.Supp. 1125 (D.Del.1981)*, and *LaNuova D & B. S.p.A. v. Bowe Co., 513 A.2d 764 (Del.1986)*, the contacts between the nonresident defendant and Delaware to justify jurisdiction under Del.Code tit. 10, § 3104(c)(4) are far greater than are present here. In *Marcal*, the defendant regularly shipped its goods for sale to a Delaware wholesaler, then supervised the sale of those goods by the Delaware wholesaler. 517 F.Supp. at 1130.

In *LaNuova*, an Italian manufacturer had established a warranty program designed to enhance the marketability of its roofing material sold throughout Delaware. 513 A.2d at 767. The Delaware Supreme Court viewed the warranties as a presence in Delaware as soon as they were delivered to the American distributor with authority to deliver them to the ultimate purchasers, some of whom, of course, would be and were Delawareans. *Id.* at 769. "This elaborate marketing device, designed to render LaNuova's products competitive with other roofing material distributed in this State," the court wrote, "is persistent in both plan and implementation." *Id.* In contrast, Kelnan had no elaborate plan designed to capture a greater share of the Delaware market. He relied on word-of-mouth, which certainly cannot be deemed to be a "presence" in Delaware for purposes of jurisdiction.

FN8. Even if Kelman had acted in such a manner as to meet the requirements of the Delaware long arm statute, exercising jurisdiction over Kelman in this case would not be consonant with due process guarantees of "fair play and substantial justice," *International Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)*; See *World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980)*. Subsection (c)(4) has been described as a "general" jurisdiction provision, *Vikoma Int'l. Ltd. v. Oil Stop, Inc., 1993 WL 14647, *4 (Jan. 14, 1993 D.Del.)*; that is, it provides jurisdiction based upon the defendant's general activity within Delaware, not because the plaintiff's claim is related to the defendant's con-

tacts with Delaware *See Grimes v. Vitalink Comm. Corp., 17 F.3d 1553, 1559 (3d Cir.1994)*. Assertions of general jurisdiction must be grounded in "continuous and systematic" contacts with the forum state, *Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414 n. 9, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)*, and as stated above, Kelman's contacts can hardly be characterized as "continuous and systematic."

An order will be entered dismissing Kelman as a third-party defendant for lack of personal jurisdiction.

Not Reported in F.Supp., 1997 WL 297661 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:95cv00304 (Docket) (May. 24, 1995)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT C**

Westlaw.

Not Reported in A.2d                                    Page 1

Not Reported in A.2d, 1990 WL 105065 (Del.Super.)
(Cite as: Not Reported in A.2d)

**H**
Falcon Steel Co., Inc. v. HCB
ContractorsDel.Super.,1990.Only the Westlaw
citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
FALCON STEEL COMPANY, INC., et al.
v.
HCB CONTRACTORS
v.
RELIANCE and HCB Contractors
v.
ROUSE & ASSOCIATES, INC., et al. and H.H.
Robertson Company.
**C.A. No. 89C-JL-214.**

Submitted April 10, 1990.
Decided July 19, 1990.

Judith Nichols Renzulli, Duane, Morris &
Heckscher, Wilmington.
Donald E. Reid, Morris, Nichols, Arsht & Tunnell,
Wilmington.
Richard J. Abrams, Richards, Layton & Finger,
Wilmington.
George H. Seitz, Prickett, Jones, Elliott, Kristol &
Schnee, Wilmington.
DEL PESCO, Judge.
*1 The third-party defendants (except H.H.
Robertson Company) have moved to dismiss the
third-party complaint of HCB Contractors ("HCB")
on the grounds of lack of *in personam* jurisdiction
over the limited partnership third-party defendants ("
Limited Partnerships") and lack of proper **service
of process** on the Limited Partnerships and
third-party defendants Willard J. Rouse, III ("Rouse
") and Rouse and Associates ("RAI").

The plaintiff in this action, Falcon Steel Company,
Inc. ("Falcon") has filed a lawsuit against HCB for
breach of a subcontract agreement between the two
parties concerning Falcon's performance of

structural steel work in the construction of the
Liberty Place II project in Philadelphia,
Pennsylvania. This project consists of the
construction of an office tower, hotel, retail area,
and parking garage. HCB is the general contractor
for this project while Falcon is the subcontractor.

HCB filed a third-party complaint against the
owners of Liberty Place II alleging that in the event
Falcon recovers damages against HCB, HCB is
entitled to a judgment against the owners in the
same amount. HCB bases its complaint on four
separate contracts entered into on June 7, 1988 with
third-party defendants 1650 Market Associates,
Liberty Place Hotel Associates, Liberty Place Retail
Associates, L.P., Liberty Place Parking Associates
and Liberty Place Parking Phase II Associates, for
the overall construction of the Liberty Place II
project. It is undisputed that these limited
partnerships are the owners of the four interrelated
projects.

In addition to the above five limited partnerships
(also referred to as "owners"), which are organized
and exist under the laws of the Commonwealth of
Pennsylvania, HCB has named as defendants the
seven limited partnerships which are the general
partners of the five contracting limited partnerships
and the five limited partnerships which are the
general partners of some of those general partners.
Finally, HCB has named as third party defendants
Rouse and RAI as general partners of the above
limited partnerships.

Third party defendants contend that this Court lacks
*in personam* jurisdiction over the Limited
Partnerships because the Delaware long arm statute
does not apply and the Limited Partnerships lack
sufficient "minimum contacts" with Delaware. To
determine whether this Court can obtain personal
jurisdiction over a nonresident, a two-step analysis
is applied. First, the Court must consider whether
the Delaware Long Arm Statute, 10 *Del.C.* § 3104,
applies, and next must evaluate whether subjecting

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1990 WL 105065 (Del.Super.)
(Cite as: Not Reported in A.2d)

a defendant to jurisdiction in Delaware violates the due process clause of the Fourteenth Amendment. *LaNuova D & B, S.p.A. v. Bowe Co., Inc.,* Del.Supr., 513 A.2d 764 (1986); *Waters v. Deutz Corp.,* Del.Supr., 479 A.2d 273 (1984).

The Delaware Long Arm Statute is expressed in 10 *Del.C.* § 3104 and provides in pertinent part:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through any agent:

(1) Transacts any business or performs any character of work or service in the State;

It is well settled in Delaware that this section should be broadly construed as conferring jurisdiction to the maximum extent permitted by the due process clause. *Transportes Aereos De Angola v. Ronair, Inc.,* 544 F.Supp. 858 (D.Del.1982). Moreover, the section is a "single act" statute which allows jurisdiction to be exercised over nonresidents on the basis of a single act done or transaction engaged in by the nonresident within the State. *Eudaily v. Harmon,* Del.Supr., 420 A.2d 1175 (1980).

*2 Third-party defendants assert that the Limited Partnerships have not engaged in the transaction of any business in Delaware. Further, third-party defendants contend that although both Rouse and RA1 conduct business in Delaware, neither has ever transacted business in Delaware in their capacity as general partners of any of the Limited Partnerships which have been named as defendants. The pleadings and affidavits filed in support of this motion indicate that the contracts between HCB and the Limited Partnerships were executed in Pennsylvania. In addition, the work to be performed under these contracts is to take place entirely in Pennsylvania.

HCB, however, contends that the Limited Partnerships have transacted business in Delaware and that their cause of action arises from the Limited Partnerships' transaction of such business in Delaware. Specifically, HCB asserts that

representatives of the Limited Partnerships traveled into Delaware to inspect materials fabricated for the Liberty Place II project by Falcon. These materials were being stored at Falcon's plant in Wilmington. In accordance with its subcontract for the prefabricated steel, Falcon had requested payment from HCB for these materials before their actual incorporation into the Liberty Place II project.

HCB has supplied the affidavit of Douglas L. Jones, Project Manager for HCB Contractors, which states that in October of 1988 two representatives of the owners of the Liberty Place II project traveled to Falcon's plant in Wilmington to inspect the off-site stored materials for which Falcon had requested payment. Further, this affidavit states that "[i]t is the normal business procedure of HCB Contractors that when a subcontractor requests payment for off-site stored material the Owner and Architect inspect the materials stored off site to verify the existence of the materials before authorizing payment for same." Jones Affidavit, paragraph 3.

Third party defendants do not dispute the fact that visits were made to Falcon's plant in Wilmington, but contend that the purpose of this visit was to allow HCB to be paid under the subcontract and that this does not constitute the transaction of business or the performance of work in Delaware. Defendant has supplied the affidavit of Cliff Wildgoose, the architect of record for the Liberty Place Phase II project and a representative of the owners. This affidavit states that any visits made by him or any other representative of the owners were made solely for the purpose of inspecting the materials for verification to ensure proper payment to HCB under the contract.

In recognizing that § 3104 is a single act statute and should be broadly construed, the Delaware Courts have held that personal jurisdiction can be based upon a single transaction within the state where there is a sufficient nexus between the transaction and the claim. *LaNuova D & B, S.p.A. v. Bowe Co., Inc.,* 513 A.2d at 768. For example, in *Speakman Co. v. Harper Buffing Mach. Co., Inc.,* 583 F.Supp. 273 (D.Del.1984), the Court found that personal jurisdiction existed under 10 *Del.C.* § 3104(c) where defendant solicited business in Delaware and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1990 WL 105065 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

where its employee made several trips to plaintiff's Delaware plant.

*3 In a case closely analogous to the instant case, this Court concluded that the defendant's actions within Delaware were sufficient to bring it within the purview of § 3104(c)(1). *Mid-Atlantic Mach. v. Chesapeake Shipbldg.,* Del.Super., 492 A.2d 250 (1985). The defendant in *Mid-Atlantic Mach.* sent its representatives on a number of trips to plaintiff's plant in Milford, Delaware for the purposes of inspecting plaintiff's plant and conferring with plaintiff's representatives regarding defendant's requirements and specifications. *Id.* at 255. The Court found that these actions in Delaware were part of the transaction that formed the basis for plaintiff's action, "and therefore, defendant transacted business in Delaware within the meaning of § 3104(c)(1)." *Id.*

Thus, in accordance with the above case law, this Court finds that the inspection trips made by representatives of the third-party defendants to Falcon's Wilmington plant constitute the transaction of business within the meaning of § 3104(c)(1). Although Falcon has not directly contracted with the Limited Partnerships concerning the Liberty Place Phase II project, the subcontract between HCB and Falcon incorporates the prime contract between the Limited Partnerships and HCB. This contractual connection and interrelationship among the parties are the determining factors which enable this Court to conclude that a sufficient nexus exists between HCB's claim against the owners under the prime contract and the actions of the owners' representatives in inspecting the prefabricated steel at Falcon's Delaware plant.

This Court must now determine whether the exercise of jurisdiction over the third-party defendants satisfies the due process requirement of the Fourteenth Amendment. The test for due process is whether the defendant has sufficient minimal contacts with the forum such that the maintenance of the suit would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316 (1945). In deciding whether there are sufficient minimum contacts, the Court must

focus on the relationship among the defendant, the forum, and the litigation. *Mid-Atlantic Mach.,* 492 A.2d at 255 [quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) ]. In addition, it is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state. *Hanson v. Denckla,* 357 U.S. 235 (1958); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985).

On the basis of the prime contract between the Limited Partnerships and HCB and its incorporation within the subcontract between HCB and Falcon Steel, the Limited Partnerships have purposefully established sufficient minimum contacts within Delaware. The Limited Partnerships, by and through their agents and representatives, have traveled into Delaware to inspect the steel to be used in the construction of their project. These visits were necessary to verify the existence of the steel in order to pay HCB and will continue throughout the construction of the project. Therefore, it is clear that as a result of these activities, the third-party defendants were provided with fair warning that they may be subject to the jurisdiction of the Delaware courts.

*4 Furthermore, Delaware has a significant interest in rendering a complete adjudication of this contractual dispute. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980); *Burger King Corp.,* 471 U.S. at 472. This action involves a Delaware corporation, Falcon Steel, which has initiated the litigation in a Delaware forum. Falcon, which also has its principal place of business here, is claiming damages for breach of contract against HCB. The economic security of its domestic corporations is a legitimate concern of this state. *Mid-Atlantic Mach,* 492 A.2d at 255. Thus, since the contract between the owners and HCB plays a large role in this dispute, this Court will achieve the most efficient resolution of the entire controversy among the parties by exercising jurisdiction over the third party defendants.

Accordingly, this Court finds that the exercise of jurisdiction pursuant to 10 *Del.C.* § 3104(c)(1) comports with due process.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1990 WL 105065 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Third-party defendants also contend that they were not properly served by HCB. In Delaware, service upon a partnership can be effected by serving a single partner. *Hibou, Inc. v. Ramsing,* Del.Super., 324 A.2d 777, 782 (1974). The pleadings indicate that the third party complaint was originally served on RAI as a defendant and as the general partner of the Limited Partnerships at its Wilmington office.
In addition, HCB served defendant Rouse pursuant to 10 *Del.C.* § 3104. Since RAI and Rouse are general partners of the Limited Partnerships, this Court finds that **service** of **process** was properly rendered.

Nevertheless, even if this original **service** of **process** were improper, HCB cured this error by repeating **service** of **process** upon *all* third-party defendants pursuant to 10 *Del.C.* § **3104(d)**. Under § **3104(d)**, service upon a nonresident defendant who is subject to personal jurisdiction in Delaware "shall be made upon the Secretary of State of this State in the same manner as is provided by law for service of writs of summons, and when so made shall be as effectual to all intents and purposes as if made personally upon the defendant within this State ..." The pleadings indicate that HCB fully complied with this section.
In re-serving the third-party defendants, HCB ensured that it had achieved proper **service** of **process**.

For the reasons set forth herein, third-party defendants' motion to dismiss is DENIED. This decision renders moot HCB's alternative motion to dismiss and it is, therefore, dismissed.

IT IS SO ORDERED.

Del.Super.,1990.
Falcon Steel Co., Inc. v. HCB Contractors
Not Reported in A.2d, 1990 WL 105065 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Westlaw.

Not Reported in A.2d

Page 1

Not Reported in A.2d, 1988 WL 130394 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**H**
Casson    v.    Matt    Slap    Subaru,
Inc.Del.Super.,1988.Only the Westlaw citation is
currently available.
UNPUBLISHED    OPINION.    CHECK    COURT
RULES BEFORE CITING.
Superior Court of Delaware.
Dennis Casson and Eleanor M. CASSON
v.
MATT SLAP SUBARU, INC. and Subaru of
America, Inc.
Nov. 15, 1988.

Plaintiffs' Motion for Reargument-DENIED

James T. McKinstry, Richards, Layton and Finger,
Wilmington.
L. Vincent Ramunno, Ramunno and Ramunno,
Wilmington.

LETTER OPINION
MARTIN, Associate Judge.
**\*1** This is plaintiffs' motion for reargument of
defendant's Subaru of America, Inc. (SOA), motion
to dismiss which this Court granted on July 7, 1988.
FN1

The following evidence supports the Court's
decision; plaintiffs filed a complaint on November
25, 1986 alleging claims for personal injuries, loss
of consortium and loss of personal service.
Plaintiffs notified Matt Slap Subaru Inc. of this
personal injury action and allegedly attempted to
notify SOA. However, plaintiffs failed to notify
SOA, a potential defendant to this action, by return
receipt mail pursuant to 10 *Del.C.* § 3104(d) FN2
before the end of the two year statute of limitations.
After plaintiffs alleged first attempt to notify SOA
was not acknowledged by SOA, plaintiffs failed to
file proof of non receipt upon the Court pursuant to
10 *Del.C.* § **3104(g)** and did not issue a second
notification pursuant to 10 *Del.C.* § 3104(d).
Plaintiffs' failure to follow the procedures of 10

*Del.C.* § 3104 justifies dismissal.FN3

Plaintiffs claim that SOA received actual notice of
the complaint through a subsidiary company two
months prior to the expiration of the statute of
limitations and, this knowledge, even though
imputed, will usually preclude dismissal.FN4

However, the Court points out that Delaware case
law suggests that actual notification through the
defendant's agent does not satisfy the notice
requirement.FN5 Current case law requires proof
of receipt of notice through registered return receipt
mail.FN6

Plaintiffs' further argument that the filing of a
praecipe tolls the statute of limitations pursuant to
10 *Del.C.* § 8119 fails because, plaintiff did not
meet    the,    "prosecute    diligently    without
unreasonable delay", requirement. Plaintiff failed
to render the required notice and resorted to its
amending efforts too late and for these reasons
failed to meet the requirements of 10 *Del.C.* § 8119.

Thus,    for    the    aforementioned    reasons    it    is
ORDERED    that the motion for reargument is
DENIED.

IT IS SO ORDERED.

> FN1. *Dennis Casson and Eleanor M.*
> *Casson v. Matt Slap Subaru, Inc. &*
> *Subaru of America, Inc.,* Del.Super., C.A.
> No. 86C-NO-163, Martin Judge (July 7,
> 1988).
>
> FN2. 10 *Del.C.* § 3104(d) requires the
> plaintiff to make service of process upon
> the Secretary of the State. After a return
> of process is filed plaintiff then has seven
> days to send notification by registered mail
> to the non resident defendant.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 2

Not Reported in A.2d, 1988 WL 130394 (Del.Super.)
**(Cite as: Not Reported in A.2d)**


      FN3. *Purnell v. Dodman,* Del.Super., 297 A.2d 391, (1972). *See also Matt Slap supra,* at 2.

      FN4. *Darries, et al. v. Caldwell,* (USCC 3rd) C.A. No. 80-0542, 1093 (J. Weis).

      FN5. *Matt Slap, supra* at 2.

      FN6. *Id.*
Del.Super.,1988.
Casson v. Matt Slap Subaru, Inc.
Not Reported in A.2d, 1988 WL 130394 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 1988 WL 77761 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 1

**H**

Casson     v.     Matt     Slap     Subaru,
Inc.Del.Super.,1988.Only the Westlaw citation is
currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
Dennis CASSON and Eleanor M. Casson
v.
MATT SLAP SUBARU, INC. & Subaru of
America, Inc.
July 7, 1988.

James T. McKinstry, Richards, Layton & Finger,
Wilmington.
L. Vincent Ramunno, Ramunno & Ramunno,
Wilmington.
MARTIN, Associate Judge.
*1 This is the Court's decision on the motion to
dismiss by defendant Subaru of America, ("SOA").

The motion to dismiss is granted for the following
reasons. First, the plaintiff made ineffective
service of process upon SOA, a foreign corporation,
under 10 *Del.C.* § 3104 and Del.Super.Ct.C.P.R.
4(h). Second, the filing of the praecipe under
Del.Super.Ct.C.P.R. 4(a), specifying the procedures
for filing an alias summons, does not toll the
running of the statute of limitations.

The facts of the case are as follows. On July 10,
1987 SOA, a foreign corporation, filed a motion to
dismiss the complaint, (the "Motion"). The parties
argued before the Superior Court on August 4,
1987. They addressed two bases for dismissal.
The first argument was improper service of process
pursuant to § 3104. Secondly, SOA argued that the
statute of limitations barred the plaintiffs' claim. At
the conclusion of the hearing the Court ordered
briefing on the motion.

The complaint was filed on November 25, 1986. It
alleged claims for personal injuries, loss of

consortium, and loss of personal services. The
accident occurred on March 25, 1985. A first
summons for SOA, (the "First Summons"), was
served pursuant to 10 *Del.C.* § 3104 on the
Secretary of State on December 16, 1986. The
return of service for the first summons was filed
with the Superior Court on December 19, 1986.
However, pursuant to § 3104(d), SOA did not
receive notification by registered mailing. The
procedures for filing proof of non-receipt of
notification by the defendant, § **3104(g)**, and a
second notification, § 3104(d), were not followed.
Instead, on April 28, 1987, the plaintiffs filed an "
Alias Praecipe" for an "Alias Summons." An alias
summons was issued on May 21, 1987.

The first issue is whether the service of process was
ineffective because the plaintiff's attorney failed to
follow the procedure under § 3104(d).

The statutory requirements for sending notice under
§ 3104(d) represent a strict jurisdictional
requirement. *Greenly v. Davis,* Del.Super., 486
A.2d 669 (1984). The requirements are that the
plaintiff is to serve process with the Secretary of
State. After a return of process is filed, the plaintiff
has seven (7) days to send notification by registered
mail to the nonresident defendant. In addition, the
plaintiff is to amend the complaint pursuant to Rule
4(h) which proves to the Court that the defendant
was served with process.

The failure to follow this procedure justifies
dismissal. *Purnell v. Dodman,* Del.Super., 297
A.2d 391, (1972). In *Purnell,* the Court found that
service of process was ineffective under § 3112.
The plaintiff in that case sent notice by registered
mail to the last known address. The letter was
returned. The attorney failed to proceed according
to the statute to file proof of non-receipt or send a
second notice. The Court dismissed the action.

In the case at bar, the first jurisdictional notification
requirement which was not met by the plaintiff was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 1988 WL 77761 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

the failure to file proof of non-receipt by the defendant of notification under § **3104(g)** or furnish proof of notification by the defendant under § 3104(f), a return receipt. According to *Purnell,* the Court made clear that the notification procedure of providing proof of non-receipt is mandatory.

The second jurisdictional requirement which was not met by the plaintiff was notification of defendant by registered mail. The defendant's actual notification of the lawsuit by the other defendant does not meet the statutory requirement. The legislature did not intend to let actual notification satisfy the statutory notice requirement. *Swift v. Leasure,* Del.Super., 258 A.2d 428 (1971). Specifically, the case law suggests that actual notification through the defendant's agent does not satisfy the notice requirement. *Purnell,* at 394. In *Purnell,* the plaintiff's contacting of the manager of the defendant's insurance carrier was not sufficient notification. The Court held that the plaintiff had to follow procedures for proof of non-receipt and the sending of a second notice. *Id.,* at 394.

**\*2** In the case at bar, the plaintiff erred in not following the statutory procedure of sending notification to the nonresident defendant by registered mail, not filing proof of non-receipt by the defendant under § **3104(g)**, and not sending a second notification under § 3104(d).

In the case at bar, the second issue is whether the filing of a praecipe tolls the 2 year statute of limitations under § 8119. The filing of a praecipe tolls the statute of limitations where the plaintiff demonstrates a bona fide intent to prosecute the claim diligently without any unreasonable delays. *Webster v. Fern,* Del.Super., No. 83C-OC-50, (1986). This is determined according to a reasonable standard which varies according to the circumstances of the case. *Id.,* at 2.

Therefore, what must be decided is whether the plaintiff demonstrated a reasonable effort to prosecute the defendant SOA under § 3104 despite the fact that the plaintiff did not follow the procedural requirements under § 3104 or follow the procedure for processing an alias praecipe under Rule 4. The teaching of *Webster, supra,* suggests

that the effort was not reasonable.

In that case service of process was not made upon the defendant in his individual capacity, but upon the company in which he was a general partner. Only one praecipe was filed within the two year statutory period. A second praecipe was made a year later. Normally, praecipe must issue within six months according to Rule 4(a). The Court held that the plaintiff did not demonstrate due diligence where the defendant was not individually served and process was served after six months.

In the case at bar, the plaintiff did not serve SOA by registered mail, follow the procedures under § **3104(** g, f) proof of non-receipt or receipt of notification, or mail a second notice under 3104(d). The praecipe was filed one year after filing of the complaint, not coming within the six month requirement. Therefore, according to the teaching of *Webster,* the plaintiff did not make a reasonable effort to prosecute the defendant SOA with due diligence.

Further support for not tolling the statute of limitations is found in a recent Delaware Supreme Court case, *Morris v. Green,* Del.Supr., No. 355 (1984). The Court held that the statute of limitations was not tolled where the plaintiff's attorney did not follow the statutory notice requirements. In that case, a return of service was filed on January 6, 1983 and an alias praecipe was filed on September 26, 1983, not coming within the seven (7) days provision under an analogous statute, 10 *Del.C.* § 3112. The service of process provision under § 3112, governing non-resident operators of motor vehicle, is similar to § 3104 *Greenly v. Davis,* Del.Supr., 486 A.2d 669, 671 (1984). The Court held that the statute of limitations was not tolled.

In conclusion, the motion to dismiss in favor of the defendant SOA is granted for two reasons. First, the plaintiff failed to follow the technical requirements of § 3104. Second, the filing of the praecipe did not toll the running of the statute of limitations because the plaintiff's attorney did not demonstrate that he prosecuted the defendant with due diligence.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 3

Not Reported in A.2d, 1988 WL 77761 (Del.Super.)
**(Cite as: Not Reported in A.2d)**


*3 IT IS SO ORDERED.

Del.Super.,1988.
Casson v. Matt Slap Subaru, Inc.
Not Reported in A.2d, 1988 WL 77761 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.