## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG. PHILIPS LCD CO., LCD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action 06-726-JJF |
| | ) | |
| CHI MEI OPTOELECTRONICS CORPORATION; | ) | DEMAND FOR JURY TRIAL |
| AU OPTRONICS CORPORATION; AU | ) | |
| OPTRONICS CORPORATION AMERICA; | ) | |
| TATUNG COMPANY; TATUNG COMPANY OF | ) | |
| AMERICA, INC.; AND VIEWSONIC | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT VIEWSONIC CORPORATION'S BRIEF
## IN SUPPORT OF ITS MOTION TO STAY AND MOTION TO DISMISS, OR
## IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

STOEL RIVES LLP
John N. Zarian
Matthew D. Thayne
Samia E. McCall
*Pro Hac Vice Applications Pending*
101 S. Capitol Blvd., Suite 1900
Boise, ID 83702
(208) 389-9000
Fax: (208) 389-9040

PEPPER HAMILTON LLP
Edmond D. Johnson (DE Bar # 2257)
Thomas H. Kovach (DE Bar # 3964)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE  19899-1709
P.O. Box 1709
(302) 777-6500
Fax: (302) 421-8390

*Attorneys for Defendant ViewSonic Corporation*

Dated: April 6, 2007

### TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND .................................................................................................2

   A.   The Parties and the Display Products Industry............................................2

   B.   Overview of Litigation by LPL Against ViewSonic .................................3

   C.   Side Mount Patent Litigation.....................................................................4

   D.   Semiconductor Patent Litigation ...............................................................5

   E.   Tape Carrier Package for LCD Patent Litigation ......................................5

   F.   Flat Panel Backplane Patent Litigation .....................................................5

   G.   Flat Panel Rear Mount Patent Litigation ..................................................6

   H.   The Instant Law Suit by LPL ....................................................................6

III.  ALL OF THE CLAIMS AGAINST VIEWSONIC SHOULD BE STAYED IN
      FAVOR OF ACTIONS AGAINST THE REAL PARTIES IN INTEREST .........6

IV.   THE SECOND AND THIRD CLAIMS FOR RELIEF BASED ON U.S.
      PATENT NOS. 5,825,449 AND 4,624,737 SHOULD BE STAYED ...................9

   A.   Prior and Pending Litigation Involving the '449 and '737 Patents ........9

   B.   The Semiconductor Patent Claims ('449 and '737) Should Be Stayed................10

      1.   Legal Standards .................................................................................10

      2.   The Interests of Judicial Economy Demand a Stay ...........................11

V.    THE FIRST CLAIM FOR RELIEF BASED ON U.S. PATENT NO. 5,019,002
      ('002) SHOULD BE STAYED .........................................................................13

   A.   Prior and Pending Litigation Regarding the '002 Patent.........................13

   B.   The Backplane Patent Claim Should Be Stayed As Well .......................13

      1.   Legal Standards .................................................................................14

      2.   A Stay of the Backplane Patent Claim Would Also Serve the Interests of
           Justice and Efficiency.......................................................................14

VI.   UNDER THE CIRCUMSTANCES, GIVEN THE PENDENCY OF RELATED
      CASES, LPL'S CONCLUSORY AND BOILERPLATE COMPLAINT DOES
      NOT ALLOW VIEWSONIC TO PREPARE A MEANINGFUL RESPONSE...15

   A.   LPL's Infringement Claims Should be Dismissed Under Rule 12(b)(6) ..............15

      1.   Legal Standards .................................................................................15

      2.   LPL Fails to State a Claim Under 35 U.S.C. § 271(a) ......................17

      3.   LPL Also Fails to State a Claim Under 35 U.S.C. § 271(b)..............19

   B.   Alternatively, a More Definite Statement Should be Required..............20

VII.  CONCLUSION ................................................................................................22

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aro Manufacturing Co. v. Convertible Top Replacement Co.*,
377 U.S. 476 (1964) ...............................................................................8

*Campbell v. City of San Antonio*,
43 F.3d 973 (5th Cir. 1995) ....................................................................16

*Catapano v. Wyeth Ayerst Pharmaceuticals, Inc.*,
88 F. Supp. 2d 27 (E.D.N.Y. 2000) .........................................................20

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ...............................................................................11

*Conley v. Gibson*,
355 U.S. 41 (1957) ............................................................................16, 18

*Corning Glass Works*,
204 U.S.P.Q. 436 (Ct. Cl. 1979)..............................................................11

*DM Research, Inc. v. Coll. of Am. Pathologists*,
170 F.3d 53 (1st Cir. 1999).....................................................................16

*DSU Medical Corp. v. JMS Co., Ltd.*,
471 F.3d 1293 (Fed. Cir. 2006) .........................................................19, 20

*Gen-Probe, Inc. v. Amoco Corp.*,
926 F. Supp. 948 (S.D. Cal. 1996) .....................................................18, 20

*Grid Sys. Corp. v. Texas Instruments Inc.*,
771 F. Supp. 1033 (N.D. Cal. 1991)........................................................16

*Judin v. United States*,
110 F.3d 780 (Fed. Cir. 1997) ...........................................................17, 19

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990) ................................................................7

*Landis v. North American Co.*,
299 U.S. 248 (1936) ...............................................................................10

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
360 F.3d 1295 (Fed. Cir. 2004) ........................................................17, 19

*Register v. PNC Financial Services Group, Inc.*,
   477 F.3d 56 (3d Cir. 2007) ........................................................................15

*Ricoh Co. v. Aeroflex Inc.*,
   279 F. Supp. 2d 554 (D. Del. 2003) .............................................................7

*Salomon S.A. v. Scott USA Ltd. Partnership*,
   117 F.R.D. 320 (D. Mass. 1987) ................................................................15

*Semmes Motors, Inc. v. Ford Motor Co.*,
   429 F.2d 1197 (2d Cir. 1970) ....................................................................11

*Wang Laboratories, Inc. v. Oki Electric Industry Co., Ltd.*,
   15 F. Supp. 2d 166 (D. Mass. 1998)..........................................................12

*Zuk v. Eastern Penn. Psychiatric Institute of the Med. College of Penn.*,
   103 F.3d 294 (3d Cir. 1996) ......................................................................16

## STATE CASES

*Agilent Techs., Inc. v. Micromuse, Inc.*,
   No. 04 Civ. 3090 (RWS), 2004 WL 2346152 (S.D.N.Y., Oct. 19, 2004)..................20, 21

*JVW Enterprises, Inc. v. Amazon.com, Inc.*,
   2004 WL 1737173 (W.D.N.Y) ..................................................................14

*Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*,
   No. 3:05-CV-123-J-33MCR, 2006 WL 2523137 (M.D. Fla., Aug. 30,
   2006).........................................................................................................11

*Ondeo Nalco Co. v. EKA Chemicals, Inc., No. Civ. A. 01-537-SLR*,
   2002 WL 1458853 (D. Del., June 10, 2002) ..............................................18

*In re Papst Licensing GmbH Patent Litig., Nos. CIV. A. MDL 1298, CIV. A.99-*
*3118*, 2001 WL 179926 (E.D. La., Feb. 22, 2001)...........................................21

*See eSoft, Inc. v. Astaro Corp.*,
   Civil Case No. 06-CV-00441-REB-MEH, 2006 WL 2164454 (D. Colo.,
   July 31, 2006) ...........................................................................................21

## STATUTES

Fed. R. Civ. P. 11...............................................................................16, 17, 19

Fed. R. Civ. P. 12(b)(6)  ....................................................................2, 15, 22

Fed. R. Civ. P. 12(e) ...............................................................................................20, 22

Fed. R. Civ. P. 21 ...........................................................................................................15

35 U.S.C. § 271(a) ..........................................................................................................17

35 U.S.C. § 271(b) ..........................................................................................................19

## MISCELLANEOUS

David F. Herr, Annotated Manual for Complex Litigation, § 33.63 (3d ed. 2003) .......................7

2 Moore's Federal Practice § 12.34[1][b] (3d ed. 2006) .............................................................15

## I.    INTRODUCTION

LG.Philips LCD Co., Ltd. ("LPL") is apparently engaged in a pattern of vexatious litigation designed to disrupt the business of ViewSonic Corporation ("ViewSonic") by subjecting it to an onslaught of cases and claims in multiple jurisdictions, many of them involving the very same patents and overlapping defendants.  Evidently, LPL's tactics are aimed at maximizing the burden of litigation on ViewSonic, which is a reseller of display products.  In the process, LPL is unnecessarily taxing the federal court system.

As explained below, each of the three patents at issue in this case is the subject of prior actions filed by LPL against ViewSonic and other defendants named in this case, and a number of these prior actions are still pending.  Two of the prior actions involving these patents were tried to verdict in 2006 (one before this Court), and both of those cases are expected to be appealed (by one side or the other) after the issues raised in post-trial motions are decided.  At least four additional actions involving these patents are still pending as part of pre-trial proceedings pending in the Central District of California.

Consequently, the validity of the three patents-in-suit and the construction of their claims—involving highly complex issues requiring copious amounts of time and effort to resolve—are currently being considered, independently, in other pending cases.

There is no good reason, under the circumstances, to proceed with the claims in this case while substantially overlapping efforts are expended in other cases—particularly since a final ruling from the Court of the Appeals for the Federal Circuit could render all such efforts moot.  In the interests of judicial economy, and to prevent an unjustified burden on this Court, each of the pending claims against ViewSonic should be stayed.

In any event, a stay of this proceeding as to ViewSonic is appropriate pending disposition of any claims against the manufacturer defendants, who are far better situated

to litigate and defend against any charges of patent infringement. As a mere reseller, ViewSonic has no technical information concerning the design or manufacture of any accused products. Its active participation in the action at this stage is unwarranted.

In addition, or alternatively, the pending claims against ViewSonic should be dismissed pursuant to Rule 12(b)(6). The complaint filed by LPL is so lacking in substance that ViewSonic lacks sufficient information to provide a meaningful response. Indeed, the complaint fails to list a single product accused of infringement. In this case, the need for such information is heightened by the pendency of other claims involving the same patents at issue here. As filed, though, LPL's complaint does not give ViewSonic any basis upon which to determine the true nature and extent of the claims asserted, or the degree to which these claims overlap with claims asserted in other pending cases.

Perhaps LPL is stretched so thin by its succession of lawsuits against ViewSonic, and others, that it does not have the time to conduct a proper pre-filing infringement investigation. Alternatively, LPL may not be willing to share the results of its investigation with ViewSonic. Either way, LPL should not be permitted improperly to shift the burden of conducting an infringement investigation to ViewSonic.

At the very least, LPL should be required to provide a more definite statement with respect to its infringement claims, so as to allow ViewSonic adequately to respond to LPL's complaint and mount a defense to the claims asserted by LPL in this action.

Thus, ViewSonic respectfully requests that the Court grant the instant motion.

## II.     BACKGROUND

### A.     The Parties and the Display Products Industry

ViewSonic is a global provider of display products. The company markets and supports a broad range of products including liquid crystal display ("LCD") monitors,

LCD monitors incorporating thin film transistor ("TFT") technology, LCD televisions, projectors, digital signage, and cathode ray tube ("CRT") monitors.

The product supply chains in the industry include manufacturers and suppliers, integrators and assemblers, original equipment manufacturers ("OEMs"), resellers and sellers of branded products. Companies may act in various capacities. For example, a company may ship products from in-house factories, act as an integrator, and/or outsource its manufacturing entirely, depending on the application and product involved.

Competition in the display products industry is fierce, particularly between Korean and Taiwanese suppliers. For example, according to a recent industry report, in the large-area TFT LCD segment of this market, Korean suppliers account for 53 percent of notebook PC panel shipments, Taiwanese suppliers account for 58 percent of LCD monitor panel shipments, and Korean suppliers account for 54 percent of LCD TV module shipments. These approximate figures tend to vary from quarter to quarter.

Plaintiff LG is one of the two leading Korean suppliers of display products. Defendants Chi Mei Optoelectronics Corporation ("CMO") and AU Optronics Corporation ("AUO") are two of the three leading Taiwanese suppliers of display products. The third leading Taiwanese supplier is Chunghwa Picture Tubes, Ltd. ("CPT"), a subsidiary of defendant Tatung Company ("Tatung") and affiliate of defendant Tatung Company of America, Inc. ("Tatung America").

**B.    Overview of Litigation by LPL Against ViewSonic**

This is not the first time LPL has asserted patent infringement claims against ViewSonic. Over the past five years, LPL has filed a succession of suits—in California, Delaware, and the United Kingdom—alleging patent infringement against ViewSonic and others, including the three leading Taiwanese suppliers: CPT, CMO and AUO.

LPL has sued ViewSonic in five cases filed in three jurisdictions, alleging infringement of nine patents. LPL's claims concerning six of those patents have been dismissed under circumstances suggesting they had virtually no merit. ViewSonic is still defending itself in four separate actions filed by LPL, including this case. Significantly, two of the other three actions involve the *same* three patents at issue here.

In the Central District of California, ViewSonic is defending against claims involving U.S. Patent Nos. 5,825,449 (the "'449 Patent") and 4,624,737 (the "'737 Patent"), both at issue in this case. Claims involving the '449 Patent and '737 Patent are also being asserted by LPL in that same court (against defendants other than ViewSonic) in four related cases, one of which is in post-trial proceedings. (*See* Declaration of Edmond D. Johnson in Support of Motion to Stay ("Johnson Decl."), ¶¶2-6.)

In this very Court, ViewSonic is defending against infringement claims involving U.S. Patent No. 5,019,002 (the "'002 Patent"), at issue here. The prior case involving the '002 Patent is currently the subject of post-trial motions. (Johnson Decl., ¶11.)

The prior claims asserted by LPL against ViewSonic and other defendants are briefly summarized below, organized by the type of technology involved.

### C.    Side Mount Patent Litigation

In California, LPL has asserted patent infringement claims based on certain "side mount" technology. These claims, asserted in five different cases, involved four U.S. patents, Nos. 5,926,237, 6,002,457, 6,373,537, and 6,020,942. (Johnson Decl., ¶¶2-6.) All of the side mount patent infringement claims have been dismissed due to lack of standing. More particularly, the Hon. Consuelo B. Marshall ruled that LPL assigned away its rights to each of the four side mount patents *prior* to bringing suit, and that LPL therefore lacked any standing to assert claims under those patents. (Johnson Decl., ¶11.)

### D.     Semiconductor Patent Litigation

Also in the five California cases, LPL asserted claims involving semiconductor technology.  These claims alleged infringement of the '449 and '737 Patent, both at issue here.  (*See* Johnson Decl., ¶¶2-6.)  Last year, LPL obtained a verdict in the lead case, but that case did not include ViewSonic as a defendant.  (*See* id., ¶9.)  Post-trial motions are pending, and an appeal of any judgment is anticipated, from one side or the other.  The four trailing cases are still pending, including a case naming ViewSonic as a defendant and asserting claims under the '449 and '737 Patents.  (Id., ¶¶2-6.)

### E.     Tape Carrier Package for LCD Patent Litigation

In a case that is the subject of post-trial motions before this Court (No. 05-00292), LPL originally asserted claims relating to tape carrier packaging for LCDs involving U.S. Patent No. 6,738,121 (the "'121 Patent").  (*See* Johnson Decl., ¶11.)  These claims were withdrawn before trial, however, under circumstances that shed light on LPL's litigation tactics.  Upon being notified that the '121 Patent was likely invalid due to an on-sale bar, LPL refused to provide critical documents in its possession relevant to this defense.

After being ordered by the Court either to provide the documents or withdraw its claim under the '121 Patent, LPL finally relented and agreed to dismiss its claim.  Even so, months of time and effort had been wasted by defendants (and the Court) as a result of LPL's assertion of the invalid '121 Patent and stonewalling discovery tactics.

### F.     Flat Panel Backplane Patent Litigation

In the foregoing case (No. 05-00292), LPL also asserted claims involving certain flat panel backplane technology.  These claims relate to the '002 Patent, at issue in the instant case.  (*See* Johnson Decl., ¶11.)  Last year, LPL obtained a verdict with respect to its '002 Patent infringement claims, but it is understood the underlying damages are not

to be assessed against ViewSonic. As in California, post-trial motions are pending in this case, and an appeal of any judgment is anticipated, from one side or the other.

### G.    Flat Panel Rear Mount Patent Litigation

LG has also filed at least one legal action against ViewSonic in the United Kingdom. The U.K. case, involving flat panel rear mount technology, asserted claims involving U.K. Patent No. 2,346,464 (the "UK '464 Patent"). The U.K. claims were dismissed in their entirety. In a 33-page opinion, the Patents County Court held that the U.K. '464 Patent was invalid *and* not infringed. (*See* Johnson Decl., ¶13.)

Evidently, LPL continues to pursue related claims in a separate case pending before this Court (No. 04-00343), involving U.S. Patent Nos. 6,498,718 and 6,501,641, counterparts to the U.K. '464 Patent. This case, which is distinct from No. 05-00292, names ViewSonic and others as defendants. (*See* Johnson Decl., ¶10.)

### H.    The Instant Law Suit by LPL

The instant action asserts additional infringement claims against ViewSonic involving the '449 Patent, the '737 Patent, and the '002 Patent. Accordingly, semiconductor and flat panel backplane technologies are both at issue in this case.

## III.    ALL OF THE CLAIMS AGAINST VIEWSONIC SHOULD BE STAYED IN FAVOR OF ACTIONS AGAINST THE REAL PARTIES IN INTEREST

In patent infringement cases, stays of actions against product resellers in favor of actions against product manufacturers have been consistently recognized as an appropriate exercise of judicial control over the efficient administration of justice.

As stated in the Manual for Complex Litigation:

> It is common practice to stay all pending [patent] litigation except the first suit between the patent owner and a manufacturer or a higher level supplier. Later suits against customer are routinely stayed, and a declaratory judgment

> suit by the manufacturer of the claimed infringing product
> is preferred over even an earlier filed suit by the patent
> owner against a customer.

David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION, § 33.63 (3d ed. 2003);

*see also Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990) (stay of

customer suit because "litigation against or brought by the manufacturer of infringing

goods takes precedence over a suit by the patent owner against customers of the

manufacturer"); *Ricoh Co. v. Aeroflex Inc.,* 279 F. Supp. 2d 554, 557 (D. Del. 2003)

(transfer of first filed suit granted because manufacturer's suit with patentee "should be

given preference over a patentee's suit against the manufacturer's customers when those

customers are being sued for their ordinary use of the manufacturer's products").

In *Katz,* explaining why resolving a declaratory judgment action brought by a

manufacturer of infringing goods should take precedence over a pre-existing suit brought

by a patent owner against customers of the manufacturer, the Federal Circuit noted:

> [I]n reality, the manufacturer is the true defendant in the
> customer suit.... it is a simple fact of life that a manufacturer
> must protect its customers, either as a matter of contract, or
> good business, or in order to avoid the damaging impact of
> an adverse ruling against its products.

*Katz,* 909 F.2d at 1464 (citation omitted).

The manufacturer of an allegedly infringing product not only has more at stake,

but is also better situated than its customers to contest the validity and infringement of an

asserted patent because it has intimate knowledge of the design, operation, and use of its

products and the prior art.

In this case, compelling considerations support the application, as to ViewSonic,

of the judicial preference for resolving a patent claim against a manufacturer over claims

against its customers.  In fact, ViewSonic does not design or manufacture products.  Its presence in this action, therefore, can only be as a customer/reseller of products purchased from, and manufactured by, other entities.  Given this secondary role in any alleged infringement, ViewSonic should not be burdened with the unnecessary inconvenience, effort, and expense of day-to-day- litigation.  Rather than harassing the customer, ViewSonic, to exert improper pressure on those higher in the supply chain, LPL should be required simply to litigate the merits of its dispute against those entities in the best position to have the requisite knowledge and information for investigating and responding to LPL's infringement allegations.

Since ViewSonic is nothing more than a reseller of allegedly infringing products, it adds nothing to the products it sells that would cause an otherwise non-infringing product to meet the claim limitations of any of the patents-in-suit.  Furthermore, ViewSonic is not privy to its suppliers' and manufacturers' proprietary and confidential information, which will almost certainly be needed to adjudicate LPL's claims.

In addition, LPL can recover only once for each product that is held to infringe. Therefore, if LPL succeeds on its alleged infringement claims against the manufacturers of any accused products identified in this case, LPL will be precluded from collecting any actual damages from ViewSonic for allegedly contributing to the same infringement.  *See Aro Manufacturing Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 500-01 (1964) ("[A]fter a patentee has collected . . . damages sufficient to put him in the position he would have occupied had there been no infringement, he cannot thereafter collect actual damages from a person liable only for contributing to the same infringement.").

-8-

Likewise, to the extent LPL is able to shut down the manufacturer(s), ViewSonic's supply of product will be cut off, effectively operating as an injunction as to ViewSonic.

Granting a stay of the proceedings against ViewSonic would allow the real parties in interest to efficiently and directly resolve LPL's claims without the unnecessary waste of resources for the parties and the Court (in managing the suit with respect to ViewSonic). Under the circumstances, ViewSonic's presence in this action will only add needless expense and complication. Indeed, discovery aimed at ViewSonic will not add significant information and, at best, will provide duplicative information concerning the allegedly infringing product(s).

Thus, ViewSonic submits, considerations of judicial economy and fairness weigh heavily in favor of granting a stay of these proceedings as to ViewSonic.

## IV.    THE SECOND AND THIRD CLAIMS FOR RELIEF BASED ON U.S. PATENT NOS. 5,825,449 AND 4,624,737 SHOULD BE STAYED

Not only should these proceedings be stayed as to ViewSonic but, as set forth in Sections IV and V, each of LPL's claims should be stayed to avoid duplicative litigation.

### A.    Prior and Pending Litigation Involving the '449 and '737 Patents

The '449 Patent and the '737 Patent (the "Semiconductor Patents") are currently the subject of multiple lawsuits in California, involving many of the same defendants sued in this case. (Johnson Decl., ¶¶2-6.) The Semiconductor Patents are each asserted against ViewSonic in a case pending in the Central District of California (No. 03-2886) (the "California ViewSonic Case"). (Johnson Decl., ¶6.) These two patents are also asserted against Tatung and Tatung America (collectively, the "Tatung Group"), in a lead case (No. 02-6775) which is now the subject of post-trial motions (the "California Tatung Case"). (Johnson Decl., ¶2.) The California ViewSonic Case and the California Tatung

Case, together with three other California cases, were consolidated for purposes of discovery and pre-trial proceedings. Only the lead case has proceeded to trial.

As to the lead California Tatung Case, the validity of one or more claims of the Semiconductor Patents is at issue in pending post-trial motions, and the validity of the Semiconductor Patents is expected to be an issue on appeal. The construction of one or more claims of the Semiconductor Patents is likewise expected to be an issue on appeal.

As to the four trailing cases in California involving the Semiconductor Patents – including the California ViewSonic Case– it remains that these cases could potentially resume following post-trial proceedings and appeals filed in the California Tatung Case, subject, of course, to limitations on any double recovery of damages.

Unfortunately, the nature and extent of overlap in the claims asserted in these various cases are impossible to determine (but appears to be significant), because LPL's complaint in this case fails even to hint at the products LPL believes may infringe its patents – even though the Semiconductor Patents and ViewSonic's products have been the subject of extensive discovery and litigation over a period of several years.

At a minimum, it is evident that two patents (the '449 and '737 Patents) and three defendants (ViewSonic, Tatung and Tatung America) are common to both this case, on the one hand, and the previously discussed California cases, on the other hand.

### B.    The Semiconductor Patent Claims ('449 and '737) Should Be Stayed

In the interests of judicial economy, the claims involving the Semiconductor Patents should be stayed pending final resolution of the cases pending in California.

### 1.    Legal Standards

The power to stay a case is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). Furthermore, when overlapping actions are pending in separate federal district courts, "the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

When two separate actions involving the same patent are pending, in particular, courts have held that the only way to avoid duplicative litigation is by staying one of the actions. *See Corning Glass Works*, 204 U.S.P.Q. 436, 436 (Ct. Cl. 1979) (granting stay due to same patents being litigated in another action "to further the interest of judicial economy and to avoid duplicative discovery hearings"); *Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*, No. 3:05-CV-123-J-33MCR, 2006 WL 2523137 (M.D. Fla., Aug. 30, 2006) (granting stay due to same patents being litigated in another district court).

## 2.    The Interests of Judicial Economy Demand a Stay

Burdening two separate district courts simultaneously with complex actions raising identical and/or closely related issues between many of the same parties would be unwise and is unnecessary. As one appellate court observed:

> Courts already heavily burdened with litigation with which they must of necessity deal should ... not be called upon to duplicate each other's work in cases involving the same issues and the same parties. Hence, . . . the instances where the second court should go forward despite the protests of a party to the first action where full justice can be done, should be rare indeed.

*Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1203 (2d Cir. 1970) (internal quotation marks and citation omitted; first ellipsis in original).

If this case is allowed to proceed as to the '449 and '737 Patents, then the parties and the Court will surely turn their efforts to completing fact discovery, preparing for and holding a hearing to construe the patent claims, completing expert discovery, and

addressing motions for summary judgment. However, to the extent an appeal from the California Tatung Case—which involves *both* of the Semiconductor Patents at issue here—invalidates one or more of the claims from the '449 or '737 Patents, those claims will no longer be at issue in this litigation. Thus, absent a stay, much or all of the time and effort expended by the parties and the Court in this case may have been in vain.

Furthermore, even if the validity of both patents is upheld on appeal, any claim construction provided by the Court of Appeals for the Federal Circuit would be binding on this Court and could relieve the parties and Court of much of the massive time and expense required to establish construction of the claims of a patent. *See Wang Laboratories, Inc. v. Oki Electric Industry Co., Ltd.*, 15 F. Supp. 2d 166, 175-76 (D. Mass. 1998) (indicating that the court was obligated to accept a claim construction offered by the Federal Circuit from an appeal in another case involving the same patents).

Thus, the proceedings in the California Tatung Case (and the trailing California cases) are likely to narrow or otherwise impact significantly the issues for discovery and any trial in this case. Even if LPL asserts that "different" claims are at issue, any claim construction by the Federal Circuit is likely to shed light on an appropriate construction in this case, because the very same patents are involved. Claim construction, in turn, will affect discovery, expert opinions, and the issues for summary judgment and trial .

Regardless of the outcome of the California Tatung Case, the California ViewSonic Case—which involves the same plaintiff suing the same defendant over two of the same patents at issue here—may proceed to resolve issues that would at least narrow the scope of this action. It is difficult to imagine that a case with such extensive overlap among parties and patents would *not* narrow or otherwise impact the issues here.

In sum, the Semiconductor Patent claims asserted in LPL's Second and Third Claims for Relief should be stayed pending a full resolution of the pending actions in California involving the same patents and many of the same parties.

## V.    THE FIRST CLAIM FOR RELIEF BASED ON U.S. PATENT NO. 5,019,002 SHOULD BE STAYED AS WELL

### A.    Prior and Pending Litigation Regarding the '002 Patent

Like the Semiconductor Patents, the '002 Patent (the "Backplane Patent") has been the subject of other lawsuits. As previously noted, a prior case (No. 05-292) involving the Backplane Patent was filed by LPL in this very district against several of the same defendants (the "First Backplane Case"). This First Backplane Case was tried last year and is currently the subject of post-trial motions. (Johnson Decl., ¶¶11-12.) The validity of one or more of the claims in the Backplane Patent is an issue in post-trial motions. Furthermore, it is anticipated that the validity and interpretation of certain claims will likely be an issue in any appeal taken with respect to the First Backplane Case, whether by LPL or by one or more of the defendants.

### B.    The Backplane Patent Claim ('002) Should Be Stayed

The Backplane Patent claim in this case (the First Claim for Relief) involves issues that are still being addressed by this Court in the related First Backplane Case, and may be the subject of an appeal by LPL or one or more of the defendants. To the extent the instant case proceeds concurrently with any such appeal, the parties and the Court may be forced one day to revisit much of their work in this case. Therefore, the Backplane Patent claim should be stayed pending resolution of post-trial proceedings and any appeal in the related First Backplane Case involving the very same patent.

1.    **Legal Standards**

In the context of patent infringement cases, stays or dismissals may be granted due to an appeal pending in another action involving the same patent. *See, e.g., JVW Enterprises, Inc. v. Amazon.com, Inc.*, No. 03-CV-6221 (CJS), 2004 WL 1737173 (W.D.N.Y, Aug. 2, 2004) (granting dismissal rather than a stay of a patent infringement action due to an appeal pending in another action involving the same patent).

2.    **A Stay of the Backplane Patent Claim Would Also Serve the Interests of Justice and Efficiency**

The Backplane Patent was previously asserted by LPL against ViewSonic in the First Backplane Case. The validity of the patent and the interpretation of its claims are both issues in post-trial proceedings, and will almost certainly be an issue in any appeal that may be taken in the case. To the extent a ruling on the post-trial motions or on any appeal in the First Backplane case renders one of more of the claims in the Backplane Patent invalid, any and all efforts expended in *this* action will have been for naught. Similarly, even if the Backplane Patent is not invalidated on appeal, any claim construction issues determined by the appellate court will be available for this Court, and will almost certainly reduce the complexity and length of this litigation, along with the burden on this Court. With the record of those proceedings available, the issues, defenses, and evidence will be more clearly focused. Moreover, the certainty provided by the outcome of an appeal may encourage a settlement rather than litigation.

Thus, the granting of a stay with respect to the Backplane Patent claims asserted by LPL in the First Claim for Relief—pending full resolution of the First Backplane Case—will avoid duplicative efforts and waste, for both the parties and the Court. Under the circumstances, ViewSonic submits, the First Claim for Relief should be stayed.

Of course, to the extent the Court determines that one or more of the pending claims for relief should be stayed independently of the rest of the case, it has discretion to sever such claim(s), pursuant to Rule 21, and stay them apart from the other claims. *See Salomon S.A. v. Scott USA Ltd. Partnership*, 117 F.R.D. 320, 321 (D. Mass. 1987) ("In my opinion, each counterclaim alleging infringement of a patent should be tried in the case in which the validity of the patent will be tested. Accordingly, so much of the counterclaim as relates to U.S. Patent Nos. 3,885,329, 4,062,133 and 4,284,273 is SEVERED and STAYED pending disposition of these claims in the several cases to which they relate."). Thus, and for example, this Court has discretion to sever and stay the Second and Third Claims for Relief independently of the First Claim for Relief.

## VI. UNDER THE CIRCUMSTANCES, GIVEN THE PENDENCY OF RELATED CASES, LPL'S CONCLUSORY AND BOILERPLATE COMPLAINT DOES NOT ALLOW VIEWSONIC TO PREPARE A MEANINGFUL RESPONSE

### A. LPL's Infringement Claims Should be Dismissed Under Rule 12(b)(6)

#### 1. Legal Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of claims for "failure to state a claim upon which relief can be granted." To be sure, in deciding a such a motion, all well-pleaded allegations in the complaint must be accepted as true, and must be viewed in the light most favorable to the plaintiff. *Register v. PNC Financial Services Group, Inc.*, 477 F.3d 56, 61 (3d Cir. 2007).

However, conclusory legal allegations veiled in the form of factual allegations need not be accepted as true. *See* James Wm. Moore, 2 MOORE'S FEDERAL PRACTICE § 12.34[1][b], at 12-61 to 12-63 (3d ed. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to

dismiss.") (internal quotation marks and citations omitted); *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) ("Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.").

Likewise, a court is not required to "conjure up unpled allegations" to save a complaint from dismissal. *See Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal quotations marks and citation omitted).

Moreover, although liberal, the notice pleading standard still requires that a complaint provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). More particularly, notice pleading "should provide the defendant with a basis for assessing the initial strength of the plaintiff's claim, for preserving relevant evidence, for identifying any related counter-or-cross claims, and for preparing an appropriate answer." *Grid Sys. Corp. v. Texas Instruments Inc.*, 771 F. Supp. 1033, 1037 (N.D. Cal. 1991).

The prohibition against conclusory, boilerplate pleading is reinforced by the requirements of Rule 11 of the Federal Rules of Civil Procedure. *See Zuk v. Eastern Penn. Psychiatric Institute of the Med. College of Penn.*, 103 F.3d 294, 299 (3d Cir. 1996) (quoting Fed. R. Civ. P. 11, Notes of Advisory Committee to 1993 Amendment) ("Tolerance of factual contentions in initial pleadings ... when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to ... make claims ... without any factual basis or justification.") (further

noting that "discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it").

In the context of patent infringement litigation, Rule 11 requires, at a minimum, "that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004).

Indeed, obtaining a sample of the accused infringing product(s) is often a key factor in determining the reasonableness of a pre-filing investigation. For example, in *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997), the Federal Circuit seized on the fact that the plaintiff had failed to obtain a sample of the accused device in order to perform an infringement analysis prior to filing. Instead, the plaintiff's attorney simply had relied on his client's statements regarding observations of the accused product from a distance. *Id.* Because there was no adequate explanation given for the plaintiff's failure to obtain the accused product in order to compare the device with the patent claims, the court held that sanctions were, in fact, appropriate. *Id.*

### 2.    LPL Fails to State a Claim Under 35 U.S.C. § 271(a)

Here, LPL's complaint contains only vague and conclusory references to "products that are made by a method that infringes one or more claims" of the asserted patents. There is not a single brand name, product number, or other indicator that ViewSonic can look to in determining how and what to investigate with respect to the alleged infringement, so as to respond to LPL's complaint. LPL's bald assertions fall well short of even the relatively liberal standards of notice pleading, and fail to state a claim for patent infringement under 35 U.S.C. § 271(a).

The Federal Rules require, at a minimum, that a defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47 (1957). Accordingly, in *Ondeo Nalco Co. v. EKA Chemicals, Inc.*, No. Civ. A. 01-537-SLR, 2002 WL 1458853, at *1 (D. Del., June 10, 2002), even though the patentee had referenced one specific product by product number, the court held that the patent claims were "too vague to provide plaintiff with fair notice of which products are accused of infringing defendant's patents."

If providing one example of an infringing product is insufficient to provide fair notice, then LPL's vague and generic reference to "products" – without a single concrete example – surely cannot be found to be sufficient. LPL's complaint fails to provide *any* guidance whatsoever to give ViewSonic fair notice of which products are being accused of infringement. LPL's most recent complaint is in stark contrast to previous pleadings in which one or more products were invariably identified.

Other courts are in accord that a claim for patent infringement must provide meaningful notice to a defendant as to which *products* it will be defending in the action. For example, in *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 960 (S.D. Cal. 1996), the plaintiff's infringement claims contained only a vague reference to "products and/or kits." The court found that, due to the fact that the complaint was "devoid of any reference to infringing products," the plaintiff had "fail[ed] to provide fair notice of the grounds of the various claims." *Id.* at 961-62. As such, these claims were dismissed for failing to state a claim.

In this case, LPL's boilerplate claims are so entirely conclusory that ViewSonic is simply unable to formulate a meaningful answer. ViewSonic should not be required to

thoroughly examine each of its many products to determine which individual products *might* be at issue in this case. Indeed, the Federal Circuit has made it clear that a defendant should not be forced to mount a defense in response to a plaintiff's fishing expedition for potentially infringing products: "Defendants have no choice when served with a complaint if they wish to avoid a default. They must undertake a defense, and that necessarily involves costs. Rule 11 prohibits imposing those costs upon a defendant absent a basis, well-grounded in fact, for bringing the suit." *Judin*, 110 F.3d at 784.

If LPL has fulfilled its duty to conduct an adequate pre-filing investigation, then it should already be aware of the ViewSonic products it believes may be infringing. On the other hand, if LG has failed to obtain the products as to which it is alleging infringement in this case and to compare those products with the claims of its patents *before* filing a complaint, then LPL has violated Rule 11. *See Q-Pharma*, 360 F.3d at 1300-01 (stating that Rule 11 obligates an attorney to "interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement").

### 3.    LPL Also Fails to State a Claim Under 35 U.S.C. § 271(b)

LPL's Complaint also contains a vague and conclusory reference to inducement of infringement, alleging, as to each Count of the Complaint, that "[d]efendants have infringed, and/or induced infringement."

To prove inducement of infringement under 35 U.S.C. § 271(b), the plaintiff must establish that "the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (internal quotation marks and citations omitted). The intent prong requires more than intent to perform the inducing acts. Instead, "specific intent to encourage another's infringement" is required. *Id.*, at

1306 (citation omitted).    Thus, inducement requires proof of "culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.*

A complaint that fails to plead the specific intent required for inducement fails to state a claim for inducement.  *See Gen-Probe*, 926 F. Supp. at 954 (dismissing inducement claim for failure to adequately plead specific intent); *Catapano v. Wyeth Ayerst Pharmaceuticals, Inc.*, 88 F. Supp. 2d 27, 30 (E.D.N.Y. 2000) ("Even the broadest reading of the complaint alleges nothing more than the Defendants' mere knowledge that doctors and hospitals are infringing on his patent.  Consequently, [plaintiff] has failed to state a claim for inducement to infringe under § 271(b).").

As in the case of LPL's boilerplate allegations concerning any direct infringement, LPL wholly fails to provide adequate notice of any "inducement of infringement" claims.  LPL's complaint does not even attempt to plead specific intent or allege facts that could be construed to support an allegation of specific intent, even under the most liberal of pleading standards.

Accordingly, LPL also fails to state a claim for inducement of infringement.

### B.    Alternatively, a More Definite Statement Should be Required

A motion for a more definite statement is properly granted when a complaint is so vague or ambiguous that the defendant is unable to provide a meaningful responsive pleading.  Fed. R. Civ. P. 12(e).  In the context of patent infringement actions, courts often grant motions under Rule 12(e) when a plaintiff "fail[s] to identify any allegedly infringing product or products."  *Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04 Civ. 3090 (RWS), 2004 WL 2346152, at *5 (S.D.N.Y., Oct. 19, 2004) (citations omitted); *see*

*also In re Papst Licensing GmbH Patent Litig.*, Nos. CIV. A. MDL 1298, CIV. A.99-3118, 2001 WL 179926 (E.D. La., Feb. 22, 2001).

Courts have also noted, in this context, that a defendant should not be required to guess which of its products are being accused of infringement. *See Agilent Techs.*, 2004 WL 2346152, at *6 ("[Defendant] is entitled to know which of its products or services are alleged to have infringed [plaintiff's] patents and a more definite statement setting forth that information is appropriate."). Failing to identify products in an infringement claim not only makes it difficult (if not impossible) for a defendant to prepare a meaningful responsive pleading, but it also improperly shifts the burden of conducting a pre-filing investigation to the defendant. *See eSoft, Inc. v. Astaro Corp.*, Civil Case No. 06-CV-00441-REB-MEH, 2006 WL 2164454 (D. Colo., July 31, 2006) ("[D]efendant is entitled to a more definite statement of plaintiff's claims. The complaint fails to identify any particular product or service that allegedly infringes the patent-in-suit. Defendant cannot realistically be expected to frame a responsive pleading without risk of prejudice in the absence of any indication as to which of its products are accused. Plaintiff cannot foist the burden of discerning what products it believes infringe the patent onto defense counsel . . . .").

In this case, LPL has failed to identify a single brand name, product number, or other indicator regarding its patent infringement claims, even though the three patents involved (and ViewSonic's products) have been the subject of extensive discovery and litigation for years—suggesting the vagueness in LPL's complaint may be intentional. Indeed, the failure to identify a single infringing product is remarkable, since the discovery in prior cases has included actual physical inspection of at least 50 ViewSonic

products.  Surely, before suing ViewSonic again, LPL identified at least one ViewSonic

product it believed should be accused of infringing three patents ('449, '737 and '002)

that have been the subject of extensive claim construction, litigation and trial.

Nevertheless, no such product is identified in LPL's complaint.

The prejudice of LPL's vague pleading is substantial and further exacerbated by

the pendency of claims in other cases involving the same patents and defendants  as this

case.  LPL's complaint simply does not give ViewSonic any basis to identify the overlap

between LPL's new claims and claims previously asserted with respect to the same

patents—forcing ViewSonic to guess at the impact of one set of claims upon the other.

Under the circumstances, then, and at the very least, LPL should be required to

provide a more definite statement of what products are at issue in this case.

## VII.    CONCLUSION

For the foregoing reasons, ViewSonic respectfully submits that all of the claims

for relief in this case should be stayed, in their entirety, as to ViewSonic.  In addition, or

in the alternative, each of LPL's three claims should be dismissed pursuant to Rule

12(b)(6), for failure to state a claim.  At a minimum, ViewSonic submits, LPL should be

required to provide a more definite statement pursuant to Rule 12(e).


Dated: April 6, 2007

Edmond D. Johnson (DE Bar #2257)
Thomas H. Kovach (DE Bar #3964)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

-And-

John N. Zarian
Samia E. McCall
Matthew D. Thayne
STOEL RIVES LLP
101 S. Capitol Blvd.
Suite 1900
Boise, ID  83702
(208) 389-9000


Attorneys for Defendant ViewSonic Corporation

## CERTIFICATE OF SERVICE

I, Edmond D. Johnson, hereby certify that on the 6th day of April, 2007, I caused a copy of the foregoing to *Defendant ViewSonic Corporation's Consolidated Memorandum In Support Of Its (1) Motion To Stay, (2) Motion To Dismiss, And, (3) Motion For A More Definite Statement* be filed with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:


Richard D. Kirk, Esquire
Ashley B. Stitzer, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

Frederick Cottrell, III, Esquire
Anne Shea Gaza, Esquire
Richards Layton & Finger PA
One Rodney Square
P.O. Box 551
Wilmington, DE 19899


David Ellis Moore, Esquire
Potter Anderson & Corroon, LLP
Hercules Plaza,
1313 N. Market St., 6th Fl.
P.O. Box 951
Wilmington, DE 19899-0951


Edmond D. Johnson (DE Bar #2257)