IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG. PHILIPS LCD CO., LCD<br><br>Plaintiff,<br><br>v.<br><br>CHI MEI OPTOELECTRONICS CORPORATION;<br>AU OPTRONICS CORPORATION; AU<br>OPTRONICS CORPORATION AMERICA;<br>TATUNG COMPANY; TATUNG COMPANY OF<br>AMERICA, INC.; AND VIEWSONIC<br>CORPORATION,<br><br>Defendants. | Civil Action 06-726-JJF<br><br>DEMAND FOR JURY TRIAL |

**DEFENDANT VIEWSONIC CORPORATION'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO STAY**

STOEL RIVES LLP
John N. Zarian
Samia E. McCall
Matthew D. Thayne
101 S. Capitol Blvd., Suite 1900
Boise, ID 83702
(208) 389-9000
Fax: (208) 389-9040

PEPPER HAMILTON LLP
Edmond D. Johnson (DE Bar # 2257)
Thomas H. Kovach (DE Bar # 3964)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19899-1709
P.O. Box 1709
(302) 777-6500
Fax: (302) 421-8390

*Attorneys for Defendant ViewSonic Corporation*

Dated: May 1, 2007

#8533135 v1

## **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................1

II.  BACKGROUND ...................................................................................................2

    A. The Parties and the Display Products Industry................................................2

    B. Overview of Litigation by LPL Against ViewSonic .......................................3

    C. Side Mount Patent Litigation............................................................................4

    D. Semiconductor Patent Litigation ......................................................................4

    E. Tape Carrier Package for LCD Patent Litigation .............................................4

    F. Flat Panel Backplane Patent Litigation ............................................................5

    G. Flat Panel Rear Mount Patent Litigation .........................................................5

    H. The Instant Law Suit by LPL ...........................................................................6

III. ALL OF THE CLAIMS AGAINST VIEWSONIC SHOULD BE STAYED IN FAVOR OF ACTIONS AGAINST THE REAL PARTIES IN INTEREST ..........6

IV.  THE SECOND AND THIRD CLAIMS FOR RELIEF BASED ON U.S. PATENT NOS. 5,825,449 AND 4,624,737 SHOULD BE STAYED ....................9

    A. Prior and Pending Litigation Involving the '449 and '737 Patents .................9

    B. The Semiconductor Patent Claims ('449 and '737) Should Be Stayed.........10

        1. Legal Standards ........................................................................................10

        2. The Interests of Judicial Economy Demand a Stay .................................11

V.   THE FIRST CLAIM FOR RELIEF BASED ON U.S. PATENT NO. 5,019,002 SHOULD BE STAYED AS WELL..........................................................................12

    A. Prior and Pending Litigation Regarding the '002 Patent...............................12

    B. The Backplane Patent Claim ('002) Should Be Stayed.................................13

        1. Legal Standards ........................................................................................13

        2. A Stay of the Backplane Patent Claim Would Also Serve the Interests of Justice and Efficiency..............................................................................13

VI.  CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aro Manufacturing Co. v. Convertible Top Replacement Co.*,
    377 U.S. 476 (1964) .......................................................................................................... 8

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976) ........................................................................................................ 10

*Corning Glass Works*,
    204 U.S.P.Q. 436 (Ct. Cl. 1979) ...................................................................................... 10

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ..................................................................................... 6, 7

*Landis v. North American Co.*,
    299 U.S. 248 (1936) ........................................................................................................ 10

*Ricoh Co. v. Aeroflex Inc.*,
    279 F. Supp. 2d 554 (D. Del. 2003) .................................................................................. 6

*Salomon S.A. v. Scott USA Ltd. Partnership*,
    117 F.R.D. 320 (D. Mass. 1987) ..................................................................................... 14

*Semmes Motors, Inc. v. Ford Motor Co.*,
    429 F.2d 1197 (2d Cir. 1970) .......................................................................................... 11

*Wang Laboratories, Inc. v. Oki Electric Industry Co., Ltd.*,
    15 F. Supp. 2d 166 (D. Mass. 1998) ................................................................................ 12

## STATE CASES

*JVW Enterprises, Inc. v. Amazon.com, Inc.*,
    2004 WL 1737173 (W.D.N.Y) ........................................................................................ 13

*Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*,
    No. 3:05-CV-123-J-33MCR, 2006 WL 2523137 (M.D. Fla., Aug. 30,
    2006) ................................................................................................................................ 11

## MISCELLANEOUS

David F. Herr, Annotated Manual for Complex Litigation, § 33.63 (3d ed. 2003) ...................... 6

I.  **INTRODUCTION**

LG.Philips LCD Co., Ltd. ("LPL") is apparently engaged in a pattern of vexatious litigation designed to disrupt the business of ViewSonic Corporation ("ViewSonic") by subjecting it to an onslaught of cases and claims in multiple jurisdictions, many of them involving the very same patents and overlapping defendants. Evidently, LPL's tactics are aimed at maximizing the burden of litigation on ViewSonic, which is a reseller of display products. In the process, LPL is unnecessarily taxing the federal court system.

As explained below, each of the three patents at issue in this case is the subject of prior actions filed by LPL against ViewSonic and other defendants named in this case, and a number of these prior actions are still pending. Two of the prior actions involving these patents were tried to verdict in 2006 (one before this Court), and both of those cases are expected to be appealed (by one side or the other) after the issues raised in post-trial motions are decided. At least four additional actions involving these patents are still pending as part of pre-trial proceedings pending in the Central District of California.

Consequently, the validity of the three patents-in-suit and the construction of their claims—involving highly complex issues requiring copious amounts of time and effort to resolve—are currently being considered, independently, in other pending cases.

There is no good reason, under the circumstances, to proceed with the claims in this case while substantially overlapping efforts are expended in other cases—particularly since a final ruling from the Court of the Appeals for the Federal Circuit could render all such efforts moot. In the interests of judicial economy, and to prevent an unjustified burden on this Court, each of the pending claims against ViewSonic should be stayed.

In any event, a stay of this proceeding as to ViewSonic is appropriate pending disposition of any claims against the manufacturer defendants, who are far better situated

to litigate and defend against any charges of patent infringement. As a mere reseller, ViewSonic has no technical information concerning the design or manufacture of any accused products. Its active participation in the action at this stage is unwarranted.

Thus, ViewSonic respectfully requests that the Court grant the instant motion.

## II. BACKGROUND

### A. The Parties and the Display Products Industry

ViewSonic is a global provider of display products. The company markets and supports a broad range of products including liquid crystal display ("LCD") monitors, LCD monitors incorporating thin film transistor ("TFT") technology, LCD televisions, projectors, digital signage, and cathode ray tube ("CRT") monitors.

The product supply chains in the industry include manufacturers and suppliers, integrators and assemblers, original equipment manufacturers ("OEMs"), resellers and sellers of branded products. Companies may act in various capacities. For example, a company may ship products from in-house factories, act as an integrator, and/or outsource its manufacturing entirely, depending on the application and product involved.

Competition in the display products industry is fierce, particularly between Korean and Taiwanese suppliers. For example, according to a recent industry report, in the large-area TFT LCD segment of this market, Korean suppliers account for 53 percent of notebook PC panel shipments, Taiwanese suppliers account for 58 percent of LCD monitor panel shipments, and Korean suppliers account for 54 percent of LCD TV module shipments. These approximate figures tend to vary from quarter to quarter.

Plaintiff LPL is one of the two leading Korean suppliers of display products. Defendants Chi Mei Optoelectronics Corporation ("CMO") and AU Optronics Corporation ("AUO") are two of the three leading Taiwanese suppliers of display

products. The third leading Taiwanese supplier is Chunghwa Picture Tubes, Ltd. ("CPT"), a subsidiary of defendant Tatung Company ("Tatung") and affiliate of defendant Tatung Company of America, Inc. ("Tatung America").

### B. Overview of Litigation by LPL Against ViewSonic

This is not the first time LPL has asserted patent infringement claims against ViewSonic. Over the past five years, LPL has filed a succession of suits—in California, Delaware, and the United Kingdom—alleging patent infringement against ViewSonic and others, including the three leading Taiwanese suppliers: CPT, CMO and AUO.

LPL has sued ViewSonic in five cases filed in three jurisdictions, alleging infringement of nine patents. LPL's claims concerning six of those patents have been dismissed under circumstances suggesting they had virtually no merit. ViewSonic is still defending itself in four separate actions filed by LPL, including this case. Significantly, two of the other three actions involve the *same* three patents at issue here.

In the Central District of California, ViewSonic is defending against claims involving U.S. Patent Nos. 5,825,449 (the "'449 Patent") and 4,624,737 (the "'737 Patent"), both at issue in this case. Claims involving the '449 Patent and '737 Patent are also being asserted by LPL in that same court (against defendants other than ViewSonic) in four related cases, one of which is in post-trial proceedings. (*See* Declaration of Edmond D. Johnson in Support of Motion to Stay ("Johnson Decl.") (Docket No. 25) filed on April 6, 2007, ¶¶2-6.)

In this very Court, ViewSonic is defending against infringement claims involving U.S. Patent No. 5,019,002 (the "'002 Patent"), at issue here. The prior case involving the '002 Patent is currently the subject of post-trial motions. (Johnson Decl., ¶11.)

The prior claims asserted by LPL against ViewSonic and other defendants are briefly summarized below, organized by the type of technology involved.

### C. Side Mount Patent Litigation

In California, LPL has asserted patent infringement claims based on certain "side mount" technology. These claims, asserted in five different cases, involved four U.S. patents, Nos. 5,926,237, 6,002,457, 6,373,537, and 6,020,942. (Johnson Decl., ¶¶2-6.) All of the side mount patent infringement claims have been dismissed due to lack of standing. More particularly, the Hon. Consuelo B. Marshall ruled that LPL assigned away its rights to each of the four side mount patents *prior* to bringing suit, and that LPL therefore lacked any standing to assert claims under those patents. (Johnson Decl., ¶11.)

### D. Semiconductor Patent Litigation

Also in the five California cases, LPL asserted claims involving semiconductor technology. These claims alleged infringement of the '449 and '737 Patents, both at issue here. (*See* Johnson Decl., ¶¶2-6.) Last year, LPL obtained a verdict in the lead case, but that case did not include ViewSonic as a defendant. (*See* id., ¶9.) Post-trial motions are pending, and an appeal of any judgment is anticipated, from one side or the other. The four trailing cases are still pending, including a case naming ViewSonic as a defendant and asserting claims under the '449 and '737 Patents. (Id., ¶¶2-6.)

### E. Tape Carrier Package for LCD Patent Litigation

In a case that is the subject of post-trial motions before this Court (No. 05-00292), LPL originally asserted claims relating to tape carrier packaging for LCDs involving U.S. Patent No. 6,738,121 (the "'121 Patent"). (*See* Johnson Decl., ¶11.) These claims were withdrawn before trial, however, under circumstances that shed light on LPL's litigation

#8533135 v1

tactics. Upon being notified that the '121 Patent was likely invalid due to an on-sale bar, LPL refused to provide critical documents in its possession relevant to this defense.

After being ordered by the Court either to provide the documents or withdraw its claim under the '121 Patent, LPL finally relented and agreed to dismiss its claim. Even so, months of time and effort had been wasted by defendants (and the Court) as a result of LPL's assertion of the invalid '121 Patent and stonewalling discovery tactics.

### F.    Flat Panel Backplane Patent Litigation

In the foregoing case (No. 05-00292), LPL also asserted claims involving certain flat panel backplane technology. These claims relate to the '002 Patent, at issue in the instant case. (*See* Johnson Decl., ¶11.) Last year, LPL obtained a verdict with respect to its '002 Patent infringement claims, but it is understood the underlying damages are not to be assessed against ViewSonic. As in California, post-trial motions are pending in this case, and an appeal of any judgment is anticipated, from one side or the other.

### G.    Flat Panel Rear Mount Patent Litigation

LG has also filed at least one legal action against ViewSonic in the United Kingdom. The U.K. case, involving flat panel rear mount technology, asserted claims involving U.K. Patent No. 2,346,464 (the "UK '464 Patent"). The U.K. claims were dismissed in their entirety. In a 33-page opinion, the Patents County Court held that the U.K. '464 Patent was invalid *and* not infringed. (*See* Johnson Decl., ¶13.)

Evidently, LPL continues to pursue related claims in a separate case pending before this Court (No. 04-00343), involving U.S. Patent Nos. 6,498,718 and 6,501,641, counterparts to the U.K. '464 Patent. This case, which is distinct from No. 05-00292, names ViewSonic and others as defendants. (*See* Johnson Decl., ¶10.)

H.  **The Instant Law Suit by LPL**

The instant action asserts additional infringement claims against ViewSonic involving the '449 Patent, the '737 Patent, and the '002 Patent. Accordingly, semiconductor and flat panel backplane technologies are both at issue in this case.

III. **ALL OF THE CLAIMS AGAINST VIEWSONIC SHOULD BE STAYED IN FAVOR OF ACTIONS AGAINST THE REAL PARTIES IN INTEREST**

In patent infringement cases, stays of actions against product resellers in favor of actions against product manufacturers have been consistently recognized as an appropriate exercise of judicial control over the efficient administration of justice.

As stated in the Manual for Complex Litigation:

> It is common practice to stay all pending [patent] litigation except the first suit between the patent owner and a manufacturer or a higher level supplier. Later suits against customer are routinely stayed, and a declaratory judgment suit by the manufacturer of the claimed infringing product is preferred over even an earlier filed suit by the patent owner against a customer.

David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION, § 33.63 (3d ed. 2003); *see also Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (stay of customer suit because "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"); *Ricoh Co. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 557 (D. Del. 2003) (transfer of first filed suit granted because manufacturer's suit with patentee "should be given preference over a patentee's suit against the manufacturer's customers when those customers are being sued for their ordinary use of the manufacturer's products").

In *Katz*, explaining why resolving a declaratory judgment action brought by a manufacturer of infringing goods should take precedence over a pre-existing suit brought by a patent owner against customers of the manufacturer, the Federal Circuit noted:

> [I]n reality, the manufacturer is the true defendant in the customer suit . . . it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.

*Katz*, 909 F.2d at 1464 (citation omitted).

The manufacturer of an allegedly infringing product not only has more at stake, but is also better situated than its customers to contest the validity and infringement of an asserted patent because it has intimate knowledge of the design, operation, and use of its products and the prior art.

In this case, compelling considerations support the application, as to ViewSonic, of the judicial preference for resolving a patent claim against a manufacturer over claims against its customers. In fact, ViewSonic does not design or manufacture products. Its presence in this action, therefore, can only be as a customer/reseller of products purchased from, and manufactured by, other entities. Given this secondary role in any alleged infringement, ViewSonic should not be burdened with the unnecessary inconvenience, effort, and expense of day-to-day- litigation. Rather than harassing the customer, ViewSonic, to exert improper pressure on those higher in the supply chain, LPL should be required simply to litigate the merits of its dispute against those entities in the best position to have the requisite knowledge and information for investigating and responding to LPL's infringement allegations.

Since ViewSonic is nothing more than a reseller of allegedly infringing products, it adds nothing to the products it sells that would cause an otherwise non-infringing product to meet the claim limitations of any of the patents-in-suit. Furthermore, ViewSonic is not privy to its suppliers' and manufacturers' proprietary and confidential information, which will almost certainly be needed to adjudicate LPL's claims.

In addition, LPL can recover only once for each product that is held to infringe. Therefore, if LPL succeeds on its alleged infringement claims against the manufacturers of any accused products identified in this case, LPL will be precluded from collecting any actual damages from ViewSonic for allegedly contributing to the same infringement. *See Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 500-01 (1964) ("[A]fter a patentee has collected . . . damages sufficient to put him in the position he would have occupied had there been no infringement, he cannot thereafter collect actual damages from a person liable only for contributing to the same infringement."). Likewise, to the extent LPL is able to shut down the manufacturer(s), ViewSonic's supply of product will be cut off, effectively operating as an injunction as to ViewSonic.

Granting a stay of the proceedings against ViewSonic would allow the real parties in interest to efficiently and directly resolve LPL's claims without the unnecessary waste of resources for the parties and the Court (in managing the suit with respect to ViewSonic). Under the circumstances, ViewSonic's presence in this action will only add needless expense and complication. Indeed, discovery aimed at ViewSonic will not add significant information and, at best, will provide duplicative information concerning the allegedly infringing product(s).

#8533135 v1

Thus, ViewSonic submits, considerations of judicial economy and fairness weigh heavily in favor of granting a stay of these proceedings as to ViewSonic.

IV. **THE SECOND AND THIRD CLAIMS FOR RELIEF BASED ON U.S. PATENT NOS. 5,825,449 AND 4,624,737 SHOULD BE STAYED**

Not only should these proceedings be stayed as to ViewSonic but, as set forth in Sections IV and V, each of LPL's claims should be stayed to avoid duplicative litigation.

A. **Prior and Pending Litigation Involving the '449 and '737 Patents**

The '449 Patent and the '737 Patent (the "Semiconductor Patents") are currently the subject of multiple lawsuits in California, involving many of the same defendants sued in this case. (Johnson Decl., ¶¶2-6.) The Semiconductor Patents are each asserted against ViewSonic in a case pending in the Central District of California (No. 03-2886) (the "California ViewSonic Case"). (Johnson Decl., ¶6.) These two patents are also asserted against Tatung and Tatung America (collectively, the "Tatung Group"), in a lead case (No. 02-6775) which is now the subject of post-trial motions (the "California Tatung Case"). (Johnson Decl., ¶2.) The California ViewSonic Case and the California Tatung Case, together with three other California cases, were consolidated for purposes of discovery and pre-trial proceedings. Only the lead case has proceeded to trial.

As to the lead California Tatung Case, the validity of one or more claims of the Semiconductor Patents is at issue in pending post-trial motions, and the validity of the Semiconductor Patents is expected to be an issue on appeal. The construction of one or more claims of the Semiconductor Patents is likewise expected to be an issue on appeal.

As to the four trailing cases in California involving the Semiconductor Patents – including the California ViewSonic Case– it remains that these cases could potentially

#8533135 v1

resume following post-trial proceedings and appeals filed in the California Tatung Case, subject, of course, to limitations on any double recovery of damages.

Unfortunately, the nature and extent of overlap in the claims asserted in these various cases are impossible to determine (but appears to be significant), because LPL's complaint in this case fails even to hint at the products LPL believes may infringe its patents – even though the Semiconductor Patents and ViewSonic's products have been the subject of extensive discovery and litigation over a period of several years.

At a minimum, it is evident that two patents (the '449 and '737 Patents) and three defendants (ViewSonic, Tatung and Tatung America) are common to both this case, on the one hand, and the previously discussed California cases, on the other hand.

### B. The Semiconductor Patent Claims ('449 and '737) Should Be Stayed

In the interests of judicial economy, the claims involving the Semiconductor Patents should be stayed pending final resolution of the cases pending in California.

#### 1. Legal Standards

The power to stay a case is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). Furthermore, when overlapping actions are pending in separate federal district courts, "the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

When two separate actions involving the same patent are pending, in particular, courts have held that the only way to avoid duplicative litigation is by staying one of the actions. *See Corning Glass Works*, 204 U.S.P.Q. 436, 436 (Ct. Cl. 1979) (granting stay due to same patents being litigated in another action "to further the interest of judicial

economy and to avoid duplicative discovery hearings"); *Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*, No. 3:05-CV-123-J-33MCR, 2006 WL 2523137 (M.D. Fla., Aug. 30, 2006) (granting stay due to same patents being litigated in another district court).

### 2.    The Interests of Judicial Economy Demand a Stay

Burdening two separate district courts simultaneously with complex actions raising identical and/or closely related issues between many of the same parties would be unwise and is unnecessary. As one appellate court observed:

> Courts already heavily burdened with litigation with which they must of necessity deal should … not be called upon to duplicate each other's work in cases involving the same issues and the same parties. Hence, . . . the instances where the second court should go forward despite the protests of a party to the first action where full justice can be done, should be rare indeed.

*Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1203 (2d Cir. 1970) (internal quotation marks and citation omitted; first ellipsis in original).

If this case is allowed to proceed as to the '449 and '737 Patents, then the parties and the Court will surely turn their efforts to completing fact discovery, preparing for and holding a hearing to construe the patent claims, completing expert discovery, and addressing motions for summary judgment. However, to the extent an appeal from the California Tatung Case—which involves *both* of the Semiconductor Patents at issue here—invalidates one or more of the claims from the '449 or '737 Patents, those claims will no longer be at issue in this litigation. Thus, absent a stay, much or all of the time and effort expended by the parties and the Court in this case may have been in vain.

Furthermore, even if the validity of both patents is upheld on appeal, any claim construction provided by the Court of Appeals for the Federal Circuit would be binding on this Court and could relieve the parties and Court of much of the massive time and

expense required to establish construction of the claims of a patent. *See Wang Laboratories, Inc. v. Oki Electric Industry Co., Ltd.*, 15 F. Supp. 2d 166, 175-76 (D. Mass. 1998) (indicating that the court was obligated to accept a claim construction offered by the Federal Circuit from an appeal in another case involving the same patents).

Thus, the proceedings in the California Tatung Case (and the trailing California cases) are likely to narrow or otherwise impact significantly the issues for discovery and any trial in this case. Even if LPL asserts that "different" claims are at issue, any claim construction by the Federal Circuit is likely to shed light on an appropriate construction in this case, because the very same patents are involved. Claim construction, in turn, will affect discovery, expert opinions, and the issues for summary judgment and trial .

Regardless of the outcome of the California Tatung Case, the California ViewSonic Case—which involves the same plaintiff suing the same defendant over two of the same patents at issue here—may proceed to resolve issues that would at least narrow the scope of this action. It is difficult to imagine that a case with such extensive overlap among parties and patents would *not* narrow or otherwise impact the issues here.

In sum, the Semiconductor Patent claims asserted in LPL's Second and Third Claims for Relief should be stayed pending a full resolution of the pending actions in California involving the same patents and many of the same parties.

V.   **THE FIRST CLAIM FOR RELIEF BASED ON U.S. PATENT NO. 5,019,002 SHOULD BE STAYED AS WELL**

   A.   **Prior and Pending Litigation Regarding the '002 Patent**

Like the Semiconductor Patents, the '002 Patent (the "Backplane Patent") has been the subject of other lawsuits. As previously noted, a prior case (No. 05-292) involving the Backplane Patent was filed by LPL in this very district against several of

#8533135 v1

the same defendants (the "First Backplane Case"). This First Backplane Case was tried last year and is currently the subject of post-trial motions. (Johnson Decl., ¶¶11-12.) The validity of one or more of the claims in the Backplane Patent is an issue in post-trial motions. Furthermore, it is anticipated that the validity and interpretation of certain claims will likely be an issue in any appeal taken with respect to the First Backplane Case, whether by LPL or by one or more of the defendants.

### B.    The Backplane Patent Claim ('002) Should Be Stayed

The Backplane Patent claim in this case (the First Claim for Relief) involves issues that are still being addressed by this Court in the related First Backplane Case, and may be the subject of an appeal by LPL or one or more of the defendants. To the extent the instant case proceeds concurrently with any such appeal, the parties and the Court may be forced one day to revisit much of their work in this case. Therefore, the Backplane Patent claim should be stayed pending resolution of post-trial proceedings and any appeal in the related First Backplane Case involving the very same patent.

#### 1.    Legal Standards

In the context of patent infringement cases, stays or dismissals may be granted due to an appeal pending in another action involving the same patent. *See, e.g., JVW Enterprises, Inc. v. Amazon.com, Inc.*, No. 03-CV-6221 (CJS), 2004 WL 1737173 (W.D.N.Y, Aug. 2, 2004) (granting dismissal rather than a stay of a patent infringement action due to an appeal pending in another action involving the same patent).

#### 2.    A Stay of the Backplane Patent Claim Would Also Serve the Interests of Justice and Efficiency

The Backplane Patent was previously asserted by LPL against ViewSonic in the First Backplane Case. The validity of the patent and the interpretation of its claims are

both issues in post-trial proceedings, and will almost certainly be an issue in any appeal that may be taken in the case. To the extent a ruling on the post-trial motions or on any appeal in the First Backplane case renders one of more of the claims in the Backplane Patent invalid, any and all efforts expended in *this* action will have been for naught. Similarly, even if the Backplane Patent is not invalidated on appeal, any claim construction issues determined by the appellate court will be available for this Court, and will almost certainly reduce the complexity and length of this litigation, along with the burden on this Court. With the record of those proceedings available, the issues, defenses, and evidence will be more clearly focused. Moreover, the certainty provided by the outcome of an appeal may encourage a settlement rather than litigation.

Thus, the granting of a stay with respect to the Backplane Patent claims asserted by LPL in the First Claim for Relief—pending full resolution of the First Backplane Case—will avoid duplicative efforts and waste, for both the parties and the Court. Under the circumstances, ViewSonic submits, the First Claim for Relief should be stayed.

Of course, to the extent the Court determines that one or more of the pending claims for relief should be stayed independently of the rest of the case, it has discretion to sever such claim(s), pursuant to Rule 21, and stay them apart from the other claims. *See Salomon S.A. v. Scott USA Ltd. Partnership*, 117 F.R.D. 320, 321 (D. Mass. 1987) ("In my opinion, each counterclaim alleging infringement of a patent should be tried in the case in which the validity of the patent will be tested. Accordingly, so much of the counterclaim as relates to U.S. Patent Nos. 3,885,329, 4,062,133 and 4,284,273 is SEVERED and STAYED pending disposition of these claims in the several cases to

which they relate."). Thus, and for example, this Court has discretion to sever and stay the Second and Third Claims for Relief independently of the First Claim for Relief.

## VI.  CONCLUSION

For the foregoing reasons, ViewSonic respectfully submits that all of the claims for relief in this case should be stayed, in their entirety, as to ViewSonic.

Dated: May 1, 2007

　　　　　　　　　　　　　　　　　　/s/
Edmond D. Johnson (DE Bar #2257)
Thomas H. Kovach (DE Bar #3964)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
(302) 777-6500

-And-

John N. Zarian
Samia E. McCall
Matthew D. Thayne
STOEL RIVES LLP
101 S. Capitol Blvd.
Suite 1900
Boise, ID  83702
(208) 389-9000

Attorneys for Defendant ViewSonic Corporation

## CERTIFICATE OF SERVICE

I, Edmond D. Johnson, hereby certify that on the 1st day of May, 2007, I caused a copy of the foregoing to *Defendant Viewsonic Corporation's Memorandum In Support Of Its Motion To Stay* be filed with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following:

Richard D. Kirk, Esquire
Ashley B. Stitzer, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

Karen L. Pascale, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Bldg., 17th Fl.
1000 West Street
Wilmington, DE 19801

David Ellis Moore, Esquire
Potter Anderson & Corroon, LLP
Hercules Plaza,
1313 N. Market St., 6th Fl.
P.O. Box 951
Wilmington, DE 19899-0951

William E. Manning, Esquire
Jennifer M. Becnel-Guzzo, Esquire
Buchanan Ingersoll & Rooney PC
1000 West Street, Suite 1410
P.O. Box 1397
Wilmington, DE 19899-1397

Edmond D. Johnson (DE Bar #2257)