# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.Philips LCD CO., LTD.,<br><br>              Plaintiff,<br><br>v.<br><br>CHI MEI OPTOELECTRONICS<br>CORPORATION; AU OPTRONICS<br>CORPORATION; AU OPTRONICS<br>CORPORATION AMERICA; TATUNG<br>COMPANY; TATUNG COMPANY OF<br>AMERICA, INC.; AND VIEWSONIC<br>CORPORATION,<br><br>              Defendants. | Civil Action No. 06-726-JJF |

## PLAINTIFF LG.PHILIPS LCD CO., LTD.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT VIEWSONIC CORPORATION'S MOTION TO STAY

Richard D. Kirk (Bar I.D. 922)
Ashley B. Stitzer (Bar I.D. 3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com

Attorneys for Plaintiff
LG.Philips LCD Co., Ltd.

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

May 18, 2007

660456-1

# TABLE OF CONTENTS

**Page**

I.      NATURE & STAGE OF THE PROCEEDING ................................................... 1

II.     SUMMARY OF THE ARGUMENT .................................................. 1

III.    COUNTER-STATEMENT OF FACTS .............................................................. 2

      A.    The Instant Case.................................................................................. 2

      B.    The California Litigation ............................................................ 3

      C.    The Delaware Litigation ............................................................ 4

IV.     ARGUMENT ...................................................................................................... 5

      A.    LG.Philips Has A Right To Sue All Infringers......................................... 5

      B.    The Customer Suit Exception Is Inapplicable .......................................... 7

      C.    Potential Appeals in the California and Delaware Litigations Do
           Not Justify A Stay of This Case.................................................................. 8

      D.    The Pending California Litigation Does Not Justify a Stay of This
           Case........................................................................................................... 10

V.      CONCLUSION.................................................................................................. 11

## TABLE OF AUTHORITIES

**Page**

### CASES

*Air Prods. & Chems., Inc. v. MG Nitrogen Servs., Inc.*,
   133 F. Supp. 2d 354 (D. Del. 2001)................................................................................. 8

*Alloc, Inc. v. Unilin Décor N.V.*,
   Civ. A. No. 02-C-1266 (Consol.), 2005 U.S. Dist. LEXIS 38066
   (E.D. Wis. Dec. 15, 2005)............................................................................................... 6

*Argos v. Orthotec LLC*,
   304 F. Supp. 2d 591 (D. Del. 2004)............................................................................... 9

*Cherdak v. Stride Rite Corp.*,
   396 F. Supp. 2d 602 (D. Md. 2005)............................................................................... 8

*Dean v. Brandywine Studios, Inc.*,
   Civ. A. No. 99-679, 2003 WL 22509405 (D. Del. Nov. 5, 2003) ................................. 9

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
   734 F. Supp. 656 (D. Del. 1990) ........................................................................... 6, 7, 9

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
   370 F.3d 1131 (Fed. Cir. 2004) ..................................................................................... 9

*Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp.*,
   397 F. Supp. 2d 537 (D. Del. 2005)............................................................................... 9

*Kahn v. Gen. Motors Corp.*,
   889 F.2d 1078 (Fed. Cir. 1989) ..................................................................................... 7

*Landis v. N. Amer. Co.*,
   299 U.S. 248 (1936)....................................................................................................... 8

*Mitsubishi Elec. Corp. v. IMS Tech., Inc.*,
   Civ. A. No. 96-C-0499, 1996 U.S. Dist. LEXIS 12239 (N.D. Ill. Aug. 21, 1996)......... 7

*Shockley v. Arcan, Inc.*,
   248 F.3d 1349 (Fed. Cir. 2001) ..................................................................................... 5

## **TABLE OF AUTHORITIES**

**Page**

### **STATUTES**

35 U.S.C. § 271(a) ............................................................................................................. 5

35 U.S.C. §100 *et seq.*........................................................................................................ 7

### **OTHER**

Chisum on Patents § 21.02[4][c] ........................................................................................ 8

Plaintiff LG.Philips LCD Co., LTD. ("LG.Philips") respectfully submits this memorandum in opposition to Defendant ViewSonic Corporation's ("ViewSonic") Motion to Stay ("Motion").

## I.     NATURE & STAGE OF THE PROCEEDING

This patent infringement case relates to technologies used in the design and manufacture of liquid crystal display ("LCD") products. More specifically, it concerns LG.Philips's patent rights related to semiconductor and LCD backplane technology, in particular United States Patent No. 5,019,002 ("the '002 patent"), United States Patent No. 5,825,449 ("the '449 patent"), and United States Patent No. 4,624,737 ("the '737 patent") (collectively "LG.Philips's patents in suit").

On December 1, 2006, LG.Philips filed suit against ViewSonic and five other Defendants, including two manufacturers of LCD modules – AU Optronics Corporation ("AUO") and Chi Mei Optoelectronics Corporation ("CMO") – for infringement. (D.I. 1.) The Complaint was served on ViewSonic on February 15, 2007. (D.I. 9.) On May 1, 2007, ViewSonic filed the instant Motion (D.I. 37) and opening brief in support thereof ("the Opening Brief") (D.I. 38), as well as a motion to dismiss under Rule 12(b)(6) (D.I. 41) and a motion for a more definite statement (D.I. 39), both of which LG.Philips will oppose by separate response.

## II.    SUMMARY OF THE ARGUMENT

1.     The fact that ViewSonic is a customer/reseller of LCD products does not entitle it to a stay in this case. Even if the limited "customer suit exception" applied, which it does not, a stay is not justified because of the prejudice to LG.Philips that would result if it was forced to proceed against only the extra-territorial manufacturers, Defendants AUO and CMO. Thus, contrary to ViewSonic's assertions, its involvement

is of signficant, not secondary, importance to this case.  This is particularly true because ViewSonic has never agreed to be bound by a suit against AUO or CMO.

      2.      The existence of other litigation does not justify a stay of this case as to ViewSonic (or, for that matter, AUO and CMO).  As discussed below, there was an agreement in the earlier California and Delaware cases that the scope of the infringement claims in those cases was limited to products containing modules manufactured by Chunghwa Picture Tubes, Ltd. ("CPT").  In this case, however, CPT is not a party.  Instead, the scope of infringement claims is limited to LCD modules manufactured by AUO and/or CMO.

## III.    COUNTER-STATEMENT OF FACTS

### A.    The Instant Case

LG.Philips is a world leader in the research and development of new LCD technologies and in the design and manufacture of LCD modules.  In this role, LG.Philips has applied for and obtained a number of U.S. patents and is the owner by assignment of many others, including LG.Philips's three patents in suit.

ViewSonic is a U.S. company that, directly or indirectly, imports into, sells, and/or offers for sale in the United States LCD products containing LCD modules manufactured by AUO and/or CMO.  (D.I. 1, ¶¶ 3, 5, 6, 10, 13, 24.)  By contrast, Defendants AUO, CMO, and Tatung Company ("Tatung") are Taiwanese corporations that manufacture and/or assemble infringing LCD modules.  (D.I. 1, ¶¶ 5-6, 8.)[1]

---

[1] Additionally, Defendant AU Optronics Corporation America ("AUO America") is a U.S. subsidiary of AUO that markets and sells AUO's products in the United States. (D.I. 1, ¶ 7.)  Defendant Tatung Company of America ("Tatung America") markets and sells Tatung's products throughout the United States.  (D.I. 1, ¶ 9.)

On December 1, 2006, LG.Philips filed suit against ViewSonic and other Defendants alleging infringement of the '002, '449, and '737 patents. Unlike in the cases described below as the "California Litigation" and the "Delaware Litigation," which involve products containing modules manufactured by CPT, the scope of infringement claims now before the Court is limited to LCD modules manufactured by AUO and/or CMO. Therefore, as discussed below, the parties and patents – and thus the infringement issues – here are independent of the earlier cases discussed below and known as the California Litigation and the Delaware Litigation.

### B.     The California Litigation

In August 2002, LG.Philips filed a patent infringement suit in the Central District of California against Tatung, Tatung America, and CPT, another manufacturer of LCD products, alleging infringement of several patents, including the '737 and '449 patents. (Ex. 1, Cal. Compl.)[2] The California Litigation also involved what ViewSonic describes as the "Side Mount Patents," but LG.Philips's claims with respect to those patents (which are not at issue here) were dismissed for lack of standing. Therefore, only the '737 and '449 patents were presented to the jury.

In April 2003, LG.Philips asserted the same two patents in cases against ViewSonic and other entities that sold LCD products. For pre-trial purposes, the California court consolidated all of the cases and allowed discovery to proceed against all

---

[2] Unless otherwise indicated, all exhibits referenced herein are attached to the Declaration of Richard D. Kirk, filed contemporaneously herewith.

the defendants only as to products containing modules manufactured by CPT.[3]  The cases

were then stayed except for the first suit against CPT and its parent and affiliate

corporations, Tatung and Tatung America.

In October 2006, these CPT claims went to trial.  On November 1, 2006, the jury

found that these defendants had infringed the '737 and '449 patents through activities

relating to CPT's modules.  Upon further finding that the patents were not invalid, the

jury awarded LG.Philips damages accordingly.  No appeals have yet been filed by any of

the defendants regarding the findings on infringement and invalidity.

Regardless of any appeals that may be filed in the future,[4] the California

Litigation against ViewSonic is unlikely to resume because the case was limited to CPT

modules and LG.Philips has obtained full recovery for products containing CPT LCD

modules.  Even if the California Litigation were ever to resume against ViewSonic, the

case would resume only as to products containing CPT modules.

C.    **The Delaware Litigation**

On May 13, 2005, LG.Philips initiated the Delaware Litigation against CPT,

Tatung, Tatung America, and ViewSonic, alleging infringement of two patents, including

the '002 patent.[5]  (Ex. 2, Del. Compl.)  As the Court is aware, the eventual trial was

_____

[3] Significantly, ViewSonic fails to include this fact in its discussion of the California
Litigation.

[4] The same is true for the Side Mount Patents discussed above.  Although LG.Philips may
appeal the dismissal of its claims, a successful appeal would result only in the case
proceeding, as before, as to CPT products.

[5] ViewSonic's remarks in its Opening Brief as to second patent, United States Patent No.
6,738,121, which LG.Philips later withdrew from the litigation, mischaracterize
LG.Philips's intent and are completely irrelevant to the instant Motion.

limited by agreement of the parties to CPT's LCD modules.[6]  In July 2006, a jury found

that each defendant infringed the '002 patent through its activities relating to CPT's

infringing LCD modules.  The jury further found that the '002 patent was not invalid and

awarded damages to LG.Philips.  No appeals have been filed.

## IV.    ARGUMENT

### A.    LG.Philips Has A Right To Sue All Infringers

ViewSonic's status as a customer/reseller of LCD products in no way insulates it

from a patent infringement suit but rather identifies it as an appropriate defendant.  To the

contrary, it is well-established that selling an infringing product is a violation of the

patent holder's rights and that each defendant is liable for its infringement.  *See Shockley*

*v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001); *see also* 35 U.S.C. § 271(a) (West

2004) ("(W)hoever without authority makes, uses, offers to sell, or sells any patented

invention, within the United states . . . infringes the patent.").  Of course, multiple

defendants in a single action may

---

[6] Again, ViewSonic fails to include this fact in its discussion of the Delaware Litigation.

have joint liability to a patentee, including product manufacturers and customers. *See Shockley, 248 F.3d at 1364.*[7]

"Numerous cases uphold the right of a patent owner to sue a dealer or retailer who purchase and resells articles from an infringing manufacturer." *Chisum on Patents*, § 16.02[5][c]. Indeed, infringement suits against manufacturers and customers are common. *E.g., Shockley*, 248 F.3d at 1364 (single suit brought against manufacturer, supplier, and distributor). Thus, ViewSonic's suggestion that a reseller has a "secondary role in any alleged infringement" and therefore should not be subject to suit defies federal law and would deprive patent holders of significant rights. The narrow exception to permitting suits against customer/resellers is, as explained below, entirely inapplicable.

In addition, ViewSonic's much too modest claim that it is of "secondary" importance to this case does not account for the fact that Defendants against whom it suggests the case should continue – AUO and CMO – are extra-territorial parties. *See, e.g., Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 659-60 (D. Del. 1990) (D.J., Farnan).

While ViewSonic is subject to liability at least in part for direct infringement, AUO and CMO are believed to be subject to liability primarily for inducing infringement. Therefore, a trier of fact could find that LCD modules made by AUO and CMO meet the

---

[7] Therefore, and contrary to ViewSonic's suggestions, the bar on double-recovery in no way precludes LG.Philips from pursuing an infringement action against ViewSonic. ViewSonic is independently liable for its own infringement. *See Shockley*, 248 F.3d at 1364. Moreover, ViewSonic could be liable as a joint tort-feasor for any damages awarded to LG.Philips. *See Id.*. Thus, entry of judgment against AUO or CMO would not necessarily release ViewSonic from having to pay damages. Although ViewSonic's argument assumes AUO or CMO would fully satisfy any judgment, no such result is guaranteed.

660456-1

claim limitations of the patents in suit without also finding that the two manufactures induce infringement with respect to the modules. Such a conclusion would in no way address ViewSonic's liability for direct infringement based on its domestic sales of products containing the same LCD module.

Thus, LG.Philips has a seperate interest in its claims against ViewSonic. *See Dentsply Int'l*, 734 F. Supp. at 659-60; *Alloc, Inc. v. Unilin Décor N.V.*, Civ. A. No. 02-C-1266 (Consol.), 2005 U.S. Dist. LEXIS 38066, at *11 (E.D. Wis. Dec. 15, 2005). In the event of the situation described above – AUO and CMO being found to make LCD modules that meet the claim limitations but not to induce infringement – LG.Philips's ability to recover the full measure of its damages would depend in large part upon a finding that ViewSonic directly infringes with respect to products containing those LCD products.

The Court should also note that ViewSonic has *not* agreed to be bound by the results of any suit against AUO or CMO. This fact alone "strongly weighs against a stay . . . because it increases the chance for duplicitous litigation." *Mitsubishi Elec. Corp. v. IMS Tech., Inc.*, Civ. A. No. 96-C-0499, 1996 U.S. Dist. LEXIS 12239, at *9 (N.D. Ill. Aug. 21, 1996).

### B.    The Customer Suit Exception Is Inapplicable

A patentee may bring an action for infringement under the Patent Laws of the United States, 35 U.S.C. §100 *et seq.*, in any federal court, thereby enabling the patentee to choose where to enforce its rights. In light of this freedom and the fact (as discussed above) that each infringer is liable for its wrongful acts, it is not surprising that only in very limited circumstances will a federal court stay a proceeding against one alleged infringer in favor of an action against another alleged infringer. *See, e.g., Kahn,* 889 F.2d

7

at 1081-82 (Fed. Cir. 1989); *Cherdak v. Stride Rite Corp.*, 396 F. Supp. 2d 602, 604-05

(D. Md. 2005); *Air Prods. & Chems., Inc. v. MG Nitrogen Servs., Inc.*, 133 F. Supp. 2d

354, 356-57 (D. Del. 2001).

One such narrow exception, the "customer suit exception," provides that "[a]

second-filed action may be given priority if the first action involves secondary parties,

such a customer of the accused manufacturer, and the second action involves the primary

parties to the patent dispute." *Chisum on Patents* § 21.02[4][c]. Here, of course, the

exception is not applicable because the manufacturers (AUO and CMO) and customer

(ViewSonic) are parties to the same action.

### C.     Potential Appeals in the California and Delaware Litigations Do Not Justify A Stay of This Case

The Supreme Court has long recognized that a party seeking to stay an action has

a high burden to meet:

> [T]he suppliant for a stay must make out a *clear case of hardship or inequity* in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in *rare circumstances* will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis v. N. Amer. Co.*, 299 U.S. 248, 255 (1936) (emphasis added).

In determining whether to issue a stay, the Court must weigh and evenly balance

the parties' interests, and in doing so "must consider whether there is even a fair

possibility that the stay would work damage on another party." *Dentsply Int'l*, 734 F.

Supp. at 658 (citations and quotation marks omitted). Courts generally consider the

following factors when weighing the interests involved: "(1) whether a stay would

unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2)

whether a stay will simplify the issues in question and trial of the case; and (3) whether

8

discovery is complete and whether a trial date has been set." *Argos v. Orthotec LLC*, 304 F. Supp. 2d 591, 598 (D. Del. 2004) (D.J., Robinson).

Thus, the mere possibility that – as in almost any case – an appeal may be filed in the California or Delaware cases does not justify a stay of this case. This is particularly true in light of the fact that no such appeals have yet been filed. ViewSonic's Motion simply assumes that the Federal Circuit would reverse the trial courts and juries.[8]  Such speculation does not justify the proposed stay. *Cf. Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 547-48, 550 (D. Del. 2005) (M.J., Thynge) (refusing request to stay enforcement under Rule 62(b) where infringer "failed to make an adequate showing that it will succeed on the merits"); *Dean v. Brandywine Studios, Inc.*, Civ. A. No. 99-679, 2003 WL 22509405, at *1 (D. Del. Nov. 5, 2003) (D.J., Jordan) (noting that a defendant seeking a stay pending appeal must, *inter alia*, "[make] a strong showing that he is likely to succeed on the merits" (internal quotation marks omitted)).

ViewSonic's failure to establish "a clear case of hardship or inequity" is significant given that much more than a "fair possibility" exists that a stay would work damage on LG.Philips. *See Dentsply*, 734 F. Supp. at 658. If a stay is granted and appeals are in fact filed, it is possible that *years* could pass before LG.Philips could

---

[8] For example, ViewSonic makes no showing w*hatsoever* on which claims constructions and/or validity determinations regarding the '737 and '449 patents in the California litigation might be reversed (nor, perhaps for obvious reasons, does ViewSonic posit that this Court erred in its earlier decision as to the '002 patent). This silence in the Opening Brief is particularly problematic because of the deference accorded jury determinations that a patent is not invalid. *E.g., Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1145 (Fed. Cir. 2004) ("Since the ultimate issue of validity was submitted to the jury, we assume that all underlying factual issues were resolved in favor of the verdict winner[, the patentee, and] review the jury's factual determinations for substantial evidence.").

9

proceed with this case – even though it involves completely different products. Moreover, in the event of settlement, any stay in this litigation would have been for naught. Even if there were an appellate decision, the stay would not greatly simplify the issues in question because the parties would still have to engage in extensive discovery specific to this case.

**D.    The Pending California Litigation Does Not Justify a Stay of This Case.**

As described above, this case is limited to LCD modules manufactured by AUO and CMO. By contrast, as also described above, the California Litigation has been limited to CPT modules and did not involve a single one of LG.Philips's three patents in suit. Thus, the existence of the California Litigation presents no basis for this case to be stayed as to products containing LCD modules made by AUO and/or CMO.

V.    **CONCLUSION**

For all of the reasons stated herein, LG.Philips respectfully requests that the Court

deny ViewSonic's Motion.

THE BAYARD FIRM

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (#0922)
Ashley B. Stitzer (#3891)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(301) 655-5000
Attorneys for Plaintiff LG.Philips LCD
Co., Ltd.

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

May 18, 2007

11

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on May 18, 2007, he electronically filed

the foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

| | |
|---|---|
| Edmond D. Johnson | Karen L. Pascale |
| Thomas H. Kovach | John W. Shaw |
| Pepper Hamilton LLP | Young Conaway Stargatt & Taylor, LLP |
| 1313 Market Street, Suite 5100 | The Brandywine Building |
| PO Box 1709 | 1000 West Street, 17th Floor |
| Wilmington, DE  19899-1709 | P.O. Box 391 |
| | Wilmington, DE  19899-0391 |
| | |
| Philip A. Rovner | William E. Manning |
| Dave E. Moore | Jennifer M. Becnel-Guzzo |
| Potter Anderson & Corroon LLP | Buchanan Ingersoll & Rooney |
| 1313 North Market Street | The Brandywine Building |
| Wilmington, DE  19899-0951 | 1000 West Street, Suite 1410 |
| | Wilmington, DE  19801 |

The undersigned counsel further certifies that copies of the foregoing document

were sent by email to the above counsel on May 18, 2007, and will be sent by hand on

May 18, 2007, and were sent by email on May 18, 2007, and will be sent by first class

mail on May 18, 2007, to the following non-registered participants:

| | |
|---|---|
| John N. Zarian | Vincent K. Yip |
| Samia McCall | Peter J. Wied |
| Matthew D. Thayne | Jay C. Chiu |
| J. Walter Sinclair | Paul, Hastings, Janofsky & Walker LLP |
| Stoel Rives LLP | 515 South Flower Street |
| 101 S. Capitol Blvd., Suite 1900 | Twenty-Fifth Floor |
| Boise, ID  83702 | Los Angeles, CA   90071 |

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190

Bryan J. Sinclair
Karineh Khachatourian
Buchanan Ingersoll & Rooney
333 Twin Dolphin Drive
Redwood Shores, CA  94065-1418

/s/ Richard D. Kirk (rk922)
Richard D. Kirk

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066
Page 1 of 17
Case 1:03-cv-00726-JJF   Document 32-2   Filed 05/18/2007   Page 1 of 25

Service: **Get by LEXSEE®**
Citation: **2005 us dist lexis 38066**

*2005 U.S. Dist. LEXIS 38066, \**

⬇ View Available Briefs and Other Documents Related to this Case

ALLOC, INC., Plaintiff, vs. UNILIN DECOR N.V. and UNILIN BEHEER B.V., Defendants, vs. BERRY FLOOR N.V., BERRY FINANCE, N.V., and ARMSTRONG WORLD INDUSTRIES, INC., Counterclaim Defendants. UNILIN DECOR N.V. and UNILIN BEHEER B.V., Plaintiffs, vs. VALINGE ALUMINUM AB, ALLOC, INC., and BERRY FLOOR N.V., Defendants. UNILIN BEHEER B.V. and UNILIN DECOR N.V., Plaintiffs, vs. VALINGE ALUMINUM AB, ALLOC, INC., BERRY FLOOR N.V., and ARMSTRONG WORLD INDUSTRIES, INC., Defendants.

Case No. 02-C-1266, Case No. 03-C-342 [Consolidated with Case No. 02-C-1266], Case No. 04-C-121 [Consolidated with Case No. 02-C-1266]

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN

2005 U.S. Dist. LEXIS 38066

December 15, 2005, Decided
December 15, 2005, Filed

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part Alloc, Inc. v. Unilin Beheer B.V., 2006 U.S. Dist. LEXIS 24148 (E.D. Wis., Mar. 24, 2006)

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants, a customer and manufacturers, were counterclaimed by plaintiffs, paneling producers, for patent infringement. The customer sought dismissal of the claims against it or a stay of further proceedings against it pending resolution of the claims between the producers and the manufacturers. The customer relied upon the customer suit exception to the first-to-file rule and the automatic bankruptcy stay in 11 U.S.C.S. § 362.

**OVERVIEW:** Patents for laminated flooring panels were the subject of the instant consolidated patent infringement action. The customer asserted that, since the manufacturers were the builders of the products which allegedly infringed a patent at issue, the manufacturers were the real parties in interest. The customer also maintained that it should be dismissed as a counterclaim defendant under the customer suit exception to first to file rule. Since the allegedly infringing manufacturers and the allegedly infringing customer were defending claims of infringement in the same consolidated suit in the same jurisdiction, the customer did not show circumstances that warranted the application of the customer suit exception. Given the date of issuance of the patent, the producer's action against the customer for patent infringement was not one which was or could have been commenced prior to the date that the customer filed its bankruptcy petition. Thus, the producer's counterclaims for patent infringement did not fall within the purview of 11 U.S.C.S. § 362(a), and were not stayed. Also, the producer did not persuade the court that realignment of the parties was appropriate under the circumstances.

**OUTCOME:** The customer's motion to dismiss was denied. The producer's motion to realign the parties and for leave to file an amended consolidated complaint was granted only to the extent that the producer could amend its pleadings to substitute a party, as

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066          Page 2 of 17

Case 1:08-cv-00726-JJF     Document 32-2     Filed 05/18/2007     Page 2 of 25

exclusive licensee of the patents in suit and to include all the claims the consolidated actions; the motion was denied in all other respects.

**CORE TERMS:** customer, infringement, manufacturer, patent, counterclaim, bankruptcy petition, post-petition, realignment, consolidated, infringing, automatic stay, licensee, patentee, automatic stay provision, patent infringement, infringer, realign, burden of proof, receiver, motion to dismiss, harassment, manager, holder, declaratory judgment action, debtor in possession, bankruptcy stay, commencement, carrying, shopping, declaratory judgment

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims

**HN1** Fed. R. Civ. P. 12(b)(6) provides for dismissal of claims for failure to state a claim upon which relief may be granted. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims

**HN2** Dismissal under Fed. R. Civ. P. 12(b)(6) is only appropriate when there is no possible interpretation of the complaint under which it can state a claim. Stated somewhat differently, under Rule 12(b)(6), dismissal of a complaint is proper when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim on which relief may be granted. If it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12 (b)(6) is inappropriate. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
Civil Procedure > Summary Judgment > General Overview

**HN3** Fed. R. Civ. P. 12(b) provides that if matters outside the pleadings are presented to and not excluded by the court in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(b). The court may take judicial notice of matters of public record without converting a Fed. R. Civ. P. 12(b)(6) motion into a motion for summary judgment. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview

**HN4** Even when prudence calls for putting a redundant suit on hold, it must be stayed rather than dismissed unless there is no possibility of prejudice to the plaintiff. More Like This Headnote

Patent Law > Infringement Actions > General Overview

**HN5** When two or more patent infringement suits are commenced and each suit involves the same or similar parties and issues, courts will normally grant priority to the first-filed suit and enjoin or stay subsequent suits in order to avoid duplicative litigation and inefficient use of judicial resources. This practice is known as the first-to-file rule. More Like This Headnote

Patent Law > Infringement Actions > General Overview

**HN6** The "customer suit exception" is an exception to the first-to-file rule - under the customer suit exception, a subsequent action against an allegedly infringing "manufacturer" may be given priority over an initial action against an allegedly infringing "customer" of the manufacturer. More Like This Headnote

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066

Case 1:08-cv-00726-JJF    Document 52-2    Filed 05/18/2007    Page 3 of 25    Page 3 of 17

Patent Law > Infringement Actions > General Overview

*HN7* ⬇ The customer suit exception to the first-to-file rule and its underlying rationales assume a manufacturer's infringement suit will address all pertinent issues and adequately protect the patentee. The customer suit exception is usually applied in situations where at least one infringement suit involving a customer defendant is pending in one jurisdiction, and a similar suit involving a manufacturer defendant is pending in another jurisdiction. More Like This Headnote

Patent Law > Infringement Actions > General Overview

*HN8* ⬇ While in some circumstances the law favors suits against manufacturers, the law does not do so when a patentee has a separate interest in litigating against the customer. More Like This Headnote

Patent Law > Infringement Actions > General Overview

*HN9* ⬇ A stay or transfer of proceedings has consistently been the remedy when the criteria of the customer suit exception to the first-to-file rule in the patent context have been satisfied. More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > General Overview

*HN10* ⬇ 11 U.S.C.S. § 362(a) operates to stay the commencement or continuation of a judicial action or proceeding against the debtor that was or could have been commenced before the commencement of the case under Title 11. More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > General Overview

*HN11* ⬇ On its face, 11 U.S.C.S. § 362(a) does not appear to present any obstacle to plaintiffs who bring suit against debtors for conduct which begins after the debtor files a bankruptcy petition. However, when a plaintiff brings suit against a debtor concerning a continuing course of conduct which began pre-petition, the answer is not so clear. More Like This Headnote

Civil Procedure > Jurisdiction > General Overview

*HN12* ⬇ District courts have jurisdiction to determine their own jurisdiction. More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > General Overview

*HN13* ⬇ The filing of a bankruptcy petition "operates as a stay," 11 U.S.C.S. § 362, and does not provide authority for dismissal of claims or an action. More Like This Headnote

Civil Procedure > Declaratory Judgment Actions > General Overview
Civil Procedure > Pretrial Matters > General Overview

*HN14* ⬇ The disposition of a motion to set the order of proof for trial and to "realign" the parties rests in the discretionary powers of the district court. Ordinarily, the trial court extends the privilege of opening and closing the case to the party that has the burden of proof. Where the parties to a declaratory judgment action each bear the burden of proof on respective issues, a district court may properly deny motions for realignment. More Like This Headnote

Evidence > Testimony > Examination > General Overview

*HN15* ⬇ Fed. R. Evid. 611 addresses only the sequence in which the parties present evidence at trial, not parties' designations as "plaintiff" or "defendant." More Like This Headnote

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066

Case 1:08-cv-00726-JJF    Document 52-2    Filed 05/18/2007    Page 4 of 25    Page 4 of 17

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview 🔗

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court 🔗

**HN16**⬇ A party should be granted leave to amend its pleadings absent undue delay or prejudice, bad faith, or dilatory motive on the part of the movant. More Like This Headnote

Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel 🔗

**HN17**⬇ For a ruling to have preclusive effect under the doctrine of issue preclusion (also known as collateral estoppel), the issue decided must have been necessary to a final judgment. A ruling that does not specifically address the issue does not suffice. More Like This Headnote

Patent Law > Infringement Actions > General Overview 🔗

Patent Law > Ownership > Conveyances > Licenses 🔗

**HN18**⬇ An exclusive licensee is a proper party to an infringement suit when the licensee has received not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well. More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Duration 🔗

**HN19**⬇ Unless otherwise ordered by the bankruptcy court, the automatic stay continues until the property in question is no longer property of the estate, the case is closed or dismissed, or (for a Chapter 13 proceeding) a discharge is granted or denied. More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > Exceptions > General Overview 🔗

**HN20**⬇ 11 U.S.C.S. § 362(b) enumerates over twenty specific instances in which the automatic stay under § 362(a) does not apply. Parties whose claims do not fall within any of the enumerations of subsection (b) may still request, under subsection (d), that the presiding bankruptcy court grant relief from the stay of subsection (a) for good cause. More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > General Overview 🔗

**HN21**⬇ Since 11 U.S.C.S. § 362(a), stays the commencement or continuation of a judicial action or proceeding against the debtor that was or could have been commenced before the commencement of the case, the critical question becomes when the claim arises. More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > General Overview 🔗

**HN22**⬇ The continuation during bankruptcy of conduct (such as the sale of allegedly infringing products) begun beforehand is most certainly one in which an action "was or could have been commenced before" - pursuant to 11 U.S.C.S. § 362(a) - the bankruptcy petition is filed. More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > Exceptions > General Overview 🔗

**HN23**⬇ When allegedly infringing conduct begins pre-petition, the fact that a plaintiff does not include otherwise actionable conduct in its complaint and alleges only post-petition claims, does not, alone, save the claims from the automatic stay of 11 U.S.C.S. § 362(a). More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > Exceptions > General Overview 🔗

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066    Page 5 of 17

Case 1:06-cv-00726-JJF    Document 52-2    Filed 05/18/2007    Page 5 of 25

Civil Procedure > Remedies > Receiverships > Receivers > Liabilities 🔖
*HN24* See 28 U.S.C.S. § 959(a).

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > Exceptions > General Overview 🔖

Civil Procedure > Remedies > Receiverships > Receivers > Liabilities 🔖
*HN25* 28 U.S.C.S. § 959(a) is typically applied to allow suits against trustees, receivers, managers of property, or debtors in possession for actions taken after they have been appointed as such; i.e., to entirely post-petition conduct.   More Like This Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > Exceptions > Nonresidential Leases 🔖

Civil Procedure > Remedies > Receiverships > Receivers > Liabilities 🔖
*HN26* 28 U.S.C.S. § 959(a) applies only to suits brought against a party in its capacity as trustee, receiver, manager, or debtor in possession with respect to any of their acts or transactions in carrying on the business connected with such property. For one to have become a trustee, receiver or debtor in possession, logically the debtor must have previously filed a bankruptcy petition. Therefore, when suing a trustee, receiver, manager, or debtor in possession for "acts or transactions in carrying on business connected with" the managed bankruptcy estate property, the "acts or transactions" must necessarily have taken place post-petition, or they would not have been performed by the trustee, receiver, manager, or debtor in possession in that capacity. In other words, § 959(a) applies to suits for post-petition conduct.   More Like This Headnote

☂ **Available Briefs and Other Documents Related to this Case:**

♦   U.S. District Court Motion(s)

♦   U.S. District Court Pleading(s)

**COUNSEL:**  **[*1]**  For Alloc Inc a Delaware corporation, Plaintiff: Daniel J O'Connor, David I Roche, Shima S Roy, Baker & McKenzie, Chicago, IL.

For Unilin Decor NV a Belgian company, Unilin Beheer BV a Dutch company, Defendants: Art C Cody, David D Lee, John M DiMatteo, Lawrence O Kamin, Willkie Farr & Gallagher LLP, New York, NY; Brett H Ludwig, G Michael Halfenger, Patrick M Kuhlmann, Foley & Lardner LLP, Milwaukee, WI.

For Berry Floor NV, Counter Defendant: Shima S Roy, Daniel J O'Connor, David I Roche, Baker & McKenzie, Chicago, IL.

For Berry Finance NV, Counter Defendant: Shima S Roy, Baker & McKenzie, Chicago, IL.

For Armstrong World Industries Inc, Counter Defendant: D Scott Sudderth, Gary H Nunes, Womble Carlyle Sandridge & Rice, One Atlantic Center, Atlanta, GA; Daniel J O'Connor, David I Roche, Shima S Roy, Baker & McKenzie, Chicago, IL.

**JUDGES:** Hon. Rudolph T. Randa.

**OPINION BY:** Rudolph T. Randa

**OPINION: DECISION AND ORDER**

Patents for laminated flooring panels underlie this consolidated patent infringement action. Armstrong World Industries, Inc. ("Armstrong"), along with Alloc, Inc., Berry Floor, N.V., and Berry Finance N.V. (collectively "the Berry Defendants"), is a defendant **[*2]** to a counterclaim asserted by Unilin for infringement of United States Letters Patent Number 6,490,836 ("the '836 patent"). This decision and order addresses Armstrong's motion to dismiss (Docket No. 55) and Unilin Decor N.V. and Unilin Beheer B.V.'s (collectively "Unilin") motion for realignment of the parties and for leave to file an amended consolidated complaint (Docket No. 58). n1

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Unilin's other motion for leave to file an amended complaint (Docket No. 158), which recently became fully briefed, will be addressed in a separate decision.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## MOTION TO DISMISS UNDER THE CUSTOMER SUIT EXCEPTION

Invoking **HN1** Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides for dismissal of claims for failure to state a claim upon which relief may be granted, Armstrong seeks dismissal of the claims against it, or a stay of further proceedings against it pending resolution of the claims between Unilin and the Berry Defendants. Armstrong relies upon the customer suit exception and the automatic bankruptcy **[*3]** stay, 11 U.S.C. § 362.

Armstrong asserts that, since the Berry Defendants are the manufacturers of the products which allegedly infringe the '836 patent, the Berry Defendants are the "real parties in interest." (Armstrong Mem. in Supp. of Mot. to Dismiss Under the Customer Suit Exception ("Armstrong Dismiss Mem.") 4-6.) Armstrong contends that, since the law favors suits against manufacturers over suits against mere customers, the counterclaims for infringement of the '836 patent should be dismissed thereby promoting judicial economy and preventing undue prejudice, confusion, and harassment. *Id.* 4. Armstrong notes that Unilin has previously shown a willingness to proceed without Armstrong -- before this action was transferred from the District of Columbia, Unilin voluntarily dismissed its claims against Armstrong. *Id.* Armstrong also maintains that it should be dismissed as a counterclaim defendant under the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362. (*Id.* 4, 12.)

Unilin contends that the customer suit exception is inapplicable because the defendants and counterclaim defendants are parties in the same **[*4]** action. (Unilin Br. in Supp. of Unilin's Opp'n to Armstrong's Mot. to Dismiss under the Customer Suit Exception ("Unilin Opp'n Dismiss Br.") 4-5.) Unilin disputes Armstrong's characterization of itself as simply a customer. (*Id.* 4.) Unilin asserts that its right to bring suit against any and all infringers should not be limited by distinctions between manufacturers and customers. (*Id.* 3, 7.) Unilin also maintains that the automatic stay provision of the Bankruptcy Code should not apply since the claims of infringement are (or, in the case of the '486 patent, would be) limited to post-petition conduct. (*Id.* 8-9.)

Before addressing the substance of the motion, the Court first questions whether Armstrong properly relies on subsection (6) of Rule 12(b) of the Federal Rules of Civil Procedure. n2 **HN2** Dismissal under Rule 12(b)(6) is only appropriate when there is no possible interpretation of the complaint under which it can state a claim. *Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 637 (7th Cir. 2004). Stated somewhat differently, under Rule 12(b)(6), dismissal of a complaint is proper when it appears beyond doubt that the plaintiff can prove

no set **[\*5]** of facts in support of his claim on which relief may be granted. *Szumny v. Am. Gen. Fin., Inc.,* 246 F.3d 1065, 1067 (7th Cir. 2001) (citations omitted), "If it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Sanville v. McCaughtry,* 266 F.3d 724, 732 (7th Cir. 2001) (citations omitted).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 Both parties have submitted affidavits during their briefing of the instant motion. Armstrong has submitted the Affidavit of Kevin M. Bierdermann ("Biedermann Aff.") and Unilin has submitted the Declaration of Art Cody in Support of Unilin's Opposition to Armstrong's Motion to Dismiss under the Customer Suit Exception ("Cody Decl.").

*HN3* Rule 12(b) provides that if matters outside the pleadings are presented to and not excluded by the court in a Rule 12(b)(6) motion, the motion "shall be treated as one for summary judgment" and "all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b). The court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994), *see also, Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir. 1994) (records and reports of administrative bodies may be considered on Rule 12(b)(6) motion without triggering conversion to summary judgment motion); *Kramer v. Time Warner,* 937 F.2d 767, 774 (2nd Cir. 1991) (documents filed with SEC); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* Civil 2d § 1364 at 140-41 (3d ed. 2004).

The Court has not considered the information contained in the Bierdermann affidavit or the Cody Declaration in its decision. The Court has taken judicial notice of facts contained in the public record -- the filings in this consolidated action, Armstrong's bankruptcy action and the issuance dates for the '836 and '486 patents.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*6]**

However, the focus of Armstrong's motion is not on the allegations of the complaint. Moreover, neither the customer suit exception nor the automatic stay provision involve invocation of Rule 12(b)(6). Armstrong's invocation of Rule 12(b)(6) may have more to do with the primary relief it seeks by means of its motion -- dismissal -- than the consumer suit exception and/or bankruptcy stay provision invoked. n3 Regardless, the only significant facts that the parties rely upon are matters of public record.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 Unilin cites no cases where an action or claim was dismissed based on the customer suit exception, *See Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 738 n.3 (1st Cir. 1977), and/or the automatic bankruptcy stay provision. As recently stated, *HN4* "even when prudence calls for putting a redundant suit on hold, it must be stayed rather than dismissed unless there is no possibility of prejudice to the plaintiff." *Gleash v. Yuswak,* 308 F.3d 758, 760 (7th Cir. 2002) (citing *Deakins v. Monaghan,* 484 U.S. 193, 202-04, 108 S. Ct. 523, 98 L. Ed. 2d 529 (1988); *Central States Pension Fund v. Paramount Liquor Co.,* 203 F.3d 442 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.,* 181 F.3d 832, 838-39 (7th Cir. 1999)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*7]**

Despite the title of Armstrong's motion, the discussion in its briefs is not clear as to whether Armstrong asserts the automatic stay provision of the Bankruptcy Code as an independent basis for stay and/ dismissal, or whether Armstrong only relies upon the automatic stay as a factor to support application of the customer suit exception. (*Compare* Armstrong Dismiss Mem. 1 and 12.) Regardless, the criteria for a stay under the customer suit exception and a stay under the Bankruptcy Code differ and, therefore, will be addressed separately. *See, e.g., Sundstrand Corp. v. Am. Brake Shoe Co.,* 315 F.2d 273, 276 (7th Cir. 1963) ("A finding of harassment or the probability thereof is a necessary prerequisite to the exercise of the District Court's discretion in restraining suits against customers."); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.,* 140 B.R. 969, 975-76 (N.D. Ill. 1992) (Patent infringement case addressing the assertion that the claims were subject to the automatic stay and stating that "all proceedings in a single case are not lumped together for purposes of automatic stay analysis." The district court (Seventh Circuit Court **[\*8]** of Appeals Judge Frank Easterbrook, sitting by designation as a district judge) addressed which claims in the action could have been brought against the debtor-alleged infringer *before* the debtor filed its bankruptcy petition.).

In light of the foregoing, the Court views Armstrong's motion as presenting two distinct issues: 1) Whether the customer suit exception applies even though Armstrong, the customer, and the Berry Defendants, the manufacturers, are co-defendants in the same patent infringement action? and, 2) Whether Unilin may maintain infringement claims against Armstrong (currently a debtor in bankruptcy proceedings) limited to post-petition conduct when the alleged infringement began pre-petition?

*The Customer Suit Exception*

Patent litigation often involves a race to the courthouse by the patent holder and the alleged infringer.[HN5] When two or more patent infringement suits are commenced and each suit involves the same or similar parties and issues, courts will normally grant priority to the first-filed suit and enjoin or stay subsequent suits in order to avoid duplicative litigation and inefficient use of judicial resources. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 184-86, 72 S. Ct. 219, 96 L. Ed. 200, 1952 Dec. Comm'r Pat. 407 (1952). **[\*9]** This practice is known as the first-to-file rule. *See Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1463 (Fed. Cir. 1990); *Kahn v. Gen. Motors Corp.,* 889 F.2d 1078, 1081 (Fed. Cir. 1989).

[HN6] The "customer suit exception" is an exception to the first-to-file rule -- under the customer suit exception, a subsequent action against an allegedly infringing "manufacturer" may be given priority over an initial action against an allegedly infringing "customer" of the manufacturer. *William Gluckin & Co. v. Int'l Playtex Corp.,* 407 F.2d 177, 179-80 (2d Cir. 1969); *Codex Corp.,* 553 F.2d at 738 (recognizing a rebuttable presumption that, in certain circumstances, a manufacturer's declaratory judgment action may take priority over a customer action in another jurisdiction).

Although various policies have been posited as the basis for this exception, typically the stated policy reasons are that manufacturers are the "real parties in interest" and the exception will prevent customer harassment. *See Katz,* 909 F.2d at 1464; *A.P.T., Inc. v. Quad Env'l Tech. Corp, Inc.,* 698 F. Supp. 718, 721 (N.D. Ill. 1988) **[\*10]** (citing *Codex,* 553 F.2d at 737-38). [HN7] The exception and its underlying rationales assume the manufacturer's suit will address all pertinent issues and adequately protect the patentee. *A.P.T., Inc.,* 698 F. Supp. at 721. The customer suit exception is usually applied in situations where at least one infringement suit involving a customer defendant is pending in one jurisdiction, and a similar suit involving a manufacturer defendant is pending in another jurisdiction. *See Naxon Telesign Corp. v. GTE Info. Sys., Inc.,* 89 F.R.D. 333, 339 (N.D. Ill. 1980).

In the present case, the allegedly infringing manufacturers, the Berry Defendants, and the allegedly infringing customer, Armstrong, are defending claims of infringement in the *same* consolidated suit in the *same* jurisdiction. Therefore, there is no issue of which jurisdiction should be granted priority and therefore the exception to the typical priority rule is inapposite. *See Id.* ("where suit against the manufacturer and customer would take place simultaneously . . the problem addressed in *Codex* and *Gluckin & Co.* is not presented").

Furthermore, the rationales underlying **[*11]** the customer suit exception do not support its application in the instant case. *HN8* While in some circumstances the law favors suits against manufacturers, the law does not do so when a patentee has "a separate interest in litigating against the customer." *A.P.T.,* 698 F. Supp. at 721; *Emerson Elec. Co. v. Black & Decker Mfg.,* 606 F.2d 234, 241 (8th Cir. 1979); 8 Donald Chisum, *Chisum on Patents,* § 21.03[6](4) (2005) ("The preference for the manufacturer's suit over the customer suit is not an absolute one."). Unilin has asserted that Armstrong disseminated manuals showing users how to "shave off" a portion of a groove of the Swiftlock product to allow for snapping engagement. (Unilin Opp'n Dismiss Br. at 4.) Whether or not the shaving off constitutes contributory infringement of claims of the United States Letters Patent Number 6,006,486 ("the '486 patent") or claims of the '836 patent are issues indicating that Unilin has a unique interest in litigating its counterclaims against Armstrong.

Moreover, none of the cases cited by Armstrong involve the *dismissal* of a customer defendant from a case because of their status as a customer. Rather, **[*12]** *HN9* a stay or transfer of proceedings has consistently been the remedy when the criteria of the customer suit exception have been satisfied. *See, e.g., Kerotest Mfg.,* 342 U.S. at 185 (upholding stay); *Katz,* 909 F.2d at 1463 (stay of proceedings; stay of New York proceeding reversed; stay of Batavia proceedings upheld); *Codex,* 553 F.2d at 735 (reversing Massachusetts district court's denial of an injunction to stay a Kansas district court action against manufacturer's customer. Massachusetts district court action was declaratory judgment action brought by manufacturer of accused product against patent holder.); *American Academy of Science v. Novell, Inc.,* 1992 U.S. Dist. LEXIS 20145, 24 U.S.P.Q.2d 1386 (N.D.Ca. 1992) (denying allegedly infringing defendant manufacturer's motions to sever, transfer and stay proceedings by patent holder against manufacturer's customers under the customer suit exception pending resolution of manufacturer's subsequently-filed action for declaratory judgment of invalidity and non-infringement); *A.P.T., Inc.,* 698 F. Supp. at 722 (denying motion to enjoin first-filed proceeding because customer suit exception was inapplicable **[*13]** and transferring competing manufacturer's declaratory judgment action to forum of first-filed action); *Refac Int'l, Ltd. v. IBM.,* 790 F.2d 79, 80-81 (Fed. Cir. 1986) (upholding stay of patent holder's claims against customers).

Armstrong cites *Refac International, Limited,* 790 F.2d at 80-81, for the proposition that the customer suit exception is applicable even when manufacturers and customers are joined in the same infringement action. *Refac* involved a patent infringement action brought by a patent holder, Refac International, Ltd. ("Refac") against 37 defendants. *Id.* at 81. Citing "sensible judicial management," the district court stayed further proceedings against 31 customer defendants and allowed the case to continue against six defendants who acknowledged they were manufacturers. *Id.* The 31 customer defendants had agreed to be bound by the district court's decision and remained parties in the action. *Id.*

Refac's appeal from the stay order was dismissed. *Id.* at 80. Addressing Refac's motion for reconsideration of the dismissal order, the appellate court stated that Refac ignored the case management **[*14]** purpose of the order and Refac's own interest in completing a trial before the expiration of its patents, which it could not expect to do with 37 defendants. *Id.* On a petition for reconsideration, the appellate court stated that "the order staying the prosecution of claims against thirty-one defendants is a matter of case management within the discretion of the district court." *Refac Int'l Ltd. v. IBM,* 798 F.2d 459, 460 (Fed. Cir. 1986).

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066
Page 10 of 17
Case 1:06-cv-00726-JJF    Document 52-2    Filed 05/18/2007    Page 10 of 25

Subsequent decisions have held that the stay fashioned in *Refac* was a product of the rare circumstances presented and have limited its application. *Mitsubishi Elec. Corp. v. IMS Tech., Inc.,* No. 96 C 0499, 1996 U.S. Dist. LEXIS 12239 (N.D. Ill. Aug. 21, 1996); *Rates Tech. Inc. v. New York Tel. Co.,* No. 94 Civ. 9297, 1995 U.S. Dist. LEXIS 10254 (S.D.N.Y. July 23, 1995). The circumstances of *Refac* are distinguishable from those of the instant consolidated action -- the number of defendants in this action do not pose case management issues, Armstrong has not agreed to be bound by the litigation between Unilin and the Berry Defendants, and Unilin has a distinct infringement claim against Armstrong. **[*15]** *See Mitsubishi Elec. Corp.,* 1996 U.S. Dist. LEXIS 12239 at *7-*10; *Rates Tech. Inc.,* 1995 U.S. Dist. LEXIS 10254 at *6-*7.

Attempting to demonstrate harassment by Unilin, Armstrong sets forth the history of Unilin's treatment of Armstrong throughout these consolidated infringement suits. (Armstrong Dismiss Mem. 1-3, 9-11.) Unilin filed an action alleging infringement of the '486 Patent in the federal district court for the District of Columbia (Case No. 01-CV-1571), naming Armstrong as a Defendant. n4 Subsequently, Unilin stipulated to Armstrong's dismissal from that action.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The District of Columbia action (Case No. 01-CV-1571) was transferred to this District, assigned Case No. 04-C-121, and consolidated with this action, Case No. 02-C-1266, and Case No. 03-C-342. (Case No. 03-C-342 also was originally filed in the District of Columbia as Case No. 00-CV-1823.) Case No. 02-C-1266 and Case No. 03-C-342 were consolidated into a single action in November 2003 and the Case No. 04-C-121 action was added to the consolidated cases on September 30, 2004.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*16]**

Later, in Case No. 02-C-1266 filed in this district, Unilin joined Armstrong as a Counterclaim Defendant alleging infringement of the '836 Patent. Now, Unilin seeks to re-assert claims of infringement of the '486 patent against Armstrong which were dismissed in Case No 01-CV-1571. *Id.*

The foregoing does not support Armstrong's contention that it is being harassed by Unilin. *Sundstrand,* 315 F.2d at 276-77. Furthermore, this Court questions how the purported 'harassment" will be alleviated by dismissing Armstrong from this infringement litigation. If the Berry Defendants do not to establish patent invalidity or non-infringement of the Unilin patents, Unilin could recommence proceedings against Armstrong.

To summarize, in almost every instance, the courts have applied the customer suit exception to resolve issues of venue priority. In the present action, since all relevant parties are joined in the same suit in the same jurisdiction and since the "case management" issues of *Refac* are not present, Armstrong has not shown circumstances that warrant the application of the customer suit exception.

*Automatic Stay Under the Bankruptcy Code*

**HN10** Section 362(a) of **[*17]** the Bankruptcy Code operates to stay "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a). Thus, **HN11** on its face, the section does not appear to present any obstacle to plaintiffs who bring suit against debtors for conduct which began *after* the debtor filed a bankruptcy petition. However, when a plaintiff brings suit against a debtor concerning a

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066                    Page 11 of 17

Case 1:06-cv-00726-JJF   Document 52-2   Filed 05/18/2007   Page 11 of 25

continuing course of conduct which began pre-petition, the answer is not so clear. May a plaintiff merely select a post-petition date on which to begin a claim of the allegedly infringing conduct? n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 To the extent that § 362(a) would deprive the Court of jurisdiction over Unilin's claims against Armstrong, this Court nay determine the applicability of §362(a) because $^{HN12}$ district courts have jurisdiction to determine their own jurisdiction. _In re Mahurkar,_ 140 B.R. at 973.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*18]**

It is not apparent from the parties' submissions when, exactly, Armstrong filed its bankruptcy petition. However, the Court takes judicial notice of the court docket for of the United States Bankruptcy Court for the District of Delaware, which indicates that Armstrong filed its bankruptcy petition on December 6, 2000, and that action is still pending. _See In re Armstrong World Industries, Inc., et al.,_ Case No. 00-04471 (JKF), Docket as of Dec. 7, 2005 (D. Del. Bankr.)

When Armstrong filed its motion to dismiss in this action, only Unilin's counterclaims of infringement of the '836 patent were pending against Armstrong. The '836 patent issued on December 10, 2002. Unilin filed its infringement counterclaims against Armstrong on March 21, 2003 -- about three months after the issuance of '836 patent. Given the date of issuance of the '836 patent, Unilin's action against Armstrong for infringement of the '836 patent was not one which "was or could have been commenced" prior to the December 2000, date that Armstrong filed its bankruptcy petition. _See Larami Ltd. v. Yes! Entm't Corp.,_ 244 B.R. 56, 58-59 (D.N.J. 2000) (denying motion to enforce automatic stay provision **[\*19]** under § 362(a) in patent infringement action when the subject patent issued after the bankruptcy petition was filed and damages were sought only for the infringing action after the patent issued.) n6 Consequently, Unilin's counterclaims for infringement of the '836 patent do not fall within the purview of § 362(a), and will not be stayed. Moreover, to the extent that Armstrong may rely upon § 362 as a basis for dismissal, $^{HN13}$ the filing of a bankruptcy petition "operates as a stay," 11 U.S.C. § 362, and does not provide authority for dismissal of claims or an action.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Significantly, the court held that although the post-petition claim was not barred by §362 (a), the execution or the attachment of a judgment obtained by a post-petition claim would be barred. _Larami, Ltd.,_ 244 B.R. at 59 n.4. The plaintiff could proceed on its claim before the district court, but would have to petition the bankruptcy court for release from the stay in the event that it sought to satisfy a judgment against the property of the bankruptcy estate. _Id._

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*20]**

Armstrong has not established that the claims against it should be dismissed or stayed. Therefore, Armstrong's motion to dismiss is denied.

### MOTION TO REALIGN AND TO AMEND

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066   Filed 05/18/2007   Page 12 of 25   Page 12 of 17

Case 1:06-cv-00726-JJF   Document 52-2   Filed 05/18/2007   Page 12 of 25

By its motion to amend and realign, Unilin seeks to realign itself as the plaintiff in the 1266 action and Armstrong, the Berry Defendants, and Valinge Aluminum AB as the defendants. Unilin also seeks to file an amended complaint consolidating all claims of the Case No. 02-C-1266, Case No. 03-C-342, and Case No. 04-C-121 actions, to substitute Flooring Industries for Unilin Decor as a party, and to add claims of infringement of the '436 patent against Armstrong. n7 (Unilin Mem of P. & A. in Supp. of Unilin's Mot. to Realign the Parties and for Leave to File an Am. Consol. Compl. ("Unilin Mem. of P. & A.") 3.) Armstrong and the Berry Defendants argue that realignment is not warranted, that Unilin is collaterally estopped from substituting Flooring Industries as the exclusive licensee of the patents in suit, and that automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), prevents Unilin from bringing the infringement claims against Armstrong. (Pl/Counterclaim Defs/Defs' **[*21]** Opp'n. to Unilin's Mot. to Realign the Parties and File an Am. Consol. Compl. ("Berry Opp'n. Br.") 5.)


- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n7 For ease of reference, the three consolidated actions are referred to as the 02-C-1266, 03-C-342, and/or 04-C-121 action(s).


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*Realignment of the Parties*

**HN14**The disposition of a motion to set the order of proof for trial and to "realign" the parties rests in the discretionary powers of the district court. *Anheuser-Busch, Inc. v. John Labatt, Ltd., 89 F.3d 1339, 1344 (8th Cir.1996)* (citing *Skogen v. Dow Chemical Co., 375 F.2d 692, 704, 706 (8th Cir. 1967)*). See also, *Lentner v. Lieberstein, 279 F.2d 385, 388 (7th Cir. 1960)*. Ordinarily, the trial court extends the privilege of opening and closing the case to the party that has the burden of proof. *Martin v. Chesebrough-Pond's, Inc., 614 F.2d 498, 501 (5th Cir. 1980)*. Where the parties to a declaratory judgement action each bear the burden of proof on respective issues, a district court may **[*22]** properly deny motions for realignment. *See, e.g., Anheuser-Busch, Inc, 89 F.3d at 1344* (upholding the district court's denial of Labatt's motion to realign the parties since "both Labatt and [Anheuser-Busch] bore the burden of proof on distinct counts of their causes of action. The District Court understandably chose to allow the actual plaintiff, the party that filed the lawsuit, to proceed first.").

**HN15**Rule 611 of the Federal Rules of Evidence and several cases that Unilin cites as support for realignment address only the **sequence** in which the parties present evidence at trial, not parties' designations as "plaintiff" or "defendant." *Fed. R. Evid. 611*; *Moylan v. Meadow Club, Inc., 979 F.2d 1246, 1251 (7th Cir. 1992)*(the court changed sequence of closing argument allowing defendant to argue first and last because the only remaining issue was defendant's affirmative defense); *Martin, 614 F.2d at 501* (upholding the denial of defendant-counter-claimant's request for a rebuttal closing argument -- parties were directed to present closing arguments in the same order they had presented evidence and a rebuttal argument was allowed **[*23]** to the plaintiff only); *Grayling Industries, Inc. v. GPAC Inc., 1992 U.S. Dist. LEXIS 20702, 25 U.S.P.Q.2d 1239, 1240 (N.D. Ga. 1992)* (Absent the plaintiff's claims which were to be resolved by the court, the action closely resembled a classic patent infringement action upon which the defendant had the burden of proof and that, therefore, the defendant was entitled to open and close the case to the jury and to present evidence first.). Therefore, such authorities provide little, if any, support for the party realignment sought by Unilin.

*Starter Corporation v. Converse, Inc., 170 F.3d 286 (2d Cir. 1999)*, is also cited by Unilin. *Starter* was a declaratory judgment action brought by Starter Corporation ("Starter"), an

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066

Case 1:06-cv-00726-JJF    Document 52-2    Filed 05/18/2007    Page 13 of 25

Page 13 of 17

athletic apparel manufacturer, to establish Starter's right to use certain trademarks on athletic footwear. Defendant Converse, Inc., ("Converse") brought counterclaims against Starter. In response to Converse's pretrial request that it be realigned as the plaintiff, the court held that it would do so only if Converse, the would-be plaintiff, would concede the second (and the only disputed) prong of the test for declaratory judgment jurisdiction in a trademark infringement **[*24]** action. *Id.* at 291. Converse conceded the issue and, then, the court granted the realignment "because Converse now had 'the burden of proof on the only remaining substantive issue,' namely, whether use of the Starter marks on shoes would infringe upon the Converse mark." *Id.* (internal citation omitted).

In this action, there is no indication that Unilin would concede the invalidity of its patents or that Armstrong and the Berry Defendants would concede that their products infringe the patents. Absent such concession, neither Unilin nor Armstrong and the Berry Defendant bear the burden of proof on a sole disputed issue. *Starter* is, therefore, inapposite.

Unilin also cites *Datamize, Inc. v. Fidelity Brokerage Services, LLC,* 2004 U.S. Dist. LEXIS 29100, No. 2:03-CV-31-DF, 2004 WL 1683171 (E.D. Tex. Apr. 22, 2004), a patent infringement action. In *Datamize,* realignment was granted due to a finding that the alleged infringer had engaged in forum shopping -- not merely to obtain a more simplistic organization of the claims. The alleged infringer, Plumtree, filed its request for a declaratory judgment in the Northern District of California prior to the dismissal of the **[*25]** original infringement suit filed by the patentee, Datamize, in the District of Montana. *Datamize,* 2004 U.S. Dist. LEXIS 29100, 2004 WL 1683171, at *1. Datamize then filed a motion for realignment in the Northern District of California. The motion was granted because the court "expressly found that Plumtree had engaged in a blatant form of forum shopping." 2004 U.S. Dist. LEXIS 29100, [WL] at *7. Here, no finding of forum shopping has been made -- nor is there evidence of such conduct.

Unilin has not persuaded the Court that realignment of the parties is appropriate under the circumstances of this action. Therefore, its request is denied.

*Consolidation of Claims*

Unilin requests leave to consolidated all its claims in a single amended complaint, rather than continuing with the three complaints. Such request is not specifically addressed by Armstrong and the Berry Defendants. **HN16** A party should be granted leave to amend its pleadings absent undue delay or prejudice, bad faith, or dilatory motive on the part of the movant. *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). The amendment of the complaint to included all the claims in the Case No. 02-C-1266, 03-C-342, and 04-C-121 actions will streamline this action **[*26]** and there is no indication that amendment should be denied based on undue delay or prejudice, bad faith, or dilatory motive. Therefore, to that extent, Unilin's motion is granted.

*Substitution of Flooring Industries*

Unilin also seeks to substitute Flooring Industries as a party for Unilin Decor, in its capacity as exclusive licensee of the '836 patent. Apparently, Unilin's counsel was unaware that, for some time, Unilin Decor was no longer the exclusive licensee of the patents in suit and that Flooring Industries had assumed that status. (Unilin Mem. of P. & A. 12-13.)

Armstrong and the Berry Defendants first argue that Unilin is collaterally estopped From substituting Flooring Industries since Judge Clevert previously ruled on a motion by Unilin that included, among other things, a request to substitute Flooring Industries. (Berry Opp'n. Br. at 12.) In an order issued on August 11, 2003, in the 02-C-1266 action, Judge Clevert denied that motion to amend stating that: "Given the joint litigation history of these parties and the two pending suits involving the '486 patent, this court is concerned over perceived

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066    Page 14 of 17

Case 1:06-cv-00726-JJF    Document 52-2    Filed 05/18/2007    Page 14 of 25

forum shopping, delay in moving forward with the prosecution of claims, **[*27]** and undue prejudice to the counterclaim defendants. The Unilin defendants' motion for leave to amend the counterclaim has the effect of further splintering this litigation among three district courts." *Alloc v. Unilin Decor, N. V.,* Case No. 02-C-1266, slip op. at 3 (E.D. Wis. Aug. 11, 2003.) The August 11, 2003, order indicated that the parties agreed that the prudent course appeared to be a motion to consolidate filed in Case Nos. 00-C-1823 and 02-C-1266. *Id.* The substitution of Flooring Industries for Unilin Decor was not specifically addressed in the August 11, 2003, decision. Additionally, a subsequent order suggests that Judge Clevert contemplated that motion to amend might be renewed. (Berry Opp'n Br., Ex. D & E 1-2) ("the court's observation that the August 11 decision considered the possibility that the defendant may file a second motion following consideration [sic] of related cases.") Moreover, *HN17* for a ruling to have preclusive effect under the doctrine of issue preclusion (also known as collateral estoppel), the issue decided must have been necessary to a final judgment. *Loeb Indus., Inc. v. Sumitomo Corp.,* 306 F.3d 469, 496 (7th Cir. 2002). A ruling **[*28]** that does not specifically address the issue does not suffice. Also, there has been no final judgment in this action.

Armstrong and the Berry Defendants also argue that the exclusive licensees of the patents lack standing to be parties to infringement suits. (Berry Opp'n. Br. 13.) However, *HN18* an exclusive licensee is a proper party to an infringement suit when the licensee has "received not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1552 (Fed. Cir. 1995). Unilin has alleged that Flooring Industries is the sole licensee of the '836 patent and holds full rights to enforce it. (Unilin Mem. of P. & A. 13.) Therefore, at this juncture, Unilin's allegations indicate that Flooring Industries has standing to be a plaintiff in the present action. *See Rite-Hite,* 56 F.3d at 1552.

Armstrong and the Berry Defendants repeatedly note that Rule 15(a) of the Federal Rules of Civil Procedure requires that a party should be granted leave to amend its pleadings **[*29]** absent undue delay or prejudice, bad faith, or dilatory motive on the part of the movant. (Berry Opp'n. Br. at 5 (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).) In regard to the substitution of Flooring Industries, Armstrong and the Berry Defendants do not argue that such substitution would prejudice them, any delay would ensue, or that Unilin is acting in bad faith. Therefore, Unilin will be allowed to amend its complaint to substitute Flooring Industries for Unilin Decor.

*Proposed '486 Patent Infringement Claims Against Armstrong*

Addressing whether Unilin should be allowed to add proposed infringement claims against Armstrong based on the '489 patent, requires consideration of the impact of the automatic bankruptcy stay of § 362. "The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, . . . thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *In re Holtkamp,* 669 F.2d 505, 508 (7th Cir. 1982) (citing H.R.Rep. No. 595, 95th Cong. **[*30]** , 1st Sess. 340 (1977), reprinted in (1978) U.S. Code Cong. & Ad. News 6296-97 and quoting *In re Frigitemp Corp.,* 8 B.R. 284, 289 (D.C.S.D.N.Y. 1981)). Thus, *HN19* unless otherwise ordered by the bankruptcy court, "the automatic stay continues until the property in question is no longer property of the estate, the case is closed or dismissed, or (for a Chapter 13 proceeding) a discharge is granted or denied." *In re Williams,* 144 F.3d 544, 546 (7th Cir. 1998) (citing 11 U.S.C. § 362(c)). *HN20* Subsection (b) enumerates over twenty specific instances in which the automatic stay under subsection (a) does not apply. 11 U.S.C. § 362. Parties whose claims do not fall within any of the enumerations of subsection (b) may still request, under subsection (d), that the *presiding bankruptcy court* grant relief from the stay

Get a Document by Citation 2005 U.S. Dist. LEXIS 28066

Case 1:06-cv-00726-JJF    Document 52-2    Filed 05/18/2007    Page 15 of 25

Page 15 of 17

of subsection (a) for good cause. _In re Williams,_ 144 F.3d at 546; 11 U.S.C. § 362(d).

_HN21_ Since the statute stays the "commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement [*31] of the case under this title," 11 U.S.C. § 362(a), the critical question becomes when the claim arose. _In re Mahurkar,_ cited previously in this decision, involved infringement claims brought by the patentee which predated the alleged infringer's filing of a bankruptcy petition. 140 B.R. at 970. _In re Mahurkar_ holds that _HN22_ "the continuation during bankruptcy of conduct (such as the sale of [allegedly infringing products]) begun beforehand is most certainly one in which an action 'was or could have been commenced before"' the bankruptcy petition was filed. _Id._ at 976. The court stayed both the patentee's infringement claims n8 and the alleged infringer's request for declaratory judgement, stating that "the bankruptcy court is the clearing house for private actions, and it has yet to approve [the patentee's] request to pursue his demand for an injunction." _Id._ at 977. Thus, _HN23_ when allegedly infringing conduct began pre-petition, the fact that a plaintiff does not include otherwise actionable conduct in its complaint and alleges only post-petition claims, does not, alone, save the claims from the automatic stay [*32] of Section 362(a).

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Although the patentee had previously conceded that claims for damages spanning pre- and post-petition conduct were stayed, there is nothing to suggest that _In re Mahurkar_ should be limited to injunctive relief claims.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Unilin contends that 28 U.S.C. § 959(a) is an exception to Section 362(a). Section 959 states that:

> _HN24_ Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, _with respect to any of their acts or transactions in carrying on business connected with such property._ Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a) (emphasis added). n9 _HN25_ Section 959(a) is typically applied to allow suits against trustees, receivers, managers of property, or debtors in possession for [*33] actions taken after they have been appointed as such; i.e., to entirely post-petition conduct. _See, e.g., In re Newman Cos. of Wis., Inc.,_ 45 B.R. 308, 309 (Bankr. E.D. Wis. 1985); _Carter v. Rodgers,_ 220 F.3d 1249, 1254 (11th Cir. 2000); _Haberern v. Lehigh and New England Ry. Co.,_ 554 F.2d 581, 585 (3d Cir. 1977).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 _In re Mahurkar_ did not address 28 U.S.C. § 959.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066     Page 16 of 17

Case 1:06-cv-00726-JJF   Document 52-2   Filed 05/18/2007   Page 16 of 25

*HN26* Section 959(a) applies only to suits brought against a party in its capacity as trustee, receiver, manager, or debtor in possession with respect to any of their acts or transactions in carrying on the business connected with such property. *Carter,* 220 F.3d at 1254 (comparing action against trustee for acts in carrying on business of debtor with action against trustee in personal capacity for breach of fiduciary duty). For one to have become a trustee, receiver or debtor in possession, logically the debtor must have previously filed a bankruptcy petition. Therefore, **[*34]** when suing a trustee, receiver, manager, or debtor in possession for "acts or transactions in carrying on business connected with" the managed bankruptcy estate property, the "acts or transactions" must necessarily have taken place post-petition, or they would not have been performed by the trustee, receiver, manager, or debtor in possession in that capacity. In other words, § 959(a) applies to suits for post-petition conduct.

The '486 patent issued approximately one year before the date Armstrong filed its bankruptcy petition. Therefore, Unilin could have brought its infringement claims under the '486 patent *before* Armstrong filed for bankruptcy. Under *In re Mahurkar,* the fact that Unilin would limit its claims to seek only post-petition damages would not save Unilin's claims with respect to the '486 patent from the automatic stay provision. As such, Unilin's proposed claims against Armstrong would be futile since they would not withstand a subsequent motion by Armstrong to dismiss or stay under § 362(a). *See Bower v. Jones,* 978 F.2d 1004, 1008 (7th Cir. 1992). Accordingly, the Court will not permit Unilin to assert claims of infringement of the '486 patent **[*35]** against Armstrong at this time.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Armstrong's motion to dismiss under the customer suit exception (Docket No. 55) is **DENIED.**

Unilin's Motion to Realign the Parties and for Leave to File an Amended Consolidated Complaint (Docket No. 58) is **GRANTED** only to the extent that Unilin may amend its pleadings to substitute Flooring Industries for Unilin Decor as exclusive licensee of the patents in suit and to include all the claims in the Case No. 02-C-1266, 03-C-342, and 04-C-121 actions; the motion is **DENIED** in all other respects.

Unilin's amended complaint as described above **SHALL** be filed no later than **January 15, 2006.**

Dated at Milwaukee, Wisconsin this 15th day of December, 2005.

**BY THE COURT**

**s/Rudolph T. Randa**

**Hon. Rudolph T. Randa**

**Chief Judge**

Service:   **Get by LEXSEE®**
Citation:  **2005 us dist lexis 38066**
View:      Full
Date/Time: Friday, May 18, 2007 - 3:49 PM EDT

* Signal Legend:
● -   Warning: Negative treatment is indicated
[Q] -   Questioned: Validity questioned by citing refs

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 38066    Page 17 of 17

Case 1:06-cv-00726-JJF    Document 52-2    Filed 05/18/2007    Page 17 of 25

⚠ - Caution: Possible negative treatment

◆ - Positive treatment is indicated

Ⓐ - Citing Refs. With Analysis Available

❶ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize*® that case.

 LexisNexis®

About LexisNexis  |  Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2003 WL 22509405 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Dean v. Brandywine Studios, Inc.
D.Del.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
J. Simpson DEAN, Jr., Plaintiff,
v.
BRANDYWINE STUDIOS INC., a Delaware
corporation, Anthony John Obara, Jr., Jane W.
Obara, and Brandywine Sculpture Studios, Inc.,
Defendants.
BRANDYWINE STUDIOS INC., Anthony John
Obara, Jr., and Jane W. Obara, Counter-Claimants,
v.
Dean J. SIMPSON, Jr., Counter-Defendant.
**No. Civ.A. 99-679-KAJ.**

Nov. 5, 2003.

David S. Eagle, Klehr, Harrison, Harvey,
Branzburg & Ellers, Cathy L. Reese, Greenberg
Traurig, LLP, Wilmington, DE, for Plaintiff.
Edward C. Pankowski, Jr., Wilmington, DE, for
Defendant.
David S. Eagle, Klehr, Harrison, Harvey,
Branzburg & Ellers, Wilmington, DE, for
Counter-Defendant.

*MEMORANDUM ORDER*
JORDAN, J.
**\*1** This matter is before the court on defendants'
post-trial Motion for Stay of Judgment Pending
Appeal to the United States Court of Appeals for
the Third Circuit and Motion for Relief from
Judgment. (Docket Item ["D.I."] 170; the "Motion"
.) The defendants lost at the trial of this case in
December, 2001. (D.I. 158 at 1.) They filed a series
of post-trial motions that were denied. (*See id.*)
Now, after filing an appeal (D.I. 170 at ¶ 5), and
without reference to the controlling Rule and
standards and without mention of a supersedeas
bond, the defendants have filed their Motion,
seeking to further delay the final resolution of this

case.

Rule 62(d) of the Federal Rules of Civil Procedure
states that a stay of judgment may be obtained
pending appeal if a party posts an appropriate
supersedeas bond. "[T]he factors regulating the
issuance of a stay are ...:(1) whether the stay
applicant has made a strong showing that he is
likely to succeed on the merits; (2) whether the
applicant will be irreparably injured absent a stay;
(3) whether issuance of the stay will substantially
injure the other parties interested in the proceeding;
and (4) where the public interest lies." *Hilton v.
Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95
L.Ed.2d 724 (1987). Defendants have not attempted
to demonstrate that they can meet these standards.
Rather, their filing is focused on repeating
allegations of fraud and misconduct against
plaintiff's counsel. (*See* D.I. 170 at ¶ 23.) Neither
have defendants mentioned the requirement of a
bond. Because they have failed to address the
pertinent legal standards or to comply with the
prerequisites for obtaining a stay, their motion to
stay is denied.

Likewise, the defendants' effort to obtain relief from
judgment under Rule 60(b) must be denied. The
defendants' own actions have divested this court of
jurisdiction to grant the relief they seek.
Most Courts of Appeals hold that while an appeal is
pending, a district court, without permission of the
appellate court, has the power both to entertain and
to deny a Rule 60(b) motion. If a district court is
inclined to grant the motion or intends to grant the
motion, those courts also hold, it should certify its
inclination or its intention to the appellate court
which can then entertain a motion to remand the
case. Once remanded, the district court will have
power to grant the motion, but not before.

*Venen v. Sweet,* 758 F.2d 117, 123 (3d Cir.1985).
The defendants have failed to demonstrate the
extraordinary circumstances warranting relief under
Rule 60(b). *See Moolenaar v. Government of Virgin*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 22509405 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**


*Islands,* 822 F.2d 1342, 1346 (3d Cir.1987) ("The remedy provided by Rule 60(b) is 'extraordinary, and special circumstances must justify granting relief under it." ') Moreover, the Motion is untimely.

Accordingly, it is hereby ORDERED that defendants' Motion for Stay of Judgment Pending Appeal to the United States Court of Appeals for the Third Circuit and Motion for Relief from Judgment (D .I. 170) is DENIED. Plaintiff's Motion to Strike Defendants' Reply In Support of Their Motion for Stay Pending Appeal and for Relief from Judgment, or in the Alternative, Motion for Leave to File Sur-Reply (D.I.177) is DENIED as moot.

D.Del.,2003.
Dean v. Brandywine Studios, Inc.
Not Reported in F.Supp.2d, 2003 WL 22509405 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 12239 Page 1 of 6

Case 1:06-cv-00726-JJF Document 52-2 Filed 05/18/2007 Page 20 of 25

Service: **Get by LEXSEE®**
Citation: **1996 us dist lexis 12239**

*1996 U.S. Dist. LEXIS 12239, ***

MITSUBISHI ELECTRIC CORPORATION, and MITSUBISHI ELECTRIC INDUSTRIAL CONTROLS, INC., Plaintiffs, v. IMS TECHNOLOGY, INC., HURCO COMPANIES, INC., and DOES 1-20, Defendants.

Case No. 96 C 0499

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1996 U.S. Dist. LEXIS 12239

August 21, 1996, Decided
August 21, 1996, FILED; August 22, 1996, DOCKETED

**DISPOSITION:** **[*1]** Mitsubishi's motion for a stay and/or injunction denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff manufacturer brought a declaratory judgment suit against defendant patent owners seeking a determination that the patent was invalid, unenforceable, and not infringed by any process, or product made or sold by the manufacturer or its customers or distributors. The manufacturer filed a motion to stay and to enjoin the patent owner from proceeding with any infringement suits regarding the patent against the manufacturer's customers.

**OVERVIEW:** The manufacturer sought a stay as to the customers joined in the present suit and an injunction to restrain the patent owner from proceeding with any allegations of infringement against the customers using the product. The court held that judicial economy would not be served either by staying the infringement claims against the other parties in the case or by enjoining the patent owners' infringement claims against parties in a different case or against other customers or end-users. The patent owners alleged distinct infringement claims against each of these parties and while the manufacturer was a very important party, it was by no means the only interested defendant. The patent owners sought damages for the infringement of both apparatus and method claims. It was conceivable that the manufacturer's product could be non-infringing; however, its use by the other defendants could infringe on the method claim of the patent. None of defendants, named customers and end-users, indicated a willingness to be bound by judgment of the case. Little judicial efficiency would result from a stay or injunction. The injunctive relief relating to other customers would prove non-workable.

**OUTCOME:** The court denied the manufacturer's motion for a stay and/or an injunction.

**CORE TERMS:** customer, infringement, injunction, end-user, patent, manufacturer, enjoin, motion to stay, first-filed, infringe, manufactured, coordinated, discovery, judicial economy, apparatus, enjoining, workpiece, recommends, weighs, Local Rule, injunctive relief, recommendation, collectively, transferred, relatedness, pretrial, referral, unnamed, joined

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview 

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 12239    Page 2 of 6

Case 1:06-cv-00726-JJF    Document 52-2    Filed 05/18/2007    Page 21 of 25

Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview 🔧
HN1⚓In the interests of judicial economy, a court has discretion to enjoin or stay parties
under its jurisdiction from proceeding with a concurrent action involving the same or
related issues.  More Like This Headnote

Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview 🔧
Patent Law > Remedies > Equitable Relief > Injunctions 🔧
HN2⚓The "customer suit" exception permits stays where the first-filed action is brought
against the customer of an offending manufacturer and a subsequent action is
brought involving the manufacturer itself. The exception was created on the
assumption that a manufacturer has a greater interest in defending patent
infringement actions than a customer or end-user. Critical considerations to be
weighed in deciding whether to stay or enjoin such suits are: whether or not all, or
at least major, issues regarding the customers will be resolved by the second suit;
and whether or not the customers have agreed to be bound by the results, including
liability for damages, flowing from the second suit.  More Like This Headnote

Civil Procedure > Judgments > Entry of Judgments > Stays of Proceedings > General Overview 🔧
Patent Law > Remedies > Equitable Relief > Injunctions 🔧
HN3⚓The willingness to be bound by judgment of the case strongly weighs against a stay
or injunction because it increases the chance for duplicitous
litigation.  More Like This Headnote

**COUNSEL:** For Plaintiffs: JOHN W. KOZAK, Esq., MARK E. PHELPS, Esq., DAVID M. AIRAN,
Esq., Leydig, Voit & Mayer, Ltd., Chicago, IL. LES J. WEINSTEIN, Esq., CHERYL L. JOHNSON,
Esq., DANIEL E. ROBBINS, Esq., Graham & James, Los Angeles, CA.

For Defendants: RAYMOND P. NIRO, Esq., ROBERT A. VITALE, JR., Esq., RICHARD B.
MEGLEY, Esq., MICHAEL S. LEE, Esq., Niro, Scavone, Haller & Niro, Ltd., Chicago, IL.

**JUDGES:** MARTIN C. ASHMAN, United States Magistrate Judge. Judge Ann C. Williams

**OPINION BY:** MARTIN C. ASHMAN

**OPINION: REPORT AND RECOMMENDATION**

This case is one of three suits pending in the Northern District of Illinois which involve United
States Patent No. B1 4,477,754 ("the '754 Patent"), held by IMS Technology, Inc. ("IMS").
n1 In two of the suits, IMS has brought infringement actions against manufacturers of
computer numerical control systems ("CNC Systems") and their customers and end-users -
95 C 5779 and 96 C 3002. In the present case, Plaintiffs, Mitsubishi Electric Corporation and
Mitsubishi Electric Industrial Controls, Inc. ("Mitsubishi"), have brought a declaratory
judgment suit against IMS and Hurco Companies, Inc. ("Hurco") **[*2]** seeking a
determination that the '754 Patent is invalid, unenforceable, and not infringed by any
process, or product made or sold by Mitsubishi or customers or distributors of Mitsubishi's
CNC Systems or by any end-user of Mitsubishi-manufactured CNC Systems. At issue before
this Court is Mitsubishi's motion to stay and to enjoin IMS from proceeding with any
infringement suits, regarding the '754 Patent, against Mitsubishi's customers. For the
following reasons, the Court recommends the denial of Mitsubishi's motion to stay and denial
of Mitsubishi's motion for an injunction.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 12239                    Page 3 of 6

Case 1:06-cv-00726-JJF    Document 52-2    Filed 05/18/2007    Page 22 of 25

n1 IMS holds the rights, title and interest in United States Patent No. 4,477,754 entitled, "Interactive Machining System" issued on October 16, 1984 and confirmed on recommendation by the U.S. Patent Office on March 21, 1995 ("the '754 Patent"). The '754 Patent has 19 claims: Claims 1-10 and 16-19 claim an apparatus "for controlling the relative motion between a tool and a workpiece;" Claims 11-15 claim methods "for automatically and interactively performing machining operations on a workpiece."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*3]**

## Relevant Procedural History

The presence of three lawsuits relating to the same patent in this District has understandably precipitated some efforts at consolidation. As the judge assigned to the lowest numbered case, i.e., Case No. 95 C 5779, Judge Charles P. Kocoras has issued several important orders affecting all three suits. First, on motion of certain defendants, Judge Kocoras severed them from Case No. 95 C 5779 and transferred them to one of the other two pending suits. Effectively, Judge Kocoras has aligned the customers and end-users with the manufacturer to whom they relate. (Docket Nos. 115, 116, 117). As a result, this case involves only CNC System equipment manufactured by Mitsubishi and includes customers and end-users of Mitsubishi-made equipment such as Yamazaki Mazak Corp., Yamazaki Mazak Trading Corp. and Mazak Corp. (collectively "the Mazak parties"), Machinery Systems, Inc. ("Machinery Systems") and Fox Tool Company, Inc. ("Fox Tool"). Case No. 95 C 5779 involves only CNC System equipment manufactured by Okuma Machinery Works, Ltd. and Okuma America Corporation ("Okuma") and Fanuc Ltd., including customers and end-users such as Ellison Machinery Company **[*4]** of the Midwest ("Ellison"), Apollo Machine & Manufacturing Co., Inc. ("Apollo") and Nissan Motor Co., Ltd., Nissan Motor Car Carrier Co., Ltd. and Nissan Motor Corp USA, Inc. (collectively "the Nissan parties"). n2 Case No. 96 C 3002 involves CNC Systems equipment manufactured by Bridgeport Machine, Inc. ("Bridgeport") and Southwestern Industries, Inc. ("Southwestern") and includes customers and end-users such as Arpac Corporation ("Arpac") and American Control Technology, Inc. ("American Control").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The Nissan parties' primary supplier of CNC Systems is Fanuc Ltd.; however, they have also purchased a few CNC Systems from Mitsubishi which they allegedly use outside the U.S.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Second, on IMS's motion, Judge Kocoras referred all three cases to the Executive Committee for coordinated pretrial proceedings under Local Rule 2.30(G). (Docket No. 46). n3 Pursuant to this order, the parties have submitted to Judge Kocoras a proposed joint plan for coordinated discovery on common issues re-aligned and discovery on common **[*5]** issues coordinated under Judge Kocoras with the parties. On August 6, 1996, Judge Kocoras clarified his previous orders and reaffirmed Judge Ann C. Williams' authority over the present case. Judge Kocoras further noted that this Magistrate Judge retained authority, under Judge Williams' referral, to enter a Report and Recommendation on the motion to stay for injunction. Thus, the Court finds Mitsubishi's motion ripe for adjudication.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Initially the Executive Committee interpreted Judge Kocoras' referral as being for reassignment for relatedness under Local Rule 2.31. However, on August 6, 1996, Judge

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 12239
Case 1:08-cv-00726-JJF   Document 31-2   Filed 05/18/2007   Page 23 of 25

Page 4 of 6

Kocoras vacated the finding of relatedness and referred the cases only to coordinate pretrial proceedings.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Mitsubishi seeks a stay as to their customers joined in the present suit; in addition, Mitsubishi seeks an injunction to restrain IMS from proceeding in Case No. 95 C 5779 with any allegations of infringement against the Nissan parties relating to their use of Mitsubishi-produced CNC Systems and to enjoin **[*6]** IMS from bringing any further suits against Mitsubishi's customers. Mitsubishi argues that these measures are necessary to protect all of their customers from unnecessary litigation regarding Mitsubishi-manufactured equipment. Mitsubishi suggests that IMS has initiated its infringement litigation in an effort to improperly pressure Mitsubishi through its named customers and may do so with other, as yet unnamed, customers. On June 24, 1996, the Mazak parties, Fox Tool and Machining Systems joined Mitsubishi's call for a stay in this suit; in addition, Mazak Corp. requests a stay of its counterclaim against IMS.

*HN1*⚓In the interests of judicial economy, a court has discretion to enjoin or stay parties under its jurisdiction from proceeding with a concurrent action involving the same or related issues. *In re Van Geuns,* 946 F.2d 845 (Fed. Cir. 1991). Generally, the first-filed suit takes priority in adjudication; however, Mitsubishi asserts that, under the "customer suit" exception, IMS's first-filed infringement claims against Mitsubishi customers and end-users (the Mazak parties, Machinery Systems and Fox Tool), which have been transferred into this suit, should be stayed pending resolution **[*7]** of Mitsubishi's later-filed declaratory judgment action. Mitsubishi further argues that the "customer suit" exception warrants the enjoining of IMS's infringement action against the Nissan parties as it relates to the few Mitsubishi-produced CNC Systems purchased by Nissan. IMS contends that neither a stay nor an injunction is warranted.

*HN2*⚓The "customer suit" exception permits stays where the first-filed action is brought against the customer of an offending manufacturer and a subsequent action is brought involving the manufacturer itself. *Whelen Technologies, Inc. v.* Mill Specialties, *Inc.,* 741 F. Supp. 715 (N.D. Ill. 1990), citing William *Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177, 178 (2d Cir. 1969). This exception was created on the assumption that a manufacturer has a greater interest in defending patent infringement actions than a customer or end-user. Critical considerations to be weighed in deciding whether to stay or enjoin such suits are: whether or not all, or at least major, issues regarding the customers will be resolved by the second suit; and whether or not the customers have agreed to be bound by the results, including liability for damages, **[*8]** flowing from the second suit. See *Katz v. Lear* Siegler, *Inc.,* 909 F.2d 1459, 1463 (Fed. Cir. 1990); and *Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081 (Fed. Cir. 1989).

Mitsubishi argues that it is the real party in interest and that issues regarding the '754 Patent's validity and infringement by Mitsubishi-manufactured CNC Systems will be resolved in this suit against IMS. Mitsubishi contends that the Mazak parties, Machinery Systems, Fox Tool and the Nissan parties will have no liability should Mitsubishi prevail in this action. In the alternative, Mitsubishi maintains that even if its CNC System is found to infringe, any damages assessed against it would satisfy most if not all of IMS's claims. In other words, Mitsubishi expresses confidence that its suit, regardless of result, will provide "efficient and virtually complete relief" of all litigation revolving around Mitsubishi-manufactured CNC Systems and the '754 Patent. (Mitsubishi Reply at 5).

The Court finds, under the circumstances of this case, that judicial economy would not be served either by staying IMS's infringement claims against the Mazak parties, Machinery Systems or Fox Tool, in this case; or by **[*9]** enjoining IMS's infringement claims against

Get a Document - by Citation - 1996 U.S. Dist. LEXIS 12239

Case 1:06-cv-00726-JJF   Document 52-2   Filed 05/18/2007   Page 24 of 25   Page 5 of 6

the Nissan parties in Case No. 95 C 5779 or against other Mitsubishi customers or end-users. First, it is undisputed that IMS has alleged distinct infringement claims against each of these parties and while Mitsubishi may indeed be a very important party, it is by no means the only interested Defendant. IMS seeks damages for the infringement of both apparatus and method claims. It is conceivable that Mitsubishi's CNC System could be non-infringing; however, its use by the other Defendants could infringe on the method claim of the '754 Patent. IMS's distinct method infringement claims against Mitsubishi's customers and end-users do not rest solely on whether or not Mitsubishi's product infringes. Thus, it is possible that some major issues involving the customers and end-users would not be resolved by this suit. For this reason, employing the "customer suit" exception would be inappropriate at this time.

Second, none of the named customer/end-user defendants have indicated *HN3* a willingness to be bound by judgment of this case. This fact strongly weighs against a stay or injunction because it increases the chance for duplicitous litigation. See **[*10]** _Refac Intern., Ltd. v. IBM,_ 790 F.2d 79, 81 (Fed. Cir. 1986) (affirming trial court's stay of suit against customers noting that they had agreed to be bound by the judgment of the suit between the patent holder and the manufacturer), _aff'd on recons.,_ 798 F.2d 459 (Fed. Cir. 1986).

Third, little judicial efficiency will result from _a_ stay or injunction. Since IMS has alleged distinct infringement against these Defendants which is interrelated with any potential infringement by Mitsubishi, discovery will necessarily involve all of these parties. These Defendants will therefore be intimately involved in the litigation regardless of a stay or injunction. In any event, it is inconceivable that the customers/end-users would totally ignore this case if a stay were granted. In this Court's experience, it is certainly reasonable to expect some degree of involvement by these defendants' attorneys, since evidence discovered and legal rulings could impact them at a later date. This Court finds that this fact weighs against a stay or injunction action at this time.

Fourth, the injunctive relief Mitsubishi seeks relating to the Nissan parties and other customers defies precise definition **[*11]** and would prove non-workable. While the injunction as to the Nissan parties is clearly limited as far as the parties involved are concerned, the extent of such an injunction is much more ambiguous. Since the Nissan parties are customers of Fanuc, they will necessarily be involved in litigation involving Case No. 95 C 5779. There will be no good method for defining the extent of the injunction. Even worse, in the case of other unnamed Mitsubishi customers, any injunction would likely either be too broad or too narrow in scope and very difficult to monitor. To construct an injunctive relief as to certain parties not named in this suit would create more problems than it would alleviate.

For these reasons, the Court finds that a stay or an injunction would not serve either the parties' or the Court's interests.

### Conclusion

The Court hereby recommends denial of Mitsubishi's motion for a stay and/or an injunction.

MARTIN C. ASHMAN

United States Magistrate Judge

Dated: August 21, 1996.

Service:  **Get by LEXSEE®**

Case 1:06-cv-00726-JJF     Document 52-2     Filed 05/18/2007     Page 25 of 25

Citation: **1996 us dist lexis 12239**
View: Full
Date/Time: Friday, May 18, 2007 - 3:44 PM EDT

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
🅀 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available

* Click on any *Shepard's* signal to *Shepardize*® that case.

 About LexisNexis  | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.