**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD, | Civil Action No. 06-726-JJF |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| v. | |
| CHI MEI OPTOELECTRONICS CORPORATION; AU OPTRONICS CORPORATION; AU OPTRONICS CORPORATION AMERICA; TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION, | |
| Defendants. | |

**DEFENDANTS TATUNG COMPANY AND TATUNG COMPANY OF
AMERICA'S MEMORANDUM IN SUPPORT OF ITS
<u>RENEWED MOTION FOR A MORE DEFINITE STATEMENT</u>**

BUCHANAN INGERSOLL & ROONEY LLP
Bryan J. Sinclair, Esq. (*pro hac vice*)
Karineh Khachatourian, Esq. (*pro hac vice*)
Jeffrey M. Ratinoff, Esq. (*pro hac vice*)
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418
Telephone: (650) 622-2300
Facsimile: (650) 622-2499
Email: bryan.sinclair@bipc.com
Email: karineh.khachatourian@bipc.com
Email: jeffrey.ratinoff@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
William E. Manning, Esq. (DE Bar #697)
Jennifer M. Becnel-Guzzo, Esq. (DE Bar #4492)
1000 West Street, Suite 1410
Wilmington, DE 19801
Telephone: (302) 552-4200
Facsimile: (302) 552-4295
Email: william.manning@bipc.com
Email: jennifer.becnelguzzo@bipc.com

*Attorneys for Defendants Tatung Company and Tatung Company of America*

Dated: June 13, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

I.      INTRODUCTION ........................................................................... 1

II.     BACKGROUND ............................................................................. 1

        A.    LPL'S Lawsuit Against The Tatung Defendants ..................................... 1

        B.    LPL'S Three Complaints .............................................................. 2

III.    LEGAL ARGUMENT ...................................................................... 3

        A.    It Is Unclear Which of the Three Complaints Is the Operative
              Pleading In this Case .................................................................. 3

        B.    LPL's Failure to Identify Any Infringing Products Mandates
              That It Provide A More Definite Statement ........................................ 4

IV.     CONCLUSION. ............................................................................... 5

# TABLE OF AUTHORITIES

## CASES

*Agilent Techs., Inc. v. Micromuse, Inc.*, 2004 WL 2346152 (S.D.N.Y.) ........................... 4

*Carver v. Condie*, 169 F.3d 469 (7th Cir. 1999) ................................................ 3

*Hewlett-Packard Co. v. Intergraph Corp.*, 2003 WL 23884794 (N.D.Cal.) ..................... 4

*Ondeo Nalco Co. v. Eka Chems., Inc.*, 2002 WL 1458853 (D. Del.) ................................ 4

*In re Papst Licensing GmbH Patent Litg.*, 2001 WL 179926 (E.D. La.) ........................... 4

*Snyder v. Pascack Valley Hospital*, 303 F.3d 271 (3d Cir. 2002) ...................................... 3

## RULES

Fed. R. Civ. P. 12 ........................................................................................... 4, 5

Fed. R. Civ. P. 15 ........................................................................................... 3

## I.    INTRODUCTION.

Tatung Company and Tatung Company of America ("the Tatung Defendants") through this motion for a more definitive statement, simply seek clarity regarding which complaint they must answer and what specific products are allegedly at issue in this litigation.  As the Court is aware, Plaintiff LG.Philips LCD Co., LTD. ("LPL") has previously sued the Tatung Defendants in Delaware and California, claiming infringement of the same patents at issue in this lawsuit.  In light of the previous claims and litigation history of these patents, the Tatung Defendants are entitled to know at the pleadings stage, before further resources are expended, whether LPL is suing them over the same products previously raised in other lawsuits so that it may frame its response and defenses appropriately.

The Tatung Defendants also seek clarification and the Court's guidance as to the operative LPL pleading to which they must respond.  In the present case, LPL claims to have three operative complaints, all with differing allegations.  LPL's position has created the practical problem of forcing each defendant to answer a different complaint, which will inevitably lead to confusion for the parties and the Court as the litigation progresses.  Accordingly, the Court should order LPL to provide a more definite statement, specifically identifying the allegedly infringing products relating to its allegations against the Tatung Defendants in a single third amended complaint against all defendants to prevent further confusion.

## II.    BACKGROUND.

### A.    LPL's Lawsuit Against The Tatung Defendants.

Over the past five years, LPL has sued numerous players in the LCD display products industry, including the Tatung Defendants, in various jurisdictions across the United States for the alleged infringement of its patents including those at issue in this lawsuit, U.S. Patent No. 5,825,449 ("the '449 Patent"), U.S. Patent No. 4,624,737 ("the '737 Patent"), and U.S. Patent No. 5,019,002 ("the '002 Patent").  (*See, e.g.*, D.I. 25.)

**B.    LPL's Three Complaints.**

On or about December 1, 2006, LPL initiated this action by filing its Complaint for Patent Infringement against Chi Mei Optoelectronics Corporation ("Chi Mei"), AU Optronics Corporation ("AUO"), AU Optronics Corporation America ("AUO America"), the Tatung Defendants, and ViewSonic Corporation ("ViewSonic"). The original complaint asserts claims against the Tatung Defendants for the alleged infringement and/or induced infringement of the '449 Patent, the '737 Patent, and the '002 Patent (collectively "the Patents") by allegedly "making, using, causing to be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing products" that purportedly infringe one or more claims of the Patents. (*See* D.I. 1 at ¶¶ 32, 37, 42; *see also* D.I. 1 at ¶¶ 8, 9, 14, 15, 21, 24, 25-30, 33, 38, 43).

The original complaint against the Tatung Defendants does not specifically identify the alleged infringing products. Instead, there are only vague and ambiguous references to "products," "variety of products," "visual display products," "LCDs" and "LCD Products." (*See, e.g.,* D.I. 1 at ¶¶ 8, 9, 14, 15, 21, 24, 25-30, 32-33, 37-38, 42-43.) Similarly, the Complaint creates further uncertainty by lumping all the defendants together by making multiple references to "Defendants' products." (*See, e.g.,* D.I. 1 at ¶¶ 21, 24, 25-30, 32-33, 37-38, 42-43.)

On or about April 11, 2007, LPL voluntarily filed its First Amended Complaint for Patent Infringement Against Defendant AU Optronics Corporation adding declaratory relief claims against AU Optronics. (*See* D.I. 29.) On or about May 11, 2007, LPL filed a third initial pleading entitled First Amended Complaint for Patent Infringement Against Defendant Chi Mei Optoelectronics Corporation and Chi Mei Optoelectronics USA, Inc. ("Second First Amended Complaint"). (*See* D.I. 54.) LPL added Chi Mei Optoelectronics USA, Inc. ("Chi Mei USA") as a party and added two declaratory relief claims against Chi Mei and Chi Mei USA, but omitted its two declaratory relief claims against AUO and AUO America previously asserted in the original First Amended Complaint. (*See, e.g.,* D.I. 54 at ¶¶ 7, 50-

62). None of the amendments to date cured the continuing vague references to products. (*See, e.g.,* D.I. 54 at ¶¶ 10,-11, 16-18, 25, 28, 30-34, 36-37, 41-42, 46-47.)

Since being served with the original complaint, the Tatung Defendants have received two extensions of time to respond. Their initial response is due on or before June 5, 2007. To receive the latest extension, the Tatung Defendants entered into a stipulation wherein they agreed to waive certain jurisdictional defenses. (D.I. 30). The Tatung Defendants file this motion pursuant to their stipulation to respond on June 5, 2007.

## III.    LEGAL ARGUMENT.

### A.    It Is Unclear Which of the Three Complaints Is the Operative Pleading In This Case.

LPL has taken the procedurally untenable position that ***all three complaints are operative*** as to one or more of defendants in this action. (D.I. 69 at p. 4 and Exh. A.) LPL's position contravenes the weight of federal authority on this issue. It is generally understood that an amended pleading supersedes the prior pleading being amended. *See* F. R. Civ. P. 15; *see also Snyder v. Pascack Valley Hospital*, 303 F.3d 271, 276 (3d Cir. 2002) ("amended complaint supersedes the original version in providing the blueprint for the future course of a lawsuit"); *Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1999) (once an amended complaint is filed, it becomes the governing pleading in the case). Since all three complaints contain allegations of infringement against the Tatung Defendants, but are different with respect to some of the other defendants, it is unclear which pleading is operative.

While the allegations lodged by LPL against the Tatung Defendants are essentially the same, having three operative complaints with differing paragraph numbering and two complaints styled "first amended complaint" lends itself to a situation of confusion, misinterpretation, and errors. Without further clarification, the Tatung Defendants are in the position of having to unilaterally choose which complaint to answer and cite to as the litigation progresses, with each defendant and possibly the Court, citing to different versions of the complaint with differing paragraph numbers. Such a procedural quandry is certain to

cause confusion as to the pleadings "at issue" in the case, and is inconsistent with the law and basic tenants of civil procedure. Accordingly, the Court should require LPL to provide a clear and more "definite" statement in a single operative pleading including all claims and allegations against all defendants.

### B.    LPL's Failure To Identify Any Infringing Products Mandates That It Provide A More Definite Statement.

As can be seen from the face of the three complaints filed in this case, LPL has not specifically identified any alleged infringing products it claims the Tatung Defendants or any of the other defendants have manufactured, used, offered to sell, caused to be offered for sale, sold, caused to be sold, or imported. In the context of patent infringement actions, courts often grant motions under Fed. R. Civ. P. 12(e) when a plaintiff fails to identify any allegedly infringing product or products. *See, e.g., Agilent Techs., Inc. v. Micromuse, Inc.*, 2004 WL 2346152, at *5 (S.D.N.Y.) (citations omitted); *Ondeo Nalco Co. v. Eka Chems., Inc.*, 2002 WL 1458853, at *1-2 (D. Del.) (dismissing defendant's counterclaims with leave to amend where unclear which products were being accused, concluding that the pleading was "too vague to provide plaintiff with fair notice"); *In re Papst Licensing GmbH Patent Litg.*, 2001 WL 179926 (E.D. La.); *Hewlett-Packard Co. v. Intergraph Corp.*, 2003 WL 23884794 at *1 (N.D.Cal.).[1]

Given the extensive litigation history of the patents at issue here, it is particularly important for the Tatung Defendants to have fair notice of what the alleged infringing products are at the pleadings stage of this new case. The Tatung Defendants' defenses could

---

[1] There appears to be a split in authority regarding granting a Rule 12(e) motion requiring plaintiff to identify allegedly infringing products. Courts that have denied these motions have done so because the Plaintiff did specifically identify at least one infringing product. These cases are therefore distinguishable from the present dispute as they stand for the proposition that a pleading need not identify every infringing product where some other limiting parameter has been set forth or at least one purportedly infringing product has been identified. *See Agilent Techs.*, 2004 WL 2346152 at *5. Here, LPL has not specifically identified a single infringing product in any of its three complaints, and therefore a more definitive statement is warranted.

be dependent on knowing whether LPL is suing on the same products raised in other lawsuits between the parties and without having this information prior to having to respond to the Complaint, it will prove challenging for them to frame properly their specific affirmative defenses. Accordingly, the Court should require LPL to provide a more definite statement of what specific product or products are at issue in this patent infringement action.

## IV.    CONCLUSION.

For the foregoing reasons, the Tatung Defendants respectfully request that the Court require LPL to provide a more definite statement in one unified pleading pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

DATED:  June 13, 2007

BUCHANAN INGERSOLL & ROONEY PC

William E. Manning, Esq. (DE Bar #697)
Jennifer M. Becnel-Guzzo, Esq (DE Bar #4492)
1000 West Street, Suite 1410
Wilmington, DE 19801
Telephone:  (302) 552-4200
Facsimile:   (302) 552-4295
Email: william.manning@bipc.com
Email: jennifer.becnelguzzo@bipc.com

Of Counsel

BUCHANAN INGERSOLL & ROONEY LLP
Bryan J. Sinclair, Esq. (*pro hac vice*)
Karineh Khachatourian, Esq. (*pro hac vice*)
Jeffrey M. Ratinoff, Esq. (*pro hac vice*)
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA  94065-1418
Telephone:  (650) 622-2300
Facsimile:   (650) 622-2499
Email: bryan.sinclair@bipc.com
Email: karineh.khachatourian@bipc.com
Email: jeffrey.ratinoff@bipc.com

-And-

USASIA LAW, APC
Joseph S. Wu, Esq. (*pro hac* vice)
5670 La Jolla Blvd
La Jolla, CA  92037
Telephone:  (858) 454-8588
Facsimile:   (858) 454-4314
Email: jwulawyer@gmail.com

-And-

X-PATENTS, APC
Jonathan Hangartner, Esq. (*pro hac vice*)
5670 La Jolla Blvd
La Jolla, CA  92037
Telephone:  (858) 454-4313
Facsimile:   (858) 454-4314
Email: jon@x-patents.com

*Attorneys for Defendants Tatung Company and*
*Tatung Company of America*

# EXHIBIT A

## Becnel-Guzzo, Jennifer M.

| | |
|---|---|
| **From:** | Dick Kirk [rkirk@bayardfirm.com] |
| **Sent:** | Tuesday, May 22, 2007 3:50 PM |
| **To:** | Arthur P. Licygiewicz; David E. Moore; Edmond D. Johnson; Hua Chen; J. Walter Sinclair; Jay C. Chiu; Becnel-Guzzo, Jennifer M.; John N. Zarian; John W. Shaw; Jonathan Hangartner; Karen L. Pascale; Kenneth R. Adamo; Matthew D. Thayne; Peter J. Wied; Philip A. Rovner; Robert C. Kahrl; Samia E. McCall; Thomas H. Kovach; Vincent K. Yip; Manning, William E. |
| **Cc:** | Bono, Gaspare |
| **Subject:** | LG.Philips v. Chi Mei Optoelectronics Corporation, C.A. No. 06-726-JJF |
| **Attachments:** | first amended complaint_CMO.pdf; Ex A_USP 5019002.pdf; Ex B_USP 5825449.pdf; Ex C_USP 4624737.pdf; Ex D_USP 6008786.pdf; Ex E_USP 6013923.pdf; Ex F_USP 5619352.pdf; Ex G_USP 6734926.pdf; COS_052207.pdf; PRAECIPE - CHI MEI OPTOELECTRONICS USA.pdf; PRAECIPE - CHI MEI OPTOELECTRONICS CORPORATION.pdf |

Dear counsel:

Attached is LPL's First Amended Complaint for Patent Infringement Against Defendant Chi Mei Optoelectronics Corporation and Chi Mei Optoelectronics USA, Inc. which was filed today (D.I. 54). This pleading was not directed at or intended to affect any other defendant. I am also attaching the praecipes we filed (D.I. 55 and D.I. 56) for summonses directed to those two defendants. Hard copies will be sent to you.

Phil, I have assumed that you are not authorized to accept service of this pleading on behalf of the Chi Mei entities. This email and the hard copies, then, are courtesy copies for you. We will serve Chi Mei Optoelectronics Corporation through the Secretary of State and Chi Mei Optoelectronics USA, Inc. through its registered agent.

Regards,

Dick Kirk

Richard D. Kirk
The Bayard Firm
222 Delaware Avenue, 9th Floor
Wilmington, Delaware 19801
Main: (302) 655-5000
Direct: (302) 429-4208
Fax: (302) 658-6395
rkirk@bayardfirm.com

-----------------------------------

IRS Circular 230 DISCLOSURE:
Notice regarding federal tax matters: Internal Revenue Service Circular 230 requires us to state herein that any federal tax advice set forth in this communication (1) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties that may be imposed by federal tax laws, and (2) cannot be used in promoting, marketing, or recommending to another person any transaction or matter addressed herein.
-----------------------------------
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

▷
Agilent Technologies, Inc. v. Micromuse, Inc.
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
AGILENT TECHNOLOGIES, INC., Plaintiff,
v.
MICROMUSE, INC., Defendant.
No. 04 Civ. 3090(RWS).

Oct. 19, 2004.

Christian & Barton, Richmond, VA, By: Michael
W. Smith, Craig T. Merritt, R. Braxton Hill, for
Plaintiff, of counsel.
Gray Cary Ware & Freidenrich, San Diego, CA,
By: Edward H. Sikorski, John Allcock, Sean C.
Cunningham, Megan Whyman Olesek, for Plaintiff.
Brown Raysman Millstein Felder & Steiner, New
York, NY, By: Seth Ostrow, Jeffrey P. Weingart,
Eric C. Osterberg, for Defendant, of counsel.
Willcox & Savage, Norfolk, VA, By: Michael R.
Katchmark, Gary A. Bryant, for Defendant, of
counsel.

*OPINION*
SWEET, J.
**\*1** Defendant Micromuse, Inc. ("Micromuse") has
moved pursuant to Federal Rule of Civil Procedure
12(b)(6), to dismiss the complaint of plaintiff
Agilent Technologies, Inc. ("Agilent") alleging
patent infringement, and, in the alternative, for a
more definite statement pursuant to Rule 12(e), and
to add Hewlett Packard Company ("H-P") as a
necessary party under Rules 12(b)(7) and 19(a) of
those same Rules. Micromuse has also moved to
disqualify Gray Cary Ware & Freidenrich, LLP ("
Gray Cary") from representing Agilent in this
action, Gray Cary having previously represented
NetWork Harmoni, Inc. ("Network Harmoni"), an
entity acquired by Micromuse prior to the filing of
this action. Agilent has cross-moved for leave to file
a supplemental declaration in opposition to

Micromuse's motion to disqualify Gray Cary. For
the reasons set forth below, Micromuse's motion to
dismiss is denied, the motion for a more definite
statement is granted, the motion to add H-P as a
party is denied at this time with leave granted to
renew, and the motion to disqualify is denied at this
time with leave granted to renew. Agilent's
cross-motion for leave to file a supplemental
declaration is granted.

*Prior Proceedings*

The complaint in this patent infringement action
was filed in the United States District Court for the
Eastern District of Virginia, Norfolk Division, on
November 10, 2003.

On December 17, 2003, Micromuse filed the instant
motions in the Eastern District of Virginia as well
as a motion to transfer the action to this district,
which latter motion was granted by order of the
Honorable Raymond A. Jackson filed on April 16,
2004. The action was transferred to this district on
April 22, 2004.

The remaining motions were argued and marked
fully submitted on May 19, 2004.

*The Complaint*

The following facts are drawn from Agilent's
complaint and do not constitute findings of fact by
the Court.

According to the complaint, Agilent is a Delaware
corporation having its headquarters in Palo Alto,
California, and significant operations in Fort
Collins, Colorado. It is alleged that Micromuse is a
Delaware Corporation with headquarters in San
Francisco, California, and significant operations in
Northern Virginia, Georgia, Illinois, Texas, New
York, London, and other overseas destinations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Subject matter jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1338.

With regard to the factual background of the complaint, it is alleged that:
6. Agilent is a leading provider of components, test, measurement, monitoring and management solutions for the communications industry. Agilent's broad set of solutions and services includes, among other technologies, optical, wireless, Internet and broadband technologies that span the entire communications life cycle. Having invested substantial resources in the development of these technologies, Agilent maintains a portfolio of patents covering its inventions, including the patents at issue.
**\*2** 7. On October 24, 2000, United States Patent No. 6,138,122 ("the '122 Patent"), entitled " Modeling of Internet Services," was duly and legally issued to Mark D. Smith, Deborah L. Caswell and Srinivas Ramanathan. All rights, title and interest in the '122 Patent were assigned to Agilent, which remains the sole owner of the '122 Patent....
8. On January 1, 2002, United States Patent No. 6,336,138 ("the '138 Patent"), entitled " Template-Driven Approach For Generating Models On Network Services," was duly and legally issued to Deborah L. Caswell, Srinivas Ramanathan, James D. Hunter, Scott S. Neal, Frederick A. Sicker and Mark D. Smith. All rights, title and interest in the '138 Patent were assigned to Hewlett-Packard Company. Agilent and Hewlett-Packard Company now jointly own the '138 Patent, and Agilent has the exclusive right to enforce the '138 Patent against Micromuse....

(Compl. at ¶¶ 6-8.) It is further alleged that Micromuse "makes, sells, or offers products for sale in this district that infringe Agilent's patents." (Compl. at ¶ 4.)

The complaint contains two counts and Micromuse's liability is alleged as follows:

### COUNT ONE

Infringement of U.S. Patent No. 6,138,122

9. Agilent realleges the foregoing paragraphs.
10. Agilent is informed and believes that Micromuse has directly infringed and continues to infringe, has induced and continues to induce, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of the '122 Patent.
11. Agilent is informed and believes that Micromuse's acts of patent infringement are and continue to be willful and deliberate.
12. As a result of Micromuse's patent infringement, Agilent has suffered damages in an amount not yet determined, and will continue to suffer damages in the future.
13. Unless an injunction is issued enjoining Micromuse and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing the '122 Patent, Agilent will be greatly and irreparably harmed.


### COUNT TWO

Infringement of U.S. Patent No. 6,336,138

14. Agilent realleges the foregoing paragraphs.
15. Agilent is informed and believes that Micromuse has directly infringed and continues to infringe, has induced and continues to induce, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of the '138 Patent.
16. Agilent is informed and believes that Micromuse's acts of patent infringement are and continue to be willful and deliberate.
17. As a result of Micromuse's patent infringement, Agilent has suffered damages in an amount not yet determined, and will continue to suffer damages in the future.
18. Unless an injunction is issued enjoining Micromuse and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf from infringing the '138 Patent, Agilent will be greatly and irreparably harmed.

**\*3** (Compl. at ¶¶ 9-18.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

## Discussion

### I. *Micromuse's Motion To Dismiss Is Denied*

Micromuse has moved to dismiss Agilent's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the complaint fails to meet the notice requirements of Rule 8(a) of those same Rules.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (citing *Gregory v.. Daly,* 243 F.3d 687, 691 (2d Cir.2001)), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). In other words, " 'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." ' *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York,* 375 F.3d 168, 176 (2d Cir.2004) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000); *accord Eternity Global Master Fund,* 375 F.3d at 176-77.

"The indulgent standard evident in these precedents is codified in Rule 8, which requires no more than ' a short and plain statement of [a] claim showing that the pleader is entitled to relief." ' *Id* . at 177 (quoting Fed.R.Civ.P. 8(a)(2)) (alteration in original); *see also Wynder v. McMahon,* 360 F.3d 73, 76-77 & n. 5 (2d Cir.2004) (referring to the " bare-bones standards of Rule 8" and noting that "

Rule 8 pleading is extremely permissive"). The Supreme Court has interpreted Rule 8 "not to require a claimant to set out in detail the facts upon which he bases his claim." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Indeed,

The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid.... All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.

*Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002); *see also Scutti Enters., LLC v. Park Place Entm't Corp.,* 322 F.3d 211, 215 (2d Cir.2003) ( " 'More extensive pleading of fact is not required because the Federal Rules of Procedure provide other devices besides pleadings that will serve to define the facts and issues and to dispose of unmeritorious claims." ') (quoting 2 James Wm. Moore, *et al., Moore's Federal Practice* § 8.04[1] (3d ed.1999) (citation omitted)). Whether a complaint satisfies Rule 8(a)(2) is determined by whether the pleading provides fair notice to the opposing party. *See Conley,* 355 U.S. at 47; *see also Wynder,* 360 F.3d at 79 ("The key to Rule 8(a)'s requirements is whether adequate notice is given."). Accordingly, dismissal for failure to comply with the requirements of Rule 8 " 'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." ' *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)).

**\*4** Here, Agilent's complaint establishes the jurisdiction of this Court, sets forth the ownership of the patents in suit and alleges that Micromuse makes, sells, or offers products for sale that infringe Agilent's patents. The complaint further alleges that Micromuse is liable for direct infringement, contributory infringement and infringement by inducement. Agilent has provided a "short and plain statement" of its claims against Micromuse and the nature of those claims is discernible. Fed.R.Civ.P.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                   Page 4

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

8(a)(2). Indeed, it would be difficult to frame a more skeletal pleading.

Micromuse nonetheless argues that dismissal of Agilent's complaint is appropriate because the complaint fails to specify any allegedly infringing product, fails to identify any allegedly infringing conduct, and fails to set forth any of the other actors implicated by the allegations that Micromuse has contributed to and induced patent infringement. The absence of allegations such as those described does not demonstrate that the harsh sanction of dismissal is appropriate here, as this absence does not make it "appear[ ] beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief," *Sweet,* 235 F.3d at 83, nor that the complaint is " 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." ' *Simmons,* 49 F.3d at 86 (quoting *Salahuddin,* 861 F.2d at 42); *see generally Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 235 (1959) ("It may well be that petitioner's complaint as now drawn is too vague, but that is no ground for dismissing his action.").

Where, as here, a pleading is sufficient to provide notice of the claim but does not contain sufficient information to allow a responsive pleading to be framed without risk of prejudice, the proper remedy is a motion for a more definite statement under Rule 12(e), Fed.R.Civ.P. *See, e.g., Scott v. City of Chicago,* 195 F.3d 950, 952 (7th Cir.1999); *Sisk v. Texas Parks & Wildlife Dep't,* 644 F.2d 1056, 1059 (5th Cir.1981); *Harman v. Nat'l Bank of Arizona,* 339 F.2d 564, 567 (9th Cir.1964); *but compare Ondeo Nalco Co. v. Eka Chems., Inc.,* No. 01 Civ. 537(SLR), 2002 WL 1458853, at *1-2 (D. Del. June 10, 2002) (dismissing defendant's counterclaims where it was unclear which products were being accused, concluding that the pleading was "too vague to provide plaintiff with fair notice," and granting leave to amend).

## II. *Micromuse's Motion For A More Definite Statement Is Granted*

Rule 12(e) of the Federal Rules of Civil Procedure provides in pertinent part that "[i]f a pleading to

which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e). Rule 12(e) applies only in limited circumstances:

**\*5** [T]he pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed; in other words the pleading must be sufficient to survive a Rule 12(b)(6) motion to dismiss. At the same time, the pleading also must be so vague or ambiguous that the opposing party cannot respond to it, even with a simple denial as permitted by Rule 8(b), with a pleading that can be interposed in good faith or without prejudice to himself.

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1376 at 311 (3d ed.2004) (footnote omitted); *see Humpherys v. Nager,* 962 F.Supp. 347, 352-53 (E.D.N.Y.1997) (" A 12(b)(6) motion is one made for a failure to state a claim, while a 12(e) motion is proper when a complaint pleads a viable legal theory, but is so unclear that the opposing party cannot respond to the complaint."); *but compare Home & Nature Inc. v. Sherman Speciality Co.,* 322 F.Supp.2d 260, 265 (E.D.N.Y.2004) ("Rule 12(e) motion should be denied if a complaint comports with the liberal pleading requirements of Rule 8(a).") (collecting cases).

Although motions pursuant to Rule 12(e) are generally disfavored where prompt resort to discovery may provide an adequate means for ascertaining relevant facts, *see id.,* courts have considered Rule 12(e) relief appropriate in patent infringement cases where a plaintiff has failed to identify any allegedly infringing product or products. *See, e.g., In re Papst Licensing GmbH Patent Litig.,* Nos. MDL 1298 & 99 Civ. 3118, 2001 WL 179926, at *2 (E.D.La. Feb. 22, 2001) (concluding that the plaintiff's complaint must be amended to specifically identify which of the defendant's products are alleged to have infringed the plaintiff's patents); *cf. In re Independent Serv. Org. Antitrust Litig.,* 85 F.Supp.2d 1130, 1169

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 5

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

(D.Kan.2000) (denying the plaintiff's motion for summary judgment on a defendant's counterclaim where the plaintiff argued that it did not have adequate notice of which of its devices allegedly infringed the defendant's patents, observing that the plaintiff had already answered the counterclaim and that, if the plaintiff "did not truly know which parts were covered by the patents identified, it could have filed a motion for a more definite statement under Rule 12(e)"). The cases cited by Agilent in opposition to Micromuse's motion do not suggest that a contrary result is required here, as they stand for the propositions that a pleading need not identify every infringing product where some other limiting parameter has been set forth or at least one purportedly infringing product has been identified. *See Symbol Tech., Inc. v. Hand Held Prods., Inc.,* No. 03 Civ. 102(SLR), 2003 WL 22750145, at *3 (D.Del. Nov. 14, 2003) (denying a Rule 12(e) motion where there was a "finite" set of potentially infringing products under identified patents held by the defendant); *Oki Elec. Indus. Co. v. LG Semicon Co.,* No. 97 Civ. 20310(SW), 1998 WL 101737, at *3 (N.D.Cal. Feb. 25, 1998) (denying a motion to dismiss where the plaintiff identified infringing products by specifying that the products concerned were "devices that embody the patented methods, including 4 megabit and higher density DRAMs") (internal quotation marks omitted), *aff'd,* 243 F.3d 559 (Fed.Cir.2000).

**\*6** Agilent's complaint does not specify which products infringed plaintiff's patents; it merely states that the alleged infringements occurred as a result of the fact that Micromuse "makes, sells, or offers products for sale ... that infringe Agilent's patents." (Compl. at ¶ 4.) Although Agilent's papers submitted in opposition to Micromuse's various motions suggest that Micromuse possesses at least four infringing products, those products have not been formally accused. Under these circumstances, Micromuse is entitled to know which of its products or services are alleged to have infringed Agilent's patents and a more definite statement setting forth that information is appropriate.

Micromuse has also argued that Agilent's complaint fails to identify the primary infringer with respect to

the contributory and inducement claims. Micromuse has cited to a single unpublished authority in support of its argument that such identification is required to render a pleading answerable, and this authority, *Net Moneyin, Inc. v. Mellon Fin. Corp.,* No. 01 Civ. 441(TUC)(RCC), slip op. (D.Ariz. July 30, 2003), itself cites no other case law directly on point. Micromuse has accordingly failed to establish that relief under Rule 12(e) with respect to the identity of any primary infringers is appropriate.

Where a motion made under Rule 12(e) has been granted, the order of the court to provide a more definite statement must be obeyed within ten days after notice of the order "or within such other time as the court may fix." Fed.R.Civ.P. 12(e). Agilent is directed to comply with the grant of Micromuse's motion for a more definite statement by filing and serving an amended complaint within thirty (30) days of entry of this order and opinion.

### III. *H-P Will Not Be Deemed A Necessary Party At This Time*

Micromuse argues that, if Agilent's complaint is not dismissed, H-P, as co-owner of the '138 Patent, should be joined as a necessary party to this lawsuit, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. In addition, Micromuse asserts that if H-P is not so joined, the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7)
.

"Fed.R.Civ.P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party belongs in the suit, *i.e.,* whether the party qualifies as a 'necessary' party under Rule 19(a)." *Viacom Int'l, Inc. v. Kearney,* 212 F.3d 721, 724 (2d. Cir.2000). Rule 19(a) provides in relevant part that,
A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

*7 Fed.R.Civ.P. 19(a). Second, if a party is deemed necessary, it then must be determined whether the party's absence warrants dismissal pursuant to Rule 19(b), Fed.R.Civ.P. *See Viacom Int'l,* 212 F.3d at 725. "If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." *Id.* at 724 (citing *Associated Dry Goods Corp. v. Towers Fin. Corp.,* 920 F.2d 1121, 1123 (2d Cir.1990)).

As a general matter, "United States patent law ... requires that all co-owners normally must join as plaintiffs in an infringement suit." *Int'l Nutrition Co. v. Horphag Research Ltd.,* 257 F.3d 1324, 1331 (Fed.Cir.2001); *see also Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1468 (Fed.Cir.1998) (stating that, "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiff in an infringement suit") (footnote omitted); *see generally Waterman v. MacKenzie,* 138 U.S. 252, 255-56 (1891). As one court has explained, since " 'all co-owners have standing to sue for infringement, if all the co-owners are not joined in an infringement suit, there may be a risk that the defendant will be subject to multiple suits." ' *E.Z. Bowz, L.L.C. v. Prof'l Prod. Research Co.,* No. 00 Civ. 8670(LTS) (GWG), 2003 WL 22064257, at *3 (S.D.N.Y. Sept. 5, 2003) (quoting *Int'l Bus. Machs. Corp. v. Conner Peripherals, Inc.,* No. 93 Civ. 20591(RMW), 1994 WL 409493, at *3 (N.D.Cal. Jan. 28, 1994)); *see also Union Trust Nat'l Bank v. Audio Devices, Inc.,* 295 F.Supp. 25, 27 (S.D.N.Y.1969) ("That all co-owners are parties to a suit is a necessary requirement if conflicting decisions about the same patent (for example, its validity) are to be avoided." ); *cf. Vaupel Textilmaschinen KG v. Meccanica*

*Euro Italia S.P.A.,* 944 F.2d 870, 875 (Fed.Cir.1991) ("The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer.").

"Since the introduction of Fed.R.Civ.P. 19 and the 1966 amendments to the rule, however, 'courts are less concerned with abstract characterizations of the parties and more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of the patent co-owner.' " *E.Z. Bowz,* 2003 WL 22064257, at *3 (quoting *Michaels of Oregon Co. v. Mil-Tech, Inc.,* No. 95 Civ. 908(MA), 1995 WL 852122, at *1 (D.Or. Oct. 17, 1995)); *cf. Howes v. Med. Components, Inc.,* 698 F.Supp. 574, 576 (E .D. Pa.1988) ("[T]he adoption of the 1966 amendments to Rule 19 'makes inappropriate any contention that patent co-owners are *per se* indispensable in infringement suits." ') (quoting *Catanzaro v.. Int'l Tel. & Tel. Corp.,* 378 F.Supp. 203, 205 (D.Del.1974)).

Thus, where the co-owner of a patent or other entity or individual whose interest in a patent might be directly affected by litigation has specifically disclaimed all interest in pursuing litigation related to the patent in favor of the party who has brought the suit, courts have held that joinder of the co-owner or other entity or individual is not necessary. *See Vaupel Textilmaschinen,* 944 F.2d at 875-76 (concluding that the policy to join an owner when an exclusive licensee bring suit in order to preclude the possibility of duplicative lawsuits was not undercut where, pursuant to express agreements, the right to sue rested solely with the licensee and denying the defendant's Rule 19 motion); *E-Z Bowz,* 2003 WL 22064257, at *4-5 (holding that the defendant would not be subject to a substantial risk of incurring inconsistent obligations where the former co-owner of certain patents had relinquished her interest in the patents as well as any rights of action relating to the patents and concluding that the rights of the parties could be fairly adjudicated without joinder of the absent former co-owner); *Michaels of Oregon,* 1995 WL 852122, at *2-3 (determining that an absent co-owner of certain patents was not a necessary party where that absent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

co-owner had entered into an agreement with the plaintiff providing that only the plaintiff might file actions for patent infringement); *compare Parkson Corp. v. Andritz Sprout-Bauer, Inc.,* 866 F.Supp. 773, 775 (S.D.N.Y.1995) (concluding that it was not possible to determine whether an owner was a necessary party to an action brought by an exclusive licensee where the licensing agreement did not unambiguously give the licensee control over whether infringement claims should be brought); *Howes,* 698 F.Supp. at 577 (concluding that an absent patent co-owner was a necessary party where the defendants might face the risk of relitigation by that co-owner).

**\*8** Although the complaint alleges that Agilent and H-P jointly own the '138 Patent, it further alleges that Agilent enjoys the exclusive right to enforce the '138 Patent against Micromuse. In opposition to Micromuse's motion, Agilent has submitted a redacted version of an August 22, 2003 agreement between Agilent and H-P (the "August Agreement") regarding their respective rights concerning the enforcement of the '138 Patent. According to the August Agreement, H-P grants to Agilent "the exclusive right to license the ['138] Patent to Micromuse." (Declaration of Megan Whyman Olesek, dated Jan. 15, 2004 ("Olesek Decl."), Exh. X at ¶ 1.) H-P further grants to Agilent "the exclusive right to enforce the ['138] Patent to and against Micromuse" including by "filing and prosecuting the Agilent Patent Suit to final judgment, including appeals." [FN1] *(Id.)* H-P has also agreed that

> FN1. The "Agilent Patent Suit" is defined as "a patent infringement lawsuit against Micromuse." (Olesek Decl., Exh. X, preamble.)

[A]s between the parties, Agilent shall have the full power and authority to control the Agilent Patent Suit and any settlement thereof and shall retain one hundred percent (100%) of any damages or compensation received in connection with the Agilent Patent Suit or settlement thereof.
*(Id.* at ¶ 3.)

Based on the terms of the August Agreement, it does not appear that H-P's absence from this lawsuit will subject Micromuse to any "substantial risk of incurring double, multiple, or otherwise inconsistent obligations," Fed.R.Civ.P. 19(a), because H-P has no independent capacity to file a patent infringement action against Micromuse based on the '138 Patent, having expressly disclaimed any interest in pursuing a claim against Micromuse with respect to the '138 Patent. In light of the broad contractual language by which H-P has granted Agilent the exclusive right to enforce the '138 Patent against Micromuse, the absence of any provision in the August Agreement stating that H-P agrees to be bound by the outcome of this litigation is not determinative here. Likewise, the absence of an affirmative representation that H-P has relinquished its right to sue Micromuse for any purported past infringement does not, contrary to the argument advanced by Micromuse, require joinder of H-P. On the facts now available, it thus appears that complete relief can be accorded among those already parties.

Micromuse has noted, however, that the August Agreement makes explicit reference to the existence of a Master Patent Ownership and License Agreement and that the August Agreement is an agreement among Agilent and H-P "together with Hewlett Packard Development Company, L.P." (Olesek Decl., Exh. X, preamble), an entity that, according to Micromuse, may also have an interest in the '138 Patent. Micromuse has further observed that the redacted form of the August Agreement does not set forth its effective term or termination provisions and suggests that the absence of such provisions raises questions of whether H-P enjoys a reversion, termination, or expiration interest in the '138 Patent, questions which may, in turn, affect any determination as to whether H-P is a necessary party here. *See, e.g., Moore U.S.A. Inc. v. Standard Register Co.,* 60 F.Supp.2d 104, 109-110 (W.D.N.Y.1999) (concluding that a licensor was a necessary party to a patent infringement action despite the existence of an agreement with the plaintiff licensee granting the licensee sole and exclusive rights to sue for infringement where the agreement was of fixed term and where the licensor retained a reversionary interest in the patent).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 8

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

**\*9** Although the facts presently available do not establish that H-P is a necessary party, Micromuse's observations suggest that developments resulting from discovery may cause the issue of H-P's joinder to be revisited. Accordingly, Micromuse's motion to join H-P is denied at this time and leave is hereby granted to renew the motion after further discovery.

### IV. *Gray Cary Will Not Be Disqualified At This Time*

Micromuse has moved to disqualify Gray Cary from representing Agilent in this matter on the grounds that, for many years, Gray Cary provided extensive legal representation to Network Harmoni, a company acquired by Micromuse in August 2003. Micromuse argues that Network Harmoni's suite of proprietary intelligent software agents is now part of Micromuse's product offerings and, under the current complaint, potentially the target of Agilent's patent infringement claims. Micromuse asserts that Gray Cary thus formerly represented Network Harmoni in matters substantially related to the subject matter of this action and must be disqualified from representing Agilent as a result. Agilent opposes Micromuse's motion, arguing that in its representation of Network Harmoni Gray Cary was at all times in an adverse relationship to Micromuse and that Gray Cary's prior representation of Network Harmoni involved no confidential information about the product or products at issue in the present action. [FN2]

FN2. Following briefing on Micromuse's motion, Agilent moved for leave to submit a supplemental declaration, claiming the need to respond to certain contentions in Micromuse's reply papers, and Micromuse opposed the motion. Agilent's motion for leave to submit the supplemental declaration is granted. Although submission of supplemental papers is often more of a hindrance than a help, the issues addressed in the supplemental papers presented here are carefully cabined and respond to arguably new contentions contained in reply papers on the underlying motion. Where this is true, and where, as here, the opposing party has disclaimed any prejudice resulting from the submission of the supplemental papers, there is no evidence of bad faith by the party seeking to submit the supplemental papers, and "the parties will be best served by the Court's deciding the ... issue presented to it on the most complete factual basis possible," *Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.,* No. 03 Civ. 200(GEL), 2003 WL 1618534, at \*1 (S.D.N .Y. Mar. 27, 2003), leave to submit supplemental papers is appropriately granted.

Motions to disqualify counsel have long been disfavored in this Circuit. *See, e.g., Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791-92 (2d Cir.1983) (enumerating the reasons for which disqualification motions are disfavored); *Bennett Silvershein Assoc. v. Furman,* 776 F.Supp. 800, 802 (S.D.N.Y.1991) (" The Second Circuit has indeed been loathe to separate a client from his chosen attorney ....") (collecting cases). "Disqualification motions are often made for tactical reasons, and thereby unduly interfere with a party's right to employ counsel of his choice." *Skidmore v. Warburg Dillon Read LLC,* No. 99 Civ. 10525(NRB), 2001 WL 504876, at \*2 (S.D.N.Y. May 11, 2001) (citing *Board of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979)). Moreover, disqualification motions, "even when made in the best of faith ... inevitably cause delay." *Evans,* 715 F.2d at 792 (quoting *Nyquist,* 590 F.2d at 1246). A "high standard of proof" is therefore required from one who moves to disqualify counsel. *Id.* at 791 (quoting *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir.1978)). The appearance of impropriety alone does not warrant disqualification. *See Nyquist,* 590 F.2d at 1246-47.

In determining whether an attorney can oppose his former client, courts evaluate whether the new matter is substantially related to the subject matter of the prior representation. An attorney may be disqualified from representing a client in a particular case if:
(1) the moving party is a former client of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

adverse party's counsel;
**\*10** (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Id.* at 791. "Under this standard, proof of substantial similarity must be 'patently clear' to warrant disqualification." *Decora Inc. v. DW Wallcovering, Inc.,* 899 F.Supp. 132, 136 (S.D .N.Y.1995) (quoting *Government of India,* 569 F.2d at 739-40) (additional citations omitted). A "substantial relationship" exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation. *See U.S. Football League v. Nat'l Football League,* 605 F.Supp. 1448, 1459-60 & n. 25 (S.D.N.Y.1985) ("It is the congruence of *factual* matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes.") (emphasis in original).

According to Micromuse, Network Harmoni evolved from a research project in network visualization software conducted at Curtin University in Perth, Australia. In 1996, the founders of the project formed NDG Software, Inc., and in November 1998 the company received its first venture funding and moved its headquarters from Australia to San Diego, California. It is alleged that Gray Cary initially provided advice, counsel and representation in establishing and structuring this U.S.-based company and its operations, and served as outside counsel. Subsequently, NDG Software, Inc., changed its name to Network Harmoni, Inc.

During the time of Gray Cary's representation, Network Harmoni developed and licensed to its customers, including Agilent and Micromuse, proprietary intelligent software agents designed to provide users with information on the status and security of computer networks, systems and applications. Micromuse contends that Gray Cary, during its five-year relationship with Network Harmoni, represented Network Harmoni in its

corporate affairs, employment issues, in prosecuting its patents and trademarks and handling other patent and trademark-related matters, in evaluating third-party patents, and in drafting and negotiating licensing agreements, financing instruments and other corporate-related documents.

Over the course of its representation of Network Harmoni, Gray Cary is alleged to have drafted and filed several patent applications with the United States Patent and Trademark Office relating to certain aspects of Network Harmoni's software products and was informed of virtually all attributes and potential uses of Network Harmoni's suite of proprietary intelligent software agents, as well as the company's plans for future software applications and services.

According to Micromuse, Gray Cary represented Network Harmoni in its negotiations to be purchased by Micromuse, and Network Harmoni and Micromuse executed a non-disclosure agreement to assure that the parties could have full and complete discussions without the use of such information for non-acquisition purposes.

**\*11** It is further alleged that in three rounds of financing, Gray Cary was allowed to participate on the same basis as the initial preferred investors and became a shareholder of Network Harmoni, and until September 1999, one of its lawyers served as a member of its board of directors. Gray Cary sold its stock in connection with Network Harmoni's acquisition by Micromuse.

In opposition to Micromuse's motion it is alleged that Gray Cary first became aware of a potential claim against Micromuse by Agilent on September 19, 2003, when Agilent approached Gray Cary about the possibility of Gray Cary handling the matter for Agilent. It is also alleged that on December 8, 2003, an ethical wall was established to isolate all attorneys working on Agilent matters from any and all information related to any matter in which Network Harmoni had been a client for the firm.

Agilent asserts that Gray Cary never had an attorney-client relationship with Micromuse and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 10

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

that such a relationship may not be inferred from Micromuse's disclosure of confidential business information to Network Harmoni and its then-counsel Gray Cary during negotiations for the acquisition of Network Harmoni. At present, however, there appears to be no dispute that Micromuse is entitled to seek Gray Cary's disqualification based on Gray Cary's prior representation of Micromuse's wholly owned subsidiary, Network Harmoni. *See generally Harford Accident & Indem. Co. v. RJR Nabisco, Inc.,* 721 F.Supp. 534, 539-40 (S.D.N.Y.1989) (concluding that the plaintiff's law firm would be deemed to have previously represented the defendant where the plaintiff's law firm had previously represented the defendant corporation's subsidiary and the defendant corporation had taken in active role with regard to the law firm's representation of its subsidiary); *cf. Decora,* 899 F.Supp. at 137 (concluding that the plaintiff could properly seek disqualification of the defendant's attorney in a patent infringement action where the attorney had previously represented the plaintiff's parent corporation, thereby learning certain of the plaintiff's trade secrets).

Assuming without deciding that the first prong of the test set forth in *Evans* has therefore been satisfied, Micromuse's motion for disqualification is denied nonetheless, since, to date, Micromuse has not met its burden of proof with respect to establishing a "substantial relationship" between Gray Cary's former representation of Network Harmoni and its current representation of Agilent. It has not been shown that Gray Cary gave Network Harmoni advice on the validity of the patents in suit, including whether there was infringement by Network Harmoni of the patents in suit. All that has been established is that Gray Cary advised Network Harmoni on corporate governance issues, employment matters, original equipment manufacturer ("OEM") agreements, patent and trademark filings, and financing instruments. Prior general business representation by the plaintiff's law firm of an entity related to the defendant on matters unrelated to the lawsuit at issue does not meet the high burden of establishing a conflict. *See, e.g., In re Maritima Aragua, S.A.,* 847 F.Supp. 1177, 1182-83 (S.D.N.Y.1994).

*12 The Micromuse products and services alleged to be violative of the Agilent patent will be identified as a consequence of the granting of Micromuse's motion for a more definite statement. Thereafter, discovery may be sought with respect to the knowledge and participation of Gray Cary in the development of any such accused products or services. Should this discovery yield additional facts establishing that the prior representation of Network Harmoni by Gray Cary dealt with issues presented in this action, leave is granted to Micromuse to renew its disqualification motion, which motion is denied at this time.

### Conclusion

For the reasons set forth above, Micromuse's motion to dismiss the complaint is denied and its motion for a more definite statement is granted. Agilent is directed to comply with the grant of Micromuse's motion for a more definite statement by filing and serving an amended complaint within thirty (30) days of entry of this order and opinion. In addition, Micromuse's motions to add HP as a party and to disqualify Gray Cary are denied at this time with leave to renew. Agilent's motion to file a supplemental declaration is granted.

It is so ordered.

S.D.N.Y.,2004.
Agilent Technologies, Inc. v. Micromuse, Inc.
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                  Page 1

Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Ondeo Nalco Co. v. EKA Chemicals, Inc.
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
ONDEO NALCO COMPANY, a Delaware
Corporation, Plaintiff,
v.
EKA CHEMICALS, INC., a Delaware Corporation,
Defendant.
**No. Civ.A.01-537-SLR.**

June 10, 2002.

MEMORANDUM ORDER
ROBINSON, J.
*1 At Wilmington this 10th day of June, 2002, having reviewed the briefs submitted by the parties with respect to plaintiff's pending motions;

IT IS ORDERED that plaintiff's motion to dismiss defendant's counterclaims (D.I.23) is granted; and plaintiff's motion for leave to filed an amended complaint (D.I.42) is granted, for the reasons that follow:

1. The court has jurisdiction over this action pursuant to 35 U.S .C. §§ 271 and 281 and 28 U.S.C. § 1338(a).

2. Motion to Dismiss Counterclaims. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

3. Plaintiff argues that defendant's counterclaims, which allege that plaintiff's products infringe three of defendant's patents,[FN1] fail to provide fair notice of the claims and the grounds upon which they rest, as required by Federal Rule of Civil Procedure 8(a). *Conley,* 355 U.S. at 47 (Rule 8(a) requires that a claim provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests"). Plaintiff asserts that the counterclaims insufficiently identify which products are accused of infringement [FN2] and fail to adequately plead induced infringement. [FN3] Plaintiff also objects that the counterclaims do not specify when the alleged infringement occurred (the '961 and '150 patents are now expired) and they combine the direct, contributory, and induced infringement claims into one count for each patent.

FN1. United States Patent No. 5,603,805 (" the '805 patent"); United States Patent No. 4,385,961 ("the '961 patent"); and United States Patent No. 4,388,150 ("the '150 patent").

FN2. The infringing products are described as "Nalco's products, including the 8692 product." (D.I.22, ¶¶ 29,34,40) The only additional clue to the identity of the alleged infringing products is the averment "Nalco makes and sells products, including the product numbered 8692, ... that are used in paper-making processes ..." or "to make paper." (*Id.* at ¶ 24)

FN3. Defendant simply avers that "[u]pon information and belief, Nalco has induced

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

the infringement of the claims of the ... patent, in violation of 35 U.S.C. § 271(b), by selling its products, including the 8692 product, and in instructing and encouraging others in the use of its products, including the 8692 product." (D.I.22, ¶¶ 30,36,42)

4. The court agrees with plaintiff that the counterclaims do not satisfy Rule 8(a). With the exception of the description of the 8692 product, the pleadings are too vague to provide plaintiff with fair notice of which products are accused of infringing defendant's patents. *See Conley,* 355 U.S. at 47; *Gen-Probe, Inc. v. Amoco Corp.,* 926 F.Supp. 948, 961 (S.D.Cal.1996) (vague reference to "products and/or kits" does not provide adequate notice). *Compare Interdigital Technology Corp. v. OKI America, Inc.,* 845 F.Supp. 276, 283 (E.D.Pa.1994) (patent claim need not identify specific products that are alleged to infringe by name so long as they are "sufficiently identified in some way"). In addition, the pleadings fail to allege direct infringement by a party other than ONDEO Nalco and, therefore, insufficiently plead induced infringement. *See Met-Coil Systems Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed.Cir.1986) (direct infringement required element of induced infringement); *Shearing v.. Optical Radiation Corp.,* 30 U.S.P.Q. 1878, 1880 (D.Nev.1994) (complaint must allege direct infringement by someone other than the inducer).

**\*2** 5. Based on the above, the court dismisses defendant's counterclaims with leave to amend.

6. Motion for Leave to File a First Amended Complaint. Under Federal Rule of Civil Procedure 15(a), leave to file amended complaints "shall be freely given when justice so requires." *See also Gooding v. Warner-Lambert Co.,* 744 F.2d 354, 358 (3d Cir.1984). Plaintiff seeks leave to amend its complaint (a) to remove two alien defendants whom plaintiff and defendant have agreed to dismiss with prejudice (see Stipulation and Order, D.I. 20, ¶ 1); and (b) to add declaratory judgment counts related to invalidity of the patents-in-suit. Defendant objected that the proposed amended complaint would be deficient for failure to plead with

specificity inequitable conduct and for asserting " unenforceability" of the subject patents in combination with invalidity. In response, plaintiff added more specific allegations of inequitable conduct with respect to the procurement of the '805 patent to a revised first amended complaint (D.I.45, Ex. D, ¶¶ 22-54); plaintiff makes no inequitable conduct allegations with respect to the '150 patent or the '961 patent (*Id.* at 5-6; Ex. D, ¶¶ 55-65). Based on the above, the court grants plaintiff leave to file a first amended complaint.

D.Del.,2002.
Ondeo Nalco Co. v. EKA Chemicals, Inc.
Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                             Page 1

Not Reported in F.Supp.2d, 2001 WL 179926 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

▷
In re Papst Licenseing GmbH Patent Litigation
E.D.La.,2001.
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.
In re PAPST LICENSING GmbH PATENT
LITIGATION
**No. CIV. A. MDL 1298, CIV. A. 99-3118.**

Feb. 22, 2001.

MEMORANDUM AND ORDER
SEAR, District J.

### Background

**\*1** On December 26, 2000, Papst Licensing GmbH
& Co. KG ("Papst") filed its complaint for patent
infringement against International Business
Machines Corporation ("IBM"). Papst alleges that
IBM "has made, used, sold, or offered to sell to
customers in the United States or imported into the
United States products that embody the elements of
at least one claim" [FN1] of the twenty patents
specifically identified in the complaint by patent
number and issue date. Papst does not identify the
IBM products which allegedly infringe the patents.

> FN1. *See* Paragraphs 26 and 27 of Papst's
> Complaint for Patent Infringement, filed
> Dec. 26, 2000.

In response to the complaint, IBM has filed under
FRCP 12(e) a motion requesting a more definite
statement of which IBM products are alleged to
infringe the patent claims asserted against it.

### Discussion

FRCP 12(e) provides that if a pleading "...is so
vague or ambiguous that a party cannot reasonably
be required to frame a responsive pleading, the
party may move for a more definite statement
before interposing a responsive pleading."

IBM asserts and Papst does not contest that there
are a total of 503 patent claims in the twenty patents
at issue in this lawsuit. Whether a particular product
infringes a particular patent claim first requires the
interpretation of the claim, and then a comparison
of the interpreted claim to the allegedly infringing
product. *Markman v. Westview Instruments, Inc.*,
52 F.3d 967, 976, *aff'd*, 517 U.S. 370, 116 S.Ct.
1384, 134 L.Ed.2d 577 (1996). Under Papst's
complaint, IBM will be required to interpret 503
claims, and then compare them to any IBM product
that contains a hard disk drive. IBM does not object
to interpreting 503 claims. However, it does object
to having to compare those claims to all of its
products containing hard disk drives.

IBM filed its Rule 12(e) motion on January 31,
2001. On February 1, 2001, counsel for Papst wrote
a letter to counsel for IBM, forwarding a document
that lists on a patent-by-patent basis the IBM hard
disk drives that Papst alleges are infringed. Several
hundred IBM hard disk drives are described by
model and part numbers. There are as many as one
hundred allegedly infringing products listed for
some patents, and only one listed for another patent.
Papst prefaces its list by informing IBM that it does
not consider the list to be exclusive:
Papst Licensing's charges of infringement are not
limited to the IBM hard disk drives that are
specifically identified herein. Rather, Papst
Licensing's charges of infringement are intended to
include all IBM hard disk drives that have a
construction that is similar from an infringement
standpoint to that of the IBM hard disk drives that
are specifically identified herein.

Upon receipt of this list, IBM offered to withdraw
its 12(e) motion if Papst would stipulate that its
infringement allegations would be limited to the
products specifically identified in the list. IBM and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 2

Not Reported in F.Supp.2d, 2001 WL 179926 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

Papst have apparently been unable to reach a stipulation.

Papst argues that its complaint complies with the sample patent infringement complaint provided in Federal Form 16. It is apparent, however, that the number of patents and products in the case before me are far greater than those contemplated in the sample complaint, which would justify a request for greater specificity.

**\*2** Papst further contends that it filed a similar 12(e) motion against Minebea in related action no. 99-3118, which was denied. However, in that motion, Papst sought to have Minebea identify the particular claims of each patent which Minebea claims were invalid. IBM is not making such a request. IBM is willing to interpret each of the 503 claims of the twenty patents, but it seeks to limit the number of comparisons it will have to make to IBM products by obtaining a more specific description of the alleged infringing products.

I find that Papst's complaint must be amended to specifically identify the IBM products which it alleges infringe upon one or more claims of each of the twenty patents.

Accordingly,

IT IS ORDERED, that IBM's FRCP 12(e) motion for a more definite statement is GRANTED;

IT IS FURTHER ORDERED, that Papst amend its complaint on or before March 20, 2001, in order to specifically identify on a patent-by-patent basis the IBM products which it alleges infringe upon one or more of the claims of each of the twenty patents.

E.D.La.,2001.
In re Papst Licenseing GmbH Patent Litigation
Not Reported in F.Supp.2d, 2001 WL 179926 (E.D.La.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 23884794 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Hewlett-Packard Co. v. Intergraph Corp.
N.D.Cal.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
HEWLETT-PACKARD COMPANY, Plaintiff,
v.
INTERGRAPH CORPORATION, Defendant.
**No. C 03-2517 MJJ.**

Sept. 6, 2003.

Morgan Chu, David Isaac Gindler, Elliot Brown, Jason Dean Linder, Rachel Marie Capoccia, Irell & Manella LLP, Los Angeles, CA, Peter P. Chen, McDermott, Will & Emery, Palo Alto, CA, for Plaintiffs.
Bureden J. Warren, McDermott Will & Emery, Eric S. Namrow, James R. Burdett, Peter Curtin, William D. Coston, Venable LLP, Washington, DC, Cole M. Fauver, Inge Larish, William H. Manning, Robins Kaplan Miller & Ciresi, Minneapolis, MN, David V. Lucas, Todd P. Guthrie, Intergraph Corporation, Huntsville, AL, Bijal V. Vakil, McDermott, James E. Glore, Stephen J. Akerley, McDermott Will & Emery, Palo Alto, CA, Jeffrey G. Knowles, Coblentz, Patch, Duffy & Bass, Jennifer Lynn Polse, Martin D. Bern, Munger Tolles & Olson LLP, San Francisco, CA, George F. Pappas, Venable LLP, Baltimore, MD, Michael W. Robinson, Venable LLP, Vienna, VA, for Defendants.

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS
JENKINS, J.
**\*1** On May 28, 2003, Plaintiff Hewlett-Packard Company ("Plaintiff") filed a complaint against Defendant Intergraph Corporation ("Defendant") alleging direct patent infringement, contributorily infringement, and inducing infringement of four United States patents ("patents-in-suit") in violation of 35 U.S.C. § 271.[FN1] Defendant now moves to

dismiss Plaintiff's complaint or, in the alternative, for a more definite statement. *See* FRCP 12(b), (e). Specifically, Defendant argues that Plaintiff's allegations are cursory and fail satisfy Rule 8(a)(2) of the Federal Rules of Civil Procedure. Having considered the briefing in this matter, the Court GRANTS Defendant's motion.

> FN1. The specific patents-in-suit are United States patents (1) 5,297,241; (2) 4,649,499; (3) 6,105,028; and (4) 4,635,208. *See* Complaint ¶ ¶ 7-10. Plaintiff is the owner by assignment of all rights, title, and interest in each of these patents.

A. Infringement Generally

According to Rule 8(a)(2) "a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has found that this provision is satisfied so long as the factual allegations give " defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47-48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In the context of patent litigation, the Federal Circuit has noted that "[t]his requirement ensures that an accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." *Phonometrics v. Hospitality Franchise Systems, Inc.,* 203 F.3d 790, 794 (Fed.Cir.2000). In addition, Form 16 of the Federal Rules of Civil Procedure provides the following as an example of a direct patent infringement claim that is sufficient under Rule 8(a)(2):
Defendant has for a long time past been and still is infringing [the patent-in-suit] by making, selling, and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 23884794 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

*See also* FRCP 84 ("[t]he forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate").

Here, the complaint simply alleges:
[Defendant], in violation of 35 U.S.C. § 271, has been and is currently infringing, contributorily infringing, or inducing infringement of [the patents-in-suit] by, among other things, *making, using, offering to sell and/or selling infringing software and hardware products* without authority or license from [Plaintiff].

Complaint ¶¶ 11 (emphasis added).

However, Defendant "produces some 150 core technology platforms which are implemented in over 4000 end-user application products." *See* Motion to Dismiss or For a More Definite Statement ("Motion") at 7:15-17. In light of these facts, Plaintiff's claim must be read as follows: one or more of Defendant's 4000-plus products directly infringes, contributorily infringes, or induces infringement of at least one claim in each of the patents-in-suit. Form 16 simply does not address a factual scenario of this sort. Not only is the example in Form 16 limited to a single "type" of product ( *i.e.,* electric motors) there is no indication as to the number of different electric motors the hypothetical defendant made, sold, or used. In this case, there are at least 150 different "types" of products (*i.e.* core technology platforms) with more than 4000 end-user applications. Based on these facts, the Court finds that Plaintiff's allegations do not provide Defendant with "fair notice" of what Plaintiff's claim or claims are and, therefore, fail to satisfy Rule 8(a)(2). *See Conley,* 355 U.S. at 47-48 (1957).[FN2]

> FN2. The Court acknowledges Defendant's citation to several district court opinions, including one from this district, which seem to interpret Rule 8(a)(2) and Form 16 more liberally. *See, e.g., OKI Electric Industry Co. v. LG Semicon Co., Ltd.,* 1998 WL 101737, *3 (N.D.Cal.1998) ( " [t]he phrase 'devices that embody the

patented methods' from [plaintiff's] allegation is substantially similar to the phrase 'electric motors embodying the patented invention' found in Form 16"). However, Plaintiff cites an equal number of decisions that reach the opposite conclusion based on similar facts. *See, e.g., Gen-Probe, Inc. v. Amoco Corporation, Inc.,* 926 F.Supp. 948, 961 (S.D.Cal.1996) ("Rule 8(a)(2) eliminates the needless distinctions and technicalities of code pleading, but still 'envisages the statement of circumstances, occurrences, and events in support of the claim ...' ") (quoting Advisory Committee's 1955 Report). None of these decisions are binding on this Court.

B. Specific Requirements for Contributory Infringement and Inducement

*2 Defendant also argues that Plaintiff's complaint fails to sufficiently allege particular elements necessary to state claims for contributory infringement and inducing infringement. The Court will address each of these claims in turn.

1. Contributory Infringement

In order to state a claim for contributory infringement pursuant to § 271(c), Plaintiff must allege that Defendant offered to sell or sold a " *component* of a patented machine ... constituting a material part of the invention, *knowing* the same to be especially made or especially adapted for use in an infringement of such patent...." *Id.* (emphasis added); *see also Aro Manufacturing Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 488, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). Although Plaintiff alleges that Defendant's conduct was "willful," which implies knowledge, Plaintiff fails to allege that Defendant offered to sell or sold any particular component or that such component was a material part of an infringing device. Plaintiff merely alleges that Defendant "committed acts of infringement in this District, for example, by selling infringing products to Calpine Corporation, which is headquartered in this District." Complaint ¶ 5.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 23884794 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

This is not sufficient to state a claim for contributory infringement.

### 2. Inducing Infringement

An inducement claim requires allegations of (1) specific intent and (2) direct infringement by someone other than the inducer. *See Hewlett-Packard Co. v. Bausch & Lomb,* 909 F.2d 1464, 1449 (Fed.Cir.1990)("proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement"); *Met-Coil Systems v. Korners Unlimited, Inc.* 803 F.2d 684, 687 (Fed.Cir.1987). As stated above, although the allegation of willfulness is sufficient to satisfy the state of mind requirement necessary for inducement-in this case specific intent-there are no allegations of direct infringement by a third-party. Again, the alleged sales of "infringing products" to Calpine Corporation is insufficient to state a claim for inducing infringement.

Therefore, Defendant's motion to dismiss is GRANTED without prejudice; Plaintiff may file an amended complaint within twenty (20) days of this order.

IT IS SO ORDERED.

N.D.Cal.,2003.
Hewlett-Packard Co. v. Intergraph Corp.
Not Reported in F.Supp.2d, 2003 WL 23884794 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.