## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

                Plaintiff,

v.

CHI MEI OPTOELECTRONICS
CORPORATION; CHI MEI
OPTOELECTRONICS USA, INC.; AU
OPTRONICS CORPORATION; AU
OPTRONICS CORPORATION
AMERICA; TATUNG COMPANY;
TATUNG COMPANY OF AMERICA,
INC.; AND VIEWSONIC
CORPORATION,

                Defendants.

Civil Action No.06-726-JJF

## PLAINTIFF LG.PHILIPS LCD CO., LTD.'S
## ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANT VIEWSONIC CORPORATION'S MOTION TO DISMISS

June 15, 2007

THE BAYARD FIRM

Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardfirm.com

Attorneys for Plaintiff LG.Philips LCD Co., Ltd.

OF COUNSEL:
Gaspare J. Bono
R. Tyler Goodwin
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500

# TABLE OF CONTENTS

**Page**

I.     NATURE & STAGE OF THE PROCEEDING ................................................... 1

II.    SUMMARY OF THE ARGUMENT ................................................ 1

III.   COUNTER-STATEMENT OF FACTS ............................................... 3

IV.    LEGAL STANDARDS ................................................ 4

V.     ARGUMENT ................................................ 5

    A.   The Complaint Satisfies the Liberal Notice Requirements ....................... 5

    B.   The Complaint Is More Detailed Than the Official Federal Form for a Patent Infringement Case ................................................ 6

    C.   There Is No Requirement that the Complaint Identify Specific Accused Products ................................................ 7

    D.   The Complaint Sufficiently Alleges Inducement of Infringement .......... 10

    E.   Recent Patent Infringement Complaints Filed By ViewSonic's Co-Defendants Against LG.Philips Do Not Identify Infringing Products ................................................ 11

    F.   ViewSonic's Attempts to Bootstrap Rule 11 Into a Rule 12 Motion Are Inappropriate and Should Be Disregarded ........................................ 12

VI.    CONCLUSION ................................................ 13

# TABLE OF AUTHORITIES

**Page**

## CASES

*Agilent Technologies, Inc. v. Micromuse, Inc.*,
No. 04 Civ. 3090, 2004 WL 2346152  (S.D.N.Y. Oct. 19, 2004) ................................ 10

*Applera Corp. v. Thermo Electron Corp.*,
Civ. A. No. 04-1230, 2005 WL 524589 (D. Del. Feb. 25, 2005) .............................. 5, 9

*Catapano v. Wyeth Ayerst Pharmaceuticals, Inc.*,
88 F. Supp. 2d 27 (E.D.N.Y. 2000) ............................................................ 11

*Conley v. Gibson*,
355 U.S. 41 (1957) ........................................................................................ 4

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) ............................................................... 4, 11

*Emory Univ. v. Nova BioGenetics, Inc.*,
Civ. A. No. 1:06-CV-0141, 2006 WL 2708635 (N.D. Ga. Sept. 20, 2006) ................ 11

*Gen-Probe, Inc. v. Amoco Corp.*,
926 F. Supp. 948 (S.D. Cal. 1996) ........................................................... 10, 11

*Jackson v. Ill. Bell Tele. Co.*,
No. 01 C 8001, 2002 WL 1466796 (N.D. Ill. July 8, 2002) .................................... 8, 11

*LG Elec., Inc. v. Asustek Computers*,
126 F. Supp. 2d 414 (E.D. Va. 2000) .............................................................. 8

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon, Corp.*,
420 F.3d 1369 (Fed. Cir. 2005) ............................................................... 4, 11

*Ondeo Nalco Co. v. EKA Chem., Inc.*,
Civ. A. No. 01-537, 2002 WL 1458853 (D. Del. June 10, 2002) ............................ 9, 10

*Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*,
280 F.2d 278 (3d Cir. 2002) ......................................................................... 5

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*,
203 F.3d 790 (Fed. Cir. 2000) .................................................................. 5, 6

*Rollins Envtl. Servs. (FS), Inc. v. Wright*,
   738 F. Supp. 150 (D. Del. 1990)..................................................................... 6

*Soli-Tech, Inc. v. Halliburton Co.*,
   C.A. No. 91-CV-10232-BC,
   1993 U.S. Dist. LEXIS 19602 (E.D. Mich. Jan. 25, 1993) ........................... 7

*Symbol Tech., Inc. v. Hand Held Prods., Inc.*,
   Civ. A. No. 03-102, 2003 WL 22750145 (D. Del. Nov. 14, 2003) ..................... 2, 8, 12

## **STATUTES**

28 U.S.C. § 1404(a) ...................................................................................... 12

35 U.S.C. § 100............................................................................................. 4

## **RULES**

Fed. R. Civ. P. 8(a) ....................................................................................... 4

Fed. R. Civ. P. 9(b) ....................................................................................... 11

Fed. R. Civ. P. 11 ......................................................................................... 2, 12

Fed. R. Civ. P. 12(b)(6)................................................................................. 1

Fed. R. Civ. P. 84 ......................................................................................... 6

Plaintiff LG.Philips LCD Co., LTD. ("LG.Philips") respectfully submits this memorandum in opposition to Defendant ViewSonic Corporation's ("ViewSonic") Motion to Dismiss ("ViewSonic's Motion").

## I.    NATURE & STAGE OF THE PROCEEDING

On April 6, 2007, ViewSonic filed a Motion to Stay and Motion to Dismiss, or in the Alternative, for a More Definite Statement.  (D.I. 23.)  ViewSonic then withdrew the motion.  (D.I. 35.)  On May 1, 2007, ViewSonic moved again as to the same issues, but this time in three separate motions:  first, a Motion to Stay (D.I. 37), to which LG.Philips has already filed an Answering Brief (D.I. 52); second, a Motion for a More Definite Statement (D.I. 39), to which LG.Philips has also filed an Answering Brief (D.I. 51); and third, the instant Motion to Dismiss (D.I. 41).

## II.    SUMMARY OF THE ARGUMENT

1.    Rather than a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), ViewSonic's Motion suggests, at most, a request for a more definite statement under Rule 12(e).  Indeed, as noted above, ViewSonic also filed a Rule 12(e) motion addressing (often *verbatim*) the same perceived failures with LG.Philips's Complaint as this Rule 12(b) motion.  Both motions should be denied for the reasons set forth below and in LG.Philips's response to the other ("alternative") motion.  (D.I. 51.)

2.    ViewSonic's Motion should be denied because it ignores (a) the federal notice pleading standards, (b) the presumptive sufficiency of the model patent infringement complaint in the Appendix of Forms for the Federal Rules of Civil Procedure, and (c) the fact that discovery – not a Rule 12 motion – is the proper vehicle for obtaining additional detail regarding a plaintiff's claims.

1

3.      ViewSonic's primary argument is that LG.Philips's Complaint is somehow flawed under Rule 12 because it does not identify specific products accused of infringing the patents in suit.  ViewSonic does not, however, even acknowledge that this precise argument has been rejected in this District.  *See Symbol Tech., Inc. v. Hand Held Prods., Inc.*, Civ. A. No. 03-102, 2003 WL 22750145, at *3 (D. Del. Nov. 14, 2003) (D.J., Robinson).

4.      ViewSonic sprinkles its Rule 12 motion with various references to Rule 11.  However, in *Symbol Technologies*, which ViewSonic – ironically – fails to cite to the Court, Judge Robinson explicitly rejected "attempts to bootstrap Fed.R.Civ.P. 11 requirements into Rule 8."  *Id.* at *3 n.1.

5.      Finally, the lack of merit to ViewSonic's Motion is reflected in the pleading practices of ViewSonic's own co-defendants.  Just last week, for example, AU Optronics Corporation ("AUO") filed an answer with the Court to the very allegations that ViewSonic claims are so vague it is impossible to frame a response.  (D.I. 72.) Additionally, since LG.Philips's Complaint was filed, Defendants AUO and Chi Mei Optoelectronics Corporation ("CMO") have filed patent infringement complaints against LG.Philips in other jurisdictions.  Neither identifies specific accused products.

III.    **COUNTER-STATEMENT OF FACTS**

On December 1, 2006, LG.Philips filed suit against ViewSonic and five other Defendants for infringement of the patents in suit.  (D.I. 1.)  At issue is LG.Philips's

663001-1

patent rights related to semiconductor and liquid crystal display ("LCD") backplane technology, in particular United States Patent No. 5,019,002 ("the '002 patent"), United States Patent No. 5,825,449 ("the '449 patent"), and United States Patent No. 4,624,737 ("the '737 patent") (collectively, "LG.Philips's patents in suit").

LG.Philips's patents in suit are very detailed, described in the Complaint, and attached as exhibits thereto. (D.I. 1, ¶¶ 17-19 & Exs. A-C.) As the Complaint explains, "[t]he technology at issue involves the design and manufacture of Liquid Crystal Display modules ('LCDs'), which are a type of flat panel display that are incorporated into at least LCD portable computers, LCD computer monitors, and LCD televisions." (D.I. 1, ¶ 3.) "LG.Philips has invested substantial time and money in designing, developing, manufacturing and producing LCD products that incorporate [this] patented LCD technology." (D.I. 1, ¶ 22.) The Complaint further states that LG.Philips is the owner of each patent. (D.I. 1, ¶¶ 1, 17-20 & Exs. A-C.)

The Complaint clearly identifies each Defendant, including ViewSonic and manufacturing defendants, and for each patent in suit alleges that Defendants infringe by "making, using, causing to be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing, and/or causing to be imported products that are made by a method that infringes one or more claims of the [identified patent] in this judicial district and elsewhere in the United States." (D.I. 1, ¶¶ 5-10, 24, 32, 37, 42.)

The Complaint further explains that the action is being brought "under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, and in particular §§ 271, 281, 283, 284 and 285." (D.I. 1, ¶ 11.)

3

Finally, the Complaint alleges that "Defendants have, upon information and belief, infringed and are infringing the [patents in suit] with knowledge of LG.Philips' patent rights and without a reasonable basis for believing their conduct is lawful," and that such infringement "has been and continues to be willful and deliberate." (D.I. ¶¶ 35, 40, 45.)

## IV.    LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires only that a complaint contain a "short, plain statement of the claim showing that the pleader is entitled to relief." A complaint is not required to allege affirmatively every aspect of the claims, but only to present sufficient facts to allow the opposing party to conduct discovery and prepare a defense. *E.g.*, *Conley v. Gibson*, 355 U.S. 41, 45-48 (1957).

Under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." For a claim of inducement of infringement, a patentee may establish specific intent, *inter alia*, by showing that the accused infringer knew of the patent. *E.g.*, *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon, Corp.*, 420 F.3d 1369, 1378 n.4 (Fed. Cir. 2005).

Pursuant to Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. When considering such a motion, the Court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. The burden of demonstrating that the plaintiff has failed to state a claim upon which relief may be granted rests on the movant. *E.g.*, *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.2d 278, 283 (3d Cir. 2002).

## V.    ARGUMENT

### A.    The Complaint Satisfies the Liberal Notice Requirements

"The Rule 8 standard does not change in an action for patent infringement."

*Applera Corp. v. Thermo Electron Corp.*, Civ. A. No. 04-1230, 2005 WL 524589, at *1

n.1 (D. Del. Feb. 25, 2005) (D.J., Sleet).  As the Federal Circuit has explained, "a

patentee need only plead facts sufficient to place the alleged infringer on notice."

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir.

2000).  Therefore, in *Phonometrics*, the Federal Circuit reversed a dismissal of a patent

infringement complaint because:

> Phonometrics' complaint alleges ownership of the asserted
> patent, names each individual defendant, cites the patent
> that is allegedly infringed, describes the means by which
> the defendants allegedly infringe, and points to the specific
> sections of the patent law invoked.  Thus, Phonometrics'
> complaint contains enough detail to allow the defendants to
> answer.

*Id.* [1]

Consistent with *Phonometrics*, LG.Philips's Complaint contains each of these five

allegations.  First, the Complaint alleges ownership of the patents in suit.  (D.I. 1, ¶¶ 1,

17-20)  Second, it clearly identifies ViewSonic (and other parties) as Defendants.  (D.I. 1,

¶¶ 5-10.)  Third, it clearly identifies the three patents in suit (D.I. 1, ¶¶ 1, 17-19) and

appends complete copies of the '002, '449, and '737 patents.  (D.I. 1, Exs. A-C).  Fourth,

for each of these patents, the Complaint (as quoted above) describes the means by which

Defendants are alleged to have infringed each patent.  (D.I. 1, ¶¶ 32, 37, 42.)  Fifth, the

---

[1] ViewSonic never mentions the widely cited *Phonometrics* in its opening brief.

Complaint states that it is invoking Title 35 of the United States Code and "in particular §§ 271, 281, 283, 284 and 285." (D.I. 1, ¶ 11.)

According to the Federal Circuit, "Rule 12(b)(6) requires no more." *Phonometrics*, 203 F.3d at 794.

### B.  The Complaint Is More Detailed Than the Official Federal Form for a Patent Infringement Case

The illustrative forms appended to the Federal Rules of Civil Procedure are exemplars of the "short and plain statement of the claim" required by Rule 8(a). The Federal Rules themselves codify the sufficiency of these forms: "The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed. R. Civ. P. 84; *see also Rollins Envtl. Servs. (FS), Inc. v. Wright*, 738 F. Supp. 150, 155 (D. Del. 1990) (D.J., Roth) (citing Rule 84 and noting that a plaintiff "should be commended, not penalized" for following the forms).

Form 16 provides, *in its entirety*:

**Form 16 – Complaint for Infringement of Patent.**

1.  Allegation of jurisdiction.

2.  On May 16, 1934, United States Letters Patent No. ___ were duly and legally issued to plaintiff for an invention in an electric motor; and since that date plaintiff has been and still is the owner of those Letters Patent.

3.  Defendant has for a long time past been and still is infringing those Letters Patent by making, selling, and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court.

4.  Plaintiff has placed the required statutory notice on all electric motors manufactured and sold by him under said Letters Patent, and has given written notice to defendant of his said infringement.

> Wherefore plaintiff demands a preliminary and final injunction against continued infringement, an accounting for damages, and an assessment of interest and costs against defendant.

Fed. R. Civ. P., App. of Forms, Form 16.

Here, LG.Philips's Complaint alleges that (1) this Court has jurisdiction, (2) LG.Philips owns the patents in suit and (3) Defendants, including ViewSonic, have infringed LG.Philips's patents in suit.  (*See* D.I. 1, ¶¶ 11-21, 24, 32, 37, 42.)  LG.Philips also has given notice of the patents in suit by, *inter alia*, filing the Complaint.  (*See* D.I. 1.)

ViewSonic does not, and cannot, dispute that the Complaint is as detailed as Form 16 and, on that basis alone, ViewSonic's Motion should be denied.[2]  *See, e.g.*, *Soli-Tech, Inc. v. Halliburton Co.*, C.A. No. 91-CV-10232-BC, 1993 U.S. Dist. LEXIS 19602, at *9 (E.D. Mich. Jan. 25, 1993) ("[T]he Amended Complaint provides more information than the model complaint for patent infringement suggested by the Federal Rules of Civil Procedure.  Accordingly, Defendants' argument that the Complaint is insufficient to withstand a motion to dismiss is, under the Federal Rules, without merit.") (citation omitted)).

### C.    There Is No Requirement that the Complaint Identify Specific Accused Products

In light of the Federal Circuit's decision in *Phonometrics* and the contents of Form 16, it is not surprising that ViewSonic's Motion lacks support for its primary argument – that LG.Philips's Complaint should be dismissed because it does not identify specific accused products.

---

[2] ViewSonic's opening brief is also silent as to Form 16.

7

Indeed, numerous cases are contrary to ViewSonic's position.  These decisions have upheld patent infringement complaints containing allegations similar or identical to those found in LG.Philips's Complaint.  *E.g.*, *Jackson v. Ill. Bell Tele. Co.*, No. 01 C 8001, 2002 WL 1466796, at *3 (N.D. Ill. July 8, 2002) (holding that the averment "includes all the factual specificity that is required under the notice pleading standard," where complaint alleged "[e]ach of the defendants has infringed the patent in suit either directly or through acts of contributory infringement or inducement"); *LG Elec., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 417-18 (E.D. Va. 2000) (holding that a complaint "sets forth facts sufficient to allege a patent infringement claim," where the complaint alleged "each defendant infringed one or more claims of the patents by making, selling, offering to sell, using or importing into the United States computer systems embodying the claimed inventions of the patents").

In addition, cases from this District clearly support the sufficiency of LG.Philips's Complaint.  In *Symbol Technologies*, for instance, the complaint alleged infringement of "one or more claims of each of the [12 asserted patents]."  2003 WL 22750145, at *2.[3] The defendant filed motions to dismiss and for a more definite statement, arguing that the complaint was "facially defective" under Rule 8(a) because it did not identify specific accused products.  *Id.* at *3.  In denying both motions, Judge Robinson observed that the moving party (as with ViewSonic here) had "failed to cite any precedent biding upon [the] court that requires a complaint to identify the basis of an infringement claim with such particularity."  *Id.*  As Judge Robinson explained:  "It is established law that liberal

---

[3] As noted in the argument summary, ViewSonic does not cite Judge Robinson's decision in *Symbol Technologies*.

pleading requirements are designed to put the parties on notice *generally* as to the *nature* of the cause of action. . . . [I]t is through the discovery process that the parties refine and focus their claims." *Id.* (emphasis added) (citations omitted). The Court further noted that there were "a finite number of claims and a finite number of infringing products[, and therefore] . . . *traditional mechanisms of discovery [were] the proper tools to refine the scope of [the] litigation*." *Id.* (emphasis added).

Similarly, in *Applera Corp.*, the plaintiffs alleged infringement of a patent "directed to a mass spectrometer and a method of operating the mass spectrometer." 2005 WL 524589, at *1. In challenging the sufficiency of the complaint, the defendant argued that it could not "determine the issues in the case because the plaintiffs failed to identify which of its ninety-three mass spectrometers, in sixteen product lines, that it has manufactured since 1990 allegedly infringe[d]" the patent at issue. *Id.* Judge Sleet, however, rejected this argument, noting that the defendant's "desire to narrow the issues of this litigation as early on in the process as possible[] . . . [was] best achieved through the use of *traditional mechanisms of discovery*." *Id.* (emphasis added).

Significantly, ViewSonic cites only one case from this jurisdiction in support of its argument. *See Ondeo Nalco Co. v. EKA Chem., Inc.*, Civ. A. No. 01-537, 2002 WL 1458853 (D. Del. June 10, 2002) (D.J., Robinson). But *Ondeo* was decided by Judge Robinson over a year before she decided *Symbol Technologies,* discussed above. In addition, in *Ondeo*, the complaint, unlike the complaint here, apparently did not set forth sufficient limiting parameters regarding the scope of the products at issue. 2002 WL 1458853, at *1. By contrast, LG.Philips's Complaint sets forth limiting parameters regarding the scope of any infringing products. The Complaint, for instance, is clear that

9

the products at issue are LCDs that are designed and manufactured using the technology covered by the patents in suit, as well as LCD products incorporating such modules, including LCD portable computers, LCD computer monitors, and LCD televisions.  (D.I. 1, ¶¶ 3, 24.)

The only other case cited by ViewSonic on this issue – *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948 (S.D. Cal. 1996) – is plainly distinguishable.  Not only did the complaint there have multiple deficiencies that not even ViewSonic suggests are present here, but the case was decided before the Federal Circuit issued its leading decision in *Phonometrics* (discussed above).[4]

Here, as shown above, the allegations in LG.Philips's Complaint are simple, direct, and concise.  Indeed, co-defendant AUO has already answered LG.Philips's Complaint.  (*See* D.I. 72.)  ViewSonic ought to be able to frame a responsive pleading.  In any event, LG.Philips will make the detailed disclosures that ViewSonic desires in accordance with the appropriate discovery rules.  ViewSonic's attempt to bypass those rules has no merit.

### D.    The Complaint Sufficiently Alleges Inducement of Infringement

ViewSonic's argument that LG.Philips has failed sufficiently to allege intent to induce infringement must fail.  As discussed above, LG.Philips has alleged intent.  (D.I. 1, ¶¶ 32, 35, 37, 40, 42, 45.)  As a result, ViewSonic's argument must fail.  Fed. R. Civ. P. 9(b); *DSU Med. Corp.*, 471 F.3d at 1304; *MEMC Elec.*, 420 F.3d at 1378 n.4; *see also*

---

[4] LG.Philips notes that one of the cases on which ViewSonic relied in its motion for a more definite statement, *Agilent Technologies, Inc. v. Micromuse, Inc.*, No. 04 Civ. 3090, 2004 WL 2346152 (S.D.N.Y. Oct. 19, 2004), specifically rejected the argument that a complaint must identify infringing products in order to state a claim.  2004 WL 2346152, at *3-4 (denying Rule 12(b)(6) motion).

*Emory Univ. v. Nova BioGenetics, Inc.*, Civ. A. No. 1:06-CV-0141, 2006 WL 2708635, at *3 (N.D. Ga. Sept. 20, 2006); *Jackson*, 2002 WL 1466796 (denying motion to dismiss complaint alleging that "[e]ach of the defendants has infringed the patent in suit either directly or through acts of contributory infringement or inducement").

The cases cited by ViewSonic underscore why its Motion should be denied. *Gen-Probe* does *not* hold that a plaintiff must specifically allege facts showing intent to induce infringement. Instead, the complaint in that case was so muddled that its allegations "even if proven, would not support a claim for inducement of infringement." 926 F. Supp. at 954-55. Similarly, in *Catapano v. Wyeth Ayerst Pharmaceuticals, Inc.*, 88 F. Supp. 2d 27, 31 (E.D.N.Y. 2000), the inducement claim was dismissed because it was based solely on the defendants' knowledge that the products they distributed were being used by others in an infringing manner. 88 F. Supp. 2d at 31.

Here, however, LG.Philips has alleged that ViewSonic has caused acts of infringement and acted willfully, deliberately, with knowledge of LG.Philips's patent rights, and without a reasonable basis for believing its conduct is lawful. These allegations, if proven, support a claim for inducement.

E.    **Recent Patent Infringement Complaints Filed By ViewSonic's Co-Defendants Against LG.Philips Do Not Identify Infringing Products.**

On March 8, 2007, AUO filed a patent infringement complaint relating to LCD technology in the Western District of Wisconsin against LG.Philips and its subsidiary, LG.Philips LCD America, Inc. ("LG.Philips America"). (Ex. 1, AUO Compl.)[5] Then, on May 4, 2007, CMO filed a patent infringement complaint relating to LCD technology

---

[5] Unless otherwise indicated, all exhibits referenced herein are attached to the Declaration of Richard D. Kirk, filed contemporaneously herewith.

in the Eastern District of Texas against LG.Philips and LG.Philips America.  (Ex. 2, CMO Compl.)[6]

Neither of these patent infringement complaints identifies specific accused products.  Instead, both refer to "liquid crystal display devices," "TFT-LCD panels," and "LCD modules."  (*See* Ex. 1, AUO Compl.; Ex. 2, CMO Compl.)  AUO's complaint does not even allege that LG.Philips has knowledge of the patents at issue.  (*See* Ex. 1, AUO Compl.)  LG.Philips, by contrast, has alleged this fact and more in its Complaint.

**F.    ViewSonic's Attempts to Bootstrap Rule 11 Into a Rule 12 Motion Are Inappropriate and Should Be Disregarded**

Finally, ViewSonic makes various references to Rule 11 in its Rule 12 Motion.  These comments are inappropriate, inaccurate, and should disregarded.  *See Symbol Tech.*, 2003 WL 22750145, at *3 n.1 ("The court notes that [the defendant] attempts to bootstrap [Rule] 11 requirements into Rule 8, without actually alleging that [the patentee's] complaint is frivolous.  In the absence of an actual motion by [the defendant] to the contrary, the court will assume that [the patentee's] counsel has complied with their ethical obligations under [Rule] 11."  (citation omitted)).

ViewSonic's Motion is clearly without merit and should not have been filed.  Such motions are vexatious, inappropriately increase the cost of litigation, and place an undue burden on this Court's busy calendar.

---

[6] In an order dated May 30, 2007, the Wisconsin court transferred AUO's case to this District under 28 U.S.C. § 1404(a).  LG.Philips will also request that the Texas court transfer CMO's case.

## VI.    <u>CONCLUSION</u>

For the reasons stated herein, LG.Philips respectfully requests that the Court deny

ViewSonic's Motion to Dismiss.

June 15, 2007                          THE BAYARD FIRM

                                      /s/ Richard D. Kirk (rk0922)
                                      Richard D. Kirk (#0922)
                                      Ashley B. Stitzer (#3891)
                                      222 Delaware Avenue, 9th Floor
                                      P.O. Box 25130
                                      Wilmington, DE 19899-5130
                                      (302) 655-5000
                                      rkirk@bayardfirm.com

                                      Attorneys for Plaintiff LG.Philips LCD Co., Ltd.

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

# Unreported Cases

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: 2004 WL 2346152 (S.D.N.Y.))**

▷
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
AGILENT TECHNOLOGIES, INC., Plaintiff,
v.
MICROMUSE, INC., Defendant.
**No. 04 Civ. 3090(RWS).**

Oct. 19, 2004.

Christian & Barton, Richmond, VA, By: Michael W. Smith, Craig T. Merritt, R. Braxton Hill, for Plaintiff, of counsel.

Gray Cary Ware & Freidenrich, San Diego, CA, By: Edward H. Sikorski, John Allcock, Sean C. Cunningham, Megan Whyman Olesek, for Plaintiff.

Brown Raysman Millstein Felder & Steiner, New York, NY, By: Seth Ostrow, Jeffrey P. Weingart, Eric C. Osterberg, for Defendant, of counsel.

Willcox & Savage, Norfolk, VA, By: Michael R. Katchmark, Gary A. Bryant, for Defendant, of counsel.

### OPINION

SWEET, J.

**\*1** Defendant Micromuse, Inc. ("Micromuse") has moved pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint of plaintiff Agilent Technologies, Inc. ("Agilent") alleging patent infringement, and, in the alternative, for a more definite statement pursuant to Rule 12(e), and to add Hewlett Packard Company ("H-P") as a necessary party under Rules 12(b)(7) and 19(a) of those same Rules. Micromuse has also moved to disqualify Gray Cary Ware & Freidenrich, LLP ("Gray Cary") from representing Agilent in this action, Gray Cary having previously represented NetWork Harmoni, Inc. ("Network Harmoni"), an entity acquired by Micromuse prior to the filing of this action. Agilent has cross-moved for leave to file a supplemental declaration in opposition to Micromuse's motion to disqualify Gray Cary. For the reasons set forth below, Micromuse's motion to dismiss is denied, the motion for a more definite statement is granted, the motion to

add H-P as a party is denied at this time with leave granted to renew, and the motion to disqualify is denied at this time with leave granted to renew. Agilent's cross-motion for leave to file a supplemental declaration is granted.

*Prior Proceedings*

The complaint in this patent infringement action was filed in the United States District Court for the Eastern District of Virginia, Norfolk Division, on November 10, 2003.

On December 17, 2003, Micromuse filed the instant motions in the Eastern District of Virginia as well as a motion to transfer the action to this district, which latter motion was granted by order of the Honorable Raymond A. Jackson filed on April 16, 2004. The action was transferred to this district on April 22, 2004.

The remaining motions were argued and marked fully submitted on May 19, 2004.

*The Complaint*

The following facts are drawn from Agilent's complaint and do not constitute findings of fact by the Court.

According to the complaint, Agilent is a Delaware corporation having its headquarters in Palo Alto, California, and significant operations in Fort Collins, Colorado. It is alleged that Micromuse is a Delaware Corporation with headquarters in San Francisco, California, and significant operations in Northern Virginia, Georgia, Illinois, Texas, New York, London, and other overseas destinations. Subject matter jurisdiction is alleged under 28 U.S.C. § § 1331 and 1338.

With regard to the factual background of the complaint, it is alleged that:
  6. Agilent is a leading provider of components, test, measurement, monitoring and management solutions for the communications industry. Agilent's broad set of solutions and services includes, among other technologies, optical, wireless, Internet and broadband technologies that span the entire communications life cycle. Having invested substantial resources in the development

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: 2004 WL 2346152 (S.D.N.Y.))**

of these technologies, Agilent maintains a portfolio of patents covering its inventions, including the patents at issue.

**\*2** 7. On October 24, 2000, United States Patent No. 6,138,122 ("the ' 122 Patent"), entitled "Modeling of Internet Services," was duly and legally issued to Mark D. Smith, Deborah L. Caswell and Srinivas Ramanathan. All rights, title and interest in the '122 Patent were assigned to Agilent, which remains the sole owner of the '122 Patent....

8. On January 1, 2002, United States Patent No. 6,336,138 ("the '138 Patent"), entitled "Template-Driven Approach For Generating Models On Network Services," was duly and legally issued to Deborah L. Caswell, Srinivas Ramanathan, James D. Hunter, Scott S. Neal, Frederick A. Sicker and Mark D. Smith. All rights, title and interest in the '138 Patent were assigned to Hewlett-Packard Company. Agilent and Hewlett-Packard Company now jointly own the '138 Patent, and Agilent has the exclusive right to enforce the '138 Patent against Micromuse....

 (Compl. at ¶¶ 6-8.) It is further alleged that Micromuse "makes, sells, or offers products for sale in this district that infringe Agilent's patents." (Compl. at ¶ 4.)

 The complaint contains two counts and Micromuse's liability is alleged as follows:

### COUNT ONE
#### Infringement of U.S. Patent No. 6,138,122

9. Agilent realleges the foregoing paragraphs.

10. Agilent is informed and believes that Micromuse has directly infringed and continues to infringe, has induced and continues to induce, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of the '122 Patent.

11. Agilent is informed and believes that Micromuse's acts of patent infringement are and continue to be willful and deliberate.

12. As a result of Micromuse's patent infringement, Agilent has suffered damages in an amount not yet determined, and will continue to suffer damages in the future.

13. Unless an injunction is issued enjoining Micromuse and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing the '122 Patent, Agilent will be greatly and irreparably harmed.

### COUNT TWO
#### Infringement of U.S. Patent No. 6,336,138

14. Agilent realleges the foregoing paragraphs.

15. Agilent is informed and believes that Micromuse has directly infringed and continues to infringe, has induced and continues to induce, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of the '138 Patent.

16. Agilent is informed and believes that Micromuse's acts of patent infringement are and continue to be willful and deliberate.

17. As a result of Micromuse's patent infringement, Agilent has suffered damages in an amount not yet determined, and will continue to suffer damages in the future.

18. Unless an injunction is issued enjoining Micromuse and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf from infringing the '138 Patent, Agilent will be greatly and irreparably harmed.

**\*3** (Compl. at ¶¶ 9-18.)

*Discussion*

I. *Micromuse's Motion To Dismiss Is Denied*

 Micromuse has moved to dismiss Agilent's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the complaint fails to meet the notice requirements of Rule 8(a) of those same Rules.

 In considering a motion to dismiss pursuant to Rule 12(b)(6), the court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir.2001)), although "mere conclusions of law or unwarranted deductions" need not be accepted. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In other words, " 'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir.2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: 2004 WL 2346152 (S.D.N.Y.))**

set of facts which would entitle him or her to relief." _Sweet v. Sheahan,_ 235 F.3d 80, 83 (2d Cir.2000); _accord_ _Eternity Global Master Fund,_ 375 F.3d at 176-77.

"The indulgent standard evident in these precedents is codified in Rule 8, which requires no more than 'a short and plain statement of [a] claim showing that the pleader is entitled to relief." ' _Id_ . at 177 (quoting Fed.R.Civ.P. 8(a)(2)) (alteration in original); _see also_ _Wynder v. McMahon,_ 360 F.3d 73, 76-77 & n. 5 (2d Cir.2004) (referring to the "bare-bones standards of Rule 8" and noting that "Rule 8 pleading is extremely permissive"). The Supreme Court has interpreted Rule 8 "not to require a claimant to set out in detail the facts upon which he bases his claim." _Leatherman_ _v._ _Tarrant_ _County_ _Narcotics_ _Intelligence_ _&_ _Coordination_ _Unit,_ 507 U.S. 163, 168 (1993) (quoting _Conley v. Gibson,_ 355 U.S. 41, 47 (1957)). Indeed,

> The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid.... All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.

_Higgs v. Carver,_ 286 F.3d 437, 439 (7th Cir.2002); _see also_ _Scutti Enters., LLC v. Park Place Entm't_ _Corp.,_ 322 F.3d 211, 215 (2d Cir.2003) ( " 'More extensive pleading of fact is not required because the Federal Rules of Procedure provide other devices besides pleadings that will serve to define the facts and issues and to dispose of unmeritorious claims." ') (quoting 2 James Wm. Moore, _et al., Moore's_ _Federal Practice_ § 8.04[1] (3d ed.1999) (citation omitted)). Whether a complaint satisfies Rule 8(a)(2) is determined by whether the pleading provides fair notice to the opposing party. _See_ _Conley,_ 355 U.S. at 47; _see also_ _Wynder,_ 360 F.3d at 79 ("The key to Rule 8(a)'s requirements is whether adequate notice is given."). Accordingly, dismissal for failure to comply with the requirements of Rule 8 " 'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." ' _Simmons v._ _Abruzzo,_ 49 F.3d 83, 86 (2d Cir.1995) (quoting _Salahuddin v. Cuomo,_ 861 F.2d 40, 42 (2d Cir.1988)).

**\*4** Here, Agilent's complaint establishes the jurisdiction of this Court, sets forth the ownership of the patents in suit and alleges that Micromuse makes, sells, or offers products for sale that infringe Agilent's patents. The complaint further alleges that Micromuse is liable for direct infringement, contributory infringement and infringement by inducement. Agilent has provided a "short and plain statement" of its claims against Micromuse and the nature of those claims is discernible. Fed.R.Civ.P. 8(a)(2). Indeed, it would be difficult to frame a more skeletal pleading.

Micromuse nonetheless argues that dismissal of Agilent's complaint is appropriate because the complaint fails to specify any allegedly infringing product, fails to identify any allegedly infringing conduct, and fails to set forth any of the other actors implicated by the allegations that Micromuse has contributed to and induced patent infringement. The absence of allegations such as those described does not demonstrate that the harsh sanction of dismissal is appropriate here, as this absence does not make it "appear[ ] beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief," _Sweet,_ 235 F.3d at 83, nor that the complaint is " 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." ' _Simmons,_ 49 F.3d at 86 (quoting _Salahuddin,_ 861 F.2d at 42); _see generally_ _Glus v._ _Brooklyn E. Dist. Terminal,_ 359 U.S. 231, 235 (1959) ("It may well be that petitioner's complaint as now drawn is too vague, but that is no ground for dismissing his action.").

Where, as here, a pleading is sufficient to provide notice of the claim but does not contain sufficient information to allow a responsive pleading to be framed without risk of prejudice, the proper remedy is a motion for a more definite statement under Rule 12(e), Fed.R.Civ.P. _See, e.g.,_ _Scott v. City of_ _Chicago,_ 195 F.3d 950, 952 (7th Cir.1999); _Sisk v._ _Texas Parks & Wildlife Dep't,_ 644 F.2d 1056, 1059 (5th Cir.1981); _Harman v. Nat'l Bank of Arizona,_ 339 F.2d 564, 567 (9th Cir.1964); _but compare_ _Ondeo_ _Nalco Co. v. Eka Chems., Inc.,_ No. 01 Civ. 537(SLR), 2002 WL 1458853, at \*1-2 (D. Del. June 10, 2002) (dismissing defendant's counterclaims where it was unclear which products were being accused, concluding that the pleading was "too vague to provide plaintiff with fair notice," and granting leave to amend).

II. _Micromuse's Motion For A More Definite_ _Statement Is Granted_

Rule 12(e) of the Federal Rules of Civil Procedure provides in pertinent part that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d　　　　　　　　　　　　　　　　　　　　Page 4
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
(Cite as: 2004 WL 2346152 (S.D.N.Y.))

required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." _Fed.R.Civ.P. 12(e)._ Rule 12(e) applies only in limited circumstances:

*5 [T]he pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed; in other words the pleading must be sufficient to survive a Rule 12(b)(6) motion to dismiss. At the same time, the pleading also must be so vague or ambiguous that the opposing party cannot respond to it, even with a simple denial as permitted by Rule 8(b), with a pleading that can be interposed in good faith or without prejudice to himself.

5C Charles Alan Wright & Arthur R. Miller, _Federal Practice & Procedure §　1376 at 311 (3d ed.2004)_ (footnote omitted); _see Humpherys v. Nager,_ 962 F.Supp. 347, 352-53 (E.D.N.Y.1997) ("A 12(b)(6) motion is one made for a failure to state a claim, while a 12(e) motion is proper when a complaint pleads a viable legal theory, but is so unclear that the opposing party cannot respond to the complaint."); _but compare Home & Nature Inc. v. Sherman Speciality Co.,_ 322 F.Supp.2d 260, 265 (E.D.N.Y.2004) ("Rule 12(e) motion should be denied if a complaint comports with the liberal pleading requirements of Rule 8(a).") (collecting cases).

Although motions pursuant to Rule 12(e) are generally disfavored where prompt resort to discovery may provide an adequate means for ascertaining relevant facts, _see id.,_ courts have considered Rule 12(e) relief appropriate in patent infringement cases where a plaintiff has failed to identify any allegedly infringing product or products. _See, e.g., In re Papst Licensing GmbH Patent Litig.,_ Nos. MDL 1298 & 99 Civ. 3118, 2001 WL 179926, at *2 (E.D.La. Feb. 22, 2001) (concluding that the plaintiff's complaint must be amended to specifically identify which of the defendant's products are alleged to have infringed the plaintiff's patents); _cf. In re Independent Serv. Org. Antitrust Litig.,_ 85 F.Supp.2d 1130, 1169 (D.Kan.2000) (denying the plaintiff's motion for summary judgment on a defendant's counterclaim where the plaintiff argued that it did not have adequate notice of which of its devices allegedly infringed the defendant's patents, observing that the plaintiff had already answered the counterclaim and that, if the plaintiff "did not truly know which parts were covered by the patents identified, it could have filed a motion for a more definite statement under Rule 12(e)"). The cases cited

by Agilent in opposition to Micromuse's motion do not suggest that a contrary result is required here, as they stand for the propositions that a pleading need not identify every infringing product where some other limiting parameter has been set forth or at least one purportedly infringing product has been identified. _See Symbol Tech., Inc. v. Hand Held Prods., Inc.,_ No. 03 Civ. 102(SLR), 2003 WL 22750145, at *3 (D.Del. Nov. 14, 2003) (denying a Rule 12(e) motion where there was a "finite" set of potentially infringing products under identified patents held by the defendant); _Oki Elec. Indus. Co. v. LG Semicon Co.,_ No. 97 Civ. 20310(SW), 1998 WL 101737, at *3 (N.D.Cal. Feb. 25, 1998) (denying a motion to dismiss where the plaintiff identified infringing products by specifying that the products concerned were "devices that embody the patented methods, including 4 megabit and higher density DRAMs") (internal quotation marks omitted), _aff'd,_ 243 F.3d 559 (Fed.Cir.2000).

*6 Agilent's complaint does not specify which products infringed plaintiff's patents; it merely states that the alleged infringements occurred as a result of the fact that Micromuse "makes, sells, or offers products for sale ... that infringe Agilent's patents." (Compl. at ¶ 4.) Although Agilent's papers submitted in opposition to Micromuse's various motions suggest that Micromuse possesses at least four infringing products, those products have not been formally accused. Under these circumstances, Micromuse is entitled to know which of its products or services are alleged to have infringed Agilent's patents and a more definite statement setting forth that information is appropriate.

Micromuse has also argued that Agilent's complaint fails to identify the primary infringer with respect to the contributory and inducement claims. Micromuse has cited to a single unpublished authority in support of its argument that such identification is required to render a pleading answerable, and this authority, _Net Moneyin, Inc. v. Mellon Fin. Corp.,_ No. 01 Civ. 441(TUC)(RCC), slip op. (D.Ariz. July 30, 2003), itself cites no other case law directly on point. Micromuse has accordingly failed to establish that relief under Rule 12(e) with respect to the identity of any primary infringers is appropriate.

Where a motion made under Rule 12(e) has been granted, the order of the court to provide a more definite statement must be obeyed within ten days after notice of the order "or within such other time as the court may fix." Fed.R.Civ.P. 12(e). Agilent is directed to comply with the grant of Micromuse's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: 2004 WL 2346152 (S.D.N.Y.))**

motion for a more definite statement by filing and serving an amended complaint within thirty (30) days of entry of this order and opinion.

### III. *H-P Will Not Be Deemed A Necessary Party At This Time*

Micromuse argues that, if Agilent's complaint is not dismissed, H-P, as co-owner of the '138 Patent, should be joined as a necessary party to this lawsuit, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. In addition, Micromuse asserts that if H-P is not so joined, the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7).

"Fed.R.Civ.P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party belongs in the suit, *i.e.,* whether the party qualifies as a 'necessary' party under Rule 19(a)." *Viacom Int'l, Inc. v. Kearney,* 212 F.3d 721, 724 (2d. Cir.2000). Rule 19(a) provides in relevant part that,
> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

*7 Fed.R.Civ.P. 19(a). Second, if a party is deemed necessary, it then must be determined whether the party's absence warrants dismissal pursuant to Rule 19(b), Fed.R.Civ.P. *See Viacom Int'l,* 212 F.3d at 725. "If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." *Id.* at 724 (citing *Associated Dry Goods Corp. v. Towers Fin. Corp.,* 920 F.2d 1121, 1123 (2d Cir.1990)).

As a general matter, "United States patent law ... requires that all co-owners normally must join as plaintiffs in an infringement suit." *Int'l Nutrition Co. v. Horphag Research Ltd.,* 257 F.3d 1324, 1331 (Fed.Cir.2001); *see also Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1468

(Fed.Cir.1998) (stating that, "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiff in an infringement suit") (footnote omitted); *see generally Waterman v. MacKenzie,* 138 U.S. 252, 255- 56 (1891). As one court has explained, since " 'all co-owners have standing to sue for infringement, if all the co-owners are not joined in an infringement suit, there may be a risk that the defendant will be subject to multiple suits.' " *E.Z. Bowz, L.L.C. v. Prof'l Prod. Research Co.,* No. 00 Civ. 8670(LTS)(GWG), 2003 WL 22064257, at *3 (S.D.N.Y. Sept. 5, 2003) (quoting *Int'l Bus. Machs. Corp. v. Conner Peripherals, Inc.,* No. 93 Civ. 20591(RMW), 1994 WL 409493, at *3 (N.D.Cal. Jan. 28, 1994)); *see also Union Trust Nat'l Bank v. Audio Devices, Inc.,* 295 F.Supp. 25, 27 (S.D.N.Y.1969) ("That all co-owners are parties to a suit is a necessary requirement if conflicting decisions about the same patent (for example, its validity) are to be avoided."); *cf. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 875 (Fed.Cir.1991) ("The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer.").

"Since the introduction of Fed.R.Civ.P. 19 and the 1966 amendments to the rule, however, 'courts are less concerned with abstract characterizations of the parties and more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of the patent co-owner.' " *E.Z. Bowz,* 2003 WL 22064257, at *3 (quoting *Michaels of Oregon Co. v. Mil-Tech, Inc.,* No. 95 Civ. 908(MA), 1995 WL 852122, at *1 (D.Or. Oct. 17, 1995)); *cf. Howes v. Med. Components, Inc.,* 698 F.Supp. 574, 576 (E .D. Pa.1988) ("[T]he adoption of the 1966 amendments to Rule 19 'makes inappropriate any contention that patent co-owners are *per se* indispensable in infringement suits." ') (quoting *Catanzaro v.. Int'l Tel. & Tel. Corp.,* 378 F.Supp. 203, 205 (D.Del.1974)).

Thus, where the co-owner of a patent or other entity or individual whose interest in a patent might be directly affected by litigation has specifically disclaimed all interest in pursuing litigation related to the patent in favor of the party who has brought the suit, courts have held that joinder of the co-owner or other entity or individual is not necessary. *See Vaupel Textilmaschinen,* 944 F.2d at 875-76 (concluding that the policy to join an owner when an exclusive licensee bring suit in order to preclude the possibility of duplicative lawsuits was not undercut where,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: 2004 WL 2346152 (S.D.N.Y.))**

pursuant to express agreements, the right to sue rested solely with the licensee and denying the defendant's Rule 19 motion); *E-Z Bowz,* 2003 WL 22064257, at *4-5 (holding that the defendant would not be subject to a substantial risk of incurring inconsistent obligations where the former co-owner of certain patents had relinquished her interest in the patents as well as any rights of action relating to the patents and concluding that the rights of the parties could be fairly adjudicated without joinder of the absent former co-owner); *Michaels of Oregon,* 1995 WL 852122, at *2-3 (determining that an absent co-owner of certain patents was not a necessary party where that absent co-owner had entered into an agreement with the plaintiff providing that only the plaintiff might file actions for patent infringement); compare *Parkson Corp. v. Andritz Sprout-Bauer, Inc.,* 866 F.Supp. 773, 775 (S.D.N.Y.1995) (concluding that it was not possible to determine whether an owner was a necessary party to an action brought by an exclusive licensee where the licensing agreement did not unambiguously give the licensee control over whether infringement claims should be brought); *Howes,* 698 F.Supp. at 577 (concluding that an absent patent co-owner was a necessary party where the defendants might face the risk of relitigation by that co-owner).

**\*8** Although the complaint alleges that Agilent and H-P jointly own the '138 Patent, it further alleges that Agilent enjoys the exclusive right to enforce the '138 Patent against Micromuse. In opposition to Micromuse's motion, Agilent has submitted a redacted version of an August 22, 2003 agreement between Agilent and H-P (the "August Agreement") regarding their respective rights concerning the enforcement of the '138 Patent. According to the August Agreement, H-P grants to Agilent "the exclusive right to license the ['138] Patent to Micromuse." (Declaration of Megan Whyman Olesek, dated Jan. 15, 2004 ("Olesek Decl."), Exh. X at ¶ 1.) H-P further grants to Agilent "the exclusive right to enforce the ['138] Patent to and against Micromuse" including by "filing and prosecuting the Agilent Patent Suit to final judgment, including appeals." [FN1] (*Id.*) H-P has also agreed that

> FN1. The "Agilent Patent Suit" is defined as "a patent infringement lawsuit against Micromuse." (Olesek Decl., Exh. X, preamble.)

[A]s between the parties, Agilent shall have the full power and authority to control the Agilent Patent Suit and any settlement thereof and shall retain one

hundred percent (100%) of any damages or compensation received in connection with the Agilent Patent Suit or settlement thereof. (*Id.* at ¶ 3.)

Based on the terms of the August Agreement, it does not appear that H-P's absence from this lawsuit will subject Micromuse to any "substantial risk of incurring double, multiple, or otherwise inconsistent obligations," Fed.R.Civ.P. 19(a), because H-P has no independent capacity to file a patent infringement action against Micromuse based on the '138 Patent, having expressly disclaimed any interest in pursuing a claim against Micromuse with respect to the '138 Patent. In light of the broad contractual language by which H-P has granted Agilent the exclusive right to enforce the '138 Patent against Micromuse, the absence of any provision in the August Agreement stating that H-P agrees to be bound by the outcome of this litigation is not determinative here. Likewise, the absence of an affirmative representation that H-P has relinquished its right to sue Micromuse for any purported past infringement does not, contrary to the argument advanced by Micromuse, require joinder of H-P. On the facts now available, it thus appears that complete relief can be accorded among those already parties.

Micromuse has noted, however, that the August Agreement makes explicit reference to the existence of a Master Patent Ownership and License Agreement and that the August Agreement is an agreement among Agilent and H-P "together with Hewlett Packard Development Company, L.P." (Olesek Decl., Exh. X, preamble), an entity that, according to Micromuse, may also have an interest in the '138 Patent. Micromuse has further observed that the redacted form of the August Agreement does not set forth its effective term or termination provisions and suggests that the absence of such provisions raises questions of whether H-P enjoys a reversion, termination, or expiration interest in the '138 Patent, questions which may, in turn, affect any determination as to whether H-P is a necessary party here. *See, e.g., Moore U.S.A. Inc. v. Standard Register Co.,* 60 F.Supp.2d 104, 109-110 (W.D.N.Y.1999) (concluding that a licensor was a necessary party to a patent infringement action despite the existence of an agreement with the plaintiff licensee granting the licensee sole and exclusive rights to sue for infringement where the agreement was of fixed term and where the licensor retained a reversionary interest in the patent).

**\*9** Although the facts presently available do not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: 2004 WL 2346152 (S.D.N.Y.))**

establish that H-P is a necessary party, Micromuse's observations suggest that developments resulting from discovery may cause the issue of H-P's joinder to be revisited. Accordingly, Micromuse's motion to join H-P is denied at this time and leave is hereby granted to renew the motion after further discovery.

### IV. *Gray Cary Will Not Be Disqualified At This Time*

Micromuse has moved to disqualify Gray Cary from representing Agilent in this matter on the grounds that, for many years, Gray Cary provided extensive legal representation to Network Harmoni, a company acquired by Micromuse in August 2003. Micromuse argues that Network Harmoni's suite of proprietary intelligent software agents is now part of Micromuse's product offerings and, under the current complaint, potentially the target of Agilent's patent infringement claims. Micromuse asserts that Gray Cary thus formerly represented Network Harmoni in matters substantially related to the subject matter of this action and must be disqualified from representing Agilent as a result. Agilent opposes Micromuse's motion, arguing that in its representation of Network Harmoni Gray Cary was at all times in an adverse relationship to Micromuse and that Gray Cary's prior representation of Network Harmoni involved no confidential information about the product or products at issue in the present action. [FN2]

FN2. Following briefing on Micromuse's motion, Agilent moved for leave to submit a supplemental declaration, claiming the need to respond to certain contentions in Micromuse's reply papers, and Micromuse opposed the motion. Agilent's motion for leave to submit the supplemental declaration is granted. Although submission of supplemental papers is often more of a hindrance than a help, the issues addressed in the supplemental papers presented here are carefully cabined and respond to arguably new contentions contained in reply papers on the underlying motion. Where this is true, and where, as here, the opposing party has disclaimed any prejudice resulting from the submission of the supplemental papers, and "the parties will be best served by the Court's deciding the ... issue presented to it on the most complete factual basis possible," *Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*, No. 03 Civ. 200(GEL), 2003 WL 1618534, at *1 (S.D.N .Y. Mar.

27, 2003), leave to submit supplemental papers is appropriately granted.

Motions to disqualify counsel have long been disfavored in this Circuit. *See, e.g., Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir.1983) (enumerating the reasons for which disqualification motions are disfavored); *Bennett Silvershein Assoc. v. Furman*, 776 F.Supp. 800, 802 (S.D.N.Y.1991) ("The Second Circuit has indeed been loathe to separate a client from his chosen attorney ....") (collecting cases). "Disqualification motions are often made for tactical reasons, and thereby unduly interfere with a party's right to employ counsel of his choice." *Skidmore v. Warburg Dillon Read LLC*, No. 99 Civ. 10525(NRB), 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001) (citing *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979)). Moreover, disqualification motions, "even when made in the best of faith ... inevitably cause delay." *Evans*, 715 F.2d at 792 (quoting *Nyquist*, 590 F.2d at 1246). A "high standard of proof" is therefore required from one who moves to disqualify counsel. *Id.* at 791 (quoting *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir.1978)). The appearance of impropriety alone does not warrant disqualification. *See Nyquist*, 590 F.2d at 1246-47.

In determining whether an attorney can oppose his former client, courts evaluate whether the new matter is substantially related to the subject matter of the prior representation. An attorney may be disqualified from representing a client in a particular case if:

(1) the moving party is a former client of the adverse party's counsel;

**\*10** (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Id.* at 791. "Under this standard, proof of substantial similarity must be 'patently clear' to warrant disqualification." *Decora Inc. v. DW Wallcovering, Inc.*, 899 F.Supp. 132, 136 (S.D .N.Y.1995) (quoting *Government of India*, 569 F.2d at 739-40) (additional citations omitted). A "substantial relationship" exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation. *See U.S. Football League v. Nat'l Football League*, 605 F.Supp. 1448, 1459-60 & n. 25 (S.D.N.Y.1985) ("It is the congruence of *factual* matters, rather than areas of law, that establishes a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
(Cite as: 2004 WL 2346152 (S.D.N.Y.))

Page 8

substantial relationship between representations for disqualification purposes.") (emphasis in original).

According to Micromuse, Network Harmoni evolved from a research project in network visualization software conducted at Curtin University in Perth, Australia. In 1996, the founders of the project formed NDG Software, Inc., and in November 1998 the company received its first venture funding and moved its headquarters from Australia to San Diego, California. It is alleged that Gray Cary initially provided advice, counsel and representation in establishing and structuring this U.S.-based company and its operations, and served as outside counsel. Subsequently, NDG Software, Inc., changed its name to Network Harmoni, Inc.

During the time of Gray Cary's representation, Network Harmoni developed and licensed to its customers, including Agilent and Micromuse, proprietary intelligent software agents designed to provide users with information on the status and security of computer networks, systems and applications. Micromuse contends that Gray Cary, during its five-year relationship with Network Harmoni, represented Network Harmoni in its corporate affairs, employment issues, in prosecuting its patents and trademarks and handling other patent and trademark-related matters, in evaluating third-party patents, and in drafting and negotiating licensing agreements, financing instruments and other corporate-related documents.

Over the course of its representation of Network Harmoni, Gray Cary is alleged to have drafted and filed several patent applications with the United States Patent and Trademark Office relating to certain aspects of Network Harmoni's software products and was informed of virtually all attributes and potential uses of Network Harmoni's suite of proprietary intelligent software agents, as well as the company's plans for future software applications and services.

According to Micromuse, Gray Cary represented Network Harmoni in its negotiations to be purchased by Micromuse, and Network Harmoni and Micromuse executed a non-disclosure agreement to assure that the parties could have full and complete discussions without the use of such information for non-acquisition purposes.

**\*11** It is further alleged that in three rounds of financing, Gray Cary was allowed to participate on the same basis as the initial preferred investors and became a shareholder of Network Harmoni, and until

September 1999, one of its lawyers served as a member of its board of directors. Gray Cary sold its stock in connection with Micromuse's acquisition by Micromuse.

In opposition to Micromuse's motion it is alleged that Gray Cary first became aware of a potential claim against Micromuse by Agilent on September 19, 2003, when Agilent approached Gray Cary about the possibility of Gray Cary handling the matter for Agilent. It is also alleged that on December 8, 2003, an ethical wall was established to isolate all attorneys working on Agilent matters from any and all information related to any matter in which Network Harmoni had been a client for the firm.

Agilent asserts that Gray Cary never had an attorney-client relationship with Micromuse and that such a relationship may not be inferred from Micromuse's disclosure of confidential business information to Network Harmoni and its then-counsel Gray Cary during negotiations for the acquisition of Network Harmoni. At present, however, there appears to be no dispute that Micromuse is entitled to seek Gray Cary's disqualification based on Gray Cary's prior representation of Micromuse's wholly owned subsidiary, Network Harmoni. *See generally Harford Accident & Indem. Co. v. RJR Nabisco, Inc.,* 721 F.Supp. 534, 539-40 (S.D.N.Y.1989) (concluding that the plaintiff's law firm would be deemed to have previously represented the defendant where the plaintiff's law firm had previously represented the defendant corporation's subsidiary and the defendant corporation had taken in active role with regard to the law firm's representation of its subsidiary); *cf. Decora,* 899 F.Supp. at 137 (concluding that the plaintiff could properly seek disqualification of the defendant's attorney in a patent infringement action where the attorney had previously represented the plaintiff's parent corporation, thereby learning certain of the plaintiff's trade secrets).

Assuming without deciding that the first prong of the test set forth in *Evans* has therefore been satisfied, Micromuse's motion for disqualification is denied nonetheless, since, to date, Micromuse has not met its burden of proof with respect to establishing a "substantial relationship" between Gray Cary's former representation of Network Harmoni and its current representation of Agilent. It has not been shown that Gray Cary gave Network Harmoni advice on the validity of the patents in suit, including whether there was infringement by Network Harmoni of the patents in suit. All that has been established is that Gray Cary advised Network Harmoni on

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: 2004 WL 2346152 (S.D.N.Y.))**

Page 9

corporate governance issues, employment matters, original equipment manufacturer ("OEM") agreements, patent and trademark filings, and financing instruments. Prior general business representation by the plaintiff's law firm of an entity related to the defendant on matters unrelated to the lawsuit at issue does not meet the high burden of establishing a conflict. *See, e.g., In re Maritima Aragua, S.A.,* 847 F.Supp. 1177, 1182-83 (S.D.N.Y.1994).

**\*12** The Micromuse products and services alleged to be violative of the Agilent patent will be identified as a consequence of the granting of Micromuse's motion for a more definite statement. Thereafter, discovery may be sought with respect to the knowledge and participation of Gray Cary in the development of any such accused products or services. Should this discovery yield additional facts establishing that the prior representation of Network Harmoni by Gray Cary dealt with issues presented in this action, leave is granted to Micromuse to renew its disqualification motion, which motion is denied at this time.

*Conclusion*

For the reasons set forth above, Micromuse's motion to dismiss the complaint is denied and its motion for a more definite statement is granted. Agilent is directed to comply with the grant of Micromuse's motion for a more definite statement by filing and serving an amended complaint within thirty (30) days of entry of this order and opinion. In addition, Micromuse's motions to add HP as a party and to disqualify Gray Cary are denied at this time with leave to renew. Agilent's motion to file a supplemental declaration is granted.

It is so ordered.

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 524589 (D.Del.)
(Cite as: 2005 WL 524589 (D.Del.))

Page 1

**C**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
APPLERA CORPORATION, MDS Inc., and
Applied Biosystems/MDS Sciex Instruments,
Plaintiffs,
v.
THERMO ELECTRON CORPORATION,
Defendant.
No. Civ.A. 04-1230(GMS).

Feb. 25, 2005.

Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Plaintiffs.

*ORDER*

SLEET, J.

**I. INTRODUCTION**

**\*1** On September 3, 2004, Applera Corporation ("Applera"), MDS Inc. ("MDS"), and Applied Biosystems/MDS Sciex Instruments ("Applied Biosystems") (collectively, the "plaintiffs") filed a complaint, alleging that Thermo Electron Corporation ("Thermo") infringes one or more claims of U.S. Patent No. 4,963,736 (the " '736 patent"). The '736 is directed to a mass spectrometer and a method of operating the mass spectrometer.

Presently before the court is Thermo's motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. For the following reasons, the court will deny Thermo's motion.

**II. DISCUSSION**

The decision of whether to grant or deny Thermo's motion rests within the sound discretion of the District Court. *See* 5A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 3D § 1377, at 728-29 & n. 3 (Supp.2004). Courts generally view motions for a more definite statement with disfavor, particularly " 'where the information sought by the motion could easily be obtained by discovery." ' *See CFMT, Inc. v. YieldUp Int'l Corp.,* No. Civ. A. 95-

549, 1996 WL 33140642, \*1 (D.Del. Apr.5, 1996) (citations omitted). Courts take this view because the Federal Rules require that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). [FN1] As a result, a motion for a more definite statement should be granted only where the pleading is so "vague or ambiguous" that the opponent cannot draft a responsive pleading. *See* Fed. R. Civ. P. 12(e); *see also Schaedler v. Reading Eagle Publ'n,* 370 F.2d 795, 798 (3d Cir.1967). Courts have interpreted this rule to mean that the motion should only be granted where the pleading is unintelligible, see *CFMT,* 1996 WL 33140642, at \*1, or the issues cannot be determined. *See Fischer & Porter Co. v. Sheffield Corp.,* 31 F.R.D. 534, 536 (D.Del.1962); *Container Co. v. Carpenter Container Corp.,* 8 F.R.D. 208, 210 (D.Del.1948).

> FN1. The Rule 8 standard does not change in an action for patent infringement. *See* 5 WRIGHT & MILLER § 1251, at 459-60 ("[T]he complaint in a patent infringement action ... must identify the patent that has been infringed and indicate in what manner the patent has been encroached upon; however no special level of particularity ... is required." (footnotes omitted); *see also* Fed.R.Civ.P. 84 (1998); Appendix of Forms, Form 16 (Complaint for Infringement of Patent).

Thermo asserts that it cannot reasonably be required to frame an answer to the plaintiffs' complaint because it contains three alternatively pleaded theories of infringement without any specificity as to time, place, or person. Thermo further asserts that it cannot determine the issues in the case because the plaintiffs failed to identify which of its ninety-three mass spectrometers, in sixteen product lines, that it has manufactured since 1990 allegedly infringe the '736 patent. [FN2] After reviewing the plaintiffs' complaint, the court finds that it is far from unintelligible. In addition to identifying the patent in suit, the complaint plainly states that Thermo has allegedly infringed the '736 patent "directly, contributorily, and/or by inducing others to infringe the patent by making, using, offering for sale and selling mass spectrometer systems that are encompassed by or the use of which is encompassed by one or more claims of the '736 patent." (D.I. 1 ¶

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 524589 (D.Del.)
**(Cite as: 2005 WL 524589 (D.Del.))**

Page 2

18.) _FN3_ The court, therefore, cannot say that the complaint is so "vague or ambiguous" that it prevents Thermo from reasonably framing a response. While the court understands and endorses Thermo's desire to narrow the issues of this litigation as early on in the process as possible, it believes that this goal is best achieved through the use of traditional mechanisms of discovery. *See Symbol Techs., Inc. v. Hand Held Prods., Inc.,* Civil Action No. 03-102, 2003 WL 22750145, *9 (D.Del. Nov.14, 2003).

FN2. The '736 patent issued on October 16, 1990.

FN3. Further, the plaintiffs have included a background section in the complaint that discusses previous litigation involving the '736 patent. (D.I. 1 ¶ ¶ 7-14.) In particular, the plaintiffs discuss the results of the *Markman* hearing, jury trial, bench trial concerning inequitable conduct, and appellate review. (*Id.*); *see Applera Corp. v. Micromass UK Ltd.,* 204 F.Supp.2d 724 (D.Del.2002), *aff'd,* 2003 WL 1795593 (Fed.Cir.2003). Thermo also discusses this prior litigation in its brief in support of its motion, asserting that the litigation makes it all the more important for the plaintiffs to identify which of its products or processes allegedly infringe the '736 patent. (D.I. 8, at 6-7.) The court disagrees because, as Thermo recognized in its brief, the prior litigation will inevitably inform the claims and defenses in the present case. For example, one of the plaintiffs' witnesses in the prior litigation testified that certain Thermo products do not infringe the '736 patent. (*Id.*)

III. CONCLUSION

**\*2** For the aforementioned reasons, IT IS HEREBY ORDERED that:
1. The defendant's Motion for a More Definite Statement (D.I.7) is DENIED.
2. The defendant shall answer the complaint within thirty (30) days of the date of this Order.

Not Reported in F.Supp.2d, 2005 WL 524589 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2006 WL 2708635 (N.D.Ga.)
(Cite as: 2006 WL 2708635 (N.D.Ga.))

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. Georgia,
Atlanta Division.
EMORY UNIVERSITY and Microbe Guard, Inc.,
Plaintiffs,
v.
NOVA BIOGENETICS, INC. and Timothy C.
Moses, Defendants.
Civil Action No. 1:06-CV-0141-TWT.

Sept. 20, 2006.

Jeffrey Brickman, Lawrence K. Nodine, Thad
Charles Kodish, Robin L. Gentry, Needle &
Rosenberg, Tina Williams McKeon, Fish &
Richardson, Atlanta, GA, for Plaintiffs.

Sanford Jay Asman, Office of Sanford J. Asman,
Atlanta, GA, for Defendants.

*OPINION & ORDER*

THOMAS W. THRASH, JR., District Judge.

*1 This is a patent infringement case. It is before the
Court on the Defendants' Joint Motion to Dismiss and
Motion to Disqualify Needle & Rosenberg as
Counsel for Plaintiffs [13], Defendant Timothy C.
Moses' Motion to Dismiss and Motion to Strike [14],
and the Plaintiffs' Motion to Amend the First
Amended Complaint [25]. For the reasons set forth
below, the Defendants' Joint Motion to Dismiss and
Motion to Disqualify is DENIED, Defendant Moses'
Motion to Dismiss and Motion to Strike is DENIED,
and the Plaintiffs' Motion to Amend is GRANTED.

I. *BACKGROUND*

In 1995, BioShield Technologies, Inc. ("BioShield"),
a company run by Jacques Elfersy and Defendant
Timothy C. Moses, contacted Emory University with
the idea of producing a stable version of a certain
antimicrobial product ("DC 5700") manufactured by
Dow Corning. DC 5700 has the ability to bond with
the surface to which it is applied, thus causing that
surface to have permanent antimicrobial properties.
The problem with the product, however, was that it is
not stable in water for any period of time and was
rendered ineffective as an antimicrobial when

exposed to water.

In an effort to solve this problem, BioShield
negotiated a research agreement with two Emory
University scientists, Dr. Lanny Liebeskind and his
graduate student, Gary Allred. Under this agreement,
all subject matter invented by the Emory scientists
would be assigned to Emory University. (Defs.' Mot.
to Dis., Ex. 1, ¶ 1 .3.) The agreement also provided
that any disputes regarding inventorship would be
submitted to arbitration and that Emory had the right
to select counsel to prosecute any patent applications.
(*Id.,* ¶ 8.6.)

Liebeskind and Allred subsequently solved the
stability problem by creating a chemical "cap" that
prevented the product from reacting with water.
Pursuant to the research agreement, Emory
University engaged the law firm of Needle &
Rosenberg ("N & R") to prosecute the patent
applications on this invention. On May 7, 1996, N &
R filed a patent application directed to the chemical
compounds and compositions and to general methods
of use of the claimed compound ("the '156
Application"). The application, which eventually
became U.S. Patent No. 5,959,014 ("the '014
patent"), named only Liebeskind and Allred as
inventors. Before the '156 application was filed,
however, BioShield claimed that Moses and Elfersy
should be listed as co-inventors because they had
supplied prior art to Emory and stated the problem
that was to be solved.

The parties subsequently submitted this dispute to
arbitration. In that proceeding, N & R represented
Emory and the law firm of Jones & Askew
represented BioShield. The Arbitrator determined
that Moses and Elfersy had made no contribution to
the claimed invention. (Pls.' Resp. to Defs.' Mot. to
Dis., Ex. 7, at 10.) The Arbitrator thus found that
Liebeskind and Allred were the only inventors and
that Moses and Elfersy should not be named as co-
inventors on the '156 application. (*Id.*)

*2 On May 27, 1999, N & R then filed another
application ("the 771 application"), which lead to
U.S. Patent No. 6,221,944 ("the '944 patent"). The
claims of the '771 application were directed to the
same compounds and compositions that the
Arbitrator had already determined were the sole
invention of Liebeskind and Allred. Accordingly, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2708635 (N.D.Ga.)
(Cite as: 2006 WL 2708635 (N.D.Ga.))

Emory scientists were also the only named inventors on this application.

On January 20, 2006, Emory and Microbe Guard, the exclusive licensee to the technology covered by these patents, filed this lawsuit. In it they claim that Defendant Nova BioGenetics ("Nova") infringed and is continuing to infringe on the patents. The complaint further alleges that Defendant Moses, Nova's former Executive Vice President and Director of Business Development, personally took part or actively directed others to do these acts of infringement. The Defendants have filed several motions, including two motions to dismiss, a motion to strike, and a motion to disqualify the Plaintiffs' counsel. The Plaintiffs then filed a motion to amend their complaint.

## II. DISCUSSION

### A. Motion to Amend

Under Federal Rule of Civil Procedure 15, a plaintiff's motion for leave to amend its pleading shall be "freely given when justice so requires." Leave should thus be granted in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment...." McKinley v. Kaplan, 177 F.3d 1253, 1258 (11th Cir.1999). The Plaintiffs have filed a motion to amend their complaint to allege additional "piercing the veil" facts in order to clarify their pleadings and further support Defendant Moses' liability under 35 U.S.C. § 271. The Defendants do not allege and the Court does not find that any of the above-stated factors are present in this motion. The Plaintiffs' motion should be granted.

### B. Motion to Dismiss

#### 1. Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); see Conley v. Gibson, 355 U.S. 41, 47 (1957); Linder v. Portocarrero, 963 F.2d 332 (11th Cir.1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev., S.A., 711 F.2d 989, 994-95 (11th Cir.1983). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir.1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id.

#### 2. Defendants' Joint Motion

*3 The Defendants have moved for dismissal of all claims, arguing that inequitable conduct by Plaintiff Emory and its attorneys render the patents unenforceable. The Defendants have included eleven exhibits allegedly demonstrating inequitable conduct. Generally, a court may not consider matters outside the pleadings on a motion to dismiss. See Carter v. Stanton, 405 U.S. 669, 671 (1972). Although the Court has the discretion to convert this motion into one for summary judgment, it declines to do so at this early stage of the litigation before there has been any discovery. Based on the pleadings, the Plaintiffs have clearly stated claims upon which relief can be granted. The Defendants' motion is without merit and is denied.

#### 3. Timothy Moses' Motion

Defendant Moses contends that the First Amended Complaint does not state a basis for holding him personally liable for the alleged infringement by his company. Under 35 U.S.C. § 271(b), anyone who "actively induces infringement of a patent shall be liable as an infringer." To succeed in an inducement claim under this statute, "the patentee must show both direct infringement and a certain level of intent on the part of the alleged inducer that the patent be infringed." Insituform Techs. Inc. v. CAT Contracting, Inc., 385 F.3d 1360, 1377 (Fed.Cir.2004). The Federal Circuit has acknowledged, however, that there "is a lack of clarity concerning whether the required intent must be merely to induce the specific acts or additionally to cause an infringement." Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1365 (2006); MercExchange, L.L.C. v. eBay, Inc., 401 F.3d 1323, 1332 (Fed.Cir .2005); Insituform Techs., 385 F.3d 1360, 1378. In either case, however, the Plaintiffs have stated a claim. The First Amended Complaint states that Defendant Moses "personally directed or knowingly and actively caused others to do the acts that infringe the Plaintiffs' rights" and "willfully and deliberately" infringed the patent. (First.Am.Compl., ¶¶ 23, 24, 30, 31, 37, 38.) This is sufficient to allege specific intent. See Zenith Electronics Corp. v. Exzec,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 3
Not Reported in F.Supp.2d, 2006 WL 2708635 (N.D.Ga.)
**(Cite as: 2006 WL 2708635 (N.D.Ga.))**

*Inc.,* 32 U.S.P.Q.2d 1959, 1960 (N.D.Ill.1994) (holding that an allegation of willful and wanton infringement was sufficient to establish the personal liability of a corporate official and avoid dismissal). To preclude any further debate on this issue, the Plaintiffs alleged in their Second Amended Complaint that Moses "intentionally personally directed or knowingly and actively caused others to do the acts that infringe the Plaintiffs' rights." (Sec.Am.Compl., ¶¶ 22, 32.) This is clearly a sufficient pleading of specific intent.

Moreover, through their Second Amended Complaint, the Plaintiffs have alleged that Defendant Nova was the alter ego of Moses. If an alter ego relationship is demonstrated, a court is justified in piercing the corporate veil and holding a corporate officer liable for direct infringement under 35 U.S.C. § 271(a). *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 552 (Fed.Cir.1990). In Georgia, the alter ego doctrine requires a showing that: (1) the individual disregarded the corporate entity and made it a mere instrumentality for the transaction of his own affairs; (2) there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (3) failure to disregard the corporation would result in fraud or injustice. *Dearth v. Collins, Inc.,* 441 F.3d 931, 934 (11th Cir.2006) (*quoting McLean v. Cont'l Wingate Co.,* 212 Ga.App. 356, 359 (1994)). Here, the Plaintiffs' pleading clearly meets these requirements. They specifically allege that Moses: (1) disregarded the corporate form for his personal interests (Sec.Am.Compl., ¶ 24); (2) "exercised complete domination of the policy and business practice of Defendant Nova BioGenetics" in order to "personally direct" Nova's acts of infringement (*id.,* ¶ 23); and (3) "overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud, or evade tort liability." (*Id.,* ¶ 25.) Defendant Moses' Motion to Dismiss should be denied.

### C. *Motion to Strike*

*4 Moses also moves to strike Paragraph 5 of the First Amended Complaint, which states that he was "Executive Vice President and Director of Business Development of Nova until his conviction for securities fraud and perjury." Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, "[i]t is axiomatic that motions to strike are not favored and are, therefore, infrequently granted." *U.S. v. Southern Motor Carriers Rate*

*Conference,* 439 F.Supp. 29, 39 (N.D.Ga.1977). "Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." *Daugherty v. Firestone Tire and Rubber Co.,* 85 F.R.D. 693, 695 (N.D.Ga.1980) (*quoting* 2A Moore's Federal Practice, P 12.21(2) (1979)).

The Court finds that Defendant Moses' conviction for securities fraud clearly has some relevance in this proceeding. The Plaintiffs have alleged that Moses is personally liable because he directed and controlled Nova's infringement. In their response to this motion, the Plaintiffs say that they can show that in Moses' securities fraud case, the government and the jury found that Moses "personally directed others to publish fraudulent press releases for the purpose of manipulating the value of stock." (Pls.' Resp. to Mot. to Strike, at 9-10.) Moreover, fraud and perjury convictions are relevant to a witness's credibility. *See* Fed.R.Evid. 609(a)(2). Thus, although the potential prejudice of this evidence may preclude its admission at trial, *see* Fed.R.Evid. 403, this determination should not be made in ruling on a motion to strike. For these reasons, the Court denies the Defendant's motion.

### D. *Motion to Disqualify*

The Defendants have also moved to disqualify N & R as counsel for the Plaintiffs in this action. Specifically, the Defendants contend that disqualification is appropriate because some of the members of the law firm may be called as witnesses, and they claim that the firm represented Defendant Moses before the Patent Trade Office. Under Georgia Rule of Professional Conduct 3.7, a lawyer may not "act as an advocate at a trial in which the lawyer is likely to be a necessary witness." The Plaintiffs concede that Mitchell Katz, the patent attorney with N & R who supervised the prosecution of the at-issue patents, should be disqualified. [FN1] However, Rule 3.7 further states that: "A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." Ga. Rule of Prof. Cond. 3.7(b). Local Patent Rule 5.3 similarly provides a presumption that N & R should not be disqualified simply because some of its attorneys prosecuted the patent.

> FN1. Two other attorneys from N & R, Yahn Bernier and Lawrence Villanueva,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2708635 (N.D.Ga.)
**(Cite as: 2006 WL 2708635 (N.D.Ga.))**

also made significant contributions to the prosecution of the patent. They are no longer members of the firm, however. (Pls.' Resp. to Mot. to Disq., at 3 n. 2.)

**\*5** The Defendants allege that a conflict of interest under Georgia Rules of Professional Conduct 1.7 and 1.9 exists here because N & R previously represented Defendant Moses. Attorney Katz has specifically testified, however, that Moses was not a client of N & R. (Pls.' Resp. to Mot. to Disq., Ex. 4, ¶ 5.) Indeed, it is undisputed that Moses and BioShield were represented by Jones & Askew during the prosecution of the at-issue patents. (*Id.*, Exs. 6; 10.) Furthermore, the Federal Circuit has consistently held that a firm prosecuting a patent application on behalf of a company does not form an attorney-client relationship with any individual inventor required to assign his rights to the company. *See, e.g., University of West Virginia v. Vanvoorhies,* 278 F.3d 1288, 1304 (Fed.Cir.2002) (affirming denial of motion to disqualify because firm represented assignee not individual inventor in patent prosecution); *Sun Studs, Inc. v. Applied Theory Assocs., Inc.,* 772 F.2d 1557, 1568 (Fed.Cir.1985) (same). The Court thus finds no cause to disqualify N & R from this proceeding.

### III. *CONCLUSION*

For the reasons set forth above, the Defendants' Joint Motion to Dismiss and Motion to Disqualify Needle and Rosenberg as Counsel for Plaintiffs [13] is DENIED; Defendant Timothy C. Moses' Motion to Dismiss and Motion to Strike [14] is DENIED; and the Plaintiffs' Motion to Amend the First Amended Complaint [25] is GRANTED.

SO ORDERED, this 19 day of September, 2006.

Not Reported in F.Supp.2d, 2006 WL 2708635 (N.D.Ga.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.)
**(Cite as: 2002 WL 1466796 (N.D.Ill.))**

**H**
Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
Philip JACKSON, Plaintiff,
v.
ILLINOIS BELL TELEPHONE COMPANY d/b/a
Ameritech Illinois, Ameritech Corp., SBC
Communications, Inc., Vtech Telecommunications
Limited, Vtech Communications,
Inc., Nortel Networks, Inc., and TDS Metrocom, Inc.
Defendants.
**No. 01 C 8001.**

July 8, 2002.

In patent infringement suit, two defendants moved to
dismiss for failure to state a claim. The District
Court, Castillo, J., held that the complaint included
all the factual specificity that was required under the
notice pleading standard to state a claim for patent
infringement.

Motions denied.

West Headnotes

**Patents** ☞ **310.1(5)**
291k310.1(5) Most Cited Cases
Complaint included all the factual specificity that was
required under the notice pleading standard to state a
claim for patent infringement, where complaint
alleged ownership of the asserted patent by plaintiff,
named each individual defendant, cited the patent
that was allegedly infringed, and described the means
by which defendants allegedly infringed. 35
U.S.C.A. § 271.

*MEMORANDUM OPINION AND ORDER*

CASTILLO, J.

**\*1** Philip Jackson filed suit against Illinois Bell
Telephone Company d/b/a Ameritech Illinois
("Illinois Bell"), Ameritech Corp. ("Ameritech"),
SBC Communications, Inc. ("SBC"), VTech
Telecommunications         Limited         ("VTech
Telecommunications"), VTech Communications, Inc.
("VTech Communications"), Nortel Networks, Inc.

("Nortel"), Winstar Communications, Inc.
("Winstar") and TDS Metrocom, Inc. ("TDS
Metrocom"), maintaining that Defendants infringed
United States Patent No. 4,596,900. Currently before
the Court is SBC and Ameritech's motion to dismiss
the complaint for failure to state a claim pursuant to
Federal Rule of Civil Procedure 12(b)(6). For the
reasons that follow, SBC and Ameritech's motion to
dismiss is denied. (R. 19-1.)

RELEVANT FACTS
On June 24th, 1986, the United States Patent and
Trademark Office ("PTO") issued patent number
4,596,900 ("the '900 Patent"), titled "Phone-Line-
Linked, Tone-Operated Control Device" to Jackson.
(R. 1-1, Ex. A, U.S. Patent No. 4,596,900.) The
patented device detects a predetermined sequence of
signals sent over a telephone line and responds with a
control signal. (*Id.*) The control signal can be used to
remotely control another application. (*Id.*)

Once in 1994 and twice in 1995, the PTO received
Reexamination Requests of the '900 Patent. (*Id.*, Ex.
B., U.S. Patent No. 4,596,900.) The PTO issued two
Reexamination Certificates, one in 1995 confirming
the validity of the '900 Patent's seventeen original
claims and another in 1997 adding ninety-nine
additional patentable claims. (*Id.* Compl. ¶¶ 13-14.)
Currently, numerous companies hold licenses under
the '900 Patent. (*Id.* at ¶ 15.)

On October 17th, 2001, Jackson filed a complaint
charging Illinois Bell, Ameritech, SBC, VTech
Telecommunications,      VTech     Communications,
Nortel, Winstar and TDS Metrocom with patent
infringement "either directly or through acts of
contributory infringement or inducement in violation
of 35 U.S.C. § 271." (*Id.* at ¶ 16.) Jackson noted in
the complaint that SBC "sells answering machines"
and that Ameritech "provides voice mail systems."
(*Id.* at ¶ 7.)

SBC moved to dismiss the complaint under Federal
Rule of Civil Procedure 12(b)(2) and (3) on the
grounds that this Court lacks jurisdiction over SBC
and that venue is improper. (R. 19-1, Mot. to
Dismiss.) SBC and Ameritech also moved to dismiss
the complaint under Federal Rule of Civil Procedure
12(b)(6) on the ground that Jackson failed to state a
claim upon which relief can be granted. (*Id.*) SBC
later withdrew the portion of the motion to dismiss

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.)
**(Cite as: 2002 WL 1466796 (N.D.Ill.))**

Page 2

that asserted a lack of personal jurisdiction and improper venue. (R. 35-1, Notice of Withdrawal of Portion of Mot. to Dismiss.) Presently before this Court is SBC and Ameritech's motion to dismiss pursuant to Rule 12(b)(6). After careful review in accordance with the applicable standards, the motion to dismiss is hereby denied.

### LEGAL STANDARDS

**\*2** A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Autry v. Northwest Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir.1998). When considering a motion to dismiss, this Court views all facts alleged in the complaint, as well as any inferences reasonably drawn from those facts, in the light most favorable to the plaintiff. *Id.* We will grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 432 (7th Cir.1993). *See also Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, "a pleading must only contain enough to allow the court and the defendant to understand the gravamen of the plaintiff's complaint." *McCormick v. City of Chi.,* 230 F.3d 319, 323-24 (7th Cir.2000) (quotations and citations omitted).

### ANALYSIS

#### I. The Court Will Not Consider Matters Outside the Pleadings in a Motion to Dismiss

The Federal Rules of Civil Procedure dictate that matters outside the pleadings cannot be considered when deciding a Rule 12(b)(6) motion to dismiss. *See* Fed.R.Civ.P. 12(b).

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Id.* SBC and Ameritech's motion to dismiss, Jackson's response to the motion to dismiss, Jackson's amended response to the motion to dismiss and SBC and Ameritech's reply in support of the motion to dismiss, include information extraneous to the original facts pleaded in the complaint. Because neither party has requested that the Court convert the motion to dismiss into a Rule 56 motion for summary judgment, we focus our analysis solely on the factual allegations presented in the original complaint. For the purpose of deciding this motion, we ignore all factual allegations included as exhibits in support of or in opposition to the motion to dismiss. [FN1]

> FN1. Even if the Court had considered all the extraneous information included in the exhibits, the Court would have reached the same result with respect to this pending motion.

#### II. Jackson's Complaint States a Claim Upon Which Relief Can Be Granted.

Patent infringement under 35 U.S.C. § 271 can take place directly, by acts of inducement or by acts of contributory infringement. 35 U.S.C. § 271(a)- (c). Direct patent infringement occurs when someone "makes, uses, offers to sell, or sells any patented invention, within the United States." *Id.* at § 271(a). Patent infringement by acts of inducement occurs when someone knowingly encourages, causes, urges or aids another in infringement. *See Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed.Cir.1990); *Fromberg, Inc. v. Thornhill,* 315 F.2d 407, 411 (5th Cir.1963). Patent infringement by acts of contributory infringement occurs when someone sells a component of a patented machine knowing that the component will be used to infringe such patent. 35 U.S.C. § 271(c).

**\*3** In order to plead a § 271 violation, the plaintiff need only state sufficient facts to put the alleged infringer on notice. *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed.Cir.2000). In *Phonometrics,* the district court dismissed the complaint under Rule 12(b)(6) because the plaintiff did not include express allegations of infringement. *Id.* at 792. The Federal Circuit reversed, holding that:

> Phonometrics' complaint alleges ownership of the asserted patent, names each individual defendant, cites the patent that is allegedly infringed, describes the means by which the defendants allegedly infringe, and points to the specific sections of the patent law invoked. Thus, Phonometrics' complaint contains enough detail to allow the defendants to answer. Rule 12(b)(6) requires no more.

*Id.* at 794. Similarly, Jackson's complaint includes all the factual specificity that is required by the federal courts under the notice pleading standard. First, Jackson alleges ownership of the asserted patent by stating that he "owns all right, title and interest in and has standing to sue for infringement"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.)
**(Cite as: 2002 WL 1466796 (N.D.Ill.))**

Page 3

of the '900 Patent. (R. 1-1, Compl.¶ 4.) Second, Jackson names each individual Defendant. (*Id.* at ¶ ¶ 5-12.) Third, Jackson cites the patent that is allegedly infringed. (*Id.* at ¶ 4.) Fourth, Jackson describes the means by which Defendants allegedly infringe by pleading that "[e]ach of the defendants has infringed the patent in suit either directly or through acts of contributory infringement or inducement." (*Id.* at ¶ 16.) Jackson further alleges that Ameritech "provides voice mail systems" and that SBC "sells answering machines." (*Id.* at ¶ 7.) Finally, Jackson points to the specific sections of the patent law invoked by alleging a "violation of 35 U.S.C. § 271." (*Id.* at ¶ 16.) Thus, as the complaint includes all the factual specificity that is required under the notice pleading standard, we deny SBC and Ameritech's motion to dismiss the complaint.

CONCLUSION

For the foregoing reasons, SBC and Ameritech's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), is denied. (R. 19-1.) This Court will hold a status hearing on July 16, 2002 at 9:45 a.m. to set a firm litigation schedule for this lawsuit.

Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)
(Cite as: 2002 WL 1458853 (D.Del.))

**H**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
ONDEO NALCO COMPANY, a Delaware
Corporation, Plaintiff,
v.
EKA CHEMICALS, INC., a Delaware Corporation,
Defendant.
**No. Civ.A.01-537-SLR.**

June 10, 2002.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 10th day of June, 2002, having reviewed the briefs submitted by the parties with respect to plaintiff's pending motions;

IT IS ORDERED that plaintiff's motion to dismiss defendant's counterclaims (D.I.23) is granted; and plaintiff's motion for leave to filed an amended complaint (D.I.42) is granted, for the reasons that follow:

1. The court has jurisdiction over this action pursuant to 35 U.S .C. § § 271 and 281 and 28 U.S.C. § 1338(a).

2. Motion to Dismiss Counterclaims. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

3. Plaintiff argues that defendant's counterclaims, which allege that plaintiff's products infringe three of defendant's patents, [FN1] fail to provide fair notice of the claims and the grounds upon which they rest, as required by Federal Rule of Civil Procedure 8(a). *Conley,* 355 U.S. at 47 (Rule 8(a) requires that a claim provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests"). Plaintiff asserts that the counterclaims insufficiently identify which products are accused of infringement [FN2] and fail to adequately plead induced infringement. [FN3] Plaintiff also objects that the counterclaims do not specify when the alleged infringement occurred (the '961 and '150 patents are now expired) and they combine the direct, contributory, and induced infringement claims into one count for each patent.

FN1. United States Patent No. 5,603,805 ("the '805 patent"); United States Patent No. 4,385,961 ("the '961 patent"); and United States Patent No. 4,388,150 ("the '150 patent").

FN2. The infringing products are described as "Nalco's products, including the 8692 product." (D.I.22, ¶ ¶ 29,34,40) The only additional clue to the identity of the alleged infringing products is the averment "Nalco makes and sells products, including the product numbered 8692, ... that are used in paper-making processes ..." or "to make paper." (*Id.* at ¶ 24)

FN3. Defendant simply avers that "[u]pon information and belief, Nalco has induced the infringement of the claims of the ... patent, in violation of 35 U.S.C. § 271(b), by selling its products, including the 8692 product, and in instructing and encouraging others in the use of its products, including the 8692 product." (D.I.22, ¶ ¶ 30,36,42)

4. The court agrees with plaintiff that the counterclaims do not satisfy Rule 8(a). With the exception of the description of the 8692 product, the pleadings are too vague to provide plaintiff with fair notice of which products are accused of infringing defendant's patents. *See Conley,* 355 U.S. at 47; *Gen-Probe, Inc. v. Amoco Corp.,* 926 F.Supp. 948, 961 (S.D.Cal.1996) (vague reference to "products and/or kits" does not provide adequate notice). *Compare*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)
**(Cite as: 2002 WL 1458853 (D.Del.))**

Page 2

*Interdigital Technology Corp. v. OKI America, Inc., 845 F.Supp. 276, 283 (E.D.Pa.1994)* (patent claim need not identify specific products that are alleged to infringe by name so long as they are "sufficiently identified in some way"). In addition, the pleadings fail to allege direct infringement by a party other than ONDEO Nalco and, therefore, insufficiently plead induced infringement. *See Met-Coil Systems Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed.Cir.1986) (direct infringement required element of induced infringement); *Shearing v.. Optical Radiation Corp.,* 30 U.S.P.Q. 1878, 1880 (D.Nev.1994) (complaint must allege direct infringement by someone other than the inducer).

**\*2** 5. Based on the above, the court dismisses defendant's counterclaims with leave to amend.

6. Motion for Leave to File a First Amended Complaint. Under Federal Rule of Civil Procedure 15(a), leave to file amended complaints "shall be freely given when justice so requires." *See also Gooding v. Warner-Lambert Co.,* 744 F.2d 354, 358 (3d Cir.1984). Plaintiff seeks leave to amend its complaint (a) to remove two alien defendants whom plaintiff and defendant have agreed to dismiss with prejudice (see Stipulation and Order, D.I. 20, ¶ 1); and (b) to add declaratory judgment counts related to invalidity of the patents-in-suit. Defendant objected that the proposed amended complaint would be deficient for failure to plead with specificity inequitable conduct and for asserting "unenforceability" of the subject patents in combination with invalidity. In response, plaintiff added more specific allegations of inequitable conduct with respect to the procurement of the '805 patent to a revised first amended complaint (D.I.45, Ex. D, ¶ ¶ 22-54); plaintiff makes no inequitable conduct allegations with respect to the '150 patent or the '961 patent (*Id.* at 5-6; Ex. D, ¶ ¶ 55-65). Based on the above, the court grants plaintiff leave to file a first amended complaint.

Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 1993 US DIST LEXIS 19602

**SOLI-TECH, INC, Plaintiff, v. HALLIBURTON COMPANY, and DRESSER INDUSTRIES, d/b/a M-I DRILLING FLUIDS COMPANY, Defendants.**

**Case No: 91-CV-10232-BC**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION**

*1993 U.S. Dist. LEXIS 19602; 27 U.S.P.Q.2D (BNA) 1077*

**January 25, 1993, Decided**

**PRIOR HISTORY:**     [*1]   Adopting Magistrate's Document of December 10, 1991, Reported at: *1991 U.S. Dist. LEXIS 21146.*

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Venue > Corporations*
*Patent Law > Jurisdiction & Review > General Overview*
[HN1] For purposes of determining venue in a patent infringement action, a corporation "resides" in any judicial district in which it is subject to personal jurisdiction.

*Business & Corporate Law > General Partnerships > Management Duties & Liabilities > Causes of Action > Negligent Acts of Partners*
*Torts > Procedure > Multiple Defendants > Joint & Several Liability*
*Torts > Vicarious Liability > Partners > General Partners*
[HN2] Partners are jointly and severally liable for tortious acts.

*Business & Corporate Law > General Partnerships > Management Duties & Liabilities > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Parties > Capacity of Parties > General Overview*
[HN3] It is not necessary that plaintiff name the partnership itself as a co-defendant in order for it to assert a valid claim against the partnership. *Fed. R. Civ. P. 17(b).*

*Civil Procedure > Venue > Corporations*
*Civil Procedure > Venue > Special Venue*
*Patent Law > Jurisdiction & Review > General Overview*
[HN4] For purposes of venue, a civil action for patent infringement may be brought in the judicial where each defendant resides. *28 U.S.C.S. § 1400(b). 28 U.S.C.S. § 1391(c)* provides in pertinent part: a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Challenges*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
*Civil Procedure > Pleading & Practice > Pleadings > Answers*
[HN5] *Fed. R. Civ. P. 12(h)(3)* provides that where a defendant files a pre-answer motion to dismiss or an answer without raising the defense of a lack of in personam jurisdiction, he waives any objection to that defect.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Parties*
*Civil Procedure > Venue > Motions to Transfer > Interests of Justice*
[HN6] *Section 1404(a)* authorizes a district court to transfer venue for the convenience of the parties and witnesses and in the interest of justice. *28 U.S.C.S. § 1404(a).* The burden is on the defendants to show that transfer of venue is warranted under *§ 1404(a).*

1993 U.S. Dist. LEXIS 19602, *; 27 U.S.P.Q.2D (BNA) 1077

*Civil Procedure > Judgments > Relief From Judgment > General Overview*
*Patent Law > Inequitable Conduct > General Overview*
*Patent Law > Infringement Actions > General Overview*

[HN7] *Fed. R. Civ. P. 8(a)* requires that, to provide proper notice, a claim must contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims*

[HN8] A *Fed. R. Civ. P. 12(b)(6)* motion tests whether a cognizable claim has been pleaded in the complaint. In evaluating such motions, the factual allegations in the complaint must be regarded as true and the claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. However, the court need not accept as true a legal conclusion couched as a factual allegation.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*

[HN9] In order to determine whether a claim should be dismissed, the court must first ascertain the legal requirements that must be met in order for plaintiff's claim to succeed. Then, the court must look to the facts alleged in the complaint in order to determine whether, assuming those facts are true, each of the material elements of the claim have been met. The complaint must be liberally construed in favor of the plaintiff, but more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements.

**JUDGES:** CLELAND

**OPINION BY:** ROBERT H. CLELAND

**OPINION**

**ORDER VACATING JUDGMENT OF DISMISSAL AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING DEFENDANTS' MOTION TO DISMISS**

**AND FOR A MORE DEFINITE STATEMENT OR, IN THE ALTERNATIVE, TO TRANSFER**

**INTRODUCTION**

The background leading up to this Court's dismissal of this case for lack of venue was thoroughly discussed in the Order Rejecting Magistrate Judge's Report and Recommendation and Granting Defendants' Motion to Dismiss ("Order"). As such, this Opinion is limited solely to the specific issues raised in Plaintiff's Motion for Reconsideration and the Response thereto. For the reasons stated herein, this Court now finds that the Order Dismissing this case was improvidently granted. Accordingly, the Judgment of Dismissal is hereby vacated and the Magistrate Judge's Report and Recommendation is Adopted.

**VENUE**

In their Motion to Dismiss Defendants do not contest the prevailing view that, [HN1] for purposes of determining venue in a patent infringement action, a corporation "resides" in any judicial district in which it is subject to personal jurisdiction. Defendants Motion to dismiss at 3; See also *VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1577 (Fed.Cir. 1990);* [*2] *28 U.S.C. § 1391(c);* and *28 U.S.C. § 1400(b).* Defendants contend, however, that the scope of the patent venue provision was expanded with regard to corporations only and that because M-I (the alleged infringer) is a Texas General Partnership that the amended definition of residence does not apply to them. Motion to Dismiss at 3. As discussed in this Court's Order, however, each of the two named defendants in the instant case is indisputably a *corporation,* not a *partnership.* As [HN2] partners, Dresser and Halliburton are jointly and severally liable for the tortious acts of M-I. *Calvey v United States, 448 F.2d 177 (6th Cir. 1971).* Furthermore, [HN3] it is not necessary that Plaintiff name the partnership itself as a co-defendant in order for it to assert a valid claim against the partnership. See *Fed. R. Civ. P. 17(b)* (which specifies that the capacity to sue a partnership is to be determined by the law of the state in which the district court is held) and *M.C.L.A. 600.2051(2)* (which provides that a partnership in Michigan may be sued in its partnership name *"or in the names of any* [*3] *of its members designated as such or both." Id* (emphasis added)). Thus Dresser and Halliburton, as general partners of M-I are proper parties to a suit based on the alleged acts of patent infringement committed by M-I, the partnership.

[HN4] For purposes of venue, a civil action for patent infringement may be brought in the judicial where each defendant "resides." *28 U.S.C. § 1400(b)* (specific venue statute). *28 U.S.C. § 1391(c)* provides in pertinent part: "a defendant that is a corporation shall be deemed

1993 U.S. Dist. LEXIS 19602, *; 27 U.S.P.Q.2D (BNA) 1077

to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. . . ." Because both defendants are corporations the Court must determine whether each falls within the confines of *28 U.S.C. § 1391(c)* (general venue statute), i.e. it must determine, at the time the claim arose, whether each defendant was subject to its personal jurisdiction. *VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1577 (Fed.Cir. 1990).*

[HN5] *Fed. R. Civ. P. 12(h)(3)* provides that where a defendant files [*4] a pre-answer motion to dismiss or an answer without raising the defense of a lack of *in personam* jurisdiction, he waives any objection to that defect. See also *Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 701 (6th Cir. 1978)* (holding that *Rule 12* requires a defendant who wishes to raise a defense to the court's personal jurisdiction to do so when he makes his "first defensive move," by way of a *Rule 12* motion or by a responsive pleading. *Id. at 701* (citing 5 Wright & Miller, *Federal Practice & Procedure: Civil § 1391* at 855 (1969)). In the instant case Defendants filed a Motion to Dismiss Under *Rule 12* or, in the Alternative, to Transfer on August 16, 1991. In their motion, Defendants did not raise the defense of personal jurisdiction, but instead argued that *§ 1391* didn't apply to them because the alleged infringer in this case (M-I) was a General Partnership and not a corporation. Motion to Dismiss at 3. Because Defendants did not raise personal jurisdiction as a defense in their "first defensive move," that defense is waived. Accordingly, defendant "resides" within this Court's judicial district and as such [*5] venue is proper under *28 U.S.C. § 1391(c)*.

Even if Defendants hadn't waived the defense of personal jurisdiction by failing to include it within their first responsive pleading venue would still be proper in this district under *§ 1391(c)* because, in their Response to Plaintiff's Motion for Reconsideration, Defendants explicitly concede this issue:

> . . . Based upon current information, Defendants cannot dispute the existence of general personal jurisdiction in the Eastern District of Michigan

Because Defendants are estopped from asserting the defense of personal jurisdiction (or, in the alternative, because they have conceded same) they are properly subject to venue in this district. *28 U.S.C. § 1391.* This Court so holds.

**TRANSFER**

Because this Court now holds that venue is proper within the Eastern District of Michigan, it must next consider Defendants' alternative argument, i.e. that the action should be transferred under *28 U.S.C. § 1406(a)* or *§ 1404(a)*. Section 1406(a) authorizes dismissal or transfer where there is improper venue. Since venue is proper *§ 1406(a)* [*6] is inapposite. [HN6] *Section 1404(a)* authorizes a district court to transfer venue "for the convenience of the parties and witnesses [and] in the interest of justice." The burden is on the Defendants to show that transfer of venue is warranted under *§ 1404(a). Standard Oil Co. v. Montecatini Edison, 342 F. Supp. 125, 134 (D. Del. 1972).* In their Motion to Dismiss Defendants baldly assert that, in the interest of the convenience of the parties, this case should be transferred to either the District Court for the Southern District of Texas or the District Court for the Eastern District of California. Motion to Dismiss at 4. However, these assertions are merely conclusory allegations for which no support is provided. Indeed Defendants concede that "it is totally speculative as to where venue is proper under *28 U.S.C. § 1400(b)*." *Id.* Defendants have failed to show that it would be "in the interest of justice" to transfer this case to either California or Texas. Accordingly, their motion to Transfer under *§ 1404(a)* is DENIED.

**GENERAL RULES OF PLEADING**

[HN7] *Fed. R. Civ. P. 8(a)* requires that, to provide proper notice, a claim [*7] must contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. The Amended Complaint in the instant case meets all of the requirements set forth in *Fed. R. Civ. P. 8(a)*: (1) jurisdiction is proper under *28 U.S.C. § 1338* (Amended Complaint at P 2); (2) a short and plain claim for patent infringement alleges that Defendants' partnership violated and continues to violate *35 U.S.C. §§ 271(a)-(c)* directly and by actively inducing infringement by others (Amended Complaint at P 10); and (3) Plaintiff prays that this Court enter judgment in its favor and requests that damages (both legal and equitable) be awarded for injuries sustained by reason of the infringement (amended Complaint at P 13(a)-(c)). Because the Amended Complaint satisfies the requirements of *Fed. R. Civ. P. 8(a)*, Defendants' Motion for a More Definite Statement is DENIED.

**FAILURE TO STATE A CLAIM**

Defendants' motion also attacks the sufficiency of the [*8] Complaint, alleging that it fails to state a claim upon which relief can be granted. The Defendants' motion to dismiss for failure to state a claim must be evalu-

Page 4

1993 U.S. Dist. LEXIS 19602, *; 27 U.S.P.Q.2D (BNA) 1077

ated under the standards for *Fed. R. Civ. P. 12(b)(6)*. [HN8] A *Rule 12(b)(6)* motion "tests whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)*. In evaluating such motions, "the factual allegations in the complaint must be regarded as true and the claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citing *Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983), cert. denied, 469 U.S. 826, 83 L. Ed. 2d 50, 105 S. Ct. 105 (1984))*. However, the court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain, 478 U.S. 265, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986)*.

[HN9] In order to determine whether a claim should be [*9] dismissed, the Court must first ascertain the legal requirements that must be met in order for Plaintiff's claim to succeed. Then, the Court must look to the facts alleged in the complaint in order to determine whether, assuming those facts are true, each of the material elements of the claim have been met. The complaint must be liberally construed in favor of the Plaintiff, but "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid at 436*.

As stated, Plaintiff alleges that Defendants, as general partners, are liable for the infringements of its patent

by M-I under *35 U.S.C. § 271(a)-(c)*. Furthermore, the Amended Complaint provides more information than the model complaint for patent infringement suggested by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. Appendix Form 16. Accordingly, Defendants' argument that the Complaint is insufficient to withstand a motion to dismiss is, under the Federal Rules, without merit. See *Fed. R. Civ. P. 84* (providing that the forms contained in the Appendix "are sufficient under the [Federal] rules and are intended to indicate **[*10]** the simplicity and brevity of statement which the rules contemplate"). Plaintiff's Amended Complaint sufficiently sets forth a claim of infringement upon which relief can be granted. Thus Defendants' Motion to Dismiss under *Fed. R. Civ. P. 12(b)(6)* is DENIED.

For the reasons stated herein, this Court's Judgment of Dismissal is hereby VACATED pursuant to *Fed. R. Civ. P. 60(b)* and Local Rule 7.1(h). Furthermore, this Court now ADOPTS the Magistrate Judge's Report and Recommendation on Defendants' Motion to Dismiss and for a More Definite Statement or, in the Alternative, to Transfer.

IT IS SO ORDERED.

ROBERT H. CLELAND

UNITED STATES DISTRICT JUDGE

DATED: January 25th, 1993

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)
**(Cite as: 2003 WL 22750145 (D.Del.))**

C

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
SYMBOL TECHNOLOGIES, INC., Plaintiff,
v.
HAND HELD PRODUCTS, INC. and HHP-NC,
Inc., Defendants.
**No. Civ.A. 03-102-SLR.**

Nov. 14, 2003.

Arthur G. Connolly, III, Connolly, Bove, Lodge &
Hutz, Andre G. Bouchard, Bouchard, Margules &
Friedlander, Wilmington, DE, for Plaintiff.

Donald F. Parsons, Jr., Mary B. Graham, Morris,
Nichols, Arsht & Tunnell, Wilmington, DE, for
Defendants.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

**\*1** Currently before the court are the following
motions by the defendants Hand Held Products, Inc.
and HHP-NC, Inc. (collectively "HHP"): 1) motion to
dismiss U.S. Patent No. 5,591,956 of Count II for
lack of subject matter jurisdiction; 2) motion to
dismiss U.S. Patent No. 5,130,520 of Count I from
the action because HHP holds a valid license; 3)
motion to dismiss plaintiff's infringement and
noninfringement claims from Counts I and II
pursuant to Fed.R.Civ.P. 8 and 12(b)(6) for failure to
state a claim; 4) motion to dismiss Count II of the
complaint pursuant to Fed.R.Civ.P. 12(b)(1) and
12(b)(6) for lack of subject matter jurisdiction for
failure to satisfy the jurisdictional requirements of 18
U.S.C. § 2201; 5) motion to dismiss plaintiff's
invalidity and unenforceability claims from Count II
pursuant to Fed.R.Civ.P. 8 and 12(b)(6) for failure to
give notice of the bases for claims of invalidity and
unenforceability; 6) motion to strike plaintiff's
unenforceability allegations pursuant to Fed.R.Civ.P.
12(b)(6) for failure to plead fraud with particularity;
and 7) motion for a more definite statement as to
Counts I and II. (D.I.10) For the reasons and to the
extent stated below, the court grants in part and

denies in part HHP's motions.

II. BACKGROUND

Plaintiff Symbol Technologies, Inc. ("Symbol") and
HHP are competitors in the hand-held optical scanner
industry, each holding patents and manufacturing a
variety of products. Symbol is the owner of U.S.
Patent Nos. 5,029,183; 5,130,520; 5,157,687;
5,479,441; 5,521,366; 5,646,390; 5,702,059;
5,783,811; 5,818,028; 6,00,612; 6,019,286; and
6,105,871 (collectively, the "Symbol Patents"). HHP
is the owner of U.S. Patent Nos. 5,286,960;
5,291,008; 5,391,182; 5,420,409; 5,463,214;
5,569,902; 5,591,956; 5,723,853; 5,723,868;
5,773,806; 5,773,810; 5,780,834; 5,784,102;
5,786,586; 5,793,967; 5,801,918; 5,825,006;
5,831,254; 5,837,985; 5,838,495; 5,900,613;
5,914,476; 5,929,418; 5,932,862; 5,942,741;
5,949,052; 5,949,054; 5,965,863; 6,015,088;
6,060,722; 6,161,760; 6,298,176; 6,491,223;
D392,282; D400,199, and D400,872 (collectively
the "HHP Patents").

In September 1999, HHP was acquired by Welch
Allyn, Inc. ("Welch Allyn"), a direct competitor of
Symbol. Later that fall, Welch Allyn announced that
it intended to acquire another competitor of Symbol's,
PSC, Inc., with whom Symbol was engaged in patent
litigation.

On March 13, 2000, Welch Allyn's in-house counsel
sent an email to Symbol's in-house patent counsel
indicating that certain Welch Allyn patents might
"present problems" to Symbol's Golden Eye product
line. (D.I.19)

On June 6, 2000, Welch Allyn began negotiating
with Symbol on behalf of Welch Allyn's newly
acquired subsidiary, PSC, Inc. (*Id.*) Later that month,
a meeting was held between Symbol and Welch
Allyn to discuss the licensing of certain patents held
by HHP relating to the Golden Eye product line. At
that meeting, a list of twenty-three (23) patents was
presented to Symbol which Welch Allyn viewed as
relevant. (*Id.*)

**\*2** On June 28, 2000, a second list was provided to
Symbol by HHP in response to a request made at the
earlier meeting. This second list contained only ten
(10) patents, eight of which were previously listed on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)
**(Cite as: 2003 WL 22750145 (D.Del.))**

the first list, and two of which were new additions. The June 28 letter indicated that these patents should be the topic of further licensing discussions between the parties. (*Id.*)

On November 30, 2000, Symbol acquired Telxon, a Texas company that was at the time engaged in patent-related disputes with Welch Allyn. Previously that year, Welch Allyn had sent a list of patents to Telxon, identical to the first list sent to Symbol, and suggested that Telxon's products might be infringing. Welch Allyn had also previously raised infringement issues with Metanetics, a Telxon subsidiary. (*Id.*)

Relations between Symbol and Welch Allyn deteriorated completely when Welch Allyn filed a lawsuit against Symbol in North Carolina regarding a certain contract that they shared to provide products to the United States Postal Service. (*Id.*)

On January 21, 2003, Symbol filed a two-count complaint alleging that HHP has infringed the Symbol Patents and seeking declaratory judgment that the HHP Patents are not infringed, invalid and/or unenforceable. (D.I.1)

In Count I of the complaint, Symbol alleges that "HHP infringed and continues to infringe, has induced and continues to induce others to infringe, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of each of the Symbol Patents." (D.I. 1 at 6) In Count II of the complaint, Symbol seeks a declaratory judgment that the HHP Patents are noninfringed, invalid, and unenforceable. (*Id.*)

III. DISCUSSION

A. HHP's Motion to Dismiss U.S. Patent No. 5,591,956

HHP contends that the court is without subject-matter jurisdiction as to U.S. Patent No. 5,591,956 (" '956 patent"). (D.I.11) At oral arguments before the court on October 28, 2003, HHP's counsel affirmatively stated that the '956 patent is dedicated to the public; therefore, this patent will be dismissed from the complaint.

B. HHP's Motion to Dismiss U.S. Patent No. 5,130,520

HHP contends that U.S. Patent No. 5,130,520 (" '520 patent") should be dismissed because it is the subject of a valid license from Symbol. Symbol contends that

there is a license for the '520 patent, but that it pertains to a narrow field of use. It is established law that a licensee that exceeds the scope of its license may be held liable for infringement. *See General Talking Pictures Co.,* 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273 (1938); *Eli Lily & Co. v. Genentech Inc.,* 17 U.S.P.Q.2d 1531, 1534 (S.D.Ind.1990). Consequently, HHP's motion to dismiss the '520 patent will be denied.

C. HHP's Motion to Dismiss Infringement and Noninfringement Claims from Count I and II for Failure to State a Claim, Motion to Dismiss Symbol's Claims of Invalidity and Unenforceability, and Motion for a More Definite Statement

**\*3** HHP contends that Symbol's complaint is facially defective under Fed.R.Civ.P. 8(a), as it fails to provide sufficient notice of which of HHP's products infringe claims under the Symbol Patents and which of Symbol's products may infringe HHP Patents. (D.I. 11 at 16) HHP, however, has failed to cite any precedent binding upon this court that requires a complaint to identify the basis of an infringement claim with such particularity. [FN1] It is established law that liberal pleading requirements are designed to put the parties on notice generally as to the nature of the cause of action. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Weston v. Pennsylvania,* 251 F.3d 420, 429 (3d Cir.2001). Particularly in complex litigation, it is through the discovery process that the parties refine and focus their claims. At this stage in the litigation, the court declines to dismiss Symbol's claims until adequate discovery has been completed.

> FN1. The court notes that HHP attempts to bootstrap Fed.R.Civ.P. 11 requirements into Rule 8, without actually alleging that Symbol's complaint is frivolous. (D.I. 11 at 9-10) In the absence of an actual motion by HHP to the contrary, the court will assume that Symbol's counsel has complied with their ethical obligations under Fed.R.Civ.P. 11.

In the alternative, HHP moves the court to require Symbol to provide a more definite statement pursuant to Fed.R.Civ.P. 12(e). A motion under Rule 12(e) is to correct a pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." The purpose, however, of Rule 12(e) is not to make it easier for the moving party to prepare its case. Fed.R.Civ.P. 12 advisory committee's note. In this case, the crux of HHP's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)
(Cite as: 2003 WL 22750145 (D.Del.))

motion is that Symbol's complaint is simply too large. There are, however, a finite number of claims and a finite number of infringing products. Consequently, the court finds that traditional mechanisms of discovery are the proper tools to refine the scope of this litigation. HHP's motions in this regard will be denied.

D. HHP's Motions to Dismiss Count II for Lack of Subject Matter Jurisdiction

HHP contends that the court is without subject matter jurisdiction as to the HHP Patents, as there is not an actual controversy within the meaning of § 2201. (*Id.*) See *Vectra Fitness, Inc. v. TNWK Corp., 162 F.3d 1379, 1383 (Fed.Cir.1998).*

Declaratory judgment pursuant to 28 U.S.C. § 2201 requires that there be "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed.Cir.1993).* In reaching its conclusion, the court must apply a totality of the circumstances standard. See *C.R.Bard, Inc. v. Schwartz, 716 F.2d 874, 880 (Fed.Cir.1983).*

The recent contentious and litigious history between the parties weighs in favor of a finding that Symbol has a reasonable apprehension of suit. In *EMC Corp. v. Norand Corp., 89 F.3d 807 (Fed.Cir.1996),* the Federal Circuit stated that the "test for finding a 'controversy' for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling." *Id.* at 811. The Court of Appeals continued and emphasized that "the question is whether the relationship between the parties can be considered a 'controversy,' and that inquiry does not turn on whether the parties have used particular 'magic words' in communicating with one another." *Id.* at 812. Therefore, the absence of an explicit threat of suit, while a factor, is not dispositive. See *BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 979 (Fed.Cir.1993)* ( "Declaratory judgment jurisdiction does not require direct threats.").

**\*4** Further, it is relevant under Federal Circuit precedent that at oral argument HHP did not affirmatively state that it would not bring suit. In *C.R. Bard Inc.,* the Court of Appeals held that a plaintiff had a reasonable apprehension of suit when the defendant in a declaratory judgment declined to affirmatively state at oral arguments that he would not bring a suit for infringement against the plaintiff. [FN2] 716 F.2d at 881.

> FN2. The court is not entirely comfortable with the notion that a plaintiff might bring a declaratory judgment against a defendant for the purpose of forcing an admission of the defendant's intent to enforce its patent rights. The court is also uncomfortable with the notion that a defendant might plead that the plaintiff has no reasonable apprehension of suit, and then file in another forum once the declaratory judgment has been dismissed for want of subject matter jurisdiction. Nonetheless, the Federal Circuit in *C.R. Bard* made it clear that the failure to deny an intent to sue for infringement is a factor to be considered.

Having concluded that the totality of circumstances sufficiently demonstrates a reasonable apprehension of suit, nonetheless, Symbol has not established a reasonable apprehension of suit with respect to each of the named HHP Patents. At most, the affidavit and accompanying documents filed to support the complaint suggest that only those patents referenced in the June 28, 2000 correspondence from Welch Allyn are proper subjects of a declaratory judgment suit. [FN3] Consequently, the court will dismiss without prejudice those HHP Patents which were not the subject of the June 28, 2000 correspondence.

> FN3. Those patents are: U.S. Patent Nos. 5,286,960; 5,900,613; 5,723,868; 5,780,834; 5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863.

With respect to the remaining HHP Patents, the court finds that Symbol satisfies the "present activity" requirement of § 2201. It is sufficient that Symbol engages in the manufacture and production of products sufficiently similar to HHP's patents. See *Millipore Corp. v. Univ. Patents, Inc., 682 F.Supp. 227, 232 (D.Del.1987).* Moreover, the fact that HHP's own correspondence to Symbol suggests that licensing of its patents may be needed is sufficient for the court to conclude that there is "present activity" as required under § 2201.

E. HHP's Motion to Strike Symbol's Allegations of Unenforceability for Failure to Plead with Particularity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)
**(Cite as: 2003 WL 22750145 (D.Del.))**

Page 4

The court will dismiss Symbol's claims for unenforceability without prejudice. Fraud is a clear exception to the otherwise broad notice-pleading standards under Fed.R.Civ.P. 9. A claim of patent unenforceability is premised upon inequitable conduct before the Patent & Trademark Office ("PTO"), which is a claim sounding in fraud. A plaintiff alleging unenforceability, therefore, must plead with particularity those facts which support the claim the patent holder acted fraudulently before the PTO. As Symbol has failed to adequately plead its bases for unenforceability of the remaining HHP Patents, that portion of Count II will be dismissed without prejudice.

## IV. CONCLUSION

At Wilmington this 14th day of November, 2003, having held oral argument and reviewed HHP's motion to dismiss pursuant to Fed.R.Civ.P. 8(a), 9, 12(b)(1), 12(b)(6) and 12(f), or in the alternative for a more definite statement pursuant to Rule 12(e) (D.I.10), and Symbol's response thereto;

IT IS ORDERED that:

1. HHP's motion to dismiss Count II of Symbol's complaint with respect to U.S. Patent No. 5,591,956 is granted. (D.I.10-1)

2. HHP's motion to dismiss U.S. Patent No. 5,130,520 of Count I is denied. (D.I.10-2)

3. HHP's motion to dismiss infringement and noninfringement claims from Counts I and II of the complaint pursuant to Fed.R.Civ.P. 8 and 12(b)(6) is denied. (D.I.10-3)

**\*5** 4. HHP's motion to dismiss Count II of the complaint pursuant to Fed. R. Civ P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction is granted with respect to U.S. Patent Nos. 5,291,008; 5,391,182; 5,420,409; 5,463,214; 5,5697,902; 5,723,853; 5,773,806; 5,773,810; 5,786,586; 5,793,967; 5,801,918; 5,837,985; 5,838,495; 5,914,476; 5,932,862; 5,942,741; 5,949,052; 5,949,054; 6,015,088; 6,161,760; 6,298,176; 6,491,223; D392, 282; D400,199; and D400,872, and is denied with respect to U.S. Patent Nos. 5,286,960; 5,900,613; 5,723,868; 5,780,834; 5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863. (D.I.10-4)

5. HHP's motion pursuant to Fed.R.Civ.P. 8 and 12(b)(6) to dismiss Symbol's invalidity and unenforceability claims from Count II is denied. (D.I.10-5)

6. HHP's motion to strike Symbol's allegations of unenforceability pursuant to Fed.R.Civ.P. 12(b)(6) or 12(f) is granted. (D.I.10-6)

7. HHP's motion for a more definite statement is denied. (D.I.10-7)

Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on June 15, 2007, he served the foregoing

documents by email and by hand upon the following counsel:

| | |
|---|---|
| Edmond D. Johnson | Karen L. Pascale |
| Thomas H. Kovach | John W. Shaw |
| Pepper Hamilton LLP | Young Conaway Stargatt & Taylor, LLP |
| 1313 Market Street, Suite 5100 | The Brandywine Building |
| PO Box 1709 | 1000 West Street, 17th Floor |
| Wilmington, DE  19899-1709 | P.O. Box 391 |
| | Wilmington, DE  19899-0391 |
| | |
| Philip A. Rovner | William E. Manning |
| Dave E. Moore | Jennifer M. Becnel-Guzzo |
| Potter Anderson & Corroon LLP | Buchanan Ingersoll & Rooney |
| 1313 North Market Street | The Brandywine Building |
| Wilmington, DE  19899-0951 | 1000 West Street, Suite 1410 |
| | Wilmington, DE  19801 |

The undersigned counsel further certifies that, on June 15, 2007, he served the

foregoing documents by email and by U.S. Mail upon the following counsel:

| | |
|---|---|
| John N. Zarian | Vincent K. Yip |
| Samia McCall | Peter J. Wied |
| Matthew D. Thayne | Jay C. Chiu |
| J. Walter Sinclair | Paul, Hastings, Janofsky & Walker LLP |
| Stoel Rives LLP | 515 South Flower Street |
| 101 S. Capitol Blvd., Suite 1900 | Twenty-Fifth Floor |
| Boise, ID  83702 | Los Angeles, CA  90071 |
| | |
| Kenneth R. Adamo | Bryan J. Sinclair |
| Robert C. Kahrl | Karineh Khachatourian |
| Arthur P. Licygiewicz | Buchanan Ingersoll & Rooney |
| Jones Day | 333 Twin Dolphin Drive |
| North Point | Redwood Shores, CA  94065-1418 |
| 901 Lakeside Avenue | |
| Cleveland, OH  44114-1190 | |

/s/ Richard D. Kirk (rk922)
Richard D. Kirk