# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG. PHILIPS LCD CO., LTD.,       )
                                )
        Plaintiff,           )
                                )
       v.                   )     Civil Action No. 06-726 (JJF)
                                )
CHI MEI OPTOELECTRONICS   )
CORPORATION; AU OPTRONICS   )
CORPORATION, AU OPTRONICS   )
CORPORATION OF AMERICA;     )
TATUNG COMPANY; TATUNG     )
COMPANY OF AMERICA, INC.; AND )
VIEWSONIC CORPORATION,     )
                                )
        Defendants.       )

## REPLY BRIEF IN SUPPORT OF CHI MEI OPTOELECTRONICS CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENCY OF SERVICE OF PROCESS

OF COUNSEL:

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
(216) 586-3939

Dated: June 15, 2007

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................iii

INTRODUCTION ...........................................................................................................1

I.   LPL'S COMPLAINT AGAINST CMO MUST BE DISMISSED
     BECAUSE IT HAS FAILED TO PROVE THAT CMO IS SUBJECT TO
     PERSONAL JURISDICTION IN DELAWARE. ...............................................1

     A.   LPL Must Prove That The Standards Adopted By Both Justice
          Brennan And Justice O'Connor Are Met To Establish Personal
          Jurisdiction Over CMO.............................................................................1

     B.   3104(c)(4) Of The Delaware Long-Arm Statute Provides  No Basis
          For Maintaining Jurisdiction Over CMO..................................................3

     C.   CMO Does Not Have Sufficient Contacts With Delaware To
          Subject It To Personal Jurisdiction Under 10 Del. C. § 3104(c)(4)..........5

          1.   LPL Has Not Proven That CMO Meets The
               Justice O'Connor Test For Personal Jurisdiction.........................5

          2.   LPL's Attempt to Aggregate CMO's Alleged Contacts
               With Delaware Is Not Sufficient To Support Personal
               Jurisdiction Under The Justice O'Connor Test.............................6

          3.   CMO's Stipulation In The CEA District Court Case Is Not
               Sufficient To Meet The Justice O'Connor Test For Personal
               Jurisdiction.................................................................................10

     D.   As in *Siemens Aktiengesellschaft* v. LG Semicon Co., Ltd., CMO's
          Sales Of Components Outside Of Delaware Do Not Amount To
          The Continuous And Substantial Activity Required By 10 Del. C.
          § 3104(c)(4). ..........................................................................................11

     E.   The Requirements of Due Process Prevent This Court  From
          Asserting Personal Jurisdiction Over CMO.............................................13

     F.   LPL Failed To Submit Any Admissible Evidence To Support Its
          Claim That CMO Is Subject To Personal Jurisdiction In Delaware......15

          1.   LPL Has Not Sustained Its Burden Of Proof In Establishing
               Jurisdictional Facts Through Sworn Affidavits Or Other
               Competent Evidence. .................................................................15

          2.   The "Evidence" Submitted By LPL Is Inadmissible
               Hearsay. ....................................................................................15

          3.   LPL's Request for Discovery To Obtain More Of The
               Same Evidence, If Granted, Would Be Ineffectual....................16

i

II. LPL'S COMPLAINT AGAINST CMO MUST BE DISMISSED BECAUSE
       IT FAILED TO COMPLY WITH THE RULES FOR SERVICE  UPON
       ENTITIES IN A FOREIGN COUNTRY. ..........................................................................17

CONCLUSION...............................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Ace & Co. v. Balfour Beatty PLC*
148 F.Supp. 2d 418 (D. Del. 2001)...................................................................7

*Akro Corp. v. Luker*
45 F.3d 1541 (Fed. Cir. 1995)........................................................................14

*Ameriserve Food Distrib., Inc. v. Lamb-Weston, Inc.*
2001 U.S. Dist. LEXIS 15802 (D. Del. 2001) ................................................16

*Asahi Metal Indus. Co. v. Super. Ct. of California, Solano County*
480 U.S. 102 (1987).............................................................................2, 4, 17

*Bancoult v. McNamara*
214 F.R.D. 5 (D.D.C. 2003).............................................................................16

*Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*
295 F.Supp. 2d 400 (D. Del. 2002)...................................................................8

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*
21 F.3d 1558 (Fed. Cir. 1994)..........................................................................2

*Boone v. Oy Partek Ab*
724 A.2d 1150 (Del. Super. Ct. 1997) ..............................................................3

*Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*
293 F.Supp. 2d 423 (D. Del. 2003).........................................................3, 4, 12

*Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*
395 F.3d 1315 (Fed. Cir. 2005).....................................................................2, 3

*Dentsply Intern'l, Inc. v. Pentron Corp.*
648 F.Supp. 856 (D. Del. 1986).........................................................................7

*E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediates*
197 F.R.D. 112 (D. Del. 2000) ...................................................................7, 17

*Gov't Employees Ins. Co. v. Rando*
2007 WL 896254 (D. Del. Mar. 22, 2007) ......................................................13

*Greenly v. Davis*
486 A.2d 669 (Del. Super. Ct. 1984) ...............................................................15

*HollyAnne Corp. v. TFT, Inc.*
   199 F.3d 1304 (Fed. Cir. 1999), .................................................................14

*In Re: Elonex Phase II Power Mgmt. Litig.*
   2003 WL 21026758 (D. Del. May 6, 2003).............................................11, 12

*LaNuova D & B S.p.A. v. Bowe Co.*
   513 A.2d 764 (Del. 1986) .............................................................................6

*Merck & Co. v. Barr Labs., Inc.*
   179 F.Supp. 2d 368 (D. Del. 2002)...................................................7, 8, 9, 10

*Motorola Inc. v. PC-Tel., Inc.*
   58 F.Supp. 2d 349 (D. Del. 1999).........................................................11, 12

*Omni Exploration, Inc. v. Graham Eng'g Corp.*
   562 F.Supp. 449 (E.D. Pa. 1983) .................................................................7

*Philips Elec. N. Am. Corp. v. Contec Corp.*
   2004 WL 503602 (D. Del. March 11, 2004)................................................11

*Prima v. Darden Rest., Inc.*
   78 F.Supp. 2d 337 (D. N.J. 2000) ...............................................................16

*Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.*
   42 F.Supp. 2d 423, 430 (D. Del. 1999).........................................................18

*Sea-Land Service, Inc. v Atlantic-Pacific Int'l., Inc.*
   61 F.Supp. 2d 1092 (D. Hawaii 1999) .........................................................16

*Sears, Roebuck & Co. v. Sears*
   744 F.Supp. 1297 (D. Del. 1990)...............................................................5, 7

*Siemens Aktiengesellschaft v. LG Semicon Co.*
   69 F.Supp. 2d 622 (D. Del. 1999)..............................3, 6, 8, 11, 12, 13, 15

*St. Clair v. Johnny's Oyster & Shrimp, Inc.*
   76 F.Supp. 2d 773 (S.D. Tex. 1999) .....................................................15, 16

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*
   735 F.2d 61 (3d Cir. 1984)........................................................................15

*U.S. v. Jackson*
   208 F.3d 633 (7th Cir. 2000) ....................................................................16

*Wady v. Provident Life & Accident Ins. Co.*
     216 F.Supp. 2d 1060 (C.D. Cal. 2002) .............................................................................16

## STATUTES AND RULES

Fed. R. Civ. P. 4(f) ...............................................................................................1, 17, 18

Fed. R. Civ. P. 4(h) ...................................................................................................1, 17

Fed. R. Civ. P. 15 ..........................................................................................................18

10 Del. C. § 3104(c)..................................................................................3, 4, 5, 11, 13

10 De. C. § 3104(d)....................................................................................................1, 17

## INTRODUCTION

LG.Philips LCD, Co., Ltd. ("LPL") repeatedly alleges that Chi Mei Optoelectronics Corp. ("CMO") "sells numerous products in the District of Delaware." (*See e.g.* LPL Brief at 2, 22.) CMO, however, has not sold any liquid crystal display ("LCD") monitors in Delaware. Nor has CMO sold any components for LCD monitors in Delaware. LPL attempts to show that LCD monitors manufactured by companies such as ViewSonic and Tatung were sold in Delaware by third parties such as Best Buy, Circuit City and CompUSA, and that these monitors may have incorporated components sold by CMO to the manufacturers outside of the state. These third parties and retailers were not acting as agents of or at the direction of CMO, and they, not CMO, availed themselves of doing business in Delaware. CMO has not purposefully availed itself of doing business in Delaware and has not directed its business activities at Delaware.

In addition, the evidence shows that LPL's attempt to serve process on CMO under the provisions of 10 Del. C. § 3104(d) was ineffective because CMO failed to comply with Fed. R. Civ. P. 4(h) and Rule 4(f)(2)(C).

There is no personal jurisdiction over CMO in this case and no proper service of process either.

I.    **LPL'S COMPLAINT AGAINST CMO MUST BE DISMISSED BECAUSE IT HAS FAILED TO PROVE THAT CMO IS SUBJECT TO PERSONAL JURISDICTION IN DELAWARE.**

    A.    **LPL Must Prove That The Standards Adopted By Both Justice Brennan And Justice O'Connor Are Met To Establish Personal Jurisdiction Over CMO.**

LPL wrongly assumes that it can prove that CMO is subject to personal jurisdiction in Delaware merely by showing that LCD monitors incorporating CMO components find their way into Delaware via the stream of commerce, in accordance with

the test set forth by Justice Brennan in *Asahi Metal Indus. Co. v. Super. Ct. of California, Solano County*, 480 U.S. 102 (1987) ("*Asahi*"). LPL is so convinced that this is the only showing that it has to make, that it fails to substantively address the additional requirements necessary to meet the additional test set forth by Justice O'Connor in *Asahi*.

"Delaware law . . . is unclear as to whether the proper interpretation of the long arm statute accords with Justice O'Connor's or Justice Brennan's views as expressed in *Asahi*." *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corporation*, 395 F.3d 1315, 1322 (Fed. Cir. 2005) ("*CEA*"). The Federal Circuit has "yet to decide whether Justice Brennan's standard is sufficient to satisfy due process" or whether the standard adopted by Justice O'Connor should be followed. *Commissariat a L'Energie Atomique*, 395 F.3d at 1322, n.7.

The *CEA* Court held that "evidence [relative to CMO's contacts] has not yet been presented that would satisfy Justice O'Connor's standard for '[a]dditional conduct of the defendant [to] indicate an intent or purpose to serve the market in the forum State, [such as] . . . advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state." [1] *Commissariat a L'Energie Atomique*, 395 F.3d at 1322.

Here, LPL never proves or even attempts to show that the more rigorous "purposeful availment" standard advanced by Justice O'Connor is met. Instead, LPL just concludes, without any evidence, that "the exercise of jurisdiction over CMO in this

---

[1] Contrary to LPL's contention (see LPL Brief at 3), the *CEA* Court did not follow *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). In fact, the *CEA* Court reasoned that in *Beverly Hills Fan Co.*, the more rigorous standard adopted by Justice O'Connor was met.

action comports with the requirements of due process, even under the more stringent test set forth by Justice O'Connor." (LPL Brief at 29). LPL then argues that the standard adopted by Justice Brennan is met by showing that LCD monitors incorporating CMO components find their way into Delaware through retailers such as Best Buy, Circuit City and CompUSA via the stream of commerce. Such a "showing," without more, is insufficient for establishing personal jurisdiction over CMO under the Justice O'Connor standard. *See Commissariat a L'Energie Atomique*, 395 F.3d at 1322.

In order for LPL to prove that CMO is subject to jurisdiction in this Court, LPL must demonstrate that CMO is subject to personal jurisdiction under the Delaware Long-Arm statute applying both the Justice O'Connor and Justice Brennan standards of due process. *See Id.* at 1323 – 24. LPL has failed to do so.

### B.    3104(c)(4) Of The Delaware Long-Arm Statute Provides No Basis For Maintaining Jurisdiction Over CMO.

LPL concedes that it cannot prove that CMO is subject to specific jurisdiction under the provisions of the Delaware long arm statute, 10 Del. C. § 3104(c)(1) and (3), and argues only that CMO is subject to general jurisdiction in Delaware under 10 Del. C. § 3104(c)(4). (LPL Brief at 21 – 22).

As stated by Judge Jordan in *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corporation*, "when jurisdiction under § 3104(c)(4) is based on a stream of commerce theory," as it is in this case, "the Delaware Superior Court has held that the defendant must have an 'intent or purpose to serve the Delaware market with their product.'" 293 F.Supp. 2d 423, 429 (D. Del. 2003), *citing Boone v. Oy Partek Ab,* 724 A.2d 1150, 1158 (Del. Super. Ct. 1997). *Accord, Siemens Aktiengesellschaft v. LG Semicon Co.*, 69 F.Supp. 2d 622, 626-27 (D. Del. 1999). And, as CEA failed to do in its

3

case against CMO, LPL too has failed here to prove that "CMO had an 'intent or purpose' to serve the *Delaware* market." *Commissariat a L'Energie Atomique*, 293 F.Supp. 2d at 429 (emphasis in original). *See also*, *Siemens Aktiengesellschaft*, 69 F.Supp. 2d at 627 (defendant LG Semicon's sale of products outside Delaware for use in products sold by others in Delaware did not exhibit an intent or purpose to serve Delaware by LG Semicon, and did not amount to the continuous and substantial activity that is required for jurisdiction under 10 Del. C. § 3104(c)(4)).

LPL's claim that CMO "sells numerous products in the District of Delaware each year" is wrong. (LPL Brief at 2). CMO does not sell any products in Delaware. The alleged sales by retailers such as Best Buy, Circuit City and CompUSA to consumers in Delaware do not show, as LPL claims, that CMO has "direct contact" with Delaware. (LPL Brief at 18). CMO sells component parts to OEMs around the world. (D.I. 21, Chen Declaration, ¶6). None of the OEMs are located in Delaware. (*Id.*) These components are incorporated into LCD monitors by other third parties. (*Id.*, ¶3). Even if the finished LCD monitors were sold by retailers throughout the United States, and even if they were to reach Delaware, legally such facts would be ***insufficient as a matter of law*** to prove that CMO is subject to personal jurisdiction in Delaware: There is no evidence that CMO purposefully availed itself of the privilege of doing business in Delaware or that it directed any business activities toward the state, as required under the standard advanced by Justice O'Connor in *Asahi*.

4

**C.    CMO Does Not Have Sufficient Contacts With Delaware
To Subject It To Personal Jurisdiction Under 10 Del. C. § 3104(c)(4).**

To prove general jurisdiction under § 3104(c)(4), LPL must show that CMO's activities in Delaware are "continuous and substantial," *Sears, Roebuck & Co. v. Sears,* 744 F.Supp. 1297, 1304 (D. Del. 1990). That standard is not met here.

LPL has not shown that CMO (i) regularly solicited business, (ii) engaged in a persistent course of conduct, or (iii) derived substantial revenue from products consumed in Delaware. LPL has not shown that CMO placed its components into the stream of commerce to intentionally exploit the markets in Delaware. LPL's contentions do not show that CMO engaged in any "additional conduct" beyond the "mere act of placing a product in the stream [of commerce]." *Asahi,* 480 U.S. at 112. While such "evidence" might be sufficient to establish minimum contacts under the Justice Brennan test, it is not sufficient under the Justice O'Connor test.

**1.    LPL Has Not Proven That CMO Meets The
Justice O'Connor Test For Personal Jurisdiction.**

LPL has not and cannot prove that CMO meets the Justice O'Connor test for personal jurisdiction. It is undisputed that CMO has never purposefully conducted business activities in Delaware. (D.I. 21, Chen Declaration, ¶4). It is undisputed that CMO never purposefully directed business activities to Delaware. (*Id.*) It is undisputed that CMO does not manufacture, design, advertise, package, sell, or distribute any products or raw materials in Delaware. (*Id.*) It is undisputed that CMO has never maintained, or caused, instructed, or directed any third parties to maintain, any agents, distributors, brokers, wholesalers, or other representatives in Delaware for the transaction of business of any nature. (*Id.,* ¶8). It is undisputed that CMO has never maintained, or caused, instructed, or directed any third parties to maintain, any agents, distributors,

brokers, wholesalers, or other representatives for the purpose of transacting business in Delaware. (*Id.*) It is undisputed that CMO has never executed any contract in Delaware, or contracted with any party to manufacture, buy, sell or distribute products or services in Delaware. (D.I. 21, Chen Declaration, ¶ 8).

LPL has not shown that CMO sold even one product in Delaware. Instead, LPL attempts to rely on website entries from retailers such as Best Buy, Circuit City, and CompUSA to show that products manufactured by ViewSonic and others that allegedly included components manufactured by CMO are offered for sale in Delaware. Even the entries that purportedly show CMO's direct shipment of product to the United States only show that CMO shipped products for transfer to customers in California, Florida, and Pennsylvania.[2] Consequently, LPL's "evidence," at best, only suggests that CMO may have targeted these three states for its products, not Delaware. Notwithstanding LPL's claim to the contrary, the evidence does not prove, merely because CMO had knowledge that its products were being sent to California, Florida and Pennsylvania, that it was targeting consumers in Delaware or purposefully directing its business activities toward Delaware. (LPL Brief at 25 – 26).

### 2. LPL's Attempt to Aggregate CMO's Alleged Contacts With Delaware Is Not Sufficient To Support Personal Jurisdiction Under The Justice O'Connor Test.

In a bullet-point argument, LPL attempts to aggregate its allegations of CMO contacts with Delaware. (LPL Brief at 18 – 20). These assertions do not support personal jurisdiction:

---

[2] "When a manufacturer transfers title to goods to a third party outside Delaware it is not deemed to have performed an act in Delaware." *Siemens Aktiengesellschaft,* 69 F.Supp. 2d at 626, *citing LaNuova D & B S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986).

- ***LPL Assertion:*** *Offering GDS's of CMO through JPMorgan's use of a telephone number having a 302 area code.* (LPL Brief at 27).

  ***CMO Response***: LPL's Exhibit 16, an offering circular issued October 2003, was a one-time event. On page i it states: "The GDS's . . . have not been and will not be registered under the U.S. Securities Act of 1933, as amended, or the U.S. Securities Act, for offer or sale as part of their distribution and, subject to certain exceptions, may not be offered or sold in the United States or to U.S. persons." This does not show CMO transacting business in Delaware. *See Omni Exploration, Inc. v. Graham Eng'g Corp.*, 562 F.Supp. 449, 455 (E.D. Pa. 1983) ("there has been no evidence presented to show that such act of issuing stock is a sufficiently substantial and continuous forum affiliation to subject . . . [the defendant] to this court's jurisdiction."); *Sears, Roebuck & Co.*, 744 F.Supp. at 1307. In addition, LPL only submitted a portion of the offering circular, leaving out the pages showing that the depositary JPMorgan is located in New York City. (See CMO Ex. 2 attached to the Declaration of Arthur P. Licygiewicz).

- ***LPL Assertion:*** *CMO USA was incorporated "for the sole purpose of marketing, selling and distributing CMO products in the United States."* (LPL Brief at 6.)

  ***CMO Response***: To the contrary, LPL's Exhibits 6, 7, and 8 show that CMO USA, a CMO subsidiary, was incorporated as IDTech USA to sell products of IDTech, a Japanese joint venture of CMO and IBM, the assets of which were sold to Sony in early 2005. Owning a subsidiary in Delaware does not constitute regularly conducting business in Delaware, absent a showing that the subsidiary engages in activities in Delaware for the parent, *see Ace & Co. v. Balfour Beatty PLC*, 148 F.Supp. 2d 418, 425 (D. Del. 2001) (Delaware subsidiary owned no assets in Delaware, thus no jurisdictional conduct could be attributed to the parent), *Sears, Roebuck & Co.*, 744 F.Supp. at 1304-1305; *Merck & Co. v. Barr Labs., Inc.*, 179 F.Supp. 2d 368, 373 – 75 (D. Del. 2002) (ownership of wholly-owned subsidiary in Delaware is insufficient to confer general jurisdiction upon parent); *E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediates*, 197 F.R.D. 112, 121 (D. Del. 2000) (plaintiff "has not shown that the activities of Rhodia's Delaware subsidiaries are directed toward Delaware"), *Dentsply Int'l, Inc. v. Pentron Corp.*, 648 F.Supp. 856, 860-61 (D. Del. 1986). LPL's exhibits show that CMO USA's offices are in San Jose, California, not Delaware (Exhibit 1 at 0034).

- ***LPL Assertion:*** *CMO has a long-term agreement with Dell to provide monitors in the United States.* (LPL Brief at 9, 26).

  ***CMO Response***: LPL's Exhibit 1 at 0036 shows no agreement or sales. Exhibit 24 does not show that any such agreement continues to exist, or that such agreement relates to monitor sales in the US, or that any sales were even proposed after 2002. Exhibit 24 mentions only LCD panel and module components, not finished LCD monitors.

7

- **LPL Assertion:** *Numerous CMO products are offered for sale in Delaware via the eBay Internet site.* (LPL Brief at 18, 27).

  **CMO Response:** LPL has copied web screens (Ex. 32) purporting to show sales of second-hand screens by private individuals not resident in Delaware. This does not establish that CMO is transacting business in Delaware.

- **LPL Assertion:** *Over 900 CMO products sold by Office Depot and CDW in their Delaware stores between July 2002 and March 2005.* (LPL Brief at 4, 5).

  **CMO Response:** LPL's Exhibits 2 and 3 do not prove any sales of CMO products. No explanation is provided of the contents of these exhibits. Even if Exhibit 2 were deemed to show a total of CMO sales by Office Depot in three years, this would not meet the "substantial revenues" test of the Delaware long arm statute, since the exhibit shows total revenues of less than $200,000 over three years, as compared to LPL's allegation that CMO derives $1.8 billion of revenue from the US in the fourth quarter of 2006 (LPL Brief at 13). LPL's proofs fail to reach the threshold of 1% of total revenues applied by this court to determine whether "substantial revenues" are derived from sales in Delaware. *See, Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F.Supp. 2d 400, 405 (D. Del. 2002) (less than 1% not sufficient); *Merck & Co. v. Barr Lab's, Inc.*, 179 F.Supp. 2d 368, 373 (D. Del. 2002) ($991,000 in revenue from Delaware sales, less than 0.13% of total revenue, not substantial enough to create general jurisdiction); *Siemens Aktiengesellschaft*, 69 F.Supp. 2d at 627 ("any revenue LG Semicon has generated through sales of DRAM chips to customers outside Delaware whose electronic devices are sold in Delaware is too remote and insubstantial to meet the requirements of § 3104(c)(4)").

- **LPL Assertion:** *CMO provides support to its customers in the US, and likely in Delaware by providing service, repairs, and warranty support.* (LPL Brief at 7).

  **CMO Response:** LPL's Exhibits 37 and 44 do not show any warranties offered by CMO. CMO's support for its customers (e.g., Westinghouse, Acer) does not show support for consumers of retail products. Since CMO's products are components used by other manufacturers, there is no reason for CMO to offer consumer service or warranties, and LPL's exhibits show none. None of CMO's customers are in Delaware. (D.I. 21, Chen Declaration ¶¶ 6 – 8).

- **LPL Assertion:** *Westinghouse products are sold by numerous retailers within Delaware, including Best Buy and Wal-Mart.* (LPL Brief at 10).

  **CMO Response:** LPL asserts that since CMO ships to Westinghouse, and Westinghouse products are offered by retailers having Delaware stores, CMO is selling its products in Delaware. This assertion is insufficient as a matter of law to prove that CMO is subject to personal jurisdiction in Delaware. And, LPL's

Exhibits 37 and 44 do not show that the Westinghouse products offered by Best Buy and Wal-Mart stores in Delaware contain components made by CMO.

- ***LPL Assertion:*** *CMO attends standard setting meetings in the US that adopt American specifications.* (LPL Brief at 9).

  ***CMO Response***: LPL's Exhibit 22 does not prove that American specifications were adopted or that CMO attended any meetings.

- ***LPL Assertion:*** *CMO must have intimate knowledge of H-P, Dell, and ViewSonic's extensive U.S. distribution networks.* (LPL Brief at 19).

  ***CMO Response***: This assertion is total speculation. The proffered support, Exhibit 24 at 12, does not even prove the underlying assumption that CMO employees have repeated meetings with these companies in the US.

- ***LPL Assertion:*** *CMO's litigation in New York, California and Texas.* (LPL Brief at 19 - 20).

  ***CMO Response***: CMO's failure to challenge either jurisdiction or service in cases pending in the United States District Court for the Southern District of New York and the Northern District of California, as well as the filing of an action in the Eastern District of Texas, is irrelevant to the issues of personal jurisdiction and proper service in Delaware. The existence or lack of contacts between CMO and the states of New York, California or Texas is irrelevant to an analysis of whether there are sufficient contacts between CMO and Delaware, which there are not, in order to subject CMO to personal jurisdiction.

The remainder of LPL's "aggregated contacts" do not show that CMO either purposefully availed itself of doing business in Delaware or that CMO targeted consumers in Delaware.

This court rejected a similar attempt to aggregate alleged contacts in *Merck & Co. v. Barr Labs., Inc.*, 179 F.Supp. 2d 368 (D. Del. 2002) (Farnan, J.). In that case, Barr had a wholly-owned subsidiary in Delaware that performed pharmaceutical research, sold products directly to four customers in Delaware accounting for 0.13% of Barr's gross revenues, sold products to a Delaware retail drugstore chain and to national drug retailers and mail order houses with customers in Delaware, and employed a National Accounts

9

salesman responsible for Delaware who periodically visited Delaware. *Id.* at 370 – 71. In addition, Barr had two licenses issued by the State of Delaware to sell pharmaceuticals in Delaware and made yearly payments to the Delaware Medicaid program based on its annual sales. *Id.* On these facts this court concluded that general jurisdiction did not lie. *Id.* at 374. With particular respect to the argument that Barr's sales to corporations with national distribution including Delaware were pertinent, this court wrote that such sales should not be considered as part of Delaware sales because "the nexus is too attenuated." *Id.* at 373.

CMO's contacts with Delaware are far more attenuated than Barr's were. CMO has no employees assigned to or visiting Delaware, no direct sales into Delaware, no licenses to sell anything in Delaware, and no payments for privileges of doing business in Delaware.

3.    **CMO's Stipulation In The CEA District Court Case Is Not Sufficient To Meet The Justice O'Connor Test For Personal Jurisdiction.**

Having shown no sales by CMO in Delaware, LPL claims that a finding of jurisdiction would be appropriate because "CMO has . . . previously consented to jurisdiction in Delaware in April 2005 in the CEA case in this Court." (LPL Brief at 23). LPL, however, omits crucial details relative to the stipulation filed in the CEA district court case. For example, to resolve that dispute over jurisdiction, counsel for CMO and counsel for CEA, who is also counsel for LPL in this case, agreed that CMO was consenting *only* to jurisdiction for purposes of the CEA district court case, and that "CMO reserves the right to challenge personal jurisdiction and service in any other litigation filed against CMO in this forum." (Emphasis added) (LPL Brief at Ex. 15, ¶1). This compromise does not support the exercise of general jurisdiction over CMO.

**D.    As in *Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.*, CMO's Sales Of Components Outside Of Delaware Do Not Amount To The Continuous And Substantial Activity Required By 10 Del. C. § 3104(c)(4).**

LPL's brief fails to address *Siemens Aktiengesellschaft v. LG Semicon Co.*, 69 F.Supp. 2d 622, 624 (D. Del. 1999), where its sister company, LG Semicon Co., Ltd., ("LG") successfully advanced the arguments now made by CMO to obtain dismissal of a patent infringement lawsuit on the grounds of lack of personal jurisdiction. None of the cases that LPL does offer, *Philips Electronics North America Corp. v. Contec Corp.*, 2004 WL 503602 (D. Del. March 11, 2004) (attached as Exh. A); *Motorola Inc. v. PC-Tel, Inc.*, 58 F.Supp. 2d 349 (D. Del. 1999), and *In Re: Elonex Phase II Power Management Litigation*, 2003 WL 21026758 (D. Del. May 6, 2003) (LPL Brief at 23, 25, 31 – 32) (attached as Exh. B), are factually close to *Siemens*. LPL's reliance on these cases is misplaced.

In *Philips Electronics North America Corp.*, the plaintiff sought to establish that the defendant was subject to specific jurisdiction via 10 Del. C. § 3104(c)(1). Here, LPL has already conceded that specific jurisdiction is inapplicable and that it is only trying to establish general jurisdiction under 10 Del. C. § 3104(c)(4). (LPL Brief at 21 – 22.) And, as LPL concedes (LPL Brief at 24), the defendant's salesperson in *Philips* sold products to customers within Delaware with the knowledge of the defendant. Here, CMO does not have a salesperson that sold products to customers within Delaware. *Philips* is factually inapposite.

Likewise, both *Motorola Inc. v. PC-Tel, Inc.*, 58 F.Supp. 2d 349 (D. Del. 1999) and *In Re: Elonex Phase II Power Mgmt. Litig.*, 2003 WL 21026758 (D. Del. May 6, 2003), are distinguishable. CEA urged this court, as LPL does, to follow both *Motorola,*

11

*Inc.* and *Elonex* to support its contention that CMO purposefully availed itself of transacting business in Delaware. This court rejected CEA's request. The court noted that in both *Motorola, Inc.* and *Elonex*, "Delaware residents and purchasers accessed defendants' websites to either purchase defendants' products or download software related to defendants' products." *Commissariat a L'Energie Atomique*, 293 F.Supp. 2d at 428, *citing Motorola*, 58 F.Supp. 2d at 352, *Elonex*, 2003 WL 21026758 at *2-3, 2003 U.S. Dist. LEXIS at *5. This court also noted that "[i]n both of these cases, the Court considered defendants' websites a 'purposeful minimum contact' as a part of the jurisdictional analysis." *Id.* "Given that CEA does not dispute that CMO's products cannot be purchased through its website, the Court finds that the facts of *Motorola* and *Elonex* are inapposite." *Id.* These cases remain inapposite here in this case.

In contrast, *Siemens Aktiengesellschaft v. LG Semicon Co.* is factually close to this case. There, Siemens had sued LG for infringing Siemens' patents relating to DRAM (dynamic random access memory) technology, and LG had asserted lack of personal jurisdiction as a defense. LG, like CMO here, sold its products (DRAM chips) primarily to large original equipment manufacturers ("OEMs"), including Apple, Compaq, Dell, Gateway, IBM, and Hewlett Packard. 69 F.Supp. 2d at 623. These OEMs incorporated LG's DRAM chips into personal computers and other electronic devices manufactured and distributed worldwide. *Id.* As a result of these sales, LG's DRAM chips became components in memory boards, personal computers and other end products that were readily available to consumers in Delaware. *Id.*

To prove personal jurisdiction over LG, Siemens claimed that LG was transacting business in Delaware by using established channels of commerce to indirectly ship its

12

DRAM products into Delaware through sales to OEMs and its DRAM distributor. *Id.* at 624. Siemens also claimed that LG targeted consumers in Delaware because these sales necessarily lead to the distribution of LG's DRAM chips throughout the United States, and ultimately Delaware. *Id.* at 623.

This court disagreed and held that LG was not subject to personal jurisdiction either under 10 Del. § 3104(c)(1) or (4), because it did not transact business in Delaware. *Id.* at 627. *Siemens* specifically held that "the sale of defendant's DRAM chips outside Delaware for use in electronic products sold by other manufacturers in Delaware is not sufficiently directed at residents of Delaware to constitute 'transacting business' in Delaware for the purposes of § 3104(c)(1)." *Id.* at 626. *Siemens* also held that LG had not exhibited an intent or purpose to serve the Delaware market and that its sales of DRAM chips outside of Delaware "do not amount to the continuous and substantial activity that § 3104(c)(4) requires." *Id.* at 627. In so holding, the court relied on the fact that LG, like CMO in this case, "did not solicit business in Delaware," did not sell DRAM chips in Delaware, and that its "only contact with Delaware is second hand contact from the sale of DRAM chips to customers who use the chips in electronic devices that are available to Delaware consumers." *Id.*

### E. The Requirements of Due Process Prevent This Court From Asserting Personal Jurisdiction Over CMO.

Even if LPL could show that jurisdiction over CMO would be proper under Delaware's long-arm statute, which it cannot, the exercise of such jurisdiction would be unconstitutional under the Due Process Clause. *See Gov't Employees Ins. Co. v. Rando*, 2007 WL 896254 at *2 (D. Del. Mar. 22, 2007). (Attached as Exh. C). LPL fails to prove that it would meet the three-prong jurisdictional analysis set forth by the Federal

Circuit. This analysis inquires into whether: 1) the defendant purposefully directed its activities at residents of the forum; 2) the claims arise out of or relate to those activities; and 3) the assertion of personal jurisdiction is reasonable and fair. *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307-08 (Fed. Cir. 1999), *citing Akro Corp. v. Luker,* 45 F.3d 1541, 1545-46 (Fed. Cir. 1995).

As to the first inquiry, the undisputed evidence proves that CMO has not directed activities at the residents of Delaware. The "evidence" submitted by LPL, at most, shows that third parties sold finished LCD monitors that may have incorporated components manufactured and sold by CMO outside of Delaware. This "evidence" does not, and cannot, show that CMO sold such components to third parties in Delaware or that CMO took any action within Delaware relative to such functional LCD monitor products.

As to the second inquiry, LPL's claims cannot relate to activities of CMO in Delaware when CMO has not purposefully directed any activities to the state.

Finally, as to the last inquiry, any attempt to exercise jurisdiction over CMO would not comport with the "traditional notions of fair play and substantial justice." As shown above and in CMO's Motion to Dismiss (D.I. 19, 20), CMO does not have the requisite minimum contacts with Delaware to make the assertion of personal jurisdiction over CMO appropriate. Because CMO has not purposefully availed itself of the privilege of conducting business in Delaware, its conduct is not such that it should reasonably anticipate being haled into court there. LPL has not shown otherwise.

This court cannot properly exercise personal jurisdiction over CMO.

14

**F.** **LPL Failed To Submit Any Admissible Evidence To Support Its Claim That CMO Is Subject To Personal Jurisdiction In Delaware.**

    **1.** **LPL Has Not Sustained Its Burden Of Proof In Establishing Jurisdictional Facts Through Sworn Affidavits Or Other Competent Evidence.**

Contrary to LPL's suggestion, LPL may not "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67, n.9 (3d Cir. 1984) (citation omitted). Once the defense has been raised, "the plaintiff 'must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.'" *Siemens Aktiengesellschaft*, 69 F.Supp. 2d at 624, *citing Time Share Vacation Club, Id.*; *see also Greenly v. Davis*, 486 A.2d 669, 670 (Del. Super. Ct. 1984) (holding that the trial court properly relied on defendants' specific factual assertions and gave little weight to plaintiff's vague, general assertions). LPL has not met this burden.

    **2.** **The "Evidence" Submitted By LPL Is Inadmissible Hearsay.**

LPL's "evidence" is a collection of web pages from various retailers that display a variety of LCD monitors that are presumably sold by the retailers in Delaware. Courts presented with such materials have consistently held that such materials constitute inadmissible hearsay. As vividly described by one district court:

> So as to not mince words, the Court reiterates that this so called Web provides no way of verifying the authenticity of the alleged contentions that Plaintiff wishes to rely upon in his Response to Defendant's Motion. There is no way Plaintiff can overcome the presumption that the information he discovered on the Internet is here inherently untrustworthy. Anyone can put anything on the Internet.

*St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F.Supp. 2d 773, 775 (S.D. Tex. 1999) (rejecting use of Coast Guard website to establish ownership of vessel). Indeed, Chief

15

Judge Robinson of this court characterized materials derived from an Internet search to be part of nothing more than a "compilation of hearsay." *Ameriserve Food Distrib., Inc. v. Lamb-Weston, Inc.*, 2001 U.S. Dist. LEXIS 15802, *9 (D. Del. 2001). (Attached as Exh. D.) *See also, U.S. v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) (*citing St. Clair*, and holding that materials from the Internet were inadmissible as hearsay); *Prima v. Darden Rests., Inc.*, 78 F.Supp. 2d 337, 347 (D. N.J. 2000) (characterizing statements on websites to be hearsay and of "questionable reliability"); *Sea-Land Service, Inc. v Atlantic-Pacific Int'l, Inc.*, 61 F.Supp. 2d 1092, 1100 (D. Hawaii 1999) (disregarding as hearsay affidavit and materials from website because attorney-affiant possessed no "personal knowledge of the underlying facts."), *Wady v. Provident Life & Accident Ins. Co.*, 216 F.Supp. 2d 1060, 1064 (C.D. Cal. 2002) (sustaining objection to introduction of websites, when proponent could not establish authenticity since witness had "no personal knowledge of who maintains the website, who authored the documents, or the accuracy of their contents").

LPL's Exhibits 4, 7, 13, 22, 23, 25, 27, 28, and 31 through 45 are inadmissible hearsay and cannot be considered by this Court. And, Exhibits 5, 26, 29, 30, and 46 through 49, which are offered to prove the truth of the matter asserted, are also inadmissible hearsay. None of the exhibits fall within any hearsay exception, and thus cannot be considered.

### 3. LPL'S Request for Discovery To Obtain More Of The Same Evidence, If Granted, Would Be Ineffectual.

Although a plaintiff generally is entitled to reasonable discovery on a motion to dismiss for lack of personal jurisdiction, the plaintiff first must "demonstrate that it can supplement its jurisdictional allegations through discovery." *Bancoult v. McNamara*, 214

F.R.D. 5, 10 (D.D.C. 2003).   Here, LPL's request for discovery is directed toward CMO's "intimate knowledge of the distribution channel through which its products are directly shipped into this State." (LPL Brief at 36).   Discovery of this type will be ineffectual because it will not meet the Justice O'Connor *Asahi* standard for personal jurisdiction.

## II.     LPL'S COMPLAINT AGAINST CMO MUST BE DISMISSED BECAUSE IT FAILED TO COMPLY WITH THE RULES FOR SERVICE UPON ENTITIES IN A FOREIGN COUNTRY.

LPL's contention that service of process upon CMO was effective is premised on the erroneous assumption that CMO may be served in this district under the Delaware long arm statute without regard to the other requirements of Fed. R. Civ. P. 4(h) regarding service upon a corporation outside the United States.   In *E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 123 (D. Del. 2000), this court found that service under 10 Del. C. § 3104(d) "is complete only if plaintiff sends 'by registered mail to the nonresident defendant . . . a notice consisting of a copy of the process and complaint served upon the Secretary of State,'" and held that, "[t]his provision necessarily requires the delivery of judicial papers internationally.   Thus, service of process to a foreign corporation ought to comply with the Hague Convention." *Id.*

Fed. R. Civ. P. 4(h)(2) requires overseas service to be effected by the procedures of Rule 4(f), which would include complying with the Hague Convention as referenced in Rule 4(f)(1).   *Id.*   Notwithstanding that Taiwan is not a signatory of the Hague Convention, LPL made no effort to comply with Rule 4(f)(2)(A) for non-signatory nations, which authorizes use of the Taiwan method of service through its own courts.

17

Nor did LPL seek letters rogatory as authorized by Rule 4(f)(2)(B). Instead, LPL's counsel just mailed a copy of the summons and complaint, thereby failing to comply with Rule 4(f)(2)(C)(ii), which authorizes service overseas by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served."[3] LPL should have complied with Rule 4(f)(2)(C)(ii) in serving process under the Long-Arm statute, as this court approved *in Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.*, 42 F.Supp. 2d 423, 430 (D. Del. 1999).

LPL's suggestion that other methods of service are justified under Rule 4(f)(3) is belied by the fact that LPL did not get a court directive to use such means. Further, LPL's suggestion that such methods are justified by CMO's "history of attempting to evade" service (LPL's Brief at 38 n.14) is contradicted by LPL's own argument on the previous page of its brief that CMO accepted service in the *Anvik* case, and other acceptances of service. (*See* LPL Brief at 8, 37). LPL's cited cases all address fact settings wherein the defendants could not be reached by ordinary means. No such showing is made here.

There was no proper service of process on CMO.

## CONCLUSION

CMO has not engaged in any purposeful continuous activity directed toward Delaware that would be sufficient to subject it to personal jurisdiction in Delaware. Nor

---

[3] Contrary to LPL's contention, CMO's challenge to LPL's service of process is not moot by virtue of LPL attempting to serve CMO with an Amended Complaint. (LPL Brief at 39). Indeed, not only has LPL again made the same errors in service of the "Amended Complaint", but LPL has also failed to obtain leave of this Court as required by Fed. R. Civ. P. 15, to file and serve its "Amended Complaint", which is its second Amended Complaint, as LPL had already amended its Complaint once as a matter of course on April 11 by adding declaratory judgment counterclaims relative to patents owned by AU Optronics Corporation.

was service proper under Fed. R. Civ. P. 4(h).  CMO's Motion to Dismiss should be granted and final judgment of dismissal entered.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Kenneth R. Adamo                    By: _____
Robert C. Kahrl                            Philip A. Rovner (#3215)
Arthur P. Licygiewicz                      Hercules Plaza
Jones Day                                  P. O. Box 951
North Point                                Wilmington, DE  19899
901 Lakeside Avenue                        (302) 984-6000
Cleveland, OH  44114-1190                  provner@potteranderson.com
(216) 586-3939

                                    *Attorneys for Defendant*
Dated:  June 15, 2007               *Chi Mei Optoelectronics Corporation*
801919

19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on June 15, 2007, the within document was

filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to

the following; that the document was served on the following counsel as indicated; and that the

document is available for viewing and downloading from CM/ECF.

**BY CM/ECF, -EMAIL AND HAND
DELIVERY**

Richard E. Kirk, Esq.
Ashley Blake Stitzer, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardfirm.com
astitzer@bayardfirm.com

William E. Manning, Esq.
Jennifer M. Becnel-Guzzo, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE 19801
william.manning@bipc.com
jennifer.becnelguzzo@bipc.com

**BY CM-ECF, EMAIL AND HAND
DELIVERY**

Edmond D. Johnson, Esq.
Thomas H. Kovach, Esq.
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19899-1709
johnsone@pepperlaw.com
kovacht@pepperlaw.com

John W. Shaw, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
kpascale@ycst.com

I hereby certify that on June 15, 2007 I have sent by E-mail the foregoing

document to the following non-registered participants:

Gaspare J. Bono, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
gbono@mckennalong.com

Vincent K. Yip, Esq.
Peter J. Wied, Esq.
Jay C. Chiu, Esq.
Paul Hastings Janofsky & Walker LLP
515 South Flower Street
Los Angeles, CA 90071
vincentyip@paulhastings.com
peterwied@paulhastings.com
jaychiu@paulhastings.com

Karineh Khachatourian, Esq.
Jeffrey M. Ratinoff, Esq.
Bryan J. Sinclair, Esq.
Buchanan Ingersoll & Rooney PC
333 Twin Dolphin Drive
Redwood Shores, CA 94065-1418
Karineh.khachatourian@bipc.com
Jeffrey.ratinoff@bipc.com
Bryan.sinclair@bipc.com

John N. Zarian, Esq.
Samia E. McCall, Esq.
J. Walter Sinclair, Esq.
Stoel Rives LLP
101 S. Capitol Boulevard
Suite 1900
Boise, ID 83702
jnzarian@stoel.com
semcall@stoel.com
jwsinclair@stoel.com

Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

2

# Exhibit A

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Philips Electronics North America Corp. v. Contec
Corp.
D.Del.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION and U.S. Philips Corporation,
Plaintiffs,
v.
CONTEC CORPORATION, Compo Micro Tech,
Inc., Seoby Electronics Co., Ltd., Remote Solution
Co., Ltd., F/K/A Hango Electronics Co., Ltd.,
Hango Remote Solution, Inc., Defendants.
**No. Civ.A. 02-123-KAJ.**

March 11, 2004.

Richard L. Horwitz, Potter Anderson & Corroon,
LLP, Wilmington, DE, for Plaintiffs.
Patricia Smink Rogowski, Connolly, Bove, Lodge
& Hutz, Jack B. Blumenfeld, Morris, Nichols, Arsht
& Tunnell, Kathleen Jennings-Hostetter, Oberly &
Jennings, Andre G. Bouchard, Bouchard, Margules
& Friedlander, David L. Finger, David L. Finger,
Esq., Wilmington, DE, for Defendants.

*MEMORANDUM ORDER*
JORDAN, J.

I. INTRODUCTION

*1 This is a patent infringement case. Jurisdiction is
proper under 28 U.S.C. § 1338. Presently before me
is a Motion to Dismiss for Lack of Personal
Jurisdiction (the "Motion") filed by defendant
Remote Solution Co., Ltd. ("Remote Solution")
pursuant to Federal Rule of Civil Procedure 12(b)(2)
. (Docket Item ["D.I."] 105.) For the following
reasons, Remote Solution's Motion will be denied.

II. BACKGROUND

Plaintiffs Philips Electronics North America
Corporation and U.S. Philips Corporation
(collectively, "Philips"), both Delaware
corporations, filed an action on February 12, 2002,
alleging that Contec Corporation ("Contec"), also a
Delaware corporation, was infringing U.S. Patent
Nos. 4,703,359 [FN1] (the " '359 patent") and
5,872,562 [FN2] (the " '562 patent"), both owned by
Philips.[FN3] The technology disclosed in the '359
and '562 patents is directed to remote control units (
"RCUs") for controlling home appliances from
different manufacturers and categories. *See* '359
patent, col 1, lns. 15-17; '562 patent, col 1, lns.
13-16 (attached to D.I. 1 as Exs. A and B). On
September 17, 2002, Philips filed an amended
complaint joining Remote Solution and others as
additional defendants in this action. (D.I.41, 42.)
Remote Solution is a Korean corporation with its
principal place of business in Kimcheon City,
Kyongbuk, Korea. (D.I. 41, Ex. A at ¶ 6.) Philips
alleges that Remote Solution "manufactures and
designs RCUs that infringe the patents in suit under
a manufacturing and purchase agreement with
Contec, and is subject to personal jurisdiction in
[the District of Delaware]." (*Id.* at ¶ 12.) One of
the types of RCUs accused of infringement in this
case is Remote Solution's model RT U49C. (*Id.*)

FN1. The '359 patent, entitled "Universal
Remote Control Unit With Model
Identification Capability," names as
inventors Robin B. Rumbolt, William R.
McIntyre, and Larry E. Goodson. The '359
patent issued on October 27, 1987 and was
assigned to Philips on May 25, 1993. (D.I.
42, Ex. A at ¶ 16.)

FN2. The '562 patent, entitled "Universal
Remote Control Transmitter With
Simplified Device Identification," names
as inventors Donald P. McConnell and
William R. McIntyre. The '562 patent
issued on February 16, 1999 and was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Page 2

Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

assigned to Philips on the same day. (D.I. 42, Ex. A at ¶ 17.)

FN3. Defendants Contec Corporation and Seoby Electronics Co. are no longer involved in this case, having submitted to a Consent Judgment on August 28, 2003. (D.I.258.)

Remote Solution filed its Motion on January 24, 2003, arguing that this court cannot properly exercise personal jurisdiction over it under Delaware's long-arm statute, 10 Del. C. § 3104, or consistent with the requirements of the Due Process Clause. (D.I. 106 at 4, 9.) In support of its Motion, Remote Solution submitted the Declaration of its Director, Suk-Kyu Park. (*Id.*, Ex. A.) In his declaration, Mr. Park stated that Remote Solution does not have any offices, facilities, subsidiaries or employees in Delaware; is not registered to do business in Delaware; has not contracted to supply services or things in Delaware; has no sales force in Delaware; has derived no revenues from sales in Delaware; does not own any property, assets or bank accounts in Delaware or maintain any offices in Delaware. (*Id.* ¶ 4, 7-10.) According to Mr. Park, Contec is Remote Solution's only customer for the accused RT U49C RCU. (*Id.* ¶ 5.) Mr. Park further stated that Remote Solution maintains a website to provide information about its products, but Remote Solution does not accept orders through its website. (*Id.* ¶ 12.)

After Remote Solution filed its Motion, the parties conducted jurisdictional and substantive discovery until September 15, 2003. (D.I. 286 at 2.) The following facts are taken from Philips' opposition to Remote Solution's Motion. (D.I.286.) Since Philips' factual allegations are not directly controverted, they are taken as true for purposes of determining jurisdiction in this court. *See Beverly Hills Fan Co. V. Royal Sovereign Corp.,* 21 F.3d 1558, 1563 (Fed.Cir.1994).

*2 In 1997, Remote Solution decided to expand its RCU sales by entering the United States consumer market. (*Id.* at 5 (citing deposition testimony of Suk-Kyu Park at D.I. 287, Ex. 14).) To that end, Remote Solution hired David Ahn, a native Korean

living in California, as its exclusive sales agent in the United States. (*Id*.) Mr. Ahn established Hango Electronics, Inc., d/b/a Remote Solution ("HEI") in California, for the sole purpose of soliciting customers in the United States on behalf of Remote Solution. (*Id.* (citing deposition testimony of David Ahn at D.I. 287, Ex. 3).) HEI is an independent corporation of which Mr. Ahn is the sole owner and employee. (*Id.*)

In 1999, HEI entered into a Manufacturing and Purchase Agreement with Contec, L.P., a New York limited partnership, wherein Contec L.P. retained HEI to design and manufacture RCUs and sell them to Contec L.P.[FN4] (D.I. 287, Ex. 15 at 1.) HEI also agreed to "defend any suit or proceeding brought against Contec L.P. to the extent that such suit or proceeding is based on a claim that the [RCUs] constitute an infringement of any valid United States ... patent...." (*Id.* at 3.) In 2000, with Mr. Ahn's consent, HEI changed its name to Remote Solution, the name under which Mr. Ahn conducts business in California. (*Id.* at 6.)

FN4. The relationship between Contec L.P. and Contec Corporation was fleshed out at oral argument. At some point in time, Contec L.P., a New York entity, merged with Contec LLC, another New York entity, which then merged with Contec Corporation, a Delaware entity. (D.I. 338 at 67:16-25.)

According to Mr. Ahn, Remote Solution's business plan was to sell as many RCUs as possible. (*Id.*) As a result of his extensive efforts to market the RCUs, Mr. Ahn acquired Contec, TiVo, Inc., Harman Kardon, Inc. and Hy-Tek Manufacturing Co., Inc. as customers for Remote Solution. (*Id.*) Remote Solution does not design its own remote controls, rather, it manufactures them according to its customers' specifications. (*Id.* at 7.) Contec is a Delaware corporation with its principal place of business in New York, and its primary business is to sell refurbished cable set top boxes and RCUs to major cable companies in the United States. (*Id.* at 10.) Contec's customers include Comcast, which provides cable television services to residents of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Delaware. (*Id.*) Generally, Remote Solution knows who Contec's customers are because Remote Solution marks the RCUs with those customer's logos. (*Id.;* D.I. 287, Ex. 10.) Remote Solution knew that Comcast was one of Contec's customers, as it sent drawings of the Comcast logo to Contec via email on April 24, 2002. (D.I.287, Ex. 36.)

In 2000, Remote Solution established a subsidiary in the United States, Hango Remote Solution, Inc. ("Hango"). (D.I. 286 at 8.) Remote Solution was a 70% shareholder in Hango and Mr. Ahn owned the remaining 30%. (*Id.*) About half of Hango's revenue came from sales of Remote Solution's RCUs, Hango's primary business was marketing an MP3 player called Personal Jukebox. (*Id.* at 8-9.) Ultimately, however, Hango's business failed, and the company folded in December 2002. (*Id.* at 9.) Thereafter, Remote Solution began litigating this case on Hango's behalf as well as its own, filing an answer to the complaint and a motion to amend the answer to include a crossclaim against Contec for indemnification in the event Hango is found liable for patent infringement. (*Id.* at 9; *see also* D.I. 287, Ex. 2 at 8.)

*3 Remote Solution has sold at least 1,969,849 of the accused RCUs in the United States since November 22, 2000. (D.I. 286 at 2 (citing Expert Report of Kerry Ruoff at D.I. 287, Ex. 1).) Based on the records obtained from TiVo, one of Remote Solution's customers, Philips discovered that at least 2,000 infringing RCUs manufactured by Remote Solution for TiVo have been sold or used in Delaware since March 31, 1999. (D.I. 286 at 3, 13.) According to TiVo's records, 1,738 residents of Delaware subscribed to TiVo's service between March 31, 1999 and May 28, 2003. (*Id.* (citing Declaration of Matthew P. Zinn at D.I. 287, Ex. 39 ¶ 12).) Because TiVo sells its digital video recorders ("DVRs") bundled with the RCUs manufactured by Remote Solution, it is likely that more than 1,500 Remote Solution RCUs are being used for TiVo recorders in Delaware today. (*Id.* (citing D.I. 287, Ex. 39 ¶¶ 6, 17).) Furthermore, since January 1, 2000, more than 1,000 DVRs bundled with RCUs manufactured by Remote Solution were sold in Delaware at two retailers, specifically, 654 were sold at BestBuy and 406

were sold at Circuit City. (*Id.* (citing Declaration of Scott Jacobi at D.I. 287, Ex. 40 ¶ 7; Declaration of Mark Smucker at D.I. 287, Ex. 41 ¶ 9).)

## III. DISCUSSION

When a non-resident defendant's motion to dismiss challenges personal jurisdiction, the plaintiff has the burden to show the basis for the court's jurisdiction over that defendant. *Intel Corp. v. Broadcom Corp.,* 167 F.Supp.2d 692, 699 (D.Del.2001) (citing *Wright v. American Home Products,* 768 A.2d 518, 526 (Del.Super.2000)). To satisfy this burden, Philips must make a *prima facie* showing that this court may exercise personal jurisdiction over Remote Solution. *Id.* After discovery has begun, the plaintiff must sustain this burden by "establishing jurisdictional facts through sworn affidavits or other competent evidence." *Id.* (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 n. 9 (3d Cir.1984)).

Determining whether Remote Solution is subject to personal jurisdiction requires a two-part analysis. *Id.* at 700; *see also Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.,* 69 F.Supp.2d 622, 624 (D.Del.1999). First, I must determine whether the language of Delaware's long-arm statute, 10 Del. C. § 3104(c), reaches Remote Solution. *Broadcom,* 167 F.Supp. at 700. Second, if I find that Remote Solution's conduct gives rise to personal jurisdiction under the long-arm statute, I must then determine whether subjecting Remote Solution to jurisdiction in Delaware would comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* (citing *Intel Corp. v. Silicon Storage Tech, Inc.,* 20 F.Supp.2d 690, 694 (D.Del.1998)).

### A. Jurisdiction over Remote Solution is Proper Under § 3104(c)(1) of Delaware's Long-Arm Statute

Philips contends that Remote Solution is subject to jurisdiction under sections 3104(c)(1) and (c)(4) of the Delaware long-arm statute (D.I. 286 at 17, 20), which provide:
*4 (c) As to a cause of action brought by any person

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 4

Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
* * *

(1) Transacts business or performs any character of work or service in the State;
* * *

(4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State....

10 Del. C. §§ 3104(c)(1) & (c)(4). Delaware state courts have interpreted the "transacting business" provision of § 3104(c)(1) as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. *See LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). The Federal Circuit has held that, where a defendant has " purposefully shipped the accused [product] into [the forum state] through an established distribution channel ... [n]o more is usually required to establish specific jurisdiction." *Beverly Hills Fan,* 21 F.3d at 1564. Moreover, in order to meet the requirements of § 3104(c)(1), Remote Solution's actions must be directed at residents of Delaware and the protection of Delaware laws. *See Thorn EMI N. Am., Inc. v. Micron Tech., Inc.,* 821 F.Supp. 272, 274 (D.Del.1993) (citing *Sears, Roebuck & Co. v. Sears,* 744 F.Supp. 1289, 1292 (D.Del.1990)).

Philips argues that Remote Solution has shipped the accused RCUs into an established distribution channel as part of a general business plan that results in sales of the accused products in Delaware. (D.I. 286 at 18.) In response, Remote Solution argues that it merely had a general plan to serve the national market and that its activities were not directed specifically toward Delaware. (D.I. 309 at 2, 4.)

I find that Philips has presented competent evidence that an established distribution channel exists through which accused RCUs manufactured by Remote Solution are shipped to, distributed, and sold in Delaware. First, the evidence shows that Remote Solution and Contec have enjoyed a close business relationship since at least as early as 1999, when, in a manufacturing and purchase agreement governed by New York law, Remote Solution agreed to defend one of Contec's predecessors against any claims of patent infringement. Furthermore, Remote Solution is seeking indemnification from Contec for Hango, Remote Solution's defunct subsidiary, in the event Hango is found liable for patent infringement in this case. Philips has also presented competent evidence that Remote Solution knew that Comcast, a major provider of cable television services in the State of Delaware, was one of Contec's customers for the accused RCU. Given all of these facts, and in light of Remote Solution's ongoing business relationship with Contec, it was reasonably foreseeable that the accused RCUs would make their way into the Delaware market through Contec's customers. Documents obtained from Remote Solution show that Contec was selling the accused RCUs to Comcast, such that Remote Solution knew or should have known that the accused RCUs were being sold or distributed in Delaware. *See Thorn EMI,* 821 F.Supp. at 275-76.

*5 Finally, Philips has competent evidence that the accused RCUs are present in Delaware in large numbers, and were present in Delaware prior to its filing suit, as a result of Remote Solution manufacturing the accused RCUs for TiVo. Because Philips has presented competent evidence of an established distribution channel that caused the accused RCUs to be sold and distributed in Delaware, and that the accused RCUs are actually present in Delaware, I find that jurisdiction over Remote Solution is proper under § 3104(c)(1), and I need not address the issue of whether jurisdiction over Remote Solution is proper under § 3104(c)(4).
FN5

> FN5. Remote Solutions relies upon *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,* 293 F.Supp.2d 423, *reconsideration denied,* 293 F.Supp.2d 430 (D.Del.2003) (granting defendant's motion to dismiss for lack of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

' Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

personal jurisdiction in patent infringement case) in support of its motion to dismiss. There are key factual distinctions between this case and *Commissariat*. First, unlike the plaintiff in *Commissariat*, Philips requested and conducted jurisdictional discovery which uncovered evidence of actual sales and the presence of the accused device in Delaware prior and subsequent to the date the complaint was filed, evidence that was lacking in *Commissariat*. Second, that Remote Solution (1) agreed to defend a predecessor of Contec from patent infringement and (2) is seeking indemnification from Contec should Hango be found liable for patent infringement is evidence of Remote Solution's close business relationship with Contec, and its knowledge of the established distribution channel through which its products were being sent into Delaware. Thus, the quantum of evidence upon which to rest personal jurisdiction in this case is significantly greater than in *Commissariat*.

B. Exercising Jurisdiction over Remote Solution in Delaware Comports With the Requirements of the Due Process Clause

Due process requires that sufficient minimum contacts exist between the defendant and the forum state to satisfy "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In considering whether jurisdiction may extend to a defendant, courts should primarily consider whether the defendant has purposely availed itself of the forum state's law, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and whether the defendant reasonably could have anticipated being haled into the courts of the forum state, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Courts should also consider the burden imposed on the defendant by having to litigate in a foreign forum, as well as the interests of the plaintiff and

the forum state. *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

In this case, the accused RCUs arrived in Delaware through Remote Solution's purposeful shipment of them through an established distribution channel. See *Beverly Hills Fan*, 21 F.3d at 1565. Philips has "stated all of the necessary ingredients for an exercise of jurisdiction consonant with the requirements of due process," namely, that Remote Solution placed the accused products in the stream of commerce, that it knew the likely destination of the products, and that its conduct and connections with Delaware were such that they should reasonably have anticipated being brought into court here. *Id.* at 1566.

Finally, litigating this case in Delaware would not place such a burden on Remote Solution as to offend traditional notions of fair play and substantial justice, especially since Remote Solution has executed an agreement to defend Contec L.P. against all claims of patent infringement, which proves that Remote Solution was well aware of and prepared for the possibility of litigation where Contec did business, including Delaware. Nor has Remote Solution shown that it does not have the resources to fairly litigate this case in Delaware. See *Thorn EMI*, 821 F.Supp. at 276. Moreover, " Delaware has an abiding interest in protecting the property rights of its residents[,]" *id*, including corporate citizens such as Philips. Thus, exercising jurisdiction over Remote Solution in this case comports with the requirements of the Due Process Clause.

IV. CONCLUSION

*6 For these reasons, it is hereby ORDERED that Remote Solution's Motion to Dismiss for Lack of Personal Jurisdiction (D.I.105) is DENIED.

D.Del.,2004.
Philips Electronics North America Corp. v. Contec Corp.
Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit B

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1

Not Reported in F.Supp.2d, 2003 WL 21026758 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
In re Elonex Phase II Power Management Litigation
D.Del.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
In re: ELONEX PHASE II POWER
MANAGEMENT LITIGATION
**Nos. 01-082 GMS, 01-083 GMS, 01-084 GMS,
01-085 GMS, 01-086 GMS, 01-087 GMS, 01-088
GMS, 01-089 GMS, 01-104 GMS.**

May 6, 2003.

*MEMORANDUM AND ORDER*
SLEET, J.

### I. INTRODUCTION

**\*1** On February 13, 2001, the plaintiffs, Elonex I.P.
Holdings, Ltd. and EIP Licensing, B.V.
(collectively "Elonex"), filed this action against
certain companies that manufacture and sell
computer systems or computer monitors. [FN1] The
complaint alleges infringement of U.S. Patent
Numbers 5,389,952 ("the '952 patent"), 5,648,799 (
"the '799 patent"), and 5,649,719 ("the '719 patent"
). The lawsuit relates to technology that concerns
power management in computer monitors.

> FN1. In December 1998, Elonex I.P.
> Holdings Ltd. and Elonex plc filed a
> related lawsuit against another group of
> defendants on substantially the same
> grounds ("Elonex Phase I litigation").

On May 21, 2001, Elonex requested entry of default
against the defendant Jean Co., Ltd. ("Jean"). The
Clerk of the Court entered default against Jean on
June 18, 2001. On January 31, 2003, Elonex then
moved for entry of default judgment against Jean.
On February 20, 2002, counsel entered an
appearance on behalf of Jean.

Presently before the court is Jean's motion to
dismiss for lack of personal jurisdiction. For the
following reasons, the court will deny this motion.

### II. BACKGROUND

Jean is an international monitor and electronics
manufacturer, with its principle place of business in
Taipei, Taiwan. In 2001, Jean had more than $316
million in worldwide sales.

From March 1995 until April 1996, Elonex alleges
that Jean shipped 404,855 monitors to the United
States. Since 1998, ViewSonic Corporation and
eMachines, Inc.-two United States monitor
companies with nationwide re-seller networks-have
been among Jean's biggest customers. According to
Jean's 1999 Annual Report, ViewSonic alone
accounted for 22.91% of Jean's worldwide monitor
sales in 1998. In 1999, ViewSonic purchased 30.4%
of Jean's total 1999 monitor sales. In 2001,
ViewSonic purchased 39.7% of Jean's total monitor
sales. Likewise, in 1999, eMachines purchased
12.94% of Jean's worldwide monitor sales.

Additionally, both ViewSonic and eMachines have
well-established retail distribution networks.
ViewSonic monitors are available from retailers
such as Best Buy, Office Depot, and CompUSA.
Likewise, eMachines monitors are sold in Delaware
at Best Buy, Office Depot, and Circuit City. Both
ViewSonic and eMachines also sell monitors
directly to consumers via their own internet
websites. Thus, the Jean monitors sold to
ViewSonic and eMachines are resold in Delaware
and throughout the United States.

Furthermore, Delaware purchasers of Jean monitors
can download monitor software and obtain
customer service via Jean's website. Visitors to the
website can also download drivers for Jean
monitors and obtain technical support via e-mail.
Finally, Jean's website lists an "East Coast" service

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21026758 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

facility located in New Jersey.

## III. DISCUSSION

### A. Due Process

The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe* 326 U.S. at 316 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). In other words, the defendant's contacts must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1568 (Fed.Cir.1994).

**\*2** In *Beverly Hills Fan,* the Federal Circuit addressed the question of whether Ultec, a People's Republic of China corporation with a manufacturing facility in Taiwan, was subject to personal jurisdiction in Virginia. 21 F.3d at 1560. Ultec claimed that it was not subject to personal jurisdiction in Virginia because it did not have any Virginia assets, employees, or a license to do business in that state. *Id.* Acknowledging that Ultec's sole contact with the forum resulted from indirect shipments through the stream of commerce, the Federal Circuit held that Ultec "purposefully shipped the accused fans into Virginia through an established distribution channel The cause of action for patent infringement is alleged to rise out of these activities. No more is usually required to establish specific jurisdiction." *Id.* at 1560, 1564-65.

The court's decision in *Motorola Inc. v. PC-Tel, Inc.* is likewise instructive in resolving the present issue. 58 F.Supp.2d 349 (D.Del.1999). In that case, the court described the accused infringer's sales activities as follows:
Altocom does not (and, it seems, cannot) contest the fact that its softmodems are integrated into a variety of consumer electronic products which are manufactured by well-known multi-national corporations like Compaq, Phillips, Samsung, Sharp, Song, and the like. These goods are then put into the world-wide distribution networks which place them for sale in equally well-known retail stores such as Caldor, Circuit City, CompUSA, Office-Max, Sears, Service Merchandise, and others-all of which have outlets in Delaware.

58 F.Supp.2d at 352. Relying on *Beverly Hills Fan,* the court rejected AltoCom's arguments and held that exercising personal jurisdiction comported with due process. *See id.* at 355-56.

In the present case, as in *Beverly Hills Fan,* Jean's president states in his declaration that Jean makes no direct sales to the United States. He further states that Jean has no United States offices or subsidiaries. However, the court concludes that Jean has, for many years, been the first link in precisely the kind of indirect distribution chain that the Federal Circuit found sufficient to establish personal jurisdiction. Specifically, Jean sells it monitors to ViewSonic and eMachines, who in turn distribute Jean's monitors to retailers with Delaware operations. Given ViewSonic's and eMachines' extensive re-seller networks in Delaware and on the Internet, Jean cannot credibly claim it had no inkling that some of its monitors would make their way into Delaware via well-established distribution channels.

Jean further maintains an interactive website through which customers in Delaware, and elsewhere, can download driver software, as well as obtain customer support. On its website, it also lists

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 21026758 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

"Global Service Centers," including an "East Coast" service facility in New Jersey. These facts further support the court's conclusion that Jean's undeniably substantial and regular monitor sales into ViewSonic's and eMachines' national distribution networks constitute "purposeful minimum contacts" with Delaware.

\*3 Notwithstanding the existence of Jean's purposeful minimum contacts with this forum, the court must consider whether the "minimum requirements inherent in the concept of 'fair play and substantial justice ...' defeat the reasonableness of [the assertion of] jurisdiction, even [if] the defendant has purposefully engaged in forum activities." *Asahi Metal Indust. Co. v. Superior Court,* 480 U.S. 102, 116 (1987). This question will only be answered affirmatively if the state's and the plaintiff's interest in having the dispute adjudicated in the forum are so minimal as to be outweighed by the burden imposed by subjecting the defendants to litigation within the forum. *See Beverly Hills Fan,* 21 F.3d at 1568.

In the present case, Delaware clearly has a substantial interest in discouraging injuries in the state, including patent infringement injury. It has also been the sole forum for the Elonex Power Management Litigation for several years. Finally, and as the *Beverly Hills Fan* court noted, "progress in communications and transportation" have made " the defense of a lawsuit in a foreign tribunal less burdensome." 21 F.3d at 1569 (internal quotation and citation omitted). Thus, the court concludes that any burden on Jean "is not sufficiently compelling to outweigh" Elonex's and Delaware's interests. *Id.*

## B. Delaware's Long-Arm Statute

The second step in the court's analysis into the propriety of subjecting Jean to personal jurisdiction in this forum is the determination of whether any of the provisions of Delaware's long-arm statute apply. *See* Del.Code. Ann. tit. 10 § 3104. While Jean contends that it does not fall within the grasp of any of Section 3104's provisions, Elonex contends that at least two of the provisions apply here. For purposes of this order, the court need only discuss

one.

Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who causes injury either inside or outside of this State "by an act or omission outside of the State" if that individual " regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State." Del.Code. Ann. tit. 10, § 3104(c) (2001).[FN2] The court will interpret this language broadly, as reaching the "maximum parameters of the due process clause." *See Jeffreys v. Exten,* 784 F.Supp. 146, 151 (D.Del.1992).

> FN2. This subsection provides general jurisdiction over the nonresident defendant. *See Mendelson v. Delaware River and Bay Auth.,* 56 F.Supp.2d 436, 439 (D.Del.1999). Accordingly, it is immaterial whether the jurisdictional contact is related to the claim. *See id.*

As discussed above in Section III A, Jean has intentionally sold monitors using nationwide distribution channels. This knowing and purposeful shipment of monitors satisfies the act requirement of Section 3104(c)(4). *See Beverly Hills Fan,* 21 F.3d at 1571. Because Jean undeniably derives substantial revenue from these activities, it is subject to jurisdiction under Delaware's long-arm statute. *See* Chang Decl. at ¶¶ 3-7 (discussing Jean's revenue from sales to ViewSonic and eMachines).

## C. Venue

\*4 Jean finally asserts that, pursuant to 28 U.S.C. § 1391(c), venue is improper in this district. Jean's argument is meritless, however, because "[t]he venue issue is subsumed in the personal jurisdiction issue. Venue lies ipso facto if ... the district court has personal jurisdiction over [the defendant]." *North American Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576, 1577 n. 1 (Fed.Cir.1994); *see also* 28 U.S.C. § 1391(b)(1) & (c) (stating that venue is proper in a judicial district where the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

Not Reported in F.Supp.2d, 2003 WL 21026758 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

defendant corporation is subject to personal jurisdiction at the time the action is commenced). As the court has already found that the exercise of personal jurisdiction is proper and complies with both due process and the Delaware long-arm statute, venue in this district is also proper.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Jean's Motion to Dismiss (D.I.856) is DENIED.

D.Del.,2003.
In re Elonex Phase II Power Management Litigation
Not Reported in F.Supp.2d, 2003 WL 21026758 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit C

Westlaw.

Slip Copy                                                                                                    Page 1

Slip Copy, 2007 WL 896254 (D.Del.)
(Cite as: Slip Copy)

Government Employees Ins. Co. v. Rando
D.Del.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
GOVERNMENT EMPLOYEES INSURANCE
CO., Plaintiff,
v.
John P. RANDO, Defendant.
Civil Action No. 06-449-JJF.

March 22, 2007.

Nicholas E. Skiles, Esquire of SWARTZ
CAMPBELL LLC, Wilmington, DE, for Plaintiff.
Arthur M. Krawitz, Esquire of Doroshow, Pasquale,
Krawitz, Siegel & Bhaya, Wilmington, DE, for
Defendant.

*MEMORANDUM OPINION*
FARNAN, District Judge.
*1 Pending before the Court is Defendant's Motion
To Dismiss And/Or Motion To Transfer based upon
lack of personal jurisdiction and improper venue
(D.I.6). For the reasons discussed, the Court will
grant the Motion.

## I. BACKGROUND

Plaintiff Government Employees Insurance
Company ("GEICO") is an insurance company
incorporated in Maryland. Defendant is a resident
of Florida. In October 2004, Plaintiff issued
Defendant a Delaware-rated insurance policy to
insure a vehicle which was registered, titled, and
garaged in Delaware and primarily used by the
Defendant's daughter (policy # 4025027832).
Defendant was a resident of Florida throughout the
life of the insurance policy and the policy was
executed by Defendant in Florida. The Defendant
and his wife were the named insureds on the policy.
In November 2004, Plaintiff issued Defendant a

separate Florida-rated policy to cover a different
vehicle (policy # 0245195508). On April 15, 2005,
the Delaware insurance policy (# 4025027832) was
renewed without change with a policy period lasting
until October 15, 2005.

On August 4, 2005, Defendant was involved in a
motor vehicle accident resulting in serious injury
and requiring hospitalization. Defendant settled a
claim against the tortfeasor in the amount of
$10,000. Defendant filed a claim with GEICO
seeking payment of $600,000 of uninsured motorist
benefits under his Florida policy.[FN1] GEICO paid
the full amount of $600,000 in accordance with the
Florida policy on May 19, 2006.

> FN1. According to Plaintiff, Florida law
> allows a policy holder to stack, or
> combine, coverage for all intrastate or
> interstate vehicles insured by the same
> company in order to increase the benefit
> limits available under a single policy.

On May 19, 2006, Defendant filed a claim with
Plaintiff to recover uninsured motorist benefits
under the Delaware policy (# 4025027832).
Plaintiff denied Defendant's claim. Plaintiff alleges
that Defendant cannot recover the amounts sought
under the Delaware policy because the policy
language prevents the combining of two GEICO
policies.

On July 24, 2006, Plaintiff brought this declaratory
judgment action pursuant to 10 Del. C. § 6501
requesting that the Court declare that Defendant is
not entitled to seek recovery under the Delaware
policy (# 4025027832) or any other GEICO
policies. On September 29, 2006, Defendant filed a
Motion To Dismiss And/Or Motion To Transfer
based upon lack of personal jurisdiction and
improper venue (D.I.6). Currently pending in the
Middle District of Florida is an action initiated by
Defendant against Plaintiff seeking damages and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                            Page 2

Slip Copy, 2007 WL 896254 (D.Del.)
(Cite as: Slip Copy)

declaratory judgment that uninsured motorist benefits under the Delaware policy are recoverable.

## II. PARTIES' CONTENTIONS

By his Motion, Defendant contends that the Court lacks personal jurisdiction over him because there are no minimum contacts between Defendant and Delaware, Plaintiff does not meet the requirements of the Delaware long-arm statute, and it would be unreasonable under the facts for Delaware to exercise jurisdiction. Defendant further alleges that a transfer to the Middle District of Florida is warranted because Florida is a more convenient forum. In response, Plaintiff contends that jurisdiction is conferred by the Delaware long-arm statute pursuant to 10 Del. C. § 3104(c)(6) and that minimum contacts are established by Defendant's Delaware insurance policy. Plaintiff further contends that the balance of convenience does not favor a transfer.

## III. LEGAL STANDARD

*2 To establish personal jurisdiction, a party must allege facts sufficient to satisfy two requirements, one statutory and one constitutional. *See Reach & Assoc., P.C. v. Dencer,* 269 F.Supp.2d 497, 502 (D.Del.2003). With regard to the statutory requirement, the Court must determine whether there is a statutory basis for jurisdiction under the forum state's long-arm statute. *Id.* As for the constitutional basis, the Court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. *Id.* (citations omitted). Due process requires that a defendant have certain minimum contacts with the forum state in order to ensure that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement,* 326 U.S. 310, 316 (1945).

The plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. *Provident*

*Nat'l Bank v. California Fed. Sav. & Loan Assoc.,* 819 F.2d 434, 437 (3d Cir.1987). To satisfy this burden, the plaintiff must establish either specific jurisdiction or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state; general jurisdiction arises when the defendant has continuous and systematic contacts with the state, irrespective of whether the defendant's connections are related to the particular cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 416 (1984).

Once it is established that the defendant has sufficient minimum contacts with the forum, the court must then determine whether it is reasonable for the Court to exercise jurisdiction over the defendant. In making this determination, courts weigh several factors including:
1) the burden that the exercise of jurisdiction will impose on the defendant;
2) the interests of the forum state in adjudicating the case;
3) the plaintiff's interests in obtaining convenient and effective relief;
4) the interstate judicial system's interest in obtaining the most efficient resolution of
5) the shared interest of the states in furthering substantive social policies.

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 568 (2d. Cir.1996) (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113-14 (1987); *World-wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980).

## IV. ANALYSIS

According to the relevant portion of the Delaware long-arm statue, a Delaware court may exercise jurisdiction over any nonresident who:
contracts to insure or act as a surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 896254 (D.Del.)
(Cite as: Slip Copy)

*3 10 Del. C. § 3104(c)(6). Plaintiff contends that the insurance policy held by Defendant squarely falls within the language and meaning of the statute because the Defendant contracted to insure his vehicle which was garaged in Delaware.

Plaintiff further contends that specific jurisdiction exists over Defendant because minimum contacts are established by Defendant's act of insuring a vehicle registered and titled in Delaware for coverage under Delaware law. [FN2] Specific jurisdiction exists when the defendant has purposefully directed his activities toward the forum, and the litigation arises out of or is related to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414-16. Stated another way, the Defendant must have purposefully availed himself of the privilege of conducting activities within the forum such that the defendant should reasonably anticipate being haled into court as a result of his conduct and connection with the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). Plaintiff contends that Defendant should have reasonably anticipated litigation in Delaware as a result of having an insurance policy for a car located in the forum state.

> FN2. The Court understands Plaintiff's argument to rest on specific jurisdiction because the contacts it advances to support the exercise of personal jurisdiction are neither continuous or systematic.

Even if the Court were to conclude that Plaintiff has alleged sufficient facts to establish a statutory basis for personal jurisdiction under the Delaware long-arm statute and that minimum contacts exist between the Defendant and Delaware, the Court would decline to exercise personal jurisdiction on the basis that the relationship between the Defendant and the forum state is not such that it is reasonable to require Defendant to litigate in Delaware. Assuming *arguendo* that Plaintiff's vehicle and insurance policy are sufficient to establish minimum contacts, the contacts are not so significant to create a substantial connection with the forum state, especially when analyzed in

relationship to the factors set forth in *Metropolitan Life Ins. Co.,* 84 F.3d at 568.

Considering the balance of factors, the Court concludes that the exercise of jurisdiction, in the circumstances presented by this case, does not comport with traditional notions of fair play and substantial justice. The Court concludes that the burden on Defendant to litigate in Delaware is significant in light of the relatively slight burden on the Plaintiff to litigate in Florida or another forum where jurisdiction is found. Defendant's only contact with Delaware is that he owns a vehicle registered and titled in the state. However, an insurance policy is required by Delaware law for a car that is registered in Delaware, *see* 21 Del C. § 2118. Additionally, Defendant suffered severe permanent brain injuries as a result of the accident in Florida which present a burden on Defendant's participation in the litigation process including travel to and from the forum, effective communication with local counsel, and responding to discovery. In contrast, Plaintiff is a large corporation incorporated in Maryland which issues auto insurance in forty-nine states and the District of Columbia as well as in overseas locations. Plaintiff has seven regional offices, including one in Florida. Further, Plaintiff is already involved in litigation in the Middle District of Florida brought by the Defendant regarding the same Delaware-rated insurance policy at issue in the present action. Plaintiff contends that the inconvenience to Defendant will be minimal because little discovery is necessary. However, the Court concludes that this contention weighs in favor of both parties and thus, does not alter the Court's analysis.

*4 Additionally, the Court concludes that the interest of the forum state in adjudicating the case weighs slightly in favor of exercising jurisdiction. A Delaware-rated insurance policy will be interpreted under Delaware law and the forum has an interest in interpreting and enforcing its laws. The forum state also has an interest in protecting its residents from inconvenient litigation. Here, neither Plaintiff or Defendant is a resident of Delaware. Thus, this factor weighs only slightly in favor of finding the exercise of jurisdiction to be reasonable.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 4

Slip Copy, 2007 WL 896254 (D.Del.)
**(Cite as: Slip Copy)**

The Court further concludes that the additional factors to consider do not weigh in favor of exercising jurisdiction. In the circumstances of this case, declining to exercise jurisdiction over the Defendant does not prejudice Plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in the most efficient resolution, and the shared interest of the states in furthering substantive social policies.

In sum, the Court concludes that the exercise of personal jurisdiction over the Defendant does not comport with the Defendant's right to due process. Thus, the constitutional requirements for jurisdiction are not met. Accordingly, the Court will grant Defendant's Motion.

Because the Court declines to exercise personal jurisdiction over the Defendant, the Court need not address Defendant's arguments with respect to improper venue and transfer.

## V. CONCLUSION

For the reasons discussed, the Court will grant Defendant's Motion To Dismiss (D.I.6).

An appropriate Order will be entered.

## *ORDER*

At Wilmington, the 22 day of March 2007, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that Defendants' Motion To Dismiss And/Or Motion To Transfer (D.I.6) is *GRANTED.*

D.Del.,2007.
Government Employees Ins. Co. v. Rando
Slip Copy, 2007 WL 896254 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit D

Page 1

LEXSEE 2001 U.S. DIST. LEXIS 15802



Analysis
As of: Jun 15, 2007

In re: AMERISERVE FOOD DISTRIBUTION INC., et al., Debtors.
LAMB-WESTON, INC., Plaintiff, v. AMERISERVE FOOD DISTRIBUTION, INC.,
et al., Defendants.

Chapter 11, Case No. 00-0358(PJW) Jointly Administered, Civil Action No. 00-748
SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*267 B.R. 668; 2001 U.S. Dist. LEXIS 15802*

September 28, 2001, Decided

**DISPOSITION:** [**1] Defendant's motion for partial summary judgment (D.I. 24) denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff seller sold defendant buyer potato products. Prior to payment, the buyer filed a voluntary petition for bankruptcy. Based on two court decisions, the buyer denied the seller's claims. The seller sought a declaratory judgment that the french fries were subject to and covered by the statutory trust arising under the Perishable Agricultural Commodities Act (PACA), 7 U.S.C.S. § 499 et seq. The buyer moved for partial summary judgment.

**OVERVIEW:** The buyer argued that a prior bankruptcy court finding against the seller estopped it from pursuing the action. The buyer's motion was premised upon defensive collateral estoppel. To invoke issue preclusion, the buyer must have demonstrated that four factors were met: (1) the issue to be precluded was the same as that involved in the prior action, (2) the issue was actually litigated, (3) it was a valid and final judgment, and (4) the determination was essential to the prior judgment. The seller was permitted to demonstrate that it did not have a fair opportunity procedurally, substantively, and

evidentially to pursue its claim the first time. The court found that it could not have been established with confidence that the seller had a full and fair opportunity to litigate the core issue. The court could not have viewed as fair the defense expert report arriving at the seller's door a "couple of days" before disposition in the prior action. Such conduct, absent an adversary's opportunity to thoroughly investigate the opinion, cast doubt that the seller had a fair opportunity to pursue his claim the first time. Collateral estoppel did not apply.

**OUTCOME:** The buyer's motion for partial summary judgment was denied.

**COUNSEL:** Duane E. Werb, Esquire and Kimberly E.C. Lawson, Esquire, Werb & Sullivan, Wilmington, Delaware, for Lamb-Weston, Inc., plaintiff.

Hartley B. Martyn, Esquire and Mark A. Amendola, Esquire, Of Counsel, Cleveland, Ohio, for plaintiff.

Laura Davis Jones, Esquire and Michael R. Seidl, Esquire, Pachulski, Stang, Ziehl, Young & Jones, P.C., Wilmington, Delaware, for AmeriServe Food Distribution, Inc., defendant.

Timothy D. Elliott, Esquire and Brandon Fox, Esquire,

267 B.R. 668, *; 2001 U.S. Dist. LEXIS 15802, **1

Of Counsel, Kirkland & Ellis, Chicago, Illinois, for defendant.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

[*669] MEMORANDUM OPINION

Dated: September 28, 2001

Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

This matter is before the court on defendant AmeriServe Food Distribution, Inc.'s ("AmeriServe") motion for partial summary judgment. (D.I. 25) Plaintiff Lamb-Weston, Inc. ("Lamb-Weston") has filed its opposition and AmeriServe has filed a [*670] reply. (D.I. 44, 47) For the reasons that follow, AmeriServe's motion for partial summary judgment is denied.

**II. STANDARD OF REVIEW**

[**2] A party is entitled to summary judgment only when the court concludes "that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c).* The moving party bears the burden of proving that no material issue of fact is in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).* Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id. at 587*(quoting *Fed. R. Civ. P. 56(e)*). "Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 302 n. 1 (3d Cir. 1995).* If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of [**3] law. *See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).*

The mere existence of some evidence in support of the party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).* This court, however, must "view all the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Pacitti v. Macy's, 193 F.3d 766, 772 (3d Cir. 1999).*

**III. FACTS**

As a dealer in perishable commodities within the meaning of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499 *et seq.,* ("PACA"), AmeriServe purchases and sells perishable agricultural commodities in interstate commerce on a wholesale basis. (D.I. 5) Lamb-Weston is engaged in the business of selling potato products to purchasers who resell these potato products. (D. [**4] I. 1) Lamb-Weston sold to AmeriServe on credit potato products, which have been valued by Lamb-Weston at $ 4,974,966.46. Prior to payment, AmeriServe filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code ("the Code") on January 31, 2000. (D.I. 5) On February 1, 2000, affiliated and subsidiary debtors filed Chapter 11 petitions and the cases were procedurally consolidated by order dated February 2, 2000. AmeriServe has been operating its business as a debtor-in-possession since that time.

On March 17, 2000, AmeriServe was ordered to identify those claims subject to statutory protection under PACA. (D.I. 5) Based on two court decisions, AmeriServe denied Lamb-Weston's claims, asserting that the potato products did not fall under PACA protection for perishable products.

Subsequently, Lamb-Weston filed an adversary complaint seeking a declaratory judgment that the french fries it sold to AmeriServe are subject to and covered by the statutory trust arising under PACA. (Bankruptcy Docket 4) By Order dated July 27, 2000, the bankruptcy court granted Lamb-Weston's motion and concluded the adversary proceeding was non-core. (BK. 5) On August 10, 2000, Lamb-Weston [**5] moved for and was granted a withdrawal [*671] of reference pursuant to 28 U.S.C. § 157(d). (D.I. 1)

Page 3

267 B.R. 668, *671; 2001 U.S. Dist. LEXIS 15802, **5

## IV. DISCUSSION

Defendant AmeriServe brings this motion for partial summary judgment arguing that a prior bankruptcy court finding against plaintiff estops it from pursuing this action. (D.I. 25) Defendant's motion is premised upon defensive collateral estoppel, defined as a defendant's attempt to "prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Parklane Hosiery Company, Inc. v. Shore, 439 U.S. 322, 326 n. 4, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979).* Whether used offensively or defensively, the party invoking issue preclusion must demonstrate that four factors are met: 1) the issue to be precluded is the same as that involved in the prior action; 2) the issue was actually litigated; 3) it was a valid and final judgment; and 4) the determination was essential to th prior judgment. *Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd, 63 F.3d 1227, 1231 (3d Cir. 1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992)).* [**6]

Even if all criteria are satisfied, application of the doctrine is "subject to overriding fairness determination by the trial judge." *Burlington, 63 F.3d at 1231.* The party resisting issue preclusion should be "permitted to demonstrate... that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time'". *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 333, 28 L. Ed. 2d 788, 91 S. Ct. 1434 (1971) (quoting Eisel Columbia Packing Co., 181 F. Supp. 298, 301 (D.Mass. 1960)).* As applied here, the court finds all four prerequisites to the doctrine's application are met essentially for the reasons plaintiff advances. What cannot be established with confidence, however, is that Lamb-Weston had a full and fair opportunity to litigate the core issue.

Specifically, whether the bankruptcy hearing permitted Lamb-Weston a full and fair opportunity to litigate first requires a recognition that the bankruptcy rules closely mirror the federal rules of civil procedure. *In re S<3> Ltd., 252 B.R. 355 (Bankr. E.D. Va. 2000)*(applying FRCP 26 and [**7] its expert requirements to bankruptcy proceedings). This includes discovery relating to expert witnesses who, under the *Federal Rules of Civil Procedure, R. 26(a)(2)(C),* must have their reports supplied within 90 days of trial. The purpose of the rule is to avoid surprise, permit discovery

to test expert opinions, and prevent the obvious prejudice of secret testimony.

With these precepts in mind, the court turns to a review of the bankruptcy record concerning the events and hearing surrounding the french fry issue in the Long John Silver ("LJS") bankruptcy proceeding. (D.I. 25, Exs. 4, 5, 6) There, Lamb-Weston supplied french fries to the debtor LJS and sought payment for the potato products supplied on credit before the bankruptcy. LJS argued Lamb-Weston's french fries were not covered under the trust created by PACA, essentially, because the fries were battered. Lamb-Weston rejected this characterization. At a hearing held on the matter, Lamb-Weston presented one witness and LJS proffered two witnesses. Post hearing briefing occurred.

On February 10, 1999, the bankruptcy court ruled that the specially engineered batter coating applied to the french fries removed them from the category [**8] of perishable agricultural commodities protected under PACA. *In re Long John Silver's Restaurants, Inc., 230 B.R. 29, 35 (Bankr. D.Del. 1999).* Lamb-Weston appealed the [*672] decision, but later withdrew its appeal. (D.I. 44)

During the hearing, LJS called two witnesses: employee Sean Muldoon and expert Edward O'Neill. (D.I. 25, Ex. 8) While Muldoon appeared to add little to the analysis, O'Neill offered opinion on the main issue and refuted the testimony of Lamb-Weston's only witness, Jerry Sloan.

Particularly, Sloan, Lamb-Weston's director of research and development, holds bachelor and master degrees in food science and technology. He explained Lamb-Weston's production process as it relates to PACA and was able to squarely refute the contents of Muldoon's affidavit, supplied months earlier. (*Id.*, at 20) Muldoon's position was likewise challenged in July 1998 by the reply affidavit of Lamb-Weston's Engineering Manager, Randall Spry. It appears clear that Lamb-Weston prepared their case, in large part, based on the only witness LJS timely identified: Muldoon.

Within days of the hearing, however, LJS's strategy apparently changed. O'Neill conceded his report was not [**9] sent until "late on the 7th" of October -less than two full days before the hearing. (*Id.* at 80) Until that point, it appeared LJS would attempt to refute Sloan's expert opinion solely with Muldoon-who holds only a

267 B.R. 668, *672; 2001 U.S. Dist. LEXIS 15802, **9

business administration degree and is merely a purchaser of food and paper products. (*Id. at 47*) O'Neill, by contrast and like Sloan, holds a master degree in food science and technology. (*Id. at 73*) The court can only conclude that LJS decided, at the last minute, to retain an expert equal in caliber to Sloan. Before that time, Lamb-Weston had reason to believe LJS's position was fully disclosed.

Beyond the lateness of O'Neill's report, the reliability of the testimony itself is suspect. For example, O'Neill's opinion appears as a compilation of hearsay, ranging from internet research, to sending an associate to the library, to talking "with friends and associates" in business about batter coating. (*Id. 79, 89*) While an expert may base an opinion on hearsay, it must be of a type regularly relied upon by others in the field. *Fed.R.Evid. 703*. It cannot be said that internet and library research, such as here, is the type "experts" customarily rely upon in [**10] forming legitimate opinions.

Although this court is cognizant of motion practice as an accepted method of addressing issues such as these in the bankruptcy context, neither the rules of procedure nor concepts of fundamental fairness permit diminution of a litigant's rights. Those include an adverse party's entitlement to timely receive expert reports and conduct discovery in order to evaluate whether and to what extent the basis of such opinions can be challenged. With this in mind, the court cannot view as fair the defense expert report arriving at Lamb-Weston's door a "couple of days" before disposition. Such conduct, absent an adversary's opportunity to thoroughly investigate the opinion, casts doubt that Lamb-Weston had "a fair opportunity procedurally, substantively and evidentially to pursue his

claim the first time." *Blonder-Tongue, 402 U.S. at 333*.

As a final note, AmeriServe suggests that only offensive collateral estoppel permits a fairness assessment. (D.I. 25, 47) While the majority of courts do ascribe to an equitable overview in offensive estoppel context, the court is unconvinced that such a bright line has yet been drawn. *Id.* (applying the fairness [**11] analysis in a defensive collateral estoppel context). Indeed, estoppel is a doctrine grounded in equity. To apply it to some cases and not to others is itself unfair, and certainly does not comport with the notion that there is "no intrinsic difference" between offensive and defensive issue preclusion. *Parklane Hosiery* [*673] *Co.*, 439 U.S. at 331 n.16.

**V. CONCLUSION**

In light of the court's reservations about the full and fair hearing conducted in the *Long John Silver* matter, collateral estoppel does not apply and, therefore, AmeriServe's motion for partial summary judgment is denied. An appropriate order shall issue.

**ORDER**

At Wilmington this 28th day of September, 2001, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that defendant's motion for partial summary judgment (D.I. 24) is denied.

Sue L. Robinson

United States District Judge