# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

                    Plaintiff,

            v.                                    Civil Action No.  06-726-JJF

CHI MEI OPTOELECTRONICS
CORPORATION, et al.

                    Defendants.

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION FOR RULE 11 SANCTIONS AND
## <u>SANCTIONS PURSUANT TO 28 U.S.C. § 1927</u>


THE BAYARD FIRM

Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardfirm.com

Attorneys for Plaintiff LG.Philips LCD Co., Ltd.

OF COUNSEL:
Gaspare J. Bono
Song K. Jung
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500

661332-1

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

SUMMARY OF ARGUMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 4

I.    Any Reasonable Inquiry Would Reveal Overwhelming Evidence of CMO's
      Jurisdictional Contacts with Delaware.................................................................. 4

      A.    CMO Sells its Products in the United States and Delaware, Both Directly
            and Through Established Distribution Channels ...................................................... 4

      B.    CMO Owns, Directly or Indirectly, Multiple Delaware Corporations ................. 8

      C.    CMO's Other Contacts with the United States in General .................................. 10

      D.    CMO Consented to Jurisdiction in Other United States District Courts ............. 11

II.   CMO's Motion to Dismiss Completely Disregards CMO's Last Frivolous
      Attempt to Contest This Court's Jurisdiction in 2003 ...................................... 12

      A.    The Basis for the District Court's Grant of CMO's Motion to Dismiss in
            the CEA Litigation was the Lack of Pre-Filing Sales, Which CMO Knows
            is Not an Issue in This Case ................................................................................. 12

      B.    The Federal Circuit's Opinion Expressly Refutes CMO's Denial of Any
            Evidence Establishing this Court's Jurisdiction ................................................. 14

      C.    Jurisdictional Discovery Obtained in the CEA Litigation Clearly
            Establishes this Court's Jurisdiction, and CMO Ignored this Discovery
            When it Filed its Motion to Dismiss.................................................................... 15

      D.    CMO Eventually Withdrew All Objections with Respect to Personal
            Jurisdiction........................................................................................................... 17

III.  LPL Afforded CMO Multiple Opportunities to Withdraw Its Motion ........................... 18

LEGAL STANDARD........................................................................................... 22

I.    Rule 11 Sanctions ................................................................................................. 22

II.   Sanctions Under 28 U.S.C. § 1927 ...................................................................... 24

ARGUMENT..................................................................................................... 24

IV.   CMO's Motion to Dismiss Has No Basis in Either Fact or Law ..................................... 24

      A.    CMO's Motion to Dismiss is Directly Contradicted by Overwhelming
            Evidence................................................................................................................ 24

      B.    The Defenses Contained in CMO's Motion to Dismiss are Not Warranted
            by Existing Law .................................................................................................... 26

V.    A Reasonable Inquiry Would Have Shown that CMO's Motion to Dismiss is
      Baseless................................................................................................................. 28

## TABLE OF CONTENTS

**Page**

VI.     CMO's Motion to Dismiss was Brought for an Improper Purpose ................................. 31

VII.    Sanctions Should Be Imposed Against CMO and Its Counsel ...................................... 32

VIII.   Sanctions Should be Imposed Against CMO's Counsel Pursuant to 28 U.S.C.
        § 1927............................................................................................................................. 34

        A.      Counsel Multiplied the Proceedings By Filing a Frivolous Motion to
                Dismiss............................................................................................................ 34

        B.      CMO's Motion to Dismiss was Unreasonable and Vexatiously Pursued ........... 35

        C.      Counsel's Pursuit of CMO's Motion to Dismiss Needlessly Increased the
                Cost of the Proceedings .................................................................................... 35

        D.      Counsel's Pursuit of CMO's Motion to Dismiss was in Bad Faith ..................... 36

        E.      Sanctions are Appropriate Against CMO's Counsel .......................................... 36

CONCLUSION.......................................................................................................................... 37

## TABLE OF AUTHORITIES

**Page**

## CASES

*Asahi Metal Indus. Co v. Superior Court,*
    480 U.S. 102 (1987)............................................................................. 30

*Beverly Hills Fan Co. v. Royal Sovereign Corp,*
    21 F.3d 1558 (Fed. Cir. 1994) ...................................................... 26, 30

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)............................................................................. 30

*Business Guides, Inc. v. Chromatic Commc'ns Enter., Inc.,*
    498 U.S. 533 (1991)............................................................................. 23

*Commissariat À L'Energie Atomique v. Chi Mei Optoelectronics Corp. et al.,*
    395 F.3d 1315, 1320 (Fed. Cir. 2005) ........................................ *passim*

*Commissariat À L'Energie Atomique v. Chi Mei Optoelectronics Corp. et al.,*
    293 F.Supp.2d 427 (D. Del. 2003)...................................................... 13

*Comuso v. Nat'l R.R. Passenger Corp.,*
    267 F.3d 331 (3d Cir. 2001) ......................................................... 22, 23

*Cooter & Gell v. Hartmarx Corp.,*
    496 U.S. 384 (1990)............................................................................. 22

*Eavenson, Auchmuty & Greenwald v. Holtzman,*
    775 F.2d 535 (3d Cir. 1985) ......................................................... 22, 23

*Estate of N. J. Calloway v. Marvel Entm't Group,*
    9 F.3d 237 (2d Cir. 1993) ............................................................. 23, 34

*Gaiardo v. Ethyl Corp.,*
    835 F.2d 479 (3d Cir. 1987) .............................................................. 23

*In re Elonex Phase II Power Management Litigation*
    C.A. Nos. 01-082 GMS through 01-104 GMS, 2003
    WL 21026758 (D. Del. May 6,2003)........................................... *passim*

*In re Prudential Ins. Co.,*
    278 F.3d 175 (3d Cir. 2002) ........................................................ 24, 36

*Kraemer Export Corp. v. Peg Perego U.S.A., Inc.,*
    No. 93 Civ. 0198, 1994 WL 86357 (S.D.N.Y. 1994) .......................... 31

## TABLE OF AUTHORITIES

**Page**

*Loving v. Pirelli Cable Corp.,*
    11 F.Supp.2d 480 (D. Del. 1998) ................................................................. 23, 32

*Mercury Service, Inc. v. Allied Bank of Texas,*
    117 F.R.D. 147 (C.D. Cal .1987) ...................................................................... 33

*Motorola Inc. v. PC-Tel, Inc.,*
    58 F. Supp.2d 349 (D. Del. 1999) ......................................................... 26, 27, 30

*National Computer Ltd. v. Tower Industries, Inc.,*
    708 F.Supp. 281 (N.D. Cal. 1989) ............................................................... 30, 31

*Philips Electronics North America Corp. v. Contec Corp.,*
    Civ. A. No. 02-123-KAJ, 2004 WL 503602 (D. Del. March 11, 2004) ...................... 13, 28, 30

*Sergio Estrada Rivera Auto Corp. v. Kim,*
    717 F. Supp. 969 (D. P. R. 1989) .............................................................. 31, 32,33

*Triad Systems Corp. v. Southeastern Exp. Co.,*
    64 F.3d 1330 (9th Cir. 1995) .......................................................................... 33

## RULES AND OTHER AUTHORITIES

28 U.S.C. § 1927 (1980) .......................................................................... *passim*

Del. Code Ann. tit. 10, § 3104 (1995) ....................................................................... 30

Fed. R. Civ. P. 11 ....................................................................................... *passim*

661332-1

## NATURE AND STAGE OF THE PROCEEDINGS

On December 1, 2006, Plaintiff LG.Philips LCD Co., Ltd. ("LPL") filed a Complaint for

Patent Infringement against Defendants Chi Mei Optoelectronics Corporation ("CMO"); AU

Optronics Corporation ("AUO"); AU Optronics Corporation America; Tatung Company; Tatung

Company of America, Inc.; and ViewSonic Corporation alleging infringement of three of LPL's

United States patents. (D.I. 1.) On April 6, 2007 CMO filed a Motion to Dismiss for Lack of

Personal Jurisdiction and Insufficiency of Service of Process. (D.I. 19.) LPL filed its answering

brief in response to CMO's motion to dismiss on May 22, 2007 (D.I. 57) and, on that date, also

filed a First Amended Complaint against CMO, which added Chi Mei Optoelectronics USA, Inc.

("CMO USA") as a defendant. (D.I. 54.)

## SUMMARY OF ARGUMENT

1.      CMO[1] has filed a baseless motion to dismiss that has been presented for the

improper purpose of delaying this case and unnecessarily increasing the cost of litigation.  The

motion has not been filed in good faith because no reasonable inquiry was made into CMO's

jurisdictional contacts.  Indeed, such an inquiry would not have supported a motion to dismiss

for lack of personal jurisdiction.

2.      There is overwhelming evidence of CMO's jurisdictional contacts with the State

of Delaware.  Prior to the filing of LPL's complaint, CMO sold hundreds of its products in

Office Depot and CDW retail stores located in Delaware.  CMO also has purposefully placed its

modules into the established distribution channel for incorporation into name brand monitors

such as Dell, Gateway, Hewlett-Packard, and Apple that are distributed to retailers such as Best

---

[1]  Unless stated otherwise, all references to CMO include CMO and its current counsel, Potter Anderson
& Corroon LLP and Jones Day.

Buy, Circuit City, CompUSA, Office Depot, Staples, and RadioShack for sale all throughout the United States. Beyond in-store sales, CMO products are available on the internet through sites such as www.ebay.com. Further, CMO's contacts with Delaware include its joint venture with a Delaware corporation and its United States representative is, in effect, a wholly owned Delaware subsidiary of CMO.

3.      Indeed, in the patent suit filed in 2003 in this Court by plaintiff Commissariat à l'Energie Atomique ("CEA"), styled as *Commissariat à l'Energie Atomique v. Chi Mei Optoelectronics Corp., et al.*, Case No. 03-484 (the "CEA Litigation"), the Court of Appeals for the Federal Circuit adopted many of the facts presented during the adjudication of CMO's motion to dismiss for lack of personal jurisdiction. In its opinion vacating the dismissal of CEA's complaint and remanding that case to allow jurisdictional discovery, the Federal Circuit concluded that, "[c]ontrary to the district court's holding, the evidence already presented by plaintiff is sufficient to demonstrate that CMO sells a very large volume of LCDs to companies which incorporate these displays into their final product and that these products are likely sold in Delaware in substantial quantities." *Commissariat à l'Energie Atomique v. Chi Mei Optoelectronics Corp. et al.*, 395 F.3d 1315, 1320 (Fed. Cir. 2005). "CMO did not submit any evidence to contradict CEA's allegation that CMO derived substantial revenue from sales of its products to Delaware. Nor did CMO submit evidence to contradict CEA's assertion that its products, as incorporated by [original equipment manufacturers] into computer monitors, were likely to reach Delaware." *Id.* 1317-18. The Federal Circuit rejected CMO's argument that it did not transact business in Delaware. Then, after months of extensive discovery revealing the importation, sale, and distribution of CMO's products in the United States, including Delaware,

CMO consented to this Court's jurisdiction. CMO wholly ignored its concession and the Federal Circuit's key findings when it chose to file a meritless motion to dismiss in this case.

4. Given the overwhelming evidence of CMO's jurisdictional contacts with Delaware, CMO either failed to conduct a reasonable inquiry before filing its motion to dismiss or it knew of that evidence and chose to deliberately mislead this Court. Indeed, CMO's motion to dismiss contains numerous misleading, if not completely false, statements denying that it ever conducted business in Delaware, which are directly refuted by the evidence presented herein. Such statements are also contained in the accompanying Declaration of CMO's Deputy Head Director of LCD TV Business Division. Had CMO at least reviewed the documents produced in the CEA Litigation, it would have discovered that over 900 CMO products were sold in Delaware stores such as Office Depot and CDW. As presented, CMO's motion and supporting Declaration of its corporate representative are artfully worded documents intended to mislead this Court as to CMO's actual business activities in Delaware. As such, the declaration should be stricken.

5. Beyond its lack of evidentiary support, CMO's motion is not warranted by existing law given the tremendous evidence of CMO's jurisdictional contacts with Delaware. This Circuit recognizes the established distribution channel theory of jurisdiction, which is supported by the extensive evidence of CMO's jurisdictional contacts with Delaware. CMO fully intends for its modules to be incorporated into products made by name brand manufacturers such as Dell and Hewlett-Packard to then be distributed to retailers throughout the United States. The use of such an established distribution channel is evidenced by the sale of CMO products in Delaware prior to the date LPL filed its Complaint. Thus, there is no legal basis on which CMO can avoid jurisdiction, and there was no cognizable basis for CMO's frivolous motion.

-3-

661332-1

## STATEMENT OF FACTS

I. **ANY REASONABLE INQUIRY WOULD REVEAL OVERWHELMING EVIDENCE OF CMO'S JURISDICTIONAL CONTACTS WITH DELAWARE**

Before filing its motion to dismiss, CMO and its counsel were obligated to conduct a reasonable inquiry to ensure there was a good faith basis for presenting its motion to this Court. Upon reviewing the overwhelming evidence establishing CMO's jurisdictional contacts with Delaware, it is evident that CMO could not have made *any* reasonable inquiry as to CMO's dealings in Delaware.

   A. **CMO Sells its Products in the United States and Delaware, Both Directly and Through Established Distribution Channels**

A minimal inquiry as to CMO's product sales reveals that its Liquid Crystal Display modules ("LCDs"), which are a type of flat panel display that are incorporated into LCD portable computers, LCD computer monitors, LCD televisions and the like, are sold directly in Delaware and through an established distribution channel. LPL has shown that at least six CMO products that were incorporated into monitors and televisions sold by ViewSonic, Tatung, and Iiyama and purchased in Delaware by individuals at store locations in Delaware or via the internet before LPL filed suit against CMO. (D.I. 58, 59.) In addition, two retailers, Office Depot and CDW have made numerous sales of CMO's LCD products in Delaware. (D.I. 60, Ex. 2 and 3.) Office Depot sold 882 CMO products in Delaware from 2003 through 2005.[2] (D.I. 60, Ex. 2.) Similarly, CDW has evidence of at least 30 CMO products sold by CDW in Delaware from July 2002 through March 2005. (D.I. 60, Ex. 3.) CMO failed to apprise the Court of these Delaware contacts.

_____

[2] The sales summaries only includes sales information through 2005 although it is reasonable to assume that additional products have been sold in subsequent years.

In addition, CMO also failed to advise the Court that, as part of its regular course of business, *CMO ships substantial quantities of its LCD products directly into the United States for sale throughout the United States.* CMO's direct shipments into the U.S. include 287,312 pieces in 2006 alone for Westinghouse Digital Electronics, Inc.; 21,966 pieces in 2006 alone for Acer America; and 1,344 pieces that arrived in the United States on June 17, 2003 for Acer America Corporation. (D.I. 60, Ex. 26.)  Westinghouse Digital Electronics, Inc.'s products are sold by numerous retailers throughout the United States and within Delaware, including Best Buy and Wal-Mart. (D.I. 60, Ex. 37 and 44.) Acer America's website (www.acer.com/us) cites to numerous retailers within the United States, including in Delaware, that offer Acer LCD monitors for sale. (D.I. 60, Ex. 27.)  CMO also shipped LCD monitors to Iiyama North America, Inc. located in Pennsylvania. (D.I. 60, Ex. 26.)  According to Iiyama North America's website, www.iiyama.com, Iiyama has sales managers located on the east coast of the United States, who likely sell products in Delaware. (D.I. 60, Ex. 28.)

CMO's shipments and revenue in 2006 establish that CMO has consistently been a large presence in the worldwide LCD panel market, through the use of CMO's established distribution channel.  Perhaps most significantly, *CMO acknowledges that its "modules are incorporated into brand-name products, such as Hewlett-Packard ('HP'), Dell Corporation ('Dell'), and Viewsonic Corporation ('Viewsonic')*." (D.I. 60, Ex. 24 at 3 (emphasis added); *see also* D.I. 60, Ex. 36 (showing CMO products incorporated in Dell and HP products being sold in the U.S).)  It is well known that these huge U.S. companies have extensive sales networks throughout the U.S. Indeed, CMO acknowledges that its employees and other representatives travel to the U.S. to the meet with these brand name companies. (D.I. 60, Ex. 24 at 12.)  Moreover, CMO established a *direct* supplier relationship with Dell by successfully passing Dell's QSA audit, becoming the

-5-

first Taiwanese company to achieve that status, and "further improving [CMO's] relationship with Dell." (D.I. 60, Ex. 1 at 0036.)  CMO has acknowledged that it has a long term agreement with Dell to provide monitors to the United States.  (D.I. 60, Ex. 24 at 7-8.)  Dell sells "more systems globally than any computer company . . . selling computer systems directly to customers."  (D.I. 60, Ex. 25.)

Through negotiations and sales of its products to original equipment manufacturers ("OEMs"), CMO has intentionally placed its LCD modules into established distribution channels designed to sell CMO's LCD modules in products throughout the United States.  (D.I. 60, Ex. 30 at 95, 270-71, 278.)  Public data establishes that CMO monitor modules are incorporated, for example, into Dell, Hewlett-Packard, Acer, ViewSonic, Proview, Gateway, CMV, and Apple branded LCD monitors.  (Id.; Ex. 36 (showing CMO products incorporated in Hewlett-Packard, Gateway and CMV products being sold in the U.S. over the internet).)  Large OEMs, such as Samsung, Dell, IBM, Hewlett-Packard, NEC-Mitsubishi, and ViewSonic, have well-established distribution and reseller networks in the United States, of which CMO is aware.  (D.I. 60, Ex. 25, 31-35).)  The OEMs market and sell their computer monitors throughout the United States, including Delaware, through internet websites and online retailers and in numerous retail stores throughout the United States, including in Delaware.  (Id.).  These retail stores include, but are not limited to, Best Buy, Circuit City, CompUSA, Office Depot, Staples, RadioShack, OfficeMax, Wal-Mart and Sears, all of which have store locations in Delaware.  (D.I. 60, Ex. 37-45.)

661332-1

According to DisplaySearch data,[3] CMO was one of the top three LCD suppliers to five of the top fifteen OEMs for the second quarter of 2006, with CMO being the number two supplier to LG Electronics and the number one supplier to Techview, Proview, and CMV. (D.I. 60, Ex. 30 at 95, 270-71, 278.) According to published data, Tatung, a company to which CMO likewise supplies LCD modules, ships completed monitors to both Hewlett-Packard and Gateway for sale throughout the United States. (*Id.*) Acer, another company to which CMO supplies LCD modules, is the fourth largest distributor of LCD monitors in the United States, with a 7.1% share of the market. (*Id.* at 95.) In the second quarter of 2006, Acer purchased 25.3% of its completed LCD monitors from Techview, which had in turn purchased 21.7% of its LCD monitor module supply from CMO. (*Id.* at 95, 270, 271, 278.) Acer also purchases completed LCD monitors from CMV, for which CMO is the sole LCD monitor module supplier. (*Id.*)

Similarly, also in the second quarter of 2006, Gateway purchased 55.4% of its completed LCD monitors from Proview, which had in turn purchased 29.6% of its LCD monitor module supply from CMO. (*Id.*) Acer also purchases completed LCD monitors from Tatung, which in turn purchases LCD monitor modules from CMO. (*Id.*) In the same quarter, ViewSonic purchased 53.1% of its completed LCD monitors from Techview, which (as noted above) had purchased 21.7% of its LCD monitor module supply from CMO. (*Id.*)

---

[3] DisplaySearch is a display-related market research firm that is well-known in the industry for providing accurate and reliable market data. (D.I. 60, Ex. 23.) DisplaySearch has extensive industry and market research experience. (*Id.*) According to its website, located at www.displaysearch.com, DisplaySearch analysts have worked at companies such as Apple Computer, Dell Compaq/Hewlett Packard, Booz Allen and Hamilton, Panasonic, Zenith, and CMO. (*Id.*) DisplaySearch analysts are regularly quoted in major media and publications, and its data and analysis is used on a regular basis by investment analysts. (*Id.*)

CMO has had continuous contacts with Delaware through the sale of its products, either directly or through established distribution channels, prior to the filing of LPL's complaint. This information was either known to CMO or should have been discovered by CMO upon reasonable inquiry before CMO filed its motion to dismiss had it undertaken any reasonable inquiry at all.

**B.    CMO Owns, Directly or Indirectly, Multiple Delaware Corporations**

CMO has a long history of ownership of U.S. companies incorporated in Delaware, the purpose of which is to market and sell CMO products in the U.S. First, in 2001, CMO established a company with IBM Japan Ltd. to own and operate IBM's LCD manufacturing plant in Japan. (D.I. 60, Ex. 4.) CMO owned an 85% majority share of this company, known as International Display Technology ("IDTech") until October 2004, when CMO took over 100% ownership of IDTech. (D.I. 60, Ex. 1 at 0030.) IDTech's plant produces displays for notebook computers and expanded CMO's production capacity so that CMO could compete in the large-area high resolution LCD monitor module market. (D.I. 60, Ex. 5 at 385.)

As was reported to the industry, IDTech "positions [CMO] to win more U.S. and Japanese business by leveraging IBM's relationships" and "[t]he IBM sales force has begun selling panels produced by [CMO], resulting in broader distribution for [CMO]." (*Id.*) IDTech USA is a wholly owned subsidiary of IDTech that was incorporated in the state of Delaware. (D.I. 60, Ex. 6.) Although CMO sold IDTech to Sony Corporation in January 2005, CMO kept the IDTech sales location in San Jose, California and changed the name to Chi Mei Optoelectronics USA, Inc. ("CMO USA"). (D.I. 60, Ex. 7 and 8.) CMO USA also is incorporated in Delaware. (D.I. 60, Ex. 10.)

When CMO owned IDTech, CMO's website listed IDTech US (Sales Office) as a contact in the United States for CMO. (D.I. 60, Ex. 1 at 0038 - 0040.) CMO USA has an office in San Jose, California, at IDTech's former offices. CMO's employee Anny Yuan, a salesperson, works

-8-

in the offices of CMO USA in San Jose, California and formerly worked in the offices of IDTech USA as a CMO employee. (D.I. 60, Ex. 9.)

CMO acknowledged in its Motion to Dismiss that it "owns stock in a subsidiary, Chi Mei Optoelectronics USA, Inc., which is a Delaware corporation." (D.I. 20 at 4-5.) However, CMO's statement that it "owns stock" in CMO USA attempts to seriously downplay CMO's ownership interest in CMO USA. Indeed, CMO owns 100% of the shares of CMO Japan, which is nothing more than a holding company for CMO (D.I. 60, Ex. 11 at 60; Ex. 12), and CMO Japan owns 100% of the shares of CMO USA. (D.I. 60, Ex. 12.) Thus, *CMO USA is essentially the wholly owned Delaware subsidiary of CMO*. CMO USA sells electronic equipment and computer monitors, the very products manufactured and sold by CMO. (D.I. 60, Ex. 11 at 66.) Indeed, on CMO's website, *CMO lists CMO USA as its representative in the United States*. (D.I. 60, Ex. 1 at 0034.)

Further, CMO increased its regular and continuous contacts with Delaware by forming a joint venture with Neurok Optics, LLC, a Delaware corporation, to create iZ3D, LLC, ("iZ3D"), a U.S. entity incorporated in the State of Delaware that iZ3D develops and markets electronic entertainment products, including video monitors. (D.I. 60, Ex. 13-14.) In light of CMO's effectual ownership of its Delaware subsidiary, CMO USA, and formation of a Delaware joint venture, iZ3D, it is clear that CMO targets the U.S. market, and in particular, customers within the State of Delaware.

CMO was acutely aware of its dealings with both CMO USA and iZ3D as both entities were mentioned in its motion to dismiss. Rather than fully explain CMO's relationship to these Delaware corporations, CMO instead chose to mislead the Court into believing that CMO "has never purposefully conducted business activities in Delaware." (D.I. 20 at 4; D.I. 21, ¶ 4.)

-9-

C.    **CMO's Other Contacts with the United States in General**

CMO also has other contacts with the United States as a whole, which further underscores its actual knowledge of its jurisdictional contacts. CMO has sought the benefit of the laws of the United States by filing trademark applications with the United States Patent and Trademark Office ("USPTO"), one for the mark "Chi Mei" on March 21, 2002 (claiming first use in commerce on November 18, 1999), and another for the mark "CMO" on November 7, 2002 (claiming use in commerce on July 31, 2002). (D.I. 60, Ex. 17.) These trademarks were granted registration by the USPTO. (*Id.*)

Further, CMO has attended meetings in the United States to establish and ensure compliance with U.S. standards for the manufacture and performance of LCD modules. These meetings are conducted by an industry group known as the Standard Panels Working Group ("SPWG") and are known in the industry as standards meetings.[4] (D.I. 60, Ex. 22.) CMO representatives have attended various standards meetings in the United States as part of this industry working group. In addition to attending these meetings, CMO has endorsed the standards set by the SPWG and *specifically designs its products to meet American specifications*. (*Id.*)

In October 2003, CMO began actively seeking investors in the U.S. and issued a prospectus offering global depositary shares to qualified investors in the United States. (D.I. 60, Ex. 16.) CMO currently identifies JPMorgan Chase Bank as the depositary, *with the designated contact person in Delaware*. (D.I. 60, Ex. 1 at 0015.) In addition, in February 2005, CMO held

---

[4] The standards meetings are attended by manufacturers and suppliers in the industry who intend for their products to be sold in the United States and elsewhere throughout the world.

-10-

its 2004 Fourth Quarter Investor Conference and provided contact information to allow United States investors to participate in the conference by telephone.  (D.I. 60, Ex. 1 at 0037.)

### D.    CMO Consented to Jurisdiction in Other United States District Courts

CMO's denial of jurisdictional contacts is especially egregious because of the position it has taken in various other cases in the United States courts.   Importantly, CMO previously consented to jurisdiction, and engaged in several years of litigation in this Court in the CEA Litigation.   CMO also did not challenge the jurisdiction of the United States District Court for the Southern District of New York in a case recently filed in that district.  (D.I. 60, Ex. 20.) Finally, CMO has sought the benefit of the laws of the United States by recently filing an action against LPL for patent infringement in the Eastern District of Texas.   (D.I. 60, Ex. 18.)

According to the purported logic behind CMO's motion to dismiss, if products are not intentionally directed towards a forum state, there are insufficient grounds for personal jurisdiction in that state.  Considering the number of CMO products that are sold in Delaware, CMO's argument must rest on a contention that none of its products are intended to be sold in any single state, but to the United States as a whole.  It is remarkable then, that CMO vigorously opposes jurisdiction in this Court, but not in New York or Texas, where it has no offices or employees, is not authorized to do business and does not own any subsidiaries incorporated in those jurisdictions.  CMO's previous consent to this Court's jurisdiction in the face of substantial evidence of its sales in Delaware in the CEA Litigation further discredits CMO's motion to dismiss.  It is wholly unreasonable for CMO to disavow any jurisdictional contacts when it has

-11-

affirmatively consented to jurisdiction in other United States courts.[5]

## II.    CMO'S MOTION TO DISMISS COMPLETELY DISREGARDS CMO'S LAST FRIVOLOUS ATTEMPT TO CONTEST THIS COURT'S JURISDICTION IN 2003

Any reasonable inquiry regarding CMO's personal jurisdiction would reveal CMO's history regarding its last futile attempt to contest personal jurisdiction in the case filed by CEA in this Court in 2003.   CMO's motion to dismiss fails to acknowledge the evidence presented in that case regarding its jurisdictional contacts, as well as the Federal Circuit's opinion regarding that evidence.  Most importantly, it ignores the telling fact that CMO consented to jurisdiction in April 2005 in Delaware.  By way of background, CMO filed a motion to dismiss for lack of jurisdiction in the CEA Litigation, which the district court granted without affording CEA the opportunity to take jurisdictional discovery.  *See Commissariat*, 395 F.3d at 1317-18.  CEA then appealed the district court's decision and the Court of Appeals for the Federal Circuit vacated the order of dismissal and remanded the case to allow CEA to take jurisdictional discovery.  *Id.* at 1324.

### A.    The Basis for the District Court's Grant of CMO's Motion to Dismiss in the CEA Litigation was the Lack of Pre-Filing Sales, Which CMO Knows is Not an Issue in This Case

In the CEA Litigation, Judge Jordan found in 2003 that CEA did not "present competent

---

[5] In December 2003, CEA filed an action against CMO in the Northern District of California alleging the same cause of action for patent infringement to ensure that it could bring its claim against CMO for CMO's patent infringement in the United States. *Commissariat à l'Energie Atomique v. Chi Mei Optoelectronics, Corp.*, Case No. 03-05812 SBA, (N.D. Cal.).  CMO did not challenge personal jurisdiction in California either.  (D.I. 60, Ex. 19.)

evidence that the accused products were present in Delaware at the time it filed suit."[6]

*Commissariat à l'Energie Atomique v. Chi Mei Optoelectronics Corp. et al.*, 293 F. Supp. 2d

423, 427 (D. Del. 2003) (internal quotations omitted), *vacated and remanded by* 395 F.3d 1315

(Fed. Cir. 2005).  The Court found that the only evidence regarding CMO products located in

Delaware was a request for "two computer monitors which were never delivered." *Id.*  Because

CEA had purchased the computer monitors *after* the complaint was filed, the Court suggested

that CEA lacked the requisite "competent evidence of *pre-filing* sales by CMO in Delaware." *Id.*

at 428 (emphasis added).

As further evidence that the Court found the lack of pre-filing sales in the CEA Litigation

to be dispositive, Judge Jordan's subsequent opinion just a few months later in the *Philips*

*Electronics* case found jurisdiction based on the same stream of commerce theory advocated by

CEA, yet distinguished the CEA Litigation.  *Philips Elec. N. Am. Corp. v. Contec Corp.*, Civ. A.

No. 02-123-KAJ, 2004 WL 503602 (D. Del. March 11, 2004) (Exhibit A.)  Specifically, Judge

Jordan concluded that in *Philips Electronics*, there was "evidence of actual sales and the

presence of the accused device in Delaware prior and subsequent to the date the complaint was

filed, evidence that was lacking in *Commissariat*."  2004 WL 503602, at *5 n.5.  CMO never

even mentioned this case or these facts in its motion to dismiss.  Because there is substantial

evidence of sales of CMO products in Delaware that occurred well before LPL's Complaint was

filed, as CMO well knows, the concern expressed in *Philips Electronics* has been eliminated.

---

[6] CEA relied principally on the stream of commerce theory in attempting to establish personal
jurisdiction over CMO in Delaware, as CEA had not yet learned of the many direct contacts that CMO
has with Delaware that are outlined herein.

B.    **The Federal Circuit's Opinion Expressly Refutes CMO's Denial of Any Evidence Establishing this Court's Jurisdiction**

In filing its motion to dismiss, CMO clearly ignored the key evidence adopted by the Court of Appeals for the Federal Circuit when it vacated the District Court's order dismissing the CEA Litigation.  First and foremost, the Federal Circuit found sufficient evidence of CMO's sales of LCD products to companies that incorporate them into their products, which are "likely sold in Delaware in substantial quantities." *Commissariat*, 395 F.3d at 1320.  In reaching that conclusion, the Federal Circuit stated:

> Based on the allegations in the complaint, the evidence submitted by CEA, and CMO's failure to rebut the factual inference that devices incorporating its LCDs were sold in Delaware, the district court should have found CEA's showing sufficient to establish that substantial revenues could be derived by CMO from the sales of products in Delaware incorporating CMO's LCDs.

*Id*. at 1320.  The Federal Circuit recognized the following key evidence regarding the exercise of jurisdiction over CMO in Delaware as of May 2003:

- CMO sells over $1 billion of its products worldwide, including in the United States; that CMO supplies roughly 12% of the LCD market; that CMO is the number one supplier of 19" LCD monitors; and that North America accounts for approximately 30% of all computer monitor purchases.

- CMO shipped approximately 2,950,000 LCD modules in the first five months of 2003.

- CMO utilized an established distribution network for LCD products, with published industry data on actual and forecasted sales that document the flow of displays from LCD suppliers such as CMO, through to OEMs, and on to name-brand computer manufacturers.

- Orders for devices incorporating CMO products were placed in Delaware prior to the date CEA filed its complaint and the existence of post-filing sales of such devices in Delaware.

- CEA alleged in its complaint that CMO derived "substantial revenue from services or things used or consumed within [Delaware]."

*Id*. at 1317. The Federal Circuit further recognized that, "[c]ontrary to the district court's holding, the evidence already presented by plaintiff is sufficient to demonstrate that CMO sells a very large volume of LCDs to companies which incorporate these displays into their final product and that these products are likely sold in Delaware in substantial quantities." *Id*. at 1320. "Indeed, CEA has gone beyond factual allegations, and has already made a prima facie case for CMO's use of an established distribution network that likely results in substantial sales of its products in Delaware." *Id*. at 1323.

Moreover, the Federal Circuit determined that "CMO did not submit any evidence to contradict CEA's allegation that CMO derived substantial revenue from sales of its products to Delaware. Nor did CMO submit evidence to contradict CEA's assertion that its products, as incorporated by [original equipment manufacturers] into computer monitors, were likely to reach Delaware" *Id*. at 1317-18. The Federal Circuit also was not convinced by CMO's argument that it "had not transacted business itself, nor performed any type of work in Delaware, and that it had no operations in Delaware, no employees who work or reside in Delaware, held no license to do business in Delaware, and did not own, lease, use or otherwise possess any property in Delaware." *Id*. at 1317. CMO, however, makes these very same arguments in its motion to dismiss. (D.I. 20 at 4-7.) Although those arguments were not successful in the CEA Litigation, CMO is vexatiously pursuing them again in this Court.

C.    **Jurisdictional Discovery Obtained in the CEA Litigation Clearly Establishes this Court's Jurisdiction, and CMO Ignored this Discovery When it Filed its Motion to Dismiss**

CMO's complete disregard in its motion to dismiss of the evidence obtained during its litigation with CEA suggests that CMO is trying to hide the true facts from this Court. Indeed,

-15-

CMO has affirmatively denied the existence of any evidence sufficient to subject CMO to this Court's jurisdiction. CEA and CMO engaged in months of jurisdictional discovery, including written discovery between the parties and from numerous third parties located in the U.S. These third parties included several U.S. retailers to whom CMO sells LCD products, which produced evidence of *actual* sales of CMO products to purchasers in Delaware.[7] Two retailers, Office Depot and CDW sold over 900 CMO products in Delaware, which expressly refutes CMO's allegation in its motion to dismiss that it does not do business in Delaware.[8] (D.I. 60, Ex. 2 and 3.) These sales documents were expressly requested by CEA in a subpoena to Office Depot and CDW, of which CMO was well aware. CMO's failure to acknowledge the tremendous evidence obtained in jurisdictional discovery in the CEA Litigation, let alone the extensive Delaware sales by Office Depot and CDW, constitutes a fraud on this Court. CMO either failed to review the documents produced in the CEA Litigation before filing its motion or it decidedly ignored them. Regardless, CMO has deceived this Court by arguing that it does not conduct business in Delaware and stating that LPL "cannot[] allege any contacts between CMO and Delaware." (D.I. 20 at 7.)

---

[7] A review of the docket in the CEA Litigation reveals that during the period of jurisdictional discovery alone, CEA issued 25 subpoenas on the following third parties: ViewSonic Corporation, JP Morgan Chase & Company, Westinghouse Digital Electronics, LLC, Dell Corporation, Fujitsu Microelectronics America, Inc., Hitachi America, LTD, Samsung Electronics America, Inc., Lite-On Technology USA, Inc., Sony Electronics, Inc., BenQ America Corporation, International Display Tech USA, Best Buy.com LLC, Best Buy Co., Inc., Office Depot, Inc., Avnet Applied Computing, Avnet, Inc., CompUSA, Inc., Amazon.com, Inc., CDW Corporation, Fry's Electronics, Inc., Widgets, Inc., Cyberian Outpost, Inc., Syntax Groups Corporation and Sampo Technology, Inc.

[8] These documents were produced in response to jurisdictional discovery served in *Commissariat à L'Energie Atomique v. Chi Mei Optoelectronics Corp. et al.*, Case No., 03-484 (D. Del.) (filed May 19, 2003). Because the referenced documents were not marked as confidential subject to the protective order in that case at the time of their production, no confidential information is disclosed herein.

Finally, CMO refuses to allow LPL to use the jurisdictional discovery produced in the CEA Litigation that was marked confidential or highly sensitive confidential under the protective order entered in that case, even though counsel for LPL agreed to afford the same protections to those documents in this case as was required under the protective order in the CEA Litigation. LPL attempted to obtain CMO's consent to modify the protective order in the CEA Litigation; CMO refused.[9]  On April 17, 2007, LPL filed a motion to modify the protective order to permit LPL to use the jurisdictional discovery to oppose CMO's motion to dismiss in the instant case. Instead, CMO objected to LPL's motion for modification arguing, *inter alia*, that permitting LPL to be subject to the protective order would provide LPL access to CMO's confidential and proprietary business information and that CMO would not be spared the burden of searching for and producing documents relating to jurisdictional discovery.  In its response, however, CMO did not deny that the information it produced in the CEA Litigation establishes jurisdiction in this Court.

Not only has CMO completely ignored the jurisdictional evidence exchanged in the CEA Litigation, but it has also affirmatively prevented LPL from using it in this action to contradict CMO's denial that any evidence exists sufficient to establish this Court's jurisdiction.

### D.    CMO Eventually Withdrew All Objections with Respect to Personal Jurisdiction

Most significantly, CMO ignores its previous consent to this Court's jurisdiction in the CEA Litigation.  In April 2005, on the day before CEA was to take the deposition of Anny Yuan, a CMO sales person working in the United States, CMO withdrew all objections contesting this

---

[9] CMO's current counsel, Potter Anderson & Corroon LLP and Jones Day, did not represent CMO in the CEA Litigation, however, these firms represented CMO with respect to LPL's motion to modify the protective order in that case.

-17-

Court's jurisdiction. (Ex. 1 to Declaration of Gaspare J. Bono, Esq. ("Bono Decl.").)[10] The sudden consent to this Court's jurisdiction came nearly two years after CMO had filed its motion to dismiss CEA's complaint, and after months of jurisdictional discovery had been conducted, but not completed. If there was, in fact, a complete dearth of evidence of CMO's products being sold in Delaware, it is unlikely that CMO would have consented to this Court's jurisdiction. CMO's motion to dismiss is patently misleading because it does not inform the Court about this irrefutable fact and it fails to disclose the jurisdictional discovery produced against CMO in the CEA Litigation.

## III.    LPL AFFORDED CMO MULTIPLE OPPORTUNITIES TO WITHDRAW ITS MOTION

Before filing this motion, LPL made several attempts to convince CMO to withdraw its frivolous motion. First, on May 10, 2007, LPL requested that CMO withdraw its motion and enter into a stipulation regarding jurisdiction, just as CMO had done three years earlier in the CEA Litigation. LPL summarized the history of the CEA Litigation and the substantial evidence regarding CMO's jurisdictional contacts. (Ex. 2.) In addition to citing the Federal Circuit's opinion, LPL outlined the categories of evidence further establishing personal jurisdiction against CMO, separate and apart from the jurisdictional discovery that is subject to a protective order in the CEA Litigation, as follows:

(1)    evidence of actual sales of CMO products in Delaware from documents produced by third parties in the CEA Litigation that were not subject to any protective order in the CEA Litigation;

(2)    evidence of revenues earned by CMO from the sale of its products in Delaware, a fact supported by the appellate court's decision, which concluded that CMO's Delaware revenues could be substantial based on the allegations in the complaint, the pre-discovery evidence submitted by CEA, and CMO's failure to rebut the

---

[10]    All remaining numbered exhibits referenced herein are attached to the Bono Decl.

factual inference that devices incorporating its LCD's were sold in Delaware, and also supported by CMO's own annual reports and financial statements, showing large revenues from the U.S. as a whole;

(3)     evidence of CMO's acknowledgement that the exercise of jurisdiction by this Court would be proper, including the fact that CMO consented to jurisdiction in Delaware in the CEA Litigation and did not challenge jurisdiction in the California case;

(4)     evidence of CMO's reliance on the benefits and protections of the laws of the United States, including its recent filing of a patent infringement lawsuit against LPL in Texas; and

(5)     other further evidence of CMO's contacts with Delaware found in the public record and based on LPL's own investigation.

(Ex. 2 at 2-3.)  Because of the overwhelming evidence regarding CMO's various contacts with this jurisdiction, LPL informed CMO that it would seek reimbursement for the fees and expenses incurred in connection with CMO's meritless motion to dismiss.

CMO's May 14, 2007 response does not dispute the factual evidence regarding CMO's jurisdictional contacts.  (Ex. 3.)  Rather, CMO simply responds that "LPL is not entitled to a finding of personal jurisdiction in Delaware in December 2006 merely because CMO agreed with another company to settle a jurisdictional controversy predicated on facts in 2003."  (Ex. 3 at 1.)  This statement accentuates CMO's refusal to acknowledge evidence of its business dealings in Delaware.  CMO's letter further states: "Your letter lists five categories of purported facts that you contend 'further establish' jurisdiction.  If this catalog of proofs were so strong, it would seem unnecessary for you to take [jurisdictional] discovery.  Indeed, LPL could itself expedite the proceedings by filing all of these proofs on May 22 when LPL's response is due."[11]

---

[11]  LPL has done just that -- because the evidence conclusively establishes jurisdiction over CMO in Delaware, LPL filed its substantive opposition on May 22.

(*Id.* at 2.)  CMO simply dismisses LPL's May 10 letter as "lawyer argument without factual support – too slender a reed to induce CMO to withdraw its motion." (*Id.*)

CMO's response misrepresents LPL's request for jurisdictional discovery.  Indeed, LPL's intention to seek jurisdictional discovery is solely as an alternative form of relief.  LPL believes that jurisdictional discovery from CMO will even *further* establish CMO's substantial and ongoing contacts with the United States and Delaware, including its intimate knowledge of the distribution channel through which its products are directly shipped into this State.  *See, e.g., Commissariat*, 395 F.3d at 1323 (finding that CEA went beyond the mere factual allegations of contacts by CMO, as required for jurisdictional discovery, and "has already made a prima facie case for CMO's use of an established distribution network that likely results in substantial sales of its products in Delaware").  LPL's alternative request for jurisdictional discovery is by no means a tacit admission that additional evidence is necessary to refute CMO's motion to dismiss. CMO's focus on that request is most likely to obscure its obvious failure to review evidence detrimental to its motion to dismiss.

LPL sent a second letter to CMO including additional facts in another attempt to convince CMO to acknowledge evidence of its jurisdictional contacts.  In its May 16, 2007 letter, LPL stated that, contrary to CMO's attempt to downplay its relationship with CMO USA in its motion to dismiss, CMO is in essence the sole shareholder of the Delaware corporation.  (Ex. 4 at 1-2.)  LPL's letter also discussed CMO's joint venture with iZ3D, LLC, another Delaware corporation.  (*Id.* at 2.)  LPL again notified CMO that it would seek reimbursement of costs and fees incurred with respect to CMO's vexatious conduct in pursuing its motion to dismiss.  (*Id.*)

Having received no response to its May 16 letter, LPL was forced to file its opposition to CMO's motion to dismiss and related declarations.  In its opposition (D.I. 57), LPL discussed, in

detail, the substantial evidence of CMO's jurisdictional contacts with the State of Delaware. On May 24, 2007, LPL again wrote to CMO asking it to withdraw its motion now that it has reviewed the indisputable evidence in LPL's opposition brief that establishes personal jurisdiction over CMO in Delaware. (Ex. 5.) LPL further advised that if the motion was not withdrawn, this motion for sanctions would be served.

LPL's attempts to allow CMO to withdraw its motion to dismiss have been futile. CMO and its counsel continue to pursue both legal and factual arguments that are directly contradicted by overwhelming evidence.

# LEGAL STANDARD

## I.    Rule 11 Sanctions

Rule 11 of the Federal Rules of Civil Procedure provides, in pertinent part:

> **(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> **(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed. R. Civ. P. 11 (1993). The main objective of Rule 11 is to deter baseless filings and curb abuses. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

"The standard for testing conduct under amended Rule 11 is reasonableness under the circumstances . . . . Thus, subjective bad faith is no longer a predicate to a Rule 11 violation; the test is now an objective one of reasonableness." *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir. 1985), *overruled on other grounds by Comuso v. Nat'l*

*R.R. Passenger Corp.*, 267 F.3d 331 (3d Cir. 2001). The Rule imposes "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 498 U.S. 533, 551 (1991), *superseded by statute in part by 1993 amendment to Rule 11*. "An inquiry is considered reasonable under the circumstances if it provides the party with an objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact." *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 493 (D. Del. 1998) (internal quotations omitted.)

Sanctions are "intended to maintain the integrity of the system of federal practice or procedure." *Estate of N. J. Calloway v. Marvel Entm't Group*, 9 F.3d 237, 241 (2d Cir. 1993) (internal quotations omitted.) "Possible sanctions include requiring the offending client, lawyer, or both, to pay all or part of the adversary's counsel fees incurred as a result of the violation. This sanction combines the concepts of deterrence and reimbursement for the wronged party." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987). "Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees." Fed. R. Civ. P. 11(c)(1)(A). "The Advisory Committee notes that willfulness is relevant in selecting a sanction." *Gaiardo*, 835 F.2d at 482. In addition, "Rule 11 sanctions do not shift the entire cost of litigation; they shift only the cost of a discrete event." *Estate of N. J. Calloway*, 9 F.3d at 241 (internal quotations omitted.)

Finally, as the Third Circuit has noted, "if either party's bad faith is determinative of whether attorney's fees should be awarded [under Rule 11], then the parties should be given an opportunity to present appropriate submissions on that issue." *Eavenson*, 775 F.2d at 540-41 (internal quotations omitted.)

-23-

II.    **Sanctions Under 28 U.S.C. § 1927**

Section 28 of the United States Code provides:

> Any attorney or other person admitted to conduct cases in any court
> of the United States or any Territory thereof who so multiplies the
> proceedings in any case unreasonably and vexatiously may be
> required by the court to satisfy personally the excess costs,
> expenses, and attorneys' fees reasonably incurred because of such
> conduct.

28 U.S.C. § 1927 (1980). "[T]he principal purpose of imposing sanctions under 28 U.S.C.

§ 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *In re

Prudential Ins. Co.*, 278 F.3d 175, 188 (3d Cir. 2002) (internal quotations omitted). This section

requires a finding that the attorney: (1) multiplied the proceedings; (2) in an unreasonable and

vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) did so in bad faith

or by intentional misconduct. *Id.* at 188. A finding of willful bad faith on the part of the

offending attorney is required to impose sanctions pursuant to this statute. *Id.* Indications of bad

faith include: findings that the claims advanced were without merit, that counsel knew or should

have known this, and that there was an improper motive for the filing. *Id.*

## ARGUMENT

IV.    **CMO'S MOTION TO DISMISS HAS NO BASIS IN EITHER FACT OR LAW**

A.    **CMO's Motion to Dismiss is Directly Contradicted by Overwhelming
Evidence**

CMO's motion to dismiss is not supported by the relevant facts and is, in fact, expressly

refuted by overwhelming evidence. The Federal Circuit's opinion predicted as much when it

concluded that "[b]ased on the allegations in the complaint, the evidence submitted by CEA, and

CMO's failure to rebut the factual inference that devices incorporating its LCDs were sold in

Delaware, the district court should have found CEA's showing sufficient to establish that

substantial revenues could be derived by CMO from the sales of products in Delaware

-24-

incorporating CMO's LCDs." *Commissariat*, 395 F.3d at 1320.  Further, and perhaps most tellingly, the Federal Circuit determined that "CMO did not submit any evidence to contradict CEA's allegation that CMO derived substantial revenue from sales of its products to Delaware. Nor did CMO submit evidence to contradict CEA's assertion that its products, as incorporated by OEMs into computer monitors, were likely to reach Delaware." *Id*. at 1317-18.  When considering the facts summarized in the Federal Circuit's opinion, CMO cannot claim that it has no contacts in Delaware to warrant the exercise of this Court's jurisdiction.

In addition to the Federal Circuit's opinion, there is a plethora of additional information establishing CMO's regular and consistent contacts with the State of Delaware.  That evidence includes:

- Evidence of at least six CMO products purchased by consumers in Delaware.

- Evidence of over 900 CMO products sold by Office Depot and CDW in their Delaware stores between 2002 and 2005.

- Evidence that numerous CMO products are offered for sale in Delaware via www.ebay.com, and other websites.

- Evidence that CMO formerly owned IDTech USA, a Delaware Corporation, that CMO held out as its representative in the United States and sold and distributed CMO products in Delaware.

- Evidence that CMO acknowledges that its modules are incorporated into brand-name products, such as Hewlett-Packard, Dell Corporation, and ViewSonic Corporation. CMO also admits to attending repeated meetings in the U.S. with these companies, which have extensive distribution networks throughout the United States, including Delaware.

- Evidence that CMO has a long term agreement with Dell to provide monitors into the United States.

- Evidence that CMO owns CMO USA, a Delaware Corporation that CMO holds out as its representative in the United States.

- Evidence that CMO entered into a joint venture with Neurok Optics, LLC, a Delaware corporation, to create iZ3D, LLC, also a Delaware corporation, to develop and market electronic products, including video monitors.

-25-

- Evidence that CMO issued a prospectus offering its global depositary shares to qualified investors in the United States and identifying JPMorgan Chase Bank as the depositary, with the contact person located in Delaware.

Documents tracking the sale of CMO products by CDW and Office Depot in Delaware, were produced in the CEA Litigation, thus CMO had actual knowledge that its products were being sold in this jurisdiction. Accordingly, CMO has perpetrated a fraud on this Court by repeatedly denying in its motion to dismiss that it did not "do business" in Delaware.

CMO also was thoroughly aware of its close relationship with two Delaware corporations. CMO USA is, in effect, a wholly owned subsidiary of CMO. CMO, however, attempted to diminish that relationship in its motion to dismiss by simply stating that "CMO owns stock in a subsidiary, Chi Mei Optoelectronics USA, Inc., which is a Delaware corporation with its principal place of business in California." (D.I. 20 at 4-5.) Despite LPL's May 16 letter reminding CMO of its corporate relationship with CMO USA, its designated United States representative, CMO continues to pursue its motion to dismiss and continues to mislead this Court about CMO's ownership in CMO USA.

## B.    The Defenses Contained in CMO's Motion to Dismiss are Not Warranted by Existing Law

CMO's arguments in its motion to dismiss disregard the controlling legal precedent regarding the established distribution channel theory of jurisdiction. In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), the Federal Circuit firmly recognized this theory, which has been repeatedly followed in this Circuit. *See Commissariat*, 395 F.3d at 1317; *Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349 (D. Del. 1999); *In Re: Elonex Phase II Power Management Litigation*, C.A. Nos. 01-082 GMS through 01-104 GMS, 2003 WL 21026758 (D. Del. May 6, 2003) (Exhibit B). CMO's motion further ignores that the Federal Circuit already found that CMO derived substantial revenues in Delaware from the sales of products in

-26-

Delaware incorporating CMO's LCDs. *Commissariat*, 395 F.3d at 1320. CMO also fails to distinguish the *Motorola* and *Elonex* cases, despite the fact that they are governing precedent directly on point.

In *Motorola*, the court held that a party is subject to jurisdiction when it places products in an established distribution channel with the intent that they end up in the U.S. *Motorola*, 58 F. Supp. 2d at 357 ("AltoCom has acted in consort with its licensees or customers to place products containing its softmodems into a nationwide distribution network. As a result, many of its products have found their way to Delaware – their *intended* destination. Consequently, AltoCom cannot now complain that it should not be sued here.") (emphasis in original.)

CMO knows and intends for its products to be sold in the U.S. First, CMO acknowledges that its "modules are incorporated into brand-name products, such as Hewlett-Packard ('HP'), Dell Corporation ('Dell'), and Viewsonic Corporation ('Viewsonic')." (D.I. 60, Ex. 24 at 3, *see also* D.I. 60, Ex. 36 (showing CMO products incorporated in Dell and HP products being sold in the U.S.).) Second, CMO acknowledges that it has a long term agreement with Dell to provide monitors to the United States. (D.I. 60, Ex. 24 at 7-8.) Dell sells "more systems globally than any computer company . . . selling computer systems directly to customers." (D.I. 60, Ex. 25.)

CMO also sells its products directly to OEMs, including but not limited to Techview, Proview, and CMV, which companies in turn sell the products to ViewSonic, Lenovo, and Gateway, among others, for subsequent resale in the United States. (D.I. 60, Ex. 30 at 95, 270-271, 278.) These local sales are made through established retailers such as Best Buy, CompUSA, Circuit City, and Staples, all of which have store locations in Delaware. (D.I. 60, Ex. 37-45.) As such, CMO uses an established distribution channel to sell its products in the stream of commerce.

Finally, CMO's motion disregards the precedent set forth in *Philips Electronics*, 2004 WL 503602, the facts of which are remarkably similar to the facts here. In *Philips Electronics*, the Court found that the exercise of jurisdiction over a foreign defendant was proper based on the same stream of commerce theory advocated by CEA, yet distinguished the CEA Litigation. *Id.* at *4-5. Specifically, Judge Jordan concluded that in *Philips Electronics*, there was "evidence of actual sales and the presence of the accused device in Delaware prior and subsequent to the date the complaint was filed, evidence that was lacking in *Commissariat*." *Id.* at *5 n.5. As CMO is well aware, jurisdictional discovery in the CEA Litigation revealed that Office Depot and CDW sold over 900 CMO products in Delaware prior to the date LPL filed this action. Thus, like in *Philips Electronics*, pre-filing sales have been confirmed. Given these undisputed facts, CMO's motion to dismiss does not have any legal basis and was not brought in good faith.

## V.    A REASONABLE INQUIRY WOULD HAVE SHOWN THAT CMO'S MOTION TO DISMISS IS BASELESS

It is apparent that CMO failed to make a reasonable inquiry into its jurisdictional contacts before filing its motion to dismiss. First, CMO generally denies any and all evidence sufficient to support this Court's jurisdiction. Second, CMO makes overly broad statements that are either misleading or false. CMO's arguments in its motion to dismiss are not supported by the evidence, as a reasonable inquiry would have shown.

CMO states that "LPL does not, *and cannot*, allege *any* contacts between CMO and Delaware or acts by CMO in Delaware that would be sufficient to subject CMO to personal jurisdiction in the state." (D.I. 20 at 7.) (emphasis added.) This statement single-handedly demonstrates that CMO failed to make any inquiry at all into its contacts with Delaware. Given that substantial evidence exists demonstrating that CMO's LCD modules were incorporated into products sold in Delaware -- both directly and through established distribution channels -- and

-28-

that CMO has close ties with multiple Delaware corporations that target the United States market, including Delaware, CMO's statement is false and shows that CMO has not reviewed its own business dealings.

The following denials made in CMO's motion to dismiss further evidence its failure to reasonably inquire as to its jurisdictional ties to Delaware:

- "CMO has not conducted business in the state of Delaware." (D.I. 20 at 2.)

- "[CMO] does not do business in Delaware." (*Id.* at 9.)

- "CMO does not make, use, offer to sell, or sell any products in Delaware." (*Id.* at 10.)

These statements are expressly refuted by the evidence, which was easily obtained from non-confidential documents produced in the CEA Litigation, as well as from public records, the majority of which were found on the Internet. Indeed, although CMO states that it does not conduct or "do business in Delaware" and it does not "offer to sell, or sell any products in Delaware," CMO cannot refute that it (1) does or has done business with numerous Delaware companies including its own subsidiaries; (2) its products are sold throughout Delaware; and (3) it derives substantial revenue from the sale of its products in Delaware. (*Id.* at 9-10.)

Further, the following statements are contained in both CMO's motion and in the Declaration of CMO's Deputy Head Director of LCD TV Business Division, Li-Yi Chen:

- "CMO has *never* sold components for liquid crystal displays to consumers or retailers, including consumers or retailers in Delaware." (*Id.* at 5) (emphasis added; *see also* D.I. 21, ¶ 6.)

- "CMO has *never* designed, manufactured, packaged, marketed, advertised, sold, or distributed any products, services, or raw materials in Delaware or to consumers in Delaware." (D.I. 20 at 5) (emphasis added; *see also* D.I. 21, ¶ 6.)

- "CMO has *never* had any officers, employees, sales representatives, distributors, brokers, agents, *or other representatives* in Delaware." (D.I. 20 at 12) (emphasis added; *see also* D.I. 21, ¶ 4.)

-29-

661332-1

CMO's motion and Mr. Chen's Declaration contain artfully worded language regarding CMO's *purposefully* conducted activities in Delaware, but disregard the overwhelming evidence of CMO's *actual* contacts with this jurisdiction.  For example, CMO states in its motion and in Mr. Chen's Declaration:

- "CMO has never *purposefully* conducted activities in Delaware."  (D.I. 20 at 4) (emphasis added; *see also* D.I. 21, ¶ 4.)

- "The company has never *caused, instructed, or directed* any third party to design, manufacture, package, market, advertise, sell or distribute any products, services, or raw materials in Delaware or to consumers in Delaware."  (D.I. 20 at 5) (emphasis added; *see also* D.I. 21, ¶ 6.)

- "It has not *caused, instructed, or directed* any third party to maintain inventory in Delaware, ship inventory to Delaware, or receive raw materials or supplies from Delaware."  (D.I. 20 at 6) (emphasis added; *see also* D.I. 21, ¶ 7.)

These are just a few examples of the many artfully crafted statements that are designed to avoid the appearance of actually conducting business in Delaware.  As the controlling law holds, however, such narrowly tailored intentions do not protect CMO from this Court's jurisdiction.  Indeed, neither Delaware's long-arm statute, nor the caselaw demand that a defendant is subject to personal jurisdiction solely if the contacts with the jurisdiction are *purposeful*, as CMO infers.  *See* Del. Code Ann. tit. 10, § 3104 (1995); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114-15 (1987), *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Beverly Hills Fan*, 21 F.3d 1558; *Philips Electronics*, 2004 WL 503602; *In Re: Elonex Phase II Power Management*, 2003 WL 21026758; *Motorola*, 58 F. Supp. 2d 349.

Further, sanctions are warranted against CMO and its counsel for making such misleading representations to this Court.  In *National Computer Ltd. v. Tower Industries, Inc.*, 708 F.Supp. 281 (N.D. Cal. 1989), the court granted sanctions against defendants and its counsel for failing to do their homework – *i.e.*, by not conducting a reasonable inquiry – and filing a

-30-

661332-1

"frivolous" motion to dismiss for lack of venue "based in part on a false statement to the Court that '[n]o dealings between plaintiff and defendants were had within the Northern District.'" *Nat'l Computer*, 708 F.Supp. at 285 (citations omitted.)    Such a general denial of all jurisdictional contacts was similarly made in both CMO's motion and in Mr. Chen's Declaration.

Moreover, in *Kraemer Export Corp. v. Peg Perego U.S.A., Inc.*, No. 93 Civ. 0198, 1994 WL 86357 (S.D.N.Y. 1994) (Exhibit C), the district court ordered both the party and its attorney to pay attorneys' fees and costs to the plaintiff because of the "fail[ure] to perform a 'reasonable inquiry' into the law before filing its motion to dismiss" and because of "misrepresentations of law and fact by defendant and its counsel, hav[ing] delayed adjudication of plaintiff's claim for no reason." *Kraemer*, 1994 WL 86357, at *8.  Similarly, both CMO and its counsel are subject to sanctions for making statements and other representations to this Court that have no foundation in fact.  Indeed, "Rule 11 sanctions are mandatory when an attorney fails to make reasonable efforts to ensure that the pleading he signs is grounded in fact." *Sergio Estrada Rivera Auto Corp. v. Kim*, 717 F.Supp. 969, 976 (D. P.R. 1989) (internal quotations omitted.)

CMO's statements are grossly misleading, if not completely false.  Any reasonable inquiry would have revealed the overwhelming evidence of CMO's jurisdictional contacts. Because it is evident that CMO did not make any such inquiry before filing its motion to dismiss, the Chen Declaration should be stricken, and sanctions should be imposed against both CMO and its attorneys.

## VI.    CMO'S MOTION TO DISMISS WAS BROUGHT FOR AN IMPROPER PURPOSE

CMO's refusal to consent to the protective order in the CEA Litigation so that LPL could present the information obtained through jurisdictional discovery in opposition to CMO's motion to dismiss demonstrates CMO's intent to delay the proceedings and increase LPL's litigation

costs.  Despite LPL's commitment to maintain the confidentiality of the information subject to the protective order in the CEA Litigation, CMO has refused to allow LPL to use that information.  There can be no other reason for CMO's refusal than to hide this damaging information from the Court.  Accordingly, CMO's motion to dismiss is nothing more than an attempt to improperly delay these proceedings and needlessly increase the litigation costs.  More importantly, it demonstrates CMO's intention to hide from the Court all evidence of its jurisdictional contacts.

## VII.    SANCTIONS SHOULD BE IMPOSED AGAINST CMO AND ITS COUNSEL

Both CMO and its counsel should be sanctioned for their statements and arguments made in the motion to dismiss and the Declaration of Li-Yi Chen.   The factual statements, representations and legal arguments contained in both the motion and declaration are misleading, if not altogether false.  These Rule 11 violations are made more egregious by the fact that CMO and its counsel continued to pursue the motion to dismiss even after LPL notified them of the evidence directly contradicting the statements made in their filings.  Because the motion to dismiss is simply not reasonable given the jurisdictional evidence and controlling law, sanctions should be imposed.  *See Loving*, 11 F. Supp. 2d at 494 (awarding sanctions because, had the attorney "conducted a reasonable inquiry into the applicable law and facts, he would have concluded that the [pleading] was not well-grounded in law and fact") (internal quotations omitted.)  Indeed, the Advisory Committee Notes "emphasize the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable."  Fed. R. Civ. P. 11, *Advisory Committee Notes*.  As the court noted in *Sergio Estrada*, 717 F.Supp. at 975, "[d]eceptions, misrepresentations, or falsities can only frustrate [the court's goal to find the truth] and will not be tolerated within our judicial system." (internal quotations omitted.)

-32-

It is evident that sanctions are warranted against CMO and its counsel. In *Mercury Service, Inc. v. Allied Bank of Texas*, 117 F.R.D. 147, 158 (C.D. Cal. 1987),[12] the court awarded sanctions against the defendant and its counsel for filing a Declaration containing "misleading if not outrightly false statements." The defendant's Declaration made fairly narrow statements that, taken "in their context imply that the bank has no contacts with California whatsoever. This is misleading." *Id.* at 158. Likewise, Mr. Chen's statements are made to imply that CMO conducts no business whatsoever in Delaware. Given the evidence of CMO's contacts with Delaware, such an implication is false. The court also recognized that such sanctions were warranted to "deter similar conduct that demonstrates disrespect for the dignity and authority of the courts." *Id.* at 159.

In addition to the identical statements contained in the motion and Mr. Chen's Declaration, CMO's counsel took its arguments one step further and went beyond what Mr. Chen stated in his Declaration. For example, CMO's motion states: "CMO has not conducted business in the state of Delaware," (D.I. 20 at 2.); "[CMO] does not do business in Delaware," (*Id.* at 9.); and "CMO does not make, use, offer to sell, or sell any products in Delaware." (*Id.* at 10.) These overly broad denials reflect that "counsel took the liberty, without evidentiary support, . . . a liberty we find that attorneys, conducting litigation 'to the best of [their] knowledge,' cannot take." *Sergio Estrada*, 717 F.Supp. at 974. Similarly, CMO's counsel inappropriately extrapolated a broader statement than was supported by Mr. Chen's Declaration and was, in fact

---

[12] Although the Ninth Circuit in *Triad Systems Corp. v. Southeastern Exp. Co.*, 64 F.3d 1330 (9th Cir. 1995), held that an attorney may not be sanctioned for a declaration that he did not sign, it did not consider whether attorneys could be sanctioned for signing a pleading that relied on an offending declaration. Indeed, Rule 11 provides that sanctions may still be awarded against a party for an offending filing. Fed. R. Civ. P. 11 (c). The Ninth Circuit's opinion does not preclude sanctioning an attorney for relying on a misleading declaration in a pleading signed by that attorney.

661332-1

expressly refuted by overwhelming evidence that both counsel and CMO should have known after making a reasonable inquiry.

Finally, an attorney is not precluded "from being jointly and severally liable for papers signed by a party where the attorney has signed similar or supporting papers and the resultant abuse of judicial processes must be attributed to the offending papers as a whole." *Estate of N. J. Calloway*, 9 F.3d at 239. CMO's motion reiterates the statements made in Mr. Chen's Declaration. The motion directly corresponds to the factual representations, and misrepresentations, made by CMO's Deputy Head Director of LCD TV Business Division. As such, counsel's motion and CMO's Declaration are necessarily intertwined and sanctions should be awarded against *both* for the falsities and misrepresentations made to this Court.

Simply put, it was not objectively reasonable for CMO to file and pursue a motion to dismiss for lack of personal jurisdiction. Neither the legal nor factual arguments made by CMO are well grounded and much of what is contained in CMO's motion and Mr. Chen's Declaration is either false or misleading. No reasonable inquiry was made prior to filing the motion and, in fact, both CMO and its counsel have exhibited a willful intent to prevent LPL from presenting evidence of CMO's jurisdictional contacts to this Court. Accordingly, sanctions should be imposed against both CMO and its attorneys to deter against filing frivolous motions in the future and to compensate LPL for the expenses incurred in opposing such a baseless motion.

## VIII. SANCTIONS SHOULD BE IMPOSED AGAINST CMO'S COUNSEL PURSUANT TO 28 U.S.C. § 1927

### A. Counsel Multiplied the Proceedings By Filing a Frivolous Motion to Dismiss

It is undisputed that CMO's products are sold both directly and through established distribution channels to customers in Delaware. CMO has relationships with large U.S. companies such as Dell, Hewlett-Packard, and Apple, which incorporate CMO's LCD modules

-34-

into its name brand monitors and distribute it through popular retail stores throughout the United States. Had counsel made a reasonable inquiry before filing a motion denying that CMO does business in Delaware, it would have reviewed the documents proving that over 900 modules were sold in Delaware prior to the filing of this action by LPL. The evidence of CMO's jurisdictional contacts is both undisputed and readily obtained in public records. Counsel's motion, therefore, is frivolous.

**B.    CMO's Motion to Dismiss was Unreasonable and Vexatiously Pursued**

Despite the overwhelming evidence regarding CMO's jurisdictional contacts with Delaware, which LPL repeatedly explained in its correspondence to CMO's counsel, counsel adamantly refused to withdraw its motion to dismiss. Counsel is well aware of CMO's consent to this Court's jurisdiction in the CEA Litigation, as well as its consent to the jurisdiction of the United States District Courts in New York and Texas. Counsel's motion, therefore, is unreasonable and counsel's failure to acknowledge the evidence of CMO's Delaware contacts demonstrates the vexatious way in which the motion has been pursued.

**C.    Counsel's Pursuit of CMO's Motion to Dismiss Needlessly Increased the Cost of the Proceedings**

CMO's counsel has unnecessarily multiplied the proceedings in this case by its failure to acknowledge the existence of *any* jurisdictional contacts, which is expressly contradicted by overwhelming evidence. Counsel's lack of candor with the Court regarding CMO's continuous and repeated contacts with Delaware has misled this Court and forced LPL to incur the expense of opposing a motion lacking both factual and legal support. Further, Counsel's refusal to permit LPL to use the jurisdictional discovery obtained in the CEA Litigation demonstrates counsel's intention to prevent this Court from reviewing relevant information.

-35-

**D.**    **Counsel's Pursuit of CMO's Motion to Dismiss was in Bad Faith**

Counsel's bad faith is evidenced by its refusal to permit LPL to use the discovery exchanged in the CEA Litigation to oppose CMO's motion.  Further, CMO's motion to dismiss makes general statements that go well beyond the factual information contained in Mr. Chen's Declaration.  Statements denying that CMO has ever done business in Delaware are gross overgeneralizations of what Mr. Chen states in his Declaration and, more importantly, are false. Further, counsel knew of the relationship of CMO USA to CMO, but chose to be coy in the motion to dismiss to give the Court a false impression of its relationship to its Delaware subsidiary.  (D.I. 20 at 4-5.)

**E.**    **Sanctions are Appropriate Against CMO's Counsel**

Counsel's motion to dismiss satisfies all the elements under 28 U.S.C. § 1927, thus sanctions should be imposed.  The motion to dismiss contains multiple misleading and false representations regarding CMO's contacts with this jurisdiction.  In addition, CMO's consent to this Court's jurisdiction in the CEA Litigation necessarily calls into question counsel's good faith in bringing a motion to dismiss before this Court.  Despite LPL's repeated attempts to encourage CMO to acknowledge the evidence of CMO's contacts with Delaware and withdraw its motion, CMO summarily dismissed LPL's attempts as "lawyer argument without factual support – too slender a reed to induce CMO to withdraw its motion." (Ex. 3 at 2.)  The principal purpose of imposing sanctions under this section "is the deterrence of intentional and unnecessary delay in the proceedings." *In re Prudential Ins. Co.*, 278 F.3d at 188 (internal quotations omitted.)  Counsel's motion is not reasonable, not founded in fact or law, and has been pursued in bad faith.  Thus, counsel should be ordered to pay LPL's attorneys' fees and costs in opposing its baseless motion.

661332-1

## CONCLUSION

For the foregoing reasons, LPL respectfully requests that the Court impose sanctions against CMO and its counsel pursuant to Rule 11 or against CMO's counsel pursuant to 28 U.S.C. § 1927.

THE BAYARD FIRM

/s/ *Richard D. Kirk* (rk0922)
Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardfirm.com

Attorneys for Plaintiff LG.Philips LCD Co., Ltd.

OF COUNSEL:

Gaspare J. Bono
Song K. Jung
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500

661332-1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on June 19, 2007, she served the foregoing documents by email and by hand upon the following counsel:

Edmond D. Johnson
Thomas H. Kovach
Pepper Hamilton LLP
1313 Market Street, Suite 5100
PO Box 1709
Wilmington, DE  19899-1709

Karen L. Pascale
John W. Shaw
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Philip A. Rovner
Dave E. Moore
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE  19899-0951

William E. Manning
Jennifer M. Becnel-Guzzo
Buchanan Ingersoll & Rooney
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE  19801

The undersigned counsel further certifies that, on June 19, 2007, she served the foregoing documents by email and by U.S. Mail upon the following counsel:

John N. Zarian
Samia McCall
Matthew D. Thayne
J. Walter Sinclair
Stoel Rives LLP
101 S. Capitol Blvd., Suite 1900
Boise, ID  83702

Vincent K. Yip
Peter J. Wied
Jay C. Chiu
Paul, Hastings, Janofsky & Walker LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190

Bryan J. Sinclair
Karineh Khachatourian
Buchanan Ingersoll & Rooney
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA  94065-1418

/s/ Ashley B. Stitzer, (as3891)
Ashley B. Stitzer