# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21026758 (D.Del.)
(Cite as: 2003 WL 21026758 (D.Del.))

Page 1

▷
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
In re: ELONEX PHASE II POWER
MANAGEMENT LITIGATION
Nos. 01-082 GMS, 01-083 GMS, 01-084 GMS, 01-
085 GMS, 01-086 GMS, 01-087 GMS,
01-088 GMS, 01-089 GMS, 01-104 GMS.

May 6, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On February 13, 2001, the plaintiffs, Elonex I.P.
Holdings, Ltd. and EIP Licensing, B.V. (collectively
"Elonex"), filed this action against certain companies
that manufacture and sell computer systems or
computer monitors. [FN1] The complaint alleges
infringement of U.S. Patent Numbers 5,389,952 ("the
'952 patent"), 5,648,799 ("the '799 patent"), and
5,649,719 ("the '719 patent"). The lawsuit relates to
technology that concerns power management in
computer monitors.

> FN1. In December 1998, Elonex I.P.
> Holdings Ltd. and Elonex plc filed a related
> lawsuit against another group of defendants
> on substantially the same grounds ("Elonex
> Phase I litigation").

On May 21, 2001, Elonex requested entry of default
against the defendant Jean Co., Ltd. ("Jean"). The
Clerk of the Court entered default against Jean on
June 18, 2001. On January 31, 2003, Elonex then
moved for entry of default judgment against Jean. On
February 20, 2002, counsel entered an appearance on
behalf of Jean.

Presently before the court is Jean's motion to dismiss
for lack of personal jurisdiction. For the following
reasons, the court will deny this motion.

II. BACKGROUND

Jean is an international monitor and electronics
manufacturer, with its principle place of business in
Taipei, Taiwan. In 2001, Jean had more than $316
million in worldwide sales.

From March 1995 until April 1996, Elonex alleges
that Jean shipped 404,855 monitors to the United
States. Since 1998, ViewSonic Corporation and
eMachines, Inc.--two United States monitor
companies with nationwide re-seller networks-- have
been among Jean's biggest customers. According to
Jean's 1999 Annual Report, ViewSonic alone
accounted for 22.91% of Jean's worldwide monitor
sales in 1998. In 1999, ViewSonic purchased 30.4%
of Jean's total 1999 monitor sales. In 2001,
ViewSonic purchased 39.7% of Jean's total monitor
sales. Likewise, in 1999, eMachines purchased
12.94% of Jean's worldwide monitor sales.

Additionally, both ViewSonic and eMachines have
well-established retail distribution networks.
ViewSonic monitors are available from retailers such
as Best Buy, Office Depot, and CompUSA. Likewise,
eMachines monitors are sold in Delaware at Best
Buy, Office Depot, and Circuit City. Both ViewSonic
and eMachines also sell monitors directly to
consumers via their own internet websites. Thus, the
Jean monitors sold to ViewSonic and eMachines are
resold in Delaware and throughout the United States.

Furthermore, Delaware purchasers of Jean monitors
can download monitor software and obtain customer
service via Jean's website. Visitors to the website can
also download drivers for Jean monitors and obtain
technical support via e-mail. Finally, Jean's website
lists an "East Coast" service facility located in New
Jersey.

III. DISCUSSION

A. Due Process

The Due Process Clause requires that, in order to
subject a defendant who is "not present within the
territory of the forum" to personal jurisdiction, the
court must first make sure that the party "ha[s] certain
minimum contacts with [the forum] state such that
the maintenance of the suit does not offend
'traditional notions of fair play and substantial
justice." *International Shoe* 326 U.S. at 316 (quoting
*Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). In

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21026758 (D.Del.)
(Cite as: 2003 WL 21026758 (D.Del.))

order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In other words, the defendant's contacts must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed.Cir.1994).

*2 In *Beverly Hills Fan*, the Federal Circuit addressed the question of whether Ultec, a People's Republic of China corporation with a manufacturing facility in Taiwan, was subject to personal jurisdiction in Virginia. 21 F.3d at 1560. Ultec claimed that it was not subject to personal jurisdiction in Virginia because it did not have any Virginia assets, employees, or a license to do business in that state. *Id.* Acknowledging that Ultec's sole contact with the forum resulted from indirect shipments through the stream of commerce, the Federal Circuit held that Ultec "purposefully shipped the accused fans into Virginia through an established distribution channel The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction." *Id* at 1560, 1564-65.

The court's decision in *Motorola Inc. v. PC-Tel, Inc.* is likewise instructive in resolving the present issue. 58 F.Supp.2d 349 (D.Del.1999). In that case, the court described the accused infringer's sales activities as follows:

Allocom does not (and, it seems, cannot) contest the fact that its softmodems are integrated into a variety of consumer electronic products which are manufactured by well-known multi-national corporations like Compaq, Phillips, Samsung, Sharp, Song, and the like. These goods are then put into the world-wide distribution networks which place them for sale in equally well-known retail stores such as Caldor, Circuit City, CompUSA, Office-Max, Sears, Service Merchandise, and others--all of which have outlets in Delaware.

58 F.Supp.2d at 352. Relying on *Beverly Hills Fan*, the court rejected AlloCom's arguments and held that

exercising personal jurisdiction comported with due process. See *id.* at 355-56.

In the present case, as in *Beverly Hills Fan*, Jean's president states in his declaration that Jean makes no direct sales to the United States. He further states that Jean has no United States offices or subsidiaries. However, the court concludes that Jean has, for many years, been the first link in precisely the kind of indirect distribution chain that the Federal Circuit found sufficient to establish personal jurisdiction. Specifically, Jean sells it monitors to ViewSonic and eMachines, who in turn distribute Jean's monitors to retailers with Delaware operations. Given ViewSonic's and eMachines' extensive re-reseller networks in Delaware and on the Internet, Jean cannot credibly claim it had no inkling that some of its monitors would make their way into Delaware via well-established distribution channels.

Jean further maintains an interactive website through which customers in Delaware, and elsewhere, can download driver software, as well as obtain customer support. On its website, it also lists "Global Service Centers," including an "East Coast" service facility in New Jersey. These facts further support the court's conclusion that Jean's undeniably substantial and regular monitor sales into ViewSonic's and eMachines' national distribution networks constitute "purposeful minimum contacts" with Delaware.

*3 Notwithstanding the existence of Jean's purposeful minimum contacts with this forum, the court must consider whether the "minimum requirements inherent in the concept of 'fair play and substantial justice ...' defeat the reasonableness of [the assertion of] jurisdiction, even [if] the defendant has purposefully engaged in forum activities." *Asahi Metal Indust. Co. v. Superior Court*, 480 U.S. 102, 116 (1987). This question will only be answered affirmatively if the state's and the plaintiff's interest in having the dispute adjudicated in the forum are so minimal as to be outweighed by the burden imposed by subjecting the defendants to litigation within the forum. See *Beverly Hills Fan*, 21 F.3d at 1568.

In the present case, Delaware clearly has a substantial interest in discouraging injuries in the state, including patent infringement injury. It has also been the sole forum for the Elonex Power Management Litigation for several years. Finally, and as the *Beverly Hills Fan* court noted, "progress in communications and transportation" have made "the defense of a lawsuit in a foreign tribunal less burdensome." 21 F.3d at 1569 (internal quotation and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21026758 (D.Del.)
(Cite as: 2003 WL 21026758 (D.Del.))

citation omitted). Thus, the court concludes that any burden on Jean "is not sufficiently compelling to outweigh" Elonex's and Delaware's interests. *Id.*

**B. Delaware's Long-Arm Statute**

The second step in the court's analysis into the propriety of subjecting Jean to personal jurisdiction in this forum is the determination of whether any of the provisions of Delaware's long-arm statute apply. *See* Del.Code. Ann. tit. 10 § 3104. While Jean contends that it does not fall within the grasp of any of Section 3104's provisions, Elonex contends that at least two of the provisions apply here. For purposes of this order, the court need only discuss one.

Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who causes injury either inside or outside of this State "by an act or omission outside of the State" if that individual "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State." Del.Code. Ann. tit. 10, § 3104(c) (2001). [FN2] The court will interpret this language broadly, as reaching the "maximum parameters of the due process clause." *See Jeffreys v. Exl, n.* 784 F.Supp. 146, 151 (D.Del.1992).

> FN2. This subsection provides general jurisdiction over the nonresident defendant. *See Mendelson v. Delaware River and Bay Auth.,* 56 F.Supp.2d 436, 439 (D.Del.1999). Accordingly, it is immaterial whether the jurisdictional contact is related to the claim. *See id.*

As discussed above in Section III A, Jean has intentionally sold monitors using nationwide distribution channels. This knowing and purposeful shipment of monitors satisfies the act requirement of Section 3104(c)(4). *See Beverly Hills Fan,* 21 F.3d at 1571. Because Jean undeniably derives substantial revenue from these activities, it is subject to jurisdiction under Delaware's long-arm statute. *See* Chang Decl. at ¶ ¶ 3-7 (discussing Jean's revenue from sales to ViewSonic and eMachines).

**C Venue**

*4 Jean finally asserts that, pursuant to 28 U.S.C. § 1391(c), venue is improper in this district. Jean's argument is meritless, however, because "[t]he venue issue is subsumed in the personal jurisdiction issue. Venue lies ipso facto if ... the district court has

personal jurisdiction over [the defendant]." *North American Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576, 1577 n. 1 (Fed.Cir.1994); *see also* 28 U.S.C. § 1391(b)(1) & (c) (stating that venue is proper in a judicial district where the defendant corporation is subject to personal jurisdiction at the time the action is commenced). As the court has already found that the exercise of personal jurisdiction is proper and complies with both due process and the Delaware long-arm statute, venue in this district is also proper.

**IV. CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Jean's Motion to Dismiss (D.I.856) is DENIED.

Not Reported in F.Supp.2d, 2003 WL 21026758 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.                                                                                    Page 1
Not Reported in F.Supp., 1994 WL 86357 (S.D.N.Y.)
(Cite as: 1994 WL 86357 (S.D.N.Y.))

C
Only the Westlaw citation is currently available.


United States District Court, S.D. New York.
KRAEMER EXPORT CORPORATION, Plaintiff,
v.
PEG PEREGO U.S.A., INC., Defendant.
No. 93 Civ. 0198 (PKL).

March 17, 1994.
Olonoff Asen & Olonoff, New York City, Michael
Ira Asen, Daniel W. Mitnik, of counsel, for plaintiff.

Gallucci, Hopkins & Thiesen, P.C. Fort Wayne, IN,
John C. Thiesen, Gary L. Calhoun, of counsel, for
defendant.

OPINION AND ORDER

LEISURE, District Judge.

*1 This is a diversity action in which plaintiff seeks
to recover for an alleged breach of contract.
Defendant moves the Court for an order, pursuant to
Fed.R.Civ.P. 12(b)(2) and (3), dismissing the action
for lack of personal jurisdiction and improper venue.
In the alternative, defendant requests that the Court
transfer the action to the United States District Court
for the Northern District of Indiana pursuant to 28
U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). In
response, plaintiff cross-moves for leave to amend its
complaint pursuant to Fed.R.Civ.P. 15, and for an
order imposing sanctions against defendant pursuant
to Fed.R.Civ.P. 11. For the reasons stated below, the
Court (1) denies defendant's motion in its entirety;
(2) grants plaintiff leave to amend its complaint; and
(3) grants plaintiff's request for sanctions against
defendant.

BACKGROUND
This breach of contract action is brought by Kraemer
Export Corporation ("Kraemer Export"), a New
York corporation, against Peg Perego U.S.A., Inc.
("Peg Perego"), an Indiana corporation which
markets toys and other childrens' products both
nationally and abroad. On February 19, 1992, the
parties entered an exclusive sales contract under
which Kraemer Export was to serve as Peg Perego's
exclusive sales agent in Mexico, Central America, the
Caribbean, and South America (excluding Argentina,

Chili, Uruguay, and Brazil) during 1992. See
Complaint at ¶ 6. Defendant allegedly breached this
contract by giving Distribuidora De Juguetes, S.A.
("Distribuidora") the exclusive right to sell
defendant's products in Venezuela and other parts of
South America. See id. at ¶¶ 10-11. In October
1992, defendant allegedly sold and delivered four
million dollars of products to Distribuidora. See id.
at ¶ 15.

The contract between Kraemer Export and Peg
Perego was primarily negotiated at defendant's
showroom in the "Toy Building," 200 Fifth Avenue,
Room 1048, New York, NY. See Affidavit of
Richard Seldon, sworn to July 26, 1993, ("Seldon
Affidavit") at ¶¶ 7-8. Detailed discussions took
place between defendant's Sales Manager, Ken
Maxwell, and plaintiff's employee, Bob Erquiola.
Plaintiff's President, Richard Seldon, also attended
part of the negotiations. See id. at ¶ 7. The
negotiations occurred during an annual two-week toy
show held in the Toy Building. Defendant attended
the toy show each year in order to solicit business
from a national pool of potential customers. See
Telephonic Deposition of Dale E. Schipper, sworn to
July 6, 1993, ("Schipper Deposition") at 15-16, 36.
To this end, defendant had displays of its new and
existing product lines available for plaintiff to view
as they discussed their potential business relationship.
See Seldon Affidavit at ¶¶ 4-5. Eventually, the
parties agreed to the terms of the contract, and each
signed it in its respective state of incorporation.

I. Defendant's Motions To Dismiss or To Transfer
the Action

A. Personal Jurisdiction

*2 The Court first addresses defendant's motion to
dismiss for lack of personal jurisdiction. Personal
jurisdiction is determined by the law of the forum in
which the court sits. See Wilhelmshaven Acquisition
Corp. v. Asher, 810 F.Supp. 108, 111 (S.D.N.Y.1993)
(citing Arrowsmith v. UPI, 320 F.2d 219, 223 (2d
Cir.1963) (en banc)). The burden of establishing
jurisdiction over a defendant is on the plaintiff, who,
prior to an evidentiary hearing, need make only a
prima facie showing that jurisdiction exists. See A.I.
Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79
(2d Cir.1993). The Court will construe all pleadings
and affidavits in the light most favorable to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 86357 (S.D.N.Y.)
**(Cite as: 1994 WL 86357 (S.D.N.Y.))**

Page 2

plaintiff, and will resolve any doubts in the plaintiff's favor. *See id.* at 79, 80 (citing *Cutco Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986); *Hoffritz for Cutlery, Inc. v. Amjac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985)).

The Court will find a defendant amenable to personal jurisdiction if both state statutory and federal constitutional standards are met. New York long-arm jurisdiction under N.Y.Civ.Prac.L. & R. § 302(a) exists where a defendant: "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; ... or (4) owns, uses or possesses any real property situated within the state."

While both of the above subsections apply to the instant case, § 302(a)(4) provides the clearest basis for the Court's exercise of personal jurisdiction over defendant. By its own officer's admission, Peg Perego maintains a showroom in its own name in the Toy Building in New York. Dale Schipper, Vice-President and General Manager of Peg Perego, signed a nine and one-half year lease, which commenced October 1, 1989 and includes an option to renew. *See* Schipper Deposition at 13; Seldon Affidavit at Exhibit E (lease agreement); Seldon Affidavit at Exhibit F (office photographs). Also, by its own officer's admission, defendant maintains the aforementioned showroom "year round." Schipper Deposition at 13. Defendant uses the property in the following ways: it actively solicits business during the annual toy show, as it did in negotiating the contract with Kraemer Export; stores office furniture and merchandise displays; maintains a phoneline; and provides its independent sales agents who cover the New York area access to the facilities. *See* Schipper Deposition at 13-14, 16, 18. Defendant's attempt to distinguish this property from an "office" in New York by calling it a "showroom" is disingenuous and meritless. Based on defendant's use of this property in New York, this Court finds jurisdiction to be present pursuant to § 302(a)(4).

The Court also finds defendant amenable to personal jurisdiction under § 302(a)(1), the "transacts business" subsection. In order for jurisdiction to be invoked under this prong of the long-arm statute, a nondomicilary must "purposefully avail[ ] [himself] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws," *Cutco Industries, Inc.,* 806 F.2d at 365, and the claim at stake must "arise out of that business activity." *Id.* (citing *McGowan v. Smith,* 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323 (1981)). Upon a

thorough review of the record, the Court concludes that defendant "transacts business" in the forum state in several ways: (1) defendant purposefully and regularly sends officers and support staff to the New York toy show to solicit business from potential customers, as it did from Kraemer Export; (2) defendant secured prime real estate for this business purpose; (3) defendant affirmatively extends access to its facilities to its New Jersey-based sales agents to facilitate sales activities in New York; and (4) defendant regularly supplies merchandise to customers in the State (including Kraemer Export) through direct shipments as well as indirect sales to other companies with the knowledge that the products will be resold in New York. *See* Seldon Affidavit at Exhibit G; [FN1] Schipper Deposition at 9, 22-23. Defendant argues that because it has neither a license to do business in New York nor employees or agents located in New York, it does not "transact business" in the State. The Court finds this argument to be an overly formalistic and incorrect reading of the statute, in light of the " 'totality of the defendant's activities within the forum.' " *Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975) (holding relevant inquiry under § 302(a)(1) to be totality of defendant's acts, not merely sufficiency of single act).

*3 Defendant also satisfies the second requirement of § 302(a)(1), because its business activities in the State gave rise to plaintiff's breach of contract action. Construing the pleadings and affidavits in the light most favorable to plaintiff, the Court finds that the parties' contract negotiations at the New York showroom, where defendant also had its merchandise on display, " 'substantially advance[d]' ... [the] formation of a business agreement." *Milgrim Thomajan & Lee P.C. v. Nycal Corp.,* 775 F.Supp. 117, 120 (S.D.N.Y.1991) (holding that such negotiations "constitute a legally sufficient basis for jurisdiction under § 302(a)(1)"). Moreover, performance of the contract required defendant to ship its merchandise to Kraemer Export in New York. *Cf. Pearson v. Richardson Printing Corp.,* 1992 WL 96332 (S.D.N.Y.1992) (Leisure, J.) (finding personal jurisdiction met under § 302(a)(1) where contract required delivery of goods to New York). Accordingly, this Court finds that defendant's activities in New York gave rise to plaintiff's cause of action, as required under § 302(a)(1).

Defendant contends that the alleged breach of contract did not arise out of its activities in New York, but rather out of its dealings with Distribuidora in Venezuela. However, New York law does not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                           Page 3
Not Reported in F.Supp., 1994 WL 86357 (S.D.N.Y.)
**(Cite as: 1994 WL 86357 (S.D.N.Y.))**

require that the acts constituting the breach occur in the State; rather, the cause of action must only be "sufficiently related to" the business transacted in the State. *See Hoffritz for Cutlery, Inc.,* 763 F.2d at 59. If the rule were as defendant conceives it, then foreign corporations that negotiate and secure contracts in New York would routinely avoid being subject to personal jurisdiction in the State. *See id.* In sum, the Court finds defendant amenable to suit in New York under both § § 302(a)(1) and (4). [FN2]

The exercise of New York State's long-arm jurisdiction in this case comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Defendant clearly satisfies the "minimum contacts" test. Defendant affirmatively solicits business in New York through its officers' visits as well as its commissioned sales agents' activities, possesses and uses real property in the State for business purposes, purposefully ships products directly to New York customers and to others whom it knows will resell to New York customers, and secured the contract at issue in New York. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985); *International Shoe Co.,* 326 U.S. at 316; *cf. Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 112 (1987). Given that defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Burger King Corp.,* 471 U.S. at 474, the assertion of personal jurisdiction is consistent with constitutional criteria for due process.

*B. Venue and Transfer of Venue Pursuant to 28 U.S.C. § 1406(a)*

*4 Defendant also moves the Court to dismiss this action because of improper venue pursuant to Fed.R.Civ.P. 12(b)(3). Section 1391 provides that venue is proper if an action is filed in a district where: (1) any of the defendants reside, if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) the defendants are subject to personal jurisdiction at the time the action is commenced. *See 28 U.S.C. § 1391.*

In the instant case, venue is established under § § 1391(2) and (3). *See* Exhibit H, Amended Complaint at ¶ 3. Based on a review of the record, a "substantial part of the events ... giving rise to the claim," 28 U.S.C. § 1391(2), occurred in New York. Specifically, defendant's officer met with plaintiff at

Peg Perego's New York office to negotiate the exclusivity agreement. *See Seven Seas Merger Corp. v. Robert Ford,* 1994 WL 9778 (S.D.N.Y. Jan. 11, 1994) at *5, *6. Venue is also proper under § 1391(3), since, as stated above, defendant is clearly subject to personal jurisdiction in New York. The Court therefore denies defendant's request for a discretionary transfer based on improper venue pursuant to 28 U.S.C. § 1406(a).

*C. Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)*

Defendant alternatively seeks a discretionary transfer to the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Transfer motions "lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)). The burden of demonstrating the desirability of transfer lies with the moving party. *See Filmline (Cross-Country) Productions v. United Artists Corp.,* 865 F.2d 513, 521 (2d Cir.1989). Accordingly, defendant "must make a clear-cut showing that transfer is in the best interests of the litigation." *Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314, 1321 (S.D.N.Y.1989). [FN3] Factors for the Court's consideration include the convenience of witnesses; the location of relevant documents and the relative ease of access to sources of proof; the convenience of the parties; the locus of the operative facts; the availability of process to compel attendance of unwilling witnesses; the relative means of the parties; a forum's familiarity with the governing law; the weight accorded the plaintiff's choice of forum; and trial efficiency and the interest of justice, based on the totality of the circumstances. *See Frasca v. Yaw,* 787 F.Supp 327, 330-31 (E.D.N.Y.1992); *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.,* 745 F.Supp. 993, 996 (S.D.N.Y.1990).

*5 The most significant factor for a court contemplating transfer is the convenience of party and non-party witnesses. *See Robomatix Int'l, Inc. v. Aluminum Co. of America,* 1993 WL 183776, *1 (S.D.N.Y.1993). Defendant contends that New York

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 4
Not Reported in F.Supp., 1994 WL 86357 (S.D.N.Y.)
(Cite as: 1994 WL 86357 (S.D.N.Y.))

is an inconvenient forum for its Indiana-based witnesses, who include three Peg Perego officers and Jim Hindle, an accountant who worked for defendant. The Court accepts that the officers may provide material testimony regarding the contract negotiation process, the terms of the agreement, and the alleged failure of plaintiff to pay for some merchandise. *See* Affidavit of Dale Schipper, sworn to March 24, 1993, ("Schipper Affidavit") at ¶ 8. However, the Court does not perceive the need for Hindle, who appears not to be subject to process in New York, to testify regarding defendant's alleged sales activities in Venezuela. *See id.* at ¶ 9. Defendant fails to show why, in the absence of Hindle, its officers cannot adequately testify regarding this issue. Moreover, the interests of defendant's witnesses must be balanced against the convenience of New York to plaintiff's witnesses. Kraemer Export's President and its employee who primarily negotiated the contract are located in New York. This factor weighs significantly in favor of maintaining the action in New York. Thus, on balance, defendant has not shown that the convenience of witnesses compels a transfer to Indiana. *See Bastille Properties, Inc. v. Hometels of Amer., Inc.,* 476 F.Supp. 175, 182 (S.D.N.Y.1979) (action should remain in plaintiff's forum where interests of witnesses equally balance each other).

Defendant also argues that the Court should transfer this case to Indiana because it stores "voluminous" relevant records at its principal place of business. *See* Schipper Affidavit at ¶ ¶ 11-12. However, the Court does not view shipment of the material documents to be a burden, given defendant's practice of transporting officers, support staff, merchandise, and other necessary materials to its New York office to solicit business. Defendant has not demonstrated that the benefits of transferring this action outweigh the effort and expense of doing so. *See Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1061 n. 15 (S.D.N.Y.1987) ("It will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit." (quoting *Calavo Growers v. Belgium,* 632 F.2d 963, 969 (2d Cir.1980) (Newman, J. concurring))).

The Court must weigh the defendant's arguments against the substantial deference to a plaintiff's choice of forum. "[U]nless the balance of factors weighs strongly in favor of the defendant, the plaintiff's choice of forum should remain undisturbed." *Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314, 1321-22 (S.D.N.Y.1989). Defendant has not persuaded the Court that a balance of factors

clearly warrants disturbing plaintiff's choice to bring suit in its home forum. Accordingly, the Court denies defendant's motion to transfer venue pursuant to § 1404(a).

II. Plaintiff's Cross-Motion to Amend Complaint

Fed.R.Civ.P. 15(a) provides in relevant part:
A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.
*6 The United States Supreme Court has emphasized that leave to amend should be denied only under limited circumstances:
If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith, or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."
*Foman v. Davis,* 371 U.S. 178, 182 (1962).

The Second Circuit repeatedly has held that a motion to amend should be denied only for a good reason such as " 'undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party.' " *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (quoting *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981)).

Defendant argues that if the Court permits plaintiff to amend its complaint, defendant would be prejudiced by being forced to wait until the close of evidence to bring its 12(b)(2) motion. This argument is unpersuasive. Defendant apparently has misread the amended complaint, which proposes a change related to venue, not personal jurisdiction. Moreover, given that defendant has misrepresented its use of property in New York in its motion currently before the Court, no prejudicial effect could possibly occur from a delay of a 12(b)(2) motion. Furthermore, the proposed amendment correctly states that this Court is a proper venue, and thus it would survive a motion to dismiss. *See, e.g., New York State Ass'n of Career Sch., Inc. v. State Educ. Dep't,* 142 F.R.D. 403 (S.D.N.Y.1992).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 5
Not Reported in F.Supp., 1994 WL 86357 (S.D.N.Y.)
(Cite as: 1994 WL 86357 (S.D.N.Y.))

Accordingly, the Court grants plaintiff leave to amend its complaint.

III. Sanctions Pursuant to Fed.R.Civ.P. 11

 The Court next turns to plaintiff's motion for sanctions pursuant to Fed.R.Civ.P. 11. The Supreme Court has noted that "the central purpose of Rule 11 is to deter baseless filings in District Court and thus ... streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990); see also Pagamucci v. City of New York, 993 F.2d 310 (2d Cir.), cert. denied, 114 S.Ct. 90 (1993) (quoting McMahon v. Shearson/American Express, Inc., 896 F.2d 17, 21 (2d Cir.1990)* (goal of Rule 11 is to "discourag[e] dilatory and abusive litigation tactics and eliminat[e] frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process.").

 The key element in Rule 11 is the certification requirement. "Rule 11 sanctions must be based on the signature of an attorney or client on a pleading, motion, or other paper in a lawsuit." *United States v. International Brotherhood of Teamsters, 948 F.2d 1338, 1344 (2d Cir.1991)* (citing *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533, 542 (1991)*). Assuming this is satisfied, a court must apply an objective standard of reasonableness to determine whether the signer(s) "crossed the line between zealous advocacy and plain pettifoggery," *id. at 1344,* thereby violating Rule 11.

 *7 In the instant case, a preliminary question for the Court is whether to apply the version of Rule 11 in effect when the parties filed their motions, or the amended version, effective December 1, 1993. The amended Rule is "applicable to all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." Fed.R.Civ.P. 11 (as amended December 1, 1993). A court's determination of which version to apply may be significant, because under the amended Rule, the imposition of sanctions is discretionary rather than mandatory. Also, the standard for assessing a party's argument for an extension, modification, or reversal of existing law is now "nonfrivolous," rather than "good faith," argument. *See Knipe v. Skinner, 1994 WL 67144 *6 (2d Cir. March 3, 1994)* (Winter, J.).

 In this case which was pending when the new Rule took effect, the Court finds it just and appropriate to apply the version in effect at the time the motions

were filed. Both plaintiff's cross-motion and defendant's response were submitted prior to the effective date of the Rule's amendment. Thus, counsel were familiar with the language and standards of the unamended Rule, and tailored their arguments before the Court accordingly. Moreover, to "charge [a party] with knowledge of a rule not in effect at the time of filing ... would not advance Rule 11's central goal of deterring baseless filings." *Id.* at *7. The Court therefore evaluates plaintiff's cross-motion under the unamended Rule, consistent with the purposes of Rule 11 and just and fair treatment of the parties. The unamended Rule 11 states that:

 [e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the ... paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, or good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose....

Fed.R.Civ.P. 11. Plaintiff claims that defendant violated the Rule by misrepresenting to plaintiff and to the Court that Peg Perego did not have an office in New York. It states that given defendant's office and significant business transactions in the State, defendant's motion to dismiss for lack of personal jurisdiction is frivolous.

 The essential inquiry in the instant case is whether defendant filed its motion to dismiss for lack of personal jurisdiction only after its counsel had made a "reasonable inquiry" into the relevant facts and law. [FN4] Upon close review of defendant's motion papers and affidavits, the Court finds the actions of defendant's counsel to be objectively unreasonable and deserving of sanctions.

 Three factors weigh heavily in the Court's determination that Rule 11 sanctions are warranted. First, defendant and its counsel misrepresent to the Court that Peg Perego does not have an office in New York. Counsel assert that Peg Perego neither owns nor maintains property in New York, *see* Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 3-4, and cite the affidavit of Peg Perego's Vice-President and General Manager, Dale Schipper, for support. *See* Schipper Affidavit at ¶ 5 ("Defendant does not maintain any offices ... in New York."); Defendant's Memorandum in Support of its Motion to Dismiss at 5. However, in a telephonic deposition supervised

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 6
Not Reported in F.Supp., 1994 WL 86357 (S.D.N.Y.)
(Cite as: 1994 WL 86357 (S.D.N.Y.))

by counsel on May 27, 1993, Mr. Schipper admitted that Peg Perego "maintain[s] [a showroom] year round" at 200 Fifth Avenue, Room 1048, New York, New York. *See* Schipper Deposition at 13. The first clause of the lease explicitly states that defendant will use the property exclusively for business purposes: "1. Lessee shall use and occupy the premises only for offices and wholesale showrooms in the transaction of its business of toys, strollers, related juvenile products, and for no other purpose." *See* Seldon Affidavit at Exhibit E, ¶ 1. The plain language of the lease and the signature by Mr. Schipper document the fact that he knew at the time of his affidavit that Peg Perego used property in New York for business purposes during the relevant transaction with Kraemer Export. Nevertheless, Mr. Schipper denied this fact in his affidavit, *[FN5] see* Schipper Affidavit at ¶ 5, and, familiar with the alleged grounds for the motion to dismiss, *see* Schipper Deposition at 23, allowed counsel to proceed in reliance on his statements. *See Estate of Calloway v. The Marvel Entertainment Group,* 9 F.3d 237, 239 (2d Cir.1993) (affirming joint and several liability under Rule 11 where party's affidavit was incorporated into counsel's memoranda, indicating that violation was a "coordinated effort"). Clearly, Mr. Schipper's certified affidavit was not "well grounded in fact," "to the best of the signer's knowledge, information, and belief." Fed.R.Civ.P. 11.

*8 Moreover, counsel for defendant furthered this misrepresentation before the Court, despite its knowledge that Peg Perego leased property for business purposes in the State. Through supervising the deposition of Mr. Schipper on May 27, 1993, counsel knew about the existence of the lease, the terms specifying the use for business purposes, and the actual ways in which defendant used the property "year round." Nevertheless, counsel certified and filed a Reply defending the motion. In *Levine v. FDIC,* 2 F.3d 476 (2d Cir.1993), which also involved a motion to dismiss for lack of personal jurisdiction, the Second Circuit upheld the imposition of sanctions where counsel similarly "ignored facts revealed through reasonable inquiry, particularly the ... admissions of his own client," and "perpetuated his misconduct" by filing papers "well after his errors were revealed to him." *Id.* at 478. As the *Levine* Court concluded, we similarly find that counsel's "blatant disregard of the fact amply warrant[ ] the imposition of sanctions." *Id.* at 479.

Second, counsel failed to perform a "reasonable inquiry" into the law before filing its motion to

dismiss and its subsequent reply defending the motion. Section 302(a)(4) expressly provides jurisdiction over a defendant who "owns, uses or possesses any real property within the state." Defendant's counsel, without citing precedent, selectively interprets this provision to require that defendant "own" property in New York, *see* Defendant's Memorandum in Support of its Motion to Dismiss at 4, or maintain "an office from which regular business is conducted," *see* Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 4. Even a cursory review of the statute would have informed reasonably competent counsel that such an argument is without merit. In addition, counsel wrongly assert that plaintiff has the burden of establishing personal jurisdiction "by a preponderance of the evidence," in reliance on *Bialek v. Racal-Milgo, Inc.,* 545 F.Supp. 25, 33 (S.D.N.Y.1982). However, it is well-established that prior to an evidentiary hearing, plaintiff need make only a prima facie showing of personal jurisdiction over defendant. *See, e.g., Cutco Industries, Inc.,* 806 F.2d at 365; *Hoffritz for Cutlery, Inc.,* 763 F.2d at 57; *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). [FN6] Given the plain language of the long-arm statute and the clear precedent regarding plaintiff's burden, an objectively reasonable inquiry by a competent attorney would have revealed the frivolous nature of defendant's motion.

Third, defendant's counsel fail to present a good faith argument challenging the law that currently governs the exercise of personal jurisdiction. The absence of such argument, as well as the misrepresentations of law and fact by defendant and its counsel, have delayed adjudication of plaintiff's claim for no reason. Defendant's tactics also have wasted the Court's limited time and resources, resources that are further strained by the presence of ten judicial vacancies in the District in which this Court sits. The Court finds that the imposition of sanctions in this case furthers the deterrent purpose of Rule 11 while it does not "chill an attorney's creative, imaginative or enthusiastic advocacy on his client's behalf." *See McMahon,* 896 F.2d at 22. [FN7]

*9 Based on the foregoing, the Court orders defendant and its counsel to share equally in paying plaintiff's reasonable costs and attorney's fees associated with opposing this baseless motion. Plaintiff shall provide defendant with an accurate accounting of all such expenses incurred in preparation of their papers.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 7
Not Reported in F.Supp., 1994 WL 86357 (S.D.N.Y.)
(Cite as: 1994 WL 86357 (S.D.N.Y.))

CONCLUSION

For the above stated reasons, the Court (1) denies defendant's motion in its entirety; (2) grants plaintiff leave to amend its complaint; and (3) grants plaintiff's request for sanctions against defendant. All parties to this action shall appear before this Court for a pretrial status conference on April 22, 1994 at 10:30 a.m., in Courtroom 312, United States District Court, 40 Centre Street, New York, New York.

SO ORDERED

FN1. Exhibit G indicates that aggregate direct sales to New York were $3.7 million in 1992.

FN2. Because personal jurisdiction is satisfied under § 302, the Court need not decide whether defendant's contacts with the State meet the "doing business" standard of § 301. However, current doctrine appears to support such a finding. Following the pragmatic application of the "solicitation plus" standard delineated in *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043-1044 (2d Cir.1990), the Court would give weight to the existence of defendant's office in New York, its maintenance of a phoneline in the office for business purposes, its solicitation of business in New York at the annual toy show and by means of sales agents, and the duration and volume of its sales activities in the State.

FN3. As a threshold matter, this Court must consider, pursuant to § 1404(a), whether the United States District Court for the Northern District of Indiana is a forum in which the action "might have been brought" originally. Defendant meets this test. *See* 28 U.S.C. § 1391(a).

FN4. As the Supreme Court has stated, "[t]he heart of Rule 11 is sentence [5] [the fifth sentence of the Rule], which explains in detail the message conveyed by the signing of a document. A signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both." *Business Guides,* 498 U.S. at 542.

FN5. Schipper's attempt to circumvent the issue by referring to the leased property as a showroom neither impresses nor persuades the Court.

FN6. Even if the Court were to excuse counsel's erroneous statement of plaintiff's burden in its original motion, counsel clearly knew better by the time it filed its Reply defending the motion. Counsel cite *Milgrim Thomajan & Lee P.C. v. Nycal Corp.,* 775 F.Supp. 117, 119 (S.D.N.Y.1991) at the precise page that the court describes accurately plaintiff's burden prior to an evidentiary hearing. *See* Defendant's Reply to Plaintiff's Motion to Dismiss at 9.

FN7. It should be noted that the Court would have exercised its discretion to impose sanctions in this case if it had determined that the new Rule 11 applied. Defendant and its counsel clearly pursued the motion without "inquiry reasonable under the circumstances," thereby "caus [ing] unnecessary delay [and] needless increase in the cost of litigation." Fed.R.Civ.P. 11 (as amended December 1, 1993).

Not Reported in F.Supp., 1994 WL 86357 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **LG.PHILIPS LCD CO., LTD.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 06-726-JJF** |
| **CHI MEI OPTOELECTRONICS CORPORATION, et al.** | |

**EXHIBITS TO PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR RULE 11 SANCTIONS AND SANCTIONS PURSUANT TO 28 U.S.C. §1927**

June 25, 2007

THE BAYARD FIRM

/s/ Ashley B. Stitzer (as3891)
Richard D. Kirk (#0922)
Ashley B. Stitzer (#3891)
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com

Attorneys for Plaintiff LG. Philips LCD Co., Ltd.

OF COUNSEL:

Gaspare J. Bono
Song K. Jung
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C. 20006
(202) 496-7500

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)
(Cite as: 2004 WL 503602 (D.Del.))

# H

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION and U.S. Philips Corporation,
Plaintiffs,
v.
CONTEC CORPORATION, Compo Micro Tech, Inc.,
Seoby Electronics Co., Inc., Remote
Solution Co., Ltd., F/K/A Hango Electronics Co., Ltd.,
Hango Remote Solution,
Inc., Defendants.
No. Civ.A. 02-123-KAJ.

March 11, 2004.

Richard L. Horwitz, Potter Anderson & Corroon,
LLP, Wilmington, DE, for Plaintiffs.

Patricia Smink Rogowski, Connolly, Bove, Lodge &
Hutz, Jack B. Blumenfeld, Morris, Nichols, Arsht &
Tunnell, Kathleen Jennings-Hostetter, Oberly &
Jennings, Andre G. Bouchard, Bouchard, Margules &
Friedlander, David L. Finger, David L. Finger, Esq.,
Wilmington, DE, for Defendants.

*MEMORANDUM ORDER*

JORDAN, J.

## I. INTRODUCTION

**\*1** This is a patent infringement case. Jurisdiction is
proper under 28 U.S.C. § 1338. Presently before me is
a Motion to Dismiss for Lack of Personal Jurisdiction
(the "Motion") filed by defendant Remote Solution
Co., Ltd. ("Remote Solution") pursuant to Federal
Rule of Civil Procedure 12(b)(2). (Docket Item
["D.I."] 105.) For the following reasons, Remote
Solution's Motion will be denied.

## II. BACKGROUND

Plaintiffs Philips Electronics North America
Corporation and U.S. Philips Corporation
(collectively, "Philips"), both Delaware corporations,
filed an action on February 12, 2002, alleging that
Contec Corporation ("Contec"), also a Delaware

corporation, was infringing U.S. Patent Nos.
4,703,359 [FN1] (the " '359 patent") and 5,872,562
[FN2] (the " '562 patent"), both owned by Philips.
[FN3] The technology disclosed in the '359 and '562
patents is directed to remote control units ("RCUs")
for controlling home appliances from different
manufacturers and categories. *See* '359 patent, col 1,
lns. 15-17; '562 patent, col 1, lns. 13-16 (attached to
D.I. 1 as Exs. A and B). On September 17, 2002,
Philips filed an amended complaint joining Remote
Solution and others as additional defendants in this
action. (D.I.41, 42.) Remote Solution is a Korean
corporation with its principal place of business in
Kimcheon City, Kyongbuk, Korea. (D.I. 41, Ex. A at ¶
6.) Philips alleges that Remote Solution
"manufactures and designs RCUs that infringe the
patents in suit under a manufacturing and purchase
agreement with Contec, and is subject to personal
jurisdiction in [the District of Delaware]." (*Id.* at ¶
12.) One of the types of RCUs accused of
infringement in this case is Remote Solution's model
RT U49C. (*Id.*)

> FN1. The '359 patent, entitled "Universal
> Remote Control Unit With Model
> Identification Capability," names as
> inventors Robin B. Rumbolt, William R.
> McIntyre, and Larry E. Goodson. The '359
> patent issued on October 27, 1987 and was
> assigned to Philips on May 25, 1993. (D.I. 42,
> Ex. A at ¶ 16.)

> FN2. The '562 patent, entitled "Universal
> Remote Control Transmitter With Simplified
> Device Identification," names as inventors
> Donald P. McConnell and William R.
> McIntyre. The '562 patent issued on February
> 16, 1999 and was assigned to Philips on the
> same day. (D.I. 42, Ex. A at ¶ 17.)

> FN3. Defendants Contec Corporation and
> Seoby Electronics Co. are no longer involved
> in this case, having submitted to a Consent
> Judgment on August 28, 2003. (D.I.258.)

Remote Solution filed its Motion on January 24, 2003,
arguing that this court cannot properly exercise
personal jurisdiction over it under Delaware's
long-arm statute, 10 Del. C. § 3104, or consistent with
the requirements of the Due Process Clause. (D.I. 106
at 4, 9.) In support of its Motion, Remote Solution

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)
**(Cite as: 2004 WL 503602 (D.Del.))**

Page 2

submitted the Declaration of its Director, Suk-Kyu Park. (*Id.,* Ex. A.) In his declaration, Mr. Park stated that Remote Solution does not have any offices, facilities, subsidiaries or employees in Delaware; is not registered to do business in Delaware; has not contracted to supply services or things in Delaware; has no sales force in Delaware; has derived no revenues from sales in Delaware; does not own any property, assets or bank accounts in Delaware or maintain any offices in Delaware. (*Id.* ¶ 4, 7-10.) According to Mr. Park, Contec is Remote Solution's only customer for the accused RT U49C RCU. (*Id.* ¶ 5.) Mr. Park further stated that Remote Solution maintains a website to provide information about its products, but Remote Solution does not accept orders through its website. (*Id.* ¶ 12.)

After Remote Solution filed its Motion, the parties conducted jurisdictional and substantive discovery until September 15, 2003. (D.I. 286 at 2.) The following facts are taken from Philips' opposition to Remote Solution's Motion. (D.I.286.) Since Philips' factual allegations are not directly controverted, they are taken as true for purposes of determining jurisdiction in this court. *See Beverly Hills Fan Co. V. Royal Sovereign Corp.,* 21 F.3d 1558, 1563 (Fed.Cir.1994).

**\*2** In 1997, Remote Solution decided to expand its RCU sales by entering the United States consumer market. (*Id.* at 5 (citing deposition testimony of Suk-Kyu Park at D.I. 287, Ex. 1).) To that end, Remote Solution hired David Ahn, a native Korean living in California, as its exclusive sales agent in the United States. (*Id* .) Mr. Ahn established Hango Electronics, Inc., d/b/a Remote Solution ("HEI") in California, for the sole purpose of soliciting customers in the United States on behalf of Remote Solution. (*Id.* (citing deposition testimony of David Ahn at D.I. 287, Ex. 3).) HEI is an independent corporation of which Mr. Ahn is the sole owner and employee. (*Id.*)

In 1999, HEI entered into a Manufacturing and Purchase Agreement with Contec, L.P., a New York limited partnership, wherein Contec L.P. retained HEI to design and manufacture RCUs and sell them to Contec L.P._[FN4] (D.I. 287, Ex. 15 at 1.) HEI also agreed to "defend any suit or proceeding brought against Contec L.P. to the extent that such suit or proceeding is based on a claim that the [RCUs] constitute an infringement of any valid United States ... patent...." (*Id.* at 3.) In 2000, with Mr. Ahn's consent, HEI changed its name to Remote Solution, the name under which Mr. Ahn conducts business in California. (*Id.* at 6.)

FN4. The relationship between Contec L.P. and Contec Corporation was fleshed out at oral argument. At some point in time, Contec L.P., a New York entity, merged with Contec LLC, another New York entity, which then merged with Contec Corporation, a Delaware entity. (D.I. 338 at 67:16-25.)

According to Mr. Ahn, Remote Solution's business plan was to sell as many RCUs as possible. (*Id.*) As a result of his extensive efforts to market the RCUs, Mr. Ahn acquired Contec, TiVo, Inc., Harman Kardon, Inc. and Hy-Tek Manufacturing Co., Inc. as customers for Remote Solution. (*Id.*) Remote Solution does not design its own remote controls, rather, it manufactures them according to its customers' specifications. (*Id.* at 7.) Contec is a Delaware corporation with its principal place of business in New York, and its primary business is to sell refurbished cable set top boxes and RCUs to major cable companies in the United States. (*Id.* at 10.) Contec's customers include Comcast, which provides cable television services to residents of Delaware. (*Id.*) Generally, Remote Solution knows who Contec's customers are because Remote Solution marks the RCUs with those customer's logos. (*Id.;* D.I. 287, Ex. 10.) Remote Solution knew that Comcast was one of Contec's customers, as it sent drawings of the Comcast logo to Contec via email on April 24, 2002. (D.I.287, Ex. 36.)

In 2000, Remote Solution established a subsidiary in the United States, Hango Remote Solution, Inc. ("Hango"). (D.I. 286 at 8.) Remote Solution was a 70% shareholder in Hango and Mr. Ahn owned the remaining 30%. (*Id.*) About half of Hango's revenue came from sales of Remote Solution's RCUs, Hango's primary business was marketing an MP3 player called Personal Jukebox. (*Id.* at 8-9.) Ultimately, however, Hango's business failed, and the company folded in December 2002. (*Id.* at 9.) Thereafter, Remote Solution began litigating this case on Hango's behalf as well as its own, filing an answer to the complaint and a motion to amend the answer to include a crossclaim against Contec for indemnification in the event Hango is found liable for patent infringement. (*Id.* at 9; *see also* D.I. 287, Ex. 2 at 8.)

**\*3** Remote Solution has sold at least 1,969,849 of the accused RCUs in the United States since November 22, 2000. (D.I. 286 at 2 (citing Expert Report of Kerry Ruoff at D.I. 287, Ex. 1).) Based on the records obtained from TiVo, one of Remote Solution's customers, Philips discovered that at least 2,000 infringing RCUs manufactured by Remote Solution

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00726-JJF     Document 89-4     Filed 06/20/2007     Page 5 of 7

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)
**(Cite as: 2004 WL 503602 (D.Del.))**

Page 3

for TiVo have been sold or used in Delaware since
March 31, 1999. (D.I. 286 at 3, 13.) According to
TiVo's records, 1,738 residents of Delaware
subscribed to TiVo's service between March 31, 1999
and May 28, 2003. (*Id.* citing Declaration of Matthew
P. Zinn at D.I. 287, Ex. 39 ¶ 12).) Because TiVo sells
its digital video recorders ("DVRs") bundled with the
RCUs manufactured by Remote Solution, it is likely
that more than 1,500 Remote Solution RCUs are being
used for TiVo recorders in Delaware today. (*Id.* citing
D.I. 287, Ex. 39 ¶ ¶ 6, 17).) Furthermore, since
January 1, 2000, more than 1,000 DVRs bundled with
RCUs manufactured by Remote Solution were sold in
Delaware at two retailers, specifically, 654 were sold
at BestBuy and 406 were sold at Circuit City. (*Id.*
citing Declaration of Scott Jacobi at D.I. 287, Ex. 40 ¶
7; Declaration of Mark Smucker at D.I. 287, Ex. 41 ¶
9).)

III. DISCUSSION

When a non-resident defendant's motion to dismiss
challenges personal jurisdiction, the plaintiff has the
burden to show the basis for the court's jurisdiction
over that defendant. *Intel Corp. v. Broadcom Corp.,*
*167 F.Supp.2d 692, 699 (D.Del.2001)* (citing *Wright v.*
*American Home Products, 768 A.2d 518, 526*
*(Del.Super.2000)*). To satisfy this burden, Philips
must make a *prima facie* showing that this court may
exercise personal jurisdiction over Remote Solution.
*Id.* After discovery has begun, the plaintiff must
sustain this burden by "establishing jurisdictional facts
through sworn affidavits or other competent
evidence." *Id.* (citing *Time Share Vacation Club v.*
*Atlantic Resorts, Ltd., 735 F.2d 61, 66 n. 9 (3d*
*Cir.1984)*).

Determining whether Remote Solution is subject to
personal jurisdiction requires a two-part analysis. *Id.*
*at 700; see also Siemens Aktiengesellschaft v. LG*
*Semicon Co., Ltd., 69 F.Supp.2d 622, 624*
*(D.Del.1999).* First, I must determine whether the
language of Delaware's long-arm statute, 10 Del. C. §
3104(c), reaches Remote Solution. *Broadcom,* 167
F.Supp. at 700. Second, if I find that Remote
Solution's conduct gives rise to personal jurisdiction
under the long-arm statute, I must then determine
whether subjecting Remote Solution to jurisdiction in
Delaware would comport with the Due Process Clause
of the Fourteenth Amendment to the United States
Constitution. *Id.* (citing *Intel Corp. v. Silicon Storage*
*Tech, Inc., 20 F.Supp.2d 690, 694 (D.Del.1998)*).

A. Jurisdiction over Remote Solution is Proper Under
§ 3104(c)(1) of Delaware's Long-Arm Statute

Philips contends that Remote Solution is subject to
jurisdiction under sections 3104(c)(1) and (c)(4) of
the Delaware long-arm statute (D.I. 286 at 17, 20),
which provide:

*4 (c) As to a cause of action brought by any person
arising from any of the acts enumerated in this
section, a court may exercise personal jurisdiction
over any nonresident, or a personal representative,
who in person or through an agent:
* * *

(1) Transacts business or performs any character of
work or service in the State;
* * *

(4) Causes tortious injury in the State or outside of
the State by an act or omission outside of the State if
the person regularly does or solicits business,
engages in any other persistent course of conduct in
the State or derives substantial revenue from
services, or things used or consumed in the State....
10 Del. C. § § 3104(c)(1) & (c)(4). Delaware state
courts have interpreted the "transacting business"
provision of § 3104(c)(1) as a specific jurisdiction
provision that requires a nexus between the cause of
action and the conduct used as a basis for jurisdiction.
See *LaNuova D & B S.p.A. v. Bowe Co., 513 A.2d 764,*
*768 (Del.1986).* The Federal Circuit has held that,
where a defendant has "purposefully shipped the
accused [product] into [the forum state] through an
established distribution channel ... [n]o more is usually
required to establish specific jurisdiction." *Beverly*
*Hills Fan, 21 F.3d at 1564.* Moreover, in order to meet
the requirements of § 3104(c)(1), Remote Solution's
actions must be directed at residents of Delaware and
the protection of Delaware laws. See *Thorn EMI N.*
*Am., Inc. v. Micron Tech., Inc., 821 F.Supp. 272, 274*
*(D.Del.1993)* (citing *Sears, Roebuck & Co. v. Sears,*
*744 F.Supp. 1289, 1292 (D.Del.1990)*).

Philips argues that Remote Solution has shipped the
accused RCUs into an established distribution channel
as part of a general business plan that results in sales of
the accused products in Delaware. (D.I. 286 at 18.) In
response, Remote Solution argues that it merely had a
general plan to serve the national market and that its
activities were not directed specifically toward
Delaware. (D.I. 309 at 2, 4.)

I find that Philips has presented competent evidence
that an established distribution channel exists through
which accused RCUs manufactured by Remote
Solution are shipped to, distributed, and sold in
Delaware. First, the evidence shows that Remote
Solution and Contec have enjoyed a close business
relationship since at least as early as 1999, when, in a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)
(Cite as: 2004 WL 503602 (D.Del.))

manufacturing and purchase agreement governed by New York law, Remote Solution agreed to defend one of Contec's predecessors against any claims of patent infringement. Furthermore, Remote Solution is seeking indemnification from Contec for Hango, Remote Solution's defunct subsidiary, in the event Hango is found liable for patent infringement in this case. Philips has also presented competent evidence that Remote Solution knew that Comcast, a major provider of cable television services in the State of Delaware, was one of Contec's customers for the accused RCU. Given all of these facts, and in light of Remote Solution's ongoing business relationship with Contec, it was reasonably foreseeable that the accused RCUs would make their way into the Delaware market through Contec's customers. Documents obtained from Remote Solution show that Contec was selling the accused RCUs to Comcast, such that Remote Solution knew or should have known that the accused RCUs were being sold or distributed in Delaware. *See Thorn EMI, 821 F.Supp. at 275-76.*

*5 Finally, Philips has competent evidence that the accused RCUs are present in Delaware in large numbers, and were present in Delaware prior to its filing suit, as a result of Remote Solution manufacturing the accused RCUs for TiVo. Because Philips has presented competent evidence of an established distribution channel that caused the accused RCUs to be sold and distributed in Delaware, and that the accused RCUs are actually present in Delaware, I find that jurisdiction over Remote Solution is proper under § 3104(c)(1), and I need not address the issue of whether jurisdiction over Remote Solution is proper under § 3104(c)(4). [FN5]

> FN5.   Remote Solutions relies upon *Commissariat A L'Energie Atonique v. Chi Mei Optoelectronics Corp., 293 F.Supp.2d 423, reconsideration denied, 293 F.Supp.2d 430 (D.Del.2003)* (granting defendant's motion to dismiss for lack of personal jurisdiction in patent infringement case) in support of its motion to dismiss. There are key factual distinctions between this case and *Commissariat.* First, unlike the plaintiff in *Commissariat,* Philips requested and conducted jurisdictional discovery which uncovered evidence of actual sales and the presence of the accused device in Delaware prior and subsequent to the date the complaint was filed, evidence that was lacking in *Commissariat.* Second, that Remote Solution (1) agreed to defend a predecessor of Contec from patent

infringement and (2) is seeking indemnification from Contec should Hango be found liable for patent infringement is evidence of Remote Solution's close business relationship with Contec, and its knowledge of the established distribution channel through which its products were being sent into Delaware. Thus, the quantum of evidence upon which to rest personal jurisdiction in this case is significantly greater than in *Commissariat.*

B. Exercising Jurisdiction over Remote Solution in Delaware Comports With the Requirements of the Due Process Clause

Due process requires that sufficient minimum contacts exist between the defendant and the forum state to satisfy "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).* In considering whether jurisdiction may extend to a defendant, courts should primarily consider whether the defendant has purposely availed itself of the forum state's law, *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985),* and whether the defendant reasonably could have anticipated being haled into the courts of the forum state, *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).* Courts should also consider the burden imposed on the defendant by having to litigate in a foreign forum, as well as the interests of the plaintiff and the forum state. *Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).*

In this case, the accused RCUs arrived in Delaware through Remote Solution's purposeful shipment of them through an established distribution channel. See *Beverly Hills Fan, 21 F.3d at 1565.* Philips has "stated all of the necessary ingredients for an exercise of jurisdiction consonant with the requirements of due process," namely, that Remote Solution placed the accused products in the stream of commerce, that it knew the likely destination of the products, and that its conduct and connections with Delaware were such that they should reasonably have anticipated being brought into court here. *Id. at 1566.*

Finally, litigating this case in Delaware would not place such a burden on Remote Solution as to offend traditional notions of fair play and substantial justice, especially since Remote Solution has executed an agreement to defend Contec L.P. against all claims of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)
**(Cite as: 2004 WL 503602 (D.Del.))**

patent infringement, which proves that Remote Solution was well aware of and prepared for the possibility of litigation where Contec did business, including Delaware. Nor has Remote Solution shown that it does not have the resources to fairly litigate this case in Delaware. *See Thorn EMI, 821 F.Supp. at 276.* Moreover, "Delaware has an abiding interest in protecting the property rights of its residents[,]" *id.,* including corporate citizens such as Philips. Thus, exercising jurisdiction over Remote Solution in this case comports with the requirements of the Due Process Clause.

IV. CONCLUSION

*6 For these reasons, it is hereby ORDERED that Remote Solution's Motion to Dismiss for Lack of Personal Jurisdiction (D.I.105) is DENIED.

Not Reported in F.Supp.2d, 2004 WL 503602 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.