## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG.PHILIPS LCD CO., LTD.,

                Plaintiff,

v.

CHI MEI OPTOELECTRONICS
CORPORATION; CHI MEI
OPTOELECTRONICS USA, INC.; AU
OPTRONICS CORPORATION; AU
OPTRONICS CORPORATION AMERICA;
TATUNG COMPANY; TATUNG
COMPANY OF AMERICA, INC.; AND
VIEWSONIC CORPORATION,

                Defendants.

Civil Action No. 06-726-JJF

**PLAINTIFF LG.PHILIPS LCD CO., LTD.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS TATUNG COMPANY'S AND TATUNG COMPANY OF AMERICA'S RENEWED MOTION FOR A MORE DEFINITE STATEMENT**

June 27, 2007

THE BAYARD FIRM

Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardfirm.com
Attorneys for Plaintiff LG.Philips LCD Co., Ltd.

OF COUNSEL:
Gaspare J. Bono
R. Tyler Goodwin
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

663909-1

# TABLE OF CONTENTS

Page

I.      NATURE & STAGE OF THE PROCEEDING ................................................................ 1

II.     SUMMARY OF THE ARGUMENT ............................................................................ 2

III.    COUNTER-STATEMENT OF FACTS ....................................................................... 3

IV.     LEGAL STANDARDS ........................................................................................... 5

V.      ARGUMENT ...................................................................................................... 5

        A.      The Renewed Motion is Untimely ........................................................... 5

        B.      The Tatung Defendants Are Well Aware Which Complaint Requires a
                Response ................................................................................................. 6

        C.      The Complaint Satisfies the Liberal Notice Requirements ..................... 7

VI.     CONCLUSION .................................................................................................... 10

663909-1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Agilent Tech., Inc. v. Micromuse, Inc.*,
Civ. A. No. 04-3090, 2004 WL 2346152 (S.D.N.Y. Oct. 19, 2004). ........................................ 9

*Applera Corp. v. Thermo Electron Corp.*,
Civ. A. No. 04-1230, 2005 WL 524589 (D. Del. Feb., 2005) (Sleet, D.J.) ........................ 2, 7, 9

*Asip v. Nielson Media Research, Inc.*,
No. 03 Civ. 5866, 2004 WL 315629 (S.D.N.Y. Feb. 18, 2004) ................................................ 8

*Carefirst of Md., Inc. v. Care First Transp., Inc.*,
No. Civ. A 02-229, 2002 WL 31500927 (D. Del. Nov. 1, 2002) (Thynge, M.J.) ..................... 6

*Home & Nature, Inc. v. Sherman Specialty Co.*,
322 F. Supp. 2d 260 (E.D.N.Y. 2004) ..................................................................................... 8

*Houlihan v. Sussex Tech. School Dist.*,
461 F. Supp. 2d 252 (D. Del. 2006) (Farnan, D.J.) .................................................................. 5

*In re Pabst Licensing GmbH Patent Litig.*,
Civ. A. No. MDL 1298, Civ. A. No. 99-3118,
2001 WL 179926 (E.D. La. Feb. 22, 2001) ............................................................................. 9

*Ondeo Nalco Co. v. EKA Chem., Inc.*,
Civ. A. No. 01-537, 2002 WL 1458853 (D. Del. June 10, 2002) (Robinson, D.J.) ................... 8

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*,
203 F.3d 790 (Fed. Cir. 2000) .............................................................................................. 7, 8

*Symbol Tech., Inc. v. Hand Held Prods., Inc.*,
Civ. A. No. 03-102, 2003 WL 22750145 (D. Del. Nov. 14, 2003) (Robinson, D.J.) ......... 2, 7, 9

**STATUTES**

35 U.S.C. § 100 .......................................................................................................................... 4

**RULES**

Fed. R. Civ. P. 8(a) .................................................................................................................... 5

663909-1

Fed. R. Civ. P. 12(e) ............................................................................................................... 5

Fed. R. Civ. P. 84..................................................................................................................... 8

663909-1

Plaintiff LG.Philips LCD Co., LTD. ("LG.Philips") respectfully submits this memorandum in opposition to Defendants Tatung Company's and Tatung Company of America's (collectively, "the Tatung Defendants") Renewed Motion for a More Definite Statement ("the Renewed Motion").[1]

## I.    NATURE & STAGE OF THE PROCEEDING

On February 15, 2007, LG.Philips served its complaint for patent infringement against the Tatung Defendants and other parties. (D.I. 5; D.I. 7.) Accordingly, by operation of the Federal Rules of Civil Procedure, an answer or other responsive pleading was due by March 7, 2007. (D.I. 5; D.I. 7.) By Court-approved stipulation, however, the Tatung Defendants received an extension allowing them to respond by June 5, 2007. (D.I. 30; Ex. 1, Docket Order.) The Tatung Defendants allowed this entire 90-day period – as well as the Court's scheduled hearing dates on April 13, May 4, and June 1 – to pass without filing a valid motion, answer, or other pleading.

Instead, on the very last day of the extended period – June 5 – the Tatung Defendants filed a motion for a more definite statement ("the First Motion"). (D.I. 70.) Because it purported to set a July 13 hearing date, however, the First Motion did not comply with the Court's Standing Order for non-dispositive motions in patent cases. (Ex. 2, Standing Order; Ex. 3, Docket Remark I.) Therefore, on June 11, 2007, the Court struck the First Motion. (Ex. 4, Docket Remark II.)

Following the Court's June 11 ruling, the Tatung Defendants did not file an answer or other responsive pleading within ten days, as required by Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure. Instead, the Tatung Defendants wrote to the Case Manager that they did "not

---

[1] All references to Exhibits are attached to the Declaration of Ashley B. Stitzer, filed contemporaneously herewith.

understand" the June 11 ruling and requested that the motion be "reinstated." (D.I. 73.)  The next day, on June 13, the Tatung Defendants filed the Renewed Motion (D.I. 74) and opening brief in support thereof (D.I. 75).

## II.    SUMMARY OF THE ARGUMENT

1.    The Renewed Motion is untimely and, as such, should be denied in its entirety. Indeed, the Tatung Defendants let an entire three-month extension pass without responding in any manner to the complaint.  This motion should not be permitted to further delay the proceedings.

2.    The only complaint to which the Tatung Defendants must respond is the initial one filed on December 1, 2006 and served on February 15, 2007.  Any arguments to the contrary are without merit, particularly in light of the captions of the amended complaints against certain other defendants and communications by LG.Philips's counsel stating that the amendments were not directed at the Tatung Defendants.  In addition, and contrary to the spirit of Local Rule 7.1.1, the Tatung Defendants never voiced any confusion about the identity of the "operative" complaint prior to filing the instant motion.

3.    For at least three reasons, the Court should not accept the argument that a more definite statement is required because the complaint does not identify specific infringing products.

a.    The Renewed Motion fails to inform the Court that this argument has already been twice rejected in this District.  *See Applera Corp. v. Thermo Electron Corp.*, Civ. A. No. 04-1230, 2005 WL 524589, at *1 (D. Del. Feb. 25, 2005 (Sleet, D.J.)); *Symbol Tech., Inc. v. Hand Held Prods., Inc.*, Civ. A. No. 03-102, 2003 WL 22750145, at *3 (D. Del. Nov. 14, 2003 (Robinson, D.J.)).

2

b.      More generally, the Renewed Motion fails to account for (a) the federal notice pleading standards, (b) the presumptive sufficiency of the model patent infringement complaint in the Appendix of Forms for the Federal Rules of Civil Procedure, and (c) the fact that discovery – not a Rule 12 motion – is the proper vehicle for obtaining additional detail regarding a plaintiff's claims.

c.      The Renewed Motion fails to argue that the complaint is so vague or confusing that it is impossible for the Tatung Defendants to frame a response.  In fact, the Tatung Defendants have already twice answered similar complaints alleging infringement of the patents at issue.  (Ex. 6, Cal. Compl.; Ex. 7, Del. Compl.)  In both instances, these answers were filed without the Tatung Defendants first seeking a more definite statement.  (*See* Ex. 8, Cal. Docket; Ex. 9, Del. Docket.)

## III.    COUNTER-STATEMENT OF FACTS

On December 1, 2006, LG.Philips filed a complaint for patent infringement against the Tatung Defendants, AU Optronics Corporation ("AUO"), AU Optronics Corporation America ("AUO America"), Chi Mei Optoelectronics Corporation ("CMO"), and ViewSonic Corporation ("ViewSonic").  (D.I. 1.)

LG.Philips has never amended this complaint as to the Tatung Defendants or ViewSonic. On April 11, 2007, LG.Philips filed an amended complaint against AUO that is captioned: "First Amended Complaint For Patent Infringement Against Defendant AU Optronics Corporation."  (D.I. 29.)  On May 22, 2007, LG.Philips filed an amended complaint against CMO that is captioned:  "First Amended Complaint For Patent Infringement Against Defendant Chi Mei Optoelectronics Corporation and Chi Mei Optoelectronics USA, Inc."  (D.I. 54.)

This case is based on LG.Philips's patent rights related to semiconductor and liquid crystal display ("LCD") backplane technology, in particular United States Patent No. 5,019,002

3

("the '002 patent"), United States Patent No. 5,825,449 ("the '449 patent"), and United States

Patent No. 4,624,737 ("the '737 patent").  LG.Philips's patents in suit are very detailed,

described in the complaint, and attached as exhibits thereto.  (D.I. 1, ¶¶ 17-19 & Exs. A-C.)  As

the complaint explains, "[t]he technology at issue involves the design and manufacture of Liquid

Crystal Display modules ('LCDs'), which are a type of flat panel display that are incorporated

into at least LCD portable computers, LCD computer monitors, and LCD televisions."  (D.I. 1, ¶

3.)  "LG.Philips has invested substantial time and money in designing, developing,

manufacturing and producing LCD products that incorporate [this] patented LCD technology."

(D.I. 1, ¶ 22.)  The complaint further states that LG.Philips is the owner of each patent.  (D.I. 1,

¶¶ 1, 17-20 & Exs. A-C.)

        The complaint clearly identifies each defendant, and for each patent in suit alleges that

Defendants infringe by "making, using, causing to be used, offering to sell, causing to be offered

for sale, selling, causing to be sold, importing, and/or causing to be imported products that are

made by a method that infringes one or more claims of the [identified patent] in this judicial

district and elsewhere in the United States."  (D.I. 1, ¶¶ 5-10, 24, 32, 37, 42.)  The complaint

further explains that the action is being brought "under the Patent Laws of the United States, 35

U.S.C. § 100 et seq., and in particular §§ 271, 281, 283, 284 and 285."  (D.I. 1, ¶ 11.)

4

IV.    **LEGAL STANDARDS**

Federal Rule of Civil Procedure 8(a) requires only that a complaint contain a "short, plain statement of the claim showing that the pleader is entitled to relief." A party may move for a more definite statement under Federal Rule of Civil Procedure 12(e) if a complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." "Rule 12(e) motions are typically disfavored and relief is only granted in the 'rare case' where the complaint is so vague or incomprehensible that the defendant cannot frame a responsive pleading." *Houlihan v. Sussex Tech. School Dist.*, 461 F. Supp. 2d 252, 262 (D. Del. 2006 (Farnan, D.J.) (internal citation omitted) (quoting *Scaedler v. Reading Eagle Publ'ns, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967))).

V.    **ARGUMENT**

A.    **The Renewed Motion is Untimely**

By operation of the Federal Rules of Civil Procedure, the Tatung Defendants were required to respond to the complaint almost four months ago (on or before March 7). (D.I. 5; D.I. 7.) By agreement of the parties and approval of the Court, however, "[t]he time for the Tatung [Defendants] to move, answer, or otherwise plead in response to the Complaint [was] extended to and includ[ed] June 5, 2007," with the Tatung Defendants further agreeing "not to contest either personal jurisdiction or sufficiency of process or sufficiency of service of process." (D.I. 30; Ex. 1, Docket Order.) On the very last day of this extension (on June 5), the Tatung Defendants elected instead to file the First Motion (D.I. 70), which this Court struck (Ex. 4, Docket Remark II). Then, on June 13, instead of responding to the Complaint, and without seeking an additional extension from the Court or LG.Philips (but after seeking relief from the

Case Manager, which relief was not granted), the Tatung Defendants nevertheless filed the Renewed Motion.  (D.I. 74.)

As a threshold matter, then, the Renewed Motion should be denied in its entirety because it unquestionably is untimely.  *See, e.g.*, *Carefirst of Md., Inc. v. Care First Transp., Inc.*, No. Civ. A 02-229, 2002 WL 31500927, at *3 (D. Del. Nov. 1, 2002 (Thynge, M.J.) (denying Rule 12 motion because the motion was tardy under Rule 12(a))).

Moreover, this tardiness is completely the making of the Tatung Defendants.   They had the entire period between February 15 through June 5 to move, answer, or otherwise plead in response to the complaint.  Indeed, given the 90-day period they had within which to respond, the Tatung Defendants could have filed a Rule 12(e) motion within 30 days of the hearing days scheduled for April 13, May 4, and June 1.  (*See* Ex. 2, Standing Order.)  Nonetheless, the Tatung Defendants allowed each opportunity to pass and filed this untimely motion that burdens the Court and threatens further delay.   (*See* D.I. 73; D.I. 74.)

### B.    The Tatung Defendants Are Well Aware Which Complaint Requires a Response

Besides its procedural infirmity, the Renewed Motion lacks substantive merit.  Its lead argument is the assertion that the Tatung Defendants do not know which complaint is "operative."  Contrary to the letter and spirit of Local Rule 7.1.1, this purported confusion was never raised with LG.Philips by letter, e-mail, or telephone prior to the filing of the Renewed Motion.  Had such a communication been made, LG.Philips would have made clear – as it does here – that the Tatung Defendants need only respond to the complaint that was filed on December 1, 2006 and served on February 15, 2007.

In fact, more than one month ago LG.Philips's counsel made clear, in writing, that the amended complaint against CMO is not directed at, or intended to affect, the Tatung Defendants.

(*See* Ex. 5, E-mail from D. Kirk to Defs.' Counsel, dated May 22, 2007.)  Furthermore, as

discussed above, the captions and pleadings of the amended complaints against AUO and CMO,

respectively, are clearly limited to those parties and are not directed at the Tatung Defendants.

(*See* D.I. 29; D.I. 54.)

      **C.**     **The Complaint Satisfies the Liberal Notice Requirements**

      Finally, the Tatung Defendants contend that the complaint is flawed under Rule 8

because it does not identify specific products accused of infringing the patents in suit.  This

argument is similar to the one advanced by ViewSonic in its motion for a more definite statement

and motion to dismiss.  (*See* D.I. 40; D.I. 42.)  In light of this overlap, LG.Philips incorporates its

arguments in opposition to those motions.  (*See* D.I. 51; D.I. 76.)  In particular:

      1.     This precise argument has already been twice rejected in this District in decisions

that the Tatung Defendants do not cite.  *See Applera Corp.*, 2005 WL 524589, at *1; *Symbol*

*Tech.*, 2003 WL 22750145, at *3.

      2.     As *Applera* and *Symbol Technologies* clearly demonstrate, courts have in fact

denied Rule 12(e) motions where the plaintiff did *not* specifically identify at least one infringing

product.  The Tatung Defendants' suggestion to the contrary (*see* D.I. 75, at 4 n.1), therefore, is

plainly incorrect.

      3.     Under Rule 8, "a patentee need only plead facts sufficient to place the alleged

infringer on notice." *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794

(Fed. Cir. 2000).  Accordingly, in *Phonometrics*, the Federal Circuit made clear that a complaint

for patent infringement need only "allege[] ownership of the asserted patent, name[] each

individual defendant, cite[] the patent that is allegedly infringed, describe[] the means by which

the defendants allegedly infringe, and point[] to the specific sections of the patent law invoked."

*Phonometrics*, 203 F.3d at 794.  Where such elements are alleged, the "complaint contains

663909-1

enough detail to allow the defendants to answer." *Id.; see generally Home & Nature, Inc. v.*
*Sherman Specialty Co.*, 322 F. Supp. 2d 260, 265-66 (E.D.N.Y. 2004) (applying *Phonometrics*
and denying Rule 12(e) motion where plaintiff "sufficiently plead the five required elements of
patent infringement in compliance with Rule 8").

4.      Consistent with *Phonometrics*, the complaint contains each of these allegations.
By contrast, the Tatung Defendants do not even cite the well-known *Phonometrics* decision.

5.      The Tatung Defendants do not, and cannot, dispute that the complaint is as
detailed as Form 16 ("Complaint for Infringement of a Patent") and, on that basis alone, their
Renewed Motion should be denied.  Indeed, the Tatung Defendants are completely silent as to
Form 16.  *See* Fed. R. Civ. P., App. of Forms, Form 16; Fed. R. Civ. P. 84; *see, e.g., Asip v.*
*Nielson Media Research, Inc.*, No. 03 Civ. 5866, 2004 WL 315629, at *2-3 & n.38 (S.D.N.Y.
Feb. 18, 2004) (relying on *Phonometrics* and Form 16 in holding complaint to be definite where
complaint alleged that defendants infringed with respect to "products which use and/or
encompass [the patented technology] with the use of a telephone line for data transmission in the
television industries").

6.      The Tatung Defendants cite only one case from this District in support of their
argument.  (*See* D.I. 75 at 4 (citing *Ondeo Nalco Co. v. EKA Chem., Inc.*, Civ. A. No. 01-537,
2002 WL 1458853 (D. Del. June 10, 2002) (Robinson, D.J.)).)  But Judge Robinson herself, who
had decided *Ondeo*, a year later rejected the argument in *Symbol Technologies*, discussed above.

7.      A review of the other cases relied upon by the Tatung Defendants demonstrates
that they harm, not help, the motion.  (*See* D.I. 75 at 4.)  In one of the cited cases, for example,
the Eastern District of Louisiana granted a Rule 12(e) motion because of exceptional factual
circumstances arising from the 20 patents at issue with a combined 503 claims.  *In re Pabst*

8

*Licensing GmbH Patent Litig.*, Civ. A. No. MDL 1298, Civ. A. No. 99-3118, 2001 WL 179926, at *1 (E.D. La. Feb. 22, 2001).

8.      Furthermore, as the cases cited by the Tatung Defendants recognize, products need not be identified "where some other limiting parameter has been set forth." *Agilent Tech., Inc. v. Micromuse, Inc.*, Civ. A. No. 04-3090, 2004 WL 2346152, at *5 (S.D.N.Y. Oct. 19, 2004).[2]  Here, the complaint is clear that the products at issue are LCD modules that are designed and manufactured using the technology covered by the patents in suit, as well as LCD products incorporating such modules, including LCD portable computers, LCD computer monitors, and LCD televisions.  (D.I. 1, ¶¶ 3, 24.)

9.      This District has already rejected the argument that prior litigation involving the patents at issue somehow increases the need for the complaint to identify specific products accused of infringement.  *See Applera Corp.*, 2005 WL 524589, at *1 n.3.  Indeed, as Judge Sleet noted, "the prior litigation will inevitably inform the claims and defenses in the present case." *Id.*

10.      Finally, the Tatung Defendants have already twice answered similarly drafted complaints regarding the patents at issue.  (Ex. 6, Cal. Compl.; Ex. 7, Del. Compl.)  In both instances, these responses were filed without seeking a more definite statement.  (*See* Ex. 8, Cal. Docket; Ex. 9, Del. Docket.)

---

[2] The *Agilent Technologies* court viewed limiting parameters as a sufficient alternative to identifying "at least one purportedly infringing product." *Compare* D.I. 75, at 4 n.1 *with Agilent Tech.*, 2004 WL 2346152, at *5 (writing that products need not be identified "where some other limiting parameter has been set forth *or* at least one purportedly infringing product has been identified" (emphasis added)).  This is particularly significant given that the case on which the *Agilent Technologies* court relied for the "limiting parameter" concept is *Symbol Technologies*, 2003 WL 22750145 – a decision of this jurisdiction, discussed above, but one that the Tatung Defendants fail to reference.

9

## VI.    <u>CONCLUSION</u>

For the reasons stated herein, LG.Philips respectfully requests that the Court deny the

Renewed Motion.

June 27, 2007                                              THE BAYARD FIRM


                                                          <u>/s/ Ashley B. Stitzer (as3891)</u>
                                                          Richard D. Kirk (rk0922)
                                                          Ashley B. Stitzer (as3891)
                                                          222 Delaware Avenue, Suite 900
                                                          P.O. Box 25130
                                                          Wilmington, Delaware  19899-5130
                                                          (302) 655-5000
                                                          rkirk@bayardfirm.com
                                                          astitzer@bayardfirm.com

                                                          Attorneys for Plaintiff LG. Philips LCD Co.,
                                                          Ltd.


OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500

10

663909-1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on June 27, 2007, she served the foregoing documents by email and by hand upon the following counsel:

Edmond D. Johnson
Thomas H. Kovach
Pepper Hamilton LLP
1313 Market Street, Suite 5100
PO Box 1709
Wilmington, DE  19899-1709

Karen L. Pascale
John W. Shaw
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Philip A. Rovner
Dave E. Moore
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE  19899-0951

William E. Manning
Jennifer M. Becnel-Guzzo
Buchanan Ingersoll & Rooney
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE  19801

The undersigned counsel further certifies that, on June 27, 2007, she served the foregoing documents by email and by U.S. Mail upon the following counsel:

John N. Zarian
Samia McCall
Matthew D. Thayne
J. Walter Sinclair
Stoel Rives LLP
101 S. Capitol Blvd., Suite 1900
Boise, ID  83702

Vincent K. Yip
Peter J. Wied
Jay C. Chiu
Paul, Hastings, Janofsky & Walker LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190

Bryan J. Sinclair
Karineh Khachatourian
Buchanan Ingersoll & Rooney
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA  94065-1418

/s/ Ashley B. Stitzer, (as3891)
Ashley B. Stitzer

# Unreported Cases

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 524589 (D.Del.)
**(Cite as: 2005 WL 524589 (D.Del.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
APPLERA CORPORATION, MDS Inc., and
Applied Biosystems/MDS Sciex Instruments,
Plaintiffs,
v.
THERMO ELECTRON CORPORATION,
Defendant.
**No. Civ.A. 04-1230(GMS).**

Feb. 25, 2005.
Josy W. Ingersoll, Young, Conaway, Stargatt &
Taylor, Wilmington, DE, for Plaintiffs.

*ORDER*

SLEET, J.

I. INTRODUCTION

**\*1** On September 3, 2004, Applera Corporation
("Applera"), MDS Inc. ("MDS"), and Applied
Biosystems/MDS Sciex Instruments ("Applied
Biosystems") (collectively, the "plaintiffs") filed a
complaint, alleging that Thermo Electron
Corporation ("Thermo") infringes one or more claims
of U.S. Patent No. 4,963,736 (the " '736 patent"). The
'736 is directed to a mass spectrometer and a method
of operating the mass spectrometer.

Presently before the court is Thermo's motion for a
more definite statement pursuant to Rule 12(e) of the
Federal Rules of Civil Procedure. For the following
reasons, the court will deny Thermo's motion.

II. DISCUSSION

The decision of whether to grant or deny Thermo's
motion rests within the sound discretion of the
District Court. *See* 5A CHARLES ALAN WRIGHT
AND ARTHUR R. MILLER, FEDERAL
PRACTICE & PROCEDURE: CIVIL 3D § 1377, at
728-29 & n. 3 (Supp.2004). Courts generally view
motions for a more definite statement with disfavor,
particularly " 'where the information sought by the
motion could easily be obtained by discovery." ' *See
CFMT, Inc. v. YieldUp Int'l Corp.,* No. Civ. A. 95-

549, 1996 WL 33140642, \*1 (D.Del. Apr.5, 1996)
(citations omitted). Courts take this view because the
Federal Rules require that a pleading contain only a
"short and plain statement of the claim showing that
the pleader is entitled to relief." *See* Fed. R. Civ. P.
8(a)(2). [FN1] As a result, a motion for a more
definite statement should be granted only where the
pleading is so "vague or ambiguous" that the
opponent cannot draft a responsive pleading. *See* Fed.
R. Civ. P. 12(e); *see also Schaedler v. Reading Eagle
Publ'n.* 370 F.2d 795, 798 (3d Cir.1967). Courts have
interpreted this rule to mean that the motion should
only be granted where the pleading is unintelligible,
see *CFMT, 1996 WL 33140642, at \*1,* or the issues
cannot be determined. *See Fischer & Porter Co. v.
Sheffield Corp.,* 31 F.R.D. 534, 536 (D.Del.1962);
*Container Co. v. Carpenter Container Corp.,* 8
F.R.D. 208, 210 (D.Del.1948).

> FN1. The Rule 8 standard does not change
> in an action for patent infringement. *See* 5
> WRIGHT & MILLER § 1251, at 459-60
> ("[T]he complaint in a patent infringement
> action ... must identify the patent that has
> been infringed and indicate in what manner
> the patent has been encroached upon;
> however no special level of particularity ...
> is required." (footnotes omitted); *see also*
> Fed.R.Civ.P. 84 (1998); Appendix of Forms,
> Form 16 (Complaint for Infringement of
> Patent).

Thermo asserts that it cannot reasonably be required
to frame an answer to the plaintiffs' complaint
because it contains three alternatively pleaded
theories of infringement without any specificity as to
time, place, or person. Thermo further asserts that it
cannot determine the issues in the case because the
plaintiffs failed to identify which of its ninety-three
mass spectrometers, in sixteen product lines, that it
has manufactured since 1990 allegedly infringe the
'736 patent. [FN2] After reviewing the plaintiffs'
complaint, the court finds that it is far from
unintelligible. In addition to identifying the patent in
suit, the complaint plainly states that Thermo has
allegedly infringed the '736 patent "directly,
contributorily, and/or by inducing others to infringe
the patent by making, using, offering for sale and
selling mass spectrometer systems that are
encompassed by or the use of which is encompassed
by one or more claims of the '736 patent." (D.I. 1 ¶

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 2
Not Reported in F.Supp.2d, 2005 WL 524589 (D.Del.)
**(Cite as: 2005 WL 524589 (D.Del.))**

18.) [FN3] The court, therefore, cannot say that the complaint is so "vague or ambiguous" that it prevents Thermo from reasonably framing a response. While the court understands and endorses Thermo's desire to narrow the issues of this litigation as early on in the process as possible, it believes that this goal is best achieved through the use of traditional mechanisms of discovery. *See Symbol Techs., Inc. v. Hand Held Prods., Inc.,* Civil Action No. 03-102, 2003 WL 22750145, *9 (D.Del. Nov.14, 2003).

> FN2. The '736 patent issued on October 16, 1990.

> FN3. Further, the plaintiffs have included a background section in the complaint that discusses previous litigation involving the '736 patent. (D.I. 1 ¶ ¶ 7-14.) In particular, the plaintiffs discuss the results of the *Markman* hearing, jury trial, bench trial concerning inequitable conduct, and appellate review. (*Id.*); *see Applera Corp. v. Micromass UK Ltd.,* 204 F.Supp.2d 724 (D.Del.2002), *aff'd,* 2003 WL 1795593 (Fed.Cir.2003). Thermo also discusses this prior litigation in its brief in support of its motion, asserting that the litigation makes it all the more important for the plaintiffs to identify which of its products or processes allegedly infringe the '736 patent. (D.I. 8, at 6-7.) The court disagrees because, as Thermo recognized in its brief, the prior litigation will inevitably inform the claims and defenses in the present case. For example, one of the plaintiffs' witnesses in the prior litigation testified that certain Thermo products do not infringe the '736 patent. (*Id.*)

## III. CONCLUSION

 **\*2** For the aforementioned reasons, IT IS HEREBY ORDERED that:
   1. The defendant's Motion for a More Definite Statement (D.I.7) is DENIED.
   2. The defendant shall answer the complaint within thirty (30) days of the date of this Order.

 Not Reported in F.Supp.2d, 2005 WL 524589 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)
**(Cite as: 2003 WL 22750145 (D.Del.))**

Page 1

**c**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
SYMBOL TECHNOLOGIES, INC., Plaintiff,
v.
HAND HELD PRODUCTS, INC. and HHP-NC,
Inc., Defendants.
**No. Civ.A. 03-102-SLR.**

Nov. 14, 2003.
Arthur G. Connolly, III, Connolly, Bove, Lodge &
Hutz, Andre G. Bouchard, Bouchard, Margules &
Friedlander, Wilmington, DE, for Plaintiff.

Donald F. Parsons, Jr., Mary B. Graham, Morris,
Nichols, Arsht & Tunnell, Wilmington, DE, for
Defendants.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

**\*1** Currently before the court are the following
motions by the defendants Hand Held Products, Inc.
and HHP-NC, Inc. (collectively "HHP"): 1) motion to
dismiss U.S. Patent No. 5,591,956 of Count II for
lack of subject matter jurisdiction; 2) motion to
dismiss U.S. Patent No. 5,130,520 of Count I from
the action because HHP holds a valid license; 3)
motion to dismiss plaintiff's infringement and
noninfringement claims from Counts I and II
pursuant to Fed.R.Civ.P. 8 and 12(b)(6) for failure to
state a claim; 4) motion to dismiss Count II of the
complaint pursuant to Fed.R.Civ.P. 12(b)(1) and
12(b)(6) for lack of subject matter jurisdiction for
failure to satisfy the jurisdictional requirements of 18
U.S.C. § 2201; 5) motion to dismiss plaintiff's
invalidity and unenforceability claims from Count II
pursuant to Fed.R.Civ.P. 8 and 12(b)(6) for failure to
give notice of the bases for claims of invalidity and
unenforceability; 6) motion to strike plaintiff's
unenforceability allegations pursuant to Fed.R.Civ.P.
12(b)(6) for failure to plead fraud with particularity;
and 7) motion for a more definite statement as to
Counts I and II. (D.I.10) For the reasons and to the
extent stated below, the court grants in part and

denies in part HHP's motions.

II. BACKGROUND

Plaintiff Symbol Technologies, Inc. ("Symbol") and
HHP are competitors in the hand-held optical scanner
industry, each holding patents and manufacturing a
variety of products. Symbol is the owner of U.S.
Patent Nos. 5,029,183;   5,130,520;  5,157,687;
5,479,441;   5,521,366;   5,646,390;   5,702,059;
5,783,811;  5,818,028;  6,00,612;  6,019,286;  and
6,105,871 (collectively, the "Symbol Patents"). HHP
is the owner of U.S. Patent Nos. 5,286,960;
5,291,008;  5,391,182;  5,420,409;   5,463,214;
5,569,902;   5,591,956;   5,723,853;   5,723,868;
5,773,806;   5,773,810;  5,780,834;  5,784,102;
5,786,586;  5,793,967;   5,801,918;  5,825,006;
5,831,254;  5,837,985;  5,838,495;   5,900,613;
5,914,476;  5,929,418;  5,932,862;  5,942,741;
5,949,052;  5,949,054;  5,965,863;  6,015,088;
6,060,722;   6,161,760;  6,298,176;  6,491,223;
D392,282; D400,199, and  D400,872 (collectively
the "HHP Patents").

In September 1999, HHP was acquired by Welch
Allyn, Inc. ("Welch Allyn"), a direct competitor of
Symbol. Later that fall, Welch Allyn announced that
it intended to acquire another competitor of Symbol's,
PSC, Inc., with whom Symbol was engaged in patent
litigation.

On March 13, 2000, Welch Allyn's in-house counsel
sent an email to Symbol's in-house patent counsel
indicating that certain Welch Allyn patents might
"present problems" to Symbol's Golden Eye product
line. (D.I.19)

On June 6, 2000, Welch Allyn began negotiating
with Symbol on behalf of Welch Allyn's newly
acquired subsidiary, PSC, Inc. (Id.) Later that month,
a meeting was held between Symbol and Welch
Allyn to discuss the licensing of certain patents held
by HHP relating to the Golden Eye product line. At
that meeting, a list of twenty-three (23) patents was
presented to Symbol which Welch Allyn viewed as
relevant. (Id.)

**\*2** On June 28, 2000, a second list was provided to
Symbol by HHP in response to a request made at the
earlier meeting. This second list contained only ten
(10) patents, eight of which were previously listed on

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)
**(Cite as: 2003 WL 22750145 (D.Del.))**

the first list, and two of which were new additions. The June 28 letter indicated that these patents should be the topic of further licensing discussions between the parties. (*Id.*)

On November 30, 2000, Symbol acquired Telxon, a Texas company that was at the time engaged in patent-related disputes with Welch Allyn. Previously that year, Welch Allyn had sent a list of patents to Telxon, identical to the first list sent to Symbol, and suggested that Telxon's products might be infringing. Welch Allyn had also previously raised infringement issues with Metanetics, a Telxon subsidiary. (*Id.*)

Relations between Symbol and Welch Allyn deteriorated completely when Welch Allyn filed a lawsuit against Symbol in North Carolina regarding a certain contract that they shared to provide products to the United States Postal Service. (*Id.*)

On January 21, 2003, Symbol filed a two-count complaint alleging that HHP has infringed the Symbol Patents and seeking declaratory judgment that the HHP Patents are not infringed, invalid and/or unenforceable. (D.I.1)

In Count I of the complaint, Symbol alleges that "HHP infringed and continues to infringe, has induced and continues to induce others to infringe, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of each of the Symbol Patents." (D.I. 1 at 6) In Count II of the complaint, Symbol seeks a declaratory judgment that the HHP Patents are noninfringed, invalid, and unenforceable. (*Id.*)

III. DISCUSSION

A. HHP's Motion to Dismiss U.S. Patent No. 5,591,956

HHP contends that the court is without subject-matter jurisdiction as to U.S. Patent No. 5,591,956 (" '956 patent"). (D.I.11) At oral arguments before the court on October 28, 2003, HHP's counsel affirmatively stated that the '956 patent is dedicated to the public; therefore, this patent will be dismissed from the complaint.

B. HHP's Motion to Dismiss U.S. Patent No. 5,130,520

HHP contends that U.S. Patent No. 5,130,520 (" '520 patent") should be dismissed because it is the subject of a valid license from Symbol. Symbol contends that

there is a license for the '520 patent, but that it pertains to a narrow field of use. It is established law that a licensee that exceeds the scope of its license may be held liable for infringement. *See General Talking Pictures Co.,* 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273 (1938); *Eli Lily & Co. v. Genentech Inc.,* 17 U.S.P.Q.2d 1531, 1534 (S.D.Ind.1990). Consequently, HHP's motion to dismiss the '520 patent will be denied.

C. HHP's Motion to Dismiss Infringement and Noninfringement Claims from Count I and II for Failure to State a Claim, Motion to Dismiss Symbol's Claims of Invalidity and Unenforceability, and Motion for a More Definite Statement

*3 HHP contends that Symbol's complaint is facially defective under Fed.R.Civ.P. 8(a), as it fails to provide sufficient notice of which of HHP's products infringe claims under the Symbol Patents and which of Symbol's products may infringe HHP Patents. (D.I. 11 at 16) HHP, however, has failed to cite any precedent binding upon this court that requires a complaint to identify the basis of an infringement claim with such particularity. [FN1] It is established law that liberal pleading requirements are designed to put the parties on notice generally as to the nature of the cause of action. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Weston v. Pennsylvania,* 251 F.3d 420, 429 (3d Cir.2001). Particularly in complex litigation, it is through the discovery process that the parties refine and focus their claims. At this stage in the litigation, the court declines to dismiss Symbol's claims until adequate discovery has been completed.

> FN1. The court notes that HHP attempts to bootstrap Fed.R.Civ.P. 11 requirements into Rule 8, without actually alleging that Symbol's complaint is frivolous. (D.I. 11 at 9-10) In the absence of an actual motion by HHP to the contrary, the court will assume that Symbol's counsel has complied with their ethical obligations under Fed.R.Civ.P. 11.

In the alternative, HHP moves the court to require Symbol to provide a more definite statement pursuant to Fed.R.Civ.P. 12(e). A motion under Rule 12(e) is to correct a pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." The purpose, however, of Rule 12(e) is not to make it easier for the moving party to prepare its case. Fed.R.Civ.P. 12 advisory committee's note. In this case, the crux of HHP's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)
(Cite as: 2003 WL 22750145 (D.Del.))

motion is that Symbol's complaint is simply too large. There are, however, a finite number of claims and a finite number of infringing products. Consequently, the court finds that traditional mechanisms of discovery are the proper tools to refine the scope of this litigation. HHP's motions in this regard will be denied.

D. HHP's Motions to Dismiss Count II for Lack of Subject Matter Jurisdiction

HHP contends that the court is without subject matter jurisdiction as to the HHP Patents, as there is not an actual controversy within the meaning of § 2201. (Id.) See *Vectra Fitness, Inc. v. TNWK Corp.,* 162 F.3d 1379, 1383 (Fed.Cir.1998).

Declaratory judgment pursuant to 28 U.S.C. § 2201 requires that there be "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993). In reaching its conclusion, the court must apply a totality of the circumstances standard. See *C.R.Bard, Inc. v. Schwartz,* 716 F.2d 874, 880 (Fed.Cir.1983).

The recent contentious and litigious history between the parties weighs in favor of a finding that Symbol has a reasonable apprehension of suit. In *EMC Corp. v. Norand Corp.,* 89 F.3d 807 (Fed.Cir.1996), the Federal Circuit stated that the "test for finding a 'controversy' for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling." *Id.* at 811. The Court of Appeals continued and emphasized that "the question is whether the relationship between the parties can be considered a 'controversy,' and that inquiry does not turn on whether the parties have used particular 'magic words' in communicating with one another." *Id.* at 812. Therefore, the absence of an explicit threat of suit, while a factor, is not dispositive. See *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 979 (Fed.Cir.1993) ( "Declaratory judgment jurisdiction does not require direct threats.").

**\*4** Further, it is relevant under Federal Circuit precedent that at oral argument HHP did not affirmatively state that it would not bring suit. In *C.R. Bard Inc.,* the Court of Appeals held that a plaintiff

had a reasonable apprehension of suit when the defendant in a declaratory judgment declined to affirmatively state at oral arguments that he would not bring a suit for infringement against the plaintiff. [FN2] 716 F.2d at 881.

> FN2. The court is not entirely comfortable with the notion that a plaintiff might bring a declaratory judgment against a defendant for the purpose of forcing an admission of the defendant's intent to enforce its patent rights. The court is also uncomfortable with the notion that a defendant might plead that the plaintiff has no reasonable apprehension of suit, and then file in another forum once the declaratory judgment has been dismissed for want of subject matter jurisdiction. Nonetheless, the Federal Circuit in *C.R. Bard* made it clear that the failure to deny an intent to sue for infringement is a factor to be considered.

Having concluded that the totality of circumstances sufficiently demonstrates a reasonable apprehension of suit, nonetheless, Symbol has not established a reasonable apprehension of suit with respect to each of the named HHP Patents. At most, the affidavit and accompanying documents filed to support the complaint suggest that only those patents referenced in the June 28, 2000 correspondence from Welch Allyn are proper subjects of a declaratory judgment suit. [FN3] Consequently, the court will dismiss without prejudice those HHP Patents which were not the subject of the June 28, 2000 correspondence.

> FN3. Those patents are: U.S. Patent Nos. 5,286,960; 5,900,613; 5,723,868; 5,780,834; 5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863.

With respect to the remaining HHP Patents, the court finds that Symbol satisfies the "present activity" requirement of § 2201. It is sufficient that Symbol engages in the manufacture and production of products sufficiently similar to HHP's patents. See *Millipore Corp. v. Univ. Patents, Inc.,* 682 F.Supp. 227, 232 (D.Del.1987). Moreover, the fact that HHP's own correspondence to Symbol suggests that licensing of its patents may be needed is sufficient for the court to conclude that there is "present activity" as required under § 2201.

E. HHP's Motion to Strike Symbol's Allegations of Unenforceability for Failure to Plead with Particularity

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)
**(Cite as: 2003 WL 22750145 (D.Del.))**

The court will dismiss Symbol's claims for unenforceability without prejudice. Fraud is a clear exception to the otherwise broad notice-pleading standards under Fed.R.Civ.P. 9. A claim of patent unenforceability is premised upon inequitable conduct before the Patent & Trademark Office ("PTO"), which is a claim sounding in fraud. A plaintiff alleging unenforceability, therefore, must plead with particularity those facts which support the claim the patent holder acted fraudulently before the PTO. As Symbol has failed to adequately plead its bases for unenforceability of the remaining HHP Patents, that portion of Count II will be dismissed without prejudice.

## IV. CONCLUSION

At Wilmington this 14th day of November, 2003, having held oral argument and reviewed HHP's motion to dismiss pursuant to Fed.R.Civ.P. 8(a), 9, 12(b)(1), 12(b)(6) and 12(f), or in the alternative for a more definite statement pursuant to Rule 12(e) (D.I.10), and Symbol's response thereto;

IT IS ORDERED that:

1. HHP's motion to dismiss Count II of Symbol's complaint with respect to U.S. Patent No. 5,591,956 is granted. (D.I.10-1)

2. HHP's motion to dismiss U.S. Patent No. 5,130,520 of Count I is denied. (D.I.10-2)

3. HHP's motion to dismiss infringement and noninfringement claims from Counts I and II of the complaint pursuant to Fed.R.Civ.P. 8 and 12(b)(6) is denied. (D.I.10-3)

*5 4. HHP's motion to dismiss Count II of the complaint pursuant to Fed. R. Civ P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction is granted with respect to U.S. Patent Nos. 5,291,008; 5,391,182;　5,420,409;　5,463,214;　5,5697,902; 5,723,853;　5,773,806;　5,773,810;　5,786,586; 5,793,967;　5,801,918;　5,837,985;　5,838,495; 5,914,476;　5,932,862;　5,942,741;　5,949,052; 5,949,054;　6,015,088;　6,161,760;　6,298,176; 6,491,223; D392, 282; D400,199; and D400,872, and is denied with respect to U.S. Patent Nos. 5,286,960; 5,900,613;　5,723,868;　5,780,834;　5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863. (D.I.10-4)

5. HHP's motion pursuant to Fed.R.Civ.P. 8 and

12(b)(6) to dismiss Symbol's invalidity and unenforceability claims from Count II is denied. (D.I.10-5)

6. HHP's motion to strike Symbol's allegations of unenforceability pursuant to Fed.R.Civ.P. 12(b)(6) or 12(f) is granted. (D.I.10-6)

7. HHP's motion for a more definite statement is denied. (D.I.10-7)

Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 31500927 (D.Del.)
**(Cite as: 2002 WL 31500927 (D.Del.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
CAREFIRST OF MARYLAND, INC., d/b/a Care
First Cross Blue Shield,
Plaintiff,
v.
CARE FIRST TRANSPORTATION, INC., d/b/a
Care First Transportation, a/k/a Care
First Transportation, Defendant.
**No. Civ.A. 02-229(MPT).**

Nov. 1, 2002.
Sheldon K. Rennie, Fox, Rothschild, O'Brien &
Frankel, LLP, Wilmington, DE, for Plaintiff.

*MEMORANDUM OPINION*

THYNGE, Magistrate J.

I. Introduction.

**\*1** Presently before the Court is Defendant's motion
to dismiss for Plaintiff's failure to state a claim upon
which relief can be granted pursuant to Rule 12(b)(6)
of the Federal Rules of Civil Procedure. For the
foregoing reasons stated below, Defendant's motion
to dismiss is DENIED.

II. Background.

A. Factual.

Plaintiff is a Maryland corporation, with its principle
place of business in Maryland, *D.I. 2 at 2,* and a
licensee of Blue Cross Blue Shield Association,
located in Chicago, Illinois. *D.I. 2 at 5 .* Plaintiff
serves as the parent corporation to a number of health
maintenance and preferred provider organizations.
*D.I. 2 at 3.* It services more than 5.2 million members
(including family members), who reside in various
states. Plaintiff has been the registered title owner of
a collective membership mark registration for the
mark "CAREFIRST" since June 6, 1989, and title
owner of trademark and service mark registrations for
the "CAREFIRST" mark as of July 4, 1989. The
mark has been used by plaintiff since 1977 through
their predecessor companies, prepaid health care

plans, also using the variations of
"MEDICAREFIRST" and "LIBERTY
CAREFIRST". *Id.*

Through contracted plans, plaintiff provides
comprehensive medical services, products and care to
its enrolled members. *D.I. 2 at 3.* The "CAREFIRST"
mark and name is used to indicate comprehensive
medical services rendered to or on behalf of their
members and preferred provider organizations. *D.I. 2
at 4.* The mark is used to distinguish plaintiff from
other health care service providers. It is used on
membership cards, enrollment kits, membership
packets and member newsletters. *Id.*

Plaintiff's membership predominantly resides in
Maryland, Virginia, West Virginia, Pennsylvania,
Delaware, New Jersey and the District of Columbia.
*D.I. 2 at 4.* Other members live in states including
Michigan, Florida, Kentucky and Kansas. These
members travel throughout the United States and
foreign countries. Each member receives a
membership card entitling them to payment for
emergency healthcare anywhere in the world and to
non-emergency health care with prior notification
and approval by the respective health care
maintenance or preferred provider owned by plaintiff.
Plaintiff's membership is honored by most health care
facilities in the United States. *Id.*

Currently, plaintiff's organizations have agreements
with more than 1,000 different companies under
which they will provide to all enrolled employees
medical services at a specified rate of coverage. *D.I.
2 at 4-5.* Several of these companies are located
throughout the country. *D.I. 2 at 5.*

Defendant is a Delaware corporation organized on
January 11, 2001, *D.I. 2 at 5,* with its principle place
of business in Delaware *D.I. 2 at 2.* Defendant
provides point to point transportation services in
Delaware and Pennsylvania. *D.I. 2 at 2.* These
services are promoted through defendant's "http//
www.carefirsttransport.com" website/domain name
and direct mailing. *Id.* The promotions are also
provided in connection with medical appointments,
dialysis, counseling and clinics to those who qualify
for "Senior Citizens Affordable Taxi" (SCAT). [FN1]
*D.I. 2 at 6*

FN1. In order to be eligible for SCAT, an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31500927 (D.Del.)
(Cite as: 2002 WL 31500927 (D.Del.))

individual must be "ambulatory handicapped" or over the age of 60. *D.I. 2 at 6.*

**\*2** Defendant does not sell and/or offer health care plans, enrollment kits, memberships, or preferred networks. *D.I. 11 at 2.* Defendant has applied for the trademark "CARE FIRST TRANSPORTATION ITS ALL ABOUT YOU" at the United States Patent and Trademark Office. *Id.*

B. Procedural.

On January 11, 2002, plaintiff sent defendant a letter requesting cease and desist of any and all use by defendant of the "CARE FIRST" mark. *D.I. 2 at 6.* Defendant did not respond and on March 27, 2002, plaintiff filed its complaint in this Court. *D.I. 9 at 1.* Defendant was served on April 2, 2002 but did not answer or otherwise respond to plaintiff's complaint. Plaintiff moved for entry of default on April 26, 2002, which was entered by the District Court Clerk on May 13, 2002. *Id.* Subsequently, plaintiff moved for default judgment pursuant to Fed.R.Civ.P. 55(b). *D.I. 9 at 1.*

In that motion, plaintiff requested the Court find in accordance with their complaint, that defendant committed: (1) trademark infringement of plaintiff's "CAREFIRST" trademark and service mark, and the "CAREFIRST" collective membership mark in violation of 15 U.S.C. § 1114; (2) common law trademark, service mark, collective membership mark and trade name infringement of the "CAREFIRST" mark and name; (3) unfair competition of the "CAREFIRST" mark and name in violation of 15 U.S.C. § 1125(a) and (b); (4) common law unfair competition; and (5) dilution of the "CAREFIRST" mark and name in violation of 15 U.S.C. § 1125(c). *D.I. 9 at 2.*

Upon a finding of these above claims, plaintiff then requests the Court to grant the following relief: (1) order that defendant and all persons in active concert or participation be permanently enjoined and restrained from further acts of trademark, service mark, collective membership mark and trade name infringement, dilution, and unfair competition of the "CAREFIRST" mark and name specifically from further use of said mark, trade name, or colorable variants thereof; (2) order that defendant's website/domain name be transferred to plaintiff; (3) order that defendant pay over all profits which were obtained as a result of defendant's willful appropriation, infringement, dilution and intentional

acts of infringement and unfair competition; (5) award plaintiff reasonable attorney's fees and expenses incurred as a consequence of defendant's willful appropriation, infringement, dilution and intentional acts of unfair competition. *D.I. 9 at 2-3.*

On August 7, 2002, defendant filed a motion to dismiss by failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). *D.I. 11 at 1.* Plaintiff responded to defendant's motion on August 19, 2002, reiterating their previous arguments and requesting defendant's motion to dismiss be stricken because: (1) a corporation cannot defend itself *pro se;* (2) the motion is untimely; and (3) that the motion was not made with an accompanying brief as required by District Court Rules. *D.I. 12 at 1-2.*

III. Discussion.

A. Standard for 12(b)(6) motion to dismiss.

**\*3** To grant a 12(b)(6) motion, a court must determine that the moving party is entitled to relief under the "reasonable reading of the pleadings, assuming the truth of all the factual allegations in the complaint." *Alexander v. Whitman, 114 F.3d 1392, 1397 (3d Cir.1997).* "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Id.*

It is well established that a complaint should be dismissed on the basis of failing to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson, 355 U.S. 41, 45 (1957).* However, this court does not have to accept every allegation as true. *Flanagan v. Shively, 783 F.Supp. 922, 927 (M.D.Pa.1992).* Nor should "[c]onclusory allegations of law, unsupported conclusions and unwarranted inferences ... be accepted as true." *Id. (citing Conley, 355 U.S. at 45-46).* Thus, although the plain statement required by Fed. R. Civ. P 8(a)(2) should be read in a light most favorable to the plaintiffs, the conclusory allegations unsupported by any factual assertions, made in plaintiffs' complaint cannot withstand a motion to dismiss.

Here, plaintiff does provide this Court with facts to support their claims against defendant. A "reasonable reading of the pleadings" in this matter shows that relief can be granted under the presented facts. Therefore, defendant is not entitled to dismiss

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31500927 (D.Del.)
**(Cite as: 2002 WL 31500927 (D.Del.))**

Page 3

plaintiff's motion pursuant to grant a Fed.R.Civ.P. 12(b)(6). The reasoning for this decision are set forth as follows.

B. Plaintiff's arguments against dismissal of their claim.

As mentioned above, plaintiff provides three reasons why defendant's motion to dismiss should be denied: (1) that a corporation cannot defend itself *pro se;* (2) defendant's motion is untimely; and (3) the motion was not made with an accompanying brief as required by District Court Rules. *D.I. 12 at 1-2.* All of plaintiff's arguments are correct.

Defendant must be represented by counsel. A corporation may appear in federal court only by representation of a licensed attorney. *Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993); U.S. v. Cocivera 104 F.3d 566 (3rd Cir.1996).* Here, defendant's motion to dismiss was filed by its president, Denette Dawson, who is not a Delaware licensed attorney. Thus, because defendant is a corporation appearing before this Court without proper representation, defendant's motion to dismiss is denied on this ground.

Defendant also failed to timely respond to plaintiff's allegations. A motion to dismiss must also be filed within twenty (20) days after service and summons. *Fed.R.Civ.P. 12(a).* Here, plaintiff filed its complaint on March 27, 2002. Defendant's motion was not filed until July 23, 2002, nearly four months later. Therefore, due to defendant's untimeliness, the motion should also be denied on that basis.

**\*4** Lastly, defendant failed to accompany its motion to dismiss with proper briefing. According to the Local District Court Civil Rule 7.1.2., a motion to dismiss must be accompanied by supportive briefing unless a party advised the Court that because of the nature of the motion, the involved parties believe no briefing is required. Beyond the motion itself, there are no further pleadings or other evidence on the record in support of defendant's motion to dismiss. Due to defendant's failure to observe the rules of this Court, defendant's motion should be denied. More importantly, defendant in its motion has failed to provide any bases for its position. In light of the absence of any factual or legal support for the motion, defendant's motion to dismiss is denied on that basis, as well.

IV. Conclusion

For the foregoing reasons discussed above, this Court finds that "reasonable reading of the pleadings" show no doubt that plaintiff can be relieved under the facts presented. Consequently, defendant's motion to dismiss for failure to state a claim is DENIED. An Order consistent with this opinion will follow.

*ORDER*

At Wilmington, this 1st day of November, 2002.

For the reasons set forth in the Memorandum Opinion dated November 1, 2002,

IT IS ORDERED that defendant's motion to dismiss for failure to state a claim is DENIED. 28 U.S.C. § 636 and Fed.R.Civ.P. 72 apply to any objections to the Memorandum Opinion and this Order.

Not Reported in F.Supp.2d, 2002 WL 31500927 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)
(Cite as: 2002 WL 1458853 (D.Del.))

**H**
Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
ONDEO NALCO COMPANY, a Delaware
Corporation, Plaintiff,
v.
EKA CHEMICALS, INC., a Delaware Corporation,
Defendant.
**No. Civ.A.01-537-SLR.**

June 10, 2002.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 10th day of June, 2002,
having reviewed the briefs submitted by the parties
with respect to plaintiff's pending motions;

IT IS ORDERED that plaintiff's motion to dismiss
defendant's counterclaims (D.I.23) is granted; and
plaintiff's motion for leave to filed an amended
complaint (D.I.42) is granted, for the reasons that
follow:

1. The court has jurisdiction over this action
pursuant to 35 U.S .C. § § 271 and 281 and 28
U.S.C. § 1338(a).

2. Motion to Dismiss Counterclaims. In analyzing a
motion to dismiss pursuant to Rule 12(b)(6), the court
must accept as true all material allegations of the
complaint and it must construe the complaint in favor
of the plaintiff. See *Trump Hotels & Casino Resorts,
Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d
Cir.1998). "A complaint should be dismissed only if,
after accepting as true all of the facts alleged in the
complaint, and drawing all reasonable inferences in
the plaintiff's favor, no relief could be granted under
any set of facts consistent with the allegations of the
complaint." *Id.* Claims may be dismissed pursuant to
a Rule 12(b)(6) motion only if the plaintiff cannot
demonstrate any set of facts that would entitle him to
relief. See *Conley v. Gibson,* 355 U.S. 41, 45-46
(1957). The moving party has the burden of
persuasion. See *Kehr Packages, Inc. v. Fidelcor, Inc.,*
926 F.2d 1406, 1409 (3d Cir.1991).

3. Plaintiff argues that defendant's counterclaims,
which allege that plaintiff's products infringe three of
defendant's patents, [FN1] fail to provide fair notice
of the claims and the grounds upon which they rest,
as required by Federal Rule of Civil Procedure 8(a).
*Conley,* 355 U.S. at 47 (Rule 8(a) requires that a
claim provide "fair notice of what the plaintiff's claim
is and the grounds upon which it rests"). Plaintiff
asserts that the counterclaims insufficiently identify
which products are accused of infringement [FN2]
and fail to adequately plead induced infringement.
[FN3] Plaintiff also objects that the counterclaims do
not specify when the alleged infringement occurred
(the '961 and '150 patents are now expired) and they
combine the direct, contributory, and induced
infringement claims into one count for each patent.

> FN1. United States Patent No. 5,603,805
> ("the '805 patent"); United States Patent No.
> 4,385,961 ("the '961 patent"); and United
> States Patent No. 4,388,150 ("the '150
> patent").

> FN2. The infringing products are described
> as "Nalco's products, including the 8692
> product." (D.I.22, ¶ ¶ 29,34,40) The only
> additional clue to the identity of the alleged
> infringing products is the averment "Nalco
> makes and sells products, including the
> product numbered 8692, ... that are used in
> paper-making processes ..." or "to make
> paper." (*Id.* at ¶ 24)

> FN3. Defendant simply avers that "[u]pon
> information and belief, Nalco has induced
> the infringement of the claims of the ...
> patent, in violation of 35 U.S.C. § 271(b),
> by selling its products, including the 8692
> product, and in instructing and encouraging
> others in the use of its products, including
> the 8692 product." (D.I.22, ¶ ¶ 30,36,42)

4. The court agrees with plaintiff that the
counterclaims do not satisfy Rule 8(a). With the
exception of the description of the 8692 product, the
pleadings are too vague to provide plaintiff with fair
notice of which products are accused of infringing
defendant's patents. See *Conley,* 355 U.S. at 47; *Gen-
Probe, Inc. v. Amoco Corp.,* 926 F.Supp. 948, 961
(S.D.Cal.1996) (vague reference to "products and/or
kits" does not provide adequate notice). *Compare*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)
**(Cite as: 2002 WL 1458853 (D.Del.))**

Page 2

*Interdigital Technology Corp. v. OKI America, Inc.,* 845 F.Supp. 276, 283 (E.D.Pa.1994) (patent claim need not identify specific products that are alleged to infringe by name so long as they are "sufficiently identified in some way"). In addition, the pleadings fail to allege direct infringement by a party other than ONDEO Nalco and, therefore, insufficiently plead induced infringement. *See Met-Coil Systems Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed.Cir.1986) (direct infringement required element of induced infringement); *Shearing v.. Optical Radiation Corp.,* 30 U.S.P.Q. 1878, 1880 (D.Nev.1994) (complaint must allege direct infringement by someone other than the inducer).

**\*2** 5. Based on the above, the court dismisses defendant's counterclaims with leave to amend.

6. Motion for Leave to File a First Amended Complaint. Under Federal Rule of Civil Procedure 15(a), leave to file amended complaints "shall be freely given when justice so requires." *See also Gooding v. Warner-Lambert Co.,* 744 F.2d 354, 358 (3d Cir.1984). Plaintiff seeks leave to amend its complaint (a) to remove two alien defendants whom plaintiff and defendant have agreed to dismiss with prejudice (see Stipulation and Order, D.I. 20, ¶ 1); and (b) to add declaratory judgment counts related to invalidity of the patents-in-suit. Defendant objected that the proposed amended complaint would be deficient for failure to plead with specificity inequitable conduct and for asserting "unenforceability" of the subject patents in combination with invalidity. In response, plaintiff added more specific allegations of inequitable conduct with respect to the procurement of the '805 patent to a revised first amended complaint (D.I.45, Ex. D, ¶ ¶ 22-54); plaintiff makes no inequitable conduct allegations with respect to the '150 patent or the '961 patent (*Id.* at 5-6; Ex. D, ¶ ¶ 55-65). Based on the above, the court grants plaintiff leave to file a first amended complaint.

Not Reported in F.Supp.2d, 2002 WL 1458853 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 179926 (E.D.La.)
**(Cite as: 2001 WL 179926 (E.D.La.))**

Page 1

▷
Only the Westlaw citation is currently available.

.

United States District Court, E.D. Louisiana.
In re PAPST LICENSING GmbH PATENT
LITIGATION
**No. CIV. A. MDL 1298, CIV. A. 99-3118.**

Feb. 22, 2001.

MEMORANDUM AND ORDER

SEAR, District J.

*Background*

**\*1** On December 26, 2000, Papst Licensing GmbH
& Co. KG ("Papst") filed its complaint for patent
infringement against International Business Machines
Corporation ("IBM"). Papst alleges that IBM "has
made, used, sold, or offered to sell to customers in
the United States or imported into the United States
products that embody the elements of at least one
claim"   [FN1] of the twenty patents specifically
identified in the complaint by patent number and
issue date. Papst does not identify the IBM products
which allegedly infringe the patents.

> FN1. *See* Paragraphs 26 and 27 of Papst's
> Complaint for Patent Infringement, filed
> Dec. 26, 2000.

In response to the complaint, IBM has filed under
FRCP 12(e) a motion requesting a more definite
statement of which IBM products are alleged to
infringe the patent claims asserted against it.

*Discussion*

FRCP 12(e) provides that if a pleading "...is so vague
or ambiguous that a party cannot reasonably be
required to frame a responsive pleading, the party
may move for a more definite statement before
interposing a responsive pleading."

IBM asserts and Papst does not contest that there are
a total of 503 patent claims in the twenty patents at
issue in this lawsuit. Whether a particular product
infringes a particular patent claim first requires the
interpretation of the claim, and then a comparison of
the interpreted claim to the allegedly infringing
product. *Markman v. Westview Instruments, Inc., 52
F.3d 967, 976, aff'd, 517 U.S. 370, 116 S.Ct. 1384,
134 L.Ed.2d 577 (1996)*. Under Papst's complaint,
IBM will be required to interpret 503 claims, and
then compare them to any IBM product that contains
a hard disk drive. IBM does not object to interpreting
503 claims. However, it does object to having to
compare those claims to all of its products containing
hard disk drives.

IBM filed its Rule 12(e) motion on January 31,
2001. On February 1, 2001, counsel for Papst wrote a
letter to counsel for IBM, forwarding a document that
lists on a patent-by-patent basis the IBM hard disk
drives that Papst alleges are infringed. Several
hundred IBM hard disk drives are described by
model and part numbers. There are as many as one
hundred allegedly infringing products listed for some
patents, and only one listed for another patent. Papst
prefaces its list by informing IBM that it does not
consider the list to be exclusive:

> Papst Licensing's charges of infringement are not
> limited to the IBM hard disk drives that are
> specifically identified herein. Rather, Papst
> Licensing's charges of infringement are intended to
> include all IBM hard disk drives that have a
> construction that is similar from an infringement
> standpoint to that of the IBM hard disk drives that
> are specifically identified herein.

Upon receipt of this list, IBM offered to withdraw
its 12(e) motion if Papst would stipulate that its
infringement allegations would be limited to the
products specifically identified in the list. IBM and
Papst have apparently been unable to reach a
stipulation.

Papst argues that its complaint complies with the
sample patent infringement complaint provided in
Federal Form 16. It is apparent, however, that the
number of patents and products in the case before me
are far greater than those contemplated in the sample
complaint, which would justify a request for greater
specificity.

**\*2** Papst further contends that it filed a similar 12(e)
motion against Minebea in related action no. 99-
3118, which was denied. However, in that motion,
Papst sought to have Minebea identify the particular
claims of each patent which Minebea claims were
invalid. IBM is not making such a request. IBM is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 179926 (E.D.La.)
**(Cite as: 2001 WL 179926 (E.D.La.))**

Page 2

willing to interpret each of the 503 claims of the twenty patents, but it seeks to limit the number of comparisons it will have to make to IBM products by obtaining a more specific description of the alleged infringing products.

I find that Papst's complaint must be amended to specifically identify the IBM products which it alleges infringe upon one or more claims of each of the twenty patents.

Accordingly,

IT IS ORDERED, that IBM's FRCP 12(e) motion for a more definite statement is GRANTED;

IT IS FURTHER ORDERED, that Papst amend its complaint on or before March 20, 2001, in order to specifically identify on a patent-by-patent basis the IBM products which it alleges infringe upon one or more of the claims of each of the twenty patents.

Not Reported in F.Supp.2d, 2001 WL 179926 (E.D.La.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: 2004 WL 2346152 (S.D.N.Y.))**

Page 1

▷
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
AGILENT TECHNOLOGIES, INC., Plaintiff,
v.
MICROMUSE, INC., Defendant.
**No. 04 Civ. 3090(RWS).**

Oct. 19, 2004.

Christian & Barton, Richmond, VA, By: Michael W. Smith, Craig T. Merritt, R. Braxton Hill, for Plaintiff, of counsel.

Gray Cary Ware & Freidenrich, San Diego, CA, By: Edward H. Sikorski, John Allcock, Sean C. Cunningham, Megan Whyman Olesek, for Plaintiff.

Brown Raysman Millstein Felder & Steiner, New York, NY, By: Seth Ostrow, Jeffrey P. Weingart, Eric C. Osterberg, for Defendant, of counsel.

Willcox & Savage, Norfolk, VA, By: Michael R. Katchmark, Gary A. Bryant, for Defendant, of counsel.

*OPINION*

SWEET, J.

**\*1** Defendant Micromuse, Inc. ("Micromuse") has moved pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint of plaintiff Agilent Technologies, Inc. ("Agilent") alleging patent infringement, and, in the alternative, for a more definite statement pursuant to Rule 12(e), and to add Hewlett Packard Company ("H-P") as a necessary party under Rules 12(b)(7) and 19(a) of those same Rules. Micromuse has also moved to disqualify Gray Cary Ware & Freidenrich, LLP ("Gray Cary") from representing Agilent in this action, Gray Cary having previously represented NetWork Harmoni, Inc. ("Network Harmoni"), an entity acquired by Micromuse prior to the filing of this action. Agilent has cross-moved for leave to file a supplemental declaration in opposition to Micromuse's motion to disqualify Gray Cary. For the reasons set forth below, Micromuse's motion to dismiss is denied, the motion for a more definite statement is granted, the motion to

add H-P as a party is denied at this time with leave granted to renew, and the motion to disqualify is denied at this time with leave granted to renew. Agilent's cross-motion for leave to file a supplemental declaration is granted.

*Prior Proceedings*

The complaint in this patent infringement action was filed in the United States District Court for the Eastern District of Virginia, Norfolk Division, on November 10, 2003.

On December 17, 2003, Micromuse filed the instant motions in the Eastern District of Virginia as well as a motion to transfer the action to this district, which latter motion was granted by order of the Honorable Raymond A. Jackson filed on April 16, 2004. The action was transferred to this district on April 22, 2004.

The remaining motions were argued and marked fully submitted on May 19, 2004.

*The Complaint*

The following facts are drawn from Agilent's complaint and do not constitute findings of fact by the Court.

According to the complaint, Agilent is a Delaware corporation having its headquarters in Palo Alto, California, and significant operations in Fort Collins, Colorado. It is alleged that Micromuse is a Delaware Corporation with headquarters in San Francisco, California, and significant operations in Northern Virginia, Georgia, Illinois, Texas, New York, London, and other overseas destinations. Subject matter jurisdiction is alleged under 28 U.S.C. § § 1331 and 1338.

With regard to the factual background of the complaint, it is alleged that:
  6. Agilent is a leading provider of components, test, measurement, monitoring and management solutions for the communications industry. Agilent's broad set of solutions and services includes, among other technologies, optical, wireless, Internet and broadband technologies that span the entire communications life cycle. Having invested substantial resources in the development

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
(Cite as: 2004 WL 2346152 (S.D.N.Y.))

Page 2

of these technologies, Agilent maintains a portfolio of patents covering its inventions, including the patents at issue.

**\*2** 7. On October 24, 2000, United States Patent No. 6,138,122 ("the '122 Patent"), entitled "Modeling of Internet Services," was duly and legally issued to Mark D. Smith, Deborah L. Caswell and Srinivas Ramanathan. All rights, title and interest in the '122 Patent were assigned to Agilent, which remains the sole owner of the '122 Patent....

8. On January 1, 2002, United States Patent No. 6,336,138 ("the '138 Patent"), entitled "Template-Driven Approach For Generating Models On Network Services," was duly and legally issued to Deborah L. Caswell, Srinivas Ramanathan, James D. Hunter, Scott S. Neal, Frederick A. Sicker and Mark D. Smith. All rights, title and interest in the '138 Patent were assigned to Hewlett-Packard Company. Agilent and Hewlett-Packard Company now jointly own the '138 Patent, and Agilent has the exclusive right to enforce the '138 Patent against Micromuse....

(Compl. at ¶ ¶ 6-8.) It is further alleged that Micromuse "makes, sells, or offers products for sale in this district that infringe Agilent's patents." (Compl. at ¶ 4.)

The complaint contains two counts and Micromuse's liability is alleged as follows:

COUNT ONE
Infringement of U.S. Patent No. 6,138,122
9. Agilent realleges the foregoing paragraphs.
10. Agilent is informed and believes that Micromuse has directly infringed and continues to infringe, has induced and continues to induce, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of the '122 Patent.
11. Agilent is informed and believes that Micromuse's acts of patent infringement are and continue to be willful and deliberate.
12. As a result of Micromuse's patent infringement, Agilent has suffered damages in an amount not yet determined, and will continue to suffer damages in the future.
13. Unless an injunction is issued enjoining Micromuse and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing the '122 Patent, Agilent will be greatly and irreparably harmed.

COUNT TWO
Infringement of U.S. Patent No. 6,336,138

14. Agilent realleges the foregoing paragraphs.
15. Agilent is informed and believes that Micromuse has directly infringed and continues to infringe, has induced and continues to induce, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of the '138 Patent.
16. Agilent is informed and believes that Micromuse's acts of patent infringement are and continue to be willful and deliberate.
17. As a result of Micromuse's patent infringement, Agilent has suffered damages in an amount not yet determined, and will continue to suffer damages in the future.
18. Unless an injunction is issued enjoining Micromuse and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf from infringing the '138 Patent, Agilent will be greatly and irreparably harmed.
**\*3** (Compl. at ¶ ¶ 9-18.)

*Discussion*

I. *Micromuse's Motion To Dismiss Is Denied*

Micromuse has moved to dismiss Agilent's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the complaint fails to meet the notice requirements of Rule 8(a) of those same Rules.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (citing *Gregory v.. Daly,* 243 F.3d 687, 691 (2d Cir.2001)), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). In other words, " 'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." ' *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York,* 375 F.3d 168, 176 (2d Cir.2004) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
(Cite as: 2004 WL 2346152 (S.D.N.Y.))

set of facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000); *accord Eternity Global Master Fund,* 375 F.3d at 176-77.

"The indulgent standard evident in these precedents is codified in Rule 8, which requires no more than 'a short and plain statement of [a] claim showing that the pleader is entitled to relief." ' *Id.* at 177 (quoting Fed.R.Civ.P. 8(a)(2)) (alteration in original); *see also Wynder v. McMahon,* 360 F.3d 73, 76-77 & n. 5 (2d Cir.2004) (referring to the "bare-bones standards of Rule 8" and noting that "Rule 8 pleading is extremely permissive"). The Supreme Court has interpreted Rule 8 "not to require a claimant to set out in detail the facts upon which he bases his claim." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Indeed,

> The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid.... All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.

*Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002); *see also Scutti Enters., LLC v. Park Place Ent'mt Corp.,* 322 F.3d 211, 215 (2d Cir.2003) ( " 'More extensive pleading of fact is not required because the Federal Rules of Procedure provide other devices besides pleadings that will serve to define the facts and issues and to dispose of unmeritorious claims." ') (quoting 2 James Wm. Moore, *et al., Moore's Federal Practice* § 8.04[1] (3d ed.1999) (citation omitted)). Whether a complaint satisfies Rule 8(a)(2) is determined by whether the pleading provides fair notice to the opposing party. *See Conley,* 355 U.S. at 47; *see also Wynder,* 360 F.3d at 79 ("The key to Rule 8(a)'s requirements is whether adequate notice is given."). Accordingly, dismissal for failure to comply with the requirements of Rule 8 " 'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." ' *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)).

**\*4** Here, Agilent's complaint establishes the jurisdiction of this Court, sets forth the ownership of the patents in suit and alleges that Micromuse makes, sells, or offers products for sale that infringe Agilent's patents. The complaint further alleges that Micromuse is liable for direct infringement, contributory infringement and infringement by inducement. Agilent has provided a "short and plain statement" of its claims against Micromuse and the nature of those claims is discernible. Fed.R.Civ.P. 8(a)(2). Indeed, it would be difficult to frame a more skeletal pleading.

Micromuse nonetheless argues that dismissal of Agilent's complaint is appropriate because the complaint fails to specify any allegedly infringing product, fails to identify any allegedly infringing conduct, and fails to set forth any of the other actors implicated by the allegations that Micromuse has contributed to and induced patent infringement. The absence of allegations such as those described does not demonstrate that the harsh sanction of dismissal is appropriate here, as this absence does not make it "appear[ ] beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief," *Sweet,* 235 F.3d at 83, nor that the complaint is " 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." ' *Simmons,* 49 F.3d at 86 (quoting *Salahuddin,* 861 F.2d at 42); *see generally Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 235 (1959) ("It may well be that petitioner's complaint as now drawn is too vague, but that is no ground for dismissing his action.").

Where, as here, a pleading is sufficient to provide notice of the claim but does not contain sufficient information to allow a responsive pleading to be framed without risk of prejudice, the proper remedy is a motion for a more definite statement under Rule 12(e), Fed.R.Civ.P. *See, e.g., Scott v. City of Chicago,* 195 F.3d 950, 952 (7th Cir.1999); *Sisk v. Texas Parks & Wildlife Dep't,* 644 F.2d 1056, 1059 (5th Cir.1981); *Harman v. Nat'l Bank of Arizona,* 339 F.2d 564, 567 (9th Cir.1964); *but compare Ondeo Nalco Co. v. Eka Chems., Inc.,* No. 01 Civ. 537(SLR), 2002 WL 1458853, at \*1-2 (D. Del. June 10, 2002) (dismissing defendant's counterclaims where it was unclear which products were being accused, concluding that the pleading was "too vague to provide plaintiff with fair notice," and granting leave to amend).

## II. *Micromuse's Motion For A More Definite Statement Is Granted*

Rule 12(e) of the Federal Rules of Civil Procedure provides in pertinent part that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: 2004 WL 2346152 (S.D.N.Y.))**

Page 4

required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e). Rule 12(e) applies only in limited circumstances:

*5 [T]he pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed; in other words the pleading must be sufficient to survive a Rule 12(b)(6) motion to dismiss. At the same time, the pleading also must be so vague or ambiguous that the opposing party cannot respond to it, even with a simple denial as permitted by Rule 8(b), with a pleading that can be interposed in good faith or without prejudice to himself.

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1376 at 311 (3d ed.2004) (footnote omitted); *see Humpherys v. Nager,* 962 F.Supp. 347, 352-53 (E.D.N.Y.1997) ("A 12(b)(6) motion is one made for a failure to state a claim, while a 12(e) motion is proper when a complaint pleads a viable legal theory, but is so unclear that the opposing party cannot respond to the complaint."); *but compare Home & Nature Inc. v. Sherman Speciality Co.,* 322 F.Supp.2d 260, 265 (E.D.N.Y.2004) ("Rule 12(e) motion should be denied if a complaint comports with the liberal pleading requirements of Rule 8(a).") (collecting cases).

Although motions pursuant to Rule 12(e) are generally disfavored where prompt resort to discovery may provide an adequate means for ascertaining relevant facts, *see id.,* courts have considered Rule 12(e) relief appropriate in patent infringement cases where a plaintiff has failed to identify any allegedly infringing product or products. *See, e.g., In re Papst Licensing GmbH Patent Litig.,* Nos. MDL 1298 & 99 Civ. 3118, 2001 WL 179926, at *2 (E.D.La. Feb. 22, 2001) (concluding that the plaintiff's complaint must be amended to specifically identify which of the defendant's products are alleged to have infringed the plaintiff's patents); *cf. In re Independent Serv. Org. Antitrust Litig.,* 85 F.Supp.2d 1130, 1169 (D.Kan.2000) (denying the plaintiff's motion for summary judgment on a defendant's counterclaim where the plaintiff argued that it did not have adequate notice of which of its devices allegedly infringed the defendant's patents, observing that the plaintiff had already answered the counterclaim and that, if the plaintiff "did not truly know which parts were covered by the patents identified, it could have filed a motion for a more definite statement under Rule 12(e)"). The cases cited

by Agilent in opposition to Micromuse's motion do not suggest that a contrary result is required here, as they stand for the propositions that a pleading need not identify every infringing product where some other limiting parameter has been set forth or at least one purportedly infringing product has been identified. *See Symbol Tech., Inc. v. Hand Held Prods., Inc.,* No. 03 Civ. 102(SLR), 2003 WL 22750145, at *3 (D.Del. Nov. 14, 2003) (denying a Rule 12(e) motion where there was a "finite" set of potentially infringing products under identified patents held by the defendant); *Oki Elec. Indus. Co. v. LG Semicon Co.,* No. 97 Civ. 20310(SW), 1998 WL 101737, at *3 (N.D.Cal. Feb. 25, 1998) (denying a motion to dismiss where the plaintiff identified infringing products by specifying that the products concerned were "devices that embody the patented methods, including 4 megabit and higher density DRAMs") (internal quotation marks omitted), *aff'd,* 243 F.3d 559 (Fed.Cir.2000).

*6 Agilent's complaint does not specify which products infringed plaintiff's patents; it merely states that the alleged infringements occurred as a result of the fact that Micromuse "makes, sells, or offers products for sale ... that infringe Agilent's patents." (Compl. at ¶ 4.) Although Micromuse's papers submitted in opposition to Micromuse's various motions suggest that Micromuse possesses at least four infringing products, those products have not been formally accused. Under these circumstances, Micromuse is entitled to know which of its products or services are alleged to have infringed Agilent's patents and a more definite statement setting forth that information is appropriate.

Micromuse has also argued that Agilent's complaint fails to identify the primary infringer with respect to the contributory and inducement claims. Micromuse has cited to a single unpublished authority in support of its argument that such identification is required to render a pleading answerable, and this authority, *Net Moneyin, Inc. v. Mellon Fin. Corp.,* No. 01 Civ. 441(TUC)(RCC), slip op. (D.Ariz. July 30, 2003), itself cites no other case law directly on point. Micromuse has accordingly failed to establish that relief under Rule 12(e) with respect to the identity of any primary infringers is appropriate.

Where a motion made under Rule 12(e) has been granted, the order of the court to provide a more definite statement must be obeyed within ten days after notice of the order "or within such other time as the court may fix." Fed.R.Civ.P. 12(e). Agilent is directed to comply with the grant of Micromuse's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
(Cite as: 2004 WL 2346152 (S.D.N.Y.))

Page 5

motion for a more definite statement by filing and serving an amended complaint within thirty (30) days of entry of this order and opinion.

### III. *H-P Will Not Be Deemed A Necessary Party At This Time*

Micromuse argues that, if Agilent's complaint is not dismissed, H-P, as co-owner of the '138 Patent, should be joined as a necessary party to this lawsuit, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. In addition, Micromuse asserts that if H-P is not so joined, the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7).

"Fed.R.Civ.P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a 'necessary' party under Rule 19(a)." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d. Cir.2000). Rule 19(a) provides in relevant part that,

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

*7 Fed.R.Civ.P. 19(a). Second, if a party is deemed necessary, it then must be determined whether the party's absence warrants dismissal pursuant to Rule 19(b), Fed.R.Civ.P. *See Viacom Int'l*, 212 F.3d at 725. "If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." *Id.* at 724 (citing *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir.1990)).

As a general matter, "United States patent law ... requires that all co-owners normally must join as plaintiffs in an infringement suit." *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed.Cir.2001); *see also Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468

(Fed.Cir.1998) (stating that, "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiff in an infringement suit") (footnote omitted); *see generally Waterman v. MacKenzie*, 138 U.S. 252, 255- 56 (1891). As one court has explained, since " 'all co-owners have standing to sue for infringement, if all the co-owners are not joined in an infringement suit, there may be a risk that the defendant will be subject to multiple suits." ' *E.Z. Bowz, L.L.C. v. Prof'l Prod. Research Co.*, No. 00 Civ. 8670(LTS)(GWG), 2003 WL 22064257, at *3 (S.D.N.Y. Sept. 5, 2003) (quoting *Int'l Bus. Machs. Corp. v. Conner Peripherals, Inc.*, No. 93 Civ. 20591(RMW), 1994 WL 409493, at *3 (N.D.Cal. Jan. 28, 1994)); *see also Union Trust Nat'l Bank v. Audio Devices, Inc.*, 295 F.Supp. 25, 27 (S.D.N.Y.1969) ("That all co-owners be parties to a suit is a necessary requirement if conflicting decisions about the same patent (for example, its validity) are to be avoided."); *cf. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed.Cir.1991) ("The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer.").

"Since the introduction of Fed.R.Civ.P. 19 and the 1966 amendments to the rule, however, 'courts are less concerned with abstract characterizations of the parties and more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of the patent co-owner." ' *E.Z. Bowz*, 2003 WL 22064257, at *3 (quoting *Michaels of Oregon Co. v. Mil-Tech, Inc.*, No. 95 Civ. 908(MA), 1995 WL 852122, at *1 (D.Or. Oct. 17, 1995)); *cf. Howes v. Med. Components, Inc.*, 698 F.Supp. 574, 576 (E .D. Pa.1988) ("[T]he adoption of the 1966 amendments to Rule 19 'makes inappropriate any contention that patent co-owners are *per se* indispensable in infringement suits." ' ) (quoting *Catanzaro v.. Int'l Tel. & Tel. Corp.*, 378 F.Supp. 203, 205 (D.Del.1974)).

Thus, where the co-owner of a patent or other entity or individual whose interest in a patent might be directly affected by litigation has specifically disclaimed all interest in pursuing litigation related to the patent in favor of the party who has brought the suit, courts have held that joinder of the co-owner or other entity or individual is not necessary. *See Vaupel Textilmaschinen*, 944 F.2d at 875-76 (concluding that the policy to join an owner when an exclusive licensee bring suit in order to preclude the possibility of duplicative lawsuits was not undercut where,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
(Cite as: 2004 WL 2346152 (S.D.N.Y.))

Page 6

pursuant to express agreements, the right to sue rested solely with the licensee and denying the defendant's Rule 19 motion); *E-Z Bowz*, 2003 WL 22064257, at *4-5 (holding that the defendant would not be subject to a substantial risk of incurring inconsistent obligations where the former co-owner of certain patents had relinquished her interest in the patents as well as any rights of action relating to the patents and concluding that the rights of the parties could be fairly adjudicated without joinder of the absent former co-owner); *Michaels of Oregon*, 1995 WL 852122, at *2-3 (determining that an absent co-owner of certain patents was not a necessary party where that absent co-owner had entered into an agreement with the plaintiff providing that only the plaintiff might file actions for patent infringement); compare *Parkson Corp. v. Andritz Sprout-Bauer, Inc.*, 866 F.Supp. 773, 775 (S.D.N.Y.1995) (concluding that it was not possible to determine whether an owner was a necessary party to an action brought by an exclusive licensee where the licensing agreement did not unambiguously give the licensee control over whether infringement claims should be brought); *Howes*, 698 F.Supp. at 577 (concluding that an absent patent co-owner was a necessary party where the defendants might face the risk of relitigation by that co-owner).

**\*8** Although the complaint alleges that Agilent and H-P jointly own the '138 Patent, it further alleges that Agilent enjoys the exclusive right to enforce the '138 Patent against Micromuse. In opposition to Micromuse's motion, Agilent has submitted a redacted version of an August 22, 2003 agreement between Agilent and H-P (the "August Agreement") regarding their respective rights concerning the enforcement of the '138 Patent. According to the August Agreement, H-P grants to Agilent "the exclusive right to license the ['138] Patent to Micromuse." (Declaration of Megan Whyman Olesek, dated Jan. 15, 2004 ("Olesek Decl."), Exh. X at ¶ 1.) H-P further grants to Agilent "the exclusive right to enforce the ['138] Patent to and against Micromuse" including by "filing and prosecuting the Agilent Patent Suit to final judgment, including appeals." [FN1] (*Id.*) H-P has also agreed that

> FN1. The "Agilent Patent Suit" is defined as "a patent infringement lawsuit against Micromuse." (Olesek Decl., Exh. X, preamble.)

[A]s between the parties, Agilent shall have the full power and authority to control the Agilent Patent Suit and any settlement thereof and shall retain one

hundred percent (100%) of any damages or compensation received in connection with the Agilent Patent Suit or settlement thereof. (*Id.* at ¶ 3.)

Based on the terms of the August Agreement, it does not appear that H-P's absence from this lawsuit will subject Micromuse to any "substantial risk of incurring double, multiple, or otherwise inconsistent obligations," Fed.R.Civ.P. 19(a), because H-P has no independent capacity to file a patent infringement action against Micromuse based on the '138 Patent, having expressly disclaimed any interest in pursuing a claim against Micromuse with respect to the '138 Patent. In light of the broad contractual language by which H-P has granted Agilent the exclusive right to enforce the '138 Patent against Micromuse, the absence of any provision in the August Agreement stating that H-P agrees to be bound by the outcome of this litigation is not determinative here. Likewise, the absence of an affirmative representation that H-P has relinquished its right to sue Micromuse for any purported past infringement does not, contrary to the argument advanced by Micromuse, require joinder of H-P. On the facts now available, it thus appears that complete relief can be accorded among those already parties.

Micromuse has noted, however, that the August Agreement makes explicit reference to the existence of a Master Patent Ownership and License Agreement and that the August Agreement is an agreement among Agilent and H-P "together with Hewlett Packard Development Company, L.P." (Olesek Decl., Exh. X, preamble), an entity that, according to Micromuse, may also have an interest in the '138 Patent. Micromuse has further observed that the redacted form of the August Agreement does not set forth its effective term or termination provisions and suggests that the absence of such provisions raises questions of whether H-P enjoys a reversion, termination, or expiration interest in the '138 Patent, questions which may, in turn, affect any determination as to whether H-P is a necessary party here. *See, e.g., Moore U.S.A. Inc. v. Standard Register Co.*, 60 F.Supp.2d 104, 109-110 (W.D.N.Y.1999) (concluding that a licensor was a necessary party to a patent infringement action despite the existence of an agreement with the plaintiff licensee granting the licensee sole and exclusive rights to sue for infringement where the agreement was of fixed term and where the licensor retained a reversionary interest in the patent).

**\*9** Although the facts presently available do not

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
(Cite as: 2004 WL 2346152 (S.D.N.Y.))

Page 7

establish that H-P is a necessary party, Micromuse's observations suggest that developments resulting from discovery may cause the issue of H-P's joinder to be revisited. Accordingly, Micromuse's motion to join H-P is denied at this time and leave is hereby granted to renew the motion after further discovery.

IV. *Gray Cary Will Not Be Disqualified At This Time*

Micromuse has moved to disqualify Gray Cary from representing Agilent in this matter on the grounds that, for many years, Gray Cary provided extensive legal representation to Network Harmoni, a company acquired by Micromuse in August 2003. Micromuse argues that Network Harmoni's suite of proprietary intelligent software agents is now part of Micromuse's product offerings and, under the current complaint, potentially the target of Agilent's patent infringement claims. Micromuse asserts that Gray Cary thus formerly represented Network Harmoni in matters substantially related to the subject matter of this action and must be disqualified from representing Agilent as a result. Agilent opposes Micromuse's motion, arguing that in its representation of Network Harmoni Gray Cary was at all times in an adverse relationship to Micromuse and that Gray Cary's prior representation of Network Harmoni involved no confidential information about the product or products at issue in the present action. [FN2]

> FN2. Following briefing on Micromuse's motion, Agilent moved for leave to submit a supplemental declaration, claiming the need to respond to certain contentions in Micromuse's reply papers, and Micromuse opposed the motion. Agilent's motion for leave to submit the supplemental declaration is granted. Although submission of supplemental papers is often more of a hindrance than a help, the issues addressed in the supplemental papers presented here are carefully cabined and respond to arguably new contentions contained in reply papers on the underlying motion. Where this is true, and where, as here, the opposing party has disclaimed any prejudice resulting from the submission of the supplemental papers, there is no evidence of bad faith by the party seeking to submit the supplemental papers, and "the parties will be best served by the Court's deciding the ... issue presented to it on the most complete factual basis possible," *Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*, No. 03 Civ. 200(GEL), 2003 WL 1618534, at *1 (S.D.N.Y. Mar.

27, 2003), leave to submit supplemental papers is appropriately granted.

Motions to disqualify counsel have long been disfavored in this Circuit. *See, e.g., Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir.1983) (enumerating the reasons for which disqualification motions are disfavored); *Bennett Silvershein Assoc. v. Furman*, 776 F.Supp. 800, 802 (S.D.N.Y.1991) ("The Second Circuit has indeed been loathe to separate a client from his chosen attorney ....") (collecting cases). "Disqualification motions are often made for tactical reasons, and thereby unduly interfere with a party's right to employ counsel of his choice." *Skidmore v. Warburg Dillon Read LLC*, No. 99 Civ. 10525(NRB), 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001) (citing *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979)). Moreover, disqualification motions, "even when made in the best of faith ... inevitably cause delay." *Evans*, 715 F.2d at 792 (quoting *Nyquist*, 590 F.2d at 1246). A "high standard of proof" is therefore required from one who moves to disqualify counsel. *Id.* at 791 (quoting *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir.1978)). The appearance of impropriety alone does not warrant disqualification. *See Nyquist*, 590 F.2d at 1246-47.

In determining whether an attorney can oppose his former client, courts evaluate whether the new matter is substantially related to the subject matter of the prior representation. An attorney may be disqualified from representing a client in a particular case if:

> (1) the moving party is a former client of the adverse party's counsel;
> **\*10** (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Id.* at 791. "Under this standard, proof of substantial similarity must be 'patently clear' to warrant disqualification." *Decora Inc. v. DW Wallcovering, Inc.*, 899 F.Supp. 132, 136 (S.D.N.Y.1995) (quoting *Government of India*, 569 F.2d at 739-40) (additional citations omitted). A "substantial relationship" exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation. *See U.S. Football League v. Nat'l Football League*, 605 F.Supp. 1448, 1459-60 & n. 25 (S.D.N.Y.1985) ("It is the congruence of *factual* matters, rather than areas of law, that establishes a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 8
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: 2004 WL 2346152 (S.D.N.Y.))**

substantial relationship between representations for disqualification purposes.") (emphasis in original).

According to Micromuse, Network Harmoni evolved from a research project in network visualization software conducted at Curtin University in Perth, Australia. In 1996, the founders of the project formed NDG Software, Inc., and in November 1998 the company received its first venture funding and moved its headquarters from Australia to San Diego, California. It is alleged that Gray Cary initially provided advice, counsel and representation in establishing and structuring this U.S.-based company and its operations, and served as outside counsel. Subsequently, NDG Software, Inc., changed its name to Network Harmoni, Inc.

During the time of Gray Cary's representation, Network Harmoni developed and licensed to its customers, including Agilent and Micromuse, proprietary intelligent software agents designed to provide users with information on the status and security of computer networks, systems and applications. Micromuse contends that Gray Cary, during its five-year relationship with Network Harmoni, represented Network Harmoni in its corporate affairs, employment issues, in prosecuting its patents and trademarks and handling other patent and trademark-related matters, in evaluating third-party patents, and in drafting and negotiating licensing agreements, financing instruments and other corporate-related documents.

Over the course of its representation of Network Harmoni, Gray Cary is alleged to have drafted and filed several patent applications with the United States Patent and Trademark Office relating to certain aspects of Network Harmoni's software products and was informed of virtually all attributes and potential uses of Network Harmoni's suite of proprietary intelligent software agents, as well as the company's plans for future software applications and services.

According to Micromuse, Gray Cary represented Network Harmoni in its negotiations to be purchased by Micromuse, and Network Harmoni and Micromuse executed a non-disclosure agreement to assure that the parties could have full and complete discussions without the use of such information for non-acquisition purposes.

**\*11** It is further alleged that in three rounds of financing, Gray Cary was allowed to participate on the same basis as the initial preferred investors and became a shareholder of Network Harmoni, and until

September 1999, one of its lawyers served as a member of its board of directors. Gray Cary sold its stock in connection with Network Harmoni's acquisition by Micromuse.

In opposition to Micromuse's motion it is alleged that Gray Cary first became aware of a potential claim against Micromuse by Agilent on September 19, 2003, when Agilent approached Gray Cary about the possibility of Gray Cary handling the matter for Agilent. It is also alleged that on December 8, 2003, an ethical wall was established to isolate all attorneys working on Agilent matters from any and all information related to any matter in which Network Harmoni had been a client for the firm.

Agilent asserts that Gray Cary never had an attorney-client relationship with Micromuse and that such a relationship may not be inferred from Micromuse's disclosure of confidential business information to Network Harmoni and its then-counsel Gray Cary during negotiations for the acquisition of Network Harmoni. At present, however, there appears to be no dispute that Micromuse is entitled to seek Gray Cary's disqualification based on Gray Cary's prior representation of Micromuse's wholly owned subsidiary, Network Harmoni. *See generally Harford Accident & Indem. Co. v. RJR Nabisco, Inc., 721 F.Supp. 534, 539-40 (S.D.N.Y.1989)* (concluding that the plaintiff's law firm would be deemed to have previously represented the defendant where the plaintiff's law firm had previously represented the defendant corporation's subsidiary and the defendant corporation had taken in active role with regard to the law firm's representation of its subsidiary); *cf. Decora, 899 F.Supp. at 137* (concluding that the plaintiff could properly seek disqualification of the defendant's attorney in a patent infringement action where the attorney had previously represented the plaintiff's parent corporation, thereby learning certain of the plaintiff's trade secrets).

Assuming without deciding that the first prong of the test set forth in *Evans* has therefore been satisfied, Micromuse's motion for disqualification is denied nonetheless, since, to date, Micromuse has not met its burden of proof with respect to establishing a "substantial relationship" between Gray Cary's former representation of Network Harmoni and its current representation of Agilent. It has not been shown that Gray Cary gave Network Harmoni advice on the validity of the patents in suit, including whether there was infringement by Network Harmoni of the patents in suit. All that has been established is that Gray Cary advised Network Harmoni on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
**(Cite as: 2004 WL 2346152 (S.D.N.Y.))**

corporate governance issues, employment matters, original equipment manufacturer ("OEM") agreements, patent and trademark filings, and financing instruments. Prior general business representation by the plaintiff's law firm of an entity related to the defendant on matters unrelated to the lawsuit at issue does not meet the high burden of establishing a conflict. *See, e.g., In re Maritina Aragua, S.A., 847 F.Supp. 1177, 1182-83 (S.D.N.Y.1994).*

**\*12** The Micromuse products and services alleged to be violative of the Agilent patent will be identified as a consequence of the granting of Micromuse's motion for a more definite statement. Thereafter, discovery may be sought with respect to the knowledge and participation of Gray Cary in the development of any such accused products or services. Should this discovery yield additional facts establishing that the prior representation of Network Harmoni by Gray Cary dealt with issues presented in this action, leave is granted to Micromuse to renew its disqualification motion, which motion is denied at this time.

*Conclusion*

For the reasons set forth above, Micromuse's motion to dismiss the complaint is denied and its motion for a more definite statement is granted. Agilent is directed to comply with the grant of Micromuse's motion for a more definite statement by filing and serving an amended complaint within thirty (30) days of entry of this order and opinion. In addition, Micromuse's motions to add HP as a party and to disqualify Gray Cary are denied at this time with leave to renew. Agilent's motion to file a supplemental declaration is granted.

It is so ordered.

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: 2004 WL 315269 (S.D.N.Y.))**

C

Only the Westlaw citation is currently available.


United States District Court,
S.D. New York.
William F. ASIP and Miklos L. Bartha, Plaintiffs,
v.
NIELSEN MEDIA RESEARCH, INC. and VNU,
Inc., Defendants.
**No. 03 Civ. 5866(SAS).**

Feb. 18, 2004.

**Background:** Patent holder brought infringement
action against subsidiary and parent company over
patent on system that enabled transmission of channel
logs, over non-dedicated telephone lines, chronicling
television channels viewed by subscriber.

 **Holdings:** On holder's motion to dismiss, the
District Court, Scheindlin, J., held that:
 (1) patent holder stated claim for infringement;
 (2) question of whether parent was liable for
subsidiary's actions turned on factual considerations
beyond scope of pleadings;
 (3) complaint provided subsidiary with fair notice of
infringement claims; and
 (4) subsidiary's laches argument was premature.
Motion denied.


West Headnotes


**[1] Patents ☜═310.1(1)**
291k310.1(1) Most Cited Cases
Patent holder stated claim for infringement, on
allegations that stated its joint ownership interest in
particular patent, named particular defendants, cited
patent as basis for action, described means by which
defendants allegedly infringed patent, and indicated
that its claims were based on defendants' willful acts
of direct and indirect infringement.    Fed.Rules
Civ.Proc.Rule 8(a), 28 U.S.C.A.


**[2] Patents ☜═310.1(1)**
291k310.1(1) Most Cited Cases
Patent holder stated infringement claim against
parent company, even though parent owned stock in
subsidiary for only 69 days before expiration of
patent, where complaint otherwise provided parent
with fair notice as to claims asserted against it, and

question of whether parent was liable for subsidiary's
actions turned on factual considerations beyond
scope of pleadings, such as degree of control it
exercised over subsidiary.

**[3] Patents ☜═310.1(5)**
291k310.1(5) Most Cited Cases
Complaint provided competitor with fair notice of
infringement claims, relating to patent on system that
enabled transmission of channel logs, over non-
dedicated telephone lines, chronicling television
channels viewed by subscriber;   even though
complaint did not identify which of competitor's
television monitoring devices infringed upon the
patent, complaint specifically stated that competitor
"infringed, induced and/or contributed" to
infringement of patent by "importing, making, using
and/or selling products which use and/or encompass
store and forward technology with the use of a
telephone line for data transmission in the television
industries and continued to do so." Fed.Rules
Civ.Proc.Rule 8(a), 28 U.S.C.A.


**[4] Patents ☜═313**
291k313 Most Cited Cases
Competitor's laches argument at motion to dismiss
stage was premature, since such relief turned upon
whether patent holder unreasonably delayed filing of
lawsuit despite having actual or constructive
knowledge of competitor's infringing products and
whether that delay resulted in material prejudice to
competitor, and those inquiries could not be resolved
on face of complaint.


**Patents ☜═328(2)**
291k328(2) Most Cited Cases
4,361,851. Cited.
 Robert Rando, Levy & Stopol, LLP, Uniondale,
New York, for Plaintiffs.

 Lee F. Grossman, Eric P. Martin, Grossman &
Flight, LLC, Chicago, Illinois, Steven H. Bazerman,
Ramsaran Maharajh Jr., Bazerman & Drangel, PC,
New York, New York, for Defendants.


*OPINION AND ORDER*


SCHEINDLIN, J.

 *1 William Asip and Miklos Bartha bring this action
against VNU, Inc.  ("VNU") and Nielsen Media

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: 2004 WL 315269 (S.D.N.Y.))**

Research ("Nielsen") (collectively "defendants") alleging patent infringement. VNU now moves to dismiss the Complaint for failure to state a claim, and Nielsen moves for a more definite statement under Rule 12(e). For the reasons that follow, both motions are denied.

## I. BACKGROUND

Plaintiffs are New York residents and holders of Patent No. 4,361,851 (" '851 Patent"). [FN1] Defendants are owners and operators of television audience measurement estimating systems and devices. [FN2] Both defendants conduct business in New York [FN3] and Nielsen is a "division" of VNU. [FN4]

> FN1. Complaint ("Compl.") ¶¶ 1, 2, 9.

> FN2. *See* Plaintiffs' Memorandum of Law in Opposition to VNU's Rule 12(b)(6) Motion ("Pl.12(b)(6) Mem.") at 1; Plaintiffs' Memorandum of Law in Opposition to Nielsen's Rule 12(e) Motion ("Pl.12(e) Mem.") at 1.

> FN3. Compl. ¶¶ 3-5; *see also* VNU's Memorandum of Law in Support of Its Rule 12(b)(6) Motion ("Def.12(b)(6) Mem.") at 2.

> FN4. Compl. ¶ 5.

The '851 patent was issued to plaintiffs on November 30, 1982 for their invention of a system that "automatically monitor[s] the selection of a Program Source made by a Subscriber." [FN5] Specifically, this system enables the transmission (over non-dedicated telephone lines) of channel logs chronicling those channels a subscriber has viewed. [FN6] Plaintiffs envisioned use of this invention with "cable television systems or over-the-air pay television scrambled systems." [FN7] But they also noted that the possible applications of this invention "are not restricted to [those relating to] Pay-TV" and could include deployment in activities such as "[o]pinion polling and preference sampling." [FN8]

> FN5. '851 Patent, Ex. 1 to Compl. In considering a motion to dismiss, courts may not consider matters outside the pleadings. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). The complaint includes " 'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." '

> *Id.* (quoting *International Audiotext Network, Inc. v. American Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)); *see also* Fed.R.Civ.P. 10(c). Accordingly, the '851 Patent is treated as part of the Complaint.

> FN6. *See* '851 Patent.

> FN7. *Id.*

> FN8. *Id.*

Plaintiffs allege that defendants have infringed, induced, and/or contributed to the infringement of "at least" Claim One of the '851 Patent. [FN9] Claim One covers:

> FN9. Compl. ¶¶ 11, 14. The '851 Patent covers six claims. *See* '851 Patent.

A television-use monitoring device for direct electrical connection to a telephone line, comprising:
(a) coupling means coupled to said television for detecting when said television is actively receiving a predetermined channel and producing, in response thereto a program selection signal indicating the active reception of a particular program selection;
(b) timer means for providing timing information;
(c) transient memory means responsive to said coupling means to store, in response to a first control signal, said program selection signal associated with a particular program whose active reception has been detected;
(d) second memory means responsive to said transient memory means to receive the output of said transient memory means in response to a second control signal and produce the same at its output in response to a third control signal;
(e) control means responsive to said timer for periodically causing said transient memory means to store any program selection signal present in the system, and reading the contents of said transient memory means, and responsive to said transient memory means to cause said transient memory means to transfer its contents to said second memory means in response to the detection of said program selection at one point in time and a second detection of the same program selection a predetermined period of time thereafter;
(f) interface means, responsive to said control means and said second memory means to encode said program selection signal for transmission; and
**\*2** (g) transmission coupling means, responsive to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: 2004 WL 315269 (S.D.N.Y.))**

said interface means, to couple the output of said interface means to conventional telephone lines and transmit said program selection to a central billing facility. [FN10]

> FN10. '851 Patent.

Defendants allegedly knew of and intentionally infringed the '851 Patent by "importing, making, using and/or selling products which use and/or encompass [,] store[,] and forward technology with the use of a telephone line for data transmission in the television industries." [FN11] Plaintiffs contend that defendants' unlawful conduct began prior to and continued through the '851 Patent's expiration date in January 2000. [FN12]

> FN11. Compl. ¶ 10; *see also id.* ¶¶ 14-16.

> FN12. *Id.* ¶¶ 10-11, 15.

## II. APPLICABLE LAW

### A. Legal Standard

#### 1. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' [FN13] "A court's task 'in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." ' [FN14] Accordingly, courts must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. [FN15]

> FN13. *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *see also Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir.2003).

> FN14. *Levitt v. Bear Stearns & Co., Inc.,* 340 F.3d 94, 101 (2d Cir.2003) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998)).

> FN15. See *Chambers,* 282 F.3d at 152; *Levitt,* 340 F.2d at 101.

#### 2. Rule 12(e)

Under Rule 12(e), if a complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." [FN16] Rule 8(a) provides that a plaintiff need only plead "a short and plain statement of the claim" that will provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests. [FN17] " '[I]f [a] complaint complies with the liberal pleading requirements of [Rule 8(a) ], then the Rule 12(e) motion should be denied." ' [FN18] Notably, because the purpose of the Rule is to "strike at unintelligibility rather than want of detail and ... allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement." [FN19] Therefore, "the tendency under the Federal Rules is to discourage motions to compel more definite complaints and to encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings." [FN20]

> FN16. Fed.R.Civ.P. 12(e).

> FN17. Fed.R.Civ.P. 8(a); *see also Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

> FN18. *Vapac Music Publ'g, Inc. v. Tuff'N'Rumble Mgmt.,* No. 99 Civ. 10656, 2000 WL 1006257, at *6 (S.D.N.Y. July 19, 2000) (quoting *Tom Kelley Studios Inc. v. International Collectors Soc'y Inc.,* No. 97 Civ. 0056, 1997 WL 598461, at *1 (S.D.N.Y. Sept. 25, 1997)).

> FN19. *Markovic v. New York City Sch. Constr. Auth.,* No. 99 Civ. 10339, 2000 WL 1290604, at *3 (S.D.N.Y. Sept.13, 2000) (quotation marks and citation omitted).

> FN20. *Id.; see also Vapac Music Publ'g,* 2000 WL 1006257, at *6 (noting that Rule 12(e) motions are disfavored).

### B. Patent Infringement

To state a claim for patent infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: 2004 WL 315269 (S.D.N.Y.))**

facts alleged to enable it to answer the complaint and defend itself." _[FN21]_ A complaint for patent infringement need only meet the following requirements: "[ (1) allege] ownership of the asserted patent, [ (2) ] name[ ] each individual defendant, [ (3) ] cite[ ] the patent that is allegedly infringed, [ (4) ] describe[ ] the means by which the defendants allegedly infringe, and [ (5) ] point[ ] to the specific sections of the patent law invoked." _[FN22]_

> FN21. _Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,_ 203 F.3d 790, 794 (Fed.Cir.2000); _accord DigiGAN, Inc. v. iValidate, Inc.,_ No. 02 Civ. 0420, 2004 WL 203010, at *4 (S.D.N.Y. Feb.3, 2004).

> FN22. _Phonometrics,_ 203 F.3d at 794; _accord DigiGAN,_ 2004 WL 203010, at *4.

## III. DISCUSSION _[FN23]_

> FN23. As an initial matter, I note plaintiffs' argument that both Rule 12 motions should be rejected because of defendants' failure to abide by my Individual Rules and Procedures. _See_ Pl. 12(b)(6) Mem. at 9; Pl. 12(e) Mem. at 7. Because parties are expected to be familiar with these rules, defendants are reminded that the rules are available at this Court's website. _See_ Individual Rules and Procedures, http://www.nysd. uscourts.gov/Individual_Practices/Scheindli n.pdf.
> The rules clearly state that, prior to bringing a motion to dismiss, "the parties _must_ exchange letters" and "must certify that pre-motion letters were exchanged." _Id._ at 3 (emphasis added). "The parties should attempt to eliminate the need for these motions based on this exchange of letters," while recognizing that leave to amend will be freely granted. _Id._ Defendants' failure to follow these rules has led them to engage in what appears to be unnecessary motion practice. This highlights precisely those consequences that the rule is intended to avoid, _e.g.,_ needlessly delayed litigation and wasted judicial resources.

## A. VNU's Rule 12(b)(6) Motion

**\*3** [1][2] The Complaint satisfies the pleading requirements of Rule 8 because it: (1) alleges plaintiffs' joint ownership of the '851 Patent, [FN24]

(2) names VNU and Nielsen as defendants, [FN25] (3) cites the '851 Patent as the basis for the action, [FN26] (4) describes the means by which defendants allegedly infringed the '851 Patent, [FN27] and (5) indicates that their claims are based on defendants' willful acts of direct and indirect infringement. [FN28] However, VNU argues that the action against it should be dismissed because it has never "engaged in any of the allegedly infringing activities." [FN29] Rather, VNU contends that those acts were committed by its subsidiary, Nielsen, which was acquired on October 27, 1999, sixty-nine days prior to the expiration of the '851 patent. [FN30] As VNU puts it, "[its] sole relationship with [Nielsen] as relates to this case is this 69 day period during which it owned the stock of [Nielsen] but had no direct involvement in its operations." [FN31]

> FN24. _See_ Compl. ¶ 9.

> FN25. _See id._ ¶¶ 3, 5, 10, 11.

> FN26. _See id._ ¶¶ 9-15.

> FN27. _See id._ ¶¶ 9-11.

> FN28. _See id._ ¶¶ 10-12. Specifically, patent infringement claims are governed by 35 U.S.C. § 271. Direct infringement occurs when a person, without authority, infringes a patent by making, using, offering to sell, or selling any patented invention. _See_ 35 U.S.C. § 271(a). Indirect infringement occurs when a person induces the infringement of a patent by another or contributes to a patent's infringement through its activities. _See_ 35 U.S.C. § 271(b)-(c).

> FN29. Def. 12(b)(6) Mem. at 2.

> FN30. _See id._

> FN31. _Id._ at 2-3 (alternation in original).

VNU has not demonstrated that plaintiffs cannot prove any set of facts in support of their patent infringement claims. _First,_ plaintiffs' allegations as pled are sufficient because they provide VNU with fair notice as to the claims asserted against it. As plaintiffs correctly point out, VNU's motion is "merely a statement of its belief that it has not engaged in any direct infringement which is more appropriately stated as a denial in answer to the [Complaint]." _[FN32] Second,_ even if plaintiffs'

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
(Cite as: 2004 WL 315269 (S.D.N.Y.))

infringement claims against VNU are premised solely on its status as "a holding company" for subsidiary Nielsen, whether VNU is liable for Nielsen's actions turns on factual considerations (*e.g.*, the degree of control that VNU exercised over Nielsen) that are beyond the scope of the pleadings. [FN33] Thus, contrary to VNU's argument that "[t]he timing of the dismissal is irrelevant," [FN34] the fact that VNU brings this motion at the pleading stage is critical.

> FN32. Pl. 12(b)(6) Mem. at 8.

> FN33. Not surprisingly VNU submitted a Joint Declaration in an attempt to factually support its arguments. *See* Joint Declaration of Michael E. Elias and David A. Schwartz-Leeper, Ex. A to Def. 12(b)(6) Mem. But for purposes of a motion brought under Rule 12(b)(6), a court cannot consider documents outside of the pleadings. *See Chambers*, 282 F.3d at 152.

> FN34. VNU's Reply Memorandum of Law in Further Support of Its Rule 12(b)(6) Motion at 4.

B. Nielsen's Rule 12(e) Motion

[3] Nielsen argues that because plaintiffs' " 'bear-bones' [sic] Complaint" does not identify which of Nielsen's television monitoring devices infringe the '851 Patent, the Complaint fails to satisfy Rule 8's pleading requirements. [FN35] But the Complaint specifically states that Nielsen "infringed, induced and/or contributed" to the infringement of the '851 Patent by "importing, making, using and/or selling products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries and continued to do so to, and including, January 2000." [FN36] These allegations are not "so vague or ambiguous" that Nielsen cannot be "reasonably ... required to frame a responsive pleading" to the Complaint. [FN37] As the Complaint provides fair notice of plaintiffs' patent infringement claims, it comports with the pleading requirements set forth in Rule 8. [FN38]

> FN35. Nielsen's Memorandum of Law in Support of Its Rule 12(e) Motion ("Def.12(e) Mem.") at 2.

> FN36. Compl. ¶ 11.

> FN37. Fed.R.Civ.P. 12(e).

> FN38. *See supra* Part III.A. Moreover, Form 16 of the Appendix of Forms to the Federal Rules of Civil Procedure, which provides a sample patent infringement complaint, states simply that "[d]efendant has for a long time past been and still is infringing [plaintiff's] Letters Patent by making, selling, and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court." Courts have found that a complaint providing at least as much information as this sample complaint is sufficient to withstand a Rule 12(e) motion. *See Dome Patent L .P. v. Permeable Techs., Inc.*, 190 F.R.D. 88, 90-91 (W.D.N.Y.1999) (citing *OKI Elec. Indus. Co. v. LG Semicon Co.*, No. 97 Civ. 20310, 1998 WL 101737, at *3-4 (N.D.Cal. Feb.25, 1998), and *Soli-Tech, Inc. v. Halliburton Co.*, No. 97 Civ. 10232, 1993 WL 315358, at *3 (E.D.Mich. Jan.26, 1993)). Plaintiffs' allegations of infringement by "products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries" are at least as specific as those involving "electric motors embodying the patented invention." Compl. ¶ 11.

[4] Nielsen also contends that the doctrine of laches requires plaintiffs to "specifically identify [Nielsen's] allegedly infringing products." [FN39] In particular, Nielsen argues that plaintiffs' allegations either (1) cover activities that Nielsen has undertaken for the twenty years since the '851 patent was issued and "[b]y definition" the doctrine of laches applies; or (2) Nielsen "must have some new product, or must have modified an old product in a way [ ] that allegedly infringes the '851 Patent" and must identify that product. [FN40] But, at this stage of the proceedings, Neilsen's laches argument is premature. Relief pursuant to the doctrine of laches turns on (1) whether a plaintiff unreasonably delayed the filing of her lawsuit despite having actual or constructive knowledge of the defendant's infringing products and (2) whether that delay resulted in material prejudice to defendant. [FN41] Where these inquiries cannot be resolved on the face of the complaint, they are questions properly reserved for summary judgment, after discovery has concluded. Here, the laches defense cannot be resolved solely from a review of the Complaint.

> FN39. Def. 12(e) Mem. at 3.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: 2004 WL 315269 (S.D.N.Y.))**

Page 6

FN40. *Id.* at 4 (citing *A.C. Aukerman Co. v. R.L. Chaides Contr. Co.,* 960 F.2d 1020 (Fed.Cir.1992) and *Ecolab, Inc. v. Envirochem, Inc.,* 264 F.3d 1358 (Fed.Cir.2001). Notably, both cases upon which Nielsen relies involve the application of the doctrine of laches at the summary judgment stage.

FN41. *See Ecolab,* 264 F.3d at 1371; *A.C. Aukerman Co.,* 960 F.2d at 1032.

IV. CONCLUSION

*4 For the foregoing reasons, both VNU's motion to dismiss and Nielsen's motion for a more definite statement are denied. The Clerk of the Court is directed to close these motions (numbers 13 and 17 on the docket sheet). A conference is scheduled for February 26, 2004, at 2:45 p.m.

SO ORDERED:

Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.