# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG. PHILIPS LCD CO., LTD.,                )
                                          )
       Plaintiff,                       )
                                          )
       v.                               )     Civil Action No. 06-726 (GMS)
                                          )
CHI MEI OPTOELECTRONICS                   )
CORPORATION; AU OPTRONICS                 )
CORPORATION; AU OPTRONICS                 )
CORPORATION OF AMERICA;                   )
TATUNG COMPANY; TATUNG                    )
COMPANY OF AMERICA, INC.; AND             )
VIEWSONIC CORPORATION,                    )
                                          )
       Defendants.                      )
                                          )

## ANSWERING BRIEF IN OPPOSITION TO LG. PHILIPS LCD CO., LTD.'S MOTION FOR RULE 11 SANCTIONS AND SANCTIONS PURSUANT TO 28 U.S.C. § 1927

OF COUNSEL:

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
(216) 586-3939

Dated:  July 3, 2007

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE  19899
(302) 984-6000
provner@potteranderson.com

Attorneys for Defendant
Chi Mei Optoelectronics Corporation

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF ARGUMENT ............................................................................... 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT ...................................................................................................... 8

I.     LPL IS ASSERTING THAT IDENTICAL, LEGALLY CORRECT
       ARGUMENTS MADE BY LPL'S LAWYERS IN THE WISCONSIN CASE
       ARE FRIVOLOUS AND SANCTIONABLE WHEN MADE BY CMO HERE ............. 8

II.    CONTRARY TO LPL'S POSITION, FINDING CMO COMPONENTS IN
       DELAWARE DOES NOT ESTABLISH PURPOSEFUL ACTIVITY
       DIRECTED TO THE FORUM STATE .......................................................... 13

III.   THE FEDERAL CIRCUIT IN THE *CEA* CASE MADE NO FINDINGS OF
       FACT OR CONCLUSIONS OF LAW CONCERNING PERSONAL
       JURISDICTION OVER CMO IN DELAWARE .............................................. 15

IV.    LPL'S BULLET-POINT ALLEGATIONS OF CONTACTS ARE
       UNSUPPORTED BY CONTROLLING CASE LAW STATING THE
       STANDARDS FOR LONG-ARM JURISDICTION IN DELAWARE ........................ 16

V.     LPL MIS-CITES ITS OWN EVIDENCE, A TACTIC RELEVANT TO THIS
       MOTION BECAUSE OF LPL'S ACCUSATIONS OF SUPPOSED
       SANCTIONABLE MIS-CITATIONS BY CMO ............................................... 19

VI.    THE MOTION FOR SANCTIONS SHOULD NEVER HAVE BEEN FILED ............. 21

VII.   CMO SHOULD BE AWARDED ITS FEES INCURRED IN OPPOSING LPL'S
       MOTION FOR SANCTIONS ..................................................................... 23

CONCLUSION .................................................................................................. 24

## TABLE OF AUTHORITIES

### CASES

*Ace & Co. v. Balfour Beatty PLC,*
    148 F. Supp. 2d 418 (D. Del. 2001)................................................................20

*American Bio Medica Corp. v. Peninsula Drug Analysis Co.,*
    C.A. No. 99-218-SLR, 1999 WL 616175 (D. Del. Aug. 3, 1999)....................................11

*Asahi Metal Industry Co. v. Superior Court,*
    480 U.S. 102 (1987)...................................................................... passim

*Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.,*
    295 F. Supp. 2d 400 (D. Del. 2002)................................................................19

*Commissariat à l'Energie Atomique v. Chi Mei Optoelectronics Corporation,*
    395 F.3d 1315 (Fed. Cir. 2005)........................................................... passim

*M&M Technologies, Inc. v. Gurtler Chemicals, Inc.,*
    C.A. No. 03-994-GMS, 2005 U.S. Dist. LEXIS 1726 (D. Del. Feb. 8, 2005) .................19

*Merck & Co. v. Barr Laboratories, Inc.,*
    179 F.Supp. 2d 368 (D. Del. 2002)..............................................7, 8, 20, 22, 24

*Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N,*
    832 F.2d 31 (3rd Cir. 1987) .......................................................................23

*Patelco Credit Union v. Sahni,*
    262 F.3d 897 (9th Cir. 2001) ......................................................................25

*Robinson v. City of San Bernardino Police Dep't,*
    992 F. Supp. 1198 (C.D. Cal. 1998) ...............................................................25

*Siemens A.G. v. LG Semicon Co.,*
    69 F.Supp. 2d 622 (D. Del. 1999)..................................................................22

### DOCKETED CASES

*AU Optronics Corporation v. LG.Philips LCD Co. and LG.Philips LCD America,*
    No. 07-C-137-S (filed March 8, 2007) ...............................................................5

## STATUTES AND RULES

Fed. R. Civ. P. 4(f) ........................................................................................................................4

Fed. R. Civ. P. 4(h) .......................................................................................................................4

Fed. R. Civ. P. 11 ......................................................................................................................3, 21

Fed. R. Civ. P. 12(b) ....................................................................................................................4

10 *Del. C.* § 3104 .................................................................................................................. passim

## NATURE AND STAGE OF THE PROCEEDINGS

On February 15, 2007 Plaintiff LG.Philips LCD Co., Ltd. ("LPL") attempted to serve defendant Chi Mei Optoelectronics Corp. ("CMO"), a Taiwanese corporation, with process under the Delaware Long Arm statute. CMO filed a motion to dismiss for lack of personal jurisdiction and improper service of process on April 6, 2007. The briefing of that motion is complete. LPL filed this motion for sanctions on June 19, 2007 without either addressing the principal authorities presented in CMO's reply on the motion to dismiss, or awaiting this Court's ruling on CMO's dismissal motion.

## SUMMARY OF ARGUMENT

1.    LPL contends that CMO's arguments opposing jurisdiction are frivolous and sanctionable, yet LPL's counsel made identical arguments seeking dismissal for lack of personal jurisdiction of LPL's subsidiary LG.Philips LCD America ("LPLA") in a co-pending suit filed by AU Optronics Corporation ("AU") in the United States District Court for the Western District of Wisconsin. LPL's counsel asserted in Wisconsin that controlling case law required a showing of purposeful activity directed toward the forum state. Here the same lawyers assert that personal jurisdiction does not require such purposeful acts. It is unacceptable for LPL's counsel to assert here that CMO's position is sanctionable when they themselves presented the identical legal position to the Wisconsin court.

2.    LPL has misstated the law of personal jurisdiction here, ignoring the legal principle and controlling case law that it cited and argued in Wisconsin holding that the mere presence of products in the forum state does not establish jurisdiction over a manufacturer of a component in that product.

3.   LPL misstated the holding in the Federal Circuit's decision in *Commissariat à l'Energie Atomique v. Chi Mei Optoelectronics Corporation*, 395 F.3d 1315 (Fed. Cir. 2005) (the "CEA case") – a willful misstatement in light of the fact that LPLA had correctly stated the *CEA* case holding in its motion to dismiss filed in Wisconsin.

4.   LPL's bullet-point aggregations of allegations in its brief "supporting" its motion for sanctions (*see* D.I. 87 at 25-26) are unsupported by controlling case law establishing the standards for determining long-arm jurisdiction in Delaware.  For example, LPL asserts that because CMO has accepted jurisdiction in California and New York, it must accept jurisdiction in Delaware, a proposition supported by no case law.  In addition, LPL asserts that since CMO owns a subsidiary incorporated in Delaware, CMO is doing business in Delaware, a proposition rejected by Delaware precedent.  Most important, LPL's repeated assertion that "CMO sells products in Delaware" is unsupported by the record, since none of the CMO products found in Delaware were sold *by CMO* in Delaware, nor shipped into Delaware *by CMO*.

5.   LPL has mis-cited its exhibits as showing facts they do not show, and its cases as stating principles they do not state, a tactic pertinent to this motion because of LPL's allegations of misconduct against CMO and its counsel.  LPL should not mis-cite the record when charging someone else with mis-citing the record.

6.   LPL's motion for sanctions should not have been filed.  CMO's underlying motion to dismiss, the allegedly sanctionable filing, is supported by controlling case law.  LPL's argument for sanctions assumes, wrongly, that the stream-of-commerce test articulated by Justice Brennan in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987) ("*Asahi*"), but never accepted by a majority of the Supreme Court, is the only test that must be satisfied in a personal-jurisdiction contest.  CMO has every right to assert that Justice O'Connor's test articulated in

2

*Asahi* is applicable (particularly in view of the Federal Circuit's holding in the *CEA* case), and further to assert that LPL has met none of the standards specifically set forth in § 3104(c)(4) of the Delaware Long Arm statute, the text of which LPL has ignored. Indeed, making such assertions here is the antithesis of the conduct to which Rule 11 is directed.

7. Pursuant to Rule 11(c)(1)(A), this Court should award CMO its fees in opposing this motion. LPL's counsel's recognition and assertion in the Wisconsin case of the true state of the law of personal jurisdiction belies the existence of any sanctionable conduct here.

## STATEMENT OF FACTS

The *CEA* case and its counsel. In 2003, the same lawyers who represent LPL in this case filed a patent infringement complaint against CMO and others in this Court on behalf of Commissariat à l'Energie Atomique ("*CEA*"). CMO moved to dismiss for lack of personal jurisdiction and ineffective service of process. Judge Jordan granted the motion on both grounds without allowing jurisdictional discovery.

On appeal, the Federal Circuit vacated the dismissal and remanded the case, ruling that LPL should have been allowed to conduct discovery on the jurisdictional issue. *Commissariat à l'Energie Atomique v. Chi Mei Optoelectronics Corporation*, 395 F.3d 1315 (Fed. Cir. 2005) (the "*CEA* case"). The Federal Circuit did <u>not</u> find that CEA had established personal jurisdiction under the Delaware Long Arm statute or due process standards. Nor did the Federal Circuit find that the Delaware Long-Arm statute reaches the limits of the due process clause, or that the test for personal jurisdiction under the Supreme Court's *Asahi* decision was the test articulated by Justice Brennan rather than the more stringent test stated by Justice O'Connor. These determinations were explicitly reserved. *Id.* at 1322 ("these issues should not be resolved on the present record").

Upon remand, CEA served subpoenas upon 25 of CMO's customers for documents and/or testimony about sales to them. During this discovery, the parties reached an agreement to compromise the question of jurisdiction only "for this case." (D.I. 88-2). CMO ultimately settled CEA's claim and was dismissed from the lawsuit.

The fact that CEA's counsel are the same lawyers who filed this motion for sanctions is important because they know the true holdings of the Federal Circuit in CEA, but have mis-stated them here.

This case and LPL's counsel. In February 2007, CEA's lawyers, representing LPL in this case, attempted to serve process on CMO by serving the Delaware Secretary of State under the Delaware Long-Arm statute, as was done in the CEA case. Because service did not comply with Fed. R. Civ. P. 4(h) and (f), CMO elected to test jurisdiction and sufficiency of service by filing a motion to dismiss under Fed. R. Civ. P. 12(b). CMO disclosed in its motion papers that it owns through stock ownership a subsidiary named Chi Mei Optoelectronics USA, Inc. ("CMO USA"),[1] a Delaware corporation having offices in San Jose, California (D.I. 20 at 4-5). This subsidiary ownership did not exist at the time of the CEA case. CMO has not established any operations in, shipped any goods into, or assigned any employees or agents to, the State of Delaware, however, since the time that CMO filed its dismissal motion in the CEA case. The Federal Circuit's views on jurisdiction over CMO in the CEA case thus remain highly important in this case.

LPL's counsel responded to CMO's motion to dismiss by seeking permission to use confidential information obtained on behalf of CEA for the benefit of their new client LPL,

---

[1] All of the stock of CMO USA is owned by Chi Mei Optoelectronics Japan Co., Ltd., which in turn is a wholly-owned subsidiary of CMO.

4

which information is governed by the protective order in the *CEA* case forbidding use of such information in another case. CMO refused to accede to such use on the ground that discovery in this case should not be governed by a protective order supervised by a different judge in another case. Magistrate Judge Thynge agreed with CMO's position, instructing LPL to seek discovery from this Court instead.

Shortly before LPL's response to CMO's dismissal motion was due, LPL's counsel began a letter-writing campaign to CMO's counsel, claiming that CMO's jurisdiction argument was frivolous and demanding retraction of the motion under threat of Rule 11 sanctions. CMO's counsel suggested in response that LPL's counsel take account of CMO's coming reply to LPL's opposition arguments before threatening sanctions. Nevertheless, the letters continued, along with service of this motion, which LPL chose to serve before even reviewing CMO's reply to LPL's opposition on the merits. (LPL's motion for sanctions addresses none of the rebuttal arguments made in CMO's reply brief on personal jurisdiction or ineffective service of process.)

The AU case in Wisconsin and LPL's counsel. Another defendant in this case, AU Optronics Corporation, chose to respond to LPL's infringement claims by filing a patent infringement lawsuit itself in the Western District of Wisconsin against LPL and LPL's subsidiary LPLA, styled *AU Optronics Corporation v. LG.Philips LCD Co. and LG.Philips LCD America*, No. 07-C-137-S (filed March 8, 2007), assigned to Judge Shabaz. On March 29, LPLA filed a motion to dismiss the complaint for lack of personal jurisdiction and improper venue. The motion and accompanying brief bore the signature block of McKenna, Long & Aldrich LLP, the same law firm representing LPL in this case. Indeed, the first-named lawyer, Gaspare J. Bono, is the lawyer who conducted the letter-writing campaign to CMO's counsel contending that CMO's motion to dismiss is both frivolous and sanctionable.

How ironic it is, then, that Mr. Bono and his colleagues made the identical legal arguments in Wisconsin that they now assert to be frivolous here. The correct principles of personal jurisdiction, stated by Mr. Bono and his colleagues in Wisconsin, have been suppressed in LPL's brief on this motion filed by the very same lawyers.[2]

An example of the many positions taken in this motion contrary to the Wisconsin arguments is LPL's argument that "neither Delaware's long-arm statute, nor the caselaw demand that a defendant is subject to personal jurisdiction solely if the contacts with the jurisdiction are *purposeful*, as CMO infers." D.I. 87 at 30 (emphasis added). Indeed, the crux of LPL's position opposing CMO's motion to dismiss is that CMO does not have to direct its business purposefully toward Delaware in order to subject itself to Delaware jurisdiction. LPL says that CMO becomes subject to jurisdiction merely by selling components of finished products into the stream of commerce with the expectation that some might find their way to Delaware through the actions of others. D.I. 87 at 27-28.

But that position is *directly contradicted* by the motion papers in Wisconsin, where one of its main arguments was headed: "LPLA Has Not **Purposely** Availed Itself Of The Privilege of Conducting Activities Within Wisconsin". Exhibit B at 8 (emphasis added). The substance of the Wisconsin argument began with the restatement of the Supreme Court's jurisdictional test:

> The Supreme Court explains that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987).

---

[2] Filed concurrently herewith is the Declaration of Arthur P. Licygiewicz (hereafter "Licygiewicz Declaration") which has attached at Exhs. A and B, respectively, copies of LPLA's opening memorandum in support of its motion to dismiss the Wisconsin complaint and reply in support of its motion to dismiss. For ease of reading, reference to an exhibit in this brief will be to the exhibits attached to the Licygiewicz Declaration.

*Id.* In contrast to this correct statement of the law, here in this motion, the same LPL lawyers assert that there is no case law requirement that the "contacts with the jurisdiction" be *"purposeful."* D.I. 87 at 30 (emphasis in original). To support this proposition, LPL's counsel cites Asahi, but to a different page of the opinion, 480 U.S. at 114-15. That section of Justice O'Connor's opinion is not directed toward the due process test, discussion of which ends on page 113, but to the alternative "fundamental fairness" test which does not even address "purposeful availment." Not only is LPL's citation bogus, but LPL's counsel knew where the correct proposition appeared in *Asahi*, having cited it in Wisconsin.

LPL's counsel made that argument in Wisconsin *after* having received CMO's motion to dismiss in this case.

The *Merck* case and LPL's counsel. In a last ditch effort to prevent the wastefulness and cost of litigating this sanctions motion, CMO's counsel wrote to LPL's counsel to point out that all of the alleged facts asserted in Mr. Bono's letters, if true, would nevertheless lead to dismissal of this case under the authority of this Court's decision in *Merck & Co. v. Barr Laboratories, Inc.,* 179 F.Supp. 2d 368 (D. Del. 2002), where defendant's motion to dismiss for lack of jurisdiction was granted, even though it made periodic sales into Delaware, employed a salesman to make regular calls into Delaware, and operated a Delaware subsidiary in Delaware. These facts are on all fours with LPL's assertions here, yet the Court found no jurisdiction. LPL's counsel has had no response to the *Merck* case: LPL has not addressed the *Merck* case in its briefing on the motion to dismiss, in its motion papers for sanctions, or, except for a rhetorical hand-wave, in its correspondence with CMO's counsel.

## ARGUMENT

**I.    LPL IS ASSERTING THAT IDENTICAL, LEGALLY CORRECT ARGUMENTS MADE BY LPL'S LAWYERS IN THE WISCONSIN CASE ARE FRIVOLOUS AND SANCTIONABLE WHEN MADE BY CMO HERE**

Third-Party Sales in Delaware.    LPL takes the position that CMO "sells products in Delaware" by placing its components in the stream of commerce with the expectation or knowledge that some of those components may wind up in finished products in Delaware.  D.I. 87 at 26-34.  The stridency of its argument increases until LPL baldly states:  "It is undisputed that CMO's products are sold both directly and through established distribution channels to customers in Delaware."  *Id.* at 34.  Based on this premise, LPL repeatedly asserts that CMO sells its products in Delaware, even if third parties actually perform the physical acts of shipping or moving finished products (made from, *inter alia*, offshore-supplied CMO components) into Delaware, taking money from customers and transferring the finished products to the customers. According to LPL, these facts do not matter – the sale is *per se* sale in Delaware by CMO.[3]

This position was contradicted by LPLA's counsel's correct statement of the law in the Wisconsin case, where they stated, "LPLA shipped the product F.O.B. San Jose, California. Consequently, LPLA's customer took title to the product before it left California and entered Wisconsin.  Therefore, LPLA did not avail itself of the privilege of selling its product in Wisconsin."  Exhibit A at 9 (emphasis in original).

Purposeful Acts.  LPL's lawyers assert that "neither Delaware's long-arm statute, nor the caselaw demand that a defendant is subject to personal jurisdiction solely if the contacts with the

---

[3] All of LPL's proffered evidence of sales relate to transactions by retail sellers, or by individuals on eBay, not by CMO.  *See* D.I. 87 at 4-8 (Argument A), 25.

jurisdiction are *purposeful*, as CMO infers," (D.I. 87 at 30, emphasis in original), citing pages from *Asahi* that do not even address this point.

LPL's argument here is explicitly contradicted by the legally correct argument made by the same lawyers in Wisconsin. When LPL's lawyers, seeking dismissal of AU's complaint against LPL's U.S. based subsidiary LPLA, presented its jurisdictional defense to Judge Shabaz, they argued that "purposeful" activity directed toward the forum state *was required* by the case law, citing *Asahi*. Exhibit B at 8. They argued: "The Supreme Court explains that '[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state.' *Asahi*, 480 U.S. 102 at 112 (1987)." *Id.* This citation to *Asahi* leads to the full statement of the purposeful availment test in Asahi:

> The "substantial connection," Burger King, 471 U. S., at 475; McGee, 355 U. S., at 223, between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State. Burger King, supra,* at 476; *Keeton v. Hustler Magazine, Inc.,* 465 U. S. 770, 774 (1984). The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. . . . But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi,* 480 U.S. at 112 (emphasis in original). LPLA's argument in Wisconsin that the O'Connor "purposefully directed" standard must be met was correct, because the Federal Circuit has never found personal jurisdiction over a defendant when the Brennan test was met, but the O'Connor test was not. *See, Commissariat*, 395 F.3d at 1322 n. 7 ("we have yet to be presented with facts that do not meet the more rigorous standard adopted by Justice O'Connor").

Based on the "purposefully directed" argument, LPL's counsel appearing in the Wisconsin case argued that the sale of LPLA products by others in Wisconsin cannot be counted as contacts by LPLA:

The very few allegations that do relate to Wisconsin only concern unilateral and independent actions by *other* entities, not LPLA. However, "[d]oing business with a company that does business in [a forum state], is not the same as doing business [in the forum state]." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998). Accordingly, AUO can assert no contacts with a forum state "resulting from 'the unilateral activity of another party or third person'" to LPLA. *Id.*

Exhibit B at 8 (emphasis in original). This same point, when made by CMO, is decried as sanctionable.

It might – somehow – be acceptable for a lawyer to argue that Asahi requires purposeful contacts when he represents a client seeking to avoid jurisdiction, and then to argue that *Asahi* does not require purposeful contacts when representing another client seeking to hold jurisdiction. But, it is not acceptable for a lawyer to argue in one case that *Asahi* requires purposeful contacts, and then to assert in another case that such argument is so frivolous as to be sanctionable.[4]

Sales by Retailers. LPL asserts that sales by retailers in Delaware such as CDW and Office Depot establish that CMO is doing business in Delaware (D.I. 87 at 26), and further asserts that CMO's "commits a fraud on this Court" by ignoring these sales in seeking dismissal. *Id.*

This argument is directly contradicted by the legally correct argument made in Wisconsin, where the same lawyers asserted:

AUO claims that the availability of finished LCD products in Wisconsin retail stores is a basis for asserting personal jurisdiction over LPLA. That claim is meritless. LPLA plays no role in the unilateral, independent decisions of third-party companies to manufacture or distribute finished LCD products.

---

[4] Since AU and LPL have now moved to consolidate the Wisconsin case into this case (D.I. 92), this Court may soon be a party to the spectacle of that lawyer making both arguments in the same case.

Exhibit B at 1. Indeed, to support the argument in Wisconsin, they cited a Delaware case to argue, "allegations that a defendant manufactured allegedly infringing products, arranged for distribution of those products through two intermediaries, and advertised its product through an internet website to forum state residents did not permit an assertion of jurisdiction," citing *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, No. Civ. A. 99-218-SLR, 1999 WL 616175, *5 (D. Del. Aug. 3, 1999). Exhibit B at 10.

Pre-Lawsuit Purchases. LPL asserts here that CMO should be sanctioned for failing to acknowledge that LPL's purchase before filing the lawsuit of six finished products in Delaware containing CMO components establish jurisdictional contacts. See, e.g., D.I. 87 at 4.

This contention is directly contradicted by the argument made in the Wisconsin case, where the same lawyers representing LPL in this case asserted that AU's pre-filing purchase of three finished products in Wisconsin containing LPL components did not establish jurisdiction, citing an unreported district court case that held that purchase of an accused product by the patentee cannot cause an "injury" under the Wisconsin Long-Arm statute because the patent owner cannot injure himself by buying an accused product. Exhibit B at 5 n.2. (Delaware likewise has a statutory "injury" requirement in § 3104(c)(4)).

Finished Products Containing Accused Components. Here, LPL charges that CMO failed to apprise the Court that LPL had located "at least six CMO products that were incorporated into monitors and televisions sold by Viewsonic, Tatung, and Iiyama and purchased in Delaware by individuals at store locations in Delaware or via the internet before LPL filed suit against CMO." D.I. 87 at 4. LPL further cites as evidence of jurisdictional contacts the fact that CMO "*modules are incorporated into brand-name products such as Hewlett-Packard ('HP'), Dell Corporation ('Dell'), and Viewsonic Corporation ('Viewsonic').*" D.I. 87 at 5 (emphasis by LPL).

11

To the contrary, the lawyers in Wisconsin argued that such transactions by third-party sellers of products containing components made by the defendant do not establish minimum contacts. Exhibit B at 11. It is worth noting that the components at issue in Wisconsin were the same as here – LCD modules for monitors and computers. In Wisconsin, the lawyers argued:

> LPLA sells component parts to LCD product manufacturers who independently and unilaterally incorporate those parts into LCD products and then independently and unilaterally sell those products to retail outlets where the products are ultimately sold to end consumers.

Exhibit B at 9. LPLA also cited authority for its legally correct position in Wisconsin:

> In fact, LPLA has no control or involvement whatsoever in the subsequent sale or use of their LCD modules once they are sold to distributors or manufacturers. . . . Jurisdiction is not proper over a defendant merely because an unrelated retailer independently sells a third-party product that happens to contain a part manufactured or distributed by that defendant. *Neomedia Technologies, Inc. v. Ariclic, Inc.*, 2004 WL 848181 (N.D. Ill. 2004 April 16, 2004 ). . .

Exhibit B at 12-13. LPL has no evidence in Delaware that CMO led or influenced any OEMs to direct sales of finished products containing CMO components into Delaware.

Website sales. LPL asserts here that sales of products containing CMO components "via www.ebay.com, and other websites" establishes regular and consistent contacts with Delaware for jurisdiction purposes, regardless of the fact that CMO neither owns nor controls such websites. D.I. 87 at 25.

In Wisconsin, the same lawyers representing LPL here took the opposite position, arguing that a website operated by another party could not be attributed to LPLA, since "LPLA has no involvement whatsoever in the operation of a website." Exhibit B at 3.

Parent/Subsidiary Activities. LPL asserts that CMO should be sanctioned for somehow failing to apprise the Court of its relationship to its subsidiary, CMO USA, even though CMO did indeed tell the Court of its ownership interest. LPL asserts that the existence of this

Delaware subsidiary somehow requires CMO to withdraw its jurisdictional challenge.  D.I. 87 at 26.

This position was contradicted in the Wisconsin case, where the lawyers asserted that none of the activities of the parent corporation LPL could be considered in determining jurisdiction over the subsidiary:

> LPL's conduct cannot be assigned to LPLA for AUO's benefit in a personal jurisdiction analysis. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984), (holding that in a personal jurisdiction analysis, due process requires each defendant's contacts with a forum be considered individually regardless of whether the defendants have a parent-subsidiary relationship); *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed Cir. 1998) (affirming dismissal of a defendant for lack of personal jurisdiction that was in a parent-subsidiary relationship with a co-defendant that was subject to personal jurisdiction).

Exhibit B at 3.  Here CMO disclosed its ownership of a Delaware subsidiary and showed that the subsidiary operates in San Jose, California.  LPL has shown no acts of CMO USA in Delaware attributable to CMO.  Or, indeed, any acts in Delaware at all by CMO USA.  CMO USA is not relevant to jurisdiction over CMO, for the reasons correctly asserted in Wisconsin.

In sum, all of the categories of alleged sales transactions alleged by LPL to establish contacts with Delaware by CMO were specifically argued in Wisconsin not to establish jurisdiction, or even to be relevant to jurisdiction.  To now assert that challenging the pertinence of these transactions is sanctionable is an assertion by which LPL's lawyers condemn themselves.

## II.    CONTRARY TO LPL'S POSITION, FINDING CMO COMPONENTS IN DELAWARE DOES NOT ESTABLISH PURPOSEFUL ACTIVITY DIRECTED TO THE FORUM STATE

LPL indignantly contends that CMO's counsel had a duty to investigate the presence of CMO products in Delaware before moving to dismiss for lack of jurisdiction.  D.I. 87 at 28-30.

This posturing is an attempt to overcome LPL's lack of evidence that CMO sells any products in Delaware. It doesn't.

All nine Justices in *Asahi* agreed that the mere presence of quantities of the accused components incorporated into finished products being stocked in the forum state did *not* suffice to create personal jurisdiction over the defendant. In *Asahi,* 21 tire valve stems made by the defendant were found in tires of various manufacturers stocked in a single California motorcycle shop investigated by plaintiff, and the record showed that the defendant shipped hundreds of thousands of valve stems to one tire manufacturer who made 20 percent of his U.S. sales into California. 480 U.S. at 106-07. On such a record, the Supreme Court unanimously held that the Due Process Clause prevented exercise of personal jurisdiction in California over the valve stem manufacturer.

Given the record in *Asahi*, and LPL's counsel relying upon *Asahi* in Wisconsin, it is fatuous for LPL's counsel to assert that CMO or its counsel had a duty here to investigate sales of finished products sold by others in Delaware containing CMO components.[5] LPL's strident assertion that, by purchasing six computers or monitors from on-line retailers, who shipped them into Delaware in 2003, it has established personal jurisdiction over CMO, is unsupported by the case law and is without merit, confirmed by LPLA's own Wisconsin contentions that such third-party sales do not establish personal jurisdiction. Exhibit B at 8-11.

---

[5] Also fatuous is LPL's argument that CMO should have conducted a pre-filing investigation into its own jurisdictional contacts. The declaration of Mr. Chen (D.I. 21) reflects CMO's pre-filing investigation  Unable to refute it, LPL asserts that it is "artfully worded." D.I. 87 at 30. Rule 11 bars careless filings, not carefully drafted papers that are true on their face. LPL's lawyers should have conducted a pre-filing investigation of their Wisconsin briefs before carelessly filing LPL's brief contradicting them in this Court.

III.  **THE FEDERAL CIRCUIT IN THE *CEA* CASE MADE NO FINDINGS OF FACT OR CONCLUSIONS OF LAW CONCERNING PERSONAL JURISDICTION OVER CMO IN DELAWARE**

LPL asserts that in the Federal Circuit's opinion in the *CEA* case, the court supposedly presented findings of fact against CMO that should have caused CMO's counsel in this case not to challenge jurisdiction. *See* D.I. 87 at 24-25. This argument is simply not true. LPL's lawyers were not bystanders in the *CEA* litigation, but were CEA's lawyers in that case. They know that they did not achieve any determination of jurisdiction from the Federal Circuit, but were merely granted the opportunity to take discovery on jurisdiction. LPL's lawyers have deliberately misreported the rulings in the *CEA* case in its sanctions motion.

Two months ago, LPL's lawyers correctly interpreted the *CEA* case in seeking dismissal of LPLA from the Wisconsin case. Here those lawyers describe in Wisconsin the ruling they had received when they were representing CEA:

> [I]n [the *CEA*] case, the Federal Circuit remanded for jurisdictional discovery but did not find based on the record that the District of Delaware had personal jurisdiction over the Taiwanese defendant [CMO]. The Federal Circuit indicated that "additional conduct, beyond a showing of use of established distribution channels, is required to meet the demands of due process under the stream of commerce theory of personal jurisdiction." *Id.* [395 F.3d] at 1321-22.

Exhibit B at 11. Indeed, the Federal Circuit did *not* find that CMO had "derived substantial revenue" so as to meet the test of long-arm jurisdiction under § 3104(c)(4) of the Delaware statute. To the contrary, that court found the contours of the Delaware statute uncertain, observing, "The scope of the stream of commerce theory under Delaware law is not clear." 395 F.3d at 1320. The court noted that CEA's allegations and evidence of third party sales into Delaware were sufficient to establish that "substantial revenues *could* be derived by CMO from sales in Delaware," (emphasis added), but the court did not find that CMO "derived substantial revenue" from sales in Delaware, nor that any other tests of the Delaware Long-Arm statute were

15

met. *Id.* While the court stated that CEA's showing in that case was "likely" to meet Justice Brennan's test of due process, *id.* at 1321, 1323, the court did not rule that any due process test had been met, and explicitly stated that the O'Connor test had not been met, *id.* at 1322-23 ("Evidence has not yet been presented that would satisfy Justice O'Connor's standard").

LPL's assertions that the Federal Circuit "already found that CMO derived substantial revenues in Delaware from the sale of products in Delaware" (D.I. 87 at 26-27) and that the Federal Circuit found facts that precluded any argument by CMO of "no contacts in Delaware to warrant the exercise of this Court's jurisdiction" (D.I. 87 at 25), ignore and contradict the true holdings of the *CEA* decision, and assume that jurisdiction was proven there. LPL's counsel knew better when it filed this motion.

## IV.    LPL'S BULLET-POINT ALLEGATIONS OF CONTACTS ARE UNSUPPORTED BY CONTROLLING CASE LAW STATING THE STANDARDS FOR LONG-ARM JURISDICTION IN DELAWARE

CMO's Brief (D.I. 20) and Reply Brief (D.I. 78) on personal jurisdiction fully address the insufficiency of LPL's allegations to establish personal jurisdiction and, notwithstanding LPL's 17-page regurgitation (D.I. 87 at 4-21) of its version of the facts from its Opposition Brief in its sanctions brief, and its bullet-point aggregations (*e.g.,* D.I. 87 at 25-26). All of CMO's counter-arguments need not be repeated here.[6]

LPL now asserts that such aggregations have achieved such "tremendous" and "overwhelming" proportions[7] as to warrant sanctions to flatten anyone who would stand in front of this rhetorical steamroller. To the contrary, LPL's aggregations of allegations do not establish

---

[6] Almost 21 pages of LPL's 37-page brief is a rehashing of its jurisdiction brief. D.I. 87 at 4-17, 24-30. A truly frivolous motion would not require a 21-page rebuttal on the merits in a sanctions brief.

[7] "Overwhelming" appears in LPL's Brief (D.I. 87) at 2, 3, 4,19, 21, 24 (twice), 30, 31, and 35 (twice); "tremendous" appears in LPL's Brief at 3, 4, 7 and 16.

either jurisdiction or the right to sanctions if the allegations do not meet case law requirements for jurisdiction. "Tremendous" and "overwhelming" evidence that somebody else sold a component made by CMO in Delaware does not establish jurisdiction. "Tremendous" and "overwhelming" evidence that CMO owns a San Jose-based subsidiary that is incorporated in Delaware does not establish jurisdiction. "Tremendous" and "overwhelming" evidence that CMO ships products to California, and has accepted jurisdiction in California, Texas, and New York, does not establish jurisdiction in Delaware.

Delaware precedent does not offer any basis on which any of these allegations individually or collectively could establish jurisdiction under § 3104(c)(4).

Sales by Others in Delaware. *Asahi* established that sales of the defendant's valve stems in California incorporated into products by others did *not* subject the defendant to California jurisdiction, even though the finished products were stocked by retailers there. LPL's contention that 900 CMO "products" were sold by CDW and Office Depot in a three-year period does not distinguish between components and finished products, nor establish CMO's presence in Delaware. While under Delaware's Long-Arm statute, jurisdiction may be found when a defendant derives "substantial revenue" from products sold in Delaware, the term "substantial" in this statutory language has been interpreted by this and other Delaware courts to require that the defendant derive at least two to three percent of its total revenues from sales in Delaware. *See, e.g., Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F.Supp. 2d 400, 405 (D. Del. 2002) (less than one percent of total revenues not enough, but two to three percent is sufficient); *M&M Techs., Inc. v. Gurtler Chems., Inc.*, C.A. No. 03-994-GMS, 2005 U.S. Dist. LEXIS 1726 at 13-14 (D. Del., Feb. 8, 2005) (two to three percent sufficient; less than one percent not enough).

LPL asserts (D.I. 87 at 5) that CMO shipped over 309,000 pieces to two customers in California alone in 2006. LPL also asserts that during the period 2003 to 2005, CDW and Office Depot sold 900 units in Delaware containing CMO parts. *Id.* CMO's own facts, even if established, show that it cannot prove "substantial revenues" under the "one percent rule" of Delaware law: By LPL's own contentions, the annual sales rate in Delaware (300 units) would be only one-tenth of one percent of LPL's contention of total CMO shipments into the United States. No amount of additional discovery is going to improve LPL's ability to meet the "substantial revenues" test because, absent a targeting of sales into Delaware more than into other states, CMO's products spread among the several states by retailers are always going to result in Delaware's share being less than one percent. Indeed, the entire point of jurisdictional analysis is to determine whether CMO has taken any positive steps to direct its business activities toward Delaware. It has not happened.

Accepting Jurisdiction in Other States.    LPL has not cited a single case to support its proposition that CMO, by accepting jurisdiction of courts in California, New York and Texas, has created a basis for imposing jurisdiction in Delaware (D.I. 87 at 11), and there are no such Delaware cases.

Owning a Subsidiary Incorporated in Delaware.    LPL hyperventilates (D.I. 87 at 29-31) about CMO's disclosure that it owns a subsidiary incorporated in Delaware. CMO has not misled anybody. LPL's own exhibits show that the subsidiary is located in San Jose. D.I. 57 at Exhibits 7 and 8. Under well-established Delaware case law, incorporating a subsidiary in Delaware does not subject the parent to general jurisdiction under the Delaware Long-Arm statute. *See, e.g., Ace & Co. v. Balfour Beatty PLC*, 148 F.Supp. 2d 418, 422-23 (D. Del. 2001); *Merck*, 179 F.Supp. 2d at 368, 373-75. CMO is not "doing business" in Delaware by owning a

subsidiary incorporated under Delaware law, when the subsidiary is operating in California. Furthermore, there is no case law support for LPL's assertion that partial ownership of a joint venture (operating under the name "iZ3D, LLC") incorporated in Delaware (D.I. 87 at 9) is even jurisdictionally relevant.

Compromising On Jurisdiction in the *CEA* Case. The assertion by LPL that CMO's stipulation to accept jurisdiction in the *CEA* case establishes jurisdiction in this case (D.I. 87 at 11) is wholly without merit, as is LPL's allegation that such stipulation establishes CMO's bad faith (D.I. 87 at 36).

LPL's counsel was also counsel to CEA. They bargained for a stipulation (D.I. 88-2) in which, in order to resolve jurisdiction and dismiss a parallel action in California, CMO and CEA agreed that CMO would consent to jurisdiction "in this case." In exchange, CEA agreed to dismiss its pending case against CMO in California and not to seek a preliminary injunction against CMO in Delaware. The parties further stipulated that "CMO reserves the right to challenge personal jurisdiction and service of process in any other case filed against CMO in this forum." (D.I. 88-2) Having bargained for and signed this stipulation to settle another case, LPL's counsel should not be permitted to cancel their side of the bargain by asserting that the stipulation thereafter subjects CMO to Delaware jurisdiction forevermore. Controversies cannot be compromised by stipulation if the terms can be easily thrown away by counsel.

## V. LPL MIS-CITES ITS OWN EVIDENCE, A TACTIC RELEVANT TO THIS MOTION BECAUSE OF LPL'S ACCUSATIONS OF SUPPOSED SANCTIONABLE MIS-CITATIONS BY CMO

CMO categorically denies all of LPL's charges that it has misled this Court. In order to confine the hyperventilating to one party only, CMO will resist the urge to catalog here every one of the many mis-citations of LPL's exhibits and authorities in LPL's brief in opposition (D.I.

57) to CMO's motion to dismiss.  In view of LPL's maledictory, truly outrageous charge that CMO has committed "fraud on this Court" (D.I. 87 at 16), several of LPL's more egregious mis-citations of its record are recited here, many others being set forth in CMO's Reply Brief on Jurisdiction (D.I. 78 at 7-9):

- "*Attending Meetings*" *in the U.S.* "*to ensure compliance with*" *U.S. Standards*.  LPL's Brief (D.I. 87) at 10.  The cited evidence is Exhibit 22 to LPL's Brief on Jurisdiction (D.I. 57).  Exhibit 22, a web page, shows nothing more than endorsement by CMO (and many other companies) of the rejuvenation in 2004 of a standards working group, apparently worldwide, that had been formed in 1999.  The cited exhibit shows nothing about meetings or about CMO's attending them, or about compliance with US standards.

- "*CMO sold hundreds of its products in Office Depot and CDW retail stores located in Delaware*."  LPL's Brief (D.I. 87) at 1.  CDW does not have any Delaware stores.  See Exhibit C listing the location of all of CDW's branches.  CDW is a catalog house that simply receives orders and ships them out of its warehouses.  *Id.*  This allegation is repeated on page 25, mis-citing exhibits that do not show any CDW Delaware stores.  Moreover, CMO does not sell its products in Office Depot.

- "*CMO lists CMO USA as its representative in the United States*."  LPL's Brief (D.I. 87) at 9.  It does not.  The cited exhibit shows addresses and phone numbers of CMO offices, subsidiaries and affiliates.

- "*The Federal Circuit already found that CMO derived substantial revenues In Delaware from the sales of products in Delaware incorporating CMO's LCD's*."  LPL's Brief (D.I. 87) at 26-27.  If this misstatement had been true, the Federal Circuit would not have reserved the question whether jurisdiction existed under § 3104(c)(4) of the Delaware Long-Arm statute.  The court instead found that "there is substantial uncertainty concerning both the scope of the Delaware law and that of the due process clause," and that additional discovery was necessary to determine whether either standard could be met.  *Commissariat*, 395 F.3d at 1322.

- "*[N]either Delaware's long-arm statute, nor the caselaw demand that a defendant is subject to personal jurisdiction solely if the contacts with the jurisdiction are purposeful.*"  LPL's Brief (D.I. 87) at 30 (emphasis added).  This misstatement is contradicted by LPLA's own briefs filed in the Wisconsin case, as already shown, as well as *Asahi*, 480 U.S. at 112, correctly quoted and cited by LPL's counsel in Wisconsin.

- "*CMO's counsel inappropriately extrapolated a broader statement than was supported by Mr. Chen's declaration and was expressly refuted by overwhelming evidence.*"  LPL's Brief (D.I. 87) at 33-34.  This allegation hinges upon LPL's erroneous theory that whenever a third party sells a product in Delaware made by, or containing components from, CMO, such event constitutes CMO doing business in Delaware.  In view of the

rejection of this theory by the Delaware courts, specifically in *Merck*, 179 F.Supp. 2d at 373 (Barr's sales to corporations with national distribution, including Delaware, are not added to Barr's Delaware sales because "the nexus is too attenuated") and in *Siemens A.G. v. LG Semicon Co.*, 69 F.Supp. 2d 622, 627 (D. Del. 1999) (any LG revenues from sales of DRAMs to customers outside of Delaware who resell devices containing such chips in Delaware are "too remote" to meet the Delaware long-arm requirements), LPL's assertion that sales by others should have been conceded by CMO as CMO's "doing business in Delaware" is unsupportable in the law.[8]

## VI.   THE MOTION FOR SANCTIONS SHOULD NEVER HAVE BEEN FILED

Since LPL has submitted no evidence that CMO itself has sold products in Delaware, shipped products into Delaware, or derived substantial revenues from sales of products in Delaware under the applicable Delaware standards, it appears that LPL filed its motion in an effort to distract from the weakness of its position and/or intimidate CMO into withdrawing its motion to dismiss. Such motions are precisely the type that the Advisory Committee for Rule 11 has advised should not be filed. *See* Advisory Committee Notes for Fed. R. Civ. P. 11 ("Rule 11 motions should not be made . . . to emphasize the merits of a party's position. . . [or] to intimidate an adversary into withdrawing [its] contentions").

The Advisory Committee cautioned against filing motions for sanctions when the issues are considered "fairly debatable." *Id.* Similarly, the Third Circuit has instructed that where there are close questions of law (*i.e.* "fairly debatable" issues) motions for sanctions are not only improper, but "border on the abusive":

> Because the issues in this case are close, we consider the company's invocation of Rule 11 to border on the abusive. We

---

[8] In the Wisconsin case, LPL's same counsel submitted a declaration of an LPLA executive flatly stating that LPLA "has not sold products in Wisconsin" and "has not done or transacted business in Wisconsin." Exhibit D at § 7. Yet in the Wisconsin case, LPLA conceded that it sells its LCD modules to its customers located in other states, to be incorporated into computers, monitors and television sets. Exhibit B at 9 and 11. Under LPL's theory asserted in this motion, the declarant could not have made the declaration that he made because he did not account for the third party sales into Wisconsin.

> caution litigants that Rule 11 is not to be used routinely when the
> parties disagree about the correct resolution of a matter in
> litigation.   Rule 11 is instead reserved for only exceptional
> circumstances.

*Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N*, 832 F.2d 31, 32

(3rd Cir. 1987).

In *Commissariat*, the Federal Circuit fully recognized the split at the Supreme Court level

regarding the "minimum contacts" test and the Brennan/O'Connor standards. 395 F.3d at 1321-

22.  The court also noted that Delaware courts have not taken a position as to whether they will

follow either standard for establishing "minimum contacts."    *Id.*   (finding "substantial

uncertainty" in Delaware law on this issue.)

LPL ignores these close questions and assumes, wrongly, that the stream-of-commerce

test articulated by Justice Brennan in *Asahi*, never accepted by a majority of the Supreme Court,

is the only test applicable in a personal-jurisdiction contest.  CMO has every right to assert that

the O'Connor test articulated in Asahi is applicable.  Under these circumstances, where there is a

close question of law and a "fairly debatable" legal issue, motions for sanctions are improper.[9]

---

[9] The debatable question in *Asahi* and *Commissariat* related to Constitutional due process.  In this case, however, before even reaching due process requirements, the question whether Delaware's long-arm statute permits service of process on CMO must first be answered.  The answer to that question is <u>not</u> "fairly debatable" or even a close question of law; as discussed *supra*, the answer is clearly "no."   *See, e.g.,* Section IV, subheading "<u>Sales by Others in Delaware</u>", discussing the fact that LPL's own facts, even if established, fall well short of satisfying the "one percent rule" of Delaware law that is used as a measure for establishing "substantial revenues."

## VII.  CMO SHOULD BE AWARDED ITS FEES INCURRED IN OPPOSING LPL'S MOTION FOR SANCTIONS

Because LPL's motion lacks merit, this Court should award CMO its fees in opposing this motion, particularly in light of LPL's recognition in the Wisconsin case of the true state of the law of personal jurisdiction.

In a letter dated May 29, 2007, CMO warned LPL that if LPL filed its sanctions motion, CMO could seek its attorney's fees in having to respond to such a motion. Significantly, the May 29 letter from CMO was *not* attached to LPL's motion. In a further letter dated June 15, 2007, CMO identified the *Merck* case discussed supra that directly supported CMO's motion to dismiss, and directly contradicted LPL's assertions that its allegations would establish jurisdiction. LPL did not address the substance of the *Merck* case in its responsive letter or in any subsequent briefs. Tellingly, LPL did not attach the June 15 letter to its sanctions papers either. All of the letters exchanged are attached to the Licygiewicz Declaration at Exhibit E. LPL's excluding the substantive responses of CMO's counsel from the selection of letters it attached to its motion shows gamesmanship rather than good faith.

LPL's failure to remember or cite to this Court the law of jurisdiction that its lawyers addressed in the Wisconsin case is further reason to grant CMO its attorney's fees for having to respond to LPL's frivolous motion for sanctions. *Robinson v. City of San Bernardino Police Dep't,* 992 F.Supp. 1198, 1208 (C.D. Cal. 1998). This conduct, along with the other evidence discussed *supra* showing LPL's bad faith in filing its meritless motion for sanctions, clearly warrants granting CMO its attorney's fees in having to prepare its opposition. A party against whom a frivolous motion for sanctions is brought may be awarded sanctions without the necessity of filing a cross-motion for sanctions and without the necessity of complying with the safe harbor time requirements. *Patelco Credit Union v. Sahni,* 262 F.3d 897, 913 (9th Cir. 2001)

(filing frivolous motion for sanctions may lead to sanctions, and no cross-motion under Fed. R. Civ. P. 11 is required to support award of sanctions in these circumstances, because court may award reasonable expenses, including attorney's fees, incurred in presenting or opposing Fed. R. Civ. P. 11 motion to prevailing party). By filing this motion, LPL has wasted CMO's and this Court's valuable time and resources, and LPL should be sanctioned for doing so.

## CONCLUSION

This sanctions motion attempts to mask a totally legitimate, clear jurisdictional challenge as frivolous. LPL knew this when it filed this motion: its counsel had already filed in Wisconsin briefs correctly stating the law of personal jurisdiction and contradicting their own position in their motion papers here. Applying their own standards from the Wisconsin case effectively removes the mask, and reveals that the only frivolous, vexatious and wasteful motion is this one.

LPL's motion for sanctions should be denied, and CMO should be awarded its attorney's fees for having to respond to, prepare and file this opposition.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
(216) 586-3939

Dated: July 3, 2007
805261

By: _____
Philip A. Rovner (#3215)
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on July 3, 2007, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY CM/ECF, -EMAIL AND HAND DELIVERY**

Richard E. Kirk, Esq.
Ashley Blake Stitzer, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardfirm.com
astitzer@bayardfirm.com

William E. Manning, Esq.
Jennifer M. Becnel-Guzzo, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE 19801
william.manning@bipc.com
jennifer.becnelguzzo@bipc.com

**BY CM-ECF, EMAIL AND HAND DELIVERY**

Edmond D. Johnson, Esq.
Thomas H. Kovach, Esq.
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19899-1709
johnsone@pepperlaw.com
kovacht@pepperlaw.com

John W. Shaw, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
kpascale@ycst.com

I hereby certify that on July 3, 2007 I have sent by E-mail the foregoing document to the following non-registered participants:

Gaspare J. Bono, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
gbono@mckennalong.com

Vincent K. Yip, Esq.
Peter J. Wied, Esq.
Jay C. Chiu, Esq.
Paul Hastings Janofsky & Walker LLP
515 South Flower Street
Los Angeles, CA 90071
vincentyip@paulhastings.com
peterwied@paulhastings.com
jaychiu@paulhastings.com

Karineh Khachatourian, Esq.
Jeffrey M. Ratinoff, Esq.
Bryan J. Sinclair, Esq.
Buchanan Ingersoll & Rooney PC
333 Twin Dolphin Drive
Redwood Shores, CA 94065-1418
Karineh.khachatourian@bipc.com
Jeffrey.ratinoff@bipc.com
Bryan.sinclair@bipc.com

John N. Zarian, Esq.
Samia E. McCall, Esq.
Stoel Rives LLP
101 S. Capitol Boulevard
Suite 1900
Boise, ID 83702
jnzarian@stoel.com
semcall@stoel.com


Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

2