IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG. PHILIPS LCD CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-726 (GMS) |
| | ) | |
| CHI MEI OPTOELECTRONICS | ) | |
| CORPORATION; AU OPTRONICS | ) | |
| CORPORATION; AU OPTRONICS | ) | |
| CORPORATION OF AMERICA; | ) | |
| TATUNG COMPANY; TATUNG | ) | |
| COMPANY OF AMERICA, INC.; | ) | |
| AND VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF ARTHUR P. LICYGIEWICZ

OF COUNSEL:

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
(216) 586-3939

Dated:  July 3, 2007

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE  19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG. PHILIPS LCD CO., LTD.,<br><br>      Plaintiff,<br><br>      v.<br><br>CHI MEI OPTOELECTRONICS<br>CORPORATION; AU OPTRONICS<br>CORPORATION, AU OPTRONICS<br>CORPORATION OF AMERICA;<br>TATUNG COMPANY; TATUNG<br>COMPANY OF AMERICA, INC.; AND<br>VIEWSONIC CORPORATION,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 06-726 (JJF)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF ARTHUR P. LICYGIEWICZ

I, Arthur P. Licygiewicz, hereby declare and state as follows:

    1.    I make this Declaration in support of Chi Mei Optoelectronics

Corporation's Answering Brief in Opposition to LG.Philips LCD Co., Ltd.'s Motion for

Rule 11 Sanctions and Sanctions Pursuant to 28 U.S.C. § 1927. The statements made

in this Declaration are based on my own personal knowledge and on information that I

believe to be true and correct, and if called as a witness, I could and would testify

competently to the following facts.

2.     I am an attorney at Jones Day and am one of the attorneys representing Chi Mei Optoelectronics Corporation in this matter.

3.     Attached at Exhibit A hereto is a true and correct copy of LG.Philips LCD America's Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue filed in the District Court for the Western District of Wisconsin in the case styled *AU Optronics Corporation v. LG.Philips LCD Co. and LG.Philips LCD America*, no. 07-C-137-S (filed March 8, 2007).

4.     Attached at Exhibit B hereto is a true and correct copy of LG.Philips LCD America's Reply Memorandum in Support of LG.Philips LCD America's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue filed in the District Court for the Western District of Wisconsin in the case styled *AU Optronics Corporation v. LG.Philips LCD Co. and LG.Philips LCD America*, no. 07-C-137-S (filed March 8, 2007).

5.     Attached at Exhibit C hereto are true and correct copies of pages printed from Computer Discount Warehouse's official website at www.cdw.com, as well as a true and correct copy of a Dun & Bradstreet family tree report relating to Computer Discount Warehouse.

6.     Attached as Exhibit D hereto is a true and correct copy of the Declaration of Dong Hoon Han in support of LG.Philips LCD America's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue filed in the District Court for the Western District of Wisconsin in the case styled *AU Optronics Corporation v. LG.Philips LCD Co. and LG.Philips LCD America*, no. 07-C-137-S (filed March 8, 2007).

-2-

7.    Attached as Exhibit E hereto are true and correct copies of various letters between counsel for Chi Mei Optoelectronics Corporation and LG.Philips LCD Co., Ltd.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Date:  July 3, 2007

_____
Arthur P. Licygiewicz

-3-

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AU OPTRONICS CORPORATION,

Plaintiff,

v.

Civil Action No. 07-C-0137-S

LG.PHILIPS LCD CO., LTD. and
LG.PHILIPS LCD AMERICA,

Defendants.

---

## LG.PHILIPS LCD AMERICA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

---

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), defendant LG.Philips LCD America ("LPLA") respectfully submits this memorandum in support of its motion to dismiss for lack of personal jurisdiction and improper venue.[1]

### I.  INTRODUCTION

This case is an outgrowth of pending litigation between the parties. In December 2006, LG.Philips LCD Co., Ltd. ("LPL") filed a complaint alleging patent infringement against AU Optronics Corporation ("AUO") and other defendants in the United States District Court for the District of Delaware. See LG.Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corporation et al., Civ. No. 1:06-cv-726-JJF, filed December 1, 2006. LPL's patents asserted in Delaware are directed to the design and manufacture of liquid crystal display ("LCD") modules such as are

---

[1] The present motion to dismiss for lack of personal jurisdiction and improper venue is filed on behalf of LPLA. With respect to LPL, pursuant to Fed. R. Civ. P. 4(d), Plaintiff requested waiver of service. In accordance with that rule, LPL waived service. Pursuant to Fed. R. Civ. P. 4(d)(3), LPL's response is due on or before June 11, 2007.

used in portable computers, computer monitors and televisions. AUO requested additional time to answer the Delaware Complaint, and LPL agreed to AUO's requested extension. Only after obtaining LPL's consent to extend its time to respond to the complaint in Delaware did AUO file the present action in Wisconsin against LPL and LPLA. The patents asserted by AUO are also directed to LCD modules.

By instituting a new case instead of filing counterclaims in Delaware, AUO is forum shopping. In its haste to gain a tactical advantage, rather than deal with the merits of its claim in an appropriate forum, AUO overlooked the fact that its filing in Wisconsin is fundamentally flawed because this Court lacks personal jurisdiction over LPLA and venue in Wisconsin is improper. Indeed, tellingly, AUO does not allege that LPLA has carried out activities in Wisconsin or caused injuries in this state. In short, other than a bald assertion of jurisdiction, AUO's complaint fails to identify any basis for personal jurisdiction under the Wisconsin long-arm statute. LPLA does not have sufficient contacts with this forum for personal jurisdiction and venue under Rule 12.

The defect is not merely a matter of pleading. Even were AUO to amend its complaint, this Court would still lack personal jurisdiction over LPLA, and venue would remain improper in this Court. LPLA does not have any offices, facilities, employees, management or registration to do business in Wisconsin. Nor does LPLA manufacture, use, sell or offer to sell any products in Wisconsin. Thus, as a matter of fact as well as pleading, this Court lacks personal jurisdiction over LPLA. Similarly, venue is improper. Accordingly, LPLA respectfully requests that all claims against it be dismissed under Fed. R. Civ. P. 12(b)(2) and 12(b)(3).

## II.    STATEMENT OF FACTS

Defendant LPLA is a U.S. Corporation organized under the laws of the State of California, with its principal place of business in San Jose, California. (Han Declaration,

-2-

attached.) LPLA has offices in California, Texas, North Carolina and Illinois, but does not have an office or employees in Wisconsin. (Han Declaration, ¶¶ 3, 10, 12.) LPLA does not manufacture LCD modules, but instead sells to customers located in states other than Wisconsin. (Han Declaration, ¶ 4.)

LPLA has no business connections or other presence within Wisconsin. (Han Declaration, ¶¶ 5-15.) LPLA is not registered to do business in Wisconsin, nor does LPLA advertise, make, use, sell or offer to sell any products or services in Wisconsin. (Han Declaration, ¶ 5, 8, 9.)

Since January 1, 2004, LPLA has made shipments of LCD modules and parts to various locations in the United States. (Han Declaration, ¶ 18.) LPLA made no shipments whatsoever to Wisconsin in 2004, 2005 or 2007. *Id.* LPLA made a single shipment, in 2006, to Wisconsin. *Id.* The value of this single shipment was $2,100, which equates to only 0.0004% of LPLA's total U.S. shipments since January 1, 2004. *Id.*

LPLA's single shipment to Wisconsin in 2006 was a "drop shipment" of 15 LCD modules sold to its customer All American Semiconductor, Inc. ("All American") in Fremont, California. (Han Declaration, ¶ 19.) The drop shipment was made, at the direction of All American, to a third party in Hartford, Wisconsin. *Id.* Because the shipment was made F.O.B. San Jose, California, All American took title to the LCD modules in California before they were shipped to Wisconsin. *Id.* Consequently, the complete transaction, *i.e.*, sale and delivery, between LPLA and All American occurred in California. *Id.* LPLA sent the final invoice to All American at its Miami corporate headquarters. *Id.*

The other Defendant in this matter is LPL. Defendant LPL is a corporation organized under the laws of the Republic of Korea, having its principal place of business in Seoul, Korea.

LPL designs, develops, manufactures and produces LCD modules, which are a type of flat panel display that are incorporated into portable computers, computer monitors and flat panel televisions. On December 1, 2006, LPL filed in United States District Court for the District of Delaware a suit against AUO and five other defendants seeking injunctive and monetary relief for infringement of three LPL patents. The technology at issue in that case involves the design and manufacture of LCD modules.

AUO is a Taiwanese corporation, having its principal place of business at 1, Li-Hsin Rd., 2, Hsinchu Science Park, Hsinchu Taiwan, ROC. (Complaint ¶ 1.) AUO manufactures LCD products in Taiwan and China. AUO filed the present action against LPL and LPLA alleging infringement of three patents. (Complaint ¶¶ 9, 12, 15.) The technology at issue in the asserted patents also involves the design and manufacture of LCD modules.

## III.    ARGUMENT

### A.    There is No Personal Jurisdiction Over LPLA in Wisconsin.

As this Court just explained in another case, personal jurisdiction over a nonresident defendant in a patent infringement suit may be asserted only if the plaintiff can show (1) that the defendant is amenable to jurisdiction under the Wisconsin long-arm statute and (2) that the assertion of jurisdiction will not offend the minimum contacts requirement of the Due Process Clause. *Zipher Ltd. v. Markem Corp.*, No. 06-C-745-S, 2007 U.S. Dist. LEXIS 19477 at *7 (W.D. Wis., Mar. 16, 2007) (Shabaz, J.) (citing *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002)).

The establishment of personal jurisdiction under Wisconsin's long-arm statute is required before proceeding to a due process analysis. *Versatile Plastics, Inc. v. Sknowbest! Inc.*, 247 F. Supp. 2d 1098, 1101 (E.D. Wis. 2003). Even though this case will be decided under federal patent law, a federal court in a patent case must determine whether an applicable state "long-

-4-

arm" statute provides for personal jurisdiction. *Graphic Controls Corp. v. Utah Medial Products, Inc.,* 149 F.3d 1382, 1385 (Fed. Cir. 1998).

The due process clause of the U.S. Constitution requires that the defendant have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotes omitted). With respect to patent disputes in federal district courts, due process considerations in the personal jurisdiction analysis are controlled by Federal Circuit precedent. *HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1306 (Fed. Cir. 1999).

## 1. AUO Cannot Establish Jurisdiction Over LPLA Pursuant to the Wisconsin Long-Arm Statute.

AUO has the burden of demonstrating the existence of personal jurisdiction under Wisconsin's long-arm statute. *See Versatile Plastics,* 247 F. Supp. 2d at 1101. AUO, however, has not made even a *prima facia* showing, and in fact has failed to assert <u>any</u> basis for personal jurisdiction over LPLA under Wisconsin's long-arm statute. (*See* Compl, ¶ 5.) Like the plaintiff's silence in *Versatile Plastics* as to "what, if any, provision of Wisconsin's long-arm statute permits the assertion of jurisdiction," AUO's silence on this issue is fatal for jurisdiction. Indeed, the facts do not support the assertion of jurisdiction over LPLA under *any* provision of Wisconsin's jurisdictional statute. *Cf. Versatile Plastics at* 1101.

Jurisdiction is plainly not appropriate under the "Local Presence or Status" provision of Wisconsin's jurisdictional statute. Under that provision, a non-resident defendant has a sufficient presence within Wisconsin for personal jurisdiction purposes only if that defendant is "engaged in <u>substantial and not isolated activities</u> within the state, whether such activities are wholly interstate, intrastate, or otherwise." Wis. Stat. § 801.05(1)(d) (emphasis added). LPLA does not meet these requirements. It is incorporated in California and has offices in states other

than Wisconsin. (Han Declaration, ¶¶ 2-3.) In fact, LPLA has no facilities or employees in Wisconsin. (Han Declaration, ¶¶ 10, 12.) It is not registered to do business in Wisconsin and has not advertised in Wisconsin. (Han Declaration, ¶ 8-9.) AUO cannot meet its jurisdictional burden because LPLA has not engaged in activities within Wisconsin, let alone "substantial and not isolated activities." As such, LPLA has no Wisconsin presence on which the plaintiff can base its assertion of personal jurisdiction.

Nor can AUO establish jurisdiction under the "Local Injury; Foreign Act" provision of the Wisconsin jurisdictional statute. That provision permits the exercise of personal jurisdiction only if the defendant either (a) conducts solicitation or service activities in Wisconsin, or (b) goods "processed, serviced or manufactured" by the defendant are used or consumed in Wisconsin. Wis. Stat. § 801.05(4). Neither condition pertains here. Both federal and state courts have held that this provision requires more than an isolated shipment to Wisconsin. *McPhee v. Simonds Saw and Steel Co.*, 294 F. Supp. 779, 782-83 (W.D. Wis. 1969) (holding that this provision of the long-arm statute requires that at the time of the injury more than one item processed, serviced or manufactured by the defendant, was used or consumed within Wisconsin); *Schmitz v. Hunter Mach. Co.*, 89 Wis.2d 388, 399-400, 279 N.W.2d 172, 177 (Wis. 1979) (noting that the Supreme Court of Wisconsin has approved the construction of the venue statute given by the federal district court in *McPhee*).

Here, AUO fails to allege any injury to any person or thing in Wisconsin from an LPLA act in or out of Wisconsin. (See Compl.) Without any operations or employees in Wisconsin (Han Declaration, ¶¶ 3, 7-10, 12), LPLA's limited connection to Wisconsin is a <u>single</u> drop shipment that represents an inconsequential <u>four ten-thousandths of one percent</u> (0.0004%) of the products LPLA shipped within the United States since January 1, 2004. (Han Declaration, ¶18.)

Further, that sales transaction was completed in California and shipped, at the request of LPLA's customer, All American, to a third party in the Eastern District of Wisconsin, after title to the goods had passed from LPLA to All American in California.

This lone shipment to the Eastern District of Wisconsin is insufficient for purposes of asserting personal jurisdiction over LPLA in the Western District of Wisconsin under § 801.05(4). *C.f. McPhee*, 294 F. Supp. at 782-83. In any case, the shipment is not relevant to a proper analysis under section 801.05(4) because the sale was actually made in California and not Wisconsin. *C.f. Zipher* at *7-8. And it bears repeating that the requirement of a local presence under section 801.05(1)(d) cannot be satisfied by this isolated and insubstantial shipment.

In sum, Plaintiff cannot carry its burden of establishing jurisdiction over LPLA under the Wisconsin long-arm statute.

## 2.    AUO Cannot Establish Jurisdiction Over LPLA Consistent with the Requirements of Due Process.

LPLA also lacks the necessary "minimum contacts" with Wisconsin to satisfy the requirements of the Due Process Clause. Due process requires that a defendant have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (internal quotes omitted). Under the minimum contacts test, a defendant may be subject to either general or specific jurisdiction. General jurisdiction may be exercised when the plaintiff can establish that the defendant maintained "continuous and systemic" business contacts in the forum state at the time of injury. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1994). Specific jurisdiction exists only "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8.

-7-

a.    There is No Basis for the Exercise of General Jurisdiction.

AUO has not alleged that LPLA has engaged in the "continuous and systemic" contacts with Wisconsin necessary to establish general jurisdiction, nor do the facts permit AUO to make such an allegation.   Recognizing the steep standard for proving general jurisdiction, one district court recently explained in a patent case that:

> it is clear from the relative scarcity of cases permitting the assertion of general personal jurisdiction over a nonresident corporation that the standard for imposing general jurisdiction is high.

*Reynolds v. Reynolds Holdings, Inc. et. al. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 550 (E.D. Va. 2004).  In *Reynolds*, the Court found general jurisdiction did not exist over the defendant that was registered to do business in the forum state, made 0.4% of its sales in the forum state, and had continuing relationships with dealerships in the forum state. *Id.* at 552. LPLA's contacts with Wisconsin are even more insignificant than those held insufficient to support personal jurisdiction over the defendant in *Reynolds*.

Similarly, this Court found it "doubtful" that having three employees within Wisconsin, at least one Wisconsin customer that makes repeat product purchases, and a website accessible from Wisconsin would be sufficient to satisfy Due Process requirements. *Zipher* at *9-10. Here, LPLA has no employees or any operation at all in Wisconsin. (Han Declaration, ¶¶ 4, 12.) In addition, unlike the fifty printers shipped to five Wisconsin customers in the *Zipher* case, here LPLA merely drop shipped to Wisconsin a single shipment in which LPLA sold and transferred title in California. (Han Declaration, ¶ 19.)

On these facts, LPLA should not be found to have engaged in "continuous and systemic" contacts in Wisconsin to support general jurisdiction.

### b.   There is No Basis for the Exercise of Specific Jurisdiction.

AUO has also failed to allege that its claims against LPLA arise out of any contact LPLA had with Wisconsin. The Federal Circuit has recognized a three-part test for determining when specific jurisdiction exists: "(1) whether the defendant purposefully directed its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." *HollyAnne*, 199 F.3d at 1307-08.

All of these elements weigh decisively against the plaintiff's attempt to assert jurisdiction over LPLA. The first prong cannot be satisfied because AUO has not alleged that LPLA has purposely directed any activities toward Wisconsin residents, nor would the facts allow AUO to make such an argument. Again, LPLA has no business operations or other presence in Wisconsin, nor does it advertise its products in Wisconsin. (Han Declaration, ¶ 8-12.) The single shipment of LPLA products to Wisconsin is not enough to satisfy due process requirements. LPLA shipped the product F.O.B. San Jose, California. Consequently, LPLA's customer took title to the product <u>before</u> it left California and entered Wisconsin. Therefore, LPLA did not avail itself of the privilege of selling its product in Wisconsin. *Kohler Co. v. Titon Industries, Inc.*, No. 95-C-548, 1996 WL 780509, *6 (E.D. Wis. July 17, 1996) (holding that when a manufacturer ships a product F.O.B. warehouse with title transferring to a distributor before the product entered Wisconsin, the manufacturer does not avail itself of the privilege of selling in Wisconsin for personal jurisdiction purposes).

To satisfy the second prong in a patent infringement case, AUO would have to allege that LPLA, "'without authority makes, uses, offers to sell or sells any patented invention'" in Wisconsin. *HollyAnne*, 199 F.3d at 1308 (quoting 35 U.S.C. 271(a) (1994)). AUO fails to make

such an allegation and the facts cannot support such an allegation. LPLA simply has not made, used, offered to sell or sold any products in Wisconsin. (Han Declaration, ¶¶ 5, 8.)

Third, this Court's exercise of personal jurisdiction over LPLA would "offend traditional notions of fair play," and thus would violate the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316. As this Court has explained, the most important factors to consider under this standard are the "(1) interests of the state involved; and (2) the relative convenience of litigating in that forum." *Consumer Prods. Research & Design, Inc. v. Jensen*, No. 06-C-625-S, 2007 WL 765237, *5 (W.D. Wis. March 9, 2007) (Shabaz J.). Here, Wisconsin has no interest in this litigation. Neither party is from Wisconsin and there is already a case, filed prior to this action, pending in Delaware where all of these issues concerning infringement may be effectively resolved in one forum. This Court's reputation for speed and efficiency could be eroded if it began using its resources for cases such as this where no nexus with Wisconsin exists.

Furthermore, this forum is not convenient to any party. LPLA is a California based company with no offices, employees or agents in Wisconsin. (Han Declaration, ¶¶ 2, 3, 12.) The inventors of the asserted patents are believed to reside in Japan or Taiwan but certainly not in Wisconsin. The Plaintiff, AUO, and Co-Defendant, LPL, are both foreign corporations with no presence in Wisconsin. AUO's decision to file new claims in a district with no nexus to the claims at issue and where none of the parties resides or has any presence at all is nothing but forum shopping.

In sum, specific jurisdiction in Wisconsin consistent with the Constitutional requirements of due process should not be asserted over LPLA and the action against LPLA should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

**B.    Venue Is Improper In Wisconsin For LPLA.**

This Court has recently advised that the venue requirement is even "more restrictive than the personal jurisdiction requirement." *Zipher* at *6-7 (emphasis added). Under § 1400(b), venue in a patent infringement suit may lie "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id.* (citing 28 U.S.C. § 1400(b)). As discussed above, LPLA does not have a regular and established place of business in Wisconsin, nor has LPLA made any infringing sales in Wisconsin. (Han Declaration, ¶ 5, 10.) Therefore, venue is proper only if LPLA "is 'deemed' to reside in the Western District." *Zipher* at *6.

As this Court further explained, "'[r]esidence for purposes of venue is governed by 28 U.S.C. § 1391(c)," which provides:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

*Zipher* at *6 (citing 28 U.S.C. § 1391(c)). Therefore, "venue could only be proper in the Western District if [LPLA's] contacts with the Western District are such that, if the district itself were a state, personal jurisdiction would be satisfied." *Id.* at *7; *see also Van's Supply & Equip., Inc. v. Echo, Inc.*, 711 F. Supp. 497, 500 (W.D. Wis. 1989) (explaining that "a corporation doing business in one district but not incorporated or licensed to do business in the state is suable only in the district in which it does business").

Here, LPLA's single drop shipment to a third party for the benefit of LPLA's customer as described earlier, was to Hartford, Wisconsin, a city that lies in the Eastern, not Western District

-11-

of Wisconsin. Plaintiff has not and cannot allege any connection between LPLA and the Western District of Wisconsin. Because LPLA has no contacts whatsoever with the Western District, personal jurisdiction over LPLA would not be available if the Western District were itself a state. For the same reason, venue is improper under § 1391(b)(1), which also requires "residence" in the forum district.

Section 1391(b)(2), which provides that personal jurisdiction may be in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," is inapplicable for similar reasons. LPLA has not committed <u>any</u> "events or omissions [in the Western District of Wisconsin] giving rise to" the claim asserted by AUO, let alone a "substantial part" of such events. As noted earlier, the single, isolated shipment by LPLA into Wisconsin occurred in the <u>Eastern</u>, not Western District of Wisconsin.

Finally, because this action could have been brought in another judicial district where LPLA resides, § 1391(b)(3), which provides for venue if there is no other district where the action may have been brought, is also inapplicable.

For these reasons, venue is improper under §§ 1391 and 1400(b), and the Court should also dismiss the complaint against LPLA pursuant to Fed. R. Civ. P. 12(b)(3).

## IV.  CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiff's claims against Defendant LG.Philips LCD America.

-12-

Dated: March 29, 2007

Respectfully submitted,

GODFREY & KAHN, S.C.

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701
Tel: (608) 257-3911
Fax: (608) 257-0609

*Of Counsel*

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 496-7500
Fax: (202) 496-7756
*Pro Hac Vice* applications pending

*Counsel for Defendant LG.Philips LCD America*

-13-

# EXHIBIT B

31

DOC NO
REC'D/FILED

2007 APR 30  PM 4:09

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN** OWENS
CLERK US DIST COURT
WD OF WI

| | |
|---|---|
| AU OPTRONICS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 07-C-0137-S |
| | ) |
| LG.PHILIPS LCD CO., LTD. and | ) |
| LG.PHILIPS LCD AMERICA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF LG.PHILIPS LCD**
**AMERICA'S MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION AND IMPROPER VENUE**

# TABLE OF CONTENTS

**Page**

I.  AUO CANNOT ESTABLISH JURISDICTION OVER LPLA PURSUANT TO
THE WISCONSIN LONG-ARM STATUTE ................................................................... 1

    A.  LPLA Does Not Have "Substantial And Not Isolated" Contacts With
Wisconsin And In Fact Has Not Acted At All In Wisconsin ................................ 2

    B.  LPLA Does Not Have The Contacts With Wisconsin Required For
Personal Jurisdiction Under §§ 801.05(3) and § 801.05(4) Of The
Wisconsin Long-Arm Statute .............................................................................. 5

II. AUO CANNOT ESTABLISH JURISDICTION OVER LPLA CONSISTENT
WITH THE REQUIREMENTS OF DUE PROCESS..................................................... 8

    A.  LPLA Has Not Purposely Availed Itself Of The Privilege Of Conducting
Activities Within Wisconsin ................................................................................ 8

        1.  Beverly Hills Fan does not support AUO's stream of commerce
theory based on the facts in this case ........................................................ 8

        2.  LPLA's sale in California to a California based customer does not
rise to the level of purposeful availment of the privilege to do
business in Wisconsin .............................................................................. 11

    B.  The Exercise of Jurisdiction In This Forum Over LPLA Offends
Traditional Notions Of Fair Play ...................................................................... 14

III. VENUE IN THE WESTERN DISTRICT OF WISCONSIN IS IMPROPER ................ 16

IV. CONCLUSION........................................................................................................... 17

AUO misconstrues the facts and misapplies controlling authority in an attempt to find a basis for personal jurisdiction over LPLA in Wisconsin that does not exist. AUO asks this Court to allow a large Taiwanese corporation to bring a lawsuit, with no Wisconsin state law claims, in Wisconsin against a Korean based manufacturer and a California based subsidiary, neither of whom have any connection to Wisconsin. AUO claims LPLA made a sale of LCD modules in Wisconsin. That claim is wrong. Instead, the sale AUO describes was made in California by California based LPLA to a California based distributor. AUO also claims LPLA sells products over its website. That claim is also wrong. LPLA does not sell products over any website. The website AUO describes is owned and operated by LPL. Finally, AUO claims that the availability of finished LCD products in Wisconsin retail stores is a basis for asserting personal jurisdiction over LPLA. That claim is meritless. LPLA plays no role in the unilateral, independent decisions of third-party companies to manufacture or distribute finished LCD products. AUO then pins its argument for venue in this Court on the foregoing erroneous personal jurisdiction conclusions. Accordingly, AUO has failed to carry its burden of proving the existence of a ground for jurisdiction and a basis for venue, and this Court should grant LPLA's motion to dismiss.

## I.    AUO CANNOT ESTABLISH JURISDICTION OVER LPLA PURSUANT TO THE WISCONSIN LONG-ARM STATUTE

Plaintiff asserts three bases for jurisdiction under the Wisconsin long-arm statute: (1) substantial and not isolated activities within Wisconsin;  (2) an act or omission arising within Wisconsin; and (3) injury to AUO within Wisconsin based on an LPLA act outside of Wisconsin. (*See* Plaintiff's Opposition to LG.Philips LCD America's Motion to Dismiss ("AUO Opp'n") at 6-10.) AUO's arguments in support of each of these bases fail.

A.    **LPLA Does Not Have "Substantial And Not Isolated" Contacts With Wisconsin And In Fact Has Not Acted At All In Wisconsin.**

AUO's argument that LPLA is engaged in "substantial, continuous and ongoing activities" sufficient to establish jurisdiction under § 801.05(1)(d) is meritless. This Court recently explained that contacts considered relevant under the Wisconsin long-arm statute include visits to the state; registration to do business within the state; engaging in one's own advertising within the state; soliciting business within the state; and having employees, real estate, bank accounts, registered agents, customers, or sales people in the state. *Ricoh Co., Ltd. v. Austek Computer, Inc.*, 06-C-0462-C, *18-19 (April 3, 2007 W.D. Wis.). As fully explained in LPLA's Memorandum In Support Of Its Motion To Dismiss ("LPLA's Memo"), none of these contacts exists here. LPLA is not registered to do business in Wisconsin. (LPLA's Memo, Han Declaration ¶ 9.) LPLA does not engage in its own advertising or otherwise solicit business in Wisconsin. (Han Declaration ¶8.) LPLA has not participated in trade shows or other promotion events in Wisconsin. (Han Supplemental Declaration, "Han Supplemental", attached, ¶ 3.) LPLA has no employees, real estate, bank accounts, registered agents, customers, or sales people in Wisconsin. (Han Declaration ¶¶ 3, 10, 12-15.) AUO unsuccessfully attempts to counter this overwhelming evidence demonstrating no "substantial and not isolated activities" in Wisconsin with allegations concerning a separate Illinois based company, Synergistic; LPL's website, not owned or operated by LPLA; and a sale in California to a California based customer. (*See* AUO Opp'n at 6-9.)

First, AUO misconstrues Illinois based Synergistic as an LPLA distributor. (AUO Opp'n at 4.) Instead, Synergistic merely had a sales representation agreement with LPLA that expired by its own terms on December 31, 2006. (Han Supplemental ¶ 4.) Synergistic does not ship or distribute any LPLA products within Wisconsin or any other state. (Han Supplemental ¶ 5.)

Synergistic is not and has never been a partner, employee or agent of LPLA. (Id.) The evidence AUO cites in support of the supposedly "close working relationship between Synergistic and LPLA" is a link from Synergistic's website to a website owned and operated by LPLA, not by LPLA. (AUO Opp'n at 7; Han Supplemental ¶15.) That link is one of nineteen links to various manufacturers. (AUO Opp'n, Ex. N.) Moreover, AUO's failure to provide any information about how much, if any, of the Illinois based Synergistic's business is done in Wisconsin and whether or not Synergistic has even sold a single accused product in Wisconsin is fatal to its argument. *Ricoh Co., Ltd.*, 06-C-0462-C at *14-15.

Next, AUO falsely claims that LPLA operates a website through which it offers to sell products to customers in Wisconsin. (AUO Opp'n at 4.) The website identified by AUO is owned and operated by LPL, not LPLA. (Han Supplemental ¶ 15.) LPL's conduct cannot be assigned to LPLA for AUO's benefit in a personal jurisdiction analysis. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (holding that in a personal jurisdiction analysis, due process requires each defendant's contacts with a forum be considered individually regardless of whether the defendants have a parent-subsidiary relationship); *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) (affirming dismissal of a defendant for lack of personal jurisdiction that was in a parent-subsidiary relationship with a co-defendant that was subject to personal jurisdiction). LPLA does not offer products for sale on the LPL website to any of its customers, let alone residents of Wisconsin. (Han Supplemental ¶ 15.) In fact, LPLA has no involvement whatsoever in the operation a website.[1] (Han Supplemental ¶ 16.)

---

[1] Even if LPLA were involved or had ownership of the website, the requirement of commercial activity within Wisconsin would still not be met. *See Neomedia Technologies, Inc. v. Airclic,*

*(footnote continued on next page)*

AUO then erroneously argues that a single sale of products in *California* to a *California* based customer is sufficient to assert jurisdiction under *Wisconsin's* long-arm statute and attempts to support this claim by citing a discussion of the due process jurisdictional analysis in an unreported District of Colorado case. (AUO Opp'n at 8.) However, that discussion does not involve the application of any state's long-arm statute, let alone Wisconsin's long-arm statute and is therefore irrelevant. *Cornice Techs., Inc. v. Affinity Dental Prods., Inc.*, No. 04-cv-1133, 2005 WL 1712124, *6 (D.Colo. July 21, 2005). AUO also cites to *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed Cir. 1994), but that case does not apply here. In *North American*, the Federal Circuit found that the allegedly infringing sales took place in Illinois because the customers were based in Illinois. *Id.* Furthermore, the defendants had ongoing business relationships with Illinois based customers, including regular visits and product shipments to Illinois and participation in trade shows and other promotional events in Illinois. 35 F.3d at 1577-58.

Here, the sale AUO discusses occurred in California, where both LPLA and the customer, All-American Semiconductor, are based and operate. (Han Declaration ¶¶ 2, 19.) Title to the product changed hands in California. (Han Declaration ¶ 19.) Only after title had passed to All-American Semiconductor, did LPLA, for the benefit and at the direction of its customer, ship that product to a location in the Eastern District of Wisconsin. (Id.) Moreover, LPLA does not participate in trade shows or other promotional events in Wisconsin. (Han Supplemental ¶ 3.)

---

*(footnote continued from previous page)*

*Inc.*, No. 04-C-566, 2004 WL 848181,*4 (N.D.Ill. April 16, 2004) (finding in a patent case that a website that is not targeted toward a particular state and does not allow for commercial transactions "does not reach the level of commercial interactivity" required for asserting personal jurisdiction).

In addition, LPLA has no control over where independent distributors such as All-American Semiconductor choose to sell products. (Han Supplemental ¶ 11.) Instead, LPLA's distributors make unilateral, independent decisions about where to sell their products. The tenuous at best contact with Wisconsin is a far cry from the numerous contacts with the state in the sole case AUO relies on for its § 801.05(1)(d) argument, *K.W. Muth Co., Inc. v. Getnex Corp.*, No. 06-C-378-C, 2006 WL 2772828, *2 (W.D. Wis. Sep. 22, 2006). There, the defendant had alliances with two Wisconsin based companies and a network of *at least 21* distributors selling defendant's own product within Wisconsin. (*Id.*)

### B.   LPLA Does Not Have The Contacts Required With Wisconsin For Personal Jurisdiction Under §§ 801.05(3) and § 801.05(4) Of The Wisconsin Long-Arm Statute

As an initial matter, AUO, in its complaint, does not properly identify any accused products and thus fails to satisfy the pleading requirements of Fed. R. Civ. 8. *See Ricoh*, 06-C-0462-C at *10 (finding that identifying accused products by referring to a product type such as "disk drives" rather than specific model numbers is not enough to satisfy pleading standards in a patent infringement case). In its opposition brief, AUO identifies only four accused LPLA products by model number, so only sales of those products could qualify as an injury under Wis. Stat. § 801.05(3) and § 801.05(4). *Id* (considering only alleged sales of products with model numbers clearly identified in the complaint).

AUO identifies only a single transaction involving an accused product that AUO itself was not involved in:  a sale in *California* between *California* based LPLA and *California* based All-American Semiconductor.[2]  Recognizing that the sale at issue occurred in California, AUO

---

[2] In its opposition brief, AUO claims it made three purchases of allegedly infringing products, none of which were manufactured or sold by LPL or LPLA, in Wisconsin. (AUO Opp'n at 3-4.) Because AUO was responsible for these purchases, the purchases can not constitute an injury

*(footnote continued on next page)*

attempts to invoke a stream of commerce type theory described in *Nelson v. Park Industries,*

*Inc.,* 717 F.2d 1120 (7th Cir. 1983), a products liability case involving a Wisconsin minor who

suffered severe burns when a shirt she wore ignited and two corporate defendants from Hong

Kong who manufactured and distributed that shirt. *Id.* at 1122. The stream of commerce theory

had its genesis in product liability law and is particularly applicable when a consumer with

relatively little power seeks redress at the site of an injury caused by a relatively more powerful

foreign corporation because there is likely no other forum available. *See World-Wide*

*Volkswagen v. Wilson,* 444 U.S. 286 (1980) (discussing the stream of commerce theory for the

first time in a product liability suit); *Asahi Metal Indus. Co. v. Superior Court of California,* 480

U.S. 102, 114-15 (1987) (reversing a finding of personal jurisdiction over a Japanese company in

part because the suit no longer included a safety claim by a California consumer, but instead only

an indemnification claim by a Taiwanese manufacturer).

     In this case, however, the plaintiff is a major foreign corporation that could have filed suit

against LPLA in California, where LPLA is based, or in Texas, North Carolina, or Illinois where

LPLA has additional offices. (Han Declaration ¶ 2, 3.) Applying a stream of commerce theory

to permit a large Taiwanese corporation to bring suit in Wisconsin against a Korean based

manufacturer and a California based subsidiary with no connection to Wisconsin that involves no

right or interest under Wisconsin state law should not be permitted. *See Asahi Metal Indus. Co.*

*v. Superior Court of California,* 480 U.S. 102, 115-16 (1987) (explaining that permitting a suit

by a Taiwanese Corporation against a Japanese corporation in California when it was unclear

---

*(footnote continued from previous page)*

under § 801.05(3) or § 801.05(4). *See Ricoh Co.,* 06-C-0462, at *12 (explaining that a patent
holder cannot be harmed by a loss of business from a sale of a competitor's product that patent
holder itself chose to make).

whether or not California law would apply simply because products made by the Japanese corporation were shipped to California was contrary to due process). If personal jurisdiction may be asserted over LPLA under the circumstances here, the Court would essentially establish universal jurisdiction.

Additionally, a single sale is not enough to trigger application of § 801.05(4)(b). Under the local injury, foreign act provision of the Wisconsin long-arm statute, the defendant must engage in additional contact with Wisconsin besides the foreign act and local injury before a Wisconsin court may assert personal jurisdiction. *Landreman v. Martin*, 530 N.W.2d 62, 66 n.3 (Wis. Ct. App. 1995). As explained above and throughout LPLA's Memorandum In Support Of Its Motion To Dismiss, such additional contact between LPLA and Wisconsin does not exist.

AUO also claims that the use or sale of finished LCD products that include parts sold by LPLA gives rise to jurisdiction under § 801.05(4)(b), again citing *Nelson* for authority. However, in *Nelson* the defendant distributor (Bunnan) acted as the retailer's (Woolworth) buying agent and bought product samples for Woolworth, placing purchase contracts for Woolworth, inspecting products for Woolworth, acting as Woolworth's representative in efforts to obtain reimbursement from a manufacturer for defective merchandise, and holding Woolworth harmless from certain claims made against Woolworth involving the merchandise purchased by Woolworth through Bunnan. *Id*. at 1123. That close business relationship is in stark contrast to the complete lack of any relationship between LPLA and retail outlets that sell finished LCD products that have LPL components inside. LPLA does not market, sell, or distribute LCD module products to American, Best Buy, BJ's TV & Appliance, Chase TV, Circuit City, or Radio Shack or any other retail store. (Han Supplemental ¶ 10.) Nor does LPLA control or participate in any retail sales by any retail store of any finished LCD product. (Id.)

-7-

Accordingly, the Wisconsin long-arm statute does not allow for jurisdiction over LPLA.

**II.    AUO CANNOT ESTABLISH JURISDICTION OVER LPLA CONSISTENT WITH THE REQUIREMENTS OF DUE PROCESS**

AUO's contention that jurisdiction over LPLA complies with due process is largely a rehash of their flawed arguments regarding the Wisconsin long-arm statute. As explained above and in LPLA's opening brief, AUO's allegations against LPLA have no connection to Wisconsin. The very few allegations that do relate to Wisconsin only concern unilateral and independent actions by *other* entities, not LPLA. However, "[d]oing business with a company that does business in [a forum state], is not the same as doing business [in the forum state]." *Red Wing Shoe Co., Inc., v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998). Accordingly, AUO can assert no contacts with a forum state "resulting from 'the unilateral activity of another party or third person'" to LPLA. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.17 (1985)). Consequently, none of AUO's claimed bases for jurisdiction comport with due process.

**A.    LPLA Has Not Purposely Availed Itself Of The Privilege Of Conducting Activities Within Wisconsin.**

**1.    *Beverly Hills Fan* does not support AUO's stream of commerce theory based on the facts in this case.**

The Supreme Court explains that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi*, 480 U.S. 102 at 112 (1987). AUO clings to *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), in support of its stream of commerce theory, but that case is inapposite. There, the defendant distributor directly shipped accused ceiling fans intended for end user consumption from a manufacturer to retail outlets in Virginia. *Beverly Hills Fan*, 21 F.3d at 1560. Consumers buying those ceiling fans at a retail outlet received

manuals identifying the defendant distributor as the source of the fans and a warranty that the defendant distributor honored. *Id.*

Here, however, LPLA sells component parts to LCD product manufacturers who independently and unilaterally incorporate those parts into LCD products and then independently and unilaterally sell those products to retail outlets where the products are ultimately sold to end consumers. (Han Supplemental ¶¶ 9-11.) The LCD products sold to end users in Wisconsin are not branded or otherwise identified as coming from LPLA, nor does LPLA offer warranties or service options to end consumers of those monitors. (Han Supplemental ¶ 14, 17.) Also significant in *Beverly Hills Fan* was the intentional nature of the alleged infringement, evidenced by the fact that several months before the lawsuit was filed and before accused fans were shipped into Virginia, the plaintiff notified the defendants of its charge that the fans infringed plaintiff's patent. *Id.* at 1567-86. No such notification occurred here. (Han Supplemental ¶ 18.)

Although *Beverly Hills Fan* is clearly distinguishable, the circumstances here are analogous to the long line of cases finding no purposeful availment. For example, in *Adell Corp. v. Elco Textron, Inc.*, the defendant sold components to General Motors who then independently integrated the components into pickup trucks and then shipped some of those trucks to the forum state. 51 F. Supp. 2d 752, 754 (N.D. Tex. 1999). Like LPLA, the *Adell* defendant had no input on the distribution of the finished product that incorporated the allegedly infringing component, did not warrant the finished product to forum state customers, did not advertise in the forum state and did not have any direct sales of the accused device in the forum state. *Id.* The *Adell* court explicitly distinguished that case from *Beverly Hills Fan* and explained that the defendant's "shipments of parts to General Motors, who uses them in conjunction with parts obtained from

others in its final products that are eventually shipped to Texas, are not purposeful minimum contacts with Texas" and do not warrant application of the stream of commerce theory. *Id.*

Similarly, allegations that a defendant manufactured allegedly infringing products, arranged for distribution of those products through two intermediaries, and advertised its product through an internet website to forum state residents did not permit an assertion of jurisdiction. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, No. Civ.A. 99-218-SLR, 1999 WL 615175, *5 (D. Del. Aug. 3, 1999) (distinguishing those allegations from the facts in *Beverly Hills Fan*). Significantly, and similar to the circumstances here, in *American Bio*, there was no evidence demonstrating that the defendant directed the intermediaries' sales efforts at residents of the forum state. *Id.* Like here, the record in *American Bio*, did not "demonstrate the existence of ongoing commercial relationships with retailers and customers in [the forum state]." *Id.* Furthermore, the court for the sake of argument reluctantly assumed that the defendant's website displaying product information constituted an "'offer to sell,'" but declined to find that the defendant transacted business in the forum state in the absence of evidence demonstrating that forum state residents actually accessed the website. *Id.* There is also no such evidence here. In fact, LPLA does not even operate a website. (Han Supplemental ¶ 16.)

In addition, although it is common knowledge that Frigidaire and Kenmore brand products are widely available for sale in Pennsylvania, the stream of commerce theory does not justify an assertion of personal jurisdiction in Pennsylvania over a defendant who sold component parts (oven gaskets and clips) to a manufacturer, Electrolux/Frigidaire, that makes Frigidaire and Kenmore products. *Davlyn Mfg. Co., Inc., v. H&M Auto Parts, Inc.*, 414 F. Supp. 2d 523, 528-31 (E.D. Pa. 2005) (citing *Ashai* and *World-Wide Volkswagen* and distinguishing *Beverly Hills Fan*). The defendant in that case sold all of the oven gaskets and clips it

manufactured to Electrolux/Frigidaire, but had no control over and only a general knowledge of where the oven gaskets and clips would eventually end up. *Id.* at 528-29. Here, LPLA sells its LCD modules to various companies and has no control or involvement in the subsequent manufacturing and distribution of finished LCD monitor products those manufacturers produce. (Han Supplemental ¶ 9, 19.)

AUO also cites *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005), in support of its stream of commerce theory. However, in that case, the Federal Circuit remanded for jurisdictional discovery but did not find based on the record that the District of Delaware had personal jurisdiction over the Taiwanese defendant. The Federal Circuit indicated that "additional conduct, beyond a showing of use of established distribution channels, is required to meet the demands of due process under the stream of commerce theory of personal jurisdiction." *Id.* at 1321-22.

> ### 2. LPLA's sale in California to a California based customer does not rise to the level of purposeful availment of the privilege to do business in Wisconsin.

AUO also argues that LPLA purposely availed itself of the privilege of conducting activities within Wisconsin when it sold LCD modules to a California based customer. (AUO Opp'n at 1.) AUO erroneously asserts that LPLA shipped products directly to a customer in Wisconsin. (AUO Opp'n at 9.) Instead, *California* based LPLA sold products to a *California* based customer that took title to those products in *California*. (Han Declaration ¶ 19.) The California based customer then unilaterally and independently decided to have those products shipped to the Eastern District of Wisconsin. (Id.) This is directly analogous to the facts in *Kohler Co. v. Titon Industries, Inc.*, No. 95-C-548, 1996 WL 780509 (E.D. Wis. July 17, 1996). There, a Tennessee based manufacturer sold toilets to a Texas based retailer. *Id.* at *1. Placing the orders as "F.O.B. warehouse", the retailer directed the manufacturer to ship the toilets

directly from the manufacturer's Tennessee warehouse to the retailer's local stores in Wisconsin. *Id.* The Kohler court granted the motion to dismiss for lack of personal jurisdiction, holding that the presence of the toilets in Wisconsin stores "did not 'proximately result' from actions taken by [the manufacturer]," therefore no substantial connection to this forum could have been established. *Id.* at *6. The lone shipment of product to Wisconsin that AUO identifies here, occurred after the product was sold in *California* to a *California* customer, was the result of the customer's unilateral action, and therefore can not justify exercising personal jurisdiction over LPLA.[3]

AUO offers no other evidence that any accused module distributed by LPLA has ever been *sold* in Wisconsin. Each of the accused products AUO claims can be found on the shelves of retail stores in Wisconsin are finished LCD products unilaterally and independently manufactured by third parties. Jurisdiction is not proper because LPLA in no way created, controls, or employs the distribution system for those monitors. (Han Supplemental ¶ 7, 9.); *see Asahi*, 480 U.S. at 112 (reversing a finding of personal jurisdiction under the stream of commerce theory because the defendant "did not create, control, or employ the distribution system that brought [the product] to [the forum state]"). In fact, LPLA has no control or involvement whatsoever in the subsequent sale or use of their LCD modules once they are sold to distributors or manufacturers. (Han Supplemental ¶ 7, 9.) Jurisdiction is not proper over a defendant merely because an unrelated retailer independently sells a third-party product that

---

[3] Even if LPLA had made a sale in Wisconsin, a single sale or shipment is not enough to establish the minimum contacts required under the jurisdictional due process analysis. *Elite Aluminum Corp. v. Trout*, 451 F. Supp. 2d 1311, 1317 (S.D. Fla. 2006).

happens to contain a part manufactured or distributed by that defendant.[4] *Neomedia*

*Technologies, Inc., v. Ariclic, Inc.*, No. 04-C-566, 2004 WL 848181 (N.D. Ill. 2004 April 16,

2004) (distinguishing *Beverly Hills Fan* because there was no evidence of coordination between

retailer's efforts in the forum state and the defendant).

Even a company that grants exclusive access to its wholly owned subsidiary to market

and distribute a product in the forum is not subject to personal jurisdiction. *Savage v. Scripto-*

*Tokai Corp.*, 147 F. Supp. 2d 86 (D.Conn. 2001). In *Savage*, the defendant designed a lighter

product and manufactured and shipped components for that lighter to a subsidiary in Mexico that

completed assembly of the lighter. *Id.* at 88-89. Then another of the defendant's subsidiary

---

[4] The cases AUO cites on page 14 of its brief are inapposite. First, in *Donnelly Corp. v. Reitter & Schefenacker*, 189 F. Supp. 2d 696 (W.D. Mich. 2002), the list of contacts with Michigan is seemingly endless. The *Donnelly* defendant moving for dismissal there was a limited partner in a Michigan limited partnership that maintained offices in Michigan and manufactured the alleged infringing products. *Id.* at 698. That defendant made at least 50 shipments of allegedly infringing product samples to the limited partnership in Michigan for use in sales presentations to General Motors and Chrysler in Michigan. *Id.* at 699. The defendant also collaborated with the limited partnership in Michigan on the design of the allegedly infringing products. *Id.* at 700. The defendant's personnel were sent to Michigan every other month to participate in sales presentations, meet with prospective customers, oversee supply contract arrangements, and attend related trade shows. *Id.* at 700-01. Some of the defendant's other employees were stationed in Michigan to provide technical assistance on the manufacturing of accused products by the Michigan limited partner. *Id.* at 700. Still more employees actively provided technical support via phone and e-mail to the Michigan partnership while that partnership was manufacturing the accused products. *Id.* This endless stream of contacts is nothing like the tenuous at best connection AUO attempts to find between LPLA and Wisconsin. In *Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, the defendant manufactured only drill chucks marked with the RIDGID brand name for exclusive use in RIDGID brand drills sold exclusively at Home Depot. No. 2:05-cv-185, 2005 WL 3299718 (E.D. Tex. Dec. 2, 2005). Here, LPLA sells its LCD modules to various companies. (Han Supplemental ¶ 19.) In *Motorola Inc. v. PC-TEL*, unlike LPLA, the co-defendant seeking dismissal had licensing agreements incorporated under Delaware law and operated a website from which its Delaware customers ordered products and sought support. 58 F. Supp. 2d 349, 351-52 (D. Del. 1999). Furthermore, the forum state Delaware had a much more significant interest in the litigation than exists here. Both the plaintiff and a co-defendant in *Motorola* were Delaware corporations. *Id.* at 351.

corporations distributed the lighter throughout the United States, including in Connecticut where a family filed a product liability suit involving the lighter. *Id.* The defendant there had even named the president and some board members of the subsidiary corporations. *Id.* at 89-90. However, the *Savage* court held that the defendant's involvement in naming corporate directors and officers of its subsidiaries and having a direct ownership interest in subsidiaries were not enough for a Connecticut court to assert personal jurisdiction based on the subsidiaries' contact with Connecticut. *Id.* at 94-95.

The relationship in *Savage* is much closer than the relationship between LPLA and any finished LCD manufacturer, including LG Electronics. LPLA has no ownership interest in any finished LCD producer and plays no role in the distribution of any finished LCD product. (Han Supplemental ¶¶ 7, 9, 11.) Nor has LPLA designed or created a product that is marketed or distributed by any LCD manufacturer. (Id.) Instead, LPLA merely sells component parts that finished LCD manufacturers unilaterally and independently choose to integrate into LCD products that those manufacturers unilaterally and independently choose to sell and distribute. Accordingly, the facts here are "insufficient to support the constitutional exercise of jurisdiction over [LPLA]" in Wisconsin. *Savage*, 147 F. Supp. 2d at 94.

**B.    The Exercise of Jurisdiction In This Forum Over LPLA Offends Traditional Notions Of Fair Play.**

As explained in LPLA's Memorandum In Support Of Its Motion To Dismiss, this Court's exercise of personal jurisdiction over LPLA would "offend traditional notions of fair play," and thus violate the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316. Instead of filing suit in an appropriate forum, AUO engaged in blatant forum shopping, seeking merely to take advantage

-14-

of this court's reputation for speed and efficiency.[5]  Such forum shopping is disfavored. *C.R.*
*Bard, Inc. v. Schwartz*, 716 F.2d 874, 877-878 (Fed. Cir. 1983) (noting that Congress created the
Federal Circuit to prevent forum shopping). This Court must be particularly vigilant considering
plaintiffs' particular attraction to it. *See Reynolds and Reynolds Holding, Inc. v. Data Supplies,*
*Inc.*, 301 F. Supp. 2d 545, 551-52 (E.D.Va. 2004) (recognizing that the Eastern District of
Virginia's reputation as the "rocket docket" attracts plaintiffs, but that the court must guard
against that attraction dulling the very expediency the court is known for).

Furthermore, as explained above, Wisconsin's connection to this suit is tenuous at best.
In a case with much stronger connections between the defendant and the forum state than exist
here, this Court explained that it was "doubtful" that due process would allow an assertion of
personal jurisdiction. *Zipher Ltd. v. Markem Corp.*, No. 06-C-745-S, 2007 WL 840512 (W.D.
Wis. Mar. 16, 2007) (referring to the defendant's three employees within Wisconsin, at least one
Wisconsin customer that makes repeat product purchases, and a website accessible from
Wisconsin). That neither party here are citizens or residents of Wisconsin erodes any potential
interest Wisconsin may have had in this suit. *See Asahi*, 480 U.S. at 114 (explaining that
"because the plaintiff is not a California resident, California's legitimate interests in the dispute
have considerably diminished."). Moreover, AUO is not attempting to vindicate a right or
interest protected by Wisconsin law, but an interest under federal law. An action already filed
prior to this action, pending in Delaware, and involving the same patents at issue here, gives

---

[5] On April 16, 2007, defendant LG.Philips LCD Co., Ltd., recognizing that this forum is
inappropriate, filed a motion to transfer this case to the District of Delaware where another suit
involving the patents at issue here is pending.

AUO that same opportunity.[6]  Accordingly, Wisconsin's only interest here is to have its federal court in the Western District protect its docket from having AUO's forum shopping force that court to devote time and resources to a case that should have been filed elsewhere.

## III.    VENUE IN THE WESTERN DISTRICT OF WISCONSIN IS IMPROPER

AUO apparently and appropriately concedes venue is not proper under § 1391(b)(1) and § 1391(b)(3).  The bases for venue in this district that AUO does assert to establish venue are tied to its erroneous personal jurisdiction conclusions.  However, the venue requirement is even "more restrictive than the personal jurisdiction requirement." *Zipher*, 2007 WL 804512 at *3 (emphasis added).  Under § 1400(b), venue in a patent infringement suit may lie "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id.* (citing 28 U.S.C. § 1400(b)).  AUO recognizes that LPLA does not have a regular and established place of business in Wisconsin and accordingly makes no effort to justify venue under that clause of § 1400(b).

However, AUO goes on to conclude that jurisdiction is proper in the Western District and, thus venue is also proper.  Because its premise is false, AUO's venue argument fails.  As explained above, LPLA has no control or involvement in the distribution of finished product LCD monitor products manufactured by LG Electronics or any other manufacturer to retail outlets in Wisconsin, thus the availability of those products can not be a basis for personal jurisdiction over LPLA in the Western District of Wisconsin.  (Han Supplemental ¶¶ 7, 9 .)

---

[6] In an effort to enforce its intellectual property rights, LPL filed a complaint in the District Court for the District of Delaware ("Delaware complaint") against AUO and other defendants alleging infringement of three LPL patents.  (*See* LPL's Complaint for Patent Infringement in the United States District Court for the District of Delaware, Exh. A.)  On April 11, 2007, LPL amended its Delaware complaint to assert claims for declaratory judgment of invalidity and non-infringement of the AUO patents at issue in this suit.  (*See* LPL's First Amended Complaint For Patent Infringement Against Defendant AU Optronics Corporation, Exh. B.)

AUO's other unfounded jurisdictional arguments also fail. LPLA makes no sales over any website to any customers, let alone customers in the Western District. (Han Supplemental ¶ 15-16.) AUO does not offer any evidence of LPLA product sales in Wisconsin by Synergistic, whose only Wisconsin office lies in the Eastern District. (AUO Opp'n, Ex. O.) Finally, the post-sale shipment of LCD modules owned by All-American Semiconductor was made to the Eastern District of Wisconsin. (Han Declaration ¶ 19.) If this Court finds the other alleged conduct satisfies personal jurisdiction in Wisconsin, it could only do so in the Eastern District of Wisconsin not the Western District.

For similar reasons AUO's argument for proper venue under § 1391(b)(2) is also erroneous. Here, once again, AUO relies on independent and unilateral conduct by unrelated retailers who sell products that are not manufactured, sold, or distributed by LPLA rather than conduct by LPLA. AUO fails to identify any relevant LPLA conduct within the Western District.

For these reasons, venue is improper under §§ 1391 and 1400(b), and the Court should also dismiss the complaint against LPLA pursuant to Fed. R. Civ. P. 12(b)(3).

IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiff's claims against Defendant LG.Philips LCD America.

Dated:  April 30, 2007

Respectfully submitted,

GODFREY & KAHN, S.C.

Brady C. Williamson
James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street
Madison, Wisconsin 53701
Tel:  (608) 257-3911
Fax:  (608) 257-0609

*Of Counsel*

Gaspare J. Bono
R. Tyler Goodwyn
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
Tel:  (202) 496-7500
Fax:  (202) 496-7756
*Pro Hac Vice* applications pending

*Counsel for Defendant LG.Philips LCD America*

mn313961_1

-18-

## CERTIFICATE OF SERVICE

I, Nicole Talbott Settle, hereby certifies that on April 30, 2007, true and correct copies of

the attached:

- **REPLY MEMORANDUM IN SUPPORT OF LG.PHILLIPS LCD AMERICA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; AND**

- **SUPPLEMENTAL DECLARATION OF DONG HOON HAN IN SUPPORT OF LPLA'S MOTION TO DISMISS.**

were caused to be served upon attorney(s) of record at the following addresses in the following

manner:

MICHAEL BEST & FRIEDRICH LLP
James R. Troupis
Michael A. Hughes
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, WI 53701-1806

**Hand Delivered**

M. Craig Tyler
Brian D. Range
8911 Capital of Texas Highway North
Westech 360, suite 3350
Austin, TX 78759-8497

**By email and overnight delivery**

WILSON SONSINI GOODRICH & ROSATI
Ron E. Shulman
Steven Baik
650 Page Mill Road
Palo Alto, CA 94304-1050

**By email and overnight delivery**

on the 26th day of April 2007.

Nicole Talbott Settle

mn313966_1

# EXHIBIT C

Catalog Request

Page 1 of 2



| Home | About Us | Customer Support | View Cart |  Log On

Advanced Search

800.750.4239

Brands Hardware Software Networking Accessories Services    Product Finders    ○ Mac ○ PC ● All

**CDW Catalog Request**

RESOURCES
- My Purchases
- Order Status
- My Company
- My Solutions
- My Account
- Account Team
- New Accounts
- Rebates
- Webinars and Podcasts
- Resource Center
- CDW Outlet
- Technical Support
- Request Catalog
- eNewsletters

 PRINTABLE VERSION




Sign up today for your
**FREE Catalogs**
Find the computer products and information you need

CDW offers a variety of information resources designed to meet the IT needs of businesses of every size. To request your catalog(s), just complete the form below or call **800.835.4239.**

Sorry! Catalogs can only be delivered to U.S. mailing addresses.

Prefer your information electronically? Subscribe to **CDW E-mail Update,** an e-mail newsletter designed to keep you up-to-date on the latest technology trends.

First _____    Last _____

Company _____

Address _____

City _____    State _____

Zip _____

E-Mail _____

Catalog Request

Page 2 of 2

Phone [                    ]     Fax [                    ]

**Please select from the catalogs below:**

☐ **Small Business Catalog**
Showcasing our top-selling products and services designed to help small businesses build the perfect technology solution. (printed monthly)

☐ **Medium/Large Business Catalog**
Showcasing our top-selling products and services designed to help medium and large businesses build the perfect technology solution. (printed monthly)

☐ **Digital Flow**
Featuring PC and Mac solutions to help you create, manage, deliver and archive the information that drives your business. (8 issues printed per year)

☐ **NetComm Solutions™**
Offers a full range of networking products, plus feature articles that are pertinent to IT professionals and MIS decision-makers. (printed monthly)

☐ **Mobile & Wireless Catalog**
Check out CDW's expansive line of mobile and wireless products designed to make your employees more productive in and out of the office. (printed quarterly)

☐ **Software Catalog**
From animation and Web publishing to volume software licensing, shop a complete range of products to meet your business needs. (printed quarterly)

☐ **Data Storage Catalog**
Explore the full range of data storage solutions CDW offers to help you manage and protect your critical data. (printed quarterly)




Interested in catalogs for government agencies and educational institutions? Request them here.
If you would like to be removed from our catalog mailing list, please click here.



Copyright 2007 CDW Corporation
About Us | Berbee | Careers | Investor Relations | Contact Us | Newsroom | Terms & Conditions | Privacy Policy | Product Recalls

## Why Buy From CDW?

HUGE SELECTION OF IN-STOCK, BRAND-NAME
INVENTORY—SHIPPED THE SAME DAY



WAREHOUSING

When it comes to choosing a technology provider, you can't afford to wait. You want the **right product** at the **right price** from the **right supplier**. And you want it today. CDW knows you have many sources competing for your business; each promising faster delivery, higher order accuracy and discounted pricing. Your desk is caving under piles of projects, and the pressure is mounting to pinpoint the best technology partner that proves measurable cost savings for your company. But buyer beware of the "box pushers" that claim dramatic price cuts, but leave little value-add once the delivery hits your dock ... often weeks after your order was placed. With CDW, you get more than just a box at your doorstep. You get the confidence in knowing that the coworkers staffing our 450,000-square-foot Warehouse and Distribution Center are ensuring that your purchase is **exactly** what you ordered. We pick and pack products with precision from among 100,000 brand-name items in stock, and we ship credit-approved available inventory the **same day**. Surrounding your purchase is a host of added services from CDW—including 24x7x365 support, technology specialists and dedicated repair services—so that you have everything you need to protect your investment from the date of purchase and beyond.

## The CDW Difference:
## Urgent Response to Customers

CDW is built for speed. More than 90 percent of all in-stock orders are shipped the same day. We deliver what we promise faster than anyone else because CDW owns a state-of-the-art, fully automated Warehouse and Distribution Center. We have 450,000 square feet of space dedicated to serving our customers. This gives us the size, scope and scale necessary to fill customer orders with accuracy and efficiency.

What does this mean for you?

CDW keeps pace with a wide selection of hardware and software to meet your constantly evolving technology needs. No matter how large or small their business size, our customers realize greater productivity and business growth by receiving the right technology right away. CDW Account Managers work with each customer to assess individual needs, make recommendations and facilitate the right product decisions. We help your IT staff to work within their IT infrastructure to meet their short- and long-term challenges.

Our employees are fully committed to yours. We don't leave the Warehouse until the job is done. As a result, CDW helps customers avoid downtime and meet deadlines by getting products to them fast.





# Why Buy From CDW?

HUGE SELECTION OF IN-STOCK, BRAND-NAME INVENTORY—SHIPPED THE SAME DAY

## WAREHOUSING

» Expansive state-of-the-art facilities—CDW's three combined warehouses total 450,000 square feet and have three levels of storage and seven miles of conveyor belt. On average, we ship 36,000 boxes each day—meeting the tightest of deadlines.

» Rigorous quality control process—Product shipments are put through a rigorous three-step quality control process that scans items to update a customer's order and check for accuracy. Next, CDW coworkers use a weight variance scale to determine what the box should weigh and perform a final quality check in the shipping area before the boxes are loaded onto the trucks. CDW even uploads a digital image of the box contents to the customer's website through a high-speed motion camera. This helps determine where any discrepancies in shipping may occur.



CDW is successful because we respond to our customers' technology needs with a sense of urgency.

## Bottom-Line Benefits: The Right Part at the Right Price at the Right Time

Partnering with CDW for your technology products, services and support means more than just saving a dime. CDW helps customers get the solution that's truly right for them.

CDW's commitment to the customer extends into our Warehouse to bring you . . .

**The product you want, when you want it**—CDW's vast array of inventory ensures that you'll find the solution you're looking for to meet your business needs.

**Unparalleled sense of urgency**—CDW customers know that when they need something, whether large or small, we'll pull out all the stops to make it happen—every order, every call, every time. We meet deadlines so you can avoid downtime.

**Commitment to quality**—CDW's extensive QC/QA process leaves no





**WAREHOUSE 1—Fast, Reliable Order Fulfillment**
» 50 certified pick and pack meets rigorous industry standards
» Packing lists print every 30 minutes
» Speed pick—single quantity, single items are grouped to save time
» Bar code scans routinely verify order accuracy

**WAREHOUSE 2—Updated Inventory Constantly Replenished**
» CDW is set up to receive shipments between 1 a.m.–11 p.m. so that inventory levels are constantly replenished
» Local vendor network can secure out-of-stock products for 24-hour delivery



**WAREHOUSE 3—Quick Shipping from Our Dock to Yours**
» 35,000–40,000 boxes are shipped per day ($24 million in inventory)
» Customers have choice of carriers; if a single ship point in the United States for UPS and FedEx

» CDW employees work until all orders



Decide with Confidence

# Family Tree Report for Cdw Corporation (10-762-7952)

| Business Name | Trade Style | Location Type | Physical City | State | Physical State Abbreviation | Country |
|---|---|---|---|---|---|---|
| Cdw Corporation | CDW | HEADQUARTERS | Vernon Hills | Illinois | IL | USA |
| Cdw Corporation | | BRANCH | Buena Park | California | CA | USA |
| Cdw Corporation | | BRANCH | Shelton | Connecticut | CT | USA |
| Cdw Corporation | Computer Discount Warehouse | BRANCH | Chicago | Illinois | IL | USA |
| Cdw Corporation | | BRANCH | Lake Forest | Illinois | IL | USA |
| Cdw Corporation | Computer Distribution Whse | BRANCH | Vernon Hills | Illinois | IL | USA |
| Cdw Corporation | | BRANCH | Vernon Hills | Illinois | IL | USA |
| Cdw Corporation | | BRANCH | Vernon Hills | Illinois | IL | USA |
| Cdw Corporation | | BRANCH | Vernon Hills | Illinois | IL | USA |
| Cdw Corporation | | BRANCH | North Las Vegas | Nevada | NV | USA |
| Cdw Corporation | | BRANCH | Eatontown | New Jersey | NJ | USA |
| Cdw Corporation | | BRANCH | Voorhees | New Jersey | NJ | USA |
| Cdw Corporation | | BRANCH | Herndon | Virginia | VA | USA |
| Berbee Information Networks Corporation | | HEADQUARTERS | Madison | Wisconsin | WI | USA |
| Berbee Information Networks Corporation | | BRANCH | Chicago | Illinois | IL | USA |
| Berbee Information Networks Corporation | | BRANCH | Carmel | Indiana | IN | USA |
| Berbee Information Networks Corporation | | BRANCH | Ada | Michigan | MI | USA |
| Berbee Information Networks Corporation | | BRANCH | Southfield | Michigan | MI | USA |
| Berbee Information Networks Corporation | | BRANCH | Minneapolis | Minnesota | MN | USA |
| Berbee Information Networks Corporation | | BRANCH | Brecksville | Ohio | OH | USA |
| Berbee Information Networks Corporation | | BRANCH | Cincinnati | Ohio | OH | USA |
| Berbee Information Networks Corporation | | BRANCH | Appleton | Wisconsin | WI | USA |
| Berbee Information Networks Corporation | | BRANCH | Schofield | Wisconsin | WI | USA |
| Berbee Information Networks Corporation | | BRANCH | Waukesha | Wisconsin | WI | USA |
| Foresight Technology Group, Inc. | | HEADQUARTERS | Brecksville | Ohio | OH | USA |
| Foresight Technology Group, Inc. | | BRANCH | Murfreesboro | Tennessee | TN | USA |
| Network Engineering Associates LLC | | SINGLE | Schofield | Wisconsin | WI | USA |
| CDW Canada Inc. | | SINGLE | Toronto | ONTARIO | ON | CANADA |
| Cdw Capital Corp | | SINGLE | Vernon Hills | Illinois | IL | USA |
| Cdw Direct, LLC | | SINGLE | Vernon Hills | Illinois | IL | USA |
| Cdw Government Inc | Cdw-G | HEADQUARTERS | Vernon Hills | Illinois | IL | USA |
| Cdw Government Inc | | BRANCH | Chicago | Illinois | IL | USA |

USA
USA

IL
IL

Illinois
Illinois

Vernon Hills
Vernon Hills

SINGLE
SINGLE

© 2003 Dun & Bradstreet, Inc.

 Cdw sfc, LLC
 Cdw Logistics, Inc

# EXHIBIT D

8

DOC NO
A ??? FILED

2007 MAR 29  PM 4: 18

THE ??? ?? ? ? BAHS
CLERK ??  DIST COURT
?? OF WI

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AU OPTRONICS CORPORATION,

Plaintiff,

v.

LG.PHILIPS LCD CO., LTD. and
LG.PHILIPS LCD AMERICA,

Defendants.

Civil Action No. 07-C-0137-S

## DECLARATION OF DONG HOON HAN

I, Dong Hoon Han, hereby declare and state:

1.    I am over the age of 18 and have personal knowledge about the facts described below.

2.    I am the Accounting Manager for LG.Philips LCD America, Inc. ("LPLA"). LPLA is a corporation organized under the laws of the State of California, with its principal place of business located in San Jose, California. I have examined the records of LPLA from January 1, 2004 to the present. The declarations herein are made based upon my personal knowledge and review of these records.

3.    LPLA has six offices in the United States. Two of LPLA's offices are located in California, two are in Texas, one is in North Carolina and one is in Illinois. LPLA does not have any offices or employees in Wisconsin.

4.    LPLA sells Liquid Crystal Display ("LCD") modules, which are a type of flat panel display incorporated into products such as portable computers, computer monitors and televisions. LPLA sells its LCD modules to customers located in states other than Wisconsin. Except for the one shipment detailed below, LPLA does not ship products into Wisconsin.

5. LPLA has not sold products in Wisconsin.

6. LPLA has not entered into any contracts in Wisconsin.

7. LPLA has not done or transacted business in Wisconsin.

8. LPLA has not advertised in Wisconsin.

9. LPLA is not registered to do business in Wisconsin.

10. LPLA does not maintain an office or other business facility in Wisconsin.

11. LPLA does not have a mailing address or telephone number in Wisconsin.

12. LPLA does not have personnel or agents in Wisconsin.

13. LPLA does not have subsidiaries or affiliates in Wisconsin.

14. LPLA does not maintain a bank account in Wisconsin.

15. LPLA does not own, use or possess any real property situated in Wisconsin nor has LPLA acquired possession of or control over any asset or thing of value in Wisconsin.

16. LPLA has not engaged in any persistent course of conduct in Wisconsin.

17. LPLA has not committed any torts in Wisconsin.

18. Since January 1, 2004, LPLA has made product shipments to various locations in the United States. In 2004, 2005 and 2007, LPLA did not make any shipments to Wisconsin. In 2006, LPLA made only one shipment to Wisconsin. The value of this single shipment was $2,100 which equates to 0.0004% of LPLA's total U.S. shipments since January 1, 2004.

19. The one shipment in 2006 to Wisconsin was a drop shipment of 15 LCD modules sold for $2,100 total to LPLA's customer, All American Semiconductor, Inc. ("All American"), in Fremont California. At the request of All American, LPLA had the modules shipped to a third party in Hartford, Wisconsin. The shipment was made F.O.B. Shipping Point in San Jose

2

California. Consequently, All American took title to the products in California before they were shipped to Wisconsin; and the sales transaction took place and was completed between LPLA and All American in California. The invoice for $2,100 was sent to All American Semiconductor at its Miami corporate office. This drop shipment was LPLA's only shipment to Wisconsin since January 1, 2004. Attached as Exhibit 1 is a true and correct copy of LPLA's invoice, dated October 31, 2006, to All American Semiconductor, Inc. for this shipment.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 26, 2007.

Dong Hoen Han

3

# EXHIBIT E

Atlanta

Denver

Los Angeles

Philadelphia

GASPARE J. BONO
(202) 496-7211

# McKenna Long
## &Aldridge℠
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

EMAIL ADDRESS
gbono@mckennalong.com

May 10, 2007

VIA ELECTRONIC MAIL

Kenneth R. Adamo, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

>    Re:    **LG.Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.,**
>            Civil Action No. 06-726 (JJF) (D. Del.)

Dear Ken:

As you know, your client, Chi Mei Optoelectronics Corporation ("CMO"), is a defendant in the referenced action pending in Delaware. In response to the complaint, CMO filed a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process.

As you also know, in **Commissariat a l'Energie Atomique v. Samsung Electronics Co., Ltd., et al.,** Civil Action No. 03-484 (KAJ) ("the prior case"), CMO filed a similar motion to dismiss for lack of personal jurisdictional and insufficiency of service of process in that Delaware action. In response, the Court granted CMO's motion and did not initially grant jurisdictional discovery. CEA then appealed that ruling to the Court of Appeals for the Federal Circuit ("CAFC") and simultaneously filed an action against CMO in the Northern District of California alleging the same cause of action for patent infringement. During the pendency of the appeal to the CAFC, CMO answered the California complaint and did not contest personal jurisdiction in the California action.

After CMO did not contest personal jurisdiction in the California action, the CAFC vacated this Court's order dismissing CMO and remanded the Delaware case to allow CEA to conduct jurisdictional discovery. CEA then engaged in months of costly and extensive jurisdictional discovery on the subject of personal jurisdiction over CMO in Delaware. This discovery included written discovery and the production of several thousand pages of documents from CMO, as well as document production and depositions from third parties. After months of jurisdictional discovery, CMO then consented to the jurisdiction of this Court, on the day before CEA was to take the

Kenneth R. Adamo
May 10, 2007
Page 2

deposition of a CMO sales person in the United States, and before jurisdictional discovery was even completed.

In its opinion on the appeal filed by CEA in the prior case, the CAFC concluded that "CMO did not submit evidence to contradict CEA's allegation that CMO derived substantial revenue from sales of its products to Delaware. Nor did CMO submit evidence to contradict CEA's assertion that its products, as incorporated by OEM's into computer monitors, were likely to reach Delaware." It is also obvious that CMO will not be able to contradict any similar assertions LPL might present in response to the present motion. The CAFC also stated that, "[c]ontrary to the district court's holding, the evidence already presented by plaintiff is sufficient to demonstrate that CMO sells a very large volume of LCD's to companies which incorporate these displays into their final product and that these products are likely sold in Delaware in substantial quantities." In addition, the CAFC concluded that "the district court should have found CEA's showing sufficient to establish that substantial revenues could be derived by CMO from the sales of products in Delaware incorporating CMO's LCDs." Finally, the CAFC concluded that CEA went beyond the requirement for presentation of mere factual allegations of contacts with the jurisdiction by CMO, as required for jurisdictional discovery, and rather "has already made a prima facie case for CMO's use of an established distribution network that likely results in substantial sales of its products in Delaware."

In addition to the above facts that were before the Court in response to CMO's motion to dismiss the prior case, there are many additional facts separate and apart from the discovery subject to the protective order in the prior case, which will be presented to this Court to further establish personal jurisdiction against CMO. Such facts include, but are not limited to, the following:

(1)     evidence of actual sales of CMO products in Delaware from documents produced by third parties in the prior case that were not subject to any protective order in the prior case;

(2)     evidence of revenues earned by CMO from the sale of its products in Delaware, a fact supported by the CAFC decision, which concluded that CMO's Delaware revenues could be substantial, based on the allegations in the complaint, the pre-discovery evidence submitted by CEA, and CMO's failure to rebut the factual inference that devices incorporating its LCD's were sold in Delaware, and also supported by CMO's own annual reports and financial statements, showing large revenues from the U.S. as a whole;

(3)     evidence of CMO's acknowledgement that the exercise of jurisdiction by this Court would be proper, including the fact that CMO consented to

Kenneth R. Adamo
May 10, 2007
Page 3

jurisdiction in Delaware in the prior case and did not challenge jurisdiction in the California case;

(4)    evidence of CMO's reliance on the benefits and protections of the laws of the United States, including its recent filing of a patent infringement lawsuit against LPL in Texas; and

(5)    other further evidence of CMO's contacts with Delaware found in the public record and based on our own investigation.[1]

While we believe that the public record more than establishes personal jurisdiction over CMO in Delaware as outlined in this letter, we also intend to request permission from Judge Farnan to use the discovery from the prior case, as suggested by Judge Thynge. We also intend to move in the alternative for jurisdictional discovery, and we have no doubt that such additional discovery will only serve to heighten the amount of evidence regarding CMO's contacts with Delaware.

As a result of the above facts, we fail to understand how CMO believes that a motion to dismiss is warranted or proper. Because your firm did not represent CMO in the prior case, we can only assume that you were unaware of the strong evidence of jurisdiction over CMO when you filed the motion. In any event, as you are now aware of the indisputable and uncontroverted facts that establish jurisdiction over your client in Delaware, we request that CMO withdraw its motion and enter into a stipulation regarding jurisdiction. If you fail to so agree, LPL will seek reimbursement of its costs and fees incurred in all matters related to CMO's meritless motion to dismiss. Because LPL has little time before it must respond to CMO's motion, please advise me of your position no later than close of business on May 14, 2007.

Very truly yours,

Gaspare J. Bono

cc:    Richard D. Kirk, Esq. (via e-mail)
       Philip A. Rovner, Esq. (via e-mail)

---

[1]    To be clear, all such evidence cited in these paragraphs is not based on any document or information marked confidential or highly sensitive confidential pursuant to any protective order in the prior case.

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190
TELEPHONE: 216-586-3939 • FACSIMILE: 216-579-0212

Direct Number:  (216) 586-7177
rckahrl@jonesday.com

JP027128/1516593                    May 14, 2007
987893-600001

**VIA ELECTRONIC MAIL**

Gaspare J. Bono, Esq.
McKenna Long & Aldridge
1900 K Street, NW
Washington, D.C.  20006

Re:   <u>LG. Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.,</u>
      Civil Action No. 06-726 (JJF) (D. Del.)

Dear Mr. Bono:

    This letter responds to your letter to Mr. Adamo of May 10.  I will address each of your points seriatim.

    The proceedings in which your firm represented CEA against numerous defendants including CMO were predicated upon jurisdiction existing as of May 2003. CEA never proved such jurisdiction, and CMO resolved the jurisdictional controversy with CEA by agreement.  Indeed, in its answer in *CEA*, CMO specifically stated that its agreement not to contest personal jurisdiction or venue was "[p]ursuant to a compromise and settlement between CEA and CMO of certain procedural issues." Moreover, that agreement was "for purposes of the [CEA matter] only."  Regardless of the agreement reached between CEA and CMO, personal jurisdiction in *this* case must exist as of December 2006. LPL is not entitled to a finding of personal jurisdiction in Delaware in December 2006 merely because CMO agreed with another company to settle a jurisdictional controversy predicated on facts in 2003.

    Although your letter quotes snippets from the Federal Circuit decision in CEA's appeal, *Commissariat A L'Energie v. Chi Mei Optoelectronics Corporation*, 395 F.3d 1315 (Fed. Cir. 2005), no mention was made of the actual holding of the court. The court did not hold that jurisdiction was established.  The court held that it was unable to determine that jurisdiction existed over CMO under Justice O'Conner's theory of the stream of commerce test stated in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987), stating that "evidence has not yet been presented that would satisfy Justice O'Conner's standard for '[a]dditional evidence of the defendant [to] indicate an intent or purpose to serve the market in the forum state . . . '", 395 F.3d at 1322. The case was remanded for CEA to attempt in discovery to show personal jurisdiction under the O'Conner test.  CEA never made such a showing.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Gaspare J. Bono
May 14, 2007
Page 2

Your letter lists five categories of purported facts that you contend "further establish" jurisdiction. If this catalog of proofs were so strong, it would seem unnecessary for you to take discovery. Indeed, LPL could itself expedite the proceedings by filing all of these proofs on May 22 when LPL's response is due. Indeed, your arguments that LPL has "many additional facts separate and apart from the discovery subject to the protective order" and "evidence of actual sales of CMO products in Delaware . . . not subject to any protective order in the prior case" suggest that LPL cannot show good cause to seek alteration of the *CEA* protective order.

Finally, your letter does not show that LPL will be able to establish personal jurisdiction. It is lawyer argument without factual support -- too slender a reed to induce CMO to withdraw its motion.

CMO also asserted in its motion that LPL's service of process was insufficient. Your letter does not contest this basis for dismissal. Since the facts showing insufficiency of service of process are simple and show without controversy that LPL did not comply with, among other things, the Delaware long-arm statute, dismissal could be ordered on May 22 without further proceedings.

Very truly yours,

Robert C. Kahrl

cc:    Richard D. Kirk, Esq. (via e-mail)
       Philip A. Rovner, Esq. (via e-mail)

# McKenna Long
## & Aldridge LLP
### Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

GASPARE J. BONO
(202) 496-7211

San Diego

San Francisco

Washington, DC

Brussels

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

EMAIL ADDRESS
gbono@mckennalong.com

May 16, 2007

**VIA ELECTRONIC MAIL**

Robert C. Kahrl, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

Re:  LG.Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.,
     Civil Action No. 06-726 (JJF) (D. Del.)

Dear Mr. Kahrl:

I have reviewed your letter dated May 14, 2007 purporting to justify CMO's inappropriate and vexatious approach to litigation. Frankly, I do not understand how CMO can in good faith deny personal jurisdiction in Delaware in this case. This is particularly true because your letter does not dispute the facts set out in my May 10 letter that establish jurisdiction over your client in Delaware.

CMO's lack of good faith has indeed been exacerbated as a result of its answer filed yesterday in *Anvik Corp. v. CMO and CMO USA, Inc.*, No. 07 Civ. 0821 (SCR), Southern District of New York, where CMO does not assert lack of personal jurisdiction as a defense, thereby consenting to personal jurisdiction in New York. Thus, the refusal of CMO here to accept jurisdiction stands in sharp contrast to its acceptance of personal jurisdiction in both California and Delaware in the earlier *CEA* case, its recent decision to rely upon U.S. law and the federal court system by filing a suit for alleged patent infringement against LG. Philips in the Eastern District of Texas, and now its conduct in the *Anvik* case.

Moreover, CMO acknowledges in its Motion to Dismiss that it "owns stock in a subsidiary, Chi Mei Optoelectronics USA, Inc., which is a Delaware Corporation." However, CMO's statement that it "owns stock" in Chi Mei Optoelectronics USA, Inc. ("CMO USA"), attempts to downplay the extent to which CMO actually owns CMO USA. Indeed, CMO owns 100% of the shares of CMO Japan, which is nothing more than a holding company for CMO, and CMO Japan owns 100% of the shares of CMO USA. Thus, CMO USA is essentially the wholly owned subsidiary of CMO, and CMO

Robert C. Kahrl, Esq.
May 16, 2007
Page 2

USA is incorporated in Delaware. It is also apparent that CMO USA was incorporated to promote, induce, and facilitate sales of CMO's products in the United States, including in Delaware. Indeed, on CMO's website, CMO holds CMO USA out as its representative in the United States, and states that CMO USA sells electronic equipment and computer monitors.

Additionally, CMO recently entered into a joint venture with Neurok Optics, LLC, a Delaware corporation, to create iZ3D, LLC, a U.S. entity also incorporated in the State of Delaware. iZ3D develops and markets electronic products, including video monitors.

In light of the above, it is clear that CMO is targeting the entire U.S. market, including customers within the state of Delaware. Thus, it simply is not tenable for CMO to argue, as it does in its motion, that CMO has "never purposefully conducted business activities in Delaware." Therefore, because CMO refuses to withdraw its motion and enter into a stipulation regarding jurisdiction, LPL has no choice but to prepare and file its opposition to CMO's meritless motion and to seek reimbursement of its costs and fees incurred in all matters related to CMO's vexatious conduct regarding its motion to dismiss.

Very truly yours,

Gaspare J. Bono

cc:    Richard D. Kirk, Esq. (via e-mail)
       Philip A. Rovner, Esq. (via e-mail)

# McKenna Long
# & Aldridge LLP
Attorneys at Law

Atlanta

Denver

Los Angeles

Philadelphia

San Diego

San Francisco

Washington, DC

Brussels

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

GASPARE J. BONO
(202) 496-7211

EMAIL ADDRESS
gbono@mckennalong.com

May 24, 2007

VIA E-MAIL

Robert C. Kahrl, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

Re: LG.Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp., et al., Civil
Action No. 06-726 (JJF) (D. Del.)

Dear Mr. Kahrl:

I am writing to you again in connection with CMO's meritless motion to dismiss for lack
of personal jurisdiction in the above captioned case.

On May 10, I sent a letter to your firm providing you with additional information of
which you may not have been aware, and asking you to withdraw your motion to dismiss
because it was ill-founded.

On May 14, you responded with a letter that did not dispute any of the facts and
information presented to you, but nevertheless refused to withdraw the motion because you
viewed the letter as "lawyer argument without factual support."

On May 16, I wrote another letter to you providing you with additional information
which further established personal jurisdiction over CMO in Delaware in this case. Apparently,
you simply ignored that letter as I received no response from you.

In light of your continued pursuit of this meritless motion, we were forced to file an
opposition memorandum together with supporting affidavits and exhibits on May 22. Our
opposition presented overwhelming and indisputable evidence, establishing without doubt
personal jurisdiction over CMO in Delaware. We are now well beyond your prior assertion of
"lawyer argument without factual support."

Accordingly, I am again requesting that you withdraw CMO's motion to dismiss which
has now been shown to be baseless and frivolous. Unless CMO agrees to withdraw its vexatious
motion, we will have no choice but to serve a motion for sanctions on Tuesday, May 29.

Robert C. Kahrl, Esq.
May 24, 2007
Page 2

We would, of course, like to avoid serving such a sanctions motion, but your continued vexatious conduct in pursuing this frivolous motion would place us in this position.

I look forward to your prompt response.

Very truly yours,

Gaspare J. Bono

cc:     Richard D. Kirk, Esq. (via e-mail)
        Philip A. Rovner, Esq. (via e-mail)

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190
TELEPHONE: 216-586-3939 • FACSIMILE: 216-579-0212

Direct Number: (216) 586-7177
rckahrl@jonesday.com

JP027128/1520397
987893-600001

May 29, 2007

**VIA ELECTRONIC MAIL**

Gaspare J. Bono, Esq.
McKenna Long & Aldridge
1900 K Street, NW
Washington, D.C. 20006

    Re:  **LG. Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.,**
         Civil Action No. 06-726 (JJF) (D. Del.)

Dear Mr. Bono:

    This letter responds in part to your letter of May 24. I responded to your letter of May 14 because you asked for a response. Your letter of May 16 did not ask for a response, and none was necessary.

    In your letter of May 24 you asked me to respond by Tuesday, May 29. Unfortunately, this has not allowed enough time for consultation with our client overseas. I will provide further response after such consultation is completed.

    If you believe that it is necessary for your client to file a motion before receiving our further response, I would simply observe that LPL's filing a motion for sanctions before seeing and evaluating the merits of CMO's reply to LPL's opposition is premature, and we would seek our costs in opposing it.

Very truly yours,

Robert C. Kahrl

cc:   Richard D. Kirk, Esq. (via e-mail)
      Philip A. Rovner, Esq. (via e-mail)

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Albany
Atlanta
Brussels
Denver
Los Angeles

# McKenna Long
## & Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

New York
Philadelphia
San Diego
San Francisco
Washington, D.C.

GASPARE J. BONO
(202) 496-7211

EMAIL ADDRESS
gbono@mckennalong.com

June 5, 2007

**VIA E-MAIL**

Robert C. Kahrl, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

　　　　Re:　　**LG.Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.**, Civil
Action No. 06-726 (JJF) (D. Del.)

Dear Mr. Kahrl:

I am writing in response to your letter dated May 29, 2007.

First, your letter confirmed that you did not respond to my May 16 letter, however, your purported explanation that a response was not necessary strikes me as an after-the-fact rationalization.

Second, you have now had another week to consult with your client in regard to our request to withdraw CMO's meritless motion to dismiss, which is more than enough time to obtain a response. However, we still have received no response from you concerning withdrawal of the motion.

Third, we served LPL's motion for sanctions in accordance with the Federal Rules which, as you know, provide that such motions should be served prior to 21 days before filing such a motion. We have fully complied with the Rules, and do not agree that serving the motion was premature in light of all the circumstances and our correspondence, nor do we believe it was necessary to wait for CMO's reply to serve, but not file, the sanctions motion. The 21-day period does not expire until June 19, which is after the due date of CMO's reply, which would be due on June 15.

Robert C. Kahrl, Esq.
June 5, 2007
Page 2

I am again requesting that CMO withdraw its meritless motion to dismiss, and agree not to contest personal jurisdiction in this case.

Very truly yours,

Gaspare J. Bono

cc:     Richard D. Kirk, Esq. (via e-mail)
        Philip A. Rovner, Esq. (via e-mail)

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190
TELEPHONE: 216-586-3939 • FACSIMILE: 216-579-0212

Direct Number: (216) 586-7177
rckahrl@jonesday.com

JP027128/1522428                    June 5, 2007
987893-600001

**VIA ELECTRONIC MAIL**

Gaspare J. Bono, Esq.
McKenna Long & Aldridge
1900 K Street, NW
Washington, D.C. 20006

   Re: **LG. Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.,**
     Civil Action No. 06-726 (JJF) (D. Del.)

Dear Mr. Bono:

   This letter responds further to your letter of May 24. Please see my earlier response dated May 29.

   CMO intends to present its response to LPL's opposition in its reply brief, not in a letter exchange with you. It is worth pointing out at this point that LPL's opposition brief repeatedly states that CMO has sold products in Delaware, but when we examined the supporting papers, we did not find any evidence of any sales by CMO. Instead, we found in your papers some evidence of sales by others in Delaware. This evidence does not meet the test of personal jurisdiction set forth by the Federal Circuit in the *CEA* case. Indeed, LPL's brief concludes by asking for discovery on the jurisdictional issue, so LPL is aware that it has not adequately addressed the personal jurisdiction test of *CEA*.

   LPL did not have enough confidence in its position on personal jurisdiction to stand on its pleadings, but instead filed on the same day as its opposition to CMO's motion a "first amended complaint" adding as an additional defendant Chi Mei Optoelectronics USA, Inc. ["CMO USA"]. Apparently the decision to add CMO USA was made in haste, because LPL either ignored or forgot that it had already filed a "first amended complaint" on April 11, and therefore could not file an additional amended complaint without permission of the Court, pursuant to Rule 15(a), Fed. R. Civ. P. Permission of the Court was neither sought nor received. Instead, the second amended complaint was mislabeled as the "First Amended Complaint," suggesting to the clerk's office that the complaint could be filed without an accompanying order granting leave to file it.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Gaspare J. Bono, Esq.
June 5, 2007
Page 2

You knew before you filed LPL's first amended complaint on April 11 about the existence of CMO USA because we had already described CMO USA in CMO's motion to dismiss. LPL's first amended complaint added new claims against another defendant, AU Optronics, but did not seek to add a new defendant to this case. Since you passed up the opportunity to add CMO USA in LPL's only opportunity to amend the complaint as a matter of course, we surmise that your hasty filing of a second "First Amended Complaint" without complying with Rule 15(a) was done after assessing LPL's inability to hold jurisdiction over CMO on the papers you were submitting the same day. Indeed, we notice that the second "First Amended Complaint" omitted claims that were added in the April 11 "First Amended Complaint."

Now it will be necessary for LPL to seek permission of the Court to file its second amended complaint. Hopefully it will be properly styled as a "Second Amended Complaint." If it is properly styled and does not seek treatment nunc pro tunc, we would not oppose LPL's motion for leave to file and serve it, but we would need to review the motion prior to your filing it. We expect that you will then attempt to make proper service, although CMO will not concede personal jurisdiction, and will move to dismiss again if service does not comply with the statutes and rules governing service.

You might also choose to take this opportunity to fix the inconsistent paragraph numbering that exists between LPL's First Amended Complaint filed April 11 and its second "First Amended Complaint" dated May 22. These inconsistencies are the subject of the Tatung defendants' motion for a more definite statement filed earlier today.

Very truly yours,

Robert C. Kahrl

cc:    Richard D. Kirk, Esq. (via e-mail)
       Philip A. Rovner, Esq. (via e-mail)

Albany
Atlanta
Brussels
Denver
Los Angeles

# McKenna Long
## &Aldridge LLP
#### Attorneys at Law

New York
Philadelphia
San Diego
San Francisco
Washington, D.C.

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

GASPARE J. BONO
(202) 496-7211

EMAIL ADDRESS
gbono@mckennalong.com

June 11, 2007

**VIA E-MAIL**

Robert C. Kahrl, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

Re:     **LG.Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.**, Civil
Action No. 06-726 (JJF) (D. Del.)

Dear Mr. Kahrl:

I am writing in response to your letter dated June 5, 2007.

First, your letter admits that LPL's opposition to CMO's motion to dismiss contains "evidence of sales by others in Delaware" of CMO products. In light of this admission of actual pre-filing sales in Delaware of CMO products, your letter shows a clear misunderstanding of the jurisdictional requirements set forth in the case law cited in LPL's opposition. *E.g., Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994); *Commissariat à l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1317 (Fed. Cir. 2005); *Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349 (D. Del. 1999); *In Re: Elonex Phase II Power Management Litigation*, C.A. Nos. 01-082 GMS through 01-104 GMS, 2003 WL 21026758 (D. Del. May 6, 2003).

Second, in addition to misinterpreting the law, your letter misstates the record in at least two ways. First, it a misreading of LPL's opposition to suggest LPL's request for jurisdictional discovery was anything other than in the alternative. Indeed, on page 35, LPL clearly states that no such discovery is necessary. Second, if you choose to cite our filings, please do so in full. LPL did not simply file a "First Amended Complaint." Instead, as reflected on the docket, LPL filed a "First Amended Complaint Against Au Optronics Corporation, AU Optronics Corporations America" (D.I. 29) and a "First Amended Complaint Against Chi Mei Optoelectronics USA, Inc. and against Chi Mei Optoelectronics Corporation" (D.I. 54).

Robert C. Kahrl, Esq.
June 11, 2007
Page 2

This, there is no merit to your suggestion that a Rule 15 motion was required to have been filed. The complaint has been amended once against CMO which is within LPL's rights. CMO is not sheltered from such an amendment simply because LPL's complaint against AUO was amended earlier as to AUO. *See, e.g., Kronfeld v. First New Jersey Nat'l Bank*, 638 F. Supp. 1454 (D.N.J. 1986).

We again request that CMO withdraw its meritless motion to dismiss, and agree not to contest personal jurisdiction in this case.

Very truly yours,

Gaspare J. Bono

cc:    Richard D. Kirk, Esq. (via e-mail)
       Philip A. Rovner, Esq. (via e-mail)

## JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190
TELEPHONE: 216-586-3939 • FACSIMILE: 216-579-0212

Direct Number: (216) 586-7177
rckahrl@jonesday.com

JP027128/1525745                    June 15, 2007
987893-600001

**VIA ELECTRONIC MAIL**

Gaspare J. Bono, Esq.
McKenna Long & Aldridge
1900 K Street, NW
Washington, D.C.  20006

Re:   <u>LG. Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.,</u>
      Civil Action No. 06-726 (JJF) (D. Del.)

Dear Mr. Bono:

        This letter responds to your letter of June 11.

        The first substantive paragraph of your letter expresses your apparent belief that
if anybody sells a CMO product in Delaware, personal jurisdiction over CMO is
established.  This is not the standard that is applied in Delaware.  Allow me to quote
from Judge Farnan's recitation of the facts in *Merck & Co. v. Barr Laboratories, Inc.*, 179
F.Supp. 368, 370-71 (D.Del. 2002):

        Barr has two licenses issued by the state of Delaware to sell drugs
        in and through Delaware.  Since January 1, 1999, Barr has directly sold
        products to four customers in Delaware.  In 1999, Barr's total revenue
        from these Delaware customers was $404,019.47 and in 2000, the total
        Delaware revenue was $586,927.47, which accounts for approximately
        0.13% of Barr's 2000 gross revenue.  Additionally, Barr sells its drug
        products to national mail order pharmacies, retail drugstores, and
        pharmaceutical companies, with customers in Delaware, as well as to
        Happy Harry's, a Delaware retail pharmacy chain.  Barr has a National
        Account Manager in charge of the Delaware accounts, including Happy
        Harry's, who visits Delaware as often as three times per year.
        Additionally, Barr makes yearly payments to Delaware Medicaid based
        upon the amount of Barr drugs sold that year.
        Barr has a contract with LHSI, a Delaware corporation, "for the
        refrigerated storage and nationwide distribution to wholesalers, hospitals,
        and organ donor centers" of Viaspan (R), a Barr product, until July 2003.
        Additionally, Barr has a wholly-owned subsidiary in Delaware, BRL, Inc.,
        which does research and development of pharmaceuticals.  [citations to
        the record omitted]

**JONES DAY**

Gaspare J. Bono
June 15, 2007
Page 2

After considering these facts, Judge Farnan concluded that "Barr's contacts and revenue in Delaware are minimal, and accordingly, insufficient to satisfy the requirements for jurisdiction under § 3104(c)(4) of the Delaware long-arm statute." *Id.* at 374. Your allegations of contacts by CMO in Delaware, even if accepted as true, do not rise even to the level of those found to be insufficient as to Barr. Attacking CMO's position as frivolous is unproductive. Seeking sanctions is a waste of resources.

Turning to the second substantive paragraph of your letter, I note that you do not believe additional discovery to be necessary. In light of your position that sales by anybody to Delaware establishes CMO's presence in Delaware, I don't think that further discovery would be helpful to LPL either. Attempting to show yet more sales by others into Delaware will not improve LPL's position, as we point out in our reply brief.

As to the third substantive paragraph in your letter, I had already perused the *Kronfeld* decision before writing to you about LPL's failure to comply with Rule 15. That case did not authorize the filing of a second "first amended complaint," but instead addressed plaintiff's motion for leave to amend his complaint for the first time. We could not find a single case in which a party was permitted to file a second "first amended complaint," or otherwise to file a second amended pleading, without permission of the court. Apparently you couldn't find one either. If you find one, please send me a copy.

In the meantime, I suggest that you correct your filing by seeking leave of the Court to file LPL's second "first amended complaint." CMO and CMO USA will thereafter respond to this amended complaint in due course, assuming Judge Farnan grants leave for LPL to file it and proper service is effected. Our reply brief on the motion to dismiss discusses the proper manner of serving an overseas company, as discussed in helpful opinions by Judge Farnan and Judge McKelvie.

Very truly yours,

Robert C. Kahrl

cc:     Richard D. Kirk, Esq. (via e-mail)
        Philip A. Rovner, Esq. (via e-mail)

Albany
Atlanta
Brussels
Denver
Los Angeles

# McKenna Long
# &Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

New York
Philadelphia
San Diego
San Francisco
Washington, D.C.

GASPARE J. BONO
(202) 496-7211

EMAIL ADDRESS
gbono@mckennalong.com

June 19, 2007

Via E-Mail

Robert C. Kahrl, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

**Re:** **LG.Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.**, Civil
Action No. 06-726 (JJF) (D. Del.)

Dear Mr. Kahrl:

I am writing in response to your letter dated June 15, 2007.

The first paragraph of your letter misstates LPL's position regarding personal jurisdiction over CMO in Delaware. LPL has previously set forth its position, and it is unnecessary to repeat it again here. Furthermore, your reliance upon the *Merck* case cited in your letter is misplaced, as that case is clearly distinguishable from the present case. CMO's motion was frivolous when filed, and remains so. In light of CMO's vexatious conduct, LPL believes that sanctions are appropriate. Because CMO has refused to withdraw its meritless motion, the previously served motion for sanctions will be filed today.

The next paragraph of your letter misstates LPL's position regarding jurisdictional discovery. I have previously informed you as to LPL's position regarding jurisdictional discovery, and do not believe it would be helpful to repeat LPL's position again here. We filed our alternative motion relating to jurisdictional discovery yesterday.

LPL does not agree with your position regarding the filing of the Amended Complaint against CMO and CMO USA. The first Amended Complaint against CMO and CMO USA was properly filed, and the time period for them to respond to the Amended Complaint has commenced.

Very truly yours,

Gaspare J. Bono

cc:    Richard D. Kirk, Esq. (via e-mail)
       Philip A. Rovner, Esq. (via e-mail)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on July 3, 2007, the within document was

filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to

the following; that the document was served on the following counsel as indicated; and that the

document is available for viewing and downloading from CM/ECF.

**BY CM/ECF, -EMAIL AND HAND
DELIVERY**

Richard E. Kirk, Esq.
Ashley Blake Stitzer, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE  19899
rkirk@bayardfirm.com
astitzer@bayardfirm.com

William E. Manning, Esq.
Jennifer M. Becnel-Guzzo, Esq.
Buchanan Ingersoll & Rooney
1000 West Street, Suite 1410
Wilmington, DE  19801
william.manning@bipc.com
jennifer.becnelguzzo@bipc.com

**BY CM-ECF, EMAIL AND HAND
DELIVERY**

Edmond D. Johnson, Esq.
Thomas H. Kovach, Esq.
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE  19899-1709
johnsone@pepperlaw.com
kovacht@pepperlaw.com

John W. Shaw, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
jshaw@ycst.com
kpascale@ycst.com

I hereby certify that on July 3, 2007 I have sent by E-mail the foregoing document

to the following non-registered participants:

Gaspare J. Bono, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
gbono@mckennalong.com

Vincent K. Yip, Esq.
Peter J. Wied, Esq.
Jay C. Chiu, Esq.
Paul Hastings Janofsky & Walker LLP
515 South Flower Street
Los Angeles, CA  90071
vincentyip@paulhastings.com
peterwied@paulhastings.com
jaychiu@paulhastings.com

Karineh Khachatourian, Esq.
Jeffrey M. Ratinoff, Esq.
Bryan J. Sinclair, Esq.
Buchanan Ingersoll & Rooney PC
333 Twin Dolphin Drive
Redwood Shores, CA 94065-1418
Karineh.khachatourian@bipc.com
Jeffrey.ratinoff@bipc.com
Bryan.sinclair@bipc.com

John N. Zarian, Esq.
Samia E. McCall, Esq.
Stoel Rives LLP
101 S. Capitol Boulevard
Suite 1900
Boise, ID 83702
jnzarian@stoel.com
semcall@stoel.com


_____

Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com