## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD, | Civil Action No. 06-726-GMS |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| v. | |
| CHI MEI OPTOELECTRONICS CORPORATION; AU OPTRONICS CORPORATION; AU OPTRONICS CORPORATION AMERICA; TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION, | |
| Defendants. | |

**DEFENDANTS TATUNG COMPANY AND TATUNG COMPANY OF AMERICA'S REPLY TO PLAINTIFF LG.PHILIPS LCD CO., LTD.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS TATUNG COMPANY AND TATUNG COMPANY OF AMERICA'S RENEWED MOTION FOR A MORE DEFINITE STATEMENT**

BUCHANAN INGERSOLL & ROONEY LLP
Bryan J. Sinclair, Esq. (*pro hac vice*)
Karineh Khachatourian, Esq. (*pro hac vice*)
Jeffrey M. Ratinoff, Esq. (*pro hac vice*)
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA  94065-1418
Telephone:  (650) 622-2300
Facsimile:  (650) 622-2499
Email: bryan.sinclair@bipc.com
Email: karineh.khachatourian@bipc.com
Email: jeffrey.ratinoff@bipc.com

BUCHANAN INGERSOLL & ROONEY PC
William E. Manning, Esq. (DE Bar #697)
Jennifer M. Becnel-Guzzo, Esq (DE Bar #4492)
1000 West Street, Suite 1410
Wilmington, DE 19801
Telephone:  (302) 552-4200
Facsimile:  (302) 552-4295
Email: william.manning@bipc.com
Email: jennifer.becnelguzzo@bipc.com

*Attorneys for Defendants Tatung Company and Tatung Company of America*

Dated:  July 6, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................. 1

    A.   The Timeliness of the Tatung Defendants' Motion ................................. 1

    B.   The Three Operative Complaints ............................................................ 2

    C.   The Failure To Identify Allegedly Infringing Products ......................... 4

III.  LEGAL ARGUMENT ............................................................................ 5

    A.   The Motion Was Timely and This Court May Hear the Renewed
       Motion .................................................................................................... 5

    B.   This Court Should Require LPL To Consolidate All of Its Claims
       into a Single Third Amended Complaint ................................................ 6

    C.   This Court Should Order LPL To Identify Specifically the Allegedly
       Infringing Products ................................................................................ 7

IV.   CONCLUSION. ...................................................................................... 9

## TABLE OF AUTHORITIES

### CASES

*Agilent Techs., Inc. v. Micromuse, Inc.*, 2004 WL 2346152 (S.D.N.Y.) ........................... 9

*Applera Corp. v. Thermo Electron Corp.*, 2005 WL 524589 (D. Del.) ........................... 7

*Carefirst of Md., Inc. v. Care First Transp., Inc.*, 2002 WL 31500927 (D. Del.) ............. 5

*Symbol Technologies, Inc. v. Hand Held Prods., Inc.,* 2003 WL 22750145 (D. Del.)... 7, 9

### RULES

Fed. R. Civ. P. 7 ............................................................................................. 1

Fed. R. Civ. P. 8 ............................................................................................. 7

Fed. R. Civ. P. 12 ................................................................................... 2, 5, 7, 9

Fed. R. Civ. P. 15 ............................................................................................. 6

## I.    INTRODUCTION.

Defendants Tatung Company and Tatung Company of America (the "Tatung Defendants") submit the instant reply in further support of its Renewed Motion for a More Definite Statement ("Tatung Defendants' Motion" or the "Motion"). Plaintiff LG. Philips LCD Co., LTD. ("LPL" or "Plaintiff") raises various arguments in its opposition but never addresses the core basis for this motion. In essence, the Tatung Defendants have requested a more definitive statement because LPL's bare complaint involves patents which were previously litigated and/or are still pending in other cases, and there are currently three operative complaints in this case, the total sum of which lends itself to procedural and practical problems for the Court and the parties.

The simple solution to this problem is to require LPL to plead all of its infringement claims and identify the infringing products about which it has knowledge in a *single* "Third Amended Complaint" as required by Fed. R. Civ. P. 7. LPL certainly would not suffer any prejudice by doing so. Rather than make these minor modifications so that the parties could move forward, LPL chose to oppose the instant Motion and further delay the case, without citing to any authority that would allow it to have three operative complaints or sue the Tatung Defendants on claims raised and litigated to judgment in other lawsuits.

For the reasons set forth in this Reply, the Tatung Defendants respectfully request that the Court grant their motion and: (1) require LPL to consolidate its three operative complaints into a single Third Amended Complaint; and (2) require LPL, in that consolidated pleading, to identify the specific products that are allegedly infringing in this action.

## II.    FACTUAL BACKGROUND.

### A.    The Timeliness of the Tatung Defendants' Motion.

As explained in the Tatung Defendants' opening brief, their initial response (whether by answer or Rule 12 motion) was due on or before June 5, 2007. As a condition of the extension, the Tatung Defendants entered into a stipulation wherein they agreed to waive certain jurisdictional

defenses. (D.I. 30).[1]  In light of various Rule 12 motions already pending before the Court, the Tatung Defendants requested the extension to avoid additional motion practice, and expected to apply the rulings made by the Court in defining its own response to the Complaint.  Prior to the June 5 deadline, the Tatung Defendants requested via email an additional extension until the various Rule 12 motions had been decided, which LPL refused verbally. (*See* Ex. 1).  Accordingly, the Tatung Defendants filed this compulsory Rule 12 motion pursuant to their stipulation to respond on June 5, 2007.

However, due to the fact that the Honorable Joseph J. Farnan, Jr., has a Standing Order in patent cases requiring all non-dispositive motions to be filed within 30 days of the hearing date, the Tatung Defendants' motion was stricken on June 11, 2007 as the stipulated response date was outside of the thirty day filing window. (*See* Ex. 2).  Due to this procedural quandry, the Tatung Defendants submitted a letter to the Court's Case Manager explaining the issue (D.I. 73).  Having received no response,  the Tatung Defendants filed their Renewed Motion on June 13, 2007 - the first possible filing date that complied with the Court's standing order. (D.I. 74, 75).  LPL did not file any documents with the Court relating to the Tatung Defendants' Motion during the intervening eight (8) days between the initial and renewed motion filing days.  With the submission of this Reply, the motion is fully briefed and ready for argument on July 13, 2007.

**B.     The Three Operative Complaints.**

At the present time, LPL insists on proceeding with this case by utilizing three different complaints involving seven defendants and ten different patents.  Specifically, on December 1, 2006, LPL initiated this action by filing its original Complaint against Chi Mei Optoelectronics Corporation ("Chi Mei"), AU Optronics Corporation ("AUO"), AU Optronics Corporation America ("AUO America"), the Tatung Defendants, and ViewSonic Corporation ("ViewSonic").  The

---

[1] The Tatung Defendants reached an agreement as to the most recent extension on April 23, 2007. Accordingly, that stipulation predates the filing of LPL's second First Amended Complaint (*See* D.I. 54 dated May 22, 2007).

original complaint asserts claims relating to the alleged infringement and/or induced infringement of three patents.[2] (*See* D.I. 1 at ¶¶ 32, 37, 42; *see also* D.I. 1 at ¶¶ 8, 9, 14, 15, 21, 24, 25-30, 33, 38, 43).

On April 11, 2007, LPL voluntarily filed its First Amended Complaint against Defendant AU Optronics Corporation adding declaratory relief claims against AU Optronics.[3] (*See* D.I. 29.) Unbeknownst to the Tatung Defendants at the time, this cluster of AUO patents were the basis of AUO's separate infringement action against LPL venued in the Western District of Wisconsin which was subsequently transferred to this District (C.A. No. 07-357-JJF) and is the subject of the Joint Motion to Consolidate filed by the AUO and LPL parties. (D.I. 92)

On May 22, 2007, without leave of Court to file a second amended pleading, LPL filed a third initial pleading entitled First Amended Complaint against Defendant Chi Mei Optoelectronics Corporation and Chi Mei Optoelectronics USA, Inc. ("Second First Amended Complaint"). (*See* D.I. 54.) LPL added Chi Mei Optoelectronics USA, Inc. ("Chi Mei USA") as a party and added two additional counts of declaratory relief for invalidity and non-infringement for the four patents raised in the Texas action against Chi Mei and Chi Mei USA,[4] but dropped its two declaratory relief claims against AUO and AUO America previously asserted in the original First Amended Complaint. (*See, e.g.,* D.I. 54 at ¶¶ 7, 50-62). This cluster of CMO patents is the basis of CMO's separate infringement action against the LPL parties only currently venued in the Eastern District of Texas as case number 2:07cv00176-TJW. In that case, the LPL parties have filed a motion to transfer to this District.[5]

It is against this very complicated procedural pleading backdrop that LPL urges the Court to

---

[2] The '449 Patent, the '737 Patent, and the '002 Patent.

[3] The AUO patent cluster includes the '781 Patent, the '160 Patent, and the '629 Patent.

[4] The CMO patent cluster includes the '786 Patent, the '923 Patent, the '352 Patent, and the '926 Patent.

[5] A true and correct copy of the Motion to Transfer is attached hereto as Exhibit 3.

allow three operative complaints to proceed independently and require the various related parties to file answers to the three separate "operative" complaints.

## C.    The Failure To Identify Allegedly Infringing Products.

LPL has previously litigated the patents-in-suit in this case multiple times in multiple jurisdictions. Specifically, the same patents have been asserted in the following cases:

(1) *LG. Philips LCD Co., LTD v. Tatung Company of America, Tatung Company, and Chungwa Picture Tubes, LTD.*, C.D. CA. Case No. CV-02-6775 CBM (JTLx) (filed August 29, 2002), in which the '737 and '449 Patents at issue in this case (among several other patents) have been litigated through trial; and

(2) *LG. Philips LCD Co., LTD v. Tatung Company of America, Tatung Company, Chungwa Picture Tubes, LTD., and Viewsonic Corporation*, D. Del. Case No. 05-292 (JJF) in which the '002 Patent at issue in this case (along with one other patent) has also been litigated through trial.

Notwithstanding this long litigation history involving the same intellectual property, none of the three complaints that LPL has filed in this action identify the alleged infringing products that the Tatung Defendants make, use, sell or offer for sale and the Tatung Defendants have no fair notice as to exactly why they are parties to this lawsuit. Instead, there are only vague and ambiguous references to "products," "variety of products," "visual display products," "LCDs" and "LCD Products" with all Defendants being lumped together. (*See, e.g.,* D.I. 1 at ¶¶ 8, 9, 14, 15, 21, 24, 25-30, 32-33, 37-38, 42-43.) The Tatung Defendants have already fully cooperated in those previous cases, and have provided substantial discovery relating to accused products, including a vast amount of written and electronic documents and witness testimony. Accordingly, LPL has had direct insight into significant details pertaining to the Tatung Defendants' LCD products and is able to explain, with specificity, which of those products are being accused of infringing in this case.

The Tatung Defendants need to know the particulars of the claims being asserted at this stage of the case in order to: (1) have a full and fair opportunity to respond to the complaint and assert all applicable defenses; (2) have knowledge of the specific identity of the products at issue in this *third* case involving the same patents previously litigated; (3)  attempt to streamline the scope of the

4

litigation by limiting the collection of additional discovery to only those issues present in this case; (4) limit the internal burden on human resources to only those individuals necessary to participate in the defense of the specific claims of infringement in this case.

## III.    LEGAL ARGUMENT.

### A.    The Motion Was Timely And This Court May Hear The Renewed Motion.

The Tatung Defendants' motion was timely filed and this Court may hear the Renewed Motion. LPL's opposition concedes, as it must, that the Tatung Defendant's Motion for a More Definite Statement was timely filed pursuant to the parties stipulation and Fed. R. Civ. P. 12. (D.I. 94 at 1). LPL complains, however, that because the renewed motion was re-filed to comply with a standing order for motion hearing dates, it should be stricken as untimely. *Id.* at 1, 5-6. The Court should deny LPL's request for several reasons.

First, LPL has briefed the issues and suffers no harm or prejudice by virtue of the Court's consideration of the substantive merits of the Motion. In fact, LPL had additional time to respond than required by local rule as a result of the Tatung Defendants' first filing. Second, LPL and the Tatung Defendants negotiated and stipulated to a response date of June 5, 2007 and the Motion was timely filed on that date. Finally, as a result of the conflict with the Court's scheduling order, the Tatung Defendants had no other means to raise and preserve their compulsory Rule 12 arguments other than to raise the issues on June 5, 2007 and again within the Renewed Motion on the first available filing date of June 13, 2007. The Tatung Defendants had previously sought an extension until the other Rule 12 motions were decided, but LPL denied that request. (*See* Ex. 1).

Second, LPL does not offer any legal authority to support its request. LPL's sole citation to *Carefirst of Md., Inc. v. Care First Transp., Inc.,* 2002 WL 31500927 (D. Del.), does not compel this Court to strike the Renewed Motion. Specifically, in *Carefirst*, the defendant filed a Rule 12 motion four months after the filing date of the complaint and there was no reference in the decision that the defendant received any extensions of time to respond. *Id.* at *3. More significantly, the *Carefirst* case does not involve the application of this Court's unique Standing Order and the procedural

problem that arose as a result of the compulsory Rule 12 response date conflicting with the filing date requirements in the Court's order.

In contrast, the Tatung Defendants did exactly what they agreed to do - filed their response on June 5, 2007. Moreover, they refiled their Renewed Motion on the first possible date consistent with the Court's Scheduling Order and LPL filed no intervening objections or other documents in the interim that would result in any prejudice if the Court considers the substance of the Motion. Accordingly, this Court should exercise its discretion and address the substantive merits of the Renewed Motion.

**B.    This Court Should Require LPL To Consolidate All of Its Claims Into A Single Third Amended Complaint.**

In its opposition, LPL does not cite to a single authority that allows for the separate filing and service of three different complaints against three different clusters of related parties or how consolidating the pleadings would cause LPL prejudice in any way. Indeed, Fed. R. Civ. P. 15 contains clear procedural requirements for amendments to pleadings. LPL has simply attempted to circumvent the Rule 15 requirement to seek and obtain leave of court when filing its second amendment to its original complaint. If claimants are simply permitted to file "party specific" amendments as LPL has attempted to do here, the requirements of Rule 15 would be obviated in any multi-party case. There is no rule, and LPL cites no authority, supporting such a conclusion.

What has now become clear is that LPL chose this procedurally confusing route for its own strategic purposes, which was to include patent claims defensively against CMO and AUO that were raised in the Wisconsin and Texas actions.[6] Neither the Court nor the parties should have to bear the

---

[6] Indeed, LPL asserts its amended claims against AUO in this case as a defensive reaction to AUO's claims of infringement in a case previously styled *AU Optronics Corp. v. LG Philips LCD Co. and LG Philips LCD America,* W.D. Wis. Case No. 07-137 which has been transferred to this District as *AU Optronics Corp. v. LG Philips LCD Co. and LG Philips LCD America,* D. Del. Case No. 1:07-CV-00357-JJF which is currently the subject of the pending motion to consolidate (D.I. 92). Similarly, LPL asserts its amended claims against CMO as a defensive reaction to CMO's claims of infringement in a case styled *Chi Mei Optoelectronics Corp. v. LG Philips LCD Co. and LG Philips LCD America,* E.D. Texas Case No. 2-07-176.

burden of this procedural quagmire for LPL's convenience.

Without question, this case is becoming both factually and procedurally more complex with each new claim and each new cluster of patents LPL is introducing to the case. The Tatung Defendants' simply request that the Court require LPL to adhere to the requirements of the Federal Rules of Civil Procedure and consolidate all of its claims in this proceeding into a single Third Amended Complaint to allow all parties to respond to the same pleading for purposes of unified case management, clarity, and judicial economy.

### C.    This Court Should Order LPL To Identify Specifically The Allegedly Infringing Products.

The Court should order LPL to identify with specificity the allegedly infringing products in light of the previous litigation history of the patents in suit. In its Opposition, LPL attempts to support its argument that its three complaints meet the Rule 8 pleading requirements for a patent case by citing to *Applera Corp. v. Thermo Electron Corp.,* 2005 WL 524589 (D. Del.) and *Symbol Technologies, Inc. v. Hand Held Prods., Inc.,* 2003 WL 22750145 (D. Del.). Both cases, however, are factually distinct from this case.

Specifically, in *Applera,* the defendant filed a Rule 12(e) motion for a more definite statement where the complaint "included a background section ... that discusses previous litigation involving the [patent at issue], [where] the plaintiffs discuss the *results* of the *Markman* hearing, jury trial, bench trial concerning inequitable conduct, and appellate review." *Applera,* 2005 WL 544589 *1 (emphasis added). In *Applera,* the complaint was far more detailed than any of the three complaints LPL has filed in this case and actually raised details regarding certain particulars of the prior litigation that are certainly not present here.

Likewise, in *Symbol Technologies,* the parties engaged in fairly extensive pre-litigation negotiations regarding the potential licensing arrangements and exchanges of lists of patents and products to which those patents related. 2003 WL 22750145 at *1,2. In addition, the court explained that the "crux of [the moving party's] motion [for a more definite statement] is that Symbol's complaint is simply too large." 2003 WL 22750145 at *3. The court also went on to note

that there were "a finite number of claims and a finite number of infringing products." *Id.* Accordingly, the court rejected the request for a more definite statement. *Id.*

Unlike the cases cited by LPL, here the Tatung Defendants have absolutely no details as to why they are being sued for a third time other than vague and generic references to patent infringement. The Tatung Defendants are, therefore, entitled to clarity as to the factual basis for being named in yet another lawsuit involving the same patents previously litigated between the parties. *See infra.,* at 4.

Similarly, LPL acknowledges that, in some circumstances, a plaintiff may be required to provide greater specificity in a patent infringement complaint. (D.I. 51 at p.7). It cannot be disputed that in this instance, greater specificity should be required for the benefit of this Court and the parties who are again accused of infringement. LPL is or certainly should be aware of which products the Tatung Defendants make, use, sell or offer for sale that are allegedly infringing the patents being asserted. The patents in suit were the subject of extensive discovery by LPL of the Tatung Defendants in the prior legal proceedings. Notwithstanding this substantial knowledge that LPL obtained in those proceedings, none of its three complaints in this case state which Tatung products allegedly infringe the same LPL patents for which the Tatung Defendants are being sued - yet again - in this case.

LPL further suggests that an identification of the allegedly infringing products in the complaint is not the law of this district. Numerous courts throughout the country are split on the question of whether a party should be required to identify the accused product with specificity, and as discussed in the Tatung Defendants opening papers, finding in favor of that requirement. This case, however, is not one where LPL is *unable* to identify specific products alleged to infringe. Rather, LPL is simply *unwilling* to plead with sufficient specificity as to the particular products at issue in this case despite its extensive knowledge obtained in two prior proceedings involving the same patents and parties.

In such circumstances, all of the authorities agree that this Court has the discretion to order LPL to use its vast knowledge of Tatung's allegedly infringing products to plead, with specificity,

the products accused of infringing in this case. As noted in the Renewed Motion, it is particularly important for the Tatung Defendants to have fair notice of what the alleged infringing products are at the pleadings stage of this new case so that it may frame specific defenses, minimize the internal burden on human resources, seek to streamline the discovery process, and narrow the overall scope of the proceedings in an attempt to lend to judicial economy and avoid undue financial burden.

Likewise, nowhere does LPL's Opposition argue or cite to case law supporting the proposition that a form or "generally" pleaded patent infringement complaint is adequate in circumstances like those present here. Rather, LPL insists that allegations referring to the *subject matter* of the patents, and *any* resulting products ("LCDs and/or LCD products") in which the patented subject matter may be found are sufficient to constitute a "limiting factor" saving it from the need to actually identify infringing products in its various complaints. (D.I. 94 at 9). This is incorrect. To the contrary, various cases have held that mere boilerplate allegations are insufficient.

The *Agilent* case is instructive. In *Agilent Technologies, Inc. v. Micromuse, Inc.*, 2004 WL 2346152 (S.D.N.Y.), a "finite" set of potentially infringing products under the identified patents existed. *See Agilent*, 2004 WL 2346152 at *5; *Symbol Technologies*, 2003 WL 22750145. As explained in *Agilent*, even if LPL later suggests (outside of its allegations in its complaint) actual specific products that may infringe, where "these products have not been formally accused ... [an alleged infringer] is entitled to know which of its products or services are alleged to have infringed [the patent owner's] patents and a more definite statement setting forth that information is appropriate." 2004 WL 2346152 at *6. Accordingly, this Court should apply the same rationale and require LPL to plead, with specificity, the identity of the Tatung Defendants' allegedly infringing products.

## IV.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in their opening papers, the Tatung Defendants respectfully request that LPL provide a more definitive statement by consolidating thee three operative complaints as a Second Amended Complaint and identifying any allegedly infringing products pursuant to 12(e) of the Federal Rules of Civil Procedure.

DATED: July 6, 2007                    BUCHANAN INGERSOLL & ROONEY PC

William E. Manning, Esq. (DE Bar #697)
Jennifer M. Becnel-Guzzo, Esq (DE Bar #4492)
1000 West Street, Suite 1410
Wilmington, DE 19899-1397
Telephone: (302) 552-4200
Facsimile: (302) 552-4295
Email: william.manning@bipc.com
Email: jennifer.becnelguzzo@bipc.com

Of Counsel

BUCHANAN INGERSOLL & ROONEY LLP
Bryan J. Sinclair (*pro hac vice*)
Karineh Khachatourian (*pro hac vice*)
Jeffrey M. Ratinoff, Esq. (*pro hac vice*)
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA  94065-1418
Telephone: (650) 622-2300
Facsimile: (650) 622-2499
Email: bryan.sinclair@bipc.com
Email: karineh.khachatourian@bipc.com
Email: jeffrey.ratinoff@bipc.com

-And-

USASIA LAW, APC
Joseph S. Wu (*pro hac vice*)
5670 La Jolla Blvd
La Jolla, CA  92037
Telephone: (858) 454-8588
Facsimile: (858) 454-4314
Email: jwulawyer@gmail.com

-And-

X-PATENTS, APC
Jonathan Hangartner (*pro hac vice*)
5670 La Jolla Blvd
La Jolla, CA  92037
Telephone: (858) 454-4313
Facsimile: (858) 454-4314
Email: jon@x-patents.com

*Attorneys for Defendants Tatung Company and
Tatung Company of America*

# Unreported Cases

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

▷
Agilent Technologies, Inc. v. Micromuse, Inc.
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
      United States District Court,S.D. New York.
      AGILENT TECHNOLOGIES, INC., Plaintiff,
                              v.
            MICROMUSE, INC., Defendant.
                 **No. 04 Civ. 3090(RWS).**

                        Oct. 19, 2004.

Christian & Barton, Richmond, VA, By: Michael W. Smith, Craig T. Merritt, R. Braxton Hill, for Plaintiff, of counsel.
Gray Cary Ware & Freidenrich, San Diego, CA, By: Edward H. Sikorski, John Allcock, Sean C. Cunningham, Megan Whyman Olesek, for Plaintiff.
Brown Raysman Millstein Felder & Steiner, New York, NY, By: Seth Ostrow, Jeffrey P. Weingart, Eric C. Osterberg, for Defendant, of counsel.
Willcox & Savage, Norfolk, VA, By: Michael R. Katchmark, Gary A. Bryant, for Defendant, of counsel.

                         *OPINION*
SWEET, J.
*1 Defendant Micromuse, Inc. (" Micromuse" ) has moved pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint of plaintiff Agilent Technologies, Inc. (" Agilent" ) alleging patent infringement, and, in the alternative, for a more definite statement pursuant to Rule 12(e), and to add Hewlett Packard Company (" H-P" ) as a necessary party under Rules 12(b)(7) and 19(a) of those same Rules. Micromuse has also moved to disqualify Gray Cary Ware & Freidenrich, LLP (" Gray Cary" ) from representing Agilent in this action, Gray Cary having previously represented NetWork Harmoni, Inc. (" Network Harmoni" ), an entity acquired by Micromuse prior to the filing of this action. Agilent has cross-moved for leave to file a supplemental declaration in opposition to Micromuse's motion to disqualify Gray Cary. For the reasons set forth below, Micromuse's motion to dismiss is denied, the motion for a more definite statement is granted, the motion to add H-P as a party is denied at this time with leave granted to renew, and the motion to disqualify is denied at this time with leave granted to renew.

Agilent's cross-motion for leave to file a supplemental declaration is granted.

                    *Prior Proceedings*

The complaint in this patent infringement action was filed in the United States District Court for the Eastern District of Virginia, Norfolk Division, on November 10, 2003.

On December 17, 2003, Micromuse filed the instant motions in the Eastern District of Virginia as well as a motion to transfer the action to this district, which latter motion was granted by order of the Honorable Raymond A. Jackson filed on April 16, 2004. The action was transferred to this district on April 22, 2004.

The remaining motions were argued and marked fully submitted on May 19, 2004.

                     *The Complaint*

The following facts are drawn from Agilent's complaint and do not constitute findings of fact by the Court.

According to the complaint, Agilent is a Delaware corporation having its headquarters in Palo Alto, California, and significant operations in Fort Collins, Colorado. It is alleged that Micromuse is a Delaware Corporation with headquarters in San Francisco, California, and significant operations in Northern Virginia, Georgia, Illinois, Texas, New York, London, and other overseas destinations. Subject matter jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1338.

With regard to the factual background of the complaint, it is alleged that:
6. Agilent is a leading provider of components, test, measurement, monitoring and management solutions for the communications industry. Agilent's broad set of solutions and services includes, among other technologies, optical, wireless, Internet and broadband technologies that span the entire communications life cycle. Having invested substantial resources in the development of these technologies, Agilent maintains a portfolio of patents covering its inventions, including the patents at issue.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

**\*2** 7. On October 24, 2000, <u>United States Patent No. 6,138,122 (" the '122 Patent" )</u>, entitled " Modeling of Internet Services," was duly and legally issued to Mark D. Smith, Deborah L. Caswell and Srinivas Ramanathan. All rights, title and interest in <u>the '122 Patent</u> were assigned to Agilent, which remains the sole owner of <u>the '122 Patent</u>....

8. On January 1, 2002, <u>United States Patent No. 6,336,138 (" the '138 Patent")</u>, entitled " Template-Driven Approach For Generating Models On Network Services," was duly and legally issued to Deborah L. Caswell, Srinivas Ramanathan, James D. Hunter, Scott S. Neal, Frederick A. Sicker and Mark D. Smith. All rights, title and interest in <u>the '138 Patent</u> were assigned to Hewlett-Packard Company. Agilent and Hewlett-Packard Company now jointly own <u>the '138 Patent</u>, and Agilent has the exclusive right to enforce <u>the '138 Patent</u> against Micromuse....

(Compl. at ¶¶ 6-8.) It is further alleged that Micromuse " makes, sells, or offers products for sale in this district that infringe Agilent's patents." (Compl. at ¶ 4.)

The complaint contains two counts and Micromuse's liability is alleged as follows:

### COUNT ONE

### Infringement of <u>U.S. Patent No. 6,138,122</u>

9. Agilent realleges the foregoing paragraphs.

10. Agilent is informed and believes that Micromuse has directly infringed and continues to infringe, has induced and continues to induce, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of <u>the '122 Patent</u>.

11. Agilent is informed and believes that Micromuse's acts of patent infringement are and continue to be willful and deliberate.

12. As a result of Micromuse's patent infringement, Agilent has suffered damages in an amount not yet determined, and will continue to suffer damages in the future.

13. Unless an injunction is issued enjoining Micromuse and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing <u>the '122 Patent</u>, Agilent will be greatly and irreparably harmed.

### COUNT TWO

### Infringement of <u>U.S. Patent No. 6,336,138</u>

14. Agilent realleges the foregoing paragraphs.

15. Agilent is informed and believes that Micromuse has directly infringed and continues to infringe, has induced and continues to induce, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of <u>the '138 Patent</u>.

16. Agilent is informed and believes that Micromuse's acts of patent infringement are and continue to be willful and deliberate.

17. As a result of Micromuse's patent infringement, Agilent has suffered damages in an amount not yet determined, and will continue to suffer damages in the future.

18. Unless an injunction is issued enjoining Micromuse and its agents, servants, employees, attorneys, representatives, and all others acting on its behalf from infringing <u>the '138 Patent</u>, Agilent will be greatly and irreparably harmed.

**\*3** (Compl. at ¶¶ 9-18.)

### *Discussion*

### I. *Micromuse's Motion To Dismiss Is Denied*

Micromuse has moved to dismiss Agilent's Complaint pursuant to <u>Rule 12(b)(6) of the Federal Rules of Civil Procedure</u> on the grounds that the complaint fails to meet the notice requirements of Rule 8(a) of those same Rules.

In considering a motion to dismiss pursuant to <u>Rule 12(b)(6)</u>, the court should construe the complaint liberally, " accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," <u>*Chambers v. Time Warner, Inc.,*</u> 282 F.3d 147, 152 (2d Cir.2002) (citing <u>*Gregory v., Daly,*</u> 243 F.3d 687, 691 (2d Cir.2001)), although " mere conclusions of law or unwarranted deductions" need not be accepted. <u>*First Nationwide Bank v. Gelt Funding Corp.,*</u> 27 F.3d 763, 771 (2d Cir.1994). " The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>*Villager Pond, Inc. v. Town of Darien,*</u> 56 F.3d 375, 378 (2d Cir.1995) (quoting <u>*Scheuer v. Rhodes,*</u> 416 U.S. 232, 236 (1974)). In other words, " ' the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 3

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

the evidence which might be offered in support thereof." ' *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York,* 375 F.3d 168, 176 (2d Cir.2004) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)). Dismissal is only appropriate when " it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000); *accord Eternity Global Master Fund,* 375 F.3d at 176-77.

" The indulgent standard evident in these precedents is codified in Rule 8, which requires no more than ' a short and plain statement of [a] claim showing that the pleader is entitled to relief." ' *Id .* at 177 (quoting Fed.R.Civ.P. 8(a)(2)) (alteration in original); *see also Wynder v. McMahon,* 360 F.3d 73, 76-77 & n. 5 (2d Cir.2004) (referring to the " bare-bones standards of Rule 8" and noting that " Rule 8 pleading is extremely permissive" ). The Supreme Court has interpreted Rule 8 " not to require a claimant to set out in detail the facts upon which he bases his claim." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Indeed,

The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid.... All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.

*Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002); *see also Scutti Enters., LLC v. Park Place Entm't Corp.,* 322 F.3d 211, 215 (2d Cir.2003) (" ' More extensive pleading of fact is not required because the Federal Rules of Procedure provide other devices besides pleadings that will serve to define the facts and issues and to dispose of unmeritorious claims." ' ) (quoting 2 James Wm. Moore, *et al., Moore's Federal Practice* § 8.04[1] (3d ed.1999) (citation omitted)). Whether a complaint satisfies Rule 8(a)(2) is determined by whether the pleading provides fair notice to the opposing party. *See Conley,* 355 U.S. at 47; *see also Wynder,* 360 F.3d at 79 (" The key to Rule 8(a)'s requirements is whether adequate notice is given." ). Accordingly, dismissal for failure to comply with the requirements of Rule 8 " ' is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well

disguised." ' *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)).

*\*4 Here, Agilent's complaint establishes the jurisdiction of this Court, sets forth the ownership of the patents in suit and alleges that Micromuse makes, sells, or offers products for sale that infringe Agilent's patents. The complaint further alleges that Micromuse is liable for direct infringement, contributory infringement and infringement by inducement. Agilent has provided a " short and plain statement" of its claims against Micromuse and the nature of those claims is discernible. Fed.R.Civ.P. 8(a)(2). Indeed, it would be difficult to frame a more skeletal pleading.

Micromuse nonetheless argues that dismissal of Agilent's complaint is appropriate because the complaint fails to specify any allegedly infringing product, fails to identify any allegedly infringing conduct, and fails to set forth any of the other actors implicated by the allegations that Micromuse has contributed to and induced patent infringement. The absence of allegations such as those described does not demonstrate that the harsh sanction of dismissal is appropriate here, as this absence does not render it " appear[ ] beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief," *Sweet,* 235 F.3d at 83, nor that the complaint is " ' so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." ' *Simmons,* 49 F.3d at 86 (quoting *Salahuddin,* 861 F.2d at 42); *see generally Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 235 (1959) (" It may well be that petitioner's complaint as now drawn is too vague, but that is no ground for dismissing his action." ).

Where, as here, a pleading is sufficient to provide notice of the claim but does not contain sufficient information to allow a responsive pleading to be framed without risk of prejudice, the proper remedy is a motion for a more definite statement under Rule 12(e), Fed.R.Civ.P. *See, e.g., Scott v. City of Chicago,* 195 F.3d 950, 952 (7th Cir.1999); *Sisk v. Texas Parks & Wildlife Dep't,* 644 F.2d 1056, 1059 (5th Cir.1981); *Harman v. Nat'l Bank of Arizona,* 339 F.2d 564, 567 (9th Cir.1964); *but compare Ondeo Nalco Co. v. Eka Chems., Inc.,* No. 01 Civ. 537(SLR), 2002 WL 1458853, at \*1-2 (D. Del. June 10, 2002) (dismissing defendant's counterclaims

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

where it was unclear which products were being accused, concluding that the pleading was " too vague to provide plaintiff with fair notice," and granting leave to amend).

## II. *Micromuse's Motion For A More Definite Statement Is Granted*

Rule 12(e) of the Federal Rules of Civil Procedure provides in pertinent part that " [i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e). Rule 12(e) applies only in limited circumstances:
*5 [T]he pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed; in other words the pleading must be sufficient to survive a Rule 12(b)(6) motion to dismiss. At the same time, the pleading also must be so vague or ambiguous that the opposing party cannot respond to it, even with a simple denial as permitted by Rule 8(b), with a pleading that can be interposed in good faith or without prejudice to himself.

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1376 at 311 (3d ed.2004) (footnote omitted); *see Humpherys v. Nager*, 962 F.Supp. 347, 352-53 (E.D.N.Y.1997) (" A 12(b)(6) motion is one made for a failure to state a claim, while a 12(e) motion is proper when a complaint pleads a viable legal theory, but is so unclear that the opposing party cannot respond to the complaint." ); *but compare Home & Nature Inc. v. Sherman Speciality Co.*, 322 F.Supp.2d 260, 265 (E.D.N.Y.2004) (" Rule 12(e) motion should be denied if a complaint comports with the liberal pleading requirements of Rule 8(a)." ) (collecting cases).

Although motions pursuant to Rule 12(e) are generally disfavored where prompt resort to discovery may provide an adequate means for ascertaining relevant facts, *see id.*, courts have considered Rule 12(e) relief appropriate in patent infringement cases where a plaintiff has failed to identify any allegedly infringing product or products. *See, e.g., In re Papst Licensing GmbH Patent Litig.*, Nos. MDL 1298 & 99 Civ. 3118, 2001 WL 179926,

at *2 (E.D.La. Feb. 22, 2001) (concluding that the plaintiff's complaint must be amended to specifically identify which of the defendant's products are alleged to have infringed the plaintiff's patents); *cf. In re Independent Serv. Org. Antitrust Litig.*, 85 F.Supp.2d 1130, 1169 (D.Kan.2000) (denying the plaintiff's motion for summary judgment on a defendant's counterclaim where the plaintiff argued that it did not have adequate notice of which of its devices allegedly infringed the defendant's patents, observing that the plaintiff had already answered the counterclaim and that, if the plaintiff " did not truly know which parts were covered by the patents identified, it could have filed a motion for a more definite statement under Rule 12(e)" ). The cases cited by Agilent in opposition to Micromuse's motion do not suggest that a contrary result is required here, as they stand for the propositions that a pleading need not identify every infringing product where some other limiting parameter has been set forth or at least one purportedly infringing product has been identified. *See Symbol Tech., Inc. v. Hand Held Prods., Inc.*, No. 03 Civ. 102(SLR), 2003 WL 22750145, at *3 (D.Del. Nov. 14, 2003) (denying a Rule 12(e) motion where there was a " finite" set of potentially infringing products under identified patents held by the defendant); *Oki Elec. Indus. Co. v. LG Semicon Co.*, No. 97 Civ. 20310(SW), 1998 WL 101737, at *3 (N.D.Cal. Feb. 25, 1998) (denying a motion to dismiss where the plaintiff identified infringing products by specifying that the products concerned were " devices that embody the patented methods, including 4 megabit and higher density DRAMs" ) (internal quotation marks omitted), *aff'd*, 243 F.3d 559 (Fed.Cir.2000).

*6 Agilent's complaint does not specify which products infringed plaintiff's patents; it merely states that the alleged infringements occurred as a result of the fact that Micromuse " makes, sells, or offers products for sale ... that infringe Agilent's patents." (Compl. at ¶ 4.) Although Agilent's papers submitted in opposition to Micromuse's various motions suggest that Micromuse possesses at least four infringing products, those products have not been formally accused. Under these circumstances, Micromuse is entitled to know which of its products or services are alleged to have infringed Agilent's patents and a more definite statement setting forth that information is appropriate.

Micromuse has also argued that Agilent's complaint fails to identify the primary infringer with respect to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 5

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

the contributory and inducement claims. Micromuse has cited to a single unpublished authority in support of its argument that such identification is required to render a pleading answerable, and this authority, *Net Moneyin, Inc. v. Mellon Fin. Corp.*, No. 01 Civ. 441(TUC)(RCC), slip op. (D.Ariz. July 30, 2003), itself cites no other case law directly on point. Micromuse has accordingly failed to establish that relief under Rule 12(e) with respect to the identity of any primary infringers is appropriate.

Where a motion made under Rule 12(e) has been granted, the order of the court to provide a more definite statement must be obeyed within ten days after notice of the order " or within such other time as the court may fix." Fed.R.Civ.P. 12(e). Agilent is directed to comply with the grant of Micromuse's motion for a more definite statement by filing and serving an amended complaint within thirty (30) days of entry of this order and opinion.

### III. *H-P Will Not Be Deemed A Necessary Party At This Time*

Micromuse argues that, if Agilent's complaint is not dismissed, H-P, as co-owner of the '138 Patent, should be joined as a necessary party to this lawsuit, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. In addition, Micromuse asserts that if H-P is not so joined, the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7).

" Fed.R.Civ.P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a ' necessary' party under Rule 19(a)." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d. Cir.2000). Rule 19(a) provides in relevant part that,

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the

claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

*7 Fed.R.Civ.P. 19(a). Second, if a party is deemed necessary, it then must be determined whether the party's absence warrants dismissal pursuant to Rule 19(b), Fed.R.Civ.P. See *Viacom Int'l*, 212 F.3d at 725. " If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." *Id.* at 724 (citing *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir.1990)).

As a general matter, " United States patent law ... requires that all co-owners normally must join as plaintiffs in an infringement suit." *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed.Cir.2001); *see also Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed.Cir.1998) (stating that, " as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiff in an infringement suit" ) (footnote omitted); *see generally Waterman v. MacKenzie*, 138 U.S. 252, 255-56 (1891). As one court has explained, since " ' all co-owners have standing to sue for infringement, if all the co-owners are not joined in an infringement suit, there may be a risk that the defendant will be subject to multiple suits." ' *E.Z. Bowz, L.L.C. v. Prof'l Prod. Research Co.*, No. 00 Civ. 8670(LTS)(GWG), 2003 WL 22064257, at *3 (S.D.N.Y. Sept. 5, 2003) (quoting *Int'l Bus. Machs. Corp. v. Conner Peripherals, Inc.*, No. 93 Civ. 20591(RMW), 1994 WL 409493, at *3 (N.D.Cal. Jan. 28, 1994)); *see also Union Trust Nat'l Bank v. Audio Devices, Inc.*, 295 F.Supp. 25, 27 (S.D.N.Y.1969) (" That all co-owners be parties to a suit is a necessary requirement if conflicting decisions about the same patent (for example, its validity) are to be avoided." ); *cf. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed.Cir.1991) (" The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer." ).

" Since the introduction of Fed.R.Civ.P. 19 and the 1966 amendments to the rule, however, ' courts are less concerned with abstract characterizations of the parties and more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of the patent co-owner." ' *E.Z. Bowz*, 2003 WL 22064257, at *3 (quoting *Michaels of Oregon Co. v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 6

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

*Mil-Tech, Inc.,* No. 95 Civ. 908(MA), 1995 WL 852122, at *1 (D.Or. Oct. 17, 1995)); *cf. Howes v. Med. Components, Inc.,* 698 F.Supp. 574, 576 (E.D. Pa.1988) (" [T]he adoption of the 1966 amendments to Rule 19 ' makes inappropriate any contention that patent co-owners are *per se* indispensable in infringement suits." ' ) (quoting *Catanzaro v.. Int'l Tel. & Tel. Corp.,* 378 F.Supp. 203, 205 (D.Del.1974)).

Thus, where the co-owner of a patent or other entity or individual whose interest in a patent might be directly affected by litigation has specifically disclaimed all interest in pursuing litigation related to the patent in favor of the party who has brought the suit, courts have held that joinder of the co-owner or other entity or individual is not necessary. *See Vaupel Textilmaschinen,* 944 F.2d at 875-76 (concluding that the policy to join an owner when an exclusive licensee bring suit in order to preclude the possibility of duplicative lawsuits was not undercut where, pursuant to express agreements, the right to sue rested solely with the licensee and denying the defendant's Rule 19 motion); *E-Z Bowz,* 2003 WL 22064257, at *4-5 (holding that the defendant would not be subject to a substantial risk of incurring inconsistent obligations where the former co-owner of certain patents had relinquished her interest in the patents as well as any rights of action relating to the patents and concluding that the rights of the parties could be fairly adjudicated without joinder of the absent former co-owner); *Michaels of Oregon,* 1995 WL 852122, at *2-3 (determining that an absent co-owner of certain patents was not a necessary party where that absent co-owner had entered into an agreement with the plaintiff providing that only the plaintiff might file actions for patent infringement); *compare Parkson Corp. v. Andritz Sprout-Bauer, Inc.,* 866 F.Supp. 773, 775 (S.D.N.Y.1995) (concluding that it was not possible to determine whether an owner was a necessary party to an action brought by an exclusive licensee where the licensing agreement did not unambiguously give the licensee control over whether infringement claims should be brought); *Howes,* 698 F.Supp. at 577 (concluding that an absent patent co-owner was a necessary party where the defendants might face the risk of relitigation by that co-owner).

*8 Although the complaint alleges that Agilent and H-P jointly own the '138 Patent, it further alleges that Agilent enjoys the exclusive right to enforce the '138 Patent against Micromuse. In opposition to

Micromuse's motion, Agilent has submitted a redacted version of an August 22, 2003 agreement between Agilent and H-P (the " August Agreement" ) regarding their respective rights concerning the enforcement of the '138 Patent. According to the August Agreement, H-P grants to Agilent " the exclusive right to license the ['138] Patent to Micromuse." (Declaration of Megan Whyman Olesek, dated Jan. 15, 2004 (" Olesek Decl." ), Exh. X at ¶ 1.) H-P further grants to Agilent " the exclusive right to enforce the ['138] Patent to and against Micromuse" including by " filing and prosecuting the Agilent Patent Suit to final judgment, including appeals." [FN1] (*Id.*) H-P has also agreed that

> FN1. The " Agilent Patent Suit" is defined as " a patent infringement lawsuit against Micromuse." (Olesek Decl., Exh. X, preamble.)

[A]s between the parties, Agilent shall have the full power and authority to control the Agilent Patent Suit and any settlement thereof and shall retain one hundred percent (100%) of any damages or compensation received in connection with the Agilent Patent Suit or settlement thereof. (*Id.* at ¶ 3.)

Based on the terms of the August Agreement, it does not appear that H-P's absence from this lawsuit will subject Micromuse to any " substantial risk of incurring double, multiple, or otherwise inconsistent obligations," Fed.R.Civ.P. 19(a), because H-P has no independent capacity to file a patent infringement action against Micromuse based on the '138 Patent, having expressly disclaimed any interest in pursuing a claim against Micromuse with respect to the '138 Patent. In light of the broad contractual language by which H-P has granted Agilent the exclusive right to enforce the '138 Patent against Micromuse, the absence of any provision in the August Agreement stating that H-P agrees to be bound by the outcome of this litigation is not determinative here. Likewise, the absence of an affirmative representation that H-P has relinquished its right to sue Micromuse for any purported past infringement does not, contrary to the argument advanced by Micromuse, require joinder of H-P. On the facts now available, it thus appears that complete relief can be accorded among those already parties.

Micromuse has noted, however, that the August Agreement makes explicit reference to the existence

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 7

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

of a Master Patent Ownership and License Agreement and that the August Agreement is an agreement among Agilent and H-P " together with Hewlett Packard Development Company, L.P." (Olesek Decl., Exh. X, preamble), an entity that, according to Micromuse, may also have an interest in the '138 Patent. Micromuse has further observed that the redacted form of the August Agreement does not set forth its effective term or termination provisions and suggests that the absence of such provisions raises questions of whether H-P enjoys a reversion, termination, or expiration interest in the '138 Patent, questions which may, in turn, affect any determination as to whether H-P is a necessary party here. *See, e.g., Moore U.S.A. Inc. v. Standard Register Co.,* 60 F.Supp.2d 104, 109-110 (W.D.N.Y.1999) (concluding that a licensor was a necessary party to a patent infringement action despite the existence of an agreement with the plaintiff licensee granting the licensee sole and exclusive rights to sue for infringement where the agreement was of fixed term and where the licensor retained a reversionary interest in the patent).

*9 Although the facts presently available do not establish that H-P is a necessary party, Micromuse's observations suggest that developments resulting from discovery may cause the issue of H-P's joinder to be revisited. Accordingly, Micromuse's motion to join H-P is denied at this time and leave is hereby granted to renew the motion after further discovery.

IV. *Gray Cary Will Not Be Disqualified At This Time*

Micromuse has moved to disqualify Gray Cary from representing Agilent in this matter on the grounds that, for many years, Gray Cary provided extensive legal representation to Network Harmoni, a company acquired by Micromuse in August 2003. Micromuse argues that Network Harmoni's suite of proprietary intelligent software agents is now part of Micromuse's product offerings and, under the current complaint, potentially the target of Agilent's patent infringement claims. Micromuse asserts that Gray Cary thus formerly represented Network Harmoni in matters substantially related to the subject matter of this action and must be disqualified from representing Agilent as a result. Agilent opposes Micromuse's motion, arguing that in its representation of Network Harmoni Gray Cary was at all times in an adverse relationship to Micromuse and that Gray Cary's prior representation of Network Harmoni involved no confidential information about the product or

products at issue in the present action. [FN2]

FN2. Following briefing on Micromuse's motion, Agilent moved for leave to submit a supplemental declaration, claiming the need to respond to certain contentions in Micromuse's reply papers, and Micromuse opposed the motion. Agilent's motion for leave to submit the supplemental declaration is granted. Although submission of supplemental papers is often more of a hindrance than a help, the issues addressed in the supplemental papers presented here are carefully cabined and respond to arguably new contentions contained in reply papers on the underlying motion. Where this is true, and where, as here, the opposing party has disclaimed any prejudice resulting from the submission of the supplemental papers, there is no evidence of bad faith by the party seeking to submit the supplemental papers, and " the parties will be best served by the Court's deciding the ... issue presented to it on the most complete factual basis possible," Nat'l *Union Fire Ins. Co. v. BP Amoco P.L.C.,* No. 03 Civ. 200(GEL), 2003 WL 1618534, at *1 (S.D.N .Y. Mar. 27, 2003), leave to submit supplemental papers is appropriately granted.

Motions to disqualify counsel have long been disfavored in this Circuit. *See, e.g., Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791-92 (2d Cir.1983) (enumerating the reasons for which disqualification motions are disfavored); *Bennett Silvershein Assoc. v. Furman,* 776 F.Supp. 800, 802 (S.D.N.Y.1991) (" The Second Circuit has indeed been loathe to separate a client from his chosen attorney ...." ) (collecting cases). " Disqualification motions are often made for tactical reasons, and thereby unduly interfere with a party's right to employ counsel of his choice." *Skidmore v. Warburg Dillon Read LLC,* No. 99 Civ. 10525(NRB), 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001) (citing *Board of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979)). Moreover, disqualification motions, " even when made in the best of faith ... inevitably cause delay." *Evans,* 715 F.2d at 792 (quoting *Nyquist,* 590 F.2d at 1246). A " high standard of proof" is therefore required from one who moves to disqualify counsel. *Id.* at 791 (quoting *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739 (2d Cir.1978)). The appearance of impropriety alone does not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 8

Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

warrant disqualification. *See Nyquist,* 590 F.2d at 1246-47.

In determining whether an attorney can oppose his former client, courts evaluate whether the new matter is substantially related to the subject matter of the prior representation. An attorney may be disqualified from representing a client in a particular case if:
(1) the moving party is a former client of the adverse party's counsel;
*10 (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Id.* at 791. " Under this standard, proof of substantial similarity must be ' patently clear' to warrant disqualification." *Decora Inc. v. DW Wallcovering, Inc.,* 899 F.Supp. 132, 136 (S.D .N.Y.1995) (quoting *Government of India,* 569 F.2d at 739-40) (additional citations omitted). A " substantial relationship" exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation. *See U.S. Football League v. Nat'l Football League,* 605 F.Supp. 1448, 1459-60 & n. 25 (S.D.N.Y.1985) (" It is the congruence of *factual* matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes." ) (emphasis in original).

According to Micromuse, Network Harmoni evolved from a research project in network visualization software conducted at Curtin University in Perth, Australia. In 1996, the founders of the project formed NDG Software, Inc., and in November 1998 the company received its first venture funding and moved its headquarters from Australia to San Diego, California. It is alleged that Gray Cary initially provided advice, counsel and representation in establishing and structuring this U.S.-based company and its operations, and served as outside counsel. Subsequently, NDG Software, Inc., changed its name to Network Harmoni, Inc.

During the time of Gray Cary's representation, Network Harmoni developed and licensed to its customers, including Agilent and Micromuse, proprietary intelligent software agents designed to provide users with information on the status and security of computer networks, systems and applications. Micromuse contends that Gray Cary, during its five-year relationship with Network Harmoni, represented Network Harmoni in its corporate affairs, employment issues, in prosecuting its patents and trademarks and handling other patent and trademark-related matters, in evaluating third-party patents, and in drafting and negotiating licensing agreements, financing instruments and other corporate-related documents.

Over the course of its representation of Network Harmoni, Gray Cary is alleged to have drafted and filed several patent applications with the United States Patent and Trademark Office relating to certain aspects of Network Harmoni's software products and was informed of virtually all attributes and potential uses of Network Harmoni's suite of proprietary intelligent software agents, as well as the company's plans for future software applications and services.

According to Micromuse, Gray Cary represented Network Harmoni in its negotiations to be purchased by Micromuse, and Network Harmoni and Micromuse executed a non-disclosure agreement to assure that the parties could have full and complete discussions without the use of such information for non-acquisition purposes.

*11 It is further alleged that in three rounds of financing, Gray Cary was allowed to participate on the same basis as the initial preferred investors and became a shareholder of Network Harmoni, and until September 1999, one of its lawyers served as a member of its board of directors. Gray Cary sold its stock in connection with Network Harmoni's acquisition by Micromuse.

In opposition to Micromuse's motion it is alleged that Gray Cary first became aware of a potential claim against Micromuse by Agilent on September 19, 2003, when Agilent approached Gray Cary about the possibility of Gray Cary handling the matter for Agilent. It is also alleged that on December 8, 2003, an ethical wall was established to isolate all attorneys working on Agilent matters from any and all information related to any matter in which Network Harmoni had been a client for the firm.

Agilent asserts that Gray Cary never had an attorney-client relationship with Micromuse and that such a relationship may not be inferred from Micromuse's

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 9

disclosure of confidential business information to Network Harmoni and its then-counsel Gray Cary during negotiations for the acquisition of Network Harmoni. At present, however, there appears to be no dispute that Micromuse is entitled to seek Gray Cary's disqualification based on Gray Cary's prior representation of Micromuse's wholly owned subsidiary, Network Harmoni. *See generally Harford Accident & Indem. Co. v. RJR Nabisco, Inc.,* 721 F.Supp. 534, 539-40 (S.D.N.Y.1989) (concluding that the plaintiff's law firm would be deemed to have previously represented the defendant where the plaintiff's law firm had previously represented the defendant corporation's subsidiary and the defendant corporation had taken in active role with regard to the law firm's representation of its subsidiary); *cf. Decora,* 899 F.Supp. at 137 (concluding that the plaintiff could properly seek disqualification of the defendant's attorney in a patent infringement action where the attorney had previously represented the plaintiff's parent corporation, thereby learning certain of the plaintiff's trade secrets).

Assuming without deciding that the first prong of the test set forth in *Evans* has therefore been satisfied, Micromuse's motion for disqualification is denied nonetheless, since, to date, Micromuse has not met its burden of proof with respect to establishing a " substantial relationship" between Gray Cary's former representation of Network Harmoni and its current representation of Agilent. It has not been shown that Gray Cary gave Network Harmoni advice on the validity of the patents in suit, including whether there was infringement by Network Harmoni of the patents in suit. All that has been established is that Gray Cary advised Network Harmoni on corporate governance issues, employment matters, original equipment manufacturer (" OEM" ) agreements, patent and trademark filings, and financing instruments. Prior general business representation by the plaintiff's law firm of an entity related to the defendant on matters unrelated to the lawsuit at issue does not meet the high burden of establishing a conflict. *See, e.g., In re Maritima Aragua, S.A.,* 847 F.Supp. 1177, 1182-83 (S.D.N.Y.1994).

**\*12** The Micromuse products and services alleged to be violative of the Agilent patent will be identified as a consequence of the granting of Micromuse's motion for a more definite statement. Thereafter, discovery may be sought with respect to the knowledge and participation of Gray Cary in the development of any such accused products or services. Should this discovery yield additional facts establishing that the prior representation of Network Harmoni by Gray Cary dealt with issues presented in this action, leave is granted to Micromuse to renew its disqualification motion, which motion is denied at this time.

*Conclusion*

For the reasons set forth above, Micromuse's motion to dismiss the complaint is denied and its motion for a more definite statement is granted. Agilent is directed to comply with the grant of Micromuse's motion for a more definite statement by filing and serving an amended complaint within thirty (30) days of entry of this order and opinion. In addition, Micromuse's motions to add HP as a party and to disqualify Gray Cary are denied at this time with leave to renew. Agilent's motion to file a supplemental declaration is granted.

It is so ordered.

S.D.N.Y.,2004.
Agilent Technologies, Inc. v. Micromuse, Inc.
Not Reported in F.Supp.2d, 2004 WL 2346152 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 524589 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**C**

Applera Corp. v. Thermo Electron Corp.

D.Del.,2005.

Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

APPLERA CORPORATION, MDS Inc., and

Applied Biosystems/MDS Sciex Instruments,

Plaintiffs,

v.

THERMO ELECTRON CORPORATION,

Defendant.

**No. Civ.A. 04-1230(GMS).**

Feb. 25, 2005.

Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Plaintiffs.

*ORDER*

SLEET, J.

I. INTRODUCTION

*1 On September 3, 2004, Applera Corporation (" Applera" ), MDS Inc. (" MDS" ), and Applied Biosystems/MDS Sciex Instruments (" Applied Biosystems" ) (collectively, the " plaintiffs" ) filed a complaint, alleging that Thermo Electron Corporation (" Thermo" ) infringes one or more claims of U.S. Patent No. 4,963,736 (the " '736 patent" ). The '736 is directed to a mass spectrometer and a method of operating the mass spectrometer.

Presently before the court is Thermo's motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. For the following reasons, the court will deny Thermo's motion.

II. DISCUSSION

The decision of whether to grant or deny Thermo's motion rests within the sound discretion of the District Court. *See* 5A Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1377, at 728-29 & n. 3 (Supp.2004). Courts generally view motions for a more definite statement with disfavor, particularly " ' where the information sought by the motion could easily be obtained by discovery." ' *See CFMT, Inc. v. YieldUp Int'l Corp.,*

No. Civ. A. 95-549, 1996 WL 33140642, *1 (D.Del. Apr.5, 1996) (citations omitted). Courts take this view because the Federal Rules require that a pleading contain only a " short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2).[FN1] As a result, a motion for a more definite statement should be granted only where the pleading is so " vague or ambiguous" that the opponent cannot draft a responsive pleading. *See* Fed. R. Civ. P. 12(e); *see also Schaedler v. Reading Eagle Publ'n,* 370 F.2d 795, 798 (3d Cir.1967). Courts have interpreted this rule to mean that the motion should only be granted where the pleading is unintelligible, see *CFMT,* 1996 WL 33140642, at *1, or the issues cannot be determined. *See Fischer & Porter Co. v. Sheffield Corp.,* 31 F.R.D. 534, 536 (D.Del.1962); *Container Co. v. Carpenter Container Corp.,* 8 F.R.D. 208, 210 (D.Del.1948).

> FN1. The Rule 8 standard does not change in an action for patent infringement. *See* 5 Wright & Miller § 1251, at 459-60 (" [T]he complaint in a patent infringement action ... must identify the patent that has been infringed and indicate in what manner the patent has been encroached upon; however no special level of particularity ... is required." (footnotes omitted); *see also* Fed.R.Civ.P. 84 (1998); Appendix of Forms, Form 16 (Complaint for Infringement of Patent).

Thermo asserts that it cannot reasonably be required to frame an answer to the plaintiffs' complaint because it contains three alternatively pleaded theories of infringement without any specificity as to time, place, or person. Thermo further asserts that it cannot determine the issues in the case because the plaintiffs failed to identify which of its ninety-three mass spectrometers, in sixteen product lines, that it has manufactured since 1990 allegedly infringe the '736 patent.[FN2] After reviewing the plaintiffs' complaint, the court finds that it is far from unintelligible. In addition to identifying the patent in suit, the complaint plainly states that Thermo has allegedly infringed the '736 patent " directly, contributorily, and/or by inducing others to infringe the patent by making, using, offering for sale and selling mass spectrometer systems that are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 524589 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

encompassed by or the use of which is encompassed by one or more claims of the '736 patent." (D.I. 1 ¶ 18.) <u>FN3</u> The court, therefore, cannot say that the complaint is so " vague or ambiguous" that it prevents Thermo from reasonably framing a response. While the court understands and endorses Thermo's desire to narrow the issues of this litigation as early on in the process as possible, it believes that this goal is best achieved through the use of traditional mechanisms of discovery. *See Symbol Techs., Inc. v. Hand Held Prods., Inc.,* Civil Action No. 03-102, <u>2003 WL 22750145, *9 (D.Del. Nov.14, 2003)</u>.

> FN2. <u>The '736 patent</u> issued on October 16, 1990.

> FN3. Further, the plaintiffs have included a background section in the complaint that discusses previous litigation involving <u>the '736 patent</u>. (D.I. 1 ¶¶ 7-14.) In particular, the plaintiffs discuss the results of the *Markman* hearing, jury trial, bench trial concerning inequitable conduct, and appellate review. (*Id.*); see <u>Applera Corp. v. Micromass UK Ltd., 204 F.Supp.2d 724 (D.Del.2002)</u>, *aff'd,* <u>2003 WL 1795593 (Fed.Cir.2003)</u>. Thermo also discusses this prior litigation in its brief in support of its motion, asserting that the litigation makes it all the more important for the plaintiffs to identify which of its products or processes allegedly infringe <u>the '736 patent</u>. (D.I. 8, at 6-7.) The court disagrees because, as Thermo recognized in its brief, the prior litigation will inevitably inform the claims and defenses in the present case. For example, one of the plaintiffs' witnesses in the prior litigation testified that certain Thermo products do not infringe <u>the '736 patent</u>. (*Id.*)

### III. CONCLUSION

**\*2** For the aforementioned reasons, IT IS HEREBY ORDERED that:
1. The defendant's Motion for a More Definite Statement (D.I.7) is DENIED.
2. The defendant shall answer the complaint within thirty (30) days of the date of this Order.

D.Del.,2005.
Applera Corp. v. Thermo Electron Corp.

Not Reported in F.Supp.2d, 2005 WL 524589 (D.Del.)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 31500927 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

C
Carefirst of Maryland, Inc. v. Care First Transp., Inc.
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
CAREFIRST OF MARYLAND, INC., d/b/a Care
First Blue Cross Blue Shield, Plaintiff,
v.
CARE FIRST TRANSPORTATION, INC., d/b/a
Care First Transportation, a/k/a Care First
Transportation, Defendant.
**No. Civ.A. 02-229(MPT).**

Nov. 1, 2002.

Sheldon K. Rennie, Fox, Rothschild, O'Brien &
Frankel, LLP, Wilmington, DE, for Plaintiff.

*MEMORANDUM OPINION*
THYNGE, Magistrate J.

I. Introduction.

*1 Presently before the Court is Defendant's motion
to dismiss for Plaintiff's failure to state a claim upon
which relief can be granted pursuant to Rule 12(b)(6)
of the Federal Rules of Civil Procedure. For the
foregoing reasons stated below, Defendant's motion
to dismiss is DENIED.

II. Background.

A. Factual.

Plaintiff is a Maryland corporation, with its principle
place of business in Maryland, *D.I. 2 at 2,* and a
licensee of Blue Cross Blue Shield Association,
located in Chicago, Illinois. *D.I. 2 at 5 .* Plaintiff
serves as the parent corporation to a number of health
maintenance and preferred provider organizations.
*D.I. 2 at 3.* It services more than 5.2 million members
(including family members), who reside in various
states. Plaintiff has been the registered title owner of
a collective membership mark registration for the
mark " CAREFIRST" since June 6, 1989, and title
owner of trademark and service mark registrations for
the " CAREFIRST" mark as of July 4, 1989. The
mark has been used by plaintiff since 1977 through
their predecessor companies, prepaid health care

plans, also using the variations of "
MEDICAREFIRST" and " LIBERTY CAREFIRST"
. *Id.*

Through contracted plans, plaintiff provides
comprehensive medical services, products and care to
its enrolled members. *D.I. 2 at 3.* The "
CAREFIRST" mark and name is used to indicate
comprehensive medical services rendered to or on
behalf of their members and preferred provider
organizations. *D.I. 2 at 4.* The mark is used to
distinguish plaintiff from other health care service
providers. It is used on membership cards, enrollment
kits, membership packets and member newsletters.
*Id.*

Plaintiff's membership predominantly resides in
Maryland, Virginia, West Virginia, Pennsylvania,
Delaware, New Jersey and the District of Columbia.
*D.I. 2 at 4.* Other members live in states including
Michigan, Florida, Kentucky and Kansas. These
members travel throughout the United States and
foreign countries. Each member receives a
membership card entitling them to payment for
emergency healthcare anywhere in the world and to
non-emergency health care with prior notification
and approval by the respective health care
maintenance or preferred provider owned by plaintiff.
Plaintiff's membership is honored by most health care
facilities in the United States. *Id.*

Currently, plaintiff's organizations have agreements
with more than 1,000 different companies under
which they will provide to all enrolled employees
medical services at a specified rate of coverage. *D.I.
2 at 4-5.* Several of these companies are located
throughout the country. *D.I. 2 at 5.*

Defendant is a Delaware corporation organized on
January 11, 2001, *D.I. 2 at 5,* with its principle place
of business in Delaware *D.I. 2 at 2.* Defendant
provides point to point transportation services in
Delaware and Pennsylvania. *D.I. 2 at 2.* These
services are promoted through defendant's " http//
www.carefirstransport.com" website/domain name
and direct mailing. *Id.* The promotions are also
provided in connection with medical appointments,
dialysis, counseling and clinics to those who qualify
for " Senior Citizens Affordable Taxi" (SCAT).[FN1]
*D.I. 2 at 6*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2002 WL 31500927 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

FN1. In order to be eligible for SCAT, an individual must be " ambulatory handicapped" or over the age of 60. *D.I. 2 at 6.*

**\*2** Defendant does not sell and/or offer health care plans, enrollment kits, memberships, or preferred networks. *D.I. 11 at 2.* Defendant has applied for the trademark " CARE FIRST TRANSPORTATION ITS ALL ABOUT YOU" at the United States Patent and Trademark Office. *Id.*

### B. Procedural.

On January 11, 2002, plaintiff sent defendant a letter requesting cease and desist of any and all use by defendant of the " CARE FIRST" mark. *D.I. 2 at 6.* Defendant did not respond and on March 27, 2002, plaintiff filed its complaint in this Court. *D.I. 9 at 1.* Defendant was served on April 2, 2002 but did not answer or otherwise respond to plaintiff's complaint. Plaintiff moved for entry of default on April 26, 2002, which was entered by the District Court Clerk on May 13, 2002. *Id.* Subsequently, plaintiff moved for default judgment pursuant to *Fed.R.Civ.P. 55(b).* *D.I. 9 at 1.*

In that motion, plaintiff requested the Court find in accordance with their complaint, that defendant committed: (1) trademark infringement of plaintiff's " CAREFIRST" trademark and service mark, and the " CAREFIRST" collective membership mark in violation of 15 U.S.C. § 1114; (2) common law trademark, service mark, collective membership mark and trade name infringement of the " CAREFIRST" mark and name; (3) unfair competition of the " CAREFIRST" mark and name in violation of 15 U.S.C. § 1125(a) and (b); (4) common law unfair competition; and (5) dilution of the " CAREFIRST" mark and name in violation of 15 U.S.C. § 1125(c). *D .I. 9 at 2.*

Upon a finding of these above claims, plaintiff then requests the Court to grant the following relief: (1) order that defendant and all persons in active concert or participation be permanently enjoined and restrained from further acts of trademark, service mark, collective membership mark and trade name infringement, dilution, and unfair competition of the " CAREFIRST" mark and name specifically from further use of said mark, trade name, or colorable variants thereof; (2) order that defendant's

website/domain name be transferred to plaintiff; (3) order that defendant pay over all profits which were obtained as a result of defendant's willful appropriation, infringement, dilution and intentional acts of infringement and unfair competition; (5) award plaintiff reasonable attorney's fees and expenses incurred as a consequence of defendant's willful appropriation, infringement, dilution and intentional acts of unfair competition. *D.I. 9 at 2-3.*

On August 7, 2002, defendant filed a motion to dismiss by failure to state a claim upon which relief can be granted, pursuant to *Fed. R. Civ. P 12(b)(6).* *D.I. 11 at 1.* Plaintiff responded to defendant's motion on August 19, 2002, reiterating their previous arguments and requesting defendant's motion to dismiss be stricken because: (1) a corporation cannot defend itself *pro se;* (2) the motion is untimely; and (3) that the motion was not made with an accompanying brief as required by District Court Rules. *D.I. 12 at 1-2.*

### III. Discussion.

#### A. Standard for 12(b)(6) motion to dismiss.

**\*3** To grant a 12(b)(6) motion, a court must determine that the moving party is entitled to relief under the " reasonable reading of the pleadings, assuming the truth of all the factual allegations in the complaint." *Alexander v. Whitman, 114 F.3d 1392, 1397 (3d Cir.1997).* " A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Id.*

It is well established that a complaint should be dismissed on the basis of failing to state a claim when " it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson, 355 U.S. 41, 45 (1957).* However, this court does not have to accept every allegation as true. *Flanagan v. Shively, 783 F.Supp. 922, 927 (M.D.Pa.1992).* Nor should " [c]onclusory allegations of law, unsupported conclusions and unwarranted inferences ... be accepted as true." *Id. (citing Conley, 355 U.S. at 45-46).* Thus, although the plain statement required by Fed. R. Civ. P 8(a)(2) should be read in a light most favorable to the plaintiffs, the conclusory allegations unsupported by any factual assertions, made in plaintiffs' complaint cannot withstand a motion to dismiss.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 31500927 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Here, plaintiff does provide this Court with facts to support their claims against defendant. A " reasonable reading of the pleadings" in this matter shows that relief can be granted under the presented facts. Therefore, defendant is not entitled to dismiss plaintiff's motion pursuant to grant a Fed.R.Civ.P. 12(b)(6). The reasoning for this decision are set forth as follows.

### B. Plaintiff's arguments against dismissal of their claim.

As mentioned above, plaintiff provides three reasons why defendant's motion to dismiss should be denied: (1) that a corporation cannot defend itself *pro se;* (2) defendant's motion is untimely; and (3) the motion was not made with an accompanying brief as required by District Court Rules. *D.I. 12 at 1-2.* All of plaintiff's arguments are correct.

Defendant must be represented by counsel. A corporation may appear in federal court only by representation of a licensed attorney. *Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993); U.S. v. Cocivera 104 F.3d 566 (3rd Cir.1996).* Here, defendant's motion to dismiss was filed by its president, Denette Dawson, who is not a Delaware licensed attorney. Thus, because defendant is a corporation appearing before this Court without proper representation, defendant's motion to dismiss is denied on this ground.

Defendant also failed to timely respond to plaintiff's allegations. A motion to dismiss must also be filed within twenty (20) days after service and summons. *Fed.R.Civ.P. 12(a).* Here, plaintiff filed its complaint on March 27, 2002. Defendant's motion was not filed until July 23, 2002, nearly four months later. Therefore, due to defendant's untimeliness, the motion should also be denied on that basis.

*4 Lastly, defendant failed to accompany its motion to dismiss with proper briefing. According to the Local District Court Civil Rule 7.1.2., a motion to dismiss must be accompanied by supportive briefing unless a party advised the Court that because of the nature of the motion, the involved parties believe no briefing is required. Beyond the motion itself, there are no further pleadings or other evidence on the record in support of defendant's motion to dismiss. Due to defendant's failure to observe the rules of this Court, defendant's motion should be denied. More

importantly, defendant in its motion has failed to provide any bases for its position. In light of the absence of any factual or legal support for the motion, defendant's motion to dismiss is denied on that basis, as well.

### IV. Conclusion

For the foregoing reasons discussed above, this Court finds that " reasonable reading of the pleadings" show no doubt that plaintiff can be relieved under the facts presented. Consequently, defendant's motion to dismiss for failure to state a claim is DENIED. An Order consistent with this opinion will follow.

### *ORDER*

At Wilmington, this 1st day of November, 2002.

For the reasons set forth in the Memorandum Opinion dated November 1, 2002,

IT IS ORDERED that defendant's motion to dismiss for failure to state a claim is DENIED. 28 U.S.C. § 636 and Fed.R.Civ.P. 72 apply to any objections to the Memorandum Opinion and this Order.

D.Del.,2002.
Carefirst of Maryland, Inc. v. Care First Transp., Inc.
Not Reported in F.Supp.2d, 2002 WL 31500927 (D.Del.)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

**C**
Symbol Technologies, Inc. v. Hand Held Products, Inc.

D.Del.,2003.

Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

SYMBOL TECHNOLOGIES, INC., Plaintiff,

v.

HAND HELD PRODUCTS, INC. and HHP-NC, Inc., Defendants.

**No. Civ.A. 03-102-SLR.**

Nov. 14, 2003.

Arthur G. Connolly, III, Connolly, Bove, Lodge & Hutz, Andre G. Bouchard, Bouchard, Margules & Friedlander, Wilmington, DE, for Plaintiff.

Donald F. Parsons, Jr., Mary B. Graham, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 Currently before the court are the following motions by the defendants Hand Held Products, Inc. and HHP-NC, Inc. (collectively " HHP" ): 1) motion to dismiss U.S. Patent No. 5,591,956 of Count II for lack of subject matter jurisdiction; 2) motion to dismiss U.S. Patent No. 5,130,520 of Count I from the action because HHP holds a valid license; 3) motion to dismiss plaintiff's infringement and noninfringement claims from Counts I and II pursuant to Fed.R.Civ.P. 8 and 12(b)(6) for failure to state a claim; 4) motion to dismiss Count II of the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction for failure to satisfy the jurisdictional requirements of 18 U.S.C. § 2201; 5) motion to dismiss plaintiff's invalidity and unenforceability claims from Count II pursuant to Fed.R.Civ.P. 8 and 12(b)(6) for failure to give notice of the bases for claims of invalidity and unenforceability; 6) motion to strike plaintiff's unenforceability allegations pursuant to Fed.R.Civ.P. 12(b)(6) for failure to plead fraud with particularity; and 7) motion for a more definite statement as to Counts I and II. (D.I.10) For the reasons and to the

extent stated below, the court grants in part and denies in part HHP's motions.

II. BACKGROUND

Plaintiff Symbol Technologies, Inc. ( " Symbol" ) and HHP are competitors in the hand-held optical scanner industry, each holding patents and manufacturing a variety of products. Symbol is the owner of U.S. Patent Nos. 5,029,183; 5,130,520; 5,157,687; 5,479,441; 5,521,366; 5,646,390; 5,702,059; 5,783,811; 5,818,028; 6,00,612; 6,019,286; and 6,105,871 (collectively, the " Symbol Patents" ). HHP is the owner of U.S. Patent Nos. 5,286,960; 5,291,008; 5,391,182; 5,420,409; 5,463,214; 5,569,902; 5,591,956; 5,723,853; 5,723,868; 5,773,806; 5,773,810; 5,780,834; 5,784,102; 5,786,586; 5,793,967; 5,801,918; 5,825,006; 5,831,254; 5,837,985; 5,838,495; 5,900,613; 5,914,476; 5,929,418; 5,932,862; 5,942,741; 5,949,052; 5,949,054; 5,965,863; 6,015,088; 6,060,722; 6,161,760; 6,298,176; 6,491,223; D392,282; D400,199, and D400,872 (collectively the " HHP Patents" ).

In September 1999, HHP was acquired by Welch Allyn, Inc. ( " Welch Allyn" ), a direct competitor of Symbol. Later that fall, Welch Allyn announced that it intended to acquire another competitor of Symbol's, PSC, Inc., with whom Symbol was engaged in patent litigation.

On March 13, 2000, Welch Allyn's in-house counsel sent an email to Symbol's in-house patent counsel indicating that certain Welch Allyn patents might " present problems" to Symbol's Golden Eye product line. (D.I.19)

On June 6, 2000, Welch Allyn began negotiating with Symbol on behalf of Welch Allyn's newly acquired subsidiary, PSC, Inc. (Id.) Later that month, a meeting was held between Symbol and Welch Allyn to discuss the licensing of certain patents held by HHP relating to the Golden Eye product line. At that meeting, a list of twenty-three (23) patents was presented to Symbol which Welch Allyn viewed as relevant. (Id.)

*2 On June 28, 2000, a second list was provided to Symbol by HHP in response to a request made at the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)

(Cite as: Not Reported in F.Supp.2d)

earlier meeting. This second list contained only ten (10) patents, eight of which were previously listed on the first list, and two of which were new additions. The June 28 letter indicated that these patents should be the topic of further licensing discussions between the parties. (*Id.*)

On November 30, 2000, Symbol acquired Telxon, a Texas company that was at the time engaged in patent-related disputes with Welch Allyn. Previously that year, Welch Allyn had sent a list of patents to Telxon, identical to the first list sent to Symbol, and suggested that Telxon's products might be infringing. Welch Allyn had also previously raised infringement issues with Metanetics, a Telxon subsidiary. (*Id.*)

Relations between Symbol and Welch Allyn deteriorated completely when Welch Allyn filed a lawsuit against Symbol in North Carolina regarding a certain contract that they shared to provide products to the United States Postal Service. (*Id.*)

On January 21, 2003, Symbol filed a two-count complaint alleging that HHP has infringed the Symbol Patents and seeking declaratory judgment that the HHP Patents are not infringed, invalid and/or unenforceable. (D.I.1)

In Count I of the complaint, Symbol alleges that " HHP infringed and continues to infringe, has induced and continues to induce others to infringe, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of each of the Symbol Patents." (D.I. 1 at 6) In Count II of the complaint, Symbol seeks a declaratory judgment that the HHP Patents are noninfringed, invalid, and unenforceable. (*Id.*)

### III. DISCUSSION

#### A. HHP's Motion to Dismiss U.S. Patent No. 5,591,956

HHP contends that the court is without subject-matter jurisdiction as to U.S. Patent No. 5,591,956 (" '956 patent" ). (D.I.11) At oral arguments before the court on October 28, 2003, HHP's counsel affirmatively stated that the '956 patent is dedicated to the public; therefore, this patent will be dismissed from the complaint.

#### B. HHP's Motion to Dismiss U.S. Patent No. 5,130,520

HHP contends that U.S. Patent No. 5,130,520 (" '520 patent" ) should be dismissed because it is the subject of a valid license from Symbol. Symbol contends that there is a license for the '520 patent, but that it pertains to a narrow field of use. It is established law that a licensee that exceeds the scope of its license may be held liable for infringement. *See General Talking Pictures Co.,* 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273 (1938); *Eli Lily & Co. v. Genentech Inc.,* 17 U.S.P.Q.2d 1531, 1534 (S.D.Ind.1990). Consequently, HHP's motion to dismiss the '520 patent will be denied.

#### C. HHP's Motion to Dismiss Infringement and Noninfringement Claims from Count I and II for Failure to State a Claim, Motion to Dismiss Symbol's Claims of Invalidity and Unenforceability, and Motion for a More Definite Statement

**\*3** HHP contends that Symbol's complaint is facially defective under Fed.R.Civ.P. 8(a), as it fails to provide sufficient notice of which of HHP's products infringe claims under the Symbol Patents and which of Symbol's products may infringe HHP Patents. (D.I. 11 at 16) HHP, however, has failed to cite any precedent binding upon this court that requires a complaint to identify the basis of an infringement claim with such particularity.[FN1] It is established law that liberal pleading requirements are designed to put the parties on notice generally as to the nature of the cause of action. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Weston v. Pennsylvania,* 251 F.3d 420, 429 (3d Cir.2001). Particularly in complex litigation, it is through the discovery process that the parties refine and focus their claims. At this stage in the litigation, the court declines to dismiss Symbol's claims until adequate discovery has been completed.

> FN1. The court notes that HHP attempts to bootstrap Fed.R.Civ.P. 11 requirements into Rule 8, without actually alleging that Symbol's complaint is frivolous. (D.I. 11 at 9-10) In the absence of an actual motion by HHP to the contrary, the court will assume that Symbol's counsel has complied with their ethical obligations under Fed.R.Civ.P. 11.

In the alternative, HHP moves the court to require Symbol to provide a more definite statement pursuant to Fed.R.Civ.P. 12(e). A motion under Rule 12(e) is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 3

Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

to correct a pleading that is " so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." The purpose, however, of Rule 12(e) is not to make it easier for the moving party to prepare its case. Fed.R.Civ.P. 12 advisory committee's note. In this case, the crux of HHP's motion is that Symbol's complaint is simply too large. There are, however, a finite number of claims and a finite number of infringing products. Consequently, the court finds that traditional mechanisms of discovery are the proper tools to refine the scope of this litigation. HHP's motions in this regard will be denied.

### D. HHP's Motions to Dismiss Count II for Lack of Subject Matter Jurisdiction

HHP contends that the court is without subject matter jurisdiction as to the HHP Patents, as there is not an actual controversy within the meaning of § 2201. (*Id.*) See *Vectra Fitness, Inc. v. TNWK Corp.,* 162 F.3d 1379, 1383 (Fed.Cir.1998).

Declaratory judgment pursuant to 28 U.S.C. § 2201 requires that there be " (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993). In reaching its conclusion, the court must apply a totality of the circumstances standard. *See C.R.Bard, Inc. v. Schwartz,* 716 F.2d 874, 880 (Fed.Cir.1983).

The recent contentious and litigious history between the parties weighs in favor of a finding that Symbol has a reasonable apprehension of suit. In *EMC Corp. v. Norand Corp.,* 89 F.3d 807 (Fed.Cir.1996), the Federal Circuit stated that the " test for finding a ' controversy' for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling." *Id.* at 811. The Court of Appeals continued and emphasized that " the question is whether the relationship between the parties can be considered a ' controversy,' and that inquiry does not turn on whether the parties have used particular ' magic words' in communicating with one another." *Id.* at 812. Therefore, the absence of an explicit threat of suit, while a factor, is not dispositive. *See BP Chemicals Ltd. v. Union Carbide*

*Corp.,* 4 F.3d 975, 979 (Fed.Cir.1993) ( " Declaratory judgment jurisdiction does not require direct threats." ).

**\*4** Further, it is relevant under Federal Circuit precedent that at oral argument HHP did not affirmatively state that it would not bring suit. In *C.R. Bard Inc.,* the Court of Appeals held that a plaintiff had a reasonable apprehension of suit when the defendant in a declaratory judgment declined to affirmatively state at oral arguments that he would not bring a suit for infringement against the plaintiff.FN2 716 F.2d at 881.

> FN2. The court is not entirely comfortable with the notion that a plaintiff might bring a declaratory judgment against a defendant for the purpose of forcing an admission of the defendant's intent to enforce its patent rights. The court is also uncomfortable with the notion that a defendant might plead that the plaintiff has no reasonable apprehension of suit, and then file in another forum once the declaratory judgment has been dismissed for want of subject matter jurisdiction. Nonetheless, the Federal Circuit in *C.R. Bard* made it clear that the failure to deny an intent to sue for infringement is a factor to be considered.

Having concluded that the totality of circumstances sufficiently demonstrates a reasonable apprehension of suit, nonetheless, Symbol has not established a reasonable apprehension of suit with respect to each of the named HHP Patents. At most, the affidavit and accompanying documents filed to support the complaint suggest that only those patents referenced in the June 28, 2000 correspondence from Welch Allyn are proper subjects of a declaratory judgment suit.FN3 Consequently, the court will dismiss without prejudice those HHP Patents which were not the subject of the June 28, 2000 correspondence.

> FN3. Those patents are: U.S. Patent Nos. 5,286,960; 5,900,613; 5,723,868; 5,780,834; 5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863.

With respect to the remaining HHP Patents, the court finds that Symbol satisfies the " present activity" requirement of § 2201. It is sufficient that Symbol engages in the manufacture and production of products sufficiently similar to HHP's patents. *See*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

*Millipore Corp. v. Univ. Patents, Inc.,* 682 F.Supp. 227, 232 (D.Del.1987). Moreover, the fact that HHP's own correspondence to Symbol suggests that licensing of its patents may be needed is sufficient for the court to conclude that there is " present activity" as required under § 2201.

### E. HHP's Motion to Strike Symbol's Allegations of Unenforceability for Failure to Plead with Particularity

The court will dismiss Symbol's claims for unenforceability without prejudice. Fraud is a clear exception to the otherwise broad notice-pleading standards under Fed.R.Civ.P. 9. A claim of patent unenforceability is premised upon inequitable conduct before the Patent & Trademark Office (" PTO" ), which is a claim sounding in fraud. A plaintiff alleging unenforceability, therefore, must plead with particularity those facts which support the claim the patent holder acted fraudulently before the PTO. As Symbol has failed to adequately plead its bases for unenforceability of the remaining HHP Patents, that portion of Count II will be dismissed without prejudice.

### IV. CONCLUSION

At Wilmington this 14th day of November, 2003, having held oral argument and reviewed HHP's motion to dismiss pursuant to Fed.R.Civ.P. 8(a), 9, 12(b)(1), 12(b)(6) and 12(f), or in the alternative for a more definite statement pursuant to Rule 12(e) (D.I.10), and Symbol's response thereto;

IT IS ORDERED that:

1. HHP's motion to dismiss Count II of Symbol's complaint with respect to U.S. Patent No. 5,591,956 is granted. (D.I.10-1)

2. HHP's motion to dismiss U.S. Patent No. 5,130,520 of Count I is denied. (D.I.10-2)

3. HHP's motion to dismiss infringement and noninfringement claims from Counts I and II of the complaint pursuant to Fed.R.Civ.P. 8 and 12(b)(6) is denied. (D.I.10-3)

*5 4. HHP's motion to dismiss Count II of the complaint pursuant to Fed. R. Civ P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction is granted with respect to U.S. Patent Nos. 5,291,008;

5,391,182; 5,420,409; 5,463,214; 5,5697,902; 5,723,853; 5,773,806; 5,773,810; 5,786,586; 5,793,967; 5,801,918; 5,837,985; 5,838,495; 5,914,476; 5,932,862; 5,942,741; 5,949,052; 5,949,054; 6,015,088; 6,161,760; 6,298,176; 6,491,223; D392, 282; D400,199; and D400,872, and is denied with respect to U.S. Patent Nos. 5,286,960; 5,900,613; 5,723,868; 5,780,834; 5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863. (D.I.10-4)

5. HHP's motion pursuant to Fed.R.Civ.P. 8 and 12(b)(6) to dismiss Symbol's invalidity and unenforceability claims from Count II is denied. (D.I.10-5)

6. HHP's motion to strike Symbol's allegations of unenforceability pursuant to Fed.R.Civ.P. 12(b)(6) or 12(f) is granted. (D.I.10-6)

7. HHP's motion for a more definite statement is denied. (D.I.10-7)

D.Del.,2003.
Symbol Technologies, Inc. v. Hand Held Products, Inc.
Not Reported in F.Supp.2d, 2003 WL 22750145 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.