**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD, | Civil Action No. 06-726-GMS |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| v. | |
| CHI MEI OPTOELECTRONICS CORPORATION; AU OPTRONICS CORPORATION; AU OPTRONICS CORPORATION AMERICA; TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION, | |
| Defendants. | |

**DEFENDANTS TATUNG COMPANY AND TATUNG COMPANY OF AMERICA'S
OPPOSITION TO THE JOINT MOTION TO CONSOLIDATE**

      1.      Tatung Company and Tatung Company of America (the "Tatung Defendants") respectfully submit this opposition, pursuant to Local Rule 7.1.2(a), to the Joint Motion to Consolidate (the "Motion") of AU Optronics Corporation ("AUO") and AU Optronics Corporation America ("AUOA") (collectively the "AUO Parties"), and LG.Philips LCD Co., Ltd. ("LPL") and LG.Philips LCD America, Inc. ("LPLA") (collectively the "LPL Parties") (the AUO Parties and LPL Parties are collectively referred to as the "Moving Parties"). The Motion seeks to consolidate this action (C.A. No. 06-726-GMS) with the action recently transferred to this District (C.A. No. 07-357-JJF) from the Western District of Wisconsin (the "Wisconsin Action").

      2.      Consolidation of the two actions is misguided because: (1) there are not substantial common legal or factual issues between this action and the Wisconsin Action; and (2) consolidation would cause additional delay, judicial inefficiency, impediments to the timely resolution of this litigation and resulting prejudice to the Tatung Defendants (and other

defendants similarly situated).

3.      On or about December 1, 2006, LPL initiated this action by filing its Complaint for Patent Infringement against Chi Mei Optoelectronics Corporation ("Chi Mei"), AUO, AUOA, the Tatung Defendants, and ViewSonic Corporation ("ViewSonic").

4.      The original complaint asserts claims against the Tatung Defendants for the alleged infringement and/or induced infringement of U.S. Patent No. 5,825,449 ("the '449 Patent"), U.S. Patent No. 4,624,737 ("the '737 Patent"), and U.S. Patent No. 5,019,002 ("the '002 Patent") (collectively "the Patents") (See D.I. 1 at ¶¶ 32, 37, 42; see also D.I. 1 at ¶¶ 8, 9, 14, 15, 21, 24, 25-30, 33, 38, 43).

5.      Four and a half months later, on April 11, 2007, LPL filed its First Amended Complaint adding three declaratory relief claims on three new patents (see footnote) only as against AUO and AUOA.[1]  (See D.I. 29.)

6.      Unbeknownst to the Tatung Defendants at the time, this cluster of AUO Patents formed the basis of AUO's separate infringement action against LPL venued in the Western District of Wisconsin which was subsequently transferred to this District on June 6, 2007 (C.A. No. 07-357-JJF), and is now the subject of this Joint Motion to Consolidate.  (D.I. 92)

7.      On May 22, 2007, without leave of Court to file a second amended pleading, LPL filed a third initial pleading – also entitled First Amended Complaint, but against defendants Chi Mei and Chi Mei Optoelectronics USA, Inc. ("Chi Mei USA") ("Second First Amended Complaint").  (*See* D.I. 54.)

8.      In this Second First Amended Complaint, LPL added Chi Mei USA as a new party, plus two additional counts of declaratory relief for invalidity and non-

---

[1] The new AUO patent cluster includes the '781 Patent, the '160 Patent, and the '629 Patent (the "AUO Patents").  *See* D.I. 29, Ex. D, E and F.

infringement on four (4) new patents.[2]  This Second First Amended Complaint, however, dropped LPL's declaratory relief claims against AUO and AUOA previously asserted in the original First Amended Complaint.  (*See, e.g.,* D.I. 54 at ¶¶ 7, 50-62).

9.    When the Second First Amended Complaint was filed, these CMO Patents formed the basis of a separate infringement action filed by CMO against the LPL parties currently venued in the Eastern District of Texas, Case No. 2:07cv00176-TJW (the "Texas Action").  In that case, the LPL parties have filed a motion to transfer the Texas Action to this District.[3]  The Tatung Defendants have been informed and believe that if that motion to transfer is later granted, LPL will file another motion to consolidate in this case, this time seeking to consolidate the Texas litigation with this action, thereby increasing the total number of patents involved in this suit to ten (10).

10.    Motions to consolidate are governed by Rule 42(a) of the Federal Rules of Civil Procedure.  Rule 42(a) states that:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary cost or delay.

11.    The party moving for consolidation bears the burden of proof.  *In re Consolidated Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998).  The decision to consolidate is a matter for the discretion of the trial court.  *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978); *La Chemise La Coste v. Alligator Co., Inc.*, 60 F.R.D. 164, 175 (D. Del.1973).

---

[2] The new CMO patent cluster includes the '786 Patent, the '923 Patent, the '352 Patent, and the '926 Patent (the CMO Patents").  (*See* D.I. 54, Ex. D, E, F and G).

[3] A true and correct copy of the Motion to Transfer is attached hereto as Exhibit A.

However, the mere existence of common issues does not require consolidation as a matter of course. *In re Consolidated,* 182 F.R.D. at 444. Rather, consolidation may not occur when it would result in prejudice to one or more parties.

12.     In determining whether consolidation is appropriate, a district court must balance the interests of judicial economy against the potential for new delays, expense, confusion or prejudice. *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, 339 F.2d 673 (3d Cir. 1964), *cert. denied*, 382 U.S. 812 (1965) (instructing district court to consolidate based upon a finding that there were no disadvantages outweighing the advantages of consolidation). *See also* 9 Wright & Miller, Federal Practice and Procedure: Civil § 2383 at 259-60.

13.     In this case, the Moving Parties have failed to meet their burden of demonstrating to the Court that consolidation is proper. In fact, consolidation is not proper and the Court should deny the Motion.

14.     Moving Parties have failed to demonstrate sufficient common questions of material fact between the cases to warrant consolidation. Indeed, the Motion merely makes conclusory statements about purported common issues of law and does not even attempt to explain what common questions of fact, if any, exist. (*See* D.I. 92 at 2). As it is well established that a moving party cannot introduce new facts or different legal arguments in a reply brief, LPL and AUO will not be able to carry their burden with respect to the Motion. *See Lujan v. National Wild Life Federation* (1990) 497 U.S. 871, 894-95, 110 S.Ct. 3177, 3192.

15.     Rather, a cursory review and comparison of claim 1 of the original patents-in-suit to claim 1 of several patents from the new AUO patent cluster reveal that: (1) the

inventions claimed involve different aspects of LCD technology; (2) there are very few, if any, identical and overlapping claim terms that may require joint construction; and (3) the accused products or processes relating to the 6 (and eventually 10) patents are certain to be different, including LPL's own products/processes which are also at issue in its cross-claims for declaratory relief. *Compare* D.I. 29, Ex. A, Col. 8, Line 65 - Col. 9, Line 13; Ex. B, Col. 5, Line 62 - Col. 6, Line 19; and Ex. C, Col. 4, Lines 25-45 to Ex. D, Col. 4, Lines 50-67; and Ex. E, Col. 11, Lines 21-35.

16.     In addition, consolidation would only lead to additional judicial inefficiency, confusion, and delay in the timely resolution of this litigation – a result that will surely prejudice the Tatung Defendants (and other defendants similarly situated). Thus, even if the Court finds some common question of law or fact, consolidation of the instant action and the Wisconsin Action would still be inappropriate.

17.     Without question, doubling the number of patents to be tried in this Action (from three to six) would cause much greater case management difficulties and confusion in this case, particularly for the Tatung Defendants who have absolutely no relationship to the claims affecting the AUO Patents. For instance, consolidation will surely lead to increased jury confusion as LPL will be seeking to prove claims relating to at least 6 (and as many as 10) different and unrelated patents, asserted against four different groups of defendants (Tatung Defendants, CMO defendants, AUO defendants, and ViewSonic), as well as seeking declaratory relief on non-infringement/invalidity counterclaims involving LPL's own multiple products/processes based on a variety of differing products and/or manufacturing processes – all before a panel of lay jurors.

18.     In *Clopay Corp. v. Newell Companies, Inc.*, 527 F. Supp. 733 (D. Del. 1981),

this Court denied a motion to consolidate two patent cases, the consolidation of which would

have resulted in two (2) patents and two (2) defendants.  In so doing, this Court reasoned

that:

> Juries in patent cases are frequently called upon to weigh
> extraordinary volumes of complex material.  **In such situations, it
> may not be reasonable to expect a jury to screen out, in its
> deliberations regarding one defendant, evidence it has been
> instructed to consider with respect to another defendant.  In
> short, the interest of justice in these cases may dictate separate
> trials to different juries.**
>
> *Id.* at 735 (emphasis added).

19.     This case warrants the denial of consolidation even more so than *Clopay.*

Here, by consolidating the two cases (plus the possible Texas Action), the jury would be

forced to decipher at least six patents (and as many as ten), three of which are being asserted

against four different groups of defendants, with three other patents affecting only the AUO

and LPL Parties -- greatly increasing the number of overall claims and defenses forced upon

the lay jury.

20.     The requested consolidation would greatly increase the likelihood of jury

confusion in the complicated task of navigating through  the alleged infringements and

alleged wrongdoers.   This Court is urged to reject the requested consolidation – consistent

with the advice of *Clopay* –  so that the Tatung Defendants (and others similarly situated) will

not be subject to the much increased risk of jury confusion in deciphering through the already

complicated nature of the current patent action without having to deal with three more (and

potentially seven more) unrelated patents, all with counterclaims directed against some (but

not all) of the parties.

21.     Furthermore, the requested consolidation will surely lead to inefficiencies in

both discovery (fact and expert) and subsequent trial.  As for discovery, as explained more

fully below, the Tatung Defendants will be required to participate in fact and expert depositions (and related motion hearings) that will surely be lengthened due to the increased scope of the case, even though the AUO Patents (and the CMO Patents) have not been asserted against the Tatung Defendants. As for trial, all parties (especially the Tatung Defendants) will have to spend more time making presentations to the jury in an attempt to minimize the likely effects of jury confusion as emphasized in *Clopay* – all of which can (and should) be avoided by the Court's denial of this instant consolidation request.

22.     Accordingly, the possible prejudice to the Tatung Defendants' right to a fair and impartial trial substantially outweighs possible benefits of consolidation. For this reason alone, the Court should deny the Motion.

23.     As discussed above, a consolidated action would also severely burden and prejudice the Tatung Defendants during the pretrial phase of the case. Specifically, discovery would be unnecessarily complicated by consolidating this case with the Wisconsin Action, and will ultimately delay the resolution of this action.

24.     During discovery, the Tatung Defendants could very well be forced to participate in discovery that may or may not concern the patents originally at issue in this case. Counsel for the Tatung Defendants would likely be compelled to attend days and days of depositions and potentially review thousands of pages of documents possibly relevant in some way to the original patents at issue in this case just to protect the interests of the Tatung Defendants. For example, the deposition of LGL's technical expert witness(es) would likely last for days in and of itself, as each party asks questions about the numerous patents involved in the case while three of the new AUO cluster of patents (or as many as seven of them) have nothing to do with the Tatung Defendants, Chi Mei or Viewsonic.

25.    Similarly, the Court will likely have to conduct at least two and as many as three (should the Texas Action be consolidated as well) *Markman* hearings, each having to do with various clusters of patents.  As explained above, a review and comparison of the claim language of the various patents in question reveals that the technology is sufficiently distinct and the claims do not contain any significant amount of overlapping terms.  *See* ¶ 15.

26.    Thus, consolidation would not promote judicial economy, but, rather, would only cause unnecessary delay and expense in an already complex patent infringement matter. Such unnecessary complexity and increased time can be avoided by denying consolidation.

27.    While significant confusion and prejudice will inevitably result from consolidation, no prejudice will result from maintaining separate actions as the parties to those cases can litigate their unrelated claims and issues in isolation.  At minimum, by keeping the cases distinct, parties may prosecute the separate actions in the ordinary course and with much less limitation, as compared with having to deal with many more scheduling conflicts in order to reserve a longer block of time for multiple witness depositions (for example) if these cases are consolidated.  Accordingly, the prejudice to the Tatung Defendants substantially outweighs any possible benefit of consolidation.  Thus, the Court should deny the Motion.

28.    Finally, as more fully explained in the pending Motions for More Definite Statement filed by the Tatung Defendants and Viewsonic (D.I. 39; 70), the LPL Parties have improperly attempted to circumvent the procedural requirements of Rule 15 by serving three different "operative complaints" on three different groups of defendants without seeking leave of court.  Accordingly, while LPL may attempt to argue that it has already asserted declaratory relief claims in this case involving the patents at issue in the Wisconsin and Texas

Actions, those claims are not properly before the Court and the Court should not allow LPL to maintain the improper claims without first seeking leave of Court and allowing all of the parties to fully brief the issues raised by LPL's various new claims.

29.    For the foregoing reasons, the consolidation of the instant action with the Wisconsin Lawsuit is inappropriate.  Thus, the Tatung Defendants respectfully request that the Court deny the Joint Motion for Consolidation.

WHEREFORE, Defendants Tatung Company and Tatung Company of America respectfully request that this Court deny the Joint Motion for Consolidation.

Respectfully submitted,

DATED:  July 20, 2007

BUCHANAN INGERSOLL & ROONEY PC

William E. Manning, Esq. (DE Bar #697)
Jennifer M. Becnel-Guzzo, Esq (DE Bar #4492)
1000 West Street, Suite 1410
P.O. Box 1397
Wilmington, DE 19899-1397
Telephone:  (302) 552-4200
Email: william.manning@bipc.com
Email: jennifer.becnelguzzo@bipc.com

Of Counsel

BUCHANAN INGERSOLL & ROONEY LLP
Bryan J. Sinclair (*pro hac vice*)
Karineh Khachatourian (*pro hac vice*)
Jeffrey M. Ratinoff, Esq. (*pro hac vice*)
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA  94065-1418
Telephone:  (650) 622-2300
Facsimile:   (650) 622-2499
Email: bryan.sinclair@bipc.com
Email: karineh.khachatourian@bipc.com
Email: jeffrey.ratinoff@bipc.com

-And-

USASIA LAW, APC
Joseph S. Wu (*pro hac* vice)
5670 La Jolla Blvd
La Jolla, CA  92037
Telephone:  (858) 454-8588
Facsimile:   (858) 454-4314
Email: jwulawyer@gmail.com

-And-

X-PATENTS, APC
Jonathan Hangartner (*pro hac vice*)
5670 La Jolla Blvd
La Jolla, CA  92037
Telephone:  (858) 454-4313
Facsimile:   (858) 454-4314
Email: jon@x-patents.com

*Attorneys for Defendants Tatung Company and
Tatung Company of America*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation, | | |
| Plaintiff, | | |
| v. | | Civil Action No. 2:07-cv-00176-TJW |
| LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation, | | |
| Defendants. | | |

## DEFENDANTS' MOTION TO TRANSFER THIS CASE TO DELAWARE

On December 1, 2006, LG.Philips LCD Co., Ltd. ("LPL") filed an action in the District of Delaware alleging infringement of patents directed at various aspects of liquid crystal display ("LCD") technology ("the Delaware action"). (Ex. A.)[1] The first-named defendant in the Delaware action is the plaintiff here, Chi Mei Optoelectronics Corporation ("CMO"). Other defendants in the Delaware action include AUO Optronics Corporation ("AUO") and AUO's subsidiary, AU Optronics America, Inc. ("AUO America").

Months later, on March 8, 2007, AUO filed an infringement action regarding patents directed at LCD technology in the Western District of Wisconsin against the two defendants here, LPL and LPL's subsidiary, LG.Philips LCD America, Inc. ("LPLA") ("the Wisconsin action"). (Ex. B.) Shortly thereafter, LPL amended its Delaware complaint against AUO to add declaratory judgment counts of invalidity and non-infringement relating to the patents asserted

---

[1] The exhibits cited herein are attached to the accompanying declaration of Mike C. Miller, Esq.

by AUO. LPL then filed a motion to transfer with the Wisconsin court (the Hon. John C. Shabaz presiding). In granting the motion, Judge Shabaz concluded "[t]he interest of justice *overwhelmingly favors* transfer to Delaware for consolidation with the first filed case presently pending in that Court." *AU Optronics Corp. v. LG.Philips LCD Co., Ltd.*, No. 07-C-137-S, 2007 U.S. Dist. LEXIS 39340, at *13 (W.D. Wis. May 30, 2007) (emphasis added) (Ex. C).[2]

After both LPL and AUO filed their complaints, CMO filed this action on May 4, 2007, against LPL and LPLA ("the Texas action"). Once again, a Delaware defendant (CMO) accuses the Delaware plaintiff (LPL) of patent infringement relating to LCD technology. And, once again, these claims are brought not as counterclaims in Delaware but instead as a new action in a different judicial district. As it had done after AUO filed its complaint, LPL amended its Delaware complaint against CMO to add declaratory judgment counts of invalidity and non-infringement for the patents asserted by CMO in this action. (Ex. E.)

Thus, this case is in the same posture, procedurally and substantively, as the Wisconsin action where Judge Shabaz found "*powerful arguments* for transferring th[e] matter to the District of Delaware." 2007 U.S. Dist. LEXIS 39340, at *9 (emphasis added) (Ex. C). Here, too, the parallel cases involve the same parties, patents, and products. Given this substantial overlap, there is no reason for separate discovery, separate claim constructions, and separate trials. Accordingly, the Court is respectfully requested to transfer this action to the District of Delaware under the first-to-file rule and/or 28 U.S.C. § 1404(a).

---

[2] In an attempt to obviate the need for this motion, on June 6, counsel for CMO in this action was provided with a copy of Judge Shabaz's decision and requested that CMO agree to transfer the action to Delaware. (Ex. H.) CMO, however, has not consented to transfer.

## FACTUAL BACKGROUND

### A.    The Parties

CMO's complaint shows that CMO (Taiwan) and LPL (Korea) are foreign corporations

with principal places of business outside of this country. Both companies are involved in the

design and sale of LCD modules. CMO, for instance, claims it is "the world's leading producer

of Thin Film Transistor – Liquid Crystal Display ('TFT-LCD') panels used in notebook and

desktop computers and televisions." (CMO Compl. ¶ 4.) CMO also alleges that "LPL designs,

manufactures, and distributes TFT-LCD panels and [LCD] modules worldwide." (*Id.* ¶ 5.)[3]

### B.    The Delaware Action

Last year, on December 1, 2006, LPL filed a patent infringement lawsuit against several

defendants, including CMO and AUO. (Ex. A.) The Delaware action seeks injunctive and

monetary relief for infringement of three patents directed at LCD technology. These patents

(which are exhibits to the complaint) are: (1) U.S. Patent No. 5,019,002, entitled "Method of

Manufacturing Flat Panel Backplanes including Electrostatic Discharge Prevention and Displays

Made Thereby" ("the '002 patent"); (2) U.S. Patent No. 5,825,449, entitled "Liquid Crystal

Display Device and Method of Manufacturing the Same" ("the '449 patent"); and (3) U.S. Patent

No. 4,624,737, entitled "Process for Producing Thin-Film Transistor" ("the '737 patent").

The Delaware action has been assigned to Judge Farnan, who is intimately familiar with

the LCD technology at issue. Last year, Judge Farnan presided over another patent infringement

action involving the '002 patent. *LG.Philips LCD Co., Ltd. v. Tatung Co. et al.*, C.A. No. 05-

292-JJF. After extensive briefing and a *Markman* hearing, Judge Farnan issued a detailed

---

[3] The other defendant, LPLA, is a California corporation with a principal place of business in San Jose, CA. (Ex. D ¶ 25.) LPLA has offices in California, Texas, and North Carolina. LPLA sells, but does not make, LCD modules to customers in several states.

memorandum, dated June 13, 2006, construing claims terms of the '002 patent. (Ex. G.) Judge

Farnan then presided over a nine-day trial where the jury awarded monetary damages of $52.5

million. Post-trial motions are pending.

### C.    The Wisconsin Action

On March 8, 2007, AUO filed its Wisconsin action alleging that LPL and LPLA infringe

three LCD-related patents. (Ex. B.) These patents (which are exhibits to the complaint) are (1)

United States Patent No. 6,689,629, entitled "Array Substrate For Display, Method Of

Manufacturing Array Substrate For Display And Display Device Using The Array Substrate"

("the '629 patent"); (2) United States Patent No. 6,976,781, entitled "Frame And Bezel Structure

For Backlight Unit" ("the '781 patent"); and (3) United States Patent No. 6,778,160, entitled

"Liquid-Crystal Display, Liquid-Crystal Control Circuit, Flicker Inhibition Method, And Liquid-

Crystal Driving Method" ("the '160 patent").

On April 11, LPL filed a first amended complaint against AUO in the Delaware action

adding declaratory judgment counts of invalidity and non-infringement of the three patents

asserted by AUO. Then, on May 30, Judge Shabaz ordered the Wisconsin action transferred to

Delaware. (Ex. C.)

Following the transfer to Delaware, on June 11, LPL filed an answer and counterclaims

against AUO and additional parties AUO America, CMO, and Chi Mei Optoelectronics USA,

Inc. ("CMO USA"). (Ex. D.) These counterclaims asserted three additional patents relating to

LCD technology. These patents (which are exhibits to the counterclaims) are: (1) United States

Patent No. 5,905,274, entitled "Thin-Film Transistor And Method of Making Same" ("the '274

patent"); (2) United States Patent No. 6,815,321, entitled "Thin-Film Transistor And Method of

Making Same" ("the '321 patent"); and (3) United States Patent No. 7,176,489, entitled "Thin-

Film Transistor And Method Of Making Same" ("the '489 patent").

### D.    The Texas Action

On May 4, 2007, CMO filed this action alleging that LPL and LPLA were infringing four

LCD-related patents.  These patents (which are exhibits to the complaint) are: (1) U.S. Patent

No. 6,008,786, entitled "Method for Driving Halftone Display for a Liquid Crystal Display"

("the '786 patent"); (2) U.S. Patent No. 6,013,923, entitled "Semiconductor Switch Array with

Electrostatic Discharge Protection and Method of Fabricating" ("the '923 patent"); (3) U.S.

Patent No. 5,619,352, entitled "LCD Splay/Twist Compensator having Varying Tilt and/or

Azimuthal Angles for Improved Gray Scale Performance" ("the '352 patent"); and (4) U.S.

Patent No. 6,734,926 B2, entitled "Display Apparatus with a Reduced Thickness" ("the '926

patent").

Soon thereafter, and similar to its earlier amendment against AUO, LPL filed an amended

complaint in the Delaware action against CMO seeking a declaratory judgment of invalidity and

non-infringement as to the patents asserted in this case.  (Ex. E.)  As a result, since May 22, the

four patents at issue in this action are also at issue in Delaware.

Most recently, on June 1, a stipulation and agreement was entered in this case whereby

LPL agreed not to contest service, and LPL and LPLA were given until August 13 to respond to

CMO's complaint.  This motion followed.

### ARGUMENT

Judge Shabaz transferred AUO's action to the District of Delaware because Delaware is

the only forum where all of the disputed issues can be resolved.  Similarly, this Court recently

transferred a patent infringement case to the District of Delaware for consolidation with a first-

filed Delaware case because of the "overlapping parties and subject matter." *Fairchild

Semiconductor Corp. v. Power Integrations, Inc.*, C.A. No. 2:06-CV-151, 2007 WL 712289, at

*2 (E.D. Tex. Mar. 6, 2007) (Ward, D.J.).  Here, too, there is a substantial overlap between this

action and the Delaware action and Delaware is the only forum where all of the issues can be resolved.  Therefore, the Court should transfer this action to Delaware for consolidation with LPL's first-filed action (as well as AUO's recently transferred case).

**A.     The First-To-File Rule Compels Transfer**

CMO's complaint arises under the patent laws and therefore it is significant that the Federal Circuit considers the first-to-file rule to be an issue "important to national uniformity in patent practice." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled on other grounds*, *Wilton v. Seven Falls, Inc.*, 515 U.S. 277 (1995).  Federal Circuit precedent "favors the first-to-file rule in the absence of circumstances making it unjust or inefficient to permit a first-filed action to proceed to judgment." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005) (internal quotation omitted).  Similarly, the Fifth Circuit "adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

**1.     There is Substantial Overlap Between the Delaware and Texas Actions**

In applying the first-to-file rule, "the threshold inquiry . . . is whether 'the issues raised' in both suits 'substantially overlap.'" *Rosas v. Raytheon Aircraft Co.*, C.A. No. 5:06-cv-184, 2007 U.S. Dist. LEXIS 37173, at *4 (S.D. Tex. May 21, 2007) (quoting *Syntek*, 121 F.3d at 950-51).  For example, in *AmberWave Systems Corp. v. Intel Corp.*, C.A. No. 2:05-CV-321, 2005 WL 2861476 (E.D. Tex. Nov. 1, 2005) (Davis, D.J.), Intel filed a declaratory judgment action against AmberWave in Delaware on a patent directed to "a method constructing inverters and other circuits using strained semiconductor transistors." *Id.* at *1.  Two months later,

AmberWave filed an action in this Court against Intel alleging infringement of another patent

directed to a "different scientific field[] in the same area of technology." *Id.* Judge Davis found

the cases to be "closely related" and ordered transfer, explaining:

> The patents address different scientific aspects, mechanical
> engineering and electrical engineering, of semiconductor
> transistors. Thus the patents do not raise identical issues in the two
> actions, but the subject matter is closely related. Although not
> required for substantial overlap, the same parties are involved in
> both actions. Additionally, the same products are accused in both
> actions.

*Id.* at 2.

Here, transfer is even more compelling because Counts IV and V of LPL's amended

Delaware complaint against CMO specifically address the same patents and infringement issues

that are alleged in this case. (Ex. E ¶¶ 50-62.)

Even a cursory review of the Delaware and Texas complaints shows that the cases focus

on similar technology and products – and therefore will require similar document discovery,

witness testimony, and expert reports. The Delaware complaint, for example, describes "[t]he

technology at issue" as LCD modules "incorporated into at least LCD portable computers, LCD

computer monitors, and LCD televisions." (*Id.* ¶ 4.) The Texas complaint, in turn, describes

CMO as "the world's leading producer" of LCD technology "used in notebook and desktop

computers and televisions." (CMO Compl. ¶ 5.) Additionally, in Delaware, LPL alleges CMO

"manufactures LCD products in Taiwan and China and . . . directs th[e] products to the United

States . . . ." (Ex. E ¶ 6.) In Texas, CMO alleges LPL "designs, manufactures, and distributes"

LCD modules and "has placed TFT-LCD panels and LCD modules into the stream of

commerce." (CMO Compl. ¶ 5.)

Significantly, there is direct overlap here. Both this case and the Delaware action include mirror action claims involving identical patents. In both actions, the same four patents are in dispute and raise the same issues of claim interpretation, infringement, and validity. Furthermore, these four patents are directed to the same LCD technology, scientific aspects, and engineering principles as other patents pending in the Delaware action. For example, the '923 patent asserted here and the '002 patent asserted in Delaware are both directed to providing electrostatic discharge protection to thin-film transistors in an LCD array. Similarly, the '786 patent here and '160 patent in Delaware are both directed to signal driving circuitry for LCD modules. Likewise, the '926 patent here and the '781 patent in Delaware are both directed to the assembly of LCD modules. Consequently, there is direct overlap of issues for the CMO patents in Delaware and the present action, and substantial overlap of technology, including scientific aspects and engineering principles for CMO's patents and the other patents asserted in Delaware.

As a result, there is substantial overlap in the evidence that will be presented in these cases, which involve the same patents and products (*e.g.*, LCD modules used in monitors and televisions). Consider, for example, electronic mask files, which depict structures included in LCD backplanes. These structures are relevant to at least CMO's '923 patent, AUO's '629 patent, and LPL's '737, '449, '002, and '321 patents. Similarly, manufacturing process specifications, which show the steps used in manufacturing LCD backplanes, will be relevant to at least CMO's '923 patent, AUO's '629 patent, and LPL's '737 and '321 patents. Further, various engineering specifications illustrating structures, interfaces, and assemblies will be relevant to each of the parties' patents. The same jury in Delaware should review and analyze all of these complex engineering and manufacturing documents.

Furthermore, common evidence from the same third-party distributors and retailers will be relevant to the issue of inducement in both cases. Common party testimony will also be relevant in both cases, particularly testimony from individuals familiar with the sales, advertising, and marketing of LCD module products.

## 2.    The Delaware Action was Filed First

Chronologically, there is no question that the Delaware action was first filed. As shown above, the Delaware action was filed on December 1, 2006. CMO did not file this action until May 4, 2007. Then, on May 22, LPL filed an amended Delaware complaint to add new Counts IV and V seeking declaratory relief as to the patents asserted by CMO here. Additionally, the already transferred Wisconsin action – which includes patents asserted by AUO (against LPL) and by LPL (against CMO and AUO) – was filed before this action.

Thus, the Delaware action is the first filed because it was the first to bring LPL and CMO into court and because, following Judge Shabaz's decision, the Delaware court will be in a position to address all the parties and issues raised in this action. As Judge Shabaz explained, "the first filed rule is applicable regardless of whether the first action was an action for declaratory relief and regardless of the time period by which the first filed case proceeded the second." 2007 U.S. Dist. LEXIS 39340, at *4-5 (Ex. C) (citing *Versus Tech., Inc. v. Hillenbrand Indus., Inc.*, C.A. No. 1:04-CV-168, 2004 WL 3457629 (W.D. Mich. 2004); *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421 (2d Cir. 1965).) "The fact that the Delaware action became a complete mirror image after amendment does not change the analysis." *Id.* at *5.

Indeed, "several courts have held that a subsequently-filed amendment is prior to an earlier complaint where the amendment is made in the first-filed action." *Versus Tech.*, 2004

WL 3457629, at *6-7 (collecting cases).[4] *See generally SAES Getters S.P.A. v. Aeronex, Inc.,* 219 F. Supp. 2d 1081, 1090 (S.D. Cal 2002) ("[A] number of courts have concluded that the first-filed forum is the one in which the parties originally were brought, not the one in which the precise issue was first raised.") (citing 8 *Chisum on Patents* § 21.02[4][b]).

In *Versus Technology*, for instance, a 2003 North Carolina lawsuit alleged infringement of two patents. A few months later, one of the North Carolina defendants filed a Michigan action alleging that the North Carolina plaintiffs (and other parties) had infringed three other patents. In response, the North Carolina plaintiff amended its complaint to add declaratory judgment counts relating to the Michigan patents-in-suit. Applying the first-to-file rule, the Michigan court held that declaratory judgment counts in the North Carolina case related back to the initial filing of the complaint and transferred the case. 2004 WL 3457629, at *8.

Similarly, in *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122 (S.D.N.Y. 2003), two parties filed a declaratory judgment action in the Eastern District of Wisconsin seeking a declaration of non-infringement of a patent. The next month, the Wisconsin defendant sued the Wisconsin plaintiffs in New York for alleged infringement of another patent. In response, the Wisconsin plaintiffs amended their complaint to include a declaratory judgment count as to the additional patent. Finding that the Wisconsin amendment related back to the original filing, the Southern District of New York transferred the case under the first-to-file rule because both patents were "directed to mechanically-locking laminate flooring panels." *Id.* at 125-26.

---

[4] "Some courts have relied upon the relation-back doctrine under Fed. R. Civ. P. 15(c) in order to conclude that the amendment was first-filed." 2004 WL 3457629, at *6. "The Second Circuit, and several other courts following its lead, has held that the first-filed rule applies in *any* case, where a plaintiff amends its complaint to add claims raised in a second-filed suit in another district." *Id.* (emphasis in original) (citing *Mattel*, 353 F.2d at 421).

3.    **No Compelling Circumstances Justify Disregarding the First-To-File Rule**

A case found to be substantially similar to an earlier-filed action should be transferred unless it would be "unjust or inefficient" to do so. *Genentech*, 998 F.2d at 938. Factors to be considered include "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.* None of these considerations justifies disregarding the first-to-file rule here.

First, CMO must establish that Texas is a more convenient forum than Delaware. *See Coyle*, 394 F.3d at 1347-48. No such showing can be made. Tellingly, CMO's complaint acknowledges that CMO is a Taiwanese company "having a principal place of business" in Taiwan. (CMO Compl. ¶ 4.) The lack of a close connection is also reflected by the location of the inventors identified on each of the patents asserted here: '786 (Japan), '923 (Canada), '352 (Iowa and California), and '926 (Taiwan). (CMO Compl. Exs. A-D.)

Second, no jurisdictional reasons exist to disregard the first-to-file rule. Neither LPL nor LPLA contest jurisdiction in the District of Delaware. CMO has filed a motion to be dismissed for lack of personal jurisdiction. LPL has opposed this motion and fully expects it to be denied because substantial evidence shows the existence of jurisdiction and CMO itself previously consented to Delaware jurisdiction in another LCD-related infringement case. *See Commissariat à l'Energie Atomique v. Samsung Electronics Co. et al.*, C.A. No. 03-484-MPT.

In any event, "[o]nce the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). Accordingly, jurisdictional arguments raised in the first-filed forum by the

plaintiff in the second-filed suit are of no consequence to the analysis here. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605-06 (5th Cir. 1999); *see also R.J. Reynolds Tobacco Co. v. Star Scientific Inc.*, 169 F. Supp. 2d 452, 455-56 (M.D.N.C. 2001) (rejecting, in a patent infringement case, the plaintiff's invitation in the second-filed suit to decide the jurisdictional arguments the plaintiff raised as a defendant in the first-filed suit). Such issues are reserved for the court where the first-filed suit was filed. *Cadle Co.*, 174 F.3d at 606-07.

The third and fourth factors also do not support declining transfer. Unlike in the District of Delaware, there is no related litigation in the Eastern District of Texas with which this case could be consolidated. Nor is there an issue as to real parties in interest.

**B.    The Interest of Justice Requires Transferring this Action to Delaware**

Even if the Court does not transfer because of plain application of the first-to-file rule, it should exercise its discretion under 28 U.S.C. § 1404(a), which provides: "For convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

**1.    This Action Could Have Been Brought in Delaware**

The first determination is whether this case could have been filed in the judicial district to which transfer is sought. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). A patent infringement action may be brought in any district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A corporate defendant resides in a district where it is subject to personal jurisdiction. *Id.* § 1391(c). Therefore, without doubt, this action could have been brought in the District of Delaware. LPL itself invoked the jurisdiction of the District of Delaware when it filed its action against CMO in December 2006. Furthermore, Judge Shabaz

specifically found "no impediment to personal jurisdiction or venue in Delaware" as to LPL or

LPLA. 2007 U.S. Dist. LEXIS 39340, at *13 (Ex. C).

### 2.    Delaware is the More Efficient Forum

Next, the Court considers "all relevant factors to determine whether or not on balance the

litigation would more conveniently proceed and the interests of just be better served by transfer

to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quotations

omitted). Many of the factors have been addressed above and will not be repeated here. Two

points, however, should be highlighted.

#### a.    Judicial Economy

Allowing this action to proceed separately would result in the very inefficiencies that

transfer is designed to prevent. As discussed above, this action and the Delaware action involve

the same parties, products, and patents. As a result, there will be extensive commonality as to

discovery, motions practice, claims construction, and trial issues.

As Judge Shabaz explained, "[t]he interest of justice clearly disfavors the duplication and

waste which is resulting from the simultaneous prosecution of mirror image patent suits in

different federal courts." 2007 U.S. Dist. LEXIS 39340, at *4 (Ex. C). Similarly, in transferring

a case from this District to the Northern District of California, Judge Davis explained: "In cases

that involve a highly technical subject matter, such as patent litigation, judicial economy may

favor transfer to a court that is already familiar with the issues involved in the case." *Zoltar*

*Satellite Sys. v. LG Electronics Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 735 (E.D. Tex.

2005) (Davis, D.J.). As another court explained:

> Having a single court conduct the Markman hearings for both
> patents will ensure that the court is familiar with all the potential
> overlap (if any) in the claims made by the two patents.
> Furthermore, if the issues related to both patents are presented to

> one court, the parties can raise any issues of invalidity stemming
> from the relationship between the two patents before a court which
> will be well-versed in the technology presented by both patents.
> Thus, by bringing both patent claims before one court, the
> possibility of inconsistent judgments should be substantially
> minimized, if not removed.

*SAES Getters*, 219 F. Supp. 2d at 1092.

### b.    Limited, if any, Deference to CMO's Forum Choice

"When a plaintiff chooses a foreign forum and the cause of action bears little or no

relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight."

*GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (transferring a

patent suit in Virginia brought by a Delaware corporation with its principal place of business in

Georgia against a Delaware corporation with its principal place of business in California).

According to CMO's own complaint, both LPL and CMO are foreign corporations with principal

places of business outside the United States.  (CMO Compl. ¶¶ 4-5.)   Indeed, except for the

caption and a passing reference to "sales offices in California, Texas, North Carolina, and

Illinois" (*id.* ¶ 6), nowhere does CMO's complaint even mention "Texas."

The true basis for jurisdiction is instead seen in the jurisdictional allegations where CMO

alleges LPL and LPLA have "continuous and systematic contacts with this judicial district ***and***

***elsewhere in the United States***." (*Id.* ¶¶ 6, 8; emphasis added.)  Similarly, for each patent-in-suit,

the complaint alleges LPL and LPLA "make, use, offer for sale, sell and/or import [LCD

modules] within this judicial district ***and elsewhere in the United States***." (*E.g.*, *id.* ¶ 12;

emphasis added.)

In other words, this action is based on CMO's allegation that patents relating to LCD

technology are being infringed by LPL and LPLA to sell flat screen products such as televisions

-14-

and computer monitors nationwide.  Such allegations do not provide a meaningful reason to deny

transfer to Delaware.

## CONCLUSION

For the foregoing reasons, the Court should transfer this action to the District of

Delaware.

Respectfully submitted,

JONES & JONES, INC., PC

/s/Franklin Jones, Jr.
Franklin Jones, Jr.
Texas State Bar No. 00000055
201 West Houston Street
Marshall, Texas  75671-1249
Phone:  (903) 938-4395
Facsimile:  (903) 938-3360

Mike C. Miller
Texas State Bar No:  14101100
Law Office of Mike C. Miller, P.C.
201 West Houston Street
Marshall, Texas 75670
Phone:  (903) 938-4395
Facsimile:  (903) 938-3360

*Attorneys for Defendants*
*LG.Philips LCD Co., Ltd. and LG.Philips LCD*
*America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 15th day of June, 2007, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).  In addition to service by the Court's CM/ECF system, Melissa Smith has been served with a copy of this document by hand delivery at the following address:

Melissa Smith
GILLIAM & SMITH
303 South Washington Ave.
Marshall, Texas 75670

/s/Franklin Jones, Jr.
Franklin Jones, Jr.