IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG.PHILIPS LCD CO., LTD.,<br><br>                   Plaintiff,<br><br>v.<br><br>CHI MEI OPTOELECTRONICS CORPORATION; AU OPTRONICS CORPORATION; AU OPTRONICS CORPORATION AMERICA; TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION,<br><br>                   Defendants. | Civil Action No. 06-726-GMS |

**JOINT REPLY BY VIEWSONIC AND TATUNG IN SUPPORT OF THEIR
JOINT MOTION FOR CLARIFICATION**

**I.    INTRODUCTION**

By their joint motion for clarification (D.I. 122)[1], defendant ViewSonic Corporation ("ViewSonic") and defendants Tatung Company and Tatung Company of America (collectively, "Tatung") seek an opportunity to be heard *prior to* the entry of any consolidation order in this litigation – the 06-726 case (the "LPL Action"). LPL *knew* that both ViewSonic and Tatung intended to oppose its motion for consolidation and that ViewSonic and Tatung did file timely oppositions before this Court in the LPL Action. Yet, not only has LPL remained purposely silent before Judge Farnan both before and after the Court issued an order (the "July 19th Order") in the *07-357 case* (the "AUO Action"), but LPL now argues that somehow this Court may no longer review and independently assess LPL's consolidation motion before this Court in

---

[1] Throughout this reply, D.I. __ shall refer to the docket number of documents filed in the instant case number 06-726, unless otherwise indicated.

the LPL Action *and* that this Court should not take ViewSonic and Tatung's timely filed oppositions into account.

After the LPL Action was transferred to Judge Sleet, LPL re-filed its motion to consolidate in *both* the LPL Action and the AUO Action. Since ViewSonic and Tatung are *not* parties to the AUO Action, they had no way of filing an opposition to the motion to consolidate in the AUO Action, and did not know they had to file an opposition before two different judges. There is also no indication in the record that Judge Farnan had (or could have) been aware of ViewSonic and Tatung's oppositions timely filed in the LPL Action on July 20, 2007. (Indeed, when Judge Farnan's consolidation order in the AUO Action was finally docketed on July 23, 2007, His Honor specifically noted in the order that no opposition had been received.)

With little regard for the Federal Rules of Civil Procedure, LPL has turned this litigation into a complicated procedural morass. Here, what began as an action involving *three* patents has now ballooned to *nineteen* patents, due to LPL's filing of multiple "First Amended Complaints" and its "First Amended Replies to Counterclaims and Additional Counterclaims" -- all in reaction to separate lawsuits filed against LPL by defendants AU Optronics Corporation and AU Optronics Corporation America (collectively, "AUO") in Wisconsin and defendant Chi Mei Optoeletronics Corporation ("CMO") in Texas. Now, ViewSonic and Tatung find themselves as innocent bystanders in a flurry of procedural posturing to which neither of them are parties. While ViewSonic and Tatung would clearly suffer prejudice if all of these cases were to be "consolidated" into one (involving *nineteen* patents), LPL has not identified a single hardship if the LPL Action is allowed to remain standing alone.[2]

---

[2] Each of the "efficiencies" identified by LPL in its Opposition are already addressed by having both the LPL Action and the AUO Action monitored before this Court, so this Court may from time to time, as needs arise, help coordinate discovery by the common parties in both cases.

2

LPL's Motion To Consolidate remains pending in this action, and ViewSonic and Tatung seek guidance on the Court's consideration of their timely submitted opposition to the motion, and, in addition, the potential impact of the July 19th Order on this Court's decision in light of the various additional counterclaims recently filed by LPL after the July 19th Order.

Under the circumstances, ViewSonic and Tatung urge this Court to rule on LPL's pending Motion to Consolidate (D.I. 102) *upon full consideration of the Oppositions timely submitted by ViewSonic and Tatung* (D.I. 115, 116), and to deny LPL's Motion to Consolidate (D.I. 102).

II.    **BACKGROUND**

ViewSonic and Tatung hereby submit the following facts to correct the alleged "factual account" set forth in LPL's Answering Brief in Opposition to ViewSonic's and Tatung's Joint Motion for Clarification (D.I. 130).

1) LPL originally filed a Joint Motion To Consolidate on June 26, 2007 (D.I. 92, D.I. 83 C.A. 07-357) but then withdrew it and re-filed it in both the LPL Action and the AUO Action on July 6, 2007 *after* the instant LPL action was transferred to Judge Sleet. (D.I. 102, D.I. 90 C.A. No. 07-357)

2) ViewSonic and Tatung's counsel were served with LPL's re-filed Joint Motion to Consolidate – but only in the LPL Action, and not in the AUO Action. ViewSonic and Tatung are not parties to the AUO Action, nor do they receive electronic notifications

---

ViewSonic and Tatung contend, however, that by doing more, as LPL now requests (*i.e.*, consolidating all of these actions for all purposes), ViewSonic and Tatung would unnecessarily be dragged into many matters affecting the sixteen (16) patents as to which they are not involved, in both written and oral discovery relating to both fact and expert witnesses.

generated by that case.[3] ViewSonic and Tatung only learned of the July 19th Order regarding consolidation *after* receiving an email from LPL's counsel referring to the Order when discussing an unrelated filing in the AUO Action *on July 23, 2007*. ViewSonic and Tatung were never served with the July 19th Order.

3) LPL and AUO's Joint Motion To Consolidate in the instant LPL Action, Case No. 06-726, remains pending before this Court. (D.I. 102)

4) Pursuant to the District of Delaware Local Rules, oppositions to LPL's Joint Motion to Consolidate filed in the LPL Action were not due until July 20; however, unbeknownst to ViewSonic and Tatung, the July 19th Order in the AUO Action was signed on July 19.

5) Tatung timely filed its opposition on July 20 in the LPL Action (the only case to which ViewSonic and Tatung were parties) and ViewSonic joined the opposition later that same day. As of July 20 (and for several days thereafter), ViewSonic and Tatung still had no knowledge that Judge Farnan had already signed an order approving the request for consolidation on July 19.

6) On July 23, 2007, ViewSonic and Tatung were surprised when they were notified of the July 19th Order from LPL's counsel – knowing that the Court could not have considered the timely filed opposition by ViewSonic and Tatung. In fact, the July 19th Order in the AUO Action specifically noted that "to date, the Court has not received an opposition to the Joint Motion to Consolidate[.]" (D.I. 100 C.A. No. 07-357)

7) After the July 19th Order was docketed in the AUO Action on July 23, 2007, only AUO and LPL received notice thereof by the CM/ECF system. The Order was never docketed

---

[3] In addition, as ViewSonic and Tatung were not parties to the AUO Action, CM/ECF would not permit them to file pleadings or motions in that proceeding.

in the instant LPL Action, and ViewSonic and Tatung only learned of the July 19th Order when LPL's counsel mentioned it in an email regarding another filing.

8) ViewSonic's and Tatung's previously filed motions to strike and dismiss raised serious and legitimate concerns, including whether LPL may file *multiple* "First Amended" complaints without prior leave of Court. ViewSonic and Tatung's motions were necessitated by the multiple, confusing pleadings LPL filed in April and May -- not just LPL's original complaint filed in December. (D.I. 29, 54) There is simply no merit to LPL's accusation that these timely filed motions were for delay purposes.

9) LPL has apparently filed *multiple* "First Amended" complaints and Replies with Additional Counterclaims *without prior leave of this Court* as a tactical response to AUO's lawsuit in Wisconsin (the AUO Action) and CMO's lawsuit in Texas (the "CMO Action"). (D.I. 29, 54, 92, 124, 125) ViewSonic and Tatung are not parties to these separate actions.

10) Since entry of the Order by Judge Farnan, LPL has purported to assert 3 additional patents against CMO and AUO. (D.I. 124) LPL did so in reply to AUO's counterclaims asserted in both the AUO Action and CMO Action – yet another novel pleading invention. (D.I. 124) LPL also seeks to transfer the CMO action to this district, relying in part on the July 19th Order.

11) If the CMO Action is transferred and consolidated with the present case (together with the AUO Action), there will be an additional sixteen patents at issue – with ViewSonic and Tatung only involved in three (3) of the nineteen (19) patents.

## III. ARGUMENT

### A. ViewSonic and Tatung are Entitled to Relief Whether Their Joint Motion is Treated as a Motion for Clarification or a Motion for Reconsideration.

ViewSonic and Tatung seek only that to which they are entitled – to have their timely filed oppositions considered by the Court. Since LPL does not dispute that ViewSonic and Tatung's oppositions were not considered by Judge Farnan, it is curious, to say the least, that LPL is raising form over substance to oppose the relief reasonably sought in this circumstance.

LPL seeks to call the pending motion a motion for reconsideration, but LPL's argument is simply a play on words. ViewSonic and Tatung filed their joint motion as a motion for clarification, in part, because LPL's Joint Motion To Consolidate is *still pending* before Judge Sleet, because there has been no indication whether the Court was aware of the July 19th Order, and because the procedural impact of the Order remains unclear under these circumstances. Such relief is appropriate in a motion for clarification.

In any event, whether through a motion for reconsideration or clarification, a court has the discretion to amend or modify an order at any time. Under either procedure, ViewSonic and Tatung satisfy the threshold requirements for the relief sought hereby.

   1. <u>ViewSonic And Tatung Do Not Seek To Rehash Arguments But To Have Their Timely Oppositions Duly Considered.</u>

The purpose of the instant Motion is not to rehash arguments, but to ensure that ViewSonic and Tatung's timely oppositions are heard and duly considered. While motions for reconsideration are granted sparingly to prevent parties from "rehash[ing] arguments already briefed[,] . . . a court should reconsider a prior decision if it overlooked facts or precedent that reasonably would have altered the result." *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2006 WL 2724882, *3 (D. Del). Thus, a motion for reconsideration may be granted "if

6

the moving party shows: (1) an intervening change in the controlling law; (2) *the availability of new evidence that was not available when the court issued its order*; or (3) *the need to correct a manifest injustice.*" *Id.* (emphasis added).

Here, ViewSonic and Tatung filed timely oppositions to the Joint Motion to Consolidate, presenting facts and arguments that should have been considered *prior to* the entry of the July 19th Order. ViewSonic and Tatung respectfully submit that, had Judge Farnan had an opportunity to consider their opposition, the Court likely would have changed its ruling on LPL's motion. Moreover, since the July 19th Order, LPL has continued to file several pleadings that have significantly changed the procedural posture and substantive scope of the disputes between the parties in this action. By this motion, ViewSonic and Tatung seek only to have the Court consider their oppositions *and* the facts arising over the past 30 days – not to "rehash" arguments previously considered by the Court.

### 2. LPL's "Sua Sponte" Argument Is A Red-Herring Not Based In Fact Or Law.

LPL attempts to justify its actions by claiming that Judge Farnan acted *sua sponte* in issuing the July 19th Order. LPL's assertion is not supported by the record. From a purely factual standpoint, LPL's excuse fails because Judge Farnan expressly stated that the July 19th Order was based (at least in part) on the fact that no opposition had been filed.

From a legal standpoint, none of the cases LPL cites relating to the court's inherent authority to order consolidation *sua sponte* extend to a situation, as here, where consolidation was raised by one party and the court entered the order prior to considering the timely filed oppositions of the opposing party. Additionally, of course, the express language of the July 19th Order itself suggests that Judge Farnan was *not* acting *sua sponte* in entering the July 19th Order.

Moreover, the present case is clearly distinguishable from the *D'Alessandro* case, which is heavily relied upon by LPL. In *D'Alessandro v. United States of America*, 2005 WL 984352 (D. Del.), a *pro se* plaintiff filed two separate actions *in forma pauperis* alleging that various federal judges had violated his constitutional rights. These were not the first complaints filed by the plaintiff, who had filed a total of 11 complaints in the District of Delaware involving similar claims and defendants.[4] In the order relied upon by LPL, the court concluded that "[t]he two cases filed by Plaintiff clearly involved common questions of law and fact, and consolidation will avoid unnecessary costs and delay" and ordered consolidation *sua sponte*. *Id.* at *1. The Court reached this conclusion on its own accord, without motion from any side.

The *D'Alessandro* case is inapposite and has no bearing in this case. This is not an *in forma pauperis* matter and, in any event, LPL did file a motion to consolidate – representing to the Court that it did not know whether ViewSonic and Tatung would file an opposition. Furthermore, unlike the *D'Alessandro* complaints, the two cases which LPL and AUO now seek to consolidate do not "clearly" involve common questions of law and fact, nor is there any evidence that "consolidation will avoid unnecessary costs and delay." *Id.* at *1.

Thus, whether or not the Court is authorized to consolidate cases *sua sponte* is irrelevant to the disposition of this Motion, particularly since there is no indication that any *sua sponte* consolidation would or should have occurred here.

### 3. This Unusual Circumstance Could Have Been Avoided If LPL Had Adhered To The One Judge Rule.

It is generally understood that consolidation is appropriate only when all of the cases to be consolidated are under the managerial power of one judge. The rationale is simple: every

---

[4] The previous nine complaints had already been dismissed. According to the court, rather than filing appeals in each case, Mr. D'Alessandro would simply file new complaints alleging similar facts and naming similar defendants.

8

judicial officer has administrative power over his or her docket. ViewSonic and Tatung now find themselves in the unusual situation where an order from one judicial officer entered in a case in which they are not parties, has severe consequences for them as defendants (and likely for the presiding judge) in this case. It is for this very reason that the courts adhere to the "one judge" rule in the first place.

In an attempt to defend its clearly unorthodox approach to procedure and its complete disregard for the "one judge rule," LPL cites a case decided by the Ninth Circuit Court of Appeals, *Investor Research Company v. U. S. Dist. Ct. for the Central Dist. of California*, 877 F.2d 777 (9th Cir. 1989), and a case in the District of Delaware in which Judge Farnan consolidated a case before him into a case before Judge Robinson. *Walker v. Pepsi-Cola Bottling*, Civ. A. No. 99-748, filed November 4, 1999. These cases are not applicable here and do not support LPL's arguments.

In the Ninth Circuit case, for example, the facts are not addressed in the court's opinion, so it is difficult to determine the precise situation faced by the court. Nevertheless, the Ninth Circuit did not direct the district court to consolidate the cases, but simply to answer the petition for writ of mandamus. *Investor Research Company*, 877 F.2d at 777 (noting, in dicta, the broad discretion available to a district court to consolidate cases pending in its district).

In addition, the *Walker* case presented a very different situation from the present case. In *Walker*, the two pending cases involved identical parties and, apparently, similar issues of fact and law. The defendants moved for consolidation and the plaintiff filed an opposition. After briefing was complete, Judge Farnan ordered the two cases consolidated and established Judge Robinson's case as the lead case. In that case, all parties appeared in each action, all parties had an opportunity to be heard, and (presumably) all parties agreed that Judge Farnan would decide

the issue of consolidation. In this case, of course, ViewSonic and Tatung were not parties to the AUO Action (the action in which the July 19th Order was entered), and neither ViewSonic nor Tatung ever had an opportunity to be heard before the entry of the July 19th Order.

Accordingly, while there may be situations where it is appropriate for cases pending before two judges to be consolidated, this simply is not one of them. ViewSonic and Tatung should have had an opportunity to be heard and thus request that opportunity now.

### B. Consolidation of the Cases at Issue Does Not Promote Efficiency, and LPL's Arguments to the Contrary Should be Rejected.

LPL argues that consolidation is appropriate notwithstanding ViewSonic and Tatung's opposition. Specifically, LPL asserts that the two cases at issue involve common issues of fact and law and that consolidation will promote efficiency. As LPL's recent actions confirm, LPL has sought to manufacture common issues of fact by filing purported claims in this action that are "mirror images" of the claims asserted by AUO and CMO in other districts. These purported "claims" and "counterclaims" were filed by LPL in a transparent attempt to forum shop, and perhaps with the objective of causing the claims to languish in a multi-party, complex litigation involving nineteen patents that focus on different aspects of LCD technology.

In considering the pending Motion, the Court is urged to look past LPL's strategically-manufactured common issues of fact/law, and to assess whether sufficient, actual overlap exists that would outweigh the serious prejudice raised by ViewSonic and Tatung in their timely filed oppositions. As ViewSonic and Tatung have already addressed these arguments in the Opposition to Consolidation (D.I. 115), these issues will be addressed only briefly here.

1.  <u>Any Consolidation Would Dramatically Increase The Inefficiency Of Litigating This Case, By Injecting 16 New Patents And Claims To Which Neither ViewSonic Nor Tatung Are Party.</u>

LPL has not met its heavy burden to justify consolidation, especially in light of recent events within the past 30 days since the July 19th Order was entered.

LPL argues that consolidation is appropriate simply because the patents pending in both actions involve "LCD technology." Obviously, though, there are many different aspects to LCD technology, as pointed out by Tatung in its timely opposition to LPL's motion:

> [A] cursory review and comparison of claim 1 of the original patents-in-suit to claim 1 of several patents from the new AUO patent cluster reveal that: (1) the inventions claimed involve different aspects of LCD technology; (2) there are very few, if any, identical and overlapping claim terms that may require joint construction; and (3) the accused products or processes relating to the 6 (and eventually 10) patents are certain to be different, including LPL's own products/processes which are also at issue in its cross-claims for declaratory relief.

(D.I. 115 at 4-5.)

LPL counters this by saying that ViewSonic and Tatung are focusing on the "differences between patents and claim terms as opposed to the common issues of facts involved." (D.I. 130, at 10.) LPL then proceeds to set forth a long list of conclusory statements that it contends supports consolidation. *Id.* LPL remains curiously silent, however, as to how any efficiency gained by consolidation can overcome the very real burden imposed upon ViewSonic and Tatung by the injection of sixteen (16) new patents with no possible common issues of fact or law as to ViewSonic and Tatung.

While LPL oversimplifies the technology at issue in these nineteen patents, LPL cannot ignore that these patents have different inventors, different issue dates, and, specifically, different technology. For example, the United States Patent and Trademark Office has a system for

classifying each area of technology that is incorporated into every U.S. patent, as reflected on the title page of each patent. "A class generally delineates one technology from another." Overview of the U. S. Patent Classification System (USPC), http://www.uspto.gov/web/offices/opc/documents/overview.pdf. Of the U.S. patent class and subclass technology areas listed on the CMO, LPL and AUO patents, there is only minimal overlap.[5] Moreover, the patents asserted in the LPL, CMO, and AUO Actions have different claims, address different scientific phenomena encountered in LCD technology, involve different products, have different uses, and will require different claims construction, validity, and damages inquiries. In essence, LPL is seeking to conduct at least three different trials in this one single action, in a proceeding where the vast majority of claims would have absolutely nothing to do with ViewSonic or Tatung.

In any event, LPL bears the burden of proving that consolidation is appropriate. *In re Consolidated Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998). The conclusory statements in LPL's opposition are simply insufficient to meet that burden. As noted above, while ViewSonic and Tatung will suffer prejudice if consolidation moves forward, LPL has failed to identify any inconvenience or hardship it will suffer if the actions at issue remain separate.

In fact, consolidation of the AUO Action and this LPL Action is increasingly *inefficient*. At the outset, this case involved three (3) patents, each having been previously litigated between some of the parties. The number of patents involved has now purportedly risen to nineteen (19),

---

[5] Out of the 19 patents, only three technical classifications overlap on three of the 19 patents currently at issue. They are: The '449 patent (LPL) and the '926 patent (CMO) share the 349/149 classification; the '160 patent (AUO) and '786 patent (CMO) share the 345/89 classification; and the '629 patent (AUO) and '274 patent (LPL) share the 257/72 classification.

with none of the claims under the new patents being asserted against ViewSonic or Tatung.[6] ViewSonic and Tatung now find themselves in a situation where they may be forced to participate in seemingly endless discovery, motion practice, and ultimate delays, simply because ViewSonic and Tatung will have absolutely no control when LPL, AUO or CMO will refer a witness or the Court to matters that will (or will not) involve the three patents to which ViewSonic and Tatung are parties. If these matters are consolidated, ViewSonic and Tatung likely will have to pour through the same written, document, and electronic discovery, sit through all oral fact and expert depositions, and attend all hearings, simply because they will never know for sure when something will be raised that may affect the three (3) limited patents that affect them, instead of the sixteen (16) that do not. This is truly a waste of resources.

Alas, LPL's procedural misdirection continues. LPL is currently seeking to transfer the CMO Action from Texas to Delaware, and will most likely seek consolidation of that action as well. Again, none of the claims in the CMO Action involve ViewSonic or Tatung. Even though LPL's motion to transfer remains pending, *LPL has already taken it upon itself to add those pending patents to the instant LPL Action, in the form of a second "First Amended Complaint," even though there is no transfer order in the Texas Action.*

Under the circumstances, it is truly ironic that LPL has accused ViewSonic and Tatung of delay, when it is LPL that has sought to add sixteen (16) patents to this dispute – by procedurally improper means – even as ViewSonic and Tatung seek to limit the scope of this litigation to the original, three (3) patent Complaint filed in December against all named-Defendants.

---

[6] LPL purports to have asserted additional patents against both AUO and CMO in the AUO Action in its reply to AUO's and CMO's counterclaims, further complicating what is already a procedural morass.

Significantly, LPL ultimately acknowledges that consolidation of the AUO Action and the instant LPL Action would not produce more efficient discovery, belying its claim that the facts and issues in these cases share such similarities that they should be consolidated. (D.I. 130) In particular, LPL admits that "technical discovery" will be required to take place between LPL and AUO only, so as to address the patents and claims asserted between LPL and AUO only. (D.I. 130 at 12-13) Presumably, if the Texas Action were to be consolidated as well, additional "separate" tracks would be required as between LPL and CMO and/or AUO with respect to the claims asserted as to them only.

Thus, LPL has not met its heavy burden and consolidation is not warranted in this case.

2. **The Weight Of Legal Authority Does Not Support Consolidation Because There Is A High Likelihood of Jury Confusion.**

As alleged in ViewSonic and Tatung's opening papers, the weight of legal authority does not support consolidation in this circumstance because there will certainly be jury confusion if nineteen patents are permitted to proceed, when only three are asserted against ViewSonic and Tatung. (D.I. 115, 116, 122)

In the present case, even if a "surface" similarity were to be found because the various patents all relate to "LCD technology," a closer examination reveals that consolidation would actually result in the jury having to analyze nineteen different patents involving complicated technology against different defendants entirely. Whereas sixteen of these patents would be asserted against three different groups of defendants, ViewSonic and Tatung would only be affected by the three other patents – not to mention the onslaught of new patents raised by CMO against LPL, and by LPL against AUO and CMO, in reaction to the CMO Action in Texas (which action is not even mentioned in any of LPL's papers). A chart diagramming the current

posture of the case illustrates how confusing a situation LPL has created, without regard to the impact unreasonably imposed on the other defendants. (D.I. 133, Ex. A)

LPL attempts to minimize the true impact of its machinations by twisting the facts and circumstances of a key case relied on by ViewSonic and Tatung that is truly on point. Specifically, *Clopay v. Newell Companies, Inc.*, 527 F.Supp. 733 (D. Del. 1981), is not "inapposite" as LPL argues. The only way in which *Clopay* is "inapposite" is that consolidation in that case actually would have caused less confusion for the jury than any consolidation in this case. If the court had permitted consolidation in *Clopay*, the case would have involved two patents (both of which related to adjustable window shades) and two defendants. The court acknowledged that, on the surface, the two cases appeared to be "quite similar" but nevertheless recognized that the risk of jury confusion mandated that the cases remain separate. *Id.* at 735. Thus, the risk of jury confusion is much greater here than in *Clopay*, and consolidation should not be permitted.[7]

### 3. LPL's Argument That AUO Could Have Asserted Counterclaims In Delaware Is Irrelevant To The Issue Of Consolidation.

In a last ditch effort to defend its conduct, LPL argues that AUO could have asserted the claims raised in the AUO Action as counterclaims in this LPL Action, and therefore, all should be forgiven. LPL's argument is inappropriate and unavailing. It fails to address all the other patents that have been asserted recently by LPL against CMO and AUO – patents that have

---

[7] LPL also cites several District of Delaware cases for the proposition that cases involving different patents may be consolidated. However, ViewSonic and Tatung are not arguing that cases involving patents can never be consolidated. Indeed, there are situations when consolidation may be appropriate based on the facts, parties and patents involved. *See Cedars-Sinai Medical Center v. Revlon, Inc.*, 111 F.R.D. 24 (D. Del. 1986) (consolidation appropriate when cases involved two "closely related" patents and the failure to consolidate may have denied plaintiff its right to a jury trial). This case, however, does not present one of those situations and consolidation is not appropriate under the circumstances present here.

15

absolutely nothing to do with the AUO Action in Wisconsin – and it does not take into account the slew of patents involved in the CMO Action. Furthermore, even if AUO had raised its claims as a counterclaim here, instead of filing a new complaint in the District of Wisconsin, there is no reason to believe that ViewSonic and Tatung would not have sought, and the Court would not have ordered, separate trials pursuant to Fed. R. Civ. P. 42(b). Thus, LPL's argument that AUO "could have asserted" a counterclaim is without merit on the issue of consolidation.

Finally, and to be clear, ViewSonic and Tatung are anxious to have the instant LPL Action resolved in an expeditious manner. It is for that reason that ViewSonic and Tatung have resisted LPL's attempts to muddle and confuse, beyond recognition, the claims asserted against them. For similar reasons, and not for purposes of delay, ViewSonic and Tatung have filed a number of meritorious motions – in an effort to require that LPL clarify its (increasingly confusing) claims. LPL's actions have resulted in a complete procedural hodgepodge, and ViewSonic and Tatung should not have to suffer for LPL's approach to litigation, particularly since AUO and CMO appear to be LPL's primary targets.

## IV. CONCLUSION

For the foregoing reasons, and for the reasons set forth in the moving papers, defendants ViewSonic and Tatung respectfully request that this Court clarify the procedural impact of the Order docketed by Judge Farnan in the AUO Action on July 23, 2007, and consider the oppositions filed by ViewSonic and Tatung before ruling on the Joint Motion to Consolidate still pending in the instant case.

/s/ Thomas H. Kovach
Edmond D. Johnson (DE Bar #2257)
Thomas H. Kovach (DE Bar #3964)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P. O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6539
johnsone@pepperlaw.com
kovacht@pepperlaw.com

-And-

John N. Zarian
Samia E. McCall
Matthew D. Thayne
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, ID 83702
(208) 389-9000

Attorneys for Defendant ViewSonic Corporation

August 27, 2007

/s/ Jennifer M. Becnel-Guzzo
William E. Manning (DE Bar # 697)
Jennifer M. Becnel-Guzzo (DE Bar #4492)
BUCHANAN INGERSOLL & ROONEY PC
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801
(302) 552-4200
william.manning@bipc.com
jennifer.becnelguzzo@bipc.com

-And-

Bryan J. Sinclair
Karineh Khachatourian
Jeffrey M. Ratinoff
BUCHANAN INGERSOLL & ROONEY PC
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065-1418
(650) 622-2300

Attorneys for Defendants Tatung Company and Tatung Company of America