### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG DISPLAY CO., LTD.,<br><br>                   Plaintiff,<br><br>v.<br><br>CHI MEI OPTOELECTRONICS<br>CORPORATION, et al.<br><br>                   Defendants. | Civil Action No. 06-726 (JJF)<br>Civil Action No. 07-357 (JJF)<br><br>**CONSOLIDATED CASES** |

### PLAINTIFF LG DISPLAY CO., LTD.'S NOTICE
### OF RULE 30(b)(6) DEPOSITION OF AU OPTRONICS CORPORATION

PLEASE TAKE NOTICE that Plaintiff LG Display Co., Ltd. ("LG Display") will take the deposition of Defendant AU Optronics Corporation ("AUO"), pursuant to Fed. R. Civ. P. 30(b)(6), on June 2, 2008, at 9:00 a.m. or on another mutually acceptable date. The deposition will take place at The Bayard Firm, 222 Delaware Avenue, Suite 900, Wilmington, DE 19801, or at another location acceptable to all parties. The deposition will be taken before a notary public or court reporter, duly authorized to administer oaths and transcribe the testimony of the deponent(s). The deposition will be videotaped and will continue from day to day until completed or adjourned or as authorized by the Court or stipulated by the parties. The subjects covered in the deposition will include, but are not limited to, the subjects listed on Attachment A to this Notice.

Pursuant to Fed. R. Civ. P. 30(b)(6), AUO is required to designate one or more persons to testify at the deposition as to the matters and information known or reasonably available to AUO.

March 25, 2008

BAYARD, P.A.

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com

*Attorneys for Plaintiff LG Display Co., Ltd.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

## **ATTACHMENT A: DEPOSITION TOPICS**

### Definitions

For purposes of this Attachment, AU Optronics Corporation should use the following definitions for the terms used herein. All Deposition Topics and corresponding definitions of terms are for purposes of discovery only, and not to be construed as limiting or reflecting LG Display's position in this case regarding claim construction or any other issue. LG Display specifically reserves the right to use different terms, or to assert different meanings, for all purposes in this case (including, for example, with respect to claim construction, infringement analysis, and validity analysis).

A. "LG Display" means LG Display Co., Ltd., formerly known as LG.Philips LCD Co., Ltd., and all persons or entities acting on its behalf.

B. "LGDA" means LG Display America, Inc., formerly known as LG.Philips LCD America, Inc., and all persons or entities acting on its behalf.

C. "AUO," "you," and "your" means AU Optronics Corporation, and all persons or entities acting or purporting to act on AU Optronics Corporation's behalf, and any Affiliates (as that term is defined herein) of AU Optronics Corporation (including, for example, AU Optronics Corporation America).

D. "AUOA" means AU Optronics Corporation America, and all persons or entities acting or purporting to act on AU Optronics Corporation America's behalf, and any Affiliates (as that term is defined herein) of AU Optronics Corporation America.

E. "Affiliate(s)" means any partnerships, parents, subsidiaries, and divisions, and any corporation or other entity that controls, is controlled by, or is under common control with the identified corporation or entity.

1

F.  "AUO Products" means all LCD modules and LCD panels made, shipped, imported, or sold by or for AUO and/or AUOA since December 1, 2000.

G.  "LCD display product" means any device that contains an LCD module. An LCD computer monitor, LCD television, laptop computer, and any telephone or other portable or handheld product incorporating an LCD module are examples of LCD display products. This includes all such devices, regardless of brand name.

H.  "LCD module" means an LCD display component that includes, inter alia, an LCD panel, a backlight unit, and driver ICs.

I.  "LCD panel" means an LCD display component that includes a TFT array and color filter with liquid crystal material between them.

J.  "TFT substrate" means the substrate that contains one or more TFT arrays.

K.  "TFT array" means a thin-film-transistor array, electrodes, wiring, and pads used to drive and control the liquid crystal material in an LCD display product.

L.  "Color Filter substrate" means the substrate that contains one or more color filters used in an LCD panel.

M.  "Brand" means any brand name or company whose name, mark, or logo appears on LCD Display products, including, for example, Dell, Hewlett-Packard, Apple, and ViewSonic.

N.  "AUO Customer" means any person (including any brand that sells LCD display products) that has, directly or through an intermediary, ordered, received, purchased, approved, imported, and/or used any AUO Products, including LCD display products that contain AUO Products.

O.  "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer, or exchange of information between two or more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery, or otherwise, including, but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements, and other understandings.

P.  The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these deposition topics all information that might otherwise be construed to be outside of their scope.

Q.  "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing, or constituting the referenced subject.

R.  "Document" means all types of documents, electronically stored information, and things embraced within Federal Rule of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, photographs, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions

or statements of policy, lists of persons attending meetings or conferences, reports or summaries of interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, opinions of counsel, records, reports, summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, sound recordings, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and any other data, database, server, or data compilations from which information can be obtained either directly, or, if necessary translated by you through detection devices into a reasonably usable form. The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, products, prototypes, models, and specimens.

  S. "Any" means each and every.

  T. "Used" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

  U. "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

  V. "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

  W. "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

  X. "Person" means any natural person, firm, association, partnership, corporation, joint venture, or other form of legal entity.

  Y. The "'002 Patent" refers to United States Patent No. 5,019,002.

  Z. The "'449 Patent" refers to United States Patent No. 5,825,449.

AA. The "'737 Patent" refers to United States Patent No. 4,624,737.

BB. The "'274 Patent" refers to United States Patent No. 5,905,274.

CC. The "'321 Patent" refers to United States Patent No. 6,815,321.

DD. The "'489 Patent" refers to United States Patent No. 7,176,489.

EE. The "'569 Patent" refers to United States Patent No. 6,664,569.

FF. The "'984 Patent" refers to United States Patent No. 6,803,984.

GG. The "'374 Patent" refers to United States Patent No. 7,218,374.

HH. The "'781 Patent" refers to United States Patent No. 6,976,781.

II. The "'266 Patent" refers to United States Patent No. 5,748,266.

JJ. The "'160 Patent" refers to United States Patent No. 6,778,160.

KK. The "'629 Patent" refers to United States Patent No. 6,689,629.

LL. The "'944 Patent" refers to United States Patent No. 6,734,944.

MM. The "'157 Patent" refers to United States Patent No. 7,125,157.

NN. The "'506 Patent" refers to United States Patent No. 7,090,506.

OO. The "'069 Patent" refers to United States Patent No. 7,101,069.

PP. The "Patents-in-Suit" refers, individually and collectively, to the '002 Patent, the '449 Patent, the '737 Patent, the '274 Patent, the '321 Patent, the '489 Patent, the '569 Patent, the '984 Patent, the '374 Patent, the '781 Patent, the '266 Patent, the '160 Patent, the '629 Patent, the '944 Patent, the '157 Patent, the '506 Patent, and the '069 Patent.

QQ. "AUO Patents" means, individually and collectively, the '944 Patent, the '069 Patent, the '157 Patent, the '160 Patent, the '266 Patent, the '506 Patent, the '629 Patent, and/or the '781 Patent.

RR. "Foreign Counterparts of the AUO Patents" means any patent applications and issued patents filed or issued anywhere in the world that claim priority in whole or in part to the AUO Patents.

SS. "LG Display Patents" means, individually and collectively, the '002 Patent, the '449 Patent, the '737 Patent, the '274 Patent, the '321 Patent, the '489 Patent, the '569 Patent, the '984 Patent, and/or the '374 Patent.

TT. "Part Number" means the name(s) and alpha-numeric identifier(s) by which a part or product, for example an LCD display, LCD module, LCD panel, or components thereof, in general, are bought, sold, or identified (including, for example, internally by AUO or for sales and marketing purposes), and/or by AUO Customers).

UU. The use of the singular form of any word includes the plural and vice versa.

<u>Deposition Topics</u>

Topics to be covered in the deposition include:

1. The identity of AUO Products, including corresponding product designations, model numbers, and Part Numbers, and the meaning or significance of each alpha-numeric character or identifier used with respect to AUO Products.

2. Facts and documents relevant to the inventorship, conception and reduction to practice of the AUO Patents, including all communications with, to or from, and documents prepared by, inventors or possible inventors or any person at any time named as an inventor of the AUO Patents or the Foreign Counterparts of the AUO Patents, concerning such patents or any technology or invention related to such patents.

3. All aspects of the prosecution of the AUO Patents and Foreign Counterparts of the AUO Patents, including, but not limited to, any considerations of what to include in the application

6

or prosecution documents; drafts of the applications; the naming of inventors or any amendment thereof; the preparation of the patent application; any amendments; any responses to Patent Office actions; any discussions with the United States Patent and Trademark Office; any search, study, investigation, review, opinion or analysis concerning the validity, enforceability, invalidity or unenforceability of the patents; all patents, references, devices, and/or other potential prior art reviewed, consulted, considered, or disclosed including, without limitation, any prior art or potential prior art cited by or to the United States Patent and Trademark Office or foreign patent office; all communications relating to prior art or potential prior art; and any United States or foreign litigation, interference, reexamination, reissue, cancellation proceeding, nullity proceeding, opposition proceeding, or other ex parte or inter parties proceeding involving or relating to the AUO Patents or the Foreign Counterparts of the AUO Patents, or relating to the products, devices, services, or activities covered by the AUO Patents.

4.      AUO's acquisition and ownership of the AUO Patents, including the chain of title of the AUO Patents before and since AUO's ownership (i.e., date of transfer, the terms of the transfer of title, consideration paid, parties participating in transfer, and any relevant agreements or transactions), and documents and information exchanged with any third party relating to the AUO Patents concerning validity or valuation of the AUO Patents, ownership and/or assignments or transfers of interest.

5.      All communications between AUO and any person concerning the AUO Patents (whether individually or as part of a portfolio), the identity and job descriptions of participants in such communications or meetings, the timing of such communications, and the substance of issues discussed or addressed (for example, agreements, contracts, assignments or licenses).

6. As to both LG Display and AUO, all facts relevant to notice, actual and constructive, of each of the Patents-in-Suit, including, but not limited to, the date of your first actual notice or awareness of each of the LG Display Patents and from what sources, and any patent searches and/or patent applications by or for you that included or listed any of the Patents-in-Suit.

7. The design and development of AUO Products, including, but not limited to, products accused of infringing one or more claims of the LG Display Patents and all reasonably similar products as well as AUO Products that practice one or more claims of the AUO Patents, including TFT arrays, TFT substrates, Color Filter substrates, backlight units, and modules.

8. The procedures, methods, materials and equipment used to manufacture AUO Products, including substrate manufacture (e.g., TFT and/or Color Filter) and cell assembly.

9. Testing, analysis, and/or evaluation concerning performance, produceability, operation, yield, reliability, fault, or quality control, of AUO Products, including components or structures of TFT arrays and LCD panels.

10. As to all products accused of infringing one or more claims of any LG Display Patents, including all products that could be considered reasonably similar to such accused products, the designs, structures, procedures, process conditions, equipment used, materials, functions, operation, absence, use, and/or purpose of the following with respect to your products and manufacturing:

    (a) Electrostatic discharge protection, including:

        (i) structures or components on a TFT substrate or LCD panel;

        (ii) manufacturing process steps that relate to electrostatic charge or discharge; and

        (iii) equipment, environmental conditions or procedures that relate to reducing electrostatic charge or discharge;

8

    (b)    TFT substrate design and manufacture, including:

        (i)    procedures, process conditions and materials used for the deposition and patterning of each layer;

        (ii)    design and measurement of component performance (e.g., threshold voltage, capacitance values), material characteristics (e.g., resistivity) and pattern parameters (e.g., thickness, width, length, shape); and

        (iii)    design and identification of components, marks, patterns, and layers depicted in mask files;

    (c)    Cell assembly, including:

        (i)    applying, dispensing and curing sealant;

        (ii)    applying, dispensing, or injecting liquid crystal material;

        (iii)    aligning, joining and cutting TFT and Color Filter substrates; and

        (iv)    production line equipment layout for all fabrication plants.

11.    As to all AUO Products that practice one or more claims of the AUO Patents, the design and operation of each component within that product that corresponds with the respective element of the practiced claims.

12.    Offers to sell, sales, offers to purchase, purchases or other transactions relating to AUO Products that have been and/or could have been imported, sold, offered for sale, and/or shipped in or to the U.S., in whole or in part, separately or as part of LCD display products, and relevant documents.

13.    All AUO Customers, Brands, distributors, channels, and networks through which AUO Products, separately or as part of LCD display products, have, either directly or indirectly, been marketed, shipped, imported, transferred, sold, and/or distributed, and relevant documents.

14.    All AUO Customers (including Brands that use AUO Products) that have used, ordered, purchased, or approved for use AUO Products, including the identity of all such customers and Brands, any contracts, agreements, or contractual or business arrangements between

you and such entities, the models and quantities of your products offered, sold, or supplied to or for each customer and Brand, and relevant documents.

15. All communications between or among AUO, AUOA, and AUO Customers (including Brands that use AUO Products) concerning LCD modules, LCD panels or LCD display products including, without limitation, agreements, contracts, business arrangements, meetings, facility audits, negotiations, product orders, product shipments and correspondence.

16. AUO's knowledge of and conduct regarding the U.S. market and North American market for LCD display products, LCD modules, LCD panels or AUO Products including, for example, the extent to which AUO's Products have been and/or could have been imported and/or sold in the U.S., and information exchanged in communications with AUO Customers (including Brands that use AUO Products) or potential customers.

17. AUO's communications with and/or participation in DisplaySearch, the Standard Panels Working Group (SPWG), the Panel Standardization Working Group (PSWG), and similar organizations, concerning the importation, manufacture, distribution, marketing, advertising, purchase or sale of any LCD display products, LCD modules, LCD panels or AUO Products.

18. The extent to which AUO Products can be lawfully imported or sold in the U.S., including legal and regulatory requirements that apply, which AUO Products comply, and communications within AUO, or with any United States government or regulatory agency or department, concerning United States requirements, regulations, and laws applicable to AUO Products.

19. Your worldwide sales or shipments of AUO Products to any persons, including the actual and estimated amount of revenue and profit you have derived from sales or shipments apportionable to the United States, by customer, year, and product or product type.

20. Your overall organizational structure, including, but not limited to, with respect to the structure of your Intellectual Property department or division, and the employees, teams, divisions, units, and departments involved in the research, design, manufacture, marketing, and sale of AUO Products, including the allocation of their functions and responsibilities for specific products, customers, and geographic areas, and all persons involved in the development, acquisition, licensing, and protection of intellectual property.

21. The relationship between AUO and AUOA, including, but not limited to, AUO's ownership interest in AUOA since its inception, and the nature of transactions, support, marketing, and business between AUO and AUOA, including with respect to importing, marketing, selling, and/or delivering AUO Products in the U.S.

22. Any subsidiaries, office locations, places of business, third party service facilities or providers (including facilities, partners, agents, or contractors that service, repair, refurbish, rebuild, and/or reassemble your products), employees, agents, contractors, or representatives that AUO has, has had, or has contracted with in the U.S., and the identity, role, location, responsibilities, and activities of each.

23. All facts, including price quotes or negotiations, or other communications, documents, and discussions, concerning your efforts to offer and promote AUO Products to AUO Customers or potential customers (including Brands that use AUO Products); your efforts or plans to build or expand relationships with and/or to increase sales of products to AUO Customers or potential customers (including Brands that use AUO products); and any awards or recognition given to AUO by any AUO Customer (including any Brand that uses AUO Products).

24. The ways that AUO and AUOA develop, support, and interact with AUO Customers (including Brands that use AUO Products) that import or sell LCD display products in

11

the U.S., including all contracts, meetings, presentations to such companies in the U.S. or abroad, teleconferences with such companies, service and support visits to such companies, and sales-related meetings and discussions with such companies, as well as who participates in such events and how often.

25. All AUO Customers (including Brands that use AUO Products), and transactions with AUO Customers, concerning offers to sell, orders, sales, shipments, and imports of AUO Products, either directly or indirectly, each month since December 1, 2000.

26. For each AUO Product, the quantity made, offered for sale, sold, and shipped by or for you, either directly or indirectly, each month since December 1, 2000, as to each AUO Customer, and all related pricing information.

27. Facts concerning any lost profits and reasonable royalty sought by AUO or AUOA, and the hypothetical negotiation applicable to the AUO Patents and LG Display Patents, including all facts concerning the *Georgia Pacific* factors.

28. All agreements concerning the Patents-in-Suit, including, but not limited to, technology transfer agreements, settlement agreements, covenants not to sue, contracts, assignments, and licenses executed, sold, negotiated, requested or offered by or to AUO and all efforts to enforce, negotiate, license, transfer, or sell any right, title or interest concerning the AUO Patents (whether individually or as part of a portfolio), including AUO's knowledge of products marked under the AUO Patents.

29. All agreements concerning LCD modules, LCD panels, LCD-related manufacturing or LCD technology, including, but not limited to, technology transfer agreements, settlement agreements, covenants not to sue, contracts, assignments, and licenses executed, sold, negotiated, requested or offered by or to AUO and/or AUOA.

30. All former, current, and proposed AUO policies, practices or strategies concerning the licensing or valuation of patents, and all relevant factors that AUO considers when negotiating license agreements or attempting to determine the value of patents.

31. The types and categories of documents, reports, forecasts, and projections that AUO receives or has received, creates or has created, generates or has generated, maintains or has maintained, including the computer databases or document management systems in which such documents are located, concerning AUO Customers and/or the manufacturing, marketing, advertising, importation, distribution, purchase, sale, offer for sale, and/or profitability of AUO Products.

32. Any belief by AUO that its products do not infringe any claim of the LG Display Patents, including, but not limited to, all attempts by or for you to obtain and rely on any advice of counsel, undertake any investigation or analysis, and change or consider any changes as to the design, manufacturing, sale, or assembly of AUO Products after learning of the LG Display Patents.

33. Your contentions concerning whether you are infringing any claim of the LG Display Patents, whether directly, under the doctrine of equivalents, or otherwise, including the entire factual basis for such contentions and all documents supporting such contentions.

34. Your contentions concerning the validity and enforceability of any claim of the LG Display Patents, including the entire factual basis for such contentions and all documents supporting such contentions.

35. The entire factual basis for each of the affirmative defenses and any other defenses asserted by you in this lawsuit, and each of your counterclaim allegations, including, for example,

all facts and documents that may support or refute each of your affirmative defenses and counterclaim allegations.

36.  The efforts you took to collect and produce relevant information and documents, and to prepare your responses to LG Display's interrogatories and requests for production in this case, including the locations and sources of responsive information and documents (including electronically stored information), document retention and document destruction policies, procedures, manuals or guidelines applicable to AUO, and steps taken to locate and produce relevant information, documents, and electronically stored information, and by whom.

DC:50531552.3

# CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on March 25, 2008, he served the foregoing documents by email and by hand upon the following counsel:

Philip A. Rovner
Dave E. Moore
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE  19899-0951

Karen L. Pascale
John W. Shaw
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19899-0391

The undersigned counsel further certifies that, on March 25, 2008, he served the foregoing documents by email and by U.S. Mail upon the following counsel:

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190

Vincent K. Yip
Peter J. Wied
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA   90071

Ron E. Shulman, Esquire
Julie Holloway, Esquire
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304-1050

M. Craig Tyler, Esquire
Brian D. Range, Esquire
WILSON SONSINI GOODRICH & ROSATI
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497

/s/ Richard D. Kirk, (rk0922)
Richard D. Kirk

656846-1