**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

LG DISPLAY CO., LTD.,

               Plaintiff,

    v.

CHI MEI OPTOELECTRONICS
CORPORATION, et al.

               Defendants.

Civil Action No.  06-726 (JJF)
Civil Action No.  07-357 (JJF)

**CONSOLIDATED CASES**

## PLAINTIFF LG DISPLAY CO., LTD.'S NOTICE OF RULE 30(b)(6) DEPOSITION OF CHI MEI OPTOELECTRONICS CORPORATION

PLEASE TAKE NOTICE that Plaintiff LG Display Co., Ltd. ("LG Display") will take the deposition of Defendant Chi Mei Optoelectronics Corporation ("CMO"), pursuant to Fed. R. Civ. P. 30(b)(6), on June 3, 2008, at 9:00 a.m. or on another mutually acceptable date. The deposition will take place at The Bayard Firm, 222 Delaware Avenue, Suite 900, Wilmington, DE 19801, or at another location acceptable to all parties. The deposition will be taken before a notary public or court reporter, duly authorized to administer oaths and transcribe the testimony of the deponent(s). The deposition will be videotaped and will continue from day to day until completed or adjourned or as authorized by the Court or stipulated by the parties. The subjects covered in the deposition will include, but are not limited to, the subjects listed on Attachment A to this Notice.

Pursuant to Fed. R. Civ. P. 30(b)(6), CMO is required to designate one or more persons to testify at the deposition as to the matters and information known or reasonably available to CMO.

March 25, 2008

BAYARD, P.A.

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardfirm.com
astitzer@bayardfirm.com

*Attorneys for Plaintiff LG Display Co., Ltd.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500

## ATTACHMENT A: DEPOSITION TOPICS

### Definitions

For purposes of this Attachment, Chi Mei Optoelectronics Corporation should use the following definitions for the terms used herein. All Deposition Topics and corresponding definitions of terms are for purposes of discovery only, and not to be construed as limiting or reflecting LG Display's position in this case regarding claim construction or any other issue. LG Display specifically reserves the right to use different terms, or to assert different meanings, for all purposes in this case (including, for example, with respect to claim construction, infringement analysis, and validity analysis).

A.      "LG Display" means LG Display Co., Ltd., formerly known as LG.Philips LCD Co., Ltd., and all persons or entities acting on its behalf.

B.      "LGDA" means LG Display America, Inc., formerly known as LG.Philips LCD America, Inc., and all persons or entities acting on its behalf.

C.      "CMO," "you," and "your" means Chi Mei Optoelectronics Corporation, and all persons or entities acting or purporting to act on Chi Mei Optoelectronics Corporation's behalf, and any Affiliates (as that term is defined herein) of Chi Mei Optoelectronics Corporation (including, for example, Chi Mei Optoelectronics USA, Inc.).

D.      "CMO USA" means Chi Mei Optoelectronics USA, Inc., and all persons or entities acting or purporting to act on Chi Mei Optoelectronics USA, Inc.'s behalf, and any Affiliates (as that term is defined herein) of Chi Mei Optoelectronics USA, Inc.

E.      "Affiliate(s)" means any partnerships, parents, subsidiaries, and divisions, and any corporation or other entity that controls, is controlled by, or is under common control with the identified corporation or entity.

F.    "CMO Products" means all LCD modules and LCD panels made, shipped, imported, or sold by or for CMO and/or CMO USA since December 1, 2000.

G.    "LCD display product" means any device that contains an LCD module. An LCD computer monitor, LCD television, laptop computer, and any telephone or other portable or handheld product incorporating an LCD module are examples of LCD display products. This includes all such devices, regardless of brand name.

H.    "LCD module" means an LCD display component that includes, inter alia, an LCD panel, a backlight unit, and driver ICs.

I.    "LCD panel" means an LCD display component that includes a TFT array and color filter with liquid crystal material between them.

J.    "TFT substrate" means the substrate that contains one or more TFT arrays.

K.    "TFT array" means a thin-film-transistor array, electrodes, wiring, and pads used to drive and control the liquid crystal material in an LCD display product.

L.    "Color Filter substrate" means the substrate that contains one or more color filters used in an LCD panel.

M.    "Brand" means any brand name or company whose name, mark, or logo appears on LCD Display products, including, for example, Dell, Hewlett-Packard, Apple, and ViewSonic.

N.    "CMO Customer" means any person (including any brand that sells LCD display products) that has, directly or through an intermediary, ordered, received, purchased, approved, imported, and/or used any CMO Products, including LCD display products that contain CMO Products.

2

O.    "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer, or exchange of information between two or more persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery, or otherwise, including, but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements, and other understandings.

P.    The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these deposition topics all information that might otherwise be construed to be outside of their scope.

Q.    "Concern" and "concerning" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing, or constituting the referenced subject.

R.    "Document" means all types of documents, electronically stored information, and things embraced within Federal Rule of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, photographs, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions

or statements of policy, lists of persons attending meetings or conferences, reports or summaries of interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, opinions of counsel, records, reports, summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals, advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, sound recordings, computer printouts, floppy disks, hard drives, CD-ROM's, magnetic tapes and any other data, database, server, or data compilations from which information can be obtained either directly, or, if necessary translated by you through detection devices into a reasonably usable form.  The term document also refers to any tangible object other than a document as described above, and includes objects of every kind and nature such as, but not limited to, products, prototypes, models, and specimens.

S.    "Any" means each and every.

T.    "Used" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

U.    "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

V.    "Offer to sell" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

W.    "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

X.    "Person" means any natural person, firm, association, partnership, corporation, joint venture, or other form of legal entity.

Y.    The "'002 Patent" refers to United States Patent No. 5,019,002.

Z.    The "'449 Patent" refers to United States Patent No. 5,825,449.

4

AA.    The "'737 Patent" refers to United States Patent No. 4,624,737.

BB.    The "'274 Patent" refers to United States Patent No. 5,905,274.

CC.    The "'321 Patent" refers to United States Patent No. 6,815,321.

DD.    The "'489 Patent" refers to United States Patent No. 7,176,489.

EE.    The "'984 Patent" refers to United States Patent No. 6,803,984.

FF.    The "'374 Patent" refers to United States Patent No. 7,218,374.

GG.    The "'923 Patent" refers to United States Patent No. 6,013,923.

HH.    The "'352 Patent" refers to United States Patent No. 5,619,352.

II.    The "'926 Patent" refers to United States Patent No. 6,734,926.

JJ.    The "'786 Patent" refers to United States Patent No. 6,008,786.

KK.    The "'179 Patent" refers to United States Patent No. 7,280,179.

LL.    The "'092 Patent" refers to United States Patent No. 6,134,092.

MM.    The "Patents-in-Suit" refers, individually and collectively, to the '002 Patent, the '449 Patent, the '737 Patent, the '274 Patent, the '321 Patent, the '489 Patent, the '984 Patent, the '374 Patent, the '923 Patent, the '352 Patent, the '926 Patent, the '786 Patent, the '179 Patent, and the '092 Patent.

NN.    The "CMO Patents" means, individually and collectively, the '926 Patent, the '923 Patent, the '786 Patent, the '352 Patent, the '179 Patent, and the '092 Patent.

OO.    "Foreign Counterparts of the CMO Patents" means any patent applications and issued patents filed or issued anywhere in the world that claim priority in whole or in part to the CMO Patents.

5

PP.    "LG Display Patents" means, individually and collectively, the '002 Patent, the '449 Patent, the '737 Patent, the '274 Patent, the '321 Patent, the '489 Patent, the '984 Patent, and/or the '374 Patent.

QQ.    "Part Number" means the name(s) and alpha-numeric identifier(s) by which a part or product, for example an LCD display, LCD module, LCD panel, or components thereof, in general, are bought, sold, or identified (including, for example, internally by CMO or for sales and marketing purposes), and/or by CMO Customers).

RR.    The use of the singular form of any word includes the plural and vice versa.

<u>Deposition Topics</u>

Topics to be covered in the deposition include:

1.    The identity of CMO Products, including corresponding product designations, model numbers, and Part Numbers, and the meaning or significance of each alpha-numeric character or identifier used with respect to CMO Products.

2.    Facts and documents relevant to the inventorship, conception and reduction to practice of the CMO Patents, including all communications with, to or from, and documents prepared by, inventors or possible inventors or any person at any time named as an inventor of the CMO Patents or the Foreign Counterparts of the CMO Patents, concerning such patents or any technology or invention related to such patents.

3.    All aspects of the prosecution of the CMO Patents and Foreign Counterparts of the CMO Patents, including, but not limited to, any considerations of what to include in the application or prosecution documents; drafts of the applications; the naming of inventors or any amendment thereof; the preparation of the patent application; any amendments; any responses to Patent Office actions; any discussions with the United States Patent and Trademark Office; any

search, study, investigation, review, opinion or analysis concerning the validity, enforceability, invalidity or unenforceability of the patents; all patents, references, devices, and/or other potential prior art reviewed, consulted, considered, or disclosed including, without limitation, any prior art or potential prior art cited by or to the United States Patent and Trademark Office or foreign patent office; all communications relating to prior art or potential prior art; and any United States or foreign litigation, interference, reexamination, reissue, cancellation proceeding, nullity proceeding, opposition proceeding, or other ex parte or inter parties proceeding involving or relating to the CMO Patents or the Foreign Counterparts of the CMO Patents, or relating to the products, devices, services, or activities covered by the CMO Patents.

4.    CMO's acquisition and ownership of the CMO Patents, including the chain of title of the CMO Patents before and since CMO's ownership (i.e., date of transfer, the terms of the transfer of title, consideration paid, parties participating in transfer, and any relevant agreements or transactions), and documents and information exchanged with any third party relating to the CMO Patents concerning validity or valuation of the CMO Patents, ownership and/or assignments or transfers of interest.

5.    All communications between CMO and any person concerning the CMO Patents (whether individually or as part of a portfolio), the identity and job descriptions of participants in such communications or meetings, the timing of such communications, and the substance of issues discussed or addressed (for example, agreements, contracts, assignments or licenses).

6.    As to both LG Display and CMO, all facts relevant to notice, actual and constructive, of each of the Patents-in-Suit, including, but not limited to, the date of your first actual notice or awareness of each of the LG Display Patents and from what sources, and any

patent searches and/or patent applications by or for you that included or listed any of the Patents-in-Suit.

      7.      The design and development of CMO Products, including, but not limited to, products accused of infringing one or more claims of the LG Display Patents and all reasonably similar products as well as CMO Products that practice one or more claims of the CMO Patents, including TFT arrays, TFT substrates, Color Filter substrates, backlight units, and modules.

      8.      The procedures, methods, materials and equipment used to manufacture CMO Products, including substrate manufacture (e.g., TFT and/or Color Filter) and cell assembly.

      9.      Testing, analysis, and/or evaluation concerning performance, produceability, operation, yield, reliability, fault, or quality control, of CMO Products, including components or structures of TFT arrays and LCD panels.

      10.      As to all products accused of infringing one or more claims of any LG Display Patents, including all products that could be considered reasonably similar to such accused products, the designs, structures, procedures, process conditions, equipment used, materials, functions, operation, absence, use, and/or purpose of the following with respect to your products and manufacturing:

      (a)      Electrostatic discharge protection, including:

            (i)      structures or components on a TFT substrate or LCD panel;

            (ii)      manufacturing process steps that relate to electrostatic charge or discharge; and

            (iii)      equipment, environmental conditions or procedures that relate to reducing electrostatic charge or discharge;

      (b)      TFT substrate design and manufacture, including:

            (i)      procedures, process conditions and materials used for the deposition and patterning of each layer;

       (ii)      design and measurement of component performance (e.g., threshold voltage, capacitance values), material characteristics (e.g., resistivity) and pattern parameters (e.g., thickness, width, length, shape); and

       (iii)     design and identification of components, marks, patterns, and layers depicted in mask files;

   (c)     Cell assembly, including:

       (i)       applying, dispensing and curing sealant;

       (ii)      applying, dispensing, or injecting liquid crystal material;

       (iii)     aligning, joining and cutting TFT and Color Filter substrates; and

       (iv)     production line equipment layout for all fabrication plants.

11.    As to all CMO Products that practice one or more claims of the CMO Patents, the design and operation of each component within that product that corresponds with the respective element of the practiced claims.

12.    Offers to sell, sales, offers to purchase, purchases or other transactions relating to CMO Products that have been and/or could have been imported, sold, offered for sale, and/or shipped in or to the U.S., in whole or in part, separately or as part of LCD display products, and relevant documents.

13.    All CMO Customers, Brands, distributors, channels, and networks through which CMO Products, separately or as part of LCD display products, have, either directly or indirectly, been marketed, shipped, imported, transferred, sold, and/or distributed, and relevant documents.

14.    All CMO Customers (including Brands that use CMO Products) that have used, ordered, purchased, or approved for use CMO Products, including the identity of all such customers and Brands, any contracts, agreements, or contractual or business arrangements between you and such entities, the models and quantities of your products offered, sold, or supplied to or for each customer and Brand, and relevant documents.

15.    All communications between or among CMO, CMO USA, and CMO Customers (including Brands that use CMO Products) concerning LCD modules, LCD panels or LCD display products including, without limitation, agreements, contracts, business arrangements, meetings, facility audits, negotiations, product orders, product shipments and correspondence.

16.    CMO's knowledge of and conduct regarding the U.S. market and North American market for LCD display products, LCD modules, LCD panels or CMO Products including, for example, the extent to which CMO's Products have been and/or could have been imported and/or sold in the U.S., and information exchanged in communications with CMO Customers (including Brands that use CMO Products) or potential customers.

17.    CMO's communications with and/or participation in DisplaySearch, the Standard Panels Working Group (SPWG), the Panel Standardization Working Group (PSWG), and similar organizations, concerning the importation, manufacture, distribution, marketing, advertising, purchase or sale of any LCD display products, LCD modules, LCD panels or CMO Products.

18.    The extent to which CMO Products can be lawfully imported or sold in the U.S., including legal and regulatory requirements that apply, which CMO Products comply, and communications within CMO, or with any United States government or regulatory agency or department, concerning United States requirements, regulations, and laws applicable to CMO Products.

19.    Your worldwide sales or shipments of CMO Products to any persons, including the actual and estimated amount of revenue and profit you have derived from sales or shipments apportionable to the United States, by customer, year, and product or product type.

20.    Your overall organizational structure, including, but not limited to, with respect to the structure of your Intellectual Property department or division, and the employees, teams,

divisions, units, and departments involved in the research, design, manufacture, marketing, and sale of CMO Products, including the allocation of their functions and responsibilities for specific products, customers, and geographic areas, and all persons involved in the development, acquisition, licensing, and protection of intellectual property.

21.    The relationship between CMO and CMO USA, including, but not limited to, CMO's ownership interest in CMO USA since its inception, and the nature of transactions, support, marketing, and business between CMO and CMO USA, including with respect to importing, marketing, selling, and/or delivering CMO Products in the U.S.

22.    Any subsidiaries, office locations, places of business, third party service facilities or providers (including facilities, partners, agents, or contractors that service, repair, refurbish, rebuild, and/or reassemble your products), employees, agents, contractors, or representatives that CMO has, has had, or has contracted with in the U.S., and the identity, role, location, responsibilities, and activities of each.

23.    All facts, including price quotes or negotiations, or other communications, documents, and discussions, concerning your efforts to offer and promote CMO Products to CMO Customers or potential customers (including Brands that use CMO products); your efforts or plans to build or expand relationships with and/or to increase sales of products to CMO Customers or potential customers (including Brands that use CMO Products); and any awards or recognition given to CMO by any CMO Customer (including any Brand that uses CMO Products).

24.    The ways that CMO and CMO USA develop, support, and interact with CMO Customers (including Brands that use CMO Products) that import or sell LCD display products in the U.S., including all contracts, meetings, presentations to such companies in the U.S. or abroad, teleconferences with such companies, service and support visits to such companies, and sales-

related meetings and discussions with such companies, as well as who participates in such events and how often.

26. 25. All CMO Customers (including Brands that use CMO Products), and transactions with CMO Customers, concerning offers to sell, orders, sales, shipments, and imports of CMO Products, either directly or indirectly, each month since December 1, 2000.

26. For each CMO Product, the quantity made, offered for sale, sold, and shipped by or for you, either directly or indirectly, each month since December 1, 2000, as to each CMO Customer, and all related pricing information.

27. Facts concerning any lost profits and reasonable royalty sought by CMO or CMO USA, and the hypothetical negotiation applicable to the CMO Patents and LG Display Patents, including all facts concerning the *Georgia Pacific* factors.

28. All agreements concerning the Patents-in-Suit, including, but not limited to, technology transfer agreements, settlement agreements, covenants not to sue, contracts, assignments, and licenses executed, sold, negotiated, requested or offered by or to CMO and all efforts to enforce, negotiate, license, transfer, or sell any right, title or interest concerning the CMO Patents (whether individually or as part of a portfolio), including CMO's knowledge of products marked under the CMO Patents.

29. All agreements concerning LCD modules, LCD panels, LCD-related manufacturing or LCD technology, including, but not limited to, technology transfer agreements, settlement agreements, covenants not to sue, contracts, assignments, and licenses executed, sold, negotiated, requested or offered by or to CMO and/or CMO USA.

12

30.    All former, current, and proposed CMO policies, practices or strategies concerning the licensing or valuation of patents, and all relevant factors that CMO considers when negotiating license agreements or attempting to determine the value of patents.

31.    The types and categories of documents, reports, forecasts, and projections that CMO receives or has received, creates or has created, generates or has generated, maintains or has maintained, including the computer databases or document management systems in which such documents are located, concerning CMO Customers and/or the manufacturing, marketing, advertising, importation, distribution, purchase, sale, offer for sale, and/or profitability of CMO Products.

32.    Any belief by CMO that its products do not infringe any claim of the LG Display Patents, including, but not limited to, all attempts by or for you to obtain and rely on any advice of counsel, undertake any investigation or analysis, and change or consider any changes as to the design, manufacturing, sale, or assembly of CMO Products after learning of the LG Display Patents.

33.    Your contentions concerning whether you are infringing any claim of the LG Display Patents, whether directly, under the doctrine of equivalents, or otherwise, including the entire factual basis for such contentions and all documents supporting such contentions.

34.    Your contentions concerning the validity and enforceability of any claim of the LG Display Patents, including the entire factual basis for such contentions and all documents supporting such contentions.

35.    The entire factual basis for each of the affirmative defenses and any other defenses asserted by you in this lawsuit, and each of your counterclaim allegations, including, for example,

13

all facts and documents that may support or refute each of your affirmative defenses and counterclaim allegations.

36.    The efforts you took to collect and produce relevant information and documents, and to prepare your responses to LG Display's interrogatories and requests for production in this case, including the locations and sources of responsive information and documents (including electronically stored information), document retention and document destruction policies, procedures, manuals or guidelines applicable to CMO, and steps taken to locate and produce relevant information, documents, and electronically stored information, and by whom.

DC:50531604.3

14

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on March 25, 2008, he served the

foregoing documents by email and by hand upon the following counsel:

Philip A. Rovner
Dave E. Moore
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE 19899-0951

Karen L. Pascale
John W. Shaw
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

The undersigned counsel further certifies that, on March 25, 2008, he served the

foregoing documents by email and by U.S. Mail upon the following counsel:

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190

Vincent K. Yip
Peter J. Wied
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071

Ron E. Shulman, Esquire
Julie Holloway, Esquire
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304-1050

M. Craig Tyler, Esquire
Brian D. Range, Esquire
WILSON SONSINI GOODRICH & ROSATI
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497

/s/ Richard D. Kirk, (rk0922)
Richard D. Kirk

656846-1