IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG.PHILIPS LCD CO., LTD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-726-JJF |
| | : | |
| CHI MEI OPTOELECTRONICS, | : | |
| CORPORATION, AU OPTRONICS | : | |
| CORPORATION, AU OPTRONICS | : | |
| CORPORATION AMERICA, and CHI MEI | : | |
| OPTOELECTRONICS USA, INC. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| AU OPTRONICS CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 07-357-JJF |
| v. | : | |
| | : | CONSOLIDATED CASES |
| LG.PHILIPS LCD. CO., LTD, and | : | |
| LG.PHILIPS LCD AMERICA, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| LG.PHILIPS LCD. CO., LTD, and | : | |
| LG.PHILIPS LCD AMERICA, INC., | : | |
| | : | |
| Counterclaim-Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| AU OPTRONICS CORPORATION, et al., | : | |
| | : | |
| Counterclaim-Defendants. | : | |
| | : | |

Gaspere J. Bono, Esquire;, Song K. Jung, Esquire; R. Tyler
Goodwyn, IV, Esquire and Lora A. Brzezynski, Esquire of McKENNA
LONG & ALDRIDGE LLP, KEKER & VAN NEST, Washington, D.C.
Richard D. Kirk, Esquire and Ashley B. Stitzer, Esquire of THE
BAYARD FIRM, Wilmington, Delaware.

Attorneys for Plaintiff LG.Philips LCD Co., Ltd.

Kenneth Adamo, Esquire; Robert C. Kahrl, Esquire and Arthur P.
Licygiewicz, Esquire of JONES DAY, Cleveland, Ohio.
Phil A. Rovner, Esquire of POTTER ANDERSON & CORROON, LLP,
Wilmington, Delaware.

Attorneys for Defendant Chi Mei Optoelectronics Corporation.

**MEMORANDUM OPINION**

Farnan, District Judge.

Presently before the Court are Defendant Chi Mei
Optoelectronics Corporation's Motion to Dismiss for Lack of
Personal Jurisdiction and for Insufficiency of Process (D.I. 19),
Plaintiff LG.Philips LCD Co., LTD.'s Alternative Motion for Leave
to Use Discovery or, in the Further Alternative, to Conduct
Jurisdictional Discovery (D.I. 80), Plaintiff LG.Philips LCD Co.,
LTD.'s Motion for Rule 11 Sanctions and Sanctions Pursuant to 28
U.S.C. § 1927 (D.I. 86), Defendant Chi Mei Optoelectronics
Corporation's Motion to Dismiss for Lack of Personal Jurisdiction
and Insufficiency of Service of Process (D.I. 131), and Defendant
Chi Mei Optoelectronics Corporation's Motion to Dismiss for Lack
of Personal Jurisdiction and Insufficiency of Service of Process
(D.I. 176). For the reasons discussed, Defendant's Motions to
Dismiss (D.I. 19, D.I. 131 and D.I. 176) will be denied,
Plaintiff's Motion for Sanctions (D.I. 86) will be denied, and
Plaintiff's Alternative Motion for Leave to Use Discovery or, in
the Further Alternative, to Conduct Jurisdictional Discovery
(D.I. 80) will be denied as moot.

## BACKGROUND

### I.    Procedural Background

On December 1, 2006,  LG.Philips LCD Co., LTD. ("LPL") filed
a Complaint for Patent Infringement against Defendants Chi Mei
Optoelectronics Corporation ("CMO"), AU Optronics Corporation

1

("AUO"), AU Optronics Corporation America ("AUO America"), Tatung Company, Tatung Company of America, Inc., and ViewSonic Corporation ("ViewSonic"), alleging infringement of three of LPL's United States patents relating to Liquid Crystal Display ("LCD") technology. On February 15, 2007, LPL delivered a copy of the Summons and Complaint for Patent Infringement and Demand for Jury Trial on the Delaware Secretary of State in accordance with the provisions of the Delaware long-arm statute, 10 Del. C. § 3104.  On February 16, 2007, LPL's counsel sent to CMO's attention by registered mail, return receipt requested, a notice letter with copies of the Summons, Complaint and Demand for Jury Trial, as served upon the Delaware Secretary of State, as well as the exhibits to the Complaint.

On April 6, 2007, after requesting an extension of time to respond to LPL's Complaint (D.I. 16), CMO timely filed the instant Motion to Dismiss (D.I. 19), alleging insufficient service of process and contesting personal jurisdiction.  On June 18, 2007, after responding to CMO's Motion to Dismiss, LPL filed an Alternative Motion for Leave to Use Discovery or, in the Further Alternative, to Conduct Jurisdictional Discovery (D.I. 80), requesting the Court allow LPL to use jurisdictional discovery obtained in the matter of Commissariat a l'Energie Atomique v. Samsung Electronics Co., et al., Case No. 03-484-MPT, to further establish CMO's jurisdictional contacts.  On June 19,

2

2007, LPL filed a Motion for Rule 11 Sanctions and Sanctions Pursuant to 28 U.S.C. § 1927 (D.I. 86) based on CMO's filing of an allegedly frivolous Motion to Dismiss (D.I. 19). On August 22, 2007, CMO filed a Motion to Dismiss LPL's Additional Counterclaims (D.I. 131), which were filed on August 7, 2007, again alleging insufficient service of process and contesting personal jurisdiction. On April 1, 2008, CMO filed a Motion to Dismiss LPL's Additional Counterclaims (D.I. 176), which were filed March 13, 2008, again alleging insufficient service of process and contesting personal jurisdiction.

## II. Factual Background

Plaintiff LPL is a corporation organized under the laws of the Republic of Korea, with its principle place of business in Seoul, Korea. (D.I. 1 at ¶ 4.) LPL designs, develops, manufactures and produces LCD modules, a type of flat panel display incorporated into LCD portable computers, LCD computer monitors and LCD televisions. (Id. at ¶ 3, 22.)

CMO is a Taiwanese corporation organized and existing under the laws of Taiwan. (D.I. 20 at 4.) Its principle place of business is in Sinshih Township, Tainan County in southern Taiwan. (Id.) CMO is the fourth largest LCD module maker in the world, and manufactures LCD products in Taiwan and China, including LCDs and/or LCD modules that allegedly infringe upon the patents-in-suit. (D.I. 57 at 1.)

North American sales of LCD monitors account for 31 percent of purchases worldwide, and North American sales of LCD televisions account for over 26 percent of the worldwide market. (D.I. 62, Ex. 30 at 13, 88; D.I. 64, Ex. 46 at 258.) Industry reports for the Fourth Quarter of 2006 indicate that CMO supplies 12 percent of the worldwide market for LCD monitors, and supplies over 18 percent of the worldwide market for LCD televisions. (D.I. 64 at Exs. 46-47.)

CMO's modules are sold to original equipment manufacturers ("OEMs") such as Samsung, Dell,[1] IBM, Hewlett Packard, NEC-Mitsubishi, and ViewSonic, (D.I. 57 at 2; D.I. 62 at Ex. 24), and incorporated into computer monitors which are then sold to consumers by numerous retailers, including Best Buy, CompUSA, Circuit City, Wal-Mart, Sears, Staples, and OfficeMax, both on-line over the internet, and at chain retail stores throughout the United States, including Delaware. (D.I. 57 at 2, 12; D.I. 78 at 4.) LPL has presented evidence of at least six purchases of products incorporating CMO products in Delaware prior to the filing of the Complaint in this action. (D.I. 58, D.I. 59.) LPL has also presented additional evidence of multiple sales of devises incorporating CMO products by Office Depot and CDW Corp.

---

[1]After successfully passing Dell's QSA audit, CMO established a direct supplier relationship with Dell Computer Corporation to provide LCD panel and module components. (D.I. 60 at Ex. 1; D.I. 62 at Ex. 24.)

4

in Delaware between July 2002 and March 2005. (D.I. 60 at Exs. 2, 3.)

CMO owns 100 percent of the shares of CMO Japan, which owns 100 percent of the shares of CMO's subsidiary, Chi Mei Optoelectronics USA, Inc., which is a Delaware corporation with its principal place of business in San Jose, California. (D.I. 57 at 5.) After the Complaint in this action was filed, CMO became a partner in a joint venture company called iZ3d, a Delaware company with its principle place of business in California. (Id. at 6.)

CMO has no operations in Delaware, no employees or agents who work in Delaware, has never executed a contract in Delaware, or contracted with any party to manufacture, buy, sell or distribute products or services in Delaware. (D.I. 78 at 6.) CMO has never been registered or licensed to transact business in Delaware, does not own, lease or otherwise possess any real or personal property in Delaware, and CMO's products and services cannot be purchased or obtained through CMO's internet website, which is operated and hosted for CMO in Taiwan. (D.I. 20 at 5.)

In May 2003, Commissariat a l'Energie Atomique ("CEA") filed an action against Chi Mei Optoelectronics Corporation ("CMO") and others in the District of Delaware, Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp., et al., Case No. 04-484-KAJ (D.Del.)(filed May 19, 2003) ("the CEA case"), alleging

5

infringement of patents relating to LCD modules. CMO moved to dismiss for lack of personal jurisdiction, and the court granted this motion on September 22, 2003. However, on January 19, 2005, the Federal Circuit held that CEA was entitled to jurisdictional discovery, and vacated the judgment of dismissal, remanding the case to allow CEA to conduct jurisdictional discovery, and for further consideration of the district court's jurisdiction based on that discovery. Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp., et al., 395 F.3d 1315 (Fed. Cir. 2005). In April 2005, CMO and CEA resolved the jurisdictional controversy by agreement, and CMO agreed to consent to jurisdiction in Delaware for purposes of the CEA case only.

## CMO's MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENCY OF PROCESS

### I.   Parties' Contentions

CMO asks the Court to dismiss LPL's Complaint because CMO contends it is not subject to this Court's jurisdiction. CMO contends that it has never purposefully conducted business activities in Delaware or purposefully directed business activities to Delaware, having never transacted business itself, nor performed any type of work in Delaware. CMO contends that it has never sold components to OEMs or others with the intent or for the purpose of selling these products in Delaware, and thus does not purposefully direct its activities towards the state, or had any business plan to target Delaware residents as consumers

6

for its products. CMO further contends that since CMO has not
purposefully directed activities at Delaware residents, the
assertion of personal jurisdiction over CMO would be
unconstitutional under the Due Process Clause. CMO contends that
since CMO is not involved in and does not control the manufacture
of finished products, their sale, or their distribution, any
attempt by this Court to exercise jurisdiction would not comport
with traditional notions of fair play and substantial justice.

Finally, because LPL attempted to use Delaware's long-arm
statute as the means to serve process on CMO, CMO contends that
LPL's attempted service of process is ineffective, because these
provisions can only be used to serve process when the non-
resident defendant is already subject to the jurisdiction of the
Delaware courts. CMO also contends that LPL's transmission of
the Summons and Complaint to CMO via registered mail did not
comply with Fed. R. Civ. P. 4(f) and (h), and thus does not
constitute effective service of process.

LPL contends that CMO is a huge, international corporation
that regularly does business in Delaware, and engages in a
persistent course of conduct in the State through an established
distribution channel designed to serve and benefit United States
markets, including the Delaware market. LPL cites as evidence
CMO LCD products purchased in Delaware; CMO's "history of
ownership of U.S. companies incorporated in Delaware, the purpose

7

of which is to market and sell CMO products in the U.S,"
including CMO USA, and CMO's joint venture, iZ3D; and CMO's
substantial quantities of products shipped directly into the
United States for sale. (D.I. 57 at 5-6, 1, 9.)  LPL contends
that industry reports indicate that because CMO has consistently
been a huge presence in the worldwide LCD module market, and,
through established OEM relationships, CMO modules are
incorporated into LCD monitors sold through established
distribution networks throughout the United States, CMO is "the
first link in an established distribution channel through which
CMO modules worth hundreds of millions of dollars are sold in the
United States." (D.I. 57 at 31.)  LPL contends that its evidence
of actual sales and the presence of the accused LCD modules in
Delaware establish CMO's direct contacts with Delaware, and this
Court's jurisdiction.

        Finally, LPL contends that service was proper since CMO is
subject to jurisdiction in Delaware, and CMO has not stated that
it never received the Summons or Complaint. LPL also contends
that CMO's timely response to the Complaint moots its challenges
to service of the Summons and Complaint.

        In response, CMO disagrees with LPL's assertion that CMO is
subject to personal jurisdiction because LCD monitors
incorporating CMO components have found their way into Delaware
via the stream of commerce.  CMO contends that LPL cannot meet

8

the "more rigorous 'purposeful availment' standard advanced by Justice O'Connor" in Asahi. (D.I. 78 at 2.) CMO contends that jurisdiction under Delaware's long-arm statute is improper because LPL has not proven that CMO had an intent or purpose to serve the Delaware market.

## II. Analysis

To establish personal jurisdiction in a patent infringement action over a non-resident defendant whose products are sold in the forum state, a plaintiff must show both that the state long-arm statute applies and that the requirements of due process are satisfied. Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1319 (Fed. Cir. 2005). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. Provident Nat'l Bank v. California Federal Savings & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987).

## A. Jurisdiction Over CMO is Proper Under Delaware's Long Arm Statute.

The Delaware Supreme Court has construed the Delaware long-arm statute liberally to confer jurisdiction to the maximum extent  possible in order "to provide residents a means of redress against those not subject to personal service within the State." Kloth v. Southern Christian University, 494 F.Supp.2d

9

273, 278 (D. Del. 2007) (quoting Boone v. Oy Partek Ab, 724 A.2d
1150, 1156-1157 (Del.Super. 1997)).   To satisfy this burden, the
plaintiff must establish either specific jurisdiction or general
jurisdiction.   Specific jurisdiction arises when the particular
cause of action arose from the defendant's activities within the
forum state, while general jurisdiction arises when the defendant
has continuous and systematic contacts with the state,
irrespective of whether the defendant's connections are related
to the particular cause of action.   Helicopteros Nacionales de
Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984).   LPL asserts
that jurisdiction is proper under the general jurisdiction
provision of the Delaware long-arm statute, 10 Del. C. §
3104(c)(4).   (D.I. 57 at 22.) Thus, the Court will only consider
the facts under a general jurisdiction analysis.

    The Delaware long-arm statute provides, in pertinent part:

> (c) As to any cause of action brought by any
> person arising from any of the act enumerated in
> the section, a court may exercise personal
> jurisdiction over any nonresident, or a personal
> representative, who in person or through an agent:
>
> (4) Causes tortious injury in the State or
>     outside of the State by an act or omission
>     outside the State if the person regularly
>     does or solicits business, engages in any
>     other persistent course of conduct in the
>     State or derives substantial revenue from
>     services, or things used or consumed in the
>     State; ...

Del. Code Ann. tit. 10 § 3104(c)(4).

    Initially, the Court must determine if the alleged patent

10

infringement is a tortious injury for the purposes of
jurisdiction. In <u>Magid v. Marcal Paper Mills, Inc.</u>, the court
defined a tortious act under § 3104(c) as an act "which involves
a breach of duty to another and makes the one committing the at
liable in damages." 517 F.Supp. 1125, 1130 (D.Del.1981). Because
the Court of Appeals for the Federal Circuit has defined patent
infringement as a tort, the Court concludes that the presently
alleged patent infringement is a tortious act for the purposes of
the Delaware long-arm statute. <u>See</u> <u>Carbice Corp. v. American
Patents Development Corp.</u>, 283 U.S. 27, 33 (1931).

Secondly, the Court must determine if CMO regularly does or
solicits business in Delaware. LPL has provided competent
evidence of an world-wide distribution network that causes the
allegedly infringing LCD modules to be sold and distributed in
well-known retail chains throughout Delaware, as well as evidence
that the allegedly infringing LCD modules are actually present in
Delaware. (<u>See</u>, <u>e.g.</u>, D.I. 62 at Exs. 24, 26, 27, 30, 37-45,
D.I. 58, D.I. 59, and D.I. 60 at Exs. 2, 3.). Additionally,
CMO's relationship with CMO USA, a Delaware corporation, and the
fact that CMO's joint venture, iZ3D, is also incorporated in
Delaware support LPL's contention that CMO has targeted the
United States market for the sale of its LCD modules, including
the State of Delaware. While CMO itself may not have sold its
LCD modules to Dell Corporation and OEMs in the State of

11

Delaware, CMO clearly acted in consort with Dell Corporation and OEMs to consistently place products containing its allegedly infringing LCD modules into a national distribution network, and, as a result of these efforts, these products were sold in Delaware. See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed.Cir. 1994). That CMO acted through Dell Corporation and OEMs to sell its products in Delaware does not insulate CMO from having purposefully availed itself of the forum state by generating substantial revenue in Delaware through its sales efforts.

The Court further concludes that LPL has provided sufficient evidence of revenues earned by CMO from the sale of its products in Delaware. CMO's annual reports and financial statements, and industry reports indicate that CMO earns large revenues from the United States market. As the fourth largest LCD panel manufacturer in the world, CMO certainly reaps substantial financial rewards from the large percentage of LCD monitors and televisions sold in North America. This indicates that CMO has successfully targeted the United States market for distribution of its LCD products, including Delaware. The Court finds instructive CMO's failure to present evidence rebutting the factual presumption that a portion of CMO's large revenues from the United States market are the result of products incorporating its LCD module sold in Delaware, especially in light of LPL's

12

evidentiary data that Delaware has been ranked eighth in the
nation in per capita computer software store sales.[2] (D.I. 64 at
Exs. 51-52.)

B.    The Court's Exercise of Jurisdiction Over CMO Comports
      Constitutional Notions of Due Process.

      The Due Process Clause requires that, in order to subject a
non-resident defendant to personal jurisdiction, the Court must
first ensure that the defendant "has certain minimum contacts
with the forum such that the maintenance of the suit does not
offend traditional notions of justice and fair play." Motorola,
Inc. v. PC-Tel, Inc., 58 F.Supp.2d 349, 353 (D.Del. 1999) (citing
International Shoe v. Washington, 326 U.S. 310, 316 (1945).
"Minimum contacts" must be purposeful in order to give non-
residents "fair warning" that a particular activity may subject
them to litigation within the forum, so that a defendant could
reasonably foresee that it might be "haled before a court" as a
result of its conduct.  Id. (quoting Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 472 (1985) and World-Wide Volkswagen
Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  "[E]ven if the
requisite minimum contacts have been found through an application
of the stream of commerce theory or otherwise, if it would be

_____

[2]CMO's reliance on Siemens A.G. v. LG Semicon Co., 69
F.Supp. 2d 622 (D.Del. 1999) and Merck & Co. v. Barr Labs., Inc.,
179 F.Supp. 2d 368 (D.Del. 2002), is misplaced given the
substantial and continuous nature of CMO's relationship with Dell
Corporation and the OEMs to supply LCD modules.

unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." Id. (quoting Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed.Cir. 1994).

In Motorola, the court held that the defendant should reasonably have anticipated being haled into court in Delaware where:

> the company, acting in concert with its licensees, sells its products expressly for integration into end used products with full knowledge that these goods will then be placed into established distribution channels that service the State of Delaware. This cause of action for patent infringement in this case is alleged to arise out of these activities.

58 F.Supp.2d at 353. Given CMO's long-term agreement with Dell Corporation, which sells "more systems globally than any computer company...directly to customers" to provide LCD panel and module components (D.I. 62 at Ex. 25), the substantial quantities of LCD products CMO ships to the United States for incorporation into monitors sold in well-known national retail stores, and the size and nature of CMO's business, it is far from a stretch to conclude that CMO's LCD modules would end up in Delaware. Given this evidence, CMO cannot credibly claim that "it had no inkling that some of its [LCD modules] would make their way into Delaware via well-established distribution channels." In re Elonex Phase II Power Mgmt. Litig., No. 01-082-GMS, 2003 WL 21026758, at * 2 (D.Del. May 6, 2003). Thus, the Court concludes that CMO could

14

reasonably foreseen being haled into court in Delaware, and that
sufficient "minimum contacts" exist.[3]

The Court also finds that the exercise of jurisdiction over
CMO would be reasonable. Delaware has an interest in discouraging
injuries that occur within the state; "that interest extends to
patent infringement actions such as this one." Motorola, 58
F.Supp.2d at 356. Further, the Court concludes that litigating
this case in Delaware will not place such a substantial burden on
CMO so as to violate CMO's due process rights. Accordingly, the
Court finds that because CMO directed activities toward Delaware,
purposefully availing itself of Delaware law, the Court's
assertion of jurisdiction over CMO comports with due process.

Having concluded that sufficient contacts exist to subject
CMO to personal jurisdiction under Delaware's long-arm statute
and the Due Process Clause, the Court will now determine whether
LPL's properly served CMO under 10 Del. C. § 3104(d) and the
Federal Rules of Civil Procedure.

_____

[3] While the Federal Circuit's findings of fact in
Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics
Corp., et al., 395 F.3d 1315 (Fed. Cir. 2005), are similar to
this Court's, the Court does not rely solely upon these findings
given the additional evidence before the Court in this action.
Although the Federal Circuit suggested that jurisdictional
discovery was appropriate in Commissariat a L'Energie Atomique v.
Chi Mei Optoelectronics Corp., et al. in order to parse out CMO's
"intent and purpose to serve the Delaware market," here, given
the size and nature of CMO's business, as well as direct evidence
of pre-filing sales of devices incorporating CMO products in
Delaware, it is clear that jurisdiction over CMO is within the
grasp of Delaware courts.

C.    LPL's Service of Process on CMO Was Valid.

Under 10 Del. C. § 3104(d), a party can serve a nonresident defendant by serving a copy of the Summons and Complaint on the Secretary of State if the person is subject to personal jurisdiction in Delaware.  Here, the Court has concluded that CMO is subject to personal jurisdiction in Delaware, and thus LPL properly served a copy of the Summons and Complaint with the Secretary of State.

For service to be effective, however, 10 Del. C. § 3104(d) also requires that plaintiff, or a person acting on a plaintiff's behalf, "send by registered mail to the nonresident defendant...a notice consisting of a copy of the process and complaint served upon the Secretary of State and the statement that service of the original of such process has been made upon the Secretary of State of this State." 10 Del.C. § 3104. See E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediates, S.A.S., 197 F.R.D. 112, 123 (D.Del.,2000)("Under § 3104(d) of Delaware's long arm statute, service is complete only if plaintiff sends "by registered mail to the nonresident defendant ... a notice consisting of a copy of the process and complaint served upon the Secretary of State...." This provision necessarily requires the delivery of judicial papers internationally.")

As CMO correctly points out, in this instance § 3104(d) requires the delivery of judicial papers internationally, and

16

compliance with Fed. R. Civ. P. 4(h)(2). Fed. R. Civ. P. 4(h)(2) states that overseas service should be effected by the procedures outlined in Fed. R. Civ. P. 4(f). Because Taiwan is not a signatory of the Hague Convention, Fed. R. Civ. P. 4(f)(2) applies, which allows for overseas service in any manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction.[4] The United States State Department website states: "Service of process in Taiwan can be effected by international registered mail/return receipt requested." (http://www.travel.state.gov/law/info/judicial/judicial_669.html (last visited February 26, 2008).) Accordingly, the Court finds that LPL properly effected service upon CMO,[5] and the Court will

_____

[4] Additionally, Fed. R. Civ. P. 4(f)(2) allows for service by mail requiring a signed receipt sent by the Clerk of the Court to the party to be served, and by any means not prohibited by international agreement as may be directed by the court. Here, neither method of service is applicable since (1) LPL, not the Clerk of the Court, sent to CMO's attention by registered mail, return receipt requested, a notice letter, together with copies of the Summons and Complaint, and (2) no order was issued by the Court authorizing a court-directed means of service of process.

[5] Assuming arguendo that the Court had concluded otherwise, the Court finds the analysis in Berkhalter v. Irmisch, 75 F.R.D. 539 (W.D.N.Y. 1977), persuasive, which stated that, while service was technically incorrect, Defendant received actual notice in time to preserve his rights, and "the character of the irregularity in no way affects the fundamental validity of the judicial proceeding." Id. at 540. Accordingly, the court ordered nunc pro tunc that service be permitted as performed by the Plaintiff.

17

deny CMO's Motions to Dismiss for Insufficiency of Process[6]

## LPL's MOTION FOR SANCTIONS

### I.    Parties Contentions

LPL contends that CMO and its counsel should be sanctioned for pursuing a frivolous motion to dismiss, since any reasonable inquiry would have revealed CMO's substantial contacts with this jurisdiction.  LPL contends that CMO's arguments are made in bad faith without legal basis and accordingly, CMO's motion is frivolous.

CMO contends that LPL is seeking sanctions on CMO's arguments while asserting identical arguments in seeking dismissal for lack of personal jurisdiction in a co-pending suit filed by AU Optronics Corporation in the United States District Court for the Western District of Wisconsin.  CMO contends that LPL has misstated the holding of the Federal Circuit in Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp., et al., 395 F.3d 1315 (Fed. Cir. 2005), as well as the law of personal jurisdiction, and has mis-cited its exhibits as showing facts they do not.  CMO contends that LPL's motion for sanctions should not have been filed, since its underlying motion to dismiss is supported by controlling case law, and the Court should therefore award CMO its fees in opposing this motion.

While the Court will deny CMO's motions to dismiss, the

Court does not find the litigation decisions made by CMO and its counsel were in bad faith, nor patently unmeritorious, and accordingly will deny LPL's Motion for Rule 11 Sanctions and Sanctions Pursuant to 28 U.S.C. § 1927.

## Conclusions

For the reasons discussed, the CMO's Motions to Dismiss (D.I. 19, D.I. 131 and D.I. 176) will be denied, LPL's Motion for Sanctions (D.I. 86) will be denied, and LPL's Alternative Motion for Leave to Use Discovery or, in the Further Alternative, to Conduct Jurisdictional Discovery (D.I. 80) will be denied as moot.

An appropriate order will be entered.