## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG DISPLAY CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-726 (JJF) |
| ) | |
| CHI MEI OPTOELECTRONICS ) | |
| CORPORATION; AU OPTRONICS ) | |
| CORPORATION, AU OPTRONICS ) | |
| CORPORATION OF AMERICA; ) | |
| TATUNG COMPANY; TATUNG ) | |
| COMPANY OF AMERICA, INC.; AND ) | |
| VIEWSONIC CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| AU OPTRONICS CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-357 (JJF) |
| ) | |
| LG DISPLAY CO., LTD and ) | CONSOLIDATED CASES |
| LG DISPLAY AMERICA, INC., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT CHI MEI OPTOELECTRONICS CORPORATION'S
## OPPOSITION TO PLAINTIFF'S MOTION FOR
## ENTRY OF PROTECTIVE ORDER

OF COUNSEL:

Jonathan S. Kagan
Alexander C. D. Giza
Adam Hoffman
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA 90067
(310) 277-1010

Dated: June 23, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

ARGUMENT.........................................................................................................................3

1.  In-House Personnel Are Commonly Given Access To Highly Confidential Materials
    Where They Are Not Competitive Decision-Makers And Where They Are Subject to
    Proper Safeguards ....................................................................................................................3

2.  CMO's Specified Personnel Are Not Competitive Decision-Makers And Present Little Risk
    of Intentional or Inadvertent Disclosure .............................................................................5

3.  The Risk Of Inadvertent Disclosure Is Lessened Further By CMO's Agreement to
    Significant Safeguards .............................................................................................................7

4.  Restricting Insider Access to Highly Confidential Materials Imposes An Undue And
    Unnecessary Hardship on CMO ...........................................................................................8

CONCLUSION......................................................................................................................9

## TABLE OF AUTHORITIES

**CASES**

*Affymetrix, Inc. v. Illumina, Inc.,*
  2005 WL 1801683 (D. Del. July 28, 2005) ...................................................................... 4, 6-7

*E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.,*
  219 U.S.P.Q. 37 (D. Del. 1982)............................................................................................4

*Minnesota Mining & Mfg. Co. v. Smith & Nephew, PLC,*
  1992 WL 464352 (D. Minn. July 27, 1992) ..........................................................................4

*R.R. Donnelley & Sons v. Quark,*
  2007 WL 61885 (D. Del. Jan. 4, 2007)............................................................................. 1, 3-4

*U.S. Steel Corp. v. United States,*
  730 F.2d 1465 (Fed. Cir. 1984)......................................................................................1, 3, 6-7

*Westbrook v. Charlie Sciara & Son Produce,*
  2008 WL 839745 (W.D. Tenn. Mar. 27, 2008) .....................................................................5

## INTRODUCTION

This Court and others have consistently permitted access to highly confidential materials by in-house personnel who are not competitive decision-makers. *See, e.g., R.R. Donnelley & Sons v. Quark*, 2007 WL 61885 at *1-2 (D. Del. Jan. 4, 2007) (Farnan, J.), citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). In this case, Chi Mei Optoelectronics Corporation ("CMO") seeks such access for a small three-person litigation unit of in-house personnel who (1) are not competitive decision-makers, and (2) play a vital role in providing legal and technical advice to CMO and in managing this large scale, highly complex litigation for CMO. Such access would be governed by a proposed protective order that already contains significant safeguards against the risk of inadvertent disclosure, including a prosecution bar and limits on how and where highly confidential native files may be stored and accessed.

Despite the reasonableness of CMO's request, LG has outright refused any compromise short of a total ban on access by in-house legal personnel from highly confidential materials. Also, contrary to LG Display's repeated assertions in its Opening Brief that this dispute also involves AU Optronics Corp. ("AUO"), no party seeks such access to AUO materials designated Highly Confidential. LG Display's reference to AUO is thus simply a red herring.

CMO therefore requests that this Court deny LG Display Corp.'s ("LG Display") Motion for Entry of Protective Order, and instead authorize access to materials designated "highly confidential" for three members each of the legal departments of CMO and LG Display, provided that such personnel shall have no role in competitive decision-making, agree to be bound by the terms of the protective order, and agree to be subject to the authority of the Court in

this matter. A Proposed Protective Order with language to this effect in Paragraph 8(b) has been submitted with this Opposition (Ex. G hereto).

## STATEMENT OF FACTS

CMO seeks to designate a small, three member "litigation unit" advising CMO and outside counsel in this large scale, highly complex and technical litigation: Dahjan Lin, a CMO Legal Department Manager Associate and member of the California bar; Joshua Yeh, an Intellectual Property Engineer and Manager Associate in the CMO legal department; and Santo Huang, an Intellectual Property Engineer in the CMO legal department. Ex. A, Declaration of Robert Chen Dated June 6, 2008, at ¶ 3.

These in-house legal personnel have taken a significant role in the current lawsuit with LG Display, and CMO relies on them for legal advice and technical analysis during this litigation. Ex. A at ¶ 9; Ex. B, Declaration of Dahjan Lin dated June 5, 2008, at ¶ 7; Ex. C, Declaration of Joshua Yeh dated June 6, 2008 at ¶ 7; Ex. D, Declaration of Santo Huang dated June 6, 2008 at ¶ 7. Restricting Messrs. Lin, Yeh, and Huang from the central technical data in the case would impose a hardship on CMO's ability to effectively defend itself and assert its claims. *Id.*

Messrs. Lin, Yeh, and Huang serve strictly as legal or technical advisors on legal issues to the company. Ex. A at ¶ 4-6; Ex. B at ¶ 4-5; Ex. C. at ¶ 4-6; Ex. D at ¶ 4-6. None has any role in competitive decision-making, product design, research and development, or sales and marketing. Ex. A at ¶ 3-5; Ex. B at ¶ 3; Ex. C at ¶ 3; Ex. D at ¶ 3. Nor are they substantively involved in patent prosecution activities, Ex. A at ¶ 6-7; Ex. B at ¶ 5; Ex. C at ¶ 6; Ex. D at ¶ 6, and, in any case, CMO is willing to agree that a prosecution bar proposed by LG Display would apply to these individuals. Mr. Lin is a member of the California bar and is subject to the same ethical standards and sanctions as CMO's outside counsel (Ex. B at ¶ 2), but all three CMO

2

designees are professionals in their fields and are willing to sign an undertaking agreeing to be

bound by the terms of a protective order and submit to the authority of the Court in this regard.

Ex. B at ¶ 6, 8; Ex. C at ¶ 8-9; Ex. D at ¶ 8-9.

After present counsel for CMO substituted into this case, CMO reiterated to LG Display

its legitimate need to have limited insider access to all produced materials.  CMO offered to

consider any reasonable safeguards LG Display wanted to impose on this reciprocal access.  *See*

Ex. E, Letter of May 30, 2008.  LG Display replied that it could not agree to such access under

any circumstances. Ex. F, Letter of June 5, 2008.  Instead, on June 6, 2008, LG Display moved

for entry of a protective order precluding all in-house personnel from access to highly

confidential materials.

## ARGUMENT

1.    **In-House Personnel Are Commonly Given Access To Highly Confidential Materials
      Where They Are Not Competitive Decision-Makers And Where They Are Subject to
      Proper Safeguards.**

The Federal Circuit has held that it constitutes reversible error to preclude in-house

counsel *per se* from access to confidential discovery material.  *U.S. Steel Corp. v. United States*,

730 F.2d 1465, 1468 (Fed. Cir. 1984).  Courts instead must look to an insider's role in

"competitive decision-making," which the court defined as "advice and participation in any or all

of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding

information about a competitor." *Id.* at 1468 n.3.

This Court and others have relied on *U.S. Steel* in holding that in-house personnel may

access highly confidential materials where two criteria are met.  *See, e.g.*, *R.R. Donnelley & Sons

v. Quark,* 2007 WL 61885, *1 (D. Del. Jan. 4., 2007), citing *U.S. Steel Corp.*, 730 F.2d at 1467.

First, the personnel must not be competitive decision-makers.  *Id.*  Second, "safeguards

surrounding inadvertent disclosure of the protected information" must be sufficient to protect

against the risk of such disclosure. *Affymetrix, Inc. v. Illumina, Inc.*, 2005 WL 1801683 at *2 (D. Del. July 28, 2005) (Farnan, J.).

In *R.R. Donnelley & Sons*, for example, this Court allowed a party's in-house counsel to access "Attorneys' Eyes Only" materials because the attorney's decision-making role within the company was not competitive. 2007 WL 61885, *1-2. Likewise, in *Affymetrix*, this Court allowed a party's four-person in-house "Litigation Unit" to access a direct competitor's sensitive materials because there were "numerous safeguards to protect against inadvertent disclosure and to ensure that the Litigation Unit [did] not assume a role in the management or competitive decision-making activities of the Company." 2005 WL 1801683, *2-3.

Moreover, courts in this district and elsewhere have allowed in-house technical experts access to protected information, where technical personnel agree to be bound by the protective order, and are not in a position to commercially exploit the information at issue. *See E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 219 U.S.P.Q. 37, 39 (D. Del. 1982) (issuing protective order permitting access by inside experts and designated non-technical corporate representatives, provided that such individuals execute an undertaking agreeing to be bound by the protective order and consenting to the court's jurisdiction for enforcement of the order); *Minnesota Mining & Mfg. Co. v. Smith & Nephew, PLC,* 1992 WL 464352 at *3 (D. Minn. July 27, 1992) (in-house expert permitted access to sensitive technical information where not in a position to exploit competitive information and agreed to the terms of the protective order).

LG Display argues, without providing any evidence, that disclosure in this case of confidential competitive information to direct competitors would be "severely prejudic[ial]." Opening Brief, at 3. This argument misses the point. CMO agrees that limiting access to confidential information is generally appropriate. The question here, however, is whether a

4

small group of specified in-house personnel, who are not competitive decision-makers, may

access sensitive materials where safeguards are put into place to protect against inadvertent

disclosure. The case law makes clear that in-house access to highly confidential material in such

circumstances is appropriate, and LG Display provides no authorities to the contrary. The cases

cited by LG Display – almost all from district courts in other circuits – merely provide that

restricted access may be appropriate under some circumstances, and moreover do not address

noncompetitive decision-makers. *See, e.g., Westbrook v. Charlie Sciara & Son Produce*, 2008

WL 839745, *5 (W.D. Tenn. Mar. 27, 2008) (holding only that an "attorneys' eyes only

protective order" was not warranted where, among other things, parties were not competitors).

## 2.    CMO's Specified Personnel Are Not Competitive Decision-Makers And Present Little Risk of Intentional or Inadvertent Disclosure.

The three in-house legal personnel for whom CMO seeks access are not competitive

decision-makers. These personnel are:

- Dahjan Lin, a California attorney and Associate Manager in CMO's legal department;

- Joshua Yeh, an Intellectual Property Engineer in CMO's legal department; and

- Santo Huang, also an Intellectual Property Engineer in CMO's legal department.

All three are members of CMO's in-house legal department and are not engaged in any form of

research or development at CMO. *Id.* at ¶ 3. They take no part in product development or

design by CMO. Ex. A at ¶ 3, 5; Ex. B at ¶ 3; Ex. C at ¶ 3; Ex. D at ¶ 3. They do not participate

in any CMO research and development. *Id.* They do not participate in the sales or marketing of

products made by CMO. *Id.* They are not involved in analyzing competitive products or

deciding how best to market CMO's products. *Id.*

5

Moreover, Messrs. Lin, Yeh, and Huang are not substantively involved in patent prosecution activities. Ex. A at ¶ 6-7; Ex. B at ¶ 5; Ex. C at ¶ 6; Ex. D at ¶ 6. They do not make decisions about whether the business units should file a patent application. *Id.* They do not draft patent applications, respond to communications from the United States Patent & Trademark Office, or confer with patent examiners. *Id.*

In sum, Messrs. Lin, Yeh, and Huang are not involved in any "competitive decision-making." *See U.S. Steel Corp.*, 730 F.2d at 1468 n.3 (defining that term as "advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor"). They serve strictly as legal or technical advisors on legal issues to CMO. Ex. A at ¶ 4-5; Ex. B at ¶ 4; Ex. C at ¶ 4-5; Ex. D at ¶ 4-5. None of their current duties will require them to disclose any confidential information intentionally, nor will their duties facilitate any inadvertent disclosure. *Id.*; Ex. B at ¶ 6.

CMO's legal personnel also have experience in maintaining confidentiality requirements. CMO personnel have been subject to a protective order in other litigation under which they had access to a competitor's highly confidential business information. Ex. A at ¶ 8. They never disclosed the confidential information, and no confidential business information was inadvertently disclosed because of their position. *Id.*

**3.      The Risk Of Inadvertent Disclosure Is Lessened Further By CMO's Agreement to Significant Safeguards.**

Any risk of inadvertent disclosure is reduced further by the fact that CMO has agreed to put significant safeguards into place. *See Affymetrix*, 2005 WL 1801683, *2-3 (holding that the existence of "numerous safeguards to protect against inadvertent disclosure" counseled for allowing insider access to sensitive materials). For example, both the protective order proposed

by LG Display (attached as Exhibit 1 to their motion) and the proposed order CMO submits

herewith already contain significant safeguards. These include:

- The requirement that all party employees receiving confidential information sign an undertaking pledging to be bound by the terms of the protective order. Proposed Orders at ¶ 7.

- The requirement that native files produced as highly confidential can be stored, viewed, or printed only from stand-alone computers that are not networked to other computers or servers. *Id.* at ¶ 4.

- The provision that all persons receiving the most highly confidential technical documents (mask files, CAD files, etc.) be subject to a one-year prosecution bar. *Id.* at ¶ 8.

Messrs. Lin, Yeh, and Huang are all willing to sign an undertaking agreeing to the terms of the

protective order and to submit themselves to the authority of the Court. Ex. B at ¶ 8; Ex. C at

¶ 8-9; Ex. D. at ¶ 8-9. CMO has also agreed to abide by any further reasonable safeguards

proposed by LG Display, although LG Display has refused to propose any. *See* Ex. E.[1]

In addition, Mr. Lin is as an attorney admitted to the California Bar and is bound by

California's code of professional responsibility. The Federal Circuit, in permitting in-house

counsel access to sensitive materials, has noted that in-house counsel "are bound by the same

Code of Professional Responsibility, and are subject to the same sanctions" as outside counsel.

*U.S. Steel Corp.*, 730 F.2d at 1468. This safeguard with respect to Mr. Lin, and the safeguards

---

[1] CMO would consider proposals for reasonable safeguards such as maintaining highly confidential information in locked areas or in off-site locations separate from the rest of the legal department or the company. *See Affymetrix*, 2005 WL 1801683, *2-3 (granting in-house access to highly confidential materials where such safeguards were present).

already in the protective order proposed by LG Display, support a grant of limited insider access to the parties' sensitive materials.

Finally, CMO is seeking *reciprocal* access to highly confidential materials. Like LG Display, CMO is concerned about the disclosure of its highly confidential materials, and well understands that the exchange of such materials with its direct competitor can be done only if appropriate ground rules are first established. Nevertheless, CMO is confident that the safeguards under the proposed protective order are sufficient to meet the parties' litigation needs while fully protecting their interests. Were this not the case, CMO would be unwilling to disclose its own sensitive materials to LG Display.

**4.    Restricting Insider Access to Highly Confidential Materials Imposes An Undue And Unnecessary Hardship on CMO.**

Messrs. Lin, Yeh, and Huang have already taken a significant role in preparing for this lawsuit on behalf of CMO. Further, as a result of their regular  involvement in and responsibility for CMO litigation matters throughout the world, they have acquired a particular expertise and understanding of the LCD technology at the heart of this suit. CMO is relying on their legal and technical analysis to determine how to proceed in this litigation, which involves numerous complex technological issues. Denying them the ability to review a large volume of relevant documents, particularly the important technical documents likely to be designated highly confidential in this litigation, would therefore be a severe hardship on CMO. Ex. A at ¶ 9; Ex. B at ¶ 7; Ex. C at ¶ 7; Ex. D at ¶ 7.

In this respect, it is irrelevant that CMO entered into protective orders in unrelated cases that did not include the level of in-house access CMO seeks in this case. As LG Display itself notes, those prior cases are nothing like the present case. Only two patents were at issue in one of the cases cited by LG Display, and five in the other, and in both cases no CMO patents were at

issue. However, as LG Display admits in its Opening Brief, the "volume and scope of sensitive information that will be disclosed in this case will be much greater," as "there are 23 patents at issue covering a wide array of LCD panel technology, including six CMO patents." Opening Brief at 7. The tremendous technical and legal complexity of this case makes necessary CMO's reliance on the small in-house litigation unit assigned to advise and manage the case for CMO, and makes crucial this litigation unit's access to all the documents produced in this case.

## CONCLUSION

LG Display refuses to permit under any circumstances reciprocal access by in-house legal personnel to materials designated highly confidential. This refusal is unreasonable and unsupported by law. CMO therefore requests that this Court resolve the dispute and enter an order providing such access for three of both parties' in-house legal personnel, where these personnel have no role in competitive decision-making and are subject to the protective order and the authority of the Court. A Proposed Protective Order with language to this effect in Paragraph 8(b) is attached hereto as Exhibit G.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Jonathan S. Kagan
Alexander C. D. Giza
Adam Hoffman
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA 90067
(310) 277-1010

By: /s/ Philip A. Rovner
        Philip A. Rovner (#3215)
        Hercules Plaza
        P. O. Box 951
        Wilmington, DE 19899
        (302) 984-6000
        provner@potteranderson.com

Dated: June 23, 2008
871081

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on June 23, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as indicated;

and that the document is available for viewing and downloading from CM/ECF.

**BY CM/ECF, HAND DELIVERY AND E-MAIL**

Richard E. Kirk, Esq.
Ashley Blake Stitzer, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardfirm.com
astitzer@bayardfirm.com

**BY CM/ECF, HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
kpascale@ycst.com

I hereby certify that on June 23, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

Gaspare J. Bono, Esq.
Matthew T. Bailey, Esq.
Lora A. Brzezynski, Esq.
Cass W. Christenson, Esq.
R. Tyler Goodwyn, IV, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
gbono@mckennalong.com
mbailey@mckennalong.com
lbrzezynski@mckennalong.com
cchristenson@mckennalong.com
tgoodwyn@mckennalong.com

Vincent K. Yip, Esq.
Peter J. Wied, Esq.
Jay C. Chiu, Esq.
Paul Hastings Janofsky & Walker LLP
515 South Flower Street
Los Angeles, CA 90071
vincentyip@paulhastings.com
peterwied@paulhastings.com
jaychiu@paulhastings.com

Ron E. Shulman, Esq.
Julie M. Holloway, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050
rshulman@wsgr.com
jholloway@wsgr.com

M. Craig Tyler, Esq.
Brian D. Range, Esq.
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759
ctyler@wsgr.com
brange@wsgr.com

/s/ Philip A. Rovner
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

2

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG DISPLAY CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-726 (JJF) |
| | ) | |
| CHI MEI OPTOELECTRONICS | ) | |
| CORPORATION; AU OPTRONICS | ) | |
| CORPORATION; AU OPTRONICS | ) | |
| CORPORATION OF AMERICA; | ) | |
| TATUNG COMPANY; TATUNG | ) | |
| COMPANY OF AMERICA, INC.; AND | ) | |
| VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AU OPTRONICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-357 (JJF) |
| | ) | |
| LG DISPLAY CO., LTD and | ) | CONSOLIDATED CASES |
| LG DISPLAY AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF ROBERT CHEN

I, Robert Chen, being first duly sworn upon oath, deposes and states as follows:

1.    Unless otherwise indicated, I have personal knowledge of all facts set forth below and, if called as a witness, will confirm the truth and accuracy of these facts.

2.    I am the Senior Vice President of Intellectual Property and Legal Affairs for Chi Mei Optoelectronics Corporation ("CMO"). I have been employed by CMO since 2002. Prior to joining CMO, I was Of Counsel for Baker & MacKenzie International Law Firm from 2000 to

2002. Before joining Baker & MacKenzie International Law Firm, I was the Patent And Legal

Department Director at Taiwan Semiconductor Manufacturing Company in 1999. I am a

registered attorney of the California bar and Registered Patent Attorney before the United States

Patent and Trademark Office.

      3.     The CMO in-house legal personnel who would have access to the confidential

information of LG Display Co., Ltd. ("LG Display") are Dahjan Lin, a California attorney and

CMO Legal department staff attorney and Manager Associate, Joshua Yeh, an Intellectual

Property Engineer and Manager Associate, and Santo Huang, an Intellectual Property Engineer.

Messrs. Lin, Yeh, and Huang do not advise CMO or any employee of CMO on product

development or design efforts. Their work is separate from the research and development side of

CMO. They take no part in the sales or marketing of products made by CMO. They have no

involvement in analyzing competitors products and then deciding how best to market CMO's

products. They are not involved in the engineering, sales, marketing, or production process at

CMO. Consequently, Messrs. Lin, Yeh, and Huang take no part in the competitive decision-

making that occurs at CMO, as that phrase is defined by the United States Court of Appeals for

the Federal Circuit in *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468, n. 3 (Fed. Cir.

1984). Messrs. Lin, Yeh, and Huang are thus isolated from the competitive decision-making

process.

      4.     Messrs. Lin, Yeh and Huang serve in strictly a legal advisor capacity at CMO,

and are only consulted on legal matters. CMO in-house legal personnel generally provide legal

advice to the business units in response to questions on patent law, and a few may provide legal

advice on the structure and legal risks associated with contracts that CMO may enter into. The

CMO in-house legal personnel also make recommendations regarding the filing, management,

and settlement of litigations in which CMO is involved. These recommendations do not involve competitive decision-making. Messrs. Lin, Yeh and Huang do not advise the officers or business units on how to make competitive decisions, and are not involved in the competitive decision-making process.

5.    CMO employs Messrs. Yeh and Huang as Intellectual Property Engineers. CMO Intellectual Property Engineers are members of the CMO legal department, and serve an important role as an interface between CMO's inventors and the business and legal decision makers. However Intellectual Property Engineers do not themselves have the authority to make business decisions, and are not involved in the design of any CMO products. When requested by a CMO business unit or by CMO's retained counsel, Intellectual Property Engineers will conduct non-infringement analyses of CMO products, invalidity analyses of other companies' patents, infringement analyses for CMO's patents, and general analyses of prior art.

6.    CMO Intellectual Property Engineers also play a limited role as intermediates between inventors and CMO's retained patent prosecution counsel. Once a business unit decides to file a patent application, CMO Intellectual Property engineers will transfer invention disclosures from the inventors to CMO's retained counsel. After the prosecution counsel drafts the patent application, CMO Intellectual Property Engineers are responsible for transferring the draft application to the inventors to ensure that the specification is consistent with the invention disclosure. CMO Intellectual Property Engineers also review the patent specification to ensure that it is consistent with the invention disclosure. Finally, Intellectual Property Engineers work with the inventors and provide information to the prosecution counsel when necessary to respond to an Office Action.

- 3 -

7.  Messrs. Lin, Yeh and Huang are not involved in any competitive decision-making relating to patent prosecution. The business units within CMO are ultimately responsible for determining whether to file a patent application on particular technology. The CMO in-house legal personnel are only responsible for transferring invention disclosures from CMO to retained counsel so that the retained counsel can prepare the patent applications. Retained counsel is responsible for all facets of the prosecution of the patent. The CMO in-house legal personnel do not draft patent applications, do not respond to communications from the United States Patent and Trademark Office and patent offices throughout the world concerning patent applications, and do not confer with patent examiners.

8.  Messrs. Lin, Yeh and Huang are fully able to abide by any protective order requiring that disclosed documents remain confidential. The CMO in-house legal personnel have operated under protective orders requiring confidentiality in previous lawsuits in which they have been involved. They never disclosed another party's confidential information, and no confidential business information was inadvertently disclosed because of their positions. Further, the duties of Messrs. Lin, Yeh and Huang will not require them to disclose any confidential information intentionally, nor will their duties facilitate any inadvertent disclosure.

9.  The CMO in-house legal personnel have taken a significant role in the current lawsuit with LG Display. CMO and I are relying on the CMO in-house legal personnel to advise us on how to proceed during the litigation. Any restrictions placed on the ability of the CMO in-house legal personnel to review confidential documents would impair their abilities to assist outside counsel, make recommendations with respect to this litigation, and would create hardships for CMO.

- 4 -

Executed on _June 6, 2008_ , at _Tainan, Taiwan_ .

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Robert Chen

CLI-1614661v1

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG DISPLAY CO., LTD., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-726 (JJF) |
| | ) | |
| CHI MEI OPTOELECTRONICS | ) | |
| CORPORATION; AU OPTRONICS | ) | |
| CORPORATION, AU OPTRONICS | ) | |
| CORPORATION OF AMERICA; | ) | |
| TATUNG COMPANY; TATUNG | ) | |
| COMPANY OF AMERICA, INC.; AND | ) | |
| VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AU OPTRONICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-357 (JJF) |
| | ) | |
| LG DISPLAY CO., LTD and | ) | CONSOLIDATED CASES |
| LG DISPLAY AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF DAHJAN LIN

I, **Dahjan Lin**, being first duly sworn upon oath, deposes and states as follows:

1.      Unless otherwise indicated, I have personal knowledge of all facts set forth below and, if called as a witness, will confirm the truth and accuracy of these facts.

2.      I am an attorney employed by Chi Mei Optoelectronics Corporation ("CMO") as a Legal Department Manager Associate. I have been employed by CMO since September 2006.

Prior to joining CMO, I was a commissioned officer in the U.S. Army and an employee for a large telecommunications company. I am a registered attorney of the California bar.

3.    I do not advise CMO or any employee of CMO on product development or design efforts. My work as a member of the CMO legal department is separate from the research and development side of CMO. I take no part in the sales or marketing of products made by CMO. I have no involvement in deciding how best to market CMO's products. I am not involved in the engineering, sales, marketing, or production process at CMO. As part of CMO's in-house legal personnel, I am isolated from the competitive decision-making process. Thus, I take no part in the competitive decision-making that occurs at CMO, as that phrase is defined by the United States Court of Appeals for the Federal Circuit in *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468, n. 3 (Fed. Cir. 1984).

4.    I serve in strictly a legal advisor capacity at CMO. I am consulted on legal matters involving CMO. I provide legal advice to the business units in response to questions on patent law and may on occasion provide legal advice on the structure and legal risks associated with contracts that CMO may enter into. I do not advise CMO's officers or business units on how to make competitive decisions, and am not involved in the competitive decision-making process. I sometimes make recommendations regarding the filing, management, and settlement of litigations in which CMO is involved. These recommendations do not involve competitive decision-making.

5.    I am not involved in any competitive decision-making relating to the patent prosecution. The business units within CMO are ultimately responsible for determining whether to file a patent application on particular technology. I am responsible for transferring invention disclosures from CMO to CMO's retained counsel. CMO's retained counsel then prepares the

- 2 -

patent applications and is responsible for all facets of the prosecution of the patent. I do not draft patent applications, do not respond to communications from the United States Patent and Trademark Office concerning patent applications, and do not confer with patent examiners.

6.    I will be fully able to abide by any protective order requiring that disclosed documents remain confidential and will submit to the authority of this Court in this respect. I have never disclosed another party's confidential information. My current duties as a member of CMO's in-house legal personnel will not require me to disclose any confidential information intentionally, nor will my duties facilitate any inadvertent disclosure.

7.    I have taken a significant role in the current lawsuit with LG Display. CMO is relying on my advice on how to proceed during the litigation. Any restrictions placed on my ability to review confidential documents would impair my ability to assist outside counsel, make recommendations with respect to this litigation, and would create hardships for CMO.

8.    I am willing to sign the undertaking for the protective order and abide by its terms.

Executed June 5, 2008, at Newbury Park, California.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dahjan Lin

CLI-1614661v1

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG DISPLAY CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-726 (JJF) |
| | ) | |
| CHI MEI OPTOELECTRONICS | ) | |
| CORPORATION; AU OPTRONICS | ) | |
| CORPORATION, AU OPTRONICS | ) | |
| CORPORATION OF AMERICA; | ) | |
| TATUNG COMPANY; TATUNG | ) | |
| COMPANY OF AMERICA, INC.; AND | ) | |
| VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| AU OPTRONICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-357 (JJF) |
| | ) | |
| LG DISPLAY CO., LTD and | ) | CONSOLIDATED CASES |
| LG DISPLAY AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF JOSHUA YEH

I, Joshua Yeh, being first duly sworn upon oath, deposes and states as follows:

1.    Unless otherwise indicated, I have personal knowledge of all facts set forth below and, if called as a witness, will confirm the truth and accuracy of these facts.

2.    I am an Intellectual Property Engineer for Chi Mei Optoelectronics Corporation ("CMO"). I have been employed by CMO's Intellectual Property and Legal Affairs since 2003.

CLI-1614661v1

Prior to joining CMO's Intellectual Property and Legal Affairs, I was a process engineer for CMO's TFT Etch Dept. of TFT MFG. Division II from 2001 to 2003.

3.    I do not advise CMO or any employee of CMO on product development or design efforts. My work as an Intellectual Property Engineer is separate from the research and development side of CMO. I am not involved in the sales or marketing of products made by CMO. I have no involvement in analyzing competitors' products for the purpose of deciding how best to market CMO's products. I am not involved in the engineering, sales, marketing, or production process at CMO.

4.    Intellectual Property Engineers are members of the CMO in-house legal department. As an Intellectual Property Engineer, I work solely in a legal capacity, and I am only consulted on legal matters involving CMO. I primarily provide legal advice to the business units in response to questions on patent law. I never provide advice to CMO officers or business units on how to make competitive decisions. I sometimes make recommendations regarding the filing, management, and settlement of litigations in which CMO is involved when asked by other members of the legal department, CMO's officers, or members of CMO's business units. This advice does not include advice on how to make competitive business decisions.

5.    My primary responsibilities at CMO are to conduct non-infringement analyses of CMO products, invalidity analyses of other companies' patents, infringement analyses for CMO's patents, and to analyze the content of the prior art. I conduct these analyses only when requested by a CMO business unit or by CMO's retained counsel.

6.    I also give advice during the prosecution of CMO patents. The business units within CMO, however, are ultimately responsible for determining whether to file a patent application. My main responsibilities are transferring invention disclosures from CMO to

- 2 -

retained counsel so they can prepare the patent application. Retained counsel is then responsible for all facets of the prosecution of the patent. I do not draft patent applications, do not interact with the United States Patent and Trademark Office, and do not respond to any communications, Office Actions, or otherwise interact with any patent examiners.

7.    I have taken a significant role in the current lawsuit with LG Display. CMO is relying on my technical analysis and advice to determine how to proceed during the litigation. Any restrictions placed on my ability to review confidential documents would impair my ability to assist outside counsel, make recommendations with respect to this litigation, and would create hardships for CMO.

8.    I am able and willing to abide by any protective order requiring that disclosed documents remain confidential, and will submit to the authority of this Court in this regard.

9.    I am willing to sign the undertaking for the protective order and abide by its terms.

Executed on ___June 6, 2008___, at ___Tainan, Taiwan___.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

_Joshua Yeh_
Joshua Yeh

- 3 -

# EXHIBIT D

06-09-08 11:43    :                                    01006846730         #  17  3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG DISPLAY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> CHI MEI OPTOELECTRONICS CORPORATION; AU OPTRONICS CORPORATION, AU OPTRONICS CORPORATION OF AMERICA; TATUNG COMPANY; TATUNG COMPANY OF AMERICA, INC.; AND VIEWSONIC CORPORATION, <br><br> Defendants. | Civil Action No. 06-726 (JJF) |
| AU OPTRONICS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> LG DISPLAY CO., LTD and LG DISPLAY AMERICA, INC., <br><br> Defendants. | Civil Action No. 07-357 (JJF) <br><br> CONSOLIDATED CASES |

## DECLARATION OF SANTO HUANG

I, **Santo Huang**, being first duly sworn upon oath, deposes and states as follows:

1.    Unless otherwise indicated, I have personal knowledge of all facts set forth below and, if called as a witness, will confirm the truth and accuracy of these facts.

2.    I am an Intellectual Property Engineer for Chi Mei Optoelectronics Corporation ("CMO"). I have been employed by CMO since March 1, 2004. Prior to joining CMO, I was employed by Ali Corporation, an IC design company.

06-06-09:11:42    :01009544730    #    2/    3

3.    I do not advise CMO or any employee of CMO on product development or design efforts. My work as an Intellectual Property Engineer is separate from the research and development side of CMO. I am not involved in the sales or marketing of products made by CMO. I have no involvement in analyzing competitors' products for the purpose of deciding how best to market CMO's products. I am not involved in the engineering, sales, marketing, or production process at CMO.

4.    Intellectual Property Engineers are members of the CMO in-house legal department. As an Intellectual Property Engineer, I work solely in a legal capacity, and I am only consulted on legal matters involving CMO. I primarily provide legal advice to the business units in response to questions on patent law. I never provide advice to CMO officers or business units on how to make competitive decisions. I sometimes make recommendations regarding the filing, management, and settlement of litigations in which CMO is involved when asked by other members of the legal department, CMO's officers, or members of CMO's business units. This advice does not include advice on how to make competitive business decisions.

5.    My primary responsibilities at CMO are to conduct non-infringement analyses of CMO products, invalidity analyses of other companies' patents, infringement analyses for CMO's patents, and to analyze the content of the prior art. I conduct these analyses only when requested by a CMO business unit or by CMO's retained counsel.

6.    I also give advice during the prosecution of CMO patents. The business units within CMO, however, are ultimately responsible for determining whether to file a patent application. My main responsibilities are transferring invention disclosures from CMO to retained counsel so they can prepare the patent application. Retained counsel is then responsible for all facets of the prosecution of the patent. I do not draft patent applications, do not interact

with the United States Patent and Trademark Office, and do not respond to any communications, Office Actions, or otherwise interact with any patent examiners.

7.    I have taken a significant role in the current lawsuit with LG Display. CMO is relying on my technical analysis and advice to determine how to proceed during the litigation. Any restrictions placed on my ability to review confidential documents would impair my ability to assist outside counsel, make recommendations with respect to this litigation, and would create hardships for CMO.

8.    I am able and willing to abide by any protective order requiring that disclosed documents remain confidential, and will submit to the authority of this Court in this regard.

9.    I am willing to sign the undertaking for the protective order and abide by its terms.

Executed on _June 6, 2008_, at _Taiwan, Taiwan_.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

_Santo Huang_
Santo Huang

# EXHIBIT E

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7902
FACSIMILE (310) 203-7199
dhoffman@irell.com

May 30, 2008

**VIA E-MAIL**

Lora A. Brzezynski, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006

      Re:    *LG Display Co., Ltd. v. Chi Mei Optoelectronics Corp., 06-726 (D. Del.)*

Dear Lora:

      We have reviewed the correspondence regarding the protective order, and noted that the primary open issue appears to be developing a protocol to allow specified individuals in LGD and CMO's legal departments with no role in commercial decision making or product development to review LGD materials designated highly confidential. CMO believes this access is necessary for CMO to play an active role in advising its counsel and managing this very complex litigation. CMO has indicated that it will be extremely flexible in setting the rules and procedures for such access. It appears that you and Jones Day had some correspondence about this issue, but were not able to resolve it. It would speed things up greatly if you could let us know what rules and/or procedures LGD would prefer for providing access to highly confidential information to individuals in our respective legal departments with no role in commercial decision making or product development.

      Note that because CMO and AUO have not asserted claims against each other, neither believes that it requires such access to any highly confidential information in each others' produced materials. AUO has agreed in principle with the approach of having reciprocal insider access between LCD and CMO while not having such access between AUO and CMO or LCD and AUO. Thus, we believe we should be able to wrap this up quickly by reaching an agreeable procedure between CMO and LGD.

      Moreover, assuming we can work out procedures for the limited insider access proposed by CMO, this will help address our concerns about LGD's proposed prosecution bar language. At the same time, the prosecution bar should help allay any concerns LGD has about access by specified CMO personnel to materials designated highly confidential.

      Otherwise, we have only one additional concern with the draft protective order you have provided us. Paragraph 12 of the draft protective order states that inadvertently produced materials can be pulled back by written request, and "if that request is properly

1875743.1 01

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Lora A. Brzezynski, Esq.
May 30, 2008
Page 2

made and supported, no party in the above captioned action shall thereafter assert that such disclosure waived any claim of attorney-client privilege, attorney work product, or other immunity." We think the "properly made and supported" language is, as positioned in the current draft, problematic, as it limits the no-waiver language. We propose that instead the provision read that, upon discovering an inadvertent production,

> The disclosing party shall promptly upon learning of such disclosure so advise the receiving party in writing, explaining the basis for the claim of privilege or immunity, and request that the item or items of information, and all copies thereof, be returned. No party shall thereafter assert that such disclosure waived any claim of attorney-client privilege, attorney work product, or other immunity.

Please let us know if LGD agrees with this revision.

Very truly yours,
/s/Adam Hoffman
Adam Hoffman

cc: Brian Range, Esq.

1875743.1 01

# EXHIBIT F

| Atlanta | # McKenna Long | San Diego |
|---|---|---|
| Denver | &Aldridge<sub>LLP</sub> | San Francisco |
| Los Angeles | Attorneys at Law | Washington, DC |
| Philadelphia | 1900 K Street, NW • Washington, DC 20006 | Brussels |

**McKenna Long**
**&Aldridge**LLP
Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

LORA A. BRZEZYNSKI
(202) 496-7239

lbrzezynski@mckennalong.com

June 5, 2008

**VIA E-MAIL**

Adam Hoffman, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, California 90067-4276

      Re:     *LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;*
                  C.A Nos. 06-726-JJF and 07-357-JJF

Dear Adam:

      We are in receipt of your May 30, 2008 letter sent by you in response to my May 16, 2008 email to your colleague, Jonathan Kagan. My May 16, 2008 email attached the history of emails on the issue of a protective order that have been circulated by LG Display, AUO, and CMO over the last few months. In all of the emails sent by LG Display, including in my May 16, 2008 email, LG Display's position was clear. LG Display will not agree to a protective order that includes a provision that permits CMO's in-house employees access to LG Display's highly confidential documents produced in this case. Thus, your suggestion that the primary open issue "appears to be developing a protocol to allow specified individuals in LGD and CMO's legal departments with no role in commercial decision making or product development to LGD materials designated highly confidential" is incorrect. LG Display has never suggested that it would entertain developing such a protocol.

      The fact that CMO continues to insist that certain of its in house employees should have access to LG Display's highly confidential documents is troubling given that (i) LGD and CMO are direct competitors in this highly competitive LCD industry; (ii) the protective orders entered into by CMO in its other litigations in the U.S. have always included two levels of confidentiality with one level limited to outside counsel only; (iii) AUO is not agreeable to your approach, and (iv) CMO's approach is wholly inconsistent with CMO's insistence in the Texas litigation that counsel first agree that native mask files produced by the parties be viewed only on stand alone computers by outside counsel before such files would be produced. As you know, we have fully complied with this procedure in the review of CMO's mask files produced both in the Texas litigation and in this Delaware case.

Adam Hoffman, Esq.
June 5, 2008
Page 2

We have also been operating under and complying with the prosecution bar paragraph contained in the last paragraph of section 8 of the draft protective order that we circulated (attached to this letter for your reference). Although you state in your letter that you have "concerns about LGD's proposed prosecution bar language," you do not specify what those concerns are. If instead you are simply withholding agreement on the prosecution bar paragraph until LG Display agrees to a procedure for limited insider access, such a position is inappropriate. Given that AUO has agreed to the prosecution bar paragraph, we assume that the parties will comply with that paragraph unless and until we have an agreement otherwise.

Finally, with respect to your concern about a portion of paragraph 12 dealing with inadvertently produced materials, we agree with your suggested revision. We have revised paragraph 12 of the attached protective order to include your proposed wording.

If you would like to have a discussion about any of these issues, I am available next week. I could have a conference call with you on Tuesday afternoon after 3:00 pm (EDT) or on Wednesday after 11:30 am (EDT).

Very truly yours,

Lora A. Brzezynski

Enclosure

cc:    M. Craig Tyler, Esq.

DC:50551109.1

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| LG DISPLAY CO., LTD., | |
| Plaintiff, | Civil Action No. 06-726 (JJF) |
| v. | Civil Action No. 07-357 (JJF) |
| CHI MEI OPTOELECTRONICS CORPORATION, et al. | CONSOLIDATED CASES |
| Defendants. | |

**PROTECTIVE ORDER**

**WHEREAS**, the parties have stipulated and agreed that an order pursuant to Federal Rule of Civil Procedure 26(c) is necessary and useful to protect confidential business, financial or proprietary information that will likely be disclosed in the course of discovery in this action:

**IT IS HEREBY ORDERED THAT:**

**DEFINITIONS**

1.      The term "Confidential Information" shall mean and include any Documents, whether in paper, electronic, or other form, portions of Documents, tangible items, information or other things furnished by any party, including third-parties, answers to interrogatories, responses to requests to produce documents or other things, responses to requests for admissions, depositions, transcripts of depositions, all copies, extracts, summaries, compilations, designations and portions thereof, and technical or commercial information derived therefrom deemed by any party to be its confidential information.  Documents designated "Confidential Information" shall meet the criteria stated in the Introduction of this Stipulation.  This Order shall not govern the admissibility of evidence during the trial proceedings nor does it prohibit any party or interested member of the public from seeking a protective order to govern disclosure of confidential information to the public during the trial proceedings.  However, any Confidential Information designated with a confidentiality marking under the terms of this Protective Order

shall continue to be afforded the protection of this Order by the parties unless the Confidential

Information becomes a public record at trial.

      2.      The term "Documents" shall mean all materials within the scope of F.R.C.P.

Rule 34.

## SPECIFIC PROVISIONS

      1.  **DESIGNATION OF MATERIAL AS CONFIDENTIAL**.  Any Document, file,

tangible item, or testimony provided by any party or non-party which the producing party in

good faith contends contains information proprietary to it and is entitled to protection under Rule

26(c)(7) of the Federal Rules of Civil Procedure, may be designated as "CONFIDENTIAL" and,

except as permitted by further order of a court of competent jurisdiction, or by subsequent

written agreement of the producing party, such designated documents or testimonial information

shall be received by counsel of record for the party upon the terms and conditions of this

Protective Order (hereafter, "this Protective Order").

      2.  **DESIGNATION OF MATERIAL AS HIGHLY CONFIDENTIAL**.  Any

CONFIDENTIAL Document, file, tangible item, or testimony produced by any party which

contains particularly sensitive information proprietary to the producing party, including, for

example, particularly sensitive competitive information, may be designated as "HIGHLY

CONFIDENTIAL."  Non-exclusive examples of the types of information that may be HIGHLY

CONFIDENTIAL include:

        (a) The names, or other information tending to reveal the identities, of a party's

suppliers, present or prospective customers, or distributors;

        (b) Information relating to pending patent applications;

        (c) Financial information of a party;

        (d) Information constituting product specifications;

        (e) Technical notebooks and technical reports of a party or other like information;

        (f) Marketing plans of a party; and

        (g) Other information that a party considers a trade secret.

Other categories of HIGHLY CONFIDENTIAL information may exist.  Disputes regarding whether material is properly designated as "HIGHLY CONFIDENTIAL" shall be resolved in accordance with paragraph 15.  The parties agree to designate information as CONFIDENTIAL or HIGHLY CONFIDENTIAL on a good faith basis and not for purposes of harassing the receiving party or for purposes of unnecessarily restricting the receiving party's or the public's access to information concerning the lawsuit.

     3.  **PROCEDURE FOR DESIGNATING MATERIAL**.  Documents or tangible items shall be designated confidential within the meaning of this Protective Order in the following ways:

     (a) In the case of documents and the information contained therein, by placing on the document the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or similar;

     (b) In the case of interrogatory answers and the information contained therein, designation shall be made by placing on the first page and all subsequent pages containing the confidential information the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL";

     (c) In the case of tangible items, designation shall be made by visibly marking the item "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" if practicable or, if not practicable, by placing such marking visibly on a package or container for the item;

     (d) In the case of documents that are produced in an electronic file format and it is not possible to label each page in that format, such as native files, parties shall include the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in the file name, or otherwise affix the appropriate legend to the media in which the information is disclosed (i.e., CD, DVD or disk drive).

     (e) In producing original files and records for inspection, no marking need be made by the producing party in advance of the inspection.  For the purposes of the inspection, all documents produced shall be considered as marked "HIGHLY CONFIDENTIAL."  Thereafter, upon selection of specified documents for copying by the inspecting party, the producing party shall mark as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" the copies of such

documents as may contain confidential information at the time the copies are produced to the inspecting party.

4. **DESIGNATED MATERIAL SHALL BE KEPT CONFIDENTIAL**. With respect to all documents, information, or tangible items, produced or furnished by a party during this litigation, which are designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by the producing party, such information shall be kept confidential and shall not be given, shown, made available, discussed, or otherwise communicated in any manner ("disclosed"), either directly or indirectly, to any person not authorized to receive the information under the terms of this Protective Order. Any native files designated as HIGHLY CONFIDENTIAL can be stored, viewed, or printed out on paper only on or from stand-alone computers that are not networked to other computers or servers, and print-outs need to be marked as HIGHLY CONFIDENTIAL and with the source file name.

5. **DEPOSITION TESTIMONY**. If, in the course of this proceeding, depositions are conducted that involve confidential information, counsel for the witness or party producing such information may state, on the record, that the deposition, or a portion thereof, may contain CONFIDENTIAL or HIGHLY CONFIDENTIAL information. If such designation is made, that deposition, or portion thereof, will be taken with no one present except those persons who are authorized to have access to such CONFIDENTIAL or HIGHLY CONFIDENTIAL information, as the case may be, in accordance with this Protective Order including interpreters, videographers, and the Court Reporter. Subject to the terms hereof, CONFIDENTIAL or HIGHLY CONFIDENTIAL information may be disclosed by a receiving party to a deponent, to the extent that its use is necessary, at the deposition(s) of (a) employees, officers, and/or directors of the producing party or its affiliates (e.g., subsidiaries) (b) an author, addressee, or other person indicated as a lawful recipient of a document containing the information; (c) a person clearly identified in prior discovery or by the deponent in his or her deposition as an author or recipient of the information; (d) any independent advisor, consultant or expert otherwise qualified under

this Protective Order to receive such information; and (e) any person for whom prior authorization is obtained from the producing party or the Court.

Each party shall have until thirty (30) days after receipt of the final deposition transcript within which to inform the other parties to the action of the portions of the transcript (by specific page and line reference) to be designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." The right to make such designation shall be waived unless made within the thirty (30) day period. Prior to such designation, or expiration of the thirty (30) day period, the entire deposition transcript shall be deemed HIGHLY CONFIDENTIAL information. Transcripts of testimony, or portions thereof, containing CONFIDENTIAL or HIGHLY CONFIDENTIAL information shall be filed only under seal as described in paragraph 6, until further order of the Court.

6. **COURT FILINGS CONTAINING CONFIDENTIAL INFORMATION**. Any document, pleading, or tangible item which contains Confidential Information, if filed or submitted to the court, shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any document, pleading, or tangible item which contains Confidential Information shall file such paper in a sealed envelope, or other appropriately sealed container, which indicates the title of this action, the party filing the materials, the nature of the materials filed, the appropriate legend, and a statement substantially in the following form printed on the envelope(s):

**Subject To Protective Order**
**To Be Open Only As Directed By The Court**

7. **SIGNED UNDERTAKINGS REQUIRED**. Before disclosure of any information subject to this Protective Order is made to any employee, officer, or director of a non-producing party, or to any consultant or expert (who may not be a present or former employee, officer, or director of the non-producing party) who is retained by a non-producing party, or to any witness, or prospective witness (outside of an actual deposition of such witness), counsel for the party disclosing the information shall obtain the written Undertaking, attached hereto as Exhibit A,

from each person to whom disclosure is to be made, acknowledging that any document, information or tangible item that has been designated as confidential is subject to this Protective Order, that the person has read this Protective Order, that such person agrees to comply with, and be bound by, this Protective Order, and that such person is aware that contempt sanctions may be entered for violation of this Protective Order. The written Undertaking shall be provided to opposing counsel ten (10) days in advance of the first disclosure of any Confidential Information to such person. If no objection is made to such person receiving Confidential Information within such ten (10) day period, then Confidential Information may be disclosed to such person. Any and all objections must be made in writing with all grounds for objection stated with specificity. If objection is made, then any party may bring before the Court the question of whether the Confidential Information may be disclosed to such person. All signed Undertakings shall be maintained by the counsel who obtained such Undertakings through the conclusion of this action. After completion of the action, the originals of all such Undertakings shall be provided to counsel for the party whose Confidential Information was provided to such person.

In connection with disclosures to experts and consultants, each party shall disclose to the opposing counsel in writing the identity, residence, and curriculum vitae of each expert or consultant (whether testifying or non-testifying). Such curriculum vitae shall provide or summarize the expert or consultant's full name, professional address, educational background, and the qualifications of the expert or consultant (including a list of all publications authored within the preceding four years and a listing of any other cases in which the expert or consultant has testified as an expert at trial or by deposition within the preceding four years) and disclose all of the expert's or consultant's current employers and consulting engagements as well as his or her former employers and past consulting engagements, each for the past four (4) years.

In the event a party retains an expert or consulting firm, the party shall disclose each person to whom the disclosing party's Confidential Information is disclosed whose education, work experience, and role on the matter qualifies him or her as an expert or consultant. In such cases, the party need not submit disclosures for junior analysts and staff members, so long as

they are working on the matter with an expert or consultant that has been disclosed and approved as set forth in this Paragraph.

The expert or consultant may designate his or her disclosures as CONFIDENTIAL or HIGHLY CONFIDENTIAL. To the extent the expert's or consultant's employments or engagements are confidential, the expert or consultant may make a representation that his or her undisclosed employments and engagement (whether current or from the past) did not involve the subject matter of this case (e.g., display technologies), the parties, or affiliates of the parties, in lieu of providing details regarding the employer or particular project.

This disclosure shall be made at the same time the written Undertaking is provided to opposing counsel. The right of a party to object shall be waived if no objection is received by the party disclosing the expert or consultant within ten (10) business days of receipt of said disclosure, except to the extent that the non-designating party later discovers that the original disclosure of a particular expert or consultant was in error or otherwise not fully responsive to the requirements of this Paragraph 7.

In connection with disclosures to employees, officers, or directors of a non-producing party, each party shall disclose to the opposing counsel in writing the identity and title of each employee, officer, or director of the non-producing party. This disclosure shall be made at the same time the written Undertaking is provided to opposing counsel.

8. **LIMITATIONS ON DISCLOSURE OF HIGHLY CONFIDENTIAL MATERIALS**. Except as permitted by further order of this Court or by subsequent written agreement of the producing party, disclosure of HIGHLY CONFIDENTIAL documents, deposition transcripts, tangible items or information, including summaries thereof, but not including documents or tangible items with the confidential portions redacted, shall be limited to:

(a) outside counsel for the parties, whether trial counsel or not, and associate attorneys, paralegal, secretarial and clerical employees assisting such counsel;

(b) Three specified members of the legal departments of Chi Mei Optoelectronics ("CMO") and LG Display Co., Ltd. ("LG Display"), provided that such personnel shall have no

role in competitive decision-making, shall sign an Undertaking in the form attached hereto as Exhibit A and in accordance with Paragraph 7 above, and shall not have access to materials designated highly confidential by AU Optronics.

       1.    CMO's three designated in house personnel are Dahjan Lin, Joshua Yeh, and Santo Huang.

       2.    LG Display's three designated in house personnel may be designated by stipulation between CMO and LG Display.

    (c) Judges, Magistrates, law clerks, and clerical personnel of the Court before which this action is pending and qualified court reporters, videographers, and translators;

    (d) consultants or experts, who are not present or former employees or officers of the parties, retained by either of the parties to consult or testify in the case, who have executed the attached Undertaking;

    (e) employees and officers of the party producing the documents or information;

    (f) authors or drafters, addressees and those who received the documents or information prior to the commencement of this action; and

    (g) third party contractors and their employees whose regular business is providing litigation support services and who are engaged by a party to assist counsel with coding, imaging, or other document management services, translation services, trial preparation services, the preparation of demonstratives or other visual aids for presentation at a hearing or trial, and/or jury consulting services for this litigation, provided that such personnel of third party vendors shall not be employees of a party or otherwise working for or on behalf of a party in connection with that party's business.

The persons receiving (pursuant to Sections 8(a) and (b) above) mask files, electronic CAD files, or process specifications for LCD display products that are designated HIGHLY CONFIDENTIAL information, or any testimony or other discovery (e.g., interrogatory responses) containing such information, shall not supervise or participate on behalf of any party in drafting, filing, or prosecuting any patent applications involving the subject matter of any of

the patents at suit in this action from the time the HIGHLY CONFIDENTIAL information is received and until one (1) year following the conclusion of their participation in the above captioned case.

     9. **LIMITATIONS ON DISCLOSURE OF CONFIDENTIAL MATERIALS**.

Except as permitted by further order of this Court or by subsequent written agreement of the producing party, disclosure of CONFIDENTIAL documents, deposition transcripts, tangible items or information, including summaries thereof, but not including documents or tangible items with the confidential portions redacted, shall be limited to (a) the persons and entities identified in paragraph 8; and (b) no more than 7 employees or officers of the non-producing party whose identities shall be made known ten (10) days in advance to the producing party and who shall sign an Undertaking in the form attached hereto as Exhibit A.

     However, nothing in this Protective Order shall bar or otherwise restrict counsel for a party from rendering legal advice to his or her client which is party to this litigation with respect to this litigation and, in the course thereof, relying upon his or her examination of information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," provided, however, that in rendering such advice and in otherwise communicating with his or her client, such person shall not make any disclosure of information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" to any person not entitled to have access to it.

     10. **PROCEDURE FOR DISCLOSURES TO OTHER PERSONS**.  If it becomes necessary for counsel for a party receiving Confidential Information to seek the assistance of any person, other than those persons referred to in paragraphs 8 and 9, such as any employee of the receiving party, and to disclose certain Confidential Information to such person in order to properly prepare this litigation for trial, the following procedures shall be employed:

     (a) Counsel for the receiving party shall notify, in writing, counsel for the party producing the Confidential Information of their desire to disclose certain Confidential Information and shall identify the person(s) to whom they intend to make disclosure;

PROTECTIVE ORDER

(b) If no objection to such disclosure is made by counsel for the producing party within ten (10) days of such notification, counsel for the receiving party shall be free to make such disclosure to the designated person(s); provided, however, that counsel for the receiving party shall serve upon opposing counsel, prior to disclosure, an Undertaking in the form attached hereto as Exhibit A, whereby such person agrees to comply with and be bound by this Protective Order;

(c) If the producing party objects to such disclosure, no disclosure shall be made. Any party may bring before the court the question of whether the particular Confidential Information can be disclosed to the designated person(s) and the party requesting such disclosure shall have the burden of establishing before the Court the necessity for such disclosure.

11. **CORRECTION OF INADVERTENT FAILURE TO DESIGNATE MATERIAL AS CONFIDENTIAL OR HIGHLY CONFIDENTIAL**. If, through inadvertence, a producing party provides any information pursuant to this litigation without marking the information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" information, the producing party may subsequently inform the receiving party of the CONFIDENTIAL or HIGHLY CONFIDENTIAL nature of the disclosed information, and the receiving party shall treat the disclosed information as CONFIDENTIAL or HIGHLY CONFIDENTIAL information upon receipt of written notice from the producing party. The failure of the producing party to designate material CONFIDENTIAL or HIGHLY CONFIDENTIAL shall not be deemed or construed to constitute an admission that such material is not confidential or proprietary. The receiving party's disclosure of such CONFIDENTIAL or HIGHLY CONFIDENTIAL information to persons not authorized to receive that information prior to receipt of the confidentiality designation shall not be deemed a violation of this Order. However, in the event the document has been distributed in a manner inconsistent with the designation, a receiving party will take reasonable steps to retrieve all copies of the CONFIDENTIAL or HIGHLY CONFIDENTIAL information that are inconsistently designated, or notes or extracts thereof. In the event distribution has occurred to a person not under the control of a receiving party, the

receiving party shall make a request in writing for return of the document and for an Undertaking (in the form provided at Exhibit A). In the event the request is not promptly agreed to in writing, or in the event there is no response, or in the event that the receiving party deems the making of the request to be a useless act, the receiving party shall promptly notify the producing party of the distribution and all pertinent facts concerning it, including the identity of the person or entity not under the control of the receiving party.

12. **CORRECTION OF INADVERTENT PRODUCTION OF PRIVILEGED OR WORK PRODUCT IMMUNE MATERIALS OR INFORMATION**. If a disclosing party inadvertently discloses information that is subject to the attorney-client privilege, the attorney work product doctrine, or that is otherwise immune from discovery, the disclosing party shall promptly upon learning of such disclosure so advise the receiving party in writing, explaining the basis for the claim of privilege or immunity, and request that the item or items of information, and all copies thereof, be returned. No party shall thereafter assert that such disclosure waived any claim of attorney-client privilege, attorney work product, or other immunity. It is further agreed that the receiving party will return or destroy the inadvertently produced item or items of information within five (5) days of the earliest of: (i) discovery by the receiving party of the inadvertent nature of the production; or (ii) receipt of a written request for the return or destruction of such item or items of information.

13. **INFORMATION NOT COVERED BY THIS ORDER**. The restrictions set forth in this Order will not apply to information which is in the possession of or otherwise known to the receiving party or the public before the date of its transmission to the receiving party, or which comes into the possession of or becomes known to the receiving party or comes into the possession of or otherwise becomes known to the public after the date of its transmission to the receiving party, provided that such information does not become publicly known by any act or omission of the receiving party, its employees, or agents which would be in violation of this order. If such information known to or possessed by the receiving party or the public is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL", the receiving party must

provide ten (10) days written notice to the producing party of the pertinent circumstances before the restrictions of this order will be inapplicable.

14. **LIMITATIONS ON USE OF CONFIDENTIAL OR HIGHLY CONFIDENTIAL INFORMATION**. No person or party receiving any CONFIDENTIAL or HIGHLY CONFIDENTIAL information obtained pursuant to any pretrial discovery in this action shall directly or indirectly utilize or disclose such information, except for the purpose of this action and Civil Action 2:07cv-176 in the United States District Court for the Eastern District of Texas, or as permitted by further order of a court of competent jurisdiction, or by subsequent written agreement of the producing party (whether a party or non-party).

15. **CONTESTING DESIGNATION OF CONFIDENTIALITY**. Acceptance by a party of any information, document, or thing designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall not constitute a concession that the information, document or thing is confidential. Any party or interested member of the public may contest a claim of confidentiality. If the receiving party disagrees with the designation and marking by any producing party of any material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL", then the parties shall first try to resolve such disputes on an informal basis. If agreement cannot be reached between counsel, then such dispute may be presented to the Court by any party by motion or otherwise. In the resolution of such matter, the burden of establishing confidentiality shall be on the party who made the claim of confidentiality, but information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be deemed as such until the matter is resolved.

16. **NO LIMITATION OF OTHER RIGHTS**. This Protective Order shall be without prejudice to the right of any party to oppose production of any information on any and all grounds other than confidentiality.

17. **RELIEF FROM OR MODIFICATION OF THIS ORDER**. This Protective Order shall not prevent any party or interested member of the public from applying to the Court for relief therefrom, or from applying to the Court for further or additional protective orders, or from

PROTECTIVE ORDER

agreeing among themselves to modify or vacate this Protective Order, subject to the approval of the Court.

18. **RETURN OF CONFIDENTIAL INFORMATION**. At the conclusion of this action and any related actions, including any appeals, all Confidential Information furnished pursuant to this Protective Order, and all copies thereof, shall be returned to the attorneys of record for the producing party, or destroyed by counsel for the receiving party. In the case where the latter option is used, within thirty (30) days of the conclusion of this action, counsel for the receiving party shall notify counsel for the producing party, in writing, that such destruction has taken place. Notwithstanding the foregoing, outside counsel for the parties may maintain a reasonable number of copies of work product (including internal communications such as e-mail), discovery requests and responses (other than document production), correspondence, briefs, depositions, trial transcripts, trial exhibits, deposition exhibits. The provisions of this Protective Order insofar as it restricts the disclosure, communication of, and use of, Confidential Information produced hereunder shall continue to be binding after the conclusion of this action.

19. **INFORMATION PRODUCED BY THIRD PARTIES**. If discovery is sought of a person or other entity not a party to this action ("third-party") requiring disclosure of information that such third-party believes in good faith must be kept CONFIDENTIAL or HIGHLY CONFIDENTIAL, such information disclosed by the third-party may be shared with only those persons designated in paragraphs 9 and 8 respectively. Additionally such information will be subject to all other protections provided by the remainder of this Order. Furthermore, to the extent that the Court, any party and/or any other person seeks to change the designation of or protection of any such CONFIDENTIAL or HIGHLY CONFIDENTIAL information, use such information in open Court, or provide such information to any person not listed in paragraphs 9 and 8 respectively, the producing third-party shall have notice of no less than ten (10) days and shall be given an opportunity to be heard with respect to such action. Finally, except as provided in paragraph 12 with respect to inadvertent disclosure, the burden of proving that a document is entitled to less protection than that selected by the producing third-party shall be on the receiving

party who seeks to change such designation or use such information in a manner not permitted by paragraph 9 and 8.

20. **PROCESS IN OTHER ACTIONS**.  In the event any person or receiving party having possession, custody, or control of any document, testimony, or information produced in the above captioned action and designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL by a disclosing party receives a subpoena or other process or order to produce such information, such subpoenaed person or entity shall notify by mail the attorneys of record of the disclosing party claiming such confidential treatment of the document sought by such subpoena or other process or order, shall furnish those attorneys with a copy of said subpoena or other process or order, and shall cooperate with respect to any reasonable procedure sought to be pursued by the party whose interest may be affected.  The disclosing party asserting the confidential treatment shall have the burden of defending against such subpoena, process or order.  The person or party receiving the subpoena or other process, or order shall be entitled to comply with it except to the extent the disclosing party asserting the confidential treatment is successful in obtaining an order modifying or quashing it.

21. **APPLICATION OF ORDER TO PREVIOUSLY DISCLOSED MATERIALS**.
This Protective Order shall apply to information and materials produced in this action prior to the entry of this order.

 

 

_____
Honorable Judge Joseph J. Farnan
United States District Court

EXHIBIT A

## **UNDERTAKING OF PROPOSED EXPERT OR OTHER DESIGNEE**

I, _____, hereby acknowledge that I might receive material or information designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" (hereinafter "Confidential Information") as set forth in the Protective Order in this case.

I certify my understanding that the Confidential Information is being provided to me pursuant to the terms and restrictions of the Protective Order, and that I have been given a copy of and have read and understood my obligations under that Protective Order. I hereby agree to be bound by the terms of the Protective Order. I understand that the Confidential Information or any information derived therefrom, including excerpts, summaries, indices, abstracts, or copies thereof, and my copies or notes relating thereto may only be disclosed to or discussed with those persons permitted by the Protective Order to receive such Confidential Information.

I will return on request or at the termination of this action all materials containing, referring to, relating to, or otherwise reflecting Confidential Information, or derived in whole or part from Confidential Information, copies thereof and notes that have been prepared relating thereto, to outside trial counsel for the party by whom or on whose behalf I am employed or retained.

I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Stipulated Protective Order and waive any and all objections to jurisdiction and venue.

_____
(Signature)

_____
(Printed Name)

_____
(Date)