IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG DISPLAY CO., LTD., | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 06-726-JJF |
| AU OPTRONICS CORPORATION; AU OPTRONICS CORPORATION AMERICA; CHI, MEI OPTOELECTRONICS CORPORATION; and CHI MEI OPTOELECTRONICS USA, INC., | ) | |
| Defendants. | ) | |
| AU OPTRONICS CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 07-357-JJF |
| LG DISPLAY CO., LTD. and LG DISPLAY AMERICA, INC., | ) | **CONSOLIDATED CASES** |
| Defendants. | ) | |

## <u>NOTICE OF SUBPOENAS</u>

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil

Procedure, AU Optronics Corporation and AU Optronics Corporation America, by their

counsel, are serving the subpoenas attached hereto and directed to the following:

1)      Apple Inc.

2)      Best Buy Co.,  Inc.

3)      Dell, Inc.

4)      Panasonic Corporation of North America

5)      Hewlett Packard Company

6)      Quanta Computer USA, Inc.

7)    Teledyne Licensing, LLC

8)    Teledyne Lighting and Display Products, Inc.

9)    Teledyne Scientific & Imaging, LLC

10)   Teledyne Technologies, Inc.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*Karen E. Keller*

Richard H. Morse (#531) [rmorse@ycst.com]
John W. Shaw (#3362) [jshaw@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
Karen E. Keller (#4489) [kkeller@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  (302) 571-6600

*Attorneys for AU Optronics Corporation and*
*AU Optronics Corporation America*

Dated:  July 7, 2008

DB02:6955623.1                                                                065944.1001

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on July 7, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard D. Kirk [rkirk@bayardfirm.com]
> Ashley B. Stitzer [astitzer@bayardfirm.com]
> BAYARD, P.A.
> 222 Delaware Avenue, Suite 900
> P.O. Box. 25130
> Wilmington, DE 19899-5130
> (302) 655-5000
> *Attorneys for LG Display Co., Ltd. and LG Display America, Inc.*

> Philip A. Rovner [provner@potteranderson.com]
> David E. Moore [dmoore@potteranderson.com]
> POTTER, ANDERSON & CORROON
> 6th Floor, Hercules Plaza
> 1313 N. Market Street
> Wilmington, DE 19801
> *Attorneys for Chi Mei Optoelectronics Corporation*

I further certify that I caused a copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> ### By E-mail
>
> Gaspare J. Bono [gbono@mckennalong.com]
> Matthew T. Bailey [mbailey@mckennalong.com]
> R. Tyler Goodwyn, IV [tgoodwyn@mckennalong.com]
> Lora A. Brzezynski [lbrzezynski@mckennalong.com]
> Cass W. Christenson [cchristenson@mckennalong.com]
> MCKENNA LONG & ALDRIDGE LLP
> 1900 K Street, NW
> Washington, DC 20006
> (202) 496-7500
> *Attorneys for LG Display Co., Ltd. and LG Display America, Inc.*

Kenneth R. Adamo [kradamo@jonesday.com]
Robert C. Kahrl [rckahrl@jonesday.com]
Arthur P. Licygiewicz [aplicygiewicz@jonesday.com]
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
(216) 586-3939
  *Attorneys for Chi Mei Optoelectronics Corporation*

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

July 7, 2008

*[signature]*

Richard H. Morse (#531) *[rmorse@ycst.com]*
John W. Shaw (No. 3362) *[jshaw@ycst.com]*
Karen L. Pascale (No. 2903) *[kpascale@ycst.com]*
Karen E. Keller (No. 4489) *[kkeller@ycst.com]*
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Phone: 302-571-6600
  *Attorneys for AU Optronics Corporation and*
  *AU Optronics Corporation America*

# TAB 1

AO 88 (Rev. 01/07) Subpoena in a Civil Case

**Issued by the**

**UNITED STATES DISTRICT COURT**

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LG DISPLAY CO., LTD.** | **SUBPOENA IN A CIVIL CASE** |
| **V.** | CASE NUMBER: [1]   1:06-cv-726-JJF  1:07-cv-357-JJF  (Consolidated)  (pending in the District of Delaware) |
| **AU OPTRONICS CORPORATION, et al.** | |

TO:  **Apple Inc.**
c/o CT Corporation System., Registered Agent
818 West Seventh Street
Los Angeles, CA  90017

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  **See Exhibit B for topics**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McKenna Long & Aldridge LLP, 101 California Street, Floor 41, San Francisco, CA  94111 (The deposition may be videotaped.) | August 5, 2008-9:00a |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See Exhibit A.**

| PLACE | DATE AND TIME |
|---|---|
| South Bay Investigations, Attn: John Crowley, 1611 Crenshaw Blvd. – Suite 133, Torrance, CA  90501 | July 17, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure.  30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Andrew A. Lundgren* | July 3, 2008 |
| Attorneys for AU Optronics Corporation and AU Optronics Corporation America | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Andrew A. Lundgren, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (DE Rev.  01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                        DATE                                        SIGNATURE OF SERVER

                                                          _____
                                                          ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

## INSTRUCTIONS

1.   In responding to the present subpoena, you are required to furnish such information as is available to you that is within your possession custody or control, including but not limited to information in the possession of your agents, representatives, or any other person or persons acting on your behalf.

2.   If you have no writings, recordings, documents, or other information responsive to a particular category, please state so in writing.  Additionally, if you have documents responsive to a particular category which you claim are privileged, please state so in writing and please produce all non-privileged documents.  For each document you claim as privileged, please state: (i) the type of privilege you claim; (ii) the nature of the document (*e.g.* letter, memorandum, notes, etc.); (iii) its date; (iv) its author(s) and recipient(s), if any; and (v) the identity of each and every person, other than the identified author(s) or recipient(s), who was sent or provided with the document or a portion of the document.

## DEFINITIONS

3.   "Apple Inc.," "you" or "your" refer to Apple Inc. and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of Apple Inc.; (c) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with Apple Inc.; and (d) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

4.   "LGD" refers to LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies,

corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGD;
(c) all companies through which LGD markets or distributes its LCD Modules in the United
States, including without limitation LGDA; (d) all companies, corporations, partnerships,
associations, or other business entities which are or have been under common ownership or
control, in any manner, with LGD; and (e) each of the present and former officer, directors,
employees, agents, consultants, independent contractors, attorneys, representatives, or other
persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the
foregoing entity acted or purported to act.

     5.  "LGDA" refers to LG Display America, Inc. (formerly known as LG.Philips LCD
America, Inc.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents;
(b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-
interest of LGDA; (c) all companies through which LGDA markets or distributes its LCD
Modules in the United States, including without limitation LGD; (d) all companies, corporations,
partnerships, associations, or other business entities which are or have been under common
ownership or control, in any manner, with LGDA; and (e) each of the present and former officer,
directors, employees, agents, consultants, independent contractors, attorneys, representatives, or
other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the
foregoing entity acted or purported to act.

     6.  The term "LCD Modules" shall refer to any liquid crystal display ("LCD") module(s)
designed, produced, manufactured, sold or offered for sale by, or purchased or otherwise
obtained from, or imported on behalf of, LGD and/or LGDA, including but not limited to,
modules used in or incorporated into televisions, monitors, computers, mobile phones, portable
audio/video devices, automotive devices, industrial, or medical devices, regardless of brand.  The
term "LCD Modules" also includes but is not limited to any custom or special order modules
designed, produced, manufactured, sold or offered for sale by LGD and/or LGDA.

     7.  The term "LCD Product" means any device or product that contains an LCD Module.
An LCD computer monitor, LCD television, laptop computer, a telephone or other portable or

handheld product incorporating an LCD module, and equipment that incorporates an LCD Module are examples of LCD Products. This includes all such devices, regardless of brand name.

8. The term "communications" refers to any form of interpersonal communication, including without limitation any transmission, conveyance, or exchange of word, statement, fact, thing, idea, document, instrument, data, or information, by any medium whether written, verbal, non-verbal or any other means, including without limitation electronic communications and e-mails.

9. The term "person" refers to any natural person, company, corporation, partnership, firm, association, government agency or other organization cognizable at law, and its agents and employees.

10. The term "document" shall have the broadest scope permissible under the Federal Rules of Civil Procedure and includes, for example, all writings, drawings, graphs, charts, photographs, phono-records, schematics, layouts, specifications, data sheets, application notes, marketing presentations and materials, internal presentations, design reports, hardware source code (including, for example, verilog), software source code (including, for example, firmware), pseudocode, timing diagrams, waveform diagrams, test reports, customer complaints and responses, engineering change notices, modification histories, white papers, assembly diagrams, assembly drawings, and assembly instructions, whether or not such documents are claimed to be privileged or confidential, and within the Defendant's possession, custody, or control as set forth in Rule 34(a) of the Federal Rules of Civil Procedure. The term "document" also refers, in addition to the original or original copy, to all copies of any kind that contain any alteration, marking, or omission, or which in any other way are not identical to the original or original copy and all drafts or notes made in the preparation of each document. The term "document" shall further refer to and include all electronic data (including, for example, executable files) in whatever form it may exist.

11. The term "thing" encompasses without limitation all tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure and which are in the possession, custody, or control of the Defendant as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.

12. The term "identify" as used herein shall refer to the following: (a) With respect to a natural person to provide: full name; present or last known business address and telephone number; present or last known residential address and telephone number; and occupation and business position or title held; (b) With respect to a legal or business entity, to provide: full name; place of incorporation or organization (if any); principal place of business; and identification of any representative of such entity who has knowledge relating to any information in connection with which such entity has been identified; (c) With respect to any document or thing, to provide: the date the document or thing bears or was prepared or transmitted; the identity of each person who authored, signed, created or prepared the document or thing; the identity of each addressee and recipient of the document or thing; its title and general character (subject matter); the number of pages in the document; the identity of the persons having possession, custody or control of the original or copies of the document or thing; the present location of the document or thing; and for each document or thing that you contend is privileged, immune or otherwise excludable from discovery, the basis for such claim of privilege, immunity or exclusion (in sufficient detail for the Court to rule on such claim) and whether you would be willing to produce such document or portions of such document under a suitable protective order.

13. The terms "relating to," "relate to," and "related to" mean pertaining to, alluding to, responding to, referring to, commenting on, regarding, recording, evidencing, containing, setting forth, reflecting, illustrating, showing, discussing, disclosing, describing, explaining, summarizing, supporting, contradicting, refuting, or concerning, whether directly or indirectly.

14. The use of the singular form of any word includes the plural, and vice versa, as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

15. The terms "or" as well as "and" shall be construed disjunctively as well as conjunctively as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

16. The term "including" as used herein is not be interpreted as limiting the request and to the contrary is intended to indicate specific examples without limitation.

## REQUESTS

**DOCUMENT REQUEST NO. 1:**

All documents reflecting the order, purchase, sale or delivery, by or to Apple Inc. and/or OEMs, since March 8, 2001, of any LCD Modules from any person, including but not limited to summaries of sales and/or shipments, reports concerning sales and/or shipments, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 2:**

All documents reflecting the order, purchase, sale or delivery by or to Apple Inc. and/or OEMs, since March 8, 2001, of LCD Products from any person that did or could contain LCD Modules, including any summaries, reports, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 3:**

Documents sufficient to identify all products purchased, manufactured, sold, or imported by or for Apple Inc. since March 8, 2001, that did or could contain LCD Modules, including information sufficient to identify which specific LCD Modules have been used in which brands and models of LCD Products.

**DOCUMENT REQUEST NO. 4:**

All documents reflecting offers to sell, offer to buy, price quotes, and/or negotiations concerning Apple Inc. and any LCD Modules since March 8, 2001.

**DOCUMENT REQUEST NO. 5:**

All contracts, agreements or other documents relating to any business arrangement or relationship (past or present) between Apple Inc. and LGD or LGDA.

**DOCUMENT REQUEST NO. 6:**

Summaries, reports, and other documents sufficient to identify all sales and imports into the United States, by or for you, of LCD Products that did or could contain LCD Modules since March 8, 2001, including the dates, brands, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 7:**

Summaries, reports, and other documents sufficient to identify all sales and imports in the United States, by or for you, of LCD Modules since March 8, 2001, including the dates, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 8:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the sale, marketing, supply, distribution, shipping, and/or importation of LCD Modules, or LCD Products containing LCD Modules, including, but not limited to plans, presentations, proposals, strategies, and/or reports (for example, road maps, presentations, product codenames, product or market updates, feasibility studies, product strategies or strategy reports, quarterly business reviews, market reports or trends, meeting agendas, marketing materials and sales kits).

**DOCUMENT REQUEST NO. 9:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the design, development, technical specifications, manufacturing, production, performance, and/or testing of LCD Modules and/or LCD Products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning or reflecting any offer, proposal, or attempt to supply or promote LCD Modules, or LCD Products containing LCD Modules since March 8, 2001, including, for example, communications regarding possible business opportunities to design or supply LCD Modules.

**DOCUMENT REQUEST NO. 11:**

All documents concerning any in-person communications/meetings between Apple Inc. and LGD or LGDA at any time since March 8, 2001, including, but not limited to e-mails, trip reports, agendas, presentations, meeting notes, minutes, or other summary of the in-person communication/meeting, including meetings or visits inside or outside the U.S.

**DOCUMENT REQUEST NO. 12:**

All documents concerning all audits, inspections, approvals, and awards or recognition regarding LGD or LGDA, including their facilities, their manufacturing and production processes, or LCD Modules, or LCD Products containing LCD Modules, since March 8, 2001.

**DOCUMENT REQUEST NO. 13:**

All documents concerning any sales or product support provided by LGD or LGDA since March 8, 2001, including all communications and/or agreements relating to the service, repair, refurbishment, or replacement of LCD Modules, or LCD Products containing LCD Modules in the United States, and all documents regarding warranties or service agreements for the benefit of Apple Inc. or purchasers of LCD Products.

**DOCUMENT REQUEST NO. 14:**

All documents sufficient to identify product or project names and codenames for your LCD Modules or LCD Products, and documents sufficient to link or correlate such names or

codenames to LGD or LGDA product models or other identifiers for LCD Modules, or LCD Products containing LCD Modules used and/or approved for those LCD Product projects and/or codenames, since March 8, 2001.

**DOCUMENT REQUEST NO. 15:**

All documents reflecting any products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 16:**

All marketing and promotional materials or technical presentations created, distributed, published or used in any way by Apple Inc. in the period from March 8, 2001 to present regarding any LCD Module or LCD Product.

**DOCUMENT REQUEST NO. 17:**

All documents reflecting your communications (including e-mail) with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 18:**

All communications sent or received since March 8, 2001 (including e-mail) between Apple Inc. and Dong Hoon Han, the Account Manager of LGDA.

**DOCUMENT REQUEST NO. 19:**

All communications (including e-mail) between Apple Inc., on the one hand, and LGDA or LGD, on the other hand, regarding the incorporation of any LCD Module into any end product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 20:**

All communications (including e-mail) between Apple Inc., on the one hand, and LGDA or LGD, on the other hand, regarding marketing and promotional materials or technical presentations created, distributed, published or used in any way by Apple Inc. in the period from March 8, 2001 to present regarding any LCD Module.

**DOCUMENT REQUEST NO. 21:**

All communications (including e-mail) between Apple Inc., on the one hand, and LGDA or LGD, on the other hand, regarding the quantity of LCD Modules or end products containing LCD Modules that were sold in the United States for any period between March 8, 2001 and present.

**DOCUMENT REQUEST NO. 22:**

All documents, including all communications between you and LGD or LGDA regarding the importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 23:**

All license agreements involving Apple Inc. and LGD or LGDA that relate to any LCD technology.

## EXHIBIT B

The Definitions in Exhibit A are incorporated by reference.  You are requested to produce witness(es) with knowledge concerning the topics set forth below.

## TOPICS

**TOPIC NO. 1:**

The business practice relating to documents produced in response to Exhibit A of this subpoena, including but not limited to:

(a)    the practice relating to the creation of the documents, including the timing of the creation, the authorship of the documents, the information from which the documents were created and the source/author of such information, and whether the documents were created as part of regularly conducted activity as a regular practice; and

(b)    the practice relating to the maintenance of the documents, including whether the documents were kept in the course of regularly conducted activity.

**TOPIC NO. 2:**

All communications sent or received since March 8, 2001, including but not limited to electronic mail, between Apple Inc. and LGD or LGDA.

**TOPIC NO. 3:**

Any business arrangement (whether past or present) between Apple Inc. and LGD or LGDA.

**TOPIC NO. 4:**

Any transaction involving Apple Inc. and LGD or LGDA, including all transactions involving LCD Modules.

**TOPIC NO. 5:**

Apple Inc.'s annual sales of LCD Products or LCD Modules (in units and revenues) in the Unites States from 2001 to present, as well as the price or cost paid associated with such sales.

**TOPIC NO. 6:**

Marketing and promotional materials or technical presentations created, distributed, published or used in any way by Apple Inc. in the period from March 8, 2001 to present regarding any LCD Module.

**TOPIC NO. 7:**

Importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**TOPIC NO. 8:**

Any technical issues regarding any LCD Module you discussed with LGD or LGDA in the period from March 8, 2001 to present.

**TOPIC NO. 9:**

The incorporation of any LCD Module into any end product sold by you in the period from March 8, 2001 to present.

**TOPIC NO. 10:**

The quantity of LCD Modules or end products containing LCD Modules that were sold by you in the United States for any period between March 8, 2001 and present.

**TOPIC NO. 11:**

All presentations, meetings, and in-person communications by or between Apple Inc. and/or LGD or LGDA since March 8, 2001, including but not limited to, the frequency, location, participants and purpose of such presentations, meetings and communications.

**TOPIC NO. 12:**

All actions and efforts by LGD or LGDA to: (a) promote and/or sell LCD Modules or LCD Products to or for Apple Inc.; (b) create new business opportunities with Apple Inc.; and/or (c) support or expand their relationship with Apple Inc..

**TOPIC NO. 13:**

All business relationships, contracts, agreements, letters of agreements, and memoranda of understanding between Apple Inc. and LGD or LGDA regarding the manufacturing, production, design, marketing, sale or supply of LCD Products or LCD Modules.

**TOPIC NO. 14:**

All offers to sell and/or negotiations between Apple Inc. and any person regarding the actual or potential purchase or sale of LCD Modules or LCD Products since March 8, 2001.

**TOPIC NO. 15:**

All LCD Products that contain or incorporate LCD Modules that were or could have been imported, offered for sale, and/or sold in the U.S. since March 8, 2001, including which brands and models of your LCD Products used which models of LCD Modules.

**TOPIC NO. 16:**

Since March 8, 2001, all shipments and sales of LCD Modules to be used for Apple Inc. LCD Products, and all sales and imports in the U.S. by or for you, of LCD Modules (whether alone or as part of an LCD Product).

**TOPIC NO. 17:**

All audits, inspections, approvals, and awards or recognition concerning LGD or LGDA, including, but not limited to, with respect to manufacturing and production processes, facilities, and/or LCD Modules.

**TOPIC NO. 18:**

All products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**TOPIC NO. 19:**

The efforts you took to gather and search for information and documents responsive to this subpoena and your document and email retention policies and practices.

**TOPIC NO. 20:**

All license agreements involving Apple Inc. and LGA or LDGA that relate to any LCD technology.

**TOPIC NO. 21:**

Documents produced in response to Exhibit A of this subpoena.

# TAB 2

AO 88 (Rev. 01/07) Subpoena in a Civil Case

**Issued by the**

**UNITED STATES DISTRICT COURT**

DISTRICT OF MINNESOTA

| | |
|---|---|
| **LG DISPLAY CO., LTD.** | **SUBPOENA IN A CIVIL CASE** |

<table>
<tr><td>**V.**</td><td>CASE NUMBER:[1]</td><td>1:06-cv-726-JJF<br>1:07-cv-357-JJF<br>(Consolidated)<br>(pending in the District of Delaware)</td></tr>
</table>

**AU OPTRONICS CORPORATION, et al.**

TO:
> **Best Buy Co., Inc.**
> CT Corporation System, Registered Agent
> 100 S. 5th Street, #1075
> Minneapolis, MN  55402

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  **See Exhibit B for topics**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Esquire Deposition Services, 701 4th Avenue South, Suite 500, Minneapolis, MN 55415 (The deposition may be videotaped.) | August 14, 2008-9:00a |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See Exhibit A.**

| PLACE | DATE AND TIME |
|---|---|
| Metro Legal Services, Inc., Attn: Dave Halldorson, 330 Second Avenue South – Suite 150, Minneapolis, MN  55401 | July 17, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Andrew A. Lundgren* <br> Attorneys  for AU Optronics Corporation and AU Optronics Corporation America | July 3, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Andrew A. Lundgren, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1]  If action is pending in district other than district of issuance, state district under case number.

AO88  (DE Rev. 01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
               DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

## INSTRUCTIONS

1.  In responding to the present subpoena, you are required to furnish such information as is available to you that is within your possession custody or control, including but not limited to information in the possession of your agents, representatives, or any other person or persons acting on your behalf.

2.  If you have no writings, recordings, documents, or other information responsive to a particular category, please state so in writing.  Additionally, if you have documents responsive to a particular category which you claim are privileged, please state so in writing and please produce all non-privileged documents.  For each document you claim as privileged, please state: (i) the type of privilege you claim; (ii) the nature of the document (*e.g.* letter, memorandum, notes, etc.); (iii) its date; (iv) its author(s) and recipient(s), if any; and (v) the identity of each and every person, other than the identified author(s) or recipient(s), who was sent or provided with the document or a portion of the document.

## DEFINITIONS

3.  "Best Buy Co., Inc.," "you" or "your" refer to Best Buy Co., Inc. and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of Best Buy Co., Inc.; (c) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with Best Buy Co., Inc.; and (d) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

4.  "LGD" refers to LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies,

corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGD;

(c) all companies through which LGD markets or distributes its LCD Modules in the United

States, including without limitation LGDA; (d) all companies, corporations, partnerships,

associations, or other business entities which are or have been under common ownership or

control, in any manner, with LGD; and (e) each of the present and former officer, directors,

employees, agents, consultants, independent contractors, attorneys, representatives, or other

persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the

foregoing entity acted or purported to act.

     5.  "LGDA" refers to LG Display America, Inc. (formerly known as LG.Philips LCD

America, Inc.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents;

(b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-

interest of LGDA; (c) all companies through which LGDA markets or distributes its LCD

Modules in the United States, including without limitation LGD; (d) all companies, corporations,

partnerships, associations, or other business entities which are or have been under common

ownership or control, in any manner, with LGDA; and (e) each of the present and former officer,

directors, employees, agents, consultants, independent contractors, attorneys, representatives, or

other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the

foregoing entity acted or purported to act.

     6.  The term "LCD Modules" shall refer to any liquid crystal display ("LCD") module(s)

designed, produced, manufactured, sold or offered for sale by, or purchased or otherwise

obtained from, or imported on behalf of, LGD and/or LGDA, including but not limited to,

modules used in or incorporated into televisions, monitors, computers, mobile phones, portable

audio/video devices, automotive devices, industrial, or medical devices, regardless of brand. The

term "LCD Modules" also includes but is not limited to any custom or special order modules

designed, produced, manufactured, sold or offered for sale by LGD and/or LGDA.

     7.  The term "LCD Product" means any device or product that contains an LCD Module.

An LCD computer monitor, LCD television, laptop computer, a telephone or other portable or

handheld product incorporating an LCD module, and equipment that incorporates an LCD

Module are examples of LCD Products. This includes all such devices, regardless of brand

name.

8. The term "communications" refers to any form of interpersonal communication,

including without limitation any transmission, conveyance, or exchange of word, statement, fact,

thing, idea, document, instrument, data, or information, by any medium whether written, verbal,

non-verbal or any other means, including without limitation electronic communications and

e-mails.

9. The term "person" refers to any natural person, company, corporation, partnership,

firm, association, government agency or other organization cognizable at law, and its agents and

employees.

10. The term "document" shall have the broadest scope permissible under the Federal

Rules of Civil Procedure and includes, for example, all writings, drawings, graphs, charts,

photographs, phono-records, schematics, layouts, specifications, data sheets, application notes,

marketing presentations and materials, internal presentations, design reports, hardware source

code (including, for example, verilog), software source code (including, for example, firmware),

pseudocode, timing diagrams, waveform diagrams, test reports, customer complaints and

responses, engineering change notices, modification histories, white papers, assembly diagrams,

assembly drawings, and assembly instructions, whether or not such documents are claimed to be

privileged or confidential, and within the Defendant's possession, custody, or control as set forth

in Rule 34(a) of the Federal Rules of Civil Procedure. The term "document" also refers, in

addition to the original or original copy, to all copies of any kind that contain any alteration,

marking, or omission, or which in any other way are not identical to the original or original copy

and all drafts or notes made in the preparation of each document. The term "document" shall

further refer to and include all electronic data (including, for example, executable files) in

whatever form it may exist.

11. The term "thing" encompasses without limitation all tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure and which are in the possession, custody, or control of the Defendant as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.

12. The term "identify" as used herein shall refer to the following: (a) With respect to a natural person to provide: full name; present or last known business address and telephone number; present or last known residential address and telephone number; and occupation and business position or title held; (b) With respect to a legal or business entity, to provide: full name; place of incorporation or organization (if any); principal place of business; and identification of any representative of such entity who has knowledge relating to any information in connection with which such entity has been identified; (c) With respect to any document or thing, to provide: the date the document or thing bears or was prepared or transmitted; the identity of each person who authored, signed, created or prepared the document or thing; the identity of each addressee and recipient of the document or thing; its title and general character (subject matter); the number of pages in the document; the identity of the persons having possession, custody or control of the original or copies of the document or thing; the present location of the document or thing; and for each document or thing that you contend is privileged, immune or otherwise excludable from discovery, the basis for such claim of privilege, immunity or exclusion (in sufficient detail for the Court to rule on such claim) and whether you would be willing to produce such document or portions of such document under a suitable protective order.

13. The terms "relating to," "relate to," and "related to" mean pertaining to, alluding to, responding to, referring to, commenting on, regarding, recording, evidencing, containing, setting forth, reflecting, illustrating, showing, discussing, disclosing, describing, explaining, summarizing, supporting, contradicting, refuting, or concerning, whether directly or indirectly.

14. The use of the singular form of any word includes the plural, and vice versa, as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

15. The terms "or" as well as "and" shall be construed disjunctively as well as conjunctively as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

16. The term "including" as used herein is not be interpreted as limiting the request and to the contrary is intended to indicate specific examples without limitation.

## REQUESTS

**DOCUMENT REQUEST NO. 1:**

All documents reflecting the order, purchase, sale or delivery, by or to Best Buy Co., Inc. and/or OEMs, since March 8, 2001, of any LCD Modules from any person, including but not limited to summaries of sales and/or shipments, reports concerning sales and/or shipments, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 2:**

All documents reflecting the order, purchase, sale or delivery by or to Best Buy Co., Inc. and/or OEMs, since March 8, 2001, of LCD Products from any person that did or could contain LCD Modules, including any summaries, reports, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 3:**

Documents sufficient to identify all products purchased, manufactured, sold, or imported by or for Best Buy Co., Inc. since March 8, 2001, that did or could contain LCD Modules, including information sufficient to identify which specific LCD Modules have been used in which brands and models of LCD Products.

**DOCUMENT REQUEST NO. 4:**

All documents reflecting offers to sell, offer to buy, price quotes, and/or negotiations concerning Best Buy Co., Inc. and any LCD Modules since March 8, 2001.

**DOCUMENT REQUEST NO. 5:**

All contracts, agreements or other documents relating to any business arrangement or relationship (past or present) between Best Buy Co., Inc. and LGD or LGDA.

**DOCUMENT REQUEST NO. 6:**

Summaries, reports, and other documents sufficient to identify all sales and imports into the United States, by or for you, of LCD Products that did or could contain LCD Modules since March 8, 2001, including the dates, brands, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 7:**

Summaries, reports, and other documents sufficient to identify all sales and imports in the United States, by or for you, of LCD Modules since March 8, 2001, including the dates, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 8:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the sale, marketing, supply, distribution, shipping, and/or importation of LCD Modules, or LCD Products containing LCD Modules, including, but not limited to plans, presentations, proposals, strategies, and/or reports (for example, road maps, presentations, product codenames, product or market updates, feasibility studies, product strategies or strategy reports, quarterly business reviews, market reports or trends, meeting agendas, marketing materials and sales kits).

**DOCUMENT REQUEST NO. 9:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the design, development, technical specifications, manufacturing, production, performance, and/or testing of LCD Modules and/or LCD Products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning or reflecting any offer, proposal, or attempt to supply or promote LCD Modules, or LCD Products containing LCD Modules since March 8, 2001, including, for example, communications regarding possible business opportunities to design or supply LCD Modules.

**DOCUMENT REQUEST NO. 11:**

All documents concerning any in-person communications/meetings between Best Buy Co., Inc. and LGD or LGDA at any time since March 8, 2001, including, but not limited to e-mails, trip reports, agendas, presentations, meeting notes, minutes, or other summary of the in-person communication/meeting, including meetings or visits inside or outside the U.S.

**DOCUMENT REQUEST NO. 12:**

All documents concerning all audits, inspections, approvals, and awards or recognition regarding LGD or LGDA, including their facilities, their manufacturing and production processes, or LCD Modules, or LCD Products containing LCD Modules, since March 8, 2001.

**DOCUMENT REQUEST NO. 13:**

All documents concerning any sales or product support provided by LGD or LGDA since March 8, 2001, including all communications and/or agreements relating to the service, repair, refurbishment, or replacement of LCD Modules, or LCD Products containing LCD Modules in the United States, and all documents regarding warranties or service agreements for the benefit of Best Buy Co., Inc. or purchasers of LCD Products.

**DOCUMENT REQUEST NO. 14:**

All documents sufficient to identify product or project names and codenames for your LCD Modules or LCD Products, and documents sufficient to link or correlate such names or

codenames to LGD or LGDA product models or other identifiers for LCD Modules, or LCD Products containing LCD Modules used and/or approved for those LCD Product projects and/or codenames, since March 8, 2001.

**DOCUMENT REQUEST NO. 15:**

All documents reflecting any products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 16:**

All marketing and promotional materials or technical presentations created, distributed, published or used in any way by Best Buy Co., Inc. in the period from March 8, 2001 to present regarding any LCD Module or LCD Product.

**DOCUMENT REQUEST NO. 17:**

All documents reflecting your communications (including e-mail) with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 18:**

All communications sent or received since March 8, 2001 (including e-mail) between Best Buy Co., Inc. and Dong Hoon Han, the Account Manager of LGDA.

**DOCUMENT REQUEST NO. 19:**

All communications (including e-mail) between Best Buy Co., Inc., on the one hand, and LGDA or LGD, on the other hand, regarding the incorporation of any LCD Module into any end product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 20:**

All communications (including e-mail) between Best Buy Co., Inc., on the one hand, and LGDA or LGD, on the other hand, regarding marketing and promotional materials or technical presentations created, distributed, published or used in any way by Best Buy Co., Inc. in the period from March 8, 2001 to present regarding any LCD Module.

**<u>DOCUMENT REQUEST NO. 21</u>:**

All communications (including e-mail) between Best Buy Co., Inc., on the one hand, and LGDA or LGD, on the other hand, regarding the quantity of LCD Modules or end products containing LCD Modules that were sold in the United States for any period between March 8, 2001 and present.

**<u>DOCUMENT REQUEST NO. 22</u>:**

All documents, including all communications between you and LGD or LGDA regarding the importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**<u>DOCUMENT REQUEST NO. 23</u>:**

All license agreements involving Best Buy Co., Inc. and LGD or LGDA that relate to any LCD technology.

**EXHIBIT B**

The Definitions in Exhibit A are incorporated by reference.  You are requested to produce witness(es) with knowledge concerning the topics set forth below.

**TOPICS**

**TOPIC NO. 1:**

The business practice relating to documents produced in response to Exhibit A of this subpoena, including but not limited to:

(a)    the practice relating to the creation of the documents, including the timing of the creation, the authorship of the documents, the information from which the documents were created and the source/author of such information, and whether the documents were created as part of regularly conducted activity as a regular practice; and

(b)    the practice relating to the maintenance of the documents, including whether the documents were kept in the course of regularly conducted activity.

**TOPIC NO. 2:**

All communications sent or received since March 8, 2001, including but not limited to electronic mail, between Best Buy Co., Inc. and LGD or LGDA.

**TOPIC NO. 3:**

Any business arrangement (whether past or present) between Best Buy Co., Inc. and LGD or LGDA.

**TOPIC NO. 4:**

Any transaction involving Best Buy Co., Inc. and LGD or LGDA, including all transactions involving LCD Modules.

**TOPIC NO. 5:**

Best Buy Co., Inc.'s annual sales of LCD Products or LCD Modules (in units and revenues) in the Unites States from 2001 to present, as well as the price or cost paid associated with such sales.

**TOPIC NO. 6:**

Marketing and promotional materials or technical presentations created, distributed, published or used in any way by Best Buy Co., Inc. in the period from March 8, 2001 to present regarding any LCD Module.

**TOPIC NO. 7:**

Importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**TOPIC NO. 8:**

Any technical issues regarding any LCD Module you discussed with LGD or LGDA in the period from March 8, 2001 to present.

**TOPIC NO. 9:**

The incorporation of any LCD Module into any end product sold by you in the period from March 8, 2001 to present.

**TOPIC NO. 10:**

The quantity of LCD Modules or end products containing LCD Modules that were sold by you in the United States for any period between March 8, 2001 and present.

**TOPIC NO. 11:**

All presentations, meetings, and in-person communications by or between Best Buy Co., Inc. and/or LGD or LGDA since March 8, 2001, including but not limited to, the frequency, location, participants and purpose of such presentations, meetings and communications.

**TOPIC NO. 12:**

All actions and efforts by LGD or LGDA to: (a) promote and/or sell LCD Modules or LCD Products to or for Best Buy Co., Inc.; (b) create new business opportunities with Best Buy Co., Inc.; and/or (c) support or expand their relationship with Best Buy Co., Inc..

**TOPIC NO. 13:**

All business relationships, contracts, agreements, letters of agreements, and memoranda of understanding between Best Buy Co., Inc. and LGD or LGDA regarding the manufacturing, production, design, marketing, sale or supply of LCD Products or LCD Modules.

**TOPIC NO. 14:**

All offers to sell and/or negotiations between Best Buy Co., Inc. and any person regarding the actual or potential purchase or sale of LCD Modules or LCD Products since March 8, 2001.

**TOPIC NO. 15:**

All LCD Products that contain or incorporate LCD Modules that were or could have been imported, offered for sale, and/or sold in the U.S. since March 8, 2001, including which brands and models of your LCD Products used which models of LCD Modules.

**TOPIC NO. 16:**

Since March 8, 2001, all shipments and sales of LCD Modules to be used for Best Buy Co., Inc. LCD Products, and all sales and imports in the U.S. by or for you, of LCD Modules (whether alone or as part of an LCD Product).

**TOPIC NO. 17:**

All audits, inspections, approvals, and awards or recognition concerning LGD or LGDA, including, but not limited to, with respect to manufacturing and production processes, facilities, and/or LCD Modules.

**TOPIC NO. 18:**

All products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**TOPIC NO. 19:**

The efforts you took to gather and search for information and documents responsive to this subpoena and your document and email retention policies and practices.

**TOPIC NO. 20:**

All license agreements involving Best Buy Co., Inc. and LGA or LDGA that relate to any LCD technology.

**TOPIC NO. 21:**

Documents produced in response to Exhibit A of this subpoena.

# TAB 3

AO 88 (Rev. 01/07) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

LG DISPLAY CO., LTD.

**V.**

AU OPTRONICS CORPORATION, et al.

## SUBPOENA IN A CIVIL CASE

| CASE NUMBER: [1] | 1:06-cv-726-JJF<br>1:07-cv-357-JJF<br>(Consolidated) |
| --- | --- |

TO: **Dell, Inc.**
c/o Corporation Service Company, Registered Agent
2711 Centerville Road, Suite 400
Wilmington, DE 19808

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. **See Exhibit B for topics**

| PLACE OF DEPOSITION<br>Esquire Deposition Services, 3101 Bee Caves Road, Suite 220, Austin, TX 78746 (The deposition may be videotaped.) | DATE AND TIME<br>August 15, 2008-9:00a |
| --- | --- |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Exhibit A.**

| PLACE<br>Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West Street, P.O. Box 391, Wilmington, DE 19899-0391 | DATE AND TIME<br>July 17, 2008-9:00a |
| --- | --- |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>*Karen E Keller*<br>Attorneys for AU Optronics Corporation and AU Optronics Corporation America | DATE<br>July 3, 2008 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Karen E. Keller, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (DE Rev. 01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                          DATE                                      SIGNATURE OF SERVER

                                                    _____
                                                    ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**EXHIBIT A**

**INSTRUCTIONS**

1.  In responding to the present subpoena, you are required to furnish such information as is available to you that is within your possession custody or control, including but not limited to information in the possession of your agents, representatives, or any other person or persons acting on your behalf.

2.  If you have no writings, recordings, documents, or other information responsive to a particular category, please state so in writing.  Additionally, if you have documents responsive to a particular category which you claim are privileged, please state so in writing and please produce all non-privileged documents.  For each document you claim as privileged, please state: (i) the type of privilege you claim; (ii) the nature of the document (*e.g.* letter, memorandum, notes, etc.); (iii) its date; (iv) its author(s) and recipient(s), if any; and (v) the identity of each and every person, other than the identified author(s) or recipient(s), who was sent or provided with the document or a portion of the document.

**DEFINITIONS**

3.  "Dell, Inc.," "you" or "your" refer to Dell, Inc. and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of Dell, Inc.; (c) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with Dell, Inc.; and (d) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

4.  "LGD" refers to LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies,

corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGD;
(c) all companies through which LGD markets or distributes its LCD Modules in the United
States, including without limitation LGDA; (d) all companies, corporations, partnerships,
associations, or other business entities which are or have been under common ownership or
control, in any manner, with LGD; and (e) each of the present and former officer, directors,
employees, agents, consultants, independent contractors, attorneys, representatives, or other
persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the
foregoing entity acted or purported to act.

  5. "LGDA" refers to LG Display America, Inc. (formerly known as LG.Philips LCD
America, Inc.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents;
(b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-
interest of LGDA; (c) all companies through which LGDA markets or distributes its LCD
Modules in the United States, including without limitation LGD; (d) all companies, corporations,
partnerships, associations, or other business entities which are or have been under common
ownership or control, in any manner, with LGDA; and (e) each of the present and former officer,
directors, employees, agents, consultants, independent contractors, attorneys, representatives, or
other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the
foregoing entity acted or purported to act.

  6. The term "LCD Modules" shall refer to any liquid crystal display ("LCD") module(s)
designed, produced, manufactured, sold or offered for sale by, or purchased or otherwise
obtained from, or imported on behalf of, LGD and/or LGDA, including but not limited to,
modules used in or incorporated into televisions, monitors, computers, mobile phones, portable
audio/video devices, automotive devices, industrial, or medical devices, regardless of brand. The
term "LCD Modules" also includes but is not limited to any custom or special order modules
designed, produced, manufactured, sold or offered for sale by LGD and/or LGDA.

  7. The term "LCD Product" means any device or product that contains an LCD Module.
An LCD computer monitor, LCD television, laptop computer, a telephone or other portable or

handheld product incorporating an LCD module, and equipment that incorporates an LCD
Module are examples of LCD Products. This includes all such devices, regardless of brand
name.

8.   The term "communications" refers to any form of interpersonal communication,
including without limitation any transmission, conveyance, or exchange of word, statement, fact,
thing, idea, document, instrument, data, or information, by any medium whether written, verbal,
non-verbal or any other means, including without limitation electronic communications and
e-mails.

9.   The term "person" refers to any natural person, company, corporation, partnership,
firm, association, government agency or other organization cognizable at law, and its agents and
employees.

10.  The term "document" shall have the broadest scope permissible under the Federal
Rules of Civil Procedure and includes, for example, all writings, drawings, graphs, charts,
photographs, phono-records, schematics, layouts, specifications, data sheets, application notes,
marketing presentations and materials, internal presentations, design reports, hardware source
code (including, for example, verilog), software source code (including, for example, firmware),
pseudocode, timing diagrams, waveform diagrams, test reports, customer complaints and
responses, engineering change notices, modification histories, white papers, assembly diagrams,
assembly drawings, and assembly instructions, whether or not such documents are claimed to be
privileged or confidential, and within the Defendant's possession, custody, or control as set forth
in Rule 34(a) of the Federal Rules of Civil Procedure. The term "document" also refers, in
addition to the original or original copy, to all copies of any kind that contain any alteration,
marking, or omission, or which in any other way are not identical to the original or original copy
and all drafts or notes made in the preparation of each document. The term "document" shall
further refer to and include all electronic data (including, for example, executable files) in
whatever form it may exist.

11. The term "thing" encompasses without limitation all tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure and which are in the possession, custody, or control of the Defendant as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.

12. The term "identify" as used herein shall refer to the following: (a) With respect to a natural person to provide: full name; present or last known business address and telephone number; present or last known residential address and telephone number; and occupation and business position or title held; (b) With respect to a legal or business entity, to provide: full name; place of incorporation or organization (if any); principal place of business; and identification of any representative of such entity who has knowledge relating to any information in connection with which such entity has been identified; (c) With respect to any document or thing, to provide: the date the document or thing bears or was prepared or transmitted; the identity of each person who authored, signed, created or prepared the document or thing; the identity of each addressee and recipient of the document or thing; its title and general character (subject matter); the number of pages in the document; the identity of the persons having possession, custody or control of the original or copies of the document or thing; the present location of the document or thing; and for each document or thing that you contend is privileged, immune or otherwise excludable from discovery, the basis for such claim of privilege, immunity or exclusion (in sufficient detail for the Court to rule on such claim) and whether you would be willing to produce such document or portions of such document under a suitable protective order.

13. The terms "relating to," "relate to," and "related to" mean pertaining to, alluding to, responding to, referring to, commenting on, regarding, recording, evidencing, containing, setting forth, reflecting, illustrating, showing, discussing, disclosing, describing, explaining, summarizing, supporting, contradicting, refuting, or concerning, whether directly or indirectly.

14. The use of the singular form of any word includes the plural, and vice versa, as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

15. The terms "or" as well as "and" shall be construed disjunctively as well as conjunctively as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

16. The term "including" as used herein is not be interpreted as limiting the request and to the contrary is intended to indicate specific examples without limitation.

## REQUESTS

**DOCUMENT REQUEST NO. 1:**

All documents reflecting the order, purchase, sale or delivery, by or to Dell, Inc. and/or OEMs, since March 8, 2001, of any LCD Modules from any person, including but not limited to summaries of sales and/or shipments, reports concerning sales and/or shipments, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 2:**

All documents reflecting the order, purchase, sale or delivery by or to Dell, Inc. and/or OEMs, since March 8, 2001, of LCD Products from any person that did or could contain LCD Modules, including any summaries, reports, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 3:**

Documents sufficient to identify all products purchased, manufactured, sold, or imported by or for Dell, Inc. since March 8, 2001, that did or could contain LCD Modules, including information sufficient to identify which specific LCD Modules have been used in which brands and models of LCD Products.

**DOCUMENT REQUEST NO. 4:**

All documents reflecting offers to sell, offer to buy, price quotes, and/or negotiations concerning Dell, Inc. and any LCD Modules since March 8, 2001.

**DOCUMENT REQUEST NO. 5:**

All contracts, agreements or other documents relating to any business arrangement or relationship (past or present) between Dell, Inc. and LGD or LGDA.

**DOCUMENT REQUEST NO. 6:**

Summaries, reports, and other documents sufficient to identify all sales and imports into the United States, by or for you, of LCD Products that did or could contain LCD Modules since March 8, 2001, including the dates, brands, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 7:**

Summaries, reports, and other documents sufficient to identify all sales and imports in the United States, by or for you, of LCD Modules since March 8, 2001, including the dates, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 8:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the sale, marketing, supply, distribution, shipping, and/or importation of LCD Modules, or LCD Products containing LCD Modules, including, but not limited to plans, presentations, proposals, strategies, and/or reports (for example, road maps, presentations, product codenames, product or market updates, feasibility studies, product strategies or strategy reports, quarterly business reviews, market reports or trends, meeting agendas, marketing materials and sales kits).

**DOCUMENT REQUEST NO. 9:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the design, development, technical specifications, manufacturing, production, performance, and/or testing of LCD Modules and/or LCD Products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning or reflecting any offer, proposal, or attempt to supply or promote LCD Modules, or LCD Products containing LCD Modules since March 8, 2001, including, for example, communications regarding possible business opportunities to design or supply LCD Modules.

**DOCUMENT REQUEST NO. 11:**

All documents concerning any in-person communications/meetings between Dell, Inc. and LGD or LGDA at any time since March 8, 2001, including, but not limited to e-mails, trip reports, agendas, presentations, meeting notes, minutes, or other summary of the in-person communication/meeting, including meetings or visits inside or outside the U.S.

**DOCUMENT REQUEST NO. 12:**

All documents concerning all audits, inspections, approvals, and awards or recognition regarding LGD or LGDA, including their facilities, their manufacturing and production processes, or LCD Modules, or LCD Products containing LCD Modules, since March 8, 2001.

**DOCUMENT REQUEST NO. 13:**

All documents concerning any sales or product support provided by LGD or LGDA since March 8, 2001, including all communications and/or agreements relating to the service, repair, refurbishment, or replacement of LCD Modules, or LCD Products containing LCD Modules in the United States, and all documents regarding warranties or service agreements for the benefit of Dell, Inc. or purchasers of LCD Products.

**DOCUMENT REQUEST NO. 14:**

All documents sufficient to identify product or project names and codenames for your LCD Modules or LCD Products, and documents sufficient to link or correlate such names or

codenames to LGD or LGDA product models or other identifiers for LCD Modules, or LCD

Products containing LCD Modules used and/or approved for those LCD Product projects and/or

codenames, since March 8, 2001.

**DOCUMENT REQUEST NO. 15:**

All documents reflecting any products and specifications that you approved, designed,

developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since

March 8, 2001.

**DOCUMENT REQUEST NO. 16:**

All marketing and promotional materials or technical presentations created, distributed,

published or used in any way by Dell, Inc. in the period from March 8, 2001 to present regarding

any LCD Module or LCD Product.

**DOCUMENT REQUEST NO. 17:**

All documents reflecting your communications (including e-mail) with LGD or LGDA

since March 8, 2001.

**DOCUMENT REQUEST NO. 18:**

All communications sent or received since March 8, 2001 (including e-mail)  between

Dell, Inc. and Dong Hoon Han, the Account Manager of LGDA.

**DOCUMENT REQUEST NO. 19:**

All communications (including e-mail) between Dell, Inc., on the one hand, and LGDA

or LGD, on the other hand, regarding the incorporation of any LCD Module into any end product

in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 20:**

All communications (including e-mail) between Dell, Inc., on the one hand, and LGDA

or LGD, on the other hand, regarding marketing and promotional materials or technical

presentations created, distributed, published or used in any way by Dell, Inc. in the period from

March 8, 2001 to present regarding any LCD Module.

**DOCUMENT REQUEST NO. 21:**

     All communications (including e-mail) between Dell, Inc., on the one hand, and LGDA or LGD, on the other hand, regarding the quantity of LCD Modules or end products containing LCD Modules that were sold in the United States for any period between March 8, 2001 and present.

**DOCUMENT REQUEST NO. 22:**

     All documents, including all communications between you and LGD or LGDA regarding the importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 23:**

     All license agreements involving Dell, Inc. and LGD or LGDA that relate to any LCD technology.

**EXHIBIT B**

The Definitions in Exhibit A are incorporated by reference.  You are requested to produce witness(es) with knowledge concerning the topics set forth below.

**TOPICS**

**TOPIC NO. 1:**

The business practice relating to documents produced in response to Exhibit A of this subpoena, including but not limited to:

(a)     the practice relating to the creation of the documents, including the timing of the creation, the authorship of the documents, the information from which the documents were created and the source/author of such information, and whether the documents were created as part of regularly conducted activity as a regular practice; and

(b)     the practice relating to the maintenance of the documents, including whether the documents were kept in the course of regularly conducted activity.

**TOPIC NO. 2:**

All communications sent or received since March 8, 2001, including but not limited to electronic mail, between Dell, Inc. and LGD or LGDA.

**TOPIC NO. 3:**

Any business arrangement (whether past or present) between Dell, Inc. and LGD or LGDA.

**TOPIC NO. 4:**

Any transaction involving Dell, Inc. and LGD or LGDA, including all transactions involving LCD Modules.

**TOPIC NO. 5:**

Dell, Inc.'s annual sales of LCD Products or LCD Modules (in units and revenues) in the Unites States from 2001 to present, as well as the price or cost paid associated with such sales.

**TOPIC NO. 6:**

Marketing and promotional materials or technical presentations created, distributed, published or used in any way by Dell, Inc. in the period from March 8, 2001 to present regarding any LCD Module.

**TOPIC NO. 7:**

Importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**TOPIC NO. 8:**

Any technical issues regarding any LCD Module you discussed with LGD or LGDA in the period from March 8, 2001 to present.

**TOPIC NO. 9:**

The incorporation of any LCD Module into any end product sold by you in the period from March 8, 2001 to present.

**TOPIC NO. 10:**

The quantity of LCD Modules or end products containing LCD Modules that were sold by you in the United States for any period between March 8, 2001 and present.

**TOPIC NO. 11:**

All presentations, meetings, and in-person communications by or between Dell, Inc. and/or LGD or LGDA since March 8, 2001, including but not limited to, the frequency, location, participants and purpose of such presentations, meetings and communications.

**TOPIC NO. 12:**

All actions and efforts by LGD or LGDA to: (a) promote and/or sell LCD Modules or LCD Products to or for Dell, Inc.; (b) create new business opportunities with Dell, Inc.; and/or (c) support or expand their relationship with Dell, Inc..

**TOPIC NO. 13:**

All business relationships, contracts, agreements, letters of agreements, and memoranda of understanding between Dell, Inc. and LGD or LGDA regarding the manufacturing, production, design, marketing, sale or supply of LCD Products or LCD Modules.

**TOPIC NO. 14:**

All offers to sell and/or negotiations between Dell, Inc. and any person regarding the actual or potential purchase or sale of LCD Modules or LCD Products since March 8, 2001.

**TOPIC NO. 15:**

All LCD Products that contain or incorporate LCD Modules that were or could have been imported, offered for sale, and/or sold in the U.S. since March 8, 2001, including which brands and models of your LCD Products used which models of LCD Modules.

**TOPIC NO. 16:**

Since March 8, 2001, all shipments and sales of LCD Modules to be used for Dell, Inc. LCD Products, and all sales and imports in the U.S. by or for you, of LCD Modules (whether alone or as part of an LCD Product).

**TOPIC NO. 17:**

All audits, inspections, approvals, and awards or recognition concerning LGD or LGDA, including, but not limited to, with respect to manufacturing and production processes, facilities, and/or LCD Modules.

**TOPIC NO. 18:**

All products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**TOPIC NO. 19:**

The efforts you took to gather and search for information and documents responsive to this subpoena and your document and email retention policies and practices.

**TOPIC NO. 20:**

All license agreements involving Dell, Inc. and LGA or LDGA that relate to any LCD technology.

**TOPIC NO. 21:**

Documents produced in response to Exhibit A of this subpoena.

# TAB 4

AO 88 (Rev. 01/07) Subpoena in a Civil Case

# Issued by the
## UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| **LG DISPLAY CO., LTD.** | **SUBPOENA IN A CIVIL CASE** |
| **v.** | CASE NUMBER: [1]  1:06-cv-726-JJF  1:07-cv-357-JJF  (Consolidated) |

**AU OPTRONICS CORPORATION, et al.**

TO:  **Panasonic Corporation of North America**
c/o The Corporation Trust Company, Registered Agent
Corporation Trust Center, 1209 Orange Street
Wilmington, DE 19801

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  **See Exhibit B for topics**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McKenna Long & Aldridge LLP, 230 Park Avenue, Suite 1700, New York, NY 10169 (The deposition may be videotaped.) | August 12, 2008-9:00a |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See Exhibit A.**

| PLACE | DATE AND TIME |
|---|---|
| Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West Street, P.O. Box 391, Wilmington, DE 19899-0391 | July 17, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE July 3, 2008 |
|---|---|
| *[signature]* Attorneys for AU Optronics Corporation and AU Optronics Corporation America | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Karen E. Keller, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (DE Rev. 01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT A

## INSTRUCTIONS

1.  In responding to the present subpoena, you are required to furnish such information as is available to you that is within your possession custody or control, including but not limited to information in the possession of your agents, representatives, or any other person or persons acting on your behalf.

2.  If you have no writings, recordings, documents, or other information responsive to a particular category, please state so in writing.  Additionally, if you have documents responsive to a particular category which you claim are privileged, please state so in writing and please produce all non-privileged documents.  For each document you claim as privileged, please state: (i) the type of privilege you claim; (ii) the nature of the document (*e.g.* letter, memorandum, notes, etc.); (iii) its date; (iv) its author(s) and recipient(s), if any; and (v) the identity of each and every person, other than the identified author(s) or recipient(s), who was sent or provided with the document or a portion of the document.

## DEFINITIONS

3.  "Panasonic Corporation of North America," "you" or "your" refer to Panasonic Corporation of North America and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of Panasonic Corporation of North America; (c) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with Panasonic Corporation of North America; and (d) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

4.  "LGD" refers to LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGD; (c) all companies through which LGD markets or distributes its LCD Modules in the United States, including without limitation LGDA; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGD; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

5.  "LGDA" refers to LG Display America, Inc. (formerly known as LG.Philips LCD America, Inc.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGDA; (c) all companies through which LGDA markets or distributes its LCD Modules in the United States, including without limitation LGD; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGDA; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

6.  The term "LCD Modules" shall refer to any liquid crystal display ("LCD") module(s) designed, produced, manufactured, sold or offered for sale by, or purchased or otherwise obtained from, or imported on behalf of, LGD and/or LGDA, including but not limited to, modules used in or incorporated into televisions, monitors, computers, mobile phones, portable audio/video devices, automotive devices, industrial, or medical devices, regardless of brand. The term "LCD Modules" also includes but is not limited to any custom or special order modules designed, produced, manufactured, sold or offered for sale by LGD and/or LGDA.

7.   The term "LCD Product" means any device or product that contains an LCD Module. An LCD computer monitor, LCD television, laptop computer, a telephone or other portable or handheld product incorporating an LCD module, and equipment that incorporates an LCD Module are examples of LCD Products.  This includes all such devices, regardless of brand name.

8.   The term "communications" refers to any form of interpersonal communication, including without limitation any transmission, conveyance, or exchange of word, statement, fact, thing, idea, document, instrument, data, or information, by any medium whether written, verbal, non-verbal or any other means, including without limitation electronic communications and e-mails.

9.   The term "person" refers to any natural person, company, corporation, partnership, firm, association, government agency or other organization cognizable at law, and its agents and employees.

10.   The term "document" shall have the broadest scope permissible under the Federal Rules of Civil Procedure and includes, for example, all writings, drawings, graphs, charts, photographs, phono-records, schematics, layouts, specifications, data sheets, application notes, marketing presentations and materials, internal presentations, design reports, hardware source code (including, for example, verilog), software source code (including, for example, firmware), pseudocode, timing diagrams, waveform diagrams, test reports, customer complaints and responses, engineering change notices, modification histories, white papers, assembly diagrams, assembly drawings, and assembly instructions, whether or not such documents are claimed to be privileged or confidential, and within the Defendant's possession, custody, or control as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.  The term "document" also refers, in addition to the original or original copy, to all copies of any kind that contain any alteration, marking, or omission, or which in any other way are not identical to the original or original copy and all drafts or notes made in the preparation of each document.  The term "document" shall

further refer to and include all electronic data (including, for example, executable files) in whatever form it may exist.

11. The term "thing" encompasses without limitation all tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure and which are in the possession, custody, or control of the Defendant as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.

12. The term "identify" as used herein shall refer to the following: (a) With respect to a natural person to provide: full name; present or last known business address and telephone number; present or last known residential address and telephone number; and occupation and business position or title held; (b) With respect to a legal or business entity, to provide: full name; place of incorporation or organization (if any); principal place of business; and identification of any representative of such entity who has knowledge relating to any information in connection with which such entity has been identified; (c) With respect to any document or thing, to provide: the date the document or thing bears or was prepared or transmitted; the identity of each person who authored, signed, created or prepared the document or thing; the identity of each addressee and recipient of the document or thing; its title and general character (subject matter); the number of pages in the document; the identity of the persons having possession, custody or control of the original or copies of the document or thing; the present location of the document or thing; and for each document or thing that you contend is privileged, immune or otherwise excludable from discovery, the basis for such claim of privilege, immunity or exclusion (in sufficient detail for the Court to rule on such claim) and whether you would be willing to produce such document or portions of such document under a suitable protective order.

13. The terms "relating to," "relate to," and "related to" mean pertaining to, alluding to, responding to, referring to, commenting on, regarding, recording, evidencing, containing, setting forth, reflecting, illustrating, showing, discussing, disclosing, describing, explaining, summarizing, supporting, contradicting, refuting, or concerning, whether directly or indirectly.

14. The use of the singular form of any word includes the plural, and vice versa, as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

15. The terms "or" as well as "and" shall be construed disjunctively as well as conjunctively as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

16. The term "including" as used herein is not be interpreted as limiting the request and to the contrary is intended to indicate specific examples without limitation.

## REQUESTS

**DOCUMENT REQUEST NO. 1:**

All documents reflecting the order, purchase, sale or delivery, by or to Panasonic Corporation of North America and/or OEMs, since March 8, 2001, of any LCD Modules from any person, including but not limited to summaries of sales and/or shipments, reports concerning sales and/or shipments, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 2:**

All documents reflecting the order, purchase, sale or delivery by or to Panasonic Corporation of North America and/or OEMs, since March 8, 2001, of LCD Products from any person that did or could contain LCD Modules, including any summaries, reports, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 3:**

Documents sufficient to identify all products purchased, manufactured, sold, or imported by or for Panasonic Corporation of North America since March 8, 2001, that did or could contain LCD Modules, including information sufficient to identify which specific LCD Modules have been used in which brands and models of LCD Products.

**DOCUMENT REQUEST NO. 4:**

All documents reflecting offers to sell, offer to buy, price quotes, and/or negotiations concerning Panasonic Corporation of North America and any LCD Modules since March 8, 2001.

**DOCUMENT REQUEST NO. 5:**

All contracts, agreements or other documents relating to any business arrangement or relationship (past or present) between Panasonic Corporation of North America and LGD or LGDA.

**DOCUMENT REQUEST NO. 6:**

Summaries, reports, and other documents sufficient to identify all sales and imports into the United States, by or for you, of LCD Products that did or could contain LCD Modules since March 8, 2001, including the dates, brands, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 7:**

Summaries, reports, and other documents sufficient to identify all sales and imports in the United States, by or for you, of LCD Modules since March 8, 2001, including the dates, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 8:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the sale, marketing, supply, distribution, shipping, and/or importation of LCD Modules, or LCD Products containing LCD Modules, including, but not limited to plans, presentations, proposals, strategies, and/or reports (for example, road maps, presentations, product codenames, product or market updates, feasibility studies, product strategies or strategy

reports, quarterly business reviews, market reports or trends, meeting agendas, marketing materials and sales kits).

**DOCUMENT REQUEST NO. 9:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the design, development, technical specifications, manufacturing, production, performance, and/or testing of LCD Modules and/or LCD Products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning or reflecting any offer, proposal, or attempt to supply or promote LCD Modules, or LCD Products containing LCD Modules since March 8, 2001, including, for example, communications regarding possible business opportunities to design or supply LCD Modules.

**DOCUMENT REQUEST NO. 11:**

All documents concerning any in-person communications/meetings between Panasonic Corporation of North America and LGD or LGDA at any time since March 8, 2001, including, but not limited to e-mails, trip reports, agendas, presentations, meeting notes, minutes, or other summary of the in-person communication/meeting, including meetings or visits inside or outside the U.S.

**DOCUMENT REQUEST NO. 12:**

All documents concerning all audits, inspections, approvals, and awards or recognition regarding LGD or LGDA, including their facilities, their manufacturing and production processes, or LCD Modules, or LCD Products containing LCD Modules, since March 8, 2001.

**DOCUMENT REQUEST NO. 13:**

All documents concerning any sales or product support provided by LGD or LGDA since March 8, 2001, including all communications and/or agreements relating to the service, repair, refurbishment, or replacement of LCD Modules, or LCD Products containing LCD Modules in the United States, and all documents regarding warranties or service agreements for the benefit of Panasonic Corporation of North America or purchasers of LCD Products.

**DOCUMENT REQUEST NO. 14:**

All documents sufficient to identify product or project names and codenames for your LCD Modules or LCD Products, and documents sufficient to link or correlate such names or codenames to LGD or LGDA product models or other identifiers for LCD Modules, or LCD Products containing LCD Modules used and/or approved for those LCD Product projects and/or codenames, since March 8, 2001.

**DOCUMENT REQUEST NO. 15:**

All documents reflecting any products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 16:**

All marketing and promotional materials or technical presentations created, distributed, published or used in any way by Panasonic Corporation of North America in the period from March 8, 2001 to present regarding any LCD Module or LCD Product.

**DOCUMENT REQUEST NO. 17:**

All documents reflecting your communications (including e-mail) with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 18:**

All communications sent or received since March 8, 2001 (including e-mail) between Panasonic Corporation of North America and Dong Hoon Han, the Account Manager of LGDA.

**DOCUMENT REQUEST NO. 19:**

All communications (including e-mail) between Panasonic Corporation of North America, on the one hand, and LGDA or LGD, on the other hand, regarding the incorporation of any LCD Module into any end product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 20:**

All communications (including e-mail) between Panasonic Corporation of North America, on the one hand, and LGDA or LGD, on the other hand, regarding marketing and

promotional materials or technical presentations created, distributed, published or used in any way by Panasonic Corporation of North America in the period from March 8, 2001 to present regarding any LCD Module.

**DOCUMENT REQUEST NO. 21:**

All communications (including e-mail) between Panasonic Corporation of North America, on the one hand, and LGDA or LGD, on the other hand, regarding the quantity of LCD Modules or end products containing LCD Modules that were sold in the United States for any period between March 8, 2001 and present.

**DOCUMENT REQUEST NO. 22:**

All documents, including all communications between you and LGD or LGDA regarding the importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 23:**

All license agreements involving Panasonic Corporation of North America and LGD or LGDA that relate to any LCD technology.

**EXHIBIT B**

The Definitions in Exhibit A are incorporated by reference.  You are requested to produce witness(es) with knowledge concerning the topics set forth below.

**TOPICS**

**TOPIC NO. 1:**

The business practice relating to documents produced in response to Exhibit A of this subpoena, including but not limited to:

    (a)    the practice relating to the creation of the documents, including the timing of the creation, the authorship of the documents, the information from which the documents were created and the source/author of such information, and whether the documents were created as part of regularly conducted activity as a regular practice; and

    (b)    the practice relating to the maintenance of the documents, including whether the documents were kept in the course of regularly conducted activity.

**TOPIC NO. 2:**

All communications sent or received since March 8, 2001, including but not limited to electronic mail, between Panasonic Corporation of North America and LGD or LGDA.

**TOPIC NO. 3:**

Any business arrangement (whether past or present) between Panasonic Corporation of North America and LGD or LGDA.

**TOPIC NO. 4:**

Any transaction involving Panasonic Corporation of North America and LGD or LGDA, including all transactions involving LCD Modules.

**TOPIC NO. 5:**

Panasonic Corporation of North America's annual sales of LCD Products or LCD Modules (in units and revenues) in the Unites States from 2001 to present, as well as the price or cost paid associated with such sales.

**TOPIC NO. 6:**

Marketing and promotional materials or technical presentations created, distributed, published or used in any way by Panasonic Corporation of North America in the period from March 8, 2001 to present regarding any LCD Module.

**TOPIC NO. 7:**

Importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**TOPIC NO. 8:**

Any technical issues regarding any LCD Module you discussed with LGD or LGDA in the period from March 8, 2001 to present.

**TOPIC NO. 9:**

The incorporation of any LCD Module into any end product sold by you in the period from March 8, 2001 to present.

**TOPIC NO. 10:**

The quantity of LCD Modules or end products containing LCD Modules that were sold by you in the United States for any period between March 8, 2001 and present.

**TOPIC NO. 11:**

All presentations, meetings, and in-person communications by or between Panasonic Corporation of North America and/or LGD or LGDA since March 8, 2001, including but not limited to, the frequency, location, participants and purpose of such presentations, meetings and communications.

**TOPIC NO. 12:**

All actions and efforts by LGD or LGDA to: (a) promote and/or sell LCD Modules or LCD Products to or for Panasonic Corporation of North America; (b) create new business opportunities with Panasonic Corporation of North America; and/or (c) support or expand their relationship with Panasonic Corporation of North America.

**TOPIC NO. 13:**

All business relationships, contracts, agreements, letters of agreements, and memoranda of understanding between Panasonic Corporation of North America and LGD or LGDA regarding the manufacturing, production, design, marketing, sale or supply of LCD Products or LCD Modules.

**TOPIC NO. 14:**

All offers to sell and/or negotiations between Panasonic Corporation of North America and any person regarding the actual or potential purchase or sale of LCD Modules or LCD Products since March 8, 2001.

**TOPIC NO. 15:**

All LCD Products that contain or incorporate LCD Modules that were or could have been imported, offered for sale, and/or sold in the U.S. since March 8, 2001, including which brands and models of your LCD Products used which models of LCD Modules.

**TOPIC NO. 16:**

Since March 8, 2001, all shipments and sales of LCD Modules to be used for Panasonic Corporation of North America LCD Products, and all sales and imports in the U.S. by or for you, of LCD Modules (whether alone or as part of an LCD Product).

**TOPIC NO. 17:**

All audits, inspections, approvals, and awards or recognition concerning LGD or LGDA, including, but not limited to, with respect to manufacturing and production processes, facilities, and/or LCD Modules.

**TOPIC NO. 18:**

All products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**TOPIC NO. 19:**

The efforts you took to gather and search for information and documents responsive to this subpoena and your document and email retention policies and practices.

**TOPIC NO. 20:**

All license agreements involving Panasonic Corporation of North America and LGA or LDGA that relate to any LCD technology.

**TOPIC NO. 21:**

Documents produced in response to Exhibit A of this subpoena.

# TAB 5

AO 88 (Rev. 01/07) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF DELAWARE

| | |
|---|---|
| **LG DISPLAY CO., LTD.** | **SUBPOENA IN A CIVIL CASE** |
| **V.** | CASE NUMBER: [1]   1:06-cv-726-JJF<br>1:07-cv-357-JJF<br>(Consolidated) |
| **AU OPTRONICS CORPORATION, et al.** | |

TO:   **Hewlett Packard Company**
c/o The Corporation Trust Company, Registered Agent
Corporation Trust Center, 1209 Orange Street
Wilmington, DE 19801

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  **See Exhibit B for topics**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McKenna Long & Aldridge LLP, 101 California Street, 41st Floor, San Francisco, CA  94111 (The deposition may be videotaped.) | August 6, 2008-9:00a |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See Exhibit A.**

| PLACE | DATE AND TIME |
|---|---|
| Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West Street, P.O. Box 391, Wilmington, DE 19899-0391 | July 17, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>July 3, 2008 |
|---|---|
| *Karen E. Keller* <br> Attorneys for AU Optronics Corporation and AU Optronics Corporation America | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Karen E. Keller, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (DE Rev.  01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## INSTRUCTIONS

1.  In responding to the present subpoena, you are required to furnish such information as is available to you that is within your possession custody or control, including but not limited to information in the possession of your agents, representatives, or any other person or persons acting on your behalf.

2.  If you have no writings, recordings, documents, or other information responsive to a particular category, please state so in writing.  Additionally, if you have documents responsive to a particular category which you claim are privileged, please state so in writing and please produce all non-privileged documents.  For each document you claim as privileged, please state: (i) the type of privilege you claim; (ii) the nature of the document (*e.g.* letter, memorandum, notes, etc.); (iii) its date; (iv) its author(s) and recipient(s), if any; and (v) the identity of each and every person, other than the identified author(s) or recipient(s), who was sent or provided with the document or a portion of the document.

## DEFINITIONS

3.  "Hewlett Packard Company," "you" or "your" refer to Hewlett Packard Company and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of Hewlett Packard Company; (c) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with Hewlett Packard Company; and (d) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

4. "LGD" refers to LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGD; (c) all companies through which LGD markets or distributes its LCD Modules in the United States, including without limitation LGDA; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGD; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

5. "LGDA" refers to LG Display America, Inc. (formerly known as LG.Philips LCD America, Inc.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGDA; (c) all companies through which LGDA markets or distributes its LCD Modules in the United States, including without limitation LGD; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGDA; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

6. The term "LCD Modules" shall refer to any liquid crystal display ("LCD") module(s) designed, produced, manufactured, sold or offered for sale by, or purchased or otherwise obtained from, or imported on behalf of, LGD and/or LGDA, including but not limited to, modules used in or incorporated into televisions, monitors, computers, mobile phones, portable audio/video devices, automotive devices, industrial, or medical devices, regardless of brand. The term "LCD Modules" also includes but is not limited to any custom or special order modules designed, produced, manufactured, sold or offered for sale by LGD and/or LGDA.

7.  The term "LCD Product" means any device or product that contains an LCD Module. An LCD computer monitor, LCD television, laptop computer, a telephone or other portable or handheld product incorporating an LCD module, and equipment that incorporates an LCD Module are examples of LCD Products. This includes all such devices, regardless of brand name.

8.  The term "communications" refers to any form of interpersonal communication, including without limitation any transmission, conveyance, or exchange of word, statement, fact, thing, idea, document, instrument, data, or information, by any medium whether written, verbal, non-verbal or any other means, including without limitation electronic communications and e-mails.

9.  The term "person" refers to any natural person, company, corporation, partnership, firm, association, government agency or other organization cognizable at law, and its agents and employees.

10. The term "document" shall have the broadest scope permissible under the Federal Rules of Civil Procedure and includes, for example, all writings, drawings, graphs, charts, photographs, phono-records, schematics, layouts, specifications, data sheets, application notes, marketing presentations and materials, internal presentations, design reports, hardware source code (including, for example, verilog), software source code (including, for example, firmware), pseudocode, timing diagrams, waveform diagrams, test reports, customer complaints and responses, engineering change notices, modification histories, white papers, assembly diagrams, assembly drawings, and assembly instructions, whether or not such documents are claimed to be privileged or confidential, and within the Defendant's possession, custody, or control as set forth in Rule 34(a) of the Federal Rules of Civil Procedure. The term "document" also refers, in addition to the original or original copy, to all copies of any kind that contain any alteration, marking, or omission, or which in any other way are not identical to the original or original copy and all drafts or notes made in the preparation of each document. The term "document" shall

further refer to and include all electronic data (including, for example, executable files) in whatever form it may exist.

11. The term "thing" encompasses without limitation all tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure and which are in the possession, custody, or control of the Defendant as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.

12. The term "identify" as used herein shall refer to the following: (a) With respect to a natural person to provide: full name; present or last known business address and telephone number; present or last known residential address and telephone number; and occupation and business position or title held; (b) With respect to a legal or business entity, to provide: full name; place of incorporation or organization (if any); principal place of business; and identification of any representative of such entity who has knowledge relating to any information in connection with which such entity has been identified; (c) With respect to any document or thing, to provide: the date the document or thing bears or was prepared or transmitted; the identity of each person who authored, signed, created or prepared the document or thing; the identity of each addressee and recipient of the document or thing; its title and general character (subject matter); the number of pages in the document; the identity of the persons having possession, custody or control of the original or copies of the document or thing; the present location of the document or thing; and for each document or thing that you contend is privileged, immune or otherwise excludable from discovery, the basis for such claim of privilege, immunity or exclusion (in sufficient detail for the Court to rule on such claim) and whether you would be willing to produce such document or portions of such document under a suitable protective order.

13. The terms "relating to," "relate to," and "related to" mean pertaining to, alluding to, responding to, referring to, commenting on, regarding, recording, evidencing, containing, setting forth, reflecting, illustrating, showing, discussing, disclosing, describing, explaining, summarizing, supporting, contradicting, refuting, or concerning, whether directly or indirectly.

14. The use of the singular form of any word includes the plural, and vice versa, as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

15. The terms "or" as well as "and" shall be construed disjunctively as well as conjunctively as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

16. The term "including" as used herein is not be interpreted as limiting the request and to the contrary is intended to indicate specific examples without limitation.

## REQUESTS

### DOCUMENT REQUEST NO. 1:

All documents reflecting the order, purchase, sale or delivery, by or to Hewlett Packard Company and/or OEMs, since March 8, 2001, of any LCD Modules from any person, including but not limited to summaries of sales and/or shipments, reports concerning sales and/or shipments, purchase orders, invoices, shipping records, and bills of lading.

### DOCUMENT REQUEST NO. 2:

All documents reflecting the order, purchase, sale or delivery by or to Hewlett Packard Company and/or OEMs, since March 8, 2001, of LCD Products from any person that did or could contain LCD Modules, including any summaries, reports, purchase orders, invoices, shipping records, and bills of lading.

### DOCUMENT REQUEST NO. 3:

Documents sufficient to identify all products purchased, manufactured, sold, or imported by or for Hewlett Packard Company since March 8, 2001, that did or could contain LCD Modules, including information sufficient to identify which specific LCD Modules have been used in which brands and models of LCD Products.

**DOCUMENT REQUEST NO. 4:**

All documents reflecting offers to sell, offer to buy, price quotes, and/or negotiations concerning Hewlett Packard Company and any LCD Modules since March 8, 2001.

**DOCUMENT REQUEST NO. 5:**

All contracts, agreements or other documents relating to any business arrangement or relationship (past or present) between Hewlett Packard Company and LGD or LGDA.

**DOCUMENT REQUEST NO. 6:**

Summaries, reports, and other documents sufficient to identify all sales and imports into the United States, by or for you, of LCD Products that did or could contain LCD Modules since March 8, 2001, including the dates, brands, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 7:**

Summaries, reports, and other documents sufficient to identify all sales and imports in the United States, by or for you, of LCD Modules since March 8, 2001, including the dates, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 8:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the sale, marketing, supply, distribution, shipping, and/or importation of LCD Modules, or LCD Products containing LCD Modules, including, but not limited to plans, presentations, proposals, strategies, and/or reports (for example, road maps, presentations, product codenames, product or market updates, feasibility studies, product strategies or strategy reports, quarterly business reviews, market reports or trends, meeting agendas, marketing materials and sales kits).

**DOCUMENT REQUEST NO. 9:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the design, development, technical specifications, manufacturing, production, performance, and/or testing of LCD Modules and/or LCD Products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning or reflecting any offer, proposal, or attempt to supply or promote LCD Modules, or LCD Products containing LCD Modules since March 8, 2001, including, for example, communications regarding possible business opportunities to design or supply LCD Modules.

**DOCUMENT REQUEST NO. 11:**

All documents concerning any in-person communications/meetings between Hewlett Packard Company and LGD or LGDA at any time since March 8, 2001, including, but not limited to e-mails, trip reports, agendas, presentations, meeting notes, minutes, or other summary of the in-person communication/meeting, including meetings or visits inside or outside the U.S.

**DOCUMENT REQUEST NO. 12:**

All documents concerning all audits, inspections, approvals, and awards or recognition regarding LGD or LGDA, including their facilities, their manufacturing and production processes, or LCD Modules, or LCD Products containing LCD Modules, since March 8, 2001.

**DOCUMENT REQUEST NO. 13:**

All documents concerning any sales or product support provided by LGD or LGDA since March 8, 2001, including all communications and/or agreements relating to the service, repair, refurbishment, or replacement of LCD Modules, or LCD Products containing LCD Modules in the United States, and all documents regarding warranties or service agreements for the benefit of Hewlett Packard Company or purchasers of LCD Products.

**DOCUMENT REQUEST NO. 14:**

All documents sufficient to identify product or project names and codenames for your LCD Modules or LCD Products, and documents sufficient to link or correlate such names or

codenames to LGD or LGDA product models or other identifiers for LCD Modules, or LCD

Products containing LCD Modules used and/or approved for those LCD Product projects and/or

codenames, since March 8, 2001.

**DOCUMENT REQUEST NO. 15:**

  All documents reflecting any products and specifications that you approved, designed,

developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since

March 8, 2001.

**DOCUMENT REQUEST NO. 16:**

  All marketing and promotional materials or technical presentations created, distributed,

published or used in any way by Hewlett Packard Company in the period from March 8, 2001 to

present regarding any LCD Module or LCD Product.

**DOCUMENT REQUEST NO. 17:**

  All documents reflecting your communications (including e-mail) with LGD or LGDA

since March 8, 2001.

**DOCUMENT REQUEST NO. 18:**

  All communications sent or received since March 8, 2001 (including e-mail)  between

Hewlett Packard Company and Dong Hoon Han, the Account Manager of LGDA.

**DOCUMENT REQUEST NO. 19:**

  All communications (including e-mail) between Hewlett Packard Company, on the one

hand, and LGDA or LGD, on the other hand, regarding the incorporation of any LCD Module

into any end product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 20:**

  All communications (including e-mail) between Hewlett Packard Company, on the one

hand, and LGDA or LGD, on the other hand, regarding marketing and promotional materials or

technical presentations created, distributed, published or used in any way by Hewlett Packard

Company in the period from March 8, 2001 to present regarding any LCD Module.

**DOCUMENT REQUEST NO. 21:**

All communications (including e-mail) between Hewlett Packard Company, on the one hand, and LGDA or LGD, on the other hand, regarding the quantity of LCD Modules or end products containing LCD Modules that were sold in the United States for any period between March 8, 2001 and present.

**DOCUMENT REQUEST NO. 22:**

All documents, including all communications between you and LGD or LGDA regarding the importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 23:**

All license agreements involving Hewlett Packard Company and LGD or LGDA that relate to any LCD technology.

**EXHIBIT B**

The Definitions in Exhibit A are incorporated by reference.  You are requested to produce witness(es) with knowledge concerning the topics set forth below.

**TOPICS**

**TOPIC NO. 1:**

The business practice relating to documents produced in response to Exhibit A of this subpoena, including but not limited to:

    (a)    the practice relating to the creation of the documents, including the timing of the creation, the authorship of the documents, the information from which the documents were created and the source/author of such information, and whether the documents were created as part of regularly conducted activity as a regular practice; and

    (b)    the practice relating to the maintenance of the documents, including whether the documents were kept in the course of regularly conducted activity.

**TOPIC NO. 2:**

All communications sent or received since March 8, 2001, including but not limited to electronic mail, between Hewlett Packard Company and LGD or LGDA.

**TOPIC NO. 3:**

Any business arrangement (whether past or present) between Hewlett Packard Company and LGD or LGDA.

**TOPIC NO. 4:**

Any transaction involving Hewlett Packard Company and LGD or LGDA, including all transactions involving LCD Modules.

**TOPIC NO. 5:**

Hewlett Packard Company's annual sales of LCD Products or LCD Modules (in units and revenues) in the Unites States from 2001 to present, as well as the price or cost paid associated with such sales.

**TOPIC NO. 6:**

Marketing and promotional materials or technical presentations created, distributed, published or used in any way by Hewlett Packard Company in the period from March 8, 2001 to present regarding any LCD Module.

**TOPIC NO. 7:**

Importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**TOPIC NO. 8:**

Any technical issues regarding any LCD Module you discussed with LGD or LGDA in the period from March 8, 2001 to present.

**TOPIC NO. 9:**

The incorporation of any LCD Module into any end product sold by you in the period from March 8, 2001 to present.

**TOPIC NO. 10:**

The quantity of LCD Modules or end products containing LCD Modules that were sold by you in the United States for any period between March 8, 2001 and present.

**TOPIC NO. 11:**

All presentations, meetings, and in-person communications by or between Hewlett Packard Company and/or LGD or LGDA since March 8, 2001, including but not limited to, the frequency, location, participants and purpose of such presentations, meetings and communications.

**TOPIC NO. 12:**

All actions and efforts by LGD or LGDA to: (a) promote and/or sell LCD Modules or LCD Products to or for Hewlett Packard Company; (b) create new business opportunities with Hewlett Packard Company; and/or (c) support or expand their relationship with Hewlett Packard Company.

**TOPIC NO. 13:**

All business relationships, contracts, agreements, letters of agreements, and memoranda of understanding between Hewlett Packard Company and LGD or LGDA regarding the manufacturing, production, design, marketing, sale or supply of LCD Products or LCD Modules.

**TOPIC NO. 14:**

All offers to sell and/or negotiations between Hewlett Packard Company and any person regarding the actual or potential purchase or sale of LCD Modules or LCD Products since March 8, 2001.

**TOPIC NO. 15:**

All LCD Products that contain or incorporate LCD Modules that were or could have been imported, offered for sale, and/or sold in the U.S. since March 8, 2001, including which brands and models of your LCD Products used which models of LCD Modules.

**TOPIC NO. 16:**

Since March 8, 2001, all shipments and sales of LCD Modules to be used for Hewlett Packard Company LCD Products, and all sales and imports in the U.S. by or for you, of LCD Modules (whether alone or as part of an LCD Product).

**TOPIC NO. 17:**

All audits, inspections, approvals, and awards or recognition concerning LGD or LGDA, including, but not limited to, with respect to manufacturing and production processes, facilities, and/or LCD Modules.

**TOPIC NO. 18:**

All products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**TOPIC NO. 19:**

The efforts you took to gather and search for information and documents responsive to this subpoena and your document and email retention policies and practices.

**TOPIC NO. 20:**

All license agreements involving Hewlett Packard Company and LGA or LDGA that relate to any LCD technology.

**TOPIC NO. 21:**

Documents produced in response to Exhibit A of this subpoena.

# TAB 6

AO 88 (Rev. 01/07) Subpoena in a Civil Case

**Issued by the**

## UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LG DISPLAY CO., LTD.** | **SUBPOENA IN A CIVIL CASE** |
| **V.** | 1:06-cv-726-JJF<br>CASE   1:07-cv-357-JJF<br>NUMBER: [1]   (Consolidated)<br>(pending in the District of Delaware) |
| **AU OPTRONICS CORPORATION, et al.** | |

TO:   **Quanta Computer USA, Inc.**
c/o Alan Pak Lim Lam, Registered Agent
751 Valencia Drive
Milpitas, CA 95035

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  **See Exhibit B for topics**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McKenna Long & Aldridge LLP, 101 California Street, Floor 41, San Francisco, CA 94111 (The deposition may be videotaped.) | August 8, 2008-9:00a |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See Exhibit A.**

| PLACE | DATE AND TIME |
|---|---|
| County Process Service, Attn: Scott Soto, 31 E. Julian Street, San Jose, CA 95112 | July 17, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Andrew A. Lundgren* | July 3, 2008 |
| Attorneys for AU Optronics Corporation and AU Optronics Corporation America | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Andrew A. Lundgren, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (DE Rev. 01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                        DATE                                                SIGNATURE OF SERVER

                                                                          _____
                                                                          ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## INSTRUCTIONS

1.  In responding to the present subpoena, you are required to furnish such information as is available to you that is within your possession custody or control, including but not limited to information in the possession of your agents, representatives, or any other person or persons acting on your behalf.

2.  If you have no writings, recordings, documents, or other information responsive to a particular category, please state so in writing.  Additionally, if you have documents responsive to a particular category which you claim are privileged, please state so in writing and please produce all non-privileged documents.  For each document you claim as privileged, please state: (i) the type of privilege you claim; (ii) the nature of the document (*e.g.* letter, memorandum, notes, etc.); (iii) its date; (iv) its author(s) and recipient(s), if any; and (v) the identity of each and every person, other than the identified author(s) or recipient(s), who was sent or provided with the document or a portion of the document.

## DEFINITIONS

3.  "Quanta Computer USA, Inc.," "you" or "your" refer to Quanta Computer USA, Inc. and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of Quanta Computer USA, Inc.; (c) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with Quanta Computer USA, Inc.; and (d) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

4.  "LGD" refers to LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGD; (c) all companies through which LGD markets or distributes its LCD Modules in the United States, including without limitation LGDA; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGD; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

5.  "LGDA" refers to LG Display America, Inc. (formerly known as LG.Philips LCD America, Inc.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGDA; (c) all companies through which LGDA markets or distributes its LCD Modules in the United States, including without limitation LGD; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGDA; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

6.  The term "LCD Modules" shall refer to any liquid crystal display ("LCD") module(s) designed, produced, manufactured, sold or offered for sale by, or purchased or otherwise obtained from, or imported on behalf of, LGD and/or LGDA, including but not limited to, modules used in or incorporated into televisions, monitors, computers, mobile phones, portable audio/video devices, automotive devices, industrial, or medical devices, regardless of brand.  The term "LCD Modules" also includes but is not limited to any custom or special order modules designed, produced, manufactured, sold or offered for sale by LGD and/or LGDA.

7.   The term "LCD Product" means any device or product that contains an LCD Module. An LCD computer monitor, LCD television, laptop computer, a telephone or other portable or handheld product incorporating an LCD module, and equipment that incorporates an LCD Module are examples of LCD Products.  This includes all such devices, regardless of brand name.

8.   The term "communications" refers to any form of interpersonal communication, including without limitation any transmission, conveyance, or exchange of word, statement, fact, thing, idea, document, instrument, data, or information, by any medium whether written, verbal, non-verbal or any other means, including without limitation electronic communications and e-mails.

9.   The term "person" refers to any natural person, company, corporation, partnership, firm, association, government agency or other organization cognizable at law, and its agents and employees.

10. The term "document" shall have the broadest scope permissible under the Federal Rules of Civil Procedure and includes, for example, all writings, drawings, graphs, charts, photographs, phono-records, schematics, layouts, specifications, data sheets, application notes, marketing presentations and materials, internal presentations, design reports, hardware source code (including, for example, verilog), software source code (including, for example, firmware), pseudocode, timing diagrams, waveform diagrams, test reports, customer complaints and responses, engineering change notices, modification histories, white papers, assembly diagrams, assembly drawings, and assembly instructions, whether or not such documents are claimed to be privileged or confidential, and within the Defendant's possession, custody, or control as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.  The term "document" also refers, in addition to the original or original copy, to all copies of any kind that contain any alteration, marking, or omission, or which in any other way are not identical to the original or original copy and all drafts or notes made in the preparation of each document.  The term "document" shall

further refer to and include all electronic data (including, for example, executable files) in whatever form it may exist.

11. The term "thing" encompasses without limitation all tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure and which are in the possession, custody, or control of the Defendant as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.

12. The term "identify" as used herein shall refer to the following: (a) With respect to a natural person to provide: full name; present or last known business address and telephone number; present or last known residential address and telephone number; and occupation and business position or title held; (b) With respect to a legal or business entity, to provide: full name; place of incorporation or organization (if any); principal place of business; and identification of any representative of such entity who has knowledge relating to any information in connection with which such entity has been identified; (c) With respect to any document or thing, to provide: the date the document or thing bears or was prepared or transmitted; the identity of each person who authored, signed, created or prepared the document or thing; the identity of each addressee and recipient of the document or thing; its title and general character (subject matter); the number of pages in the document; the identity of the persons having possession, custody or control of the original or copies of the document or thing; the present location of the document or thing; and for each document or thing that you contend is privileged, immune or otherwise excludable from discovery, the basis for such claim of privilege, immunity or exclusion (in sufficient detail for the Court to rule on such claim) and whether you would be willing to produce such document or portions of such document under a suitable protective order.

13. The terms "relating to," "relate to," and "related to" mean pertaining to, alluding to, responding to, referring to, commenting on, regarding, recording, evidencing, containing, setting forth, reflecting, illustrating, showing, discussing, disclosing, describing, explaining, summarizing, supporting, contradicting, refuting, or concerning, whether directly or indirectly.

14. The use of the singular form of any word includes the plural, and vice versa, as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

15. The terms "or" as well as "and" shall be construed disjunctively as well as conjunctively as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

16. The term "including" as used herein is not be interpreted as limiting the request and to the contrary is intended to indicate specific examples without limitation.

## REQUESTS

**DOCUMENT REQUEST NO. 1:**

All documents reflecting the order, purchase, sale or delivery, by or to Quanta Computer USA, Inc. and/or OEMs, since March 8, 2001, of any LCD Modules from any person, including but not limited to summaries of sales and/or shipments, reports concerning sales and/or shipments, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 2:**

All documents reflecting the order, purchase, sale or delivery by or to Quanta Computer USA, Inc. and/or OEMs, since March 8, 2001, of LCD Products from any person that did or could contain LCD Modules, including any summaries, reports, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 3:**

Documents sufficient to identify all products purchased, manufactured, sold, or imported by or for Quanta Computer USA, Inc. since March 8, 2001, that did or could contain LCD Modules, including information sufficient to identify which specific LCD Modules have been used in which brands and models of LCD Products.

**DOCUMENT REQUEST NO. 4:**

All documents reflecting offers to sell, offer to buy, price quotes, and/or negotiations concerning Quanta Computer USA, Inc. and any LCD Modules since March 8, 2001.

**DOCUMENT REQUEST NO. 5:**

All contracts, agreements or other documents relating to any business arrangement or relationship (past or present) between Quanta Computer USA, Inc. and LGD or LGDA.

**DOCUMENT REQUEST NO. 6:**

Summaries, reports, and other documents sufficient to identify all sales and imports into the United States, by or for you, of LCD Products that did or could contain LCD Modules since March 8, 2001, including the dates, brands, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 7:**

Summaries, reports, and other documents sufficient to identify all sales and imports in the United States, by or for you, of LCD Modules since March 8, 2001, including the dates, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 8:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the sale, marketing, supply, distribution, shipping, and/or importation of LCD Modules, or LCD Products containing LCD Modules, including, but not limited to plans, presentations, proposals, strategies, and/or reports (for example, road maps, presentations, product codenames, product or market updates, feasibility studies, product strategies or strategy reports, quarterly business reviews, market reports or trends, meeting agendas, marketing materials and sales kits).

**DOCUMENT REQUEST NO. 9:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the design, development, technical specifications, manufacturing, production, performance, and/or testing of LCD Modules and/or LCD Products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning or reflecting any offer, proposal, or attempt to supply or promote LCD Modules, or LCD Products containing LCD Modules since March 8, 2001, including, for example, communications regarding possible business opportunities to design or supply LCD Modules.

**DOCUMENT REQUEST NO. 11:**

All documents concerning any in-person communications/meetings between Quanta Computer USA, Inc. and LGD or LGDA at any time since March 8, 2001, including, but not limited to e-mails, trip reports, agendas, presentations, meeting notes, minutes, or other summary of the in-person communication/meeting, including meetings or visits inside or outside the U.S.

**DOCUMENT REQUEST NO. 12:**

All documents concerning all audits, inspections, approvals, and awards or recognition regarding LGD or LGDA, including their facilities, their manufacturing and production processes, or LCD Modules, or LCD Products containing LCD Modules, since March 8, 2001.

**DOCUMENT REQUEST NO. 13:**

All documents concerning any sales or product support provided by LGD or LGDA since March 8, 2001, including all communications and/or agreements relating to the service, repair, refurbishment, or replacement of LCD Modules, or LCD Products containing LCD Modules in the United States, and all documents regarding warranties or service agreements for the benefit of Quanta Computer USA, Inc. or purchasers of LCD Products.

**DOCUMENT REQUEST NO. 14:**

All documents sufficient to identify product or project names and codenames for your LCD Modules or LCD Products, and documents sufficient to link or correlate such names or

codenames to LGD or LGDA product models or other identifiers for LCD Modules, or LCD

Products containing LCD Modules used and/or approved for those LCD Product projects and/or

codenames, since March 8, 2001.

**DOCUMENT REQUEST NO. 15:**

All documents reflecting any products and specifications that you approved, designed,

developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since

March 8, 2001.

**DOCUMENT REQUEST NO. 16:**

All marketing and promotional materials or technical presentations created, distributed,

published or used in any way by Quanta Computer USA, Inc. in the period from March 8, 2001

to present regarding any LCD Module or LCD Product.

**DOCUMENT REQUEST NO. 17:**

All documents reflecting your communications (including e-mail) with LGD or LGDA

since March 8, 2001.

**DOCUMENT REQUEST NO. 18:**

All communications sent or received since March 8, 2001 (including e-mail)  between

Quanta Computer USA, Inc. and Dong Hoon Han, the Account Manager of LGDA.

**DOCUMENT REQUEST NO. 19:**

All communications (including e-mail) between Quanta Computer USA, Inc., on the one

hand, and LGDA or LGD, on the other hand, regarding the incorporation of any LCD Module

into any end product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 20:**

All communications (including e-mail) between Quanta Computer USA, Inc., on the one

hand, and LGDA or LGD, on the other hand, regarding marketing and promotional materials or

technical presentations created, distributed, published or used in any way by Quanta Computer

USA, Inc. in the period from March 8, 2001 to present regarding any LCD Module.

**<u>DOCUMENT REQUEST NO. 21</u>:**

All communications (including e-mail) between Quanta Computer USA, Inc., on the one hand, and LGDA or LGD, on the other hand, regarding the quantity of LCD Modules or end products containing LCD Modules that were sold in the United States for any period between March 8, 2001 and present.

**<u>DOCUMENT REQUEST NO. 22</u>:**

All documents, including all communications between you and LGD or LGDA regarding the importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**<u>DOCUMENT REQUEST NO. 23</u>:**

All license agreements involving Quanta Computer USA, Inc. and LGD or LGDA that relate to any LCD technology.

**EXHIBIT B**

The Definitions in Exhibit A are incorporated by reference.  You are requested to produce witness(es) with knowledge concerning the topics set forth below.

**TOPICS**

**TOPIC NO. 1:**

The business practice relating to documents produced in response to Exhibit A of this subpoena, including but not limited to:

    (a)    the practice relating to the creation of the documents, including the timing of the creation, the authorship of the documents, the information from which the documents were created and the source/author of such information, and whether the documents were created as part of regularly conducted activity as a regular practice; and

    (b)    the practice relating to the maintenance of the documents, including whether the documents were kept in the course of regularly conducted activity.

**TOPIC NO. 2:**

All communications sent or received since March 8, 2001, including but not limited to electronic mail, between Quanta Computer USA, Inc. and LGD or LGDA.

**TOPIC NO. 3:**

Any business arrangement (whether past or present) between Quanta Computer USA, Inc. and LGD or LGDA.

**TOPIC NO. 4:**

Any transaction involving Quanta Computer USA, Inc. and LGD or LGDA, including all transactions involving LCD Modules.

**TOPIC NO. 5:**

Quanta Computer USA, Inc.'s annual sales of LCD Products or LCD Modules (in units and revenues) in the Unites States from 2001 to present, as well as the price or cost paid associated with such sales.

**TOPIC NO. 6:**

Marketing and promotional materials or technical presentations created, distributed, published or used in any way by Quanta Computer USA, Inc. in the period from March 8, 2001 to present regarding any LCD Module.

**TOPIC NO. 7:**

Importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**TOPIC NO. 8:**

Any technical issues regarding any LCD Module you discussed with LGD or LGDA in the period from March 8, 2001 to present.

**TOPIC NO. 9:**

The incorporation of any LCD Module into any end product sold by you in the period from March 8, 2001 to present.

**TOPIC NO. 10:**

The quantity of LCD Modules or end products containing LCD Modules that were sold by you in the United States for any period between March 8, 2001 and present.

**TOPIC NO. 11:**

All presentations, meetings, and in-person communications by or between Quanta Computer USA, Inc. and/or LGD or LGDA since March 8, 2001, including but not limited to, the frequency, location, participants and purpose of such presentations, meetings and communications.

**TOPIC NO. 12:**

All actions and efforts by LGD or LGDA to: (a) promote and/or sell LCD Modules or LCD Products to or for Quanta Computer USA, Inc.; (b) create new business opportunities with Quanta Computer USA, Inc.; and/or (c) support or expand their relationship with Quanta Computer USA, Inc..

**TOPIC NO. 13:**

All business relationships, contracts, agreements, letters of agreements, and memoranda of understanding between Quanta Computer USA, Inc. and LGD or LGDA regarding the manufacturing, production, design, marketing, sale or supply of LCD Products or LCD Modules.

**TOPIC NO. 14:**

All offers to sell and/or negotiations between Quanta Computer USA, Inc. and any person regarding the actual or potential purchase or sale of LCD Modules or LCD Products since March 8, 2001.

**TOPIC NO. 15:**

All LCD Products that contain or incorporate LCD Modules that were or could have been imported, offered for sale, and/or sold in the U.S. since March 8, 2001, including which brands and models of your LCD Products used which models of LCD Modules.

**TOPIC NO. 16:**

Since March 8, 2001, all shipments and sales of LCD Modules to be used for Quanta Computer USA, Inc. LCD Products, and all sales and imports in the U.S. by or for you, of LCD Modules (whether alone or as part of an LCD Product).

**TOPIC NO. 17:**

All audits, inspections, approvals, and awards or recognition concerning LGD or LGDA, including, but not limited to, with respect to manufacturing and production processes, facilities, and/or LCD Modules.

**TOPIC NO. 18:**

     All products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**TOPIC NO. 19:**

     The efforts you took to gather and search for information and documents responsive to this subpoena and your document and email retention policies and practices.

**TOPIC NO. 20:**

     All license agreements involving Quanta Computer USA, Inc. and LGA or LDGA that relate to any LCD technology.

**TOPIC NO. 21:**

     Documents produced in response to Exhibit A of this subpoena.

# TAB 7

AO 88 (Rev. 01/07) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF DELAWARE

| | |
|---|---|
| **LG DISPLAY CO., LTD.** | ## SUBPOENA IN A CIVIL CASE |
| **V.** | CASE NUMBER: [1]    1:06-cv-726-JJF<br>1:07-cv-357-JJF<br>(Consolidated) |
| **AU OPTRONICS CORPORATION, et al.** | |

TO:   **Teledyne Licensing, LLC**
c/o National Corporate Research, Ltd., Registered Agent
615 South DuPont Highway
Dover, DE 19901

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  **See Exhibit B for topics**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McKenna Long & Aldridge LLP, 444 South Flower Street, 8th Floor, Los Angeles, CA 90071 (The deposition may be videotaped.) | July 23, 2008-9:00a |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See Exhibit A.**

| PLACE | DATE AND TIME |
|---|---|
| Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West Street, P.O. Box 391, Wilmington, DE 19899-0391 | July 17, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>July 3, 2008 |
|---|---|
| *Karen E Keller*<br>Attorneys for AU Optronics Corporation and AU Optronics Corporation America | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Karen E. Keller, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (DE Rev.  01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested.  If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## INSTRUCTIONS

1.  In responding to the present subpoena, you are required to furnish such information as is available to you that is within your possession custody or control, including but not limited to information in the possession of your agents, representatives, or any other person or persons acting on your behalf.

2.  If you have no writings, recordings, documents, or other information responsive to a particular category, please state so in writing. Additionally, if you have documents responsive to a particular category which you claim are privileged, please state so in writing and please produce all non-privileged documents. For each document you claim as privileged, please state: (i) the type of privilege you claim; (ii) the nature of the document (*e.g.* letter, memorandum, notes, etc.); (iii) its date; (iv) its author(s) and recipient(s), if any; and (v) the identity of each and every person, other than the identified author(s) or recipient(s), who was sent or provided with the document or a portion of the document.

## DEFINITIONS

3.  "Teledyne Licensing, LLC," "you" or "your" refer to Teledyne Licensing, LLC and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of Teledyne Licensing, LLC; (c) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with Teledyne Licensing, LLC; and (d) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

4. "LGD" refers to LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGD; (c) all companies through which LGD markets or distributes its LCD Modules in the United States, including without limitation LGDA; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGD; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

5. "LGDA" refers to LG Display America, Inc. (formerly known as LG.Philips LCD America, Inc.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGDA; (c) all companies through which LGDA markets or distributes its LCD Modules in the United States, including without limitation LGD; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGDA; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

6. The term "LCD Modules" shall refer to any liquid crystal display ("LCD") module(s) designed, produced, manufactured, sold or offered for sale by, or purchased or otherwise obtained from, or imported on behalf of, LGD and/or LGDA, including but not limited to, modules used in or incorporated into televisions, monitors, computers, mobile phones, portable audio/video devices, automotive devices, industrial, or medical devices, regardless of brand. The term "LCD Modules" also includes but is not limited to any custom or special order modules designed, produced, manufactured, sold or offered for sale by LGD and/or LGDA.

7. The term "LCD Product" means any device or product that contains an LCD Module. An LCD computer monitor, LCD television, laptop computer, a telephone or other portable or handheld product incorporating an LCD module, and equipment that incorporates an LCD Module are examples of LCD Products. This includes all such devices, regardless of brand name.

8. The term "communications" refers to any form of interpersonal communication, including without limitation any transmission, conveyance, or exchange of word, statement, fact, thing, idea, document, instrument, data, or information, by any medium whether written, verbal, non-verbal or any other means, including without limitation electronic communications and e-mails.

9. The term "person" refers to any natural person, company, corporation, partnership, firm, association, government agency or other organization cognizable at law, and its agents and employees.

10. The term "document" shall have the broadest scope permissible under the Federal Rules of Civil Procedure and includes, for example, all writings, drawings, graphs, charts, photographs, phono-records, schematics, layouts, specifications, data sheets, application notes, marketing presentations and materials, internal presentations, design reports, hardware source code (including, for example, verilog), software source code (including, for example, firmware), pseudocode, timing diagrams, waveform diagrams, test reports, customer complaints and responses, engineering change notices, modification histories, white papers, assembly diagrams, assembly drawings, and assembly instructions, whether or not such documents are claimed to be privileged or confidential, and within the Defendant's possession, custody, or control as set forth in Rule 34(a) of the Federal Rules of Civil Procedure. The term "document" also refers, in addition to the original or original copy, to all copies of any kind that contain any alteration, marking, or omission, or which in any other way are not identical to the original or original copy and all drafts or notes made in the preparation of each document. The term "document" shall

further refer to and include all electronic data (including, for example, executable files) in whatever form it may exist.

11. The term "thing" encompasses without limitation all tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure and which are in the possession, custody, or control of the Defendant as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.

12. The term "identify" as used herein shall refer to the following: (a) With respect to a natural person to provide: full name; present or last known business address and telephone number; present or last known residential address and telephone number; and occupation and business position or title held; (b) With respect to a legal or business entity, to provide: full name; place of incorporation or organization (if any); principal place of business; and identification of any representative of such entity who has knowledge relating to any information in connection with which such entity has been identified; (c) With respect to any document or thing, to provide: the date the document or thing bears or was prepared or transmitted; the identity of each person who authored, signed, created or prepared the document or thing; the identity of each addressee and recipient of the document or thing; its title and general character (subject matter); the number of pages in the document; the identity of the persons having possession, custody or control of the original or copies of the document or thing; the present location of the document or thing; and for each document or thing that you contend is privileged, immune or otherwise excludable from discovery, the basis for such claim of privilege, immunity or exclusion (in sufficient detail for the Court to rule on such claim) and whether you would be willing to produce such document or portions of such document under a suitable protective order.

13. The terms "relating to," "relate to," and "related to" mean pertaining to, alluding to, responding to, referring to, commenting on, regarding, recording, evidencing, containing, setting forth, reflecting, illustrating, showing, discussing, disclosing, describing, explaining, summarizing, supporting, contradicting, refuting, or concerning, whether directly or indirectly.

14. The use of the singular form of any word includes the plural, and vice versa, as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

15. The terms "or" as well as "and" shall be construed disjunctively as well as conjunctively as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

16. The term "including" as used herein is not be interpreted as limiting the request and to the contrary is intended to indicate specific examples without limitation.

## REQUESTS

### DOCUMENT REQUEST NO. 1:

All documents reflecting the order, purchase, sale or delivery, by or to Teledyne Licensing, LLC and/or OEMs, since March 8, 2001, of any LCD Modules from any person, including but not limited to summaries of sales and/or shipments, reports concerning sales and/or shipments, purchase orders, invoices, shipping records, and bills of lading.

### DOCUMENT REQUEST NO. 2:

All documents reflecting the order, purchase, sale or delivery by or to Teledyne Licensing, LLC and/or OEMs, since March 8, 2001, of LCD Products from any person that did or could contain LCD Modules, including any summaries, reports, purchase orders, invoices, shipping records, and bills of lading.

### DOCUMENT REQUEST NO. 3:

Documents sufficient to identify all products purchased, manufactured, sold, or imported by or for Teledyne Licensing, LLC since March 8, 2001, that did or could contain LCD Modules, including information sufficient to identify which specific LCD Modules have been used in which brands and models of LCD Products.

**DOCUMENT REQUEST NO. 4:**

All documents reflecting offers to sell, offer to buy, price quotes, and/or negotiations concerning Teledyne Licensing, LLC and any LCD Modules since March 8, 2001.

**DOCUMENT REQUEST NO. 5:**

All contracts, agreements or other documents relating to any business arrangement or relationship (past or present) between Teledyne Licensing, LLC and LGD or LGDA.

**DOCUMENT REQUEST NO. 6:**

Summaries, reports, and other documents sufficient to identify all sales and imports into the United States, by or for you, of LCD Products that did or could contain LCD Modules since March 8, 2001, including the dates, brands, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 7:**

Summaries, reports, and other documents sufficient to identify all sales and imports in the United States, by or for you, of LCD Modules since March 8, 2001, including the dates, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 8:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the sale, marketing, supply, distribution, shipping, and/or importation of LCD Modules, or LCD Products containing LCD Modules, including, but not limited to plans, presentations, proposals, strategies, and/or reports (for example, road maps, presentations, product codenames, product or market updates, feasibility studies, product strategies or strategy reports, quarterly business reviews, market reports or trends, meeting agendas, marketing materials and sales kits).

**DOCUMENT REQUEST NO. 9:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the design, development, technical specifications, manufacturing, production, performance, and/or testing of LCD Modules and/or LCD Products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning or reflecting any offer, proposal, or attempt to supply or promote LCD Modules, or LCD Products containing LCD Modules since March 8, 2001, including, for example, communications regarding possible business opportunities to design or supply LCD Modules.

**DOCUMENT REQUEST NO. 11:**

All documents concerning any in-person communications/meetings between Teledyne Licensing, LLC and LGD or LGDA at any time since March 8, 2001, including, but not limited to e-mails, trip reports, agendas, presentations, meeting notes, minutes, or other summary of the in-person communication/meeting, including meetings or visits inside or outside the U.S.

**DOCUMENT REQUEST NO. 12:**

All documents concerning all audits, inspections, approvals, and awards or recognition regarding LGD or LGDA, including their facilities, their manufacturing and production processes, or LCD Modules, or LCD Products containing LCD Modules, since March 8, 2001.

**DOCUMENT REQUEST NO. 13:**

All documents concerning any sales or product support provided by LGD or LGDA since March 8, 2001, including all communications and/or agreements relating to the service, repair, refurbishment, or replacement of LCD Modules, or LCD Products containing LCD Modules in the United States, and all documents regarding warranties or service agreements for the benefit of Teledyne Licensing, LLC or purchasers of LCD Products.

**DOCUMENT REQUEST NO. 14:**

All documents sufficient to identify product or project names and codenames for your LCD Modules or LCD Products, and documents sufficient to link or correlate such names or

codenames to LGD or LGDA product models or other identifiers for LCD Modules, or LCD Products containing LCD Modules used and/or approved for those LCD Product projects and/or codenames, since March 8, 2001.

**DOCUMENT REQUEST NO. 15:**

All documents reflecting any products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 16:**

All marketing and promotional materials or technical presentations created, distributed, published or used in any way by Teledyne Licensing, LLC in the period from March 8, 2001 to present regarding any LCD Module or LCD Product.

**DOCUMENT REQUEST NO. 17:**

All documents reflecting your communications (including e-mail) with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 18:**

All communications sent or received since March 8, 2001 (including e-mail) between Teledyne Licensing, LLC and Dong Hoon Han, the Account Manager of LGDA.

**DOCUMENT REQUEST NO. 19:**

All communications (including e-mail) between Teledyne Licensing, LLC, on the one hand, and LGDA or LGD, on the other hand, regarding the incorporation of any LCD Module into any end product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 20:**

All communications (including e-mail) between Teledyne Licensing, LLC, on the one hand, and LGDA or LGD, on the other hand, regarding marketing and promotional materials or technical presentations created, distributed, published or used in any way by Teledyne Licensing, LLC in the period from March 8, 2001 to present regarding any LCD Module.

**DOCUMENT REQUEST NO. 21:**

All communications (including e-mail) between Teledyne Licensing, LLC, on the one hand, and LGDA or LGD, on the other hand, regarding the quantity of LCD Modules or end products containing LCD Modules that were sold in the United States for any period between March 8, 2001 and present.

**DOCUMENT REQUEST NO. 22:**

All documents, including all communications between you and LGD or LGDA regarding the importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 23:**

All license agreements involving Teledyne Licensing, LLC and LGD or LGDA that relate to any LCD technology.

## EXHIBIT B

The Definitions in Exhibit A are incorporated by reference.  You are requested to produce witness(es) with knowledge concerning the topics set forth below.

## TOPICS

**TOPIC NO. 1:**

The business practice relating to documents produced in response to Exhibit A of this subpoena, including but not limited to:

(a)     the practice relating to the creation of the documents, including the timing of the creation, the authorship of the documents, the information from which the documents were created and the source/author of such information, and whether the documents were created as part of regularly conducted activity as a regular practice; and

(b)     the practice relating to the maintenance of the documents, including whether the documents were kept in the course of regularly conducted activity.

**TOPIC NO. 2:**

All communications sent or received since March 8, 2001, including but not limited to electronic mail, between Teledyne Licensing, LLC and LGD or LGDA.

**TOPIC NO. 3:**

Any business arrangement (whether past or present) between Teledyne Licensing, LLC and LGD or LGDA.

**TOPIC NO. 4:**

Any transaction involving Teledyne Licensing, LLC and LGD or LGDA, including all transactions involving LCD Modules.

**TOPIC NO. 5:**

     Teledyne Licensing, LLC's annual sales of LCD Products or LCD Modules (in units and revenues) in the Unites States from 2001 to present, as well as the price or cost paid associated with such sales.

**TOPIC NO. 6:**

     Marketing and promotional materials or technical presentations created, distributed, published or used in any way by Teledyne Licensing, LLC in the period from March 8, 2001 to present regarding any LCD Module.

**TOPIC NO. 7:**

     Importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**TOPIC NO. 8:**

     Any technical issues regarding any LCD Module you discussed with LGD or LGDA in the period from March 8, 2001 to present.

**TOPIC NO. 9:**

     The incorporation of any LCD Module into any end product sold by you in the period from March 8, 2001 to present.

**TOPIC NO. 10:**

     The quantity of LCD Modules or end products containing LCD Modules that were sold by you in the United States for any period between March 8, 2001 and present.

**TOPIC NO. 11:**

     All presentations, meetings, and in-person communications by or between Teledyne Licensing, LLC and/or LGD or LGDA since March 8, 2001, including but not limited to, the frequency, location, participants and purpose of such presentations, meetings and communications.

**TOPIC NO. 12:**

All actions and efforts by LGD or LGDA to: (a) promote and/or sell LCD Modules or LCD Products to or for Teledyne Licensing, LLC; (b) create new business opportunities with Teledyne Licensing, LLC; and/or (c) support or expand their relationship with Teledyne Licensing, LLC.

**TOPIC NO. 13:**

All business relationships, contracts, agreements, letters of agreements, and memoranda of understanding between Teledyne Licensing, LLC and LGD or LGDA regarding the manufacturing, production, design, marketing, sale or supply of LCD Products or LCD Modules.

**TOPIC NO. 14:**

All offers to sell and/or negotiations between Teledyne Licensing, LLC and any person regarding the actual or potential purchase or sale of LCD Modules or LCD Products since March 8, 2001.

**TOPIC NO. 15:**

All LCD Products that contain or incorporate LCD Modules that were or could have been imported, offered for sale, and/or sold in the U.S. since March 8, 2001, including which brands and models of your LCD Products used which models of LCD Modules.

**TOPIC NO. 16:**

Since March 8, 2001, all shipments and sales of LCD Modules to be used for Teledyne Licensing, LLC LCD Products, and all sales and imports in the U.S. by or for you, of LCD Modules (whether alone or as part of an LCD Product).

**TOPIC NO. 17:**

All audits, inspections, approvals, and awards or recognition concerning LGD or LGDA, including, but not limited to, with respect to manufacturing and production processes, facilities, and/or LCD Modules.

**TOPIC NO. 18:**

All products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**TOPIC NO. 19:**

The efforts you took to gather and search for information and documents responsive to this subpoena and your document and email retention policies and practices.

**TOPIC NO. 20:**

All license agreements involving Teledyne Licensing, LLC and LGA or LDGA that relate to any LCD technology.

**TOPIC NO. 21:**

Documents produced in response to Exhibit A of this subpoena.

# TAB 8

AO 88 (Rev. 01/07) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

**LG DISPLAY CO., LTD.**

**V.**

**AU OPTRONICS CORPORATION, et al.**

## SUBPOENA IN A CIVIL CASE

CASE  
NUMBER: [1]

1:06-cv-726-JJF  
1:07-cv-357-JJF  
(Consolidated)  
(pending in the District of Delaware)

TO: **Teledyne Lighting and Display Products, Inc.**
c/o National Corporate Research, Ltd., Registered Agent
523 W. 6th Street, Suite 544
Los Angeles, CA 90014

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. **See Exhibit B for topics**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McKenna Long & Aldridge LLP, 444 South Flower Street, 8th Floor, Los Angeles, CA 90071 (The deposition may be videotaped.) | July 24, 2008-9:00a |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Exhibit A.**

| PLACE | DATE AND TIME |
|---|---|
| South Bay Investigations, Attn: John Crowley, 1611 Crenshaw Blvd. – Suite 133, Torrance, CA 90501 | July 17, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* Attorneys for AU Optronics Corporation and AU Optronics Corporation America | July 3, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Andrew A. Lundgren, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (DE Rev. 01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                        DATE                                    SIGNATURE OF SERVER

                                                          _____
                                                          ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## INSTRUCTIONS

1.  In responding to the present subpoena, you are required to furnish such information as is available to you that is within your possession custody or control, including but not limited to information in the possession of your agents, representatives, or any other person or persons acting on your behalf.

2.  If you have no writings, recordings, documents, or other information responsive to a particular category, please state so in writing.  Additionally, if you have documents responsive to a particular category which you claim are privileged, please state so in writing and please produce all non-privileged documents.  For each document you claim as privileged, please state: (i) the type of privilege you claim; (ii) the nature of the document (*e.g.* letter, memorandum, notes, etc.); (iii) its date; (iv) its author(s) and recipient(s), if any; and (v) the identity of each and every person, other than the identified author(s) or recipient(s), who was sent or provided with the document or a portion of the document.

## DEFINITIONS

3.  Teledyne Lighting and Display Products, Inc.," "you" or "your" refer to Teledyne Lighting and Display Products, Inc. and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of Teledyne Lighting and Display Products, Inc.; (c) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with Teledyne Lighting and Display Products, Inc.; and (d) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

4.  "LGD" refers to LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGD; (c) all companies through which LGD markets or distributes its LCD Modules in the United States, including without limitation LGDA; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGD; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

5.  "LGDA" refers to LG Display America, Inc. (formerly known as LG.Philips LCD America, Inc.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGDA; (c) all companies through which LGDA markets or distributes its LCD Modules in the United States, including without limitation LGD; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGDA; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

6.  The term "LCD Modules" shall refer to any liquid crystal display ("LCD") module(s) designed, produced, manufactured, sold or offered for sale by, or purchased or otherwise obtained from, or imported on behalf of, LGD and/or LGDA, including but not limited to, modules used in or incorporated into televisions, monitors, computers, mobile phones, portable audio/video devices, automotive devices, industrial, or medical devices, regardless of brand. The term "LCD Modules" also includes but is not limited to any custom or special order modules designed, produced, manufactured, sold or offered for sale by LGD and/or LGDA.

7.   The term "LCD Product" means any device or product that contains an LCD Module. An LCD computer monitor, LCD television, laptop computer, a telephone or other portable or handheld product incorporating an LCD module, and equipment that incorporates an LCD Module are examples of LCD Products.  This includes all such devices, regardless of brand name.

8.   The term "communications" refers to any form of interpersonal communication, including without limitation any transmission, conveyance, or exchange of word, statement, fact, thing, idea, document, instrument, data, or information, by any medium whether written, verbal, non-verbal or any other means, including without limitation electronic communications and e-mails.

9.   The term "person" refers to any natural person, company, corporation, partnership, firm, association, government agency or other organization cognizable at law, and its agents and employees.

10. The term "document" shall have the broadest scope permissible under the Federal Rules of Civil Procedure and includes, for example, all writings, drawings, graphs, charts, photographs, phono-records, schematics, layouts, specifications, data sheets, application notes, marketing presentations and materials, internal presentations, design reports, hardware source code (including, for example, verilog), software source code (including, for example, firmware), pseudocode, timing diagrams, waveform diagrams, test reports, customer complaints and responses, engineering change notices, modification histories, white papers, assembly diagrams, assembly drawings, and assembly instructions, whether or not such documents are claimed to be privileged or confidential, and within the Defendant's possession, custody, or control as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.  The term "document" also refers, in addition to the original or original copy, to all copies of any kind that contain any alteration, marking, or omission, or which in any other way are not identical to the original or original copy and all drafts or notes made in the preparation of each document.  The term "document" shall

further refer to and include all electronic data (including, for example, executable files) in whatever form it may exist.

11. The term "thing" encompasses without limitation all tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure and which are in the possession, custody, or control of the Defendant as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.

12. The term "identify" as used herein shall refer to the following: (a) With respect to a natural person to provide: full name; present or last known business address and telephone number; present or last known residential address and telephone number; and occupation and business position or title held; (b) With respect to a legal or business entity, to provide: full name; place of incorporation or organization (if any); principal place of business; and identification of any representative of such entity who has knowledge relating to any information in connection with which such entity has been identified; (c) With respect to any document or thing, to provide: the date the document or thing bears or was prepared or transmitted; the identity of each person who authored, signed, created or prepared the document or thing; the identity of each addressee and recipient of the document or thing; its title and general character (subject matter); the number of pages in the document; the identity of the persons having possession, custody or control of the original or copies of the document or thing; the present location of the document or thing; and for each document or thing that you contend is privileged, immune or otherwise excludable from discovery, the basis for such claim of privilege, immunity or exclusion (in sufficient detail for the Court to rule on such claim) and whether you would be willing to produce such document or portions of such document under a suitable protective order.

13. The terms "relating to," "relate to," and "related to" mean pertaining to, alluding to, responding to, referring to, commenting on, regarding, recording, evidencing, containing, setting forth, reflecting, illustrating, showing, discussing, disclosing, describing, explaining, summarizing, supporting, contradicting, refuting, or concerning, whether directly or indirectly.

14. The use of the singular form of any word includes the plural, and vice versa, as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

15. The terms "or" as well as "and" shall be construed disjunctively as well as conjunctively as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

16. The term "including" as used herein is not be interpreted as limiting the request and to the contrary is intended to indicate specific examples without limitation.

## REQUESTS

**DOCUMENT REQUEST NO. 1:**

All documents reflecting the order, purchase, sale or delivery, by or to Teledyne Lighting and Display Products, Inc. and/or OEMs, since March 8, 2001, of any LCD Modules from any person, including but not limited to summaries of sales and/or shipments, reports concerning sales and/or shipments, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 2:**

All documents reflecting the order, purchase, sale or delivery by or to Teledyne Lighting and Display Products, Inc. and/or OEMs, since March 8, 2001, of LCD Products from any person that did or could contain LCD Modules, including any summaries, reports, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 3:**

Documents sufficient to identify all products purchased, manufactured, sold, or imported by or for Teledyne Lighting and Display Products, Inc. since March 8, 2001, that did or could contain LCD Modules, including information sufficient to identify which specific LCD Modules have been used in which brands and models of LCD Products.

**DOCUMENT REQUEST NO. 4:**

All documents reflecting offers to sell, offer to buy, price quotes, and/or negotiations concerning Teledyne Lighting and Display Products, Inc. and any LCD Modules since March 8, 2001.

**DOCUMENT REQUEST NO. 5:**

All contracts, agreements or other documents relating to any business arrangement or relationship (past or present) between Teledyne Lighting and Display Products, Inc. and LGD or LGDA.

**DOCUMENT REQUEST NO. 6:**

Summaries, reports, and other documents sufficient to identify all sales and imports into the United States, by or for you, of LCD Products that did or could contain LCD Modules since March 8, 2001, including the dates, brands, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 7:**

Summaries, reports, and other documents sufficient to identify all sales and imports in the United States, by or for you, of LCD Modules since March 8, 2001, including the dates, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 8:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the sale, marketing, supply, distribution, shipping, and/or importation of LCD Modules, or LCD Products containing LCD Modules, including, but not limited to plans, presentations, proposals, strategies, and/or reports (for example, road maps, presentations, product codenames, product or market updates, feasibility studies, product strategies or strategy

reports, quarterly business reviews, market reports or trends, meeting agendas, marketing materials and sales kits).

**DOCUMENT REQUEST NO. 9:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the design, development, technical specifications, manufacturing, production, performance, and/or testing of LCD Modules and/or LCD Products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning or reflecting any offer, proposal, or attempt to supply or promote LCD Modules, or LCD Products containing LCD Modules since March 8, 2001, including, for example, communications regarding possible business opportunities to design or supply LCD Modules.

**DOCUMENT REQUEST NO. 11:**

All documents concerning any in-person communications/meetings between Teledyne Lighting and Display Products, Inc. and LGD or LGDA at any time since March 8, 2001, including, but not limited to e-mails, trip reports, agendas, presentations, meeting notes, minutes, or other summary of the in-person communication/meeting, including meetings or visits inside or outside the U.S.

**DOCUMENT REQUEST NO. 12:**

All documents concerning all audits, inspections, approvals, and awards or recognition regarding LGD or LGDA, including their facilities, their manufacturing and production processes, or LCD Modules, or LCD Products containing LCD Modules, since March 8, 2001.

**DOCUMENT REQUEST NO. 13:**

All documents concerning any sales or product support provided by LGD or LGDA since March 8, 2001, including all communications and/or agreements relating to the service, repair, refurbishment, or replacement of LCD Modules, or LCD Products containing LCD Modules in the United States, and all documents regarding warranties or service agreements for the benefit of Teledyne Lighting and Display Products, Inc. or purchasers of LCD Products.

**DOCUMENT REQUEST NO. 14:**

All documents sufficient to identify product or project names and codenames for your LCD Modules or LCD Products, and documents sufficient to link or correlate such names or codenames to LGD or LGDA product models or other identifiers for LCD Modules, or LCD Products containing LCD Modules used and/or approved for those LCD Product projects and/or codenames, since March 8, 2001.

**DOCUMENT REQUEST NO. 15:**

All documents reflecting any products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 16:**

All marketing and promotional materials or technical presentations created, distributed, published or used in any way by Teledyne Lighting and Display Products, Inc. in the period from March 8, 2001 to present regarding any LCD Module or LCD Product.

**DOCUMENT REQUEST NO. 17:**

All documents reflecting your communications (including e-mail) with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 18:**

All communications sent or received since March 8, 2001 (including e-mail) between Teledyne Lighting and Display Products, Inc. and Dong Hoon Han, the Account Manager of LGDA.

**DOCUMENT REQUEST NO. 19:**

All communications (including e-mail) between Teledyne Lighting and Display Products, Inc., on the one hand, and LGDA or LGD, on the other hand, regarding the incorporation of any LCD Module into any end product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 20:**

All communications (including e-mail) between Teledyne Lighting and Display Products, Inc., on the one hand, and LGDA or LGD, on the other hand, regarding marketing and promotional materials or technical presentations created, distributed, published or used in any way by Teledyne Lighting and Display Products, Inc. in the period from March 8, 2001 to present regarding any LCD Module.

**DOCUMENT REQUEST NO. 21:**

All communications (including e-mail) between Teledyne Lighting and Display Products, Inc., on the one hand, and LGDA or LGD, on the other hand, regarding the quantity of LCD Modules or end products containing LCD Modules that were sold in the United States for any period between March 8, 2001 and present.

**DOCUMENT REQUEST NO. 22:**

All documents, including all communications between you and LGD or LGDA regarding the importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 23:**

All license agreements involving Teledyne Lighting and Display Products, Inc. and LGD or LGDA that relate to any LCD technology.

**EXHIBIT B**

The Definitions in Exhibit A are incorporated by reference.  You are requested to produce witness(es) with knowledge concerning the topics set forth below.

**TOPICS**

**TOPIC NO. 1:**

The business practice relating to documents produced in response to Exhibit A of this subpoena, including but not limited to:

(a)    the practice relating to the creation of the documents, including the timing of the creation, the authorship of the documents, the information from which the documents were created and the source/author of such information, and whether the documents were created as part of regularly conducted activity as a regular practice; and

(b)    the practice relating to the maintenance of the documents, including whether the documents were kept in the course of regularly conducted activity.

**TOPIC NO. 2:**

All communications sent or received since March 8, 2001, including but not limited to electronic mail, between Teledyne Lighting and Display Products, Inc. and LGD or LGDA.

**TOPIC NO. 3:**

Any business arrangement (whether past or present) between Teledyne Lighting and Display Products, Inc. and LGD or LGDA.

**TOPIC NO. 4:**

Any transaction involving Teledyne Lighting and Display Products, Inc. and LGD or LGDA, including all transactions involving LCD Modules.

**TOPIC NO. 5:**

Teledyne Lighting and Display Products, Inc.'s annual sales of LCD Products or LCD Modules (in units and revenues) in the Unites States from 2001 to present, as well as the price or cost paid associated with such sales.

**TOPIC NO. 6:**

Marketing and promotional materials or technical presentations created, distributed, published or used in any way by Teledyne Lighting and Display Products, Inc. in the period from March 8, 2001 to present regarding any LCD Module.

**TOPIC NO. 7:**

Importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**TOPIC NO. 8:**

Any technical issues regarding any LCD Module you discussed with LGD or LGDA in the period from March 8, 2001 to present.

**TOPIC NO. 9:**

The incorporation of any LCD Module into any end product sold by you in the period from March 8, 2001 to present.

**TOPIC NO. 10:**

The quantity of LCD Modules or end products containing LCD Modules that were sold by you in the United States for any period between March 8, 2001 and present.

**TOPIC NO. 11:**

All presentations, meetings, and in-person communications by or between Teledyne Lighting and Display Products, Inc. and/or LGD or LGDA since March 8, 2001, including but not limited to, the frequency, location, participants and purpose of such presentations, meetings and communications.

**TOPIC NO. 12:**

All actions and efforts by LGD or LGDA to: (a) promote and/or sell LCD Modules or LCD Products to or for Teledyne Lighting and Display Products, Inc.; (b) create new business opportunities with Teledyne Lighting and Display Products, Inc.; and/or (c) support or expand their relationship with Teledyne Lighting and Display Products, Inc..

**TOPIC NO. 13:**

All business relationships, contracts, agreements, letters of agreements, and memoranda of understanding between Teledyne Lighting and Display Products, Inc. and LGD or LGDA regarding the manufacturing, production, design, marketing, sale or supply of LCD Products or LCD Modules.

**TOPIC NO. 14:**

All offers to sell and/or negotiations between Teledyne Lighting and Display Products, Inc. and any person regarding the actual or potential purchase or sale of LCD Modules or LCD Products since March 8, 2001.

**TOPIC NO. 15:**

All LCD Products that contain or incorporate LCD Modules that were or could have been imported, offered for sale, and/or sold in the U.S. since March 8, 2001, including which brands and models of your LCD Products used which models of LCD Modules.

**TOPIC NO. 16:**

Since March 8, 2001, all shipments and sales of LCD Modules to be used for Teledyne Lighting and Display Products, Inc. LCD Products, and all sales and imports in the U.S. by or for you, of LCD Modules (whether alone or as part of an LCD Product).

**TOPIC NO. 17:**

All audits, inspections, approvals, and awards or recognition concerning LGD or LGDA, including, but not limited to, with respect to manufacturing and production processes, facilities, and/or LCD Modules.

**TOPIC NO. 18:**

All products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**TOPIC NO. 19:**

The efforts you took to gather and search for information and documents responsive to this subpoena and your document and email retention policies and practices.

**TOPIC NO. 20:**

All license agreements involving Teledyne Lighting and Display Products, Inc. and LGA or LDGA that relate to any LCD technology.

**TOPIC NO. 21:**

Documents produced in response to Exhibit A of this subpoena.

# TAB 9

AO 88 (Rev. 01/07) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | |
|---|---|
| **LG DISPLAY CO., LTD.** | **SUBPOENA IN A CIVIL CASE** |
| **V.** | CASE NUMBER: [1]   1:06-cv-726-JJF<br>1:07-cv-357-JJF<br>(Consolidated) |
| **AU OPTRONICS CORPORATION, et al.** | |

TO: **Teledyne Scientific & Imaging, LLC**
c/o National Corporate Research, Ltd., Registered Agent
615 South DuPont Highway
Dover, DE 19901

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.  **See Exhibit B for topics**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McKenna Long & Aldridge LLP, 444 South Flower Street, 8th Floor, Los Angeles, CA 90071 (The deposition may be videotaped.) | July 25, 2008-9:00a |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See Exhibit A.**

| PLACE | DATE AND TIME |
|---|---|
| Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West Street, P.O. Box 391, Wilmington, DE 19899-0391 | July 17, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*<br>Attorneys for AU Optronics Corporation and AU Optronics Corporation America | July 3, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Karen E. Keller, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (DE Rev.  01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____                _____
                          DATE                                              SIGNATURE OF SERVER

                                                                            _____
                                                                            ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## INSTRUCTIONS

1.  In responding to the present subpoena, you are required to furnish such information as is available to you that is within your possession custody or control, including but not limited to information in the possession of your agents, representatives, or any other person or persons acting on your behalf.

2.  If you have no writings, recordings, documents, or other information responsive to a particular category, please state so in writing.  Additionally, if you have documents responsive to a particular category which you claim are privileged, please state so in writing and please produce all non-privileged documents.  For each document you claim as privileged, please state: (i) the type of privilege you claim; (ii) the nature of the document (*e.g.* letter, memorandum, notes, etc.); (iii) its date; (iv) its author(s) and recipient(s), if any; and (v) the identity of each and every person, other than the identified author(s) or recipient(s), who was sent or provided with the document or a portion of the document.

## DEFINITIONS

3.  "Teledyne Scientific & Imaging, LLC," "you" or "your" refer to Teledyne Scientific & Imaging, LLC and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of Teledyne Scientific & Imaging, LLC; (c) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with Teledyne Scientific & Imaging, LLC; and (d) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

4. "LGD" refers to LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGD; (c) all companies through which LGD markets or distributes its LCD Modules in the United States, including without limitation LGDA; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGD; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

5. "LGDA" refers to LG Display America, Inc. (formerly known as LG.Philips LCD America, Inc.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGDA; (c) all companies through which LGDA markets or distributes its LCD Modules in the United States, including without limitation LGD; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGDA; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

6. The term "LCD Modules" shall refer to any liquid crystal display ("LCD") module(s) designed, produced, manufactured, sold or offered for sale by, or purchased or otherwise obtained from, or imported on behalf of, LGD and/or LGDA, including but not limited to, modules used in or incorporated into televisions, monitors, computers, mobile phones, portable audio/video devices, automotive devices, industrial, or medical devices, regardless of brand. The term "LCD Modules" also includes but is not limited to any custom or special order modules designed, produced, manufactured, sold or offered for sale by LGD and/or LGDA.

7.  The term "LCD Product" means any device or product that contains an LCD Module. An LCD computer monitor, LCD television, laptop computer, a telephone or other portable or handheld product incorporating an LCD module, and equipment that incorporates an LCD Module are examples of LCD Products. This includes all such devices, regardless of brand name.

8.  The term "communications" refers to any form of interpersonal communication, including without limitation any transmission, conveyance, or exchange of word, statement, fact, thing, idea, document, instrument, data, or information, by any medium whether written, verbal, non-verbal or any other means, including without limitation electronic communications and e-mails.

9.  The term "person" refers to any natural person, company, corporation, partnership, firm, association, government agency or other organization cognizable at law, and its agents and employees.

10. The term "document" shall have the broadest scope permissible under the Federal Rules of Civil Procedure and includes, for example, all writings, drawings, graphs, charts, photographs, phono-records, schematics, layouts, specifications, data sheets, application notes, marketing presentations and materials, internal presentations, design reports, hardware source code (including, for example, verilog), software source code (including, for example, firmware), pseudocode, timing diagrams, waveform diagrams, test reports, customer complaints and responses, engineering change notices, modification histories, white papers, assembly diagrams, assembly drawings, and assembly instructions, whether or not such documents are claimed to be privileged or confidential, and within the Defendant's possession, custody, or control as set forth in Rule 34(a) of the Federal Rules of Civil Procedure. The term "document" also refers, in addition to the original or original copy, to all copies of any kind that contain any alteration, marking, or omission, or which in any other way are not identical to the original or original copy and all drafts or notes made in the preparation of each document. The term "document" shall

further refer to and include all electronic data (including, for example, executable files) in whatever form it may exist.

11. The term "thing" encompasses without limitation all tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure and which are in the possession, custody, or control of the Defendant as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.

12. The term "identify" as used herein shall refer to the following: (a) With respect to a natural person to provide: full name; present or last known business address and telephone number; present or last known residential address and telephone number; and occupation and business position or title held; (b) With respect to a legal or business entity, to provide: full name; place of incorporation or organization (if any); principal place of business; and identification of any representative of such entity who has knowledge relating to any information in connection with which such entity has been identified; (c) With respect to any document or thing, to provide: the date the document or thing bears or was prepared or transmitted; the identity of each person who authored, signed, created or prepared the document or thing; the identity of each addressee and recipient of the document or thing; its title and general character (subject matter); the number of pages in the document; the identity of the persons having possession, custody or control of the original or copies of the document or thing; the present location of the document or thing; and for each document or thing that you contend is privileged, immune or otherwise excludable from discovery, the basis for such claim of privilege, immunity or exclusion (in sufficient detail for the Court to rule on such claim) and whether you would be willing to produce such document or portions of such document under a suitable protective order.

13. The terms "relating to," "relate to," and "related to" mean pertaining to, alluding to, responding to, referring to, commenting on, regarding, recording, evidencing, containing, setting forth, reflecting, illustrating, showing, discussing, disclosing, describing, explaining, summarizing, supporting, contradicting, refuting, or concerning, whether directly or indirectly.

14. The use of the singular form of any word includes the plural, and vice versa, as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

15. The terms "or" as well as "and" shall be construed disjunctively as well as conjunctively as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

16. The term "including" as used herein is not be interpreted as limiting the request and to the contrary is intended to indicate specific examples without limitation.

## REQUESTS

### DOCUMENT REQUEST NO. 1:

All documents reflecting the order, purchase, sale or delivery, by or to Teledyne Scientific & Imaging, LLC and/or OEMs, since March 8, 2001, of any LCD Modules from any person, including but not limited to summaries of sales and/or shipments, reports concerning sales and/or shipments, purchase orders, invoices, shipping records, and bills of lading.

### DOCUMENT REQUEST NO. 2:

All documents reflecting the order, purchase, sale or delivery by or to Teledyne Scientific & Imaging, LLC and/or OEMs, since March 8, 2001, of LCD Products from any person that did or could contain LCD Modules, including any summaries, reports, purchase orders, invoices, shipping records, and bills of lading.

### DOCUMENT REQUEST NO. 3:

Documents sufficient to identify all products purchased, manufactured, sold, or imported by or for Teledyne Scientific & Imaging, LLC since March 8, 2001, that did or could contain LCD Modules, including information sufficient to identify which specific LCD Modules have been used in which brands and models of LCD Products.

**DOCUMENT REQUEST NO. 4:**

All documents reflecting offers to sell, offer to buy, price quotes, and/or negotiations concerning Teledyne Scientific & Imaging, LLC and any LCD Modules since March 8, 2001.

**DOCUMENT REQUEST NO. 5:**

All contracts, agreements or other documents relating to any business arrangement or relationship (past or present) between Teledyne Scientific & Imaging, LLC and LGD or LGDA.

**DOCUMENT REQUEST NO. 6:**

Summaries, reports, and other documents sufficient to identify all sales and imports into the United States, by or for you, of LCD Products that did or could contain LCD Modules since March 8, 2001, including the dates, brands, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 7:**

Summaries, reports, and other documents sufficient to identify all sales and imports in the United States, by or for you, of LCD Modules since March 8, 2001, including the dates, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 8:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the sale, marketing, supply, distribution, shipping, and/or importation of LCD Modules, or LCD Products containing LCD Modules, including, but not limited to plans, presentations, proposals, strategies, and/or reports (for example, road maps, presentations, product codenames, product or market updates, feasibility studies, product strategies or strategy reports, quarterly business reviews, market reports or trends, meeting agendas, marketing materials and sales kits).

**DOCUMENT REQUEST NO. 9:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the design, development, technical specifications, manufacturing, production, performance, and/or testing of LCD Modules and/or LCD Products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning or reflecting any offer, proposal, or attempt to supply or promote LCD Modules, or LCD Products containing LCD Modules since March 8, 2001, including, for example, communications regarding possible business opportunities to design or supply LCD Modules.

**DOCUMENT REQUEST NO. 11:**

All documents concerning any in-person communications/meetings between Teledyne Scientific & Imaging, LLC and LGD or LGDA at any time since March 8, 2001, including, but not limited to e-mails, trip reports, agendas, presentations, meeting notes, minutes, or other summary of the in-person communication/meeting, including meetings or visits inside or outside the U.S.

**DOCUMENT REQUEST NO. 12:**

All documents concerning all audits, inspections, approvals, and awards or recognition regarding LGD or LGDA, including their facilities, their manufacturing and production processes, or LCD Modules, or LCD Products containing LCD Modules, since March 8, 2001.

**DOCUMENT REQUEST NO. 13:**

All documents concerning any sales or product support provided by LGD or LGDA since March 8, 2001, including all communications and/or agreements relating to the service, repair, refurbishment, or replacement of LCD Modules, or LCD Products containing LCD Modules in the United States, and all documents regarding warranties or service agreements for the benefit of Teledyne Scientific & Imaging, LLC or purchasers of LCD Products.

**DOCUMENT REQUEST NO. 14:**

All documents sufficient to identify product or project names and codenames for your LCD Modules or LCD Products, and documents sufficient to link or correlate such names or codenames to LGD or LGDA product models or other identifiers for LCD Modules, or LCD Products containing LCD Modules used and/or approved for those LCD Product projects and/or codenames, since March 8, 2001.

**DOCUMENT REQUEST NO. 15:**

All documents reflecting any products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 16:**

All marketing and promotional materials or technical presentations created, distributed, published or used in any way by Teledyne Scientific & Imaging, LLC in the period from March 8, 2001 to present regarding any LCD Module or LCD Product.

**DOCUMENT REQUEST NO. 17:**

All documents reflecting your communications (including e-mail) with LGD or LGDA since March 8, 2001.

**DOCUMENT REQUEST NO. 18:**

All communications sent or received since March 8, 2001 (including e-mail) between Teledyne Scientific & Imaging, LLC and Dong Hoon Han, the Account Manager of LGDA.

**DOCUMENT REQUEST NO. 19:**

All communications (including e-mail) between Teledyne Scientific & Imaging, LLC, on the one hand, and LGDA or LGD, on the other hand, regarding the incorporation of any LCD Module into any end product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 20:**

All communications (including e-mail) between Teledyne Scientific & Imaging, LLC, on the one hand, and LGDA or LGD, on the other hand, regarding marketing and promotional

materials or technical presentations created, distributed, published or used in any way by Teledyne Scientific & Imaging, LLC in the period from March 8, 2001 to present regarding any LCD Module.

**DOCUMENT REQUEST NO. 21:**

All communications (including e-mail) between Teledyne Scientific & Imaging, LLC, on the one hand, and LGDA or LGD, on the other hand, regarding the quantity of LCD Modules or end products containing LCD Modules that were sold in the United States for any period between March 8, 2001 and present.

**DOCUMENT REQUEST NO. 22:**

All documents, including all communications between you and LGD or LGDA regarding the importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 23:**

All license agreements involving Teledyne Scientific & Imaging, LLC and LGD or LGDA that relate to any LCD technology.

## EXHIBIT B

The Definitions in Exhibit A are incorporated by reference.  You are requested to produce witness(es) with knowledge concerning the topics set forth below.

## TOPICS

**TOPIC NO. 1:**

The business practice relating to documents produced in response to Exhibit A of this subpoena, including but not limited to:

(a)    the practice relating to the creation of the documents, including the timing of the creation, the authorship of the documents, the information from which the documents were created and the source/author of such information, and whether the documents were created as part of regularly conducted activity as a regular practice; and

(b)    the practice relating to the maintenance of the documents, including whether the documents were kept in the course of regularly conducted activity.

**TOPIC NO. 2:**

All communications sent or received since March 8, 2001, including but not limited to electronic mail, between Teledyne Scientific & Imaging, LLC and LGD or LGDA.

**TOPIC NO. 3:**

Any business arrangement (whether past or present) between Teledyne Scientific & Imaging, LLC and LGD or LGDA.

**TOPIC NO. 4:**

Any transaction involving Teledyne Scientific & Imaging, LLC and LGD or LGDA, including all transactions involving LCD Modules.

**TOPIC NO. 5:**

Teledyne Scientific & Imaging, LLC's annual sales of LCD Products or LCD Modules (in units and revenues) in the Unites States from 2001 to present, as well as the price or cost paid associated with such sales.

**TOPIC NO. 6:**

Marketing and promotional materials or technical presentations created, distributed, published or used in any way by Teledyne Scientific & Imaging, LLC in the period from March 8, 2001 to present regarding any LCD Module.

**TOPIC NO. 7:**

Importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**TOPIC NO. 8:**

Any technical issues regarding any LCD Module you discussed with LGD or LGDA in the period from March 8, 2001 to present.

**TOPIC NO. 9:**

The incorporation of any LCD Module into any end product sold by you in the period from March 8, 2001 to present.

**TOPIC NO. 10:**

The quantity of LCD Modules or end products containing LCD Modules that were sold by you in the United States for any period between March 8, 2001 and present.

**TOPIC NO. 11:**

All presentations, meetings, and in-person communications by or between Teledyne Scientific & Imaging, LLC and/or LGD or LGDA since March 8, 2001, including but not limited to, the frequency, location, participants and purpose of such presentations, meetings and communications.

-11-

**TOPIC NO. 12:**

All actions and efforts by LGD or LGDA to: (a) promote and/or sell LCD Modules or LCD Products to or for Teledyne Scientific & Imaging, LLC; (b) create new business opportunities with Teledyne Scientific & Imaging, LLC; and/or (c) support or expand their relationship with Teledyne Scientific & Imaging, LLC.

**TOPIC NO. 13:**

All business relationships, contracts, agreements, letters of agreements, and memoranda of understanding between Teledyne Scientific & Imaging, LLC and LGD or LGDA regarding the manufacturing, production, design, marketing, sale or supply of LCD Products or LCD Modules.

**TOPIC NO. 14:**

All offers to sell and/or negotiations between Teledyne Scientific & Imaging, LLC and any person regarding the actual or potential purchase or sale of LCD Modules or LCD Products since March 8, 2001.

**TOPIC NO. 15:**

All LCD Products that contain or incorporate LCD Modules that were or could have been imported, offered for sale, and/or sold in the U.S. since March 8, 2001, including which brands and models of your LCD Products used which models of LCD Modules.

**TOPIC NO. 16:**

Since March 8, 2001, all shipments and sales of LCD Modules to be used for Teledyne Scientific & Imaging, LLC LCD Products, and all sales and imports in the U.S. by or for you, of LCD Modules (whether alone or as part of an LCD Product).

**TOPIC NO. 17:**

All audits, inspections, approvals, and awards or recognition concerning LGD or LGDA, including, but not limited to, with respect to manufacturing and production processes, facilities, and/or LCD Modules.

**TOPIC NO. 18:**

All products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**TOPIC NO. 19:**

The efforts you took to gather and search for information and documents responsive to this subpoena and your document and email retention policies and practices.

**TOPIC NO. 20:**

All license agreements involving Teledyne Scientific & Imaging, LLC and LGA or LDGA that relate to any LCD technology.

**TOPIC NO. 21:**

Documents produced in response to Exhibit A of this subpoena.

# TAB 10

AO 88 (Rev. 01/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

**LG DISPLAY CO., LTD.**

## V.

**AU OPTRONICS CORPORATION, et al.**

| | |
|---|---|
| **SUBPOENA IN A CIVIL CASE** | |
| CASE NUMBER: [1] | 1:06-cv-726-JJF<br>1:07-cv-357-JJF<br>(Consolidated) |

TO:  **Teledyne Technologies, Inc.**
c/o National Corporate Research, Ltd., Registered Agent
615 South DuPont Highway
Dover, DE 19901

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. **See Exhibit B for topics**

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McKenna Long & Aldridge LLP, 444 South Flower Street, 8th Floor, Los Angeles, CA 90071 (The deposition may be videotaped.) | July 22, 2008-9:00a |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Exhibit A.**

| PLACE | DATE AND TIME |
|---|---|
| Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West Street, P.O. Box 391, Wilmington, DE 19899-0391 | July 17, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*<br>Attorneys for AU Optronics Corporation and AU Optronics Corporation America | July 3, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Karen E. Keller, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (DE Rev.  01/07) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                              DATE                              SIGNATURE OF SERVER

                                                                 _____
                                                                 ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## INSTRUCTIONS

1.  In responding to the present subpoena, you are required to furnish such information as is available to you that is within your possession custody or control, including but not limited to information in the possession of your agents, representatives, or any other person or persons acting on your behalf.

2.  If you have no writings, recordings, documents, or other information responsive to a particular category, please state so in writing. Additionally, if you have documents responsive to a particular category which you claim are privileged, please state so in writing and please produce all non-privileged documents. For each document you claim as privileged, please state: (i) the type of privilege you claim; (ii) the nature of the document (*e.g.* letter, memorandum, notes, etc.); (iii) its date; (iv) its author(s) and recipient(s), if any; and (v) the identity of each and every person, other than the identified author(s) or recipient(s), who was sent or provided with the document or a portion of the document.

## DEFINITIONS

3.  "Teledyne Technologies, Inc.," "you" or "your" refer to Teledyne Technologies, Inc. and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of Teledyne Technologies, Inc.; (c) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with Teledyne Technologies, Inc.; and (d) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

4. "LGD" refers to LG Display Co., Ltd. (formerly known as LG.Philips LCD Co., Ltd.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGD; (c) all companies through which LGD markets or distributes its LCD Modules in the United States, including without limitation LGDA; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGD; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

5. "LGDA" refers to LG Display America, Inc. (formerly known as LG.Philips LCD America, Inc.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGDA; (c) all companies through which LGDA markets or distributes its LCD Modules in the United States, including without limitation LGD; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGDA; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

6. The term "LCD Modules" shall refer to any liquid crystal display ("LCD") module(s) designed, produced, manufactured, sold or offered for sale by, or purchased or otherwise obtained from, or imported on behalf of, LGD and/or LGDA, including but not limited to, modules used in or incorporated into televisions, monitors, computers, mobile phones, portable audio/video devices, automotive devices, industrial, or medical devices, regardless of brand. The term "LCD Modules" also includes but is not limited to any custom or special order modules designed, produced, manufactured, sold or offered for sale by LGD and/or LGDA.

7. The term "LCD Product" means any device or product that contains an LCD Module. An LCD computer monitor, LCD television, laptop computer, a telephone or other portable or handheld product incorporating an LCD module, and equipment that incorporates an LCD Module are examples of LCD Products. This includes all such devices, regardless of brand name.

8. The term "communications" refers to any form of interpersonal communication, including without limitation any transmission, conveyance, or exchange of word, statement, fact, thing, idea, document, instrument, data, or information, by any medium whether written, verbal, non-verbal or any other means, including without limitation electronic communications and e-mails.

9. The term "person" refers to any natural person, company, corporation, partnership, firm, association, government agency or other organization cognizable at law, and its agents and employees.

10. The term "document" shall have the broadest scope permissible under the Federal Rules of Civil Procedure and includes, for example, all writings, drawings, graphs, charts, photographs, phono-records, schematics, layouts, specifications, data sheets, application notes, marketing presentations and materials, internal presentations, design reports, hardware source code (including, for example, verilog), software source code (including, for example, firmware), pseudocode, timing diagrams, waveform diagrams, test reports, customer complaints and responses, engineering change notices, modification histories, white papers, assembly diagrams, assembly drawings, and assembly instructions, whether or not such documents are claimed to be privileged or confidential, and within the Defendant's possession, custody, or control as set forth in Rule 34(a) of the Federal Rules of Civil Procedure. The term "document" also refers, in addition to the original or original copy, to all copies of any kind that contain any alteration, marking, or omission, or which in any other way are not identical to the original or original copy and all drafts or notes made in the preparation of each document. The term "document" shall

further refer to and include all electronic data (including, for example, executable files) in whatever form it may exist.

11. The term "thing" encompasses without limitation all tangible things which constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure and which are in the possession, custody, or control of the Defendant as set forth in Rule 34(a) of the Federal Rules of Civil Procedure.

12. The term "identify" as used herein shall refer to the following: (a) With respect to a natural person to provide: full name; present or last known business address and telephone number; present or last known residential address and telephone number; and occupation and business position or title held; (b) With respect to a legal or business entity, to provide: full name; place of incorporation or organization (if any); principal place of business; and identification of any representative of such entity who has knowledge relating to any information in connection with which such entity has been identified; (c) With respect to any document or thing, to provide: the date the document or thing bears or was prepared or transmitted; the identity of each person who authored, signed, created or prepared the document or thing; the identity of each addressee and recipient of the document or thing; its title and general character (subject matter); the number of pages in the document; the identity of the persons having possession, custody or control of the original or copies of the document or thing; the present location of the document or thing; and for each document or thing that you contend is privileged, immune or otherwise excludable from discovery, the basis for such claim of privilege, immunity or exclusion (in sufficient detail for the Court to rule on such claim) and whether you would be willing to produce such document or portions of such document under a suitable protective order.

13. The terms "relating to," "relate to," and "related to" mean pertaining to, alluding to, responding to, referring to, commenting on, regarding, recording, evidencing, containing, setting forth, reflecting, illustrating, showing, discussing, disclosing, describing, explaining, summarizing, supporting, contradicting, refuting, or concerning, whether directly or indirectly.

14. The use of the singular form of any word includes the plural, and vice versa, as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

15. The terms "or" as well as "and" shall be construed disjunctively as well as conjunctively as necessary to bring within the scope of the following requests all information which might otherwise be construed to be outside its scope.

16. The term "including" as used herein is not be interpreted as limiting the request and to the contrary is intended to indicate specific examples without limitation.

## REQUESTS

**DOCUMENT REQUEST NO. 1:**

All documents reflecting the order, purchase, sale or delivery, by or to Teledyne Technologies, Inc. and/or OEMs, since March 8, 2001, of any LCD Modules from any person, including but not limited to summaries of sales and/or shipments, reports concerning sales and/or shipments, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 2:**

All documents reflecting the order, purchase, sale or delivery by or to Teledyne Technologies, Inc. and/or OEMs, since March 8, 2001, of LCD Products from any person that did or could contain LCD Modules, including any summaries, reports, purchase orders, invoices, shipping records, and bills of lading.

**DOCUMENT REQUEST NO. 3:**

Documents sufficient to identify all products purchased, manufactured, sold, or imported by or for Teledyne Technologies, Inc. since March 8, 2001, that did or could contain LCD Modules, including information sufficient to identify which specific LCD Modules have been used in which brands and models of LCD Products.

**DOCUMENT REQUEST NO. 4:**

All documents reflecting offers to sell, offer to buy, price quotes, and/or negotiations concerning Teledyne Technologies, Inc. and any LCD Modules since March 8, 2001.

**DOCUMENT REQUEST NO. 5:**

All contracts, agreements or other documents relating to any business arrangement or relationship (past or present) between Teledyne Technologies, Inc. and LGD or LGDA.

**DOCUMENT REQUEST NO. 6:**

Summaries, reports, and other documents sufficient to identify all sales and imports into the United States, by or for you, of LCD Products that did or could contain LCD Modules since March 8, 2001, including the dates, brands, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 7:**

Summaries, reports, and other documents sufficient to identify all sales and imports in the United States, by or for you, of LCD Modules since March 8, 2001, including the dates, models, quantities, customers, location, and price concerning all such sales and imports. If subtotals and totals are not included (in units and revenue), then this information, including spreadsheets, is requested in native electronic format.

**DOCUMENT REQUEST NO. 8:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the sale, marketing, supply, distribution, shipping, and/or importation of LCD Modules, or LCD Products containing LCD Modules, including, but not limited to plans, presentations, proposals, strategies, and/or reports (for example, road maps, presentations, product codenames, product or market updates, feasibility studies, product strategies or strategy reports, quarterly business reviews, market reports or trends, meeting agendas, marketing materials and sales kits).

**DOCUMENT REQUEST NO. 9:**

All documents you received from or provided to LGD or LGDA since March 8, 2001, concerning the design, development, technical specifications, manufacturing, production, performance, and/or testing of LCD Modules and/or LCD Products.

**DOCUMENT REQUEST NO. 10:**

All documents concerning or reflecting any offer, proposal, or attempt to supply or promote LCD Modules, or LCD Products containing LCD Modules since March 8, 2001, including, for example, communications regarding possible business opportunities to design or supply LCD Modules.

**DOCUMENT REQUEST NO. 11:**

All documents concerning any in-person communications/meetings between Teledyne Technologies, Inc. and LGD or LGDA at any time since March 8, 2001, including, but not limited to e-mails, trip reports, agendas, presentations, meeting notes, minutes, or other summary of the in-person communication/meeting, including meetings or visits inside or outside the U.S.

**DOCUMENT REQUEST NO. 12:**

All documents concerning all audits, inspections, approvals, and awards or recognition regarding LGD or LGDA, including their facilities, their manufacturing and production processes, or LCD Modules, or LCD Products containing LCD Modules, since March 8, 2001.

**DOCUMENT REQUEST NO. 13:**

All documents concerning any sales or product support provided by LGD or LGDA since March 8, 2001, including all communications and/or agreements relating to the service, repair, refurbishment, or replacement of LCD Modules, or LCD Products containing LCD Modules in the United States, and all documents regarding warranties or service agreements for the benefit of Teledyne Technologies, Inc. or purchasers of LCD Products.

**DOCUMENT REQUEST NO. 14:**

All documents sufficient to identify product or project names and codenames for your LCD Modules or LCD Products, and documents sufficient to link or correlate such names or

codenames to LGD or LGDA product models or other identifiers for LCD Modules, or LCD

Products containing LCD Modules used and/or approved for those LCD Product projects and/or

codenames, since March 8, 2001.

**DOCUMENT REQUEST NO. 15:**

All documents reflecting any products and specifications that you approved, designed,

developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since

March 8, 2001.

**DOCUMENT REQUEST NO. 16:**

All marketing and promotional materials or technical presentations created, distributed,

published or used in any way by Teledyne Technologies, Inc. in the period from March 8, 2001

to present regarding any LCD Module or LCD Product.

**DOCUMENT REQUEST NO. 17:**

All documents reflecting your communications (including e-mail) with LGD or LGDA

since March 8, 2001.

**DOCUMENT REQUEST NO. 18:**

All communications sent or received since March 8, 2001 (including e-mail) between

Teledyne Technologies, Inc. and Dong Hoon Han, the Account Manager of LGDA.

**DOCUMENT REQUEST NO. 19:**

All communications (including e-mail) between Teledyne Technologies, Inc., on the one

hand, and LGDA or LGD, on the other hand, regarding the incorporation of any LCD Module

into any end product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 20:**

All communications (including e-mail) between Teledyne Technologies, Inc., on the one

hand, and LGDA or LGD, on the other hand, regarding marketing and promotional materials or

technical presentations created, distributed, published or used in any way by Teledyne

Technologies, Inc. in the period from March 8, 2001 to present regarding any LCD Module.

**DOCUMENT REQUEST NO. 21:**

     All communications (including e-mail) between Teledyne Technologies, Inc., on the one hand, and LGDA or LGD, on the other hand, regarding the quantity of LCD Modules or end products containing LCD Modules that were sold in the United States for any period between March 8, 2001 and present.

**DOCUMENT REQUEST NO. 22:**

     All documents, including all communications between you and LGD or LGDA regarding the importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**DOCUMENT REQUEST NO. 23:**

     All license agreements involving Teledyne Technologies, Inc. and LGD or LGDA that relate to any LCD technology.

## EXHIBIT B

The Definitions in Exhibit A are incorporated by reference.  You are requested to produce witness(es) with knowledge concerning the topics set forth below.

## TOPICS

**TOPIC NO. 1:**

The business practice relating to documents produced in response to Exhibit A of this subpoena, including but not limited to:

(a)     the practice relating to the creation of the documents, including the timing of the creation, the authorship of the documents, the information from which the documents were created and the source/author of such information, and whether the documents were created as part of regularly conducted activity as a regular practice; and

(b)     the practice relating to the maintenance of the documents, including whether the documents were kept in the course of regularly conducted activity.

**TOPIC NO. 2:**

All communications sent or received since March 8, 2001, including but not limited to electronic mail, between Teledyne Technologies, Inc. and LGD or LGDA.

**TOPIC NO. 3:**

Any business arrangement (whether past or present) between Teledyne Technologies, Inc. and LGD or LGDA.

**TOPIC NO. 4:**

Any transaction involving Teledyne Technologies, Inc. and LGD or LGDA, including all transactions involving LCD Modules.

**TOPIC NO. 5:**

Teledyne Technologies, Inc.'s annual sales of LCD Products or LCD Modules (in units and revenues) in the Unites States from 2001 to present, as well as the price or cost paid associated with such sales.

**TOPIC NO. 6:**

Marketing and promotional materials or technical presentations created, distributed, published or used in any way by Teledyne Technologies, Inc. in the period from March 8, 2001 to present regarding any LCD Module.

**TOPIC NO. 7:**

Importation or shipment into the United States of any LCD Module or LCD Product in the period from March 8, 2001 to present.

**TOPIC NO. 8:**

Any technical issues regarding any LCD Module you discussed with LGD or LGDA in the period from March 8, 2001 to present.

**TOPIC NO. 9:**

The incorporation of any LCD Module into any end product sold by you in the period from March 8, 2001 to present.

**TOPIC NO. 10:**

The quantity of LCD Modules or end products containing LCD Modules that were sold by you in the United States for any period between March 8, 2001 and present.

**TOPIC NO. 11:**

All presentations, meetings, and in-person communications by or between Teledyne Technologies, Inc. and/or LGD or LGDA since March 8, 2001, including but not limited to, the frequency, location, participants and purpose of such presentations, meetings and communications.

**TOPIC NO. 12:**

All actions and efforts by LGD or LGDA to: (a) promote and/or sell LCD Modules or LCD Products to or for Teledyne Technologies, Inc.; (b) create new business opportunities with Teledyne Technologies, Inc.; and/or (c) support or expand their relationship with Teledyne Technologies, Inc..

**TOPIC NO. 13:**

All business relationships, contracts, agreements, letters of agreements, and memoranda of understanding between Teledyne Technologies, Inc. and LGD or LGDA regarding the manufacturing, production, design, marketing, sale or supply of LCD Products or LCD Modules.

**TOPIC NO. 14:**

All offers to sell and/or negotiations between Teledyne Technologies, Inc. and any person regarding the actual or potential purchase or sale of LCD Modules or LCD Products since March 8, 2001.

**TOPIC NO. 15:**

All LCD Products that contain or incorporate LCD Modules that were or could have been imported, offered for sale, and/or sold in the U.S. since March 8, 2001, including which brands and models of your LCD Products used which models of LCD Modules.

**TOPIC NO. 16:**

Since March 8, 2001, all shipments and sales of LCD Modules to be used for Teledyne Technologies, Inc. LCD Products, and all sales and imports in the U.S. by or for you, of LCD Modules (whether alone or as part of an LCD Product).

**TOPIC NO. 17:**

All audits, inspections, approvals, and awards or recognition concerning LGD or LGDA, including, but not limited to, with respect to manufacturing and production processes, facilities, and/or LCD Modules.

**TOPIC NO. 18:**

All products and specifications that you approved, designed, developed, or marketed jointly, cooperatively, or in coordination with LGD or LGDA since March 8, 2001.

**TOPIC NO. 19:**

The efforts you took to gather and search for information and documents responsive to this subpoena and your document and email retention policies and practices.

**TOPIC NO. 20:**

All license agreements involving Teledyne Technologies, Inc. and LGA or LDGA that relate to any LCD technology.

**TOPIC NO. 21:**

Documents produced in response to Exhibit A of this subpoena.