## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| LG DISPLAY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> CHI MEI OPTOELECTRONICS CORPORATION, et al. <br><br> Defendants. | Civil Action No. 06-726 (JJF) <br> Civil Action No. 07-357 (JJF) <br><br> **CONSOLIDATED CASES** |
| CHI MEI OPTOELECTRONICS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> LG DISPLAY CO., LTD. and LG DISPLAY AMERICA, INC., <br><br> Defendants. | Civil Action No. 08-355 (JJF) |

### PLAINTIFF LG DISPLAY'S ANSWERING BRIEF IN OPPOSITION TO CHI MEI OPTOELECTRONICS CORPORATION'S MOTION FOR CONSOLIDATION

BAYARD, P.A.

Richard D. Kirk
Ashley B. Stitzer
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000

*Attorneys for Plaintiffs LG Display Co., Ltd. and LG Display America, Inc.*

OF COUNSEL:
Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
Cass W. Christenson
John W. Lomas, Jr.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

# TABLE OF CONTENTS

<strong>Page</strong>

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 1

SUMMARY OF ARGUMENT ............................................................................................. 5

STATEMENT OF FACTS ................................................................................................. 7

ARGUMENT ................................................................................................................... 11

I.     ALL PARTIES AGREE THAT CONSOLIDATION IS APPROPRIATE GIVEN
THE COMMON PATENTS, ISSUES, AND PARTIES AT ISSUE IN THE
TRANSFERRED CMO ACTION ................................................................................ 11

II.    CMO FAILS TO SHOW GOOD CAUSE TO MODIFY THE SCHEDULING
ORDER AND CMO'S PROPOSED SCHEDULE CHANGES WOULD
PREJUDICE LG DISPLAY ....................................................................................... 12

      A.    CMO Should Not Be Heard To Object Now After Accepting The Current
Scheduling Order, Which Was Entered With The Understanding That The
CMO Action Was Transferred For Consolidation With This Case ................... 13

      B.    CMO's Lack Of Diligence, Including Its Failure To Serve A Single
Discovery Request, Precludes A Showing Of Good Cause As A Matter Of
Law ............................................................................................................. 15

      C.    CMO Fails To Make Any Specific Showing As To Why It Cannot
Develop Its Affirmative Case Under The Current Scheduling Order Or
With Existing Discovery From LG Display ..................................................... 17

      D.    CMO's Proposed Scheduling Order Changes Are Unworkable And Would
Unfairly Prejudice LG Display ...................................................................... 20

CONCLUSION ............................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*AMW Material Testing, Inc. v. Town of Babylon,*
   215 F.R.D. 67 (E.D.N.Y. 2003) ................................................................17

*Arnold v. Krause, Inc.,*
   232 F.R.D. 58 (W.D.N.Y. 2004) ..............................................................17

*AU Optronics Corp. v. LG.Philips LCD Co., Ltd.,*
   No. 07-C-137-S, 2007 U.S. Dist. LEXIS 39340 (W.D. Wis. May 30, 2007)...........................2

*Chancellor v. Pottsgrove School Dist.,*
   501 F. Supp. 2d 695 (E.D. Pa. 2007) ......................................6, 12, 13, 15

*Chi Mei Optoelectronics Corp. v. LG Philips LCD Co., Ltd.,*
   No. 2:07-CV-176, 2008 WL 901405 (E.D. Tex., March 31, 2008) .................2, 3, 9

*Dag Enterprises, Inc. v. Exxon Mobil Corp.,*
   226 F.R.D. 95 (D.D.C. 2005) ............................................................12, 16

*Hutchins v. United Parcel Service, Inc.,* No. 01 CV 1462 WJM, 2005 WL 1793695
   (D.N.J. July 26, 2005) ............................................................................12

*Kirkwood v. Inca Metal Products Corp.,*
   No. 3:04-CV-0226-D, 2007 WL 2325222 (N.D. Tex. Aug. 13, 2007) ................7, 18

*Koplove v. Ford Motor Co.,*
   795 F.2d 15 (3rd Cir. 1986) ..............................................................12, 15

*Newton v. Dana Corp.,*
   No. Civ. A. 94-4958, 1995 WL 368172 (E.D. Pa. June 21, 1995) ..........................17

*Shell v. City of Kansas City Kansas,*
   No. 91-2306-O, 1992 WL 696526 (D. Kan. April 1, 1992) ...................................18

*United States v. Dentsply Int'l, Inc.,*
   190 F.R.D. 140 (D. Del. 1999) ..............................................................21

OTHER AUTHORITIES

Fed. R. Civ. P. 16..................................................................................12, 16

These cases that the parties all agree should be consolidated involve identical and mirror image claims. Each and every Chi Mei Optoelectronics Corporation ("CMO") patent and the mirror image of each and every CMO affirmative claim against LG Display Co., Ltd ("LG Display") in Civil Action No. 08-355 (JJF) has already been at issue in consolidated Civil Action Nos. 06-726 (JJF) and 07-357 (JJF). Discovery requests covering all of the patents-in-suit and relevant products at issue in these cases have already been served. LG Display has produced and is continuing to produce to CMO a tremendous scope of information concerning its products, including LG Display's most detailed product design files, product specifications, documents concerning relevant parts and components, and many other technical documents. LG Display is also providing extensive information regarding sales and customers. CMO has not specified any additional information that it needs concerning its patent infringement claims.

CMO now seeks to disrupt the Scheduling Order and this Court's case management guidelines by demanding delays of deadlines and an increase of third-party deposition hours but fails to provide any showing that the current Scheduling Order prevents it from obtaining the discovery it needs. Any attempt by CMO in its reply to show the Scheduling Order prejudices its affirmative claims will fail because CMO has had every opportunity to pursue additional discovery, but simply chose not to do so. CMO's own lack of diligence precludes any showing of the good cause required to amend the Scheduling Order.

## NATURE AND STAGE OF THE PROCEEDINGS

LG Display originated these proceedings by filing an infringement action concerning liquid crystal display ("LCD") technology on December 1, 2006 ("LG Display Action") against CMO, Chi Mei Optoelectronics Corporation USA ("CMO USA"), AU Optronics Corporation

("AUO"), and AU Optronics Corporation America ("AUOA") (collectively, the "Defendants").[1] (D.I. 1.) LG Display asserts that the Defendants infringe nine patents.[2] Both AUO and CMO subsequently filed related patent infringement claims concerning LCD technology against LG Display in Wisconsin (AUO) and Texas (CMO), asserting eight patents and six patents, respectively, against LG Display.

In response to Defendants' attempts to split the proceedings into three separate courts, LG Display moved to transfer both cases back to this Court. (No. 07-357, D.I. 22; No. 08-355-JJF, D.I. 75, Attachment 13.) The United States District Courts for the Western District of Wisconsin and the Eastern District of Texas agreed with LG Display that all of the parties' overlapping claims and defenses should be litigated in this Court and transferred both cases here. *AU Optronics Corp. v. LG.Philips LCD Co., Ltd.*, No. 07-C-137-S, 2007 U.S. Dist. LEXIS 39340, *6-7 (W.D. Wis. May 30, 2007); *Chi Mei Optoelectronics Corp. v. LG Philips LCD Co., Ltd.*, No. 2:07-CV-176, 2008 WL 901405, *2 (E.D. Tex., March 31, 2008). This Court consolidated the AUO Action with the LG Display Action, (No. 07-357, D.I. 100), after a joint motion by LG Display and AUO that CMO did not oppose (No. 07-357, D.I. 90).

On February 14, 2008, the parties had a scheduling conference with the Court. (*See* Ex. A., Sched. Conf. Tr. (conference with Hon. Joseph J. Farnan on Feb. 14, 2008).) At that time, LG Display's motion to transfer the CMO Action was pending. The Court and counsel for the parties anticipated the potential transfer in setting the schedule. (*Id.* at 7-8.) The Court also

---

[1] LG Display also asserted claims against Viewsonic Corporation, Tatung Company, and Tatung Company of America, who each settled with LG Display and each of whom has since been dismissed from this case.

[2] United States Patent Nos. 5,019,002 (the "'002 Patent"); 4,624,737 (the "'737 Patent"); 5,825,449 (the "'440 Patent"); 5,905,274 (the "'274 Patent"); 6,815,321 (the "'321 Patent"); 7,176,489 (the "'489 Patent"); 6,803,984 (the "'984 Patent"); 7,218,374 (the "'374 Patent"); and 6,664,569 (the "'569 Patent").

specifically told CMO to begin discovery before the motions to dismiss were decided, informing CMO that "I have enough information to go on to make a decision and so I think we ought to get started on the case." (*Id.* at 11.)

At the February 14, 2008 scheduling conference, the Court invited the parties, including CMO, to consider the effect that transfer of the CMO Action would have on the schedule in this case. (Ex. A at 7-8.) The parties submitted a proposed scheduling order two weeks later. (D.I. 155.) The parties agreed that 60 hours of non-party deposition hours per side was appropriate and also agreed to an August 1, 2008 deadline to amend the pleadings. (*Id.* at 3, 5.) The initial Scheduling Order this Court issued on March 31, 2008 reflected that agreement. (D.I. 175.) CMO and AUO proposed a December 17, 2008 deadline for the close of fact-discovery, including non-party discovery; a June 27 deadline for document production and contention interrogatories; a January 12, 2009 deadline for expert reports; and a February 9, 2009 for rebuttal reports. (D.I. 155 at 2-4.) The Court chose these deadlines proposed by CMO and AUO and included those deadlines in the initial Scheduling Order entered on March 31, 2008. (D.I. 175.)

Also on March 31, 2008, the Honorable John T. Ward granted transfer of CMO's case from the Eastern District of Texas ("CMO Action") to this District for consolidation with the LG Display Action, *Chi Mei*, 2008 WL 901405 at *2. The next day, CMO wrote to this Court, asking it to grant CMO's pending motions to dismiss it from the LG Display Action or to transfer the CMO Action back to Texas so as to avoid consolidation. (D.I. 177.) On April 29, 2008, the Court denied CMO's motions to dismiss setting the stage for consolidation of the CMO Action. (D.I. 193.) The Court also issued a revised Scheduling Order that factored the inevitable consolidation into the schedule. (D.I. 194.)

CMO did not object to the revised Scheduling Order. The revised Scheduling Order retained the same trial date, fact discovery deadline of December 17, 2008, number of non-party deposition hours, and deadline for motions to amend pleadings of August 1, 2008 from the first scheduling order. (*Id.*) The Court did, however, make certain adjustments to the Scheduling Order in response to the transfer of CMO's case and the inevitable consolidation of CMO's claims with the pending case. Specifically, the Court's new Scheduling Order doubled the number of party deposition hours from 35 to 70, moved the deadline for case dispositive motions from February 20, 2009 to March 16, 2009, changed the *Markman* hearing date to September 18, moved the deadline to exchange terms believe to require construction from June 1 to July 1, and moved the deadline to exchange proposed constructions from July 3 to July 17. (*Id.*)

CMO has not served any interrogatories, requests for production, or requests for admission. CMO USA, however, has served 109 requests for production and a purported 27 interrogatories. (D.I. 181, 217.) LG Display and AUO also have served extensive discovery requests, starting in late March, 2008. Beginning on June 6, 2008, LG Display and AUO served over thirty third-party subpoenas each. CMO has noticed only two third-party subpoenas, which were not issued until July 9, 2008.

Promptly after the CMO Action was docketed in this District, LG Display asked AUO and CMO to stipulate to the inevitable consolidation of CMO's overlapping case involving common patents, parties, and issues. (Ex. B.) Although the Scheduling Order had already been revised to reflect the transfer of CMO's case for consolidation, and the mirror image of CMO's affirmative claims as to each of its patents have been in this case all along, CMO demanded an additional four month extension of all deadlines in the Scheduling Order as a condition to stipulation. (*Id.*)

LG Display rejected CMO's inappropriate attempts to condition consolidation of CMO's overlapping case on a complete revision of the scheduling order. LG Display informed CMO that it would be forced to file a motion unless CMO dropped its unreasonable demands. The parties discussed the issue further, and LG Display offered a reasonable extension of the motions to amend deadline to September 1, 2008. At CMO's request LG Display refrained from filing its motion to consolidate to attempt to resolve these issues. CMO, however, then abruptly filed its own motion to consolidate. (D.I. 295.) LG Display filed its own motion to consolidate on the same day. (D.I. 298.) The parties agree that consolidation is appropriate, but LG Display opposes CMO's request to modify the Scheduling Order.

## SUMMARY OF ARGUMENT

1.     The parties recognize that the CMO Action involves patents, issues, and parties that are already in the LG Display Action. As plainly stated in Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate to avoid unnecessary cost or delay. The parties therefore agree that consolidation is proper.

2.     In contrast, CMO's request to modify the Scheduling Order should be denied. CMO has continuously sought to delay resolution of the claims in this case by attempting to litigate overlapping issues in another court, and by filing meritless motions to dismiss. CMO now seeks to further delay Scheduling Order deadlines that were affirmed by this Court in a revised Scheduling Order entered after consolidation of CMO's overlapping case became inevitable. CMO cannot demonstrate the good cause necessary for amending the Scheduling Order a second time.

3.     After the transfer order, and after denying CMO's motions to dismiss, which made consolidation inevitable, this Court issued a revised Scheduling Order. CMO accepted the

revised Scheduling Order without objection and failed to raise any concerns with the motions to amend deadline, non-party deposition hours, or fact-discovery deadline until almost two months after the Court entered the revised Scheduling Order. CMO's counsel also participated in the negotiations leading up to the original Scheduling Order and in the scheduling conference with the Court. CMO's participation in setting the schedule, and failure to object, waived CMO's belated objections.

4.    Even if CMO had timely objected, CMO's own lack of diligence nullifies any attempt to show good cause for modifying the Scheduling Order. A party's own lack of diligence is fatal to a motion to modify a scheduling order. *See Chancellor v. Pottsgrove School Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) (citing Fed. R. Civ. P. 16, advisory comm. note (1983)). CMO could have begun to pursue discovery starting in March, 2008, as did LG Display and AUO. In addition, even after the transfer order on March 31, 2008, CMO still decided not to serve discovery concerning its affirmative infringement claims. Its own strategic decisions cannot be a basis for disrupting the case management schedule this Court has set.

5.    Further, CMO fails to establish good cause because CMO already is receiving discovery relevant to its infringement claims. CMO does not identify a single specific reason why it cannot prepare its case under the current Scheduling Order. Instead, CMO makes conclusory statements without discussing all of the discovery that LG Display is producing in response to AUO's and CMO USA's requests for production, including technical and sales information for LG Display's products. Nor does CMO explain why it cannot obtain sufficient evidence from third parties in the same number of deposition hours AUO has. Indeed, CMO has issued only two third-party subpoenas compared to the scores of subpoenas issued by LG Display and AUO. CMO has thus failed to meet its burden to show a specific need to modify the

Scheduling Order. *See, e.g., Kirkwood v. Inca Metal Products Corp.*, No. 3:04-CV-0226-D, 2007 WL 2325222, *1-2, (N.D. Tex. Aug. 13, 2007).

6.      CMO's proposed schedule modifications are also unfair and prejudicial to LG Display. First, CMO's proposal that both its and AUO's third party depositions should be increased by 30 hours while LG Display's hours would remain the same is prejudicial to LG Display. LG Display has to defend against patents asserted by both AUO and CMO and assert its own patents against CMO and AUO. Thus, it makes sense that the deposition hours should be allocated per side as opposed to per party as CMO now proposes. Second, the proposed schedule modifications would disrupt this Court's case management guidelines by pushing fact-discovery to the middle of expert discovery. Any further changes to accommodate CMO's proposed schedule would push expert reporting into March, 2009 and dispositive motion briefing up against the trial date that this Court and the parties agree should not be moved. CMO's proposed schedule revisions thus run counter to the very reasons for consolidation - to promote efficiency and avoid undue delay. In addition, it would be unfair to reopen discovery solely for CMO to propound additional, unnecessary discovery requests on LG Display. LG Display has expended substantial resources and effort to respond to the more than 373 numbered discovery requests from AUO and CMO USA. LG Display has also worked diligently to meet the existing Scheduling Order deadlines. It would be unfair to subject LG Display to further discovery demands from CMO and reward CMO for its lack of diligence.

## STATEMENT OF FACTS

Like AUO, CMO responded to the LG Display Action by filing a related patent infringement suit involving patents concerning LCD technology against LG Display. *Chi Mei Optoelectronics Corp. v. LG Display Co., Ltd.*, No. 2:07-CV-00176-TJW (E.D. Tex.). In the

CMO Action, filed in the Eastern District of Texas on May 4, 2007, CMO asserted United States Patent Nos. 6,013,923 (the "'923 Patent"), 5,619,352 (the "'352 Patent"), 6,734,926 (the "'926 Patent"), 6,008,786 (the "'786 Patent"), 7,280,179 (the "'179 Patent") and 6,134,092 (the "'092 Patent"), against LG Display and LG Display America. (No. 08-355-JJF, D.I. 75, 81.) LG Display asserted mirror image declaratory judgment counterclaims concerning each of the CMO patents in the LG Display Action in Delaware. (D.I. 54, 163.)

The CMO Action involves patents, issues, and parties that have already been at issue in the LG Display Action for months. LG Display, LG Display America, CMO, and CMO USA are parties in both cases. The LG Display Action includes the same five LG Display patents[3] and the same six CMO patents[4] that are in the CMO Action. In both cases, LG asserts infringement claims related to the LG Display Patents against CMO and CMO USA. In both cases, LG Display and LG Display America, Inc. ("LGD America") assert declaratory judgment counts against CMO, of non-infringement and invalidity as to each of the CMO Patents, and a declaratory judgment count of unenforceability as to the '179 Patent. In both cases, CMO and CMO USA assert declaratory judgment counts against each of the LG Display Patents. The only claims that are not yet consolidated with the LG Display Action are CMO's affirmative infringement claims that mirror LG Display's and LG Display America's declaratory judgment claims concerning the same CMO Patents in this case.

On June 15, 2007, LG Display moved to transfer the CMO Action to Delaware. (No. 08-355-JJF, D.I. 75, Attachment 1.) On October 23, 2007, while LG Display's transfer motion was

---

[3] The '274 Patent, '321 Patent, '489 Patent, '984 Patent, and '374 Patent (collectively, the "LG Display Patents").

[4] The '923 Patent, '352 Patent, '926 Patent, '786 Patent, '179 Patent, and '092 Patent (collectively the "CMO Patents").

pending, Judge Ward entered an Early Discovery Order in the CMO Action setting deadlines for infringement contentions, invalidity contentions, and related document production. (No. 08-355-JJF, D.I. 77, Attachment 2.) The Early Discovery Order permitted discovery between LG Display and CMO on core issues including, for example, the technical operation of accused products, the identity of and technical operation of any products reasonably similar to any accused product, the scope and content of any identified prior art references, and whether the references constitute prior art. (*Id.*) On November 7, 2007, both CMO and LG Display exchanged infringement contentions concerning each of the CMO Patents and LG Display Patents, and produced documents related to those contentions. (No. 08-355-JJF, D.I. 77, Attachments 4-5.) On December 27, 2007, both CMO and LG Display exchanged invalidity contentions concerning each of the CMO Patents and LG Display Patents, and produced documents related to those contentions. (No. 08-355-JJF, D.I. 77, Attachments 14-15.)

On March 31, 2008, Judge Ward granted LG Display's motion to transfer the CMO Action to Delaware with the LG Display Action. In granting the transfer, the Court concluded that "the public interest factors overwhelmingly favor a transfer." *Chi Mei*, 2008 WL 901405 at *2. Judge Ward further explained that he would not "allow CMO, by filing [the CMO Action] to circumvent the intention of Judge Shabaz's order relating to AUO's case," and that the *"interest of justice factor weighs in favor of having the parties resolve their related disputes in one forum, the District of Delaware." Id.* (Emphasis added.) The case was formally transferred on June 9,

2008.[5]

On the same day of the transfer order, March 31, 2008, this Court entered a Scheduling Order for this case. (D.I. 175.) The Scheduling Order was entered after a scheduling conference on February 14, 2008 with counsel for LG Display, CMO, and AUO (collectively, the "Parties"), understanding that the overlapping CMO Action in Texas could be transferred to Delaware. (Ex. A.) At the scheduling conference, a trial date was set that contemplated trial concerning all claims and patents, including the CMO patents. (*Id.* at 7-10.) After considering the parties' comments and contemplating the transfer of the CMO Action to this Court, the Court set the trial date for June 2, 2009, and explained that, regardless of the 21 patents-in-suit and the possibility of more parties and claims, "*I want to be sure that the trial date [of June 2, 2009] is one everybody understands won't be moved.*" (*Id.* at 9 (emphasis added).)

The Court also required that fact discovery be completed "*before any expert discovery or reporting takes place.*" (*Id.* at 10.) Accordingly, the Scheduling Order set the fact-discovery deadline for December 17, 2008 and the date for opening expert reports for shortly thereafter on January 12, 2009. (D.I. 175.) The deadline for rebuttal expert reports was set for February 9, 2009 and the expert deposition deadline was set for March 6, 2009. (*Id.*) CMO's counsel specifically asked the Court if CMO should proceed with discovery given its pending motions to dismiss LG Display's claims against CMO in this case. (Ex. A. at 11.) The Court answered,

---

[5] CMO delayed the formal transfer of its case to Delaware by moving for reconsideration in Texas on April 18, 2008, based solely on a purported "possible misunderstanding regarding personal jurisdiction over the parties in Delaware." (No. 08-355-JJF, D.I. 77, Attachment 47.) This Court resolved any possible misunderstanding on April 29 when it denied CMO's motions to dismiss (D.I. 193), and on May 27, 2008, Judge Ward denied CMO's request for reconsideration of the transfer (No. 08-355-JJF, D.I. 77, Attachment 52).

"Yes," confirming that: "I have enough information to go on to make a decision [as to CMO's motion] and so I think we ought to get started on the case." (*Id.*)

On April 1, 2008, CMO sent a letter to the Court providing notice that the CMO Action had been transferred to Delaware for consolidation with this case. (D.I. 177.) CMO asked the Court to grant CMO's pending motions to dismiss and strike, or to transfer the pleadings involving CMO to the Eastern District of Texas so as to avoid consolidation. (*Id.*) The Court, however, promptly denied CMO's motions to dismiss. (D.I. 193.) The Court then issued a revised Scheduling Order on April 29, 2008. (D.I. 194.) CMO raised no objections to the revised Scheduling Order, which retained the same trial date, fact discovery deadline of December 17, 2008, number of non-party deposition hours, and deadline for motions to amend pleadings of August 1, 2008 from the first Scheduling Order. (*Id.*) At CMO's request, the parties later agreed to extend the deadline to produce documents to July 18, 2008.[6]  (D.I. 293.) CMO has not served any requests for production in this case.[7]

---

[6] The Parties also have agreed to a *Markman* briefing schedule for this case. (D.I. 208.) Each party has already identified claim terms for construction on June 24, 2008, and will exchange proposed constructions on July 29, 2008. (*Id.*)

[7] CMO USA has served 27 numbered interrogatories on LG Display in this case, including interrogatories related to CMO's affirmative case seeking technical LG Display product information, LG Display sales and marketing information, and information regarding LG Display's investigations of the CMO Patents. (D.I. 181, 217.) CMO USA also has served 109 document requests, many of which are related to CMO's offensive infringement case, again seeking documents concerning technical LG Display product information, LG Display sales and marketing information, and LG Display's investigations of the CMO Patents. (D.I. 181.)

## ARGUMENT

**I.** **ALL PARTIES AGREE THAT CONSOLIDATION IS APPROPRIATE GIVEN THE COMMON PATENTS, ISSUES, AND PARTIES AT ISSUE IN THE TRANSFERRED CMO ACTION**

The parties all agree that consolidating the CMO Action with the LG Display Action is appropriate given the overlapping issues involving common patents and parties. As CMO noted, consolidating CMO's patent infringement claims from the CMO Action with LG Display's mirror image declaratory judgment counts concerning each of the asserted CMO patents "will serve the interests of judicial efficiency by eliminating duplicative discovery and testimony [and] preventing inconsistent results." (D.I. 296 at 5-6.) CMO also agrees that the Court should "preserve the existing trial date" of June 2, 2009. (*Id.* at 7.)

**II.** **CMO FAILS TO SHOW GOOD CAUSE TO MODIFY THE SCHEDULING ORDER AND CMO'S PROPOSED SCHEDULE CHANGES WOULD PREJUDICE LG DISPLAY**

CMO seeks to belatedly demand changes to the Scheduling Order without any explanation of why those changes are necessary. "A Scheduling Order is 'intended to serve as the "unalterable road map (absent good cause) for the remainder of the case."'" *See Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 106 (D.D.C. 2005) (citations omitted). "Indeed, '[d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier.'" *Id.* (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)).

Accordingly, Federal Rule of Civil Procedure 16(b)(4) provides that a Scheduling Order "may be modified only for good cause and with the judge's consent." Allowing extensions to scheduling orders without good cause would "severely impair[]" the "utility" of scheduling orders and limit courts' "ability to effectively manage the cases on their overcrowded dockets."

*See Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986). "'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order." *Chancellor*, 501 F. Supp. 2d at 701 (citing Fed. R. Civ. P. 16, advisory comm. note (1983)). The moving party must show that despite its diligence, it cannot meet the scheduling order deadlines. *See Hutchins v. United Parcel Service*, Inc., No. 01 CV 1462 WJM, 2005 WL 1793695, *2 (D.N.J. July 26, 2005). If a party is not diligent, there can be no good cause to modify the scheduling order. *See Chancellor*, 501 F. Supp. 2d at 701.

 CMO has not served a single discovery request in this case, has not shown any specific need for more discovery, and reopening discovery would be unfair to LG Display. Therefore, CMO's request to modify the Scheduling Order should be denied.

 A. **CMO Should Not Be Heard To Object Now After Accepting The Current Scheduling Order, Which Was Entered With The Understanding That The CMO Action Was Transferred For Consolidation With This Case**

 At the February 14, 2008 scheduling conference, the Court invited the parties, including CMO, to consider the effect that transfer of the CMO Action would have on the schedule in this case. (Ex. A at 7-8.) The parties submitted a proposed scheduling order two weeks later. (D.I. 155.) The parties agreed that 60 hours of non-party deposition hours per side was appropriate and also agreed to an August 1, 2008 deadline to amend the pleadings. (*Id*. at 3, 5.) CMO and AUO proposed a December 17, 2008 deadline for the close of fact-discovery, including non-party discovery. (D.I. 155 at 2-3.) The initial Scheduling Order included each of those provisions that CMO now objects to for the first time. (D.I. 175.) CMO and AUO also proposed a June 27 deadline for document production and contention interrogatories, a January 12, 2009 deadline for expert reports and a February 9, 2009 for rebuttal reports. (D.I. 155 at 3-4.) Each of

those deadlines proposed by CMO and AUO were also included in the initial scheduling order. (D.I. 175.)

Further, CMO did not object to the revised Scheduling Order entered on April 29, even though CMO knew its Texas case would be transferred for consolidation with this case. When the Eastern District of Texas ordered the CMO Action transferred on March 31, 2008, CMO recognized that its overlapping case involving identical patents, issues, and parties would be consolidated with this case. Indeed, the day after the transfer order, CMO sent a letter asking the Court to grant CMO's pending motions to dismiss and strike, or to transfer the pleadings involving CMO to the Eastern District of Texas so as to avoid consolidation. (D.I. 177.)

The Court denied CMO's motions to dismiss on April 29, 2008, thus eliminating any remaining doubt that the CMO Action would be consolidated with this case. (D.I. 193.) The Court also entered a new Scheduling Order on that same day that doubled the number of party deposition hours, moved the deadline to exchange terms believed to require construction from June 1 to July 1, moved the deadline to exchange proposed constructions from July 3 to July 17, and moved the deadline for case dispositive motions from February 20, 2009 to March 16, 2009. (D.I. 194.) Significantly, the Court did not alter the deadline to amend pleadings, the number of third-party deposition hours, or the fact-discovery deadline in the new Scheduling Order. (*Id.*)

CMO did not raise any objection to the Scheduling Order when it was entered. Nor did CMO raise any objection to the Scheduling Order after the Eastern District of Texas rejected its attempt to further delay this case through a baseless request to reconsider transfer. CMO also failed to timely raise any issue with the motion to amend pleadings deadline, third-party deposition hours, or the fact discovery deadline with LG Display when the parties previously discussed and agreed on changes to the Scheduling Order.

-14-

Instead, CMO requested only to reset the deadline to complete document production from June 27, 2008 to July 18, 2008. LG Display agreed to CMO's request and LG Display has diligently worked to comply with the Court's Scheduling Order. CMO should not be permitted to extend deadlines in the Scheduling Order now, after failing to object and negotiating an extension with LG Display.

### B.     CMO's Lack Of Diligence, Including Its Failure To Serve A Single Discovery Request, Precludes A Showing Of Good Cause As A Matter Of Law

Diligence is the critical factor in demonstrating good cause to modify a scheduling order. *See Chancellor*, 501 F. Supp. 2d at 701. If a "party is not diligent, the inquiry should end." *Id.* (quoting *Johnson*, 975 F.2d at 609). The party seeking to extend deadlines must "provide the court with a record which affirmatively demonstrates, *with specificity*, diligent efforts on his or her part and the unusual circumstances which have frustrated those efforts." *See Koplove*, 795 F.2d at 18 (emphasis added). CMO has not made any effort—much less a diligent effort—to obtain discovery. CMO thus cannot show good cause to delay the fact-discovery and motion to amend deadline, or to increase third-party deposition hours.

CMO has sought to delay this case since LG Display filed it back in December of 2006. CMO could and should have litigated its patents in this Court as part of LG Display's first filed action. Instead, CMO unnecessarily filed a separate infringement case in Texas. CMO also vigorously contested personal jurisdiction in Delaware, even after CMO's defense was unsuccessful in another recent LCD patent infringement case before this Court.

CMO's strategy of delaying this case has included failing to pursue discovery. At least as of February 14, 2008, the Court made certain that CMO understood the need to move forward in this case with discovery while CMO's motion to dismiss was pending. (Ex. A at 11.) CMO's counsel specifically asked the Court if CMO should proceed with discovery given its pending

-15-

motions to dismiss. (*Id*.) The Court answered, "Yes," confirming that: "I have enough information to go on to make a decision [as to CMO's motion] and so I think we ought to get started on the case." (*Id*.) Thus, all parties -- including CMO -- understood the need to complete discovery timely, to comply with the deadlines proposed by the parties and adopted in the Scheduling Order, and to prepare for trial in June 2009.

Whether or not a party could foresee the need to pursue discovery is the key consideration when evaluating that party's diligence in the context of the party seeking to modify the Scheduling Order. *See Dag*, 226 F.R.D. at 106. Good cause to amend a scheduling order cannot be shown unless the party's inability to meet a deadline results from matters which "*could not have been reasonably foreseen or anticipated*," and "that [the movant] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [the movant] could not comply with that order." *Id* (emphasis in original). For example, in *Dag*, the Court found it was reasonably foreseeable, before the discovery deadline, that defendants would attack the assumption made by the plaintiff's expert in calculating profit margins for damages, when the defendants' expert report claimed that assumption was mistaken. *Id*. at 107. Thus, the plaintiff's failure to issue a third-party subpoena seeking additional data relevant to the profit margin calculation until after the discovery deadline had passed demonstrated a lack of diligence that precluded a showing of good cause to extend the discovery deadline. *Id*. at 108.

Here, consolidation of CMO's affirmative claims has been reasonably foreseeable since LG Display moved to transfer the CMO Action to Texas on June 15, 2007. CMO has known since then that transfer to Delaware for consolidation was a possibility, particularly in light of the May 30, 2007 transfer for consolidation of AUO's similarly overlapping suit. Significantly, at the February 14 scheduling conference, this Court invited the parties to contemplate transfer

when proposing a schedule.  (Ex. A at 7.)  Accordingly, CMO cannot claim that, at the time of

the scheduling order, it could not have reasonably foreseen the addition of its affirmative claims

to this case.

Furthermore, CMO recognized consolidation was all but inevitable when Judge Ward

granted transfer in March.  Any lingering doubt should have been quashed when this Court

denied CMO's motions to dismiss and entered a new Scheduling Order in April.  (D.I. 193, 194.)

Thus, CMO has no valid excuse for failing to pursue discovery of its affirmative claims in

Delaware, particularly when the mirror image of those claims have been in this case all along.

CMO also had the opportunity to pursue discovery of its affirmative claims in the Texas

case before transfer.  CMO concedes that it chose not to pursue additional interrogatories and

document requests in Texas because it believed they were "unnecessary."   (D.I. 296 at 8.)

CMO's deliberate decision not to propound additional discovery within the permitted deadlines

is not a basis to reopen discovery for CMO or extend any discovery deadlines. *Newton v. Dana

Corp.*, No. Civ. A. 94-4958, 1995 WL 368172, *1 (E.D. Pa. June 21, 1995) (denying a motion to

extend the discovery deadline because the movant "has made no effort to proceed with

discovery" and movant's "[c]ounsel has made no arguments as to why he has failed to pursue

discovery."). CMO is responsible for its own litigation strategy, however ill-advised that

strategy proved to be. *See, e.g., AMW Material Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67,

71-72 (E.D.N.Y. 2003) (finding no good cause to modify the scheduling order to extend the

deposition deadline when the defendant made a tactical strategy decision to forego depositions

pending the outcome of a related case); *Arnold v. Krause, Inc.*, 232 F.R.D. 58 (W.D.N.Y. 2004)

(finding no good cause to modify the scheduling order when the plaintiff made a strategic

decision to forego discovery, believing that defendant's liability was "'clear cut'" and thus settlement was likely to occur quickly).

**C.**    **CMO Fails To Make Any Specific Showing As To Why It Cannot Develop Its Affirmative Case Under The Current Scheduling Order Or With Existing Discovery From LG Display**

Denying CMO's proposed modifications to the Scheduling Order will not prejudice the resolution of CMO's affirmative claims concerning the CMO Patents because the mirror image of each of those claims are already at issue in the LG Display Action. CMO claims it needs an additional two months for fact discovery and amendment of pleadings and 60 additional hours of third-party deposition time, but fails to provide any explanation for why such changes are necessary for CMO to develop its case. (D.I. 296 at 7.) CMO's unsupported, conclusory assertions that it would be prejudiced unless the Scheduling Order is modified are insufficient. *See, e.g., Kirkwood*, 2007 WL 2325222 at *1-2 (finding no good cause and denying a motion to extend the discovery deadline when the movant did not "*specifically* state why they were unable to complete discovery in the allotted time" and offered only "a few conclusory assertions in support of their motion" (emphasis added)); *Shell v. City of Kansas City Kansas*, No. 91-2306-O, 1992 WL 696526, *1 (D. Kan. April 1, 1992) (finding no good cause for, and rejecting the plaintiffs' unopposed discovery deadline extension proposals because the plaintiffs failed "to identify any *specific* outstanding discovery" and gave "no *specific* reasons" as to why they could not comply with the scheduling order (emphasis added)).

The Scheduling Order provides for 60 hours of non-party deposition time for each side. (D.I. 194.) LG Display has offensive and defensive claims against both AUO and CMO. AUO and CMO have offensive and defensive claims against only LG Display. Even after consolidation CMO will have fewer patents at issue than AUO, yet CMO has provided no

-18-

explanation for why it cannot obtain the evidence it needs from third parties with the same thirty

hours of deposition time that AUO has for AUO's offensive and defensive claims.  Further,

when CMO filed its motion seeking additional third-party deposition time, CMO had not issued

a single third-party subpoena.  On July 9, 2008, CMO issued its first and only two third-party

subpoenas.

CMO also asks for two more months of fact discovery, but the only reason CMO offers

for the extension is that the Texas case had a discovery cut-off of July 7, 2009.  (D.I. 296 at 7.)

CMO fails to note, however, that the document production deadline in Texas was May 30, 2008,

over 8 weeks earlier than the agreed upon document production deadline of July 18, 2008 in this

case.  (Ex. C.)  CMO claims that it will "lose the opportunity to pursue discovery planned for in

the Texas action," but does not identify any such discovery that was planned.  (D.I. 296 at 7.)

Even though the Texas court permitted early discovery as of October 23, 2007, CMO served

only 17 requests for production on November 9, 2007 and no interrogatories or any other

discovery requests.  (Ex. D.)  Indeed, CMO served no additional discovery requests of any kind

after November 9, 2007, even though the Texas court entered its discovery order on February 1,

2008, two months before transfer.  (Ex. C.)  Further, although CMO claims LG Display resisted

CMO's limited early discovery, LG Display produced approximately 16,000 pages of relevant

documents and over 320 sensitive, technical product files in Texas during the early discovery

period.  CMO also fails to explain what discovery it seeks that could not be completed in

accordance with the Scheduling Order in this case, or that is not included in what LG Display is

already producing.

CMO provides no justification for the extension, because there is no justification.  CMO

will have the benefit of all the discovery that LG Display is producing pursuant to the current

Scheduling Order. CMO USA has served broad and substantial discovery requests, including 27 numbered interrogatories and 109 document requests. (*See* Ex. E.) Many of CMO USA's requests seek technical, sales, and marketing information concerning LG Display's products, and information concerning the CMO Patents that are relevant to CMO's affirmative claims. (*Id.*) LG Display has already produced hundreds of mask files and thousands of CAD drawings providing the technical details of LG Display's products. CMO will also have the benefit of documents produced in response to AUO's discovery requests directed toward LG Display's products.

Furthermore, in the CMO Action, pursuant to the local rules in the Eastern District of Texas, CMO and LG Display have already exchanged information relevant to CMO's affirmative claims. CMO, for example, served its infringement contentions concerning the CMO Patents, and LG Display already provided invalidity contentions and related discovery concerning the CMO Patents. This information further benefits CMO and undermines CMO's conclusory assertions that more discovery is needed in this case.

### D.      CMO's Proposed Scheduling Order Changes Are Unworkable And Would Unfairly Prejudice LG Display

LG Display has operated under the Scheduling Order in good faith. LG Display has agreed to reasonable extensions requested by CMO, such as CMO's request to extend the deadline for producing documents. LG Display also offered to extend the motions to amend deadline to September 1, 2008, and would agree to an extension of that deadline to September 15, 2008. Delaying the motions to amend date any further, doubling third-party deposition time and pushing the fact-discovery deadline into the middle of the expert reporting period, however, is prejudicial to LG Display.

Although CMO purports to seek extensions only to the motion to amend deadline and fact-discovery deadlines, moving the fact-discovery deadline interferes with deadlines for expert discovery and dispositive motions. CMO agrees that the June 2, 2009 trial date should not be disturbed, and the Court has specifically made clear that the trial will begin on June 2. CMO's proposed changes, however, could interfere with the trial and must be objected to for this additional reason.

CMO has asked for a two-month fact-discovery deadline to February 17, 2009. (D.I. 296 at 7.) Under the Scheduling Order, expert reports are due on January 12, 2009. (D.I. 194.) This Court explicitly informed the parties that it would require that fact discovery be completed before expert reporting and discovery begins. (Ex. A at 10.) Even allowing only a one week buffer after fact discovery, expert reports would be pushed back until at least February 24, 2009. Maintaining the current four week period for rebuttal reports would push that deadline back until March 24, 2009. Thus, the current deadline for expert depositions of March 6 would also have to be pushed back at least until mid-April given the number of experts that will be used in this case. The continued domino effect would force a delay to the current deadline for summary judgment motions from March 16 to late April.

Even conservatively assuming an April 24 deadline for summary judgment motions, the Counter-Statements concerning genuine issues of material fact would be due on May 1, allowing only one month before trial for this Court's decision to permit further summary judgment briefing, the filing and service of the opposition and reply briefs, and this Court's summary judgment decisions.

Consolidation is appropriate only when it will not result in unnecessary cost or delay. Indeed, the possibility of delay is a basis to deny consolidation. *See, e.g., United States v.*

*Dentsply Int'l, Inc.*, 190 F.R.D. 140, 146 (D. Del. 1999) (denying consolidation because it would "caus[e] delay that would necessitate lengthening the discovery schedule"). LG Display filed the LG Display Action on December 1, 2006. CMO repeatedly has attempted to delay and complicate these proceedings, including by challenging personal jurisdiction in Delaware, filing a related case in the Eastern District of Texas, and requesting reconsideration of Judge Ward's transfer order. Notwithstanding CMO's efforts to the contrary, this case is moving forward with discovery, including discovery concerning CMO's patents.

CMO's latest proposals to amend the Scheduling Order would improperly disrupt the remaining case calendar, thus further delaying resolution of this case and prejudicing LG Display. Further, while this Court and the parties agree that the June 2, 2009 trial date should not be moved, CMO's proposed amendments to the Scheduling Order would prevent this case from proceeding to that trial date on an appropriate and orderly schedule that satisfies this Court's case management requirements. CMO's proposed changes are thus contrary to the purpose of consolidation, which is to promote efficiency and avoid delay. Further, it is unfair to reopen discovery against LG Display as it would result in substantial additional and unnecessary cost. LG Display has already made tremendous efforts to collect and respond to the more than 370 numbered discovery requests served by AUO and CMO USA. It would be unfair to reward CMO's lack of diligence by reopening discovery against LG Display.

## CONCLUSION

For the foregoing reasons, LG Display requests that the Court consolidate Civil Action

No. 08-355 (JJF) with Civil Action Nos. 06-726 and 07-357, but deny CMO's request to amend

the Scheduling Order.


July 14, 2008                              BAYARD, P.A.


                                          /s/ Richard D. Kirk (rk0922)
                                          Richard D. Kirk
                                          Ashley B. Stitzer
                                          222 Delaware Avenue, 9th Floor
                                          P.O. Box 25130
                                          Wilmington, DE 19899-5130
                                          (302) 655-5000
                                          rkirk@bayardfirm.com
                                          *Attorneys for Plaintiffs LG Display Co., Ltd. and LG
                                          Display America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
Cass W. Christenson
John W. Lomas, Jr.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


L.G. PHILIPS LCD CO. LTD.,          )
                                    )
          Plaintiff,                )
                                    )C.A. No. 07-357
v.                                  )
                                    )
CHI MEI OPTOELECTRONICS CORPORATION, )
et al.,                             )
                                    )
          Defendants.               )



          Thursday, February 14, 2008
          3:30 p.m.
          Courtroom 4B

          844 King Street
          Wilmington, Delaware


BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
         United States District Court Judge




APPEARANCES:


          BAYARD, P.A.
          BY:  RICHARD D. KIRK, ESQ.

               -and-

          McKENNA, LONG & ALDRIDGE
          BY:  GASPAR BONO, ESQ.
          BY:  TYLER GOODWYN, ESQ.

               Counsel for the Plaintiffs

APPEARANCES (Cont'd:)


         YOUNG CONAWAY STARGATT & TAYLOR
         BY:  KAREN PASCALE
         BY:  JOHN SHAW, ESQ.

              -and-

         PAUL HASTINGS
         BY:  PETER WIED, ESQ.

              Counsel for the Defendant
              AU Optronics Corporation



         POTTER, ANDERSON & CORROON, LLP
         BY:  PHILIP A. ROVNER, ESQ.

              -and-

         JONES DAY
         BY:  KENNETH ADAMO, ESQ.
         BY:  ROBERT KARL, ESQ.

              Counsel for the Defendant
              Chi Mei Optoelectronics Corporation

3

```
 1                    MR. KIRK:  Good afternoon, Your
 2        Honor.
 3                    THE COURT:  Good afternoon.
 4                    MR. KIRK:  Your Honor, this is
 5        Richard Kirk from Bayard, P.A.  I represent the
 6        plaintiff, L.G. Philips LCD Company and with me
 7        on the line are two attorneys from McKenna, Long
 8        & Aldridge in Washington, they are Gaspar Bono,
 9        B-O-N-O, and Tyler Goodwyn, G-O-O-D-W-Y-N.
10                    MR. ROVNER:  Your Honor, this is
11        Philip Rovner from Potter, Anderson on behalf of
12        the Chi Mei entities.  With me on the line is
13        Ken Adamo and Bob Karl from Jones Day.
14                    THE COURT:  All right.
15                    MS. PASCALE:  Good afternoon, Your
16        Honor.  This is Karen Pascale and John Shaw from
17        Young, Conaway for AU Optronics entities.  And
18        also on the line for AU Optronics we have Peter
19        Wied, W-I-E-D from Paul Hastings in California,
20        Julie Holloway from the Wilson Suncini firm in
21        Pala Alto, California and also from Wilson
22        Suncini Brian Ranke in the Austin, Texas office.
23                    THE COURT:  All right.  Good
24        afternoon.
```

4

1          MR. KIRK:  This is Dick Kirk.

2    This call was prompted by our request on behalf

3    of L.G. Philips LCD for a status conference in

4    these consolidated cases.  May I ask my

5    colleague, Mr. Bono to address the Court?

6          THE COURT:  Yes.

7          MR. BONO:  Good afternoon, Your

8    Honor.  This is Gaspar Bono on behalf of L.G.

9    Philips.

10         Your Honor, we asked for this call

11   because we wanted to apprise the Court of the

12   status of the case, and also to ask for a

13   schedule from Your Honor so that this case can

14   be set to proceed against the defendants.

15         By way of a brief background, we

16   filed this case in December of 2006 against CMO,

17   AUO, Tatung and Viewsonic.  And as we apprised

18   the Court, the Tatung and Viewsonic defendants

19   reached a settlement agreement with L.G.

20   Philips, all the claims between those parties

21   have been dismissed.  That leaves the CMO

22   defendants and the AUO defendants.

23         The background as Your Honor may

24   remember is both AUO and CMO, rather than

1   responding in this case initially, each filed

2   separate lawsuits.  AUO filed a lawsuit in

3   Wisconsin in March of last year and CMO filed a

4   lawsuit in May of last year in Texas.

5              We moved to transfer both of those

6   cases to this Court under the first to file

7   rule.  The Wisconsin court, Judge Shabaz,

8   transferred in May the AUO lawsuit from

9   Wisconsin to this Court and Your Honor

10  consolidated that case with this case in June of

11  last year.

12             Our motion to transfer the CMO

13  case is pending right now in front of Judge Ward

14  in the Eastern District of Texas.

15             With respect to AUO, all of the

16  pleadings have now been completed and issue is

17  joined and there are no motions pending with

18  respect to AUO, between AUO defendants and L.G.

19  Philips.

20             On the other hand, with respect to

21  CMO, CMO filed a motion to dismiss for lack of

22  personal jurisdiction and insufficient service,

23  L.G. Philips opposed that motion and we believe

24  that motion should be denied.

1           Also, L.G. Philips filed a motion

2    for sanctions because we believe that CMO's

3    motion was frivolous and should not have been

4    filed, challenging jurisdiction.

5           In addition, we filed an

6    alternative motion for discovery, but that is an

7    alternative motion because we believe we have

8    already made a sufficient showing for purposes

9    of personal jurisdiction against CMO.

10          I believe there is one other set

11   of motions that are pending, which deals with

12   the form of the pleadings as to the CMO.

13          We filed an amended complaint as

14   of right first against AUO, and then we filed an

15   amended complaint against CMO before they filed

16   any responsive pleadings.  The parties have a

17   disagreement on whether Rule 15 so provides for

18   that.  We believe we have a right to an amended

19   complaint as a right, CMO thinks otherwise.

20          We think it's really a nonissue

21   because if we are right, that would end that,

22   but even if we're not correct, we believe our

23   filing should be treated as a motion for leave

24   to amend and we see no reason why it would not

1    be granted.

2             So we're asking the Court to set a

3    schedule so those motions can be promptly

4    resolved and the case can move forward.

5             THE COURT:  All right.  Did CMO

6    want to be heard?

7             MR. ADAMO:  It's Ken Adamo from

8    Jones Day for CMO.  The briefing on the various

9    motions is complete.  In response to counsel's

10    comments, we did not file frivolous motions.

11    The motions with regard to CMO and CMO USA are

12    well founded, both in law and in fact, but at

13    the end of the day, Your Honor, the briefing

14    cycle has been completed and we don't disagree

15    with plaintiff that it might now be appropriate

16    to set scheduling for the case as you feel might

17    be appropriate.

18             THE COURT:  Okay.  Would any

19    schedule that you would arrive at contemplate

20    that Judge Ward is going to send that case here?

21             MR. ADAMO:  Your Honor, it's Ken

22    Adamo again.  I and my firm are not despite my

23    presence normally in east Texas, we are not

24    representing CMO in that action, but I do appear

1    in that court quite frequently and I think Your

2    Honor is aware that transfer from court to court

3    is not something that happens with frequency,

4    but Judge Ward does what Judge Ward does, and

5    I'm sure he will rule on the matter when he gets

6    -- I'm sure his honor, Judge Ward, will rule on

7    the motion when he gets to it.

8                THE COURT:  Okay.  So what are

9    your views on when the trial date ought to be?

10               MR. BONO:  Your Honor, this is Gap

11   Bono for the plaintiff.  We obviously would like

12   a trial date as promptly as Your Honor can

13   accommodate a trial on Your Honor's schedule.

14   And we would think a trial, you know, a year or

15   fifteen months from now would be amenable to us,

16   if Your Honor could accommodate that.

17               THE COURT:  All right.  What about

18   the other side?

19               MR. ADAMO:  Your Honor, we're

20   certainly not asking for any setting that would

21   be unusually short or unusually long.  As long

22   as we have sufficient time to conduct necessary

23   discovery so we can fully defend ourselves,

24   whatever would be the next available time in

1    Your Honor's calendar for a case like this is

2    going to require a lot of discovery would be

3    acceptable to us.

4             MR. WIED:  Your Honor, this is

5    Peter Wied from Paul Hastings for the AUO

6    parties.  We, too, our only concern would be

7    with providing sufficient time for discovery of

8    all the issues and we would just note that

9    presuming -- if it turns out that the CMO

10   parties remain in the case, there would be a

11   total of twenty-one patents at issue, and so in

12   comparison even to other patent cases, this one

13   may require a bit more time for full discovery

14   of the issues.

15            THE COURT:  I would imagine that

16   at some point the twenty-one patents would be

17   narrowed to some hopefully more manageable

18   number.  But in light of the parties and the

19   possibility that there may be some others

20   joining you, I want to be sure that the trial

21   date I set is one that everybody understands

22   won't be moved.  So I'm going to set it in June

23   of 2009 for June the 1st -- I'm sorry, June the

24   2nd, which is a Tuesday, and then you can get

```
1    together and backfill dates.  And the only thing

2    that I'll require is that you have fact

3    discovery with any Markman proceeding at the end

4    of or near the end of that fact discovery before

5    any expert discovery or reporting takes place.

6              And you should factor in a

7    sixty-day decision period from the time frame

8    that would be the month that you select for a

9    Markman hearing.  Any disagreement you have as

10   to dates or how you should proceed, just note

11   them in the proposed order and I'll circle a

12   winner when I get the proposed order.

13             You should also account for

14   document production to be prior to any

15   commencement -- to be initiated and completed

16   prior to the commencement of any deposition

17   discovery.

18             Do you have any questions?

19             MR. BONO:  No, Your Honor.  When

20   should we submit the scheduling order through

21   the Court?

22             THE COURT:  I would try to get it

23   here in the next two weeks.

24             MR. BONO:  All right.
```

```
 1              THE COURT:  And then hopefully

 2    I'll get to resolve any -- I'll just enter it if

 3    it comes in agreed.  If there are any disputes,

 4    hopefully I'll get them to you by the end of the

 5    month, the first of March.

 6              MR. BONO:  Thank you, Your Honor.

 7              THE COURT:  Okay.  Anything else?

 8              MR. ADAMO:  Your Honor, it's Ken

 9    Adamo.  I assume you want us to go forward with

10    the discovery according to the order once

11    entered, not wait on your decisions on the

12    motions?

13              THE COURT:  Yes.  The only

14    question I have is given that federal circuit

15    case, the caption of which has escaped me, but

16    it was a Delaware case, and there was some

17    thought that there ought to be jurisdictional

18    discovery when the record is a little bare, so

19    as to see if you had to go, what is it, to

20    Justice O'Connor's decisions.  But I think in

21    this case, I have enough information to make the

22    decision and so I think we ought to get started

23    on the case.

24              MR. ADAMO:  Thank you, Your Honor.
```

12

1        I just appreciate the clarification.

2                   THE COURT:  All right.  Thank you.

3                   (Court recessed at 3:47 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1      State of Delaware      )
                               )
 2      New Castle County      )

 3

 4
                    CERTIFICATE OF REPORTER
 5

 6              I, Dale C. Hawkins, Registered Merit
        Reporter and Notary Public, do hereby certify that
 7      the foregoing record is a true and accurate
        transcript of my stenographic notes taken on February
 8      14, 2008, in the above-captioned matter.

 9              IN WITNESS WHEREOF, I have hereunto
        set my hand and seal this 5th day of April, 2008, at
10      Wilmington.

11

12      _____
                        Dale C. Hawkins, RMR

13

14

15

16

17

18

19

20

21

22

23

24
```

# EXHIBIT B

**Lomas, John**

---

| | |
|---|---|
| **From:** | Lomas, John |
| **Sent:** | Wednesday, June 25, 2008 12:05 PM |
| **To:** | 'Giza, Alexander'; '~Range, Brian'; 'Kagan, Jonathan'; '~Tyler, M. Craig'; '~Holloway, Julie'; '~Yip, Vincent'; '~Garnett, Terry'; '~Wied, Peter'; '~Murray, Katherine'; '~Shaw, John'; '~Pascale, Karen'; '~Chiu, Jay'; '#CMO/LPL [Int]'; 'provner@potteranderson.com' |
| **Cc:** | Bono, Gaspare; Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass; '~Kirk, Richard' |
| **Subject:** | RE: Consolidation of CMO's case |

Alex,

LG Display's position has been and continues to be that CMO has had every opportunity to move forward with the discovery necessary for its affirmative claims in either Texas or Delaware, thus there is no basis to condition consolidation on a change to the schedule. That CMO chose not to pursue discovery that was available to it cannot be a basis to delay the entire case. Indeed, consolidation is improper if it results in unnecessary delay or cost.

The issues of infringement and validity as to the CMO Patents asserted in Texas have been in the Delaware case for months. LG Display offered to consider specific deadline proposals, but those proposals must specify why CMO needs more time and relate specifically and solely to issues or discovery that is not already in the case, taking into account all of the discovery that could and should have been done in both Delaware and Texas, and the work that was previously done in Texas. To date CMO's proposals have instead been non-specific 4 month, 3 month, and now 2 month delays to the schedule that have not taken into account the discovery that CMO could and should have pursued in both Delaware and Texas. Further, all of CMO's proposals to date would necessarily impact the entire schedule and the trial date.

We have always attempted to work with you in good faith to reach a resolution. Your suggestion otherwise is inappropriate. While we are amenable to speaking with you this afternoon, please be advised that we cannot agree to your proposed two month extension of all deadlines.

Regards,

John

-----Original Message-----
From: Giza, Alexander [mailto:AGiza@irell.com]
Sent: Wednesday, June 25, 2008 12:45 AM
To: Lomas, John; ~Range, Brian; Kagan, Jonathan; ~Tyler, M. Craig; ~Holloway, Julie; ~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; ~Chiu, Jay; #CMO/LPL [Int]; provner@potteranderson.com
Cc: Bono, Gaspare; Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass; ~Kirk, Richard
Subject: RE: Consolidation of CMO's case

John:

As we discussed today, CMO is agreeable to a consolidation of the transferred case with the Delaware case, provided that it includes an appropriate amendment of discovery limits. LGD argues that CMO needs no additional time or discovery to prepare its offensive claims, and requires that CMO agree to consolidation without any changes in the schedule. I will confer with my client and let you know.

In any event, a reasonable amendment of the scheduling is appropriate with consolidation of the cases. CMO never asserted its patents in the Delaware case. When Judge Farnan held the status telephone conference to set the schedule in this case on February 14, 2008, and issued the Rule 16 Scheduling Order on March 31, 2008, CMO did not have its offensive claims in the Delaware case. The Delaware schedule does not address all the issues relating to consolidation because it could not - the issues were not presented to the Court. If LGD wants to add CMO's offensive claims from the Texas case to this case, the schedule needs to be amended to appropriately accommodate the necessary discovery to

1

present CMO's offensive claims.

CMO initially proposed a global extension of all deadlines for simplicity. LGD rejected the concept of an overall extension, but stated that it would consider specific amendments to the schedule. CMO changed its proposal to extensions of specific dates, which you specifically required as a condition to agreeing to discuss the issues.

When we talked, LGD rejected CMO's proposals. CMO attempted to find middle ground and made additional proposals, including a two-month extension of discovery dates, but LGD still refused to agree to anything. Finally, I suggested that we check with our respective clients and confer again. Your email below is not encouraging. If you are not going to be prepared to discuss the issues and attempt to reach resolution in good faith, then please let know in advance so that we do not waste further time.

Conference call - June 25 at 2 pm EDT:
Dial-in: 800 216 0770
Passcode: 310 203 7143

Sincerely,
Alex

-----Original Message-----
From: Lomas, John [mailto:jlomas@mckennalong.com]
Sent: Tuesday, June 24, 2008 4:59 PM
To: Giza, Alexander; ~Range, Brian; Kagan, Jonathan; ~Tyler, M. Craig; ~Holloway, Julie; ~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; ~Chiu, Jay; #CMO/LPL [Int]; provner@potteranderson.com
Cc: ~Bono, Gaspare; ~Goodwyn, Tyler; ~Brzezynski, Lora; ~Christenson, Cass; ~Kirk, Richard
Subject: RE: Consolidation of CMO's case

Alex,

Before our call today, I clearly stated LG Display's position that it could not agree with CMO's continued attempts to condition consolidation on a reworking of the existing schedule in this case. I indicated that LG Display would be willing to consider CMO's positions on specific deadline changes separately from the consolidation issue. During our call, however, CMO once again refused to agree to stipulate to consolidation without changes to the schedule.

I also told you before our call that LG Display would not agree to a global extension of deadlines, however, that is precisely what you proposed again in your 2pm ET e-mail. CMO merely replaced its initial unreasonable demand for a four month extension of deadlines with an unreasonable demand for a three month extension of deadlines. Although you did not specifically identify date changes related to experts or dispositive motions in your e-mail, all the other changes you proposed would necessarily push those dates back as well.

For example, Judge Farnan told the parties that he would require fact discovery be completed before any expert discovery or reporting takes place. Expert reports are currently due on January 12. Your proposal suggests a March 6 fact discovery deadline. Similarly, Judge Farnan told the parties to factor in a sixty-day decision period after Markman.
Your proposed Markman date of December 18 would push the decision back until late February. Expert depositions are currently due on March 6 and case dispositive motions are due on March 16. Thus, your unreasonable second proposed global extension was clearly unworkable and unacceptable from the start.

During our call, we repeated LG Display's position that the consolidation of the Texas case does not require any changes to the schedule given that the same CMO patents are already in the lead Delaware case. CMO failed to provide any acceptable explanation as to why consolidation would necessitate any changes to the schedule.

Regards,

John

-----Original Message-----

From: Giza, Alexander [mailto:AGiza@irell.com]
Sent: Tuesday, June 24, 2008 5:24 PM
To: Giza, Alexander; Lomas, John; ~Range, Brian; Kagan, Jonathan; ~Tyler, M. Craig;
~Holloway, Julie; ~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw,
John; ~Pascale, Karen; ~Chiu, Jay; #CMO/LPL [Int]; provner@potteranderson.com
Cc: Bono, Gaspare; Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass; ~Kirk, Richard
Subject: RE: Consolidation of CMO's case


John:

Before our call today, you told me that LGD would not agree to a "global extension" of
deadlines in connection with the potential consolidation of the Texas action with the
Delaware action, but you told me that you would "negotiate on specific deadline
extensions."  You asked me to identify particular areas for discussion one hour before our
call.  As you requested, I provided you with a list of items for discussion.

Although I provided you with the requested list by the time you requested, LGD was unable
to respond to CMO's proposals, other than just rejecting them.  In fact, LGD made no
effort to "negotiate" any of the items I identified.  Despite my attempts to propose
additional dates, your colleague Lora repeatedly said that she didn't think that LGD would
be able to agree to anything.

LGD asked CMO to agree to an unconditional consolidation without modification of any of
the items we were supposed to negotiate today.
This is not in keeping with our prior correspondence on this matter and suggests that LGD
is not acting in good faith to resolve this issue.  I do not believe it is productive for
LGD to drag out our discussion of these scheduling items that are directly related to the
proposed consolidation.  Please be prepared to discuss the items I identified in my
earlier e-mail when we talk tomorrow on the phone.

Sincerely,
Alex

Alexander C.D. Giza
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: 310-203-7143
Facsimile:  310-203-7199


-----Original Message-----
From: Giza, Alexander
Sent: Tuesday, June 24, 2008 11:02 AM
To: ~Lomas, John; ~Range, Brian; Kagan, Jonathan; ~Tyler, M. Craig; ~Holloway, Julie;
~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale,
Karen; ~Chiu, Jay; #CMO/LPL [Int]; provner@potteranderson.com
Cc: ~Bono, Gaspare; ~Goodwyn, Tyler; ~Brzezynski, Lora; ~Christenson, Cass; ~Kirk, Richard
Subject: RE: Consolidation of CMO's case

John:

CMO disagrees with LGD's view of events and the current circumstances.
Adding CMO's offensive claims to this action requires additional time and discovery to
prevent prejudice to CMO.  The Texas case had a longer schedule to trial, which was
further delayed by transfer.  The Texas case also included additional discovery.
Furthermore, LGD now wants to add a patent and several claims against CMO.  Why are these
being asserted on the day before the exchange of terms for claim construction?
LGD's delay in asserting this patent against CMO is prejudicial to CMO's defense.

However, in the interest of attempting to resolve these issues without burdening the
Court, and reserving all rights, we propose the following schedule/discovery changes:

Third party deposition time - 60 hours per party CMO to provide claim terms for
construction on '569 patent - 8/27/2008 Exchange proposed constructions - 9/26/2008
Production complete - 9/26/2008 Disclosures of Fact Witnesses - 9/26/2008 Contention rogs
addressed? - 9/26/2008 JCCC -

10/21/2008 Amendment of pleadings deadline - 10/31/2008
Opening CC briefs - 11/7/2008
Response CC briefs - 12/4/2008
Markman hearing - 12/18/2008
Discovery cut-off - 3/6/2009

Here's dial-in and password information for our conference call at 3pm
EDT:

Dial-in: 800 216 0770
Passcode: 310 203 7143

Sincerely,
Alex

-----Original Message-----
From: Lomas, John [mailto:jlomas@mckennalong.com]
Sent: Tuesday, June 24, 2008 8:16 AM
To: Giza, Alexander; ~Range, Brian; Kagan, Jonathan; ~Tyler, M. Craig; ~Holloway, Julie;
~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale,
Karen; ~Chiu, Jay; #CMO/LPL [Int]; provner@potteranderson.com
Cc: ~Bono, Gaspare; ~Goodwyn, Tyler; ~Brzezynski, Lora; ~Christenson, Cass; ~Kirk, Richard
Subject: RE: Consolidation of CMO's case

Alex,

Thank you for your response.  As we have previously stated, we fundamentally disagree with
CMO's continued attempts to condition consolidation on a reworking of the existing
schedule in this case.
Consolidation will not add any new patents to the case, the Scheduling Order was entered
with the input of all counsel and after contemplating the transfer of the Texas case, and
the parties have already agreed to modify claim construction dates and to extend the
document production deadline.

We will agree to a call at 3pm to discuss proposed scheduling changes separately, if you
identify by 2pm which specific deadlines CMO wishes to delay and how much additional time
CMO would like.

Thank you,

John

-----Original Message-----
From: Giza, Alexander [mailto:AGiza@irell.com]
Sent: Tuesday, June 24, 2008 8:41 AM
To: Lomas, John; ~Range, Brian; Kagan, Jonathan; ~Tyler, M. Craig; ~Holloway, Julie; ~Yip,
Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen;
~Chiu, Jay; #CMO/LPL [Int]; provner@potteranderson.com
Cc: Bono, Gaspare; Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass; ~Kirk, Richard
Subject: RE: Consolidation of CMO's case

John:

Please do not assume disagreement without further communication.  Given the flexibility
that you indicate in your email, I think we can reach an agreement.  At least the
extension of deadlines relating to discovery and claim construction and an increase in the
hours of third party deposition time are necessary and appropriate under the
circumstances.
Discussing the issues in real time will likely be most productive - can you be available
to discuss at 3 pm EDT today?

Sincerely,
Alex

-----Original Message-----
From: Lomas, John [mailto:jlomas@mckennalong.com]
Sent: Monday, June 23, 2008 2:03 PM

To: Giza, Alexander; ~Range, Brian; Kagan, Jonathan; ~Tyler, M. Craig; ~Holloway, Julie;
~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale,
Karen; ~Chiu, Jay; #CMO/LPL [Int]; provner@potteranderson.com
Cc: ~Bono, Gaspare; ~Goodwyn, Tyler; ~Brzezynski, Lora; ~Christenson, Cass; ~Kirk, Richard
Subject: RE: Consolidation of CMO's case

Alex,

Thank you for your response.  Currently, CMO's stated position is a demand for a four
month global extension of all deadlines and reopening discovery limits, which is not
acceptable.

As in the past, we remain willing to negotiate on specific deadline extensions.  LG
Display cannot, however, agree to a global extension of all deadlines in this case, and
will not condition the consolidation on any such changes.  LG Display will also not agree
to any change to the trial date.

We will assume that CMO does not agree to consolidation unless we hear
otherwise by 3pm ET tomorrow.

Regards,

John

-----Original Message-----
From: Giza, Alexander [mailto:AGiza@irell.com]
Sent: Monday, June 23, 2008 4:15 PM
To: Lomas, John; ~Range, Brian; Kagan, Jonathan; ~Tyler, M. Craig; ~Holloway, Julie; ~Yip,
Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen;
~Chiu, Jay; #CMO/LPL [Int]; provner@potteranderson.com
Cc: Bono, Gaspare; Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass; ~Kirk, Richard
Subject: RE: Consolidation of CMO's case

John:

Although we believe that an extension is appropriate with the consolidation, we will
consider whether consolidation alone is a possibility.  Is it LGD's position that, even
under the current circumstances, it will not agree to any extension of any deadlines?

Alex

-----Original Message-----
From: Lomas, John [mailto:jlomas@mckennalong.com]
Sent: Monday, June 23, 2008 12:14 PM
To: Giza, Alexander; ~Range, Brian; Kagan, Jonathan; ~Tyler, M. Craig; ~Holloway, Julie;
~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale,
Karen; ~Chiu, Jay; #CMO/LPL [Int]; provner@potteranderson.com
Cc: ~Bono, Gaspare; ~Goodwyn, Tyler; ~Brzezynski, Lora; ~Christenson, Cass; ~Kirk, Richard
Subject: RE: Consolidation of CMO's case

Alex,

LG Display cannot agree to a four-month extension of all deadlines in the current
Scheduling Order.  The mirror image of CMO's offensive claims from the Texas case have
been in the consolidated Delaware action for months, thus no change to the scheduling
order or discovery limits is necessary.

In Delaware, Judge Farnan contemplated the transfer of CMO's Texas case to Delaware when,
over four months ago, he set a firm trial date of June 2, 2009 and then specifically told
the parties that: "I want to be sure that the trial date I set is one everybody
understands won't be moved."
Judge Farnan also expressly directed CMO to move forward with discovery regardless of
CMO's pending motions to dismiss, telling CMO that "I have enough information to make the
decision and so I think we ought to get started on the case."

In Texas, Judge Ward's Early Discovery Order of October 23, 2007, allowed the parties to
begin conducting discovery, including interrogatories, requests for admission, requests

for production, and party and non-party depositions relating to the technical operation of accused products, the identity of and technical operation of any products reasonably similar to any accused product, the scope and content of any identified prior art references, and any issues related to whether the reference in fact constitutes prior art. On February 1, Judge Ward issued a new Discovery Order and set the document production deadline for May 30, 2008, and set limits for interrogatories, requests for admission, and depositions.

CMO has had every opportunity to pursue discovery related to its offensive claims in either or both Texas and Delaware.  Further, the Early Discovery Order in Texas, by requiring invalidity and infringement contentions even before the initial scheduling conference, forced the parties to develop their claims and defenses in the CMO Action at a much faster pace than in the Delaware case.

CMO cannot now use the transfer as an excuse to delay resolution of claims that LG Display filed over a year and a half ago in December 2006, or to propound additional, untimely discovery requests in this case.

It is unfortunate we cannot agree that the cases should be consolidated without any conditions attached.

Regards,

John

-----Original Message-----
From: Giza, Alexander [mailto:AGiza@irell.com]
Sent: Thursday, June 19, 2008 3:37 PM
To: Lomas, John; Lomas, John; ~Range, Brian; Kagan, Jonathan; ~Tyler, M.
Craig; ~Holloway, Julie; ~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine;
~Shaw, John; ~Pascale, Karen; ~Chiu, Jay; #CMO/LPL [Int]; provner@potteranderson.com
Cc: Bono, Gaspare; Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass; ~Kirk, Richard
Subject: RE: Consolidation of CMO's case

John and Brian:

CMO is amenable to consolidation of the transferred action (now Delaware Civil Action No. 08-355) with the consolidated Delaware actions, provided that a reasonable extension of the current schedule can be arranged.  Among other things, CMO needs time for discovery on its offensive claims that would be added to the consolidated Delaware action.  We currently believe that a four-month extension of all deadlines should be sufficient.  We should also discuss appropriate discovery limits.  Please let me know if LGD and AUO will agree with consolidation and the proposed extension.

Sincerely,
Alex

Alexander C.D. Giza
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: 310-203-7143
Facsimile: 310-203-7199


-----Original Message-----
From: Lomas, John [mailto:jlomas@mckennalong.com]
Sent: Tuesday, June 17, 2008 1:20 PM
To: ~Lomas, John; ~Range, Brian; Giza, Alexander; Kagan, Jonathan; ~Tyler, M. Craig;
~Holloway, Julie; ~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw,
John; ~Pascale, Karen; ~Chiu, Jay; #CMO/LPL [Int]; provner@potteranderson.com
Cc: ~Bono, Gaspare; ~Goodwyn, Tyler; ~Brzezynski, Lora; ~Christenson, Cass; ~Kirk, Richard
Subject: Consolidation of CMO's case

Alex and Brian,

The patent infringement suit filed by CMO against LG Display in the Eastern District of

Texas has been formally transferred to Delaware as Civil Action No. 08-355. Because Judge Ward transferred CMO's case so that the parties could resolve their related disputes together in Delaware, and CMO's case involves patents and claims that are also at issue in the consolidated action, CMO's case should be consolidated into the consolidated action.

Attached is a stipulation and order of consolidation that we propose filing in both the consolidated case and the new case transferred from Texas. Please let us know if AUO and CMO will stipulate to the consolidation.

Regards,

John

  <<LG 3 - stipulation to consolidate (01035010).DOC>> John W. Lomas, Jr.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
202.496.7183
jlomas@mckennalong.com

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

ccmailg.irell.com made the following annotations
------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

------------------------------------------------------------------

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

ccmailg.irell.com made the following annotations
------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged,

confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

---------------------------------------------------------------------

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

ccmailg.irell.com made the following annotations
---------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

---------------------------------------------------------------------

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

ccmailg.irell.com made the following annotations
---------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

---------------------------------------------------------------------

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long &
Aldridge LLP, and are intended solely for the use of the named recipient or recipients.
This e-mail may contain privileged attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an intended recipient is strictly
prohibited. If you are not a named recipient, you are prohibited from any further viewing
of the e-mail or any attachments or from making any use of the e-mail or attachments. If
you believe you have received this e-mail in error, notify the sender immediately and
permanently delete the e-mail, any attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or attachments.


ccmailg.irell.com made the following annotations
------------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged,
confidential and/or inside information.  Any distribution or use of this communication by
anyone other than the intended recipient(s) is strictly prohibited and may be unlawful.
If you are not the intended recipient, please notify the sender by replying to this
message and then delete it from your system. Thank you.



------------------------------------------------------------------

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation, <br><br> Plaintiff, <br><br> v. <br><br> LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG PHILIPS LCD AMERICA, INC., a California Corporation, <br><br> Defendants. | Civil Action No. 2:07-cv-00176-TJW |
| LG.PHILIPS LCD CO., LTD., and LG.PHILIPS LCD AMERICA, INC., <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> CHI MEI OPTOELECTRONICS CORPORATION; and CHI MEI OPTOELECTRONICS USA, INC., a Delaware Corporation, <br><br> Counterclaim Defendants. | |

## DISCOVERY ORDER

After a review of the pleaded claims and defenses in this action, in furtherance of the management of the Court's docket under Fed. R. Civ. P. 16, and after receiving the input of the parties to this action, it is ORDERED AS FOLLOWS:

1. **Disclosures.** Except as provided by paragraph 1(h), and, to the extent not already disclosed, by **March 5, 2008**, each party shall disclose to every other party the following information:

   (a) the correct names of the parties to the lawsuit;

(b)    the name, address, and telephone number of any potential parties;

(c)    the legal theories and, in general, the factual bases of the disclosing party's claims or defenses (the disclosing party need not marshal all evidence that may be offered at trial);

(d)    the name, address, and telephone number of persons having knowledge of relevant facts, a brief statement of each identified person's connection with the case, and a brief, fair summary of the substance of the information known by any such person;

(e)    any indemnity and insuring agreements under which any person or entity carrying on an insurance business may be liable to satisfy part or all of a judgment entered in this action or to indemnify or reimburse for payments made to satisfy the judgment;

(f)    any settlement agreements relevant to the subject matter of this action;

(g)    any statement of any party to the litigation;

(h)    for any testifying expert, by the date set by the court in the Docket Control Order, each party shall disclose to the other party or parties:

    a.    the expert's name, address, and telephone number;

    b.    the subject matter on which the expert will testify;

    c.    if the witness is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the disclosing party regularly involve giving expert testimony:

(a)     all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

(b)     the disclosures required by Fed. R. Civ. P. 26(a)(2)(B) and Local Rule CV-26.

d.     for all other experts, the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them or documents reflecting such information;

2.     **Protective Orders.** The Court will enter the parties' Agreed Protective Order.

3.     **Additional Disclosures.** Each party, without awaiting a discovery request, shall provide, to the extent not already provided, to every other party the following:

(a)     the disclosures required by the Patent Rules for the Eastern District of Texas;

(b)     by **May 30, 2008**, a copy of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action, including damages, except to the extent these disclosures are affected by the time limits set forth in the Patent Rules for the Eastern District of Texas. By written agreement of all parties, alternative forms of disclosure of documents may be provided in lieu of paper copies. For example, the parties may agree to exchange images of documents electronically or by means of computer disk; or the parties may agree to review and copy disclosure materials at the offices of the attorneys representing the parties instead of requiring each side to furnish paper copies of the disclosure materials;

3

(c)     by **May 18, 2009**, a complete computation of any category of damages claimed by any party to the action, making available for inspection and copying as under Rule 34, the documents or other evidentiary material on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and

(d)     by **not applicable**, those documents and authorizations described in Local Rule CV-34.

4.     **Discovery Limitations.**   The discovery in this cause is limited to the disclosures described in Paragraphs 1 and 3 together with 40 interrogatories per side, 40 requests for admissions per side, the depositions of the parties, depositions on written questions of custodians of business records for third parties, 60 hours of nonparty depositions per side, and 3 expert witnesses per side.   "Side" means a party or a group of parties with a common interest.  Any party may move to modify these limitations for good cause   **The parties have discussed modifying these discovery limitations but have not yet reached agreement.   The parties are continuing their discussions in an effort to reach a mutual agreement.   If a mutual agreement cannot be reached, the parties intend to advise the Court of their respective positions through separate filings.**

5.     **Privileged Information.**   There is no duty to disclose privileged documents or information.  However, the parties are directed to meet and confer concerning privileged documents or information after the Status Conference.  By **August 25, 2008**, the parties shall exchange privilege logs identifying the documents or information and the basis for any disputed claim of privilege in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the applicability of the

privilege or protection.  Any party may move the Court for an order compelling the production of any documents or information identified on any other party's privilege log. If such a motion is made, the party asserting privilege shall respond to the motion within the time period provided by Local Rule CV-7.  The party asserting privilege shall then file with the Court within 30 days of the filing of the motion to compel any proof in the form of declarations or affidavits to support their assertions of privilege, along with the documents over which privilege is asserted for in camera inspection.  If the parties have no disputes concerning privileged documents or information, then the parties shall inform the court of that fact by **September 25, 2008**.

6.     **Pre-trial disclosures.**  Each party shall provide to every other party regarding the evidence that the disclosing party may present at trial as follows:

(a)     The name and, if not previously provided, the address and telephone number, of each witness, separately identifying those whom the party expects to present at trial and those whom the party may call if the need arises.

(b)     The designation of those witnesses whose testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony.

(c)     An appropriate identification of each document or other exhibit, including summaries of other evidence, separately identifying those which the party expects to offer and those which the party may offer if the need arises.

Unless otherwise directed by the Court, these disclosures shall be made at least 30 days before trial.  Within 14 days thereafter, unless a different time is specified by the Court, a party may serve and file a list disclosing (1) any objections to the use under Rule 32(a) of

a deposition designated by another party under subparagraph (B), and (2) any objections, together with the grounds therefor, that may be made to the admissibility of materials identified under subparagraph (c). Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, shall be deemed waived unless excused by the Court for good cause shown.

7      **Signature.** The disclosures required by this order shall be made in writing signed by the party or counsel and shall constitute a certification that, to the best of the signer's knowledge, information and belief, such disclosure is complete and correct as of the time it is made. If feasible, counsel shall meet to exchange disclosures required by this order; otherwise, such disclosures shall be served as provided by Fed. R. Civ. P. 5. The parties shall promptly file a notice with the court that the disclosures required under this order have taken place.

8.     **Duty to Supplement.** After disclosure is made pursuant to this order, each party is under a duty to supplement or correct its disclosures immediately if the party obtains information on the basis of which it knows that the information disclosed was either incomplete or incorrect when made, or is no longer complete or true

9      **Disputes.**

(a)     Except in cases involving claims of privilege, any party entitled to receive disclosures may, after the deadline for making disclosures, serve upon a party required to make disclosures a written statement, in letter form or otherwise, of any reason why the party entitled to receive disclosures believes that the disclosures are insufficient. The written statement shall list, by category, the items the party entitled to receive disclosures contends should be produced. The

6

parties shall promptly meet and confer  If the parties are unable to resolve their dispute, then the party required to make disclosures shall, within 14 days after service of the written statement upon it, serve upon the party entitled to receive disclosures a written statement, in letter form or otherwise, which identifies (1) the requested items that will be disclosed, if any, and (2) the reasons why any requested items will not be disclosed.  The party entitled to receive disclosures may thereafter file a motion to compel.

(b)    Counsel are directed to contact the chambers of the undersigned for any "hot-line" disputes before contacting the Discovery Hotline provided by Local Rule CV-26(e)  If the undersigned is not available, the parties shall proceed in accordance with Local Rule CV-26(e).

10.    **No Excuses.** A party is not excused from the requirements of this Discovery Order because it has not fully completed its investigation of the case, or because it challenges the sufficiency of another party's disclosures, or because another party has not made its disclosures  Absent court order to the contrary, a party is not excused from disclosure because there are pending motions to dismiss, to remand or to change venue.

11.    **Filings.** Any filings in excess of 20 pages, counsel is directed to provide a courtesy copy to Chambers, simultaneously with the date of filing.

SIGNED this  1st  day of February, 2008.

_T. John Ward_

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHI MEI OPTOELECTRONICS CORP. | § | |
| | § | |
| V. | § | CIVIL NO. 2:07-CV-176(TJW) |
| | § | |
| LG PHILLIPS LCD CO., LTD, ET AL. | § | |

**O R D E R**

The court, *sua sponte*, orders the following:

1.  Any party claiming patent infringement shall comply with P.R. 3-1 and 3-2 within 15 days from the date of this order;

2.  Any party opposing a claim of patent infringement shall comply with P.R. 3-3 and 3-4 in accordance with the deadline provided in those rules;

3.  The parties may conduct discovery relevant to these disclosures subject to the following limitations: 30 interrogatories per side; 30 requests for admission per side; 30 requests for production per side; 25 hours of party depositions per side; 25 hours of third-party depositions per side; the depositions of any inventors; and unlimited depositions on written questions directed toward third parties. Discovery "relevant to these disclosures" includes discovery relating to the technical operation of the accused products, as well as the identity of and technical operation of any products reasonably similar to any accused product. It also includes discovery into the scope and content of any identified prior art references, as well as any issues related to whether the reference in fact constitutes prior art.

4.  The parties may also conduct discovery into any jurisdictional issues, subject to the above limits.

5.  The provisions of the Patent Rules, including P.R. 2-2, will apply to discovery conducted pursuant to this order.

6.  Consistent with the court's calendar, the court will set this case for a Scheduling Conference at a future date and time to address requests for additional discovery.

SIGNED this 23rd day of October, 2007.

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LG DISPLAY CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-726 (JJF) |
| | ) | |
| CHI MEI OPTOELECTRONICS | ) | |
| CORPORATION; AU OPTRONICS | ) | |
| CORPORATION, AU OPTRONICS | ) | |
| CORPORATION OF AMERICA; | ) | |
| TATUNG COMPANY; TATUNG | ) | |
| COMPANY OF AMERICA, INC.; AND | ) | |
| VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ———————————— | | |
| | ) | |
| AU OPTRONICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-357 (JJF) |
| | ) | |
| LG DISPLAY CO., LTD and | ) | CONSOLIDATED CASES |
| LG DISPLAY AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CHI MEI OPTOELECTRONICS USA, INC.'S
FIRST SET OF REQUESTS FOR THE PRODUCTION OF
DOCUMENTS AND THINGS (Nos. 1 - 109) TO PLAINTIFF**

Defendant, Chi Mei Optoelectronics USA, Inc. ("CMO USA"), by its

undersigned counsel, and pursuant to Rule 34 of the Federal Rules of Civil Procedure,

requests the production for inspection and copying of the following Documents from

Plaintiff, LG Display Co., Ltd. within thirty (30) days after service hereof, said

Documents to be produced at the offices of Jones Day, North Point, 901 Lakeside

Avenue, Cleveland, Ohio 44114, or at such other place and time as may mutually be agreed upon by counsel.

Plaintiff also is requested to serve a written response, separately responding to each request set out herein, specifically identifying for which requests responsive Documents are or are not being produced and/or otherwise identified on appropriate privileged document schedules (which schedules should also be provided with or as part of said written response), on the day said Documents are produced for inspection and copying.

## DEFINITIONS OF TERMS AND INSTRUCTIONS

The following definitions and instructions are applicable to these requests for production:

For purposes of these requests, you should use the following definitions for the terms used herein. All requests and corresponding definitions of terms are for purposes of discovery only, and not to be construed as limiting or reflecting CMO USA's position in this action regarding claim construction or any other issue. CMO USA specifically reserves the right to use different terms, or to assert different meanings, for all purposes in this action (including, for example, with respect to claim construction, infringement analysis, and validity analysis).

1.    "LG Display," "you," and "your" means LG Display Co., Ltd., formerly known as LG.Philips LCD Co., Ltd., and all Persons or entities acting or purporting to act on its behalf, and any Affiliates (as that term is defined herein) of LG Display Co., Ltd. (including, for example, LG Display America, Inc., formerly known as LG.Philips LCD America, Inc.)

2.    "LGDA" means LG Display America, Inc., formerly known as LG.Philips LCD America, Inc., and all Persons or entities acting or purporting to act on its behalf, and any Affiliates (as that term is defined herein) of LG Display America, Inc.

3.    "CMO" means Chi Mei Optoelectronics Corporation, and all Persons or entities acting on Chi Mei Optoelectronics Corporation's behalf.

4.    "CMO USA" means Chi Mei Optoelectronics USA, Inc., and all Persons or entities acting on Chi Mei Optoelectronics USA, Inc.'s behalf.

5.    "Affiliate(s)" means any partnerships, parents, subsidiaries, and divisions, and any corporation or other entity that controls, is controlled by, or is under common control with the identified corporation or entity.

6.    "Representative" means any Person, attorney, agent, consultant or other individual(s) or business entity(ies) in the employ of, or otherwise acting on behalf of an entity or individual.

7.    "LGD Products" means all LCD Modules and LCD Panels made, shipped, imported, or sold by or for LGD and/or LGDA since December 1, 2000.

8.    "LCD Display Product" means any device that contains an LCD Module. An LCD computer monitor, LCD television, laptop computer, and any telephone or other portable or handheld product incorporating an LCD Module are examples of LCD Display Products. This includes all such devices, regardless of Brand.

9.    "LCD Module" means an LCD display component that includes, inter alia, an LCD Panel, a backlight unit, and driver ICs.

10.     "LCD Panel" means an LCD display component that includes a TFT Array and color filter with liquid crystal material between them.

11.     "TFT Substrate" means the substrate that contains one or more TFT Arrays.

12.     "TFT Array" means a thin-film-transistor array, electrodes, wiring, and pads used to drive and control the liquid crystal material in an LCD display.

13.     "Color Filter Substrate" means the substrate that contains one or more color filters used in an LCD Panel.

14.     "Brand" means any brand name or company whose name, mark, or logo appears on LCD Display Products, including, for example, Dell, Hewlett-Packard, Apple, and ViewSonic.

15.     "LGD Customer" means any person (including any Brand that sells LCD Display Products) that has, directly or through an intermediary, ordered, received, purchased, approved, imported, and/or used any LGD Products, including LCD Display Products that contain LGD Products.

16.     "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer, or exchange of information between two or more Persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery, or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements, and other understandings.

17.    The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these document requests all information that might otherwise be construed to be outside of their scope.

18.    "Concern," "concerning," and "relative to" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing, or constituting the referenced subject.

19.    "Document" means all types of documents, electronically stored information, and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, Communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, photographs, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries of interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, opinions of counsel, records, reports, summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals,

advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, sound recordings, computer printouts, floppy disks, hard drives, CD-ROMs, DVDs, portable drives, magnetic tapes and any other data, database, server, or data compilations from which information can be obtained either directly, or, if necessary translated by you through detection devices into a reasonably usable form. The term "Document" also refers to any tangible object other than as described above, and includes objects of every kind and nature such as, but not limited to, products, prototypes, models, and specimens. A draft or nonidentical copy is a separate "Document" within the meaning of this term.

20.     "Thing" is defined to be synonymous in meaning and equal in scope to the usage of the term "tangible things" in Federal Rule of Civil Procedure 34(a), including, without limitation, products, devices, models, mockups, prototypes, systems, and all other tangible things that are in your actual or constructive possession, custody or control, all prior versions or attempts to create the foregoing, and all reproductions of the foregoing that have undergone any alteration, modification, addition, removal, revision, or other change. A non-identical thing is a separate thing.

21.     "Any" means each and every.

22.     "Use" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

23.     "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

24.    "Offer to sell" or "Offered for Sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

25.    "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

26.    "Prior Art" has the same meaning as at term is used in 35 U.S.C. § 103 and applicable case law, without regard to pertinence, including, but not limited to, conceptions, reductions to practice, publications, uses, disclosures, offers for sale and sales, and commercial exploitations of an idea, product, device, method, apparatus, or system, that you or any othe party in litigation or licensing negotiations identified as potentially relevant to any claims of the LGD Patents.

27.    "Person" means any natural person, firm, association, partnership, corporation, joint venture, or other form of legal entity.

28.    The "LGD Patents" means United States Letters Patent Nos. 4,624,737; 5,019,002; 5,825,449; 5,905,274; 6,803,984; 6,815,321; 7,176,489; and 7,218,374, as well as any reissues and/or reexaminations thereof, and any reissue applications therefrom.

29.    "Foreign Counterparts of the LGD Patents" means any patent applications filed anywhere in the world that claim priority in whole or in part to the LGD Patents.

30.    "Part Number" means the name(s) and alpha-numeric identifier(s) by which a part or product, for example an LCD display, LCD Module, LCD Panel, or components thereof, in general, are bought, sold, or identified (including, for example,

internally by LG Display or for sales and marketing purposes), and/or by LGD

Customers).

31.    "Specification" means all Documents or Things that discuss, illustrate,

define, or reflect, in whole or in part, any aspect of how something is, can, or should be

made, inspected, or tested.  Specifications include, for example, textual Documents,

drawings, mask files, product specifications, TFT Array Specifications, TFT Substrate

specifications, Manufacturing Process Specifications, Color Filter Substrate

specifications, panel or cell specifications, material specifications, assembly

specifications, blueprints, and/or illustrations.

32.    "Manufacturing Process Specifications" means Documents that describe

the steps and/or process conditions for forming each layer on a Color Filter Substrate or

TFT Substrate.

33.    "TFT Array Specifications" means Documents that describe a TFT

Array design such as layout, material composition of layers, and/or properties of array

components.

34.    The use of the singular form of any word includes the plural and vice

versa.

35.    LG Display shall produce all attachments to e-mails immediately behind

the e-mail to which such Documents were attached so that the complete contents of

each e-mail are together in  LG Display's production.

36.    If LG Display believes that any request contained in this set of

discovery requests is unclear, unintelligible or because of its wording otherwise

prohibits or prevents  LG Display from responding to that discovery request, CMO

USA requests that LG Display request immediate clarification of that discovery request from CMO USA.

37.    LG Display is advised that these discovery requests are continuing and require further and supplemental responses by LG Display, in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

38.    In producing the Documents described below, LG Display should furnish all Documents within your possession, custody or control, including information that you have the ability and right to obtain or access through or from Affiliates, Representatives, suppliers, or others.

39.    In response to the following set of requests, as to each Document withheld in whole or in part from production on the basis of a claim of privilege or immunity, LG Display shall state the following outlined information. LG Display is requested to submit this information on the date and at the time of production of Documents and Things responsive to these requests.

    a.    identification of the Document being withheld, including separately each copy or draft;

    b.    the nature of and basis for the privilege or immunity asserted;

    c.    the kind of Document (e.g., letter, memorandum, facsimile, etc.);

    d.    the date it bears, if any, as well as the date it was prepared, if different;

    e.    whether the Document was sent, and if so, the date it was sent;

      f.     the name, address, and title of its author, its addressee, each Person to whom a copy has been sent or who received a copy, and each Person known to have read the Document; and

      g.    a description of the subject matter and contents of the Document.

40.    Whenever available, Documents shall be produced in native format on a CD, DVD or removable hard drive with the original file names kept in tact, regardless of their language.  LG Display shall include in the file name a production number by which the file may be later referenced.

41.    No Document or information shall be withheld on the asserted grounds that such Document or information therein is not reasonably calculated to lead to the discovery of admissible evidence unless (i) the burden of responding is fully described, and (ii) persons familiar with the Document or information requested are identified.

## REQUESTS FOR PRODUCTION

**Document Request No. 1**

All Documents concerning LG Display's decision to commence this action, including documents sufficient to identify persons who participated in or contributed to that decision, and all documents concerning the basis or bases upon which that decision was made.

**Document Request No. 2**

All Documents and Things concerning any CMO product obtained by LG Display prior to commencement of this action, including, but not limited to, Documents and Things regarding LG Display's pre-suit investigation of CMO products and its alleged infringement of any LGD Patents.

**Document Request No. 3**

All Documents and Things concerning LG Display's pre-suit investigation of CMO USA and its alleged infringement of any LGD Patents.

**Document Request No. 4**

All Documents concerning the factual basis or bases for each of your allegations in any of LG Display's pleadings relative to CMO, including, but not limited to, LGD's Complaint, Amended Complaints, or Counterclaims.

**Document Request No. 5**

All Documents concerning the factual basis or bases for each of your allegations in any of LG Display's pleadings relative to CMO USA, including, but not limited to, LGD's Complaint, Amended Complaints, or Counterclaims.

**Document Request No. 6**

     All Documents that concern, support or refute, or tend to support or refute any of the allegations in any of LG Display's pleadings relative to CMO, including, but not limited to, LGD's Complaint, Amended Complaints, or Counterclaims.

**Document Request No. 7**

     All Documents that concern, support or refute, or tend to support or refute any of the allegations in any of LG Display's pleadings relative to CMO USA, including, but not limited to, LGD's Complaint, Amended Complaints, or Counterclaims.

**Document Request No. 8**

     All Documents relating to LG Display's first awareness of each allegedly infringing act or product for which LG Display seeks any recovery against CMO, including when LG Display first determined that any CMO act or product allegedly infringed one or more claims of any LGD Patent.

**Document Request No. 9**

     All Documents relating to LG Display's first awareness of each allegedly infringing act for which LG Display seeks any recovery against CMO USA.

**Document Request No. 10**

     All Documents concerning any contention by you relative to whether or not CMO infringes one or more claims of any LGD Patent, whether literally or under the doctrine of equivalents.

**Document Request No. 11**

     All Documents concerning any contention by you relative to whether or not CMO USA infringes one or more claims of any LGD Patent, whether literally or under the doctrine of equivalents.

**Document Request No. 12**

All Documents concerning any contention by you relative to whether or not CMO induces infringement or contributes to the infringement of one or more claims of any LGD Patent.

**Document Request No. 13**

All Documents concerning any contention by you relative to whether or not CMO USA induces infringement or contributes to the infringement of one or more claims of any LGD Patent.

**Document Request No. 14**

All Documents and Things concerning CMO's alleged infringement of one or more claims of any LGD Patent, including, but not limited to, correspondence, electronic mail, memoranda, notes, calculations, presentations, analyses, studies, requests for quotes, invitations to bid, bid packages, bids, quotes, proposals, contracts, purchase orders, invoices, submissions, product samples, reports, or meeting minutes.

**Document Request No. 15**

All Documents and Things concerning CMO USA's alleged infringement of one or more claims of any LGD Patent, including, but not limited to, correspondence, electronic mail, memoranda, notes, calculations, presentations, analyses, studies, requests for quotes, invitations to bid, bid packages, bids, quotes, proposals, contracts, purchase orders, invoices, submissions, product samples, reports, or meeting minutes.

**Document Request No. 16**

All studies, tests, comparisons, analyses, inspections or reports conducted by LG Display or on LG Display's behalf concerning the structure, function or operation of

any of the accused CMO products or any other products LG Display contends practice any of the inventions purportedly claimed in the LGD Patents.

**Document Request No. 17**

All Documents concerning any contention by you relative to whether or not CMO's alleged infringement of one or more claims of any LGD Patent is "willful."

**Document Request No. 18**

All Documents concerning any contention by you relative to whether or not CMO USA's alleged infringement of one or more claims of any LGD Patent is "willful."

**Document Request No. 19**

All Documents concerning any contention by you relative to whether or not CMO should be enjoined and restrained from infringing one or more claims of any LGD Patent.

**Document Request No. 20**

All Documents concerning any contention by you relative to whether or not CMO USA should be enjoined and restrained from infringing one or more claims of any LGD Patent.

**Document Request No. 21**

All Documents concerning any contention by you relative to whether or not this action is an "exceptional case."

**Document Request No. 22**

All Documents concerning any claim by LG Display that any Person other than CMO or CMO USA infringed one or more claims of an LGD Patent.

**Document Request No. 23**

      All Documents concerning the interpretation, scope, or construction of each claim of the LGD Patents.

**Document Request No. 24**

      All documents that LG Display intends to use to support its construction of each claim of the LGD Patents.

**Document Request No. 25**

      All Documents exchanged between LGD and DisplaySearch or any other market research publisher concerning LGD Products, LCD Display Products, LCD Modules, or LCD Panels, including, but not limited to, financial information.

**Document Request No. 26**

      All Documents generated or relied upon by LG Display since December 1, 2000 that reference information or data from DisplaySearch or any other market research publisher.

**Document Request No. 27**

      All Documents concerning the United States and/or North American market for LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**Document Request No. 28**

      All Documents concerning the marketing and/or sale of LGD Products, LCD Display Products, LCD Modules, or LCD Panels in or for the United States and/or North American market, including, for example, Communications with Brands, LGD Customers, or potential customers that sell in the United States any LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**Document Request No. 29**

All Documents concerning any analysis, study, or report prepared by or on behalf of LG Display concerning any LGD Products, LCD Display Products, LCD Modules, or LCD Panels that LG Display contends are covered by any claim of any LGD Patent, including, without limitation, all Documents concerning any estimated, projected or actual market shares; any estimated, projected or actual royalties; and/or any estimated, projected or actual profit for each such product on the market at any time or anticipated to be on the market.

**Document Request No. 30**

All Documents concerning LG Display's market share (actual or estimated) and/or projected market share relative to LGD Products, LCD Display Products, LCD Modules, or LCD Panels in the United States for any period from 2000 to the present.

**Document Request No. 31**

All Documents concerning any trips to the United States by any LG Display employee regarding LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**Document Request No. 32**

All Documents concerning any trips by any LG Display or LGDA employee to any LGD Customer, potential LGD Customer, or Brand that does business in part in the United States or is an Affiliate of an entity that does business in the United States.

**Document Request No. 33**

All Documents concerning any laws, regulations, or requirements in the United States that apply to LGD Products, LCD Display Products, LCD Modules, or LCD Panels , including, but not limited to, Documents evidencing compliance with any such

United States laws, regulations, and requirements (for example, UL and EPA requirements).

**Document Request No. 34**

All Documents that you submitted, filed with, and received since December 1, 2000, from any United States (federal, state or local) government agency or authority concerning the importation and/or sale of LGD Products, LCD Display Products, LCD Modules, or LCD Panels and any requirements or approvals for such sales and imports.

**Document Request No. 35**

All Documents concerning the manufacture of any LGD TFT Array or TFT Substrate in accordance with any LGD Patents, including, but not limited to, TFT Array Specifications that describe or disclose the material composition of each layer of each substrate; process Specifications that describe or disclose the steps for forming (e.g., cleaning, depositing, coating, etching, and/or stripping) each layer of each substrate, and mask files (i.e., electronic files such as GDS-II) that describe or disclose the layer patterns of each substrate.

**Document Request No. 36**

All Documents concerning the design and/or analysis of the structure of any thin-film transistor on any LGD TFT Substrate made in accordance with any LGD Patents including, but not limited to, Documents that describe or disclose the cross section structure of a TFT, and Documents that describe or disclose testing, analysis, or evaluation, including performance, produceability, operation, yield, reliability, fault, or quality control, of LGD Products including components or structures of TFT Arrays and LCD Panels.

**Document Request No. 37**

     All Documents concerning any LG Display cell assembly process in accordance with any LGD Patents, including, but not limited to, product Specifications and CAD files that describe or disclose patterns (e.g., seal printing or seal dispensing, liquid crystal filling, Au or Ag dispensing, UV light masking, and/or glass cutting) on the LGD TFT Substrate and/or the LGD Color Filter Substrate; process Specifications that describe or disclose the steps for assembling (e.g., cleaning, printing, filling, dispensing, attaching, exposing to UV light, baking, cutting, beveling, and/or bubble removal) a LG Display LCD Panel; and material Specifications that describe or disclose the sealant material (e.g., by designated product name, supplier, and/or composition) for each LG Display LCD Panel.

**Document Request No. 38**

     All Documents concerning any LG Display cell assembly material flow and fabrication equipment used in connection with product made in accordance with any LGD Patents, including, but not limited to, fabrication equipment floor layouts for all cell assembly production lines; Specifications that describe or disclose a cell production line as serial, single or other similar designation; and Documents that describe or disclose the process flow, control, relative timing, and/or operation of the seal dispensing, liquid crystal dispensing, cleaning, and/or assembly equipment in each cell assembly production line.

**Document Request No. 39**

     Samples of each LCD Display Product, LCD Module, and LCD Panel that LGD contends are covered by or embody, in whole or in part, any claim of any LGD Patent.

**Document Request No. 40**

All Documents concerning the designs, structures, procedures, process conditions, equipment used, materials, functions, analysis, operation, absence, use, and/or purpose of the following with respect to your products that you claim are covered by any LGD Patents or manufactured in accordance with any LGD Patents:

    a.    Electrostatic Discharge Protection, including:

        i.    structures or components on a TFT Substrate or LCD Panel;

        ii.    manufacturing process steps that relate to electrostatic charge or discharge;

        iii.    equipment, environmental conditions or procedures that relate to reducing electrostatic charge, discharge, or dispersal of discharge; and

        iv.    testing, analysis, or evaluation (including performance, produceability, yield, reliability, fault, or quality control) of structures, equipment, conditions or procedures related to electrostatic charge, discharger or dispersal of discharge;

    b.    TFT Substrate and color filter design and manufacture, including:

        i.    procedures, process conditions and materials used for the deposition and patterning of each layer;

        ii.    design and measurement of component performance (e.g., threshold voltage, capacitance values), material characteristics (e.g., resistivity) and pattern parameters (e.g., thickness, width, length, shape);

        iii.    design and operation of components and layers depicted in mask files; and

        iv.    testing, analysis, or evaluation (including performance, produceability, yield, reliability, fault, or quality control) of individual layers, physical interrelationships between layers, and electrical characteristics of interrelationships between layers;

    c.    Cell assembly, including:

        i.    applying or dispensing sealant, including patterns as depicted in CAD files;

    ii.     procedures and equipment used for applying or curing the sealant;

    iii.    applying, dispensing, or injecting liquid crystal material;

    iv.    aligning, joining and cutting TFT and Color Filter Substrates;

    v.     optical compensation structures, including films;

    vi.    testing, analysis, or evaluation (including performance, produceability, yield, reliability, fault, or quality control) of sealant application or dispensing patterns; and

    vii.   evaluation of production line capacity, throughput or costs associated with each production line; and

  d.    Module assembly, including:

    i.      backlight unit structures and components;

    ii.     design, operation and interrelationship of components depicted in CAD files; and

    iii.    driver circuit attachment and operation.

**Document Request No. 41**

All Documents concerning the conception, design, reduction to practice (actual and constructive), diligence or lack of diligence in reduction to practice, research, and development of each invention, product, device, service, method, or activity, that concerns or is purportedly covered by one or more of the claims of any LGD Patents or the Foreign Counterparts of the LGD Patents, including, but not limited to, all product proposals, design notes, engineering notebooks, laboratory notebooks, memoranda, drawings, specifications, prototypes, computer software, change orders, publications, and printed matter concerning such products, devices, services, methods, or activities, and any written description, printed publication or disclosure prior to the respective application dates for each of the LGD Patents, whether in the United States or elsewhere.

**Document Request No. 42**

All Documents concerning the efforts by any Person other than the named inventors to aid in the conception of the subject matter that concerns or is purportedly covered by one or more of the claims of any LGD Patents or any Foreign Counterparts of the LGD Patents.

**Document Request No. 43**

All Documents concerning the efforts by any Person other than the named inventors to aid in the reduction to practice (actual and constructive) of the subject matter that concerns or is purportedly covered by one or more of the claims of any LGD Patents or any Foreign Counterparts of the LGD Patents.

**Document Request No. 44**

All Documents concerning any search, investigation, analysis, review, opinion or study relating to the scope, novelty, nonobviousness, patentability, validity, enforceability and/or infringement of any claim of any LGD Patents or any Foreign Counterparts of the LGD Patents.

**Document Request No. 45**

All Documents concerning any search for Prior Art for the subject matter purportedly defined by each of the claims of the LGD Patents.

**Document Request No. 46**

All Documents concerning any Prior Art, whether or not you contend it is actually Prior Art, relative to the LGD Patents, including all Prior Art or potential Prior Art references to those patents or their respective Foreign Counterparts.

**Document Request No. 47**

All Documents regarding any product, publication, patent, or other Document or Thing that you contend may be relative to Prior Art to the LGD Patents.

**Document Request No. 48**

All English translations of any foreign patent, publication or other Document or Thing that anyone has identified as Prior Art to any of the LGD Patents.

**Document Request No. 49**

All Documents concerning the first Use in public, Offer to Sell, or Sale of the subject matter described and purportedly claimed in any LGD Patent or any Foreign Counterparts of the LGD Patents.

**Document Request No. 50**

All Documents concerning the first description in a printed Document or publication, relative to the first Use in public, Offer to Sell, or Sale of the subject matter described and purportedly claimed in any LGD Patent or any Foreign Counterparts of the LGD Patents.

**Document Request No. 51**

All Documents concerning any Use, whether public or otherwise and whether experimental or otherwise, of each alleged invention corresponding to any claims of any LGD Patent or any Foreign Counterparts of the LGD Patents prior to the respective application dates for each of the LGD Patents, whether in the United States or elsewhere.

**Document Request No. 52**

All Documents concerning the best mode for practicing the purported invention claimed in each of the LGD Patents.

**Document Request No. 53**

All Documents authored by the named inventors of the LGD Patents concerning the subject matter of the LGD Patents including, but not limited to, any lab notebooks, schematics, papers, publications, or notes.

**Document Request No. 54**

With respect to each of the LGD Patents and Foreign Counterparts of the LGD Patents, as well as any reissue application and/or reexamination request and/or interference thereof or related thereto, the following categories of Documents:

a.      the complete patent prosecution files and all Documents relating to prosecution of each of the LGD Patents and Foreign Counterparts of the LGD Patents;

b.      all Documents concerning the decision to file each application, the scope of the claims during prosecution, the naming of inventors or any amendment thereof, and the preparation of the patent application(s);

c.      all Documents reviewed, consulted, considered, or prepared in connection with the preparation or prosecution of each application, including, without limitation, any Prior Art or potential Prior Art identified or known during prosecution;

d.      all drafts of the application(s), any amendments thereof, any responses to Patent Office actions and any other papers filed or submitted during prosecution;

e.      all Documents concerning Communications with or from any third Person or any of the inventors or possible inventors or any Person at any time named as an inventor;

f.      all Documents concerning Communications with or from any patent attorney, patent agent, or Prior Art searcher relating to the Prior Art, the purported invention, applications, or the prosecution of the application(s);

g.      all Documents relating to references cited by or to the United States

Patent and Trademark Office or any foreign patent office during the prosecution of the

application(s);

h.      all Documents concerning any conflicts, interferences, oppositions,

infringements, nullity, revocation, lawsuits or any other proceedings concerning any of

the LGD Patents or any Foreign Counterparts of the LGD Patents; and

i.      all Documents concerning ownership and/or assignments or transfers of

interest with respect to any LGD Patents and any Foreign Counterparts of the LGD

Patents.

**Document Request No. 55**

All Documents concerning LG Display's policies and/or practices regarding

patents or patent applications.

**Document Request No. 56**

All Documents concerning all links in the chain of title or ownership of any

LGD Patents, any Foreign Counterparts of the LGD Patents, or related family patent

rights, beginning with the inventors, including, but not limited to, all assignment

Documents and all Documents concerning the acquisition of any LGD Patent, any

Foreign Counterparts of the LGD Patents, or related family patent rights.

**Document Request No. 57**

All Documents concerning the actual or potential purchase, sale, or transfer of

any rights or interest in or to any LGD Patent, including, but not limited to,

Communications, negotiations, offers, discussions, presentations, meeting notes,

meeting minutes, analyses, agreements, contracts, assignments, and licenses, including

all drafts, modifications, or amendments (if any) thereof, and Documents exchanged with third parties.

**Document Request No. 58**

All Documents and Things relating to any test, study, experiment, or investigation conducted by any Person in an effort to design around any LGD Patent or any Foreign Counterparts of the LGD Patents.

**Document Request No. 59**

All Documents concerning any contention that any alleged "secondary considerations" of the type described in *Graham v. John Deere*, 383 U.S. 1 (1966), and its progeny, for the subject matter purportedly described and claimed in any LGD Patent and any Foreign Counterparts of the LGD Patents show them to be non-obvious, including, without limitation, Documents relevant to:

a.    any alleged long-felt need, or absence thereof, for the subject matter of any of the claims of any LGD Patent;

b.    any alleged commercial success, or lack thereof, of the subject matter of any of the claims of any LGD Patent;

c.    any alleged copying by others, or lack thereof, of the subject matter of any of the claims of any LGD Patent;

d.    any alleged praise, or absence thereof, for the subject matter of any of the claims of any LGD Patent;

e.    any alleged unexpected results, or lack thereof, of the subject matter of any of the claims of any LGD Patent;

f.    any alleged skepticism, or lack thereof, concerning the subject matter of any of the claims of any LGD Patent; or

     g.     any alleged nexus or lack thereof between the use of the subject matter claimed in any LGD Patents and any alleged commercial success of products or services using or incorporating that subject matter.

**Document Request No. 60**

All Documents concerning the utility, advantages, problems, and solutions corresponding to inventions purportedly disclosed, described or claimed in any of the LGD Patents.

**Document Request No. 61**

All license agreements, covenants not to sue, agreements providing an immunity-from-suit, and related agreements to which LG Display is a party, including all addendums, amendments, and exhibits to such agreements.

**Document Request No. 62**

All Documents concerning any offer of, request for or expression of interest in a license and/or immunity-from-suit under or assignment or purchase of, or concerning any grant or amendment of a license and/or immunity-from-suit under, or concerning any assignment or purchase of the LGD Patents, any patent applications that led to any LGD Patents, or any Foreign Counterparts of the LGD Patents or patent applications corresponding to or claiming the benefit of or priority under any of the foregoing, and for each such offer, request, expression of interest, grant, assignment or purchase, all Documents concerning, but not limited to:

     a.     the parties involved;

     b.     the negotiation of each license, immunity, assignment or purchase offered or requested;

     c.     the duration of each license and/or immunity offered or requested;

d.      the products to be covered by each such proposed license and/or immunity;

e.      the amount of consideration offered, requested or received for such license, immunity, assignment or purchase, if any, including the amounts paid or to be paid for activities which predated each proposed license, immunity, assignment or purchase and the amounts to be paid for activities after the grant of each proposed license, immunity, assignment or purchase;

f.      any royalties, royalty rates, royalty or compensation bases, if any;

g.      any cross-licenses, licenses, or agreements under other patents, patent applications, trade secrets, or know-how;

h.      the actual license(s), immunity(ies) or assignment(s) entered into and any and all proposed license(s), immunity(ies) or assignment(s); and/or

i.      any amendments to any such license(s), immunity(ies) or assignment(s) or any proposed amendments.

**Document Request No. 63**

All Documents concerning your former or current patent licensing policies, practices or strategies.

**Document Request No. 64**

All Documents concerning the identity and significance of all factors that you have considered when negotiating license agreements or valuing technology for licensing purposes from December 1, 2000 to the present.

**Document Request No. 65**

All Documents concerning any lost profits sought by LG Display in this case.

**Document Request No. 66**

All Documents concerning any reasonable royalties sought by LG Display in this case, including with respect to each of the factors referenced in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff 'd*, 446 F.2d 295 (2d Cir. 1971), and royalty damages claimed for each LGD Patent.

**Document Request No. 67**

All Documents concerning, or providing basis or support for, any of LG Display's contentions, positions, or assertions made or to be made concerning LG Display's damage theories in this litigation, including, without limitation, contentions, positions, or assertions made or to be made concerning the theories of lost profits, reasonable royalty, established royalty, lost sales and/or any other basis for alleged compensation under 35 U.S.C. § 284, including, without limitation:

a.    all Documents concerning the rate at which LG Display pays interest on incurred debts;

b.    all Documents concerning the compensation received or expected to be received by LG Display from its licensing or other exploitation of any of the claims of any LGD Patents;

c.    all Documents concerning how LG Display arrived at the royalty rate or the rate of compensation earned by LG Display for the licensing or other exploitation of any of the claims of any LGD Patents;

d.    any royalties received by LG Display pursuant to any licenses, sublicenses or covenants not to sue of any LGD Patents;

e.    any royalty rates paid by companies in the United States for the use of patents comparable to any LGD Patents;

f.    the effect of the LGD Patents in generating sales of LGD Products, LCD Display Products, LCD Modules, or LCD Panels, other products or technology, and/or licensing revenue in the United States;

g.    all Documents concerning whether there is a demand for products embodying the purported invention disclosed in any LGD Patent;

h.    all Documents concerning whether there are a lack of acceptable non-infringing alternatives to products embodying the purported inventions disclosed in any LGD Patent;

i.    all Documents concerning LG Display's marketing and manufacturing capability to exploit the purported demand for the purported inventions disclosed in any LGD Patent; and

j.    all Documents concerning the amount of profit that LG Display would have allegedly made.

**Document Request No. 68**

All Documents concerning the monetary value of any LGD Patent (whether individually, together, or as part of a larger portfolio), including, but not limited to, any licenses, accounting records, settlement agreements, appraisals, reports, or opinions.

**Document Request No. 69**

All Documents reflecting all valuations and the methodology or basis that you have used since December 1, 2000, to negotiate or calculate the rate or amount of royalty regarding any patents concerning technology used in or for LGD Products, LCD

Display Products, LCD Modules, or LCD Panels, or manufacturing as to any such products.

**Document Request No. 70**

All license agreements and related agreements concerning LGD Products, LCD Display Products, LCD Modules, or LCD Panels, and/or the manufacture or assembly of any such products, including all addendums, amendments, and exhibits to such license agreements.

**Document Request No. 71**

All Documents concerning the types of technology involved in any license agreement to which LG Display is a party, and Documents reflecting the extent to which any existing licenses involve technology that is relevant or comparable to the subject matter of the LGD Patents.

**Document Request No. 72**

All Documents and Things concerning the settlement of any lawsuit or claim concerning any LGD Patent.

**Document Request No. 73**

All Documents, in native format if available, that identify each LCD Module, LCD Panel, or LCD Display Product that incorporates, has been used with, or has been incorporated into any LGD Product, including Documents that identify which Brands, models, and Part Numbers incorporate, have been used with, or have been incorporated into each LGD Product since December 1, 2000 and in what quantities.

**Document Request No. 74**

All reports, forecasts, projections, plans, estimates, revenues, and data compilations, in native format if available, created, generated, received or maintained,

including the computer databases or document management systems in which such

Documents are located, concerning the revenues, profitability, costs, margins,

manufacturing, marketing, advertising, importation, distribution, purchase and sales of

LGD Products, LCD Display Products, LCD Modules, or LCD Panels made, sold, or

offered for sale by or for you on a monthly basis since December 1, 2000.

**Document Request No. 75**

All Documents, in native format if available, summarizing transactions since

December 1, 2000 with any LGD Customer, distributor, reseller, and retailer that either

does business in part or has an Affiliate that does business in part in the United States

concerning LGD Products, LCD Display Products, LCD Modules, or LCD Panels,

including, but not limited to, all offers to sell, sales, orders, shipments, and imports.

**Document Request No. 76**

All Documents, in native format, summarizing or concerning sales, shipments,

price per unit, gross profit per unit, net profit per unit, fixed cost per unit, and variable

cost per unit of LGD Products, LCD Display Products, LCD Modules, or LCD Panels

made and sold by or for you or on your behalf since December 1, 2000, including

identifying from whom each product was shipped and to whom each product was

shipped.

**Document Request No. 77**

Documents sufficient to determine the manufacturing cost and yield for all LGD

Products, LCD Display Products, LCD Modules, or LCD Panels and fabrication plants,

including, but not limited to, manufacturing cost reports and any other Documents

reflecting product yield, changes in product yield, and reasons for changes in product

yield for each fabrication plant.

**Document Request No. 78**

All Documents reflecting any marking or obligation to mark products with any of the LGD Patent numbers.

**Document Request No. 79**

All Communications concerning the LGD Patents or any Foreign Counterparts of the LGD Patents, including but not limited to, internal memoranda, e-mail, and correspondence between you and your officers, agents, consultants, subcontractors, and employees.

**Document Request No. 80**

All Documents concerning all Communications between LG Display and any third-party related to any LGD Patent or the subject matter of any LGD Patent.

**Document Request No. 81**

All Documents received by LG Display from CMO or any person, referencing any LGD Patent.

**Document Request No. 82**

All Documents sent by or on behalf of LG Display to CMO or any person affiliated with CMO, referencing any LGD Patents.

**Document Request No. 83**

All Documents exchanged between LG Display and any of the following concerning LGD Products, LCD Display Products, LCD Modules, or LCD Panels:

    h.    Apple Computer, Inc., including its affiliates and subsidiaries;

    i.    TPV Technologies Limited Ltd., including its affiliates and subsidiaries;

    j.    Proview International, including its affiliates and subsidiaries;

    k.    Hewlett-Packard, including its affiliates and subsidiaries;

    l.      Westinghouse, including its affiliates and subsidiaries;

    m.     Dell, including its affiliates and subsidiaries;

    n.      Funai Electric Co., Ltd., including its affiliates and subsidiaries (such as

Funai Corporation);

    o.      NEC, including its affiliates and subsidiaries;

    p.      Samsung, including its affiliates and subsidiaries.

**Document Request No. 84**

All Documents exchanged between LG Display and any of the following

concerning the United States, including, for example, with respect to United States

market trends or consumer preferences, LGD Products, LCD Display Products, LCD

Modules, or LCD Panels that could be used, sold, offered for sale in the United States

and/or LG Display employees, meetings, offices, or presentations in or regarding the

United States:

    a.      Apple Computer, Inc., including its affiliates and subsidiaries;

    b.      TPV Technologies Limited Ltd., including its affiliates and subsidiaries;

    c.      Proview International, including its affiliates and subsidiaries;

    d.      Hewlett-Packard, including its affiliates and subsidiaries;

    e.      Westinghouse, including its affiliates and subsidiaries;

    f.      Dell, including its affiliates and subsidiaries;

    g.      NEC, including its affiliates and subsidiaries;

    h.      Funai Electric Co., Ltd., including its affiliates and subsidiaries (such as

Funai Corporation);

    i.      Samsung, including its affiliates and subsidiaries.

**Document Request No. 85**

All Documents concerning any opinion of counsel regarding the LGD Patents, including, for example, all opinions, draft opinions, notes, analyses, and Communications regarding each opinion, and all Documents received and/or considered for the purposes of each opinion.

**Document Request No. 86**

All Documents concerning strategic alliances and joint ventures between LG Display and others regarding LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**Document Request No. 87**

All Documents that identify product or project names and codenames for LGD Products, LCD Display Products, LCD Modules, or LCD Panels, and that link or correlate such names or codenames between such LGD Products, LCD Display Products, LCD Modules, or LCD Panels, or are used and/or approved for LCD Display Product projects and/or codenames.

**Document Request No. 88**

Documents sufficient to show or explain the letter and/or numbering system by which LG Display assigns model numbers and/or Part Numbers to its LGD Products, LCD Display Products, LCD Modules, or LCD Panels, including Documents sufficient to show or explain what each letter and/or number signifies.

**Document Request No. 89**

All Documents concerning any expert expected to testify for you in this case, including, for example:

a.    each expert's reports for this case and other cases within the past four

years;

b.    all Documents considered by any expert regarding this case; and

c.    all publications of the expert concerning any issues or subject matter

related to the issues or subject matter in this action.

**Document Request No. 90**

All Documents reviewed by or received by any person LG Display expects to

call as a witness at any hearing or at trial in this action to the extent such documents

relate to the subject matter of this action.

**Document Request No. 91**

All Documents prepared by any person LG Display expects to call as a witness

at any hearing or at trial in this action to the extent such documents relate to the subject

matter of this action.

**Document Request No. 92**

All Documents and Things that LG Display may use or introduce at any hearing

or trial of this action.

**Document Request No. 93**

All Documents in the possession, custody or control of each of the individuals

listed on LG Display's and LGDA's Initial Disclosures that concern the LGD Patents or

the subject matter of this action.

**Document Request No. 94**

All Documents identified, described, or referenced in LG Display's and

LGDA's Initial Disclosures.

**Document Request No. 95**

All organizational charts and other Documents that reflect LG Display's entire

organizational structure, including the structure of your Intellectual Property department

or division, including lines of reporting and all positions, offices, divisions, units,

departments, teams, and employees within LG Display, and their corresponding titles,

functions, and responsibilities.

**Document Request No. 96**

All Documents that identify employees, officers, agents, subsidiaries, or

Representatives acting on behalf of LG Display and/or LGDA in the United States.

**Document Request No. 97**

All Documents reflecting any Communications between LG Display and any

other Person regarding CMO, CMO USA, or the following cases: *AU Optronics*

*Corporation vs. LG.Philips LCD Co., Ltd. and LG.Philips LCD America, Inc.*, Civil

Action No. 07-C-0137-S (United States District Court for the Western District of

Wisconsin); *AU Optronics Corporation vs. LG.Philips LCD Co., Ltd. and LG.Philips*

*LCD America, Inc. et al.*, Civil Action No. 07-357-JJF (United States District Court for

the District of Delaware); *LG.Philips LCD Co., Ltd. v. Chi Mei Optoelectronics*

*Corporation, et al.*, Civil Action No. 06-726-JJF (United States District Court for the

District of Delaware); *Chi Mei Optoelectronics Corporation v. LG.Philips LCD Co.,*

*Ltd. and LG.Philips LCD America, Inc.*, Civil Action No. 07-176-TJW (United States

District Court for the Eastern District of Texas); *LG.Philips LCD Co Ltd v. Chunghwa*

*Picture Tubes Ltd*, Civil Action No. 05-07004-CBM (United States District Court for

the Central District of California); *LG.Philips LCD Co., Ltd. v. Chunghwa Picture*

*Tubes Ltd., et al.*, Civil Action No. 02-6775-CBM (United States District Court for the

Central District of California); and *LG.Philips LCD Co., Ltd. v. Tatung Co., et al.*, Civil

Action No. 05-292-JJF (United States District Court for the District of Delaware).

**Document Request No. 98**

All Documents concerning pleadings, discovery requests, responses to discovery

requests, expert reports, claim construction briefing, claim charts, deposition transcripts,

court transcripts, trial transcripts, and court orders relative to any action or lawsuit in

which LG Display has alleged that any Person has infringed any LGD Patent, including,

but not limited to the following cases: *AU Optronics Corporation vs. LG.Philips LCD*

*Co., Ltd. and LG.Philips LCD America, Inc.*, Civil Action No. 07-C-0137-S (United

States District Court for the Western District of Wisconsin); *AU Optronics Corporation*

*vs. LG.Philips LCD Co., Ltd. and LG.Philips LCD America, Inc. et al.*, Civil Action No.

07-357-JJF (United States District Court for the District of Delaware); *LG.Philips LCD*

*Co Ltd v. Chunghwa Picture Tubes Ltd*, Civil Action No. 05-07004-CBM (United

States District Court for the Central District of California); *LG.Philips LCD Co., Ltd. v.*

*Chunghwa Picture Tubes Ltd., et al.,* Civil Action No. 02-6775-CBM (United States

District Court for the Central District of California); and *LG.Philips LCD Co., Ltd. v.*

*Tatung Co.,* et al., Civil Action No. 05-292-JJF (United States District Court for the

District of Delaware).

**Document Request No. 99**

All Documents concerning LG Display's participation in, sponsorship of, and/or

Communications with any group, organization, or other body concerning establishing,

publishing, or developing industry standards potentially relevant to LGD Products, LCD

Display Products, LCD Modules, or LCD Panels.

**Document Request No. 100**

All policies, procedures, manuals, guidelines, and other Documents concerning the retention, destruction, storage, archiving, and management of Documents, records, and/or electronically stored information that apply to LG Display, LGDA or their employees.

**Document Request No. 101**

All Documents concerning efforts to identify information (including electronically stored information) relevant to claims and defenses or discovery in this case, including Documents identifying all sources of relevant information, all custodians of relevant information.

**Document Request No. 102**

All reports to your shareholders, including all annual reports, in English, since December 1, 2000.

**Document Request No. 103**

All Documents concerning LG Display stock or shares, including, but not limited to, stock offerings (such as Offering Circulars), shareholders agreements or any agreements relating to stock purchases, share purchases or asset sales or transfers to which LG Display is a party, assignor, assignee, or beneficiary.

**Document Request No. 104**

All annual reports, income statements, and financial statements concerning LG Display since December 1, 2000.

**Document Request No. 105**

All Documents and Things produced to, provided to, examined by or given to

AU Optronics Corporation or AU Optronics Corporation of America in connection with

this action.

**Document Request No. 106**

All Documents concerning CMO.

**Document Request No. 107**

All Documents concerning CMO USA.

**Document Request No. 108**

All English translations of any non-English documents that are responsive to

any of the document request posed by CMO USA.

**Document Request No. 109**

All Documents that you identified, consulted, referred to, or relied upon in

responding to any interrogatories posed by CMO USA.

OF COUNSEL:                          POTTER ANDERSON & CORROON LLP

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz                By: _____
Jones Day                                 Philip A. Rovner (#3215)
North Point                               Hercules Plaza
901 Lakeside Avenue                       P. O. Box 951
Cleveland, OH  44114-1190                 Wilmington, DE  19899
(216) 586-3939                            (302) 984-6000
                                          provner@potteranderson.com
Dated:  April 8, 2008
859219                               *Attorneys for Defendant*
                                     *Chi Mei Optoelectronics USA, Inc.*

-39-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on April 8, 2008 true and correct copies of

the within document were served on the following counsel of record, at the addresses and in the

manner indicated:

**BY HAND DELIVERY AND EMAIL**

Richard E. Kirk, Esq.
Ashley Blake Stitzer, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardfirm.com
astitzer@bayardfirm.com

**BY E-MAIL**

Gaspare J. Bono, Esq.
Matthew T. Bailey, Esq.
Lora A. Brzezynski, Esq.
Cass W. Christenson, Esq.
R. Tyler Goodwyn, IV, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
gbono@mckennalong.com
mbailey@mckennalong.com
lbrzezynski@mckennalong.com
cchristenson@mckennalong.com
tgoodwyn@mckennalong.com

**BY HAND DELIVERY AND EMAIL**

John W. Shaw, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
kpascale@ycst.com

**BY E-MAIL**

Vincent K. Yip, Esq.
Peter J. Wied, Esq.
Jay C. Chiu, Esq.
Paul Hastings Janofsky & Walker LLP
515 South Flower Street
Los Angeles, CA 90071
vincentyip@paulhastings.com
peterwied@paulhastings.com
jaychiu@paulhastings.com

Ron E. Shulman, Esq.
Julie M. Holloway, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050
rshulman@wsgr.com
jholloway@wsgr.com

M. Craig Tyler, Esq.
Brian D. Range, Esq.
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759
ctyler@wsgr.com
brange@wsgr.com

Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

2

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on July 14, 2008, he served the foregoing

documents by email and by hand upon the following counsel:

Philip A. Rovner
David E. Moore
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE  19899-0951

Karen L. Pascale
John W. Shaw
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19899-0391

The undersigned counsel further certifies that, on July 14, 2008, he served the

foregoing documents by email and by U.S. Mail upon the following counsel:

Jonathan S. Kagan
Alexander Giza
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067

Vincent K. Yip
Peter J. Wied
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
515 South Flower Street, 25th Floor
Los Angeles, CA   90071

Ron E. Shulman, Esquire
Julie Holloway, Esquire
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304-1050

M. Craig Tyler, Esquire
Brian D. Range, Esquire
WILSON SONSINI GOODRICH & ROSATI
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497

/s/ Richard D. Kirk, (rk0922)
Richard D. Kirk

656846-1