**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LG. DISPLAY CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-726 (JJF) |
| | ) | |
| CHI MEI OPTOELECTRONICS | ) | |
| CORPORATION; AU OPTRONICS | ) | |
| CORPORATION, AU OPTRONICS | ) | |
| CORPORATION OF AMERICA; TATUNG | ) | |
| COMPANY; TATUNG COMPANY OF | ) | |
| AMERICA, INC.; AND VIEWSONIC | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| AU OPTRONICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-357 (JJF) |
| | ) | |
| LG. DISPLAY CO., LTD and | ) | CONSOLIDATED CASES |
| LG. DISPLAY AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT CHI MEI OPTOELECTRONICS CORPORATION'S
ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE A SECOND AMENDED ANSWER**

OF COUNSEL:

Jonathan S. Kagan
Alexander C. D. Giza
Adam Hoffman
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA 90067
(310) 277-1010

Dated:  July 18, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE  19899
(302) 984-6000
provner@potteranderson.com

*Attorneys for Defendant
Chi Mei Optoelectronics Corporation*

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS .................................................. 1

II.   SUMMARY OF ARGUMENT ..................................................................... 1

III.  STATEMENT OF FACTS ........................................................................... 2

IV.   ARGUMENT ............................................................................................. 4

      A.   LGD's Motion To Assert The '569 Patent Would Prejudice CMO By
           Locking It Out Of Meaningful Participation In Claim Construction ................... 5

      B.   LGD Unduly Delayed In Asserting The '569 Patent ............................................. 9

      C.   LGD's Unexplained Delay And Last-Minute Assertion Of The '569
           Patent Demonstrates Its Bad Faith ...................................................................... 12

V.    CONCLUSION ......................................................................................... 14

TABLE OF CITATIONS

Page(s)

**Cases**

*Aloe Vera of Am., Inc. v. U.S.,*
    233 F.R.D. 532 (D. Ariz. 2005) ................................................................ 13

*CenterForce Tech., Inc. v. Austin Logistics Inc.,*
    2000 WL 652943 (D. Del. Mar. 10, 2000) ........................................... 7, 12

*Foman v. Davis,*
    371 U.S. 178 (1962) .................................................................................. 5

*GSS Prop., Inc. v. Kendale Shopping Ctr., Inc.,*
    119 F.R.D. 379 (M.D.N.C. 1988) ............................................................ 13

*IXYS Corp. v. Advanced Power Tech., Inc.,*
    2004 WL 135861 (N.D. Cal. Jan. 22, 2004) ........................................ 8, 13

*Kinberg v. Colorforms,*
    1991 WL 107439 (S.D.N.Y. June 10, 1991) ........................................... 11

*Lorenz v. CSX Corp.*
    1 F.3d 1406 (3rd Cir. 1993) .................................................................. 5, 12

*Micron Tech., Inc. v. Rambus Inc.,*
    409 F. Supp. 2d 552 (D. Del. 2006) .......................................................... 7

*Samick Music Corp. v. Delaware Music Indus., Inc.,*
    1992 WL 39052 (D. Del. Feb. 12, 1992) ................................................... 9

*Semiconductor Energy Lab. Co. v. Sanyo North Am. Corp.,*
    2001 WL 194303 (D. Del. Feb. 22, 2001) ............................................. 6, 7

*Trueposition, Inc. v. Allen Telecom, Inc.,*
    2002 WL 1558531 (D. Del. July 26, 2002) ............................................. 12

*Vonage Holdings Corp. v. SBC Internet Serv., Inc.,*
    2007 WL 3169167 (N.D. Tex. Oct. 30, 2007) ....................................... 6, 7

**Rules**

Fed. R. Civ. P. 15(a) ...................................................................................... 4

## I.     NATURE AND STAGE OF PROCEEDINGS

Although this litigation has progressed for over 18 months, LG Display Co., Ltd. ("LGD") waited until the *day before* the start of claim construction proceedings to notify defendant and counter-plaintiff Chi Mei Optoelectronics ("CMO") of its intent to assert U.S. Patent No. 6,664,569 (the "'569 patent") against CMO. Without any prior warning, LGD's counsel e-mailed CMO's counsel on June 23, 2008 (the day before the June 24, 2008 deadline for identifying claim terms requiring construction) and indicated that LGD "now intends" to assert the '569 patent against CMO.

Despite this eleventh hour notice, LGD refused any accommodation to minimize the prejudice that the assertion of the '569 patent would cause CMO, other than to suggest three additional days (for a total of four days) for identifying proposed terms for construction.[1] LGD refused to alter the claim construction briefing or hearing schedule to allow CMO sufficient time to fully analyze the '569 patent and adequately prepare for claim construction on the newly asserted patent. Claim construction proceedings are now well underway.

## II.     SUMMARY OF ARGUMENT

1.     LGD should not be permitted to amend its complaint to add the '569 patent at this late stage of the proceedings because doing so would unduly prejudice CMO. CMO has not had sufficient time to study and analyze the '569 patent, the prior art, the accused products, and other relevant information so as to meaningfully participate in the ongoing claim construction proceedings for the '569 patent.

---

[1] Despite CMO's request, LGD failed to identify why it waited until the eve of claim construction to attempt to assert the '569 patent. Only in its motion did LGD assert, for the first time, that it had recently received the necessary information about CMO's products to assert the '569 patent. However, as explained herein, LGD's assertion is belied by the facts. LGD could have asserted the '569 patent from the outset of this litigation.

2.    LGD should not be permitted to amend its complaint because it has unduly delayed. The '569 patent has been in suit for nearly a year, and LGD had sufficient publicly available information (through routine lab tests of CMO products) to have timely raised these allegations more than a year ago, long before the claim construction process.

3.    LGD's motion to amend should be denied because LGD's attempt to add the '569 patent on the eve of claim construction proceedings, without reasonable accommodation to the claim construction schedule, suggests tactical gamesmanship and bad faith.

## III.    STATEMENT OF FACTS

As the Court is aware, this case involves three related patent infringement suits among LGD, CMO and AUO brought in various jurisdictions, all of which have now been transferred to this District. On December 1, 2006, LGD filed its initial complaint in this District, accusing both AUO and CMO of infringing three LGD patents. D.I. 1. In a series of pleadings between June 11, 2007, and August 8, 2007, LGD asserted additional patents against CMO and AUO. *See* D.I. 124; D.I. 125; Case No. 07-357, D.I. 73; Case No. 07-357, D.I. 102; Case. No. 07-357, D.I. 103. LGD has now asserted eight patents against CMO and nine patents against AUO.

LGD first introduced the '569 patent into this case nearly a year ago on July 24, 2007, when LGD filed an amended complaint asserting the '569 patent against AUO. Case No. 07-357, D.I. 102, 103. LGD did not seek to assert the '569 patent against CMO at that time, nor did LGD ever give CMO any indication that it may later seek to assert the '569 patent against CMO.

Claim construction proceedings for all patents-in-suit are already underway. On June 24, 2008, the parties exchanged a list of claim terms believed to require construction. D.I. 208. The parties will file opening claim construction briefs in three weeks, on August 8, 2008. *Id.* In two months, on September 18, 2008, the Court will hold its *Markman* hearing. D.I. 194. Fact

2

discovery, including extensive third party discovery, ends in less than five months, on December 17, 2008, with initial expert reports due less than a month later, on January 12, 2008. *Id.*

On Monday, June 27, 2008, the day before the parties were to exchange lists of claim terms requiring construction, LGD's counsel e-mailed CMO's counsel indicating that it "now intends" to assert the '569 patent against CMO. *See* Ex. A (e-mail exchange beginning on June 23, 2008). LGD stated that CMO "infringes at least one of claims 25, 31, 32, 33, and 34 of the '569 patent." *Id.* The e-mail did not identify any CMO accused products, nor did it explain LGD's reason for delaying so long in seeking to assert the patent. While AUO had *eleven months* to analyze the '569 patent, and LGD had much longer, LGD's offer gave CMO *four days*, until June 28, 2008, to complete its identification of '569 claim terms for construction, in order "[t]o avoid any argument by CMO that it has not had sufficient time to identify terms." *Id.*

On June 25, 2008, counsel for CMO responded, asking LGD to explain why it had delayed so long in raising the '569 patent and noting that LGD had failed even to identify any accused products. Given that LGD had already been analyzing the '569 patent for a year or more, CMO noted that it would likewise need additional time to analyze the '569 patent in detail, including the file history, prior art, and accused products; to identify and gather intrinsic and extrinsic evidence as needed; and to consult with technical experts. *Id.* Despite CMO's requests, LGD refused to identify the accused products, refused to explain the reasons for its delay, and refused to make any accommodation whatsoever to the impending claim construction schedule, beyond its original "offer" giving CMO *four days* to identify claim terms from the '569 patent for construction and a later offer of an additional *five days* to propose constructions for the '569 patent. *Id.* LGD refused to consider moving the schedule for claim construction briefing or the date of the *Markman* hearing by even a single day. *Id.* Instead, LGD simply went ahead and

filed its motion to amend, essentially taking the position that it had the absolute right to add patent claims at the outset of claim construction proceedings without any reasonable accommodation to the schedule.

Finally, for the first time in its moving papers, LGD attempted to explain its delay. LGD contends that CMO's document production on May 15, 2008, allegedly provided LGD with the necessary information to seek to assert the '569 patent. However, LGD did not identify these new documents, nor did it explain what new information these documents provided.

Moreover, LGD did not explain how it could have filed suit against AUO on this same patent a year earlier without comparable information from AUO. Indeed, before the '569 patent was asserted against AUO in July 2007, no detailed relevant AUO technical information had been produced in this action. As explained in the accompanying declaration of CMO's technical manager Rung-Nan Lu, a simple analysis under an optical microscope would have satisfied LGD's Rule 11 obligations, as these tests would reveal the presence or absence of the relevant features relating to the '569 patent. *See* Declaration of Rung-Nan Lu ("Lu Decl.") ¶ 3-4. LGD performed these same tests – and much more detailed tests with more sophisticated equipment – in connection with other patents that it asserted against CMO at least a year earlier, such as U.S. Patent No. 5,905,274 ("the '274 patent"). *See* Ex. B at A-1 – A-11.

Having concluded that LGD never intended in good faith to allow CMO to meaningfully participate in the '569 patent's claim construction, and realizing that LGD had no good excuse for its delay in raising the '569 patent, CMO has no choice but to oppose LGD's motion to amend.

## IV.    ARGUMENT

Although leave to amend should be freely given "when justice so requires," *see* Fed. R. Civ. P. 15(a), the law is nonetheless clear that a plaintiff's request for leave to amend its complaint can and should be denied where the proposed amendment would prejudice the

opposing party, the plaintiff has unduly delayed, or the proposed amendment is made in bad

faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414

(3rd Cir. 1993). While each of these grounds may warrant denial of a motion to amend, courts

have found that "prejudice to the nonmoving party is a touchstone for the denial of an

amendment." *Id.* Under these standards, LGD's motion for leave to amend should be denied.

### A.    LGD's Motion To Assert The '569 Patent Would Prejudice CMO By Locking It Out Of Meaningful Participation In Claim Construction

CMO will be unfairly prejudiced by LGD's late assertion of the '569 patent in the midst

of claim construction proceedings. Despite waiting until the eve of claim construction

proceedings to notify CMO of its intent to assert the '569 patent, LGD offered CMO a mere three

extra days (for a total of four days) to identify claim terms from the '569 patent that it believes

require construction. Of course, there is no way that CMO could be prepared to identify which

claim terms would matter for infringement or invalidity within four days. Even if CMO could

have done in four days what the other parties had almost a year to do, LGD's outright refusal to

explain exactly what claims it would assert and what products allegedly infringed rendered such

an analysis futile.

In the meantime, the parties exchanged claim terms on June 24, 2008, with only LGD and

AUO exchanging claim terms for the '569 patent. Proposed claim constructions were exchanged

yesterday. Opening claim construction briefs are due in three weeks, on August 8, 2008. The

*Markman* hearing is September 18, 2008, two months away. The addition of the '569 patent

would impose a substantial and unfair burden on CMO, forcing CMO to analyze the '569 patent,

its file history, the prior art, and the accused products (which LGD has yet to identify), all with

the assistance of technical experts, over days and weeks in the midst of this busy period, rather

than over the yearlong period afforded the other parties. CMO will also need to determine what extrinsic evidence, if any, will be necessary to assist with the construction of the '569 patent.

Because CMO cannot meaningfully prepare for claim construction in the time provided, LGD's late assertion of the '569 patent would effectively leave CMO with the terms and proposed constructions selected and negotiated by LGD and AUO.[2] Thus, it would be manifestly unfair to require CMO to proceed under such circumstances.[3]

At similar junctures, courts have denied leave to amend to assert additional patents for the very reasons CMO identifies here. For example, in *Semiconductor Energy Laboratory Co. v. Sanyo North America Corp.,* No. C.A. 00-0018-GMS, 2001 WL 194303, at *3 (D. Del. Feb. 22, 2001), Judge Sleet, ruling on a motion made eleven months after suit was filed, held that the amendment of a complaint to assert additional infringement claims would prejudice the opposing party in part because, like here, "the parties' claim charts and briefs on claim construction are due in a few weeks in anticipation of the *Markman* hearing" less than three months away. Judge Sleet rejected the contention, similar to LGD's, that the asserted technologies were so similar that they would cause "minimal disruption since they involve the same technology, witnesses, and products," reasoning that the assertion of new infringement claims would nonetheless require additional discovery. *Id.*

Likewise, in *Vonage Holdings Corp. v. SBC Internet Services, Inc.,* Civ. Actions Nos. 4:04-CV-548-Y, 4:05-CV-224-Y, 2007 WL 3169167, at *3 (N.D. Tex. Oct. 30, 2007), leave to amend to assert patent infringement claims was denied because the claims would "further

---

[2] Although AUO is also defending against the '569 patent, its accused products are different and its legal theories will likely differ from those of CMO. AUO cannot adequately represent CMO in this process.

[3] While LGD notes that certain deadlines such as fact discovery have not yet passed, the most critical deadlines at stake involve the imminent claim construction proceedings, which are already in full swing.

complicate an already complex case" and "[t]he parties would need to locate new experts, and additional time would be needed for drafting proposed claim-construction statements and responses to those statements. This will lead to a delay in the parties' preparing a joint claim-construction statement and the filing of any motion under *Markman* . . . ." Both *Semiconductor Energy Laboratory* and *Vonage* recognize the unfair burdens that would be placed on a party in CMO's position attempting to defend against a newly asserted patent on the eve of claim construction, despite alleged similarities between the new patent and pre-existing patents.

In support of its motion, LGD relies heavily on two cases – *Micron Technology, Inc. v. Rambus Inc.*, 409 F. Supp. 2d 552 (D. Del. 2006), and *CenterForce Technologies, Inc. v. Austin Logistics Inc.*, No. 99-243 (MMS), 2000 WL 652943 (D. Del. Mar. 10, 2000) – but neither case is helpful to LGD's position. In *Micron*, the court had earlier stayed claim construction and trial pending an appeal of another case's disposition regarding the same patents to the Federal Circuit. *Micron,* 409 F. Supp. 2d at 556. Ruling after this stay, the court granted leave to amend to add four patents that issued after the stay motion. *Id.* at 559. Significantly, the court in *Micron* noted that "the trial date is not set in this action, and the schedule can be adjusted to allow for necessary discovery." *Id.* In its next scheduling order, the Court set the claim construction hearing for over a year and five months after it had granted leave to amend. *See* Ex. C. Here, by contrast, the trial date is set, and LGD adamantly refuses any accommodation to the schedule.[4]

In *CenterForce,* the court granted leave to add a patent infringement claim of a grandparent patent to an already asserted patent, noting that "a trial date had not been set" and "defendants will be able to conduct discovery with respect to the additional claims and defenses."

---

[4] LGD touts the fact that the deadline for pleading amendments has yet to pass. While this measure can indicate a party's delay, the parties here are in the middle of claim construction, thereby prejudicing CMO and rendering LGD's delay in asserting this new patent undue.

2000 WL 652943, at *6.  Although claim construction proceedings had already been held, in the Order granting leave to amend, the court ordered the parties to submit a schedule with a *Markman* hearing at least seven months later, with discovery to close thirty days after the *Markman* Order issued.  *See* Ex. D.  Here, by contrast, the Court's schedule has no provision for a second *Markman* proceeding, and CMO is at an extreme disadvantage under the current claim construction schedule as it has not had adequate time to analyze the '569 patent.  Rather, CMO will be largely forced to accept whatever terms and constructions are proposed and negotiated by LGD and AUO.

When faced with the assertion of an additional patent during or after claim construction, other courts have recognized the need for a reasonable accommodation of discovery and claim construction.  For example, in *IXYS Corp. v. Advanced Power Technology, Inc.,* No. C 02-03942 MHP, 2004 WL 135861, at *4 (N.D. Cal. Jan. 22, 2004), the court recognized the situation where a moving party sought to "squeeze consideration of the [newly asserted] patent into the pre-existing discovery and trial timetable" for other patents as a "***paradigmatic example of prejudice*** to the opposing party." (emphasis added).  *See also id.* ("In order to fully litigate the newly presented claims, IXYS would need to conduct a further round of typical patent discovery, undoubtedly involving the consultation of experts and the review of factual information relevant to both the construction of the patent's claims and its validity, in addition to the principal question of infringement.").  While the *IXYS* court ultimately allowed the assertion of the additional patent (a parent to an already-asserted patent), it did so only on the conditions that the moving party pay the opposing party's costs in conducting additional duplicative discovery and, importantly, that the parties submit a schedule allowing the nonmoving party "the full measure of time" prescribed under the Local Rules.  *Id.* at *5.

There is no reason why a different result should occur here, except for the fact that LGD adamantly opposes any change in the schedule. Faced with this stark "either/or" scenario, the Court must deny LGD's motion to amend to avoid prejudice to CMO.

## B.    LGD Unduly Delayed In Asserting The '569 Patent

Although the prejudice factor alone provides sufficient grounds to deny LGD's motion, LGD's undue delay provides another basis to deny LGD's motion. Throughout its motion, LGD for the most part carefully states that it recently "*confirmed*" infringement, but it never says that it could not have done so earlier, nor that it diligently attempted to determine infringement earlier but could not do so because of lack of information. *See, e.g.,* Opening Brief at 1; 4; 5; 8. The closest statement LGD makes is at page 8 of its brief, where it asserts that it "could not have, consistent with Rule 11 requirements, brought a claim any earlier than it did." *Id.* at 8. In making these statements, LGD claims to have "*confirmed*" infringement after reviewing CMO's May 15, 2008 production of documents, but fails to identify any specific documents that allegedly enabled it to claim infringement now.[5]

By not including this basic information, LGD is effectively trying to shift the burden to CMO to explain why LGD could have asserted the '569 patent earlier. This is improper. *See, e.g., Samick Music Corp. v. Delaware Music Indus., Inc.,* Civ. A. No. 91-23-CMW, 1992 WL 39052, at *6-7 (D. Del. Feb. 12, 1992) ("Initially it is the movant's burden to articulate some satisfactory explanation why amendment should be permitted.") (rejecting contention that moving party recently "confirmed" facts for consumer fraud claim, as the "essential facts to bring the counterclaim" were known earlier).

---

[5]    Moreover, LGD's vague assertion that it recently "confirmed" infringement based on the May 2008 production is all the more tenuous given that CMO also made productions of technical documents months earlier and that LGD asserted the '569 patent against AUO a year earlier, before the production of similar technical information.

Moreover, the plain facts demonstrate that LGD could have asserted the '569 patent from the outset. The '569 patent, and in particular independent claim 25, claims a particular arrangement of elements in LCD pixels, including source, drain, and gate "electrodes," to reduce pixel flickering. As explained in the accompanying declaration of Rung-Nan Lu, the presence or absence of these elements and their specific arrangement are visible under even a standard optical microscope. *See* Lu Decl. ¶ 3-4. LGD could have satisfied its Rule 11 obligations for asserting the '569 patent, without the benefit of any formal discovery, simply by analyzing CMO's devices in this way.[6]

Indeed, these are the precise steps LGD took in analyzing CMO's purported infringement of another LGD patent, the '274 patent, which LGD first asserted against CMO over a year ago on June 11, 2007. Case No. 07-357, D.I. 73. In an exhibit to its November 7, 2007 infringement contentions in the Texas action, LGD included a detailed photographic analysis of a CMO product in its claim chart for LGD's '274 patent. The analysis includes an "optical microscopy" photograph, reproduced on the following page, which shows the arrangement of relevant features relating to the '569 patent, with the "source electrode" and "drain electrode" clearly labeled. *See* Ex. B at A-9 (preliminary infringement contentions and '274 patent exhibit).

---

[6] Further to this point, two of the patents LGD asserted in its initial December 2006 complaint – United States Patent Nos. 4,624,737 and 5,825,449 – would have required LGD to conduct more detailed analyses of CMO's product features, as both patents claim a specific arrangement of layers of semiconductors used to make the tiny transistors in LCD products. For example, on its face, the '449 patent claims a particular arrangement encompassing the main features in the '569 patent, including a substrate, gate electrode, insulating or insulative layer, semiconductor layer, drain electrode, and source electrode. *See* Ex. E (excerpted claims from the '569 and '449 patents, with similar terms highlighted).



Moreover, LGD's tests for the '274 patent also entailed use of more sophisticated equipment that is not necessary for observing the features claimed in the '569 patent and the presence or absence of their claimed arrangement, including, for example, use of a scanning electron microscope. *See id.* at A-2 – A-9. LGD does not even attempt to explain why it was able to assert the '274 patent and conduct the associated, more detailed analyses, while being unable to assert the '569 patent against CMO until the day before the parties identified claim terms for construction. Consequently, LGD's bald assertion that it could not have asserted the '569 patent until after reviewing CMO's May 2008 production fails.

Courts have denied belated attempts to amend pleadings to add new claims of patent infringement for this very reason. For example, in *Kinberg v. Colorforms*, Nos. 89 Civ. 1156 (PKL), 89 Civ. 1292 (PKL), 1991 WL 107439, at *2 (S.D.N.Y. June 10, 1991), the court denied leave to amend to assert a patent a year after the patent issued, where the plaintiff, like LGD here, did not earlier conduct routine testing to determine if a product infringed. *See id.* ("According to Kinberg, the reason for the delay was that the infringement was not discovered until he 'recently' purchased a Colorforms luminescent slate and subjected it to an 'accelerated aging test' .... [I]n view of the ongoing litigation between the parties, it is difficult to imagine

that the plaintiff was unaware of the defendant's use of the devices employing the luminescent vinyl film."). *See also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3rd Cir. 1993) ("Most of the facts were available to plaintiff Savin before she filed her original complaint in 1986, and probably all of them were available when she amended her complaint in May and August of 1987. . . . Her delay was unreasonable.") (upholding denial of leave to amend).

Moreover, LGD provides no applicable legal authority to justify its delay in seeking to assert the '569. Indeed, LGD's reliance on *CenterForce Technologies, Inc. v. Austin Logistics Inc.*, No. 99-243 (MMS), 2000 WL 652943 (D. Del. Mar. 10, 2000), undercuts LGD's position. While LGD makes much out of the fact that particular case deadlines had passed in *CenterForce,* the court focused its undue delay inquiry on whether the plaintiff "was in possession of sufficient information upon which to base a claim of infringement." *Id.* at *4. The court credited testimony that the plaintiff *could not possibly* have ascertained infringement of the defendant's proprietary call scheduling system prior to conducting depositions of the defendant's corporate officers. *Id.* at *4-5 (crediting testimony that publicly available information did not indicate the relevant product features and that the defendant refused to produce proprietary product information). Unlike LGD here, the plaintiff in *CenterForce* did not have the ability to perform routine testing and analysis on its opponent's products to ascertain infringement.[7]

### C.    LGD's Unexplained Delay And Last-Minute Assertion Of The '569 Patent Demonstrates Its Bad Faith

LGD's conduct evidences its bad faith. LGD did not raise the '569 patent until the start of claim construction proceedings, waiting until *the day before terms for construction* were to be

---

[7] The only other case cited by LGD with respect to its delay is *Trueposition, Inc. v. Allen Telecom, Inc.*, Civ. No. 01-923 (GMS), 2002 WL 1558531 (D. Del. July 26, 2002). However, in *Trueposition,* the motion was filed six months after the complaint. The parties did not even raise the issue of undue delay and "[t]herefore, the court [did] not consider th[is] factor[]." *Id.* at *1, n.1.

exchanged and *over eighteen months* after it asserted patents that required similar though more complex infringement analyses. *See, e.g.,* Ex. E (excerpted claims from the '569 patent and the '449 patent, which was asserted on December 1, 2006, with similar terms highlighted). LGD's delay ensured that it only had to negotiate terms for construction with one opponent, AUO, effectively locking CMO out of the process and cementing CMO's one-year disadvantage.

While LGD baldly asserts that it sought to assert the '569 patent "as soon as" it "learned" that CMO allegedly infringed, Opening Brief at 7, LGD's strategic delay, refusal to identify any accused products, and refusal to change any briefing deadlines belies this statement. Instead, the facts suggest that LGD delayed asserting the '569 patent to gain tactical advantage, waiting until precisely the eve of claim construction despite its ability to assert the patent from the outset. This is the essence of bad faith. *See Aloe Vera of Am., Inc. v. U.S.*, 233 F.R.D. 532, 535 (D. Ariz. 2005) (finding bad faith where plaintiffs have "shown no reason why they could not have at least sought leave to amend" before a major case event, witness depositions, "other than to gain an unfair litigation advantage"); *GSS Prop., Inc. v. Kendale Shopping Ctr., Inc.,* 119 F.R.D. 379, 381 (M.D.N.C. 1988) (noting that "when a plaintiff withholds his true position from his opponent, especially when done for some ulterior purpose, the Court may view the action as having a bad faith motive") (denying leave to amend where motion was filed three months after the complaint).

In its motion, LGD also devotes substantial ink to its argument that assertion of the '569 patent serves judicial economy. But this argument is a red herring. If LGD were truly concerned about judicial economy, then it could have proposed a case schedule allowing the full and fair participation of CMO in claim construction. *Cf. IXYS Corp. v. Advanced Power Tech., Inc.,* No. C 02-03942 MHP, 2004 WL 135861, at *4 (N.D. Cal. Jan. 22, 2004) (rejecting judicial economy

argument because to "force" the defendant to adhere to the existing schedule "would be to penalize [the defendant] for [the plaintiff's] own failures"). CMO might have been amenable to the addition of the '569 patent on less prejudicial terms, for example, if all upcoming case deadlines were moved back two months as recently requested by AUO, see D.I. 335, and CMO was afforded ample time to negotiate disputed '569 patent claim terms against it and propose the associated claim constructions. However, LGD has adamantly refused any accommodation. LGD's eleventh hour assertion of the '569 patent is an exercise in tactical gamesmanship that will inflict maximum prejudice on CMO. LGD's tactics should not be condoned by the Court.

## V.    CONCLUSION

LGD's motion to assert a new patent against CMO would substantially prejudice CMO by forcing it to defend against a new patent in the midst of ongoing claim construction. The other parties have had a year's head start in researching, advocating, and negotiating claim constructions for the patent, while LGD first mentioned that it would assert the '569 patent against CMO the day before disputed claim terms were due. The sole purported basis for LDG's undue delay in asserting the '569 patent, CMO's May 15, 2008 production, is facially untenable, as a simple analysis of CMO's products would have revealed their relevant features. Under these circumstances, the Court should deny LGD's motion.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Jonathan S. Kagan
Alexander C. D. Giza
Adam Hoffman
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA 90067
(310) 277-1010

By:  /s/ Philip A. Rovner
     Philip A. Rovner (#3215)
     Hercules Plaza, 6th Floor
     P. O. Box 951
     Wilmington, DE  19899
     (302) 984-6000
     provner@potteranderson.com

Dated:  July 18, 2008
875056 / 31068

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### <u>CERTIFICATE OF SERVICE</u>

I, Philip A. Rovner, hereby certify that on July 18, 2008, the within document was

filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to

the following; that the document was served on the following counsel as indicated; and that the

document is available for viewing and downloading from CM/ECF.

<table>
<tr><td>

**BY CM/ECF, HAND DELIVERY AND E-MAIL**

Richard E. Kirk, Esq.
Ashley Blake Stitzer, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardfirm.com
astitzer@bayardfirm.com

</td><td>

**BY CM/ECF, HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
kpascale@ycst.com

</td></tr>
</table>

I hereby certify that on July 18, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

<table>
<tr><td>

Gaspare J. Bono, Esq.
Matthew T. Bailey, Esq.
Lora A. Brzezynski, Esq.
Cass W. Christenson, Esq.
R. Tyler Goodwyn, IV, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
gbono@mckennalong.com
mbailey@mckennalong.com
lbrzezynski@mckennalong.com
cchristenson@mckennalong.com
tgoodwyn@mckennalong.com

</td><td>

Vincent K. Yip, Esq.
Peter J. Wied, Esq.
Jay C. Chiu, Esq.
Katherine F. Murray, Esq.
Ms. Denise Esparza
Paul Hastings Janofsky & Walker LLP
515 South Flower Street
Los Angeles, CA 90071
vincentyip@paulhastings.com
peterwied@paulhastings.com
jaychiu@paulhastings.com
katherinemurray@paulhastings.com
deniseesparza@paulhastings.com

</td></tr>
</table>

Ron E. Shulman, Esq.
Julie M. Holloway, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050
rshulman@wsgr.com
jholloway@wsgr.com

M. Craig Tyler, Esq.
Brian D. Range, Esq.
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759
ctyler@wsgr.com
brange@wsgr.com


*/s/ Philip A. Rovner*
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

2

# EXHIBIT A

**Lieberman, Debbie**

| | |
|---|---|
| **From:** | ~Brzezynski, Lora |
| **Sent:** | Monday, June 30, 2008 8:12 AM |
| **To:** | Giza, Alexander; Hoffman, Adam; ~Chiu, Jay; ~Range, Brian; ~Tyler, M. Craig; ~Holloway, Julie; ~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; Kagan, Jonathan; #CMO/LPL [Int]; ~Platt, Christian; ~Warren, Joe; provner@potteranderson.com |
| **Cc:** | ~Bono, Gaspare; ~Goodwyn, Tyler; ~Christenson, Cass; ~Lomas, John; ~Kirk, Richard |
| **Subject:** | RE: '569 Patent |

Dear Alex:

We are disappointed that CMO has chosen to oppose LG Display's request to amend its answer more than one month prior to the deadline for amending pleadings. It is also unfortunate that CMO has chosen to attack LG Display and accuse it of improper tactics. LG Display has acted in good faith throughout this case and has repeatedly tried to work out issues and disputes with all parties. Further, it is LG Display that has and continues to meet its discovery obligations, producing thousands and thousands of pages of meaningful discovery and its highly sensitive data while both CMO and AUO have failed to match LG Display's efforts and production quality. Indeed, LG Display waited until it had a good faith basis to assert the '569 Patent against CMO, and we asserted the patent promptly after discovering infringement by CMO.

LG Display suggested a very reasonable accommodation to CMO to ensure it has ample opportunity to propose terms for construction from that patent and propose constructions during the claim construction process.
Specifically, we extended to Friday, June 27th CMO's time to identify terms for the '569 Patent, although both LG Display and AUO identified its terms on Tuesday, June 24th. It is unfortunate that CMO chose to refuse that extension and characterize it as unreasonable. Please be advised that given CMO's failure to identify terms for the '569 Patent on Friday or request any other reasonable extension, LG Display reserves the right to assert that CMO has waived its right to propose terms for that Patent. We also offered CMO an extension to July 22, 2008 for CMO to propose its constructions for terms in the '569 Patent. This would have given CMO considerable advantage given that both LG Display and AUO will have to propose its constructions on Thursday, July 17th. It is also unfortunate that CMO has rejected this proposal from LG Display.
By rejecting LG Display's offered extensions, CMO can only look to itself as the basis for any prejudice it will claim to have suffered.

As you well know, analysis of infringement and noninfringement is not necessary for claim construction. Thus, your suggestion that CMO is disadvantaged in not having time to complete this analysis is simply a red herring.

We will proceed to file our motion to amend.

Best regards,

Lora

Lora A. Brzezynski, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7239
(202) 496-7756 (Facsimile)
lbrzezynski@mckennalong.com

-----Original Message-----
From: Giza, Alexander [mailto:AGiza@irell.com]
Sent: Wednesday, June 25, 2008 8:37 PM
To: Brzezynski, Lora; Hoffman, Adam; ~Chiu, Jay; ~Range, Brian; ~Tyler, M. Craig;

1

~Holloway, Julie; ~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw,
John; ~Pascale, Karen; Kagan, Jonathan; #CMO/LPL [Int]; ~Platt, Christian; ~Warren, Joe
Cc: Bono, Gaspare; Goodwyn, Tyler; Christenson, Cass; Lomas, John
Subject: RE: '569 Patent

Dear Lora:

This responds to your email from Monday seeking CMO's agreement to allow LGD to amend its
complaint to assert the '569 patent against CMO.

As you point out in your email, LGD added the '569 patent against AUO in August 2007, over
10 months ago.  For the past 10 months LGD has had the ability to raise the '569 patent
with respect to CMO but has not done so.  Your email does not provide the reason for LGD's
delay in raising the '569 patent against CMO, nor have you responded to CMO's request for
such information.  At a minimum, before we can even consider your request, we need you to
explain why LGD waited so long -- the day before the required exchange of claim
construction terms -- to attempt to assert the '569 against CMO.

Under the circumstances, LGD's request to assert the '569 patent against CMO at this
juncture in the case, coupled with LGD's refusal to consider a reasonable schedule
accommodation for claim construction if the '569 patent were to be added against CMO,
smacks of tactical gamesmanship.
Your suggestion that CMO should propose '569 claim terms for construction within 4 days of
your email is frankly ludicrous, and we do not see how you could even think such a
proposal was close to reasonable.  As you know, claim construction is based on a detailed
evaluation of the patent, the file history, the prior art, and any relevant extrinsic
evidence, all of which needs to be analyzed and studied in extensive detail by persons
with technical expertise.  Asking that this process be carried out in four days, much less
four weeks, in parallel with the busy claim construction period is plainly unreasonable.
Your further suggestion today that CMO get an "extra"
week to propose its constructions for the '569 patent terms is similarly unreasonable.  By
contrast, LGD and AUO have had over 10 months to conduct their analyses.

Indeed, LGD's "litigation-by-ambush" tactics appear calculated to inflict maximum
prejudice on CMO by essentially freezing CMO out of meaningful participation in the claim
construction process.  By raising the '569 patent at such a late date, LGD is essentially
attempting to force CMO to accept whatever claim terms and constructions are
proposed/negotiated by LGD and AUO, without giving CMO the ability to fully research and
analyze the claim construction issues.

LGD has not even identified the accused products -- information that has been available
for all other patents in suit by now, and which LGD clearly has in its possession but has
not shared -- further disadvantaging CMO.  LGD's infringement allegations are also vague.
LGD accuses CMO of infringing "at least one of" claims 25 and 31-34.  Is LGD planning to
assert all of these claims and, if not, which claims does LGD actually plan on asserting?

Given LGD's unreasonable demand to add the '569 patent at the eleventh hour, without
explanation, the day before exchanging claim terms, without any reasonable accommodation
to the schedule, CMO will oppose LGD's attempt to amend its complaint to assert the '569
patent against CMO.

We are disappointed that LGD has acted so unreasonably on this issue.
As always, we remain open to discussing the issue with LGD if it reconsiders its position.

Sincerely,
Alex

Alexander C.D. Giza
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: 310-203-7143
Facsimile:  310-203-7199


-----Original Message-----
From: Brzezynski, Lora [mailto:lbrzezynski@mckennalong.com]

Sent: Monday, June 23, 2008 7:00 AM
To: Hoffman, Adam; ~Chiu, Jay; ~Range, Brian; ~Tyler, M. Craig; ~Holloway, Julie; ~Yip,
Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen;
Kagan, Jonathan; #CMO/LPL [Int]; ~Platt, Christian; ~Warren, Joe; Giza, Alexander
Cc: ~Bono, Gaspare; ~Goodwyn, Tyler; ~Christensson, Cass; ~Lomas, John
Subject: '569 Patent

> Dear Adam:
>
> As you know, LG Display has asserted its '569 Patent against AUO.  LG
> Display first asserted this patent in its Answer to AU Optronic
> Corporation's Amended Counterclaims and Additional Counterclaims filed

> on August 7, 2007.  LG Display now intends to amend that Answer and
> assert the '569 Patent against CMO and CMO USA (hereinafter
> collectively "CMO").  As the deadline in the Scheduling Order to amend

> the pleadings is not until August 1, 2008, we do not believe that CMO
> has any valid basis to assert any legitimate objection to such an
> amendment.  Accordingly, please confirm that CMO will consent to LG
> Display amending its August 7, 2007 Answer.  For your convenience, we
> have attached to this e-mail a proposed redline of LG Display's Second

> Amended Answer. If CMO does not consent, we will be forced to file a
> motion to amend. We would like to avoid bothering the Court with such
> a motion given that the deadline for amendment is not until August. We

> look forward to your cooperation.
>
> LG Display asserts that CMO infringes at least one of claims 25, 31,
> 32, 33, and 34 of the '569 Patent.  Pursuant to the Stipulation and
> Order modifying the Scheduling Order, all parties are to exchange a
> list of terms believed to require construction by Tuesday, June 24,
> 2008. To avoid any argument by CMO that it has not had sufficient time

> to identify terms for the '569 Patent by the deadline of Tuesday, LG
> Display will agree to extend CMO's time to identify terms for the '569

> Patent (but not any other patents) until Friday, June 27, 2008.  Given

> that both LG Display and AUO will identify terms they each believe
> require construction for the '569 Patent on Tuesday (as well as all
> other patents asserted in the case), CMO will have the benefit of
> seeing the terms identifed by LG Display and AUO as to the '569
> Patent. If CMO wants to identify any additional terms relating to the
> '569 Patent, it can do so by Friday.
>
> We look forward to your prompt response.
>
> Best regards,
>
> Lora
>
>
>  <<DC-#50554579-v1-Amended_Pleading_to_Add_'569_to_CMO.DOC>>

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long &
Aldridge LLP, and are intended solely for the use of the named recipient or recipients.
This e-mail may contain privileged attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an intended recipient is strictly
prohibited. If you are not a named recipient, you are prohibited from any further viewing
of the e-mail or any attachments or from making any use of the e-mail or attachments. If
you believe you have received this e-mail in error, notify the sender immediately and
permanently delete the e-mail, any attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or attachments.

ccmailg.irell.com made the following annotations
---------------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged,
confidential and/or inside information.  Any distribution or use of this communication by
anyone other than the intended recipient(s) is strictly prohibited and may be unlawful.
If you are not the intended recipient, please notify the sender by replying to this
message and then delete it from your system. Thank you.




---------------------------------------------------------------------


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long &
Aldridge LLP, and are intended solely for the use of the named recipient or recipients.
This e-mail may contain privileged attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an intended recipient is strictly
prohibited. If you are not a named recipient, you are prohibited from any further viewing
of the e-mail or any attachments or from making any use of the e-mail or attachments. If
you believe you have received this e-mail in error, notify the sender immediately and
permanently delete the e-mail, any attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or attachments.

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| CHI MEI OPTOELECTRONICS CORPORATION, a Taiwan Corporation,<br><br>Plaintiff,<br><br>v.<br><br>LG.PHILIPS LCD CO., LTD., a Korean Corporation, and LG.PHILIPS LCD AMERICA, INC., a California Corporation,<br><br>Defendants. | Civil Action No. 2:07-cv-00176-TJW<br><br>**JURY TRIAL DEMANDED** |
| LG.PHILIPS LCD CO., LTD., and LG.PHILIPS LCD AMERICA, INC.,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>CHI MEI OPTOELECTRONICS CORPORATION; and CHI MEI OPTOELECTRONICS USA, INC., a Delaware Corporation,<br><br>Counterclaim Defendants. | **JURY TRIAL DEMANDED** |

## LG.PHILIPS LCD CO., LTD.'S
## DISCLOSURE OF ASSERTED CLAIMS AND
## INFRINGEMENT CONTENTIONS

Pursuant to the Court's October 23, 2007 Early Discovery Order (Docket #37) and in compliance with Local Patent Rules 3-1 and 3-2, Defendant LG.Philips LCD Co., Ltd. ("LG.Philips"), by and through its undersigned counsel, hereby submits its Disclosure of Asserted Claims and Infringement Contentions for U.S. Patent Nos. 5,905,274 ("the '274 patent"), 6,815,321 ("the '321 patent"), 7,176,489 ("the '489

patent"), 7,218,374 ("the '374 patent"), and 6,803,984 ("the '984 patent"); and identifies

Document Production Accompanying Disclosure available for inspection and copying.

As discovery has not commenced, the following disclosures are based on

LG.Philips' current information and belief.  LG.Philips reserves the right to amend or

supplement its disclosures based on additional information obtained through formal

discovery or other means from counterclaim-defendants Chi Mei Optoelectronics Corp.

and Chi Mei Optoelectronics USA, Inc. (collectively "CMO").  Upon discovery of

CMO's products and processes, LG.Philips reserves the right to revise the allegations

contained herein, assert further claims, and identify additional Accused Instrumentalities.

## P.R. 3-1 ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS

1.    **U.S. Patent No. 5,905,274**

(a)    LG.Philips asserts that CMO's Accused Instrumentalities infringe claims 1,

2, 3, 4, 5, and 6 of the '274 patent.  Based on information presently available to it,

LG.Philips asserts CMO's LCD modules directly infringe these claims or CMO indirectly

infringes these claims through inducement by the manufacture, offer for sale, sale, or

importation into the United States of the Accused Instrumentalities.

(b)    LG.Philips asserts that CMO's LCD modules V201V1-T01, V260B1-L01

and V420H1-L07 infringe each of the asserted claims of the '274 patent.  Further,

LG.Philips currently believes that at least the following reasonably similar CMO modules

infringe the asserted claims of the '274 patent:  M170E5, M170E7, M190A1-L02,

M190A1-L07, M190E5-L0E, M190Z1-L01, M201P1-L01, M220Z1-L03, M220Z1-L05,

M220Z2-L01, M240J1, M260J1, M260J2-L07, M300F1, N070Y1, N121I3, N121I6,

N121I7, N121X5, N133I1, N133I2, N133I5, N141I3, N141XA, N150P5, N150X7,

N154C1, N154C3, N154C4, N154C5, N154C6, N154I2, N154I4, N154I5, N154Z1,

N170C2, N170C3, N201J4-L01, V150V1, V201B1, V201V1, V201V2, V230W1,

V260B1, V315B1, V320B1, V320H1, V370H1, V420B1, V420H1, V470H1, V470K1,

V520H1, V562D1, V570H1, G070Y1, G070Y3, G104V1, G104X1, G121S1, G121X1,

G133I1, G150X1, F8980, F8921, R208R3, F8961, R181E1, R181E2, R196U1, R196U2,

R190E1, F8588, F8598, R208R1, R208R2, R208R3, R213T1, F01833-01U, F02016-01U,

F02017-01U, F02218-01U, F02219-01U, F02402-02D, F02412-01U, F02505-02U,

F02804-01U, F03506-01D, C04301-01D, F05002-01D, F056G1-T02, C05701-02D,

C05702-01U, C070GA-1TD, C07011-01D, C08007-01D, C08501-02D, F0A2G1-T04.

Further, LG.Philips believes CMO's reasonably similar LCD products made since at least

August 13, 2001, likewise infringe each asserted claim of the '274 patent.

(c)    Attached as Exhibit A is LG.Philips' chart that illustrates infringement of

each asserted claim by CMO's LCD module V260B1-L01. Reverse engineering analysis

of CMO's LCD modules V201V1-T01 and V420H1-L07 disclose infringement of the

claims by their same corresponding structures. Further, LG.Philips believes all other

CMO Accused Instrumentalities infringe the asserted claims of the '274 patent in a

reasonably similar manner.

(d)    LG.Philips asserts that each element of each asserted claim is literally

present within each of the Accused Instrumentalities. To the extent one or more elements

are found not to be literally present, based on, for example, claim constructions,

LG.Philips contends that element is present under the Doctrine of Equivalents as any

differences between the claim element at issue and the corresponding element of the

Accused Instrumentality is insubstantial because, *inter alia*, the Accused Instrumentality

3

performs substantially the same function in substantially the same way to give substantially the same result.

(e)    LG.Philips asserts that each asserted claim of the '274 patent is entitled to a foreign priority date of March 4, 1997 based on Korean patent application number 97-7010.

(f)    LG.Philips contends that its below listed products incorporate the invention of each asserted claim of the '274 patent: LB012Q01, LB017Q01, LB018Q01, LB019Q01, LB019Q02, LB020Q01, LB040Q02, LB040Q03, LB064V02, LB065W01, LB065WQ2, LB065WQ3, LB070W02, LB070WV1, LB080W03, LB080WV3, LB080WV4, LB102WV1, LB104S01, LB104V03, LB121S02, LB121S03, LB121S1, LB121SA, LB150H01, LB165H1, LB190E01, LB209F1, LB216H1, LC104S1, LC130V01, LC150X01, LC150X02, LC151X01, LC171W03, LC200WX1, LC201V02, LC201V1, LC230W01, LC230W02, LC230WX3, LC260W01, LC300W01, LC300W02, LC320WX2, LC320WX4, LC370W01, LC370WX3, LC420W02, LC420WU1, LC420WU2, LC420WU3, LC420WX2, LC420WX3, LC420WX4, LC420WX5, LC420WX6, LC470WU1, LC470WU4, LC550W01, LCA4SE01A, LH105J01, LH117Q01, LH118Q01, LH120J01, LH130Q01, LH180Q01, LH186Q01, LH186Q02, LH200Q01, LH200Q02, LH200Q03, LH220Q01, LH220Q02, LH220Q03, LH283Q01, LH350Q01, LM150X04, LM150X05, LM150X06, LM150X07, LM150X08, LM150X1, LM150X2, LM151X05, LM151X1, LM151X1(S), LM151X13, LM151X2, LM151X23, LM151X24, LM151X2A, LM151X3, LM151X32, LM151X4, LM157E2, LM171W01, LM171W02, LM181E04, LM181E05, LM181E06, LM181E1, LM181E3, LM181ES, LM190E01, LM190E02, LM190E03, LM190E04, LM190E05, LM190E08, LM201U02,

4

LM201U03, LM201U04, LM201U05, LM201U1, LM201WE2, LM220W1, LM220W1B,

LM230W01, LM230W02, LM230WU3, LM240WU2, LM260WU1, LM300WQ2,

LP064V1, LP104S06, LP104S5, LP104V2, LP104V2A, LP104X1, LP121S2, LP121S3,

LP121S4, LP121SA, LP121SB, LP121SH, LP121SL, LP121SP, LP121SQ, LP121X04,

LP121X05, LP121X1, LP121X2, LP121XQ, LP133WX1,LP133X09, LP133X1,

LP133X11, LP133X2, LP133X3, LP133X4, LP133X5, LP133X6, LP133X7, LP133X8,

LP140WX1, LP141E04, LP141E05, LP141E2, LP141E3, LP141WP1, LP141WX1,

LP141X10, LP141X11, LP141X12, LP141X13, LP141X14, LP141X2, LP141X3,

LP141X4, LP141X5, LP141X6, LP141X7, LP141X8, LP141XA, LP141XB, LP150E01,

LP150E02, LP150E04, LP150E05, LP150E06, LP150E07, LP150E1, LP150U03,

LP150U06, LP150U1, LP150X04, LP150X05, LP150X06, LP150X08, LP150X09,

LP150X1, LP150X10, LP150X12, LP150X2, LP151X1, LP152W02, LP152W1,

LP154W01, LP154W02, LP154W1, LP154WE2, LP154WP2, LP154WU1, LP157E1,

LP171W01, LP171W02, LP171WE2, LP171WP3, LP171WP4, LP171WP5, LP171WP6,

LP171WP7, LP171WU1, LP171WX2, LPX1AJ2QT, LS150X03, LS150X05, LS1700,

LT034Q01, LT034Q1, LT037Q01, LT045H1, LT046H01, LT050H1, LT050V01,

LT055H01, LT055H1, LT060V01, LT060V1, LT064V01, LT064V1, LT065W01,

LT070W02, LT071V01, LT071V1, LT084S1, LT088V1, LT089S01, LT089S1,

LT092W01, LT104V1, LT104V2, LT104X02.

## 2.    U.S. Patent No. 6,815,321

(a)    LG.Philips asserts that CMO's Accused Instrumentalities infringe claims 7,

8, 9, 10, 12, 14, 16, 17, 18, 19, 20, and 22 of the '321 patent. Based on information

presently available to it, LG.Philips asserts CMO's LCD modules directly infringe these

5

claims or CMO indirectly infringes these claims through inducement by the manufacture,

offer for sale, sale, or importation into the United States of the Accused Instrumentalities.

   **(b)**   LG.Philips asserts that CMO's LCD modules V201V1-T01 and

V260B1-L01 infringe each of the asserted claims of the '321 patent and CMO's LCD

module V420H1-L07 infringes each of the asserted claims, excluding claim 19, of the

'321 patent. Further, LG.Philips currently believes that at least the following reasonably

similar CMO modules infringe the asserted claims of the '321 patent: M170E5, M170E7,

M190A1-L02, M190A1-L07, M190E5-L0E, M190Z1-L01, M201P1-L01, M220Z1-L03,

M220Z1-L05, M220Z2-L01, M240J1, M260J1, M260J2-L07, M300F1, N070Y1,

N121I3, N121I6, N121I7, N121X5, N133I1, N133I2, N133I5, N141I3, N141XA,

N150P5, N150X7, N154C1, N154C3, N154C4, N154C5, N154C6, N154I2, N154I4,

N154I5, N154Z1, N170C2, N170C3, N201J4-L01, V150V1, V201B1, V201V1, V201V2,

V230W1, V260B1, V315B1, V320B1, V320H1, V370H1, V420B1, V420H1, V470H1,

V470K1, V520H1, V562D1, V570H1, G070Y1, G070Y3, G104V1, G104X1, G121S1,

G121X1, G133I1, G150X1, F8980, F8921, R208R3, F8961, R181E1, R181E2, R196U1,

R196U2, R190E1, F8588, F8598, R208R1, R208R2, R208R3, R213T1, F01833-01U,

F02016-01U, F02017-01U, F02218-01U, F02219-01U, F02402-02D, F02412-01U,

F02505-02U, F02804-01U, F03506-01D, C04301-01D, F05002-01D, F056G1-T02,

C05701-02D, C05702-01U, C070GA-1TD, C07011-01D, C08007-01D, C08501-02D,

F0A2G1-T04. Further, LG.Philips believes CMO's reasonably similar LCD products

made since at least November 9, 2004, likewise infringe each asserted claim of the '321

patent.

(c)     Attached as Exhibit B is LG.Philips' chart that illustrates infringement of each asserted claim by CMO's LCD module V260B1-L01. Reverse engineering analysis of CMO's LCD modules V201V1-T01 and V420H1-L07 disclose infringement of the claims by their same corresponding structures. Further, LG.Philips believes all other CMO Accused Instrumentalities infringe the asserted claims of the '321 patent in a similar manner.

(d)     LG.Philips asserts that each element of each asserted claim is literally present within each of the Accused Instrumentalities or that the Accused Instrumentality is made using a method that literally meets each element of each asserted claim. To the extent one or more elements are found not to be literally present or met, based on, for example, claim constructions, LG.Philips contends that element is present under the Doctrine of Equivalents as any differences between the claim element at issue and the corresponding element of or method of manufacturing the Accused Instrumentality is insubstantial because, *inter alia*, the Accused Instrumentality or method of manufacturing the Accused Instrumentality performs substantially the same function in substantially the same way to give substantially the same result.

(e)     LG.Philips asserts that each asserted claim of the '321 patent is entitled to a foreign priority date of March 4, 1997 based on Korean patent application number 97-7010; and a U.S. priority date of August 27, 1997 based on U.S. application number 08/918,119.

(f)     LG.Philips contends that its below listed products incorporate the invention of each asserted claim of the '321 patent: LB012Q01, LB017Q01, LB018Q01, LB019Q01, LB019Q02, LB020Q01, LB040Q02, LB040Q03, LB064V02, LB065W01,

7

LB065WQ2, LB065WQ3, LB070W02, LB070WV1, LB080W03, LB080WV3,

LB080WV4, LB102WV1, LB104S01, LB104V03, LB121S02, LB121S03, LB121S1,

LB150H01, LB165H1, LB190E01, LB209F1, LB216H1, LC104S1, LC130V01,

LC150X01, LC150X02, LC151X01, LC171W03, LC200WX1, LC201V02, LC201V1,

LC230W01, LC230W02, LC230WX3, LC260W01, LC300W01, LC300W02,

LC320WX2, LC320WX4, LC370W01, LC370WX3, LC420W02, LC420WU1,

LC420WU2, LC420WU3, LC420WX2, LC420WX3, LC420WX4, LC420WX5,

LC420WX6, LC470WU1, LC470WU4, LC550W01, LH105J01, LH117Q01, LH118Q01,

LH120J01, LH130Q01, LH180Q01, LH186Q01, LH186Q02, LH200Q01, LH200Q02,

LH200Q03, LH220Q01, LH220Q02, LH220Q03, LH283Q01, LH350Q01, LM150X04,

LM150X05, LM150X06, LM150X07, LM150X08, LM150X1, LM150X2, LM151X05,

LM151X1, LM151X2, LM151X3, LM151X4, LM157E2, LM171W01,LM171W02,

LM181E04, LM181E05, LM181E06, LM181E1, LM181E3, LM181ES, LM190E01,

LM190E02, LM190E03, LM190E04, LM190E05, LM190E08, LM201U02, LM201U03,

LM201U04, LM201U05, LM201U1, LM201WE2, LM220W1, LM220W1B,

LM220WE1, LM230W01, LM230W02, LM230WU3, LM240WU2, LM260WU1,

LM300WQ2, LP064V1, LP104S06, LP104S5, LP104V2, LP104V2A, LP104X1,

LP121S2, LP121S3, LP121S4, LP121SA, LP121SB, LP121SH, LP121SL, LP121SP,

LP121X04, LP121X05, LP121X1, LP121X2, LP121XQ, LP133WX1, LP133X09,

LP133X2, LP133X4, LP133X5, LP133X6, LP133X7, LP133X8, LP140WX1, LP141E04,

LP141E05, LP141E2, LP141E3, LP141WP1, LP141WX1, LP141X10, LP141X11,

LP141X12, LP141X13, LP141X14, LP141X2, LP141X3, LP141X4, LP141X5,

LP141X6, LP141X7, LP141X8, LP141XA, LP141XB, LP150E01, LP150E02,

8

LP150E04, LP150E05, LP150E06, LP150E07, LP150E1, LP150U03, LP150U06,

LP150U1, LP150X04, LP150X05, LP150X06, LP150X08, LP150X09, LP150X1,

LP150X10, LP150X12, LP150X2, LP151X1, LP152W02, LP152W1, LP154W01,

LP154W02, LP154W1, LP154WE2, LP154WP2, LP154WU1, LP157E1, LP171W01,

LP171W02, LP171WE2, LP171WP3, LP171WP4, LP171WP5, LP171WP6, LP171WP7,

LP171WU1, LP171WX2, LPX1AJ2QT, LS150X03, LS150X05, LS1700.

3.    **U.S. Patent No. 7,218,489**

(a)    LG.Philips asserts that CMO's Accused Instrumentalities infringe claims 1,

2, and 3 of the '489 patent. Based on information presently available to it, LG.Philips

asserts CMO's LCD modules directly infringe these claims or CMO indirectly infringes

these claims through inducement by the manufacture, offer for sale, sale, or importation

into the United States of the Accused Instrumentalities.

(b)    LG.Philips asserts that CMO's LCD modules V201V1-T01, V260B1-L01

and V420H1-L07 infringe each of the asserted claims of the '489 patent. Further,

LG.Philips currently believes that at least the following reasonably similar CMO modules

infringe the asserted claims of the '489 patent: M170E5, M170E7, M190A1-L02,

M190A1-L07, M190E5-L0E, M190Z1-L01, M201P1-L01, M220Z1-L03, M220Z1-L05,

M220Z2-L01, M240J1, M260J1, M260J2-L07, M300F1, N070Y1, N121I3, N121I6,

N121I7, N121X5, N133I1, N133I2, N133I5, N141I3, N141XA, N150P5, N150X7,

N154C1, N154C3, N154C4, N154C5, N154C6, N154I2, N154I4, N154I5, N154Z1,

N170C2, N170C3, N201J4-L01, V150V1, V201B1, V201V1, V201V2, V230W1,

V260B1, V315B1, V320B1, V320H1, V370H1, V420B1, V420H1, V470H1, V470K1,

V520H1, V562D1, V570H1, G070Y1, G070Y3, G104V1, G104X1, G121S1, G121X1,

9

G133I1, G150X1, F8980, F8921, R208R3, F8961, R181E1, R181E2, R196U1, R196U2,

R190E1, F8588, F8598, R208R1, R208R2, R208R3, R213T1, F01833-01U, F02016-01U,

F02017-01U, F02218-01U, F02219-01U, F02402-02D, F02412-01U, F02505-02U,

F02804-01U, F03506-01D, C04301-01D, F05002-01D, F056G1-T02, C05701-02D,

C05702-01U, C070GA-1TD, C07011-01D, C08007-01D, C08501-02D, F0A2G1-T04.

Further, LG.Philips believes CMO's reasonably similar LCD products made since

February 13, 2007, likewise infringe each asserted claim of the '489 patent.

    **(c)**      Attached as Exhibit C is LG.Philips' chart that illustrates infringement of

each asserted claim by CMO's LCD module V260B1-L01.  Reverse engineering analysis

of CMO's LCD modules V201V1-T01 and V420H1-L07 disclose infringement of the

claims by their same corresponding structures.  Further, LG.Philips believes all other

accused CMO LCD products infringe the asserted claims of the '489 patent in a similar

manner.

    **(d)**      LG.Philips asserts that each element of each asserted claim is literally

present within each of the Accused Instrumentalities.  To the extent one or more elements

are found not to be literally present, based on, for example, claim constructions,

LG.Philips contends that element is present under the Doctrine of Equivalents as any

differences between the claim element at issue and the corresponding element of the

Accused Instrumentality is insubstantial because, *inter alia*, the Accused Instrumentality

performs substantially the same function in substantially the same way to give

substantially the same result.

    **(e)**      LG.Philips asserts that each asserted claim of the '489 patent is entitled to

a foreign priority date of March 4, 1997 based on Korean patent application number 97-

7010; and a U.S. priority date of August 27, 1997 based on U.S. application number 08/918,119.

(f)    LG.Philips contends that its below listed products incorporate the invention of each asserted claim of the '489 patent: LB012Q01, LB017Q01, LB018Q01, LB019Q01, LB019Q02, LB020Q01, LB040Q02, LB040Q03, LB064V02, LB065W01, LB065WQ2, LB065WQ3, LB070W02, LB070WV1, LB080W03, LB080WV3, LB080WV4, LB102WV1, LB104S01, LB104V03, LB121S02, LB121S03, LB121S1, LB121SA, LB150H01, LB165H1, LB190E01, LB209F1, LB216H1, LC104S1, LC130V01, LC150X01, LC150X02, LC151X01, LC171W03, LC200WX1, LC201V02, LC201V1, LC230W01, LC230W02, LC230WX3, LC260W01, LC300W01, LC300W02, LC320WX2, LC320WX4, LC370W01, LC370WX3, LC420W02, LC420WU1, LC420WU2, LC420WU3, LC420WX2, LC420WX3, LC420WX4, LC420WX5, LC420WX6, LC470WU1, LC470WU4, LC550W01, LCA4SE01A, LH105J01, LH117Q01, LH118Q01, LH120J01, LH130Q01, LH180Q01, LH186Q01, LH186Q02, LH200Q01, LH200Q02, LH200Q03, LH220Q01, LH220Q02, LH220Q03, LH283Q01, LH350Q01, LM150X04, LM150X05, LM150X06, LM150X07, LM150X08, LM150X1, LM150X2, LM151X05, LM151X1, LM151X1(S), LM151X13, LM151X2, LM151X23, LM151X24, LM151X2A, LM151X3, LM151X32, LM151X4, LM157E2, LM171W01, LM171W02, LM181E04, LM181E05, LM181E06, LM181E1, LM181E3, LM181ES, LM190E01, LM190E02, LM190E03, LM190E04, LM190E05, LM190E08, LM201U02, LM201U03, LM201U04, LM201U05, LM201U1, LM201WE2, LM220W1, LM220W1B, LM230W01, LM230W02, LM230WU3, LM240WU2, LM260WU1, LM300WQ2, LP064V1, LP104S06, LP104S5, LP104V2, LP104V2A, LP104X1, LP121S2, LP121S3,

11

LP121S4, LP121SA, LP121SB, LP121SH, LP121SL, LP121SP, LP121SQ, LP121X04,

LP121X05, LP121X1, LP121X2, LP121XQ, LP133WX1,LP133X09, LP133X1,

LP133X11, LP133X2, LP133X3, LP133X4, LP133X5, LP133X6, LP133X7, LP133X8,

LP140WX1, LP141E04, LP141E05, LP141E2, LP141E3, LP141WP1, LP141WX1,

LP141X10, LP141X11, LP141X12, LP141X13, LP141X14, LP141X2, LP141X3,

LP141X4, LP141X5, LP141X6, LP141X7, LP141X8, LP141XA, LP141XB, LP150E01,

LP150E02, LP150E04, LP150E05, LP150E06, LP150E07, LP150E1, LP150U03,

LP150U06, LP150U1, LP150X04, LP150X05, LP150X06, LP150X08, LP150X09,

LP150X1, LP150X10, LP150X12, LP150X2, LP151X1, LP152W02, LP152W1,

LP154W01, LP154W02, LP154W1, LP154WE2, LP154WP2, LP154WU1, LP157E1,

LP171W01, LP171W02, LP171WE2, LP171WP3, LP171WP4, LP171WP5, LP171WP6,

LP171WP7, LP171WU1, LP171WX2, LPX1AJ2QT, LS150X03, LS150X05, LS1700,

LT034Q01, LT034Q1, LT037Q01, LT045H1, LT046H01, LT050H1, LT050V01,

LT055H01, LT055H1, LT060V01, LT060V1, LT064V01, LT064V1, LT065W01,

LT070W02, LT071V01, LT071V1, LT084S1, LT088V1, LT089S01, LT089S1,

LT092W01, LT104V1, LT104V2, LT104X02.

### 4.    U.S. Patent No. 7,218,374

(a)    LG.Philips asserts that CMO's Accused Instrumentalities infringe claims 1,

2, 5, 6, 9, 10, 11, 16, 17, 20, and 21 of the '374 patent.  Based on information presently

available to it, LG.Philips asserts CMO's LCD modules made using its one-drop fill

process directly infringe the asserted claims or CMO indirectly infringes these claims

through inducement by the manufacture, offer for sale, sale, or importation into the

United States of the Accused Instrumentalities.

12

(b)    LG.Philips asserts that CMO's LCD modules manufactured at the following plants infringe each of the asserted claims of the '374 patent: **CMO Fab II (G4)**, No.2, Sec. 2, Huansi Rd., Southern Taiwan Science Park, Shanhua Township, Tainan County 74144, Taiwan, R.O.C.; **CMO Fab III (G5-1)**, No.2, Sec. 2, Huansi Rd., Southern Taiwan Science Park, Shanhua Township, Tainan County 74144, Taiwan, R.O.C.; **CMO Fab IV (G5.5)**, No.3, Sec. 1, Huansi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County 74147, Taiwan, R.O.C.; **CMO Fab V (G5-2)**, No.2, Sec. 2, Huansi Rd., Southern Taiwan Science Park, Shanhua Township, Tainan County 74144, Taiwan, R.O.C.; **CMO Fab VI (G6)**, No. 21, Zihlian Road, Sinshih Township, Tainan County, Taiwan 74147 R.O.C.; **CMO Fab VII (G7.5)**, No.3, Sec. 1, Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County 74147, Taiwan, R.O.C. LG.Philips currently believes that at least the following CMO modules manufactured at these plants using one-drop fill infringe the asserted claims of the '374 patent: M170E5, M170E7, M190A1-L02, M190A1-L07, M190E5-L0E, M190Z1-L01, M201P1-L01, M220Z1-L03, M220Z1-L05, M220Z2-L01, M240J1, M260J1, M260J2-L07, M300F1, N133I1, N133I2, N133I5, N141I3, N141XA, N150P5, N150X7, N154C1, N154C3, N154C4, N154C5, N154C6, N154I2, N154I4, N154I5, N154Z1, N170C2, N170C3, N201J4-L01, V150V1, V201B1, V201V1, V201V2, V230W1, V260B1, V315B1, V320B1, V320H1, V370H1, V420B1, V420H1, V470H1, V470K1, V520H1, V562D1, V570H1, R208R3, R196U1, R196U2, R190E1, R208R1, R208R2, R208R3, R213T1. Further, LG.Philips believes CMO's reasonably similar LCD products made using one drop fill since at least May 15, 2007, likewise infringe each asserted claim of the '374 patent.

13

(c)     Attached as Exhibit D is LG.Philips' chart that illustrates infringement of each asserted claim by CMO's LCD module V260B1-L01. Further, LG.Philips believes all other accused CMO LCD products infringe the asserted claims of the '374 patent in a similar manner.

(d)     LG.Philips asserts that each element of each asserted claim is literally present within each of the Accused Instrumentalities or that the Accused Instrumentality is made using a method that literally meets each element of each asserted claim. To the extent one or more elements are found not to be literally present or met, based on, for example, claim constructions, LG.Philips contends that element is present under the Doctrine of Equivalents as any differences between the claim element at issue and the corresponding element of or method of manufacturing the Accused Instrumentality is insubstantial because, *inter alia*, the Accused Instrumentality or method of manufacturing the Accused Instrumentality performs substantially the same function in substantially the same way to give substantially the same result.

(e)     LG.Philips asserts that each asserted claim of the '374 patent is entitled to a foreign priority date of February 20, 2002, based on Korean patent application number 2002-8900.

(f)     LG.Philips contends that its below listed products incorporate the invention of each asserted claim of the '374 patent. LC150X01, LC150X02, LC171W03, LC200WX1, LC201V02, LC201V1, LC230W01, LC230W02, LC230WX3, LC260W01, LC260WX2, LC300W01, LC300W02, LC320W01, LC320WX1, LC320WX2, LC320WX3, LC320WX4, LC370W01, LC370WU1, LC370WX1, LC370WX2, LC370WX3, LC420W02, LC420WU1, LC420WU2, LC420WU3, LC420WX2,

14

LC420WX3, LC420WX4, LC420WX5, LC420WX6, LC470WU1, LC470WU4,
LC550W01, LM150X04, LM150X05, LM150X06, LM150X07, LM150X08, LM150X1,
LM150X2, LM151XPH, LM151X05, LM151X1, LM151X13, LM151X2, LM151X23,
LM151X24, LM151X2A, LM151X3, LM151X32, LM151X4, LM157E2, LM170E01,
LM171W01, LM171W02, LM181E04, LM181E05, LM181E06, LM181E1, LM181E3,
LM181ES, LM190E01, LM190E02, LM190E03, LM190E04, LM190E05, LM190E08,
LM201U02, LM201U03, LM201U04, LM201U05, LM201W01, LM201WE2,
LM201WE3, LM220W1, LM220W1B, LM220WE1, LM230W01, LM230W02,
LM230WU3, LM240WU2, LM260WU1, LM300W01, LM300WQ2, LM300WQ3,
LP064V1, LP104S06, LP104S2, LP104S3, LP104S5, LP104V2, LP104V2A, LP104X1,
LP121S2, LP121S3, LP121S4, LP121SA, LP121SB, LP121SH, LP121SL, LP121SP,
LP121SQ, LP121X04, LP121X05, LP121X1, LP121X2, LP121XQ, LP133X09,
LP133X1, LP133X11, LP133X2, LP133X3, LP133X4, LP133X5, LP133X6, LP133X7,
LP133X8, LP133WX1, LP140WX1, LP141E04, LP141E05, LP141E2, LP141E3,
LP141X10, LP141X11, LP141X12, LP141X13, LP141X14, LP141X2, LP141X3,
LP141X4, LP141X5, LP141X6, LP141X7, LP141X8, LP141XA, LP141XB, LP150E01,
LP150E02, LP150E04, LP150E05, LP150U03, LP150U06, LP150U1, LP150X06,
LP150X08, LP150X09, LP150X10, LP150X12, LP150X2, LP151X1, LP152W02,
LP152W1, LP154W01, LP154WP2, LP157E1, LP171W01, LP171W02, LP171WE2,
LP171WP3, LP171WP4, LP171WP5, LP171WP6, LP171WP7, LP171WU1,
LP171WX2, LP201WE1.

5.    **U.S. Patent No. 6,803,984**

(a)    LG.Philips asserts that CMO's Accused Instrumentalities infringe claims 1, 2, 3, 4, 5, 6, and 10 of the '984 patent.  Based on information presently available to it, LG.Philips asserts CMO's LCD modules made using a serial one-drop fill process directly infringe the asserted claims or CMO indirectly infringes these claims through inducement by the manufacture, offer for sale, sale, or importation into the United States of the Accused Instrumentalities.

(b)    LG.Philips asserts that CMO's LCD modules, such as V420H1, manufactured at its **CMO Fab VII (G7.5)**, No.3, Sec. 1, Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County 74147, Taiwan, R.O.C. using a serial one drop fill process infringe each of the asserted claims of the '984 patent.  LG.Philips currently believes that at least the following CMO modules are manufactured at this plant using serial one-drop fill and infringe the asserted claims of the '984 patent: V320B1, V320H1, V420B1, V420H1, V470H1, V470K1, V520H1.  Further, LG.Philips believes CMO's reasonably similar LCD products made using a serial process one drop fill since at least October 12, 2004, likewise infringe each asserted claim of the '984 patent.

(c)    Attached as Exhibit E is LG.Philips' chart that illustrates infringement of each asserted claim by CMO's LCD module V420H1 believed to be manufactured by a serial one drop fill process.  Further, LG.Philips believes all other accused CMO LCD products infringe the asserted claims of the '984 patent in a similar manner.

(d)    LG.Philips asserts that each element of each asserted claim is literally present within each of the Accused Instrumentalities or that the Accused Instrumentality is made using a method that literally meets each element of each asserted claim.  To the

16

extent one or more elements are found not to be literally present or met, based on, for example, claim constructions, LG.Philips contends that element is present under the Doctrine of Equivalents as any differences between the claim element at issue and the corresponding element of or method of manufacturing the Accused Instrumentality is insubstantial because, *inter alia*, the Accused Instrumentality or method of manufacturing the Accused Instrumentality performs substantially the same function in substantially the same way to give substantially the same result.

(e)    LG.Philips asserts that each asserted claim of the '984 patent is entitled to a foreign priority date of February 25, 2002 based on Korean patent application number 2002-9961.

(f)    LG.Philips contends that its below listed products incorporate the invention of each asserted claim of the '984 patent. LC104S1, LC130V01, LC150X01, LC150X02, LC151X01, LC171W03, LC200WX1, LC201V02, LC201V1, LC230W01, LC230W02, LC230WX3, LC260W01, LC260WX2, LC300W01, LC300W02, LC320W01, LC320WX1, LC320WX2, LC320WX3, LC320WX4, LC370W01, LC370WU1, LC370WX1, LC370WX2, LC370WX3, LC420W02, LC420WU1, LC420WU2, LC420WU3, LC420WX2, LC420WX3, LC420WX4, LC420WX5, LC420WX6, LC470WU1, LC470WU4, LC550W01, LM150X04, LM150X05, LM150X06, LM150X07, LM150X08, LM150X1, LM150X2, LM150XPH, LM151X05, LM151X1, LM151X13, LM151X2, LM151X23, LM151X24, LM151X2A, LM151X3, LM151X32, LM151X4, LM157E2, LM170E01, LM170E02, LM171W01, LM171W02, LM181E04, LM181E05, LM181E06, LM181E1, LM181E3, LM181ES, LM190E01, LM190E02, LM190E03, LM190E04, LM190E05, LM190E08, LM201U02, LM201U03,

17

LM201U04, LM201U05, LM201U1, LM201W01, LM201WE2, LM201WE3,

LM220W1, LM220W1B, LM220WE1, LM230W01, LM230W02, LM230WU3,

LM240WU2, LM260WU1, LM300W01, LM300WQ2, LM300WQ3, LP064V1,

LP104S06, LP104S2, LP104S3, LP104S5, LP104V2, LP104V2A, LP104X1, LP121S2,

LP121S3, LP121S4, LP121SA, LP121SB, LP121SH, LP121SL, LP121SP, LP121SQ,

LP121X04, LP121X05, LP121X1, LP121X2, LP121XQ, LP133WX1, LP133X09,

LP133X1, LP133X11, LP133X2, LP133X3, LP133X4, LP133X5, LP133X6, LP133X7,

LP133X8, LP140WX1, LP141E04, LP141E05, LP141E2, LP141E3, LP141X10,

LP141X11, LP141X12, LP141X13, LP141X14, LP141X2, LP141X3, LP141X4,

LP141X5, LP141X6, LP141X7, LP141X8, LP141XA, LP141XB, LP150E01, LP150E02,

LP150E04, LP150E05, LP150E1, LP150U03, LP150U06, LP150U1, LP150X06,

LP150X08, LP150X09, LP150X10, LP150X12, LP150X2, LP151X1, LP152W1,

LP154W01, LP154W1, LP154WP2, LP157E1, LP171W01, LP171W02, LP171WE2,

LP171WP3, LP171WP4, LP171WP5, LP171WP6, LP171WP7, LP171WU1,

LP171WX2, LP201WE1, LPX1AJ2QT.

### P.R. 3-2 DOCUMENT PRODUCTION ACCOMPANYING DISCLOSURE

(a)     LG.Philips has searched its records for documents that would fall within

this category.  No documents were found relevant to any of the asserted LPL patents as

no product embodying an invention claimed in the '274 patent, the '321 patent or the

'489 patent was offered for sale or sold before the first application filed on August 27,

1997.  Similarly, no product embodying an invention claimed in the '374 patent was

offered for sale or sold prior to June 28, 2002, and no product embodying an invention

claimed in the '984 patent was offered for sale or sold prior to April 24, 2002.

18

(b)    LG.Philips has searched its records and located documents that would fall within this category.  The documents found to date, however, are subject to Attorney-Client Privilege and/or Work Product Privilege and are listed in the privilege log attached at Exhibit F.  LG.Philips continues to review its records and reserves the right to produce any non-privileged documents it locates that fall within P.R. 3-2(b).

(c)    Copies of the '274 patent and file history, the '321 patent and file history, the '489 patent and file history, the '374 patent and file history, and the '984 patent and file history bear production numbers LPL 000001 to LPL 009712.

Law Office of Mike C. Miller, P.C.

Mike C. Miller
Texas State Bar No. 14101100
Law Office of Mike C. Miller, P.C.
201 West Houston Street
Marshall, Texas 75670
Phone:  (903) 938-4395
Facsimile:  (903) 938-3360

*Attorney for Defendants*
*LG.Philips LCD Co., Ltd, and*
*LG.Philips LCD America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
John W. Lomas, Jr.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, D.C.  20006
(202) 496-7500

November 7, 2007

19

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 7, 2007, LG.Philips LCD Co., Ltd.'s

Disclosure of Asserted Claims and Infringement Contentions was served on the following

counsel of record via electronic mail:

Melissa Richards Smith
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
melissa@gillamsmithlaw.com

Alexander Chester Giza
Irell & Manella LLP
1800 Ave of the Stars
Ste 900
Los Angeles, CA 90067-4276
agiza@irell.com

Jonathan S. Kagan
Irell & Manella LLP
1800 Ave of the Stars
Ste 900
Los Angeles, CA 90067-4276
jkagan@irell.com

Mike C. Miller

DC:50510352.1

20

# EXHIBIT A
# U.S. PATENT NO. 5,905,274
# LOCAL PATENT RULE 3-1
# INFRINGEMENT CONTENTIONS

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 1. A thin film transistor comprising: | <br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01* |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| a substrate; and | <br><br>**One Side of Gate**<br>*SEM Analysis of CMO V260B1-L01*<br><br>**Substrate Generation Sizes**<br>*www.cmo.com.tw/opencms/cmo/technology/Panel_Size_Evolution/?__locale=en*<br><br>    Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| a gate including a double-layered structure having a first metal layer which is a bottom layer disposed on the substrate and a second metal layer disposed on the first metal layer, the first metal layer including aluminum, the second metal layer being arranged on the first metal layer to prevent hillock at the sides of the aluminum first metal layer, the first metal layer being wider than the second metal layer by about 1 to 4 μm. | <br>**One Side of Gate**<br>*SEM Analysis of CMO V260B1-L01*<br><br>The 1st metal layer is wider than the 2nd metal layer by about 1 to 4 μm.<br><br><br>***Energy Dispersive Spectrometer Test Result for CMOV260B1-L01***<br><br>The 1st metal layer includes Aluminum.<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences at issue between this claim element and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

A-3

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 2. The thin-film transistor as claimed in claim 1, wherein the second metal layer is located in a middle portion of the first metal layer so that two side portions of the first metal layer having no second metal layer disposed thereon have the same width as each other. | Side portion of the 1st metal layer<br><br> <br><br>Side portion of the 1st metal layer<br><br>Side portion of the 1st metal layer<br><br>Side portion of the 1st metal layer<br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01*<br><br>The two side portions of the 1st metal layer have the same width.<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 3. The thin-film transistor as claimed in claim 1, wherein the second metal layer includes at least one of Mo, Ta, and Co. | 

*Energy Dispersive Spectrometer Test Result for CMO V260B1-L01*

The 2nd second metal layer includes Molybdenum.

    Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

A-5

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 4. A thin film transistor comprising: | <br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01* |

| Asserted Claims | CMO Accused Instrumentality |
|---|---|
| a substrate; | <br>**One Side of Gate**<br>*SEM Analysis of CMO V260B1-L01*<br><br><br><br>**Substrate Generation Sizes**<br>*www.cmo.com.tw/opencms/cmo/technology/Panel_Size_Evolution/?__locale=en*<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
|    a gate including a double-layered structure having a first metal layer which is a bottom layer disposed on the substrate and a second metal layer disposed on the first metal layer, the first metal layer including aluminum, the second metal layer being arranged on the first metal layer to prevent hillock at the sides of the aluminum first metal layer, the first metal layer being wider than the second metal layer by about 1 to 4 μm; | <br>**One Side of Gate**<br>*SEM Analysis of CMO V260B1-L01*<br><br>The 1st metal layer is wider than the second metal layer by about 1 to 4 μm.<br><br><br>***Energy Dispersive Spectrometer Test Result***<br><br>The 1st metal layer includes Aluminum.<br><br>   Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

A-8

| Asserted Claims | CMO Accused Instrumentality |
|---|---|
| a first insulating layer disposed on the substrate including the gate;<br><br>a semiconductor layer disposed on a portion of the first insulating layer at a location corresponding to the gate;<br><br>an ohmic contact layer disposed on two sides of the semiconductor layer;<br><br>a source electrode and drain electrode disposed on the ohmic contact layer and extending onto the first insulating layer; and<br><br>a second insulating layer covering the semiconductor layer, the source and drain electrodes and the first insulating layer. | <br>**Cross Section of TFT**<br>*SEM Analysis of CMO V260B1-L01*<br><br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01*<br><br>    Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

A-9

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 5. The thin-film transistor as claimed in claim 4, wherein the second metal layer is located in a middle portion of the first metal layer so that two side portions of the first metal layer having no second layer thereon have the same width as each other. |   **Thin-Film Transistor** *Optical Microscopy of CMO V260B1-L01* The two side portions of the 1st metal layer have the same width. Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

A-10

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 6. The thin-film transistor as claimed in claim 4, wherein the second metal layer includes at least one of Mo, Ta and Co. | **Energy Dispersive Spectrometer Test Result**<br><br>The 2nd metal layer includes Molybdenum.<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

DC:50508568.2

A-11

# EXHIBIT B
# U.S. PATENT NO. 6,815,321
# LOCAL PATENT RULE 3-1
# INFRINGEMENT CONTENTIONS

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 7.  A method of forming a thin film transistor comprising: | <br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01* |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| forming a first metal layer on a substrate; |  **One Side of Gate** *SEM Analysis of CMO V260B1-L01* Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| Asserted Claims | CMO Accused Instrumentality |
|---|---|
| forming a second metal layer on the first metal layer; |  **One Side of Gate** *SEM Analysis of CMO V260B1-L01*  Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

B-4

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| simultaneously patterning the first and second metal layers to form a double-layered metal gate, so that a total width of the first metal layer is greater than a total width of the second metal layer by about 1 to 4 µm. | <br>**One Side of Gate**<br>*SEM Analysis of CMO V260B1-L01*<br><br>On information and belief, LG.Philips understands that the 1st and 2nd metal layers are patterned simultaneously and the total width of the 1st metal layer is greater than the total width of the 2nd metal layer by about 1 to 4 µm.<br><br>    Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 8. The method of claim 7, wherein the first and second metal layers are patterned so that the first metal layer has a first and second side portion being exposed from the second metal layer, each side portion being at least about 0.5 μm in width. |  <br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01*<br><br><br><br>**One Side of Gate**<br>*SEM Analysis of CMO V260B1-L01*<br><br>Each side portion is at least about 0.5 μm in width.<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

B-6

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 9. The method of claim 8, wherein each side portion of the first metal layer is exposed so that each side portion is less than about 2 μm in width. | <br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01*<br><br><br><br>**One Side of Gate**<br>*SEM Analysis of CMO V260B1-L01*<br><br>Each side portion is less than about 2 μm in width.<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 10. The method of claim 7, wherein the patterning step is such that the second metal layer is etched faster than the first etching layer. |  **TFT Cross Section** *SEM Analysis of CMO V260B1-L01*<br><br>On information and belief, LG.Philips understands that the 2nd metal layer is etched faster than the 1st metal layer.<br><br>     Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

B-8

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 12. The method of claim 10, wherein both the first and second metal layers are wet etched. |  **TFT Cross Section** *SEM Analysis of CMO V260B1-L01* On information and belief, LG.Philips understand that the 1st and 2nd metal layers are wet etched.     Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 14. The method of claim 7, wherein no masking step is required between the formation of the first and second metal layers. | <br>**TFT Cross Section**<br>*SEM Analysis of CMO V260B1-L01*<br><br>On information and belief, LG.Philips understands that there is no masking step between formation of the 1st and 2nd metal layers.<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

B-10

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 16.  A method of waking a thin-film transistor, comprising the steps of: |  **Thin-Film Transistor** *Optical Microscopy of CMO V260B1-L01* |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| depositing a first metal layer on a substrate, the first metal layer including aluminum; |   **One Side of Gate**  *SEM Analysis of CMO V260B1-L01*    **Energy Dispersive Spectrometer Test Result**  The 1st metal layer includes Aluminum.  Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

B-12

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| depositing a second metal layer on the first metal layer without forming a photoresist on the first metal layer beforehand; | <br><br>**2ⁿᵈ metal layer is deposited on the 1ˢᵗ metal layer**<br><br>**1ˢᵗ metal layer**<br><br>**One Side of Gate**<br>*SEM Analysis of CMO V260B1-L01*<br><br>On information and belief, LG.Philips understands that the 2ⁿᵈ metal layer is deposited without forming a photoresist on the 1ˢᵗ metal layer beforehand.<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

B-13

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| forming a single photoresist having predetermined width on the second metal layer; | **The 1ˢᵗ and 2ⁿᵈ metal layers are formed with a predetermined width**<br><br><br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01*<br><br>On information and belief, LG.Philips understands that CMO uses a single photoresist.<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| patterning the first and second metal layers simultaneously in a single etching step using the single photoresist as a mask, the first metal layer being etched to have a width greater than a width of the second metal layer by about 1 to 4 µm; and |  **One Side of Gate** *SEM Analysis of CMO V260B1-L01* On information and belief, LG.Philips understands that the 1st and 2nd metal layers are patterned simultaneously in a single etching step with a single photoresist and the 1st metal layer is etched to have a width greater than the 2nd metal layer by about 1 to 4 µm. Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| removing the photoresist. |  |



**1st Insulating Layer**

**2nd Metal Layer**
**1st Metal Layer**

**Substrate**

**Cross Section of TFT**
*SEM Analysis of CMO V260B1-L01*

Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result.

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 17. The method of making a thin film transistor as claimed in claim 16, further comprising the steps of: | <br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01* |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| forming a first insulating layer on the substrate including the gate;<br><br>forming a semiconductor layer and ohmic contact layer on a portion of the first insulating layer at a location corresponding to the gate;<br><br>forming a source electrode and a drain electrode extending onto the first insulating layer on two sides of the ohmic contact layer, and removing a portion of the ohmic contact layer exposed between the source and drain electrodes; and<br><br>forming a second insulating layer covering the semiconductor layer, the source electrode, the drain electrode and the first insulating layer. | <br><br>**Cross Section of TFT**<br>*SEM Analysis of CMO V260B1-L01*<br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01*<br><br>    Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 18.  The method of making a thin film transistor as claimed in claim 16, wherein the first and second metal layers are sequentially deposited via sputtering or a chemical vapor deposition method without breaking a vacuum state. |  |

**Cross Section of TFT**
*SEM Analysis of CMO V260B1-L01*

On information and belief, LG.Philips understands that the 1st and 2nd metal layers are sequentially deposited via sputtering without breaking a vacuum state.

Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result.

B-19

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 19. The method of making a thin film transistor as claimed in claim 16, wherein the first metal layer has thickness of about 500 Å to about 4000 Å. |   **1st Metal Layer**  **TFT Cross Section**  *SEM Analysis of CMO V260B1-L01*  The 1st metal layer has a thickness of about 500 Å to 4000 Å.  Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 20. The method of making a thin film transistor as claimed in claim 16, wherein the second metal layer includes Mo, Ta or Co. | *Energy Dispersive Spectrometer Test Result*<br><br>The 2nd metal layer includes Molybdenum.<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | CMO ACCUSED INSTRUMENTALITY |
|---|---|
| 22. The method of making a thin film transistor as claimed in claim 16, wherein two side portions of the first metal layer having no second metal layer deposited thereon have substantially the same width as each other. | **Side portion of the 1st metal layer**<br><br><br>**Side portion of the 1st metal layer**<br>**Side portion of the 1st metal layer**<br>**Side portion of the 1st metal layer**<br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01*<br><br>The two side portions of the 1st metal layer have substantially the same width.<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

# EXHIBIT C
# U.S. PATENT NO. 7,176,489
# LOCAL PATENT RULE 3-1
# INFRINGEMENT CONTENTIONS

| ASSERTED CLAIMS | ACCUSED INSTRUMENTALITY |
|---|---|
| 1. A thin film transistor comprising: | <br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01* |

| ASSERTED CLAIMS | ACCUSED INSTRUMENTALITY |
|---|---|
| a substrate; and | Substrate<br><br><br>**One Side of Gate**<br>*SEM Analysis of CMO V260B1-L01*<br><br><br>**Substrate Generation Sizes**<br>*www.cmo.com.tw/opencms/cmo/technology/Panel_Size_Evolution/?__locale=en*<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | ACCUSED INSTRUMENTALITY |
|---|---|
| a double-layered metal gate having a first metal layer and a second metal gate layer thereon, a total width of the first metal layer being greater than a total width of the second metal layer by about 1 to 4 µm. | <br>**One Side of Gate**<br>*SEM Analysis of CMO V260B1-L01*<br><br>The total width of the 1st metal layer is greater than the total width of the 2nd metal layer by about 1 to 4 µm.<br><br>Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | ACCUSED INSTRUMENTALITY |
|---|---|
| 2. The transistor of claim 1, wherein the first metal layer has a first and second side portion being exposed from the second metal layer, each side portion being at least about 0.5 μm in width. |  <br><br>**Thin-Film Transistor**<br>*Optical Microscopy of CMO V260B1-L01*<br><br><br><br>**One Side of Gate**<br>*SEM Analysis of CMO V260B1-L01*<br><br>Each Side Portion is at least about 0.5 μm in width.<br><br>    Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

| ASSERTED CLAIMS | ACCUSED INSTRUMENTALITY |
|---|---|
| 3. The transistor of claim 2, wherein each side portion of the first metal layer is less than about 2 μm in width. |  **1st side portion of the 1st metal layer** **1st side portion of the 1st metal layer** **2nd side portion of the 1st metal layer** **2nd side portion of the 1st metal layer** **Thin-Film Transistor** *Optical Microscopy of CMO V260B1-L01*  **1st side portion of the 1st metal layer** **One Side of Gate** *SEM Analysis of CMO V260B1-L01* Each Side Portion is layer is less than about 2 μm in width.  Although LG.Philips believes that the accused instrumentality reads literally on this claim element, any differences between this claim element at issue and the corresponding element of the accused instrumentality is insubstantial because the accused instrumentality performs substantially the same function in substantially the same way to give substantially the same result. |

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICRON TECHNOLOGY, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| RAMBUS INC., | ) | |
| Defendant. | ) | Civil Action No. 00-792-KAJ |
| RAMBUS INC., | ) | |
| Counterclaim Plaintiff, | ) | |
| v. | ) | |
| MICRON TECHNOLOGY, INC., | ) | |
| Counterclaim Defendants. | ) | |

## SCHEDULING ORDER RE-SETTING CASE FOR TRIAL

Pursuant to the Court's Memorandum Opinion dated January 13, 2006, and for the reasons set forth during the telephonic hearings on February 9, 2006 and March 13, 2006,

IT IS HEREBY ORDERED that the scheduling orders previously entered in this case are amended as follows:

1.    Amendment of Pleadings.  All motions to amend or supplement the pleadings shall be filed on or before June 30, 2006.

2.    Discovery.

a.    Limitations on Supplemental Fact Discovery.

Each side is limited to a total of 100 hours of taking additional fact testimony by deposition upon oral examination in the unclean hands phase and 100 hours total in the patent/conduct phase.

RLF1-2986529-1

In addition, each side is limited to 25 additional interrogatories in the unclean hands phase and 25 additional interrogatories total in the patent/conduct phase. There are no limits on requests for admission or requests for production.

b.    Discovery Cut-Off. All discovery in this case shall be served so as to be completed on or before the dates set forth below in Exhibit A. Unless otherwise ordered by the Court or agreed by the parties, the limitations on discovery set forth in Local Rule 26.1 shall be strictly observed.

c.    Disclosure of Expert Testimony. Unless otherwise agreed to by the parties, they shall file any supplemental Federal Rule of Civil Procedure 26(a)(2) disclosures of expert testimony relative to the patent and conduct issues on or before the dates set forth below in Exhibit A. Unless otherwise agreed to by the parties, they shall file any supplemental Federal Rule of Civil Procedure 26(a)(2) disclosures of expert testimony relative to the unclean hands issues on or before sixty days before the date of the completion of discovery relative to those issues, and file a supplemental disclosure to contradict or rebut evidence on the same subject matter identified by another party thirty days before the date for the completion of discovery relative to the unclean hands issues. To the extent any objection to expert testimony is made pursuant to the principles announced in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), it shall be made by motion no later than the deadline for dispositive motions set forth herein for the patent and conduct phases, unless otherwise ordered by the Court. As to the unclean hands phase any Daubert motion shall be filed on or before July 31, 2006.

d.    Discovery Disputes. Should counsel find they are unable to resolve a discovery dispute, the party seeking the relief shall contact chambers at (302) 573-6001 to schedule a telephone conference. Not less than forty-eight hours prior to the conference, the

2

party seeking relief shall file with the Court a letter, not to exceed three pages, outlining the issues in dispute and its position on those issues. (The Court does not seek extensive argument or authorities at this point; it seeks simply a statement of the issue to be addressed and a summary of the basis for the party's position on the issue.) Not less than twenty-four hours prior to the conference, any party opposing the application for relief may file a letter, not to exceed three pages, outlining that party's reasons for its opposition. Should the Court find further briefing necessary upon conclusion of the telephone conference, the Court will order it. Disputes over protective orders are to be addressed in the first instance in accordance with this paragraph.

3.    Interim Status Reports. On ~~April 4 and~~ June 7, 2006, counsel shall submit letters to the Court with interim reports on the nature of the matters in issue and the progress of discovery to date.

4.    Status Conferences. On ~~April 14 and~~ June 14, 2006, the Court will hold Rule 16(a), (b) and (c) conferences by telephone with counsel beginning at 4:30 p.m. Plaintiff's counsel shall initiate the telephone calls.

If all parties agree that there is nothing to report, nor anything to add to the interim status reports or to this order, they may so notify the Court in writing before the conferences are scheduled to occur, and the conferences will be taken off of the Court's calendar.

5.    Tutorial Describing the Technology and Matters in Issue. The parties shall provide the Court by September 15, 2006 at 9:30 a.m., a tutorial on the technology and matters at issue. In that regard, each party may submit a videotape of not more than 30 minutes. The parties may choose to present the tutorial in person. In either event, the tutorial should focus on the technology in issue and should not be used to argue the parties' claims construction contentions. If the parties choose to file videotapes, they should be filed under seal as part of the

3

Court's file, subject to any protective order in effect. Each party may comment, in writing (in no more than 5 pages) on the opposing party's videotape tutorial. Any such comment shall be filed within ten (10) days of submission of the videotapes.

      6.     Case Dispositive Motions. All case dispositive motions, an opening brief, and affidavits, if any, in support of the motion shall be served and filed on or before the dates set forth below in Exhibit A. Briefing will be presented pursuant to the Court's Local Rules.

      7.     Claim Construction Issue Identification. If the Court does not find that a limited earlier claim construction would be helpful in resolving the case, on **April 6, 2007**, the parties shall exchange a list of those claim term(s)/phrase(s) that they believe need construction and their proposed claim construction of those term(s)/phrase(s). This document will not be filed with the Court. Subsequent to exchanging that list, the parties will meet and confer to prepare a Joint Claim Construction Chart to be submitted pursuant to Exhibit A below. The parties Joint Claim Construction Chart should identify for the Court the term(s)/phrase(s) of the claim(s) in issue, and should include each party's proposed construction of the disputed claim language with citation(s) only to the intrinsic evidence in support of their respective proposed constructions. A copy of the patent(s) in issue as well as those portions of the intrinsic record relied upon are to be submitted with this Joint Claim Construction Chart. In this joint submission, the parties shall not provide argument.

      8.     Claim Construction. Issues of claim construction shall be submitted to the Court no later than the date set forth below in Exhibit A, to be considered by the Court in conjunction with the parties' summary judgment motions.

4

9.    <u>Hearing on Claim Construction</u>.  Beginning at **9:30 a.m.** on the date set forth below in Exhibit A, the Court will hear evidence and argument on claim construction and summary judgment.

10.    <u>Pretrial Conference</u>.  On the dates set forth below in Exhibit A, the Court will hold Final Pretrial Conferences in Chambers with counsel beginning at **4:30 p.m.**  Unless otherwise ordered by the Court, the parties should assume that filing the pretrial orders satisfies the pretrial disclosure requirement of Federal Rule of Civil Procedure 26(a)(3).  The parties shall file with the Court the joint proposed final pretrial orders with the information required by the forms of Final Pretrial Orders which accompanies this Scheduling Order on or before the dates set forth below.

11.    <u>Motions *in Limine*</u>.  Motions *in limine* shall not be separately filed.  All *in limine* requests and responses shall be set forth in the proposed pretrial order.  Each party shall be limited to ten *in limine* requests in each trial phase, unless otherwise permitted by the Court.  The motion and response thereto shall contain the authorities relied upon, and no single *in limine* request shall have more than five pages of argument associated with it.  No separate briefing shall be submitted on *in limine* requests, unless otherwise permitted by the Court.

12.    <u>Jury Instructions, Voir Dire, and Special Verdict Forms</u>.  Where a claim or issue is to be tried to a jury, pursuant to Local Rules 47 and 51 the parties should file proposed voir dire, instructions to the jury, and special verdicts and interrogatories three full business days before the appropriate final pretrial conference.  That submission shall be accompanied by a computer diskette (in WordPerfect format) which contains a copy of these instructions and proposed voir dire and special verdicts and interrogatories.

13.    <u>Trial</u>.  The trial for this action shall proceed in three phases, on the schedule set forth below in Exhibit A.  In the first "unclean hands" phase, the Court will hold a bench trial on Micron's affirmative defense of unclean hands.  In the second "patent" phase, the parties will try Rambus's claims of patent infringement and Micron's claims of non-infringement and invalidity.  In the third "conduct" phase, the parties will try all of Micron's remaining claims for affirmative relief and defenses.

Each trial shall begin at 9:30 a.m. on the dates set forth below.  For the purpose of completing pretrial preparations, counsel should plan on each side being allocated a set number of hours to try each phase of the case.

IT IS SO ORDERED this _16th_ day of _March_ 2006.

Honorable Kent A. Jordan
United States District Court Judge

6

## EXHIBIT A

A.    UNCLEAN HANDS

| EVENT | DATE |
|---|---|
| Discovery cutoff for unclean hands issues | July 31, 2006 |
| Parties to file Final Pretrial Order for the unclean hands trial | August 25, 2006 |
| Pretrial conference for unclean hands trial | September 25, 2006 at 4:30 p.m. |
| Unclean hands trial date (bench trial) | October 23-27, 30-31, 2006 beginning at 9:00 a.m. |
| Deadline for post-trial briefs to be filed | January 17, 2007 |
| Deadline for reply briefs to be filed | January 31, 2007 |

B.    PATENT ISSUES

| EVENT | DATE |
|---|---|
| Fact discovery cutoff | February 2, 2007 |
| Deadline for identifying experts on which a party bears the burden of proof | February 9, 2007 |
| Deadline for opening expert reports on which the party bears the burden of proof | March 2, 2007 |
| Deadline for rebuttal expert reports | March 30, 2007 |
| Deadline for exchanging list of disputed terms | April 6, 2007 |
| Expert discovery cutoff | April 20, 2007 |
| Joint claim construction chart to be filed | April 16, 2007 |
| Deadline for opening briefs on dispositive motions and claim construction to be filed | April 27, 2007 |
| Deadline for opposition briefs on dispositive motions and claim construction to be filed | May 21, 2007 |

| EVENT | DATE |
|---|---|
| Deadline for reply briefs on dispositive motions to be filed | June 1, 2007 |
| Hearing on claim construction and dispositive motions on | June 22, 2007 at 9:30 a.m. |
| Parties to file Final Pretrial Order for patent trial | September 10, 2007 |
| Pretrial conference for patent trial | October 10,2007 at 4:30 p.m. |
| Patent trial date (jury trial) | November 5-16, 2007 at 9:30 a.m. |
| Deadline for post-trial motions to be filed | January 4, 2008 |
| Deadline for oppositions to post-trial motions to be filed | February 1, 2008 |
| Deadline for reply briefs on post-trial motions to be filed | February 15, 2008 |

C.    CONDUCT ISSUES

| EVENT | DATE |
|---|---|
| Deadline for dispositive motions to be filed | May 1, 2008 |
| Deadline for oppositions to dispositive motions to be filed | May 29, 2008 |
| Deadline for reply briefs on dispositive motions to be filed | June 16, 2008 |
| Hearing on dispositive motions on conduct issues | June 27, 2008 at 9:30 a.m. |
| Parties to file Final Pretrial Order for conduct trial | September 15, 2008 |
| Pretrial conference for conduct trial | October 15, 2008 at 4:30 p.m. |
| Conduct trial date (jury trial) | November 10-21, 2008 at 9:30 a.m. |

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### BY HAND

Mary B. Graham, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19899-1347

Josy W. Ingersoll, Esquire
Young Conaway Stargatt & Taylor
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE  19899-0391

I hereby certify that on March 16, 2006, the foregoing document was sent to the following non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Marc E. Raven, Esquire
Sidley Austin Brown & Wood LLP
10 S. Dearborn Street
Chicago, IL  60603

Gregory P. Stone, Esquire
Munger Tolles & Olson LLP
355 South Grande Avenue, 35th Floor
Los Angeles, CA  90071

Matthew W. King (#4566)
king@rlf.com

# EXHIBIT D



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CENTERFORCE TECHNOLOGIES, )
INC., )
)
Plaintiff, )
)
v. )   Civil Action No. 99-243 MMS
)
AUSTIN LOGISTICS INC., )
)
Defendant. )

O R D E R

At Wilmington this ___16th___ day of March, 2000, for the reasons set forth in the

Memorandum Opinion issued this date,

IT IS ORDERED THAT:

1. CenterForce's motion for leave to file an amended complaint is granted; and

2. The parties shall confer and fashion a case management order covering salient points of

the scheduling order governing the '799 patent.  The order shall contain provisions:

      a.  Providing a date for the *Markman* hearing on the '965 patent, which

shall not be prior to October 13, 2000; and

      b.  Providing that fact discovery shall close thirty days after the Court's

ruling on the '965 patent *Markman* issues.

_____
United States District Judge

# EXHIBIT E

**U.S. Patent No. 6,664,569**
**Claim 25**

25. A liquid crystal display (LCD) device, comprising:
a substrate;
a gate line on the substrate and extending along a first direction, the gate line including a gate electrode, the gate electrode having an opening therein, wherein the opening includes a first opening portion and a second opening portion;
a first insulating layer on the gate line;
a semiconductor layer on the first insulating layer;
a data line on the insulating layer and extending along a second direction;
a drain electrode having a first electrode and a second electrode, the first electrode of the drain electrode overlapping at least a part of the first opening portion of the gate electrode; and
a source electrode on the semiconductor layer, extending from the data line and being separated and spaced apart from the drain electrode.

**United States Patent No. 5,825,449**
**Claims 1, 10, and 11**

1. A wiring structure comprising:
a substrate;
a first conductive layer formed on a first portion of said substrate;
a first insulative layer formed on a second portion of said substrate and on said first conductive layer;
a second conductive layer formed on a first portion of said first insulative layer;
a second insulative layer formed on said second conductive layer and on a second portion of said first insulative layer overlying said first conductive layer;
an indium tin oxide layer formed on said second insulative layer,
wherein a first contact hole is provided through said first and second insulative layers to expose part of said first conductive layer and a second contact hole is provided through said second insulative layer to expose part of said second conductive layer, said indium tin oxide layer extends through said first and second contact holes to electrically connect said first conductive layer with said second conductive layer, and
wherein one of said first and second conductive layers is connected to one of a plurality of terminals of a thin film transistor.

10. A liquid crystal display device comprising:
a substrate;
a first conductive layer on said substrate including:
a gate electrode,
a gate pad, and
a source pad;
a gate insulating film on said surface of said substrate,
a portion of said gate insulating film overlying said gate electrode;
a semiconductor layer on said portion of said gate insulating film;

an impurity-doped semiconductor layer on said semiconductor layer;
a source electrode and a drain electrode on said semiconductor layer;
a passivation layer overlying said source pad, said drain electrode, said gate pad, and said source electrode;
a first contact hole provided through said passivation layer and said gate insulating film exposing said source pad;
a second contact hole provided through said passivation layer exposing said drain electrode;
a third contact hole provided through said passivation layer and said gate insulating film exposing said gate pad;
a fourth contact hole provided through said passivation layer exposing said source electrode;
a pixel electrode electrically connected with said drain electrode via said second contact hole; and
a transparent conductive layer electrically connecting said source pad with said source electrode via said first contact hole and said fourth contact hole.

11. A method of manufacturing a liquid crystal display device, comprising the steps of:
forming a first conductive layer on a substrate;
patterning said first conductive layer to form a gate electrode, a gate pad and a source pad;
forming an insulating film on said substrate including said patterned conductive layer;
forming a semiconductor layer on said insulating film;
forming an impurity-doped semiconductor layer on said semiconductor layer;
patterning said impurity-doped semiconductor layer and said semiconductor layer to form an active layer;
forming a second conductive layer overlying said substrate including said active layer;
patterning said second conductive layer to form source electrode and a drain electrode on said active layer;
forming a passivation film overlying said substrate including said source pad, a portion of said drain electrode, said gate pad portion, and a portion of said source electrode;
selectively etching said passivation film and said insulating film to form a first contact hole exposing said source pad, a second contact hole exposing said portion of said drain electrode, a third contact hole exposing said gate pad portion, and a fourth contact hole exposing said portion of said source electrode;
patterning a pixel electrode electrically connected to said drain electrode via said second contact hole;
patterning a first transparent conductive layer electrically connected to said gate pad through said third contact hole; and
patterning second transparent conductive layer electrically connecting said source pad to said source electrode via said first and fourth contact holes.