**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT COURT OF DELAWARE**

| | | |
|---|---|---|
| LG. DISPLAY CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-726 (JJF) |
| | ) | |
| CHI MEI OPTOELECTRONICS | ) | |
| CORPORATION; AU OPTRONICS | ) | |
| CORPORATION, AU OPTRONICS | ) | |
| CORPORATION OF AMERICA; | ) | |
| TATUNG COMPANY; TATUNG | ) | |
| COMPANY OF AMERICA, INC.; AND | ) | |
| VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| AU OPTRONICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-357 (JJF) |
| | ) | |
| LG. DISPLAY CO., LTD and | ) | CONSOLIDATED CASES |
| LG. DISPLAY AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT CHI MEI OPTOELECTRONIC CORPORATION'S NOTICE**
**OF FED. R. CIV. P. 30(b)(6) DEPOSITION OF PLAINTIFF LG DISPLAY CO., LTD.**

TO:
Karen L. Pascale, Esq.
John W. Shaw, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

Ron E. Shulman, Esq.                    M. Craig Tyler, Esq.
Julie Holloway, Esq.                    Brian D. Range, Esq.
Wilson Sonsini Goodrich & Rosati        Wilson Sonsini Goodrich & Rosati
650 Page Mill Road                      8911 Capital of Texas Highway North
Palo Alto, CA 94304-1050                Westech 360, Suite 3350
                                        Austin, TX 78759-8497

Richard D. Kirk, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

Of Counsel:
Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
Cass W. Christenson
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006

Vincent K. Yip, Esq.
Peter J. Wied, Esq.
Jay C. Chiu, Esq.
Paul, Hastings, Janofsky & Walker LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071

PLEASE TAKE NOTICE that Defendant Chi Mei Optoelectronics Corporation ("CMO") will take the deposition of Plaintiff LG Display Co., Ltd. ("LGD"), pursuant to *Federal Rules of Civil Procedure* Rule 30(b)(6) on September 18, 2008, at 9:00 a.m. The deposition will take place at the offices of Irell & Manella LLP, 1800 Avenue of the Stars, Los Angeles California, 90067, or at such other location that is mutually agreeable to the parties. The deposition will be taken before a notary public or court reporter, duly authorized to administer oaths and transcribe the testimony of the deponent(s). The deposition will be recorded stenographically, by video, and by instant visual display of testimony using LiveNote software, and it will continue from day to day, excepting Saturdays, Sundays, and Holidays, until completed or adjourned if authorized by the Court or stipulated by the parties.

Pursuant to Rule 30(b)(6), LGD shall designate one or more persons to testify at the deposition as to the matters known or reasonably available to LGD concerning all topics listed in Attachment A hereto. In addition, pursuant to *Federal Rules of Civil Procedure* Rules 30(b)(2) and 34, LGD shall produce the documents identified in Attachment B at the offices of Irell & Manella LLP, located at 1800 Avenue of the Stars, Suite 900, Los Angeles, CA 90067-4276, (310) 277-1010, on or before September 1, 2008. The deponent is further required to produce any and all information or material previously requested in discovery, but not yet produced, prior to the deposition.

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Jonathan S. Kagan
Alexander C. D. Giza
Adam Hoffman
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA 90067
(310) 277-1010

By: /s/ Philip A. Rovner
     Philip A. Rovner (#3215)
     Hercules Plaza, 6TH Floor
     P. O. Box 951
     Wilmington, DE 19899
     (302) 984-6000
     provner@potteranderson.com

Dated: July 18, 2008
875060 / 31068

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

## ATTACHMENT A:  DEPOSITION TOPICS

For purpose of this Attachment, LGD should use the following definitions for the terms used herein.  All Deposition Topics and corresponding definitions of terms are for purposes of discovery only, and not to be construed as limiting or reflecting CMO's position in this case regarding claim construction or any other issues.  CMO specifically reserves the right to use different terms, or to assert different meanings, for all purposes in this case (including, for example, with respect to claim construction, infringement analysis, and validity analysis).

**Definitions**

A.      "Plaintiff," "LGD," "you," and "your" shall refer to Plaintiff LG Display Co., Ltd. (formerly known as LG. Philips LCD Co., Ltd.) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGD; (c) all companies through which LGD markets or distributes its LCD products in the United States, including without limitation LG Display America, Inc.; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGD; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

B.      "LGDA" refers to LG Display America, Inc. (formerly known as LG. Philips LCD America) and includes (a) any of its divisions, departments, offices, subsidiaries, agents; (b) all companies, corporations, or partnerships that are predecessors-in-interest or successors-in-interest of LGDA; (c) all companies through which LGDA markets or distributes its LCD products in the United States; (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with LGDA; and (e) each of the present and former officer, directors, employees, agents, consultants, independent contractors, attorneys, representatives, or other persons acting or

purporting to act on behalf of the foregoing entity, or on whose behalf the foregoing entity acted or purported to act.

C.    "Honeywell" refers to Honeywell, Inc. and its subsidiaries, divisions, parents, and affiliates, and all officers, agents, employees, representatives, consultants, experts, in-house and outside counsel, or other persons acting on its behalf or under its control.

D.    "LGE" refers to LG Electronics, Inc. and its subsidiaries, divisions, parents, and affiliates, and all officers, agents, employees, representatives, consultants, experts, in-house and outside counsel, or other persons acting on its behalf or under its control.

E.    "Seiko" refers to Seiko Instruments & Electronics Ltd. and its subsidiaries, divisions, parents, and affiliates, and all officers, agents, employees, representatives, consultants, experts, in-house and outside counsel, or other persons acting on its behalf or under its control.

F.    "Philips" refers to Koninklijke Philips Electronics N.V. and its subsidiaries, divisions, parents, and affiliates, and all officers, agents, employees, representatives, consultants, experts, in-house and outside counsel, or other persons acting on its behalf or under its control.

G.    "CMO" shall refer to Defendant Chi Mei Optoelectronic Corporation.

H.    "CMO USA" shall refer to Defendant Chi Mei Optolectronic USA Inc.

I.    The term "Present Lawsuit" or "This Case" refers to this consolidated action between CMO and LGD pending in the United States District Court for the District of Delaware, including Case No. 106-cv-00726 (the "'726 Case") and Case No. l:07-cv-00357 (the "'357 Case").

J.    The term "LGD Complaints" refers to all complaints that LGD has filed against CMO and/or CMO USA in the Present Lawsuit, including but limited to the following: "Complaint for Patent Infringement," filed on or about December 1, 2006 ('726 Case, Docket Entry No. 1); "First Amended Complaint for Patent Infringement against Defendant AU Optronics Corporation," filed on or about April 11, 2007 ('726 Case, Docket Entry No. 29); "LPL's Answer and Counterclaims against Plaintiff and Additional Parties CMO USA and CMO and CMO (US)," filed on or about June 11, 2007 ('357 Case, Docket Entry No. 73); "LPL's

2

Answer to CMO USA's Amended Counterclaims and Additional Counterclaims against CMO USA," filed on or about July 24, 2007 ('357 Case, Docket Entry No. 102); "LPL's Answer to CMO's Amended Counterclaims and Additional Counterclaim against CMO," filed on or about July 24, 2007 ('357 Case, Docket Entry No. 103); "LPL's First Amended Answer to CMO's Amended Counterclaims and Additional Counterclaims," filed on or about August 8, 2007 ('726 Case, Docket Entry No. 124); "LPL's First Amended Answer to CMO USA's Amended Counterclaims and Additional Counterclaims," filed on or about August 8, 2007 ('726 Case, Docket Entry No. 125).

K.    The term "'002 Patent" refers to U.S. Patent No. 5,019,002 entitled "Method of manufacturing flat panel backplanes including electrostatic discharge prevention and displays made thereby" issued on May 28, 1991.

L.    The term "'449 Patent" refers to U.S. Patent No. 5,825,449 entitled "Liquid crystal display device and method of manufacturing the same" issued on October 20, 1998.

M.    The term "'737 Patent" refers to U.S. Patent No. 4,624,737 entitled "Process for producing thin-film transistor" issued on November 25, 1986.

N.    The term "'274 Patent" refers to U.S. Patent No. 5,748,266 entitled "Thin-film transistor and method of making same" issued on May 18, 1999.

O.    The term "'321 Patent" refers to U.S. Patent No. 6,815,321 entitled "Thin-film transistor and method of making same" issued on November 9, 2004.

P.    The term "'489 Patent" refers to U.S. Patent No. 7,176,489 entitled "Thin-film transistor and method of making same" issued on February 13, 2007.

Q.    The term "'374 Patent" refers to U.S. Patent No. 7,218,374 entitled "Liquid crystal display device and method of manufacturing the same" issued on May 15, 2007.

R.    The term "'984 Patent" refers to U.S. Patent No. 6,803,984 entitled "Method and apparatus for manufacturing liquid crystal display device using serial production processes" issued on October 12, 2004.

S.      The term "LGD Patents in Suit" as used herein refers to the eight patents that LPL

has asserted against CMO and CMO USA as follows:  the '002 Patent, the '449 Patent, the '737

Patent, the '274 Patent, the '321 Patent, the '489 Patent, the '374 Patent, and the '984 Patent.

T.      The "'352 Patent" refers to United States Patent No. 5,619,352.

U.      The "'092 Patent" refers to United States Patent No. 6,134,092.

V.      The "'786 Patent" refers to United States Patent No. 6,008,786.

W.      The "'923 Patent" refers to United States Patent No. 6,013,923.

X.      The "'179 Patent" refers to United States Patent No. 7,280,179.

Y.      The "'926 Patent" refers to United States Patent No. 6,734,926.

Z.      The term "CMO Patents in Suit" as used herein refers to the six patents that CMO

has asserted against LGD and/or LGDA as follows:  the '352 Patent, the '092 Patent, the '786

Patent, the '923 Patent, the '179 Patent, and the '926 Patent.

AA.      The term "Related Patent(s) and/or Application(s)" as used herein in connection

with a given patent means (a) any U.S. or foreign patent or patent application, regardless of

whether abandoned or not, that relate to the given patent or its application(s) by way of subject

matter or claimed priority date, (b) all parent, divisional, continuation, continuation-in-part,

reissue, reexamination, extension, and foreign counterpart patents and applications, and (c) any

patent or patent application filed by one or more of the same applicant(s) (or his or her assignees)

that constitutes or refers to any of the application(s) that led to issuance of the given patent.

BB.      The term "Relevant Filing Date" refers to the filing date of each LGD Patent in

Suit or the filing date of any U.S. patent application for which a LGD Patent in Suit claims

priority under the patent statute.  These dates are:  July 12, 1988 for the '002 Patent; March 15,

1996 for the '449 Patent; June 10, 1985 for the '737 Patent; August 27, 1997 for the '274 Patent;

August 27, 1997 for the '321 Patent; August 27, 1997 for the '489 Patent; June 28, 2002 for the

'374 Patent; and April 24, 2002 for the '984 Patent.

CC.      The term "Product(s)" means any tangible item, including, without limitation,

models, prototypes and samples of any composition, device, or apparatus.

4

DD.    The term "CMO Product(s)" as used herein means those products made to specifications suitable for sale in the United States, shipped directly to the United States, and accused of infringement by LG Display in its infringement contentions.

EE.    The term "CMO USA Product(s)" as used herein means any and all Products made, sold, or licensed by or on behalf of CMO USA to specifications suitable for sale in the United States, shipped directly to the United States, and accused of infringement by LG Display in its infringement contentions.

FF.    The term "LGD Product(s)" as used herein means any and all Products made, sold, or licensed by or on behalf of LGD.

GG.    The term "LGDA Product(s)" as used herein means any and all Products made, sold, or licensed by or on behalf of LGDA.

HH.    "LCD Display Product(s)" as used herein means any device that contains and LCD module.  An LCD computer monitor, LCD television, laptop computer, and any telephone or other portable or handheld product incorporating an LCD module are examples of LCD Display Products.

II.    "LCD Module(s)" as used herein means an LCD display component that includes, inter alia, an LCD panel, a backlight unit, and driver ICs.

JJ.    "LCD Panel(s)" as used herein means an LCD display component that includes a TFT array and color filter with liquid crystal material between them.

KK.    "LCD Product(s)" as used herein means all LCD Display Products, and parts and components thereof, including, without limitation, LCD Modules and LCD Panels.

LL.    "LCD Technology" as used herein means technology applicable to all aspects of the manufacture, assembly, and packaging of LCD Products.

MM.    The term "Relevant LGD Product (s)" as used herein includes (1) each separate product version or prototype that has ever implemented, embodied, or used the subject matter of any claim of any of the LGD Patents in Suit, and (2) any other LCD Display Product and/or LCD Module that has been manufactured, tested, offered for sale, and/or sold by or for LGD within

5

one year before and one year after the respective Relevant Filing Date for each of the LGD
Patents in Suit. The Relevant LGD Products are limited to (a) products that were, have been, or
currently are, manufactured in the United States by or for LGD, (b) products that were, have
been, or currently are, tested in the United States by or for LGD; (c) products that were, have
been, or currently are, sold in the United States by or for LGD (direct or indirectly), (d) products
that were, have been, or currently are, offered for sale in the United States by or for LGD,
(e) products that were, have been, or currently are, imported into the United States by or for
LGD; and (f) all other LCD Display Products and/or LCD Display Modules that have been
manufactured, tested, offered for sale, and/or sold by or for LGD anywhere in the world within
one year before and one year after the respective Relevant Filing Date for each of the LGD
Patents in Suit.

NN.     The term "Prior LGD Products" shall mean each separate product version or
prototype that has ever implemented, embodied or used the subject matter of any claim of any of
the LGD Patents in Suit, and which are made, used, offered for sale, or sold in the United States,
or imported into the United States more than one year prior to the respective Relevant Filing
Date for each of the LGD Patents in Suit.

OO.     The term "Conception" means the "formation in the mind of the inventor, of a
definite and permanent idea of the complete and operative invention, as it is hereinafter to be
applied in practice." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed.
Cir. 1986), quoted in *Trovan, Ltd v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002).

PP.     The term "Communications" refers to any form of interpersonal communication,
including without limitation any transmission, conveyance, or exchange of word, statement, fact,
thing, idea, document, instrument, data, or information, by any medium whether written, verbal,
non-verbal or any other means, including without limitation electronic communications and e-
mails.

QQ.    The term "Person" refers to any natural person, company, corporation, partnership, firm, association, government agency or other organization cognizable at law, and its agents and employees.

RR.    The term "Documents" shall have the broadest scope permissible under the *Federal Rules of Civil Procedure* and includes, for example, all writings, drawings, graphs, charts, photographs, phono-records, schematics, layouts, specifications, data sheets, application notes, marketing presentations and materials, internal presentations, design reports, hardware source code (including, for example, verilog), software source code (including, for example, firmware), pseudocode, timing diagrams, waveform diagrams, test reports, customer complaints and responses, engineering change notices, modification histories, white papers, assembly diagrams, assembly drawings, and assembly instructions, whether or not such documents are claimed to be privileged or confidential, and within the Plaintiffs possession, custody, or control as set forth in Rule 34(a) of the *Federal Rules of Civil Procedure*. The term "document" also refers, in addition to the original or original copy, to all copies of any kind that contain any alteration, marking, or omission, or which in any other way are not identical to the original or original copy and all drafts or notes made in the preparation of each document. The term "document" shall further refer to and include all electronic data (including, for example, executable files) in whatever form it may exist.

SS.    The term "Thing" encompasses without limitation all tangible Things which constitute or contain matters within the scope of Rule 26(b) of the *Federal Rules of Civil Procedure* and which are in the possession, custody, or control of the Plaintiff as set forth in Rule 34(a) of the *Federal Rules of Civil Procedure*.

TT.    The term "Identify" as used herein shall refer to the following: (a) With respect to a natural person to provide: full name; present or last known business address and telephone number; present or last known residential address and telephone number; and occupation and business position or title held; (b) With respect to a legal or business entity, to provide: full name; place of incorporation or organization (if any); principal place of business; and

7

identification of any representative of such entity who has knowledge Relating to any information in connection with which such entity has been identified; (c) With respect to any document or thing, to provide: the date the document or thing bears or was prepared or transmitted; the identity of each person who authored, signed, created or prepared the document or thing; the identity of each addressee and recipient of the document or thing; its title and general character (subject matter); the number of pages in the document; the identity of the persons having possession, custody or control of the original or copies of the document or thing; the present location of the document or thing; and for each document or thing that you contend is privileged, immune or otherwise excludable from discovery, the basis for such claim of privilege, immunity or exclusion (in sufficient detail for the Court to rule on such claim) and whether you would be willing to produce such document or portions of such document under a suitable protective order.

UU.    "Relating to," "Relate to," "Related to," and "Referring to" mean any given subject as used herein means pertaining to, alluding to, responding to, Referring to, commenting on, regarding, recording, evidencing, containing, setting forth, reflecting, illustrating, showing, discussing, disclosing, describing, explaining, summarizing, supporting, contradicting, refuting, or concerning, whether directly or indirectly.

VV.    Whenever appropriate, the singular form of a word shall be interpreted in the plural, or vice versa; verb tenses shall be interpreted to include past, present and future tenses; and the terms "and" as well as "or" shall be construed either disjunctively or conjunctively.

**Deposition Topics**

1.    The optical and display materials, including optical films, compensators and polarizers, used in LCD panels that you offer for sale or have sold.

2.    The optical and related structural characteristics, including but not limited to the crystal director, the optical symmetry axis, the tilt angle, and the azimuthal angle of the optical symmetry axis, of optical and display materials used in LCD panels that you offer for sale or have sold.

3.    The timing control hardware, software, or firmware, including but not limited to the details of any integrated circuit and/or firmware related to changing grey scale data signals, used in LCD panels that you offer for sale, offered for sale, sold or have sold.

4.    The manufacturing process for the thin-film transistor arrays, including but not limited to the materials used in each layer, the order of depositing the layers, the components formed, the connections between layers and components (including by use of any vias or connecting holes to connect different conductive layers), and the related mask files, used in LCD panels that you offer for sale, offered for sale, sold or have sold.

5.    The structure and related method shown in Figures 1A-1F and described in the specifications of the '274, '381 and '489 Patents.

6.    Any design, analysis, fabrication, testing and reports of a transistor with a double-layered gate where a first metal layer of the gate has width that is about 1 $\mu$m to 4 $\mu$m wider than a width of a second metal layer, and any method used to fabricate such a transistor.

7.    The specifications, tests and reports relating to the determination of viewing angles listed in the LG product specifications, including compliance with any industry standards that are or are not set by a standards body.

8.    Any analysis, testing and reports regarding the illuminance of LCD panels, including the optical power distribution across such panel, that you have offered for sale or sold.

9.    The optical properties and materials of any LED, point light source, or related housing or structure used to illuminate LGD's and LGDA's LCD Products.

10.    The design of any circuitry, including but not limited to the components used, the interconnections, and any portions removed before final assembly, that provides protection from electrostatic discharge in LGD's and LGDA's LCD Panels.

11.    LGD's investigation of any CMO Product prior to the filing of This Case, including but not limited to, the testing procedures and equipment used in such investigations, and any documents, things or tests concerning any such investigations, LGD's basis for contending that CMO infringes the LGD Patents in Suit, any pre-litigation determination by or

9

on behalf of LGD of infringement or non-infringement of any LGD Patents in Suit by an CMO Product, any decision to exclude any CMO Product from the litigation, and any decision not to assert any LGD Patents in Suit against CMO Products.

12.    Whether the alleged inventions of the LGD Patents were known or used in the U.S. or patented or described in a printed publication in the U.S. or elsewhere, prior to their alleged invention by the inventors named in the LGD Patents, and whether the alleged inventions were patented or described in a printed publication anywhere, or were in public use or on sale (or were the subject of an offer for sale) in the U.S. more than one year prior to the dates on which the applications that resulted in the issuance of the respective LGD Patents were filed.).

13.    The prosecution of the LGD Patents in Suit and the Related Patents and/or Patent Applications, including, without limitation, any considerations of what to include in the application or prosecution documents; draft of the applications; the naming of inventors or any amendment thereof; the preparation of the patent application; any amendments; any response to Patent Office actions; any discussion with the United States Patent and Trademark Office; any search, study, investigation, review, opinion or analysis concerning the validity, enforceability, invalidity or unenforceability of the patents; all patents, references, devices, and/or other potential prior art reviewed, consulted, considered, or disclosed including, without limitation, any prior art or potential prior art cited by or to the United States Patent and Trademark Office or foreign patent office; all communications relating to prior art or potential prior art; and any United States or foreign litigation, interference, reexamination, reissue, cancellation proceedings involving or relating to the LGD Patents in Suit in Suit and the Related Patents and/or Patent Applications, and/or relating to the products, devices, services, or activities covered by the LGD Patents in Suit.

14.    Non-infringing alternatives and substitutes for the alleged inventions disclosed in the LGD Patents in Suit.

15.    The conception, actual reduction to practice, and diligence in reduction to practice of each alleged invention related to the LGD Patents in Suit, including, without limitation, the

purported inventions described and claimed in the LGD Patents in Suit, the acts of conception and reduction to practice, the relative contributions of joint inventors (where applicable), all documents recording test data that provide the basis for information stated in the specification or any figures of the LGD Patents in Suit or presented in declarations filed in the prosecution of the LGD Patents in Suit or any Related Patents and/or Applications, or identified on the face of the patent, the testing procedures and equipment used to obtain such information, and any drawings or documentation relating to the making and testing of any prototypes of the claimed invention including those relied on for reduction to practice.

16. All information known to LGD that Relates to (a) prior art OR potential prior art to the LGD Patents in Suit and any Related Patents and/or Applications; (b) preexisting methods, systems, products, OR descriptions that relate OR might relate to the subjects of the alleged inventions of the LGD Patents in Suit and any Related Patents and/or Applications; OR (c) prior art OR patent search results that relate to the subject matter of the alleged inventions of the LGD Patents in Suit and any Related Patents and/or Applications.

17. All information known to LGD which constitutes objective evidence that the inventions claimed in LGD Patents in Suit would not have been obvious to person of ordinary skill in the art to which the inventions pertained at the time they were made including, but not limited to, evidence of such considerations as commercial success, long-felt need, failure of others or accolades in the technical community.

18. LCD's acquisition of rights to any LGD Patents in Suit, including but not limited to: (i) all agreements executed by any inventor of any LGD Patent that refer or relate to the transfer of ownership of such inventor's alleged invention or patent rights; and (ii) any assignment, sale or transfer of any rights relating to any LGD Patents in Suit, including but not limited to any consideration, efforts, or attempts to assign, sell, transfer or license the right to practice the subject matter covered by the LGD Patents in Suit.

19. All communications between LGD and any owner of the LGD Patents in Suit regarding technologies related to those disclosed in the LGD Patents in Suit, including without

11

limitation communications between LGD on the one hand, and Philips, Honeywell, LGE, and/or Seiko on the other hand

20.    Any evaluation and/or analysis of the LGD Patents in Suit conducted by or on behalf of LGD.

21.    All communications between LGD and any person concerning licensing of the LGD Patents (whether individually or as part of a portfolio), the identity and job descriptions of participants in such communications or meetings, the timing of such communications, and the substance of issues discussed or addressed (for example, agreements, contracts, assignments, or licenses).

22.    All former, current, and proposed LGD policies, practices or strategies concerning the licensing or valuation of patents, and all relevant factors that LGD considers when negotiating license agreements or attempting to determine the value of patents.

23.    All agreements concerning LCD Technology, including, but not limited to, technology transfer agreements, settlement agreements, covenants not to sue, contracts, assignments, and licenses executed, sold, negotiated, requested or offered by or to LGD and/or LGDA.

24.    All efforts to enforce, negotiate, license, transfer, or sell any right, title or interest concerning the LGD Patents in Suit (whether individually or as part of a portfolio), or technology related to that disclosed in the LGD Patents in Suit, including, but not limited to, technology transfer agreements, settlement agreements, covenants not to sue, contracts, assignments, and licenses executed, sold, negotiated, requested or offered by or to LGD.

25.    The identification of all Relevant LGD Products.

26.    For any Relevant LGD Products:  (a) LGD's forecasts or projections of unit pricing for sales of such products; (b) LGD's standard pricing for such products and the pricing trends for this technology (decreasing, increasing, etc.); (c) LGD's procedures, policies, and practices for setting sales prices for such products, including discounts.

12

27.     LGD's costs, actual and standard, incurred in, or attributed to, the development and manufacture of any Relevant LGD Products.

28.     The profitability and financial results (net sales, sales dollars, gross margins, etc.) of sales of each Relevant LGD Product.

29.     The profitability, including but not limited to, any and all profit and loss statements indicating the financial results (net sales, sales dollars, gross margins, etc.), for LGD and/or each LGD division or affiliate that sells (or has sold) Relevant LGD Products.

30.     LGD' s convoyed sales or bundling of any Relevant LGD Products.

31.     LGD's sales, revenues, income received, and gross and net profits derived or earned from the repair, service, maintenance, or technical assistance for any Relevant LGD Products.

32.     LGD' s business strategy with respect to the marketing and sale of any Relevant LGD Products, either directly or indirectly, to customers in the United States, including, but not limited to, forecasts and market studies.

33.     Marketing data related to each Relevant LGD Product, including internally developed market studies, market forecasts, research reports, business plans, competitive analyses, sale projections, strategic plans and marketing plans, as well as externally purchased industry or market reports or analyses related to the trends, growth and competition in the market for the subject class of products.

34.     The identity of the manufacturer(s) of the LCD Panels, LCD Modules, LCD Monitors, and/or other parts or components contained in each of the Relevant LGD Products, and LGD's relationship to the manufacturer(s).

35.     For each Relevant LGD Products, the identification of each LGD Patent in Suit that allegedly describes an invention embodied in such Relevant LGD Product, and the identification of the specific asserted claim(s) of each LGD Patent in Suit that allegedly describe(s) an invention embodied in such Relevant LGD Product.

36.    The design, structure, operation, or implementation of any of the purported inventions of the LGD Patents in Suit in any Relevant LGD Products.

37.    All royalties paid by LGD in connection with the sale of each Relevant LGD Product, and the identification of any licensee and terms or any agreement related thereto.

38.    The identity of any and all Prior LGD Products.

39.    The date of first sale, use, offer for sale in the United States, or importation into the United States of Prior LGD Products.

40.    The organizational structure of your departments, divisions, teams, units, and employees that are involved in the research, design, development, fabrication, manufacture, marketing, and sale of LGD Products, including LCD Products, and including the allocation of their functions and responsibilities for specific products, customers, and geographic areas.

41.    The relationship between LGD and LGDA, including, but not limited to, LGD's ownership interest in LGDA since its inception, and the nature of transactions, support, marketing, and business between LGD and LGDA, including with respect to importing, marketing, selling and/or delivering LGD Products in the U.S.

42.    LGD's document retention and destruction policies, procedures, manuals or guidelines; the identity, location, custody, and control of all documents relating or referring to the topics listed herein, and LGD's effort to collect and product relevant information and documents and any decisions not to produce certain categories of documents.

43.    The identity of LGD Products, including corresponding product designations, model numbers, and part numbers, and the meaning or significance of each alpha-numeric character or identifier used with respect to LGD Products.

44.    The types of documentation created in the conception, design, development, research, testing, simulation, reduction to practice, manufacturing, assembly, packaging, testing, and analysis of any LGD LCD Product; how such documents are prepared and used; and LGD's procedures for maintaining such documents and the locations at which such documents are

maintained. (The witness will be asked to provide and explain representative samples of each such type of document.)

45.    The design and development of LGD Products, including, but not limited to, products accused of infringing one or more claims of the CMO Patents in Suit and all reasonably similar products.

46.    The procedures, methods, materials and equipment used to manufacture LGD Products, including substrate manufacture (e.g., TFT and/or Color Filter), cell assembly and LCD display assembly.

47.    Testing, analysis, and/or evaluation concerning performance, produceability, operation, yield, reliability, fault, or quality control, of LGD Products, including components or structures of TFT arrays and LCD panels.

48.    As to all products accused of infringing one or more claims of any CMO Patents in Suit, including all products that could be considered reasonably similar to such accused products, the designs, structures, procedures, process conditions, equipment used, materials, functions, operation, absence, used, and/or purpose of the following with respect to your products and manufacturing:

    (a)    methods and means for sealing the LCD cell; and

    (b)    placement of control circuitry in the LCD display.

49.    All LGD Customers, Brands, distributors, channels, and networks through which LGD Products, separately or as part of LCD Display Products, have, either directly or indirectly, been marketed shipped imported, transferred, sold, and/or distributed, and relevant documents.

50.    All LGD Customers (including Brands that use LGD Products) that have used, ordered, purchased, or approved for use LGD Products, including the identity of all such customers and Brands, any contracts, agreements, or contractual or business arrangements between you and such entities, the models and quantities of your products offered, sold, or supplied to or for each customer and Brand, and relevant documents.

51.    The definition and extent of the U.S. market and North American market for LCD Display Products, LCD Modules, and LCD Panels.

52.    LGD's communications with and/or participation in DisplaySearch, the Standard Panels Working Group (SPWG), the Panel Standardization Working Group (PSWG), and similar organizations, concerning the importation, manufacture, distribution, marketing, advertising, purchase or sale of any LCD Display Products, LCD Modules, LCD Panels or LGD Products.

53.    The extent to which LGD Products have been and can lawfully be imported or sold in the U.S., including legal and regulatory requirements that apply, which LGD Products comply, and communications within LGD, or with any United States government or regulatory agency or department, concerning United States requirements, regulations, and laws applicable to LGD Products.

54.    The ways that LGD and LGDA develop, support, and interact with LGD Customers (including Brands that use LGD Products) that import or sell LCD display products in the U.S., including contracts, meetings, presentations to such companies in the U.S. or abroad, teleconferences with such companies, service and support visits to such companies, and sales-related meetings and discussions with such companies, as well as who participates in such events and how often,

55.    For each LGD Product, the quantity made, offered for sale, sold, and shipped by or for you, either directly or indirectly, on a monthly basis, as to each LGD Customer, and all related pricing information.

56.    The types and categories of documents, reports, forecasts, and projections that LGD receives or has received, creates or has created, generates or has generated, maintains or has maintained, including the computer databases or document management systems in which such documents are located, concerning LGD Customers and/or the manufacturing, marketing, advertising, importation, distribution, purchase, sale, offer for sale, and/or profitability of LGD Products.

57.    Any belief by LGD that its products do not infringe any claim of the CMO Patents in Suit, and the basis for that belief including, but not limited to, any investigation or analysis and any advice of counsel.

58.    Any change made or considered as to the design, manufacturing, sale, or assembly of LGD Products after learning of the CMO Patents in Suit.

59.    The entire factual basis for each affirmative defense asserted by you against CMO and/or CMO USA, including all facts and documents that support or refute each affirmative defense. Specifically, these affirmative defenses include:

- That CMO has failed to state a claim for which relief can be granted.

- That one or more claims of the '092 Patent, the '179 Patent, the '786 patent, the '923 patent, the '352 patent, and the '926 patent (collectively "the CMO Patents") are invalid for failing to meet one or more of the requisite conditions or requirements for patentability specified by 35 U.S.C. §§ 101, 102, 103, and/or 112.

- That LGD's products have not and do not infringe any claim of the CMO Patents, either literally or under the doctrine of equivalents.

- That LGD has not directly or indirectly contributed to infringement of, nor induced another to, infringe the CMO Patents.

- That pursuant to 35 U.S.C. § 287(b), LGD is not liable for damages for infringement under any section of 35 U.S.C. § 271 before receiving notice of CMO's allegations of infringement in this action.

- That CMO is not entitled to injunctive relief because, among other things, any injury to it is not immediate or irreparable and CMO has an adequate remedy at law.

- That CMO's '179 Patent is unenforceable due to inequitable conduct, including, but not limited to the allegations set forth in LGD's Counterclaim Count IX

17

Claim for Declaratory Judgment of Non-infringement of the '092 Patent and the '179 Patent Against CMO.

- That CMO's claims are barred, in whole or in part, because of the affirmative defense of license.

60.    The design, components, manufacture, production and structure of optical and display materials used in LCD panels that you offer for sale or have sold.

61.    Third party suppliers of materials or components used in the manufacture or production of optical display materials used in LCD panels that you offer for sale or have sold.

62.    Communications, meetings, and negotiations between you, CMO and/or AUO concerning the Patents in suit or Foreign Counterparts of the Patents in suit, including the identity and job descriptions of participants in such communications or meetings, and the substance of issues discussed or addressed.

63.    Communications, meetings, and negotiations between you and any other person concerning the Patents in suit or Foreign Counterparts of the Patents in suit (whether individually or as part of a portfolio), including the identity and job descriptions of participants in such communications or meetings, and the substance of issues discussed or addressed.

64.    Draft and final agreements, contracts, and/or assignments exchanged and/or signed with CMO and AUO concerning the Patents in suit, Foreign  Counterparts of the Patents in suit, or optical and display materials that can be used in LCD panels that you offer for sale or have sold.

65.    All other agreements or contracts between you, CMO, and/or AUO.

## ATTACHMENT B

1.    All documents and things considered, reviewed, or prepared by LGD in the course of preparing for the Rule 30(b)(6) deposition on the subjects listed in Attachment A.

2.    All documents previously requested by CMO and not yet produced by LGD.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on July 18, 2008, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

| BY CM/ECF, HAND DELIVERY AND E-MAIL | BY CM/ECF, HAND DELIVERY AND E-MAIL |
|---|---|
| Richard E. Kirk, Esq. | John W. Shaw, Esq. |
| Ashley Blake Stitzer, Esq. | Karen L. Pascale, Esq. |
| The Bayard Firm | Young Conaway Stargatt & Taylor LLP |
| 222 Delaware Avenue | The Brandywine Building |
| Suite 900 | 1000 West Street, 17th Floor |
| P.O. Box 25130 | Wilmington, DE 19801 |
| Wilmington, DE 19899 | jshaw@ycst.com |
| rkirk@bayardfirm.com | kpascale@ycst.com |
| astitzer@bayardfirm.com | |

I hereby certify that on July 18, 2008 I have sent by E-mail the foregoing document to the following non-registered participants:

| | |
|---|---|
| Gaspare J. Bono, Esq. | Vincent K. Yip, Esq. |
| Matthew T. Bailey, Esq. | Peter J. Wied, Esq. |
| Lora A. Brzezynski, Esq. | Jay C. Chiu, Esq. |
| Cass W. Christenson, Esq. | Katherine F. Murray, Esq. |
| R. Tyler Goodwyn, IV, Esq. | Ms. Denise Esparza |
| McKenna Long & Aldridge LLP | Paul Hastings Janofsky & Walker LLP |
| 1900 K Street, NW | 515 South Flower Street |
| Washington, DC 20006 | Los Angeles, CA 90071 |
| gbono@mckennalong.com | vincentyip@paulhastings.com |
| mbailey@mckennalong.com | peterwied@paulhastings.com |
| lbrzezynski@mckennalong.com | jaychiu@paulhastings.com |
| cchristenson@mckennalong.com | katherinemurray@paulhastings.com |
| tgoodwyn@mckennalong.com | deniseesparza@paulhastings.com |

Ron E. Shulman, Esq.
Julie M. Holloway, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050
rshulman@wsgr.com
jholloway@wsgr.com

M. Craig Tyler, Esq.
Brian D. Range, Esq.
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759
ctyler@wsgr.com
brange@wsgr.com


*/s/ Philip A. Rovner*
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

2