# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG DISPLAY CO., LTD.,       ) | |
| ) | |
|        Plaintiff,       ) | Civil Action No. 06-726 (JJF) |
| ) | Civil Action No. 07-357 (JJF) |
|        v.       ) | |
| ) | CONSOLIDATED CASES |
| CHI MEI OPTOELECTRONICS       ) | |
| CORPORATION, et al.       ) | |
| ) | |
|        Defendants.       ) | |
| ) | |

---

## DEFENDANT CHI MEI OPTOELECTRONICS CORPORATION'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO
## LIMIT THE NUMBER OF PATENTS-IN-SUIT AND STAY THE REMAINDER

OF COUNSEL:

Jonathan S. Kagan
Alexander C.D. Giza
Adam Hoffman
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010

Dated: August 5, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS ....................................................1

II.   SUMMARY OF ARGUMENT ............................................................................2

III.  STATEMENT OF FACTS .................................................................................2

IV.   ARGUMENT ....................................................................................................4

      A.   The Court Must Construe All Elements Whose Scope Is In
           Fundamental Dispute ............................................................................4

      B.   The Court Should Exercise Its Discretion To Reduce The Patents-In-
           Suit And Limit Claims In The Interest Of Judicial Economy................5

V.    CONCLUSION .................................................................................................7

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ampex Corp. v. Eastman Kodak Co.,*
    460 F. Supp. 2d 541 (D. Del. 2006)............................................................................ 5

*Ethicon, Inc. v. Quigg,*
    849 F.2d 1422 (Fed. Cir. 1988)................................................................................. 2

*Hearing Components, Inc. v. Shure, Inc.,*
    Civil Action No. 9:07-cv-104, 2008 WL 2485426 (E.D. Tex. June 13, 2008) ........... 6

*Hunter Eng'g Co. v. ACCU Indus., Inc.,*
    245 F. Supp. 2d 761 (E.D. Va. 2002) ........................................................................ 6

*Intel Corp. v. Broadcom Corp.,*
    173 F. Supp. 2d 201 (D. Del. 2001)........................................................................... 7

*Kearns v. General Motors Corp.,*
    33 U.S.P.Q. 2d 1696 (Fed. Cir. 1994)........................................................................ 6

*Landis v. North Am. Co.,*
    299 U.S. 248 (U.S. 1936)....................................................................................... 2, 5

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995).................................................................................. 4, 5

*Maytag Corp. v. Electrolux Home Prod., Inc.,*
    411 F. Supp. 2d 1008 (N.D. Iowa 2006).................................................................... 5

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
    521 F.3d 1351 (Fed. Cir. 2008)..................................................................... 2, 3, 4, 5

## I.    NATURE AND STAGE OF PROCEEDINGS

This consolidated case involves twenty-three patents owned by three different parties. On June 24, 2008, the parties exchanged lists of claim elements believed to require construction by the Court. Collectively, the parties identified over 500 claim elements. Since that time, the parties have met and conferred in an attempt to reduce the disputed claim elements to a more manageable number. After a prolonged meet and confer process, **the parties now collectively believe that over 300 claim elements require construction**. Opening claim construction briefs are due on August 11, 2008, and the *Markman* hearing is scheduled for September 18, 2008.

During the February 14, 2008 status conference, the Court stated that "I would imagine that at some point the twenty-one [actually, twenty-three] patents would be narrowed to some hopefully more manageable number." Ex. A at 9 (hearing transcript). Chi Mei Optoelectronics ("CMO") respectfully submits that the point for narrowing the twenty-three patents to a more manageable number has arrived. Because the parties cannot reasonably expect the Court to construe all 300-plus disputed claim elements, CMO requests that the Court exercise its discretion to narrow the case to a manageable size commensurate with the number of patents and claims that are reasonably likely to be presented to a jury at trial. Given the present stage of proceedings, the parties would benefit by focusing claim construction and subsequent proceedings – including witness depositions, expert reports, summary judgment motions, and eventual trial – on a more limited number of patents, while the remaining patents can be bifurcated and stayed pending resolution of a first jury trial.

CMO specifically recommends and requests that the Court narrow further proceedings, including claim construction, to four patents-in-suit for each party with three asserted claims per patent, while staying all proceedings on the remaining patents-in-suit. Under these terms, each party would elect the four patents-in-suit and a total of twelve claims on which it would like to

proceed. This plan would provide for a total of twelve patents going forward, a number more manageable than the twenty-three patents currently at issue.

## II.   SUMMARY OF ARGUMENT

1.   The Federal Circuit recently clarified that "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). The parties currently dispute the meaning and scope of over 300 claim elements. Accordingly, absent a limitation in the number of patents-in-suit and asserted claims, the Court's claim construction obligation under *O2 Micro* is exceedingly onerous and an unnecessary burden on judicial resources.

2.   "Courts have inherent power to manage their dockets and stay proceedings." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254 (U.S. 1936)). By exercising its inherent power to stay proceedings relating to roughly half of the patents-in-suit and further limiting the parties to three claims per patent, the Court can focus proceedings at a relatively early stage, allowing for manageable claim construction proceedings and streamlining the case towards a more focused trial.

## III.   STATEMENT OF FACTS

The parties substantially completed their document productions and exchanged written discovery in this case on June 18, 2008. However, fact discovery does not close for another four and a half months, on December 17, 2008, and substantial fact discovery remains. *See* D.I. 194. LGD, for its part, has yet to provide substantive infringement contentions for any of its asserted patents, and no party has taken any depositions. Expert discovery has yet to commence. *Id.* Also, pending before the Court are CMO's and AUO's requests that certain discovery deadlines

be extended in light of CMO's motion to consolidate this case with the case recently transferred from Texas. *See* D.I. 296, 335.

Claim construction proceedings commenced on June 24, 2005, when the parties identified over 500 claim elements believed to require construction. At that time, all the parties realized that measures needed to be taken to reduce the number of disputed claim elements. *See* Ex. B (e-mail exchange). On July 10, 2008, counsel for CMO e-mailed counsel for LGD and AUO, proposing that the parties limit the number of elected patents and claims and stay the remaining patents, which would serve to limit the number of elements in dispute. *Id.* Counsel for CMO noted the recent Federal Circuit holding in *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), which requires courts to resolve any fundamental dispute over the scope of a claim element. Ex. B. CMO explained that by reducing the number of patents-in-suit, the parties could reduce the Court's burden under *O2 Micro* and focus the case for trial. *Id.*

At that time, counsel for LGD rejected CMO's proposal. *Id.* In a July 16, 2008 e-mail, counsel for LGD wrote that LGD does "not feel it is necessary to reduce patents at this time for the parties to be able to agree to reduce terms for construction." *Id.* Along the lines of LGD's proposal, the parties subsequently engaged in extensive meet and confer negotiations to reduce the number of disputed claim elements. The parties were successful in reducing the number of disputed elements from over 500 to the approximately 312 elements identified in the parties' June 29, 2008 Joint Claim Construction Statement. D.I. 363. Absent the Court's intervention, it is unclear whether the parties can successfully reduce the number of claim elements in dispute significantly further.

During the negotiations mentioned above, the parties continued to discuss the possibility of staying certain patents. For example, during a July 28, 2008 phone call, counsel for LGD proposed reducing the number of patents by three patents per party. Declaration of Maclain Wells in Support of Motion, ¶ 3. These discussions came to an end, however, when counsel for AUO wrote in an e-mail: "[h]aving further considered the proposal [to stay certain patents], AUO believes it is too early in the case to take this approach." *See* Ex. C. Because the parties appear to be at an impasse, CMO has filed this Motion with the Court.

## IV.   ARGUMENT

### A.   The Court Must Construe All Elements Whose Scope Is In Fundamental Dispute

Absent a narrowing of the patents-in-suit and asserted claims, the Court faces an unenviable task at claim construction. The parties in this case have identified over 300 disputed claim elements that they believe affect the validity or infringement of the patents-in-suit, which is the number of terms already negotiated down from the more than 500 terms initially identified by the parties. Since claim construction is a legal question, patent law requires the Court to resolve any dispute about the scope or meaning of a claim element that affects substantive issues. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 996 n.7 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) ("A claim must be construed before determining its validity just as it is first construed before deciding infringement."). Indeed, the Federal Circuit recently elaborated upon this principle in *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), holding that "[w]hen the parties present a fundamental dispute regarding the scope of a claim element, it is the court's duty to resolve it." Specifically, the Federal Circuit found that the trial court committed legal error by declining to construe the scope of the claim

4

term "only if" even though the proper scope of the term was material to the infringement inquiry.[1] *Id.*

Thus, if the Court declines to limit the number of patents-in-suit and asserted claims, the directive set forth in *O2 Micro* leaves the Court with two options – (1) construe all the 300-plus disputed claim elements at this time, or (2) construe only a limited subset of the 300-plus claims elements now but conduct additional claim construction proceedings as other disputed claim elements prove material, which would inevitably occur over the course of expert reports, summary judgment, or potentially during trial itself. The first option presents the Court with a Herculean task, while the second option presents a nightmare scenario of judicial inefficiency.[2] CMO, therefore, urges the Court to forego this no-win decision by exercising its discretion to reduce the number of patents now, near the start of claim construction, which will result in more manageable claim construction and subsequent proceedings en route to a more focused trial.

## B. The Court Should Exercise Its Discretion To Reduce The Patents-In-Suit And Limit Claims In The Interest Of Judicial Economy

The Court's inherent power to stay proceedings on certain patents-in-suit is well established and should be exercised based on the facts before the Court. *See Landis v. North Am. Co.*, 299 U.S. 248, 254 (U.S. 1936) ("The power to stay proceedings is incidental to the power

---

[1] CMO does not contend that *Markman* and *O2 Micro* require the Court to construe *every* claim element, nor do they prevent the Court from ordering the parties to limit the number of asserted claims. These cases do, however, require the Court to construe any disputed claim element, the scope of which bears on the determination of the claim's validity or infringement.

[2] In other circumstances, courts have construed only those disputed elements believed to affect the determination of validity or infringement. *See, e.g., Maytag Corp. v. Electrolux Home Prod., Inc.,* 411 F. Supp. 2d 1008, 1036 (N.D. Iowa 2006) (limiting claim construction in this manner and noting that this approach "may mean that the court will have to engage in another round of *Markman*-like claim construction"); *Ampex Corp. v. Eastman Kodak Co.,* 460 F. Supp. 2d 541, 543 n.1 (D. Del. 2006) ("By my count, the parties have asked me to construe 99 terms. . . . I have endeavored to construe only those terms that, based on the papers submitted, appear to be dispositive of issues brought to my attention."). This approach, however, would be unworkable here, as LGD still has not provided substantive infringement contentions, making it unclear how many of the disputed claim elements could potentially be dispositive in nature.

inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). *See also Hunter Eng'g Co. v. ACCU Indus., Inc.*, 245 F. Supp. 2d 761, 764 (E.D. Va. 2002) (noting that after the parties briefed eighteen patents-in-suit, "Judge Adelman decided to construe the claims relating to six of the patents (so-called 'accelerated patents') and to stay action on the remaining twelve"). Indeed, all the parties appear to recognize that the Court is unlikely to conduct a twenty-three-patent trial. *See* Ex. B. A partial stay now, early enough to precede claim construction, will permit the Court, counsel, and the litigants to avoid the immense time and effort of litigating patent claims that will in all likelihood be dropped before trial. Beyond the benefits to claim construction, the Court and the parties will benefit from more focused discovery, depositions (which have not yet started), remaining fact discovery including third-party discovery, expert reports, motion practice, summary judgment proceedings, and trial.

Reducing the number of claims to three claims per patent, for a total of twelve claims per party, is also prudent and within the Court's discretion. Indeed, courts have imposed similar limitations in less complex cases. For example, in *Hearing Components, Inc. v. Shure, Inc.,* Civil Action No. 9:07-cv-104, 2008 WL 2485426, at *1 (E.D. Tex. June 13, 2008), a case involving three patents-in-suit and claim elements from twelve claims, the Court denied a joint motion to extend the page limits for claim construction briefing and, instead, ordered the parties to limit the number of asserted claims to no more than three claims for each of the patents-in-suit. *See also Kearns v. General Motors Corp.,* 33 U.S.P.Q. 2d 1696, 1698 (Fed. Cir. 1994) (unpublished) (affirming district court's order dismissing case where party refused to limit the

6

number of asserted claims to one claim for each of five patents-in-suit pursuant to the "district court's reasonable order seeking to simplify a highly complex case").[3]

Moreover, it is likely that resolving the disputes surrounding the parties' selected patents first would obviate the need for further proceedings. Judicial economy therefore demands that CMO's proposal for reducing the number of patents and claims, or a similar proposal to reduce the patents-in-suit with a manageable number of claims, be adopted.

## V.    CONCLUSION

The number of claim elements at issue, which now stands at over 300, presents the Court with an unmanageable claim construction obligation. CMO therefore respectfully urges the Court to exercise its discretion to focus claim construction proceedings on roughly half of the patents-in-suit – four patents for each party and three claims for each such patent – while staying all proceedings on the remaining patents-in-suit.

---

[3] Simply limiting the number of asserted claims without an accompanying limitation on the number of asserted patents would not provide the same gains in judicial efficiency. In the short term, the Court would be presented with intrinsic evidence, and possibly extrinsic evidence, for twenty-three separate patents at claim construction. In the long term, the attention of the parties, their experts, the Court, and ultimately the jury would similarly be dispersed among a wide array of claimed inventions. *Cf. Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 205 (D. Del. 2001) ("In order to simplify the issues before the jury and to shorten the length of the jury trial, the court has . . . required that the trial proceed in two parts. The first trial is scheduled to begin on November 28, 2001, and will cover the 201 and the 830 patents. A subsequent trial will cover the remaining three patents.").

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Jonathan S. Kagan
Alexander C.D. Giza
Adam Hoffman
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010

By: _____
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, Delaware  19899-0951
    (302) 984-6000
    provner@potteranderson.com

Dated:  August 5, 2008
877211

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on August 5, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as indicated;

and that the document is available for viewing and downloading from CM/ECF.

**BY CM/ECF, HAND DELIVERY AND E-MAIL**

Richard E. Kirk, Esq.
Ashley Blake Stitzer, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardfirm.com
astitzer@bayardfirm.com

**BY CM/ECF, HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
kpascale@ycst.com

I hereby certify that on August 5, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

Gaspare J. Bono, Esq.
Matthew T. Bailey, Esq.
Lora A. Brzezynski, Esq.
Cass W. Christenson, Esq.
R. Tyler Goodwyn, IV, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
gbono@mckennalong.com
mbailey@mckennalong.com
lbrzezynski@mckennalong.com
cchristenson@mckennalong.com
tgoodwyn@mckennalong.com

Vincent K. Yip, Esq.
Peter J. Wied, Esq.
Jay C. Chiu, Esq.
Katherine F. Murray, Esq.
Ms. Denise Esparza
Paul Hastings Janofsky & Walker LLP
515 South Flower Street
Los Angeles, CA 90071
vincentyip@paulhastings.com
peterwied@paulhastings.com
jaychiu@paulhastings.com
katherinemurray@paulhastings.com
deniseesparza@paulhastings.com

Ron E. Shulman, Esq.
Julie M. Holloway, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050
rshulman@wsgr.com
jholloway@wsgr.com

M. Craig Tyler, Esq.
Brian D. Range, Esq.
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759
ctyler@wsgr.com
brange@wsgr.com

*/s/ Philip A. Rovner*
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

2

# Exhibit A

*LG Philips   v.*
*Chi Mei*

---

*Hearing*
*February 14, 2008*

---

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

*Original File LGPHIL~1.TXT, 14 Pages*
*Min-U-Script® File ID: 2625763646*

**Word Index included with this Min-U-Script®**

LG Philips   v.
Chi Mei

Hearing
February 14, 2008

| | Lawyer's Notes |
|---|---|

[1]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

L.G. PHILIPS LCD CO. LTD., ))

Plaintiff, ))

C.A. No. 07-357

v. ))

CHI MEI OPTOELECTRONICS CORPORATION, )

et al., )

Defendants. )

Thursday, February 14, 2008

3:30 p.m.

Courtroom 4B

844 King Street

Wilmington, Delaware

BEFORE:

THE HONORABLE JOSEPH J. FARNAN, JR.

United States District Court Judge

APPEARANCES:

BAYARD, P.A.

BY: RICHARD D. KIRK, ESQ.

-and-

McKENNA, LONG & ALDRIDGE

BY: GASPAR BONO, ESQ.

BY: TYLER GOODWYN, ESQ.

Counsel for the Plaintiffs

[2]

APPEARANCES (Cont'd:)

YOUNG CONAWAY STARGATT & TAYLOR

BY: KAREN PASCALE

BY: JOHN SHAW, ESQ.

-and-

PAUL HASTINGS

BY: PETER WIED, ESQ.

Counsel for the Defendant

AU Optronics Corporation

POTTER, ANDERSON & CORROON, LLP

BY: PHILIP A. ROVNER, ESQ.

-and-

JONES DAY

BY: KENNETH ADAMO, ESQ.

BY: ROBERT KARL, ESQ.

Counsel for the Defendant

Chi Mei Optoelectronics Corporation

LG Philips   v.
Chi Mei

|  | *Lawyer's Notes* |
|---|---|
| [1] | |
| [2] | |
| [3] | |
| [4] | |
| [5] | |
| [6] | |
| [7] | |
| [8] | |
| [9] | |
| [10] | |
| [11] | |
| [12] | |
| [13] | |
| [14] | |
| [15] | |
| [16] | |
| [17] | |
| [18] | |
| [19] | |
| [20] | |
| [21] | |
| [22] | |
| [23] | |
| [24] | |

**MR. KIRK:** Good afternoon, Your Honor.

**THE COURT:** Good afternoon.

**MR. KIRK:** Your Honor, this is Richard Kirk from Bayard, P.A. I represent the plaintiff, L.G. Philips LCD Company and with me on the line are two attorneys from McKenna, Long & Aldridge in Washington, they are Gaspar Bono, B-O-N-O, and Tyler Goodwyn, G-O-O-D-W-Y-N.

MR. ROVNER: Your Honor, this is Philip Rovner from Potter, Anderson on behalf of the Chi Mei entities. With me on the line is Ken Adamo and Bob Karl from Jones Day.

THE COURT: All right.

MS. PASCALE: Good afternoon, Your Honor. This is Karen Pascale and John Shaw from Young, Conaway for AU Optronics entities. And also on the line for AU Optronics we have Peter Wied, W-I-E-D from Paul Hastings in California, Julie Holloway from the Wilson Suncini firm in Pala Alto, California and also from Wilson Suncini Brian Ranke in the Austin, Texas office.

THE COURT: All right. Good afternoon.

[N23]

LG Philips   v.
Chi Mei

**Hearing**
**February 14, 2008**

| | | Lawyer's Notes |
|---|---|---|

[1]   **MR. KIRK:** This is Dick Kirk.
[2]   This call was prompted by our request on behalf
[3]   of L.G. Philips LCD for a status conference in
[4]   these consolidated cases. May I ask my
[5]   colleague, Mr. Bono to address the Court?
[6]   **THE COURT:** Yes.
[7]   **MR. BONO:** Good afternoon, Your
[8]   Honor. This is Gaspar Bono on behalf of L.G.
[9]   Philips.
[10]   Your Honor, we asked for this call
[11]   because we wanted to apprise the Court of the
[12]   status of the case, and also to ask for a
[13]   schedule from Your Honor so that this case can
[14]   be set to proceed against the defendants.
[15]   By way of a brief background, we
[16]   filed this case in December of 2006 against CMO,
[17]   AUO, Tatung and Viewsonic. And as we apprised
[18]   the Court, the Tatung and Viewsonic defendants
[19]   reached a settlement agreement with L.G.
[20]   Philips, all the claims between those parties
[21]   have been dismissed. That leaves the CMO
[22]   defendants and the AUO defendants.
[23]   The background as Your Honor may
[24]   remember is both AUO and CMO, rather than

Page 5

[1]   responding in this case initially, each filed
[2]   separate lawsuits. AUO filed a lawsuit in
[3]   Wisconsin in March of last year and CMO filed a
[4]   lawsuit in May of last year in Texas.
[5]   We moved to transfer both of those
[6]   cases to this Court under the first to file
[7]   rule. The Wisconsin court, Judge Shabaz,
[8]   transferred in May the AUO lawsuit from
[9]   Wisconsin to this Court and Your Honor
[10]   consolidated that case with this case in June of
[11]   last year.
[12]   Our motion to transfer the CMO
[13]   case is pending right now in front of Judge Ward
[14]   in the Eastern District of Texas.
[15]   With respect to AUO, all of the
[16]   pleadings have now been completed and issue is
[17]   joined and there are no motions pending with
[18]   respect to AUO, between AUO defendants and L.G.
[19]   Philips.
[20]   On the other hand, with respect to
[21]   CMO, CMO filed a motion to dismiss for lack of
[22]   personal jurisdiction and insufficient service,
[23]   L.G. Philips opposed that motion and we believe
[24]   that motion should be denied.

LG Philips    v.                                                    **Hearing**
Chi Mei                                                    **February 14, 2008**

Page 6                                                    *Lawyer's Notes*

[1] Also, L.G. Philips filed a motion
[2] for sanctions because we believe that CMO's
[3] motion was frivolous and should not have been
[4] filed, challenging jurisdiction.
[5] In addition, we filed an
[6] alternative motion for discovery, but that is an
[7] alternative motion because we believe we have
[8] already made a sufficient showing for purposes
[9] of personal jurisdiction against CMO.
[10]     I believe there is one other set
[11] of motions that are pending, which deals with
[12] the form of the pleadings as to the CMO.
[13] We filed an amended complaint as
[14] of right first against AUO, and then we filed an
[15] amended complaint against CMO before they filed
[16] any responsive pleadings. The parties have a
[17] disagreement on whether Rule 15 so provides for
[18] that. We believe we have a right to an amended
[19] complaint as a right, CMO thinks otherwise.
[20] We think it's really a nonissue
[21] because if we are right, that would end that,
[22] but even if we're not correct, we believe our
[23] filing should be treated as a motion for leave
[24] to amend and we see no reason why it would not

[1] be granted.
[2] So we're asking the Court to set a
[3] schedule so those motions can be promptly
[4] resolved and the case can move forward.
[5]     **THE COURT:** All right. Did CMO
[6] want to be heard?
[7]     **MR. ADAMO:** It's Ken Adamo from
[8] Jones Day for CMO. The briefing on the various
[9] motions is complete. In response to counsel's
[10] comments, we did not file frivolous motions.
[11] The motions with regard to CMO and CMO USA are
[12] well founded, both in law and in fact, but at
[13] the end of the day, Your Honor, the briefing
[14] cycle has been completed and we don't disagree
[15] with plaintiff that it might now be appropriate
[16] to set scheduling for the case as you feel might
[17] be appropriate.
[18]     **THE COURT:** Okay. Would any
[19] schedule that you would arrive at contemplate
[20] that Judge Ward is going to send that case here?
[21]     **MR. ADAMO:** Your Honor, it's Ken
[22] Adamo again. I and my firm are not despite my
[23] presence normally in east Texas, we are not
[24] representing CMO in that action, but I do appear

LG Philips   v.
Chi Mei

Page 8

**Lawyer's Notes**

[1] in that court quite frequently and I think Your
[2] Honor is aware that transfer from court to court
[3] is not something that happens with frequency,
[4] but Judge Ward does what Judge Ward does, and
[5] I'm sure he will rule on the matter when he gets
[6] —I'm sure his honor, Judge Ward, will rule on
[7] the motion when he gets to it.
[8]     **THE COURT:** Okay. So what are
[9] your views on when the trial date ought to be?
[10]     **MR. BONO:** Your Honor, this is Gap
[11] Bono for the plaintiff. We obviously would like
[12] a trial date as promptly as Your Honor can
[13] accommodate a trial on Your Honor's schedule.
[14] And we would think a trial, you know, a year or
[15] fifteen months from now would be amenable to us,
[16] if Your Honor could accommodate that.
[17]     **THE COURT:** All right. What about
[18] the other side?
[19]     **MR. ADAMO:** Your Honor, we're
[20] certainly not asking for any setting that would
[21] be unusually short or unusually long. As long
[22] as we have sufficient time to conduct necessary
[23] discovery so we can fully defend ourselves,
[24] whatever would be the next available time in

Page 9

[1] Your Honor's calendar for a case like this is
[2] going to require a lot of discovery would be
[3] acceptable to us.
[4]     **MR. WIED:** Your Honor, this is
[5] Peter Wied from Paul Hastings for the AUO
[6] parties. We, too, our only concern would be
[7] with providing sufficient time for discovery of
[8] all the issues and we would just note that
[9] presuming —if it turns out that the CMO
[10] parties remain in the case, there would be a
[11] total of twenty-one patents at issue, and so in
[12] comparison even to other patent cases, this one
[13] may require a bit more time for full discovery
[14] of the issues.
[15]     **THE COURT:** I would imagine that
[16] at some point the twenty-one patents would be
[17] narrowed to some hopefully more manageable
[18] number. But in light of the parties and the
[19] possibility that there may be some others
[20] joining you, I want to be sure that the trial
[21] date I set is one that everybody understands
[22] won't be moved. So I'm going to set it in June
[23] of 2009 for June the 1st —I'm sorry, June the
[24] 2nd, which is a Tuesday, and then you can get

| | Lawyer's Notes |
|---|---|

[1] together and backfill dates. And the only thing
[2] that I'll require is that you have fact
[3] discovery with any Markman proceeding at the end
[4] of or near the end of that fact discovery before
[5] any expert discovery or reporting takes place.
[6] And you should factor in a
[7] sixty-day decision period from the time frame
[8] that would be the month that you select for a
[9] Markman hearing. Any disagreement you have as
[10] to dates or how you should proceed, just note
[11] them in the proposed order and I'll circle a
[12] winner when I get the proposed order.
[13] You should also account for
[14] document production to be prior to any
[15] commencement —to be initiated and completed
[16] prior to the commencement of any deposition
[17] discovery.
[18] Do you have any questions?
[19]     **MR. BONO:** No, Your Honor. When
[20] should we submit the scheduling order through
[21] the Court?
[22]     **THE COURT:** I would try to get it
[23] here in the next two weeks.
[24]     **MR. BONO:** All right.

[1]     **THE COURT:** And then hopefully
[2] I'll get to resolve any —I'll just enter it if
[3] it comes in agreed. If there are any disputes,
[4] hopefully I'll get them to you by the end of the
[5] month, the first of March.
[6]     **MR. BONO:** Thank you, Your Honor.
[7]     **THE COURT:** Okay. Anything else?
[8]     **MR. ADAMO:** Your Honor, it's Ken
[9] Adamo. I assume you want us to go forward with
[10] the discovery according to the order once
[11] entered, not wait on your decisions on the
[12] motions?
[13]     **THE COURT:** Yes. The only
[14] question I have is given that federal circuit
[15] case, the caption of which has escaped me, but
[16] it was a Delaware case, and there was some
[17] thought that there ought to be jurisdictional
[18] discovery when the record is a little bare, so
[19] as to see if you had to go, what is it, to
[20] Justice O'Connor's decisions. But I think in
[21] this case, I have enough information to make the
[22] decision and so I think we ought to get started
[23] on the case.
[24]     **MR. ADAMO:** Thank you, Your Honor.

LG Philips   v.
Chi Mei

*Lawyer's Notes*

[1]
[2]
[3]
[4]
[5]
[6]
[7]
[8]
[9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]

    I just appreciate the clarification.

       **THE COURT:** All right. Thank you.

       (Court recessed at 3:47 p.m.)

Page 13

[1]
[2]

State of Delaware
New Castle County

[3]
[4]
[5]

CERTIFICATE OF REPORTER

[6]
[7]
[8]

I, Dale C. Hawkins, Registered Merit
the above-captioned matter.

[9]
[10]

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 5th day of April, 2008, at
Wilmington.

[11]
[12]     Dale C. Hawkins, RMR
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]

Hawkins Reporting Service 715 North King Street - Wilmington, Delaware 19801 (302) 658-6697 FAX (302)
658-8418

**2**

2006 16

**3**

3:47 9:24

**A**

accommodate 8:13, 16
action 6:24
ADAMO 6:7, 7, 21, 22; 8:19
address 58:19
afternoon 7:19
again 6:22
against 14:22
against 1622
agreement 192
amenable 8:15
appear 6:24
appreciate 9:24
apprise 11:24
apprised 1724
appropriate 6:15, 17
arrive 6:19
AUO 17:19
AUO 2219
AUO 249
AUO 5:2, 8, 15, 18, 18
available 8:24
aware 8:2

**B**

background 15:2
background 232
behalf 2
behalf 8
Bono 5
BONO 7
Bono 8
BONO 8:10, 11
both 2411
both 5:5; 6:12
brief 156:12
briefing 6:8, 13

**C**

call 213
call 103
can 13
can 6:3, 4; 8:12, 23
case 1223
case 133
case 16

case 5:1, 10, 10, 13; 6:4, 16, 20
cases 420
cases 5:6
certainly 8:20
claims 20:20
clarification 9:24
CMO 16:24
CMO 2124
CMO 244
CMO 5:3, 12, 21, 21; 6:5, 8, 11, 11, 24
colleague 524
comments 6:10
complete 6:9
completed 5:16; 6:14
conduct 8:22
conference 3:22
consolidated 422
consolidated 5:10
contemplate 6:19
counsel's 6:9
Court 5:9
COURT 69
Court 11
Court 18
Court 5:6, 7, 9; 6:2, 5, 18; 8:1, 2, 2, 8, 17; 9:24, 24
cycle 6:14

**D**

date 8:9, 12
Day 6:8, 13
December 1613
defend 8:23
defendants 14:23
defendants 1823
defendants 2233
defendants 5:18
denied 5:24
despite 6:22
Dick 1:22
disagree 6:14
discovery 8:23
dismiss 5:21
dismissed 21:21
District 5:14

**E**

east 6:23
Eastern 5:14
end 6:13

**F**

fact 6:12
feel 6:16
fifteen 8:15

file 5:6; 6:10
filed 166:10
filed 5:1, 2, 3, 21
firm 6:22
first 5:6
forward 6:4
founded 6:12
frequency 8:3
frequently 8:1
frivolous 6:10
front 5:13
fully 8:23

**G**

Gap 8:10
Gaspar 8:10
gets 8:5, 7
Good 77
granted 6:1

**H**

hand 5:20
happens 8:3
heard 6:6
Honor 8:6
Honor 106
Honor 13
Honor 23
Honor 5:9; 6:13, 21; 8:2, 6, 10, 12, 16, 19
Honor's 8:13

**I**

initially 5:1
insufficient 5:22
issue 5:16

**J**

joined 5:17
Jones 8:8
Judge 5:7, 13; 6:20; 8:4, 4, 6
June 5:10
jurisdiction 5:22

**K**

Ken 6:7, 21
KIRK 12121

**L**

L.G 31
L.G 8
L.G 19

L.G 5:18, 23
lack 5:21
last 5:3, 4, 11
law 6:12
lawsuit 5:2, 4, 8
lawsuits 5:2
LCD 3:2
leaves 212
long 8:21, 21

**M**

March 5:3
matter 8:5
May 4:5
may 235
May 5:4, 8
might 6:15, 16
months 8:15
motion 5:12, 21, 23, 24; 8:7
motions 5:17; 6:3, 9, 10, 11
move 6:4
moved 5:5

**N**

necessary 8:22
next 8:24
normally 6:23

**O**

obviously 8:11
opposed 5:23
ought 8:9
ourselves 8:23

**P**

p.m 9:24
parties 20:24
pending 5:13, 17
personal 5:22
Philips 3:22
Philips 922
Philips 202
Philips 5:19, 23
plaintiff 6:15; 8:11
pleadings 5:16
presence 6:23
proceed 14:23
prompted 223
promptly 6:3; 8:12

**Q**

quite 8:1

**R**

rather 24:1
reached 191
recessed 9:24
regard 6:11
remember 24:11
representing 6:24
request 2:24
resolved 6:4
respect 5:15, 18, 20
responding 5:1
response 6:9
right 5:13; 6:5; 8:17; 9:24
rule 5:7; 8:5, 6

**S**

schedule 136
schedule 6:3, 19; 8:13
scheduling 6:16
send 6:20
separate 5:2
service 5:22
set 14:22
set 6:2, 16
setting 8:20
settlement 19:20
Shabaz 5:7
short 8:21
side 8:18
status 3:18
status 1218
sufficient 8:22
sure 8:5, 6

**T**

Tatung 176
Tatung 18
Texas 5:4, 14; 6:23
transfer 5:5, 12; 8:2
transferred 5:8
trial 8:9, 12, 13, 14

**U**

under 5:6
unusually 8:21, 21
USA 6:11

**V**

various 6:8
views 8:9
Viewsonic 17:9
Viewsonic 189

LG Philips   v.
Chi Mei

## W

**Ward** 5:13; 6:20; 8:4, 4, 6
**way** 156
**Wisconsin** 5:3, 7, 9

## Y

**year** 5:3, 4, 11; 8:14

# Exhibit B

| | |
|---|---|
| **From:** | ~Bono, Gaspare |
| **Sent:** | Wednesday, July 16, 2008 3:34 PM |
| **To:** | Giza, Alexander |
| **Cc:** | Hoffman, Adam; ~Range, Brian; ~Holloway, Julie; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; #CMO/LPL [Int]; ~Platt, Christian; ~Warren, Joe; Rovner, Philip A.; Jung, Song; ~Goodwyn, Tyler; ~Brzezynski, Lora; ~Christenson, Cass; ~Kirk, Richard; ~Chiu, Jay; ~Yip, Vincent; ~Tyler, M. Craig; Kagan, Jonathan; ~Garnett, Terry |

**Subject:** RE: Proposal for Reducing Number of Claim Terms for Construction

Dear Alex:

Thank you for your e-mail, and for agreeing to begin our discussions this Friday on the subject of reducing claim terms for construction by the Court. We are available for a conference call at 4:00pm EDT. Please set up the conference call.

We continue to believe that the parties should focus on reducing the number of claim terms without necessarily reducing patents at this stage of the case. We do not feel it is necessary to reduce patents at this time for the parties to be able to agree to reduce terms for construction. This especially appears to be the case with respect to CMO's patents because, as I mentioned in my prior e-mail, CMO has identified only two terms for construction with regard to its six patents. Nevertheless, in the spirit of cooperation, we are open to exploring reasonable alternatives that may be agreeable to all parties.

In my prior e-mail, I had suggested that, if the parties were to reach an agreement on reducing patents at this stage, any such reduction in the number of patents would have to apply equally to all parties, e.g., two patents would be reduced per party. You have now proposed a different proposal for consideration--an equal percentage reduction. That is something that can be discussed, but at the present time I am not inclined in that direction. Also, I need to point out that a one-third reduction, even if it were agreeable, would result in six patents remaining for LGD, not five (one-third times nine equals six). So, rather than get into a disagreement over numbers of patents, I still believe it would be most productive to focus on the number of terms each party proposes for construction.

I look forward to speaking with you on Friday.

Best Regards, Gap

---

**From:** Giza, Alexander [mailto:AGiza@irell.com]
**Sent:** Wednesday, July 16, 2008 1:31 PM
**To:** Bono, Gaspare
**Cc:** Hoffman, Adam; ~Range, Brian; ~Holloway, Julie; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; #CMO/LPL [Int]; ~Platt, Christian; ~Warren, Joe; Rovner, Philip A.; Jung, Song; Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass; ~Kirk, Richard; ~Chiu, Jay; ~Yip, Vincent; ~Tyler, M. Craig; Kagan, Jonathan; ~Garnett, Terry
**Subject:** RE: Proposal for Reducing Number of Claim Terms for Construction

Gap:

CMO believes the parties need to reduce the number of disputed claim terms, elected patents, and elected claims. We all appear to agree that we will be limited to electing some limited number of patents and claims at trial, either expressly or simply by a typical time limitation.

*02 Micro* does not require that a district court judge construe hundreds of terms. It does require that the district court resolve any fundamental claim construction dispute between the parties. We should have a much better idea as to what the fundamental claim construction disputes are after we exchange and compare proposed constructions. The parties can then focus on the patents and claims that will reduce the disputed constructions to a number reasonable for construction and trial.

In terms of the appropriate limitation of elected patents and claims, CMO believes there is room for agreement. While the same limitations should apply to all three parties, in the interest of compromise, CMO could agree to a limit based on reducing the parties' asserted patents by an equal percentage. So for example, if we reduce by one-third, CMO would elect 4 patents, and LGD and AUO would elect 5 patents. If we reduce by one-half, CMO would elect 3 patents, and LGD and AUO would each elect 4 patents. If we reduce by two-thirds, CMO would elect 2 patents, and LGD and AUO would elect 3 patents.

We can accomodate your schedule on the initial discussion on limitations. However, we will not have availability until 4 pm ET (1 pm PT). Will this fit everyone's schedules?

Sincerely,
Alex

Alexander C.D. Giza
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: 310-203-7143

---

**From:** Bono, Gaspare [mailto:gbono@mckennalong.com]
**Sent:** Friday, July 11, 2008 2:08 PM
**To:** Giza, Alexander
**Cc:** Hoffman, Adam; ~Range, Brian; ~Holloway, Julie; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; #CMO/LPL [Int]; ~Platt, Christian; ~Warren, Joe; Rovner, Philip A.; Jung, Song; ~Goodwyn, Tyler; ~Brzezynski, Lora; ~Christenson, Cass; ~Kirk, Richard; ~Chiu, Jay; ~Yip, Vincent; ~Tyler, M. Craig; Kagan, Jonathan; ~Garnett, Terry
**Subject:** RE: Proposal for Reducing Number of Claim Terms for Construction

Dear Alex:

Thank you for your email yesterday. We appreciate that you have given some thought to our proposal and that you believe there is room to reach an agreement. We appear to all agree that the goal is to reduce the number of terms the Court will be asked to construe. We continue to believe that that goal is not necessarily dependent on limiting the number of patents or the number of claims in the case at this stage, and that the parties can and should agree to an overall limitation on the number of terms to be submitted to the Court, as Judge Farnan will certainly only construe a limited number of terms.

We are familiar with the *02 Micro* decision that you cited, but we do not believe that that case requires that a district court judge construe hundreds of terms. The parties should work together to reach an agreement to limit the number of terms that are to be submitted to the Court for construction. The Federal Circuit's opinion in *02 Micro* does not prohibit the parties from limiting the number of terms to be construed for construction, as we have proposed. In any event, even if we are unable to reach

agreement, we still believe that the Federal Circuit's opinion does not prevent Judge Farnan from entering an order directing the parties to limit the number of terms that are presented to the Court for construction.

As I understand CMO's position, CMO is proposing to limit the number of patents or the number of claims at this stage of the case, as a mechanism for limiting claim terms for construction. As CMO has identified only two terms for construction from all of its six patents, we do not believe it is necessary to limit patents at this stage in order to reduce the number of terms. Nevertheless, in order to make our discussion productive, please inform me as to the number of patents CMO is proposing that each party agree to continue to assert from this point forward, while staying their other patents. We believe that any such proposal should include a provision that each of the parties agree to reduce the same number of patents that they are each presently asserting.

Concerning a time for our next discussion, we understand that you have requested that the parties confer on Monday, July 21st, rather than Friday, July 18th, so that the parties have more time to consider the proposed constructions. While I appreciate that consideration, I request that we have an initial discussion on Friday, July 18th, as I will be out of town the following week on vacation. I would like to be a part of our initial discussion, so I hope that CMO can accommodate my schedule. I suggest we have a call on Friday, July 18th, at 2:00pm EDT.

I look forward to hearing from you.

Best regards, Gap

---

**From:** Giza, Alexander [mailto:AGiza@irell.com]
**Sent:** Thursday, July 10, 2008 9:22 AM
**To:** ~Chiu, Jay; Bono, Gaspare; ~Yip, Vincent; ~Tyler, M. Craig; Kagan, Jonathan; ~Garnett, Terry
**Cc:** Hoffman, Adam; ~Range, Brian; ~Holloway, Julie; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; #CMO/LPL [Int]; ~Platt, Christian; ~Warren, Joe; Rovner, Philip A.; Jung, Song; Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass; ~Kirk, Richard
**Subject:** RE: Proposal for Reducing Number of Claim Terms for Construction

Gap and Jay:

CMO agrees that we should resume our discussion on reducing claim terms for construction after the exchange of proposed constructions. Although we were not able to reach final agreement on this issue in our discussion earlier this week, we think there is room for agreement. As the parties discussed on Monday, there is Federal Circuit authority that requires a district court to resolve any fundamental dispute between the parties regarding the scope of a claim term. See O2 Micro Int'l v. Beyond Innovation Tech. Co., No. 2007-1302; -1303; -1304, Slip op. (Fed. Cir. Apr. 3, 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."). We believe the approach that is consistent with this authority is for the parties to agree on a limited number of elected patents and claims on which to proceed and to stay the remainder. The limited number of elected patents and claims will serve to limit the number of claim terms in dispute. Gap said that the Court would not allow the parties to proceed to trial with so many asserted patents and claims, and this approach is also consistent with that necessity. The exchange of proposed constructions will help the parties focus on the fundamental disputes and choose an appropriately limited number of patents and claims per party on which to proceed.

We think having the discussion on Monday, July 21, will give the parties more time to consider the parties' proposed constructions and the appropriate limits to asserted patents and claims. We look forward to resuming

our discussions after the exchange of proposed constructions.

Sincerely,

Alex

Alexander C.D. Giza
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: (310) 203-7143
Fax: (310) 203-7199

---

**From:** Chiu, Jay C. [mailto:jaychiu@paulhastings.com]
**Sent:** Thursday, July 10, 2008 4:27 AM
**To:** ~Bono, Gaspare; Giza, Alexander; ~Yip, Vincent; ~Tyler, M. Craig; Kagan, Jonathan; ~Garnett, Terry
**Cc:** Hoffman, Adam; ~Range, Brian; ~Holloway, Julie; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; #CMO/LPL [Int]; ~Platt, Christian; ~Warren, Joe; Rovner, Philip A.; Jung, Song; ~Goodwyn, Tyler; ~Brzezynski, Lora; ~Christenson, Cass; ~Kirk, Richard
**Subject:** RE: Proposal for Reducing Number of Claim Terms for Construction

Dear Gap,

I write to summarize our telephone conference regarding your proposals for claim construction briefing, and my counter-proposals.

As I indicated during our conference call, we agree that the parties should use best efforts to reduce the number of issues presented to the Court. As we explained to you during the call, AUO believes that the parties should work together after the exchange of proposed constructions in order to reduce the number of terms the Court will be asked to construe. As you know, AUO proposed a conference call next week to allow the parties to explore common ground in the parties' respective proposed constructions. Based on past experience, we believe such a call would be beneficial because it should result in a reduction of the number of disputed terms, which would thereby result in fewer terms presented to the Court. Please let us know if LGD is amenable to having a call next week to discuss proposed constructions. We suggest next Friday or the following Monday for the call.

Also, during our call this past Monday, we agreed to your proposal to have separate opening briefs (40 pages each) for each set of patents. We understand LGD's concern that it might need additional pages to address all of the LGD, AUO, and CMO patents asserted in this case. Thus, your suggestion seems appropriate to us.

Regards,

Jay

---

**********************************************************
IRS Circular 230 Disclosure:    As required by U.S.
Treasury Regulations governing tax practice, you are
hereby advised that any written tax advice contained
herein was not written or intended to be used (and cannot
be used) by any taxpayer for the purpose of avoiding
penalties that may  be imposed under the U.S. Internal
Revenue Code.
**********************************************************

```
This message is sent by a law firm and may contain
information that is privileged or confidential.  If you
received this transmission in error, please notify the
sender by reply e-mail and delete the message and any
attachments.

For additional information, please visit our website at
www.paulhastings.com.
```

ccmailg.irell.com made the following annotations
--------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

--------------------------------------------------------------------

```
CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.
```

ccmailg.irell.com made the following annotations
--------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

--------------------------------------------------------------------

```
CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
```

8/4/2008

attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.

# Exhibit C

| | |
|---|---|
| **From:** | ~Holloway, Julie |
| **Sent:** | Monday, July 28, 2008 6:33 PM |
| **To:** | ~Brzezynski, Lora; Wells, Maclain; Dietzel, Brian; ~Yip, Vincent; Chen, Hua; Giza, Alexander; Kagan, Jonathan; Hoffman, Adam; ~Tyler, M. Craig; ~Range, Brian; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; provner@potteranderson.com |
| **Cc:** | ~Bono, Gaspare; ~Goodwyn, Tyler; ~Christenson, Cass; ~Lomas, John; Richard Kirk; Jung, Song |
| **Subject:** | RE: Follow-up Discussion |

Counsel:

One point that the parties discussed today is whether it makes sense to stay some of the patents, a certain number for each party, and proceed on the remainder.  Having further considered the proposal, AUO believes that it is too early in the case to take this approach.

Regards,

Julie

-----Original Message-----
From: Brzezynski, Lora [mailto:lbrzezynski@mckennalong.com]
Sent: Monday, July 28, 2008 9:44 AM
To: Wells, Maclain; Holloway, Julie; Dietzel, Brian; vincentyip@paulhastings.com; Chen, Hua; Giza, Alexander; Kagan, Jonathan; Hoffman, Adam; Tyler, Craig; Range, Brian D.; terrygarnett@paulhastings.com; peterwied@paulhastings.com; katherinemurray@paulhastings.com; jshaw@ycst.com; kpascale@ycst.com; provner@potteranderson.com
Cc: Bono, Gaspare; Goodwyn, Tyler; Christenson, Cass; Lomas, John; Richard Kirk; Jung, Song
Subject: Follow-up Discussion

> Counsel:
>
> While continuing our discussions with both CMO and AUO concerning
> limitation of terms for each of our respective patents and preparation
> of the claim construction chart due tomorrow, we thought it would be
> helpful to have a separate discussion with all parties this afternoon
> to see if we can further our global discussions regarding the
> suggestions made by the parties to limit claim terms either through an
> agreement on a certain number of terms to be submitted to the Court
> for construction or reduction of the number of patents in the case.
> We also would like to discuss further options for briefing.  We are
> mindful that the Court will not view favorably lengthy and extensive
> briefing.  One option we are considering to limit the number of total
> number of pages of briefing the Court will need to review is for each
> party to only brief its own patents in the opening brief.  For
> example, LG Display would brief only its own patents in its opening
> brief; AUO would brief only the AUO patents in its opening brief; and
> CMO would brief only the CMO patents in its opening brief.  Further,
> the parties would each brief its opposing parties' patents in the
> response briefs.  Under this scenario, AUO would brief the LGD patents
> in its second brief, and CMO would brief the LGD patents in its second
> brief.  LG Display would file a brief on the AUO Patents and a brief
> on the CMO patents.  All briefs would be limited to 40 pages under
> this scenario.
>
> We are available today at 4:00pm (EDT) for such a call.
> Unfortunately, we have very limited availability after that time
> today.  Please let us know whether you can participate in a call with
> us at that time.

1

```
>
> The call-in number is:
>
> 1-866-244-8528
>
> Participant code:  102546
>
> Regards,
>
> Lora
>
> Lora A. Brzezynski, Esq.
> McKenna Long & Aldridge LLP
> 1900 K Street, N.W.
> Washington, D.C.  20006
> (202) 496-7239
> (202) 496-7756 (Facsimile)
> lbrzezynski@mckennalong.com
>
>
>
```

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.


This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.