## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG DISPLAY CO., LTD.,        ) | |
| ) | |
| Plaintiff,        ) | Civil Action No. 06-726 (JJF) |
| ) | Civil Action No. 07-357 (JJF) |
| v.        ) | |
| ) | CONSOLIDATED CASES |
| CHI MEI OPTOELECTRONICS        ) | |
| CORPORATION, et al.        ) | |
| ) | |
| Defendants.        ) | |
| ) | |
| ) | |

## DEFENDANTS CHI MEI OPTOELECTRONICS'
## MOTION TO COMPEL PLAINTIFFS LG DISPLAY TO PRODUCE DOCUMENTS
## <u>RESPONSIVE TO DOCUMENT REQUEST NO. 98</u>

OF COUNSEL:

Morgan Chu
Jonathan S. Kagan
Alexander C.D. Giza
Adam Hoffman
Thomas C. Werner
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010

Dated:  August 11, 2008

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 N. Market St.
P.O. Box 951
Wilmington, Delaware  19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS ................................................2

II.   SUMMARY OF ARGUMENT ....................................................................2

III.  STATEMENT OF FACTS .........................................................................4

      A.   CMO Requests Documents From the LGD Prior Litigations............................4

      B.   LGD Stonewalls.........................................................................5

      C.   The Parties Finally Meet and Confer—With Little Progress...............................6

      D.   LGD Begins to Cooperate, but Still Refuses to Produce Highly
           Relevant Documents. ..................................................................7

IV.   ARGUMENT..............................................................................8

      A.   Materials from Prior Litigations Involving the Patents-in-Suit Are
           Plainly Relevant and Must Be Produced. .............................................8

           1.   Expert reports, including declarations or other written testimony
                given by expert witnesses, that refer or relate to the LGD
                Asserted Patents and that were served in the LGD Prior
                Litigations, and exhibits to such materials...............................10

           2.   Transcripts and videos of testimony given in the LGD Prior
                Litigations by LG Display or by witnesses testifying on behalf
                of LG Display (including any inventor of the LGD Asserted
                Patents) that refers or relates to the LGD Asserted Patents, and
                exhibits to such materials.....................................................11

           3.   Transcripts of hearings in the LGD Prior Litigations that refer
                or relate to the LGD Asserted Patents, and materials used at
                those hearings, including but not limited to technology tutorials
                and demonstratives.............................................................11

           4.   Documents, including exhibits, filed with the courts presiding
                over the LGD Prior Litigations that refer or relate to the LGD
                Asserted Patents, including but not limited to claim construction
                and summary judgment filings, as well as filings relating to
                geographic limitations on the scope of discovery into accused
                products, and orders that issued in connection with court filings...........12

           5.   Documents from trials in the LGD Prior Litigations, including
                but not limited to trial exhibit lists, trial exhibits (including

Page

demonstratives), witness statements, pre-trial briefs, pre-trial statements, motions in limine, post-trial briefs, transcripts of the trial proceedings, and orders that issued in connection with the trial. .................................................................................................................. 12

6. Discovery requests and responses served or received by LG Display in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits, appendices, or any similar attachments to such materials. ................................................................ 12

7. Documents produced by LG Display, on behalf of LG Display, or any third party in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents ............................................................ 13

8. Materials provided by anyone in the LGD Prior Litigations that refer or relate to the validity, enforceability, ownership, inventorship, or term of the LGD Asserted Patents, including but not limited to documents and deposition testimony. ......................... 13

B. LGD Must Produce the Types of Documents CMO Has Requested. ................. 14

C. LGD's Past Conduct Requires Strict Supervision of LGD's Production of Materials from the LGD Prior Litigations. ...................................................... 15

V. CONCLUSION ............................................................................................................. 16

## TABLE OF CITATIONS

Page(s)

**Cases**

*Degen v. United States,*
 517 U.S. 820 (1996)........................................................................................... 8

*New Hampshire v. Maine,*
 532 U.S. 742 (2001)........................................................................................... 9

*Oppenheimer Fund. Inc. v. Sanders,*
 437 U.S. 340 (1978)........................................................................................... 9

*Zubulake v. UBS Warburg LLC,*
 220 F.R.D. 212 (S.D.N.Y. 2003) ............................................................... 13

**Statutes**

Fed. R. Civ. P. 26(b)(1)..................................................................................... 8, 9

Defendants Chi Mei Optoelectronics Corporation and Chi Mei Optoelectronics USA, Inc. ("CMO") respectfully move this Court to compel Plaintiffs LG Display Co., Ltd. and LG Display America, Inc. ("LGD") to produce relevant discovery materials from prior litigations involving three of the same patents that LGD has asserted against CMO in this action. These materials are responsive to CMO's Document Request No. 98. For two months, LGD refused to produce responsive materials, refused to justify its refusal, took no action to obtain consents allegedly necessary to produce those materials (despite its earlier promise to do so), and refused to discuss the matter or substantively respond to CMO's numerous inquiries. Finally, after numerous, lengthy meet and confers, LGD grudgingly acknowledged that the requested materials are relevant, but it has agreed to produce only a narrow subset of those relevant, responsive, non-privileged documents.

LGD's refusal is based on the unusual position that fact and expert discovery materials and trial materials from LGD's prior litigations involving the patents-in-suit that relate to infringement or damages are not relevant or reasonably calculated to lead to the discovery of admissible evidence. LGD offered no further explanation for its refusal to produce such materials. During CMO's many efforts to obtain these documents voluntarily, CMO explained in great detail how those materials are directly relevant to this case, as they reveal LGD's own positions regarding what is required to infringe (or not infringe) LGD's patents, and the proper way to calculate damages from any such infringement. Review of these documents will allow CMO to determine whether LGD is attempting to take inconsistent infringement or damages positions in this case, and to cross-examine LGD and its experts if it attempts to do so. These documents are thus unquestionably relevant to the current dispute, and should be produced.

## I.    NATURE AND STAGE OF PROCEEDINGS

This action is a patent litigation involving LCD flat panel technology used in products such as computers and televisions. It involves parties from three corporate families: (1) LG Display ("LGD") (LG Display Co., Ltd. and LG Display America, Inc.); (2) AU Optronics ("AUO") (AU Optronics Corp. and AU Optronics America); and (3) Chi Mei Optoelectronics ("CMO") (Chi Mei Optoelectronics Corp. and Chi Mei Optoelectronics USA, Inc.).

Initially, three separate patent infringement actions among these corporate families were pending in Delaware, Wisconsin, and Texas. LGD asserted infringement of its patents in all three actions, either by claim or counterclaim. The Wisconsin action was transferred to Delaware, and has been consolidated into this action. The Texas action has been transferred to Delaware, and both CMO and LGD have filed motions seeking consolidation of the Texas action into this action. LGD's claims in these various litigations that CMO infringes LGD's patents are thus now pending before this Court. Fact discovery is ongoing, and it is LGD's refusal to provide discovery into LGD's infringement and damages claims that is the subject of this motion.

## II.    SUMMARY OF ARGUMENT

1.     Plaintiffs LG Display Co., Ltd. and LG Display America, Inc. ("LGD") have asserted in this action that Defendants Chi Mei Optoelectronics Corporation and Chi Mei Optoelectronics USA, Inc. ("CMO") infringe United States Patent Nos. 4,624,737; 5,825,449; and 5,019,002 (collectively, the "LGD Asserted Patents").

2.     LGD, directly or through predecessors-in-interest, previously asserted infringement of the 4,624,737 and 5,825,449 patents in *LG.Philips LCD Co., Ltd. v. Chunghwa Picture Tubes Ltd.*, 02-6775 CBM (C.D. Cal.) (which represents the consolidation of Civil Actions 02-6775, 03-2886, 03-2866, 03-2884, 03-2885); and the 5,019,002 patent in *LG.Philips LCD Co., Ltd. v. Tatung Co.*, 05-292 JJF (D. Del.) (collectively, the "LGD Prior Litigations").

2

3.    On April 8, 2008, Chi Mei Optoelectronics USA, Inc. served Document Request No. 98 on LGD, which seeks the production of documents "concerning pleadings, discovery requests, responses to discovery requests, expert reports, claim construction briefing, claim charts, deposition transcripts, court transcripts, trial transcripts, and court orders relative to any action or lawsuit in which LG Display has alleged that any Person has infringed any LGD Patent." Included among a list of such actions were the LGD Prior Litigations. "LGD Patent," as defined in CMO's Document Request, included the LGD Asserted Patents. Materials from the LGD Prior Litigations that relate to the LGD Asserted Patents are therefore responsive to Document Request No. 98.

4.    Materials responsive to Document Request No. 98 are highly relevant because they reflect prior arguments and assertions by LGD regarding the LGD Asserted Patents, and supporting facts, including how LGD contends particular products may fall within (or outside) the scope of the LGD Asserted Patents, and what the proper methodology is for calculating damages from any such infringement (including appropriate and inappropriate royalty rates). Those documents are thus crucial to CMO's analysis of whether LGD is attempting to take inconsistent infringement or damages positions in this case. The LGD Prior Litigations materials are within LGD's possession, custody, or control. LGD is thus obligated to produce these materials under Federal Rule of Civil Procedure 26.

5.    Although LGD has acknowledged that LGD Prior Litigation documents are relevant, responsive and in its possession, it has refused to produce documents relating to the two main issues in LGD's case: infringement and damages. Rather, LGD has agreed to produce LGD Prior Litigation documents only on the following issues: validity, enforceability, ownership, and inventorship. While these documents are also relevant, the production of these documents does

3

not obviate the need for documents relating to infringement and damages. Because LGD has refused to voluntarily produce these infringement and damages documents, this Court should compel LGD to do so. LGD therefore refuses to produce relevant, responsive documents, and should be compelled by the Court to do so.

## III.    STATEMENT OF FACTS

### A.    CMO Requests Documents From the LGD Prior Litigations.

LGD filed this action against CMO, alleging that CMO infringed the LGD Asserted Patents. LGD previously asserted each of those patents in the LGD Prior Litigations. The LGD Asserted Patents have therefore been the subject of extensive prior discovery, expert analysis, and testimony, as both of the LGD Prior Litigations proceeded through trial. There is therefore a large body of litigation materials reflecting scrutiny and analysis of the LGD Asserted Patents, which is reflected in discovery requests and responses, expert reports, depositions, substantive filings, and trial materials.

CMO sought production of those materials in its First Set of Requests for Production, served on LGD on April 8, 2008. Ex.[1] 1. CMO's Document Request No. 98 seeks the production of discovery materials from the LGD Prior Litigations that relate to the LGD Asserted Patents. *See id.* LGD's May 30, 2008 response to CMO's Requests for Production consisted entirely of boilerplate objections. *See* Ex. 2. Among those objections, LGD asserted that responsive documents were "subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LG Display." *Id.* CMO understands that LGD thereby contended that Protective Orders entered in the LGD Prior Litigations prevented disclosure of documents from the LGD

---

[1] Exhibit references are to the exhibits attached to the Declaration of Thomas C. Werner, submitted concurrently herewith in support of this Motion ("Werner Decl.").

4

Prior Litigations absent the consent of interested parties and/or non-parties to the LGD Prior

Litigations. LGD's General Objection 4 stated, however, that where LGD objected to a

Document Request on this ground, "LG Display shall attempt to obtain the consent of such third

party prior to production." *Id.*

CMO raised LGD's refusal to produce any documents in response to Document Request

No. 98 on June 17, 2008. *See* Ex. 3. CMO addressed LGD's objections, including its third party

confidentiality objections, seeking confirmation that LGD was living up to its promise to obtain

necessary consents. *See id.* CMO further asked LGD to "explain with particularity the basis for

LGD's refusal to produce documents responsive to Request No. 98 or, alternatively, please

confirm that LGD will be producing responsive documents." *See id.* Finally, CMO specifically

requested the production of the transcripts of trial proceedings from the LGD Prior Litigations.

*See id.* CMO requested such documents because CMO understood that transcripts of the trial

from one of the LGD Prior Litigations are under seal, and CMO had already confirmed with the

court reporter that obtaining a copy of the trial transcripts from the other of the LGD Prior

Litigations would cost nearly $6,000. Werner Decl. ¶ 5; Ex. 4.

### B.    LGD Stonewalls.

LGD delayed responding to CMO's letter for nearly three weeks. Ex. 5. Finally, on July

7, 2008 LGD informed CMO that it would not produce any trial transcripts because trial

transcripts are either under seal or publicly available. *See id.* LGD refused to produce ***public***

trial transcripts within its possession, custody, or control, even though it "expected" CMO to

produce publicly available documents, and despite the relative low cost to LGD of producing

those transcripts. *See id.*; Ex 6. LGD also refused to confirm that it was attempting "to obtain

the consent" of any necessary third parties, as it had promised to do. *See* Ex. 5. Nor did LGD

explain—much less with particularity—why it refused to produce other LGD Prior Litigations documents, such as expert reports and depositions, at all. *See id.*

CMO responded three days later. Ex 6. CMO's July 10, 2008 letter addressed several problematic aspects of LGD's July 7 letter, including LGD's continuing refusal to produce even a single page of the requested LGD Prior Litigations materials. *Id.* CMO further requested a meet and confer. *See id.* LGD refused to meet and confer, however, claiming that the issues CMO wished to discuss were not "ripe" for discussion. *See* Ex. 7. Counsel for CMO even offered to meet and confer during his Hawaiian vacation. *Id.* LGD did not even respond to his offer. Werner Decl. ¶ 8.

### C.    The Parties Finally Meet and Confer—With Little Progress.

Over the next few weeks, LGD produced a substantial amount of documents, bringing its production to over 2 million pages. Werner Decl. ¶ 9. Despite the size of LGD's production, it withheld all documents responsive to Document Request No. 98. *Id.* ¶ 10. CMO brought this issue to LGD's attention, and again requested a meet and confer. *See* Ex. 8. In response, LGD finally agreed to schedule a meet and confer for July 28, 2008. *See* Ex. 9. In advance of that meet and confer, CMO reiterated the categories of LGD Prior Litigations materials that are responsive to CMO's Document Request No. 98. *See id.*

During the meet and confer, the parties discussed each category of materials listed in the July 25 letter. Werner Decl. ¶ 12. LGD agreed to produce documents on some of the issues in dispute (validity, enforceability, ownership, or inventorship) but refused to produce documents relating to infringement of damages. *Id.* CMO made clear that LGD's refusal to produce LGD Prior Litigations materials such as expert reports on infringement or damages was untenable. *Id.* ¶ 13. At LGD's request, CMO explained that LGD was required to produce these materials under Rule 26 and relevant caselaw, because CMO was entitled to discovery into LGD's

assertions and arguments in the LGD Prior Litigations regarding the LGD Asserted Patents to

ensure that LGD was not taking inconsistent positions in this action. *Id.* LGD again confirmed

its refusal to produce those materials without further explanation. *Id.*

Moreover, LGD revealed that, despite its two-month-old promise to seek consents from

third parties to produce LGD Prior Litigations materials restricted by Protective Orders, LGD

had not contacted a single third party. *Id.* ¶ 14. LGD further made clear that it had now decided

that it would not seek the promised consents. *Id.* Had LGD made clear its refusal to cooperate

from the outset, CMO would have immediately sought relief from the Court. Instead, during the

time LGD told CMO that it was seeking consents, it was simply allowing the clock to slip by,

prejudicing CMO's ability to obtain and use crucial documents.

**D.    LGD Begins to Cooperate, but Still Refuses to Produce Highly Relevant Documents.**

The parties ran out of time during the July 28 meet and confer due to other scheduled

obligations, and agreed to schedule a further meet and confer the next day, July 29, 2008.

Werner Decl. ¶ 14. During that July 29 meet and confer, LGD reiterated its refusal to produce

many LGD Prior Litigations materials, including those relating to infringement or damages. *Id.*

¶ 15. However, LGD again changed its position on seeking third-party consents, and promised

(again) to do so, in a limited fashion. *Id.* While LGD had previously promised to "attempt to

obtain the consent" of third parties, it now offered only "reasonable cooperation" in obtaining the

requisite consent. *Id.* CMO asked LGD to do what it had promised to do two months ago:

"attempt to obtain the consent" of interested parties and non-parties to the LGD Prior Litigations.

*Id.*; Ex. 2. To accomplish that, CMO suggested that LGD forward CMO's July 25 letter, which

outlined the categories of documents that CMO sought, to the parties and non-parties to the LGD

Prior Litigations, and request that they provide the requisite consent. Werner Decl. ¶ 15. LGD

did not agree to do so, but instead said it would take CMO's suggestion "under consideration." *Id.* The parties scheduled another meet and confer for Thursday, July 31, 2008. *Id.*

The next day, July 30, 2008, CMO wrote to LGD, including in that letter the list of categories from its July 25 letter, revised for clarity based on the two days of meeting and conferring that had occurred. Ex. 10. During the subsequent July 31 meet and confer, during which time the parties discussed CMO's July 30 letter at length, LGD again refused to produce any LGD Prior Litigations materials relating to infringement or damages, but did confirm that it would forward CMO's July 30 letter to parties and non-parties to the LGD Prior Litigations. *See* Ex. 11. CMO clarified one last time that LGD refused to produce any LGD Prior Litigations other than those relating to the validity, enforceability, ownership, or inventorship of the LGD Asserted Patents, including materials relating to infringement and damages, and made certain that LGD understood that CMO would move to compel their production. Werner Decl. ¶ 17. LGD confirmed that its position remained unchanged, and that CMO would have to file its motion. *See id.* LGD recently confirmed that it "continues to maintain its objections to [CMO's] overly broad requests" and "will continue to oppose those requests." Ex. 12. Further, despite its earlier promises—now well over two months old—LGD has to date still not sent a single letter seeking consent to produce any LGD Prior Litigations materials. *See id.* CMO must now unfortunately turn to the Court for resolution of this dispute.

## IV.     ARGUMENT

### A.     Materials from Prior Litigations Involving the Patents-in-Suit Are Plainly Relevant and Must Be Produced.

A party is entitled to discovery of any information sought if it appears "reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1); *see also Degen v. United States*, 517 U.S. 820, 825–26 (1996). This concept of relevance "has been

8

construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund. Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A court may order discovery for good cause "on any matter relevant to the subject matter involved in the action." *See* Fed. R. Civ. P. 26(b)(1).

There is no real dispute that infringement and damages documents from the LGD Prior Litigations are relevant. These litigations, like the current litigation, involved allegations by LGD (or its predecessors) of infringement of the LGD Asserted Patents, and LGD's position on a proper damages calculation. It would thus be highly relevant to a trier of fact if LGD were to adopt a different or inconsistent position on infringement or damages in this case than it took in the LGD Prior Litigations.

Moreover, the doctrine of judicial estoppel would apply to LGD's assertions in the LGD Prior Litigations, preventing LGD from changing a legal position that has been successfully asserted to a tribunal, and estopping LGD from asserting new positions to this Court that are clearly inconsistent with its earlier positions in prior litigations (which proceeded through trial). *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position...."). The purpose of this doctrine is to "protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* CMO must have access to the LGD Prior Litigations materials to know what positions LGD has previously taken regarding, *inter alia*, the infringement (or non-infringement) of the LGD Asserted Patents and any alleged damages. LGD has offered no basis whatsoever for permitting discovery into certain LGD Prior Litigations materials, while denying discovery into all other materials.

The only way CMO can evaluate LGD's infringement and damages positions in the LGD Prior Litigations—and cross examine LGD on any inconsistencies—is if it is able to review the documents from these litigations. LGD's decision to withhold these documents thus deprives CMO of highly relevant discovery to which it is entitled. For example, one of the claim terms that the parties agree does not require construction is "removing said outer guard ring and row and column interconnections prior to completion of the display" from claim 1 of LGD's '002 patent. LGD will need to argue in this litigation that CMO practices this limitation by "removing" certain pieces "prior to completion of the display." If LGD took the position in early litigation that "completion of the display" includes a certain amount of testing, or that "prior to" involved a certain amount of time elapsing, LGD might need to take inconsistent positions in this case. The only way for CMO to know whether LGD is taking inconsistent positions—and to cross-examine LGD if it is—is to review the documents from the LGD Prior Litigations. LGD cannot justify its decision to withhold these responsive, non-privileged infringement documents.

CMO is therefore entitled to the following documents, which are responsive to CMO's Document Request No. 98, and which are described in CMO's July 30, 2008 letter to LGD. *See* Ex. 10.

### 1. Expert reports, including declarations or other written testimony given by expert witnesses, that refer or relate to the LGD Asserted Patents and that were served in the LGD Prior Litigations, and exhibits to such materials.

Expert reports served by any party in the LGD Prior Litigations were certainly at the heart of the patent infringement claims from those litigations, and therefore reflect the most basic assertions by LGD regarding the elements necessary to prove the infringement (or non-infringement) of the LGD Asserted Patents, and what damages accrue from any such infringement. LGD must be held to the statements its experts made in the LGD Prior Litigations, or be subject to cross examination about any inconsistencies.

10

2. **Transcripts and videos of testimony given in the LGD Prior Litigations by LG Display2 or by witnesses testifying on behalf of LG Display (including any inventor of the LGD Asserted Patents) that refers or relates to the LGD Asserted Patents, and exhibits to such materials.**

Depositions of experts retained in the LGD Prior Litigations aid in understanding the reports those experts served, and reflect important analysis and scrutiny of the contentions reflected in those reports. Such testimony is therefore as important to CMO as the expert reports themselves. Depositions of fact witnesses deposed in the LGD Prior Litigations—in particular, the inventors of the LGD Asserted Patents, but in truth any fact witness whose testimony relates to the LGD Asserted Patents—may reveal information relevant to a wide variety of legal and factual issues relating to the LGD Asserted Patents. For example, fact witness testimony attributable to LGD may contain factual information bearing on CMO's affirmative defenses (e.g., waiver, estoppel, laches, and unclean hands), and may also bear on issues relating to the damages (if any) accruing from the alleged infringement of the LGD Asserted Patents (e.g., reasonable royalty, hypothetical negotiation, marking, and notice).

3. **Transcripts of hearings in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and materials used at those hearings, including but not limited to technology tutorials and demonstratives.**

Hearings that relate in any way to the LGD Asserted Patents will reflect the prior parties' arguments and assertions and the Court's inquires and rulings, revealing highly relevant information about issues that are parallel to the issues at stake in this action. Even certain discovery hearings may be relevant given the broad discovery that LGD has promoted in this action. To the extent LGD or its opponents conducted discovery into parallel claims differently in the LGD Prior Litigations, CMO is entitled to discovery on that conduct.

---

[2] "LG Display" is used here as that phrase is defined in CMO's Document Requests. *See* Ex. 1.

4. **Documents, including exhibits, filed with the courts presiding over the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, including but not limited to claim construction and summary judgment filings, as well as filings relating to geographic limitations on the scope of discovery into accused products, and orders that issued in connection with court filings.**

The prior parties' filings similarly reveal their arguments and assertions regarding issues that track the issues at the heart of this litigation: the alleged infringement of the LGD Asserted Patents. Again, even certain discovery briefing may lead to the discovery of admissible evidence in this action, particularly regarding LGD's assertions regarding the scope of discovery.

5. **Documents from trials in the LGD Prior Litigations, including but not limited to trial exhibit lists, trial exhibits (including demonstratives), witness statements, pre-trial briefs, pre-trial statements, motions in limine, post-trial briefs, transcripts of the trial proceedings, and orders that issued in connection with the trial.**

CMO requests all trial materials in LGD's possession, custody, or control because of the difficulty inherent in separating those materials into discrete categories. The organization of the prior parties' cases may not track discrete issues, and it therefore may not be possible to segregate trial materials according to issue, as LGD has made clear it intends to do. Given the significance of trial, CMO believes all trial materials must be produced (assuming no claims other than patent infringement claims were tried, which CMO believes is the case).

6. **Discovery requests and responses served or received by LG Display in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits, appendices, or any similar attachments to such materials.**

Just as CMO must request from LGD discovery relevant to LGD's claims CMO's defenses in this action, prior litigants also had to pose and respond to discovery requests in the LGD Prior Litigations. Given that both LGD Prior Litigations involved claims of infringement of the LGD Asserted Patents, the discovery responses served in the LGD Prior Litigations very likely contain information relevant to the claims at issue in this litigation.

7. **Documents produced by LG Display, on behalf of LG Display, or any third party in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents. Such documents must be produced to CMO in the same form and bearing the same Bates numbers as in the LGD Prior Litigation.**

LGD has represented that it has produced documents it deems relevant that LGD produced in the LGD Prior Litigations, though LGD has confirmed that not all such documents have been produced in this action. Moreover, LGD removed from those document productions all Bates numbers used in prior litigations. Among other problems, this will make deciphering the discovery from the prior litigations much more difficult, as much of that discovery will cite to documents by the Bates numbers used in the LGD Prior Litigation. CMO requests that the Court order LGD to provide information correlating the Bates numbers used in this action with the Bates numbers used by LGD in the LGD Prior Litigations. Because the LGD Prior Litigations are—as LGD admits—relevant to this action, LGD had an affirmative duty to preserve that relevant, non-privileged information once it reasonably anticipated litigation with CMO. LGD is represented in this action by the same counsel who represented LGD in both of the LGD Prior Litigations. If LGD—or its counsel—failed to preserve that Bates number correlative information, LGD may be subject to sanctions for spoliation of evidence. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).

8. **Materials provided by anyone in the LGD Prior Litigations that refer or relate to the validity, enforceability, ownership, inventorship, or term of the LGD Asserted Patents, including but not limited to documents and deposition testimony.**

CMO intended this category to capture any documents produced by parties or non-parties to the LGD Prior Litigations other than LGD that are relevant but that might arguably not be described by the other categories because they were not produced by or on behalf of LGD. Instead, LGD has insisted on limiting its production of materials described by nearly all of the above categories according to this category (or rather, a portion of this category, as LGD

13

apparently claims that document relating to the term of its patents are not relevant). CMO is entitled to relevant LGD Prior Litigations materials in LGD's possession, custody, or control regardless of their source.

**B.    LGD Must Produce the Types of Documents CMO Has Requested.**

After three days of meeting and conferring, during which time LGD made clear that it would not produce LGD Prior Litigations Materials relating to damages or infringement, LGD wrote to CMO on August 4, 2008. Ex. 13. In that letter, LGD identified the materials it has agreed to produce. *See id.* While LGD represented during meet and confers that it would produce the materials described in CMO's July 30 letter (subject of course to LGD's relevance objections), LGD's August 4 letter appeared to refuse to produce (even beyond LGD's relevance objections) certain types of documents sought by CMO. *See id.* CMO immediately responded seeking clarification that LGD did not intend, for example, to produce deposition transcripts but not deposition videos, inventor testimony only if "offered by LG Display," court filings but not exhibits to those filings or orders of those courts, trial transcripts but no other trial materials whatsoever, and no transcripts of third party depositions—even those that LGD agreed were relevant. Ex. 14. CMO requested that the parties discuss these issues at a meet and confer already scheduled for the next day. *See id.* However, at that meet and confer, LGD refused to discuss the issue of LGD Prior Litigations Materials in any way. Werner Decl. ¶ __. LGD eventually responded to CMO's August 4 letter on August 8, 2008, but did not respond to any of CMO's questions. *See* Ex. 12.

LGD must produce the types of documents identified by CMO in its July 30 letter. CMO included in its descriptions the documents that provide CMO the context necessary to make sense and proper use of the LGD Prior Litigations materials CMO seeks. Allowing LGD to avoid production of that context—or in some cases entire categories of documents—would deny

14

CMO access to materials that even LGD concedes are relevant, yet still refuses to produce. From the outset, CMO explicitly identified the types of documents it expected LGD to produce, and LGD at no time during the parties' meet and confer sessions objected to the production of any particular type of documents. The Court should therefore compel LGD to produce the types of documents identified by CMO in its July 30 letter.

### C.    LGD's Past Conduct Requires Strict Supervision of LGD's Production of Materials from the LGD Prior Litigations.

Given LGD's tactics, in CMO's August 4, 2008 letter, CMO made several requests to LGD to provide some transparency into LGD's selective culling of LGD Prior Litigations materials. Ex. 14. First, CMO inquired whether or not any documents among the limited set of materials LGD had agreed to produce were subject to prior protective orders. *See id.* CMO next asked specific questions about each of the eight categories of materials LGD had agreed to produce. *See id.* Finally, CMO requested that LGD provide an index of LGD Prior Litigations materials in LGD's possession, custody, or control, so that the parties could avoid any further confusion regarding precisely which materials LGD agreed to produce, and which materials LGD would continue to withhold. *See id.* LGD ignored all of CMO's requests. *See* Ex. 12. LGD further confirmed that it still had yet to seek any of the consents it promised to secure months ago. *See id.*

LGD's stonewalling tactics have severely prejudiced CMO, not only in terms of the resources CMO has had to expend to extract from LGD what are clearly relevant documents, but also the prejudice CMO has suffered as a result of LGD's delay in producing LGD Prior Litigations materials. This prejudice is continuing given that CMO must wait still further to receive these materials while LGD compiles them, and seeks any requisite consents (which it promised to secure over two months ago, though it did not, and still has not). LGD has therefore

15

shown that it is willing to engage in discovery gamesmanship with the apparent purpose of denying CMO relevant discovery, even if only to delay its production.[3] To avoid future problems, and the need for CMO to return to the Court on this issue, CMO requests that the Court order LGD to provide an index of all materials described by the categories listed in Part IV.A., *supra*, indicating which materials LGD intends to produce, and which materials LGD intends to continue to withhold. LGD must be made to identify what LGD considers to be irrelevant, and cannot be permitted to continue to hide the ball.

## V.    CONCLUSION

For the reasons stated above, CMO respectfully requests that the Court order LGD to produce relevant materials that are responsive to Document Request No. 98, as outlined in this Motion, and the Proposed Oder submitted concurrently herewith.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Morgan Chu
Jonathan S. Kagan
Alexander C.D. Giza
Adam Hoffman
Thomas C. Werner
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010

By: /s/ Philip A. Rovner
     Philip A. Rovner (#3215)
     Hercules Plaza
     1313 N. Market St.
     P.O. Box 951
     Wilmington, Delaware 19899-0951
     (302) 984-6000
     provner@potteranderson.com

Dated: August 11, 2008
878019

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

---

[3] As further evidence of the extent of LGD's unreasonable posture on the issue of LGD Prior Litigations materials, LGD's August 8, 2008 letter suggested that CMO should have to obtain from third parties documents that are in LGD's possession, custody, or control. *See* Ex. 12. LGD further suggests that it has produced documents from other prior litigations to AUO, but not to CMO. *See id.*

16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on August 11, 2008, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as indicated;

and that the document is available for viewing and downloading from CM/ECF.

**BY CM/ECF, HAND DELIVERY AND E-MAIL**

Richard E. Kirk, Esq.
Ashley Blake Stitzer, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardfirm.com
astitzer@bayardfirm.com

**BY CM/ECF, HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
kpascale@ycst.com

I hereby certify that on August 11, 2008 I have sent by E-mail the foregoing

document to the following non-registered participants:

Gaspare J. Bono, Esq.
Matthew T. Bailey, Esq.
Lora A. Brzezynski, Esq.
Cass W. Christenson, Esq.
R. Tyler Goodwyn, IV, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
gbono@mckennalong.com
mbailey@mckennalong.com
lbrzezynski@mckennalong.com
cchristenson@mckennalong.com
tgoodwyn@mckennalong.com

Vincent K. Yip, Esq.
Peter J. Wied, Esq.
Jay C. Chiu, Esq.
Katherine F. Murray, Esq.
Ms. Denise Esparza
Paul Hastings Janofsky & Walker LLP
515 South Flower Street
Los Angeles, CA 90071
vincentyip@paulhastings.com
peterwied@paulhastings.com
jaychiu@paulhastings.com
katherinemurray@paulhastings.com
deniseesparza@paulhastings.com

Ron E. Shulman, Esq.
Julie M. Holloway, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050
rshulman@wsgr.com
jholloway@wsgr.com

M. Craig Tyler, Esq.
Brian D. Range, Esq.
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759
ctyler@wsgr.com
brange@wsgr.com


/s/ Philip A. Rovner
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

846666

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LG DISPLAY CO., LTD., )
                Plaintiff, )
                      )
      v. )
                      )
CHI MEI OPTOELECTRONICS )
CORPORATION, et al. )
           Defendants. )
                      )
                      )

Civil Action No. 06-726 (JJF)
Civil Action No. 07-357 (JJF)

CONSOLIDATED CASES

## NOTICE OF MOTION TO COMPEL PLAINTIFFS LG DISPLAY TO PRODUCE
## DOCUMENTS RESPONSIVE TO DOCUMENT REQUEST NO. 98

PLEASE TAKE NOTICE that, Defendant Chi Mei Optoelectronics Corporation will

present Chi Mei Optoelectronics Corporation's Motion To Compel Plaintiffs LG Display to

Produce Documents Responsive to Document Request No. 98 to the Court on Friday, September

12, 2008 at 10:00 a.m. or on any other date ordered by the Court.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Jonathan S. Kagan
Alexander C. D. Giza
Adam Hoffman
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA 90067
(310) 277-1010

Dated: August 11, 2008
877812

By: /s/ Philip A. Rovner
     Philip A. Rovner (#3215)
     Hercules Plaza
     P. O. Box 951
     Wilmington, DE  19899
     (302) 984-6000
     provner@potteranderson.com

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG DISPLAY CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-726 (JJF) |
| | ) | Civil Action No. 07-357 (JJF) |
| v. | ) | |
| | ) | CONSOLIDATED CASES |
| CHI MEI OPTOELECTRONICS | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## DEFENDANTS CHI MEI OPTOELECTRONICS'
## LOCAL RULE 7.1.1 CERTIFICATION OF COUNSEL REGARDING
## MOTION TO COMPEL PLAINTIFFS LG DISPLAY TO PRODUCE DOCUMENTS
## RESPONSIVE TO DOCUMENT REQUEST NO. 98

I hereby certify that Defendants Chi Mei Optoelectronics Corporation and Chi Mei

Optoelectronics USA, Inc. ("CMO") attempted in good faith to resolve the issues raised in

CMO's Motion to Compel Plaintiffs LG Display to Produce Documents Responsive to

Document Request No. 98 (the "Motion"). As explained in detail in the Motion, CMO met and

conferred with counsel for plaintiffs LG Display Co., Ltd. and LG Display America, Inc.

("LGD") on June 28, 29, and 31, 2008, and August 4, 2008. During those meet and confer

sessions, LGD stated that it would not produce responsive documents, as outlined in the Motion.

CMO repeatedly made clear that it intended to file the Motion, but LGD refused to agree to

produce responsive materials, as outlined in the Motion. CMO further attempted to discuss the

subject matter of the Motion during a scheduled meet and confer on August 5, 2008, but LGD

refused to do so. On August 8, 2008, counsel for LGD wrote to counsel for CMO, stating that

LGD "continues to maintain its objections to [CMO's] overly broad requests" and "will continue

to oppose those requests." *See* Motion, Ex. 12.  CMO therefore respectfully requests that the

Court order LGD to produce responsive materials, as outlined in the Motion.

POTTER, ANDERSON & CORROON LLP

OF COUNSEL:

Morgan Chu
Jonathan S. Kagan                        By:   */s/ Philip A. Rovner*
Alexander C.D. Giza                              Philip A. Rovner (#3215)
Adam Hoffman                                     Hercules Plaza
Thomas C. Werner                                 1313 N. Market St.
Irell & Manella LLP                              P.O. Box 951
1800 Avenue of the Stars, Suite 900              Wilmington, Delaware  19899-0951
Los Angeles, California 90067-4276               (302) 984-6000
(310) 277-1010                                   provner@potteranderson.com

Dated:  August 11, 2008
878022                                   *Attorneys for Defendant*
                                         *Chi Mei Optoelectronics Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG DISPLAY CO., LTD., )<br><br>Plaintiff, )<br><br>v. )<br><br>CHI MEI OPTOELECTRONICS )<br>CORPORATION, et al., )<br><br>Defendants. )<br>) | Civil Action No. 06-726 (JJF)<br>Civil Action No. 07-357 (JJF)<br><br>CONSOLIDATED CASES |

## [PROPOSED] ORDER

**AND NOW**, the Court, this _____ day of _____, 2008, upon

consideration of Defendants Chi Mei Optoelectronics Corporation's and Chi Mei

Optoelectronics USA, Inc.'s ("CMO's") Motion to Compel Plaintiffs LG Display to Produce

Documents Responsive to Document Request No. 98 (the "Motion"), and plaintiffs LG

Display Co., Ltd.'s and LG Display America, Inc.'s ("LGD's") Oppositions thereto, and all

related materials, does hereby ORDER that:

A.     LGD shall produce by the _____ day of _____, 2008, the following

materials from *LG.Philips LCD v. Chunghwa Picture Tubes*, 02-6775 CBM (C.D. Cal.)

(consolidating Civil Actions 02-6775, 03-2886, 03-2866, 03-2884, 03-2885); and *LG.Philips

LCD v. Tatung*, 05-292 JJF (D. Del.) (collectively, the "LGD Prior Litigations"), that relate

to United States Patent Nos. 4,624,737; 5,825,449; and 5,019,002 (collectively, the "LGD

Asserted Patents"):

　　　　1.     Expert reports, including declarations or other written testimony given by
expert witnesses, that refer or relate to the LGD Asserted Patents and that were
served in the LGD Prior Litigations, and exhibits to such materials.

2.    Transcripts and videos of testimony given in the LGD Prior Litigations by LG Display[1] or by witnesses testifying on behalf of LG Display (including any inventor of the LGD Asserted Patents) that refers or relates to the LGD Asserted Patents, and exhibits to such materials.

3.    Transcripts of hearings in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and materials used at those hearings, including but not limited to technology tutorials and demonstratives.

4.    Documents, including exhibits, filed with the courts presiding over the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, including but not limited to claim construction and summary judgment filings, as well as filings relating to geographic limitations on the scope of discovery into accused products, and orders that issued in connection with court filings.

5.    Documents from trials in the LGD Prior Litigations, including but not limited to trial exhibit lists, trial exhibits (including demonstratives), witness statements, pre-trial briefs, pre-trial statements, motions in limine, post-trial briefs, transcripts of the trial proceedings, and orders that issued in connection with the trial.

6.    Discovery requests and responses served or received by LG Display in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits, appendices, or any similar attachments to such materials.

7.    Documents produced by LG Display on behalf of LG Display or any third party in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents. Such documents must be produced to CMO in the same form and bearing the same Bates numbers as in the LGD Prior Litigation.

8.    Materials provided by anyone in the LGD Prior Litigations that refer or relate to the validity, enforceability, ownership, inventorship, or term of the LGD Asserted Patents, including but not limited to documents and deposition testimony.

B.    LGD shall produce by _____, 2008, an index of all LGD

Prior Litigations materials that are within LGD's possession, custody, or control.

---

[1] "LG Display" is used in this letter as that phrase is defined in CMO's Document Requests.

IT IS SO ORDERED:

_____

The Honorable Joseph J. Farnan, Jr.