## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| LG DISPLAY CO., LTD., | |
| Plaintiff, | Civil Action No. 06-726 (JJF) |
| v. | Civil Action No. 07-357 (JJF) |
| CHI MEI OPTOELECTRONICS CORPORATION, et al. | **CONSOLIDATED CASES** |
| Defendants. | |

**PLAINTIFF LG DISPLAY CO., LTD.'S CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 7.1.1 REGARDING MOTION TO COMPEL CHI MEI OPTOELECTRONICS CORPORATION TO PROVIDE DISCOVERY**

I hereby certify that counsel for Plaintiff LG Display Co., Ltd. ("LG Display") has made reasonable efforts in good faith to reach agreement with Chi Mei Optoelectronics Corporation ("CMO") on the issues set forth in LG Display's motion to compel CMO to provide discovery.

Counsel for LG Display has sent numerous letters to CMO concerning the issues raised in the motion to compel. (See Exhibits 1 - 10, attached hereto[1]). In addition, LG Display's counsel have repeatedly met and conferred with opposing counsel in a series of teleconferences. Notwithstanding these efforts to resolve disputed issues, several areas of discovery remain in dispute. First, LG Display seeks 1) technical discovery for all potentially infringing LCD products, including mask and GDS files, TFT substrate design information, and fabrication equipment and plans and 2) worldwide sales summaries for all potentially infringing LCD products. Concerning these issues, LG Display promptly

---

[1] Exhibits 1 - 10 are letters dated August 12, August 12, August 4, July 28, July 9, July 8, June 30, July 12, March 6, and January 3, 2008.

raised these issues with CMO in letters dated June 12, 2008 and June 30, 2008 after reviewing CMO's interrogatory answers and objections to LG Display's requests for production and learning that CMO refused to produce worldwide sales summaries and intended to limit its production of documents to products that (i) are shipped by CMO directly to the United States and (ii) are identified in LG Display's response to CMO's interrogatory No. 2. LG Display wrote additional letters to CMO on July 9 (which letter also attached a hearing transcript from Judge Jordan in *Commissariat a L'Energie Atomique v. Samsung Electronics Co., Ltd., et al.* ("CEA case")), July 28, July 31, and August 12, 2008 regarding CMO's refusal to produce relevant technical and sales information for all relevant products. LG Display then met and conferred by telephone with CMO regarding this issue on July 28, July 29, and July 31, and again on August 4, 2008. CMO has refused to agree to produce all of the requested information even though LG Display already has produced and AUO has agreed to produce this information. During two of the meet and confer conferences, CMO suggested that it may be willing to produce the document it produced in the CEA case in response to Judge Jordan's ruling, CMO made it clear that it was not reaching an agreement on this issue. Further, CMO refused to produce any worldwide sales summary in the format or with the information requested by LG Display in this case.

Moreover, LG Display sent letters dated January 3, 2008 and March 6, 2008 to CMO after a production by CMO in the Texas case concerning CMO's failure to produce product specific design documents regarding the TFT array for each of its products. After conferring with CMO in that case, this situation was not resolved prior to the transfer of the Texas case to Delaware. Thereafter, CMO produced in this case the same

documents it produced in Texas to LG Display, along with certain additional documents. Promptly after reviewing CMO's productions, LG Display sent letters dated July 8 and July 28, 2008 reiterating CMO's continued failure to produce product design documents regarding the TFT array and other critical technical documents. The parties met and conferred regarding CMO's failure to produce critical technical documents on July 28, July 29, and July 31, and on August 4. Each time, counsel for CMO refused to agree to produce these documents, stating that he was continuing to investigate the issue. Finally, by letter dated August 8, 2008, CMO stated that although it was still investigating whether it had any additional responsive, non-privileged documents and would produce any such documents. Given CMO's delay, however, LG Display has no choice but to file a motion. If CMO ultimately produces documents that it has withheld, LG Display will withdraw this portion of its motion.

Further, LG Display seeks 3) information concerning CMO's activities inside and outside the United States related to indirect infringement and inducement; and 4) CMO shareholder reports, offering circulars, and other stock and shareholder information. LG Display sent letters dated June 12, July 8, July 9, and July 28, 2008 explaining the need for this discovery. The parties also met and conferred regarding CMO's failure to produce this important information on July 29 and July 31, and on August 4, 2008. Each time, counsel for CMO refused to agree to produce these documents, stating that he was continuing to investigate the issue. Given CMO's delay and unwillingness to agree to produce these extremely critical documents, LG Display had no choice but to file a motion.

In addition, CMO produced a significant portion of files in an un-useable form. Some of the files are corrupted, others cannot be opened, and still others cannot be processed without non-standard software or hardware. By letters dated July 28 and August 4, LG Display alerted CMO to this issue. The parties also met and conferred on this issue on July 31 and on August 4, 2008. Counsel for CMO has thus far refused to agree to produce replacement files, stating that he was investigating the issue and refusing to provide a date certain on when he would respond. LG Display therefore had no choice but to file a motion to ensure that this issue is heard on the next motions day so that LG Display can obtain critical information needed for depositions and other case preparation. If CMO subsequently agrees to provide replacement files, LG Display will withdraw this part of the motion.

August 12, 2008

BAYARD P.A.

/s/ Stephen B. Brauerman (sb4952)
Richard D. Kirk (rk0922)
Ashley B. Stitzer (as3891)
Stephen B. Brauerman (sb4952)
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
sbrauerman@bayardlaw.com
*Attorneys for Plaintiffs LG Display Co., Ltd.
and LG Display America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
Cass W. Christenson
John W. Lomas, Jr.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

{BAY:01111376v1}

4

# EXHIBIT 1

# McKenna Long
## & Aldridge LLP
Attorneys at Law

Albany
Atlanta
Brussels
Denver
Los Angeles

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

LORA A. BRZEZYNSKI
(202) 496-7239

EMAIL ADDRESS
lbrzezynski@mckennalong.com

August 12, 2008

**VIA E-MAIL**

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276

Re:  ***LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;***
C.A Nos. 06-726-JJF and 07-357-JJF

Dear Tom:

This letter responds to your August 8, 2008 letter wherein CMO continues to delay agreeing to produce technical information for all of its relevant products and worldwide sales summaries.  Your letter also mischaracterizes statements we made during our last of several discussions on this issue on August 4, 2008.

First, you incorrectly stated that during our meet and confer on August 4, 2008 that "LGD stated that LGD had not yet conducted the legal research supporting its threatened motion to compel."  What we actually said was that we were not going to do CMO's research for it.  We already identified for you authority supporting our position, and your continued assistance for additional authority is simply a delay tactic.  Second, we also never attempted to prematurely end our meet and confer.  What we did say in response to your insistence that we had not completed meeting and conferring on this issue was to remind you of the several letters and meet and confers we had already had on this subject.  Indeed, concerning these issues, LG Display has written letters to CMO dated June 12, June 30, July 28, and July 31, 2008.  LG Display has also met and conferred by telephone with CMO regarding this issue on July 28, July 29, July 31, and again on August 4, 2008.  We believe we have fully met our obligations to meet and confer with CMO on these issues.

If CMO wants to make a production as a partial response to LG Display's document requests, then please do so.  We are not preventing CMO from making such a production.  However, we do not consider documents that only partially respond to LG Display's document requests to fully resolve our dispute in this case.  Further, when we have repeatedly asked you for clarification during our meet and confers regarding exactly what CMO intends to produce,

Thomas C. Werner, Esq.
August 12, 2008
Page 2

you have refused to respond.  Moreover, we have explained to you that CMO must produce worldwide sales summaries by product and that identify CMO's customers and other data requested in LG Display's discovery requests, as LG Display produced to CMO.

Your letter also incorrectly states that LG Display has refused to "outline the contours of its alleged agreement between LGD and AUO on this issue." Again, this is yet another delay tactic by CMO as we have repeatedly informed you of the agreement between LG Display and AUO.  We told you that AUO agreed to produce and did produce its worldwide sales data by product and by customer.  We also told you that AUO agreed to produce technical information for all of its products sold worldwide.  If AUO determines that a certain product is never imported in the U.S., then it will raise those products for discussion with LG Display before withholding any production.  There is nothing more to convey to you regarding the agreement between AUO and LG Display.  Thus, there is no need for another conference to discuss AUO's agreement or CMO's failure to reach an agreement to produce this relevant information.

It is unfortunate that CMO has chosen to place extreme and unreasonable limits on its document production in violation of its discovery obligations and that CMO has persisted in its refusal to produce relevant information.  LG Display cannot be prejudiced further and must seek relief from the Court without further delay.

Very truly yours,

Lora A. Brzezynski

LAB:sak
DC:50564725.1

# EXHIBIT 2

Albany
Atlanta
Brussels
Denver
Los Angeles

# McKenna Long
## & Aldridge LLP
### Attorneys at Law

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

LORA A. BRZEZYNSKI
(202) 496-7239

EMAIL ADDRESS
lbrzezynski@mckennalong.com

August 12, 2008

**VIA E-MAIL**

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Re:    ***LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;***
        C.A. Nos. 06-726-JJF and 07-357-JJF

Dear Tom:

This letter responds to your August 8, 2008 letter which concerned deficiencies in CMO's document production. Your letter purports to respond in part to my July 28, 2008 letter.

My July 28, 2008 letter described critical technical documents that were missing from CMO's production, including product specific design documents related to the TFT substrate for each of CMO's products, manufacturing recipes for the gate deposition process and gate etching process, and information concerning its fabrication plants and equipment. Concerning the product specific design documents related to the TFT substrate, CMO has stonewalled LG Display for months on this issue, refusing to produce documents that are responsive to LG Display's requests. We first raised this issue with CMO in January, then again in March, and CMO has had two weeks since my July 28th letter to further investigate this issue. It is unacceptable that CMO is again delaying producing these technical documents.

As we have stated repeatedly, CMO needs to produce specific design documents for each product, including array or product specifications for the TFT substrate that disclose, for example, the composition and thickness of the various layers of the TFT array for each product. The documents CMO has produced are not product specific documents that identify the specifications for the TFT substrate for each product. Significantly, CMO did produce a CMO array specification for an OLED product at bates number CMD 574,483 - 574,499. The title is 12.4" EWS TFT array test manufacturing analysis report. Although this document is not for a CMO LCD product, CMO should have similar documents for its LCD products.

Thomas C. Werner, Esq.
August 12, 2008
Page 2

CMO has also had two weeks to investigate its failure to produce all of its relevant documents concerning (i) CMO's fabrication equipment and plants and (ii) CMO's manufacturing recipes for the gate deposition process and gate etching process. We do not understand why it is taking so long for CMO to confirm that it has not produced all relevant documents in these areas. Indeed, CMO appears to have limited its production of floor layout documents for its FABs to only one floor for each FAB so it should be plainly evident to CMO that it has documents that it has not produced.

Further, my July 28, 2008 letter outlined numerous document requests for which CMO has failed to produce documents. During our meet and confer conferences on July 29 and July 31, and on August 4, 2008, you stated that you would investigate these issues. Your August 8th letter now states that you have found numerous documents "within virtually every category listed by LGD", and our inability to locate documents "may be the result of a misunderstanding on LGD's part concerning the documents produced by CMO." Your letter does not attempt to explain how there could be a misunderstanding on LG Display's part. It appears this posturing is simply another attempt to lay blame for CMO's deficient document production on LG Display. Indeed, your letter also references that "LGD advised CMO of difficulties LGD encountered viewing certain documents in CMO's production - perhaps that, or other technical challenges facing LGD are contributing to LGD's inability to find responsive documents in CMO's production." Again, instead of promptly advising us that CMO would provide replacement files in a usable format,[1] which CMO still has not done, you suggest that difficulties or challenges on LG Display's part prevent us from locating responsive documents.

Incredibly, you also now "suggest that [we] review CMO's production again and, if [we] still cannot locate any responsive documents," we schedule a meet and confer. We view CMO's response, along with its failure to provide usable files, as simply another delay tactic.

Very truly yours,

Lora A. Brzezynski

LAB:ra
DC:50564585.1

---

[1] My July 28, 2008 letter notified CMO that CMO produced a large number of files that could not be opened, were corrupted, or were unusable. My August 4, 2008 letter provided further detail regarding certain CMO files that could not be opened.

# EXHIBIT 3

Albany
Atlanta
Brussels
Denver
Los Angeles

# McKenna Long
# & Aldridge LLP
Attorneys at Law

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

LORA A. BRZEZYNSKI
(202) 496-7239

EMAIL ADDRESS
lbrzezynski@mckennalong.com

August 4, 2008

**VIA E-MAIL**

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Re:  ***LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;***
C.A Nos. 06-726-JJF and 07-357-JJF

Dear Tom:

On July 28, 2008, we sent you a letter that identified a large number of files that could not be opened by us. We asked you to review your production and re-produce those files so that we could open them. During our meet and confer on Thursday, July 31, we asked you why you had not yet sent replacement CDs. You stated that there was no need to do so, that the files could be opened and viewed, and that we obviously did not know what we were doing or what software to use. You further stated that the .js (or JavaScript) files that we could not open needed to be run through a HTML browser in order to view them.

First, it is inappropriate for CMO to produce files in a manner that cannot be readily viewed. If CMO chooses to supply a file in a non-standard manner then it must provide the program or application that must be used with each file. *See, e.g.,* Fed. R. Civ. P. 34(a)(1)(A) (confirming that responding party should, if necessary, translate electronically stored information into a reasonably usable form). Second, we have again attempted to open the JavaScript files as you suggested, and we are unable to do so because when CMO renamed the files from the original native file names to the bates numbers, CMO destroyed the ability of LG Display to run the files. The program that you say we need to use only works when all of its corresponding files are in their correct location and named correctly. Further, even if CMO had not changed the file names, CMO did not provide the instructions or .txt file necessary to know how to run the program. If CMO claims that it provided such .txt instruction files, we have no way of knowing which .txt files go with certain other files and which files to use to run other files because CMO altered the names of each file.

Thomas C. Werner, Esq.
August 4, 2008
Page 2


CMO must have a cross-reference log of every original file with the original name and the new file name. We request that you produce this list right away, as well as provide LG with instructions or .txt files necessary to know how to run the program(s). We also request again that you re-produce these files in a manner in which they can be readily opened and viewed by LG Display. By way of example only, CMO produced a series of .js files which appear to be parts of a web page for Lockheed Martin. The files cannot run without additional information that CMO did not provide, and the executable file is either missing or can't be readily located.

In addition, CMO produced .1 files that cannot be opened. For example, the file labeled CMD56111-Hiconf appears to be looking for a host name called HPV135. Because CMO altered the files, there is no way for us to know where that host name file is. In this manner, these files are completely unusable to LG Display.

Further, CMO produced .hqx files that appear to need a Macintosh system to run those files. We do not have access to a Macintosh system. Please, therefore, produce these files in a usable format. There are also .stp files in CMO's production that require an Apple Computer to run. There were also included several excel files listed in my July 28 letter. Our IT department has reiterated that those files are corrupted or "bad" and cannot be opened properly such as CMD0564267 and CMD0564268. Further, file CMD0564459 asks whether the user wants to update linked files. When "yes" is checked, our computer crashes.

This letter simply provides further examples of the difficulties we have had reviewing CMO's production. To be clear, this letter is not intended to recite every instance of files in CMO's production that cannot be readily opened and used. It is unfortunate that you previously refused to assist us and refused to resend files in a manner in which they can be opened and readily used.

We again request that you immediately work with us on these issues to rectify the prejudice LG Display has suffered in not being able to review CMO's files. We hope that CMO will be prepared to immediately address and rectify these issues during our next meet and confer scheduled for Monday at 4:30 p.m. (EDT).

Very truly yours,

Lora A. Brzezynski

LAB:ra
DC:50563181.1

# EXHIBIT 4

Albany
Atlanta
Brussels
Denver
Los Angeles

# McKenna Long
## & Aldridge LLP
Attorneys at Law

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

LORA A. BRZEZYNSKI
(202) 496-7239

EMAIL ADDRESS
lbrzezynski@mckennalong.com

July 28, 2008

VIA E-MAIL

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276

Re:     *LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;*
        C.A Nos. 06-726-JJF and 07-357-JJF

Dear Tom:

This letter concerns CMO's ongoing refusal to produce large categories of highly
relevant and responsive documents.  CMO has placed extreme and unreasonable limits on its
document production, resulting in substantial prejudice to LG Display.  Although CMO
continues to "manufacture" issues with LG Display's document production related almost
entirely to the form of LG Display's document production and not the quality of LG Display's
production, LG Display's primary disputes with CMO concern the paucity of meaningful
documents in CMO's production and its refusal to engage in good faith in this discovery
process.

1)     CMO has improperly limited its entire production of technical
information, including its mask and GDS files, to CMO products "made to
specifications suitable for sale in the United States and shipped directly to the United
States" and to "only those products identified in LG Display's response to CMO's
Interrogatory No. 2."  By this limitation, CMO has severely limited its production,
denying LG Display access to directly relevant documents as explained in detail in my
letters dated June 12, 2008, June 30, 2008, and July 9, 2008.  LG Display has not so
limited its production to only those products identified by CMO at this stage of the
litigation as being accused of infringement, and it is improper for CMO to do so.

2)     CMO has failed to produce information and sales summaries on its
worldwide sales.  We previously provided an extensive basis for such discovery in our
letters dated June 12, 2008, June 30, 2008, and July 9, 2008, including supporting

Thomas C. Werner, Esq.
July 28, 2008
Page 2

authority. Your attempt to stall on this issue in your July 12, 2008 letter[1] by
requesting case law is a non-starter. We have provided an extensive basis for our
request in our aforementioned letters and even provided a copy of a hearing transcript
for a case directly on point from this Court. In that case, Judge Jordan specifically
found that the defendants had to produce worldwide sales information and technical
information on its products sold worldwide. Both LG Display and AUO have agreed
to and have produced documents on their products sold worldwide and worldwide
sales information.

     3)    CMO has failed to produce information and documents concerning
products sold to CMO's customers that may lead indirectly to the United States. By
limiting its production and its definition of "CMO Customer" to only those customers
who received products shipped directly to the United States, CMO has denied LG
Display discovery highly relevant to LG Display's inducement allegations against
CMO. CMO also has failed to produce relevant information and documents
exchanged with all of its customers by its unreasonable limitation on the definition of
"CMO Customer."

     4)    CMO continues to fail to produce any product specific design
documents, including array or product specifications for the TFT substrate for each
product that disclose, for example, the composition and thickness of the various layers
of the TFT array for each product. LG Display first raised this issue with CMO by
letters dated January 3, 2008 and March 6, 2008 in the Texas case. CMO has still
failed to remedy this deficiency. CMO's suggestion that its quality control documents
for certain of its Fabs provide responsive information is incorrect as these are not
product specific design documents. CMO must collect the relevant documents from
its research and development and manufacturing employees. Its quality control
employees clearly do not have the relevant documents.

We have now raised these deficiencies several times, and CMO has refused to rectify
its production. We therefore will proceed to move to compel on these issues.

Further, in my July 8, 2008 letter, we outlined extensive deficiencies in CMO's
document production to date. We have not received any response to that letter. First, in that
letter, we stated that CMO has produced no documents at all responsive to at least the

---

[1] Your July 12, 2008 letter also improperly characterizes LG Display as failing to produce certain assignment
documents related to the 737 patent and certain service manuals. As we stated in my July 8, 2008 letter, LG
Display stated that it was producing all assignment documents and it did so _prior_ to the document production
deadline of July 18, 2008. Further, LG Display also produced its service manuals _prior_ to the document
production deadline as well.

Thomas C. Werner, Esq.
July 28, 2008
Page 3

following LG Display document requests: 2, 3, 5, 12, 14-27, 29-31, 41-46, 48, 50-52, 54-60, 62-67, 69-83, 85-93, and 95-97. We still have been unable to locate any documents responsive to these requests. Second, in response to requests 4, 6-11, 13, and 28, CMO has still not produced or has produced very few documents concerning offers to sell, negotiations regarding its products, CMO's profits, CMO's marketing or advertising of its products including correspondence or other documents exchanged with its customers, or CMO's sales summaries.

Third, in our July 8th letter, we stated that CMO had not provided a full and complete response to requests 32-35 and 37, noting several deficiencies. CMO still has not produced documents related to Fab IDT. Although CMO produced an additional eight pages of floor layouts (572,069 - 572,076), these documents are illegible. CMO needs to produce these documents in native format so that they can be properly viewed. Further, the production of its floor layout documents is not complete. CMO only produced one floor layout for each Fab, although the documents indicate that each Fab may have multiple floors. For example, CMD 572,072 is the floor layout of Fab 4 6F (sixth floor).

With respect to these same document requests, we also have not been able to identify CMO's manufacturing recipes for the gate deposition process and gate etching process (i.e. documents that describe the manufacturing conditions for those processes). The documents produced by CMO do not include the detailed manufacturing parameters of the deposition or etching processes. With respect to these issues, we expect that CMO will be able to respond during our meet and confer at 2:00 pm EST today, as CMO has now had months to produce documents and weeks to respond to my July 8th letter.

Moreover, we have never received a response to my July 9, 2008 letter identifying specific deficiencies with respect to CMO's responses to LG Display's Document Request Nos. 10, 22, 23, 26-27, 30, 31, 74, 76, 81-82. We have also raised in two prior letters (dated June 12 and July 9, 2008) the fact that CMO has produced sales summaries in prior litigations but has not done so in this litigation, despite requests for same. We expect that CMO will be able to respond to these issues during our meet and confer at 2:00 pm EST today, as we have also raised these issues several times and have repeatedly tried to schedule meet and confers to which you have always denied availability.

In addition to the aforementioned major substantive deficiencies, the format of CMO's document production also is problematic. While demanding that LG Display produce its excel spreadsheets in native format, CMO itself has failed to produce all of its excel spreadsheets in native format. In my July 7, 2008 letter, we specifically asked CMO to produce in native form its over 2,700 page index correlating products to mask files attached to its Response and Objections to LG Display's First Set of Interrogatories served in Texas. In such a form, it is largely unusable and unworkable. Please promptly produce that document in native form so that we can sort it.

Thomas C. Werner, Esq.
July 28, 2008
Page 4

    Further, based on our review of CMO's native production documents, we have several substantial concerns. Because of the cumbersome way CMO produced its files, we have to attempt to open each file individually, and during that process, we have discovered that many of the files, including but not limited to certain of the executable files such as the .js files, will not open. (See e.g., CMD0563010; CMD0563183; CMD0563184; CMD0563189; CMD0563401; CMD0563575; CMD0563702; CMD0563703; CMD0563706; CMD0563707; CMD0563708; CMD0563709; CMD0563710; CMD0563711; CMD0563712; CMD0563713; CMD0563714; CMD0563715; CMD0564267; CMD0564268; CMD0564364; CMD0564365; CMD0564366; CMD0564367; CMD0564368; CMD0564369; CMD0564370; CMD0564371; CMD0564372; CMD0564406; CMD0564459; CMD0559741; CMD0560111; CMD0560159; CMD0560174; CMD0561048; CMD0561049; CMD0561050; CMD0561051; CMD0561052; CMD0561054; CMD0561108; CMD0561109; CMD0561110; CMD0561111; CMD0561112; CMD0561113; CMD0561114; CMD0561115; CMD0561116; CMD0561117; CMD0561118; CMD0561119; CMD0561120; CMD0561121; CMD0561122; CMD0561123; CMD0561124; CMD0561125; CMD0561126; CMD0561127; CMD0561128; CMD0561129; CMD0561130; CMD0561131; CMD0561132; CMD0561133; CMD0561134; CMD0561135; CMD0561136; CMD0561137; CMD0561138; CMD0561163; CMD0561728; CMD0561772; CMD0561773; CMD0561774; CMD0561795; CMD0561797; CMD0561798; CMD0561799; CMD0561800; CMD0561900; CMD0561916; CMD0562182; CMD0562381; CMD0563010; CMD0563110; CMD0564266). Please promptly re-produce CMO's production with files that can open.

    Moreover, CMO has not branded the actual pages of any of their native production (such as native pdf files and Word documents) with either a bates number or a confidentiality designation. Each native file has a single bates number regardless of the number of actual pages. This will cause a great deal of confusion when trying to refer to individual pages of a document that is printed out when it will not have any bates number. Significantly, because CMO chose for some reason to only include the confidentiality label in the electronic file name and did not take the time to label each page as is customary and required, when CMO's documents are printed and used in this case, they will not have a label on them. CMO must immediately re-produce its production with appropriate confidentiality labeling and bates labeling on each page of its production. If CMO refuses to do so, CMO must assume all risk of inadvertent disclosure and LG Display's counsel will not be held responsible for any disclosure because of CMO's failure to properly label and protect its documents. In addition, CMO produced several Zip files that have a single Bates number on the electronic file name. When the zip files are opened, they often have several separate pdfs, each with multiple pages. None of the separate pdfs and multiple pages are bates stamped or properly labeled. It will be even more difficult for us to keep track of these types of files.

Thomas C. Werner, Esq.
July 28, 2008
Page 5


     As CMO demanded an immediate response from LG Display during our meet and confer today regarding CMO's alleged format issues with LG Display's production, we hope that CMO will promptly rectify these deficiencies and expect that CMO will likewise be able to respond to these format issues today.

                  Very truly yours,

                  Lora A. Brzezynski

LAB:sak
DC:50561261.1

# EXHIBIT 5



# McKenna Long
# & Aldridge LLP
Attorneys at Law

Albany
Atlanta
Brussels
Denver
Los Angeles

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

LORA A. BRZEZYNSKI
(202) 496-7239

EMAIL ADDRESS
lbrzezynski@mckennalong.com

July 9, 2008

**VIA E-MAIL**

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

     Re:     ***LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;***
               C.A Nos. 06-726-JJF and 07-357-JJF

Dear Tom:

     I am writing in response to your June 30, 2008 letter, which purports to address CMO's document production deficiencies according to the following categories:

Discovery Relating to Worldwide Sales

     As previously explained in my earlier letters to CMO, and in those to AUO on which you have been copied, CMO cannot appropriately withhold this discovery as such documents are certainly within the scope of relevant discovery in this case. As you and your client are well aware, the distribution channel of LCD products necessarily includes the intermediate shipment of CMO products outside the United States for incorporation into LCD products that eventually are shipped to the United States. By refusing to produce information for all products that it does not directly ship to the United States, CMO is purposely ignoring how its products are distributed and end up in the United States and is trying to evade its discovery obligations. Such discovery is directly relevant to LG Display's inducement claims against CMO. In addition, the defendants have stated that they intend to challenge the validity of LG Display's patents. Discovery as to CMO's worldwide sales and worldwide products also is directly relevant to the issue of commercial success to rebut claims of obviousness. This very issue was before the Court in the case of *Commissariat a L'Energie Atomique v. Samsung Electronics Co., Ltd..* (*See* relevant excerpt from transcript of hearing on August 23, 2005 attached as Exhibit 1 and previously attached to a letter to AUO on which you were copied.) In that case, during a hearing before Judge Jordan, Judge Jordan ordered the Defendants to produce their worldwide sales and information regarding its products sold worldwide. As you may know, both CMO and AUO

Thomas C. Werner, Esq.
July 9, 2008
Page 2

were defendants in that case, and both parties produced their worldwide sales data, and technical
information on products sold worldwide.

### CMO Products and CMO Customers

As noted in the above discussion and in the supporting authority, it is also improper for
CMO to continue to limit its definition of "CMO Customer" to only those customers who receive
products shipped directly to the United States. CMO is no novice to patent infringement cases in
the United States and knows very well that a substantial portion of its products are sold in the
United States. CMO injects its products into a distribution channel that leads to the United
States, including many products that CMO sells to customers that CMO knows sell CMO
products in the United States.

It is also improper for CMO to limit its production to only those specific products
identified by LG Display in its interrogatory answers. LG Display made it clear in its
interrogatory answers that it was asserting that "all reasonably similar CMO products" also
infringe. Only CMO is in a position to know which of its products are reasonably similar as LG
Display does not have discovery as to those products. That is precisely why CMO must produce
the requested discovery for all of its products so that LG Display can determine the full scope of
infringement by CMO.

It is unfortunate that you refused to confer with us today on these two discrete issues, *i.e.*,
CMO's refusal to produce data on its worldwide sales and information on its products sold
worldwide and CMO's improper limitation of the definition of CMO Customer. We therefore
will assume that CMO will continue to stand by its position and refuse to produce data on its
worldwide sales and information on its products sold worldwide and will refuse to reconsider its
improper limitation of the definition of the term CMO Customer.

### Summaries

As stated in my June 12, 2008, CMO has previously produced summary sales
information in its other litigations, including in the CEA litigation. We suggest you check with
your client on this issue. Further, we do believe that the requested summary information is
included within the scope of our document requests, but we are agreeable to a call to discuss this
issue. We suggest a conference call on Monday, July 14, 2008 at 3:00 pm (EDT) to discuss this
issue. Kindly confirm your availability.

### LG Display's Document Request No. 10

We do not agree that this request is overbroad. First, the document labeled Exhibit C
attached to CMO's Interrogatory Answers in Texas does not constitute a full and complete
response to this document request. That Exhibit C is improperly limited to only certain products
presumably in accordance with CMO's improper definitions of "CMO Products" and "CMO
Customer." Second, this request seeks documents and communications concerning CMO's

Thomas C. Werner, Esq.
July 9, 2008
Page 3

importation, sale, and offer to sell its products since December 1, 2000. CMO has failed to
provide any communications at all with its customers, and has produced no documents reflecting
any offers to sell or importation. CMO is in the best position to know which of its documents are
responsive to this request, and we again request that CMO conduct a search and produce
responsive documents as soon as possible.

<u>Market Research Documents</u>

CMO has failed to produce any market research documents in this case and has failed to
produce any documents responsive to LG Display's document request nos. 22 and 23. As we
noted in our July 7, 2008 letter, LG Display has already produced documents responsive to
CMO's document request no. 26 and will continue to do so. While we are willing to discuss the
scope of the parties' production of market research reports to which all parties likely all
subscribe and receive, we want to be clear that CMO must begin producing documents
responsive to requests nos. 22 and 23. We are available to meet and confer on this issue on
Monday, July 14, 2008 at 3:00 pm (EDT).

<u>LG Display's Document Request Nos. 26 -27</u>

Your letter failed to respond to LG Display's position on document request nos. 26-27 as
stated in my June 12, 2008 letter. Please confirm that CMO will produce documents relating to
all trips to the United States by any CMO employee regarding "CMO Products" as LG Display
has defined the term. Similarly, please confirm that CMO will produce documents responsive to
request no. 27.

<u>LG Display's Document Request No. 30</u>

As stated in my July 7th letter, LG Display agrees with CMO's suggestion that the parties
should not be required to provide a privilege log of documents generated solely in connection
with previous litigations. We would also like to extend that agreement to include any privileged
documents created for the purposes of this litigation after litigation ensued. Let us know if CMO
will agree. However, we do find it difficult to understand how CMO can have no non-privileged
documents responsive to this request. This request seeks documents submitted or received from
any U.S. government agency or authority concerning the importation and/or sale of CMO
products and any requirements or approvals for such sales and imports. Further, if CMO has
responsive documents that it contends are privileged, we would like to know as soon as possible
what privilege CMO alleges applies.

<u>LG Display's Document Request no. 31</u>

We disagree that this request is overbroad. Our June 12, 2008 letter explained that this
request also seeks documents concerning the type and quantity of CMO Products serviced or
repaired and any communications with such repair companies regarding the service or repair of
CMO Products. Is CMO willing to produce these documents and communications. Your June

Thomas C. Werner, Esq.
July 9, 2008
Page 4

30, 2008 letter states that you are now willing to produce "supporting documents"? What documents are encompassed by the term "supporting documents?" We would like to discuss this request with you on Monday, July 14, 2008 at 3:00 pm (EDT).

### Product Samples

As requested in my June 12th letter, please provide us with a list of all sample CMO Products that CMO will make available prior to our meet and confer.

### LG Display's Document Request nos. 40, 42, 43-45, 47-54, 56-58, 64-66, 69-70, 77 and 80

We understand from your letter that CMO has now agreed to produce documents responsive to each of these requests and is not withholding any documents. Further, since LG Display did not serve formal document requests in Texas pursuant to the local practice, you are mistaken in your assertion that "many of these requests are duplicative of requests LG Display has served in the Texas case." As also noted in my July 12th letter, because LG Display asserted declaratory judgment claims on CMO's Patents many months ago, CMO cannot use the consolidation issue as a basis to delay its document production. As we informed CMO, LG Display was amenable to an extension of the document production deadline to August 1, 2008, but CMO flatly rejected that proposal.

### LG Display's Document Request nos. 61-62

We are confused by your proposal that the parties exclude from production privileged drafts of (i) license agreements, (ii) covenants not to sue and (iii) related agreements. If drafts are privileged, they should not have to be produced anyway, but they may need to be logged on a privilege log. If you are suggesting the parties are not required to log such draft agreements on a privilege log, we will agree, assuming AUO also agrees. Further, we suggest that the parties agree that no party is required to produce draft agreements exchanged with a third party where the draft agreement(s) ultimately led to a signed license agreement, settlement agreement, covenant not to sue, or related agreement. Please advise if CMO will agree.

CMO is incorrect in its assertion that LG Display has refused to produce documents relating to the settlement of its patent claims. As stated in my July 7th letter, LG Display has already produced and will produce settlement agreements from lawsuits concerning the LG Display Patents-in-Suit after obtaining any necessary permission from the appropriate third-parties as those agreements are confidential.

### LG Display's Document Request no. 74

In CMO's original response to this request, CMO states that it will produce mapping tables concerning CMO Products. LG Display has been unable to locate these documents and has requested bates ranges. This is an appropriate request because the documents are not equally

Thomas C. Werner, Esq.
July 9, 2008
Page 5

accessible to both CMO and LG Display.  If CMO has not produced these tables yet, please so
state.

    LG Display's Document Request no. 76

    As we made clear in my June 12th letter, there is no proper basis for CMO to refuse to
search for and produce documents reflecting any communications between CMO and any other
person concerning LG Display, LGDA, or any of the cases listed in the request.  This is
distinguishable from the pleadings and court orders from the litigations cited in CMO's Request
No. 98, which are publicly available via Pacer.  Please confirm that CMO will produce all
responsive documents.

    LG Display's Document Request nos. 81-82

    LG Display has produced publicly available documents of this type and expects CMO to
do the same.

    We look forward to receiving your prompt response to these issues.  Please also confirm
your availability for a conference call Monday at 3:00 pm (EDT) to discuss the issues raised by
this letter.

                Very truly yours,

                Lora A. Brzezynski

LAB:rla

# EXHIBIT 1

SHEET 1

1

1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                        - - -

COMMISSARIAT A L'ENERGIE
4    ATOMIQUE,                    :        CIVIL ACTION
                                  :
5              Plaintiff,         :
                                  :
6         v.                      :
                                  :        (Consolidated)
7    SAMSUNG ELECTRONICS CO., LTD., :
     TOTTORI SANYO ELECTRICS CO.,   :
8    LTD., FUJITSU DISPLAY          :
     TECHNOLOGY, SHARP CORPORATION, :
9    and AU OPTRONICS CORPORATION,  :
                                    :    NO. 03-484 (KAJ)
10             Defendants.          :
                            - - -

11

              Wilmington, Delaware
12     Tuesday, August 23, 2005 at 4:30 p.m.
              TELEPHONE CONFERENCE
13
                        - - -
14
BEFORE:      HONORABLE KENT A. JORDAN, U.S.D.C.J.
15
                        - - -
16   APPEARANCES:

17

          THE BAYARD FIRM
18        BY:  RICHARD D. KIRK, ESQ.

19              -and-

20   MCKENNA LONG & ALDRIDGE, LLP
          BY:  GASPARE J. BONO, ESQ.
21           (Washington, District of Columbia)

22             Counsel for Plaintiff
               Commissariat a L'Energie Atomique
23

24
               Brian P. Gaffigan
25             Registered Merit Reporter

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan

SHEET 8

**26**

1  there.
2  THE COURT: All right. Mr. Bono?
3  MR. BONO: Your Honor, I have no problem with
4  making the other two inventors, excluding that one who is
5  retired, and working to make them available in France. It's
6  just that I don't have the ability to compel them to come to
7  the United States. He is not employed.
8  THE COURT: Well, as to the first one, the one
9  that you said isn't employed, that may well be true. As to
10  the second, I don't know whether that is true or not. That
11  is why you're going to answer the discovery outstanding
12  about who they are and what they do because, you know, maybe
13  they are subject to compulsion here. And that is something
14  that I'd rather you folks figured out without me having to
15  figure out for you. But you give them the responses and you
16  discuss that in good faith about what the right thing to do
17  is.
18  And as to the other gentleman, if he is not
19  employed, he is not employed.
20  You folks start talking about how to get a
21  reasonable discovery opportunity. Because I can promise you
22  this: If they're not available on some reasonable basis for
23  discovery, you can bet that they're not going to be taking
24  the stand in this case. You can just take that to the bank
25  right now. If there is any proof that is at all persuasive

**27**

1  that they were under your custody or control or subject to
2  your blandishments in any way that would likely to have
3  effect upon them and you chose not to do it in the context
4  of discovery, they will not walk through my courtroom door.
5  So I just want folks on all sides to understand
6  that. And that goes for all defense witnesses as well who
7  are folks who ought to be made available for discovery.
8  Now, that doesn't say anything about where
9  they should be made available for discovery because the
10  assertions in the plaintiff's letters that all the defense
11  witnesses should come to the United States are just wrong.
12  I mean we've been down this path and I don't want to have to
13  keep walking down it. Read the order. If you've come to
14  this Court and you want your pitch for relief here, your
15  corporate officers are going to be deposed here. Defendants
16  who get pulled in here, if they're not making an affirmative
17  claim on their own behalf, they do not stand in the same
18  position, period.
19  So you guys need to be talking about what is a
20  sensible way to approach discovery of foreign witnesses. It
21  is not the case, CEA, that you can stand on your desire for
22  an omnibus solution and refuse to discuss what they have the
23  right to do which is notice depositions of your people and
24  get them done. I mean it's hard for me to understand how
25  you can get yourself worked up, Mr. Bono, because they won't

**28**

1  sit down and talk to you and you feel you are entitled to
2  that discussion before you have to respond to the 30(b)(6)
3  notice or to bring your officers and agents here otherwise
4  for deposition. This is not a two-way street on this
5  particular front.
6  Should they be responding to you? Yes. I hope
7  I have made that clear in this discussion already. But
8  you are not entitled to say, well, we're just not going to
9  produce your witnesses until you talk to us about an omnibus
10  solution. That is not the way this is going to work. It
11  isn't what the rules provide for. It's not what my
12  scheduling order provides for.
13  So you get the two we've talked about into the
14  United States. You get the 30(b)(6) people here. Let's
15  stop talking about this. We've resolved this. It's done.
16  As to the other witness, not employed one -- I
17  should say retired. It makes him sound like he is thrown
18  out. The retired gentleman, not dealing with him but
19  dealing with the other person who is concededly employed,
20  you respond to the discovery about that.
21  All right. Now I think that clears the decks on
22  the deposition scheduling. Am I correct, Mr. O'Rourke?
23  MR. O'ROURKE: Yes, Your Honor.
24  THE COURT: Mr. Bono?
25  MR. BONO: Yes, Your Honor.

**29**

1  THE COURT: Okay. Now let's talk about your
2  last issue, Mr. Bono, which was you wanted information about
3  foreign sales. Is there anything you want to add to the
4  correspondence that you sent to me in that regard?
5  MR. BONO: Your Honor, in addition to what I
6  put in the letter on that point, I'd like to emphasize that
7  the difference of what we're talking about here is the
8  defendants I believe are trying to get the Court to make a
9  ruling that is tantamount to an in limine ruling which says
10  we are only entitled to damages in this, to put in evidence
11  of damages as to only their direct sales to customers in the
12  United States.
13  We know that does not capture or it only
14  captures a fraction of the total sales in the United States
15  of the infringing products. We also know that 30 percent or
16  approximately 30 percent of the worldwide module sales are
17  in the United States or in products that are sold in the
18  United States.
19  And we believe that we will have evidence and
20  be able to put in a damage study which entitles us to a
21  reasonable royalty on not only the direct sales but the
22  total sales of the infringing model that have occurred in
23  this country. And the one sure fire way to calculate that
24  is if we have the worldwide sales and revenues figure from
25  the defendants of their VA mode modules and we can present

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan

SHEET 9

30

1  that figure. And that will be a much more representative
2  figure of the actual sales of the infringing product here
3  than what would be just the direct sales which are costing a
4  mere fraction of the infringing sales.
5       THE COURT: Okay. I have your argument on that.
6       Who is taking the cudgels up on the defense for
7  this? Is that you again, Mr. O'Rourke?
8       MR. O'ROURKE: It will be, although I believe
9  Mr. Sirota and some of the other defendants will want to be
10 heard on this as well.
11      THE COURT: Okay.
12      MR. O'ROURKE: Your Honor, we did in our letter
13 emphasize we believe that the worldwide sales revenue is not
14 relevant to any claim or defense under Rule 26(b). As we
15 pointed out, it's not relevant to an inducement claim.
16      We've given CEA the discovery into our U.S.
17 sales. We agreed that we would update that closer to trial.
18 Samsung has, will produce that as well. I think Mr. Sirota
19 will tell you that.
20      There is really no debate that we are allowed to
21 sell free and clear of their patents in Taiwan or Korea or
22 Japan. It can't be, the worldwide sales figures aren't
23 relevant on that basis.
24      In terms of Mr. Bono's unique damages theory,
25 that they're somehow entitled to the gross worldwide sales

31

1  numbers, that alleged approach to damages has no case law
2  support as cited in their brief or any of that we're aware
3  of; and they're trying to use that as the basis for
4  discovery into highly sensitive worldwide sales data which
5  is really, to be reflective of what it is, it's all the
6  sales we make in Taiwan or China where our plants are that
7  don't reflect in any way the U.S. sales. We've given them
8  the U.S. sales.
9       THE COURT: Yes. How about your responding more
10 specifically, if you would, to the assertion that they're
11 entitled to make an argument about commercial success and
12 that commercial success, it's relevant how successful
13 something is in a worldwide market and that your arguments
14 about obviousness are something that they ought to be able
15 to punch back at?
16      MR. O'ROURKE: Well, I would be happy to do
17 that. Your Honor, it's the U.S. patent or U.S. patents that
18 are at issue here. As a result, we believe it's the U.S.
19 sales that are relevant to assessing obviousness of the U.S.
20 patent. There is no Federal Circuit case cited that says
21 that worldwide sales are relevant to commercial success.
22 They've got some court out in Minnesota that supposedly says
23 that. But, you know, just because the gross worldwide sales
24 number is put in issue, that's not the beginning and the end
25 of the inquiry. They also have to have a nexus.

32

1       As you know, a nexus has to exist between the
2  sales or success of the commercial product and the patents
3  in suit. And these patents are directed to a very narrow
4  area of technology. They don't claim LCD computer monitors
5  and LCD televisions. Frankly, we know all those patents
6  were filed in the 1980s by the French Government, and the
7  idea that an LCD monitor or television is commercially
8  successful because of two patents that the French Government
9  filed back then is frankly outlandish. They should not be
10 allowed to use a commercial success argument without even
11 the remotest articulation of nexus to gain access to highly
12 confidential worldwide sales and revenue data from AUO or
13 any other defendant.
14      THE COURT: All right. Who else?
15      MR. ADAMS: Your Honor, this is Bob Adams. Can
16 I make one brief point on your question?
17      THE COURT: You sure can.
18      MR. ADAMS: The object of the hypothetical
19 negotiation is to address the value of the U.S. patent. By
20 giving additional value based upon something in a foreign
21 country, your U.S. damages are, in one sense, if they're
22 good, then it would increase the value of the U.S. patent.
23 And if they're no good, then it would decrease the value.
24 And I would say that in either case, you're not supposed to
25 look outside the U.S. It's a U.S. patent, U.S. damages.

33

1  And what happens abroad stays abroad.
2       MR. SIROTA: Your Honor, Neil Sirota for
3  Samsung. Just a couple quick points.
4       THE COURT: Yes.
5       MR. SIROTA: One, I want to put a finer point
6  on what really is at issue here. CEA is seeking worldwide
7  sales but what they're saying is, what they're really
8  talking about is indirect sales for which the defendants
9  could be liable and those are two very different things.
10      There is a statute, 271(b), that tells you the
11 elements that need to be present for an inducement claim.
12 And CEA's damages theory, the way they've articulated it is
13 they just want to bypass that and say, hey, we were just
14 going to take the number in the U.S. and divide it before by
15 the overall sales and that percentage is what we're entitled
16 to and that is totally improper.
17      And the second point I just want to make is as
18 to commercial success. The sales numbers in the U.S. that
19 they're going to get will likely show commercial success. I
20 don't think there is going to be too much of an issue about
21 that, so adding worldwide sales really doesn't add anything
22 to do that. Now, whether or not it's related to the
23 plaintiff's patent is a whole other issue, as Mr. O'Rourke
24 said, but the raw number is going to be there.
25      THE COURT: Is there anybody else want to speak

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan

SHEET 10

34

1  on this?
2       MR. ADAMS: I guess I would have to say for
3  Sharp, I don't agree with the commercial success statement
4  that Mr. Sirota made so I'd like to go on the record.
5       THE COURT: All right.
6       MR. ADAMS: And also I think that in order to
7  be entitled to these worldwide sales or non-U.S. sales
8  information, I do believe that CEA must show some evidence
9  that actual inducement exists, that some of the defendants
10 did something. And so far, they've given this Court and the
11 defendants no proof. Now, obviously they can take discovery
12 and come back and at that point it would be a different
13 issue. But at this point, they don't have any evidence of
14 actual inducement and all the defendants have denied it.
15      THE COURT: Is there anybody else?
16      MR. SIROTA: Just for the record, Neil Sirota.
17 I'm not stipulating to commercial success at this point.
18      THE COURT: I didn't take you as stipulating,
19 Mr. Sirota. That's fine.
20      MR. SIROTA: Okay, Your Honor.
21      THE COURT: All right. Well, this one goes to
22 CEA. And it goes to CEA because of this, and this alone, at
23 this juncture. The Federal Rules of Evidence on relevance
24 are plenty broad and on that broad basis, the question of
25 commercial success as it goes to the argument that the

35

1  defendants have raised about obviousness is information that
2  these folks can inquire into.
3       Whether it is ultimately admissible, whether
4  they ultimately make the kind of showing they need to
5  connect up the figures that they've got with an argument
6  that they can put in front of fact-finder who is going to
7  make some judgments with respect to underlying facts before
8  a determination is made perhaps on obviousness is something
9  that I'm not talking about right now. This is not an in
10 limine motion about what does and doesn't get in a trial.
11 What it is is a statement that, you know, how successful
12 something has been selling around the world fits around the
13 broad question of relevance in my mind when you are talking
14 about whether something is obvious or not.
15      So, we've got a protective order in place. It
16 has a very high level of protection available within it. If
17 these sensitive figures are of such a nature that it needs
18 to be provided under the highest level of security, do it.
19 But you haven't made the pitch successfully to me on the
20 defense side that this is relevant to nothing in the case.
21 And CEA has persuaded me there is at least one piece of the
22 case as to which it's sufficiently relevant to warrant
23 discovery under the broad rule.
24      All right. Now, I think that clears everything
25 that we had to discuss. Is there any other matter that

36

1  needs to be addressed while we're all on the line together,
2  Mr. Bono?
3       MR. BONO: No, Your Honor.
4       THE COURT: Mr. Richards or Mr. Kahn?
5       MR. KAHN: No, Your Honor.
6       THE COURT: Mr. Ingersoll or Mr. Adams?
7       MR. ADAMS: No, Your Honor.
8       THE COURT: Mr. O'Rourke or Mr. Hume?
9       MR. O'ROURKE: No, Your Honor.
10      THE COURT: Mr. Horwitz or Mr. Sirota?
11      MR. SIROTA: No, Your Honor.
12      THE COURT: Mr. Marsden?
13      MR. MARSDEN: No, Your Honor.
14      THE COURT: All right. And for others who are
15 on the call, I apologize if I didn't note you by name. I
16 just jotted down the names real quick. Have I forgotten
17 anybody here that was represented and needs to put their oar
18 in the water?
19      I hear nothing. Okay. Thanks for your time. I
20 hope you get things worked out and we get this case on a
21 track that won't require further Court intervention to help
22 you in the discovery process. See you.
23      (The attorneys respond, "Thank you, Your
24 Honor.")
25      (Telephone conference ends at 5:20 p.m.)

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan

# EXHIBIT 6

# McKenna Long
## &Aldridge LLP
Attorneys at Law

Albany

Atlanta

Brussels

Denver

Los Angeles

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

New York

Philadelphia

San Diego

San Francisco

Washington, D.C.

LORA A. BRZEZYNSKI
(202) 496-7239

EMAIL ADDRESS
lbrzezynski@mckennalong.com

July 8, 2008

**VIA E-MAIL**

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA 90067

Re:    ***LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;***
       C.A Nos. 06-726-JJF and 07-357-JJF

Dear Tom:

This letter responds to your July 2, 2008 letter demanding that LG Display produce certain documents by July 10, 2008. We find this request inappropriate for several reasons. First, the document production deadline is not until July 18, 2008, which is an extension that CMO requested and to which all parties stipulated. Second, LG Display, unlike the Defendants, has been diligently collecting, processing, and producing documents and has already produced over 124,000 pages of documents plus almost 5,000 native files responsive to the massive number of discovery requests served by both AUO and CMO. Accordingly, CMO does not have the right to demand production of additional documents by CMO's arbitrary date of July 10th.

Further, given the paucity of CMO's production to date and its failure to produce large quantities of documents responsive to LG Display's document requests, including some of the same types of documents that CMO now demands that LG Display produce, it is ironic that CMO can make this demand of LG Display. Indeed, CMO has produced thus far only its license agreement with IBM and no other relevant license agreements at all, nor has CMO produced any of its patent purchase agreements or any of the assignment documents related to its own patents asserted against LG Display. Moreover, CMO has not produced any marketing documents, including correspondence or other documents exchanged with its customers. In addition, CMO has failed to produce any of its contracts and agreements with its customers, original equipment manufacturers and systems integrators. CMO's production of technical documents related to its products also is severely deficient, including its production of GDS files as noted in my letter sent yesterday. We would appreciate knowing when CMO intends to remedy these deficiencies.

Thomas C. Werner, Esq.
July 8, 2008
Page 2

Significantly, our review of CMO's document production reveals that CMO has produced no documents at all responsive to at least the following LG Display document requests: 2, 3, 5, 12, 14-27, 29-31, 41-46, 48, 50-52, 54-60, 62-67, 69-83, 85-93, and 95-97. Further, in response to requests 4, 6-11, 13, and 28, CMO has only produced a limited number of invoices and shipping records, and no documents concerning offers to sell, price quotations, purchase orders, negotiations regarding its products, CMO's profits, CMO's marketing or advertising of its products, or CMO's sales summaries.

In addition, in response to requests 32-35 and 37, CMO has produced only a limited number of documents concerning its TFT manufacturing process and its cell assembly process. CMO has failed to produce any documents related to CMO's Fab IDT and its Fab 6, and it has not produced floor layouts for all of its Fabs, with the exception of its Fab 7. Nor has CMO produced all of the documents referenced in document request no. 37. Moreover, with the exception of some documents related to its '179 and '926 patents, CMO has not produced any documents concerning the conception, design, reduction to practice, research and development of each invention covered by one or more claims of the CMO Patents as requested in document request 47.

Please advise as soon as possible when we can expect to receive all of these documents from CMO. Concerning your requests for specific documents that you have been unable to locate in LG Display's document production, we have been and are continuing to investigate your questions and can provide the following response. First, we have inquired regarding the separate agreement referenced in the document produced at LGD 000230. We understand that that document contains a confidentiality provision that requires us to seek consent from a third party. We are in the process of seeking that consent. Second, without waiver of our objections to CMO's document request no. 98, we will make an effort to obtain a copy of the deposition of Woo Sup Shin. Please advise, however, how Mr. Shin's deposition is relevant to claim construction and why it must be produced "immediately." We are unaware of case law that would support your position.

Third, we also are in the process of preparing additional file histories and assignment documents for production, which includes assignment documents related to LG Display's '737 patent. We should be able to produce these documents next week.

Finally, LG Display is not withholding any documents responsive to CMO's document request No. 46. We will continue to inquire to see if LG Display has any additional documents

Thomas C. Werner, Esq.
July 8, 2008
Page 3

responsive to that request, and we are in the process of preparing an additional production that
may have documents responsive to this request as well.

Very truly yours,

Lora A. Brzezynski

DC:50557395.1

# EXHIBIT 7

# McKenna Long
# & Aldridge LLP
Attorneys at Law

Albany
Atlanta
Brussels
Denver
Los Angeles

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

LORA A. BRZEZYNSKI
(202) 496-7239

EMAIL ADDRESS
lbrzezynski@mckennalong.com

June 30, 2008

**VIA E-MAIL**

Adam Hoffman, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA 90067

Re:    ***LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;***
C.A Nos. 06-726-JJF and 07-357-JJF

Dear Adam:

We write concerning certain of Chi Mei Optoelectronics Corporation's ("CMO's") objections and responses to LG Display's First Set of Interrogatories (Nos. 1 - 19).

First, as referenced in my May 5, 2008 letter to CMO's formal counsel, Arthur Licygiewicz of Jones Day, CMO failed to provide any substantive response whatsoever to Interrogatory Nos. 1-5, 9, 10, 13, 15, and 17, yet provided certain substantive responses to corresponding identical interrogatories in the Texas litigation on April 28, 2008. (See Interrogatory Nos. 1-7, 10, 12, and 17.) Further, certain of CMO's responses in Delaware were inconsistent with responses it provided to identical interrogatories propounded in Texas. (See for example Interrogatory No. 11.) We understand from our discussions that CMO intends to supplement its interrogatory answers, and we request that CMO at that time address any inconsistencies in its responses served in Delaware and in Texas.

Second, CMO objects to LG Display's definition of "CMO Products" and purports to limit its responses to only those products "made to specifications suitable for sale in the United States and shipped directly to the United States." (See CMO's General Objection No. 9 and CMO's responses to Interrogatory Nos. 1-6, 9-10.) As noted in my June 12, 2008 letter to you concerning certain of CMO's objections and responses to LG Display's First Set of Requests for the Production of Documents and Things (Nos. 1 - 83), documents relating to CMO Products sold worldwide are certainly within the scope of relevant discovery in this litigation. For example, CMO's attempt to produce only documents relating to CMO products, which are "shipped **directly** to the United States," ignores the fact that the distribution channel of LCD

Adam Hoffman, Esq.
June 30, 2008
Page 2

products necessarily includes the intermediate shipment of CMO's products outside the United States for incorporation into LCD products that eventually are shipped to the United States.

LG Display will agree to produce relevant documents regarding its products sold worldwide. LG Display therefore expects CMO to produce information and/or documents regarding CMO products sold worldwide in response to each of LG Display's interrogatories. Please promptly respond with your agreement. Because of the importance of this issue, we request a meet and confer conference on Wednesday at 3:00 pm (EDT) to discuss this issue if you do not respond prior to that time with your agreement to produce relevant documents regarding CMO's products sold worldwide.

Third, CMO improperly construes "CMO Customer" "to mean only those customers that purchase CMO Products," as narrowly construed by CMO. CMO's attempt to severely limit the scope of its customers ignores the fact that CMO ships its products to numerous customers who (i) are intermediaries in the distribution channel that ultimately leads to the United States and/or (ii) are integrators who thereafter ship CMO Products to the United States. Please promptly confirm that you will not so limit LG Display's reference to CMO Customers. Similarly, we request a meet and confer conference on Wednesday at 3:00 pm (EDT) to discuss this issue if CMO continues to insist on limiting the scope of "CMO Customers."

Despite numerous objections and statements in CMO's responses that CMO will not supplement its response to certain interrogatories until "after entry by this Court of a suitable protective order," we understand, based on CMO's reproduction of confidential information previously produced in the Texas litigation, that CMO is not withholding any information or documents or delaying production based on the fact that a protective order has not been entered. Thus, LG Display expects CMO to promptly supplement its responses where appropriate and provide information pursuant to Local Rule 26.2 until the entry of a Protective Order.

With regard to LG Display's Interrogatory No. 16, CMO has not provided any basis for its objection that the request to "provide a narrative describing each investigation concerning the LG Display Patents" is "overly broad." Please provide the basis for your objection or promptly supplement CMO's responses to provide the requested information.

CMO has objected to LG Display's Interrogatory No. 19 "to the extent it calls for CMO to identify 'each investigation.'" The interrogatory, however, relates to "legal opinions or advice," and does not mention investigations. Accordingly, please promptly supplement CMO's response.

Adam Hoffman, Esq.
June 30, 2008
Page 3


     We look forward to receiving CMO's response to this letter and resolving any discovery disputes so that we can avoid filing a motion with the Court.  Please confirm your availability for a call on Wednesday afternoon at 3:00 pm (EDT).

                             Very truly yours,

                             Lora A. Brzezynski

Attachment
DC:50555038.1

# EXHIBIT 8

Albany
Atlanta
Brussels
Denver
Los Angeles

# McKenna Long
## & Aldridge LLP
### Attorneys at Law

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

LORA A. BRZEZYNSKI
(202) 496-7239

EMAIL ADDRESS
lbrzezynski@mckennalong.com

June 12, 2008

**VIA E-MAIL**

Jonathan S. Kagan, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA 90067

Re: *LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;*
C.A Nos. 06-726-JJF and 07-357-JJF

Dear Jonathan:

We write concerning certain of Chi Mei Optoelectronics Corporation's ("CMO's") responses and objections to LG Display's First Set of Requests for the Production of Documents and Things (Nos. 1 - 83).

CMO improperly attempts to limit its production of documents to CMO products "made to specifications suitable for sale in the United States and shipped directly to the United States" and to "only those products identified in LG Display's response to CMO's Interrogatory No. 2." (See CMO's General Objection No. 9). CMO similarly improperly construes "CMO Customer" to mean only those customers that purchase these so limited "CMO products." (See CMO General objection No. 10). Documents relating to CMO products sold worldwide are certainly within the scope of relevant discovery in this litigation. For example, CMO's attempt to produce only documents relating to CMO products, which are "shipped **directly** to the United States," ignores the fact that the distribution channel of LCD products necessarily includes the intermediate shipment of CMO's products outside the United States for incorporation into LCD products that eventually are shipped to the United States. Indeed, LG Display and AUO have agreed to produce relevant documents regarding their products sold worldwide. We therefore will expect CMO to produce documents regarding CMO products sold worldwide in response to each of the relevant requests. Please confirm that CMO will respond to request nos. 4-35, 37, 41, 43, 68, 71, 74 and 83 in accordance with LG Display's definitions of "CMO Customer" and "CMO Products."

Further, CMO improperly limits discovery to only those products identified in LG Display's Response to CMO's Interrogatory No. 2 and fails to recognize that "LG Display also

Jonathan S. Kagan, Esq.
June 12, 2008
Page 2

included in its responses to CMO USA's Interrogatory No. 2 "all reasonably similar CMO products." In any event, CMO cannot so limit its production, and must produce documents relating to all CMO Products as defined by LG Display for purposes of discovery in this case as discovery concerning all products is relevant and likely to lead to admissible evidence.

Despite CMO's general objection to producing "confidential information in the absence of a suitable protective order," we understand, based on CMO's reproduction of confidential information previously produced in the Texas litigation, that CMO is not withholding any information or documents or delaying production based on the fact that a protective order has not been entered. Please promptly advise if our understanding is incorrect.

Concerning LG Display's request no. 8, CMO states that "no such summary documents exist, and it will produce responsive, non-privileged documents, if any, located after a reasonable search reflecting sales, shipments, price per unit, gross profit per unit, fixed cost per unit, and variable cost per unit relating to CMO Products." CMO has in the past produced summary sales information in other litigations. Please therefore have CMO produce such summary documents in this litigation without further delay. Accordingly, we expect that CMO will produce sales summaries including, at a minimum, customer name, sales date, ship to, bill to, item, quantity, currency, USD amount, OEM maker, brand, and final destination. Further, CMO should produce summaries of its: (1) shipments and sales worldwide; and (2) shipments and sales to the United States. LG Display will produce its sales summaries with the information we have identified for all relevant years such information is available. If CMO is still unwilling to produce summary information in accordance with this paragraph and the request, please promptly so advise.

Similarly, please confirm that CMO will include summary documents in response to request nos. 4, 6, 7, and 11. Also concerning request no. 11, we expect CMO to produce documents relating to transactions worldwide as they are certainly within the scope of relevant discovery in this litigation.

Concerning document request no. 10, CMO improperly attempts to limit its production of documents or communications concerning the use, making, importation, sale, and offer to sell, in or to the U.S., CMO's LCD products, and LCD products containing CMO's products, to invoices, shipping records, and purchase orders. Please confirm that CMO will produce all documents responsive to this request.

Concerning document request nos. 22 and 23, CMO improperly attempts to limit its production of communications and documents that reference or relate to DisplaySearch or any other market research publisher to only those concerning the U.S. market. That is an improper limitation as documents exchanged between CMO and Display Search (or any other market research publisher) and documents generated or relied upon by CMO that reference Display Search relating to the worldwide market are directly relevant to the claims and defenses in this case. Indeed, CMO did not limit its request for market reports only to the U.S. market, and LG

Jonathan S. Kagan, Esq.
June 12, 2008
Page 3

Display has produced a number of DisplaySearch reports addressing worldwide markets in response to that request. Please therefore confirm that CMO will produce responsive documents relating to markets worldwide without further delay. We would be willing to meet and confer to discuss what reports should and should not be produced, given that the parties may subscribe to the same market research companies.

In response to document request no. 26, CMO improperly limits discovery to trips related to products "sold to a CMO Customer." We expect CMO to produce documents relating to all trips to the United States by any CMO employee regarding "CMO Products" as LG Display has defined the term. Similarly, we expect that CMO's production in response to request no. 27 will not be so limited.

Concerning document request no. 28, CMO improperly limits its search and production to "invoices, shipping records, and purchase orders." However, the information sought by this request is not limited to such types of documents. Please confirm that CMO will produce all documents responsive to this request that will permit LG Display to ascertain the "identity of each person who imported and/or sold in the U.S. any CMO Products since December 1, 2000."

Concerning document request no. 30, if CMO is withholding documents based on privilege, please confirm, and provide a privilege log identifying those documents. With respect to privilege logs, please let us know whether CMO agrees with LG Display and AUO that the parties should not be required to log any privileged documents created after this litigation ensued. Also, please let us know whether CMO would also agree that the parties should not be required to log any privileged documents created for the purposes of any litigation.

Concerning document request no. 31, the request was not limited to "warranty/repair service agreements" as CMO's response suggests. Rather, request no. 31 also seeks, *inter alia*, documents concerning the type and quantity of CMO Products serviced or repaired and any communications with such repair companies regarding the service or repair of CMO Products. Please confirm that CMO will produce all responsive documents.

In response to document request no. 36, CMO objects to the production of "each distinct type of CMO's LCD modules and LCD panels." As stated above, the exchange of products sold worldwide is certainly within the scope of relevant discovery in this litigation. LG Display also is willing to meet and confer regarding a procedure under which CMO will make its samples available. To begin that discussion, please provide us with a list of all sample CMO Products that CMO will make available.

CMO also appears to be delaying its production of documents responsive to document request nos. 40, 42, 44, 47-54, 56-58, 64-66, 69-70, 77, and 80 because CMO has not yet made infringement allegations concerning the CMO Patents or any damage allegations related thereto. Nevertheless, given the fact that (i) LG Display has asserted claims for declaratory judgment related to the CMO Patents, (ii) CMO's Texas litigation has been transferred to Delaware and will likely be consolidated with this litigation, and (iii) the current discovery deadline is

Jonathan S. Kagan, Esq.
June 12, 2008
Page 4

June 27th, CMO must respond to these document requests now. Further, CMO has been inconsistent in its responses to these requests, agreeing to produce discovery for request nos. 40, 47-53, 69, and 80 after a reasonable search, but apparently refusing to conduct a similar search in response to request nos. 42, 44, 54, 64-66, 70 and 77. We expect CMO to produce documents in response to each of these requests.

Further, if CMO intends to delay its production in response to its "premature" objections to LG Display's request no. 43, please so advise. It is not a basis to delay production because LG Display "seeks documents that CMO may rely on to support its contentions." There is no separate deadline in the Scheduling Order relating to contentions after June 27, 2008. Thus, CMO must respond to this request at this time.

CMO improperly objects to document request no. 45 on the grounds that it is "premature," yet there is no separate provision in the Scheduling Order for exchange of documents relating to opinions of counsel. Accordingly, CMO has no basis to delay responding.

Concerning document request nos. 61 and 62, please confirm that CMO is not withholding production of any documents based upon its objections. Also, please confirm that CMO is not limiting its production of documents only to license agreements, as LG Display seeks "license agreements, covenants not to sue, and related agreements," including all "addendums, amendments, and exhibits" to those agreements.

Concerning document request no. 71, please confirm that "no responsive, non-privileged documents exist." This request seeks information that is directly relevant to the claims at issue, and it is difficult to believe that a large manufacturer such as CMO retains no documents related to manufacturing costs and product yield.

Concerning document request no. 74, please provide the bates ranges for the mapping tables produced.

Concerning LG Display's request no. 76, CMO appears to refuse to produce communications regarding litigations identified in the request with the exception of "pleadings" from only the *Tatung* litigation. There is no proper basis for CMO to refuse to search for and produce documents reflecting any communications between CMO and any other person concerning LG Display, LGDA, or any of the other cases listed in the request. If CMO refuses to search for and produce such documents, please promptly advise.

LG Display's request nos. 81 and 82 are not limited to annual reports but specifically seeks other types of documents, including but not limited to, all reports to shareholders, stock offerings, offering circulars, shareholder agreements, and stock purchases. If CMO refuses to promptly search for and produce such documents, please immediately advise.

We look forward to receiving CMO's response to this letter and resolving any discovery disputes so that we can avoid filing a motion with the Court.

Jonathan S. Kagan, Esq.
June 12, 2008
Page 5

Very truly yours,

Lora A. Brzezynski /sws

Lora A. Brzezynski

DC:50551700.2

# EXHIBIT 9

Atlanta

Denver

Los Angeles

Philadelphia

# McKenna Long
# & Aldridge LLP
#### Attorneys at Law

1900 K Street, NW • Washington, DC 20006
202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

San Diego

San Francisco

Washington, DC

Brussels

LORA A. BRZEZYNSKI
(202) 496-7239

lbrzezynski@mckennalong.com

March 6, 2008

VIA E-MAIL

Adam Hoffman, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, California 90067-4276

      Re:    *Chi Mei Optoelectronics Corp. v. LG.Philips LCD Co., Ltd., et al.*
                <u>Case No. 07-176-TJW</u>

Dear Adam:

      We are in receipt of your March 1, 2008 letter sent in response to my January 3, 2008 letter. My January 3, 2008 letter covered in detail the deficiencies in Chi Mei's P.R. 3-3 invalidity contentions and accompanying claim charts. Your letter, however, simply denies LPL's position with little or no explanation. Although your letter purports to address why Chi Mei failed to comply with P.R. 3-3 with respect to certain specific prior art references, you offer no explanation regarding several other prior art references identified in my letter. You also offer no explanation why Chi Mei failed to comply with P.R. 3-3(b) and (d). Chi Mei's reservation of rights to supplement its contentions at a later time is contrary to the Local Patent Rules. Accordingly, please again be advised that LPL will oppose any effort by Chi Mei in the future to supplement its invalidity contentions to comply with P.R. 3-3(b), (c), and (d).

      Significantly, my January 3, 2008 letter also discussed Chi Mei's deficient P.R. 3-4 document production. As you know, we specifically noted that Chi Mei's document production failed to include (i) a usable format for Chi Mei's mask files and (ii) any TFT array specifications associated with an accused product that discloses, for example, the composition and thickness of the various layers of the TFT array. These documents are absolutely critical and must immediately be produced by Chi Mei. Frankly, I am surprised that your letter failed to respond to this issue at all. Because of the critical nature of these documents and the discovery schedule in this case, and in light of the fact that it took Chi Mei two months to respond to my prior letter, we simply cannot permit any further delay by Chi Mei. Accordingly, if Chi Mei does not promptly agree to produce its mask files in the requested format and its TFT array specifications, LPL will raise this issue with the Court to avoid further delay and prejudice to

Adam Hoffman, Esq.
March 6, 2008
Page 2

LPL. Please be further advised that this letter is written without waiver of, nor prejudice to, LPL's right to raise additional issues with Chi Mei's document production after our review is complete.

Your letter requests that we resume our discussions about appropriate discovery limitations in this case. We are available for such discussions and propose a conference call at either 3:00 p.m. (EST) tomorrow or Monday. We will need to know during our call, however, whether Chi Mei will agree to produce both its mask files in the requested format and its TFT array specifications. Please let me know which time you would like to have our discussion.

Very truly yours,

Lora A. Brzezynski

DC:50531027.1

# EXHIBIT 10

Albany
Atlanta
Brussels
Denver
Los Angeles

# McKenna Long
# &Aldridge LLP
### Attorneys at Law

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

LORA A. BRZEZYNSKI
(202) 496-7239

lbrzezynski@mckennalong.com

January 3, 2008

**VIA E-MAIL**

Alexander C.D. Giza, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, California 90067-4276

      Re:    *Chi Mei Optoelectronics Corp. v. LG.Philips LCD Co., Ltd., et al.*
             Case No. 07-176-TJW

Dear Alex:

     We are in the process of reviewing Chi Mei's Preliminary Invalidity Contentions and recent document production, and although our review is ongoing, I am writing now to raise several glaring omissions with the P.R. 3-3 invalidity contentions and accompanying claim charts and P.R. 3-4 document production.

     As you know, P.R. 3-3(c) requires a party to provide a "chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found." While Chi Mei identified several references as "Prior Art (P.R. 3-3(a))", the required identification within each reference was not provided. For example, Chi Mei failed to submit the required claim charts for the following prior art references listed on pages 8 through 12 of Chi Mei's invalidity contentions:

1.    US 5,428,250 (for LG.Philips Patent US 5,905,274 ("the '274 Patent"),
      LG.Philips Patent US 7,176,489 ("the '489 Patent"), and LG.Philips Patent US
      6,815,321 ("the '321 Patent"));

2.    US 5,340,758 (for the '274 Patent);

3.    US 5,340,758 (for claim 22 of the '321 Patent);

4.    JP H05-066421 (for the '321 Patent); and

DC:50520122.1

Alexander C.D. Giza, Esq.
January 3, 2008
Page 2

    5.     JP H07-211697 (for the '274 Patent).

LG.Philips will object to Chi Mei's future reliance upon any references for which claim charts were not provided pursuant to P.R. 3-3(c). Similarly, Chi Mei's section V. entitled "Additional Prior Art" clearly violates the Patent Rules. Contrary to the explicit requirements of the Local Patent Rules, Chi Mei simply listed more than 50 additional prior art references at the end of its submission and suggested it did not have the time to analyze the references prior to the deadline. Again, LG.Philips will oppose any effort by Chi Mei to use or rely on, either alone or in combination with another reference, any of these catch-all additional prior art references.

    In addition to not identifying where elements are found within all identified references, Chi Mei failed to comply with P.R. 3-3(b) as its invalidity contentions did not adequately identify the motivation to combine the items of prior art. In fact, Chi Mei failed to proffer any basis for combining references other than asserting "it would have been obvious to one of skill in the art." It is LG.Philips's position that Chi Mei is limited to the combinations of references and stated bases for combining them as specified in its invalidity contentions and accompanying claim charts. It is impermissible and contrary to the Patent Rules for Chi Mei to suggest that its "obviousness combinations are merely exemplary and are not intended to be exhaustive." Thus, any future attempt by Chi Mei to add additional combinations or references or bases for combining them will be met by a motion to strike.

    Furthermore, Chi Mei's invalidity contentions fall far short of the requirements of P.R. 3-3(d) that they contain "[a]ny grounds of invalidity based on indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims." Chi Mei's general statement that the asserted claims of the patents-in-suit are invalid under these two sections of the federal code are conclusory at best and provide no specific information regarding the factual basis for such statements. Neither the individual claims nor the specific patents are identified on the single page of Chi Mei's invalidity contentions addressing P.R. 3-3(d).

    Most tellingly, Chi Mei's statement that a "more detailed basis for [its] written description and indefiniteness defenses will be set forth in Chi Mei's expert report(s) on invalidity to be served in accordance with the Court's Docket Control Order" defies the requirements of P.R. 3-3(d). Indeed, P.R. 3-3(d) requires that the grounds for invalidity be contained in the invalidity contentions that shall be served not later than 45 days after service of the infringement contentions. Chi Mei not only failed to timely serve its invalidity contentions, but it failed to comply with the local rules requiring that Chi Mei provide its reasoning *now*, and not several months from now. Further, none of the Court's orders make any mention of expert reports. Rather, the Court's October 23, 2007 Order (Docket #37), commands that "[a]ny party opposing a claim of patent infringement shall comply with P.R. 3-3 and 3-4 in accordance with the deadline provided in those rules." Accordingly, to the extent Chi Mei attempts to supplement its invalidity contentions as to its written description and indefiniteness defenses at a later date, LG.Philips will move to preclude Chi Mei from doing so.

Alexander C.D. Giza, Esq.
January 3, 2008
Page 3

Finally, the documents required to be produced pursuant to P.R. 3-4 are severely deficient as they fail to include (i) a usable format for Chi Mei's mask files and (ii) any TFT array specifications associated with an accused product that discloses, for example, the composition and thickness of the various layers of the TFT array. The .png graphics files that show merely miniscule, discrete portions of Chi Mei's mask files are nothing more than an elaborate jigsaw puzzle that lacks all of Chi Mei's necessary information. As you well know, the information that can be obtained from mask files is limited when not produced in its native format. Given that both parties agreed to review all native files on a stand alone computer that is not connected to a network or the internet, Chi Mei has received adequate assurances that such sensitive information will not be distributed beyond LG.Philips's counsel in this matter. Further, considering that no array specifications were produced and that the utility of the graphics files is severely limited, LG.Philips requests that Chi Mei immediately supplement its production to include all mask files in native format, just as LG.Philips produced to Chi Mei. Please also note that LG.Philips specifically requested all mask files in its document requests served on Chi Mei on November 9, 2007. Accordingly, please supplement Chi Mei's production as soon as possible to include the omitted documents and native mask files. If Chi Mei does not promptly agree to produce its mask files in native format and all array specifications, LG.Philips will raise this issue with the Court to avoid further delay and prejudice to LG.Philips.

Please be advised that LG.Philips objects to Chi Mei's future reliance on any of the prior art listed in its invalidity contentions or accompanying claim charts that do not meet the requirements of P.R. 3-3 as discussed above. Please be further advised that this letter is written without waiver of, nor prejudice to, LG.Philips's right to raise additional issues with Chi Mei's invalidity contentions or document production after our review is complete. Nevertheless, we look forward to working with you on this matter and to our prompt receipt of Chi Mei's supplemental production.

Very truly yours,

Lora A. Brzezynski

DC 50520122.1

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on August 12, 2008, he served the

foregoing documents by email and by hand upon the following counsel:

Philip A. Rovner
David E. Moore
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE  19899-0951

Karen L. Pascale
John W. Shaw
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19899-0391

The undersigned counsel further certifies that, on August 12, 2008, he served the

foregoing documents by email and by U.S. Mail upon the following counsel:

Jonathan S. Kagan
Alexander Giza
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067

Vincent K. Yip
Peter J. Wied
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071

Ron E. Shulman, Esquire
Julie Holloway, Esquire
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304-1050

M. Craig Tyler, Esquire
Brian D. Range, Esquire
WILSON SONSINI GOODRICH & ROSATI
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497

/s/ Stephen B. Brauerman (sb4952)
Stephen B. Brauerman

656846-1