# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

LG DISPLAY CO., LTD.,

               Plaintiff,

    v.

CHI MEI OPTOELECTRONICS
CORPORATION, et al.

               Defendants.

Civil Action No.  06-726 (JJF)
Civil Action No.  07-357 (JJF)

**CONSOLIDATED CASES**

---

### PLAINTIFF LG DISPLAY'S ANSWERING BRIEF IN OPPOSITION TO CHI MEI OPTOELECTRONICS CORPORATION'S MOTION TO LIMIT THE NUMBER OF PATENTS-IN-SUIT AND STAY THE REMAINDER

August 22, 2008


OF COUNSEL:
Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
Cass W. Christenson
John W. Lomas, Jr.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500

BAYARD P.A.

Richard D. Kirk
Stephen B. Brauerman
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000

*Attorneys for Plaintiffs LG Display Co., Ltd. and LG Display America, Inc.*

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

SUMMARY OF ARGUMENT ............................................................................. 3

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT .................................................................................................... 5

I.     ANY BIFURCATION AND STAY MUST NOT PREJUDICE LG DISPLAY .............. 5

     A.     CMO's Assertion that the Court Is Required To Construe Three Hundred Claim Terms Is Incorrect ................................................................... 5

     B.     CMO Fails To Acknowledge Its Burden To Show that Bifurcation and Stay Would Not Prejudice or Tactically Disadvantage LG Display ...................... 7

II.    CMO'S REQUEST TO STAY FIVE LG DISPLAY PATENTS, BUT ONLY TWO CMO PATENTS, IS UNDULY PREJUDICIAL AND UNFAIR TO LG DISPLAY ....................................................................................................... 8

III.   STAYING FOUR PATENTS FOR EACH PARTY WOULD FAIRLY IMPACT ALL PARTIES AND WOULD BEST PROMOTE JUDICIAL ECONOMY ................ 10

     A.     STAYING FOUR PATENTS PER PARTY IS FAIR TO ALL PARTIES ........ 10

     B.     THE PARTIES SHOULD HAVE FLEXIBILITY TO SELECT HOW MANY CLAIMS TO PURSUE, SUBJECT TO A TOTAL LIMIT ON ASSERTED CLAIMS, NOT A PER PATENT LIMIT AS CMO SEEKS ......... 11

CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
    521 F.3d 1351 (Fed. Cir. 2008)........................................................................................6

*Ampex Corp. v. Eastman Kodak Co.,*
    460 F. Supp. 2d 541 (D. Del. 2006)...............................................................................7

*Codman & Shurtleff, Inc. v. Integra Lifesciences Corp.,*
    C.A. 06-2414 (SDW), 2008 WL 2242439 (D.N.J. May 29, 2008)...........................8

*Innovative Office Prods., Inc. v. Spaceco, Inc.,*
    C.A. No. 05-04037, 2006 WL 1340865 (E.D. Pa. May 15, 2006) .......................7, 9

*Network Appliance, Inc. v. Sun Microsystems, Inc.,*
    No. C-07-06053-EDL, 2008 WL 2168917 (N.D. Cal. May 23, 2008)...........8, 9, 11

*Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.,*
    No. 6:06 CV 222, 2008 WL 2152268 (E.D. Tex. May 21, 2008) ...........................6

*Zoetics, Inc. v. Yahoo!, Inc.,*
    C.A. No. 06-108-JJF, 2006 WL 1876912 (D. Del. July 6, 2006)........................7, 9

OTHER AUTHORITIES

Fed. R. Civ. P. 42(b) ......................................................................................................7

## NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement case involving twenty-three patents concerning liquid crystal display ("LCD") products and methods of manufacturing. LG Display Co., Ltd. ("LG Display") brought the first filed case (C.A. 06-726) in this District. AU Optronics Corporation ("AUO") and Chi Mei Optoelectronics Corporation ("CMO") responded by filing related suits in Wisconsin ("AUO Action") and Texas ("CMO Action"). Both cases have since been transferred here for consolidation with the first-filed case. This Court has already consolidated the AUO Action. Motions to consolidate the CMO Action are pending.[1]

LG Display was the first party to file and is asserting more patents than either AUO or CMO. LG Display alleges that Defendants AUO and CMO infringe nine patents ("LG Display Patents") covering a wide array of LCD technology.[2] AUO has asserted eight patents against LG Display. CMO has asserted six patents against LG Display in the case filed in Texas and subsequently transferred to this Court.[3]

The parties have been operating under a scheduling order and discovery limits that the

---

[1] LG Display and CMO have filed cross motions to consolidate the CMO Action, which was assigned Civil Action No. 08-355 (JJF). (D.I. 295, 296, 298, 299.)

[2] The LG Display Patents include United States Patent Nos. 5,019,002 (the "'002 Patent"); 4,624,737 (the "'737 Patent"); 5,825,449 (the "'449 Patent"); 5,905,274 (the "'274 Patent"); 6,815,321 (the "'321 Patent"); 7,176,489 (the "'489 Patent"); 6,803,984 (the "'984 Patent"); 7,218,374 (the "'374 Patent"); and 6,664,569 (the "'569 Patent"). The '569 Patent is pled against AUO and is the subject of a pending motion for leave to amend against CMO. (D.I. 302.) For purposes of staying patents, therefore, LG Display has nine patents asserted against AUO and CMO, including the '569 Patent.

[3] The CMO patents are also at issue in this case via claims asserted by LG Display for declaratory judgments of non-infringement and invalidity.

Court set with the understanding that this case involves all of the parties' asserted patents.[4] (D.I. 194.) Discovery is proceeding as to all of the patents-in-suit. LG Display has responded to hundreds of discovery requests, including document requests and interrogatories seeking information concerning all of the LG Display Patents. LG Display and Defendants have exchanged millions of pages of discovery and are continuing to produce documents. The fact discovery deadline is December 17, 2008. (D.I. 194.)

The claim construction process is underway concerning all of the patents-in-suit. Opening claim construction briefs have been filed (D.I. 378, 383, and 384), and response briefs are due on September 4, 2008 (D.I. 208). The claim construction hearing is scheduled for September 18, 2008. (D.I. 194.) The parties have discussed proposals to narrow the scope of the case for claim construction. (*See* Ex. A, B; *see also* D.I. 372, Ex. B.) The parties' have never discussed limiting each party to an equal number of patents, but instead have consistently recognized that LG Display should continue to assert more patents than AUO or CMO, consistent with the current posture of this case. CMO's motion to limit patents, however, now disregards this approach and seeks to require LG Display to stay five of its asserted patents, while CMO would stay only two of its asserted patents. CMO's motion would unduly prejudice LG Display and improperly confer a tactical advantage on CMO.

---

[4] During a February 14, 2008 scheduling teleconference with all counsel, this Court discussed the claims and patents asserted in the LG Display Action, the AUO Action, and the CMO Action. (*See* D.I. 372, Ex. A at 7-9.) At the time of the February teleconference, the AUO Action had already been transferred and consolidated with the LG Display Action, and LG Display's motion to transfer the CMO Action was pending in Texas. Taking into account all of the related cases, this Court set a firm trial date of June 2, 2009 with the understanding that twenty-one patents were already in the case and that the CMO Action, with two additional patents, could be transferred to Delaware. (*See id.*) This Court issued the current scheduling order after denying CMO's motion to dismiss this case and after the Eastern District of Texas granted LG Display's motion to transfer the CMO Action to Delaware. (D.I. 194.)

**SUMMARY OF ARGUMENT**

1.    As the moving party, it is CMO's burden to show that any bifurcation and stay would not prejudice or tactically disadvantage LG Display.  CMO's proposal to stay patents unfairly prejudices LG Display by staying five LG Display patents, whereas only two CMO patents would be stayed.  Because CMO's proposal seeks to gain an unfair tactical advantage, CMO's motion to limit patents should be denied.

2.    Any reduction or stay in the number of patents should impact all parties equally, based on the relative positions of the parties and the number of patents currently asserted by each party.  LG Display has the most asserted patents now, and should continue to have the most asserted patents.  LG Display respectfully suggests, therefore, that each party should stay four patents, leaving LG Display with five asserted patents for further proceedings and trial.  Further, the parties should have flexibility to select an average of three claims per patent, with the ability to select more than three claims for some patents and less than three claims for other patents.

**STATEMENT OF FACTS**

LG Display invests millions of dollars to develop and acquire the liquid crystal display ("LCD") technologies that have enabled LG Display to achieve and maintain its worldwide leadership status in LCD manufacturing.  LG Display's investments have resulted in an expansive patent portfolio covering a wide range of LCD technology.  LG Display has also invested significant resources to protect its patent portfolio by enforcing its patents, including through this action to address infringement by AUO and CMO of the nine LG Display Patents.

On February 28, 2008, the parties proposed a scheduling order with discovery limits that contemplated litigating *all* of the LG Display, CMO, and AUO patents-in-suit.  (D.I. 156.)  On March 31, 2008, the Court entered a scheduling order based on the parties' proposed dates and

-3-

discovery limits. (D.I. 175.) On April 29, 2008, after denying CMO's pending motions to dismiss, the Court entered a revised scheduling order that made only a few minimal changes. (D.I. 194.) Thus, the schedule for the case and trial accommodates all twenty three patents.

On June 30, 2008, LG Display proposed that the parties attempt to reduce the number of claim terms to be construed. (Ex. A.) On July 7, 2008, the parties discussed limiting the number of claim terms, but did not come to an agreement. (D.I. 372, Ex. B.) On July 10, 2008, CMO suggested that the parties consider reducing the number of asserted patents. (*Id.*) LG Display did not agree that limiting the number of patents was necessary in order to limit the number of claim terms to be construed, but asked CMO to submit a proposal for each party to reduce the number of asserted patents by an equal number. (*Id.*)

CMO responded with a proposal that each party would stay an equal percentage of its asserted patents and proceed on the remaining patents. (*Id.*) CMO did not suggest -- as it now seeks in its motion -- that each party should proceed on an equal number of patents. The parties engaged in further discussions to limit the number of claim terms that also included some discussion on limiting the number of patents. The parties' discussions consistently focused on reducing the number of patents in a way that preserved the current posture of the case, with LG Display asserting more patents than AUO or CMO. CMO's motion to limit patents seeking to force LG Display to stay more patents than AUO or CMO was never previously discussed or suggested by CMO.[5]

---

[5] Indeed, to the extent CMO claims in its 7.1.1 statement CMO's counsel has attempted in good faith to have the parties consider CMO's proposal to limit all parties to four patents, CMO is incorrect.

**ARGUMENT**

CMO's bifurcation proposal is premised on the false assumption that the Court is judicially obligated to construe three hundred claim terms. (D.I. 372 at 5, 7 ("The number of claim elements at issue, which now stands at over 300, presents the Court with an unimaginable claim construction obligation.") In any event, CMO's motion is unfair and would significantly disadvantage LG Display. CMO seeks to force LG Display to stay five of the nine LG Display Patents, but CMO would stay only two of its six asserted patents, which would unduly prejudice and tactically disadvantage LG Display. Because bifurcation and stay are inappropriate under such circumstances, this Court should deny CMO's motion. LG Display respectfully suggests that any bifurcation and stay should equally impact each party and be consistent with LG Display's assertion of the most patents in suit. Accordingly, each party could be required to stay four asserted patents. Further, each party should be entitled to assert an average of three claims per patent, with flexibility to select more than three claims for some patents and less than three claims for other patents.

## I.    ANY BIFURCATION AND STAY MUST NOT PREJUDICE LG DISPLAY

### A.    CMO's Assertion that the Court Is Required To Construe Three Hundred Claim Terms Is Incorrect

LG Display disagrees with CMO's suggestion that the Court is required to construe three hundred disputed claim terms in this case. (D.I. 373 at 5 n.1). The case that CMO relies on plainly states that terms must be construed to the extent that such terms are fundamental to the scope of an asserted claim. *See 02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Indeed, "a court may decline to construe a claim term or rely on that term's ordinary meaning if the court resolves the parties' claim-scope dispute and precludes the parties from presenting jury arguments inconsistent with the court's adjudication of claim

scope." *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, No. 6:06 CV 222, 2008 WL 2152268, *1 (E.D. Tex. May 21, 2008) (citing *02 Micro*, 521 F.3d at 1362).

For example, as CMO recognizes, this Court has previously chosen to construe only those disputed elements that are dispositive to the issues in the case. (D.I. 373 at 5 n.2 (citing *Ampex Corp. v. Eastman Kodak Co.*, 460 F. Supp. 2d 541, 543 n.1 (D. Del. 2006)).) CMO's claim that such an approach is unworkable here is erroneous. First, CMO incorrectly asserts that LG Display has not provided substantive infringement contentions. LG Display provided CMO substantive infringement contentions in the CMO Action in Texas, which LG Display and CMO have agreed to use in this case. Further, LG Display provided supplemental substantive infringement contentions in a supplemental response to CMO's interrogatories on August 20, 2008.[6] Second, even if LG Display had not provided infringement contentions, CMO's suggestion that the Court would need those contentions to determine which disputed terms are fundamental is without merit. In a case cited by CMO, for example, Judge Jordan indicated that he decided which of the 99 disputed terms were necessary to construe based on the claim construction briefing submitted. *Ampex Corp.*, 460 F. Supp. 2d at 543 n.1.

Similarly, the Court may not need to construe all disputed terms in this case. In any event, LG Display recognizes that it is beneficial to reduce the number of disputed claim terms. While it is not necessary to limit the number of patents and claims to achieve that goal, LG Display is amenable to such an approach, provided that the means for reducing patents and claims is fair and does not work any prejudice, nor tactically disadvantage LG Display.

---

[6] The parties had previously been engaged in discussions to defer the exchange of infringement contentions.

**B.    CMO Fails To Acknowledge Its Burden To Show that Bifurcation and Stay Would Not Prejudice or Tactically Disadvantage LG Display**

It is well settled that courts have authority and discretion to bifurcate and stay cases when appropriate to do so. *See, e.g., Zoetics, Inc. v. Yahoo!, Inc.*, C.A. No. 06-108-JJF, 2006 WL 1876912, *1 (D. Del. July 6, 2006) ("A Court has the 'inherent power to conserve judicial resources by controlling its own docket,' and the decision to stay a case is firmly within the discretion of the Court.") (citations omitted); *Innovative Office Prods., Inc. v. Spaceco, Inc.*, C.A. No. 05-04037, 2006 WL 1340865, *1 (E.D. Pa. May 15, 2006) ("Rule 42(b) of the Federal Rules of Civil Procedure allows a district court to bifurcate a trial in its discretion."). Granting such relief, however, depends on the circumstances of each case. Specifically, cases should not be bifurcated and stayed when doing so would unfairly disadvantage the non-moving party, and CMO must show that LG Display would not be prejudiced by CMO's proposal to limit the claims and patents for initial trial.

A key factor in deciding whether to grant a stay is "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Zoetics, Inc.*, 2006 WL 1876912, *1 (citations omitted). Similarly, prejudice to the non-moving party weighs against bifurcating a case. *See Codman & Shurtleff, Inc. v. Integra Lifesciences Corp.*, C.A. 06-2414 (SDW), 2008 WL 2242439, *1 (D.N.J. May 29, 2008). Thus, CMO "bears the burden of demonstrating that bifurcation would serve judicial economy, avoid inconvenience, *and not prejudice any of the parties*." *Innovative Office Prods.*, 2006 WL 1340865, *1 (emphasis added). CMO does not specifically attempt to meet its burden to show that LG Display would not be prejudiced as a result of the proposed bifurcation and stay, which would unfairly require LG Display to stay more patents than any other party. Because CMO's proposal would confer

an unfair tactical advantage on CMO and prejudice LG Display, the Court should reject CMO's proposed bifurcation and stay.

LG Display would not object, however, to a fair and balanced reduction of patents and claims that equally reduces the number of patents asserted such that each party stays four of its patents. This approach would be neutral and leave the parties in the same posture as currently exists, with LG Display asserting more patents than AUO or CMO. With respect to the patents remaining for trial, LG Display respectfully suggests that each party should be able to assert an average of three claims per patent, with the ability to assert fewer or more than three claims per patent, subject to an overall average of three claims per patent.

## II.    CMO'S REQUEST TO STAY FIVE LG DISPLAY PATENTS, BUT ONLY TWO CMO PATENTS, IS UNDULY PREJUDICIAL AND UNFAIR TO LG DISPLAY

Apparently seeking a tactical advantage under the cloak of judicial economy, CMO has asked this Court to stay five LG Display patents, but only two CMO patents. CMO attempts to suggest that its motive is to reduce the burden on this Court by limiting the number of disputed claim terms for the Court to construe. As explained above, however, CMO overstates the extent to which the Court must construe terms and disregards case management options other than staying patents. Notably, moreover, CMO's motion fails to acknowledge the number of patents each party has in the case now, and instead focuses on the number of patents that would remain in suit, rather than the number of patents that would be stayed. CMO thus attempts to gain a three patent advantage by requiring LG Display to stay three more patent(s) than the patents that CMO would stay. As another court recently concluded, this is unfair and an improper result. *See, e.g., Network Appliance, Inc.* v. *Sun Microsystems, Inc.*, No. C-07-06053-EDL, 2008 WL 2168917, *5 (N.D. Cal. May 23, 2008) (finding that the proposed stay would impose a tactical

disadvantage because the non-moving party could not assert claims from three stayed patents, while the moving party could still assert claims from all of its patents).[7]

CMO's attempt to gain a tactical advantage contravenes the requirement that cases not be bifurcated and stayed when doing so would unfairly disadvantage the non-moving party. *See, e.g., Zoetics, Inc.*, 2006 WL 1876912, *1. CMO does not, and cannot, satisfy its burden to show that removing five LG Display patents, but only two CMO patents, would not prejudice LG Display or provide a tactical advantage to CMO. Any fair approach to reducing the number of patents-in-suit should account for and preserve the relative positions of the parties now, including LG Display's assertion of three more patents (nine) than the number of patents asserted by CMO (six). Instead, CMO attempts to manufacture a result that would drastically undercut LG Display's case. LG Display would further be prejudiced by CMO's inflexible proposal that each party assert three claims per patent. CMO's proposal would limit LG Display's ability to choose the most appropriate claims to assert from its patents. Flexibility in selecting claims to assert is particularly important to avoid any potential unanticipated or unintended effect on unadjudicated claims after a patent proceeds to trial on fewer than all infringed claims. The Court should, therefore, deny CMO's motion to limit patents and adopt a different approach to streamline the case that is not unduly prejudicial. *See, e.g., Zoetics, Inc.*, 2006 WL 1876912, *1; *Innovative Office Prods.*, 2006 WL 1340865, *1.

---

[7] The *Network Appliance* court ultimately denied the defendant's motion to stay as to two of the plaintiff's patents, but granted it as to a third patent that was under reexamination because the USPTO had already issued an initial action rejecting all the claims for that third patent. 2008 WL 2168917 at *4-5.

**III.   STAYING FOUR PATENTS FOR EACH PARTY WOULD FAIRLY IMPACT ALL PARTIES AND WOULD BEST PROMOTE JUDICIAL ECONOMY**

### A.   STAYING FOUR PATENTS PER PARTY IS FAIR TO ALL PARTIES

To satisfy the requirement that any bifurcation or stay of patents in this case not unduly prejudice or disadvantage a party, LG Display proposes that each party stay four patents -- an equal number of patents per party. This would keep each of the parties in the same position relative to each other, with LG Display properly asserting one more patent (5) than AUO (4) and three more patents than CMO (2). This variance in the number of asserted patents is consistent with the current posture of the case, in which LG Display is asserting three more patents (9) than CMO (6) and one more patent than AUO (8).

Under this approach, moreover, the case would be even more streamlined. CMO's unfair approach would result in the case proceeding on a total of twelve patents asserted among the parties. Reducing each party's asserted patents by four patents, however, would result in only eleven total patents in dispute. Accordingly, an equal reduction of four patents per party is not only the fairest approach, but also the most judicially economical way to narrow the case.

LG Display respectfully suggests, therefore, that any bifurcation and stay require each party to stay four of its asserted patents. Accordingly, LG Display would proceed with five asserted patents (rather than nine), AUO would proceed with four asserted patents (rather than eight), and CMO would proceed with two asserted patents (rather than six). This approach would fairly impact all parties and streamline the case for further proceedings and trial.[8]

---

[8] In addition, any narrowing of the case now could be followed by further case management later if deemed appropriate (*e.g.*, with respect to the number of asserted claims, patents, representative products, or otherwise).

**B.**    **THE PARTIES SHOULD HAVE FLEXIBILITY TO SELECT HOW MANY CLAIMS TO PURSUE, SUBJECT TO A TOTAL LIMIT ON ASSERTED CLAIMS, NOT A PER PATENT LIMIT AS CMO SEEKS**

LG Display also respectfully suggests that any limit on the total number of asserted claims should not be applied on a strict per patent basis.  Instead, the parties should have the flexibility to select an average of three claims per patent, with the ability to select more claims from some patents and fewer claims from other patents.  *See, e.g.*, *Network Appliance*, 2008 WL 2168917 at *5 (explaining that when so "many patents are involved and asserted by both parties" a party "should be able to make its own strategic decisions about which claims to litigate.").  In other words, each party should be permitted to assert a total of number of claims equal to three times the number of its remaining patents.

Assuming that LG Display proceeds with five patents, for example, LG Display should be able to assert a total of fifteen claims, divided among those five patents in whatever way LG Display deems most appropriate.   If AUO proceeds on four patents and CMO proceeds on two patents, then AUO and CMO would each be entitled to assert a total of twelve claims and six claims, respectively.  This approach is more appropriate than CMO's rigid three claims per patent proposal, allowing the parties to choose their most important claims across all their remaining patents.  According to this approach, the case would proceed on a total of thirty-three asserted claims and eleven patents, rather than thirty-six claims and twelve patents as proposed by CMO.

-11-

## CONCLUSION

For the foregoing reasons, LG Display requests that the Court deny CMO's motion and that any order bifurcating and staying this case provide that each party select four patents to be stayed and allow each party to select a total number of asserted claims equal to three times the number of its remaining patents-in-suit.

August 22, 2008

BAYARD P.A.

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Stephen B. Brauerman
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE 19899-5130
(302) 655-5000
rkirk@bayardfirm.com
*Attorneys for Plaintiffs LG Display Co., Ltd. and*
*LG Display America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
Cass W. Christenson
John W. Lomas, Jr.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 496-7500

EXHIBIT A

## Aehle, Elaine

**From:** Bono, Gaspare
**Sent:** Monday, June 30, 2008 11:04 AM
**To:** 'Kagan, Jonathan'; 'ctyler@wsgr.com'; 'terrygarnett@paulhastings.com'
**Cc:** 'Hoffman, Adam'; '~Chiu, Jay'; '~Range, Brian'; '~Holloway, Julie'; '~Yip, Vincent'; '~Wied, Peter'; '~Murray, Katherine'; '~Shaw, John'; '~Pascale, Karen'; '#CMO/LPL [Int]'; '~Platt, Christian'; '~Warren, Joe'; 'Giza, Alexander'; 'Rovner, Philip A.'; Jung, Song; Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass; 'Richard Kirk'
**Subject:** Proposal for Reducing Number of Claim Terms for Construction

Dear Jonathan, Craig and Terry:

I hope each of you is doing well. It has been awhile since we have spoken directly to each other. Recently, all counsel have discussed the possibility of reducing the number of terms for claim construction and the scope of briefing on claim construction concerning LGD's patents, AUO's patents, and CMO's patents. Given the large number of terms that the parties identified for construction on June 24, 2008, we believe that it would benefit all parties to reduce the number of terms proposed for construction and the scope of briefing. Agreeing to reduce the number of terms proposed for construction will avoid substantial work by all parties, because each party will have fewer terms to construe and brief. Further, reducing the number of terms to construe and brief makes sense because, as a practical matter and based on our experience, we anticipate that the *Markman* Order will not address all of the claim terms related to the 23 patents at issue in this case.

Accordingly, we propose that each party select a reduced number of claim terms for construction and briefing for each party's set of patents, as explained below in detail. This approach would allow each party to focus on terms from each set of patents involving each party, while limiting the overall burden on the parties and the Court related to claim construction. We believe that this proposal is fair and balanced, allowing each party to brief multiple claim terms for all patents, but recognizing that it is not feasible to exchange proposed constructions and brief all of the terms that the parties designated for construction on June 24.

Under our proposal, each party would make its own selection of which terms to construe from the terms that it identified for construction on June 24, provide proposed constructions of those terms to each other on July 17, and then brief those terms in accordance with the court's schedule. Each party would be able to provide constructions and brief many of the terms that it designated on June 24, and to respond to any other terms construed and briefed by other parties. Each party would forego exchanging proposed constructions and briefing of some of its designated terms.

We would appreciate your response to our proposal as soon as possible. Because of the rapidly approaching deadlines for exchanging and submitting proposed definitions and *Markman* briefs, we would like to have a teleconference with you tomorrow, July 1, at 2:00 p.m. (Eastern time). We would hope to be able to reach an agreement this week on limiting the number of terms for construction. Please let us know whether you are available for a teleconference tomorrow to discuss this proposal. We look forward to discussing this with you and to reaching an agreement.

Proposed Stipulation for Limiting Claim Construction

1. Each party will identify for claim construction from the list of terms that each party designated on June 24, 2008 a total of no more than twenty-five (25) claim terms for LGD's 9 patents, twenty-five (25) claim terms for AUO's 8 patents and twenty (20) claim terms for CMO's 6 patents. LGD, therefore, will identify for construction up to 25 of the terms that LGD designated concerning LGD's patents, up to 25 of the terms that LGD designated concerning AUO's patents, and up to 20 of the terms that LGD designated concerning CMO's patents. Likewise, AUO and CMO each may propose constructions for up to 25 of the terms that they each designated regarding LGD's patents, AUO may propose up to 25 of the terms AUO designated for AUO's patents, and CMO may propose up to 20 of the terms CMO designated for CMO's patents.

2. On July 17, 2008, each party will provide proposed constructions for the terms selected by that party for construction for each set of patents. A party may only propose constructions for those terms that the party had designated on June 24 in accordance with the Court's Scheduling Order.

3. On July 23, 2008, each party will then provide counter-constructions for those terms for which that party did not initially propose a construction on July 17 that were the subject of another party's proposed constructions exchanged on July 17. Thus, on July 23, LGD will provide proposed counter-constructions for the terms that had been identified by CMO and AUO on July 17, and AUO and CMO will provide proposed counter-constructions for the terms that had been defined by LGD on July 17.

4. The parties will otherwise complete the claim construction briefing and argument on the current schedule, beginning with the submission of joint claim construction charts on July 29, 2008. Each party may file one opening claim construction brief concerning each party's patents (40 page maximum per brief), and corresponding opposition briefs (40 page maximum per brief), in the format authorized by Del. L.R. 7.1.3, as follows:

Briefing Initiated by LGD

> On August 8, 2008, LGD files one opening brief on LGD patents, one opening brief on AUO patents, one opening brief on CMO patents (3 briefs)

> On September 4, 2008, AUO files separate opposition briefs to LGD opening briefs regarding LGD patents and AUO patents (2 briefs)

> On September 4, 2008, CMO files separate opposition briefs to LGD opening briefs regarding LGD patents and CMO patents (2 briefs)

Briefing Initiated by AUO

> On August 8, 2008, AUO files one opening brief on AUO patents and one opening brief on LGD patents (2 briefs)

> On September 4, 2008, LGD files separate opposition briefs to AUO opening brief on LGD patents and AUO patents (2 briefs)

Briefing Initiated by CMO

> On August 8, 2008, CMO files one opening brief on CMO patents and one opening brief on LGD patents (2 briefs)

> On September 4, 2008, LGD files separate opposition briefs to CMO opening brief on LGD patents and CMO patents (2 briefs)

5. This proposal is not intended to limit any party's claims, defenses, or positions concerning any substantive issue. Rather, this proposal is intended to reduce the number of claim terms for which proposed constructions are to be exchanged and then briefed and argued in the *Markman* phase of this case, given the large number of claim terms at issue among the parties.

We look forward to receiving your comments to our proposal, and speaking with you tomorrow.

Best Regards, Gap

EXHIBIT B

## Aehle, Elaine

| | |
|---|---|
| **From:** | Bono, Gaspare |
| **Sent:** | Friday, July 11, 2008 5:08 PM |
| **To:** | 'Giza, Alexander' |
| **Cc:** | 'Hoffman, Adam'; '~Range, Brian'; '~Holloway, Julie'; '~Wied, Peter'; '~Murray, Katherine'; '~Shaw, John'; '~Pascale, Karen'; '#CMO/LPL [Int]'; '~Platt, Christian'; '~Warren, Joe'; 'Rovner, Philip A.'; Jung, Song; Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass; '~Kirk, Richard'; '~Chiu, Jay'; '~Yip, Vincent'; '~Tyler, M. Craig'; 'Kagan, Jonathan'; '~Garnett, Terry' |
| **Subject:** | RE: Proposal for Reducing Number of Claim Terms for Construction |

Dear Alex:

Thank you for your email yesterday. We appreciate that you have given some thought to our proposal and that you believe there is room to reach an agreement. We appear to all agree that the goal is to reduce the number of terms the Court will be asked to construe. We continue to believe that that goal is not necessarily dependent on limiting the number of patents or the number of claims in the case at this stage, and that the parties can and should agree to an overall limitation on the number of terms to be submitted to the Court, as Judge Farnan will certainly only construe a limited number of terms.

We are familiar with the *02 Micro* decision that you cited, but we do not believe that that case requires that a district court judge construe hundreds of terms. The parties should work together to reach an agreement to limit the number of terms that are to be submitted to the Court for construction. The Federal Circuit's opinion in *02 Micro* does not prohibit the parties from limiting the number of terms to be construed for construction, as we have proposed. In any event, even if we are unable to reach agreement, we still believe that the Federal Circuit's opinion does not prevent Judge Farnan from entering an order directing the parties to limit the number of terms that are presented to the Court for construction.

As I understand CMO's position, CMO is proposing to limit the number of patents or the number of claims at this stage of the case, as a mechanism for limiting claim terms for construction. As CMO has identified only two terms for construction from all of its six patents, we do not believe it is necessary to limit patents at this stage in order to reduce the number of terms. Nevertheless, in order to make our discussion productive, please inform me as to the number of patents CMO is proposing that each party agree to continue to assert from this point forward, while staying their other patents. We believe that any such proposal should include a provision that each of the parties agree to reduce the same number of patents that they are each presently asserting.

Concerning a time for our next discussion, we understand that you have requested that the parties confer on Monday, July 21st, rather than Friday, July 18th, so that the parties have more time to consider the proposed constructions. While I appreciate that consideration, I request that we have an initial discussion on Friday, July 18th, as I will be out of town the following week on vacation. I would like to be a part of our initial discussion, so I hope that CMO can accommodate my schedule. I suggest we have a call on Friday, July 18th, at 2:00pm EDT.

I look forward to hearing from you.

Best regards, Gap

**From:** Giza, Alexander [mailto:AGiza@irell.com]
**Sent:** Thursday, July 10, 2008 9:22 AM
**To:** ~Chiu, Jay; Bono, Gaspare; ~Yip, Vincent; ~Tyler, M. Craig; Kagan, Jonathan; ~Garnett, Terry
**Cc:** Hoffman, Adam; ~Range, Brian; ~Holloway, Julie; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; #CMO/LPL [Int]; ~Platt, Christian; ~Warren, Joe; Rovner, Philip A.; Jung, Song; Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass; ~Kirk, Richard
**Subject:** RE: Proposal for Reducing Number of Claim Terms for Construction

Gap and Jay:

CMO agrees that we should resume our discussion on reducing claim terms for construction after the exchange of proposed constructions.  Although we were not able to reach final agreement on this issue in our discussion earlier this week, we think there is room for agreement.  As the parties discussed on Monday, there is Federal Circuit authority that requires a district court to resolve any fundamental dispute between the parties regarding the scope of a claim term.  See O2 Micro Int'l v. Beyond Innovation Tech. Co., No. 2007-1302; -1303; -1304, Slip op. (Fed. Cir. Apr. 3, 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").  We believe the approach that is consistent with this authority is for the parties to agree on a limited number of elected patents and claims on which to proceed and to stay the remainder.  The limited number of elected patents and claims will serve to limit the number of claim terms in dispute.  Gap said that the Court would not allow the parties to proceed to trial with so many asserted patents and claims, and this approach is also consistent with that necessity.  The exchange of proposed constructions will help the parties focus on the fundamental disputes and choose an appropriately limited number of patents and claims per party on which to proceed.

We think having the discussion on Monday, July 21, will give the parties more time to consider the parties' proposed constructions and the appropriate limits to asserted patents and claims.  We look forward to resuming our discussions after the exchange of proposed constructions.

Sincerely,

Alex

Alexander C.D. Giza
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: (310) 203-7143
Fax: (310) 203-7199

---

**From:** Chiu, Jay C. [mailto:jaychiu@paulhastings.com]
**Sent:** Thursday, July 10, 2008 4:27 AM
**To:** ~Bono, Gaspare; Giza, Alexander; ~Yip, Vincent; ~Tyler, M. Craig; Kagan, Jonathan; ~Garnett, Terry
**Cc:** Hoffman, Adam; ~Range, Brian; ~Holloway, Julie; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; #CMO/LPL [Int]; ~Platt, Christian; ~Warren, Joe; Rovner, Philip A.; Jung, Song; ~Goodwyn, Tyler; ~Brzezynski, Lora; ~Christenson, Cass; ~Kirk, Richard
**Subject:** RE: Proposal for Reducing Number of Claim Terms for Construction

Dear Gap,

I write to summarize our telephone conference regarding your proposals for claim construction briefing, and my

counter-proposals.

As I indicated during our conference call, we agree that the parties should use best efforts to reduce the number of issues presented to the Court. As we explained to you during the call, AUO believes that the parties should work together after the exchange of proposed constructions in order to reduce the number of terms the Court will be asked to construe. As you know, AUO proposed a conference call next week to allow the parties to explore common ground in the parties' respective proposed constructions. Based on past experience, we believe such a call would be beneficial because it should result in a reduction of the number of disputed terms, which would thereby result in fewer terms presented to the Court. Please let us know if LGD is amenable to having a call next week to discuss proposed constructions. We suggest next Friday or the following Monday for the call.

Also, during our call this past Monday, we agreed to your proposal to have separate opening briefs (40 pages each) for each set of patents. We understand LGD's concern that it might need additional pages to address all of the LGD, AUO, and CMO patents asserted in this case. Thus, your suggestion seems appropriate to us.

Regards,

Jay

```
************************************************************
IRS Circular 230 Disclosure:    As required by U.S.
Treasury Regulations governing tax practice, you are
hereby advised that any written tax advice contained
herein was not written or intended to be used (and cannot
be used) by any taxpayer for the purpose of avoiding
penalties that may  be imposed under the U.S. Internal
Revenue Code.
************************************************************

This message is sent by a law firm and may contain
information that is privileged or confidential.  If you
received this transmission in error, please notify the
sender by reply e-mail and delete the message and any
attachments.

For additional information, please visit our website at
www.paulhastings.com.
```

ccmailg.irell.com made the following annotations
-----------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.


-----------------------------------------------------------------------

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on August 22, 2008, he served the

foregoing documents by email and by hand upon the following counsel:

| | |
|---|---|
| Philip A. Rovner | Karen L. Pascale |
| David E. Moore | John W. Shaw |
| POTTER ANDERSON & CORROON LLP | YOUNG CONAWAY STARGATT & |
| 1313 North Market Street | TAYLOR, LLP |
| Wilmington, DE 19899-0951 | The Brandywine Building |
| | 1000 West Street, 17th Floor |
| | Wilmington, DE 19899-0391 |

The undersigned counsel further certifies that, on August 22, 2008, he served the

foregoing documents by email and by U.S. Mail upon the following counsel:

| | |
|---|---|
| Jonathan S. Kagan | Vincent K. Yip |
| Alexander Giza | Peter J. Wied |
| IRELL & MANELLA LLP | PAUL, HASTINGS, JANOFSKY & |
| 1800 Avenue of the Stars | WALKER LLP |
| Suite 900 | 515 South Flower Street, 25th Floor |
| Los Angeles, CA 90067 | Los Angeles, CA 90071 |
| | |
| Ron E. Shulman, Esquire | M. Craig Tyler, Esquire |
| Julie Holloway, Esquire | Brian D. Range, Esquire |
| WILSON SONSINI GOODRICH & ROSATI | WILSON SONSINI GOODRICH & ROSATI |
| 650 Page Mill Road | 8911 Capital of Texas Highway North |
| Palo Alto, California 94304-1050 | Westech 360, Suite 3350 |
| | Austin, Texas 78759-8497 |

/s/ Richard D. Kirk, (rk0922)
Richard D. Kirk

656846-1