EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


L.G. PHILIPS LCD CO. LTD.,          )
                                    )
          Plaintiff,                )
                                    )C.A. No. 07-357
v.                                  )
                                    )
CHI MEI OPTOELECTRONICS CORPORATION, )
et al.,                             )
                                    )
          Defendants.               )



                    Thursday, February 14, 2008
                    3:30 p.m.
                    Courtroom 4B

                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
         United States District Court Judge




APPEARANCES:

         BAYARD, P.A.
         BY:  RICHARD D. KIRK, ESQ.

               -and-

         McKENNA, LONG & ALDRIDGE
         BY:  GASPAR BONO, ESQ.
         BY:  TYLER GOODWYN, ESQ.

                    Counsel for the Plaintiffs

APPEARANCES (Cont'd:)


        YOUNG CONAWAY STARGATT & TAYLOR
        BY:  KAREN PASCALE
        BY:  JOHN SHAW, ESQ.

                -and-

        PAUL HASTINGS
        BY:  PETER WIED, ESQ.

                Counsel for the Defendant
                AU Optronics Corporation



        POTTER, ANDERSON & CORROON, LLP
        BY:  PHILIP A. ROVNER, ESQ.

                -and-

        JONES DAY
        BY:  KENNETH ADAMO, ESQ.
        BY:  ROBERT KARL, ESQ.

                Counsel for the Defendant
                Chi Mei Optoelectronics Corporation

```
 1              MR. KIRK:  Good afternoon, Your
 2     Honor.
 3              THE COURT:  Good afternoon.
 4              MR. KIRK:  Your Honor, this is
 5     Richard Kirk from Bayard, P.A.  I represent the
 6     plaintiff, L.G. Philips LCD Company and with me
 7     on the line are two attorneys from McKenna, Long
 8     & Aldridge in Washington, they are Gaspar Bono,
 9     B-O-N-O, and Tyler Goodwyn, G-O-O-D-W-Y-N.
10              MR. ROVNER:  Your Honor, this is
11     Philip Rovner from Potter, Anderson on behalf of
12     the Chi Mei entities.  With me on the line is
13     Ken Adamo and Bob Karl from Jones Day.
14              THE COURT:  All right.
15              MS. PASCALE:  Good afternoon, Your
16     Honor.  This is Karen Pascale and John Shaw from
17     Young, Conaway for AU Optronics entities.  And
18     also on the line for AU Optronics we have Peter
19     Wied, W-I-E-D from Paul Hastings in California,
20     Julie Holloway from the Wilson Suncini firm in
21     Pala Alto, California and also from Wilson
22     Suncini Brian Ranke in the Austin, Texas office.
23              THE COURT:  All right.  Good
24     afternoon.
```

1          MR. KIRK:  This is Dick Kirk.

2     This call was prompted by our request on behalf

3     of L.G. Philips LCD for a status conference in

4     these consolidated cases.  May I ask my

5     colleague, Mr. Bono to address the Court?

6          THE COURT:  Yes.

7          MR. BONO:  Good afternoon, Your

8     Honor.  This is Gaspar Bono on behalf of L.G.

9     Philips.

10          Your Honor, we asked for this call

11     because we wanted to apprise the Court of the

12     status of the case, and also to ask for a

13     schedule from Your Honor so that this case can

14     be set to proceed against the defendants.

15          By way of a brief background, we

16     filed this case in December of 2006 against CMO,

17     AUO, Tatung and Viewsonic.  And as we apprised

18     the Court, the Tatung and Viewsonic defendants

19     reached a settlement agreement with L.G.

20     Philips, all the claims between those parties

21     have been dismissed.  That leaves the CMO

22     defendants and the AUO defendants.

23          The background as Your Honor may

24     remember is both AUO and CMO, rather than

1    responding in this case initially, each filed

2    separate lawsuits.  AUO filed a lawsuit in

3    Wisconsin in March of last year and CMO filed a

4    lawsuit in May of last year in Texas.

5              We moved to transfer both of those

6    cases to this Court under the first to file

7    rule.  The Wisconsin court, Judge Shabaz,

8    transferred in May the AUO lawsuit from

9    Wisconsin to this Court and Your Honor

10   consolidated that case with this case in June of

11   last year.

12             Our motion to transfer the CMO

13   case is pending right now in front of Judge Ward

14   in the Eastern District of Texas.

15             With respect to AUO, all of the

16   pleadings have now been completed and issue is

17   joined and there are no motions pending with

18   respect to AUO, between AUO defendants and L.G.

19   Philips.

20             On the other hand, with respect to

21   CMO, CMO filed a motion to dismiss for lack of

22   personal jurisdiction and insufficient service,

23   L.G. Philips opposed that motion and we believe

24   that motion should be denied.

1                   Also, L.G. Philips filed a motion

2       for sanctions because we believe that CMO's

3       motion was frivolous and should not have been

4       filed, challenging jurisdiction.

5                   In addition, we filed an

6       alternative motion for discovery, but that is an

7       alternative motion because we believe we have

8       already made a sufficient showing for purposes

9       of personal jurisdiction against CMO.

10                  I believe there is one other set

11      of motions that are pending, which deals with

12      the form of the pleadings as to the CMO.

13                  We filed an amended complaint as

14      of right first against AUO, and then we filed an

15      amended complaint against CMO before they filed

16      any responsive pleadings.  The parties have a

17      disagreement on whether Rule 15 so provides for

18      that.  We believe we have a right to an amended

19      complaint as a right, CMO thinks otherwise.

20                  We think it's really a nonissue

21      because if we are right, that would end that,

22      but even if we're not correct, we believe our

23      filing should be treated as a motion for leave

24      to amend and we see no reason why it would not

1    be granted.

2              So we're asking the Court to set a

3    schedule so those motions can be promptly

4    resolved and the case can move forward.

5              THE COURT:  All right.  Did CMO

6    want to be heard?

7              MR. ADAMO:  It's Ken Adamo from

8    Jones Day for CMO.  The briefing on the various

9    motions is complete.  In response to counsel's

10   comments, we did not file frivolous motions.

11   The motions with regard to CMO and CMO USA are

12   well founded, both in law and in fact, but at

13   the end of the day, Your Honor, the briefing

14   cycle has been completed and we don't disagree

15   with plaintiff that it might now be appropriate

16   to set scheduling for the case as you feel might

17   be appropriate.

18             THE COURT:  Okay.  Would any

19   schedule that you would arrive at contemplate

20   that Judge Ward is going to send that case here?

21             MR. ADAMO:  Your Honor, it's Ken

22   Adamo again.  I and my firm are not despite my

23   presence normally in east Texas, we are not

24   representing CMO in that action, but I do appear

8

1    in that court quite frequently and I think Your

2    Honor is aware that transfer from court to court

3    is not something that happens with frequency,

4    but Judge Ward does what Judge Ward does, and

5    I'm sure he will rule on the matter when he gets

6    -- I'm sure his honor, Judge Ward, will rule on

7    the motion when he gets to it.

8              THE COURT:  Okay.  So what are

9    your views on when the trial date ought to be?

10              MR. BONO:  Your Honor, this is Gap

11   Bono for the plaintiff.  We obviously would like

12   a trial date as promptly as Your Honor can

13   accommodate a trial on Your Honor's schedule.

14   And we would think a trial, you know, a year or

15   fifteen months from now would be amenable to us,

16   if Your Honor could accommodate that.

17              THE COURT:  All right.  What about

18   the other side?

19              MR. ADAMO:  Your Honor, we're

20   certainly not asking for any setting that would

21   be unusually short or unusually long.  As long

22   as we have sufficient time to conduct necessary

23   discovery so we can fully defend ourselves,

24   whatever would be the next available time in

```
1    Your Honor's calendar for a case like this is

2    going to require a lot of discovery would be

3    acceptable to us.

4              MR. WIED:  Your Honor, this is

5    Peter Wied from Paul Hastings for the AUO

6    parties.  We, too, our only concern would be

7    with providing sufficient time for discovery of

8    all the issues and we would just note that

9    presuming -- if it turns out that the CMO

10   parties remain in the case, there would be a

11   total of twenty-one patents at issue, and so in

12   comparison even to other patent cases, this one

13   may require a bit more time for full discovery

14   of the issues.

15             THE COURT:  I would imagine that

16   at some point the twenty-one patents would be

17   narrowed to some hopefully more manageable

18   number.  But in light of the parties and the

19   possibility that there may be some others

20   joining you, I want to be sure that the trial

21   date I set is one that everybody understands

22   won't be moved.  So I'm going to set it in June

23   of 2009 for June the 1st -- I'm sorry, June the

24   2nd, which is a Tuesday, and then you can get
```

1    together and backfill dates.  And the only thing

2    that I'll require is that you have fact

3    discovery with any Markman proceeding at the end

4    of or near the end of that fact discovery before

5    any expert discovery or reporting takes place.

6              And you should factor in a

7    sixty-day decision period from the time frame

8    that would be the month that you select for a

9    Markman hearing.  Any disagreement you have as

10   to dates or how you should proceed, just note

11   them in the proposed order and I'll circle a

12   winner when I get the proposed order.

13              You should also account for

14   document production to be prior to any

15   commencement -- to be initiated and completed

16   prior to the commencement of any deposition

17   discovery.

18              Do you have any questions?

19              MR. BONO:  No, Your Honor.  When

20   should we submit the scheduling order through

21   the Court?

22              THE COURT:  I would try to get it

23   here in the next two weeks.

24              MR. BONO:  All right.

11

```
 1              THE COURT:  And then hopefully

 2   I'll get to resolve any -- I'll just enter it if

 3   it comes in agreed.  If there are any disputes,

 4   hopefully I'll get them to you by the end of the

 5   month, the first of March.

 6              MR. BONO:  Thank you, Your Honor.

 7              THE COURT:  Okay.  Anything else?

 8              MR. ADAMO:  Your Honor, it's Ken

 9   Adamo.  I assume you want us to go forward with

10   the discovery according to the order once

11   entered, not wait on your decisions on the

12   motions?

13              THE COURT:  Yes.  The only

14   question I have is given that federal circuit

15   case, the caption of which has escaped me, but

16   it was a Delaware case, and there was some

17   thought that there ought to be jurisdictional

18   discovery when the record is a little bare, so

19   as to see if you had to go, what is it, to

20   Justice O'Connor's decisions.  But I think in

21   this case, I have enough information to make the

22   decision and so I think we ought to get started

23   on the case.

24              MR. ADAMO:  Thank you, Your Honor.
```

1      I just appreciate the clarification.

2                  THE COURT:  All right.  Thank you.

3              (Court recessed at 3:47 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

13

1    State of Delaware      )
                            )
2    New Castle County      )

3

4

### CERTIFICATE OF REPORTER

5

6           I, Dale C. Hawkins, Registered Merit
     Reporter and Notary Public, do hereby certify that
7    the foregoing record is a true and accurate
     transcript of my stenographic notes taken on February
8    14, 2008, in the above-captioned matter.

9           IN WITNESS WHEREOF, I have hereunto
     set my hand and seal this 5th day of April, 2008, at
10   Wilmington.

11

12   _____
                   Dale C. Hawkins, RMR

13

14

15

16

17

18

19

20

21

22

23

24

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG DISPLAY CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-726 (JJF) |
| | ) | |
| CHI MEI OPTOELECTRONICS | ) | |
| CORPORATION; AU OPTRONICS | ) | |
| CORPORATION, AU OPTRONICS | ) | |
| CORPORATION OF AMERICA; | ) | |
| TATUNG COMPANY; TATUNG | ) | |
| COMPANY OF AMERICA, INC.; AND | ) | |
| VIEWSONIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| AU OPTRONICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-357 (JJF) |
| | ) | |
| LG DISPLAY CO., LTD and | ) | CONSOLIDATED CASES |
| LG DISPLAY AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## CHI MEI OPTOELECTRONICS USA, INC.'S
## FIRST SET OF REQUESTS FOR THE PRODUCTION OF
## DOCUMENTS AND THINGS (Nos. 1 - 109) TO PLAINTIFF

Defendant, Chi Mei Optoelectronics USA, Inc. ("CMO USA"), by its

undersigned counsel, and pursuant to Rule 34 of the Federal Rules of Civil Procedure,

requests the production for inspection and copying of the following Documents from

Plaintiff, LG Display Co., Ltd. within thirty (30) days after service hereof, said

Documents to be produced at the offices of Jones Day, North Point, 901 Lakeside

Avenue, Cleveland, Ohio 44114, or at such other place and time as may mutually be agreed upon by counsel.

Plaintiff also is requested to serve a written response, separately responding to each request set out herein, specifically identifying for which requests responsive Documents are or are not being produced and/or otherwise identified on appropriate privileged document schedules (which schedules should also be provided with or as part of said written response), on the day said Documents are produced for inspection and copying.

## DEFINITIONS OF TERMS AND INSTRUCTIONS

The following definitions and instructions are applicable to these requests for production:

For purposes of these requests, you should use the following definitions for the terms used herein. All requests and corresponding definitions of terms are for purposes of discovery only, and not to be construed as limiting or reflecting CMO USA's position in this action regarding claim construction or any other issue. CMO USA specifically reserves the right to use different terms, or to assert different meanings, for all purposes in this action (including, for example, with respect to claim construction, infringement analysis, and validity analysis).

1.      "LG Display," "you," and "your" means LG Display Co., Ltd., formerly known as LG.Philips LCD Co., Ltd., and all Persons or entities acting or purporting to act on its behalf, and any Affiliates (as that term is defined herein) of LG Display Co., Ltd. (including, for example, LG Display America, Inc., formerly known as LG.Philips LCD America, Inc.)

2.    "LGDA" means LG Display America, Inc., formerly known as LG.Philips LCD America, Inc., and all Persons or entities acting or purporting to act on its behalf, and any Affiliates (as that term is defined herein) of LG Display America, Inc.

3.    "CMO" means Chi Mei Optoelectronics Corporation, and all Persons or entities acting on Chi Mei Optoelectronics Corporation's behalf.

4.    "CMO USA" means Chi Mei Optoelectronics USA, Inc., and all Persons or entities acting on Chi Mei Optoelectronics USA, Inc.'s behalf.

5.    "Affiliate(s)" means any partnerships, parents, subsidiaries, and divisions, and any corporation or other entity that controls, is controlled by, or is under common control with the identified corporation or entity.

6.    "Representative" means any Person, attorney, agent, consultant or other individual(s) or business entity(ies) in the employ of, or otherwise acting on behalf of an entity or individual.

7.    "LGD Products" means all LCD Modules and LCD Panels made, shipped, imported, or sold by or for LGD and/or LGDA since December 1, 2000.

8.    "LCD Display Product" means any device that contains an LCD Module. An LCD computer monitor, LCD television, laptop computer, and any telephone or other portable or handheld product incorporating an LCD Module are examples of LCD Display Products.  This includes all such devices, regardless of Brand.

9.    "LCD Module" means an LCD display component that includes, inter alia, an LCD Panel, a backlight unit, and driver ICs.

10.    "LCD Panel" means an LCD display component that includes a TFT Array and color filter with liquid crystal material between them.

11.    "TFT Substrate" means the substrate that contains one or more TFT Arrays.

12.    "TFT Array" means a thin-film-transistor array, electrodes, wiring, and pads used to drive and control the liquid crystal material in an LCD display.

13.    "Color Filter Substrate" means the substrate that contains one or more color filters used in an LCD Panel.

14.    "Brand" means any brand name or company whose name, mark, or logo appears on LCD Display Products, including, for example, Dell, Hewlett-Packard, Apple, and ViewSonic.

15.    "LGD Customer" means any person (including any Brand that sells LCD Display Products) that has, directly or through an intermediary, ordered, received, purchased, approved, imported, and/or used any LGD Products, including LCD Display Products that contain LGD Products.

16.    "Communication" means, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer, or exchange of information between two or more Persons of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, email, mail, personal delivery, or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements, and other understandings.

17.    The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these document requests all information that might otherwise be construed to be outside of their scope.

18.    "Concern," "concerning," and "relative to" are used in their broadest sense and embrace all matter relating to, referring to, describing, discussing, evidencing, or constituting the referenced subject.

19.    "Document" means all types of documents, electronically stored information, and things embraced within Federal Rules of Civil Procedure 34 and includes, without limitation, any writing and each original, or a copy in the absence of the original, and every copy bearing notes or markings not present on the original or copy, of the following items, however produced or reproduced, namely: books, accounting records of any nature whatsoever, agreements, Communications, correspondence, facsimiles, telegrams, cable, telexes, memoranda, recordings, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, letters, forecasts, statistical statements, graphs, laboratory or engineering reports and records, notebooks, charts, plans, sketches, drawings, video tapes, films, slides, photographs, information bearing photographic products of any nature whatsoever, photo-records, microfilms, tape recordings, minutes or records of meetings or conferences, expressions or statements of policy, lists of persons attending meetings or conferences, reports or summaries of interviews, reports or summaries of investigations, opinions or reports of consultants, patent studies, opinions of counsel, records, reports, summaries of negotiations, sales literature of any nature whatsoever, brochures, catalogues, catalogue sheets, pamphlets, periodicals,

advertisements, circulars or trade letters, press releases, trade releases, publicity releases, new product releases, reprints, drafts of any documents, working papers, indices, original or preliminary notes, sound recordings, computer printouts, floppy disks, hard drives, CD-ROMs, DVDs, portable drives, magnetic tapes and any other data, database, server, or data compilations from which information can be obtained either directly, or, if necessary translated by you through detection devices into a reasonably usable form.  The term "Document" also refers to any tangible object other than as described above, and includes objects of every kind and nature such as, but not limited to, products, prototypes, models, and specimens.  A draft or nonidentical copy is a separate "Document" within the meaning of this term.

20.    "Thing" is defined to be synonymous in meaning and equal in scope to the usage of the term "tangible things " in Federal Rule of Civil Procedure 34(a), including, without limitation, products, devices, models, mockups, prototypes, systems, and all other tangible things that are in your actual or constructive possession, custody or control, all prior versions or attempts to create the foregoing, and all reproductions of the foregoing that have undergone any alteration, modification, addition, removal, revision, or other change.  A non-identical thing is a separate thing.

21.    "Any" means each and every.

22.    "Use" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

23.    "Make" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

24.    "Offer to sell" or "Offered for Sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

25.    "Sell" or "sale" has the same meaning as in 35 U.S.C. § 271 and applicable case law.

26.    "Prior Art" has the same meaning as at term is used in 35 U.S.C. § 103 and applicable case law, without regard to pertinence, including, but not limited to, conceptions, reductions to practice, publications, uses, disclosures, offers for sale and sales, and commercial exploitations of an idea, product, device, method, apparatus, or system, that you or any othe party in litigation or licensing negotiations identified as potentially relevant to any claims of the LGD Patents.

27.    "Person" means any natural person, firm, association, partnership, corporation, joint venture, or other form of legal entity.

28.    The "LGD Patents" means United States Letters Patent Nos. 4,624,737; 5,019,002; 5,825,449; 5,905,274; 6,803,984; 6,815,321; 7,176,489; and 7,218,374, as well as any reissues and/or reexaminations thereof, and any reissue applications therefrom.

29.    "Foreign Counterparts of the LGD Patents" means any patent applications filed anywhere in the world that claim priority in whole or in part to the LGD Patents.

30.    "Part Number" means the name(s) and alpha-numeric identifier(s) by which a part or product, for example an LCD display, LCD Module, LCD Panel, or components thereof, in general, are bought, sold, or identified (including, for example,

internally by LG Display or for sales and marketing purposes), and/or by LGD Customers).

31.    "Specification" means all Documents or Things that discuss, illustrate, define, or reflect, in whole or in part, any aspect of how something is, can, or should be made, inspected, or tested.  Specifications include, for example, textual Documents, drawings, mask files, product specifications, TFT Array Specifications, TFT Substrate specifications, Manufacturing Process Specifications, Color Filter Substrate specifications, panel or cell specifications, material specifications, assembly specifications, blueprints, and/or illustrations.

32.    "Manufacturing Process Specifications" means Documents that describe the steps and/or process conditions for forming each layer on a Color Filter Substrate or TFT Substrate.

33.    "TFT Array Specifications" means Documents that describe a TFT Array design such as layout, material composition of layers, and/or properties of array components.

34.    The use of the singular form of any word includes the plural and vice versa.

35.    LG Display shall produce all attachments to e-mails immediately behind the e-mail to which such Documents were attached so that the complete contents of each e-mail are together in  LG Display's production.

36.    If  LG Display believes that any request contained in this set of discovery requests is unclear, unintelligible or because of its wording otherwise prohibits or prevents  LG Display from responding to that discovery request, CMO

USA requests that LG Display request immediate clarification of that discovery request from CMO USA.

37.     LG Display is advised that these discovery requests are continuing and require further and supplemental responses by LG Display, in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

38.     In producing the Documents described below, LG Display should furnish all Documents within your possession, custody or control, including information that you have the ability and right to obtain or access through or from Affiliates, Representatives, suppliers, or others.

39.     In response to the following set of requests, as to each Document withheld in whole or in part from production on the basis of a claim of privilege or immunity, LG Display shall state the following outlined information. LG Display is requested to submit this information on the date and at the time of production of Documents and Things responsive to these requests.

      a.     identification of the Document being withheld, including separately each copy or draft;

      b.     the nature of and basis for the privilege or immunity asserted;

      c.     the kind of Document (e.g., letter, memorandum, facsimile, etc.);

      d.     the date it bears, if any, as well as the date it was prepared, if different;

      e.     whether the Document was sent, and if so, the date it was sent;

f.    the name, address, and title of its author, its addressee, each Person to whom a copy has been sent or who received a copy, and each Person known to have read the Document; and

g.    a description of the subject matter and contents of the Document.

40.    Whenever available, Documents shall be produced in native format on a CD, DVD or removable hard drive with the original file names kept in tact, regardless of their language.  LG Display shall include in the file name a production number by which the file may be later referenced.

41.    No Document or information shall be withheld on the asserted grounds that such Document or information therein is not reasonably calculated to lead to the discovery of admissible evidence unless (i) the burden of responding is fully described, and (ii) persons familiar with the Document or information requested are identified.

## REQUESTS FOR PRODUCTION

**Document Request No. 1**

All Documents concerning LG Display's decision to commence this action, including documents sufficient to identify persons who participated in or contributed to that decision, and all documents concerning the basis or bases upon which that decision was made.

**Document Request No. 2**

All Documents and Things concerning any CMO product obtained by LG Display prior to commencement of this action, including, but not limited to, Documents and Things regarding LG Display's pre-suit investigation of CMO products and its alleged infringement of any LGD Patents.

**Document Request No. 3**

All Documents and Things concerning LG Display's pre-suit investigation of CMO USA and its alleged infringement of any LGD Patents.

**Document Request No. 4**

All Documents concerning the factual basis or bases for each of your allegations in any of LG Display's pleadings relative to CMO, including, but not limited to, LGD's Complaint, Amended Complaints, or Counterclaims.

**Document Request No. 5**

All Documents concerning the factual basis or bases for each of your allegations in any of LG Display's pleadings relative to CMO USA, including, but not limited to, LGD's Complaint, Amended Complaints, or Counterclaims.

**Document Request No. 6**

All Documents that concern, support or refute, or tend to support or refute any

of the allegations in any of LG Display's pleadings relative to CMO, including, but not

limited to, LGD's Complaint, Amended Complaints, or Counterclaims.

**Document Request No. 7**

All Documents that concern, support or refute, or tend to support or refute any

of the allegations in any of LG Display's pleadings relative to CMO USA, including,

but not limited to, LGD's Complaint, Amended Complaints, or Counterclaims.

**Document Request No. 8**

All Documents relating to LG Display's first awareness of each allegedly

infringing act or product for which LG Display seeks any recovery against CMO,

including when LG Display first determined that any CMO act or product allegedly

infringed one or more claims of any LGD Patent.

**Document Request No. 9**

All Documents relating to LG Display's first awareness of each allegedly

infringing act for which LG Display seeks any recovery against CMO USA.

**Document Request No. 10**

All Documents concerning any contention by you relative to whether or not

CMO infringes one or more claims of any LGD Patent, whether literally or under the

doctrine of equivalents.

**Document Request No. 11**

All Documents concerning any contention by you relative to whether or not

CMO USA infringes one or more claims of any LGD Patent, whether literally or under

the doctrine of equivalents.

-12-

**Document Request No. 12**

All Documents concerning any contention by you relative to whether or not CMO induces infringement or contributes to the infringement of one or more claims of any LGD Patent.

**Document Request No. 13**

All Documents concerning any contention by you relative to whether or not CMO USA induces infringement or contributes to the infringement of one or more claims of any LGD Patent.

**Document Request No. 14**

All Documents and Things concerning CMO's alleged infringement of one or more claims of any LGD Patent, including, but not limited to, correspondence, electronic mail, memoranda, notes, calculations, presentations, analyses, studies, requests for quotes, invitations to bid, bid packages, bids, quotes, proposals, contracts, purchase orders, invoices, submissions, product samples, reports, or meeting minutes.

**Document Request No. 15**

All Documents and Things concerning CMO USA's alleged infringement of one or more claims of any LGD Patent, including, but not limited to, correspondence, electronic mail, memoranda, notes, calculations, presentations, analyses, studies, requests for quotes, invitations to bid, bid packages, bids, quotes, proposals, contracts, purchase orders, invoices, submissions, product samples, reports, or meeting minutes.

**Document Request No. 16**

All studies, tests, comparisons, analyses, inspections or reports conducted by LG Display or on LG Display's behalf concerning the structure, function or operation of

any of the accused CMO products or any other products LG Display contends practice any of the inventions purportedly claimed in the LGD Patents.

**Document Request No. 17**

  All Documents concerning any contention by you relative to whether or not CMO's alleged infringement of one or more claims of any LGD Patent is "willful."

**Document Request No. 18**

  All Documents concerning any contention by you relative to whether or not CMO USA's alleged infringement of one or more claims of any LGD Patent is "willful."

**Document Request No. 19**

  All Documents concerning any contention by you relative to whether or not CMO should be enjoined and restrained from infringing one or more claims of any LGD Patent.

**Document Request No. 20**

  All Documents concerning any contention by you relative to whether or not CMO USA should be enjoined and restrained from infringing one or more claims of any LGD Patent.

**Document Request No. 21**

  All Documents concerning any contention by you relative to whether or not this action is an "exceptional case."

**Document Request No. 22**

  All Documents concerning any claim by LG Display that any Person other than CMO or CMO USA infringed one or more claims of an LGD Patent.

**Document Request No. 23**

All Documents concerning the interpretation, scope, or construction of each claim of the LGD Patents.

**Document Request No. 24**

All documents that LG Display intends to use to support its construction of each claim of the LGD Patents.

**Document Request No. 25**

All Documents exchanged between LGD and DisplaySearch or any other market research publisher concerning LGD Products, LCD Display Products, LCD Modules, or LCD Panels, including, but not limited to, financial information.

**Document Request No. 26**

All Documents generated or relied upon by LG Display since December 1, 2000 that reference information or data from DisplaySearch or any other market research publisher.

**Document Request No. 27**

All Documents concerning the United States and/or North American market for LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**Document Request No. 28**

All Documents concerning the marketing and/or sale of LGD Products, LCD Display Products, LCD Modules, or LCD Panels in or for the United States and/or North American market, including, for example, Communications with Brands, LGD Customers, or potential customers that sell in the United States any LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**Document Request No. 29**

All Documents concerning any analysis, study, or report prepared by or on behalf of LG Display concerning any LGD Products, LCD Display Products, LCD Modules, or LCD Panels that LG Display contends are covered by any claim of any LGD Patent, including, without limitation, all Documents concerning any estimated, projected or actual market shares; any estimated, projected or actual royalties; and/or any estimated, projected or actual profit for each such product on the market at any time or anticipated to be on the market.

**Document Request No. 30**

All Documents concerning LG Display's market share (actual or estimated) and/or projected market share relative to LGD Products, LCD Display Products, LCD Modules, or LCD Panels in the United States for any period from 2000 to the present.

**Document Request No. 31**

All Documents concerning any trips to the United States by any LG Display employee regarding LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**Document Request No. 32**

All Documents concerning any trips by any LG Display or LGDA employee to any LGD Customer, potential LGD Customer, or Brand that does business in part in the United States or is an Affiliate of an entity that does business in the United States.

**Document Request No. 33**

All Documents concerning any laws, regulations, or requirements in the United States that apply to LGD Products, LCD Display Products, LCD Modules, or LCD Panels , including, but not limited to, Documents evidencing compliance with any such

United States laws, regulations, and requirements (for example, UL and EPA requirements).

**Document Request No. 34**

All Documents that you submitted, filed with, and received since December 1, 2000, from any United States (federal, state or local) government agency or authority concerning the importation and/or sale of LGD Products, LCD Display Products, LCD Modules, or LCD Panels and any requirements or approvals for such sales and imports.

**Document Request No. 35**

All Documents concerning the manufacture of any LGD TFT Array or TFT Substrate in accordance with any LGD Patents, including, but not limited to, TFT Array Specifications that describe or disclose the material composition of each layer of each substrate; process Specifications that describe or disclose the steps for forming (e.g., cleaning, depositing, coating, etching, and/or stripping) each layer of each substrate, and mask files (i.e., electronic files such as GDS-II) that describe or disclose the layer patterns of each substrate.

**Document Request No. 36**

All Documents concerning the design and/or analysis of the structure of any thin-film transistor on any LGD TFT Substrate made in accordance with any LGD Patents including, but not limited to, Documents that describe or disclose the cross section structure of a TFT, and Documents that describe or disclose testing, analysis, or evaluation, including performance, produceability, operation, yield, reliability, fault, or quality control, of LGD Products including components or structures of TFT Arrays and LCD Panels.

**Document Request No. 37**

All Documents concerning any LG Display cell assembly process in accordance with any LGD Patents, including, but not limited to, product Specifications and CAD files that describe or disclose patterns (e.g., seal printing or seal dispensing, liquid crystal filling, Au or Ag dispensing, UV light masking, and/or glass cutting) on the LGD TFT Substrate and/or the LGD Color Filter Substrate; process Specifications that describe or disclose the steps for assembling (e.g., cleaning, printing, filling, dispensing, attaching, exposing to UV light, baking, cutting, beveling, and/or bubble removal) a LG Display LCD Panel; and material Specifications that describe or disclose the sealant material (e.g., by designated product name, supplier, and/or composition) for each LG Display LCD Panel.

**Document Request No. 38**

All Documents concerning any LG Display cell assembly material flow and fabrication equipment used in connection with product made in accordance with any LGD Patents, including, but not limited to, fabrication equipment floor layouts for all cell assembly production lines; Specifications that describe or disclose a cell production line as serial, single or other similar designation; and Documents that describe or disclose the process flow, control, relative timing, and/or operation of the seal dispensing, liquid crystal dispensing, cleaning, and/or assembly equipment in each cell assembly production line.

**Document Request No. 39**

Samples of each LCD Display Product, LCD Module, and LCD Panel that LGD contends are covered by or embody, in whole or in part, any claim of any LGD Patent.

**Document Request No. 40**

All Documents concerning the designs, structures, procedures, process conditions, equipment used, materials, functions, analysis, operation, absence, use, and/or purpose of the following with respect to your products that you claim are covered by any LGD Patents or manufactured in accordance with any LGD Patents:

    a.    Electrostatic Discharge Protection, including:

            i.    structures or components on a TFT Substrate or LCD Panel;

            ii.    manufacturing process steps that relate to electrostatic charge or discharge;

            iii.    equipment, environmental conditions or procedures that relate to reducing electrostatic charge, discharge, or dispersal of discharge; and

            iv.    testing, analysis, or evaluation (including performance, produceability, yield, reliability, fault, or quality control) of structures, equipment, conditions or procedures related to electrostatic charge, discharger or dispersal of discharge;

    b.    TFT Substrate and color filter design and manufacture, including:

            i.    procedures, process conditions and materials used for the deposition and patterning of each layer;

            ii.    design and measurement of component performance (e.g., threshold voltage, capacitance values), material characteristics (e.g., resistivity) and pattern parameters (e.g., thickness, width, length, shape);

            iii.    design and operation of components and layers depicted in mask files; and

            iv.    testing, analysis, or evaluation (including performance, produceability, yield, reliability, fault, or quality control) of individual layers, physical interrelationships between layers, and electrical characteristics of interrelationships between layers;

    c.    Cell assembly, including:

            i.    applying or dispensing sealant, including patterns as depicted in CAD files;

      ii.     procedures and equipment used for applying or curing the sealant;

      iii.    applying, dispensing, or injecting liquid crystal material;

      iv.    aligning, joining and cutting TFT and Color Filter Substrates;

      v.     optical compensation structures, including films;

      vi.    testing, analysis, or evaluation (including performance, produceability, yield, reliability, fault, or quality control) of sealant application or dispensing patterns; and

      vii.   evaluation of production line capacity, throughput or costs associated with each production line; and

   d.    Module assembly, including:

      i.     backlight unit structures and components;

      ii.    design, operation and interrelationship of components depicted in CAD files; and

      iii.   driver circuit attachment and operation.

**Document Request No. 41**

All Documents concerning the conception, design, reduction to practice (actual and constructive), diligence or lack of diligence in reduction to practice, research, and development of each invention, product, device, service, method, or activity, that concerns or is purportedly covered by one or more of the claims of any LGD Patents or the Foreign Counterparts of the LGD Patents, including, but not limited to, all product proposals, design notes, engineering notebooks, laboratory notebooks, memoranda, drawings, specifications, prototypes, computer software, change orders, publications, and printed matter concerning such products, devices, services, methods, or activities, and any written description, printed publication or disclosure prior to the respective application dates for each of the LGD Patents, whether in the United States or elsewhere.

**Document Request No. 42**

All Documents concerning the efforts by any Person other than the named inventors to aid in the conception of the subject matter that concerns or is purportedly covered by one or more of the claims of any LGD Patents or any Foreign Counterparts of the LGD Patents.

**Document Request No. 43**

All Documents concerning the efforts by any Person other than the named inventors to aid in the reduction to practice (actual and constructive) of the subject matter that concerns or is purportedly covered by one or more of the claims of any LGD Patents or any Foreign Counterparts of the LGD Patents.

**Document Request No. 44**

All Documents concerning any search, investigation, analysis, review, opinion or study relating to the scope, novelty, nonobviousness, patentability, validity, enforceability and/or infringement of any claim of any LGD Patents or any Foreign Counterparts of the LGD Patents.

**Document Request No. 45**

All Documents concerning any search for Prior Art for the subject matter purportedly defined by each of the claims of the LGD Patents.

**Document Request No. 46**

All Documents concerning any Prior Art, whether or not you contend it is actually Prior Art, relative to the LGD Patents, including all Prior Art or potential Prior Art references to those patents or their respective Foreign Counterparts.

**Document Request No. 47**

All Documents regarding any product, publication, patent, or other Document or Thing that you contend may be relative to Prior Art to the LGD Patents.

**Document Request No. 48**

All English translations of any foreign patent, publication or other Document or Thing that anyone has identified as Prior Art to any of the LGD Patents.

**Document Request No. 49**

All Documents concerning the first Use in public, Offer to Sell, or Sale of the subject matter described and purportedly claimed in any LGD Patent or any Foreign Counterparts of the LGD Patents.

**Document Request No. 50**

All Documents concerning the first description in a printed Document or publication, relative to the first Use in public, Offer to Sell, or Sale of the subject matter described and purportedly claimed in any LGD Patent or any Foreign Counterparts of the LGD Patents.

**Document Request No. 51**

All Documents concerning any Use, whether public or otherwise and whether experimental or otherwise, of each alleged invention corresponding to any claims of any LGD Patent or any Foreign Counterparts of the LGD Patents prior to the respective application dates for each of the LGD Patents, whether in the United States or elsewhere.

**Document Request No. 52**

All Documents concerning the best mode for practicing the purported invention claimed in each of the LGD Patents.

**Document Request No. 53**

All Documents authored by the named inventors of the LGD Patents concerning the subject matter of the LGD Patents including, but not limited to, any lab notebooks, schematics, papers, publications, or notes.

**Document Request No. 54**

With respect to each of the LGD Patents and Foreign Counterparts of the LGD Patents, as well as any reissue application and/or reexamination request and/or interference thereof or related thereto, the following categories of Documents:

   a.    the complete patent prosecution files and all Documents relating to prosecution of each of the LGD Patents and Foreign Counterparts of the LGD Patents;

   b.    all Documents concerning the decision to file each application, the scope of the claims during prosecution, the naming of inventors or any amendment thereof, and the preparation of the patent application(s);

   c.    all Documents reviewed, consulted, considered, or prepared in connection with the preparation or prosecution of each application, including, without limitation, any Prior Art or potential Prior Art identified or known during prosecution;

   d.    all drafts of the application(s), any amendments thereof, any responses to Patent Office actions and any other papers filed or submitted during prosecution;

   e.    all Documents concerning Communications with or from any third Person or any of the inventors or possible inventors or any Person at any time named as an inventor;

   f.    all Documents concerning Communications with or from any patent attorney, patent agent, or Prior Art searcher relating to the Prior Art, the purported invention, applications, or the prosecution of the application(s);

-23-

g.       all Documents relating to references cited by or to the United States

Patent and Trademark Office or any foreign patent office during the prosecution of the

application(s);

h.       all Documents concerning any conflicts, interferences, oppositions,

infringements, nullity, revocation, lawsuits or any other proceedings concerning any of

the LGD Patents or any Foreign Counterparts of the LGD Patents; and

i.       all Documents concerning ownership and/or assignments or transfers of

interest with respect to any LGD Patents and any Foreign Counterparts of the LGD

Patents.

**Document Request No. 55**

All Documents concerning LG Display's policies and/or practices regarding

patents or patent applications.

**Document Request No. 56**

All Documents concerning all links in the chain of title or ownership of any

LGD Patents, any Foreign Counterparts of the LGD Patents, or related family patent

rights, beginning with the inventors, including, but not limited to, all assignment

Documents and all Documents concerning the acquisition of any LGD Patent, any

Foreign Counterparts of the LGD Patents, or related family patent rights.

**Document Request No. 57**

All Documents concerning the actual or potential purchase, sale, or transfer of

any rights or interest in or to any LGD Patent, including, but not limited to,

Communications, negotiations, offers, discussions, presentations, meeting notes,

meeting minutes, analyses, agreements, contracts, assignments, and licenses, including

all drafts, modifications, or amendments (if any) thereof, and Documents exchanged with third parties.

**Document Request No. 58**

All Documents and Things relating to any test, study, experiment, or investigation conducted by any Person in an effort to design around any LGD Patent or any Foreign Counterparts of the LGD Patents.

**Document Request No. 59**

All Documents concerning any contention that any alleged "secondary considerations" of the type described in *Graham v. John Deere*, 383 U.S. 1 (1966), and its progeny, for the subject matter purportedly described and claimed in any LGD Patent and any Foreign Counterparts of the LGD Patents show them to be non-obvious, including, without limitation, Documents relevant to:

   a.    any alleged long-felt need, or absence thereof, for the subject matter of any of the claims of any LGD Patent;

   b.    any alleged commercial success, or lack thereof, of the subject matter of any of the claims of any LGD Patent;

   c.    any alleged copying by others, or lack thereof, of the subject matter of any of the claims of any LGD Patent;

   d.    any alleged praise, or absence thereof, for the subject matter of any of the claims of any LGD Patent;

   e.    any alleged unexpected results, or lack thereof, of the subject matter of any of the claims of any LGD Patent;

   f.    any alleged skepticism, or lack thereof, concerning the subject matter of any of the claims of any LGD Patent; or

-25-

g.    any alleged nexus or lack thereof between the use of the subject matter claimed in any LGD Patents and any alleged commercial success of products or services using or incorporating that subject matter.

**Document Request No. 60**

All Documents concerning the utility, advantages, problems, and solutions corresponding to inventions purportedly disclosed, described or claimed in any of the LGD Patents.

**Document Request No. 61**

All license agreements, covenants not to sue, agreements providing an immunity-from-suit, and related agreements to which LG Display is a party, including all addendums, amendments, and exhibits to such agreements.

**Document Request No. 62**

All Documents concerning any offer of, request for or expression of interest in a license and/or immunity-from-suit under or assignment or purchase of, or concerning any grant or amendment of a license and/or immunity-from-suit under, or concerning any assignment or purchase of the LGD Patents, any patent applications that led to any LGD Patents, or any Foreign Counterparts of the LGD Patents or patent applications corresponding to or claiming the benefit of or priority under any of the foregoing, and for each such offer, request, expression of interest, grant, assignment or purchase, all Documents concerning, but not limited to:

a.    the parties involved;

b.    the negotiation of each license, immunity, assignment or purchase offered or requested;

c.    the duration of each license and/or immunity offered or requested;

d.     the products to be covered by each such proposed license and/or

immunity;

e.     the amount of consideration offered, requested or received for such

license, immunity, assignment or purchase, if any, including the amounts paid or to be

paid for activities which predated each proposed license, immunity, assignment or

purchase and the amounts to be paid for activities after the grant of each proposed

license, immunity, assignment or purchase;

f.     any royalties, royalty rates, royalty or compensation bases, if any;

g.     any cross-licenses, licenses, or agreements under other patents, patent

applications, trade secrets, or know-how;

h.     the actual license(s), immunity(ies) or assignment(s) entered into and any

and all proposed license(s), immunity(ies) or assignment(s); and/or

i.     any amendments to any such license(s), immunity(ies) or assignment(s)

or any proposed amendments.

**Document Request No. 63**

All Documents concerning your former or current patent licensing policies,

practices or strategies.

**Document Request No. 64**

All Documents concerning the identity and significance of all factors that you

have considered when negotiating license agreements or valuing technology for

licensing purposes from December 1, 2000 to the present.

**Document Request No. 65**

All Documents concerning any lost profits sought by LG Display in this case.

**Document Request No. 66**

All Documents concerning any reasonable royalties sought by LG Display in this case, including with respect to each of the factors referenced in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff 'd*, 446 F.2d 295 (2d Cir. 1971), and royalty damages claimed for each LGD Patent.

**Document Request No. 67**

All Documents concerning, or providing basis or support for, any of LG Display's contentions, positions, or assertions made or to be made concerning LG Display's damage theories in this litigation, including, without limitation, contentions, positions, or assertions made or to be made concerning the theories of lost profits, reasonable royalty, established royalty, lost sales and/or any other basis for alleged compensation under 35 U.S.C. § 284, including, without limitation:

      a.      all Documents concerning the rate at which LG Display pays interest on incurred debts;

      b.      all Documents concerning the compensation received or expected to be received by LG Display from its licensing or other exploitation of any of the claims of any LGD Patents;

      c.      all Documents concerning how LG Display arrived at the royalty rate or the rate of compensation earned by LG Display for the licensing or other exploitation of any of the claims of any LGD Patents;

      d.      any royalties received by LG Display pursuant to any licenses, sublicenses or covenants not to sue of any LGD Patents;

     e.     any royalty rates paid by companies in the United States for the use of patents comparable to any LGD Patents;

     f.     the effect of the LGD Patents in generating sales of LGD Products, LCD Display Products, LCD Modules, or LCD Panels, other products or technology, and/or licensing revenue in the United States;

     g.     all Documents concerning whether there is a demand for products embodying the purported invention disclosed in any LGD Patent;

     h.     all Documents concerning whether there are a lack of acceptable non-infringing alternatives to products embodying the purported inventions disclosed in any LGD Patent;

     i.     all Documents concerning LG Display's marketing and manufacturing capability to exploit the purported demand for the purported inventions disclosed in any LGD Patent; and

     j.     all Documents concerning the amount of profit that LG Display would have allegedly made.

**Document Request No. 68**

All Documents concerning the monetary value of any LGD Patent (whether individually, together, or as part of a larger portfolio), including, but not limited to, any licenses, accounting records, settlement agreements, appraisals, reports, or opinions.

**Document Request No. 69**

All Documents reflecting all valuations and the methodology or basis that you have used since December 1, 2000, to negotiate or calculate the rate or amount of royalty regarding any patents concerning technology used in or for LGD Products, LCD

Display Products, LCD Modules, or LCD Panels, or manufacturing as to any such products.

**Document Request No. 70**

All license agreements and related agreements concerning LGD Products, LCD Display Products, LCD Modules, or LCD Panels, and/or the manufacture or assembly of any such products, including all addendums, amendments, and exhibits to such license agreements.

**Document Request No. 71**

All Documents concerning the types of technology involved in any license agreement to which LG Display is a party, and Documents reflecting the extent to which any existing licenses involve technology that is relevant or comparable to the subject matter of the LGD Patents.

**Document Request No. 72**

All Documents and Things concerning the settlement of any lawsuit or claim concerning any LGD Patent.

**Document Request No. 73**

All Documents, in native format if available, that identify each LCD Module, LCD Panel, or LCD Display Product that incorporates, has been used with, or has been incorporated into any LGD Product, including Documents that identify which Brands, models, and Part Numbers incorporate, have been used with, or have been incorporated into each LGD Product since December 1, 2000 and in what quantities.

**Document Request No. 74**

All reports, forecasts, projections, plans, estimates, revenues, and data compilations, in native format if available, created, generated, received or maintained,

including the computer databases or document management systems in which such

Documents are located, concerning the revenues, profitability, costs, margins,

manufacturing, marketing, advertising, importation, distribution, purchase and sales of

LGD Products, LCD Display Products, LCD Modules, or LCD Panels made, sold, or

offered for sale by or for you on a monthly basis since December 1, 2000.

**Document Request No. 75**

All Documents, in native format if available, summarizing transactions since

December 1, 2000 with any LGD Customer, distributor, reseller, and retailer that either

does business in part or has an Affiliate that does business in part in the United States

concerning LGD Products, LCD Display Products, LCD Modules, or LCD Panels,

including, but not limited to, all offers to sell, sales, orders, shipments, and imports.

**Document Request No. 76**

All Documents, in native format, summarizing or concerning sales, shipments,

price per unit, gross profit per unit, net profit per unit, fixed cost per unit, and variable

cost per unit of LGD Products, LCD Display Products, LCD Modules, or LCD Panels

made and sold by or for you or on your behalf since December 1, 2000, including

identifying from whom each product was shipped and to whom each product was

shipped.

**Document Request No. 77**

Documents sufficient to determine the manufacturing cost and yield for all LGD

Products, LCD Display Products, LCD Modules, or LCD Panels and fabrication plants,

including, but not limited to, manufacturing cost reports and any other Documents

reflecting product yield, changes in product yield, and reasons for changes in product

yield for each fabrication plant.

**Document Request No. 78**

All Documents reflecting any marking or obligation to mark products with any of the LGD Patent numbers.

**Document Request No. 79**

All Communications concerning the LGD Patents or any Foreign Counterparts of the LGD Patents, including but not limited to, internal memoranda, e-mail, and correspondence between you and your officers, agents, consultants, subcontractors, and employees.

**Document Request No. 80**

All Documents concerning all Communications between LG Display and any third-party related to any LGD Patent or the subject matter of any LGD Patent.

**Document Request No. 81**

All Documents received by LG Display from CMO or any person, referencing any LGD Patent.

**Document Request No. 82**

All Documents sent by or on behalf of LG Display to CMO or any person affiliated with CMO, referencing any LGD Patents.

**Document Request No. 83**

All Documents exchanged between LG Display and any of the following concerning LGD Products, LCD Display Products, LCD Modules, or LCD Panels:

      h.      Apple Computer, Inc., including its affiliates and subsidiaries;

      i.      TPV Technologies Limited Ltd., including its affiliates and subsidiaries;

      j.      Proview International, including its affiliates and subsidiaries;

      k.      Hewlett-Packard, including its affiliates and subsidiaries;

  l.  Westinghouse, including its affiliates and subsidiaries;

  m.  Dell, including its affiliates and subsidiaries;

  n.  Funai Electric Co., Ltd., including its affiliates and subsidiaries (such as Funai Corporation);

  o.  NEC, including its affiliates and subsidiaries;

  p.  Samsung, including its affiliates and subsidiaries.

**Document Request No. 84**

  All Documents exchanged between LG Display and any of the following concerning the United States, including, for example, with respect to United States market trends or consumer preferences, LGD Products, LCD Display Products, LCD Modules, or LCD Panels that could be used, sold, offered for sale in the United States and/or LG Display employees, meetings, offices, or presentations in or regarding the United States:

  a.  Apple Computer, Inc., including its affiliates and subsidiaries;

  b.  TPV Technologies Limited Ltd., including its affiliates and subsidiaries;

  c.  Proview International, including its affiliates and subsidiaries;

  d.  Hewlett-Packard, including its affiliates and subsidiaries;

  e.  Westinghouse, including its affiliates and subsidiaries;

  f.  Dell, including its affiliates and subsidiaries;

  g.  NEC, including its affiliates and subsidiaries;

  h.  Funai Electric Co., Ltd., including its affiliates and subsidiaries (such as Funai Corporation);

  i.  Samsung, including its affiliates and subsidiaries.

**Document Request No. 85**

All Documents concerning any opinion of counsel regarding the LGD Patents, including, for example, all opinions, draft opinions, notes, analyses, and Communications regarding each opinion, and all Documents received and/or considered for the purposes of each opinion.

**Document Request No. 86**

All Documents concerning strategic alliances and joint ventures between LG Display and others regarding LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**Document Request No. 87**

All Documents that identify product or project names and codenames for LGD Products, LCD Display Products, LCD Modules, or LCD Panels, and that link or correlate such names or codenames between such LGD Products, LCD Display Products, LCD Modules, or LCD Panels, or are used and/or approved for LCD Display Product projects and/or codenames.

**Document Request No. 88**

Documents sufficient to show or explain the letter and/or numbering system by which LG Display assigns model numbers and/or Part Numbers to its LGD Products, LCD Display Products, LCD Modules, or LCD Panels, including Documents sufficient to show or explain what each letter and/or number signifies.

**Document Request No. 89**

All Documents concerning any expert expected to testify for you in this case, including, for example:

    a.    each expert's reports for this case and other cases within the past four

years;

    b.    all Documents considered by any expert regarding this case; and

    c.    all publications of the expert concerning any issues or subject matter

related to the issues or subject matter in this action.

**Document Request No. 90**

All Documents reviewed by or received by any person LG Display expects to

call as a witness at any hearing or at trial in this action to the extent such documents

relate to the subject matter of this action.

**Document Request No. 91**

All Documents prepared by any person LG Display expects to call as a witness

at any hearing or at trial in this action to the extent such documents relate to the subject

matter of this action.

**Document Request No. 92**

All Documents and Things that LG Display may use or introduce at any hearing

or trial of this action.

**Document Request No. 93**

All Documents in the possession, custody or control of each of the individuals

listed on LG Display's and LGDA's Initial Disclosures that concern the LGD Patents or

the subject matter of this action.

**Document Request No. 94**

All Documents identified, described, or referenced in LG Display's and

LGDA's Initial Disclosures.

**Document Request No. 95**

All organizational charts and other Documents that reflect LG Display's entire

organizational structure, including the structure of your Intellectual Property department

or division, including lines of reporting and all positions, offices, divisions, units,

departments, teams, and employees within LG Display, and their corresponding titles,

functions, and responsibilities.

**Document Request No. 96**

All Documents that identify employees, officers, agents, subsidiaries, or

Representatives acting on behalf of LG Display and/or LGDA in the United States.

**Document Request No. 97**

All Documents reflecting any Communications between LG Display and any

other Person regarding CMO, CMO USA, or the following cases: *AU Optronics*

*Corporation vs. LG.Philips LCD Co., Ltd. and LG.Philips LCD America, Inc.*, Civil

Action No. 07-C-0137-S (United States District Court for the Western District of

Wisconsin); *AU Optronics Corporation vs. LG.Philips LCD Co., Ltd. and LG.Philips*

*LCD America, Inc. et al.*, Civil Action No. 07-357-JJF (United States District Court for

the District of Delaware); *LG.Philips LCD Co., Ltd. v. Chi Mei Optoelectronics*

*Corporation, et al.*, Civil Action No. 06-726-JJF (United States District Court for the

District of Delaware); *Chi Mei Optoelectronics Corporation v. LG.Philips LCD Co.,*

*Ltd. and LG.Philips LCD America, Inc.*, Civil Action No. 07-176-TJW (United States

District Court for the Eastern District of Texas); *LG.Philips LCD Co Ltd v. Chunghwa*

*Picture Tubes Ltd*, Civil Action No. 05-07004-CBM (United States District Court for

the Central District of California); *LG.Philips LCD Co., Ltd. v. Chunghwa Picture*

*Tubes Ltd., et al.*, Civil Action No. 02-6775-CBM (United States District Court for the

Central District of California); and *LG.Philips LCD Co., Ltd. v. Tatung Co., et al.*, Civil

Action No. 05-292-JJF (United States District Court for the District of Delaware).

**Document Request No. 98**

All Documents concerning pleadings, discovery requests, responses to discovery

requests, expert reports, claim construction briefing, claim charts, deposition transcripts,

court transcripts, trial transcripts, and court orders relative to any action or lawsuit in

which LG Display has alleged that any Person has infringed any LGD Patent, including,

but not limited to the following cases: *AU Optronics Corporation vs. LG.Philips LCD*

*Co., Ltd. and LG.Philips LCD America, Inc.*, Civil Action No. 07-C-0137-S (United

States District Court for the Western District of Wisconsin); *AU Optronics Corporation*

*vs. LG.Philips LCD Co., Ltd. and LG.Philips LCD America, Inc. et al.*, Civil Action No.

07-357-JJF (United States District Court for the District of Delaware); *LG.Philips LCD*

*Co Ltd v. Chunghwa Picture Tubes Ltd*, Civil Action No. 05-07004-CBM (United

States District Court for the Central District of California); *LG.Philips LCD Co., Ltd. v.*

*Chunghwa Picture Tubes Ltd., et al.,* Civil Action No. 02-6775-CBM (United States

District Court for the Central District of California); and *LG.Philips LCD Co., Ltd. v.*

*Tatung Co.,* et al., Civil Action No. 05-292-JJF (United States District Court for the

District of Delaware).

**Document Request No. 99**

All Documents concerning LG Display's participation in, sponsorship of, and/or

Communications with any group, organization, or other body concerning establishing,

publishing, or developing industry standards potentially relevant to LGD Products, LCD

Display Products, LCD Modules, or LCD Panels.

**Document Request No. 100**

All policies, procedures, manuals, guidelines, and other Documents concerning the retention, destruction, storage, archiving, and management of Documents, records, and/or electronically stored information that apply to LG Display, LGDA or their employees.

**Document Request No. 101**

All Documents concerning efforts to identify information (including electronically stored information) relevant to claims and defenses or discovery in this case, including Documents identifying all sources of relevant information, all custodians of relevant information.

**Document Request No. 102**

All reports to your shareholders, including all annual reports, in English, since December 1, 2000.

**Document Request No. 103**

All Documents concerning LG Display stock or shares, including, but not limited to, stock offerings (such as Offering Circulars), shareholders agreements or any agreements relating to stock purchases, share purchases or asset sales or transfers to which LG Display is a party, assignor, assignee, or beneficiary.

**Document Request No. 104**

All annual reports, income statements, and financial statements concerning LG Display since December 1, 2000.

**Document Request No. 105**

All Documents and Things produced to, provided to, examined by or given to AU Optronics Corporation or AU Optronics Corporation of America in connection with this action.

**Document Request No. 106**

All Documents concerning CMO.

**Document Request No. 107**

All Documents concerning CMO USA.

**Document Request No. 108**

All English translations of any non-English documents that are responsive to any of the document request posed by CMO USA.

**Document Request No. 109**

All Documents that you identified, consulted, referred to, or relied upon in responding to any interrogatories posed by CMO USA.


OF COUNSEL:                          POTTER ANDERSON & CORROON LLP

Kenneth R. Adamo
Robert C. Kahrl
Arthur P. Licygiewicz            By: _____
Jones Day                             Philip A. Rovner (#3215)
North Point                           Hercules Plaza
901 Lakeside Avenue                   P. O. Box 951
Cleveland, OH  44114-1190             Wilmington, DE  19899
(216) 586-3939                        (302) 984-6000
                                      provner@potteranderson.com
Dated:  April 8, 2008
859219                               *Attorneys for Defendant*
                                     *Chi Mei Optoelectronics USA, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on April 8, 2008 true and correct copies of

the within document were served on the following counsel of record, at the addresses and in the

manner indicated:

### BY HAND DELIVERY AND EMAIL

Richard E. Kirk, Esq.
Ashley Blake Stitzer, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardfirm.com
astitzer@bayardfirm.com

### BY E-MAIL

Gaspare J. Bono, Esq.
Matthew T. Bailey, Esq.
Lora A. Brzezynski, Esq.
Cass W. Christenson, Esq.
R. Tyler Goodwyn, IV, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
gbono@mckennalong.com
mbailey@mckennalong.com
lbrzezynski@mckennalong.com
cchristenson@mckennalong.com
tgoodwyn@mckennalong.com

### BY HAND DELIVERY AND EMAIL

John W. Shaw, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
kpascale@ycst.com

### BY E-MAIL

Vincent K. Yip, Esq.
Peter J. Wied, Esq.
Jay C. Chiu, Esq.
Paul Hastings Janofsky & Walker LLP
515 South Flower Street
Los Angeles, CA 90071
vincentyip@paulhastings.com
peterwied@paulhastings.com
jaychiu@paulhastings.com

Ron E. Shulman, Esq.
Julie M. Holloway, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050
rshulman@wsgr.com
jholloway@wsgr.com

M. Craig Tyler, Esq.
Brian D. Range, Esq.
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, TX 78759
ctyler@wsgr.com
brange@wsgr.com

Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

2

EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LG DISPLAY CO., LTD., | |
| Plaintiff, | Civil Action No. 06-726 (GMS)<br>Civil Action No. 07-357 (GMS) |
| v. | **CONSOLIDATED CASES** |
| CHI MEI OPTOELECTRONICS<br>CORPORATION, et al. | |
| Defendants. | |

**LG DISPLAY CO., LTD.'S RESPONSES TO CHI MEI OPTOELECTRONICS USA,
INC.'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF
DOCUMENTS AND THINGS (Nos. 1-109)**

Plaintiff LG Display Co., Ltd. ("LG Display"), by counsel and pursuant to Fed. R. Civ. P.

34, responds as follows to Chi Mei Optoelectronics USA, Inc.'s ("CMO USA") First Set of

Requests for the Production of Documents and Things.

**PRELIMINARY STATEMENT**

1.    Discovery has just begun, LG Display's investigation is ongoing, there is no

protective order in place and no depositions have been taken.  Thus, these responses are based

solely on information available to LG Display at a very early stage of this litigation.  LG Display

reserves its right to amend, retract, or supplement its responses in light of new information or a

revised understanding of existing information.

2.    By providing these responses, LG Display does not waive any objections or

claims of privilege.

**GENERAL OBJECTIONS**

These general objections apply to each request and thus, for convenience, are not

repeated after each request, but rather are set forth herein and are hereby incorporated into each

response. By responding to any particular request with the phrase "Subject to and without waiving the foregoing objections," LG Display is incorporating by reference not only the specific objections stated in the response, but also these General Objections.

1.     LG Display objects to these requests as overly broad and unduly burdensome, in scope and effect, to the extent that these requests seek discovery that is not properly limited to relevant products, issues, time periods, or information, and/or would require unreasonable effort and expense to investigate or respond.

2.     LG Display objects to these requests to the extent they seek documents protected from discovery by the attorney-client privilege, work product doctrine, and other applicable privileges or immunities.  This includes, but is not limited to, documents or information generated after filing of the Complaint herein.  To the extent that these requests seek documents that are not subject to this objection, LG Display's responses shall not constitute or be construed as a waiver of such privilege and/or work-product immunity.  Moreover, to the extent that identification of individuals or documents would disclose privileged or protected information, LG Display objects to any such identification.  Any demand for a privilege log contemporaneous with these responses is premature and LG Display will meet and confer regarding an appropriate exchange of privilege logs in this case.

3.     LG Display objects to these requests to the extent they seek discovery of confidential and/or competitive information, including, for example, documents containing trade secrets or other confidential research, development or commercial information and will only produce such documents in accordance with Local Rule 26.2 and/or a protective order to be entered in this action, including special safeguards regarding the handling of and access to highly confidential or competitive information.

4.      LG Display objects to these requests to the extent they seek the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LG Display. LG Display shall attempt to obtain the consent of such third party prior to production. If LG Display cannot obtain such consent, LG Display will not produce the documents.

5.      LG Display objects to these requests to the extent they request documents that are: a) not in LG Display's possession, custody or control; b) already in Defendants' possession; c) in the public domain; or d) more easily obtainable from other sources by the exercise of ordinary due diligence as required by any applicable rule, as unduly burdensome, oppressive, and designed to harass.

6.      LG Display objects to these requests to the extent they seek information related to any LG Display product in or under development. Such information is neither relevant to any claims or defenses asserted in this case, nor reasonably likely to lead to the discovery of admissible evidence.

7.      LG Display objects to CMO USA's requests and "Definitions of Terms and Instructions" to the extent that they seek to impose obligations beyond the scope of the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Delaware. LG Display will comply to the extent required by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Delaware.

8.      LG Display objects to Definition 1 of "LG Display," "you," and "your" because it is overly broad.

9.      LG Display objects to Definition 2 of "LGDA" because it is overly broad.

3

10.     LG Display objects to Definition 6 of "Representative" because it is overly broad.

11.     LG Display objects to Definition 20 of "Thing" as overly broad and unduly burdensome to the extent it seeks the production of things that are beyond the scope of Fed. R. Civ. P. 34.

12.     LG Display objects to Instruction 40 and these requests to the extent they seek the production of electronically stored information in a manner that is inconsistent with the parties' agreement. The parties have agreed, subject to document requests and objections, to produce "relevant electronically stored information in TIFF format along with load files or in PDF format. To the extent any electronically stored information cannot be converted to TIFF or PDF format, the parties will produce that information in its native format." April 3, 2008 letter from Mr. Range to Messrs. Bono and Adamo. LG Display refers to and incorporates into this objection by reference the following correspondence that more fully describes the parties' agreement: (1) March 3, 2008 letter from Brian Range to Messrs. Bono and Adamo (*see* ¶ 2 (a)-(d)); (2) March 13, 2008 letter from Lora Brzezynski to Messrs. Range and Adamo (amending ¶ 2(a)); (3) March 20, 2008 letter from Arthur Licygiewicz to Brian Range and Lora Brzezynski (agreeing with ¶ 2(a)-(d), as amended); (4) March 24, 2008 e-mail from Mr. Range to Arthur Licygiewicz and Lora Brzezynski, and others (slightly modifying  ¶ 2 (a)); and April 3, 2008 letter from Mr. Range to Messrs. Bono and Adamo. To the extent that CMO USA's instructions or requests conflict with the parties' agreement and seek the production of other information or other formats of electronically stored information, including metadata, LG Display objects. Further, LG Display objects to producing electronically stored information that is not reasonably accessible and would be unduly burdensome or expensive to produce. Subject to all responses and objections, LG Display will produce any relevant, non-privileged electronically stored

4

information that can be retrieved without undue burden or cost.  As further confirmed in the aforementioned letters, any party may request a native electronic copy and/or metadata associated with a document produced in the agreed format, with an explanation of the basis for that request, in which case the other party will reasonably cooperate.  LG Display will, therefore, discuss any such requests on a case-by-case basis.

13.    LG Display objects to Instruction 41 because it imposes unreasonable burdens not required by the Federal Rules of Civil Procedure.  LG Display will respond to these Requests pursuant to Fed. R. Civ. P. 26 and 34.

14.    LG Display reserves all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility of both its responses to these requests and to any document produced in response to these requests in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever.

15.    LG Display objects to the date and location for producing responsive documents as unduly burdensome.  LG Display shall produce relevant, non-privileged documents responsive to these requests, to the extent such documents exist, on a rolling basis and as required under the Scheduling Order.

16.    LG Display objects to these requests as overly broad to the extent they seek information concerning claims and defenses asserted by and between parties other than LG Display and CMO USA.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

### DOCUMENT REQUEST NO. 1:

All Documents concerning LG Display's decision to commence this action, including documents sufficient to identify persons who participated in or contributed to that decision, and all documents concerning the basis or bases upon which that decision was made.

### RESPONSE TO DOCUMENT REQUEST NO. 1:

In addition to the General Objections, LG Display objects to this request as overly broad

with respect to "All Documents." LG Display objects to this request as overly broad and unduly

burdensome. LG Display also objects to this request to the extent it seeks documents protected

by the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

### DOCUMENT REQUEST NO. 2:

All Documents and Things concerning any CMO product obtained by LG Display prior to commencement of this action, including, but not limited to, Documents and Things regarding LG Display's pre-suit investigation of CMO products and its alleged infringement of any LGD Patents.

### RESPONSE TO DOCUMENT REQUEST NO. 2:

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display further objects to this request as overly broad

with respect to "All Documents and Things." LG Display objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges.

### DOCUMENT REQUEST NO. 3:

All Documents and Things concerning LG Display's pre-suit investigation of CMO USA and its alleged infringement of any LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 3:**

In addition to the General Objections, LG Display objects to this request as overly broad

with respect to "All Documents and Things." LG Display also objects to this request to the

extent it seeks documents protected by the attorney-client privilege, work product doctrine

and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 4:**
All Documents concerning the factual basis or bases for each of your allegations in any
of LG Display's pleadings relative to CMO, including, but not limited to, LGD's Complaint,
Amended Complaints, or Counterclaims.

**RESPONSE TO DOCUMENT REQUEST NO. 4:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges. Moreover, LG Display objects to this request as redundant and duplicative

to the extent it seeks information sought by other document requests served on LG Display by

CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 5:**
All Documents concerning the factual basis or bases for each of your allegations in any
of LG Display's pleadings relative to CMO USA, including, but not limited to, LGD's
Complaint, Amended Complaints, or Counterclaims.

**RESPONSE TO DOCUMENT REQUEST NO. 5:**

In addition to the General Objections, LG Display objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges.  Moreover, LG Display objects to this request as redundant and

duplicative to the extent it seeks information sought by other document requests served on LG

Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 6:**

All Documents that concern, support or refute, or tend to support or refute any of the
allegations in any of LG Display's pleadings relative to CMO, including, but not limited to,
LGD's Complaint, Amended Complaints, or Counterclaims.

**RESPONSE TO DOCUMENT REQUEST NO. 6:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA.  LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges and to the extent it seeks the disclosure of documents that are subject to a

confidentiality agreement with a third party or that are proprietary or confidential information of

a third party that is in the possession, custody, or control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 7:**

All Documents that concern, support or refute, or tend to support or refute any of the
allegations in any of LG Display's pleadings relative to CMO USA, including, but not limited to,
LGD's Complaint, Amended Complaints, or Counterclaims.

**RESPONSE TO DOCUMENT REQUEST NO. 7:**

In addition to the General Objections, LG Display objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges and to the extent it seeks the disclosure of documents that are subject

to a confidentiality agreement with a third party or that are proprietary or confidential

information of a third party that is in the possession, custody, or control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 8:**
All Documents relating to LG Display's first awareness of each allegedly infringing act
or product for which LG Display seeks any recovery against CMO, including when LG Display
first determined that any CMO act or product allegedly infringed one or more claims of any LGD
Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 8:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 9:**
All Documents relating to LG Display's first awareness of each allegedly infringing act
for which LG Display seeks any recovery against CMO USA.

**RESPONSE TO DOCUMENT REQUEST NO. 9:**

In addition to the General Objections, LG Display objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges. Moreover, LG Display objects to this request as redundant and

duplicative to the extent it seeks information sought by other document requests served on LG

Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 10:**
All Documents concerning any contention by you relative to whether or not CMO
infringes one or more claims of any LGD Patent, whether literally or under the doctrine of
equivalents.

**RESPONSE TO DOCUMENT REQUEST NO. 10:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 11:**
All Documents concerning any contention by you relative to whether or not CMO USA
infringes one or more claims of any LGD Patent, whether literally or under the doctrine of
equivalents.

**RESPONSE TO DOCUMENT REQUEST NO. 11:**

In addition to the General Objections, LG Display objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 12:**

All Documents concerning any contention by you relative to whether or not CMO induces infringement or contributes to the infringement of one or more claims of any LGD Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 12:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA.  LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges and to the extent it seeks the disclosure of documents that are subject to a

confidentiality agreement with a third party or that are proprietary or confidential information of

a third party that is in the possession, custody, or control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 13:**

All Documents concerning any contention by you relative to whether or not CMO USA induces infringement or contributes to the infringement of one or more claims of any LGD Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 13:**

In addition to the General Objections, LG Display objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges and to the extent it seeks the disclosure of documents that are subject

to a confidentiality agreement with a third party or that are proprietary or confidential

information of a third party that is in the possession, custody, or control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 14:**
   All Documents and Things concerning CMO's alleged infringement of one or more claims of any LGD Patent, including, but not limited to, correspondence, electronic mail, memoranda, notes, calculations, presentations, analyses, studies, requests for quotes, invitations to bid, bid packages, bids, quotes, proposals, contracts, purchase orders, invoices, submissions, product samples, reports, or meeting minutes.

**RESPONSE TO DOCUMENT REQUEST NO. 14:**

   In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome.  LG Display also objects to this request as overly broad to the extent it

seeks information beyond the scope of the claims and defenses asserted by and between LG

Display and CMO USA.  LG Display specifically objects to this request as overly broad with

respect to "All Documents and Things."  LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges and to the extent it seeks the disclosure of documents that are subject to a

confidentiality agreement with a third party or that are proprietary or confidential information of

a third party that is in the possession, custody, or control of LG Display.  To the extent this

request seeks the production of electronically stored information, LG Display objects to

producing electronically stored information that is not reasonably accessible and would be

unduly burdensome or expensive to produce.  To the extent LG Display produces any

electronically stored information, such information will be produced in the manner agreed to as

set forth in LG Display's General Objections.

   Subject to and without waiving the foregoing objections, LG Display will produce

relevant non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 15:**
   All Documents and Things concerning CMO USA's alleged infringement of one or more claims of any LGD Patent, including, but not limited to, correspondence, electronic mail, memoranda, notes, calculations, presentations, analyses, studies, requests for quotes, invitations

12

to bid, bid packages, bids, quotes, proposals, contracts, purchase orders, invoices, submissions, product samples, reports, or meeting minutes.

**RESPONSE TO DOCUMENT REQUEST NO. 15:**

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display specifically objects to this request as overly broad with respect to "All Documents and Things." LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges and to the extent it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LG Display. To the extent this request seeks the production of electronically stored information, LG Display objects to producing electronically stored information that is not reasonably accessible and would be unduly burdensome or expensive to produce. To the extent LG Display produces any electronically stored information, such information will be produced in the manner agreed to as set forth in LG Display's General Objections.

Subject to and without waiving the foregoing objections, LG Display will produce relevant non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 16:**

All studies, tests, comparisons, analyses, inspections or reports conducted by LG Display or on LG Display's behalf concerning the structure, function or operation of any of the accused CMO products or any other products LG Display contends practice any of the inventions purportedly claimed in the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 16:**

In addition to the General Objections, LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display objects to this request as overly broad with

respect to "All." LG Display objects to this request to the extent it seeks documents protected by

the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 17:**
All Documents concerning any contention by you relative to whether or not CMO's
alleged infringement of one or more claims of any LGD Patent is "willful."

**RESPONSE TO DOCUMENT REQUEST NO. 17:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request as overly broad with

respect to "All Documents." LG Display objects to this request to the extent it seeks documents

protected by the attorney-client privilege, work product doctrine and/or any other applicable

privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 18:**
All Documents concerning any contention by you relative to whether or not CMO USA's
alleged infringement of one or more claims of any LGD Patent is "willful."

**RESPONSE TO DOCUMENT REQUEST NO. 18:**

In addition to the General Objections, LG Display objects to this request as overly broad

with respect to "All Documents." LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents exist.

**DOCUMENT REQUEST NO. 19:**
All Documents concerning any contention by you relative to whether or not CMO should be enjoined and restrained from infringing one or more claims of any LGD Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 19:**

In addition to the General Objections, LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA.  LG Display objects to this request as overly broad with respect to "All Documents."  LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents exist.

**DOCUMENT REQUEST NO. 20:**
All Documents concerning any contention by you relative to whether or not CMO USA should be enjoined and restrained from infringing one or more claims of any LGD Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 20:**

In addition to the General Objections, LG Display objects to this request as overly broad with respect to "All Documents."  LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 21:**
All Documents concerning any contention by you relative to whether or not this action is an "exceptional case."

**RESPONSE TO DOCUMENT REQUEST NO. 21:**

In addition to the General Objections, LG Display objects to this request as overly broad with respect to "All Documents." LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents exist.

**DOCUMENT REQUEST NO. 22:**
All Documents concerning any claim by LG Display that any Person other than CMO or CMO USA infringed one or more claims of an LGD Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 22:**

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display objects to this request to the extent it seeks information that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the extent this request seeks information not reasonably likely to lead to the discovery of admissible evidence. LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display objects to this request as overly broad with respect to "All Documents." LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges and to the extent it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or

16

that are proprietary or confidential information of a third party that is in the possession, custody,

or control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 23:**
All Documents concerning the interpretation, scope, or construction of each claim of the
LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 23:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request as overly broad with

respect to "All Documents." LG Display objects to this request to the extent it seeks documents

protected by the attorney-client privilege, work product doctrine and/or any other applicable

privileges. LG Display further objects to the extent that this request seeks discovery that relates

to claims or claim terms not in dispute. LG Display objects to this request as premature prior to

the claim construction process.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 24:**
All documents that LG Display intends to use to support its construction of each claim of
the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 24:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request as premature prior to

17

the claim construction process.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 25:**
All Documents exchanged between LGD and DisplaySearch or any other market research publisher concerning LGD Products, LCD Display Products, LCD Modules, or LCD Panels, including, but not limited to, financial information.

**RESPONSE TO DOCUMENT REQUEST NO. 25:**

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome, including with respect to "All Documents." LG Display specifically objects to this request as overly broad to the extent it is not limited to relevant products or information concerning claims or defenses at issue in this case. LG Display also objects to this request as overly broad to the extent it is unlimited in temporal scope or otherwise not limited to a time frame that is relevant to this litigation.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents exist.

**DOCUMENT REQUEST NO. 26:**
All Documents generated or relied upon by LG Display since December 1, 2000 that reference information or data from DisplaySearch or any other market research publisher.

**RESPONSE TO DOCUMENT REQUEST NO. 26:**

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome, including with respect to "All Documents." LG Display objects to this request to the extent it seeks information that is not relevant to the claims or defenses asserted in this case. LG Display also objects to this request as overly broad to the extent it is not limited to a time frame that is relevant.

**DOCUMENT REQUEST NO. 27:**
All Documents concerning the United States and/or North American market for LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**RESPONSE TO DOCUMENT REQUEST NO. 27:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome, including with respect to "All Documents." LG Display objects to this

request to the extent it seeks documents protected by the attorney-client privilege, work product

doctrine and/or any other applicable privileges. LG Display objects to this request as unduly

burdensome to the extent it seeks documents in the public domain. LG Display objects to this

request as overly broad to the extent it is unlimited in temporal scope or otherwise not limited to

a time frame that is relevant to this litigation.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 28:**
All Documents concerning the marketing and/or sale of LGD Products, LCD Display Products, LCD Modules, or LCD Panels in or for the United States and/or North American market, including, for example, Communications with Brands, LGD Customers, or potential customers that sell in the United States any LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**RESPONSE TO DOCUMENT REQUEST NO. 28:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence. LG Display also objects to this request as overly broad to the extent it seeks

information beyond the scope of the claims and defenses asserted by and between LG Display

and CMO USA. LG Display specifically objects to this request as overly broad with respect to

19

"All Documents." LG Display objects to this request as overly broad to the extent it is unlimited

in temporal scope or otherwise not limited to a time frame that is relevant to this litigation.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 29:**
All Documents concerning any analysis, study, or report prepared by or on behalf of LG
Display concerning any LGD Products, LCD Display Products, LCD Modules, or LCD Panels
that LG Display contends are covered by any claim of any LGD Patent, including, without
limitation, all Documents concerning any estimated, projected or actual market shares; any
estimated, projected or actual royalties; and/or any estimated, projected or actual profit for each
such product on the market at any time or anticipated to be on the market.

**RESPONSE TO DOCUMENT REQUEST NO. 29:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display also objects to the extent this request seeks information not

reasonably likely to lead to the discovery of admissible evidence. LG Display objects to this

request as overly broad to the extent it seeks information beyond the scope of the claims and

defenses asserted by and between LG Display and CMO USA. LG Display specifically objects

to this request as overly broad with respect to "All Documents" and "any analysis." LG Display

objects to this request as overly broad to the extent it is unlimited in temporal scope or otherwise

not limited to a time frame that is relevant to this litigation. LG Display objects to this request to

the extent it seeks documents protected by the attorney-client privilege, work product doctrine

and/or any other applicable privileges. Moreover, LG Display objects to this request as

redundant and duplicative to the extent it seeks information sought by other document requests

served on LG Display by CMO USA. LG Display further objects to this request because it is

vague, ambiguous, and fails to specify documents sought with reasonable particularity,

preventing LG Display from identifying responsive documents.

Subject to and without waiving the foregoing objections, LG Display is currently

unaware of any analysis, study, or report concerning LG Display's products with respect to any

patent asserted in this case by LG Display.

**DOCUMENT REQUEST NO. 30:**
    All Documents concerning LG Display's market share (actual or estimated) and/or
projected market share relative to LGD Products, LCD Display Products, LCD Modules, or LCD
Panels in the United States for any period from 2000 to the present.

**RESPONSE TO DOCUMENT REQUEST NO. 30:**

    In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence. LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA. LG Display specifically objects to this request as overly broad with respect to "All

Documents." Moreover, LG Display objects to this request as overly broad to the extent that it is

not limited to a time frame that is relevant.

    Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 31:**
    All Documents concerning any trips to the United States by any LG Display employee
regarding LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**RESPONSE TO DOCUMENT REQUEST NO. 31:**

    In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence. LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA. LG Display specifically objects to this request as overly broad with respect to "All

Documents." LG Display objects to this request to the extent it seeks documents protected by

the attorney-client privilege, work product doctrine and/or any other applicable privileges. LG

Display objects to this request as overly broad to the extent it is unlimited in temporal scope or

otherwise not limited to a time frame that is relevant to this litigation.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 32:**
All Documents concerning any trips by any LG Display or LGDA employee to any LGD
Customer, potential LGD Customer, or Brand that does business in part in the United States or is
an Affiliate of an entity that does business in the United States.

**RESPONSE TO DOCUMENT REQUEST NO. 32:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request as overly broad with

respect to "All Documents." LG Display objects to this request as overly broad to the extent it is

unlimited in temporal scope or otherwise not limited to a time frame that is relevant to this

litigation. LG Display objects to this request to the extent it seeks documents protected by the

attorney-client privilege, work product doctrine and/or any other applicable privileges.

Moreover, LG Display objects to this request as redundant and duplicative to the extent it seeks

information sought by other document requests served on LG Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

22

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

## DOCUMENT REQUEST NO. 33:
All Documents concerning any laws, regulations, or requirements in the United States
that apply to LGD Products, LCD Display Products, LCD Modules, or LCD Panels, including,
but not limited to, Documents evidencing compliance with any such United States laws,
regulations, and requirements (for example, UL and EPA requirements).

## RESPONSE TO DOCUMENT REQUEST NO. 33:

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request as overly broad with

respect to "All Documents." LG Display objects to this request as overly broad to the extent it is

unlimited in temporal scope or otherwise not limited to a time frame that is relevant to this

litigation. LG Display objects to this request to the extent it seeks documents protected by the

attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

## DOCUMENT REQUEST NO. 34:
All Documents that you submitted, filed with, and received since December 1, 2000,
from any United States (federal, state or local) government agency or authority concerning the
importation and/or sale of LGD Products, LCD Display Products, LCD Modules, or LCD Panels
and any requirements or approvals for such sales and imports.

## RESPONSE TO DOCUMENT REQUEST NO. 34:

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

23

evidence. LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA. LG Display specifically objects to this request as overly broad to the extent it is not

limited to relevant products at issue in this case.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 35:**
All Documents concerning the manufacture of any LGD TFT Array or TFT Substrate in
accordance with any LGD Patents, including, but not limited to, TFT Array Specifications that
describe or disclose the material composition of each layer of each substrate; process
Specifications that describe or disclose the steps for forming (e.g., cleaning, depositing, coating,
etching, and/or stripping) each layer of each substrate, and mask files (i.e., electronic files such
as GDS-II) that describe or disclose the layer patterns of each substrate.

**RESPONSE TO DOCUMENT REQUEST NO. 35:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA and/or concerning products that are not relevant. LG

Display objects to this request to the extent that it is ambiguous and obscure with respect to "in

accordance with any LGD Patents." LG Display objects to this request as overly broad to the

extent it is unlimited in temporal scope or otherwise not limited to a time frame that is relevant to

this litigation. LG Display objects to this request to the extent it seeks the disclosure of

documents that are subject to a confidentiality agreement with a third party or that are

proprietary or confidential information of a third party that is in the possession, custody, or

control of LG Display. To the extent this request seeks the production of electronically stored

information, LG Display objects to producing electronically stored information that is not

reasonably accessible and would be unduly burdensome or expensive to produce. To the extent

24

LG Display produces any electronically stored information, such information will be produced in the manner agreed to as set forth in LG Display's General Objections. LG Display objects on the grounds that documents and information sought by this request are highly confidential, trade secret information. LG Display will only produce these documents and materials subject to a protective order containing special safeguards regarding the handling of and access to this information.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request.

## DOCUMENT REQUEST NO. 36:

All Documents concerning the design and/or analysis of the structure of any thin-film transistor on any LGD TFT Substrate made in accordance with any LGD Patents including, but not limited to, Documents that describe or disclose the cross section structure of a TFT, and Documents that describe or disclose testing, analysis, or evaluation, including performance, produceability, operation, yield, reliability, fault, or quality control, of LGD Products including components or structures of TFT Arrays and LCD Panels.

## RESPONSE TO DOCUMENT REQUEST NO. 36:

In addition to the General Objections, LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA and/or concerning products that are not relevant. LG Display objects to this request to the extent that it is ambiguous and obscure with respect to "in accordance with any LGD Patents." LG Display objects to this request as overly broad to the extent it is unlimited in temporal scope or otherwise not limited to a time frame that is relevant to this litigation. LG Display objects to this request to the extent it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LG Display. To the extent this request seeks the production of electronically stored information, LG Display objects to producing electronically stored information that is not

reasonably accessible and would be unduly burdensome or expensive to produce. To the extent

LG Display produces any electronically stored information, such information will be produced in

the manner agreed to as set forth in LG Display's General Objections. LG Display objects on the

grounds that documents and information sought by this request are highly confidential, trade

secret information. LG Display will only produce these documents and materials subject to a

protective order containing special safeguards regarding the handling of and access to this

information.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 37:**
All Documents concerning any LG Display cell assembly process in accordance with any
LGD Patents, including, but not limited to, product Specifications and CAD files that describe or
disclose patterns (e.g., seal printing or seal dispensing, liquid crystal filling, Au or Ag
dispensing, UV light masking, and/or glass cutting) on the LGD TFT Substrate and/or the LGD
Color Filter Substrate; process Specifications that describe or disclose the steps for assembling
(e.g., cleaning, printing, filling, dispensing, attaching, exposing to UV light, baking, cutting,
beveling, and/or bubble removal) a LG Display LCD Panel; and material Specifications that
describe or disclose the sealant material (e.g., by designated product name, supplier, and/or
composition) for each LG Display LCD Panel.

**RESPONSE TO DOCUMENT REQUEST NO. 37:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA and/or concerning products that are not relevant. LG

Display objects to this request to the extent that it is ambiguous and obscure with respect to "in

accordance with any LGD Patents." LG Display objects to this request as overly broad to the

extent it is unlimited in temporal scope or otherwise not limited to a time frame that is relevant to

this litigation. LG Display objects to this request to the extent it seeks the disclosure of

documents that are subject to a confidentiality agreement with a third party or that are

proprietary or confidential information of a third party that is in the possession, custody, or

control of LG Display. To the extent this request seeks the production of electronically stored

information, LG Display objects to producing electronically stored information that is not

reasonably accessible and would be unduly burdensome or expensive to produce. To the extent

LG Display produces any electronically stored information, such information will be produced in

the manner agreed to as set forth in LG Display's General Objections. LG Display objects on the

grounds that documents and information sought by this request are highly confidential, trade

secret information. LG Display will only produce these documents and materials subject to a

protective order containing special safeguards regarding the handling of and access to this

information.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 38:**
All Documents concerning any LG Display cell assembly material flow and fabrication
equipment used in connection with product made in accordance with any LGD Patents,
including, but not limited to, fabrication equipment floor layouts for all cell assembly production
lines; Specifications that describe or disclose a cell production line as serial, single or other
similar designation; and Documents that describe or disclose the process flow, control, relative
timing, and/or operation of the seal dispensing, liquid crystal dispensing, cleaning, and/or
assembly equipment in each cell assembly production line.

**RESPONSE TO DOCUMENT REQUEST NO. 38:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA and/or concerning products that are not relevant. LG

Display objects to this request to the extent that it is ambiguous and obscure with respect to

"used in connection with product [sic] made in accordance with any LGD Patents." LG Display

objects to this request as overly broad to the extent it is unlimited in temporal scope or otherwise

not limited to a time frame that is relevant to this litigation. LG Display objects to this request to

the extent it seeks the disclosure of documents that are subject to a confidentiality agreement

with a third party or that are proprietary or confidential information of a third party that is in the

possession, custody, or control of LG Display. To the extent this request seeks the production of

electronically stored information, LG Display objects to producing electronically stored

information that is not reasonably accessible and would be unduly burdensome or expensive to

produce. To the extent LG Display produces any electronically stored information, such

information will be produced in the manner agreed to as set forth in LG Display's General

Objections. LG Display objects on the grounds that documents and information sought by this

request are highly confidential, trade secret information. LG Display will only produce these

documents and materials subject to a protective order containing special safeguards regarding the

handling of and access to this information.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 39:**
Samples of each LCD Display Product, LCD Module, and LCD Panel that LGD contends
are covered by or embody, in whole or in part, any claim of any LGD Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 39:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request as overly broad to the

extent it is unlimited in temporal scope or otherwise not limited to a time frame that is relevant to

this litigation. LG Display objects to this request as unduly burdensome to the extent it seeks

documents or things in the public domain. LG Display objects to this request to the extent the

documents sought are within the possession, custody, and control of CMO and/or CMO USA.

LG Display will meet and confer to discuss the potential production of samples of relevant

products.

**DOCUMENT REQUEST NO. 40:**

All Documents concerning the designs, structures, procedures, process conditions, equipment used, materials, functions, analysis, operation, absence, use, and/or purpose of the following with respect to your products that you claim are covered by any LGD Patents or manufactured in accordance with any LGD Patents:

    a.    Electrostatic Discharge Protection, including:

        i.    structures or components on a TFT Substrate or LCD Panel;

        ii.    manufacturing process steps that relate to electrostatic charge or discharge;

        iii.    equipment, environmental conditions or procedures that relate to reducing electrostatic charge, discharge, or dispersal of discharge; and

        iv.    testing, analysis, or evaluation (including performance, produceability, yield, reliability, fault, or quality control) of structures, equipment, conditions or procedures related to electrostatic charge, discharger or dispersal of discharge;

    b.    TFT Substrate and color filter design and manufacture, including:

        i.    procedures, process conditions and materials used for the deposition and patterning of each layer;

        ii.    design and measurement of component performance (e.g., threshold voltage, capacitance values), material characteristics (e.g., resistivity) and pattern parameters (e.g., thickness, width, length, shape);

        iii.    design and operation of components and layers depicted in mask files; and

        iv.    testing, analysis, or evaluation (including performance, produceability, yield, reliability, fault, or quality control) of individual layers, physical interrelationships between layers, and electrical characteristics of interrelationships between layers;

    c.    Cell assembly, including:

        i.    applying or dispensing sealant, including patterns as depicted in CAD files;

        ii.    procedures and equipment used for applying or curing the sealant;

      iii.     applying, dispensing, or injecting liquid crystal material;

      iv.     aligning, joining and cutting TFT and Color Filter Substrates;

      v.     optical compensation structures, including films;

      vi.     testing, analysis, or evaluation (including performance, produceability, yield, reliability, fault, or quality control) of sealant application or dispensing patterns; and

      vii.     evaluation of production line capacity, throughput or costs associated with each production line; and

  d.     Module assembly, including:

      i.     backlight unit structures and components;

      ii.     design, operation and interrelationship of components depicted in CAD files; and

      iii.     driver circuit attachment and operation.

**RESPONSE TO DOCUMENT REQUEST NO. 40:**

In addition to the General Objections, LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display objects to this request to the extent it seeks information that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the extent this request seeks information not reasonably likely to lead to the discovery of admissible evidence. LG Display objects to this request as overly broad to the extent it is unlimited in temporal scope or otherwise not limited to a time frame that is relevant to this litigation. LG Display objects to this request to the extent that it is ambiguous and obscure with respect to products "covered by any LGD Patents or manufactured in accordance with any LGD Patents." LG Display objects to this request to the extent it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LG

Display. To the extent this request seeks the production of electronically stored information, LG

Display objects to producing electronically stored information that is not reasonably accessible

and would be unduly burdensome or expensive to produce. To the extent LG Display produces

any electronically stored information, such information will be produced in the manner agreed to

as set forth in LG Display's General Objections. LG Display objects on the grounds that

documents and information sought by this request are highly confidential, trade secret

information. LG Display will only produce these documents and materials subject to a

protective order containing special safeguards regarding the handling of and access to this

information.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 41:**
All Documents concerning the conception, design, reduction to practice (actual and constructive), diligence or lack of diligence in reduction to practice, research, and development of each invention, product, device, service, method, or activity, that concerns or is purportedly covered by one or more of the claims of any LGD Patents or the Foreign Counterparts of the LGD Patents, including, but not limited to, all product proposals, design notes, engineering notebooks, laboratory notebooks, memoranda, drawings, specifications, prototypes, computer software, change orders, publications, and printed matter concerning such products, devices, services, methods, or activities, and any written description, printed publication or disclosure prior to the respective application dates for each of the LGD Patents, whether in the United States or elsewhere.

**RESPONSE TO DOCUMENT REQUEST NO. 41:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges and to the extent it seeks the disclosure of documents that are subject to a

confidentiality agreement with a third party or that are proprietary or confidential information of

31

a third party that is in the possession, custody, or control of LG Display. To the extent this

request seeks the production of electronically stored information, LG Display objects to

producing electronically stored information that is not reasonably accessible and would be

unduly burdensome or expensive to produce. To the extent LG Display produces any

electronically stored information, such information will be produced in the manner agreed to as

set forth in LG Display's General Objections. LG Display objects on the grounds that

documents and information sought by this request are highly confidential, trade secret

information. LG Display will only produce these documents and materials subject to a

protective order containing special safeguards regarding the handling of and access to this

information.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 42:**
All Documents concerning the efforts by any Person other than the named inventors to
aid in the conception of the subject matter that concerns or is purportedly covered by one or
more of the claims of any LGD Patents or any Foreign Counterparts of the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 42:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request as overly broad to the extent it seeks

information that is not relevant to the claims or defenses asserted in this case, and/or seeks

information beyond the scope of the claims and defenses asserted by and between LG Display

and CMO USA. LG Display specifically objects to this request as overly broad with respect to

"All Documents." LG Display objects to this request to the extent it seeks documents protected

by the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Moreover, LG Display objects to this request as redundant and duplicative to the extent it seeks

information sought by other document requests served on LG Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 43:**
All Documents concerning the efforts by any Person other than the named inventors to aid in the reduction to practice (actual and constructive) of the subject matter that concerns or is purportedly covered by one or more of the claims of any LGD Patents or any Foreign Counterparts of the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 43:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence. LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA. LG Display specifically objects to this request as overly broad with respect to "All

Documents." LG Display objects to this request to the extent it seeks documents protected by

the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Moreover, LG Display objects to this request as redundant and duplicative to the extent it seeks

information sought by other document requests served on LG Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

## DOCUMENT REQUEST NO. 44:

All Documents concerning any search, investigation, analysis, review, opinion or study relating to the scope, novelty, nonobviousness, patentability, validity, enforceability and/or infringement of any claim of any LGD Patents or any Foreign Counterparts of the LGD Patents.

## RESPONSE TO DOCUMENT REQUEST NO. 44:

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display specifically objects to this request as overly broad with respect to "All Documents" and "any search, investigation, analysis, review, opinion or study." LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges. Moreover, LG Display objects to this request as redundant and duplicative to the extent it seeks information sought by other document requests served on LG Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents exist.

## DOCUMENT REQUEST NO. 45:

All Documents concerning any search for Prior Art for the subject matter purportedly defined by each of the claims of the LGD Patents.

## RESPONSE TO DOCUMENT REQUEST NO. 45:

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display objects to this request as overly broad to the extent it seeks information that is not relevant to the claims or defenses asserted in this case, and/or seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display objects to this request to the extent it seeks documents protected by

34

the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Moreover, LG Display objects to this request as redundant and duplicative to the extent it seeks

information sought by other document requests served on LG Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 46:**
All Documents concerning any Prior Art, whether or not you contend it is actually Prior
Art, relative to the LGD Patents, including all Prior Art or potential Prior Art references to those
patents or their respective Foreign Counterparts.

**RESPONSE TO DOCUMENT REQUEST NO. 46:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome.  LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case.  LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence.  LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA.  Moreover, LG Display objects to this request as redundant and duplicative to the extent it

seeks information sought by other document requests served on LG Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 47:**
All Documents regarding any product, publication, patent, or other Document or Thing
that you contend may be relative to Prior Art to the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 47:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome.  LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence. LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA. LG Display specifically objects to this request as overly broad with respect to "All

Documents." LG Display objects to this request to the extent it seeks documents protected by

the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Moreover, LG Display objects to this request as redundant and duplicative to the extent it seeks

information sought by other document requests served on LG Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 48:**
All English translations of any foreign patent, publication or other Document or Thing
that anyone has identified as Prior Art to any of the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 48:**

In addition to the General Objections, LG Display objects to this request as overly broad.

LG Display also objects to this request to the extent it seeks documents protected by the

attorney-client privilege, work product doctrine and/or any other applicable privileges. LG

Display will meet and confer to discuss the potential production of translations of certain foreign

language documents, on a reciprocal basis.

**DOCUMENT REQUEST NO. 49:**
All Documents concerning the first Use in public, Offer to Sell, or Sale of the subject
matter described and purportedly claimed in any LGD Patent or any Foreign Counterparts of the
LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 49:**

In addition to the General Objections, LG Display objects to this response as overly

broad and unduly burdensome.  LG Display also objects to this request as overly broad to the

extent it seeks information beyond the scope of the claims and defenses asserted by and between

LG Display and CMO USA.  LG Display specifically objects to this request as overly broad with

respect to "All Documents."  LG Display objects to this request to the extent that it is ambiguous

and obscure with respect to "subject matter described."

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 50:**
All Documents concerning the first description in a printed Document or publication,
relative to the first Use in public, Offer to Sell, or Sale of the subject matter described and
purportedly claimed in any LGD Patent or any Foreign Counterparts of the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 50:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome.  LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case.  LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence.  LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA.  LG Display specifically objects to this request as overly broad with respect to "All

Documents."  LG Display objects to this request to the extent that it is ambiguous and obscure

with respect to "subject matter described."

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 51:**
    All Documents concerning any Use, whether public or otherwise and whether
experimental or otherwise, of each alleged invention corresponding to any claims of any LGD
Patent or any Foreign Counterparts of the LGD Patents prior to the respective application dates
for each of the LGD Patents, whether in the United States or elsewhere.

**RESPONSE TO DOCUMENT REQUEST NO. 51:**

    In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence. LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA. LG Display specifically objects to this request as overly broad with respect to "All

Documents." LG Display objects to this request to the extent it seeks documents protected by

the attorney-client privilege, work product doctrine and/or any other applicable privileges.

    Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 52:**
    All Documents concerning the best mode for practicing the purported invention claimed
in each of the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 52:**

    In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents exist.

**DOCUMENT REQUEST NO. 53:**
All Documents authored by the named inventors of the LGD Patents concerning the subject matter of the LGD Patents including, but not limited to, any lab notebooks, schematics, papers, publications, or notes.

**RESPONSE TO DOCUMENT REQUEST NO. 53:**

In addition to the General Objections, LG Display objects to this request as overly broad and to the extent it seeks information that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the extent this request seeks information not reasonably likely to lead to the discovery of admissible evidence. LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents exist.

**DOCUMENT REQUEST NO. 54:**
With respect to each of the LGD Patents and Foreign Counterparts of the LGD Patents, as well as any reissue application and/or reexamination request and/or interference thereof or related thereto, the following categories of Documents:

a.    the complete patent prosecution files and all Documents relating to prosecution of each of the LGD Patents and Foreign Counterparts of the LGD Patents;

b.    all Documents concerning the decision to file each application, the scope of the claims during prosecution, the naming of inventors or any amendment thereof, and the preparation of the patent application(s);

39

     c.    all Documents reviewed, consulted, considered, or prepared in connection with the preparation or prosecution of each application, including, without limitation, any Prior Art or potential Prior Art identified or known during prosecution;

     d.    all drafts of the application(s), any amendments thereof, any responses to Patent Office actions and any other papers filed or submitted during prosecution;

     e.    all Documents concerning Communications with or from any third Person or any of the inventors or possible inventors or any Person at any time named as an inventor;

     f.    all Documents concerning Communications with or from any patent attorney, patent agent, or Prior Art searcher relating to the Prior Art, the purported invention, applications, or the prosecution of the application(s);

     g.    all Documents relating to references cited by or to the United States Patent and Trademark Office or any foreign patent office during the prosecution of the application(s);

     h.    all Documents concerning any conflicts, interferences, oppositions, infringements, nullity, revocation, lawsuits or any other proceedings concerning any of the LGD Patents or any Foreign Counterparts of the LGD Patents; and

     i.    all Documents concerning ownership and/or assignments or transfers of interest with respect to any LGD Patents and any Foreign Counterparts of the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 54:**

In addition to the General Objections, LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges. LG Display objects to this request as unduly burdensome to the extent it seeks documents in the public domain. Further, LG Display objects to paragraph (h) as overly broad, unduly burdensome, and lacking reasonable particularity.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 55:**
     All Documents concerning LG Display's policies and/or practices regarding patents or patent applications.

**RESPONSE TO DOCUMENT REQUEST NO. 55:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display specifically objects to this request as overly

broad with respect to "All Documents." LG Display objects to this request to the extent that it is

ambiguous and obscure with respect to "policies and/or practices regarding patents or patent

applications."

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 56:**

All Documents concerning all links in the chain of title or ownership of any LGD Patents,
any Foreign Counterparts of the LGD Patents, or related family patent rights, beginning with the
inventors, including, but not limited to, all assignment Documents and all Documents concerning
the acquisition of any LGD Patent, any Foreign Counterparts of the LGD Patents, or related
family patent rights.

**RESPONSE TO DOCUMENT REQUEST NO. 56:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges and to the extent it seeks the disclosure of documents that are subject to a

confidentiality agreement with a third party or that are proprietary or confidential information of

a third party that is in the possession, custody, or control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 57:**

All Documents concerning the actual or potential purchase, sale, or transfer of any rights or interest in or to any LGD Patent, including, but not limited to, Communications, negotiations, offers, discussions, presentations, meeting notes, meeting minutes, analyses, agreements, contracts, assignments, and licenses, including all drafts, modifications, or amendments (if any) thereof, and Documents exchanged with third parties.

**RESPONSE TO DOCUMENT REQUEST NO. 57:**

In addition to the General Objections, LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges and to the extent it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 58:**

All Documents and Things relating to any test, study, experiment, or investigation conducted by any Person in an effort to design around any LGD Patent or any Foreign Counterparts of the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 58:**

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display objects to this request to the extent it seeks information that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the extent this request seeks information not reasonably likely to lead to the discovery of admissible evidence. LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display specifically objects to this request as overly broad with respect to "All

42

Documents and Things" and "any." LG Display further objects to this request to the extent the

documents sought are already in the possession of CMO and/or CMO USA or are more

appropriately obtained from a third party.

**DOCUMENT REQUEST NO. 59:**
All Documents concerning any contention that any alleged "secondary considerations" of the type described in *Graham v. John Deere*, 383 U.S. 1 (1966), and its progeny, for the subject matter purportedly described and claimed in any LGD Patent and any Foreign Counterparts of the LGD Patents show them to be non-obvious, including, without limitation, Documents relevant to:

a.    any alleged long-felt need, or absence thereof, for the subject matter of any of the claims of any LGD Patent;

b.    any alleged commercial success, or lack thereof, of the subject matter of any of the claims of any LGD Patent;

c.    any alleged copying by others, or lack thereof, of the subject matter of any of the claims of any LGD Patent;

d.    any alleged praise, or absence thereof, for the subject matter of any of the claims of any LGD Patent;

e.    any alleged unexpected results, or lack thereof, of the subject matter of any of the claims of any LGD Patent;

f.    any alleged skepticism, or lack thereof, concerning the subject matter of any of the claims of any LGD Patent; or

g.    any alleged nexus or lack thereof between the use of the subject matter claimed in any LGD Patents and any alleged commercial success of products or services using or incorporating that subject matter.

**RESPONSE TO DOCUMENT REQUEST NO. 59:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request as overly broad with

respect to "All Documents" and to the extent it seeks discovery concerning claims that are not

relevant. LG Display objects to this request to the extent it seeks documents protected by the

attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 60:**
All Documents concerning the utility, advantages, problems, and solutions corresponding
to inventions purportedly disclosed, described or claimed in any of the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 60:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA.  LG Display objects to this request as overly broad with

respect to "All Documents."

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 61:**
All license agreements, covenants not to sue, agreements providing an immunity-from-
suit, and related agreements to which LG Display is a party, including all addendums,
amendments, and exhibits to such agreements.

**RESPONSE TO DOCUMENT REQUEST NO. 61:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome.  LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case.  LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence.  LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA.  LG Display objects to this request to the extent it seeks the disclosure of documents that

are subject to a confidentiality agreement with a third party or that are proprietary or confidential

information of a third party that is in the possession, custody, or control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

## DOCUMENT REQUEST NO. 62:

All Documents concerning any offer of, request for or expression of interest in a license and/or immunity-from-suit under or assignment or purchase of, or concerning any grant or amendment of a license and/or immunity-from-suit under, or concerning any assignment or purchase of the LGD Patents, any patent applications that led to any LGD Patents, or any Foreign Counterparts of the LGD Patents or patent applications corresponding to or claiming the benefit of or priority under any of the foregoing, and for each such offer, request, expression of interest, grant, assignment or purchase, all Documents concerning, but not limited to:

    a.    the parties involved;

    b.    the negotiation of each license, immunity, assignment or purchase offered or requested;

    c.    the duration of each license and/or immunity offered or requested;

    d.    the products to be covered by each such proposed license and/or immunity;

    e.    the amount of consideration offered, requested or received for such license, immunity, assignment or purchase, if any, including the amounts paid or to be paid for activities which predated each proposed license, immunity, assignment or purchase and the amounts to be paid for activities after the grant of each proposed license, immunity, assignment or purchase;

    f.    any royalties, royalty rates, royalty or compensation bases, if any;

    g.    any cross-licenses, licenses, or agreements under other patents, patent applications, trade secrets, or know-how;

    h.    the actual license(s), immunity(ies) or assignment(s) entered into and any and all proposed license(s), immunity(ies) or assignment(s); and/or

    i.    any amendments to any such license(s), immunity(ies) or assignment(s) or any proposed amendments.

## RESPONSE TO DOCUMENT REQUEST NO. 62:

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome.  LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case.  LG Display also objects to this

request as lacking reasonable particularity and to the extent this request seeks information not

reasonably likely to lead to the discovery of admissible evidence. LG Display objects to this

request as overly broad to the extent it seeks information beyond the scope of the claims and

defenses asserted by and between LG Display and CMO USA. LG Display objects to this

request to the extent it seeks documents protected by the attorney-client privilege, work product

doctrine and/or any other applicable privileges and to the extent it seeks the disclosure of

documents that are subject to a confidentiality agreement with a third party or that are

proprietary or confidential information of a third party that is in the possession, custody, or

control of LG Display. Moreover, LG Display objects to this request as redundant and

duplicative to the extent it seeks information sought by other document requests served on LG

Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 63:**
All Documents concerning your former or current patent licensing policies, practices or
strategies.

**RESPONSE TO DOCUMENT REQUEST NO. 63:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request as overly broad with

respect to "All Documents." LG Display objects to this request as overly broad to the extent it is

unlimited in temporal scope or otherwise not limited to a time frame that is relevant to this

litigation. LG Display objects to this request to the extent it seeks documents protected by the

attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

46

exist.

## DOCUMENT REQUEST NO. 64:

All Documents concerning the identity and significance of all factors that you have considered when negotiating license agreements or valuing technology for licensing purposes from December 1, 2000 to the present.

## RESPONSE TO DOCUMENT REQUEST NO. 64:

In addition to the General Objections, LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display objects to this request as overly broad with respect to "All Documents." LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents exist.

## DOCUMENT REQUEST NO. 65:

All Documents concerning any lost profits sought by LG Display in this case.

## RESPONSE TO DOCUMENT REQUEST NO. 65:

In addition to the General Objections, LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents exist.

**DOCUMENT REQUEST NO. 66:**

All Documents concerning any reasonable royalties sought by LG Display in this case, including with respect to each of the factors referenced in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff 'd*, 446 F.2d 295 (2d Cir. 1971), and royalty damages claimed for each LGD Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 66:**

In addition to the General Objections, LG Display objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges. LG Display objects to this request to the extent the documents

sought are within the possession, custody, or control of CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 67:**

All Documents concerning, or providing basis or support for, any of LG Display's contentions, positions, or assertions made or to be made concerning LG Display's damage theories in this litigation, including, without limitation, contentions, positions, or assertions made or to be made concerning the theories of lost profits, reasonable royalty, established royalty, lost sales and/or any other basis for alleged compensation under 35 U.S.C. § 284, including, without limitation:

a.    all Documents concerning the rate at which LG Display pays interest on incurred debts;

b.    all Documents concerning the compensation received or expected to be received by LG Display from its licensing or other exploitation of any of the claims of any LGD Patents;

c.    all Documents concerning how LG Display arrived at the royalty rate or the rate of compensation earned by LG Display for the licensing or other exploitation of any of the claims of any LGD Patents;

d.    any royalties received by LG Display pursuant to any licenses, sublicenses or covenants not to sue of any LGD Patents;

e.    any royalty rates paid by companies in the United States for the use of patents comparable to any LGD Patents;

f.    the effect of the LGD Patents in generating sales of LGD Products, LCD Display Products, LCD Modules, or LCD Panels, other products or technology, and/or licensing revenue in the United States;

g.    all Documents concerning whether there is a demand for products embodying the purported invention disclosed in any LGD Patent;

h.    all Documents concerning whether there are a lack of acceptable non-infringing alternatives to products embodying the purported inventions disclosed in any LGD Patent;

i.    all Documents concerning LG Display's marketing and manufacturing capability to exploit the purported demand for the purported inventions disclosed in any LGD Patent; and

j.    all Documents concerning the amount of profit that LG Display would have allegedly made.

## RESPONSE TO DOCUMENT REQUEST NO. 67:

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display objects to this request to the extent it seeks information that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the extent this request seeks information not reasonably likely to lead to the discovery of admissible evidence. LG Display specifically objects to this request as overly broad with respect to "All Documents." LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges. LG Display objects to this request to the extent the documents sought are within the possession, custody, and control of CMO and/or CMO USA. Moreover, LG Display objects to this request as redundant and duplicative to the extent it seeks information sought by other document requests served on LG Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request.

## DOCUMENT REQUEST NO. 68:

All Documents concerning the monetary value of any LGD Patent (whether individually, together, or as part of a larger portfolio), including, but not limited to, any licenses, accounting records, settlement agreements, appraisals, reports, or opinions.

**RESPONSE TO DOCUMENT REQUEST NO. 68:**

In addition to the General Objections, LG Display objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges and to the extent it seeks the disclosure of documents that are subject

to a confidentiality agreement with a third party or that are proprietary or confidential

information of a third party that is in the possession, custody, or control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 69:**
All Documents reflecting all valuations and the methodology or basis that you have used
since December 1, 2000, to negotiate or calculate the rate or amount of royalty regarding any
patents concerning technology used in or for LGD Products, LCD Display Products, LCD
Modules, or LCD Panels, or manufacturing as to any such products.

**RESPONSE TO DOCUMENT REQUEST NO. 69:**

In addition to the General Objections, LG Display objects to this request LG Display

objects to this request to the extent it seeks documents protected by the attorney-client privilege,

work product doctrine and/or any other applicable privileges and to the extent it seeks the

disclosure of documents that are subject to a confidentiality agreement with a third party or that

are proprietary or confidential information of a third party that is in the possession, custody, or

control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 70:**
All license agreements and related agreements concerning LGD Products, LCD Display
Products, LCD Modules, or LCD Panels, and/or the manufacture or assembly of any such
products, including all addendums, amendments, and exhibits to such license agreements.

**RESPONSE TO DOCUMENT REQUEST NO. 70:**

In addition to the General Objections, LG Display objects to this request as redundant

and duplicative to the extent it seeks information sought by other document requests served on

LG Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 71:**
All Documents concerning the types of technology involved in any license agreement to
which LG Display is a party, and Documents reflecting the extent to which any existing licenses
involve technology that is relevant or comparable to the subject matter of the LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 71:**

In addition to the General Objections, LG Display objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges and to the extent it seeks the disclosure of documents that are subject

to a confidentiality agreement with a third party or that are proprietary or confidential

information of a third party that is in the possession, custody, or control of LG Display.

Moreover, LG Display objects to this request as redundant and duplicative to the extent it seeks

information sought by other document requests served on LG Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 72:**
All Documents and Things concerning the settlement of any lawsuit or claim concerning
any LGD Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 72:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence. LG Display objects to this request to the extent it seeks documents protected by the

attorney-client privilege, work product doctrine and/or any other applicable privileges and to the

extent it seeks the disclosure of documents that are subject to a confidentiality agreement with a

third party or that are proprietary or confidential information of a third party that is in the

possession, custody, or control of LG Display.

## DOCUMENT REQUEST NO. 73:

All Documents, in native format if available, that identify each LCD Module, LCD Panel,
or LCD Display Product that incorporates, has been used with, or has been incorporated into any
LGD Product, including Documents that identify which Brands, models, and Part Numbers
incorporate, have been used with, or have been incorporated into each LGD Product since
December 1, 2000 and in what quantities.

## RESPONSE TO DOCUMENT REQUEST NO. 73:

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request to the extent it seeks

the disclosure of documents that are subject to a confidentiality agreement with a third party or

that are proprietary or confidential information of a third party that is in the possession, custody,

or control of LG Display. To the extent this request seeks the production of electronically stored

information, LG Display objects to producing electronically stored information that is not

reasonably accessible and would be unduly burdensome or expensive to produce. To the extent

LG Display produces any electronically stored information, such information will be produced in

the manner agreed to as set forth in LG Display's General Objections.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

## DOCUMENT REQUEST NO. 74:

All reports, forecasts, projections, plans, estimates, revenues, and data compilations, in native format if available, created, generated, received or maintained, including the computer databases or document management systems in which such Documents are located, concerning the revenues, profitability, costs, margins, manufacturing, marketing, advertising, importation, distribution, purchase and sales of LGD Products, LCD Display Products, LCD Modules, or LCD Panels made, sold, or offered for sale by or for you on a monthly basis since December 1, 2000.

## RESPONSE TO DOCUMENT REQUEST NO. 74:

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display also objects to this request as overly broad to

the extent it is not limited to a time frame that is relevant. To the extent this request seeks the

production of electronically stored information, LG Display objects to producing electronically

stored information that is not reasonably accessible and would be unduly burdensome or

expensive to produce. To the extent LG Display produces any electronically stored information,

such information will be produced in the manner agreed to as set forth in LG Display's General

Objections.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

## DOCUMENT REQUEST NO. 75:

All Documents, in native format if available, summarizing transactions since December 1, 2000 with any LGD Customer, distributor, reseller, and retailer that either does business in part or has an Affiliate that does business in part in the United States concerning LGD Products, LCD Display Products, LCD Modules, or LCD Panels, including, but not limited to, all offers to sell, sales, orders, shipments, and imports.

## RESPONSE TO DOCUMENT REQUEST NO. 75:

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display also objects to this request as overly broad to

the extent it is not limited to a time frame that is relevant. To the extent this request seeks the

production of electronically stored information, LG Display objects to producing electronically

stored information that is not reasonably accessible and would be unduly burdensome or

expensive to produce. To the extent LG Display produces any electronically stored information,

such information will be produced in the manner agreed to as set forth in LG Display's General

Objections.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 76:**
All Documents, in native format, summarizing or concerning sales, shipments, price per
unit, gross profit per unit, net profit per unit, fixed cost per unit, and variable cost per unit of
LGD Products, LCD Display Products, LCD Modules, or LCD Panels made and sold by or for
you or on your behalf since December 1, 2000, including identifying from whom each product
was shipped and to whom each product was shipped.

**RESPONSE TO DOCUMENT REQUEST NO. 76:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display also objects to this request as overly broad to

the extent it is not limited to a time frame that is relevant. To the extent this request seeks the

production of electronically stored information, LG Display objects to producing electronically

stored information that is not reasonably accessible and would be unduly burdensome or

expensive to produce. To the extent LG Display produces any electronically stored information,

such information will be produced in the manner agreed to as set forth in LG Display's General

Objections.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

## DOCUMENT REQUEST NO. 77:
Documents sufficient to determine the manufacturing cost and yield for all LGD Products, LCD Display Products, LCD Modules, or LCD Panels and fabrication plants, including, but not limited to, manufacturing cost reports and any other Documents reflecting product yield, changes in product yield, and reasons for changes in product yield for each fabrication plant.

## RESPONSE TO DOCUMENT REQUEST NO. 77:

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display also objects to this request as overly broad to

the extent it is unlimited in temporal scope or otherwise not limited to a time frame that is

relevant to this litigation.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

## DOCUMENT REQUEST NO. 78:
All Documents reflecting any marking or obligation to mark products with any of the LGD Patent numbers.

## RESPONSE TO DOCUMENT REQUEST NO. 78:

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 79:**
All Communications concerning the LGD Patents or any Foreign Counterparts of the LGD Patents, including but not limited to, internal memoranda, e-mail, and correspondence between you and your officers, agents, consultants, subcontractors, and employees.

**RESPONSE TO DOCUMENT REQUEST NO. 79:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA.  LG Display also objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 80:**
All Documents concerning all Communications between LG Display and any third-party related to any LGD Patent or the subject matter of any LGD Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 80:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA.  LG Display also objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work-product doctrine, and/or any

other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 81:**
All Documents received by LG Display from CMO or any person, referencing any LGD Patent.

**RESPONSE TO DOCUMENT REQUEST NO. 81:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 82:**
All Documents sent by or on behalf of LG Display to CMO or any person affiliated with
CMO, referencing any LGD Patents.

**RESPONSE TO DOCUMENT REQUEST NO. 82:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 83:**
All Documents exchanged between LG Display and any of the following concerning
LGD Products, LCD Display Products, LCD Modules, or LCD Panels:

h.      Apple Computer, Inc., including its affiliates and subsidiaries;

i.      TPV Technologies Limited Ltd., including its affiliates and subsidiaries;

j.      Proview International, including its affiliates and subsidiaries;

k.      Hewlett-Packard, including its affiliates and subsidiaries;

l.      Westinghouse, including its affiliates and subsidiaries;

m.      Dell, including its affiliates and subsidiaries;

n.      Funai Electric Co., Ltd., including its affiliates and subsidiaries (such as Funai
Corporation);

o.    NEC, including its affiliates and subsidiaries;

p.    Samsung, including its affiliates and subsidiaries.

**RESPONSE TO DOCUMENT REQUEST NO. 83:**

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display objects to this request to the extent it seeks information that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the extent this request seeks information not reasonably likely to lead to the discovery of admissible evidence. LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display specifically objects to this request as overly broad to the extent it is not limited to relevant products or information concerning claims and defenses at issue in this case. LG Display objects to this request to the extent it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LG Display. To the extent this request seeks the production of electronically stored information, LG Display objects to producing electronically stored information that is not reasonably accessible and would be unduly burdensome or expensive to produce. To the extent LG Display produces any electronically stored information, such information will be produced in the manner agreed to as set forth in LG Display's General Objections. LG Display objects on the grounds that documents and information sought by this request are highly confidential, trade secret information. LG Display will only produce these documents and materials subject to a protective order containing special safeguards regarding the handling of and access to this information.

Subject to and without waiving the foregoing objections, LG Display will produce

58

relevant, non-privileged documents responsive to this request.

## DOCUMENT REQUEST NO. 84:

All Documents exchanged between LG Display and any of the following concerning the United States, including, for example, with respect to United States market trends or consumer preferences, LGD Products, LCD Display Products, LCD Modules, or LCD Panels that could be used, sold, offered for sale in the United States and/or LG Display employees, meetings, offices, or presentations in or regarding the United States:

a.  Apple Computer, Inc., including its affiliates and subsidiaries;

b.  TPV Technologies Limited Ltd., including its affiliates and subsidiaries;

c.  Proview International, including its affiliates and subsidiaries;

d.  Hewlett-Packard, including its affiliates and subsidiaries;

e.  Westinghouse, including its affiliates and subsidiaries;

f.  Dell, including its affiliates and subsidiaries;

g.  NEC, including its affiliates and subsidiaries;

h.  Funai Electric Co., Ltd., including its affiliates and subsidiaries (such as Funai Corporation);

i.  Samsung, including its affiliates and subsidiaries.

## RESPONSE TO DOCUMENT REQUEST NO. 84:

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence. LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA. LG Display specifically objects to this request as overly broad to the extent it is not

limited to relevant products or information concerning claims or defenses at issue in this case.

LG Display objects to this request to the extent it seeks the disclosure of documents that are

subject to a confidentiality agreement with a third party or that are proprietary or confidential

information of a third party that is in the possession, custody, or control of LG Display. To the

extent this request seeks the production of electronically stored information, LG Display objects

to producing electronically stored information that is not reasonably accessible and would be

unduly burdensome or expensive to produce. To the extent LG Display produces any

electronically stored information, such information will be produced in the manner agreed to as

set forth in LG Display's General Objections. LG Display objects on the grounds that

documents and information sought by this request are highly confidential, trade secret

information. LG Display will only produce these documents and materials subject to a

protective order containing special safeguards regarding the handling of and access to this

information.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 85:**
All Documents concerning any opinion of counsel regarding the LGD Patents, including, for example, all opinions, draft opinions, notes, analyses, and Communications regarding each opinion, and all Documents received and/or considered for the purposes of each opinion.

**RESPONSE TO DOCUMENT REQUEST NO. 85:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

## DOCUMENT REQUEST NO. 86:

All Documents concerning strategic alliances and joint ventures between LG Display and others regarding LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

## RESPONSE TO DOCUMENT REQUEST NO. 86:

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display objects to this request to the extent it seeks information that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the extent this request seeks information not reasonably likely to lead to the discovery of admissible evidence. LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. Further, LG Display objects to this request to the extent it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request.

## DOCUMENT REQUEST NO. 87:

All Documents that identify product or project names and codenames for LGD Products, LCD Display Products, LCD Modules, or LCD Panels, and that link or correlate such names or codenames between such LGD Products, LCD Display Products, LCD Modules, or LCD Panels, or are used and/or approved for LCD Display Product projects and/or codenames.

## RESPONSE TO DOCUMENT REQUEST NO. 87:

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display objects to this request to the extent it seeks information that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence. LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA. LG Display specifically objects to this request as overly broad to the extent it is not

limited to relevant products or information concerning claims and defenses at issue in this case.

To the extent this request seeks the production of electronically stored information, LG Display

objects to producing electronically stored information that is not reasonably accessible and

would be unduly burdensome or expensive to produce. To the extent LG Display produces any

electronically stored information, such information will be produced in the manner agreed to as

set forth in LG Display's General Objections. Further, LG Display objects to this request to the

extent it seeks the disclosure of documents that are subject to a confidentiality agreement with a

third party or that are proprietary or confidential information of a third party that is in the

possession, custody, or control of LG Display.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 88:**
Documents sufficient to show or explain the letter and/or numbering system by which LG
Display assigns model numbers and/or Part Numbers to its LGD Products, LCD Display
Products, LCD Modules, or LCD Panels, including Documents sufficient to show or explain
what each letter and/or number signifies.

**RESPONSE TO DOCUMENT REQUEST NO. 88:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display specifically objects to this request as overly

broad to the extent it is not limited to relevant products or information concerning claims or

defenses at issue in this case.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

## DOCUMENT REQUEST NO. 89:

All Documents concerning any expert expected to testify for you in this case, including, for example:

     a.     each expert's reports for this case and other cases within the past four years;

     b.     all Documents considered by any expert regarding this case; and

     c.     all publications of the expert concerning any issues or subject matter related to the issues or subject matter in this action.

## RESPONSE TO DOCUMENT REQUEST NO. 89:

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display further objects to this request to the extent this

request seeks draft expert reports and attorney communications with experts that are not relied

upon as a basis for expert opinions, which the parties have agreed will not be discoverable and

will not be used as evidence in this case. LG Display objects to this request on the ground that it

is premature.

Subject to and without waiving the foregoing objections, and subject to the existing

agreement to exempt certain information from discovery, LG Display will produce relevant, non-

privileged documents responsive to this request, consistent with applicable Federal Rules of

Civil Procedure, local rules, and any orders of the Court.

## DOCUMENT REQUEST NO. 90:

All Documents reviewed by or received by any person LG Display expects to call as a witness at any hearing or at trial in this action to the extent such documents relate to the subject matter of this action.

## RESPONSE TO DOCUMENT REQUEST NO. 90:

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display also objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges. LG Display objects to this request on the ground that it is premature.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, consistent with applicable Federal

Rules of Civil Procedure, local rules, and any orders of the Court.

**DOCUMENT REQUEST NO. 91:**
All Documents prepared by any person LG Display expects to call as a witness at any
hearing or at trial in this action to the extent such documents relate to the subject matter of this
action.

**RESPONSE TO DOCUMENT REQUEST NO. 91:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence. LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA. LG Display objects to this request as overly broad to the extent it is unlimited in temporal

scope or otherwise not limited to a time frame that is relevant to this litigation. LG Display

further objects to this request to the extent this request seeks draft expert reports and attorney

communications with experts that are not relied upon as a basis for expert opinions, which the

parties have agreed will not be discoverable and will not be used as evidence in this case. LG

Display objects to this request on the ground that it is premature.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist, consistent with applicable Federal Rules of Civil Procedure, local rules, and any orders of

the Court.

**DOCUMENT REQUEST NO. 92:**
All Documents and Things that LG Display may use or introduce at any hearing or trial
of this action.

**RESPONSE TO DOCUMENT REQUEST NO. 92:**

In addition to the General Objections, LG Display objects to this request as premature.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist, consistent with applicable Federal Rules of Civil Procedure, local rules, and any orders of

the Court.

**DOCUMENT REQUEST NO. 93:**
All Documents in the possession, custody or control of each of the individuals listed on
LG Display's and LGDA's Initial Disclosures that concern the LGD Patents or the subject matter
of this action.

**RESPONSE TO DOCUMENT REQUEST NO. 93:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case. LG Display also objects to this

request as overly broad to the extent it is unlimited in temporal scope or otherwise not limited to

a time frame that is relevant to this litigation. LG Display also objects to the extent this request

seeks information not reasonably likely to lead to the discovery of admissible evidence. LG

Display objects to this request to the extent it seeks documents protected by the attorney-client

privilege, work product doctrine and/or any other applicable privileges and to the extent it seeks

the disclosure of documents that are subject to a confidentiality agreement with a third party or

that are proprietary or confidential information of a third party that is in the possession, custody, or control of LG Display. To the extent this request seeks the production of electronically stored information, LG Display objects to producing electronically stored information that is not reasonably accessible and would be unduly burdensome or expensive to produce. To the extent LG Display produces any electronically stored information, such information will be produced in the manner agreed to as set forth in LG Display's General Objections.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 94:**
All Documents identified, described, or referenced in LG Display's and LGDA's Initial Disclosures.

**RESPONSE TO DOCUMENT REQUEST NO. 94:**

In addition to the General Objections, LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges and to the extent it seeks the disclosure of documents that are subject to a confidentiality agreement with a third party or that are proprietary or confidential information of a third party that is in the possession, custody, or control of LG Display. To the extent this request seeks the production of electronically stored information, LG Display objects to producing electronically stored information that is not reasonably accessible and would be unduly burdensome or expensive to produce. To the extent LG Display produces any electronically stored information, such information will be produced in the manner agreed to as set forth in LG Display's General Objections. LG Display objects on the grounds that documents and information sought by this request are highly confidential, trade secret information. LG Display will only produce these documents and materials subject to a protective order containing special safeguards regarding the handling of and access to this

information.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 95:**
All organizational charts and other Documents that reflect LG Display's entire
organizational structure, including the structure of your Intellectual Property department or
division, including lines of reporting and all positions, offices, divisions, units, departments,
teams, and employees within LG Display, and their corresponding titles, functions, and
responsibilities.

**RESPONSE TO DOCUMENT REQUEST NO. 95:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request as overly broad to the

extent it is unlimited in temporal scope or otherwise not limited to a time frame that is relevant to

this litigation. LG Display objects to this request to the extent it seeks documents protected by

the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 96:**
All Documents that identify employees, officers, agents, subsidiaries, or Representatives
acting on behalf of LG Display and/or LGDA in the United States.

**RESPONSE TO DOCUMENT REQUEST NO. 96:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA. LG Display objects to this request as overly broad in

seeking "All Documents" and to the extent it is unlimited in temporal scope or otherwise not

limited to a time frame that is relevant to this litigation. LG Display objects to this request to the

extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 97:**
All Documents reflecting any Communications between LG Display and any other Person regarding CMO, CMO USA, or the following cases: *AU Optronics Corporation vs. LG.Philips LCD Co., Ltd. and LG.Philips LCD America, Inc.*, Civil Action No. 07-C-0137-S (United States District Court for the Western District of Wisconsin); *AU Optronics Corporation vs. LG.Philips LCD Co., Ltd. and LG.Philips LCD America, Inc. et al.*, Civil Action No. 07-357-JJF (United States District Court for the District of Delaware); *LG.Philips LCD Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.*, Civil Action No. 06-726-JJF (United States District Court for the District of Delaware); *Chi Mei Optoelectronics Corporation v. LG.Philips LCD Co., Ltd. and LG.Philips LCD America, Inc.*, Civil Action No. 07-176-TJW (United States District Court for the Eastern District of Texas); *LG.Philips LCD Co Ltd v. Chunghwa Picture Tubes Ltd*, Civil Action No. 05-07004-CBM (United States District Court for the Central District of California); *LG.Philips LCD Co., Ltd. v. Chunghwa Picture Tubes Ltd., et al.*, Civil Action No. 02-6775-CBM (United States District Court for the Central District of California); and *LG.Philips LCD Co., Ltd. v. Tatung Co., et al.*, Civil Action No. 05-292-JJF (United States District Court for the District of Delaware).

**RESPONSE TO DOCUMENT REQUEST NO. 97:**

In addition to the General Objections, LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges.  LG Display also objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA.  Further, LG Display objects to this request as not reasonably calculated to lead to discovery of admissible evidence, and not relevant to any claims or defenses at issue in this case.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents exist.

**DOCUMENT REQUEST NO. 98:**

All Documents concerning pleadings, discovery requests, responses to discovery requests, expert reports, claim construction briefing, claim charts, deposition transcripts, court transcripts, trial transcripts, and court orders relative to any action or lawsuit in which LG Display has alleged that any Person has infringed any LGD Patent, including, but not limited to the following cases: *AU Optronics Corporation vs. LG.Philips LCD Co., Ltd. and LG.Philips LCD America, Inc.*, Civil Action No. 07-C-0137-S (United States District Court for the Western District of Wisconsin); *AU Optronics Corporation vs. LG.Philips LCD Co., Ltd. and LG.Philips LCD America, Inc. et al.*, Civil Action No. 07-357-JJF (United States District Court for the District of Delaware); *LG.Philips LCD Co Ltd v. Chunghwa Picture Tubes Ltd*, Civil Action No. 05-07004-CBM (United States District Court for the Central District of California); *LG.Philips LCD Co., Ltd. v. Chunghwa Picture Tubes Ltd., et al.,* Civil Action No. 02-6775-CBM (United States District Court for the Central District of California); and *LG.Philips LCD Co., Ltd. v. Tatung Co.*, et al., Civil Action No. 05-292-JJF (United States District Court for the District of Delaware).

**RESPONSE TO DOCUMENT REQUEST NO. 98:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome.  LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case.  LG Display also objects to the

extent this request seeks information not reasonably likely to lead to the discovery of admissible

evidence.  LG Display objects to this request as overly broad to the extent it seeks information

beyond the scope of the claims and defenses asserted by and between LG Display and CMO

USA.  LG Display objects to this request to the extent it seeks the disclosure of documents that

are subject to a confidentiality agreement with a third party or that are proprietary or confidential

information of a third party that is in the possession, custody, or control of LG Display.  LG

Display objects to this request as unduly burdensome to the extent it seeks documents in the

public domain.

**DOCUMENT REQUEST NO. 99:**

All Documents concerning LG Display's participation in, sponsorship of, and/or Communications with any group, organization, or other body concerning establishing, publishing, or developing industry standards potentially relevant to LGD Products, LCD Display Products, LCD Modules, or LCD Panels.

**RESPONSE TO DOCUMENT REQUEST NO. 99:**

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display objects to this request to the extent it seeks information that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the extent this request seeks information not reasonably likely to lead to the discovery of admissible evidence. LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display specifically objects to this request as overly broad to the extent it is not limited to relevant products or information concerning claims or defenses at issue in this case. To the extent this request seeks the production of electronically stored information, LG Display objects to producing electronically stored information that is not reasonably accessible and would be unduly burdensome or expensive to produce. To the extent LG Display produces any electronically stored information, such information will be produced in the manner agreed to as set forth in LG Display's General Objections.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request, to the extent such documents exist.

**DOCUMENT REQUEST NO. 100:**
All policies, procedures, manuals, guidelines, and other Documents concerning the retention, destruction, storage, archiving, and management of Documents, records, and/or electronically stored information that apply to LG Display, LGDA or their employees.

**RESPONSE TO DOCUMENT REQUEST NO. 100:**

In addition to the General Objections, LG Display objects to this request as overly broad to the extent it is unlimited in temporal scope or otherwise not limited to a time frame that is relevant to this litigation.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 101:**
   All Documents concerning efforts to identify information (including electronically stored information) relevant to claims and defenses or discovery in this case, including Documents identifying all sources of relevant information, all custodians of relevant information.

**RESPONSE TO DOCUMENT REQUEST NO. 101:**

   In addition to the General Objections, LG Display objects to this request as overly broad

with respect to "All Documents." LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges.

   Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request, to the extent such documents

exist.

**DOCUMENT REQUEST NO. 102:**
   All reports to your shareholders, including all annual reports, in English, since December 1, 2000.

**RESPONSE TO DOCUMENT REQUEST NO. 102:**

   In addition to the General Objections, LG Display objects to this request as unduly

burdensome to the extent it seeks documents in the public domain.

   Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 103:**
   All Documents concerning LG Display stock or shares, including, but not limited to, stock offerings (such as Offering Circulars), shareholders agreements or any agreements relating to stock purchases, share purchases or asset sales or transfers to which LG Display is a party, assignor, assignee, or beneficiary.

**RESPONSE TO DOCUMENT REQUEST NO. 103:**

In addition to the General Objections, LG Display objects to this request to the extent it

seeks documents protected by the attorney-client privilege, work product doctrine and/or any

other applicable privileges and to the extent it seeks the disclosure of documents that are subject

to a confidentiality agreement with a third party or that are proprietary or confidential

information of a third party that is in the possession, custody, or control of LG Display. LG

Display objects to this request as unduly burdensome to the extent it seeks documents in the

public domain.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 104:**

All annual reports, income statements, and financial statements concerning LG Display
since December 1, 2000.

**RESPONSE TO DOCUMENT REQUEST NO. 104:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome. LG Display objects to this request to the extent it seeks information

that is not relevant to the claims or defenses asserted in this case and/or claims and defenses

between LG Display and CMO USA. LG Display also objects to the extent this request seeks

information not reasonably likely to lead to the discovery of admissible evidence. LG Display

objects to this request as unduly burdensome to the extent it seeks documents in the public

domain.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 105:**

All Documents and Things produced to, provided to, examined by or given to AU
Optronics Corporation or AU Optronics Corporation of America in connection with this action.

**RESPONSE TO DOCUMENT REQUEST NO. 105:**

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display objects to this request to the extent it seeks information that is not relevant to the claims or defenses asserted in this case by or between LG Display and CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request.

**DOCUMENT REQUEST NO. 106:**
All Documents concerning CMO.

**RESPONSE TO DOCUMENT REQUEST NO. 106:**

In addition to the General Objections, LG Display objects to this request as overly broad and unduly burdensome. LG Display further objects to this request to the extent it fails to set forth a category of documents with the reasonable particularity required under Fed. R. Civ. P. 34. LG Display objects to this request to the extent it seeks information that is not relevant to the claims or defenses asserted in this case. LG Display also objects to the extent this request seeks information not reasonably likely to lead to the discovery of admissible evidence. LG Display objects to this request as overly broad to the extent it seeks information beyond the scope of the claims and defenses asserted by and between LG Display and CMO USA. LG Display objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine and/or any other applicable privileges. Moreover, LG Display objects to this request as redundant and duplicative to the extent it seeks information sought by other document requests served on LG Display by CMO USA.

**DOCUMENT REQUEST NO. 107:**
All Documents concerning CMO USA.

**RESPONSE TO DOCUMENT REQUEST NO. 107:**

In addition to the General Objections, LG Display objects to this request as overly broad

and unduly burdensome.  LG Display further objects to this request to the extent it fails to set

forth a category of documents with the reasonable particularity required under Fed. R. Civ. P. 34.

LG Display objects to this request to the extent it seeks information that is not relevant to the

claims or defenses asserted in this case.  LG Display also objects to the extent this request seeks

information not reasonably likely to lead to the discovery of admissible evidence.  LG Display

objects to this request to the extent it seeks documents protected by the attorney-client privilege,

work product doctrine and/or any other applicable privileges.  Moreover, LG Display objects to

this request as redundant and duplicative to the extent it seeks information sought by other

document requests served on LG Display by CMO USA.

**DOCUMENT REQUEST NO. 108:**
All English translations of any non-English documents that are responsive to any of the
document request posed by CMO USA.

**RESPONSE TO DOCUMENT REQUEST NO. 108:**

In addition to the General Objections, LG Display objects to this request as overly broad.

LG Display also objects to this request to the extent it seeks documents protected by the

attorney-client privilege, work product doctrine and/or any other applicable privileges.  LG

Display will meet and confer to discuss the potential production of translations of certain foreign

language documents, on a reciprocal basis.

**DOCUMENT REQUEST NO. 109:**
All Documents that you identified, consulted, referred to, or relied upon in responding to
any interrogatories posed by CMO USA.

**RESPONSE TO DOCUMENT REQUEST NO. 109:**

In addition to the General Objections, LG Display objects to this request as overly broad

to the extent it seeks information beyond the scope of the claims and defenses asserted by and

between LG Display and CMO USA.  LG Display objects to this request to the extent it seeks

documents protected by the attorney-client privilege, work product doctrine and/or any other

applicable privileges.  LG Display objects to this request as unduly burdensome to the extent it

seeks documents in the public domain.  LG Display further objects to this request to the extent

the documents sought are already in the possession of CMO and/or CMO USA.  Moreover, LG

Display objects to this request as redundant and duplicative to the extent it seeks information

sought by other document requests served on LG Display by CMO USA.

Subject to and without waiving the foregoing objections, LG Display will produce

relevant, non-privileged documents responsive to this request.


May 29, 2008                                        BAYARD, P.A.

                                                   /s/ Richard D. Kirk (rk0922)
                                                   Richard D. Kirk
                                                   Ashley B. Stitzer
                                                   222 Delaware Avenue, Suite 900
                                                   P.O. Box 25130
                                                   Wilmington, DE  19899-5130
                                                   rkirk@bayardfirm.com
                                                   (302) 655-5000

                                                   Counsel for Plaintiff
                                                   LG DISPLAY CO., LTD
                                                   LG DISPLAY AMERICA, INC.


OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn
Lora A. Brzezynski
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006
202-496-7500

EXHIBIT D

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

June 17, 2008

**VIA E-MAIL**

Lora A. Brzezynski, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
lbrzezynski@mckennalong.com

Re:    _LG Display Co, Ltd. v. Chi Mei Optoelectronic Corp._, CV No. 06-726
          (D. Del.)

Dear Lora:

I write to address some of the deficiencies in LG Display Co., Ltd.'s ("LGD") Responses to Chi Mei Optoelectronics USA, Inc.'s ("CMO USA") First Set of Requests for Production of Documents and Things. In particular, in response to CMO USA's Document Request Nos. 2, 26, 58, 72, and 98, LGD refused to produce _any_ responsive documents, and, beyond boilerplate objections, LGD failed to provide the bases for its refusals.

Document Request No. 2 (documents re CMO products obtained prior to the commencement of this action including documents re LGD's pre-suit investigation of CMO products and CMO's alleged infringement of LGD's Patents) seeks documents that are relevant, _inter alia_, to the key issue of the alleged infringement of CMO USA as well as LGD's Rule 11 obligations. Please explain with particularity the basis for LGD's refusal to produce any documents responsive to Request No. 3 or, alternatively, please confirm that LGD will be producing responsive documents.

Document Request No. 26 (documents generated or relied upon by LGD since Dec. 1, 2000 that reference information or data from DisplaySearch or any other market research publisher) seeks documents that are relevant, _inter alia_, to damages as well as objective indicia of non-obviousness. Please explain with particularity the basis for LGD's refusal to produce any documents responsive to Request No. 26 or, alternatively, please confirm that LGD will be producing responsive documents.

Document Request No. 58 (documents relating to design around studies of the LGD Patents and their foreign counterparts) seeks documents that are relevant, _inter alia_, to damages and infringement. Please explain with particularity the basis for LGD's refusal to

1884779

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Lora A. Brzezynski, Esq.
June 17, 2008
Page 2

produce documents responsive to Request No. 58 or, alternatively, please confirm that LGD will be producing responsive documents.

Document Request No. 72 (documents and things concerning the settlement of any lawsuit or claim concerning any LGD patent) seeks documents that are relevant, *inter alia*, to damages. Please explain with particularity the basis for LGD's refusal to produce documents responsive to Request No. 72 or, alternatively, please confirm that LGD will be producing responsive documents.

Document Request No. 98 seeks documents concerning "pleadings, discovery requests, responses to discovery requests, expert reports, claim construction briefing, claim charts, deposition transcripts, court transcripts, trial transcripts, and court orders relative to any action or lawsuit in which LG Display has alleged that any Person has infringed any LGD Patent . . . ." Documents responsive to this request are relevant not only to the fundamental issues of non-infringement, patent validity, and damages, but also to claim construction, the deadlines for which are fast approaching. Accordingly, to avoid any unnecessary back and forth on this request and to move along the meet and confer process, I will address some of LGD's boilerplate objections.

With Document Request No. 98, CMO is not seeking production of any documents protected by attorney-client privilege or the attorney work product doctrine. Further, to minimize any purported burden, CMO is amenable to agreeing that the parties need not provide a comprehensive privilege log of documents generated solely in connection with previous litigations that are responsive to document requests served in the various litigations pending among the parties. To the extent that LGD's objection to Document Request No. 98 is based on confidentiality obligations to third parties, we note that the draft protective orders proposed by LGD and CMO both provide the same confidentiality protections to third parties that are provided to LGD and CMO. To avoid unnecessary delay, CMO is already taking measures to obtain the approval from third parties to produce certain documents that are responsive to document requests propounded by LGD. We expect that LGD is likewise taking measures to timely secure permission of third parties to produce responsive documents, including documents responsive to Request No. 98. That said, please explain with particularity the basis for LGD's refusal to produce documents responsive to Request No. 98 or, alternatively, please confirm that LGD will be producing responsive documents.

Moreover, although we expect LGD to provide a timely and comprehensive production of documents in response to Document Request No. 98 once LGD has obtained third party consent, we request that LGD immediately produce the non-confidential trial transcripts for *LG.Philips LCD Co. Ltd. v. Tatung Company et al*, Civil Action No. 05-292-JJF (United States Court for the District of Delaware) and *LG Philips LCD Co. Ltd. v.*

**IRELL & MANELLA LLP**

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Lora A. Brzezynski, Esq.
June 17, 2008
Page 3

*Tatung Co. of America et al.*, Civil Action No. 02-6775-CBM (United States Court for the Central District of California).

I look forward to your prompt response.

Very truly yours,

Thomas C. Werner

1884779

EXHIBIT E

# McKenna Long
# & Aldridge LLP
Attorneys at Law

Albany

Atlanta

Brussels

Denver

Los Angeles

New York

Philadelphia

San Diego

San Francisco

Washington, D.C.

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

LORA A. BRZEZYNSKI
(202) 496-7239

EMAIL ADDRESS
lbrzezynski@mckennalong.com

July 7, 2008

**VIA E-MAIL**

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Re: *LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;*
C.A Nos. 06-726-JJF and 07-357-JJF

Dear Tom:

I am writing in response to your June 17, 2008 letter. Contrary to your assertion, LG Display has not refused to produce documents responsive to CMO USA's Request Nos. 2, 26, 58, 72, and 98. Indeed, among the thousands of pages of meaningful discovery that LG Display has already produced are documents responsive to some of those requests. These documents were produced subject to LG Display's objections identified in its responses to CMO USA's first set of requests for production.

In addition to reaffirming the objections in LG Display's responses to CMO USA's first set of requests for production, LG Display presents the following responses to the specific requests you identified in your letter.

As stated in LG Display's objections, Request No. 2 on its face is overly broad and beyond the scope of claims asserted between LG Display and CMO USA. In your letter, you indicate that with Request No. 2, CMO seeks documents that are relevant to the key issue of the alleged infringement of CMO USA as well as LG Display's Rule 11 obligations. Such documents will, therefore, be responsive to Request No. 3, to which LG Display indicated that "Subject to and without waiving the foregoing objections, LG Display will produce relevant, non-privileged documents responsive to this request."

With respect to Request No. 26, LG Display reaffirms its objections that the request is overly broad and unduly burdensome, including with respect to "All Documents"; seeks information that is not relevant to the claims or defenses asserted in this case; and is not limited to a time frame that is relevant. Subject to these objections, LG Display has, however, already

Thomas C. Werner, Esq.
July 7, 2008
Page 2

produced documents that are responsive to Request No. 26, and will continue to do so. Subject to its objections and to the extent any exist, for example, LG Display will produce relevant sales and marketing documents that reference market research information or data from a market research publisher. LG Display also will produce other relevant documents, if any, that reference market research information and are otherwise responsive to other document requests. LG Display objects, however, to producing every document within the company that may refer to any information from any market research company. Further, we are available to meet and confer regarding what market research reports should and should not be produced, given that the parties likely all subscribe to the same market research companies such as DisplaySearch. It would not make sense for the parties to waste time and energy producing the same reports to each other.

With respect to Request No. 58, LG Display reaffirms its objections, particularly its objection that such documents may already be in the possession of CMO and/or CMO USA or are more appropriately obtained from a third party. In any event, we are presently unaware of any responsive documents in LG Display's possession, but LG Display's investigation is continuing.

Request No. 72 is clearly overly broad and unduly burdensome. LG Display has already produced and will produce settlement agreements from lawsuits concerning the LG Display patents-in-suit after obtaining any necessary permission from the appropriate third-parties as those agreements are confidential. LG Display cannot respond further, however, unless CMO USA provides specific and reasonable limits on this request. Further, LG Display reaffirms its objection that this request seeks information that is protected by the attorney-client privilege, work product doctrine, and other applicable privileges.

As an initial matter, with respect to Request No. 98, LG Display agrees with CMO's suggestion that the parties should not be required to provide a privilege log of documents generated solely in connection with previous litigations. We would also like to extend that agreement to include any privileged documents created for the purposes of this litigation after litigation ensued. Let us know if CMO will agree.

Pleadings and court orders from the litigations cited in Request No. 98 are publicly available via Pacer. It is our understanding that the entire trial transcript for 05-292-JJF (D. Del.) is under seal. The non-confidential trial transcripts for 02-6775-CBM (C.D. Cal.) should be available from court reporters Leandra Amber (http://www.leandraamber.com/) and Pat Cuneo (grammacuneo@aol.com).

Thomas C. Werner, Esq.
July 7, 2008
Page 3


    We trust this letter responds to each of the issues raised in your June 17, 2008 letter.
Concerning the document requests noted in this letter for which LG Display requires additional
information from CMO, we will await further detail from you.

                    Very truly yours,

                    Lora A. Brzezynski

EXHIBIT F

DOCKETED ON CM

DEC - 5 2006

BY _____ 053

Priority ✓
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only___

SCANNED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No. CV 02-6775 CBM (JTLx)          Date: December 4, 2006

Title:  LG.Philips LCD Co., Ltd. v. Tatung Co. of America, et al.

═══════════════════════════════════════════════

DOCKET ENTRY
ORDER GRANTING DEFENDANTS' MOTION TO SEAL PORTIONS OF THE TRIAL
TRANSCRIPT AND TRIAL EXHIBITS; and GRANTING DEFENDANTS' *EX PARTE*
APPLICATION TO FILE UNDER SEAL EXHIBITS A AND B OF MOTION TO SEAL
PORTIONS OF THE TRIAL TRANSCRIPT AND TRIAL EXHIBITS

═══════════════════════════════════════════════

PRESENT:

Hon. CONSUELO B. MARSHALL, JUDGE

JOSEPH LEVARIO                 none present
Deputy Clerk                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:

N/A                                        N/A

**PROCEEDINGS:**

On November 16, 2006, Defendants Chunghwa Picture Tubes, Ltd. and Tatung Company
and Tatung Co. of America filed a Motion to Seal Portions of the Trial Transcript and Trial
Exhibits. Defendants request an order from the court sealing portions of the trial transcript and
trial exhibits and extending the applicability of the Confidentiality Stipulation and Protective
Order (the "Confidentiality Order") to the disclosure and use of Confidential or Confidential
Attorneys Only material in post-trial and in subsequent proceedings. In addition, on the same
day, Defendants filed an *ex parte* Application to file under seal two exhibits filed in support of
its Motion. No opposition has been filed.

Defendant CPT argues that it has been compelled to reveal information about how it
makes its products in order to defend itself against LPL's infringement claims. According to
CPT, its detailed array manufacturing procedures, mask files, and process information was both
discussed and described in several trial exhibits, as well as in the testimony of several trial
witnesses. Defendant has identified those portions of the trial transcript which contain
information about how CPT builds its LCD modules, as well as information about CPT's
relationships with its customers, including the terms of licensing agreements between CPT and
its customers.

The Ninth Circuit has affirmed that the right of access to judicial records is not absolute.
Although the presumption of public access is strong, a party seeking to seal a judicial record may
overcome this presumption by meeting the "compelling reasons" standard. *See* Foltz v. State



Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003). "In general, 'compelling reasons ' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to . . . release trade secrets." Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978); *see also* Nixon, 435 U.S. at 598 ("courts have refused to permit their files to serve as . . . . sources of business information that might harm a litigant's competitive standing.").

In California, "trade secrets" are defined as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code 3426.1(d)(2005). CPT argues that the information it has identified in Exhibits A and B to the Motion are trade secrets under California law because the information derives some value from not being generally known to the public and because of the company's efforts to maintain the secrecy of the information. Regarding the mask files, CPT maintains the secrecy of its mask files in its dealing with other companies, and even within CPT the files are keep on computers connected to an isolated server, separate from the company's main server; moreover, the only design department employees who have access to the files are those who use and revise mask files. Regarding the design specifications, CPT protects its design specifications from disclosure by keeping the specs on a password-protected computer system; moreover, only personnel involved with a particular product have access to the documents related to that product. CPT argues that witness testimony regarding its manufacturing and design processes are valuable for its competitors to the extent that such testimony reveals nonpublic information about particular steps taken and specific materials used to build CPT's LCD products. Regarding its process flows, CPT protects such information from disclosure by not divulging such information to other companies, and by restricting access to such information within the company. Given the competitive nature of the information and CPT's reasonable efforts to maintain the secrecy of the information, the Court finds that this information is "trade secrets," as per California law. *See* Cal. Civ. Code 3426.1(d)(2005).

Regarding its customer data, sales data, and license agreements, CPT argues that such information should be placed under seal in order to protect CPT from its competitors' efforts to interfere with its customer relationships. CPT cites *Morlife v. Perry*, a California Court of Appeals case, for the proposition that customer data is a trade secret since "disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who might only be interested [in such a product]." 56 Cal. App. 4th 1514, 1522 (Cal. App. 1997). CPT has filed supporting declarations which attest that CPT does not disclose its pricing, sales data, or customer data to the public nor to any other third party. CPT also attests that its license agreements are stored under lock, and only one CPT employee has the key for that cabinet; these agreements are also protected by confidentiality agreements between CPT and its customers. The Court finds that such information is also properly qualified as trade secrets according to California law.

During these proceedings, CPT has taken steps to protect the confidentiality of its trade

secrets by moving for closure of the courtroom, filing standing objections to trial exhibits, and attempting to redact information from trial exhibits which it thought would compromise its trade secrets. In prior litigation between the parties, CPT also applied for and obtained an order sealing portions of the transcript and limiting access to the courtroom during the presentation of testimony which would compromise its trade secrets. The Court finds that these efforts were reasonable, and that any disclosure of trade secrets during trial does not abrogate Defendant's confidentiality. *See* Gates Rubber Co. v. Bando Chemical Indus., Ltd., 9 F.3d 823, 848-849 (10th Cir. 1993) (finding that information retained its secret status despite being disclosed at hearing, where plaintiff evidenced continuing intent to maintain its secrecy by acting to seal record).

Having determined that the mask files, design specifications, customer data, sales data, and license agreements are trade secrets, and therefore present a compelling reason for being shielded from public disclosure, as per *Kamakana*, the Court turns to a consideration of the competing public and private interests at stake.

The only public use to which this information could be put is commercial. According to Defendants, "[a] competitor could use CPT's mask files, design specifications and/or process flows to modify its materials, processes, or designs to compete with CPT. Once another company obtains possession of [ ] CPT's design and process information, it would not need to perform design work at all, but could immediately begin producing LCD modules." Defs.' Mot. 11. The Court finds that the disclosure of this information would allow one of CPT's competitors, or even a third-party, to duplicate CPT's products without investing its own time and resources in developing these products for itself. Similarly, the disclosure of CPT's sales data would allow a competitor to seek to undercut CPT's prices both with its existing customers, and with the public at large. As such, this information should be placed under seal, so as to protect Defendants' interests in its trade secrets.

This Court has previously accepted the parties' private interest in confidentiality in its approval of the parties' Confidentiality Stipulation and Protective Order ("Confidentiality Order" ). The Confidentiality Order, entered on July 15, 2003, provided that the parties would designate as "Confidential or Confidential Attorneys Only" any documents or materials purported to contain, reflect or disclose any trade secret or other confidential information. The Order further prescribes procedures for retrieving and returning inadvertently produced confidential materials. The Order applied, however, exclusively to pretrial proceedings, filings, and information exchanges. Defendant now asks this Court to enter an order extending the applicability of the Confidentiality Order to the disclosure and use of Confidential or Confidential Attorneys Only material in post-trial and in subsequent proceedings. The Court finds that, based on the foregoing, such an extension of the protective order is appropriate, and hereby GRANTS the request to extend the applicability of the Confidentiality Order.

Accordingly, the Court **GRANTS** Defendants' Motion to Seal Portions of the Trial Transcript and Trial Exhibits. CPT has identified the portions of the transcript to which it seeks to have sealed in Exhibits A and B to the Motion. CPT has identified the affected trial exhibits in footnotes 9 and 10 of the Motion; these include Trial Exhibits 421, 422, 448, 462, 529, 1124, 1144, 1159, 1182, 1413, 1435, 1520, 1568, 1668, 1673, 1681, 1687, 1688, 1690, 1692, 1693, 1702-1704, 1706-1709, 1742-1749, 1754-1757, 1886, 2031, 2035, 2039, 2232, 2233, 2234, 2468, 2499, 2626, 2711, 2718, and 2724. Moreover, the Court **GRANTS** Defendants' request to extend the applicability of the parties' Confidentiality Order.

Defendants have also filed an *ex parte* Application to file under seal two exhibits (Exhibits A and B) filed in support of its Motion. Although the Application indicates that Plaintiff LG.Philips opposes the *ex parte* Application, no opposition has been received by this Court. Local Rule 79-5.1 provides that: "[N]o case or document shall be filed under seal without prior approval by the Court" and provides the procedure for seeking court approval, with which CPT has complied. The Court finds that public disclosure of the information contained in the two supporting exhibits would frustrate the purpose of the Court's Order sealing portions of the transcript and trial exhibits.

Accordingly, the Court **GRANTS** Defendants' *Ex Parte* Application to File Under Seal Exhibits A and B of Motion to Seal Portions of the Trial Transcript and Trial Exhibits.

**IT IS SO ORDERED.**

Initials of Deputy Clerk_____

cc:    Judge Marshall

EXHIBIT G



1  Teresa M. Corbin (SBN 132360)
   corbint@howrey.com
2  Glenn W. Rhodes (SBN 177869)
   rhodesg@howrey.com
3  HOWREY LLP
   525 Market Street, Suite 3600
4  San Francisco, California  94105-2708
   Tel:   (415) 848-4900
5  Fax:  (415) 848-4999

6  Christopher A. Mathews (SBN 144021)
   mathewsc@howrey.com
7  Michael L. Resch (SBN 202909)
   reschm@howrey.com
8  HOWREY LLP
   550 South Hope Street, Suite 1100
9  Los Angeles, California  90071-2627
   Tel:   (213) 892-1800
10 Fax:  (213) 892-2300

11 Attorneys for Defendant, Counterclaimant and
   Third-Party Plaintiff CHUNGHWA PICTURE TUBES, LTD.

12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15 LG. PHILIPS LCD CO., LTD.,          Case No. CV-02-6775 CBM (JTLx)
                                        Action filed: August 29, 2002
16              Plaintiff,

        vs.

17 TATUNG CO. OF AMERICA,              [PROPOSED] ORDER GRANTING
   TATUNG COMPANY AND                  DEFENDANTS' MOTION TO SEAL
18 CHUNGHWA PICTURE TUBES, LTD.,       PORTIONS OF THE TRIAL
                                        TRANSCRIPT AND TRIAL EXHIBITS
19              Defendants.

20 CHUNGHWA PICTURE TUBES, LTD.,

21              Counterclaimant and
                Third-Party Plaintiff,
22
        vs.
23 LG. PHILIPS LCD CO., LTD.,          Trial: October 10, 2006
                                        Time: 10:00 a.m.
24              Counterdefendant,
                                        Pre-Trial Conf.: October 3, 2006
25 AND LG ELECTRONICS, INC.,            Time: 9:30 a.m.

26              Third-Party Defendant.  Courtroom: 2
                                        Judge:  Hon. Consuelo B. Marshall
27

28

HOWREY LLP

[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO SEAL PORTIONS OF THE RECORD

DM_US\8410366.v1

FILED
CLERK, U S  DISTRICT COURT

JAN 1 7 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

DOCKETED ON CM

JAN 1 8 2007

BY                053

153

1    Based upon Defendants' Motion to Seal Portions of the Trial Transcript and Trial

2  Exhibits and for good cause shown,

3    IT IS HEREBY ORDERED that:

4    The portions of the trial transcript and initial exhibits identified by Defendants as

5  confidential shall be sealed.  Further, the provisions of the "Amended Confidentiality

6  Stipulation and Protective Order" shall govern the handling of any document,

7  information or other things exchanged by the parties or used in the trial proceedings.

8

9                JAN 17 2007

10  Dated: _____ 2006        _____

11                                                      Hon. Consuelo B. Marshall
                                                         U.S. DISTRICT JUDGE

12

13  Respectfully submitted,

14  HOWREY LLP
    Teresa M. Corbin
15  Christopher A. Mathews

16

17

18  By: _____
            Teresa M. Corbin

19  Attorneys for Defendant, Counterclaimant
    and Third-Party Plaintiff
20  CHUNGHWA PICTURE TUBES, LTD.

21

22

23

24

25

26

27

28

1

1

2

3 <u>**PROOF OF SERVICE**</u>

4 STATE OF CALIFORNIA    )
                                                )  ss.:
5 COUNTY OF LOS ANGELES    )

6

7      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 550 S. Hope Street, Suite 1100, Los Angeles, CA 90071.

8

9      On November 16, 2006, I served the within:

10 **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO SEAL PORTIONS OF THE TRIAL TRANSCRIPT AND TRIAL EXHIBITS**

11

12 by placing a true copy thereof in a sealed envelope(s) addressed as stated below.

13      Andrea Sheridan Ordin, Esq.          Mark Krietzman, Esq.
         David L. Schrader, Esq.               Frank Merideth, Esq.
14      Morgan Lewis & Bockius LLP           Terry Clark, Esq.
         300 South Grand Avenue               Valerie Ho., Esq.
15      Suite 2200                            Greenberg Traurig, LLP
         Los Angeles, CA 90071-3132           2450 Colorado Avenue
16                                            Suite 400E
                                              Santa Monica, California 90404
17

18 ☒    (PERSONAL SERVICE) I caused each such envelope to be delivered by hand to each interested party.

19      I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is
20 true and correct.

21      Executed on November 16, 2006, at Los Angeles, California.

22

23 Christine Kehlenbeck
         (Type or print name)                        (Signature)

24

25

26

27

28

[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO SEAL PORTIONS OF THE RECORD

DM_US\8410366.v1

EXHIBIT H

**Lomas, John**

| | |
|---|---|
| **From:** | Christenson, Cass |
| **Sent:** | Tuesday, August 26, 2008 9:57 AM |
| **To:** | 'Werner, Tom'; 'Platt, Christian' |
| **Cc:** | Bono, Gaspare; Brzezynski, Lora; Lomas, John; Richard Kirk; '#CMO/LPL [Int]'; 'Giza, Alexander'; 'Hoffman, Adam'; 'Kagan, Jonathan'; 'ctyler@wsgr.com'; 'jholloway@wsgr.com'; 'brange@wsgr.com'; 'vincentyip@paulhastings.com'; 'terrygarnett@paulhastings.com'; 'peterwied@paulhastings.com'; 'katherinemurray@paulhastings.com'; 'jshaw@ycst.com'; 'kpascale@ycst.com'; 'jaychiu@paulhastings.com'; 'provner@potteranderson.com'; auoptronicscounsellgd@paulhastings.com |
| **Subject:** | LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.; C.A. Nos. 06-726-JJF and 07-357-JJF -- CPT Email Correspondence |

Tom and Christian:  For your information, attached below is recent e-mail correspondence with CPT in response to our August 11, 2008 letter regarding production of confidential CPT information from prior cases. While we anticipate that CPT will provide a more formal response to our August 11 letter, the email below states that CPT is objecting to producing its confidential information. Regards, Cass

**From:** Bono, Gaspare
**Sent:** Monday, August 25, 2008 9:34 PM
**To:** 'Corbin, Terry'
**Cc:** Goodwyn, Tyler; Brzezynski, Lora; Christenson, Cass
**Subject:** RE: CPT correspondence

Dear Terry: I was travelling all of last week and just saw your e-mail and listened to your voice mail. I suggest you respond with a formal letter to me and to counsel for AUO and CMO responding to my letter and setting forth CPT's position with any objections that it has. In that way, counsel for AUO and CMO can respond to CPT's position, and you and they can take whatever action each of you deem appropriate. Best Regards, Gap

**From:** Corbin, Terry [mailto:CorbinT@howrey.com]
**Sent:** Tuesday, August 19, 2008 11:57 PM
**To:** Bono, Gaspare
**Cc:** MacGregor, Judy
**Subject:** CPT correspondence
**Importance:** High

Hi Gap, Your letter dated August 11 was received in my office on Friday August 15 while my secretary was out. I have taken a preliminary look at your letter and those of AUO and CMO which were attached thereto. In the first instance I must object to your producing any documents from the CPT cases that were marked as confidential under the protective orders in those cases. As you will recall due to the sensitive nature of the information, we were successful in Delaware in closing the Courtroom for much of the trial testimony. In Los Angeles, the transcripts were sealed by the Court after the trial. Can you please send me all of the actual document requests that are directed to materials from the CPT litigations. There may be a subset of documents that we could agree could be produced but I need an opportunity to examine this issue more closely and to confer with my client. Could you please forward the subject document requests and acknowledge receipt of this email so I will know we have connected. I will be in multiple meetings out of the office tomorrow and will not get back into the office until approximately 3:00. We could chat then if you think it would be useful to do so. Best Regards, Terry

**Teresa M. Corbin**
Partner

**HOWREY** LLP
525 Market Street, Suite 3600
San Francisco, CA 94105-2708
Direct: +1 415.848.4944

Fax: +1 415.848-4999
CorbinT@howrey.com
www.howrey.com

Amsterdam Brussels Chicago East Palo Alto Houston Irvine London Los Angeles Madrid
Munich New York Northern Virginia Paris Salt Lake City **San Francisco** Taipei Washington DC

---------------------------------------------------------------------------------------------------------
This email and any attachments contain information from the law firm of Howrey LLP, which may be
confidential and/or privileged. The information is intended to be for the use of the individual or entity
named on this email. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the contents of this email is prohibited. If you receive this email in error,
please notify us by reply email immediately so that we can arrange for the retrieval of the original
documents at no cost to you. We take steps to remove metadata in attachments sent by email, and any
remaining metadata should be presumed inadvertent and should not be viewed or used without our express
permission. If you receive an attachment containing metadata, please notify the sender immediately and a
replacement will be provided. Howrey LLP consists of two separate limited liability partnerships, one
formed in the United States (Howrey US) and one formed in the United Kingdom (Howrey UK). Howrey UK is
registered in England and Wales under number OC311537 and regulated by the Solicitors Regulation Authority
(http://www.sra.org.uk/code-of-conduct.page). Howrey's London and Paris offices are operated as part of
Howrey UK. A list of the partners of Howrey UK is available for inspection at its registered office: 22
Tudor Street, London EC4Y 0AY. A consolidated list of all Howrey US and Howrey UK attorneys and
jurisdictions where they are authorized to practice and/or are registered can be obtained by contacting
emailrequest@howrey.com.
---------------------------------------------------------------------------------------------------------

EXHIBIT I

## Lomas, John

| | |
|---|---|
| **From:** | Aehle, Elaine on behalf of Bono, Gaspare |
| **Sent:** | Thursday, August 28, 2008 8:52 AM |
| **To:** | Lomas, John |
| **Subject:** | FW: LG.Philips v. Tatung, 2:02-cv-06775 (C.D. Cal.) - Notice of Ex Parte Application |
| **Attachments:** | Ex Parte Application for Access to Redacted Verdict Form.DOC |

**From:** Werner, Tom [mailto:TWerner@irell.com]
**Sent:** Thursday, July 31, 2008 8:16 PM
**To:** 'dschrader@morganlewis.com'; 'aroth@morganlewis.com'; 'krietzmanm@gtlaw.com'; 'meridethf@gtlaw.com'; 'clarkt@gtlaw.com'; ~Ho, Valerie; 'corbint@howrey.com'; 'rhodesg@howrey.com'; 'mathewsc@howrey.com'; Bono, Gaspare
**Subject:** LG.Philips v. Tatung, 2:02-cv-06775 (C.D. Cal.) - Notice of Ex Parte Application

Counsel:

Please find attached the *Ex Parte* Application For Order Granting Disclosure Of Redacted Docket No. 1517, "Verdict Form," in *LG.Philips LCD Co. v. Tatung Co. of America, et al*, 2:02-cv-06775-CBM (JTLx).

We represent Chi Mei Optoelectronics USA, Inc., which intends to file the attached motion, *ex parte*, on August 5, 2008, in the United States District Court for the Central District of California.  Please let us know immediately if you intend to object to this application.

Very truly yours,

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
TWerner@irell.com
(310) 203-7956 (direct)
(310) 282-5798 (direct fax)

ccmailg.irell.com made the following annotations
------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

------------------------------------------------------------------

1 │ IRELL & MANELLA LLP
  │ Thomas C. Werner (223792)
2 │ twerner@irell.com
  │ 1800 Avenue of the Stars, Suite 900
3 │ Los Angeles, California 90067-4276
  │ Telephone:  (310) 277-1010
4 │ Facsimile:   (310) 203-7199

5 │ Attorneys for Non-party Chi Mei
  │ Optoelectronics USA, Inc.

6

7

8 │              UNITED STATES DISTRICT COURT

9 │              CENTRAL DISTRICT OF CALIFORNIA

10

11 │ LG. PHILIPS LCD CO., LTD.,          )  Case No. CV-02 6775 CBM (JTLx)
                                        )
12 │            Plaintiff,              )
                                        )  NON-PARTY CHI MEI
13 │                                    )  OPTOELECTRONICS USA, INC.'S
                                        )  *EX PARTE* APPLICATION FOR
14 │       vs.                          )  ORDER GRANTING
                                        )  DISCLOSURE OF REDACTED
15 │ TATUNG CO. OF AMERICA, ET AL.,     )  DOCKET NO. 1517, "VERDICT
                                        )  FORM"
16 │            Defendants.             )
                                        )  [Filed Concurrently With Proposed
17 │                                    )  Order]
                                        )
18 │                                    )
                                        )
19 │ _____)  Hon. Consuelo B. Marshall

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

1906681

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        Pursuant to Local Rule 7-19, Non-party Chi Mei Optoelectronics USA, Inc.

3    ("CMO") hereby applies to this Court *ex parte* for an order granting CMO access to

4    a redacted copy of Docket No. 1517, "Verdict Form," in *LG. Philips LCD Co. v.*

5    *Tatung Co. of America, et al*, 2:02-cv-06775-CBM (JTLx).  As set forth in the

6    attached Declaration of Thomas C. Werner, based on information offered by the

7    clerk of this Court, Mr. Joseph Levario, CMO understands that Docket No. 1517 is a

8    public record, except to the extent that it reflects the signature of the jury foreperson.

9    As a matter of public record, CMO is entitled to view the public information

10    reflected in Docket No. 1517.  Accordingly, for good cause, CMO respectfully

11    requests that the Court issue an order authorizing the disclosure to CMO of a copy

12    of Docket No. 1517 from which all non-public information has been redacted.

13        Counsel for all parties were provided with notice of this Application via email

14    on July 31, 2008 pursuant to Local Rule 7-19.1.  As of the time of this filing, no

15    counsel has opposed this *ex parte* Application.

16

17                            Respectfully submitted,

18    DATED: August 5, 2008          IRELL & MANELLA, LLP

19

20

21                            By:_____

22                            Thomas C. Werner
23                            Ire11 & Manella LLP
                              1800 Avenue of the Stars
24                            Suite 900
25                            Los Angeles, CA 90067
                              (310) 277-1010
26

27                            Attorney for Non-party
                              Chi Mei Optoelectronics USA
28

---

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1906681                    - 1 -

NON-PARTY CMO'S EX PARTE APPLICATION FOR
ORDER GRANTING DISCLOSURE OF REDACTED
DOCKET NO. 1517

EXHIBIT J

**Christenson, Cass**

| | |
|---|---|
| **From:** | Werner, Tom [TWerner@irell.com] |
| **Sent:** | Thursday, July 17, 2008 8:28 AM |
| **To:** | Christenson, Cass |
| **Subject:** | Out of Office: LGD v. CMO, 06-726 (D. Del.) - 2008-07-08 Werner ltr Brzezynski re Protective Order & Document Production.pdf |

I am out of the office until Monday, Jul 21, 2008. If this is urgent, please call (310) 277-1010 and ask to speak to Shawana Isaac.

ccmailg.irell.com made the following annotations
------------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged, confidential and/or inside information.  Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.


------------------------------------------------------------------

1

EXHIBIT K

**Christenson, Cass**

---

| | |
|---|---|
| **From:** | Werner, Tom [TWerner@irell.com] |
| **Sent:** | Thursday, July 17, 2008 3:32 PM |
| **To:** | Christenson, Cass |
| **Cc:** | #CMO/LPL [Int]; Giza, Alexander; Hoffman, Adam; Kagan, Jonathan; ~Tyler, M. Craig; ~Holloway, Julie; ~Range, Brian; ~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; ~Chiu, Jay; provner@potteranderson.com; ~Platt, Christian; Bono, Gaspare; Brzezynski, Lora; Goodwyn, Tyler; ~Kirk, Richard; Lomas, John |
| **Subject:** | RE: LGD v. CMO, 06-726 (D. Del.) - 2008-07-08 Werner ltr Brzezynski re Protective Order & Document Production.pdf |

Cass,

As you have known since the 12th, I am on vacation in Hawai'i.

We understand your correspondence to indicate that LGD has failed to timely collect emails responsive to CMO's document requests. The parties stipulated to an extension of the deadline for document production. CMO has expended substantial resources to produce responsive documents - including emails - by that deadline. LGD's eleventh hour attempt to delay its email production is improper. Should LGD fail to produce emails by the deadline, CMO may seek appropriate relief from the Court.

CMO intends to produce electronically stored information in searchable form, pursuant to Rule 34. We expect LGD to do the same. Should LGD fail to produce electronically stored information in searchable form, CMO may seek appropriate relief from the Court.

Very truly yours,

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
TWerner@irell.com
(310) 203-7956 (direct)
(310) 968-2792 (mobile)
(310) 282-5798 (direct fax)

-----Original Message-----
From: Christenson, Cass [mailto:cchristenson@mckennalong.com]
Sent: Thursday, July 17, 2008 5:28 AM
To: Werner, Tom
Cc: #CMO/LPL [Int]; Giza, Alexander; Hoffman, Adam; Kagan, Jonathan; ~Tyler, M. Craig; ~Holloway, Julie; ~Range, Brian; ~Yip, Vincent; ~Garnett, Terry; ~Wied, Peter; ~Murray, Katherine; ~Shaw, John; ~Pascale, Karen; ~Chiu, Jay; provner@potteranderson.com; ~Platt, Christian; ~Bono, Gaspare; ~Brzezynski, Lora; ~Goodwyn, Tyler; ~Kirk, Richard; ~Lomas, John
Subject: RE: LGD v. CMO, 06-726 (D. Del.) - 2008-07-08 Werner ltr Brzezynski re Protective Order & Document Production.pdf

Tom:

This email follows up on my voice mail message from yesterday and my July 11, 2008 letter responding to your July 8, 2008 letter on email discovery.

We have open issues to discuss concerning the scope and format of email production, as raised in our above-referenced letters. We are discussing these issues with AUO as well to coordinate. I understand from your message that you are out of the office this week. AUO is amenable to a brief extension of time to produce email discovery. I assume that CMO likewise agrees that we should briefly postpone email productions in this case so that we can complete our discussions and hopefully reach an agreement as to scope and format of email discovery.

My July 11 letter proposed August 15 as a date to complete email production, which will
allow us to continue our discussions on email scope and format.  Please let me know
whether CMO agrees to the August
15 date.  I also look forward to your thoughts on how to efficiently complete email
discovery.

Thank you for your anticipated cooperation.

Regards,
Cass

-----Original Message-----
From: Christenson, Cass
Sent: Friday, July 11, 2008 5:20 PM
To: 'Werner, Tom'
Cc: '#CMO/LPL [Int]'; 'Giza, Alexander'; 'Hoffman, Adam'; 'Kagan, Jonathan';
'ctyler@wsgr.com'; 'jholloway@wsgr.com'; 'brange@wsgr.com'; 'vincentyip@paulhastings.com';
'terrygarnett@paulhastings.com'; 'peterwied@paulhastings.com';
'katherinemurray@paulhastings.com';
'jshaw@ycst.com'; 'kpascale@ycst.com'; 'jaychiu@paulhastings.com';
'provner@potteranderson.com'; 'Platt, Christian'; Bono, Gaspare; Brzezynski, Lora;
Goodwyn, Tyler; 'Richard Kirk'; Lomas, John
Subject: RE: LGD v. CMO, 06-726 (D. Del.) - 2008-07-08 Werner ltr Brzezynski re Protective
Order & Document Production.pdf

 Tom:  Please see my attached July 11, 2008 letter.  Regards, Cass

-----Original Message-----
From: Werner, Tom [mailto:TWerner@irell.com]
Sent: Tuesday, July 08, 2008 7:51 PM
To: Brzezynski, Lora
Cc: ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; Bono, Gaspare; Goodwyn, Tyler;
Christenson, Cass; Lomas, John
Subject: LGD v. CMO, 06-726 (D. Del.) - 2008-07-08 Werner ltr Brzezynski re Protective
Order & Document Production.pdf


The message is ready to be sent with the following file or link
attachments:

2008-07-08 Werner ltr Brzezynski re Protective Order & Document Production.pdf


Note: To protect against computer viruses, e-mail programs may prevent sending or
receiving certain types of file attachments.  Check your e-mail security settings to
determine how attachments are handled.

ccmailg.irell.com made the following annotations
------------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged,
confidential and/or inside information.  Any distribution or use of this communication by
anyone other than the intended recipient(s) is strictly prohibited and may be unlawful.
If you are not the intended recipient, please notify the sender by replying to this
message and then delete it from your system. Thank you.




------------------------------------------------------------------


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long &
Aldridge LLP, and are intended solely for the use of the named recipient or recipients.
This e-mail may contain privileged attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an intended recipient is strictly

2

prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.


ccmailg.irell.com made the following annotations
------------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged, confidential and/or inside information.  Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.


------------------------------------------------------------------

EXHIBIT L

**Lomas, John**

| | |
|---|---|
| **From:** | Werner, Tom [TWerner@irell.com] |
| **Sent:** | Wednesday, July 23, 2008 5:18 PM |
| **To:** | Brzezynski, Lora |
| **Cc:** | ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; Bono, Gaspare; Goodwyn, Tyler; Christenson, Cass; Lomas, John |
| **Subject:** | LGD v. CMO, 06-726 (D. Del.) - 2008-07-23 Werner ltr Brzezynski re LGD Document Production.pdf |
| **Attachments:** | 2008-07-23 Werner ltr Brzezynski re LGD Document Production.pdf |



2008-07-23 Werner
ltr Brzezyns...

The message is ready to be sent with the following file or link attachments:

2008-07-23 Werner ltr Brzezynski re LGD Document Production.pdf


Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

ccmailg.irell.com made the following annotations
------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.



------------------------------------------------------------------

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7956
FACSIMILE (310) 203-7199
twerner@irell.com

July 23, 2008

**VIA E-MAIL**

Lora A. Brzezynski, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
lbrzezynski@mckennalong.com

      Re:    *LG Display Co., Ltd. v. Chi Mei Optoelectronics Corp.*, CV No. 06-726
             (D. Del.)

Dear Lora:

      I write regarding serious deficiencies in LGD's July 15, 18, 21, and 22, 2008 document productions. Where the parties have not already reached an unfortunate impasse, we request an immediate response so that we may determine which other of these issues need to be brought to the Court for resolution.

      <u>LGD's Failure to Produce any Documents from Prior Litigations Involving LGD's Patents</u>. For well over a month now, CMO has repeatedly requested the production of documents responsive to CMO's Document Request No. 98, which seeks documents from LGD's other litigations alleging infringement of the patents-in-suit. Based on our review to date, we find no such documents in LGD's production. On that basis, and given that the deadline for document production has passed, CMO has no choice but to move to compel LGD to produce these highly relevant documents. If LGD has in fact produced responsive documents, please immediately inform us so that we can determine whether or not to proceed with our motion. We had always hoped to avoid motion practice on this issue, and have patiently waited for LGD's compliance, but the prejudice CMO has suffered due to LGD's failure to produce any responsive documents at all has become too great.

      <u>LGD's Refusal to Produce Emails</u>. A week before the document production deadline, LGD attempted to unilaterally modify the stipulated deadline for the production of documents to exclude emails. As CMO made clear, LGD's actions were improper, and LGD has violated its obligations under the stipulated order. The parties served requests for production that sought, *inter alia*, email documents. CMO collected responsive email

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Lora A. Brzezynski, Esq.
July 23, 2008
Page 2

documents, was prepared to produce them on the 18th, and stands ready to produce them now. In light of LGD's refusal, however, and to avoid still further prejudice to CMO, CMO withheld email documents from its July 18 production. Please confirm that LGD will immediately produce the email documents it claims to have collected for production. Once we receive that confirmation, CMO will produce email documents as well. Should LGD refuse, CMO will move to compel LGD to produce email documents.

LGD's Refusal to Produce Electronically Stored Information in Searchable Form in Contravention of Rule 34. Despite that the majority of LGD's production reflects documents that LGD appears to ordinarily maintain as electronically stored information in searchable form, LGD improperly removed the searchable text from its documents prior to production. As you confirmed LGD is aware in Cass Christenson's July 11 letter, LGD's conduct is inconsistent with Rule 34. LGD's claims that the parties agreed to the contrary is incorrect, as reflected in the correspondence to which you refer. Please immediately provide the searchable text associated with the electronically stored information that LGD produced. The particular means by which the parties provide searchable text is irrelevant; the parties may provide search functionality in any of the ways described in Cass Christenson's July 18 email. CMO provided searchable text for its production of electronically stored information by producing documents in native form. Please confirm that LGD will not use that searchable text until LGD produces the same in kind. To avoid further prejudice to CMO, please do not delay any longer providing searchable text for the electronically stored information that LGD produced.

LGD's Failure to Produce Documents in Reasonably Usable Form: Beyond GDS and similar files, LGD made its entire production in TIF form. As CMO previously made clear, other forms of production may be more appropriate or indeed necessary under certain circumstances. In particular, production in TIF form of Excel spreadsheets, executable files such as source code, and engineering drawings, for example, is problematic. The volume of electronically stored information that LGD produced in TIF form makes this problem acute.

LGD produced a substantial number of what appear to be Excel files in TIF form, which rendered them illegible because, e.g., the text is too small, the contents of the "cells" within such spreadsheets are hidden from view, or the document as a whole is rendered unusable because it is exploded into hundreds or even thousands of pages. *See, e.g.,* LGD00182382; LGD00193213; LGD00193215; LGD00193217; LGD00193219; LGD00193221; LGD00193223; LGD00193225; LGD00193227; LGD00193228; LGD00193246; LGD00193248; LGD00193250; LGD00193252; LGD00193254; LGD00193256; LGD00193258; LGD00193260; LGD00193262; LGD00193264; LGD00193266; LGD00193268; LGD00193270; LGD00193290; LGD00193291; LGD00193303; LGD00219629; LGD00220604; LGD00222387; LGD00224747; LGD00224765; LGD00224770; LGD00224776; LGD00224777; LGD00224786; LGD00224795; LGD00224818; LGD00224820; LGD00224821; LGD00224824;

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Lora A. Brzezynski, Esq.
July 23, 2008
Page 3

LGD00224825; LGD00224826; LGD00224827; LGD00224828; LGD00224829;
LGD00224830; LGD00224831; LGD00224832; LGD00224834; LGD00224839;
LGD00224843; LGD00224844; LGD00224846; LGD00224848; LGD00224849;
LGD00224850; LGD00224851; LGD00224852; LGD00224854; LGD00224855;
LGD00224879; LGD00224880; LGD00224881; LGD00224896; LGD00224897;
LGD00224898; LGD00224899; LGD00224918; LGD00225036; LGD00225037;
LGD00225038; LGD00225045; LGD00225047; LGD00225051; LGD00225052;
LGD00225178; LGD00225888; LGD00225889; LGD00225890; LGD00225891;
LGD00225892; LGD00225893; LGD00225980; LGD00225981; LGD00226007;
LGD00226008; LGD00226009; LGD00226010; LGD00226015; LGD00226016;
LGD00226017; LGD00226018; LGD00226019; LGD00226030; LGD00226032;
LGD00226033; LGD00229267; LGD00229316; LGD00229317; LGD00229323;
LGD00229326; LGD00229329; LGD00229333; LGD00229337; LGD00229341;
LGD00229345; LGD00229347; LGD00229349; LGD00229351; LGD00229353;
LGD00229354; LGD00229355; LGD00229357; LGD00229359; LGD00229361;
LGD00229363; LGD00229365; LGD00229541; LGD00229544; LGD00229547;
LGD00229549; LGD00229561; LGD00229563; LGD00229565; LGD00229567;
LGD00230786; LGD00230796; LGD00230806; LGD00230817; LGD01992840 (one 270
page document); (LGD02009520 (one 10,674 page document); LGD02020194 (one 7,758
page document); LGD02027952 (one 2,546 page document); LGD02030498 (one 499 page
document).

According to Rule 34, even where a producing party objects to a particular form of
production, that party must still produce electronically stored information either in
reasonably usable form or the form in which it is ordinarily maintained. LGD does not
maintain Excel files in TIF form. As noted above, LGD removed the searchable
functionality from these documents by producing them in TIF form. While that alone
renders them not reasonably usable, that is not the only functionality that LGD removed,
given that data stored in Excel files and similar documents is manipulable—all sorting,
scrolling, querying, filtering, compiling, and similar functionality has been disabled by
LGD's choice of production form. LGD therefore failed to produce Excel files in reasonably
usable form. In light of LGD's failure to produce these documents either in reasonably
usable form or in the form in which they are ordinarily maintained, LGD has failed to satisfy
its obligations under Rule 34. To remedy this deficiency, LGD must re-produce all Excel
and similar files (i.e., all spreadsheet and database files, e.g., Access databases, including all
delimited files that are best suited for viewing in spreadsheet or database applications, e.g.,
CSV files) in native form—the form in which they are ordinarily maintained, and the only
form in which they are reasonably usable.

The same issues and problems exist with respect to other categories of documents
produced by LGD in TIF form. LGD produced as TIF numerous engineering drawings,
which CMO is unable to use with the CAD software with which those files were designed to

1901325

I R E L L  &  M A N E L L A  LLP
A REGISTERED  LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Lora A. Brzezynski, Esq.
July 23, 2008
Page 4


be viewed. *See, e.g.*, LGD00182657; LGD00182658; LGD00182659; LGD00182660; LGD00182661; LGD00182662; LGD00182663; LGD00182664; LGD00182665; LGD00182666; LGD00182667; LGD00182668; LGD00182669; LGD00182670; LGD00182671; LGD00182672; LGD00182673; LGD00182674; LGD00182675; LGD00182676; LGD00182677; LGD00182678; LGD00182679; LGD00182680; LGD00229268; LGD00229269; LGD00229270; LGD00229271; LGD00229272; LGD00229273; LGD00229274; LGD00229275; LGD00229276; LGD00229277; LGD00229278; LGD00229279; LGD00229280; LGD01993110–LGD01993849 (740 drawings files). CMO is unable to manipulate these files as is possible only by using their native applications, which CMO cannot do because of the form in which LGD produced them. These files are therefore not reasonably usable, and since they were not produced in the form in which they are ordinarily maintained, LGD has again failed to satisfy the requirements of Rule 34. LGD must produce these documents natively.

LGD further produced thousands of source code documents—amounting to several hundred thousands pages—in TIF form. Such executable files, which have essentially been printed out to hundreds of thousands of pages, were thereby rendered unusable by LGD's production form decision because CMO is unable to search, compile, or otherwise manipulate them as can only be done with the native versions of those documents. *See* most if not all of the documents produced at LGD00289392–522344; LGD00569187–701043; LGD02034183–2055063. The result is hundreds of thousands of pages of indecipherable text. Again, LGD has failed to produce these documents either in reasonably usable form or in the in which they are ordinarily maintained, and must therefore produce them in native form.

Similarly, LGD produced tens of thousands of pages of what appear to be bills of materials ("BOMs") documents, which appear to contain information regarding the components of LGD's products. *See* LGD1285220–1991121, over 350 documents representing over 700,000 pages of LGD's production. However, rather than producing its BOMs in a comprehensible form, LGD produced TIFs of what amounts to printouts of the markup language source code. CMO is unable to parse that source code to make the documents intelligible. Instead, CMO would have to wade through each page of source code and individually isolate each piece of substantive information from among the non-substantive code, and reconstruct it into a comprehensible document. One BOM document alone (LGD1787087) is 6,169 pages, and there are hundreds of. These documents are therefore not reasonably usable. LGD does not ordinarily maintain these documents in TIF form, and has therefore failed to satisfy Rule 34 by producing them as TIFs. LGD must produce these documents natively.

To be clear, the onus is not on CMO to review LGD's production and identify problematic production form decisions on a document-by-document basis. Even were LGD to address all of the specific documents cited in this letter, the problems caused by LGD's

1901325

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Lora A. Brzezynski, Esq.
July 23, 2008
Page 5

production form decisions will remain, and LGD has an affirmative duty to remedy them
without a specific request from CMO. Should LGD refuse to comply with its discovery
obligations by producing all of its documents in reasonably usable form or in the in which
they are ordinarily maintained, CMO will have no choice to move to compel LGD to do so.
We sincerely hope to avoid that outcome.

LGD's Failure to Produce Documents According to Common Litigation Support
Standards. The technical specification of LGD's TIF production varies (e.g., some multi-
page TIFs and some single-page TIFs, some Group IV TIFs and some JPEG compression
TIFs). CMO has been able to work around these variances. However, CMO must object to
LGD's production at LGD231977–266737 of nearly 40,000 single-page TIF images that
appear to comprise multi-page documents, but for which LGD failed to provide any
unitization information. CMO therefore has no idea which individual pages represent a
given document. Based on our review, it is not even clear that LGD produced these
documents in any order whatsoever. Please re-produce LGD00231977–266737 in order,
and with document breaks.

Further, in some instances LGD produced 300 dpi TIF images—as is the litigation
support industry's standard practice—but in other instances, LGD produced TIF images at
only 200 dpi resolution. Documents produced at 200 dpi are difficult to read in electronic
form—even using advanced zooming features, which would make for cumbersome review
that is equivalent to having to read each page with a magnifying glass—and are completely
illegible when printed. Please immediately re-produce all TIF images in LGD's production
at 300 dpi (to the extent LGD is not required to instead produce those documents natively, as
discussed above). Alternatively, LGD can produce the underlying documents natively.

Improper Conditions on LGD's Document Productions. In its July 15, 18, 21, and
22, 2008 letters, LGD asserts, *inter alia*, that CMO is subject to an Order regarding a dispute
to which CMO was not a party. To be clear, the protections afforded CMO's and LGD's
document productions are spelled out in the Interim Protective Order and our
correspondence confirming our agreement to abide by its terms, notwithstanding LGD's
contentions to the contrary.

LGD's Failure to Bates Number its Native Productions. LGD has now twice failed
to produce native documents with any Bates numbers directly associated with those
productions. None of LGD's LGDN production bears any Bates numbers. CMO attempted
to obtain Bates number information from LGD in the past, and would have applied it
ourselves, but LGD refused even to provide the information CMO requested. In light of
LGD's refusals and unreasonable stance, CMO will simply refer to LGD's production of
native documents by the only identification information that LGD provided associated
directly with those documents: their filenames. LGD must do the same.

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Lora A. Brzezynski, Esq.
July 23, 2008
Page 6


CMO reserves its rights regarding all other aspects of LGD's document production, including its size, scope, responsiveness, comprehensiveness, and timing.

Very truly yours,

Thomas C. Werner

cc:    Christian Platt, Esq. (christianplatt@paulhastings.com)
       Brian Range, Esq. (brange@wsgr.com)


1901325

EXHIBIT M

**Lomas, John**

| | |
|---|---|
| **From:** | Christenson, Cass |
| **Sent:** | Thursday, July 24, 2008 4:56 PM |
| **To:** | Werner, Tom |
| **Cc:** | ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; Bono, Gaspare; Goodwyn, Tyler; Lomas, John; Brzezynski, Lora; '#CMO/LPL@irell.com'; 'jkagan@irell.com'; 'agiza@irell.com'; 'ahoffman@irell.com'; 'ctyler@wsgr.com'; 'jholloway@wsgr.com'; 'vincentyip@paulhastings.com'; 'terrygarnett@paulhastings.com'; 'peterwied@paulhastings.com'; 'katherinemurray@paulhastings.com'; 'jshaw@ycst.com'; 'kpascale@ycst.com'; 'jaychiu@paulhastings.com'; 'provner@potteranderson.com' |
| **Subject:** | LGD v. CMO, 06-726 (D. Del.) - July 24, 2008 Letter to Tom Werner |
| **Attachments:** | Werne001.PDF |



Werne001.PDF (32
KB)

      Tom:  Please see my attached July 24, 2008 letter.  Regards, Cass

-----Original Message-----
From: Werner, Tom [mailto:TWerner@irell.com]
Sent: Wednesday, July 23, 2008 5:18 PM
To: Brzezynski, Lora
Cc: ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; Bono, Gaspare; Goodwyn, Tyler;
Christenson, Cass; Lomas, John
Subject: LGD v. CMO, 06-726 (D. Del.) - 2008-07-23 Werner ltr Brzezynski re LGD Document
Production.pdf

The message is ready to be sent with the following file or link attachments:

2008-07-23 Werner ltr Brzezynski re LGD Document Production.pdf

Note: To protect against computer viruses, e-mail programs may prevent sending or
receiving certain types of file attachments.  Check your e-mail security settings to
determine how attachments are handled.

ccmailg.irell.com made the following annotations
------------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged,
confidential and/or inside information.  Any distribution or use of this communication by
anyone other than the intended recipient(s) is strictly prohibited and may be unlawful.
If you are not the intended recipient, please notify the sender by replying to this
message and then delete it from your system. Thank you.


------------------------------------------------------------------

# McKenna Long
## & Aldridge LLP
Attorneys at Law

Albany
Atlanta
Brussels
Denver
Los Angeles

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

July 24, 2008

**BY E-MAIL**

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Re:     *LG Display Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.*; CV 06-726 (JJF)
        (D.Del.)

Dear Tom:

I write in response to your July 23, 2008 letter, purporting to raise "serious deficiencies" regarding the format of documents produced by LG Display.

Your July 23 letter is riddled with self-serving statements, inaccurate assumptions, and false accusations regarding LG Display's document production. Nonetheless, we will discuss the issues that you raise. Your reference to an "unfortunate impasse" is thus premature, as we will discuss this matter with you.

On the subject of email discovery, you requested in a July 8 letter that we discuss the format of email production and attempt to reach an agreement. We agreed to your request for a discussion on format of email production and requested a proposal from you, as confirmed in my July 11 letter and my July 17 and July 18 emails. Apparently, however, your vacation in Hawaii prevented you from responding or discussing those issues with me.

As you are now back in the office, I will call you on Monday, July 28, to discuss certain issues raised in your July 23 letter.

Very truly yours,

Cass W. Christenson

CWC:ea

EXHIBIT N

**Lomas, John**

| | |
|---|---|
| **From:** | Werner, Tom [TWerner@irell.com] |
| **Sent:** | Thursday, July 24, 2008 9:32 PM |
| **To:** | Christenson, Cass |
| **Cc:** | ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; Brzezynski, Lora; Bono, Gaspare; Goodwyn, Tyler; Lomas, John |
| **Subject:** | LGD v. CMO, 06-726 (D. Del.) - 2008-07-24 Werner ltr Christenson re LGD Document Production.pdf |
| **Attachments:** | 2008-07-24 Werner ltr Christenson re LGD Document Production.pdf |



2008-07-24 Werner
ltr Christen...

The message is ready to be sent with the following file or link attachments:

2008-07-24 Werner ltr Christenson re LGD Document Production.pdf


Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

ccmailg.irell.com made the following annotations
--------------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged, confidential and/or inside information.  Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.


--------------------------------------------------------------------

1

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7956
FACSIMILE (310) 203-7199
lwerner@irell.com

July 24, 2008

**VIA E-MAIL**

Cass Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
cchristenson@mckennalong.com

    Re:    *LG Display Co., Ltd. v. Chi Mei Optoelectronics Corp.*, CV No. 06-726
           (D. Del.)

Dear Cass:

        I write in response to your letter of today.  The problems identified to LGD in my
July 23 letter to Lora Brzezynski were not restricted to the form of LGD's document
production, but were also directed to its substance.  Namely, LGD continues to refuse to
produce documents from LGD's other litigations alleging infringement of the patents-in-suit.
My letter made a clear request: "If LGD has in fact produced responsive documents, please
immediately inform us so that we can determine whether or not to proceed with our motion."
Your letter neither confirms LGD's past production, nor promises any future production of
those documents.  We understand that LGD therefore continues to refuse to produce these
documents, and will proceed with our motion to compel.  Please call me tomorrow morning
if I have misunderstood your letter in any way.

        Your characterization of LGD's unilateral decision to not produce emails is
inaccurate, and your continued reliance for delaying production of emails on your alleged
confusion—despite my explicit clarification—regarding how to produce searchable
documents is not well taken.  Again, my letter made a clear request: "Please confirm that
LGD will immediately produce the email documents it claims to have collected for
production."  Again, your letter does not provide that confirmation, and we understand that
to mean that LGD continues to refuse to produce documents it has stated are ready for
production.  Again, please call me tomorrow morning if I have misunderstood your letter in
any way.  CMO is entitled to seek redress for LGD's prejudicial delay tactics.

        Finally, given the significance and breadth of the remaining issues raised in my July
23 letter, we sincerely hope that any discussion of those issues is productive.  If LGD is

1902946

**I R E L L  &  M A N E L L A  LLP**

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Cass Christenson, Esq.
July 24, 2008
Page 2

unwilling to offer significant remedy for the problems inherent in its existing document production, CMO will have no choice but to move to compel that remedy.

Very truly yours,

Thomas C. Werner

cc:    Christian Platt, Esq. (christianplatt@paulhastings.com)
       Brian Range, Esq. (brange@wsgr.com)

1902946

EXHIBIT O

**Lomas, John**

| | |
|---|---|
| **From:** | Werner, Tom [TWerner@irell.com] |
| **Sent:** | Friday, July 25, 2008 2:55 PM |
| **To:** | Christenson, Cass |
| **Cc:** | ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; Brzezynski, Lora; Bono, Gaspare; Goodwyn, Tyler; Lomas, John; provner@potteranderson.com; #CMO/LPL [Int] |
| **Subject:** | RE: LGD v. CMO, 06-726 (D. Del.) - 2008-07-24 Werner ltr Christenson re LGD Document Production.pdf |

Cass,

CMO's inquiries into LGD's failure to produce documents from LGD's prior litigations have been outstanding since at least June 17.  LGD's response has been to deflect and delay, as LGD continues to do.

Please provide a time and dial-in for Monday morning.

Thank you.

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
TWerner@irell.com
(310) 203-7956 (direct)
(310) 282-5798 (direct fax)

-----Original Message-----
From: Christenson, Cass [mailto:cchristenson@mckennalong.com]
Sent: Friday, July 25, 2008 9:11 AM
To: Werner, Tom
Cc: ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; ~Brzezynski, Lora; ~Bono, Gaspare;
~Goodwyn, Tyler; ~Lomas, John; provner@potteranderson.com; #CMO/LPL [Int]
Subject: RE: LGD v. CMO, 06-726 (D. Del.) - 2008-07-24 Werner ltr Christenson re LGD
Document Production.pdf

Tom:

You were on vacation and unavailable to discuss these issues until now.
You sent your July 23 letter after 5:00 p.m. on Wednesday, less than 48 hours ago, raising
many different issues involving thousands of documents produced by LG Display.  We are
working hard to investigate those issues now.

LG Display can agree to produce additional documents, but we need to discuss that with you
to reach an agreement on these issues.

Also, your July 24 letter is incorrect in assuming (a pattern in your
letters) that no responsive documents were produced.

Monday is the earliest time that we can discuss these issues, which is why I told you that
I would call you on Monday.

There is no reason for CMO to move to compel, and any such motion would be premature and
improper.

Have a good weekend.

Regards,
Cass

-----Original Message-----
From: Werner, Tom [mailto:TWerner@irell.com]

1

Sent: Friday, July 25, 2008 11:50 AM
To: Christenson, Cass
Cc: ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; Brzezynski, Lora; Bono, Gaspare;
Goodwyn, Tyler; Lomas, John; provner@potteranderson.com; #CMO/LPL [Int]
Subject: RE: LGD v. CMO, 06-726 (D. Del.) - 2008-07-24 Werner ltr Christenson re LGD
Document Production.pdf

Cass,

It is not clear why LGD is unwilling to discuss these issues today.  But it is clear that
is the case.  However, as we have made clear, LGD's continuing refusal to confirm whether
or not LGD will produce documents responsive to CMO's Document Request No. 98 is improper.

Will LGD produce these documents?  If so, when?  If not, CMO has no choice but to move to
compel LGD to do so.

Finally, please copy our service email, which I've copied on this email, on communications
to CMO.  Thank you.

Very truly yours,

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
TWerner@irell.com
(310) 203-7956 (direct)
(310) 282-5798 (direct fax)

-----Original Message-----
From: Christenson, Cass [mailto:cchristenson@mckennalong.com]
Sent: Friday, July 25, 2008 8:00 AM
To: Werner, Tom
Cc: ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; ~Brzezynski, Lora; ~Bono, Gaspare;
~Goodwyn, Tyler; ~Lomas, John; provner@potteranderson.com
Subject: RE: LGD v. CMO, 06-726 (D. Del.) - 2008-07-24 Werner ltr Christenson re LGD
Document Production.pdf

Tom:

Your July 24, 2008 letter to me is incorrect.  Specifically, your assumption that LG
Display refuses to produce additional documents or email is wrong.  Please avoid
attempting to manufacture a dispute when you know that we will discuss these issues on
Monday, July 28, as I informed you yesterday.
LG Display is not refusing to produce documents or email, and we intend to discuss these
issues on Monday as both sides are required to do.

Your threat to file any motion to compel is improper, unfounded, and premature unless and
until we are unable to resolve these issues.

Regards,
Cass

-----Original Message-----
From: Werner, Tom [mailto:TWerner@irell.com]
Sent: Thursday, July 24, 2008 9:32 PM
To: Christenson, Cass
Cc: ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; Brzezynski, Lora; Bono, Gaspare;
Goodwyn, Tyler; Lomas, John
Subject: LGD v. CMO, 06-726 (D. Del.) - 2008-07-24 Werner ltr Christenson re LGD Document
Production.pdf


The message is ready to be sent with the following file or link
attachments:

2008-07-24 Werner ltr Christenson re LGD Document Production.pdf

Note: To protect against computer viruses, e-mail programs may prevent sending or
receiving certain types of file attachments.  Check your e-mail security settings to
determine how attachments are handled.

ccmailg.irell.com made the following annotations
----------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged,
confidential and/or inside information.  Any distribution or use of this communication by
anyone other than the intended recipient(s) is strictly prohibited and may be unlawful.
If you are not the intended recipient, please notify the sender by replying to this
message and then delete it from your system. Thank you.


----------------------------------------------------------------


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long &
Aldridge LLP, and are intended solely for the use of the named recipient or recipients.
This e-mail may contain privileged attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an intended recipient is strictly
prohibited. If you are not a named recipient, you are prohibited from any further viewing
of the e-mail or any attachments or from making any use of the e-mail or attachments. If
you believe you have received this e-mail in error, notify the sender immediately and
permanently delete the e-mail, any attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or attachments.


ccmailg.irell.com made the following annotations
----------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged,
confidential and/or inside information.  Any distribution or use of this communication by
anyone other than the intended recipient(s) is strictly prohibited and may be unlawful.
If you are not the intended recipient, please notify the sender by replying to this
message and then delete it from your system. Thank you.


----------------------------------------------------------------


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long &
Aldridge LLP, and are intended solely for the use of the named recipient or recipients.
This e-mail may contain privileged attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an intended recipient is strictly
prohibited. If you are not a named recipient, you are prohibited from any further viewing
of the e-mail or any attachments or from making any use of the e-mail or attachments. If
you believe you have received this e-mail in error, notify the sender immediately and
permanently delete the e-mail, any attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or attachments.


ccmailg.irell.com made the following annotations
----------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged,
confidential and/or inside information.  Any distribution or use of this communication by
anyone other than the intended recipient(s) is strictly prohibited and may be unlawful.

If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

-------------------------------------------------------------------

EXHIBIT P

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7956
FACSIMILE (310) 203-7199
iwerner@irell.com

July 25, 2008

**VIA E-MAIL**

Cass Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
cchristenson@mckennalong.com

Re:    *LG Display Co., Ltd. v. Chi Mei Optoelectronics Corp.*, CV No. 06-726
(D. Del.)

Dear Cass:

I write in advance of our discussion scheduled for Monday morning regarding the issues raised in my July 23, 2008 letter regarding LGD's document productions. In particular, I write to provide a framework for our discussion of LGD's failure to produce documents responsive to CMO's Document Request No. 98, which seeks documents from LGD's other litigations alleging infringement of the patents-in-suit.

LGD previously asserted patents in *LG.Philips LCD Co., Ltd. v. Chunghwa Picture Tubes Ltd.*, 02-6775 CBM (C.D. Cal.) (which represents the consolidation of Civil Actions 02-6775, 03-2886, 03-2866, 03-2884, 03-2885) and *LG.Philips LCD Co., Ltd. v. Tatung Co.*, 05-292 JJF (D. Del.) (collectively, the "LGD Prior Litigations") that have now been asserted against CMO: United States Patent Nos. 4,624,737; 5,825,449; and 5,019,002 (collectively, the "LGD Asserted Patents"). In response to CMO's Document Request No. 98, LGD should have long ago produced, and in any event must now immediately produce, at a minimum, the following materials:

1.    Expert reports, including declarations or other written testimony given by expert witnesses, that refer or relate to the LGD Asserted Patents and that were served in the LGD Prior Litigations, and exhibits to such materials.

1903419

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Cass Christenson, Esq.
July 25, 2008
Page 2

2.      Transcripts and videos of testimony given in the LGD Prior Litigations by LG Display[1] or by witnesses testifying on behalf of LG Display that refers or relates to the LGD Asserted Patents, and exhibits to such materials.

3.      Transcripts of hearings in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and materials used at those hearings, including but not limited to technology tutorials and demonstratives.

4.      Documents filed with the Courts presiding over the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits to such materials.

5.      Documents used at trials in the LGD Prior Litigations, including but not limited to trial exhibit lists, trial exhibits (including demonstratives), witness statements, pre-trial briefs, pre-trial statements, and post-trial briefs, and transcripts of those trial proceedings.

6.      Discovery requests and responses served or received by LG Display in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits, appendices, or any similar attachments to such materials.

7.      Documents produced by LG Display on behalf of LG Display or any third party in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents. Such documents must be produced to CMO in the same form and bearing the same Bates numbers as in the LGD Prior Litigation.

8.      Documents produced by anyone in the LGD Prior Litigations that refer or relate to the validity, enforceability, ownership, inventorship, or term of the LGD Asserted Patents.

To the extent these materials exist as electronically stored information, LGD must produce these materials in the form in which they are ordinarily maintained, or in reasonably usable form. Regardless of the particular form of production, LGD may not remove or significantly degrade the searchable functionality of these materials, e.g., by scanning hard copy materials where LGD also possess them as electronically stored information.

To the extent that LGD claims that it is restricted from producing the foregoing materials because of protective orders from the LGD Prior Litigations, LGD must immediately produce these materials in redacted form, removing the restricted information from those materials. CMO requests that, in light of LGD's refusal despite our repeated

---

[1] "LG Display" is used in this letter as that phrase is defined in CMO's Document Requests.

1903419

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Cass Christenson, Esq.
July 25, 2008
Page 3

requests to produce these documents during the nearly four months that CMO's Document Request No. 98 has been pending, LGD provide CMO with a copy of all documentation of LGD's efforts to obtain consent to produce these materials.

Despite my request, you still have yet to propose a time for our meet and confer on Monday morning. We sincerely hope that LGD does not continue to avoid this issue.

Very truly yours,

Thomas C. Werner

cc:    Christian Platt, Esq. (christianplatt@paulhastings.com)
       Brian Range, Esq. (brange@wsgr.com)

1903419

EXHIBIT Q

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7956
FACSIMILE (310) 203-7199
lwerner@irell.com

July 30, 2008

**VIA E-MAIL**

Cass Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
cchristenson@mckennalong.com

    Re:    *LG Display v. Chi Mei Optoelectronics*, CV No. 06-726 (D. Del.)

Dear Cass:

I write to follow-up on our meet and confer of yesterday, where LGD finally agreed to "reasonably cooperate" to secure the production of documents responsive to CMO's Document Request No. 98, which seeks documents from LGD's other litigations alleging infringement of the patents-in-suit. LGD must at a minimum immediately forward this letter to all other parties and non-parties whose confidential information may be reflected in the materials described below, and request that those parties and non-parties consent to production of those materials in this action.

LGD previously asserted patents in *LG.Philips LCD v. Chunghwa Picture Tubes*, 02-6775 CBM (C.D. Cal.) (consolidating Civil Actions 02-6775, 03-2886, 03-2866, 03-2884, 03-2885) and *LG.Philips LCD v. Tatung*, 05-292 JJF (D. Del.) (collectively, the "LGD Prior Litigations") that have now been asserted against CMO: United States Patent Nos. 4,624,737; 5,825,449; and 5,019,002 (collectively, the "LGD Asserted Patents"). CMO's Document Request No. 98 seeks, and LGD must immediately produce to the extent in its possession, custody, or control, at least the following materials:

    1.    Expert reports, including declarations or other written testimony given by expert witnesses, that refer or relate to the LGD Asserted Patents and that were served in the LGD Prior Litigations, and exhibits to such materials.

    2.    Transcripts and videos of testimony given in the LGD Prior Litigations by LG Display[1] or by witnesses testifying on behalf of LG Display (including any inventor of the LGD Asserted Patents) that refers or relates to the LGD Asserted Patents, and exhibits to such materials.

    3.    Transcripts of hearings in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and materials used at those hearings, including but not limited to technology tutorials and demonstratives.

_____

    [1] "LG Display" is used in this letter as that phrase is defined in CMO's Document Requests.

1905261

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Cass Christenson, Esq.
July 30, 2008
Page 2

4.     Documents, including exhibits, filed with the courts presiding over the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, including but not limited to claim construction and summary judgment filings, as well as filings relating to geographic limitations on the scope of discovery into accused products, and orders that issued in connection with court filings.

5.     Documents from trials in the LGD Prior Litigations, including but not limited to trial exhibit lists, trial exhibits (including demonstratives), witness statements, pre-trial briefs, pre-trial statements, motions in limine, post-trial briefs, transcripts of the trial proceedings, and orders that issued in connection with the trial.

6.     Discovery requests and responses served or received by LG Display in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits, appendices, or any similar attachments to such materials.

7.     Documents produced by LG Display on behalf of LG Display or any third party in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents. Such documents must be produced to CMO in the same form and bearing the same Bates numbers as in the LGD Prior Litigation.

8.     Materials provided by anyone in the LGD Prior Litigations that refer or relate to the validity, enforceability, ownership, inventorship, or term of the LGD Asserted Patents, including but not limited to documents and deposition testimony.

CMO agrees that LGD Prior Litigations materials produced in this action will be restricted under the Interim Protective Order (and the final Protective Order entered by the Court), and further will be restricted to outside counsel eyes only to the extent they reflect the confidential information of prior litigants other than LG Display.

Please copy me on LGD's consent request letters, which we look forward to seeing no later than August 1, 2008. LGD's choice to delay seeking these consents until now has severely prejudiced CMO, and we reserve all of our rights.

Regarding LGD's stated refusal to produce, *inter alia*, materials described above that relate to infringement and damages, CMO appears to have no choice but to move to compel their production.

Very truly yours,

Thomas C. Werner

cc:     Christian Platt, Esq. (christianplatt@paulhastings.com)
Brian Range, Esq. (brange@wsgr.com)

1905261

EXHIBIT R

**Lomas, John**

| | |
|---|---|
| **From:** | Werner, Tom [TWerner@irell.com] |
| **Sent:** | Wednesday, July 30, 2008 5:00 PM |
| **To:** | Christenson, Cass |
| **Cc:** | ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; Brzezynski, Lora; Bono, Gaspare; Goodwyn, Tyler; Lomas, John; #CMO/LPL [Int] |
| **Subject:** | RE: LGD v. CMO, 06-726 (D. Del.) -- Third Party Documents From Prior Litigations |
| **Attachments:** | Redline of 7-25 to 7-30 LGD Prior Litigation Categories.pdf |



Redline of 7-25 to
7-30 LGD Pr...

Cass,

Your email does not provide the confirmation I requested: Will LGD forward my July 30, 2008 letter to prior litigants along with its consent request letters or not, or not? LGD agreed to answer this question by 2:00. We await LGD's response.

My July 30 letter reflects clarifications based on our discussions. Attached is a redline of the changes. However, the changes are irrelevant to the issue of whether or not LGD will seek consent to produce the categories of materials described in my letter, or instead only seek consent to produce what LGD deems relevant.

Very truly yours,

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
TWerner@irell.com
(310) 203-7956 (direct)
(310) 282-5798 (direct fax)

-----Original Message-----
From: Christenson, Cass [mailto:cchristenson@mckennalong.com]
Sent: Wednesday, July 30, 2008 1:43 PM
To: Werner, Tom
Cc: ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; ~Brzezynski, Lora; ~Bono, Gaspare; ~Goodwyn, Tyler; ~Lomas, John; #CMO/LPL [Int]
Subject: RE: LGD v. CMO, 06-726 (D. Del.) -- Third Party Documents From Prior Litigations

Tom: I will review your letter and discuss with you tomorrow in our scheduled teleconference. Is your new letter different than your July 25 letter on the same subject? I need time to review both of your letters, but look forward to discussing this with you tomorrow on our call. I'm sure that we can work out the scope of the requests for consent to address your concerns and our concerns. We can give you copies of the letters to third parties on this issue, without waiving any other objections or rights, assuming you will give us copies of your correspondence with those third parties. Regards, Cass

-----Original Message-----
From: Werner, Tom [mailto:TWerner@irell.com]
Sent: Wednesday, July 30, 2008 3:12 PM
To: Christenson, Cass
Cc: ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; Brzezynski, Lora; Bono, Gaspare; Goodwyn, Tyler; Lomas, John; #CMO/LPL [Int]
Subject: RE: LGD v. CMO, 06-726 (D. Del.) -- Third Party Documents From Prior Litigations

Cass,

1

Your email suggests that LGD will only seek consent to produce LGD Prior Litigations materials that LGD deems relevant. As we have made clear, LGD's relevance objections are meritless, and any refusal by LGD to seek consent regarding all responsive LGD Prior Litigations materials is improper. Please confirm by 2:00 p.m. PDT today that LGD will include the letter we provided to you earlier today (attached again here) with all of LGD's consent requests, and that LGD will copy us on those communications, as I requested in that letter.

Finally, I again request that you copy our service email (copied here) on communications to CMO.

Thank you.

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276
TWerner@irell.com
(310) 203-7956 (direct)
(310) 282-5798 (direct fax)


-----Original Message-----
From: Christenson, Cass [mailto:cchristenson@mckennalong.com]
Sent: Wednesday, July 30, 2008 11:15 AM
To: Werner, Tom
Cc: ~Platt, Christian; ~Range, Brian; ~Kirk, Richard; ~Brzezynski, Lora; ~Bono, Gaspare; ~Goodwyn, Tyler; ~Lomas, John
Subject: LGD v. CMO, 06-726 (D. Del.) -- Third Party Documents From Prior Litigations

Tom:

In our teleconference yesterday, you asked whether we would agree to your request that we send a letter to any third party if necessary to obtain consent from that third party before producing information that we (or LG Display) received from or regarding that third party in a prior litigation involving LG Display's patents in suit against CMO, to the extent that we otherwise agree to produce that discovery to CMO in this case.

As I informed you yesterday, we are willing to cooperate and take reasonable steps to address any problems related to production in this case of information that was previously used in another case and that could be subject to confidentiality restrictions and/or protective orders in those prior cases. This confirms that we are willing to send an appropriate letter notifying any third party whose information could be subject to such disclosure. This is necessary because, as we explained in our call, LG Display cannot be expected to disclose anything from prior cases that could be deemed improper to use or disclose in this litigation.

As we identify third parties whom we need to notify, therefore, we will promptly send that notice to each third party. We also will let you know of any other potential restrictions on use or disclosure of that discovery.

If you have any further questions, please let us know.

Regards,
Cass

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and

2

permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.


ccmailg.irell.com made the following annotations
------------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged, confidential and/or inside information.  Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.



------------------------------------------------------------------


CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from the law firm of McKenna Long & Aldridge LLP, and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.


ccmailg.irell.com made the following annotations
------------------------------------------------------------------
PLEASE NOTE:  This message, including any attachments, may include privileged, confidential and/or inside information.  Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.



------------------------------------------------------------------

1.    Expert reports, including declarations or other written testimony given by expert witnesses, that refer or relate to the LGD Asserted Patents and that were served in the LGD Prior Litigations, and exhibits to such materials.

2.    Transcripts and videos of testimony given in the LGD Prior Litigations by LG Display or by witnesses testifying on behalf of LG Display **(including any inventor of the LGD Asserted Patents)** that refers or relates to the LGD Asserted Patents, and exhibits to such materials.

3.    Transcripts of hearings in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and materials used at those hearings, including but not limited to technology tutorials and demonstratives.

4.    Documents**, including exhibits,** filed with the courts presiding over the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, ~~and exhibits to such materials~~**including but not limited to claim construction and summary judgment filings, as well as filings relating to geographic limitations on the scope of discovery into accused products, and orders that issued in connection with court filings**.

5.    Documents ~~used at~~**from** trials in the LGD Prior Litigations, including but not limited to trial exhibit lists, trial exhibits (including demonstratives), witness statements, pre-trial briefs, pre-trial statements, ~~and~~**motions in limine,** post-trial briefs, ~~and~~ transcripts of ~~those~~**the** trial proceedings**, and orders that issued in connection with the trial**.

6.    Discovery requests and responses served or received by LG Display in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits, appendices, or any similar attachments to such materials.

7.    Documents produced by LG Display on behalf of LG Display or any third party in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents.  Such documents must be produced to CMO in the same form and bearing the same Bates numbers as in the LGD Prior Litigation.

8.    ~~Documents produced~~**Materials provided** by anyone in the LGD Prior Litigations that refer or relate to the validity, enforceability, ownership, inventorship, or term of the LGD Asserted Patents**, including but not limited to documents and deposition testimony**.

EXHIBIT S

# McKenna Long
# & Aldridge LLP
Attorneys at Law

Albany
Atlanta
Brussels
Denver
Los Angeles

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

August 4, 2008

**BY E-MAIL**

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Re:    *LG Display Co., Ltd. v. Chi Mei Optoelectronics Corp., et al.*; CV 06-726 (JJF)
(D.Del.)

Dear Tom:

I write in response to your July 25, 2008, July 30, 2008, and July 31, 2008 letters concerning CMO's request for production of certain documents concerning other cases in which LG Display litigated U.S. Patent Numbers 4,624,737; 5,825,449; and 5,019,002 (collectively, the "LG Display Patents").[1]  We discussed your letters and LG Display's position and objections in teleconferences on July 28, July 29, and July 31, 2008.  This letter confirms our discussions, particularly with respect to what LG Display has agreed to produce.

As we discussed, LG Display continues to maintain its several objections to CMO's document request number 98, seeking documents concerning prior cases to which CMO was not a party.  LG Display objects, for example, because request 98 and your July 25 and your July 30 letters, are overly broad, pose an undue burden, and seek information that is neither relevant nor reasonably calculated to obtain admissible evidence.  Indeed, you conceded during our teleconferences that CMO is not seeking all of the documents that are literally requested in document request 98 or in the eight numbered paragraphs of your July 25 and July 28 letters. You clarified, moreover, that CMO is seeking the legal contentions and analysis from prior cases concerning LG Display's patents.

---

[1] Specifically, your July 25 letter confirms that CMO is seeking documents regarding "*LG.Philips LCD Co., Ltd. v. Chunghwa Picture Tubes Ltd.*, 02-6775 CBM (C.D. Cal.) (which represents the consolidation of Civil Actions 02-6775, 03-2886, 03-2866, 03-2884, 03-2885) and *LG.Philips LCD Co., Ltd. v. Tatung Co.*, 05-292 JJF (D. Del.) (collectively, the 'LGD Prior Litigations')."

Thomas C. Werner, Esq.
August 4, 2008
Page 2

As we informed you during our teleconferences, LG Display is willing to produce much of the information that CMO is requesting as summarized in your July 25, 2008 letter.[2] As we explained, LG Display will produce documents from the LGD Prior Litigations that specifically relate to the LG Display Patents and validity, enforceability, inventorship, ownership, and/or claim construction.

Accordingly, in a good faith effort to resolve the disputed issues concerning CMO's Request 98, as clarified in your July 25, 2008 letter, LG Display will agree to produce the following documents from the previous cases (the "Prior Litigation Documents"), subject to any limitation on our ability to disclose that information, such as the need for consent from another party and/or relief from an order of the court in another case:

     1.    Expert reports and expert declarations, including exhibits, to the extent they address validity, enforceability, inventorship, ownership, and/or claim construction as to the LG Display Patents;

     2.    Deposition transcripts reflecting testimony by LG Display or any witness testifying on behalf of LG Display (including any inventor deposition testimony offered by LG Display) to the extent they address validity, enforceability, inventorship, ownership, and/or claim construction as to the LG Display Patents;

     3.    Transcripts concerning hearings to the extent they address motions or rulings on validity, enforceability, inventorship, ownership, and/or claim construction as to the LG Display Patents;

     4.    Markman briefing concerning the LG Display Patents and summary judgment briefs to the extent they address validity, enforceability, inventorship, or ownership as to the LG Display Patents;

     5.    Transcripts of trial testimony to the extent addressing validity, enforceability, inventorship, and/or ownership as to the LG Display Patents, to the extent that such transcripts are not under seal and can be disclosed;

     6.    Answers to interrogatories and responses to requests for admissions to the extent they address validity, enforceability, inventorship, ownership, and/or claim construction as to the LG Display Patents;

---

[2] After we scheduled our July 28 meet and confer, you sent your July 25 letter identifying the document categories sought by CMO with respect to document request 98. We then spent substantial time discussing those categories on July 28 and 29. After two days of meeting and conferring, you then recast your eight paragraphs describing the requested documents in a new letter sent on July 30. As I noted in our July 31 teleconference, we object to the extent that CMO sought to expand its categories of requested documents on July 30 after we had met and conferred on the same issues in reliance on your July 25 letter.

Thomas C. Werner, Esq.
August 4, 2008
Page 3

     7.     Documents produced by LG Display or a third party, to the extent they address validity, enforceability, inventorship, ownership, and/or claim construction as to the LG Display Patents; and

     8.     Any prior art references that LG Display produced or received from another party concerning the LG Display Patents.

     We asked you to confirm which documents are most important to CMO and should be produced first.  You stated that while CMO would like all of these documents, the most important documents and highest priority are expert reports and expert depositions.  We agreed to search for and produce expert reports and expert depositions as soon as possible to the extent that we can provide such discovery at this time.  In addition, many of the documents that CMO is requesting are publicly available.  We discussed that CMO already has obtained the publicly available documents and has produced numerous documents in this case concerning prior litigations involving LG Display's patents.

     We are providing this information in an effort to avoid further disputes.  In doing so, LG Display does not concede that this information is relevant or admissible concerning the pending case between LG Display and CMO.  LG Display specifically reserves all rights and objections concerning these Prior Litigation Documents, including, for example, all objections if CMO attempts to offer any such documents in evidence or use them in this case.  Further, CMO has purported to dictate how LG Display should bates number its production and the format of LG Display's production of Prior Litigation Documents.  CMO has no basis to do so, including because CMO did not assert such requests in its document request no. 98 and because LG Display has informed CMO (including in LG Display's responses to CMO's document requests and in our recent teleconferences) that LG Display will follow the parties' existing agreement on the format of document production in this case.  We are continuing to discuss these issues with CMO.

     We also made clear that LG Display cannot, and will not, disclose any information or produce any Prior Litigation Documents if those documents include confidential third party information or information designated under or protected by any protective order or other court order or restriction against the disclosure or use of such information.[3]  You requested, therefore, that LG Display agree to send a letter to third parties seeking the consent of each such party to production of those documents from prior cases to CMO in this case.  In an August 1, 2008

---

[3] LG Display cannot attempt to guess as to which information was the basis for any confidentiality designation and then redact that information while producing the document to CMO.  Doing so would unfairly expose LG Display to potential adverse consequences if information deemed confidential or protected by a third party and/or court order were disclosed by LG Display.  As we discussed, for example, protective orders in the prior cases may expressly prohibit disclosure or use of any protected information in any other case or for any purpose other than litigation of the other case.

Thomas C. Werner, Esq.
August 4, 2008
Page 4

letter, AUO joined in CMO's request for Prior Litigation Documents. As I previously informed you, we will send a letter notifying each relevant third party or counsel that CMO and AUO have requested the information summarized in your July 30 letter. As we discussed, however, we are doing so with the agreement and understanding that LG Display's request for such consent does not in any way change the scope of our intended production as summarized in this letter. LG Display does not agree to produce all of the Prior Litigation Documents that CMO is seeking. Nonetheless, you explained that requesting consent now from each third party for that entire scope of discovery will avoid the need for future requests for consent from third parties if additional documents need to be produced in the future over LG Display's objections.

Accordingly, we agreed to seek consent as to all such documents now, and you agreed that doing so is for the sake of efficiency and will not be used against LG Display or to contend that LG Display should produce all such documents. We also agreed that we would copy CMO on our correspondence to third parties, assuming that CMO will provide us with any correspondence between CMO and those same third parties. Please confirm CMO's agreement on this point.

Finally, your threat to move to compel unspecified documents from prior cases concerning infringement and damages is not well taken. We have asked you to explain why CMO is seeking this information and for any authority that supports CMO's requests for this information. We reiterate our request for this information for us to consider before CMO raises this issue with the Court.

Very truly yours,

Cass W. Christenson

CWC:ea

EXHIBIT T

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG PHILIPS LCD CO., LTD.,

Plaintiff/Counterclaim Defendant,

v.

TATUNG COMPANY;
TATUNG COMPANY OF AMERICA, INC.;
CHUNGHWA PICTURE TUBES, LTD.;
AND VIEWSONIC CORPORATION,

Defendants/Counterclaim Plaintiffs.

Civil Action No. 05-292 (JJF)

## CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER

IT IS HEREBY STIPULATED by Plaintiff/Counterclaim Defendant, LG PHILIPS LCD

CO., LTD. and by Defendants/Counterclaim Plaintiffs CHUNGHWA PICTURE TUBES, LTD.,

TATUNG CO. OF AMERICA, INC., TATUNG COMPANY, and VIEWSONIC

CORPORATION on the other hand, through their respective counsel of record, that the

following Confidentiality Stipulation and Protective Order ("Order") shall govern the handling

of any document, information or other things exchanged by the parties or, pursuant to paragraph

16, received from third parties, in connection with all phases of the above captioned action

leading up to trial, including, but not limited to, the filing of any pleadings, answering any

discovery requests, taking depositions, filing motions, and preparing transcripts and exhibits.

This Order does not govern proceedings during trial, nor does it prohibit any party from seeking

a separate protective order to govern trial proceedings; however, this Order shall govern all

testimony taken at a pretrial hearing or other judicial proceeding.

1.      The parties, and any third party whose confidential information is sought through

discovery by a party to the captioned action, shall make a designation of CONFIDENTIAL with

1

regard to any document or other discovery material it produces or provides, or any testimony it gives in the above captioned action, that purportedly contains, reflects, or otherwise discloses a trade secret or other confidential research, development, commercial, technical, business, financial, personnel, or customer information. Moreover, the parties, and any third party whose confidential information is sought through discovery by a party to the captioned action, shall make a designation of CONFIDENTIAL ATTORNEYS ONLY with regard to any document or other discovery or other discovery material containing confidential information that the disclosing party or disclosing third party in good faith considers to constitute or to contain technical, research, development, cost, pricing or other financial information, or information that could lead to the discovery of such information or other information of any kind, which the disclosing party or disclosing third party believes in good faith to be highly-sensitive or highly confidential. The following information shall not be designated CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY: any information that at the time of its disclosure in this action is part of the public domain or public knowledge by reason of prior publication or otherwise; and any information that after its disclosure in this action has become part of the public domain or public knowledge by reason of prior publication or otherwise through no act, omission or fault of the receiving party.

   (a)  Each party and all persons bound by the terms of this Order shall use any information or document governed by this Order only in connection with the prosecution or defense of the above captioned action, except by consent of all of the parties or order of the Court. With respect to information or documents produced by third parties, such information or documents will be used only in connection with the prosecution or defense of the above captioned action, except by consent of all of the parties and the third party that produced such

information or documents, or order of the Court. CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS ONLY information and/or documents may be disclosed or released only to those persons entitled to receive such information and/or documents under this Order.

      (b)    Documents will be treated in accordance with their designation under this Order. However, failure of a party to designate material CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY shall not be deemed or construed to constitute an admission that such material is not confidential or proprietary. If a party discovers that it has inadvertently failed to properly designate material as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY, such party may promptly designate the material as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY as applicable. Disclosure of such confidential information to persons not authorized to receive that information prior to receipt of the confidentiality designation shall not be deemed a violation of this Order. However, in the event the document has been distributed in a manner inconsistent with the designation, a receiving party will take reasonable steps to retrieve all copies of the CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY documents that are inconsistently designated, or notes or extracts thereof. In the event distribution has occurred to a person not under the control of a receiving party, the receiving party shall make a request in writing for return of the document and for an undertaking of confidentiality. In the event the request is not promptly agreed to in writing, or in the event there is no response, or in the event that the receiving party deems the making of the request to be a useless act, the receiving party shall promptly notify the disclosing party of the distribution and all pertinent facts concerning it, including the identity of the person or entity not under the control of the receiving party.

3

(c)     If a disclosing party inadvertently discloses information that is privileged or otherwise immune from discovery, the disclosing party shall promptly upon discovery of the disclosure so advise the receiving party in writing, provide the receiving party with satisfactory proof that the disclosure was inadvertent, and request that the item or items of information be returned, and if that request is properly made and supported, no party to the above captioned action shall thereafter assert that the disclosure waived any privilege or immunity. It is further agreed that the receiving party will return or destroy the inadvertently produced item or items of information, and all copies and derivations, within five (5) days of the earliest of (a) discovery by the receiving party of the inadvertent nature of the production, or (b) the receiving party receiving a written request for the return or destruction of the information.

(d)     Should any documents, testimony, or information designated as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY be disclosed, through inadvertence by the receiving party, to any person or party not authorized under this Order, then the receiving party shall use commercially reasonable efforts to (i) promptly retrieve the disclosed documents, testimony, or information from such unauthorized person or party; (ii) bind such person or party to the terms of this Order; (iii) promptly inform such person or party of all the provisions of this Order; (iv) request such person or party to sign the "ACKNOWLEDGEMENT" in the form attached hereto; (v) identify such person or party immediately to the disclosing party that designated the documents, testimony, or information as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY; and (vi) identify the CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY documents, testimony, or information immediately to the disclosing party that designated the documents, testimony, or information as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY. The executed

4

"ACKNOWLEDGEMENT" shall promptly be served upon the party that designated the documents, testimony, or information as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY. Nothing in this paragraph shall limit the right of the party that designated the documents, testimony, or information as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY to seek any appropriate sanction or remedy against the party that intentionally disclosed the documents, testimony, or information to a person or party not authorized under this Order.

(e)    It is understood that counsel for a party may give advice and opinions to his or her client based on his or her evaluation of information designated CONFIDENTIAL and CONFIDENTIAL ATTORNEYS ONLY received by the party, provided that such rendering of advice and opinions shall not reveal the content of information to which the recipient is not otherwise entitled, and also shall not reveal or disclose competitively useful information, such as, without limitation, financial information; sales information; pricing data; strategic business plans; research and development projects; circuit implementations; process flows; yield and cost information; marketing plans, forecasts and strategies; testing information; and customer-specific information, except by prior written agreement with counsel for the producing party.

2.    Information designated as CONFIDENTIAL may be disclosed only to the following persons:

(a)    outside attorneys representing any party in the above captioned action, and any paralegal, law clerk, or other employees working under the direct supervision of such attorneys, provided, however, that no person who is a party or a director, officer, managing agent or other employee of a party may be retained as a paralegal, stenographic or clerical employee within the meaning of this paragraph;

5

(b)    (i)    experts, including consultants and investigators, retained by any party or counsel to any party to assist in the above captioned action or to testify at trial in that action, but only to the extent necessary to perform such work, and provided that such experts shall not be past or present employees of a party and that paragraphs 2(b)(ii) and (iii) are complied with;

(ii)    For each expert to whom any party desires to disclose CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS ONLY information and/or documents, such party must first identify in writing to the attorneys for the producing party the following information:  the expert's full name; professional address; educational background; general areas of expertise; all present employment and consultancies; all prior employment and consultancies within the last four years; all present or prior relationships between the expert and the receiving party, its subsidiaries, its affiliates, or other related entities; and a list of all cases in which the expert or consultant has testified at a deposition or in court within the last four years. An expert's disclosure of confidential employment and consultancies may be designated as CONFIDENTIAL ATTORNEYS ONLY.

(iii)    Counsel for the producing party shall have ten (10) business days from receipt of such Paragraph 2(b)(ii) notice to object to disclosure of such CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS ONLY information and/or documents to such expert. Any and all such objections must be made in writing with all such grounds stated with specificity.  The parties shall attempt to resolve such objections informally.  In the event of such an objection, no disclosure of CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS ONLY documents, testimony or information shall be made to such persons for a period of five (5) court days following the date the objection is received to permit the objecting party to move, pursuant

to Para. 4 of the Joint Rule 16 Scheduling Order entered by the Court on December 21, 2005, for

an order that disclosure not be made to such expert or consultant or that the disclosure be made

only upon certain conditions. Provided that the Paragraph 2(b)(ii) notice is fully responsive to all

of the requirements set forth in that same paragraph, the moving party shall have the burden of

establishing that good cause exists for such an order, and shall seek to have the matter heard at

the earliest possible date. If no motion is noticed within five (5) court days following receipt of

the objection, CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS ONLY documents,

testimony, and information may be disclosed to such experts or consultants for the purposes of

and upon the conditions stated in this Protective Order. If such motion is made, there shall be no

disclosure to such expert or consultant until the Court has ruled upon the motion, and then only

in accordance with the ruling so made. The filing and pendency of such motion shall not limit,

delay, or defer any disclosure of the CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS

ONLY documents, testimony and information to persons as to whom no such objection has been

made, nor shall it delay or defer any other pending discovery unless the motion and the inability

to disclose such documents, testimony, and information bear directly on the non-objecting

party's ability to conduct such discovery. The right of a party to object shall be waived if no

objection is received by the party disclosing the expert or consultant within ten (10) business

days of receipt of said disclosure except to the extent that the non-designating party later

discovers that the original disclosure of a particular expert was in error or otherwise not fully

responsive to Paragraph 2(b)(ii) above.

   (c) personnel of third party vendors, whose regular business is providing

litigation support services, engaged by a party or by counsel for a party to assist counsel in (i) the

coding, imaging or other management of documents produced in discovery in the above

7

captioned action or of associated databases; (ii) the preparation of demonstrative exhibits or other visual aids for presentation at a hearing or trial; (iii) jury research and analysis, including mock jurors; (iv) translation; or (v) outside photocopying or scanning services, provided that such personnel of third party vendors shall not be employees of a party or otherwise working for or on behalf of a party in connection with that party's business;

       (d)    any party, including directors, officers, managing agents and other employees assisting with the preparation of this case for trial; and

       (e)    the Court and its personnel and court reporters and videographers.

    3.    Information designated as CONFIDENTIAL ATTORNEYS ONLY may be disclosed only to the following persons:

       (a)    outside attorneys representing any party in the above captioned action, and any paralegal, law clerk, or other employees working under the direct supervision of such attorneys, provided, however, that no person who is a party or a director, officer, managing agent or other employee of a party may be retained as a paralegal, stenographic or clerical employee within the meaning of this paragraph;

       (b)    experts, including consultants and investigators, retained by any party or counsel to any party to assist in the above captioned action or to testify at trial in that action, but only to the extent necessary to perform such work, and provided that such experts shall not be present or past employees of a party and that paragraphs 2(b)(ii) and (iii) are complied with;

       (c)    personnel of third party vendors, whose regular business is providing litigation support services, engaged by a party or by counsel for a party to assist counsel in (i) the coding, imaging or other management of documents produced in discovery in the above captioned action or of associated databases; (ii) in the preparation of demonstrative exhibits or

8

other visual aids for presentation at a hearing or trial; (iii) jury research and analysis; (iv) translation; or (v) outside photocopying or scanning services, provided that such personnel of third party vendors shall not be employees of a party or otherwise working for or on behalf of a party in connection with that party's business; and

   (d) the Court and its personnel and court reporters and videographers

  4 The persons described in paragraphs 2(b), 2(d), 3(a), 3(b), or 3(c), and mock jurors under paragraph 2(c), shall be allowed access to the CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material, as appropriate, only after they have read this Order and signed a copy of the attached "ACKNOWLEDGEMENT." As limited exceptions to the foregoing, the persons identified in paragraph 3(c) need not sign Acknowledgements if they are employed by a vendor who has signed an Acknowledgement that governs their receipt and use of the CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY information, and paralegals, law clerks, and other employees identified in paragraph 3(a) need not sign Acknowledgements if they are supervised by an attorney who has signed an Acknowledgement. The undersigned counsel shall forward copies of all executed ACKNOWLEDGEMENTS to the all other parties, and shall also maintain a list, available for inspection by the Court, of persons to whom CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material is disclosed The persons receiving CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material are enjoined from disclosing it to any other person, except as permitted by this Order, and are further enjoined from using such material for any purpose other than the prosecution or defense of the above captioned action

  5 The persons receiving CONFIDENTIAL ATTORNEYS ONLY material under Paragraphs 3(a), 3(b), and 3(c) shall not be substantively involved in drafting, filing, or

prosecuting any patent applications (including any continuations, continuations-in-part, or divisions thereof and/or any reissue or reexamination applications), selecting or identifying the subject matter of any patent claims, or preparing or drafting of any patent claims, or providing instruction, direction or advice regarding these prosecution activities, where the application or claims are directed to (a) the manufacture and/or structure of thin film transistors and/or associated wiring structures (for liquid crystal display devices) of the type disclosed in the patents-in-suit in *LG Philips LCD Co., Ltd. v. Tatung Co. of America, et al.*, Consolidated Cases CV 02-6775 CBM (JTLx), CV 03-2866 CBM (JTLx), CV 03-2884 CBM (JTLx), CV 03-2885 CBM (JTLx), CV 03-2886 CBM (JTLx) (C.D. Cal.), (b) tape carrier packages in liquid crystal display devices, or (c) products or methods directed to protecting against electrostatic discharge in the thin film transistor substrate of liquid crystal display devices, until one (1) year after the conclusion of their participation in the above captioned action. These restrictions do not apply, however, to providing general legal advice on procedural aspects of patent prosecution.

      6.    The persons under Paragraphs 3(b) and 3(c) receiving CONFIDENTIAL ATTORNEYS ONLY material shall be precluded from consulting or working for any party to the above captioned action as a participant in any competitive decision-making processes, including without limitation, in the areas of sales and marketing, product pricing, strategic planning, research and development, product development, or manufacturing of products related to the subject matter of the patents-in-suit. This competitive decision-making preclusion shall be effective from the time the CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY information is received and shall last for a period of one (1) year after the conclusion of their participation in the above captioned action.

10

7.    Each individual who receives any CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material agrees to subject himself or herself to the jurisdiction of this Court for the purpose of any proceedings relating to performance under, compliance with, or violation of this Order

8.    The recipient of any CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material shall maintain such information in a secure and safe area accessible only to persons eligible to review such CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material

9.    If a party discloses CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS ONLY information and/or documents in another document, at a deposition, or at a hearing, such party shall designate, and treat, at least such portion of such other document or resulting transcript as CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS ONLY as applicable. Parties, third parties agreeing to be bound by this Order, and their counsel shall designate CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material as follows:

(a)    In the case of documents that are produced as part of discovery or are responsive to any discovery request, which includes, but is not limited to, responses to interrogatories, document production requests, and requests for admission and any attachments or exhibits to any of the foregoing documents referenced in this provision, such documents shall be stamped or otherwise labeled:   CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY.

(b)    In the case of depositions, counsel may designate portions of the transcript (including exhibits) as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY during the deposition by making a statement to that effect on the record   Alternatively, within twenty (20)

11

calendar days after receipt of any written deposition transcript, counsel for a party or third party whose CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material was disclosed during the deposition may so designate the appropriate pages of the transcript (including exhibits) and serve notice of the designation on opposing counsel. For twenty (20) calendar days after receipt of any written deposition transcript, the deposition transcript, including exhibits, shall be deemed CONFIDENTIAL ATTORNEYS ONLY.

10.    During any deposition taken in the above captioned action at which CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY information and/or documents are disclosed or discussed, any party may exclude from attendance at the deposition during such disclosure or discussion any person other than the deponent, counsel for the deponent (as long as that counsel is otherwise authorized under the terms of this protective order to have access to the CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY information and/or documents), court reporter, videographer, and persons to whom the information and/or documents may be disclosed under Paragraphs 2 and 3.

11.    A party or third party shall not be obligated to challenge the propriety of a CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY designation at the time made, and failure to do so shall not preclude a subsequent challenge. If at any time any party disagrees with a designation of CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY, that party shall provide written notice of its disagreement to the producing party or third party, including its basis for disagreeing with the designation. The disclosing party shall then have a reasonable period, not exceeding fourteen (14) days, from the date of receipt of such notice to: (a) advise the receiving party whether the disclosing party maintains its designation; and (b) if so, provide its basis for the particular designation. The parties or third parties shall first try to resolve the

12

dispute on an informal basis. If the dispute cannot be informally resolved, the party or third party challenging the designation may, after advising the disclosing party, request appropriate relief from the Court.

12    All applications and motions to the Court in which a party submits CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order.   The party filing any paper which reflects, contains or includes any CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY information subject to this Protective Order shall file such paper in a sealed envelope, or other appropriately sealed container, which indicates the title of the action, the party filing the materials, the nature of the materials filed, the appropriate legend (see paragraph 1(a) above), and a statement substantially in the following form:

> This envelope contains documents subject to a Protective Order of the Court. It should be opened only by the Court. Its contents should not be disclosed, revealed or made public except by Order of the Court or written agreement of the parties.

13    In the event that any CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material is used in any pretrial proceeding in connection with the above captioned action, it shall not lose its CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY status through such use, and the parties shall take all steps reasonably required to protect its confidentiality during such use. Disclosure and use of CONFIDENTIAL and CONFIDENTIAL ATTORNEYS ONLY material at trial and in subsequent proceedings shall be governed by the terms of an order to be entered by the Court.

14.    Nothing in this Order shall preclude a party or its attorneys from:

(a) showing a document designated as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY to an individual identified by the document or by sworn testimony as having been previously prepared, received, or reviewed by that individual;

(b) showing a document produced in discovery by an opposing party to a current or former director, officer, managing agent or employee of the producing party or of any related entities of the producing party during the questioning of such person in a deposition, hearing, or trial in the above captioned action; or

(c) disclosing or using for any purpose any information or documents from the party's own files which the party itself has designated as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY.

15      Counsel for a party producing documents may mask ("redact") material deemed exempt from discovery because it is protected from disclosure under the attorney-client privilege or work product doctrine. Any and all documents from which material is redacted shall identify in all redacted areas that a redaction has occurred. In addition, the reason for any and all such redactions shall be stated either on the documents themselves or on a log to be provided within thirty (30) days after the production of the documents. Sufficient information regarding the masked material must be provided to the other party to enable it to evaluate the legitimacy of the asserted privilege or immunity. The parties reserve the right to pursue categories for redaction in addition to those identified above, by either consent of the parties or order of the Court, to be addressed on a case-by case basis. All disputes arising out of a party's objection to another party's redaction of material under this paragraph shall be resolved pursuant to Fed. R. Civ. P. 37, Local Rule 7.1 1, and the Joint Rule 16 Scheduling Order entered by the Court.

16.    Third parties may produce documents and/or other things and may disclose information pursuant to the terms of this Order.  Such third parties shall be entitled to the remedies and relief provided by this Order.

17.    Any court reporter or videographer who records testimony in the above captioned action at a deposition shall be provided with a copy of this Protective Order by the party noticing the deposition.  That party shall advise the court reporter or videographer, before any testimony is taken, that all confidentially designated documents, information, or testimony is and shall remain confidential and shall not be disclosed except as provided in this Protective Order.  The noticing party shall further advise the court reporter and videographer that copies of all transcripts, reporting notes, and all other records of any such testimony must be treated in accordance with this Protective Order, delivered to attorneys of record, or filed under seal with the Court.

18.    In the event any person or receiving party having possession, custody, or control of any document, testimony, or information produced in the above captioned action and designated as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY by a disclosing party receives a subpoena or other process or order to produce such information, such subpoenaed person or entity shall notify by mail the attorneys of record of the disclosing party claiming such confidential treatment of the document sought by such subpoena or other process or order, shall furnish those attorneys with a copy of said subpoena or other process or order, and shall cooperate with respect to any reasonable procedure sought to be pursued by the party whose interest may be affected.  The disclosing party asserting the confidential treatment shall have the burden of defending against such subpoena, process or order.  The person or party receiving the subpoena or other process, or order shall be entitled to comply with it except to the

15

extent the disclosing party asserting the confidential treatment is successful in obtaining an order modifying or quashing it.

19.    If the discovery process calls for the production of information that a party does not wish to produce because the party believes its disclosure would breach an express or implied agreement with a non-party to maintain such information in confidence, the disclosing party shall give written notice to the non-party that its information is subject to discovery in the above captioned action, and shall provide the non-party with a copy of this Protective Order. When such written notice is given to the non-party, the disclosing party will advise the potential receiving party that such notice has been given. The non-party shall have fourteen (14) days from receipt of the written notice in which to seek relief from the Court, if the non-party so desires. If the fourteen (14) days elapse without relief being sought from the Court, the requested information shall be produced in accordance with the terms of this Protective Order.

20.    Unless otherwise agreed to by the parties or by order of the Court, within sixty (60) days of the final resolution of all of the above captioned action and of any and all appeals of such action, all CONFIDENTIAL and CONFIDENTIAL ATTORNEYS ONLY material, and all copies thereof, shall be (1) upon request, returned to the party that produced it, or (2) destroyed. Notwithstanding the foregoing, counsel of record for the parties shall be permitted to retain a file copy of materials created during the course of the above captioned action, or made part of the record, or which have been filed under seal with the Clerk of the Court, including but not limited to any motion, brief, affidavit, expert report, discovery response, and/or memoranda which contains CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material within the document or as an exhibit thereto, and a copy of all depositions, including exhibits, and deposition evaluations. Such file copies must be maintained under the conditions of

CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY documents as provided in this Order. Counsel of record for the parties shall certify in writing that they have complied with this paragraph.

21.    This Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege or work product immunity, or to preclude either party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

22.    Except as specifically provided herein, the terms, conditions, and limitations of this Order shall survive the termination of the above captioned action.

23.    This Order is without prejudice to the right of any party or third party to seek relief from the Court, upon good cause shown, from any of the provisions hereof.

(signature blocks on following page)

MCKENNA LONG & ALDRIDGE LLP

Gaspare J. Bono
Cass W. Christenson
1900 K Street, NW
Washington, DC 20006
(202) 496-7500


THE BAYARD FIRM

Richard D. Kirk (#0922)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899-5130
rkirk@bayardfirm.com
(302) 655-5000


*Attorneys for plaintiff*
*LG PHILIPS LCD CO., LTD*


HOWREY LLP

_____
Christine A. Dudzik
Thomas W. Jenkins
321 North Clark Street
Suite 3400
Chicago, IL 60610
(312) 595-1239

Teresa M. Corbin
Glenn W. Rhodes
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
(415) 848-4900


RICHARDS, LAYTON & FINGER, P.A.

_____
Robert W. Whetzel (#2288)
whetzel@rlf.com
Matthew W. King (#4566)
king@rlf.com
One Rodney Sqare
P O Box 551
Wilmington, DE 19899
(302) 651-7700


*Attorneys for defendants*
*CHUNGHWA PICTURE TUBES, LTD.,*
*TATUNG COMPANY OF AMERICA,*
*TATUNG COMPANY, and VIEWSONIC*
*CORPORATION*


IT IS SO ORDERED.

Dated:_____     _____
                          U.S. District Court Judge


18

MCKENNA LONG & ALDRIDGE LLP          HOWREY LLP

_Christine A. Dudzik_ (signature)

_____           Christine A. Dudzik
Gaspare J. Bono                       Thomas W. Jenkins
Cass W. Christenson                   321 North Clark Street
1900 K Street, NW                     Suite 3400
Washington, DC 20006                  Chicago, IL  60610
(202) 496-7500                        (312) 595-1239

                                      Teresa M. Corbin
                                      Glenn W. Rhodes
                                      HOWREY LLP
                                      525 Market Street, Suite 3600
                                      San Francisco, CA  94105
                                      (415) 848-4900

THE BAYARD FIRM                       RICHARDS, LAYTON & FINGER, P.A.

                                      _Robert W. King_ (signature)

_____           Robert W. Whetzel (#2288)
Richard D. Kirk (#0922)               whetzel@rlf.com
222 Delaware Avenue, Suite 900        Matthew W. King (#4566)
P.O. Box 25130                        king@rlf.com
Wilmington, DE  19899-5130            One Rodney Sqare
rkirk@bayardfirm.com                  P.O. Box 551
(302) 655-5000                        Wilmington, DE 19899
                                      (302) 651-7700

*Attorneys for plaintiff*              *Attorneys for defendants*
*LG PHILIPS LCD CO., LTD.*             *CHUNGHWA PICTURE TUBES, LTD.,*
                                      *TATUNG COMPANY OF AMERICA,*
                                      *TATUNG COMPANY, and VIEWSONIC*
                                      *CORPORATION*


IT IS SO ORDERED.

Dated:_____        _____
                               U.S. District Court Judge


18

## ACKNOWLEDGEMENT

I, _____, declare:

    1     I reside at _____ [Street Address]

_____ [City, State, Zip code]

    2.    I am employed by _____ [Employer] located at

_____ [Street Address]

_____ [City, State, Zip code] as

_____ [Position or Title]

    3     I have read and understand the provisions of the Confidentiality Stipulation and Protective Order ("Protective Order") entered in the U.S. District Court for the District of Delaware ("the Court") with respect to the non-disclosure of CONFIDENTIAL and CONFIDENTIAL ATTORNEYS ONLY information and/or documents, and I agree to abide by and be bound by its terms. Specifically, and without limitation upon such terms, I agree not to use or disclose any confidential information made available to me other than in accordance with the Protective Order.

    4     I hereby submit to the jurisdiction of the Court for the limited purpose of enforcing the Protective Order, and this Acknowledgement, by contempt proceedings or other appropriate judicial remedies.

    5.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Acknowledgement was executed this _____ day of _____, 200__.

        By:_____

19

EXHIBIT U

1   ANDREA SHERIDAN ORDIN (SBN 38235)
    DAVID L. SCHRADER (SBN 149638)
2   MORGAN, LEWIS & BOCKIUS LLP
    300 South Grand Avenue
3   Twenty-Second Floor
    Los Angeles, CA 90071-3132
4   Tel:  (213) 312-2500
    Fax:  (213) 612-2501
5
    ANTHONY C. ROTH (*admitted pro hac vice*)
6   NATHAN W. McCUTCHEON (*admitted pro hac vice*)
    MORGAN, LEWIS & BOCKIUS LLP
7   1111 Pennsylvania Avenue, N.W.
    Washington, DC 20004
8   Tel:  (202) 739-3000
    Fax: (202) 739-3001
9
    Attorneys for Plaintiff/Counterdefendant
10  LG. PHILIPS LCD CO., LTD. and
    Third-Party Defendant LG ELECTRONICS INC.
11
    (Listing of counsel and parties continued on next page)
12

13           IN THE UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15
    LG. PHILIPS LCD CO., LTD.,          Case No. CV-02-6775 CBM (JTLx)
16                                      Case No. CV-03-2866 CBM (JTLx)
              Plaintiff,               Case No. CV-03-2884 CBM (JTLx)
17                                      Case No. CV-03-2885 CBM (JTLx)
          vs.                           Case No. CV-03-2886 CBM (JTLx)
18  TATUNG CO. OF AMERICA,
    TATUNG COMPANY AND
19  CHUNGHWA PICTURE TUBES, LTD.,
                                        AMENDED CONFIDENTIALITY
              Defendants.               STIPULATION AND PROTECTIVE
20  ────────────────────────────        ORDER
21  AND CONSOLIDATED CASES
                                        Magistrate Judge Jennifer T. Lum
22  ────────────────────────────
    CHUNGHWA PICTURE TUBES, LTD.,
23            Counterclaimant and
              Third-Party Plaintiff,
24        vs.
25  LG. PHILIPS LCD CO., LTD.,
26            Counterdefendant,
27  AND LG ELECTRONICS INC.,
              Third-Party Defendant.
28

HOWREY
SIMON
ARNOLD &
WHITE       Case No. CV-02 6775 CBM

1  MARK KRIETZMAN (SBN 126806)
2  CHRISTOPHER DARROW (SBN 70701)
   VALERIE W. HO (SBN 200505)
3  GREENBERG TRAURIG LLP
   2450 Colorado Avenue, Suite 400E
4  Santa Monica, CA 90404
   Tel:   (310) 586-7700
5  Fax:  (310) 586-7800

6  Attorneys for Defendants
   TATUNG COMPANY OF AMERICA and TATUNG CO.
7

8  TERESA M. CORBIN (SBN 132360)
   GLENN W. RHODES (SBN 177869)
9  HOWREY SIMON ARNOLD & WHITE LLP
   525 Market Street, Suite 3600
10 San Francisco, CA 94105-2708
   Tel:  (650) 463-8100
11 Fax:  (650) 463-8400

12 CHRISTOPHER A. MATHEWS (SBN 144021)
   BRIAN S. KIM (SBN 186523)
13 HOWREY SIMON ARNOLD & WHITE LLP
   550 South Hope Street, Suite 1100
14 Los Angeles, CA 90071-2627
   Tel:  (213) 892-1800
15 Fax:  (213) 892-2300

16 Attorneys for Defendant/Counterclaimant/Third-Party Plaintiff
   CHUNGHWA PICTURE TUBES, LTD. and
17 Defendants/Counterclaimants JEAN COMPANY, LTD.,
   LITE-ON TECHNOLOGY CORPORATION,
18 LITE-ON TECHNOLOGY INTERNATIONAL INCORPORATED,
   TPV TECHNOLOGY LTD., ENVISION PERIPHERALS, INC.,
19 and VIEWSONIC CORPORATION

20

21

22

23

24

25

26

27

28

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1

## AMENDED CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER

2

IT IS HEREBY STIPULATED by Plaintiff/Counterclaim Defendant,

3

LG.PHILIPS LCD CO., LTD. and Third-Party Defendant LG ELECTRONICS INC.,

4

on the one hand, and by Defendants TATUNG CO. OF AMERICA, TATUNG

5

COMPANY, and VIEWSONIC CORPORATION and Defendants/Counterclaim

6

Plaintiffs, CHUNGHWA PICTURE TUBES, LTD., JEAN COMPANY, LTD.,

7

LITE-ON TECHNOLOGY CORPORATION, LITE-ON TECHNOLOGY

8

INTERNATIONAL INCORPORATED, TPV TECHNOLOGY LTD., and

9

ENVISION PERIPHERALS, INC. on the other hand, through their respective

10

counsel of record, that the following Amended Confidentiality Stipulation and

11

Protective Order ("Order") shall govern the handling of any document, information

12

or other things exchanged by the parties or, pursuant to paragraph 17, received from

13

third parties, in connection with all phases of the above captioned action(s) leading

14

up to trial, including, but not limited to, the filing of any pleadings, answering any

15

discovery requests, taking depositions, filing motions and preparing transcripts and

16

exhibits. This Order does not govern proceedings during trial, nor does it prohibit

17

any party from seeking a separate protective order to govern trial proceedings,

18

however, this Order shall govern all testimony taken at a pretrial hearing or other

19

judicial proceeding.

20

1.      The parties, and any third party whose confidential information is sought

21

through discovery by a party to the captioned action(s), shall make a designation of

22

CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY with regard to any

23

document or other discovery material it produces or provides, or any testimony it gives

24

in the above captioned action(s), that purportedly contains, reflects or otherwise

25

discloses a trade secret or other confidential research, development, commercial,

26

technical, business, financial, personnel or customer information.

27

28

HOWREY
SIMON
ARNOLD &
WHITE

1

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1      (a)    Each party and all persons bound by the terms of this Order shall use

2 any information or document governed by this Order only in connection with the

3 prosecution or defense of the above captioned action(s) and the pending arbitration

4 proceedings involving CHUNGHWA PICTURE TUBES, LTD., LG.PHILIPS LCD

5 CO., LTD., and LG ELECTRONICS INC., Case No. 50 T 133 00379 04 ("the

6 Arbitration"), except by consent of all of the parties or order of the Court. With respect

7 to information or documents produced by third parties, such information or documents

8 will be used only in connection with the prosecution or defense of the above captioned

9 action(s) and the Arbitration, except by consent of all of the parties and the third party

10 that produced such information or documents, or order of the Court. CONFIDENTIAL

11 and/or CONFIDENTIAL ATTORNEYS ONLY information and/or documents may be

12 disclosed or released only to those persons entitled to receive such information and/or

13 documents under this Order.

14      (b)    Documents will be treated in accordance with their designation under

15 this Order. However, failure of a party to designate material CONFIDENTIAL or

16 CONFIDENTIAL ATTORNEYS ONLY shall not be deemed or construed to constitute

17 an admission that such material is not confidential or proprietary. If a party discovers

18 that it has inadvertently failed to properly designate material as CONFIDENTIAL or

19 CONFIDENTIAL ATTORNEYS ONLY, such party may promptly designate the

20 material as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY as

21 applicable. Disclosure of such confidential information to persons not authorized to

22 receive that information prior to receipt of the confidentiality designation shall not be

23 deemed a violation of this Order. However, in the event the document has been

24 distributed in a manner inconsistent with the designation, a receiving party will take

25 reasonable steps to retrieve all copies of the CONFIDENTIAL or CONFIDENTIAL

26 ATTORNEYS ONLY documents that are inconsistently designated, or notes or extracts

27 thereof. In the event distribution has occurred to a person not under the control of a

28 receiving party, the receiving party shall make a request in writing for return of the

HOWREY
SIMON
ARNOLD &
WHITE

2

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1  document, and for an undertaking of confidentiality.  In the event the request is not

2  promptly agreed to in writing, or in the event there is no response, or in the event that

3  the receiving party deems the making of the request to be a useless act, the receiving

4  party shall promptly notify the disclosing party of the distribution and all pertinent facts

5  concerning it, including the identity of the person or entity not under the control of the

6  receiving party.

7        (c)    If a disclosing party inadvertently discloses information that is

8  privileged or otherwise immune from discovery, the disclosing party shall promptly

9  upon discovery of the disclosure so advise the receiving party in writing, provide the

10  receiving party with satisfactory proof that the disclosure was inadvertent, and request

11  that the item or items of information be returned, and if that request is properly made

12  and supported, no party to the above captioned action(s) shall thereafter assert that the

13  disclosure waived any privilege or immunity.  It is further agreed that the receiving

14  party will return or destroy the inadvertently produced item or items of information, and

15  all copies and derivations, within five (5) days of the earliest of (a) discovery by the

16  receiving party of the inadvertent nature of the production, or (b) the receiving party

17  receiving a written request for the return or destruction of the information.

18        (d)    Should any documents, testimony or information designated as

19  CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY be disclosed, through

20  inadvertence by the receiving party, to any person or party not authorized under this

21  Order, then the receiving party shall use commercially reasonable efforts to (i) promptly

22  retrieve the disclosed documents, testimony or information from such unauthorized

23  person or party; (ii) bind such person or party to the terms of this Order; (iii) promptly

24  inform such person or party of all the provisions of this Order; (iv) request such person

25  or party to sign the "ACKNOWLEDGEMENT" in the form attached hereto; (v) identify

26  such person or party immediately to the disclosing party that designated the documents,

27  testimony or information as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS

28  ONLY; and (vi) identify the CONFIDENTIAL or CONFIDENTIAL ATTORNEYS

HOWREY
SIMON
ARNOLD &
WHITE

3

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1  ONLY documents, testimony or information immediately to the disclosing party that

2  designated the documents, testimony or information as CONFIDENTIAL or

3  CONFIDENTIAL ATTORNEYS ONLY.  The executed "ACKNOWLEDGEMENT"

4  shall promptly be served upon the party that designated the documents, testimony or

5  information as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY.  Nothing

6  in this paragraph shall limit the right of the party that designated the documents,

7  testimony or information as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS

8  ONLY to seek any appropriate sanction or remedy against the party that intentionally

9  disclosed the documents, testimony or information to a person or party not authorized

10  under this Order.

11           (e)    It is understood that counsel for a party may give advice and opinions

12  to his or her client based on his or her evaluation of information designated

13  CONFIDENTIAL and CONFIDENTIAL ATTORNEYS ONLY received by the party,

14  provided that such rendering of advice and opinions shall not reveal the content of

15  information to which the recipient is not otherwise entitled, and also shall not reveal or

16  disclose competitively useful information, such as, without limitation, financial

17  information; sales information; pricing data; strategic business plans; research and

18  development projects; circuit implementations; process flows; yield and cost

19  information; marketing plans, forecasts and strategies; testing information; and

20  customer-specific information, except by prior written agreement with counsel for the

21  producing party.

22       2.    Information designated as CONFIDENTIAL may be disclosed only to the

23  following persons:

24           (a)    outside attorneys representing any party in the above captioned

25  action(s), and any paralegal, law clerk, or other employees working under the direct

26  supervision of such attorneys, provided, however, that no person who is a party or a

27  director, officer, managing agent or other employee of a party may be retained as a

28  paralegal, stenographic or clerical employee within the meaning of this paragraph;

HOWREY
SIMON
ARNOLD &
WHITE

4

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1    (b)    (i)    experts, including consultants and investigators, retained by

2  any party or counsel to any party to assist in the above captioned action(s), to testify at

3  trial in those action(s), and/or to assist or testify in the Arbitration, but only to the extent

4  necessary to perform such work, and provided that such experts shall not be employees

5  of a party or otherwise working for or on behalf of a party in connection with that

6  party's business and that paragraphs 2(b)(ii) and (iii) are complied with;

7    (ii)    For each expert to whom any party desires to disclose

8  CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS ONLY information and/or

9  documents, such party must first identify in writing to the attorneys for the producing

10  party the following information: the expert's full name; professional address;

11  educational background; general areas of expertise; all present employment and

12  consultancies; all prior employment and consultancies within the last four years; all

13  present or prior relationships between the expert and the receiving party, its subsidiaries,

14  its affiliates, or other related entities; and a list of all cases in which the expert or

15  consultant has testified at a deposition or in court within the last four years. An expert's

16  disclosure of confidential employment and consultancies may be designated as

17  CONFIDENTIAL ATTORNEYS ONLY.

18    (iii)    Counsel for the producing party shall have ten (10) business

19  days from receipt of such Paragraph 2(b)(ii) notice to object to disclosure of such

20  CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS ONLY information and/or

21  documents to such expert. Any and all such objections must be made in writing with all

22  such grounds stated with specificity. The parties shall attempt to resolve such

23  objections informally. In the event of such an objection, no disclosure of

24  CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS ONLY documents,

25  testimony or information shall be made to such persons for a period of five (5) court

26  days following the date the objection is received to permit the objecting party to move,

27  by noticed motion or by ex parte application, for an order that disclosure not be made to

28  such expert or consultant or that the disclosure be made only upon certain conditions.

HOWREY
SIMON
ARNOLD &
WHITE

5

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1    Provided that the Paragraph 2(b)(ii) notice is fully responsive to all of the requirements

2    set forth in that same paragraph, the moving party shall have the burden of establishing

3    that good cause exists for such an order, and shall seek to have the matter heard at the

4    earliest possible date.  If no motion is noticed within five (5) court days following

5    receipt of the objection, CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS

6    ONLY documents, testimony and information may be disclosed to such experts or

7    consultants for the purposes of and upon the conditions stated in this Protective Order.

8    If such motion is made, there shall be no disclosure to such expert or consultant until the

9    Court has ruled upon the motion, and then only in accordance with the ruling so made.

10   The filing and pendency of such motion shall not limit, delay or defer any disclosure of

11   the CONFIDENTIAL and/or CONFIDENTIAL ATTORNEYS ONLY documents,

12   testimony and information to persons as to whom no such objection has been made, nor

13   shall it delay or defer any other pending discovery unless the motion and the inability to

14   disclose such documents, testimony and information bear directly on the non-objecting

15   party's ability to conduct such discovery.  The right of a party to object shall be waived

16   if no objection is received by the party disclosing the expert or consultant within ten

17   (10) business days of receipt of said disclosure except to the extent that the non-

18   designating party later discovers that the original disclosure of a particular expert was in

19   error or otherwise not fully responsive to Paragraph 2(b)(ii) above.

20            (c)      personnel of third party vendors, whose regular business is providing

21   litigation support services, engaged by a party or by counsel for a party to assist counsel

22   in (i) the coding, imaging or other management of documents produced in discovery in

23   the above captioned action(s) or of associated databases; (ii) the preparation of

24   demonstrative exhibits or other visual aids for presentation at a hearing or trial; (iii) jury

25   research and analysis, including mock jurors; (iv) translation; or (v) outside

26   photocopying or scanning services, provided that such personnel of third party vendors

27   shall not be employees of a party or otherwise working for or on behalf of a party in

28   connection with that party's business;

HOWREY
SIMON
ARNOLD &
WHITE

6

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1       (d)    any party, including directors, officers, managing agents and other

2  employees assisting with the preparation of this case for trial;

3       (e)   the Court and its personnel and court reporters and videographers; and

4       (f)    the members of the Panel in the Arbitration and the ICDR, their

5  personnel and court reporters and translators.

6     3.    Any CONFIDENTIAL material that a party or third party believes should

7  not be disclosed to another party or parties, or to directors, officers, managing agents or

8  other employees of such other party or parties, may be designated as CONFIDENTIAL

9  ATTORNEYS ONLY.

10     4.    Information designated as CONFIDENTIAL ATTORNEYS ONLY may

11  be disclosed only to the following persons:

12       (a)    outside attorneys representing any party in the above captioned

13  action(s), and any paralegal, law clerk, or other employees working under the direct

14  supervision of such attorneys, provided, however, that no person who is a party or a

15  director, officer, managing agent or other employee of a party may be retained as a

16  paralegal, stenographic or clerical employee within the meaning of this paragraph;

17       (b)    experts, including consultants and investigators, retained by any party

18  or counsel to any party to assist in the above captioned action(s), to testify at trial in

19  those actions, and/or to assist or testify in the Arbitration, but only to the extent

20  necessary to perform such work, and provided that such experts shall not be employees

21  of a party or otherwise working for or on behalf of a party in connection with that

22  party's business and that paragraphs 2(b)(ii) and (iii) are complied with;

23       (c)    personnel of third party vendors, whose regular business is providing

24  litigation support services, engaged by a party or by counsel for a party to assist counsel

25  in (i) the coding, imaging or other management of documents produced in discovery in

26  the above captioned action(s) or of associated databases; (ii) in the preparation of

27  demonstrative exhibits or other visual aids for presentation at a hearing or trial; (iii) jury

28  research and analysis; (iv) translation; or (v) outside photocopying or scanning services,

HOWREY
SIMON
ARNOLD &
WHITE

7

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1 provided that such personnel of third party vendors shall not be employees of a party or

2 otherwise working for or on behalf of a party in connection with that party's business;

3             (d)    the Court and its personnel and court reporters and videographers; and

4             (e)    the Arbitral Tribunal and the ICDR, their personnel and court reporters

5 and translators.

6        5.       The persons described in paragraphs 2(b), 2(d), 4(a), 4(b), or 4(c), and

7 mock jurors under paragraph 2(c), shall be allowed access to the CONFIDENTIAL or

8 CONFIDENTIAL ATTORNEYS ONLY material, as appropriate, only after they have

9 read this Order and signed a copy of the attached "ACKNOWLEDGEMENT." The

10 undersigned counsel shall forward copies of all executed ACKNOWLEDGEMENTS to

11 the all other parties, and shall also maintain a list, available for inspection by the Court,

12 of persons to whom CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY

13 material is disclosed. The persons receiving CONFIDENTIAL or CONFIDENTIAL

14 ATTORNEYS ONLY material are enjoined from disclosing it to any other person,

15 except as permitted by this Order, and are further enjoined from using such material for

16 any purpose other than the prosecution or defense of the above captioned action(s).

17        6.       The persons receiving CONFIDENTIAL ATTORNEYS ONLY material

18 under Paragraphs 4(a), 4(b) and 4(c) shall not be substantively involved in drafting,

19 filing or prosecuting any patent applications (including any continuations,

20 continuations-in-part, or divisions thereof and/or any reissue or reexamination

21 applications), selecting or identifying the subject matter of any patent claims, or

22 preparing or drafting of any patent claims, or providing instruction, direction or advice

23 regarding these prosecution activities, where the application or claims are directed to the

24 manufacture and/or structure of thin film transistors and/or associated wiring structures

25 of the type disclosed in the patents-in-suit for use in liquid crystal display devices, until

26 one (1) year after the conclusion of their participation in the above captioned action(s).

27 These restrictions do not apply, however, to providing general legal advice on

28 procedural aspects of patent prosecution.

1    7.    The persons under Paragraphs 4(b) and 4(c) receiving CONFIDENTIAL

2    ATTORNEYS ONLY material shall be precluded from consulting or working for any

3    party to the above captioned action(s) as a participant in any competitive decision-

4    making processes, including without limitation, in the areas of sales and marketing,

5    product pricing, strategic planning, research and development, product development or

6    manufacturing of products related to the subject matter of the patents-in-suit. This

7    competitive decision-making preclusion shall be effective from the time the

8    CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY information is received

9    and shall last for a period of one (1) year after the conclusion of their participation in the

10    above captioned action(s).

11    8.    Each individual who receives any CONFIDENTIAL or CONFIDENTIAL

12    ATTORNEYS ONLY material agrees to subject himself or herself to the jurisdiction of

13    this Court for the purpose of any proceedings relating to performance under, compliance

14    with, or violation of this Order.

15    9.    The recipient of any CONFIDENTIAL or CONFIDENTIAL

16    ATTORNEYS ONLY material shall maintain such information in a secure and safe area

17    accessible only to persons eligible to review such CONFIDENTIAL or

18    CONFIDENTIAL ATTORNEYS ONLY material.

19    10.    If a party discloses CONFIDENTIAL and/or CONFIDENTIAL

20    ATTORNEYS ONLY information and/or documents in another document, at a

21    deposition, or at a hearing, such party shall designate, and treat, at least such portion of

22    such other document or resulting transcript as CONFIDENTIAL and/or

23    CONFIDENTIAL ATTORNEYS ONLY as applicable. Parties, third parties agreeing

24    to be bound by this Order, and their counsel shall designate CONFIDENTIAL or

25    CONFIDENTIAL ATTORNEYS ONLY material as follows:

26    (a)    In the case of documents that are produced as part of discovery or are

27    responsive to any discovery request, which includes, but is not limited to, responses to

28    interrogatories, document production requests and requests for admission and any

HOWREY
SIMON
ARNOLD &
WHITE

9

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1  attachments or exhibits to any of the foregoing documents referenced in this provision,

2  such documents shall be stamped or otherwise labeled: CONFIDENTIAL or

3  CONFIDENTIAL ATTORNEYS ONLY.

4      (b)    In the case of depositions, counsel may designate portions of the

5  transcript (including exhibits) as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS

6  ONLY during the deposition by making a statement to that effect on the record.

7  Alternatively, within twenty (20) calendar days after receipt of any written deposition

8  transcript, counsel for a party or third party whose CONFIDENTIAL or

9  CONFIDENTIAL ATTORNEYS ONLY material was disclosed during the deposition

10 may so designate the appropriate pages of the transcript (including exhibits) and serve

11 notice of the designation on opposing counsel.  For twenty (20) calendar days after

12 receipt of any written deposition transcript, the deposition transcript, including exhibits,

13 shall be deemed CONFIDENTIAL ATTORNEYS ONLY.

14     11.    During any deposition taken in the above captioned action(s) at which

15 CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY information and/or

16 documents are disclosed or discussed, any party may exclude from attendance at the

17 deposition during such disclosure or discussion any person other than the deponent,

18 counsel for the deponent (as long as that counsel is otherwise authorized under the terms

19 of this protective order to have access to the CONFIDENTIAL or CONFIDENTIAL

20 ATTORNEYS ONLY information and/or documents), court reporter, videographer, and

21 persons to whom the information and/or documents may be disclosed under Paragraphs

22 2 and 4.

23     12.    A party or third party shall not be obligated to challenge the propriety of a

24 CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY designation at the time

25 made, and failure to do so shall not preclude a subsequent challenge.  If at any time any

26 party disagrees with a designation of CONFIDENTIAL or CONFIDENTIAL

27 ATTORNEYS ONLY, that party shall provide written notice of its disagreement to the

28 producing party or third party, including its basis for disagreeing with the designation.

1 The disclosing party shall then have a reasonable period, not exceeding fourteen (14)

2 days, from the date of receipt of such notice to:  (a) advise the receiving party whether

3 the disclosing party maintains its designation; and (2) if so, provide its basis for the

4 particular designation.  The parties or third parties shall first try to resolve the dispute on

5 an informal basis.  If the dispute cannot be informally resolved, the party or third party

6 challenging the designation may, after advising the disclosing party, request appropriate

7 relief from the Court.

8      13.     All applications and motions to the Court in which a party submits

9 CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY material shall comply

10 with Local Rule 79-5.1.

11      14.     In the event that any CONFIDENTIAL or CONFIDENTIAL

12 ATTORNEYS ONLY material is used in any pretrial proceeding in connection with the

13 above captioned action(s) or is used in the Arbitration, it shall not lose its

14 CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY status through such use,

15 and the parties shall take all steps reasonably required to protect its confidentiality

16 during such use.  Disclosure and use of CONFIDENTIAL and CONFIDENTIAL

17 ATTORNEYS ONLY material at trial and in subsequent proceedings shall be governed

18 by the terms of an order to be entered by the Court.

19      15.     Nothing in this Order shall preclude a party or its attorneys from:

20      (a)     showing a document designated as CONFIDENTIAL or

21 CONFIDENTIAL ATTORNEYS ONLY to an individual identified by the document or

22 by sworn testimony as having been previously prepared, received or reviewed by that

23 individual;

24      (b)     showing a document produced in discovery by an opposing party to a

25 current or former director, officer, managing agent or employee of the producing party

26 or of any related entities of the producing party during the questioning of such person in

27 a deposition, hearing or trial in the above captioned action(s); or

28

HOWREY
SIMON
ARNOLD &
WHITE                                        11
AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1        (c)    disclosing or using for any purpose any information or documents from

2  the party's own files which the party itself has designated as CONFIDENTIAL or

3  CONFIDENTIAL ATTORNEYS ONLY.

4      16.    Counsel for a party producing documents may mask ("redact") material

5  deemed exempt from discovery because it is protected from disclosure under the

6  attorney- client privilege or work product doctrine.  Any and all documents from which

7  material is redacted shall identify in all redacted areas that a redaction has occurred.  In

8  addition, the reason for any and all such redactions shall be stated either on the

9  documents themselves or on a log to be provided within thirty (30) days after the

10  production of the documents.  All disputes arising out of a party's objection to another

11  party's redaction of material under this paragraph shall be resolved pursuant to

12  Fed.R.Civ.P 37 and Local Rule L.R. 37-1 through 37.4.

13      17.    Third parties may produce documents and/or other things and may disclose

14  information pursuant to the terms of this Order.  Such third parties shall be entitled to

15  the remedies and relief provided by this Order.

16      18.    Any court reporter or videographer who records testimony in the above

17  captioned action(s) at a deposition shall be provided with a copy of this Protective Order

18  by the party noticing the deposition.  That party shall advise the court reporter or

19  videographer, before any testimony is taken, that all confidentially designated

20  documents, information, or testimony is and shall remain confidential and shall not be

21  disclosed except as provided in this Protective Order.  The noticing party shall further

22  advise the court reporter and videographer that copies of all transcripts, reporting notes

23  and all other records of any such testimony must be treated in accordance with this

24  Protective Order, delivered to attorneys of record, or filed under seal with the Court.

25      19.    In the event any person or receiving party having possession, custody or

26  control of any document, testimony, or information produced in the above captioned

27  action(s) and designated as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS

28  ONLY by a disclosing party receives a subpoena or other process or order to produce

HOWREY
SIMON
ARNOLD &
WHITE

12

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1   such information, such subpoenaed person or entity shall notify by mail the attorneys of

2   record of the disclosing party claiming such confidential treatment of the document

3   sought by such subpoena or other process or order, shall furnish those attorneys with a

4   copy of said subpoena or other process or order, and shall cooperate with respect to any

5   reasonable procedure sought to be pursued by the party whose interest may be affected.

6   The disclosing party asserting the confidential treatment shall have the burden of

7   defending against such subpoena, process or order. The person or party receiving the

8   subpoena or other process or order shall be entitled to comply with it except to the

9   extent the disclosing party asserting the confidential treatment is successful in obtaining

10  an order modifying or quashing it.

11      20.     If the discovery process calls for the production of information that a party

12  does not wish to produce because the party believes its disclosure would breach an

13  express or implied agreement with a non-party to maintain such information in

14  confidence, the disclosing party shall give written notice to the non-party that its

15  information is subject to discovery in the above captioned action(s), and shall provide

16  the non-party with a copy of this Protective Order. When such written notice is given to

17  the non-party, the disclosing party will advise the potential receiving party that such

18  notice has been given. The non-party shall have fourteen (14) days from receipt of the

19  written notice in which to seek relief from the Court, if the non-party so desires. If the

20  fourteen (14) days elapse without relief being sought from the Court, the requested

21  information shall be produced in accordance with the terms of this Protective Order.

22      21.     Unless otherwise agreed to by the parties or by order of the Court, within

23  sixty (60) days of the final resolution of all of the above captioned action(s), of any and

24  all appeals of such action(s), and the Arbitration, all CONFIDENTIAL and

25  CONFIDENTIAL ATTORNEYS ONLY material, and all copies thereof, shall be (1)

26  upon request, returned to the party that produced it, or (2) destroyed. Notwithstanding

27  the foregoing, counsel of record for the parties shall be permitted to retain a file copy of

28  materials created during the course of the above captioned action(s) or the Arbitration,

1  or made part of the record, or which have been filed under seal with the Clerk of the

2  Court, including but not limited to any motion, brief, affidavit, expert report, discovery

3  response, and/or memoranda which contains CONFIDENTIAL or CONFIDENTIAL

4  ATTORNEYS ONLY material within the document or as an exhibit thereto, and a copy

5  of all depositions, including exhibits, and deposition evaluations.  Such file copies must

6  be maintained under the conditions of CONFIDENTIAL or CONFIDENTIAL

7  ATTORNEYS ONLY documents as provided in this Order.  Counsel of record for the

8  parties shall certify in writing that they have complied with this paragraph.

9      22.    This Order is not intended to address discovery objections to produce,

10  answer, or respond on the grounds of attorney-client privilege or work product

11  immunity, or to preclude either party from seeking further relief or protective orders

12  from the Court as may be appropriate under the Federal Rules of Civil Procedure.

13      23.    In the event that materials produced by JEAN COMPANY, LTD., LITE-

14  ON TECHNOLOGY CORPORATION, LITE-ON TECHNOLOGY

15  INTERNATIONAL INCORPORATED, TPV TECHNOLOGY LTD., ENVISION

16  PERIPHERALS, INC., VIEWSONIC CORPORATION, TATUNG COMPANY OF

17  AMERICA or TATUNG COMPANY, that are governed by the Protective Order in the

18  above-captioned cases, are produced in the Arbitration, counsel for the Party who

19  produced the materials in the context of the litigation ("Litigation Producing Party")

20  shall be notified by the producing party in the Arbitration.  The confidential nature of

21  the information or documents to be produced in the Arbitration shall not be a basis on

22  which the Litigation Producing Party may object to the production of the materials in

23  the Arbitration.  However, any rights that the Litigation Producing Party may otherwise

24  have to object to the production of the materials in the Arbitration shall not be waived or

25  altered.

26      24.    Except as specifically provided herein, the terms, conditions, and

27  limitations of this Order shall survive the termination of the above captioned action(s).

28

HOWREY
SIMON
ARNOLD &
WHITE

14

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1       25.    This Order is without prejudice to the right of any party or third party to

2   seek relief from the Court, upon good cause shown, from any of the provisions hereof.

3   Dated: February _3_, 2005           ANDREA SHERIDAN ORDIN

4                                      DAVID L. SCHRADER

5                                      ANN A. BYUN

6                                      ANTHONY C. ROTH

                                    NATHAN W. McCUTCHEON

7                                      MORGAN, LEWIS & BOCKIUS LLP

8

9                           By _Anthony C. Roth_

10                               Anthony C. Roth

                           Attorneys for LG.PHILIPS LCD CO.,

11                             LTD. and LG ELECTRONICS INC.

12

13  Dated: February _3_, 2005           TERESA M. CORBIN

                                     GLENN W. RHODES

14                                     CHRISTOPHER A. MATHEWS

                                   BRIAN S. KIM

15                                     HOWREY SIMON ARNOLD & WHITE, LLP

16

17                          By _Christopher A. Mathews /BSK_

18                               Christopher A. Mathews

19                           Attorneys for CHUNGHWA PICTURE

                         TUBES, LTD., JEAN COMPANY,

20                           LTD., LITE-ON TECHNOLOGY

21                           CORPORATION, LITE-ON

                         TECHNOLOGY INTERNATIONAL

22                           INCORPORATED, TPV

23                           TECHNOLOGY LTD., ENVISION

                         PERIPHERALS, INC., and

24                           VIEWSONIC CORPORATION

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

                                       AMENDED CONFIDENTIALITY STIPULATION

15                                       AND PROTECTIVE ORDER

1    Dated: February 3, 2005        MARK H. KRIETZMAN
2                                   FRANK E. MERIDETH, JR.
                                    VALERIE HO
3                                   GREENBERG TRAURIG, LLP
4
                                    By _____
5                                        Mark H. Krietzman
6                                    Attorneys for TATUNG COMPANY OF
                                     AMERICA and TATUNG COMPANY
7
8
9                                    **ORDER**
10
      IT IS SO ORDERED.
11
12    Dated: _____         JENNIFER T. LUM
13
14                                   U.S. Magistrate Judge
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AMENDED CONFIDENTIALITY STIPULATION
AND PROTECTIVE ORDER

1
2

## <u>ACKNOWLEDGEMENT</u>

3
4

I, _____ , declare:

5
6

    1.    I reside at _____ [Street Address]

7

_____ [City, State, Zip code].

8

    2.    I am employed by _____ [Employer] located at

9

_____ [Street Address]

10

_____ [City, State, Zip code] as

11

_____ [Position or Title].

12

    3.    I have read and understand the provisions of the Amended Confidentiality

13

Stipulation and Protective Order ("Protective Order") entered in the U.S. District Court

14

for the Central District of California ("the Court") with respect to the non-disclosure of

15

CONFIDENTIAL and CONFIDENTIAL ATTORNEYS ONLY information and/or

16

documents, and I agree to abide by and be bound by its terms. Specifically, and

17

without limitation upon such terms, I agree not to use or disclose any confidential

18

information made available to me other than in accordance with the Protective Order.

19

    4.    I hereby submit to the jurisdiction of the Court for the limited purpose of

20

enforcing the Protective Order, and this Acknowledgement, by contempt proceedings

21

or other appropriate judicial remedies.

22

    5.    I declare under penalty of perjury under the laws of the United States of

23

America that the foregoing is true and correct and that this Acknowledgement was

24

executed this _____ day of _____, 200__.

25
26

            By: _____

27
28

HOWREY
SIMON
ARNOLD &
WHITE

- 1 -

1

PROOF OF SERVICE

2     I, Patrice C. Gonzalez, declare as follows:

3     I am employed in the County of Los Angeles, California. I am over the age of
eighteen years and not a party to the within action. My business address is 550 South
4     Hope Street, Los Angeles, California 90071.

5     Upon this day, February 4, 2005, I served a copy of **AMENDED
CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER** on all
6     interested parties through their attorneys of record by serving a true and correct copy
thereof by the method indicated, addressed as follows:

7
Anthony C. Roth, Esq.                      Mark Krietzman, Esq.
8     Morgan Lewis & Bockius LLP            Frank Merideth
1111 Pennsylvania Avenue, N.W.        Greenberg Traurig LLP
9     Washington, D.C. 20004                  2450 Colorado Avenue
Tel: (202) 739-3000                         Suite 400E
10    Fax: (202) 739-3001                      Santa Monica, California 90404
                                                      Tel: (310) 586-7788
11                                                    Fax: (310) 586-7700

12

13    ☒    **VIA FIRST CLASS MAIL** (CCP § 1013a). I am readily familiar with the firm's
practice of collection and processing for mailing. Under that practice it would be
14    deposited with U.S. postal service on that same day as shown on this declaration with
postage thereon fully prepaid at Los Angeles, California in the ordinary course of
15    business.

16    ☒    **FEDERAL:** I declare under penalty of perjury that I am employed in the office of
a member of the bar of this Court at whose direction service was made and that the
17    foregoing is true and correct.

18    Executed on February 4, 2005, at Los Angeles, California.

19
_____
20    Patrice C. Gonzalez

21

22

23

24

25

26

27

28

HOWREY
SIMON
ARNOLD &
WHITE

EXHIBIT V

# HOWREY LLP

525 Market Street
Suite 3600
San Francisco, CA 94105-2708
www.howrey.com

Teresa M. Corbin
Partner
T 415.848.4944
F 415.848.4999
corbint@howrey.com
File 01450.0001.000000

August 27, 2008

**VIA ELECTRONIC MAIL AND
U.S. MAIL**

Gaspare J. Bono, Esq.
McKenna, Long & Aldridge
1900 K Street, N.W.
Washington, D.C. 20006-1108

Dear Mr. Bono:

I am writing in response to your letter of August 11, 2008, which I did not receive until August 15, 2008. After receiving your letter, I sent you an email and subsequently left a voice mail seeking additional information, copies of the relevant discovery requests, and suggesting that we schedule a teleconference to discuss the discovery issues raised in your letter. There was no away from office message on either of your email or voice mail systems to alert me to the fact that you were away from the office. I did not receive any response from you until I received your emails yesterday, August 26 (one left after the close of business on the 25th and one the morning of the 26th), which is when I first learned that the discovery sought by AU Optronics Corporation ("AUO") and Chi Mei Optoelectronics Corporation ("CMO") is already the subject of a motion to compel before the Court. Your firm is in violation of the protective orders governing the California Actions (Case No. CV-02-6775, CV-03 2866, CV -03-2884, CV-03 2884, CV-03 2885, CV-03- 2886) and the Delaware Action (Case no. 05-292 JJF) between LG Philips LCD Co., Ltd. (now known as LG Display Co., Ltd. and hereinafter referred to as "LG") and Chunghwa Picture Tubes ("CPT") and its customers. Section 18 of the Delaware protective order and Section 19 of both of the protective orders in the California Actions required you to notify CPT's counsel in writing as soon as you received a request for disclosure of materials marked by CPT and/or its customers as CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY. Not only did we not receive any notice of the initial discovery requests that must have been made some time ago, but we were not copied on the motion to compel either. Today I have attempted to obtain that motion from the Courts electronic docket but, as it was inexplicably filed under seal, I was unable to do so. We need to receive immediately a copy of all discovery requests concerning materials from the California or Delaware Actions as well as any motions concerning the same.

As I mentioned in both of my earlier communications, CPT and its customers object to the production of any documents or other materials incorporating confidential information relating to CPT and/or its customers in the matter entitled LG Display Co. Ltd. v. Chi Mei Optoelectronics Corporation et al.; C.A. Nos. 06-726-JJF and 07-357-JJF. I have reviewed the

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON  LOS ANGELES
MADRID  MUNICH  NEW YORK  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

DM_US:21429823_1

**HOWREY**<sub>LLP</sub>

Gaspare J. Bono
August 27, 2008
Page 2

letters from Irell and Paul Hastings summarizing the discovery sought. These letters collectively seek a complete download of all materials from the Delaware and California Actions, including all fact and expert discovery; all pre-trial, trial, and post-trial briefs; all pleadings; all expert reports; all deposition, hearing and trial transcripts and videos; technology tutorials and demonstratives, trial exhibit lists and exhibits, all briefs and other documents related to claim construction, etc. There is no attempt by either AUO or CMO to narrowly tailor their discovery requests or to explain the relevancy of any of it. I fail to see and no one has articulated the relevancy of the CPT and customer confidential materials to your present cases.

As you are aware, like LG, CMO and AUO are direct competitors of CPT. The documents and other information sought by AUO and CMO, with the exception of those documents related to claim construction, validity, and inequitable conduct, contain highly confidential and competitively valuable trade secret information of CPT including detailed array manufacturing procedures, mask files, product specifications and process information, which are the most closely guarded of CPT's competitive secrets. This information is essentially CPT's recipe for making LCD modules, which has competitive value and if disclosed to CPT's competitors would allow them to gain an unfair competitive advantage over CPT. In addition, other trade secret information is incorporated in the materials sought by CMO and AUO, including CPT's customer lists, CPT's sales information (e.g., unit sales and average prices, as well as the specific models that were sold to specific customers), and CPT's license agreements (including the royalty rates paid certain companies). CPT takes great pains to protect and restrict access to this information even within CPT to those few with a need to know such information. Additionally, CPT was extremely vigilant throughout the litigation process to seek and gain protection for its confidential information. CPT negotiated strict protective orders to govern the litigation matters with LG and filed motions to close the courtrooms and seal the trial records when such information was used. As described below, this information was already acknowledged by the California and Delaware Courts to be valuable trades secret information, the disclosure of which would reek competitive harm on CPT and its customers. The Courts determined that the risk of harm to CPT and its customers outweighed the public's right of access.

In the Delaware action, CPT and its customers filed a Motion to Restrict Access to Trial During the Presentation of Certain Confidential Information and for an Order Sealing Corresponding Portions of the Trial Transcripts. This motion and its supporting declarations were filed under seal, along with subsequently filed redacted versions. These docket entries are identified below.

07/17/06 Docket 372: Motion to Seal to restrict access to trial during presentation of certain confidential info.

7/17/06: Docket 373: Sealed Declaration of Heather Fan

7/17/06: Docket 376: Sealed Declaration of Chien Kuo He

7/20/06: Docket 381: Sealed Declaration of Kay C.Y. Chiu

# HOWREY LLP

7/20/06:  Docket 388:  Redacted Version of Docket 372 Motion to Restrict Trial Access

7/20/06:  Docket 389:  Redacted Version of Docket 373 Declaration of Heather Fan

7/20/06:  Docket 390:  Redacted Version of Docket 376 Declaration of Chien Kuo He

8/11/06:  Docket 419:  Redacted Version of Docket 381 Declaration of Kay C.Y. Chiu

3/13/07:  Docket 490:  Order Denying as Moot Motion to Restrict Trial Access

The motion concerned CPT's highly confidential technical, financial and sales information, including mask files and design specifications, as well as certain customer information, and information concerning pricing, sales, warranty and returns, and sales trends. Judge Farnan granted on the record CPT's motion to close the courtroom and seal the corresponding portions of the record. The relevant transcript pages 159-163 and 292-299 are attached hereto as Exhibit A. Throughout the trial, where exhibits or testimony related to this confidential information, the court room was closed and the record sealed. Some but not all of the closures are reflected in the trial transcript. Since Judge Farnan had already ruled on the record and the court room had been closed accordingly throughout the trial as confidential information was used, he issued an order on March 13, 2007 denying as moot the motion to restrict trial access.

CPT also moved for the closure of the courtroom in the California Action. When the courtroom was not closed, CPT filed standing objections to use of trial exhibits containing confidential information and negotiated with opposing counsel to redact trial exhibits so that only the bare minimum of this information would be retained in the trial exhibits presented to the jury. Following the trial in California, CPT and the other defendants moved to seal portions of the trial transcript and trial exhibits. The California Court, in its December 5, 2006 order granting that Motion to Seal Portions of the Trial Transcripts and Trial Exhibits, acknowledged that the information sought to be sealed did constitute trade secrets, did have competitive value and if disclosed to competitors would cause CPT and the other defendants grave injury that far outweighed the public's interest in access. The Court acknowledged that CPT had made reasonable efforts to protect its confidential information and held that the use of some of the information in open court did not result in a loss of the trade secret status of this information. As part of her order, Judge Marshall also extended the applicability of the protective order in the case to post-trial and subsequent proceedings. The December 5 civil minutes order and the corresponding order docketed on January 18 are attached hereto as Exhibit B.

At this juncture, there is no protective order entered in your case. Though your letter and that of Irell and Paul Hastings stated that pending entry of a formal protective order, discovery can be designated confidential pursuant to Delaware Local Rule 26.2, this does nothing to allay CPT's and its customers' concerns or to eliminate the very real threat of losing control over its trade secret information as described above. There would be no way to control the proliferation

**HOWREY**LLP

of access to a multitude of third parties over whom CPT has no control or even knowledge, including law firms, experts, consultants, and third party vendors. As CPT and its customers are not parties to your litigation, they would have no opportunity to monitor use of the discovered material at other pre-trial or trial proceedings and would have no way of continually taking steps to insure the confidentiality and preservation of its trade secret information as they did in their own litigation. The protective orders that govern the California and Delaware Actions were very restrictive and some of those protections are not included in Delaware Local Rule 26.2 or guaranteed to be included in the protective order to be entered in your matter. For example, all of the protective orders governing the California and Delaware actions included a patent prosecution preclusion defined by subject area that precluded even outside counsel, experts, consultants and third party vendors from access to CONFIDENTIAL ATTORNEYS ONLY material if they were involved in patent prosecution. Furthermore, all the protective orders provided that, for any expert who was to receive access to CONFIDENTIAL or CONFIDENTIAL ATTORNEYS ONLY materials, the receiving party had to provide information about the expert's employment, consultancies, present or prior relationships with the receiving party, etc. to the disclosing party and provided for a period within which the disclosing party could object to the disclosure of confidential materials to the expert. Experts, consultants and third party vendors who had access to CONFIDENTIAL ATTORNEYS ONLY MATERIAL were also precluded from consulting or working for any party as a participant in any competitive decision making processes, including without limitation, in the areas of sales and marketing, product pricing, strategic planning, research and development, product development, or manufacturing of products related to the subject matter of the patents-in-suit. These provisions show further the great efforts CPT and its customers expended to protect their confidential trade secret information.

I want to take a look at the expert reports addressing validity and the claim construction material to confirm that these materials do not contain any confidential information of my clients. If they do not, we do not object to their production. I will turn to this next week as I was scheduled to be out of the office after today and through the holiday weekend. As indicated in your email, I am expecting that you will include this letter in your response to the motion to compel that I understand is due tomorrow. Please copy me on the discovery requests and the motion to compel as is required by the protective orders. If you and/or the Irell or Paul Hastings attorneys would like to discuss these issues further, I can be available next week.

Sincerely,

Teresa M. Corbin

Enclosures

cc:    Thomas C. Werner, Esq. (Irell & Manella LLP))
       S. Christian Platt, Esq. (Paul Hastings)

# EXHIBIT A

[1] be absolutely sure that there's no contact with
[2] the jurors on their case.
[3]    So you may even see them in the
[4] elevator the way our courthouse is structured,
[5] and they may not say anything to you, but
[6] they're not being rude. They're just following
[7] the instructions of the Court. So don't take
[8] any offense from not being acknowledged.
[9]    At this time, I'm going to ask the
[10] clerk to administer an oath to the jury on this
[11] case.
[12]    THE CLERK: Please stand and raise
[13] your right hand.
[14]    THE JURY,
[15] herein, having first
[16] been duly sworn on oath:
[17]    THE COURT: All right. You can
[18] just be seated for one moment.
[19]    We're going to recess between now
[20] and ten minutes after 2:00. During that time
[21] the clerk will show you how to get in and out of
[22] the jury room, which is basically my chambers
[23] door, the jury room is the first room on the
[24] right and she'll be able to show you how to do

[1] that.
[2]    There will be a lunch back there
[3] for you and then we'll come back in the
[4] courtroom and begin with the case, most likely
[5] the opening statements of the attorneys.
[6]    If you have any questions or you
[7] need to make a phone call, just ask the clerk of
[8] the Court. She'll be happy to accommodate you.
[9]    All right. If you'll exit through
[10] the left and follow the clerk, please, and we'll
[11] be back at ten minutes after 2:00.
[12]    (Jury leaving the courtroom at
[13] 1:36 p.m.)
[14]    THE COURT: All right. Be seated
[15] for a moment.
[16]    When we come back, we'll start
[17] with the video, or do you want to have opening
[18] statements and then the video?
[19]    MR. BONO: I think we agreed that
[20] the video would be first, Your Honor.
[21]    THE COURT: And you have someone
[22] who will present that?
[23]    MR. BONO: Yes.
[24]    THE COURT: Okay. So we come

[1] back. We'll do the video.
[2]    And then when the video is done,
[3] I'll recognize you, Mr. Bono, for your opening
[4] statement and then Mr. Rhodes.
[5]    Depending on the length of your
[6] opening statements, we either take a break, give
[7] you a chance to get set up for the presentation
[8] of evidence, or we'll go right into it.
[9]    Probably we'll take a little break maybe for ten
[10] minutes, so the jury can have a little rest,
[11] too, and then be ready to have your evidence.
[12]    Do you have any questions?
[13]    MS. GABLER: Your Honor, we have
[14] just one point. We filed with Your Honor a
[15] letter to have the courtroom sealed while
[16] certain confidential attorneys' eyes only
[17] information is presented.
[18]    And based on the exhibit exchange
[19] for demonstratives, we believe opening statement
[20] is one of those times we would like to have the
[21] courtroom cleared.
[22]    THE COURT: You can't have the
[23] courtroom cleared for the opening statements.
[24]    MS. GABLER: Even to the extent

[1] they are using demonstratives based on our —
[2] we're concerned.
[3]    We've got a bunch of lawyers in
[4] the courtroom, including some we know prosecute
[5] patents in this area. So we've got a concern
[6] about the population of the courtroom right now.
[7]    THE COURT: If it's an exhibit,
[8] you can turn it just towards the jury without
[9] showing it on the screen, if you have it.
[10]    If you don't, you should avoid it.
[11] But you can't close the courtroom to the public
[12] during an opening statement. You can close it
[13] during ^ discrete ^ portions of evidence
[14] presentation, but not during an opening
[15] statement.
[16]    But maybe you ought to work it out
[17] with the other side what it is that may be a
[18] problem.
[19]    MR. BONO: Your Honor, I don't
[20] know what Ms. Gabler is referring to. I haven't
[21] seen the letter, either.
[22]    I'm sort of in the dark.
[23]    THE COURT: I know you can't close
[24] the courtroom — I wouldn't close the courtroom

**Page 161**

[1] during opening statement.
[2]    MR. BONO: I'm unaware.
[3]    THE COURT: Well, then talk with
[4] her, and maybe you can work it out. And I'll
[5] take a look at the filing that came in this
[6] morning or something.
[7]    MS. GABLER: Yes.
[8]    THE COURT: All right. We'll be
[9] in recess until ten minutes after 2:00.
[10]    THE CLERK: All rise.
[11]    (Whereupon a luncheon recess was
[12] taken.)
[13]    THE COURT: All right. Bring the
[14] jury in.
[15]    MS. GABLER: Your Honor, can I
[16] raise one small point before they come in?
[17]    THE COURT: Yes.
[18]    MS. GABLER: In relation to
[19] closing the courtroom, we understood what you
[20] said about openings, Dr. Schlam is their first
[21] witness and he is going to be testifying about
[22] mask files and other highly confidential trade
[23] secret documents of CBT, so we would ask that
[24] when Dr. Schlam takes the stand the courtroom be

**Page 162**

[1] cleared at that time.
[2]    THE COURT: For the whole
[3] testimony?
[4]    MS. GABLER: Yes.
[5]    THE COURT: I'll have to see the
[6] specifics of the testimony so you can make a
[7] record that it's justified. What you attached
[8] to your affidavit was an associate's claim of
[9] confidentiality. I'll have to make specific.
[10] rulings that under both the Supreme Court case
[11] and the Third Circuit merits a closing, so you
[12] have to demonstrate —
[13]    MS. GABLER: On an exhibit by
[14] exhibit basis?
[15]    THE COURT: Pardon?
[16]    MS. GABLER: On an exhibit by
[17] exhibit basis or how would you like it
[18] presented?
[19]    THE COURT: It should be exhibits
[20] submitted so I can review them. Maybe we can
[21] get his testimony in and then save that for
[22] tomorrow. I'm sure he's going to be on longer
[23] than we have today and then we'll take it up at
[24] the end of the day. But it's difficult unless

**Page 163**

[1] you have a specific showing of a trade secret or
[2] competitive financial information and then show
[3] the harm to be able to close the courtroom
[4] without that specific showing, you just can't do
[5] it.
[6]    MS. GABLER: The documents we're
[7] talking about are mask files and technical
[8] specifications for CBT's products and those are
[9] going to be used throughout Dr. Schlam's
[10] testimony as we understand.
[11]    THE COURT: I don't know what —
[12] you know, that's just again a designation, a
[13] mask file. I actually have to see and
[14] understand.
[15]    Bring the jury in. It's very hard
[16] to close a courtroom in 2006. Case law is not
[17] sympathetic.
[18]    (Jury entering the courtroom at
[19] 2:16 p.m.)
[20]    THE COURT: You can be seated.
[21] Good afternoon. Be seated, please.
[22]    Members of the jury, we're going
[23] to prior to the opening statements of each side
[24] show a video that's been prepared for use in

**Page 164**

[1] patent litigation by the Federal Judicial Center
[2] in Washington. It's an education arm of the
[3] federal courts and this is to give juries kind
[4] of an introduction to the patent system, so
[5] we'll be playing that video now, I hope. We'll
[6] try to dim the lights.
[7]    (Video playing:)
[8]    SPEAKER: As you probably know by
[9] now this is a patent case, so you may be
[10] wondering how can I sit in judgment on a case
[11] like this when I'm not entirely sure what a
[12] patent is. We hope to answer that concern with
[13] this brief video which will give you some of the
[14] background needed to do your job.
[15]    This case will involve some
[16] special issues that the judge and lawyers will
[17] explain to you, but all patent cases involve
[18] some basics that you will learn about.
[19]    This video will discuss what
[20] patents are, why we have them, how people get
[21] them and why there are disputes that require us
[22] to call in a jury like you. We'll also show you
[23] what patents look like.
[24]    The United States Constitution

Page 290

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LG PHILIPS LCD CO., LTD., ) Volume 2
 Plaintiff,          )
v.               ) C.A. No. 05-292-JJF
TATUNG COMPANY, TATUNG )
COMPANY OF AMERICA, INC., )
CHUNGHWA PICTURE TUBES )
LTD., and VIEWSONIC )
CORPORATION,       )
 Defendants.        )

Tuesday, July 18, 2006
9:35 a.m.
Courtroom 4B
844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
 United States District Court Judge

APPEARANCES:

THE BAYARD FIRM
BY: RICHARD D. KIRK, ESQ.
 -and-
McKENNA, LONG & ALDRIDGE, LLP
BY: GASPARE J. BONO, ESQ.
BY: CASS W. CHRISTENSON, ESQ.
BY: ADRIAN P.J. MOLLO, ESQ.
BY: LORA BRZEZYNSKI, ESQ.
BY: TYLER GOODWYN, ESQ.
 Counsel for the Plaintiff

Page 291

APPEARANCES CONTINUED:

RICHARDS, LAYTON & FINGER
BY: ROBERT W. WHETZEL, ESQ.
 -and-
HOWREY LLP
BY: GLENN W. RHODES, ESQ.
BY: TERESA M. CORBIN, ESQ.
BY: JULIE S. GABLER, ESQ.
BY: STEVEN YOVITS, ESQ.
BY: HEATHER H. FAN, ESQ.
BY: SUZANNE B. DRENNON, ESQ.
 Counsel for the Defendants

Page 292

[1] THE COURT: All right. Be seated, [2] please. Good morning.

[3] I have had the opportunity to [4] review the further declarations submitted by [5] defendants concerning their motion to restrict [6] access during trial during the presentation of [7] certain confidential — information designated [8] as confidential and the most recent filing is [9] Docket Item 376. I'm going to grant the [10] application, crediting the declaration — is [11] that Mr. He?

[12] MS. CORBIN: He, Your Honor.

[13] THE COURT: Mr. He, that in the [14] context of business competition for defendants, [15] they would suffer a serious disadvantage if the [16] mask files or design specifications were to be [17] available to competitors.

[18] I'm going to ask that when these [19] items are discussed with a witness that it [20] be compacted into the presentation so that the [21] disruption to the public's access to the [22] courtroom is minimal and I'll leave that to [23] counsel to discuss with each other how to do [24] that.

Page 293

[1] And you'll have to alert me when [2] the need arises to protect this in-formation from [3] the public portion of trial.

[4] MR. BONO: Your Honor, I just want [5] to note for the record that in light of Your [6] Honor's ruling it is going to be very difficult [7] to segregate out those portions of the trial [8] where these materials are going to be used and [9] not used and referred to, it's going to be [10] virtually impossible to do that in just segments [11] without having a disruption, clearing the [12] courtroom and not clearing the courtroom, and [13] I'm very concerned about that. That's just the [14] inevitable fact of how this case, these [15] documents are going to be interlaced in this [16] trial proceeding.

[17] Secondly, I know Your Honor just [18] ruled, but we object to their pre-sentation and [19] it strikes us that there are two paragraphs in [20] this declaration and it's facially insufficient [21] to overrule the first amendment right of access [22] to this court on such con-clusionary and [23] speculative statements of Mr. He in only [24] paragraph ten and 11.

Page 294

[1] We're not disputing that these are [2] confidential and kept confidential, but the [3] question is whether these would cause serious [4] competitive harm if revealed at this point, and [5] I, quite frankly I don't see any showing here. By [6] their own admission in court yesterday, as I [7] understand their position, they say their [8] technology is the use of twenty year old [9] Japanese technology. I can't fathom how the [10] disclosure of twenty year old technology [11] according to their position would cause them [12] irreparable competitive harm.

[13] Secondly, even if they're using, [14] which we say they're using the '002 [15] patent, that [15] was disclosed in 1991 when the patent issued. [16] Again, that's fifteen year old technology.

[17] They're trying to say here that [18] the leading LCD producers in the world are [19] going to copy fifteen and twenty year old [20] technology from a lesser com-petitor in the industry. I [21] can't imagine any scenario where Samsung, for [22] example, who is the leading producer in the [23] world is going to copy CPT's twenty year old [24] technology. I can't imagine that the second

Page 295

[1] leading producer in the world, LG Philips, is [2] going to copy their tech-nology.

[3] THE COURT: I don't think it's the [4] technology that they're claiming requires [5] protection. Unless I'm mis-reading this, as I [6] understand it, it's the production devices and [7] fabrication

process which as I understand it, [8] there is technology, but then you have [9] particular — defendants have particular [10] processes that they use to implement that [11] technology in the manuf-acturing.

[12] MS. CORBIN: Yes, Your Honor. And [13] the mask files, though certain por-tions of those [14] mask files are being culled out to illustrate [15] the ring technology, these are the blueprints of [16] the actual products, so there is more details [17] discernable in these mask files than just the [18] things that plaintiff or I may want to cull out [19] in relationship to the claims that are at issue [20] here, so these are detailed blueprints of the [21] actual products when you see these pictures from [22] the mask file.

[23] So the details, there is lots of [24] details in those pictures and there is no way to

Page 296

[1] separate out, you know, yes, the guard ring [2] technology is old, but how they actually [3] implement the guard ring and all the other [4] details that will be visible in the mask files [5] is not even related to the case, but we cannot [6] present the issues that we need to address [7] related to the claims without putting those mask [8] files up for the jury to see.

[9] THE COURT: That's what I [10] understood from the declaration.

[11] MS. CORBIN: Yes.

[12] MR. BONO: Your Honor, I don't see [13] that — they're claiming that they have some [14] unique process. What they're claiming is their [15] design specifications and their mask files, [16] which are how their product is made with [17] respect to inner and outer guard rings [18] somehow is super secret and is going to, they say, [19] harm them competitively.

[20] They have no showing here. No [21] showing on this — on this presentation of how [22] they're harmed competitively. They have no [23] showing to say that any competitors in the [24] industry have not already reverse engineered

Page 297

[1] their products.

[2] They speculate that it would be [3] difficult to reverse engineer. They don't say [4] cannot be reverse engineered.

[5] Where is the proof that the [6] competitors in the industry, the main [7] competitors Samsung, LG Philips and others AUO, [8] CMO have not already reverse engineered their [9] products? Where's the evidence that they can't [10] reverse engineer other competitors' pro-ducts?

[11] THE COURT: You have no witnesses,

[12] but let me ask you a question: What's the harm [13] to you if their confidential information is [14] produced?

[15] MR. BONO: Your Honor, the harm to [16] me is the first amendment right and freedom of [17] the press.

[18] THE COURT: Well, you don't [19] represent the press.

[20] MR. BONO: I understand, Your [21] Honor. And there's no showing on this — [22] on this presentation.

[23] THE COURT: I understand that, but [24] what is — here's the question: How is your

### Page 298

[1] client harmed by this decision?

[2] MR. BONO: My client?

[3] THE COURT: Your client gets to [4] have full presentation, right?

[5] MR. BONO: Pardon?

[6] THE COURT: Your client gets to [7] have a full presentation.

[8] MR. BONO: Yes. Yes, Your Honor. [9] I understand, but —

[10] THE COURT: So —

[11] MR. BONO: The issue here is where [12] are they of sufficient competitive harm to close [13] this courtroom for a public trial? And I [14] represent without — on this showing that they [15] have not met the very high standard to close a [16] public courtroom in this country.

[17] THE COURT: I understand.

[18] MR. BONO: They made no showing.

[19] THE COURT: But that would be a [20] great argument if you were representing the Wall [21] Street Journal. It may be a great argument. It [22] would certainly be an argument I'd have to [23] consider. [24] But you don't represent them.

### Page 299

[1] MR. BONO: But, yeah, but my [2] client is entitled to a public trial in this [3] courtroom.

[4] THE COURT: Your client is getting [5] a public trial, so I made a decision. And [6] you're eating up your time for trial, which is [7] not good, because we're on the short time [8] allocation.

[9] So I understand your objection. [10] It's made.

[11] If you want to submit something in [12] writing in response to this, you can do that.

[13] But absent some innovator coming [14] forward to challenge the decision, I'm not going [15] to make any further finding. I'm going to [16] accept the declaration, and direct counsel to [17] work to minimize, again, out of concern for a [18] public trial, which plaintiff then

will be [19] interested in working toward.

[20] So that when material is going to [21] be displayed, the closing will be at a minimum [22] and minimally.

[23] All right. Ready for the jury?

[24] MS. CORBIN: Yes, Your Honor.

### Page 300

[1] THE COURT: Do you have your first [2] witness, Mr. Bono?

[3] MR. BONO: Yes, Your Honor.

[4] THE COURT: All right. Let's [5] bring the jury in.

[6] Mr. Bono and whoever wants to come [7] to side-bar, can I see you for a minute?

[8] (Beginning of conference held at [9] side-bar.)

[10] THE COURT: You know, the old [11] story, I read an article and the article said [12] that the ABA Jury Project has come up with some, [13] I guess, they're rules or something. I'm not [14] sure what they're going to classify them as.

[15] They're going to vote on them in [16] the House of Delegates in 2007. One of which is [17] a practice that I'm endeared to, which is [18] talking to juries after trials. And they're [19] going to make it unethical for a judge to talk [20] about anything substantive with the jury after a [21] trial.

[22] Not because of the effect it has [23] on the trial, but because of the future effect [24] on the potential service of those jurors. So

### Page 301

[1] that comes out of the Jury Project.

[2] One of the recommendations in the [3] Jury Project is that we let jurors take notes. [4] So since I don't like two or three of the [5] recommendations, I have decided to reject all of [6] the ABA's Jury Project recommendations. I know [7] it sounds trite, indicative.

[8] MS. GABLER: But what the heck.

[9] THE COURT: But it's the only [10] change I get if they want to play games and call [11] the judge unethical. I think it was the [12] greatest continuing legal education available to [13] attorneys and judges to hear what jurors said [14] about it.

[15] But they basically said, You can't [16] discuss anything substantive about the trial. [17] You can't tell them anything that was excluded [18] from trial. Basically what you can do is have a [19] bland conversation, How was your day?

[20] MR. BONO: Right.

[21] THE COURT: So I've rejected the [22] Jury Project in toto.

[23] MR. BONO: Fair enough.

[24] THE COURT: So I didn't start this

### Page 302

[1] trial with notes.

[2] MS. GABLER: We noticed that, Your [3] Honor.

[4] THE COURT: Yes. The jury asked, [5] Can we take notes? I'm telling them no.

[6] MR. BONO: That's fine.

[7] THE COURT: And juries get it. [8] When you look at the notes afterwards, typically [9] they're not that substantive. And, in fact, [10] I've learned in the last month or so that one of [11] the, I think it's the judges on the Federal [12] Circuit asked to see jury notes.

[13] That's not good.

[14] MS. GABLER: To see if they [15] misunderstood things in looking at them?

[16] THE COURT: So we, as a practice, [17] destroyed them here. We used to save them and [18] seal them, but because they're personal to the [19] jurors, that's what the instruction says, we [20] destroy them.

[21] So for a lot of reasons I just [22] wanted to let you know they wanted to take [23] notes. I'm not letting them.

[24] MR. BONO: Okay.

### Page 303

[1] THE COURT: But mostly it's [2] because I'm peaked.

[3] MR. BONO: I understand. Your [4] Honor.

[5] THE COURT: I can't wait until [6] they have that project. Now, they have this new [7] project.

[8] They want to find out — only [9] certain judges are going to be able to do patent [10] cases. That's the new thing they're passing, [11] and they're going to ask who's volunteering.

[12] I'm not volunteering. I don't [13] even like patents.

[14] Why should I do this work? You [15] know how easy this job is without patents? And [16] they think judges are actually going to [17] volunteer for them? Anybody that volunteers for [18] a caseload of patents you've got to be worried [19] about.

[20] That's what I'm thinking. I'm [21] sorry.

[22] Go ahead.

[23] MR. BONO: Your Honor, in terms of [24] this next witness, since his testimony is going

### Page 304

[1] to be basically 90 percent involving the [2] confidential information, I would suggest that [3] we not to have a disruption.

[4] THE COURT: Start at the [5] beginning?

[6] MR. BONO: To do it now for this [7]

# EXHIBIT B

DOCKETED ON CM

DEC - 5 2006

BY _____ 053

Priority ✓
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
JS-2/JS-3 _____
Scan Only _____

SCANNED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No. CV 02-6775 CBM (JTLx)                    Date: December 4, 2006

Title:   LG.Philips LCD Co., Ltd. v. Tatung Co. of America, et al.

DOCKET ENTRY
ORDER GRANTING DEFENDANTS' MOTION TO SEAL PORTIONS OF THE TRIAL
TRANSCRIPT AND TRIAL EXHIBITS; and GRANTING DEFENDANTS' *EX PARTE*
APPLICATION TO FILE UNDER SEAL EXHIBITS A AND B OF MOTION TO SEAL
PORTIONS OF THE TRIAL TRANSCRIPT AND TRIAL EXHIBITS

PRESENT:

Hon. CONSUELO B. MARSHALL, JUDGE

JOSEPH LEVARIO                     none present
Deputy Clerk                       Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:

N/A                                        N/A

**PROCEEDINGS:**

On November 16, 2006, Defendants Chunghwa Picture Tubes, Ltd. and Tatung Company
and Tatung Co. of America filed a Motion to Seal Portions of the Trial Transcript and Trial
Exhibits. Defendants request an order from the court sealing portions of the trial transcript and
trial exhibits and extending the applicability of the Confidentiality Stipulation and Protective
Order (the "Confidentiality Order") to the disclosure and use of Confidential or Confidential
Attorneys Only material in post-trial and in subsequent proceedings. In addition, on the same
day, Defendants filed an *ex parte* Application to file under seal two exhibits filed in support of
its Motion. No opposition has been filed.

Defendant CPT argues that it has been compelled to reveal information about how it
makes its products in order to defend itself against LPL's infringement claims. According to
CPT, its detailed array manufacturing procedures, mask files, and process information was both
discussed and described in several trial exhibits, as well as in the testimony of several trial
witnesses. Defendant has identified those portions of the trial transcript which contain
information about how CPT builds its LCD modules, as well as information about CPT's
relationships with its customers, including the terms of licensing agreements between CPT and
its customers.

The Ninth Circuit has affirmed that the right of access to judicial records is not absolute.
Although the presumption of public access is strong, a party seeking to seal a judicial record may
overcome this presumption by meeting the "compelling reasons" standard. *See* Foltz v. State



Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003). "In general, 'compelling reasons ' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to . . . release trade secrets." Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978); *see also* Nixon, 435 U.S. at 598 ("courts have refused to permit their files to serve as . . . . sources of business information that might harm a litigant's competitive standing.").

In California, "trade secrets" are defined as:

[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code 3426.1(d)(2005). CPT argues that the information it has identified in Exhibits A and B to the Motion are trade secrets under California law because the information derives some value from not being generally known to the public and because of the company's efforts to maintain the secrecy of the information. Regarding the mask files, CPT maintains the secrecy of its mask files in its dealing with other companies, and even within CPT the files are keep on computers connected to an isolated server, separate from the company's main server; moreover, the only design department employees who have access to the files are those who use and revise mask files. Regarding the design specifications, CPT protects its design specifications from disclosure by keeping the specs on a password-protected computer system; moreover, only personnel involved with a particular product have access to the documents related to that product. CPT argues that witness testimony regarding its manufacturing and design processes are valuable for its competitors to the extent that such testimony reveals nonpublic information about particular steps taken and specific materials used to build CPT's LCD products. Regarding its process flows, CPT protects such information from disclosure by not divulging such information to other companies, and by restricting access to such information within the company. Given the competitive nature of the information and CPT's reasonable efforts to maintain the secrecy of the information, the Court finds that this information is "trade secrets," as per California law. *See* Cal. Civ. Code 3426.1(d)(2005).

Regarding its customer data, sales data, and license agreements, CPT argues that such information should be placed under seal in order to protect CPT from its competitors' efforts to interfere with its customer relationships. CPT cites *Morlife v. Perry*, a California Court of Appeals case, for the proposition that customer data is a trade secret since "disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who might only be interested [in such a product]." 56 Cal. App. 4th 1514, 1522 (Cal. App. 1997). CPT has filed supporting declarations which attest that CPT does not disclose its pricing, sales data, or customer data to the public nor to any other third party. CPT also attests that its license agreements are stored under lock, and only one CPT employee has the key for that cabinet; these agreements are also protected by confidentiality agreements between CPT and its customers. The Court finds that such information is also properly qualified as trade secrets according to California law.

During these proceedings, CPT has taken steps to protect the confidentiality of its trade

secrets by moving for closure of the courtroom, filing standing objections to trial exhibits, and attempting to redact information from trial exhibits which it thought would compromise its trade secrets. In prior litigation between the parties, CPT also applied for and obtained an order sealing portions of the transcript and limiting access to the courtroom during the presentation of testimony which would compromise its trade secrets. The Court finds that these efforts were reasonable, and that any disclosure of trade secrets during trial does not abrogate Defendant's confidentiality. *See* Gates Rubber Co. v. Bando Chemical Indus., Ltd., 9 F.3d 823, 848-849 (10th Cir. 1993) (finding that information retained its secret status despite being disclosed at hearing, where plaintiff evidenced continuing intent to maintain its secrecy by acting to seal record).

Having determined that the mask files, design specifications, customer data, sales data, and license agreements are trade secrets, and therefore present a compelling reason for being shielded from public disclosure, as per *Kamakana*, the Court turns to a consideration of the competing public and private interests at stake.

The only public use to which this information could be put is commercial. According to Defendants, "[a] competitor could use CPT's mask files, design specifications and/or process flows to modify its materials, processes, or designs to compete with CPT. Once another company obtains possession of [ ] CPT's design and process information, it would not need to perform design work at all, but could immediately begin producing LCD modules." Defs.' Mot. 11. The Court finds that the disclosure of this information would allow one of CPT's competitors, or even a third-party, to duplicate CPT's products without investing its own time and resources in developing these products for itself. Similarly, the disclosure of CPT's sales data would allow a competitor to seek to undercut CPT's prices both with its existing customers, and with the public at large. As such, this information should be placed under seal, so as to protect Defendants' interests in its trade secrets.

This Court has previously accepted the parties' private interest in confidentiality in its approval of the parties' Confidentiality Stipulation and Protective Order ("Confidentiality Order"). The Confidentiality Order, entered on July 15, 2003, provided that the parties would designate as "Confidential or Confidential Attorneys Only" any documents or materials purported to contain, reflect or disclose any trade secret or other confidential information. The Order further prescribes procedures for retrieving and returning inadvertently produced confidential materials. The Order applied, however, exclusively to pretrial proceedings, filings, and information exchanges. Defendant now asks this Court to enter an order extending the applicability of the Confidentiality Order to the disclosure and use of Confidential or Confidential Attorneys Only material in post-trial and in subsequent proceedings. The Court finds that, based on the foregoing, such an extension of the protective order is appropriate, and hereby GRANTS the request to extend the applicability of the Confidentiality Order.

Accordingly, the Court **GRANTS** Defendants' Motion to Seal Portions of the Trial Transcript and Trial Exhibits. CPT has identified the portions of the transcript to which it seeks to have sealed in Exhibits A and B to the Motion. CPT has identified the affected trial exhibits in footnotes 9 and 10 of the Motion; these include Trial Exhibits 421, 422, 448, 462, 529, 1124, 1144, 1159, 1182, 1413, 1435, 1520, 1568, 1668, 1673, 1681, 1687, 1688, 1690, 1692, 1693, 1702-1704, 1706-1709, 1742-1749, 1754-1757, 1886, 2031, 2035, 2039, 2232, 2233, 2234, 2468, 2499, 2626, 2711, 2718, and 2724. Moreover, the Court **GRANTS** Defendants' request to extend the applicability of the parties' Confidentiality Order.

Defendants have also filed an *ex parte* Application to file under seal two exhibits (Exhibits A and B) filed in support of its Motion.  Although the Application indicates that Plaintiff LG.Philips opposes the *ex parte* Application, no opposition has been received by this Court.  Local Rule 79-5.1 provides that:  "[N]o case or document shall be filed under seal without prior approval by the Court" and provides the procedure for seeking court approval, with which CPT has complied.  The Court finds that public disclosure of the information contained in the two supporting exhibits would frustrate the purpose of the Court's Order sealing portions of the transcript and trial exhibits.

Accordingly, the Court **GRANTS** Defendants' *Ex Parte* Application to File Under Seal Exhibits A and B of Motion to Seal Portions of the Trial Transcript and Trial Exhibits.

**IT IS SO ORDERED.**

Initials of Deputy Clerk

cc:      Judge Marshall



1  Teresa M. Corbin (SBN 132360)
   corbint@howrey.com
2  Glenn W. Rhodes (SBN 177869)
   rhodesg@howrey.com
3  HOWREY LLP
   525 Market Street, Suite 3600
4  San Francisco, California  94105-2708
   Tel:   (415) 848-4900
5  Fax:   (415) 848-4999

6  Christopher A. Mathews (SBN 144021)
   mathewsc@howrey.com
7  Michael L. Resch (SBN 202909)
   reschm@howrey.com
8  HOWREY LLP
   550 South Hope Street, Suite 1100
9  Los Angeles, California  90071-2627
   Tel:   (213) 892-1800
10 Fax:   (213) 892-2300

11 Attorneys for Defendant, Counterclaimant and
   Third-Party Plaintiff CHUNGHWA PICTURE TUBES, LTD.

12

                   UNITED STATES DISTRICT COURT

13

                   CENTRAL DISTRICT OF CALIFORNIA

14

15 LG. PHILIPS LCD CO., LTD.,              Case No. CV-02-6775 CBM (JTLx)
                                           Action filed:  August 29, 2002
16              Plaintiff,

17      vs.

   TATUNG CO. OF AMERICA,                  [PROPOSED] ORDER GRANTING
18 TATUNG COMPANY AND                      DEFENDANTS' MOTION TO SEAL
   CHUNGHWA PICTURE TUBES, LTD.,           PORTIONS OF THE TRIAL
19                                         TRANSCRIPT AND TRIAL EXHIBITS
                Defendants.

20 ─────────────────────────────

   CHUNGHWA PICTURE TUBES, LTD.,
21
                Counterclaimant and
22              Third-Party Plaintiff,

        vs.
23                                         Trial:  October 10, 2006
   LG. PHILIPS LCD CO., LTD.,              Time:   10:00 a.m.
24
                Counterdefendant,          Pre-Trial Conf.:  October 3, 2006
25                                         Time:   9:30 a.m.
   AND LG ELECTRONICS, INC.,
26                                         Courtroom:  2
                Third-Party Defendant.     Judge:   Hon. Consuelo B. Marshall

27

28

HOWREY LLP

      [PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO SEAL PORTIONS OF THE RECORD

DM_US\8410366.v1

---

FILED
CLERK, U.S DISTRICT COURT

JAN 17 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Only

DOCKETED ON CM

JAN 18 2007

BY                053

1535

1   Based upon Defendants' Motion to Seal Portions of the Trial Transcript and Trial

2   Exhibits and for good cause shown,

3   IT IS HEREBY ORDERED that:

4   The portions of the trial transcript and initial exhibits identified by Defendants as

5   confidential shall be sealed. Further, the provisions of the "Amended Confidentiality

6   Stipulation and Protective Order" shall govern the handling of any document,

7   information or other things exchanged by the parties or used in the trial proceedings.

8

9

    JAN 17 2007

10  Dated: _____ ~~2006~~          _____
                                                Hon. Consuelo B. Marshall
11                                              U.S. DISTRICT JUDGE

12

13  Respectfully submitted,

14  HOWREY LLP
    Teresa M. Corbin
15  Christopher A. Mathews

16

17  By: _____

18      Teresa M. Corbin

19  Attorneys for Defendant, Counterclaimant
    and Third-Party Plaintiff
20  CHUNGHWA PICTURE TUBES, LTD.

21

22

23

24

25

26

27

28

1

[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO SEAL PORTIONS OF THE RECORD

DM_US\8410366.v1

1

2

3                    **PROOF OF SERVICE**

4  STATE OF CALIFORNIA        )
                              )  ss.:
5  COUNTY OF LOS ANGELES      )

6

7        I am employed in the County of Los Angeles, State of California.  I am over the
   age of 18 and not a party to the within action.  My business address is 550 S. Hope
8  Street, Suite 1100, Los Angeles, CA  90071.

9        On November 16, 2006, I served the within:

10 **[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO SEAL
   PORTIONS OF THE TRIAL TRANSCRIPT AND TRIAL EXHIBITS**

11

12 by placing a true copy thereof in a sealed envelope(s) addressed as stated below.

13    Andrea Sheridan Ordin, Esq.        Mark Krietzman, Esq.
      David L. Schrader, Esq.            Frank Merideth, Esq.
14    Morgan Lewis & Bockius LLP         Terry Clark, Esq.
      300 South Grand Avenue             Valerie Ho., Esq.
15    Suite 2200                         Greenberg Traurig, LLP
      Los Angeles, CA 90071-3132         2450 Colorado Avenue
16                                       Suite 400E
                                         Santa Monica, California 90404
17

18 ☒    (PERSONAL SERVICE) I caused each such envelope to be delivered by hand to
        each interested party.

19        I declare under penalty of perjury that I am employed in the office of a member of
   the bar of this Court at whose direction the service was made and that the foregoing is
20 true and correct.

21        Executed on November 16, 2006, at Los Angeles, California.

22

23 Christine Kehlenbeck
        (Type or print name)                              (Signature)

24

25

26

27

28

EXHIBIT W

# Paul*Hastings*

Paul, Hastings, Janofsky & Walker LLP
3579 Valley Centre Drive
San Diego, CA 92130
telephone 858-720-2500 • facsimile 858-720-2555 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Frankfurt
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Tokyo
Washington, DC

(858) 720-2524
christianplatt@paulhastings.com

August 1, 2008                                                                      59322.00008

**VIA ELECTRONIC MAIL (CCHRISTENSON@MCKENNALONG.COM)**

Cass Christenson, Esq.
McKenna, Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006-1108

Re:    *LG. Display Co., Ltd. v. AU Optronics Corp., et al.,*
       U.S.D.C., District of Delaware, Consol. Case Nos. 06-726-JJF and 07-357

Dear Cass:

Pursuant to Thomas C. Werner's July 30, 2008 letter to you, I write to inform you that
AUO also requests that LGD immediately seek the consent of all parties and non-parties
whose confidential documents and/or information was (were) produced in *LG.Philips
LCD v. Chunghwa Picture Tubes*, United States District Court, Central District of California,
Civil Action No. 02-6775 CBM (consolidating Civil Action Nos. 02-6775, 03-2886, 03-
2866, 03-2884, 03-2885); *LG.Philips LCD v. Tatung*, United States District Court, District
of Delaware, Civil Action No. 05-292 JJF; and/or *any* other action in which LGD asserted
any patents which LGD now asserts against AUO.[1]

As you know, AUO has already propounded discovery seeking the documents and/or
information referred to in this letter and Mr. Werner's letter.[2]  For instance, Document
Request Nos. 66-67 seek all documents related to LGD and/or LGDA's litigation with
Positive Technologies, Inc., including without limitation, interrogatory responses,
pleadings, and all communications related to the litigation.  Document Request No. 127
seeks all documents regarding any charge of infringement made by LGD and/or LGDA
against any person or entity with respect to the patents-at-issue in the above-captioned

---

[1] We understand that LGD asserted in other lawsuits some of the same patents it asserts against AUO in the
above-captioned litigation, including without limitation, U.S. Patent Nos. 4,624,737; 5,825,449; and
5,019,002.

[2] Mr. Werner's letter identifies the following materials as responsive to CMO's discovery requests:  expert
reports and declarations; transcripts and videos of testimony given by LGD in prior lawsuits; transcripts of
hearings in prior lawsuits that related to the patents-in-suit; all pleadings and briefs regarding the patents-in-
suit, including claim construction and summary judgment filings; trial-related documents, such as motions in
limine, witness lists, exhibits lists, trial briefs, and transcripts of trial proceedings; discovery requests and
responses served or received by LGD; any document produced or received by LGD relating to the patents-
in-suit; and any other materials provided by anyone in the prior lawsuits relating to the patents-in-suit,
including materials referring to the validity, enforceability, ownership, and inventorship of the subject
patents.  Similarly, all such materials are responsive to AUO's discovery requests.
LEGAL_US_W # 59615179.1

**Paul**Hastings

Cass Christenson, Esq.
August 1, 2008
Page 2

matter or any related patents, including without limitation, all subsequent negotiations or
communications related to the charge of infringement. Moreover, Document Request
No. 128 seeks any and all documents regarding the *Chunghwa Picture Tubes* litigation, such
as pleadings, discovery requests and responses, deposition transcripts, and court orders
and transcripts.

To date, we have not yet received the requested information. Because time is of the
essence, we are requesting that LGD advise the parties and non-parties of LGD's
obligation to produce confidential documents and/or information in response to AUO's
discovery. We further request that LGD commence this effort no later than August 1,
2008; that LGD copy us on any correspondence to the parties and non-parties with
respect to the matters addressed in this letter; and that LGD otherwise keep us timely
informed of its progress with respect to this issue.

AUO agrees that any confidential documents and/or information produced by LGD in
response to the above-stated document requests will be treated as "Confidential-
Attorneys' Eyes Only," in accordance with the terms of the Interim Protective Order (and
the Final Protective Order, once entered by the Court). If you have any questions, please
do not hesitate to contact me using the above-listed information. Thank you for your
attention to these matters.

Very truly yours,

S. Christian Platt
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

cc:     Jonathan S. Kagan, Esq. (jkagan@irell.com)
        M. Craig Tyler (ctyler@wsgr.com)
        Karen L. Pascale, Esq. (kpascale@ycst.com)

EXHIBIT Y

# McKenna Long
# & Aldridge LLP
Attorneys at Law

Albany
Atlanta
Brussels
Denver
Los Angeles

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

Gaspare Bono
(202) 496-7211

EMAIL ADDRESS
gbono@mckennalong.com

August 11, 2008

## VIA FIRST-CLASS EMAIL

Teresa M. Corbin, Esq.
HOWERY SIMON ARNOLD & WHITE, LLP
525 Market Street, Suite 3600
San Francisco, CA 94105-2708

Re:    LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;
       C.A Nos. 06-726-JJF and 07-357-JJF

Dear Ms. Corbin:

We represent LG Display Co., Ltd. ("LG Display") in the above-referenced consolidated patent infringement cases involving other parties, including Chi Mei Optoelectronics Corporation ("CMO") and AU Optronics Corporation ("AUO") ("AUO / CMO Case"). The AUO / CMO Case involves several U.S. patents asserted by LG Display against AUO and CMO, including U.S. Patent Numbers 4,624,737; 5,825,449; and 5,019,002 (the "LG Display Patents"). CMO and AUO have requested that LG Display produce in discovery in the AUO / CMO Case various documents, such as briefing, fact and expert depositions, hearing transcripts, and expert reports from prior cases, including: LG.Philips LCD Co., Ltd. v. Chunghwa Picture Tubes Ltd., 02-6775 CBM (C.D. Cal.) (which represents the consolidation of Civil Actions 02-6775, 03-2886, 03-2866, 03-2884, 03-2885) and LG.Philips LCD Co., Ltd. v. Tatung Co., 05-292 JJF (D. Del.) (collectively, the "LGD Prior Litigations"). Enclosed are copies of a July 30, 2008 letter from Tom Werner that summarizes the discovery sought by CMO, and an August 1, 2008 letter that summarizes AUO's request for such information (the "Requested Discovery").

LG Display has objected to providing this discovery on various grounds. Without waiving our objections, and reserving all rights, including as to any use or admissibility in this case of the Requested Discovery, we have agreed to provide certain portions of the Requested Discovery sought by CMO and AUO. Some of the Requested Discovery, however, may be designated confidential and/or include information that is protected under a protective order or other order in the LGD Prior Litigations. A protective order in the prior case may, for example, state that any discovery designated under that order cannot be disclosed outside of that case or used for any purpose other than that prior case. LG Display, therefore, does not intend to produce any such information without the consent of the party who produced or designated that information confidential in the prior case.

Teresa M. Corbin, Esq.
HOWERY SIMON ARNOLD & WHITE, LLP
August 11, 2008
Page 2


CMO and AUO have requested that we submit this letter to you to advise you of the Requested Discovery sought by AUO and CMO. Therefore, we are sending this letter to notify you of the Requested Discovery sought by AUO and CMO and determine whether you consent on behalf of Chunghwa Picture Tubes Ltd. to provide any or all of the Requested Discovery that Chunghwa Picture Tubes Ltd. produced, filed, or served during any LGD Prior Litigations. Please let us know whether you have any objection to LG Display's disclosure of any of the Requested Discovery sought by AUO or CMO. In addition, if you have any objection or believe that any conditions are required as to any such disclosure, please explain specifically your position. We need to know, for example, whether you agree to production of all of the Requested Discovery or whether you object to production of any Requested Discovery.

For any Requested Discovery that we produce, we also need to know whether you believe that any such information should be designated as confidential in our production. The enclosed letters from Mr. Platt (AUO) and Mr. Werner (CMO) set forth the positions of AUO and CMO concerning protection of Requested Discovery produced by LG Display in the AUO / CMO Case if documents are designated confidential. Both LG Display and CMO have filed motions for entry of a protective order, which are fully briefed and awaiting a decision. Pending entry of a formal protective order, discovery can be designated confidential pursuant to Delaware Local Rule 26.2.

Thank you for your anticipated response and cooperation regarding this matter.

Very truly yours,

Gaspare J. Bono


GJB/jag
Encls.

cc:    Thomas C. Werner, Esq. w/encls.
       S. Christian Platt, Esq., w/encls.

DC:50564625.1

**Paul**Hastings

Paul, Hastings, Janofsky & Walker LLP
3579 Valley Centre Drive
San Diego, CA 92130
telephone 858-720-2500 • facsimile 858-720-2555 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Frankfurt
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Tokyo
Washington, DC

(858) 720-2524
christianplatt@paulhastings.com

August 1, 2008                                                                59322.00008

VIA ELECTRONIC MAIL (CCHRISTENSON@MCKENNALONG.COM)

Cass Christenson, Esq.
McKenna, Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006-1108

Re:     *LG. Display Co., Ltd. v. AU Optronics Corp., et al.,*
        U.S.D.C., District of Delaware, Consol. Case Nos. 06-726-JJF and 07-357

Dear Cass:

Pursuant to Thomas C. Werner's July 30, 2008 letter to you, I write to inform you that AUO also requests that LGD immediately seek the consent of all parties and non-parties whose confidential documents and/or information was (were) produced in *LG.Philips LCD v. Chunghwa Picture Tubes,* United States District Court, Central District of California, Civil Action No. 02-6775 CBM (consolidating Civil Action Nos. 02-6775, 03-2886, 03-2866, 03-2884, 03-2885); *LG.Philips LCD v. Tatung,* United States District Court, District of Delaware, Civil Action No. 05-292 JJF; and/or *any* other action in which LGD asserted any patents which LGD now asserts against AUO.[1]

As you know, AUO has already propounded discovery seeking the documents and/or information referred to in this letter and Mr. Werner's letter.[2] For instance, Document Request Nos. 66-67 seek all documents related to LGD and/or LGDA's litigation with Positive Technologies, Inc., including without limitation, interrogatory responses, pleadings, and all communications related to the litigation. Document Request No. 127 seeks all documents regarding any charge of infringement made by LGD and/or LGDA against any person or entity with respect to the patents-at-issue in the above-captioned

---

[1] We understand that LGD asserted in other lawsuits some of the same patents it asserts against AUO in the above-captioned litigation, including without limitation, U.S. Patent Nos. 4,624,737; 5,825,449; and 5,019,002.

[2] Mr. Werner's letter identifies the following materials as responsive to CMO's discovery requests: expert reports and declarations; transcripts and videos of testimony given by LGD in prior lawsuits; transcripts of hearings in prior lawsuits that related to the patents-in-suit; all pleadings and briefs regarding the patents-in-suit, including claim construction and summary judgment filings; trial-related documents, such as motions in limine, witness lists, exhibits lists, trial briefs, and transcripts of trial proceedings; discovery requests and responses served or received by LGD; any document produced or received by LGD relating to the patents-in-suit; and any other materials provided by anyone in the prior lawsuits relating to the patents-in-suit, including materials referring to the validity, enforceability, ownership, and inventorship of the subject patents. Similarly, all such materials are responsive to AUO's discovery requests.
LEGAL_US_W # 59615179.1

**Paul** *Hastings*

Cass Christenson, Esq.
August 1, 2008
Page 2

matter or any related patents, including without limitation, all subsequent negotiations or communications related to the charge of infringement. Moreover, Document Request No. 128 seeks any and all documents regarding the *Chunghwa Picture Tubes* litigation, such as pleadings, discovery requests and responses, deposition transcripts, and court orders and transcripts.

To date, we have not yet received the requested information. Because time is of the essence, we are requesting that LGD advise the parties and non-parties of LGD's obligation to produce confidential documents and/or information in response to AUO's discovery. We further request that LGD commence this effort no later than August 1, 2008; that LGD copy us on any correspondence to the parties and non-parties with respect to the matters addressed in this letter; and that LGD otherwise keep us timely informed of its progress with respect to this issue.

AUO agrees that any confidential documents and/or information produced by LGD in response to the above-stated document requests will be treated as "Confidential-Attorneys' Eyes Only," in accordance with the terms of the Interim Protective Order (and the Final Protective Order, once entered by the Court). If you have any questions, please do not hesitate to contact me using the above-listed information. Thank you for your attention to these matters.

Very truly yours,

S. Christian Platt
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

cc:     Jonathan S. Kagan, Esq. (jkagan@irell.com)
        M. Craig Tyler (ctyler@wsgr.com)
        Karen L. Pascale, Esq. (kpascale@ycst.com)

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7956
FACSIMILE (310) 203-7199
lwerner@irell.com

July 30, 2008

<u>**VIA E-MAIL**</u>

Cass Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C. 20006
cchristenson@mckennalong.com

  Re: <u>*LG Display v. Chi Mei Optoelectronics*, CV No. 06-726 (D. Del.)</u>

Dear Cass:

  I write to follow-up on our meet and confer of yesterday, where LGD finally agreed to "reasonably cooperate" to secure the production of documents responsive to CMO's Document Request No. 98, which seeks documents from LGD's other litigations alleging infringement of the patents-in-suit. LGD must at a minimum immediately forward this letter to all other parties and non-parties whose confidential information may be reflected in the materials described below, and request that those parties and non-parties consent to production of those materials in this action.

  LGD previously asserted patents in *LG.Philips LCD v. Chunghwa Picture Tubes*, 02-6775 CBM (C.D. Cal.) (consolidating Civil Actions 02-6775, 03-2886, 03-2866, 03-2884, 03-2885) and *LG.Philips LCD v. Tatung*, 05-292 JJF (D. Del.) (collectively, the "LGD Prior Litigations") that have now been asserted against CMO: United States Patent Nos. 4,624,737; 5,825,449; and 5,019,002 (collectively, the "LGD Asserted Patents"). CMO's Document Request No. 98 seeks, and LGD must immediately produce to the extent in its possession, custody, or control, at least the following materials:

  1. Expert reports, including declarations or other written testimony given by expert witnesses, that refer or relate to the LGD Asserted Patents and that were served in the LGD Prior Litigations, and exhibits to such materials.

  2. Transcripts and videos of testimony given in the LGD Prior Litigations by LG Display[1] or by witnesses testifying on behalf of LG Display (including any inventor of the LGD Asserted Patents) that refers or relates to the LGD Asserted Patents, and exhibits to such materials.

  3. Transcripts of hearings in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and materials used at those hearings, including but not limited to technology tutorials and demonstratives.

---

  [1] "LG Display" is used in this letter as that phrase is defined in CMO's Document Requests.

1905261

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Cass Christenson, Esq.
July 30, 2008
Page 2

4.    Documents, including exhibits, filed with the courts presiding over the LGD
Prior Litigations that refer or relate to the LGD Asserted Patents, including but not
limited to claim construction and summary judgment filings, as well as filings
relating to geographic limitations on the scope of discovery into accused products,
and orders that issued in connection with court filings.

5.    Documents from trials in the LGD Prior Litigations, including but not limited
to trial exhibit lists, trial exhibits (including demonstratives), witness statements, pre-
trial briefs, pre-trial statements, motions in limine, post-trial briefs, transcripts of the
trial proceedings, and orders that issued in connection with the trial.

6.    Discovery requests and responses served or received by LG Display in the
LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits,
appendices, or any similar attachments to such materials.

7.    Documents produced by LG Display on behalf of LG Display or any third
party in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents.
Such documents must be produced to CMO in the same form and bearing the same
Bates numbers as in the LGD Prior Litigation.

8.    Materials provided by anyone in the LGD Prior Litigations that refer or relate
to the validity, enforceability, ownership, inventorship, or term of the LGD Asserted
Patents, including but not limited to documents and deposition testimony.

CMO agrees that LGD Prior Litigations materials produced in this action will be restricted
under the Interim Protective Order (and the final Protective Order entered by the Court), and
further will be restricted to outside counsel eyes only to the extent they reflect the
confidential information of prior litigants other than LG Display.

Please copy me on LGD's consent request letters, which we look forward to seeing
no later than August 1, 2008. LGD's choice to delay seeking these consents until now has
severely prejudiced CMO, and we reserve all of our rights.

Regarding LGD's stated refusal to produce, *inter alia*, materials described above that
relate to infringement and damages, CMO appears to have no choice but to move to compel
their production.

Very truly yours,

Thomas C. Werner

cc:    Christian Platt, Esq. (christianplatt@paulhastings.com)
       Brian Range, Esq. (brange@wsgr.com)

EXHIBIT Z



# McKenna Long
# & Aldridge LLP
Attorneys at Law

Albany
Atlanta
Brussels
Denver
Los Angeles

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

Gaspare Bono
(202) 496-7211

EMAIL ADDRESS
gbono@mckennalong.com

August 11, 2008

## VIA FIRST-CLASS EMAIL

Mark Krietzman, Esq.
Greenberg Traurigh
2450 Colorado Avenue
Suite 400E
Santa Monica, CA  90404

Re:    LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;
       C.A Nos. 06-726-JJF and 07-357-JJF

Dear Mr. Krietzman:

We represent LG Display Co., Ltd. ("LG Display") in the above-referenced consolidated patent infringement cases involving other parties, including Chi Mei Optoelectronics Corporation ("CMO") and AU Optronics Corporation ("AUO") ("AUO / CMO Case"). The AUO / CMO Case involves several U.S. patents asserted by LG Display against AUO and CMO, including U.S. Patent Numbers 4,624,737; 5,825,449; and 5,019,002 (the "LG Display Patents"). CMO and AUO have requested that LG Display produce in discovery in the AUO / CMO Case various documents, such as briefing, fact and expert depositions, hearing transcripts, and expert reports from prior cases, including: LG.Philips LCD Co., Ltd. v. Chunghwa Picture Tubes Ltd., 02-6775 CBM (C.D. Cal.) (which represents the consolidation of Civil Actions 02-6775, 03-2886, 03-2866, 03-2884, 03-2885) and LG.Philips LCD Co., Ltd. v. Tatung Co., 05-292 JJF (D. Del.) (collectively, the "LGD Prior Litigations"). Enclosed are copies of a July 30, 2008 letter from Tom Werner that summarizes the discovery sought by CMO, and an August 1, 2008 letter that summarizes AUO's request for such information (the "Requested Discovery").

LG Display has objected to providing this discovery on various grounds. Without waiving our objections, and reserving all objections, including as to any use or admissibility in this case of the Requested Discovery, we have agreed to provide certain portions of the Requested Discovery sought by CMO and AUO. Some of the Requested Discovery, however, may be designated confidential and/or include information that is protected under a protective order or other order in the LGD Prior Litigations. A protective order in the prior case may, for example, state that any discovery designated under that order cannot be disclosed outside of that case or used for any purpose other than that prior case. LG Display, therefore, does not intend to produce any such information without the consent of the party who produced or designated that information confidential in the prior case.

Mark Krietzman, Esq.
Greenberg Traurigh
August 11, 2008
Page 2


CMO and AUO have requested that we submit this letter to you to advise you of the Requested Discovery sought by AUO and CMO. Therefore, we are sending this letter to notify you of the Requested Discovery sought by AUO and CMO and determine whether you consent on behalf of Tatung Company to provide any or all of the Requested Discovery that Tatung Company produced, filed, or served during any LGD Prior Litigations. Please let us know whether you have any objection to LG Display's disclosure of any of the Requested Discovery sought by AUO or CMO. In addition, if you have any objection or believe that any conditions are required as to any such disclosure, please explain specifically your position. We need to know, for example, whether you agree to production of all of the Requested Discovery or whether you object to production of any Requested Discovery.

For any Requested Discovery that we produce, we also need to know whether you believe that any such information should be designated as confidential in our production. The enclosed letters from Mr. Platt (AUO) and Mr. Werner (CMO) set forth the positions of AUO and CMO concerning protection of Requested Discovery produced by LG Display in the AUO / CMO Case if documents are designated confidential. Both LG Display and CMO have filed motions for entry of a protective order, which are fully briefed and awaiting a decision. Pending entry of a formal protective order, discovery can be designated confidential pursuant to Delaware Local Rule 26.2.

Thank you for your anticipated response and cooperation regarding this matter.

Very truly yours,

Gaspare J. Bono

GJB/jag
Encls.

cc:    Thomas C. Werner, Esq. w/encls.
       S. Christian Platt, Esq., w/encls.

DC 505646251

**Paul**Hastings

Paul, Hastings, Janofsky & Walker LLP
3579 Valley Centre Drive
San Diego, CA 92130
telephone 858-720-2500 • facsimile 858-720-2555 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Frankfurt
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Tokyo
Washington, DC

(858) 720-2524
christianplatt@paulhastings.com

August 1, 2008                                            59322.00008

VIA ELECTRONIC MAIL (CCHRISTENSON@MCKENNALONG.COM)

Cass Christenson, Esq.
McKenna, Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006-1108

Re:     *LG. Display Co., Ltd. v. AU Optronics Corp., et al.,*
        U.S.D.C., District of Delaware, Consol. Case Nos. 06-726-JJF and 07-357

Dear Cass:

Pursuant to Thomas C. Werner's July 30, 2008 letter to you, I write to inform you that AUO also requests that LGD immediately seek the consent of all parties and non-parties whose confidential documents and/or information was (were) produced in *LG.Philips LCD v. Chunghwa Picture Tubes,* United States District Court, Central District of California, Civil Action No. 02-6775 CBM (consolidating Civil Action Nos. 02-6775, 03-2886, 03-2866, 03-2884, 03-2885); *LG.Philips LCD v. Tatung,* United States District Court, District of Delaware, Civil Action No. 05-292 JJF; and/or *any* other action in which LGD asserted any patents which LGD now asserts against AUO.[1]

As you know, AUO has already propounded discovery seeking the documents and/or information referred to in this letter and Mr. Werner's letter.[2]  For instance, Document Request Nos. 66-67 seek all documents related to LGD and/or LGDA's litigation with Positive Technologies, Inc., including without limitation, interrogatory responses, pleadings, and all communications related to the litigation.  Document Request No. 127 seeks all documents regarding any charge of infringement made by LGD and/or LGDA against any person or entity with respect to the patents-at-issue in the above-captioned

---

[1] We understand that LGD asserted in other lawsuits some of the same patents it asserts against AUO in the above-captioned litigation, including without limitation, U.S. Patent Nos. 4,624,737; 5,825,449; and 5,019,002.

[2] Mr. Werner's letter identifies the following materials as responsive to CMO's discovery requests:  expert reports and declarations; transcripts and videos of testimony given by LGD in prior lawsuits; transcripts of hearings in prior lawsuits that related to the patents-in-suit; all pleadings and briefs regarding the patents-in-suit, including claim construction and summary judgment filings; trial-related documents, such as motions in limine, witness lists, exhibits lists, trial briefs, and transcripts of trial proceedings; discovery requests and responses served or received by LGD; any document produced or received by LGD relating to the patents-in-suit; and any other materials provided by anyone in the prior lawsuits relating to the patents-in-suit, including materials referring to the validity, enforceability, ownership, and inventorship of the subject patents.  Similarly, all such materials are responsive to AUO's discovery requests.
LEGAL_US_W # 59615179.1

Paul*Hastings*

Cass Christenson, Esq.
August 1, 2008
Page 2

matter or any related patents, including without limitation, all subsequent negotiations or communications related to the charge of infringement. Moreover, Document Request No. 128 seeks any and all documents regarding the *Chunghwa Picture Tubes* litigation, such as pleadings, discovery requests and responses, deposition transcripts, and court orders and transcripts.

To date, we have not yet received the requested information. Because time is of the essence, we are requesting that LGD advise the parties and non-parties of LGD's obligation to produce confidential documents and/or information in response to AUO's discovery. We further request that LGD commence this effort no later than August 1, 2008; that LGD copy us on any correspondence to the parties and non-parties with respect to the matters addressed in this letter; and that LGD otherwise keep us timely informed of its progress with respect to this issue.

AUO agrees that any confidential documents and/or information produced by LGD in response to the above-stated document requests will be treated as "Confidential-Attorneys' Eyes Only," in accordance with the terms of the Interim Protective Order (and the Final Protective Order, once entered by the Court). If you have any questions, please do not hesitate to contact me using the above-listed information. Thank you for your attention to these matters.

Very truly yours,

S. Christian Platt
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

cc:     Jonathan S. Kagan, Esq. (jkagan@irell.com)
        M. Craig Tyler (ctyler@wsgr.com)
        Karen L. Pascale, Esq. (kpascale@ycst.com)

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7856
FACSIMILE (310) 203-7199
lwerner@irell.com

July 30, 2008

**VIA E-MAIL**

Cass Christenson, Esq.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
cchristenson@mckennalong.com

Re:    *LG Display v. Chi Mei Optoelectronics*, CV No. 06-726 (D. Del.)

Dear Cass:

I write to follow-up on our meet and confer of yesterday, where LGD finally agreed to "reasonably cooperate" to secure the production of documents responsive to CMO's Document Request No. 98, which seeks documents from LGD's other litigations alleging infringement of the patents-in-suit. LGD must at a minimum immediately forward this letter to all other parties and non-parties whose confidential information may be reflected in the materials described below, and request that those parties and non-parties consent to production of those materials in this action.

LGD previously asserted patents in *LG.Philips LCD v. Chunghwa Picture Tubes*, 02-6775 CBM (C.D. Cal.) (consolidating Civil Actions 02-6775, 03-2886, 03-2866, 03-2884, 03-2885) and *LG.Philips LCD v. Tatung*, 05-292 JJF (D. Del.) (collectively, the "LGD Prior Litigations") that have now been asserted against CMO: United States Patent Nos. 4,624,737; 5,825,449; and 5,019,002 (collectively, the "LGD Asserted Patents"). CMO's Document Request No. 98 seeks, and LGD must immediately produce to the extent in its possession, custody, or control, at least the following materials:

1.    Expert reports, including declarations or other written testimony given by expert witnesses, that refer or relate to the LGD Asserted Patents and that were served in the LGD Prior Litigations, and exhibits to such materials.

2.    Transcripts and videos of testimony given in the LGD Prior Litigations by LG Display[1] or by witnesses testifying on behalf of LG Display (including any inventor of the LGD Asserted Patents) that refers or relates to the LGD Asserted Patents, and exhibits to such materials.

3.    Transcripts of hearings in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and materials used at those hearings, including but not limited to technology tutorials and demonstratives.

--------

[1] "LG Display" is used in this letter as that phrase is defined in CMO's Document Requests.

1905261

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Cass Christenson, Esq.
July 30, 2008
Page 2

4.    Documents, including exhibits, filed with the courts presiding over the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, including but not limited to claim construction and summary judgment filings, as well as filings relating to geographic limitations on the scope of discovery into accused products, and orders that issued in connection with court filings.

5.    Documents from trials in the LGD Prior Litigations, including but not limited to trial exhibit lists, trial exhibits (including demonstratives), witness statements, pre-trial briefs, pre-trial statements, motions in limine, post-trial briefs, transcripts of the trial proceedings, and orders that issued in connection with the trial.

6.    Discovery requests and responses served or received by LG Display in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits, appendices, or any similar attachments to such materials.

7.    Documents produced by LG Display on behalf of LG Display or any third party in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents. Such documents must be produced to CMO in the same form and bearing the same Bates numbers as in the LGD Prior Litigation.

8.    Materials provided by anyone in the LGD Prior Litigations that refer or relate to the validity, enforceability, ownership, inventorship, or term of the LGD Asserted Patents, including but not limited to documents and deposition testimony.

CMO agrees that LGD Prior Litigations materials produced in this action will be restricted under the Interim Protective Order (and the final Protective Order entered by the Court), and further will be restricted to outside counsel eyes only to the extent they reflect the confidential information of prior litigants other than LG Display.

Please copy me on LGD's consent request letters, which we look forward to seeing no later than August 1, 2008. LGD's choice to delay seeking these consents until now has severely prejudiced CMO, and we reserve all of our rights.

Regarding LGD's stated refusal to produce, *inter alia*, materials described above that relate to infringement and damages, CMO appears to have no choice but to move to compel their production.

Very truly yours,

Thomas C. Werner

cc:    Christian Platt, Esq. (christianplatt@paulhastings.com)
       Brian Range, Esq. (brange@wsgr.com)

1905261

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on August 28, 2008, he served the foregoing documents by email and by hand upon the following counsel:

Philip A. Rovner
David E. Moore
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE 19899-0951

Karen L. Pascale
John W. Shaw
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

The undersigned counsel further certifies that, on August 28, 2008, he served the foregoing documents by email and by U.S. Mail upon the following counsel:

Jonathan S. Kagan
Alexander Giza
IRELL & MANELLA LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067

Vincent K. Yip
Peter J. Wied
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071

Ron E. Shulman, Esquire
Julie Holloway, Esquire
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304-1050

M. Craig Tyler, Esquire
Brian D. Range, Esquire
WILSON SONSINI GOODRICH & ROSATI
8911 Capital of Texas Highway North
Westech 360, Suite 3350
Austin, Texas 78759-8497

/s/ Stephen B. Brauerman (sb4952)
Stephen B. Brauerman

{BAY:01131117v1}

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

LG DISPLAY CO., LTD.,

               Plaintiff,

    v.

CHI MEI OPTOELECTRONICS
CORPORATION, et al.

               Defendants.

Civil Action No.  06-726 (JJF)
Civil Action No.  07-357 (JJF)

**CONSOLIDATED CASES**

## LG DISPLAY'S BRIEF IN OPPOSITION TO
## CHI MEI OPTOELECTRONICS CORPORATION'S MOTION TO COMPEL
## PLAINTIFFS LG DISPLAY TO PRODUCE DOCUMENTS RESPONSIVE TO
## DOCUMENT REQUEST NO. 98

BAYARD P.A.

Richard D. Kirk
Stephen B. Brauerman
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE  19899-5130
(302) 655-5000

OF COUNSEL:
Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
Cass W. Christenson
John W. Lomas, Jr.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500

*Attorneys for Plaintiffs LG Display Co., Ltd. and
LG Display America, Inc.*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

SUMMARY OF ARGUMENT .................................................................... 2

STATEMENT OF FACTS ........................................................................ 4

I.     LG DISPLAY'S COMPREHENSIVE PRODUCTION OF DOCUMENTS IN
       THIS CASE AND LG DISPLAY'S OBJECTIONS TO CMO USA'S REQUEST
       98................................................................................................ 4

       A.     LG Display Produces Millions of Pages of Discovery and Thousands of
              Native Product Files Concerning LG Display's Entire Product Portfolio ............. 4

       B.     Request 98 Seeks Virtually All Litigation Documents, Including Fact
              Discovery and Expert Discovery, from Prior LG Display Cases Against
              CPT ......................................................................................... 5

              1.     LG Display's Previous Patent Cases Against CPT .................................... 6

              2.     LG Display's Objections to CMO USA's Document Request 98 ............ 7

II.    CMO FINALLY SPECIFIES WHAT DISCOVERY CMO SEEKS UNDER
       REQUEST 98, AND LG DISPLAY PROMPTLY AGREES TO PRODUCE
       RESPONSIVE DOCUMENTS ............................................................... 9

       A.     CMO's July 25, 2008 Letter Finally Explains What Discovery CMO
              Seeks ...................................................................................... 9

       B.     LG Display Promptly Discusses CMO's July 25 Letter and Agrees To
              Produce Discovery To Resolve Request 98, Including Documents
              Concerning Invalidity, Enforceability, Ownership, Inventorship, and
              Claim Construction .................................................................... 11

       C.     LG Display Fully Cooperates In Seeking Consent from Third Parties, Who
              Object To Disclosure of Confidential Information to CMO and AUO ............... 13

       D.     CMO Moves To Compel All Documents Requested in CMO's July 30
              Letter, Even Though LG Display Agreed To Produce Many Responsive
              Documents ................................................................................. 15

ARGUMENT ...................................................................................... 16

I.     CMO'S MOTION SHOULD BE DENIED BECAUSE REQUEST 98 IS
       OVERLY BROAD AND BURDENSOME UNDER THIS COURT'S
       PRECEDENT ................................................................................. 16

**TABLE OF CONTENTS**
(continued)

Page

II.    CMO FAILS TO DEMONSTRATE THE GOOD CAUSE NECESSARY TO
       OBTAIN BROAD AND BURDENSOME DISCOVERY FROM PRIOR CASES....... 18

       A.    CMO's Motion Seeks Extraordinary Discovery Concerning LG Display's
             Claims In *Prior Cases*, Which Requires Good Cause and Specific Need........... 18

       B.    CMO's Arguments Regarding Potentially Inconsistent Statements and
             Judicial Estoppel Are Misplaced and Fail To Show Good Cause ...................... 19

       C.    CMO Fails To Show Any Critical or Specific Need For Discovery
             Concerning LG Display's Infringement Contentions in Prior Cases.................. 22

       D.    CMO Fails To Show Any Critical or Specific Need for Discovery
             Concerning LG Display's Damages Contentions in Prior Cases........................ 25

       E.    The Court Should Deny CMO's Request For the Eight Categories of
             Discovery Set Forth in CMO's July 30 Letter ...................................................... 26

III.   THE COURT SHOULD DENY CMO'S UNFOUNDED REQUEST FOR LG
       DISPLAY TO PREPARE A DISCOVERY "INDEX" FOR CMO ............................... 34

IV.    LG DISPLAY'S PRODUCTION OF DISCOVERY FROM PRIOR CASES IS
       SUBJECT TO THIRD PARTY OBJECTIONS AND PROTECTIVE ORDER
       LIMITATIONS........................................................................................................... 36

V.     DELAWARE LOCAL RULES PRECLUDE RESERVING MATERIAL FOR
       THE REPLY BRIEF WHICH SHOULD HAVE BEEN INCLUDED IN A FULL
       AND FAIR OPENING BRIEF .................................................................................. 37

CONCLUSION.................................................................................................................. 37

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Boehringer Ingelheim Intern. GMBH v. Barr Labs., Inc.,*
  C.A. No. 05-700-JJF, --- F.Supp.2d ----, 2008 WL 2553237 (D. Del. June 26, 2008) ...........23

*Collens v. City of New York,*
  222 F.R.D. 249 (S.D.N.Y. 2004) ...........................................................................18

*Data General Corp. v. Johnson,*
  78 F.3d 1556 (Fed. Cir. 1996)...............................................................................21

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
  318 F. Supp. 1116 (S.D.N.Y. 1970)........................................................................25

*Hill v. Motel 6,*
  205 F.R.D. 490 (S.D. Ohio 2001) ..........................................................................18

*In re Daimlerchrysler AG Securities Litigation,*
  294 F. Supp. 2d 616 (D. Del. 2003)........................................................................21

*Mahurkar v. C.R. Bard, Inc.,*
  79 F.3d 1572 (Fed. Cir. 1996)...........................................................................21, 25

*Micro Chem., Inc. v. Lextron, Inc.,*
  317 F.3d 1387 (Fed. Cir. 2003)..............................................................................25

*RLS Assocs., LLC v. United Bank of Kuwait, PLC,*
  No. 01Civ.1290CSHDF, 2003 WL 1563330 (S.D.N.Y. Mar. 26, 2003)..............................18

*RUS, Inc. v. Bay Indus., Inc.,*
  322 F. Supp. 2d 302 (S.D.N.Y. 2003)..................................................................18, 19

*Standard Chlorine of Delaware, Inc. v. Sinibaldi,*
  821 F. Supp. 232 (D. Del. 1992).............................................................................16

*Wyeth v. Impax Labs., Inc.,*
  248 F.R.D. 169 (D. Del. 2006) ......................................................................... passim

OTHER AUTHORITIES

Del. L.R. 7.1.3(c)(2)..........................................................................................3, 37

**<u>TABLE OF AUTHORITIES</u>**
(continued)

<u>Page</u>

Fed. R. Civ. P. 26(b)(1)........................................................................................3, 18

Fed. R. Civ. P. 26(b)(2)(C)(iii) ..........................................................................24, 26

Fed. R. Civ. P. 34...................................................................................................32

## NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement case involving twenty-three patents concerning liquid crystal display ("LCD") products and methods of manufacturing. LG Display Co., Ltd. ("LG Display") brought the first filed case (C.A. 06-726) in this District. AU Optronics Corporation ("AUO") and Chi Mei Optoelectronics Corporation ("CMO") responded by filing related suits in Wisconsin ("AUO Action") and Texas ("CMO Action"). Both cases have since been transferred here for consolidation with the first-filed case. This Court has already consolidated the AUO Action. Motions to consolidate the CMO Action are pending.[1]

LG Display was the first party to file and alleges that Defendants AUO and CMO infringe nine patents ("LG Display Patents") covering a wide array of LCD technology.[2] AUO has asserted eight patents against LG Display. CMO has asserted six patents against LG Display in the case filed in Texas and subsequently transferred to this Court and docketed as C.A. No. 08-355 (JJF).[3]

Discovery is proceeding as to all of the patents-in-suit. LG Display has expended substantial resources and effort to respond to the more than 370 overlapping and broad discovery requests from AUO and CMO USA. LG Display has produced thousands of native product design files covering all of its products, over twenty thousand pages of worldwide sales

---

[1] LG Display and CMO have filed cross motions to consolidate the CMO Action, which was assigned Civil Action No. 08-355 (JJF). (D.I. 295, 296, 298, 299.)

[2] The LG Display Patents include United States Patent Nos. 5,019,002 (the "'002 Patent"); 4,624,737 (the "'737 Patent"); 5,825,449 (the "'449 Patent"); 5,905,274 (the "'274 Patent"); 6,815,321 (the "'321 Patent"); 7,176,489 (the "'489 Patent"); 6,803,984 (the "'984 Patent"); 7,218,374 (the "'374 Patent"); and 6,664,569 (the "'569 Patent"). The '569 Patent is pled against AUO and is the subject of a pending motion for leave to amend against CMO. (D.I. 302.)

[3] The CMO patents are also at issue in this case via claims asserted by LG Display for declaratory judgments of non-infringement and invalidity.

summaries, and over two million pages of other information responsive to CMO USA's and

AUO's discovery requests, including information concerning all of the LG Display Patents.

While CMO USA has requested documents in this case, CMO itself has not served any discovery

requests. Recently, CMO requested that the Court reopen and extend the fact-discovery

deadline, to allow CMO to serve additional interrogatories and document requests that would be

untimely under the existing Scheduling Order, and LG Display opposes that motion. (D.I. 296 at

17; D.I. 337.)

 The claim construction process is underway concerning all of the patents-in-suit.

Opening claim construction briefs have been filed (D.I. 378, 383-84), and response briefs are due

on September 4, 2008 (D.I. 208). The claim construction hearing is scheduled for September 18,

2008. (D.I. 194.) The Court has instructed the parties that expert discovery will begin after fact

discovery is completed. (Ex. A at 9-10.) Fact discovery is scheduled to close on December 17,

2008. (D.I. 194.) Opening expert reports are due on January 12, 2009 and rebuttal expert reports

are due February 9, 2009. (*Id.*) Trial is scheduled for June 2, 2009. (Ex. A at 9.) The Court has

notified all parties that the trial is date is firm. (*Id.*)

<b><u>SUMMARY OF ARGUMENT</u></b>

 1. CMO has no standing to move to compel discovery because CMO never served

any document requests. CMO USA's Document Request 98, moreover, is overly broad and

burdensome, as this Court recently ruled concerning a similar document request for prior

litigation documents. *See Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 170 (D. Del. 2006).

Request 98 seeks virtually all documents filed and served in two previous patent cases that

involved issues and additional patents not relevant to this case. Because this discovery is

burdensome and unnecessary, and CMO USA fails to show any compelling need for this

-2-

information, the Court should deny CMO's motion to compel for failure to show good cause. *See* Fed. R. Civ. P. 26(b)(1).

2.      LG Display already has agreed to produce discovery concerning validity, enforceability, ownership, inventorship, and claim construction from the prior cases as related to LG Display's three relevant patents.  CMO's request for additional discovery, including as related to LG Display's infringement and damages contentions in those prior cases, and improper.  CMO fails to cite any specific case law compelling such discovery and, in any event, CMO's motion should be denied based on this Court's precedent and basic discovery principles.  *See, e.g.*, *Wyeth*, 248 F.R.D. at 170.

3.      CMO's request to compel LG Display to provide an index of its prior litigations is unreasonable, unduly burdensome, and unsupported by any legal authority.  The Court should deny CMO's unfounded request for an index.

4.      CMO's motion to compel seeks highly sensitive third party information that was designated confidential under protective orders in the prior cases.  Third party Chunghwa Picture Tubes Ltd. ("CPT") is vigorously objecting to disclosure of its confidential information to CMO and AUO, which are direct competitors of CPT.  In addition, protective orders  in the prior cases prohibit using any such confidential information for any purpose other than litigating the prior cases.  CMO's motion fails to address third party confidentiality issues and should be denied.

5.      CMO failed to address numerous issues in its opening brief and failed to cite legal authority throughout its opening brief.  "The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." Del. L.R. 7.1.3(c)(2).  Therefore, CMO is precluded from including any such material in its reply brief.

## STATEMENT OF FACTS

I.  **LG DISPLAY'S COMPREHENSIVE PRODUCTION OF DOCUMENTS IN THIS CASE AND LG DISPLAY'S OBJECTIONS TO CMO USA'S REQUEST 98**

A.  **LG Display Produces Millions of Pages of Discovery and Thousands of Native Product Files Concerning LG Display's Entire Product Portfolio**

In response to the more than 300 document requests served by CMO USA and AUO in this case, LG Display has produced more than 2 million pages of discovery.  LG Display's vast document production broadly covers many different types of engineering and manufacturing related documents providing detailed information about LG Display's products.  Unlike CMO, moreover, LG Display has produced this detailed discovery across LG Display's product lines, not limiting LG Display's production to products specifically accused of infringement.

LG Display has produced, for example, more than 8,000 extremely proprietary native product files, including mask files showing the design structures and elements associated with LG Display's products.  In addition to mask files, LG Display has produced CAD files providing additional information in specialized electronic files used by LG Display for its product design and manufacturing.  Further, LG Display has produced product specifications, service manuals, source code, supplier information, QC flow documents, and other technical information concerning its products.  LG Display also produced detailed yield rate information for its products and fabs.

In addition to relevant product information, LG Display's document production also includes a broad array of other information.  LG Display has produced, for example, thousands of pages of detailed sales summaries showing LG Display's product shipments by model and customer.  CMO, in contrast, has not produced this information to LG Display, forcing LG

Display to move to compel.  (D.I. 392-95.)  LG Display also has produced thousands of sales and marketing related documents, ranging from product presentations to promotional materials.

LG Display's production further includes many contracts and agreements.  LG Display has produced, for example, dozens of agreements and contracts with customers and suppliers in response to Defendants' extremely broad document requests.  LG Display also has produced patent-related agreements, including license agreements.

Further, LG Display has produced prior art, patent files, and other patent-related information in this case.  LG Display has undertaken tremendous effort and expense to provide all of this information to CMO.  When CMO raised the issues set forth in this motion, LG Display promptly made good faith efforts to address and resolve those issues.[4]

### B.    Request 98 Seeks Virtually All Litigation Documents, Including Fact Discovery and Expert Discovery, from Prior LG Display Cases Against CPT

LG Display agreed to produce documents, subject to objections, to almost all of CMO USA's document requests, even though those requests are exceedingly broad.  (Ex. C.)  For a handful of requests, including Request 98, LG Display objected to producing discovery pending discussions to limit the scope of the request.  Request 98 seeks all pleadings, discovery requests and responses, expert reports, *and* all documents *concerning* those and other documents from prior litigation between LG Display and other parties, including CMO's direct competitor, CPT:

> ***All Documents concerning pleadings, discovery requests, responses to discovery requests, expert reports, claim construction briefing, claim charts, deposition transcripts, court transcripts, trial transcripts, and court orders*** relative to any action or lawsuit in which LG Display has alleged that any Person

---

[4] Similarly, LG Display is negotiating with CMO and AUO concerning other discovery issues, including how emails should be produced.  LG Display has collected voluminous email for production in response to AUO's and CMO's broad discovery requests.

has infringed any LGD Patent, including, but not limited to the following cases: *AU Optronics Corporation vs. LG.Philips LCD Co., Ltd. and LG.Philips LCD America, Inc.*, Civil Action No. 07-C-0137-S (United States District Court for the Western District of Wisconsin); *AU Optronics Corporation vs. LG.Philips LCD Co., Ltd. and LG.Philips LCD America, Inc. et al.*, Civil Action No. 07-357-JJF (United States District Court for the District of Delaware); *LG.Philips LCD Co Ltd v. Chunghwa Picture Tubes Ltd*, Civil Action No. 05-07004-CBM (United States District Court for the Central District of California); *LG.Philips LCD Co., Ltd. v. Chunghwa Picture Tubes Ltd., et al.*, Civil Action No. 02-6775-CBM (United States District Court for the Central District of California); and *LG.Philips LCD Co., Ltd. v. Tatung Co.*, et al., Civil Action No. 05-292-JJF (United States District Court for the District of Delaware).

(Ex. B at Doc. Req. 98 (emphasis added).)

      **1.**     LG Display's Previous Patent Cases Against CPT

Request 98 involves two previous patent cases involving CPT and other defendants that LG Display litigated in this Court (the "Delaware CPT Case") and in the U.S. District Court for the Central District of California (the "California CPT Case").[5] In the Delaware CPT Case, LG Display asserted the '002 Patent that is at issue in this case, and another patent not at issue in this case. At trial, the jury returned a verdict in favor of LG Display, concluding that CPT had willfully infringed and induced infringement of the '002 Patent. The jury awarded LG Display the entire amount of damages requested at trial. LG Display moved for enhanced damages, attorneys' fees, and other relief, and CPT filed post-trial motions attacking the verdict. In the California CPT Case, which included the '737 and '449 patents, LG Display likewise obtained a

---

[5] LG Display's counsel in this case, McKenna Long & Aldridge LLP ("MLA"), was counsel for LG Display (formerly LG.Philips LCD Co., Ltd.) in the CPT Delaware Case. Although MLA was also counsel in the CPT California Case, another firm was lead counsel and maintained the records in that case.

substantial verdict against CPT.[6] After the court granted LG Display's motions for enhanced

damages and attorneys' fees in the California CPT Case, and before the Court resolved the post-

trial motions in the Delaware CPT Case, CPT settled with LG Display.  The parties filed that

settlement, under seal, in the Delaware CPT Case.  (*See* Civil Action No. 05-292-JJF, D.I. 511.)

        **2.**      LG Display's Objections to CMO USA's Document Request 98

LG Display asserted General Objections and specific objections to Request 98.  (Ex. C at

1-5, 69.)  LG Display's specific objections included that Request 98 is overly broad, unduly

burdensome, not reasonably calculated to lead to discovery of admissible evidence, and seeks

publicly available information:

> In addition to the General Objections, LG Display objects to this
> request as overly broad and unduly burdensome.  LG Display
> objects to this request to the extent it seeks information that is not
> relevant to the claims or defenses asserted in this case.  LG Display
> also objects to the extent this request seeks information not
> reasonably likely to lead to the discovery of admissible evidence.
> LG Display objects to this request as overly broad to the extent it
> seeks information beyond the scope of the claims and defenses
> asserted by and between LG Display and CMO USA.  LG Display
> objects to this request to the extent it seeks the disclosure of
> documents that are subject to a confidentiality agreement with a
> third party or that are proprietary or confidential information of a
> third party that is in the possession, custody, or control of LG
> Display.  LG Display objects to this request as unduly burdensome
> to the extent it seeks documents in the public domain.

(*Id*. at 69.)

CMO disputed LG Display's objections and specifically requested that LG Display

produce the trial transcripts for both the CPT California Case and the CPT Delaware Case.  (Ex.

D at 2-3.)  LG Display informed CMO, however, that the transcript from the CPT Delaware Case

---

[6] The California CPT Case also involved additional patents that are not at issue in this case.

is under seal at the direction of the Court and thus cannot be produced by LG Display.[7] (Ex. E at

2.)  In addition, LG Display provided the court reporter contact information for the CPT

California Case, so that CMO could order any unsealed portions of the trial transcripts for that

case.  *See id.*  At least portions of the transcript in the California case, however, are apparently

under seal.  (*See* Exs. F, G (granting CPT's motions to seal portions of the trial transcript and

selected trial exhibits); *see also* Ex. H (e-mail from CPT counsel Terry Corbin to LG Display

counsel Gap Bono, objecting to disclosure of confidential information in CPT California Case,

and noting that "In Los Angeles, the transcripts were sealed by the Court after the trial.").)  CMO

may have filed a motion to unseal the verdict form in the CPT California Case, but CMO

apparently has not moved to unseal trial transcripts in the California case or the Delaware case.[8]

The parties worked to schedule a meet and confer on deficiencies in CMO's production

raised by LG Display, and subsequent issues raised by CMO, including Request 98.[9]  On July 23,

2008, CMO's counsel sent a letter asking LG Display to produce prior litigation documents in

---

[7] CMO states that it contacted the court reporter for the CPT Delaware Case to obtain the trial transcript. (D.I. 381 at ¶ 5.)  The court reporter provided a price quote for the transcripts, which CMO apparently refuses to pay.  The court reporter's price quote, however, does not address whether the trial transcripts are sealed.  (*Id.* at Ex. 4.)  The clerk had previously informed LG Display's counsel, after the trial in the CPT Delaware Case, that the transcripts were under seal because portions of the trial had been sealed by the Court and closed to the public at CPT's request.  Indeed, CPT objects to disclosure of the trial transcript from Case 05-292 to CMO.  (Ex. V at 1-3.)

[8] CMO's counsel sent an email to LG Display's counsel in the CPT California Case to provide notice that CMO intended to "to file the attached motion [For Order Granting Disclosure Of Redacted Docket No. 1517, "Verdict Form,"] ex parte, on August 5, 2008, in the United States District Court for the Central District of California." (Ex. I.)  CMO copied LG Display's counsel in this case on this email, but the status of this filing is unknown.

[9] CMO's counsel was on vacation between July 12, 2008 and July 21, 2008.  (*See* Ex. J ("I am out of the office until Monday, Jul[sic] 21, 2008"); Ex. K ( "As you have known since the 12th, I am on vacation in Hawai'i.").)  CMO's brief incorrectly suggests that CMO's counsel was consistently available during that vacation to discuss discovery issues.  (D.I. 379 at 6.)  When LG Display attempted to discuss other discovery issues with CMO's counsel during that time, however, at times CMO's counsel was not responsive, and eventually responded by stating that "As you have known since the 12th, I am on vacation in Hawai'i." (Ex. K.)  Further, CMO had not indicated that it was willing to compromise or clarify Request 98 until July 25, after CMO's counsel returned from vacation.

response to Request 98, and raising format issues concerning certain documents produced by LG Display. (Ex. L.) CMO's July 23 letter was transmitted at the close of business in Washington. (*Id.*) On the next day, LG Display agreed to meet and confer with CMO on Monday, July 28, 2008, the earliest time that counsel was available. (Ex. M.)

On July 24, 2008, *after* LG Display had agreed to meet and confer on July 28, CMO sent a letter declaring an impasse and threatening to file a motion to compel prior litigation documents. (Ex. N.) LG Display responded that CMO's conduct was unreasonable. Specifically, CMO's premature assertion of an impasse was inappropriate given the fact that the parties were schedule to conduct a meet and confer regarding Request 98.[10] (Ex. O at 2.)

## II. CMO FINALLY SPECIFIES WHAT DISCOVERY CMO SEEKS UNDER REQUEST 98, AND LG DISPLAY PROMPTLY AGREES TO PRODUCE RESPONSIVE DOCUMENTS

### A. CMO's July 25, 2008 Letter Finally Explains What Discovery CMO Seeks

CMO did not further address what information CMO sought in response to Request 98 until July 25, 2008. On July 25, for the first time, CMO partially clarified what discovery CMO intended to seek under Request 98. (Ex. P.) The July 25 letter stated that, concerning the CPT Delaware Case and the CPT California case (referred to as the "LGD Prior Litigations")[11] and

---

[10] Even then, CMO continued to insist that it had "no choice" but to move to compel, and CMO finally relented from this refusal to discuss Request 98 only after another reminder that CMO could not file a premature motion before the meet and confer discussions scheduled for the next business day. (Ex. O.)

[11] CMO's July 25 letter states: "LGD previously asserted patents in LG.Philips *LG.Philips LCD Co., Ltd. v. Chunghwa Picture Tubes Ltd.*, 02-6775 CBM (C.D. Cal.) (which represents the consolidation of Civil Actions 02-6775, 03-2886, 03-2866, 03-2884, 03-2885) and *LG.Philips LCD Co., Ltd. v. Tatung Co.*, 05-292 JJF (D. Del.) (collectively, the 'LGD Prior Litigations')." (Ex. P at 1.)

the '737 Patent, '002 Patent, and '449 Patent (referred to as the "LGD Asserted Patents"),[12] CMO sought eight categories of documents under Request 98:

1.    Expert reports, including declarations or other written testimony given by expert witnesses, that refer or relate to the LGD Asserted Patents and that were served in the LGD Prior Litigations, and exhibits to such materials.

2.    Transcripts and videos of testimony given in the LGD Prior Litigations by LG Display or by witnesses testifying on behalf of LG Display that refers or relates to the LGD Asserted Patents, and exhibits to such materials.

3.    Transcripts of hearings in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and materials used at those hearings, including but not limited to technology tutorials and demonstratives.

4.    Documents filed with the Courts presiding over the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits to such materials.

5.    Documents used at trials in the LGD Prior Litigations, including but not limited to trial exhibit lists, trial exhibits (including demonstratives), witness statements, pre-trial briefs, pre-trial statements, and post-trial briefs, and transcripts of those trial proceedings.

6.    Discovery requests and responses served or received by LG Display in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits, appendices, or any similar attachments to such materials.

---

[12] CMO's July 25 letter identifies three patents previously asserted in the CPT California Case and CPT Delaware "that have now been asserted against CMO: United States Patent Nos. 4,624,737; 5,825,449; and 5,019,002 (collectively, the 'LGD Asserted Patents')." (Ex. P at 1.)

7.      Documents produced by LG Display on behalf of LG Display or any third party in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents.  Such documents must be produced to CMO in the same form and bearing the same Bates numbers as in the LGD Prior Litigation.

8.      Documents produced by anyone in the LGD Prior Litigations that refer or relate to the validity, enforceability, ownership, inventorship, or term of the LGD Asserted Patents. (*Id.* at 1-2.)

LG Display promptly discussed each of those categories with CMO in detail beginning on July 28, 2008.[13]  LG Display noted that these broad categories remained overly broad in many respects.  Nonetheless, LG Display agreed to produce many responsive documents within the scope of CMO's July 25 letter regarding Request 98.

### B.      LG Display Promptly Discusses CMO's July 25 Letter and Agrees To Produce Discovery To Resolve Request 98, Including Documents Concerning Invalidity, Enforceability, Ownership, Inventorship, and Claim Construction

The parties discussed CMO's July 25 letter on July 28 and July 29 to resolve the disputed issues concerning Request 98.  LG Display made clear that it continued to dispute the relevance of the discovery sought by CMO, and that the eight inclusive topics in CMO's July 25 letter remained overly broad.  Nonetheless, LG Display agreed to produce much of the discovery requested in CMO's July 25 letter so that the parties could resolve Request 98.

Specifically, LG Display explained in July 28 and July 29 meet and confer discussions that LG Display would produce documents concerning validity, enforceability, ownership, and inventorship.  In addition, LG Display agreed to produce briefing from the prior cases

---

[13] Counsel for AUO also attended the July 28 teleconference, although AUO did not actively participate in the discussions and did not join subsequent meet and confers regarding the prior litigation documents.

concerning claim construction for the three LGD Asserted Patents.[14]  On August 4, one week

before CMO's motion to compel, LG Display confirmed in writing its prior agreement to

produce this discovery, as discussed in the meet and confer sessions:

> Accordingly, in a good faith effort to resolve the disputed issues
> concerning CMO's Request 98, as clarified in your July 25, 2008
> letter, LG Display will agree to produce the following documents
> from the previous cases (the "Prior Litigation Documents"),
> subject to any limitation on our ability to disclose that information,
> such as the need for consent from another party and/or relief from
> an order of the court in another case:
>
> 1.  Expert reports and expert declarations, including exhibits, to the
> extent they address validity, enforceability, inventorship,
> ownership, and/or claim construction as to the LG Display Patents;
>
> 2.  Deposition transcripts reflecting testimony by LG Display or
> any witness testifying on behalf of LG Display (including any
> inventor deposition testimony offered by LG Display) to the extent
> they address validity, enforceability, inventorship, ownership,
> and/or claim construction as to the LG Display Patents;
>
> 3.  Transcripts concerning hearings to the extent they address
> motions or rulings on validity, enforceability, inventorship,
> ownership, and/or claim construction as to the LG Display Patents;
>
> 4.  *Markman* briefing concerning the LG Display Patents;
>
> 5.  Transcripts of trial testimony to the extent addressing validity,
> enforceability, inventorship, and/or ownership as to the LG
> Display Patents, to the extent that such transcripts are not under
> seal and can be disclosed;

---

[14] On July 28 and July 30, the parties engaged in two extensive meet and confer sessions to discuss the specific discovery requested in CMO's July 25 letter regarding Request 98. *After* those discussions, CMO attempted to add other requested discovery in certain topics, sending a revised set of topics to LG Display. (Ex. Q.)  When LG Display asked whether CMO's July 30 letter changed any of the eight categories of discovery, CMO responded that the July 30 letter reflected "clarifications" of CMO's position and provided a redline of the changes. (Ex. R.)  The redline that CMO provided shows that the purported "clarifications" were actually revisions seeking to broaden certain categories previously discussed. (*Id.*)  LG Display objected to CMO's effort to expand discovery categories after the parties already had discussed at length the categories that CMO originally proposed on July 25. (Ex. S n.2.)

6. Answers to interrogatories and responses to requests for admissions to the extent they address validity, enforceability, inventorship, ownership, and/or claim construction as to the LG Display Patents;

7. Documents produced by LG Display or a third party, to the extent they address validity, enforceability, inventorship, ownership, and/or claim construction as to the LG Display Patents; and

8. Any prior art references that LG Display produced or received from another party concerning the LG Display Patents.

(Ex. S (confirming previous meet and confer discussions).)

**C.**     <u>LG Display Fully Cooperates In Seeking Consent from Third Parties, Who Object To Disclosure of Confidential Information to CMO and AUO</u>

LG Display explained to CMO that it could not produce some information to CMO because that information was designated confidential by third parties under protective orders issued in the prior cases. (Exs. R, S.) The protective orders in those cases, moreover, contain provisions that specifically prohibit disclosure of certain information to anyone other than outside counsel in the prior cases. (Ex. T at 8-9; Ex. U at 7-8.) In addition, the protective orders forbid the use of any confidential information produced in the CPT Delaware Case and the CPT California case for any purpose other than the litigation of those cases. (Ex. T at 2; Ex. U at 2.) The disclosure and use of confidential third party information to or by AUO and CMO is of particular concern to CPT, because CPT is a direct competitor of both AUO and CMO. (Ex. V at 2.)

As LG Display confirmed on July 29, however, LG Display remained "willing to cooperate and take reasonable steps to address any problems related to production in this case of information that was previously used in another case and that could be subject to confidentiality

restrictions and/or protective orders in those prior cases."[15]  (Ex. R at 2.)  On July 29, LG Display also agreed to send a letter to each relevant third party seeking that party's consent to produce the discovery requested by CMO and AUO in this case.  (*Id*.)  On July 30, CMO demanded that LG Display agree -- that same day -- to send to the third parties a copy of CMO's July 30, 2008 letter, and LG Display promptly responded.  (Exs. Q, R.)  Further, the next day confirmed that it would send CMO's July 30 letter to third parties.  On July 31, LG Display agreed to send CMO's letter to third parties.

On August 1, 2008, AUO sent a separate letter requesting that LG Display inform third parties that AUO also sought the information requested by CMO from prior cases.  (Ex. W.)  LG Display agreed to AUO's request.  (Ex. X.)  On August 8, 2008, LG Display's counsel further informed CMO and AUO that letters to third parties were being prepared and would be sent soon.  (*Id*.)  On the next business day, August 11, 2008, LG Display's counsel sent letters seeking consent to counsel for CPT and other parties in the prior cases.[16]  (Exs. Y, Z.)  Counsel for CPT has responded and stated that "CPT and its customers object to the production of any documents or other materials incorporating confidential information relating to CPT and/or its customers in the [LGD Prior Litigations]."  (Exs. H, V.)  LG Display's counsel informed CMO and AUO of the third party objections to any disclosure of confidential information from prior cases.  (Ex. H.)

---

[15] CMO's suggestions that LG Display failed to seek consent on a timely basis is incorrect.  LG Display promptly contacted numerous third parties concerning many documents that LG Display previously produced on July 18, 2008, concerning other document requests.  LG Display also promptly sought consent concerning Request 98, after the parties had met and conferred, and within days after receiving the July 30 and August 1 letters that CMO and AUO asked LG Display to send with its communications to third parties.

[16] Counsel is continuing to investigate and review the availability of confidential third party information, and will send any additional letters seeking consent on behalf of other third parties, to the extent necessary and appropriate.

**D.    CMO Moves To Compel All Documents Requested in CMO's July 30 Letter, Even Though LG Display Agreed To Produce Many Responsive Documents**

CMO filed this motion to compel on August 11, 2008, seeking to compel LG Display to produce all of the documents in the eight categories set forth in CMO's July 30, 2008 letter. (D.I. 379 at 10-14.)  Before CMO filed its motion, however, LG Display already had agreed to produce many responsive documents, notwithstanding LG Display's proper objections to Request 98.  (Ex. S.)  In addition, LG Display had prepared and sent out notifications to third parties, as agreed, without the need for any motion to compel by CMO, thus mooting this aspect of CMO's motion.  (Exs. Y, Z.)  LG Display has produced many documents from prior cases within the scope of counsel's agreement, including expert reports and claim construction briefing.  LG Display's production is ongoing.

CMO's request to compel LG Display to produce all remaining documents set forth in CMO's July 30 letter primarily seeks to compel two categories of discovery: (1) infringement contentions and analysis from the Delaware CPT Case and the California CPT Case; and (2) damages contentions and analysis from the Delaware CPT Case and the California CPT Case. CMO also mischaracterizes LG Display's production by not recognizing LG Display's agreement to produce claim construction documents.  (*See* D.I. 379 at 3 (incorrectly contending that "LGD has agreed to produce LGD Prior Litigation Documents only on the following issues: validity, enforceability, ownership, and inventorship.").)  LG Display respectfully suggests that CMO's motion to compel should be denied for the following reasons.

## ARGUMENT

**I.     CMO'S MOTION SHOULD BE DENIED BECAUSE REQUEST 98 IS OVERLY BROAD AND BURDENSOME UNDER THIS COURT'S PRECEDENT**

CMO USA's document request 98 is overly broad and unduly burdensome, seeking irrelevant and unnecessary information from LG Display's prior cases.  Request 98 seeks all documents concerning pleadings, all documents concerning discovery requests, all documents concerning expert reports, all documents concerning claim construction briefing, all documents concerning claim charts, all documents concerning deposition transcripts, all documents concerning court transcripts, all documents concerning trial transcripts, and all documents concerning court orders.  (Ex. B at Doc. Req. 98.)  Request 98 would require production, for example, of virtually all correspondence between LG Display and opposing counsel for each party in the other cases, regarding everything from extensions of time to deposition scheduling.

Request 98 is virtually unlimited in scope, seeking all pleadings and all documents concerning the pleadings, which essentially amounts to everything ever filed in the prior cases, as everything in the case necessarily "concerns" the pleadings.  Accordingly, CMO USA's Request 98 is patently improper.  While all of the parties in this case have served broad discovery requests, including requests for "all" documents in certain categories, Request 98 simply stretches the bounds of discovery beyond any reasonable limit.  *See, e.g., Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 258 (D. Del. 1992) (denying motion to compel concerning "extremely broad and excessively burdensome" document requests, as such requests "are not proper even under today's liberal discovery rules").

***Indeed, this Court has previously denied a motion to compel a similar, but less broad and burdensome request, in another patent case.*** *See Wyeth v. Impax Labs.*, 248 F.R.D. 169 (D. Del. 2006).  In the *Wyeth* case, defendant Impax moved to compel plaintiff Wyeth to produce

-16-

"all pleadings, deposition transcripts, hearing transcripts, expert reports, and orders" from a prior

case between Wyeth and Teva Pharmaceuticals involving Wyeth's patents. *Id.* at 170.  Like

CMO, Impax argued that this discovery was relevant "because the patents at issue in the Teva

Litigation are the same patents at issue in this case." *Id.*  Wyeth objected, contending that the

request was "overly broad and unreasonable, and that Wyeth has produced all relevant

documents from the Teva Litigation, namely, those dealing with claim construction and patent

validity." *Id.*  Wyeth also agreed to produce documents concerning both validity and

enforceability. *See id.*

      This Court resolved the dispute in Wyeth's favor, correctly reasoning that Wyeth's

agreement to produce discovery concerning validity, enforceability, and claim construction was

sufficient and that further discovery was unnecessary:

> The Court concludes that Wyeth's proffered production is
> reasonable, and that Impax's request for all documents from the
> Teva Litigation is overly broad.  The Court finds that Impax has
> not demonstrated why it is entitled to documents from the Teva
> Litigation involving matters not at issue in this litigation.  Also,
> Impax has not shown that the documents requested from the Teva
> Litigation, beyond what Wyeth already has already produced or
> offered to produce, are critical to resolving the issues before the
> Court.  Thus, this portion of Impax's Motion is denied.

*Id.* at 171.

      The same reasoning is even more relevant here.  Request 98 is broader than the request

that this Court deemed overly broad in *Wyeth*.  In addition, LG Display agreed -- before CMO

filed its motion -- to produce documents concerning claim construction, validity, enforceability,

inventorship, and ownership, which is a broader scope of prior case production than was deemed

necessary in the *Wyeth* case.  Request 98 is improper and CMO's motion should be denied.

II.    **CMO FAILS TO DEMONSTRATE THE GOOD CAUSE NECESSARY TO OBTAIN BROAD AND BURDENSOME DISCOVERY FROM PRIOR CASES**

A.    **CMO's Motion Seeks Extraordinary Discovery Concerning LG Display's Claims In *Prior Cases*, Which Requires Good Cause and Specific Need**

Discovery in federal cases ordinarily is confined to information that is relevant to a party's *claims or defenses in the pending case. See Wyeth*, 248 F.R.D. at 170 (citing Fed. R. Civ. P. 26(b)(1)). "Thus, it is not sufficient that the material sought be relevant to the general subject matter of the action, if it does not relate to the specific claims or defenses of either party." *RUS, Inc. v. Bay Indus., Inc.*, 322 F. Supp. 2d 302, 318 (S.D.N.Y. 2003). Only if *necessary* in a particular case will a court require production of information that is not relevant to specific claims and defenses, but instead relates to the "subject matter involved in the action." Fed. R. Civ. P. 26(b)(1); *see also Collens v. City of New York*, 222 F.R.D. 249, 252-53 (S.D.N.Y. 2004); *Hill v. Motel 6*, 205 F.R.D. 490, 492 (S.D. Ohio 2001). "In order to obtain discovery of material that relates to the subject matter of the action, a party must show good cause." *RUS, Inc.*, 322 F. Supp. 2d at 318. CMO acknowledges its burden to show good cause. (*See* D.I. 379 at 9 ("A court may order discovery for good cause 'on any matter relevant to the subject matter involved in the action.'") (quoting Fed. R. Civ. P. 26(b)(1)).)

A showing of good cause requires CMO to establish that it has a specific need for the information it seeks. *See RLS Assocs., LLC v. United Bank of Kuwait, PLC*, No. 01Civ.1290CSHDF, 2003 WL 1563330, *7 (S.D.N.Y. Mar. 26, 2003) ("When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action.") (quoting Advisory Committee Note, Fed. R. Civ. P. 26(b)(1)). The good cause standard is "flexible", but CMO should "articulate a reason for believing [such discovery] is warranted." *Hill*, 205 F.R.D. at 492 (quoting Wright Miller & Marcus, 8 *Federal*

-18-

*Practice & Procedure* §2008 Supp. at 15-16)). Further, discovery properly is denied when the burden outweighs the benefit of the discovery. *See Wyeth*, 248 F.R.D. at 171 (moving party failed to show that discovery from prior cases was critical to resolve issues in pending case).

CMO fails to show any need for this discovery, as LG Display already has produced fact discovery concerning infringement and damages, and will further produce expert discovery at the appropriate time. In addition, LG Display already has agreed to produce substantial discovery from the prior litigations, including with respect to validity, enforceability, ownership, inventorship, and claim construction. CMO's request to expand this vast scope to include irrelevant infringement contentions and premature damages analysis is unnecessary and should be denied. *See, e.g., Wyeth*, 248 F.R.D. at 171; *RUS, Inc.*, 322 F. Supp. 2d at 319 (denying motion to compel discovery that related only to subject matter of action, because "defendants have not demonstrated good cause for compelling production of the material, as they have not made any showing of need.").

**B.     CMO's Arguments Regarding Potentially Inconsistent Statements and Judicial Estoppel Are Misplaced and Fail To Show Good Cause**

CMO's arguments as to the two categories of information from prior cases addressed in CMO's brief -- infringement and damages -- are misplaced. Like Impax's motion in the *Wyeth* case, CMO fails to show any critical need for this discovery to resolve the issues in this case. Indeed, CMO concedes that it seeks discovery for the purpose of attempting to argue that LG Display's litigation of various cases could reflect "inconsistent positions" regarding how products infringe LG Display's patents. (D.I. 379 at 10.) CMO's purported intention to use this discovery not to present its own defenses, but to somehow "cross-examine LGD", ignores the scope and nature of complex patent litigation and the product-specific nature of patent infringement. (*Id.*)

-19-

CMO's notion that LG Display could be seeking to make "inconsistent" legal arguments in entirely conjecture and not supported by a single example of any actual inconsistency. Further, CMO fails to explain how it would show that infringement arguments regarding claim constructions and products involving CPT in prior cases would be inconsistent with infringement arguments regarding claim constructions and products involving CMO in this case. CMO apparently intends to inject all of the discovery and contentions from the CPT cases into this case, to support a misguided effort to find "inconsistencies" between this case and prior cases. Attempting to make such arguments would require CMO to address any differences between the claim constructions in the two cases, as infringement contentions are based on claim construction. In addition, CMO would have to compare and analyze the relevant features or manufacturing methods used by CMO and CPT in each case with respect to each contention made by LG Display.

CMO's motion reveals an intent to fold into this case the entire infringement analysis from the previous CPT cases, which would serve no purpose. CMO should address the merits of LG Display's infringement contentions in the context of this case, including this Court's claim constructions and CMO's own accused products. Comparing CMO's infringement to CPT's infringement of the LG Display patents would result in confusion and undoubted disputes concerning what LG Display did or did not allege and prove in the prior cases against CPT.

CMO is incorrect, moreover, in contending that LG Display is legally bound by all of its previous contentions against CPT. LG Display is not "judicially estopped" in this case by infringement or damages contentions in the prior CPT cases. (D.I. 379 at 9.) "The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its

-20-

interests have changed." *Data General Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996).

The factors considered before a court will apply judicial estoppel include: "1) whether the party's

later position is ***clearly inconsistent*** with its earlier position; 2) whether the party has succeeded

in persuading the court to accept its earlier position so as to create the perception that ***the court***

***was misled in either the first or second proceeding***; and 3) whether the party seeking to assert

an inconsistent position ***would derive an unfair advantage***." *In re Daimlerchrysler AG*

*Securities Litigation*, 294 F. Supp. 2d 616, 628 (D. Del. 2003) (J. Farnan) (citing *New Hampshire*

*v. Maine*, 532 U.S. 742, 750-51 (2001)) (emphasis added).

CMO cites no authority supporting any potential use of judicial estoppel to prevent

infringement or damages contentions in one patent case based on infringement or damages

contentions in a previous, unrelated case. CMO also fails to explain how LG Display's claims

for reasonable royalty damages against CPT in prior cases could be inconsistent with LG

Display's position that CMO should pay a reasonable royalty in this case.[17] Nor does CMO

explain how the elements of judicial estoppel could apply to infringement or damages

contentions. Indeed, this "court has discretion both in selecting the methodology for and

calculating a damage award." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996).

Thus, CMO's judicial estoppel argument is unpersuasive.

CMO offers a single hypothetical example regarding whether estoppel could apply to

construction of certain claim terms. (D.I. 379 at 10.) CMO ignores, however, that LG Display

has already agreed to produce claim construction briefing from the CPT litigation. CMO's claim

---

[17] This Court has determined that judicial estoppel did not preclude a plaintiff from pursuing different theories of damages in the same case against the same defendant. *See In re Daimlerchrysler*, 294 F. Supp. 2d at 628.

-21-

construction example is irrelevant, therefore, and does not support CMO's judicial estoppel argument.

Further, CPT is adamantly opposed to any disclosure of its confidential product or other information to CMO in this case. Indeed, CPT informed LG Display that CPT will object to any disclosure in this case of confidential CPT information from prior cases. (Ex. H.) Counsel for CPT recently reaffirmed its objections in a letter. (*See* Ex. V at 2 (noting that AUO and CMO improperly "seek a complete download of all materials from the Delaware and California Actions" and have made "no attempt . . . to narrowly tailor their discovery requests or explain the relevancy of any of it.").) CPT is an LCD manufacturer and competes directly with CMO and AUO. (*Id.* (stating that "like LG, CMO and AUO are direct competitors of CPT").) CPT has objected that CMO is seeking "the most closely guarded of CPT's competitive secrets." (*Id.*) CMO's motion seeks infringement information concerning CPT's products and manufacturing, and damages contentions concerning CPT's sales and customers, based on confidential discovery that is subject to protective orders in the prior cases. CMO's brief fails to address this issue.

### C.    CMO Fails To Show Any Critical or Specific Need For Discovery Concerning LG Display's Infringement Contentions in Prior Cases

CMO fails to show good cause to obtain all of LG Display's infringement contentions in prior cases regarding CPT's modules, which are not at issue in this case. LG Display's infringement contentions in the CPT Delaware Case and CPT California Case addressed whether CPT's products infringed the claims that LG Display asserted in those cases, based on CPT's products and document productions. In this case, LG Display's infringement contentions will focus on whether CMO and AUO infringe, based on relevant CMO and AUO products and this Court's construction of disputed claim terms regarding the patent claims asserted in this case.

Infringement analysis is a two step process that is distinct in each case. "Step one requires a court to construe the disputed terms of the patent at issue," which is a question of law. *Boehringer Ingelheim Intern. GMBH v. Barr Labs., Inc.*, C.A. No. 05-700-JJF, --- F.Supp.2d ----, 2008 WL 2553237, *4 (D. Del. June 26, 2008). Second, the court determines whether the accused method or product practices each element of an asserted claim, based on the Court's claim constructions. *See id.* ("Step two requires a court to compare the accused products with the properly construed claims of the patent."). Necessarily, therefore, this analysis is product-specific and party-specific. CPT's infringement of LG Display's patents turns on its own products and manufacturing methods, evaluated against the backdrop of this Court's future claim construction rulings.

The extent and nature of CPT's infringement of LG Display's patents cannot provide any benefit to CMO. All of the arguments that LG Display made against CPT, and that CPT made against LG Display, were based on claim constructions that have not been rendered in this case. In addition, LG Display's infringement contentions and CPT's non-infringement contentions were based on CPT's products and manufacturing. CMO and AUO make their own specific products at their own fabs. Accordingly, the infringement arguments and evidence in this case necessarily will focus on CMO's products and manufacturing, regardless of CPT's products and manufacturing.

It would serve no purpose for LG Display to produce in this case voluminous discovery concerning LG Display's infringement contentions against CPT in the CPT Delaware Case regarding the '002 Patent, or CPT's non-infringement contentions in that case. Similarly, it would be a waste of time and resources for LG Display to produce in this case its infringement contentions against CPT regarding the '737 Patent and the '449 Patent in the CPT California

Case, or all of CPT's responses and non-infringement contentions. CMO fails to show any need for this information, relying instead on misplaced judicial estoppel arguments intended to limit LG Display's ability to present its case against CMO.

CMO does not even attempt to argue in its opening brief that CMO actually needs this information to oppose LG Display's infringement claims in this case, nor could CMO persuasively make such an argument. LG Display already has produced discovery concerning its infringement claims to CMO. LG Display has produced, for example, documents concerning the asserted patents, their prosecution history, and the inventors. LG Display further has provided detailed claim charts in its interrogatory answers and in the transferred Texas case that show how CMO's products practice the elements of the asserted claims in LG Display's patents. LG Display's interrogatory answers further identify the asserted claims of LG Display's patents, as well as the accused CMO products of which LG Display is aware. CMO does not dispute that it is able to assess the scope of the asserted claims and the extent of CMO's infringement.

In addition, LG Display and CMO will exchange expert reports at the appropriate time. LG Display's experts on infringement will, for example, each prepare an appropriate report summarizing all opinions concerning infringement by CMO. CMO will, therefore, have this additional discovery from LG Display before trial. Likewise, CMO's experts will prepare reports responding to LG Display's experts and asserting any non-infringement opinions.

It would be unduly burdensome for LG Display to compile and produce irrelevant infringement-related materials from prior cases, including transcripts of depositions, hearing transcripts, expert reports, motions and related briefing, interrogatory answers, and any other discovery sought by CMO. Rule 26 provides that courts may limit discovery when its burden or expense outweighs its likely benefit, as is the case here. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii);

*Wyeth*, 248 F.R.D. at 170-71. Accordingly, LG Display respectfully requests that the Court deny CMO's motion to compel discovery regarding infringement contentions from prior cases.

### D.  CMO Fails To Show Any Critical or Specific Need for Discovery Concerning LG Display's Damages Contentions in Prior Cases

CMO also fails to show good cause to obtain all contentions concerning damages in prior cases. As LG Display noted in its initial disclosures to CMO USA dated March 13, 2008, "LG Display is seeking damages for the infringement of the Patents-in-Suit in the amount equal to, at a minimum, a reasonable royalty." "The amount of damages based on a reasonable royalty is an issue of fact." *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1394 (Fed. Cir. 2003); *see also Mahurkar*, 79 F.3d at 1579 ("Calculation of a reasonable royalty depends on the particular facts of each case.").

LG Display has produced to CMO numerous documents relevant to damages in this case, including licenses between LG Display and various licensees concerning LG Display's patents. LG Display's license agreements and related documents are directly relevant to the *Georgia-Pacific* factors and the hypothetical negotiation model used to calculate damages for CMO's infringement. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). LG Display also has produced documents reflecting negotiations with other potential licensees. Other relevant factors, including CMO's use of LG Display's technology, the extent of CMO's infringing sales, and the profitability of CMO's infringing products, for example, are in CMO's own possession and are the subject of a pending motion to compel. (D.I. 392-95.)

Another recognized *Georgia Pacific* factor to determine a reasonable royalty is the opinion testimony of qualified experts. *Georgia-Pacific Corp.*, 318 F. Supp. at 1120. Expert discovery is not yet ripe in this case, as fact discovery is continuing. At the appropriate time, however, CMO will receive the reports of any damages experts that will testify at trial in this

case. CMO also will receive any related disclosures or document production corresponding to those experts and their opinions.

LG Display should not have to incur the burden and expense to compile and produce damages-related materials, including transcripts of depositions, hearing transcripts, expert reports, motions and related briefing, interrogatory answers, and any other discovery sought by CMO concerning damages contentions in prior cases. Rule 26 specifically contemplates that courts may limit discovery when its burden or expense outweighs its likely benefit, as is the case here. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). LG Display respectfully requests that the Court deny CMO's motion to compel damages discovery from prior cases. *See Wyeth*, 248 F.R.D. at 170.

**E.    The Court Should Deny CMO's Request For the Eight Categories of Discovery Set Forth in CMO's July 30 Letter**

CMO improperly moves to compel every one of the eight categories of information referenced in CMO's July 30 letter (not Request 98), even though LG Display specifically resolved the majority of the issues raised in CMO's letter. LG Display already has agreed to produce many of the documents that CMO requests in its motion, including documents concerning validity, enforceability, ownership, inventorship, and claim construction with respect to the '737 Patent, '449 Patent, and '002 Patent. CMO's motion seeks indiscriminately to compel infringement and damages information as to each of the eight categories. (D.I. 379 at 4 ("Because LGD has refused to voluntarily produce these infringement and damages documents, this Court should compel LGD to do so.").) Many documents within the scope of CMO's motion do not relate to infringement and damages, and other documents are not in dispute. LG Display responds below to each of the eight categories briefed by CMO. (*See id.* at 10-14.)

1.    Expert reports, including declarations or other written testimony given by expert witnesses, that refer or relate to the LGD Asserted Patents and that were served in the LGD Prior Litigations, and exhibits to such materials.

CMO moves to compel expert reports concerning infringement, non-infringement, and damages. (*Id.* at 10.) As discussed above, however, LG Display's expert opinions regarding infringement and damages contentions in prior cases are not necessary for CMO to develop its non-infringement and damages positions in this case. (*See* Arg. Sec. II B-D, *supra.*) Opening expert reports are not due in this case, moreover, until January 2009. (D.I. 194.) Further, the Court instructed the parties not to commence expert discovery until after fact discovery, which closes December 17, 2008. (Ex. A at 9-10; D.I. 194) Therefore, at the appropriate time, CMO will receive any expert reports that set forth and support LG Display's infringement and damages contentions. LG Display, moreover, is producing expert reports concerning validity, enforceability, ownership, inventorship, and claim construction, subject to any third party confidentiality issues. CMO's motion should be denied. *See Wyeth*, 248 F.R.D. at 170.

2.    Transcripts and videos of testimony given in the LGD Prior Litigation by LG Display or by witnesses testifying on behalf of LG Display (including any inventor of the LGD Asserted Patents) that refers or relates to the LGD Asserted Patents, and exhibits to such materials.

CMO's motion seeks deposition transcripts concerning infringement, non-infringement, and damages. (D.I. 379 at 11.) As discussed above, however, testimony from LG Display witnesses or experts concerning infringement or damages contentions in prior cases is not necessary for CMO to develop its non-infringement and damages positions in this case. (*See* Arg. Sec. II B-D, *supra.*) CMO fails to explain how testimony in prior cases could support any affirmative defense asserted by CMO in this case, such as laches. CMO will have the opportunity to take depositions in this case, including deposition testimony from LG Display. CMO does not need prior deposition testimony given by LG Display concerning other claims

-27-

and defenses between LG Display and other parties.  LG Display, moreover, is producing

deposition transcripts concerning validity, enforceability, ownership, inventorship, and claim

construction, subject to any third party confidentiality issues.  CMO's motion should be denied.

*See Wyeth*, 248 F.R.D. at 170.

> **3.**     Transcripts of hearings in the LGD Prior Litigations that refer or relate to
> the LGD Asserted Patents, and materials used at those hearings, including
> but not limited to technology tutorials and demonstratives.

CMO's motion seeks hearing transcripts concerning infringement, non-infringement, and

damages.  (D.I. 379 at 11.)  As discussed above, however, hearings concerning infringement or

damages contentions in prior cases is not necessary for CMO to develop its non-infringement

and damages positions in this case.  (*See* Arg. Sec. II B-D, *supra*.)  CMO fails to explain how

hearings in prior cases would be relevant to this case, yet CMO even seeks transcripts of

unspecified *discovery hearings* in the prior cases, speculating that "[e]ven certain discovery

hearings may be relevant . . . ."  (D.I. 379 at 11.)  CMO's request for discovery about discovery

improperly seeks to inject disputed issues from prior cases into this case and would serve no

legitimate purpose.  LG Display, moreover, is producing hearing transcripts concerning validity,

enforceability, ownership, inventorship, and claim construction, subject to any third party

confidentiality issues.  CMO's motion should be denied.  *See Wyeth*, 248 F.R.D. at 170.

> **4.**     Documents, including exhibits, filed with the courts presiding over the
> LGD Prior Litigations that refer or relate to the LGD Asserted Patents,
> including but not limited to claim construction and summary judgment
> filings, as well as filings relating to geographic limitations on the scope of
> discovery into accused products, and orders that issued in connection with
> court filings.

This category includes unspecified documents "filed with the courts" in the CPT cases

that "refer or relate to the LGD Asserted Patents," including but not limited to claim construction

submissions, summary judgment filings, and filings concerning discovery disputes.  During the

parties' meet and confer discussions, CMO's counsel conceded that this request is facially overbroad and that CMO does not literally seek all documents within the scope of this category. CMO's brief, moreover, discusses this category with respect to only infringement contentions and "certain discovery briefing" in prior cases. (D.I. 379 at 12.)

As discussed above, however, CMO cannot show that all documents filed with the court in prior cases are relevant in this case. (*See* Arg. Sec. II B-D, *supra*.) CMO fails to explain how filings concerning CPT's infringement is relevant here, nor does CMO explain why "even certain discovery briefing may lead to the discovery of admissible evidence in this action" concerning discovery disputes between CMO and LG Display. (D.I. 379 at 12.) CMO's request for such discovery improperly seeks to inject disputed issues from prior cases into this case and would serve no legitimate purpose. LG Display, moreover, is producing claim construction briefing and summary judgment briefing concerning validity, enforceability, ownership, or inventorship, subject to any third party confidentiality issues. CMO's motion should be denied. *See Wyeth*, 248 F.R.D. at 170.

> **5.**　Documents from trials in the LGD Prior Litigations, including but not limited to trial exhibit lists, trial exhibits (including demonstratives), witness statements, pre-trial briefs, pre-trial statements, motions in limine, post-trial briefs, transcripts of the trial proceedings and orders that issued in connection with the trial.

CMO's motion seeks numerous irrelevant trial submissions, transcripts, post-trial briefing, and court orders from the CPT California Case and the CPT Delaware Case. The prior cases against CPT were not limited to patents asserted in this case, yet CMO seeks to compel "*all*" trial submissions, exhibits, and briefing, even if *unrelated to the three patents asserted against CMO in this case*. (D.I. 379 at 12 (emphasis added).) CMO originally defined this category of documents as seeking "Documents used at trials" (Ex. P), but now seeks "Documents

from trials . . . .".   Either way, CMO's request is unnecessary and improper, seeking numerous documents that relate to issues that are not involved in this case.  (*See* Arg. Sec. II B-D, *supra*.) CMO's request for production of all trial-related documents from prior cases is overly broad, unduly burdensome, and unnecessary to resolve the issues in this case.  *See Wyeth*, 248 F.R.D. at 170.

In addition, this category seeks documents not specifically mentioned in Request 98, to which LG Display objects.  Request 98 refers to ***trial transcripts.***  Although this category is purportedly based on Request 98, it refers to documents not specifically mentioned in Request 98, including "trial exhibit lists, trial exhibits (including demonstratives), witness statements, pre-trial briefs, pre-trial statements, motions in limine, [and] post-trial briefs."  CMO's motion to compel such documents should be denied.

Further, many of the submissions and transcripts concerning the prior trials remain under seal.  Trial transcripts, for example, include confidential information sealed during trial.  (*See* Exs. F, G.)  In addition, certain trial exhibits also may be under seal.  (*Id.*)  CMO fails to address this issue and apparently has not sought relief to unseal any of the trial transcripts or exhibits. CPT, moreover, is objecting to any release of confidential trial transcripts or other information to CMO.  (*See* Exs. H, V.)

To the extent that exhibit lists, in limine motions or orders, and other filings are not under seal, those documents should be publicly available to CMO.  If CMO wants those documents, CMO should incur the burden and effort of obtaining them.  LG Display should not have to undertake the burden to obtain and produce those documents to CMO.  This burden would be especially inappropriate because the prior trial submissions, filings, rulings, and testimony is not necessary for the trial and presentation of claims and defenses in this case.  The parties in this

case will file whatever exhibit lists and trial submissions are appropriate, which will occur closer to the June 2009 trial. CMO's request for trial materials from previous cases should be denied.

> **6.** Discovery requests and responses served or received by LG Display in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents, and exhibits, appendices, or any similar attachments to such materials.

CMO speculates that "the discovery responses served in the LGD Prior Litigations" may contain "information relevant to the claims at issue" in this case, without explaining the basis for this assumption. (D.I. 379 at 12.) The Court's Scheduling Order in this case established specific limits on the discovery to be served and responded to, including limits on the number of interrogatories to be served. CMO USA already has exceeded the permissible number of interrogatories in this action. CMO, moreover, declined to serve any interrogatories.

Apparently, CMO now seeks to obtain discovery responses served by LG Display in prior cases, to use for purposes of this case. CMO's attempted end run around this Court's Scheduling Order is improper and the Court should deny CMO's motion. CMO will have the benefit of whatever discovery requests other parties, including CMO USA, served in this case. CMO could have, but declined to, serve its own discovery requests.

LG Display has diligently responded to many document requests and interrogatories in this case, and continues to do so. CMO cannot properly use discovery responses in prior cases for purposes of this case, and this attempt to obtain discovery of prior discovery is unwarranted. LG Display, moreover, is producing prior interrogatory answers concerning validity, enforceability, ownership, inventorship, or claim construction, subject to any third party confidentiality issues. CMO's motion should be denied. *See Wyeth*, 248 F.R.D. at 170.

7.    Documents produced by LG Display on behalf of LG Display, or any third party in the LGD Prior Litigations that refer or relate to the LGD Asserted Patents.  Such documents must be produced to CMO in the same form and bearing the same Bates numbers as in the LGD Prior Litigations.

CMO's request for all document production that "refer[s] or relate[s] to" the three LG Display Patents is unreasonable and improper.  LG Display would need to review each individual document produced by any party in either prior case to determine whether that document could be deemed to "relate to" one or more LG Display Patents.  This would require an enormous time and effort to review and identify documents.  CMO, moreover, could contend that most of the documents produced somehow "relate to" LG Display's patents in some respect.

As with category 6 above, CMO appears to be seeking to force LG Display to produce documents, without having served a single document request in this case.  While CMO USA served document requests, CMO itself did not.  CMO cannot now evade the Scheduling Order and Rule 34 by seeking to compel discovery that CMO never requested in this case.

Further, CMO's request would call for production of third party information.  Third party productions in the prior cases included many confidential documents protected from use or disclosure outside of those cases under court orders and third parties are objecting to disclosure of this information to CMO.  CMO fails to address this issue.

In any event, CMO fails to show any need for document production in the previous cases.  (*See* Arg. Sec. II B-D, *supra*.)  LG Display has produced voluminous discovery in this case responding to the many document requests served by CMO USA and AUO.  Included in LG Display's production were documents previously produced in other cases that were also responsive to document requests in this case.  LG Display's production of previously produced documents included, for example, documents concerning sales and marketing, patent inventorship, asserted prior art, and other information.

-32-

LG Display is continuing to review prior productions to ensure that all responsive documents are produced in this case. LG Display should not, however, be required to reproduce to CMO the documents produced in prior cases in the overly broad fashion requested by CMO, which would be unduly burdensome. LG Display should only be required to produce documents responsive to document requests served in this case, subject to those specific requests and any objections to those requests.[18] This is presumably the same approach taken by CMO and AUO in this case, as neither party is believed to have blindly reproduced to LG Display all documents previously produced by CMO or AUO in their prior patent cases. CMO's motion should be denied. *See Wyeth*, 248 F.R.D. at 170.

> **8.** Materials provided by anyone in the LGD Prior Litigations that refer or relate to the validity, enforceability, ownership, inventorship, or term of the LGD Asserted Patents, including but not limited to documents and deposition testimony.

CMO's motion to compel this category of materials should be denied. LG Display already has agreed to produce various specific documents and materials specifically related to validity, enforceability, ownership, and inventorship. Indeed, LG Display has produced responsive documents and continues to do so. CMO, therefore, has no basis to file a motion to compel these documents.

To the extent that CMO seeks other documents, those issues are discussed above with respect to categories 1 through 7. CMO fails to identify any specific additional documents

---

[18] LG Display objects to CMO's suggestion that any previously produced documents would need to be reproduced in this case with their prior document production numbers from other cases. (D.I. 379 at 13.) LG Display has consistently produced in this case all of its documents with a uniform bates numbering and confidentiality branding. Using the branding numbers and designations for this case is needed to ensure unique identifiers for all of LG Display's more than two million pages of document production, which is mostly highly confidential. Producing documents with the unique branding for this case superimposed near or over previous branding for other cases

*(Footnote cont'd on next page.)*

concerning validity, enforceability, ownership, or inventorship.[19] (D.I. 379 at 13-14.) During

the meet and confer discussions, moreover, CMO improperly sought to expand the scope of

category 8. CMO originally defined category 8 to seek only "documents produced" in the prior

cases (Ex. P), but now seeks to broaden this category to seek unspecified "materials provided" in

those cases. CMO's request is unreasonable and should be denied.

## III.    THE COURT SHOULD DENY CMO'S UNFOUNDED REQUEST FOR LG DISPLAY TO PREPARE A DISCOVERY "INDEX" FOR CMO

The Court should deny CMO's unusual request -- unsupported by any citation to

authority -- to compel LG Display to prepare an index of all documents in LG Display's

possession, custody, or control concerning prior litigations with CPT. (See D.I. 379 at 15-16.)

CMO's request should be denied for several reasons, including: (1) the Federal Rules do not

require any such index and CMO fails to cite any legal authority or basis to compel such an

index; (2) no other party, including CMO, has provided or offered to provide such an index

concerning available documents responsive to discovery requests; and (3) CMO, not LG Display,

is the party in need of any "judicial supervision" in this case. CMO does not need such an index,

and it would be unduly burdensome to require such an index to be prepared by LG Display.

CMO fails to cite any authority supporting its request for a document index from LG

Display. (Id. at 16.) Given the lack of authority for such an index, LG Display respectfully

suggests that the Court should deny CMO's motion. LG Display is in full compliance with all

---

*(Footnote cont'd from previous page.)*

would result in confusion. The bates numbering from prior cases, to the extent available, is not relevant evidence in this case and CMO's request for such information is unfounded, and CMO cites no authority supporting its position.

[19] CMO's request for discovery on the "term" of the '002, '737. and '449 patents merits no response. (D.I. 379 at 13-14.) The term of the patents is known to CMO, based on the dates of the patents, as set by statute.

applicable Federal Rules concerning discovery, and those rules do not require parties to produce a document index in response to document requests, as advocated by CMO.

Further, CMO's request to force LG Display alone to provide an index is unfair and unreasonable. LG Display would incur significant expense and burden in preparing an index listing documents within all of the expansive categories that CMO has identified. Such an index is unnecessary, as LG Display is not "hiding the ball" as CMO suggests, but instead is opposing CMO's unreasonable demands.

CMO, not LG Display, is the party whose conduct in this case warrants the "strict supervision" requested by CMO. (*Id.* at 15.) CMO alone has refused to produce discovery concerning all of its products that could be sold and marketed in the U.S., after seeking and obtaining such discovery from LG Display. CMO alone has refused to produce its worldwide sales summaries, after seeking and obtaining such discovery from LG Display. CMO alone has refused to produce critical technical information concerning its products, despite LG Display's comprehensive production of technical discovery in this case. CMO's misconduct and lack of cooperation has forced LG Display to incur expense and file a motion to compel against CMO. (D.I. 392-95.) Any discovery index that should be provided in this case should be compelled from CMO, not LG Display.

LG Display has made clear which documents LG Display agrees to produce in response to CMO's Request No. 98. LG Display also has made clear its objection to producing infringement and damages materials from prior cases. CMO fails to explain why it is unable to understand LG Display's position regarding Request 98, which LG Display has made abundantly clear in extensive meet and confer discussions and correspondence. The Court should, therefore, deny CMO's motion to compel a document index from LG Display.

IV.    **LG DISPLAY'S PRODUCTION OF DISCOVERY FROM PRIOR CASES IS SUBJECT TO THIRD PARTY OBJECTIONS AND PROTECTIVE ORDER LIMITATIONS**

CMO's motion does not address the fact that much of the information that CMO is seeking to compel is information that third parties, including CPT, produced and designated confidential / attorneys' eyes only under protective orders in prior cases. LG Display expressly notified CMO that protective orders in both the CPT California Case and CPT Delaware Case limit disclosure of highly sensitive information to outside trial counsel, experts, and staff involved in the prior cases. (*See, e.g.*, Ex. S.) In addition, the protective orders in both cases provide that no party shall use any such confidential information, except for purposes of litigating the prior case. (Exs. T, U.) LG Display, therefore, has explained to CMO that LG Display is unable to produce third party information designated confidential under protective orders in the prior cases. (*See, e.g.*, Ex. S.)

At CMO's (and AUO's) request, LG Display has notified CPT and other counsel in the prior cases that CMO and AUO are seeking confidential information for use in this case. (Exs. Y, Z.) Recently, CPT's counsel responded to this notice and stated that CPT objects to any production in this case of CPT confidential information. (Exs. H, V.) LG Display requests, therefore, that any production of confidential third party information ordered by this Court include or address any conditions or limitations on the disclosure of such information to CMO and AUO, including whether CMO and AUO need to obtain leave from the courts in the CPT Delaware Case and CPT California Case with respect to the protective orders in those cases, after notice to all third parties.

## V.    DELAWARE LOCAL RULES PRECLUDE RESERVING MATERIAL FOR THE REPLY BRIEF WHICH SHOULD HAVE BEEN INCLUDED IN A FULL AND FAIR OPENING BRIEF

CMO failed to address numerous issues in its opening brief and failed to cite legal authority throughout its opening brief. "The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." Del. L.R. 7.1.3(c)(2). Therefore, CMO is precluded from including any such material in its reply brief.

## CONCLUSION

For the foregoing reasons, LG Display and LG Display America, Inc. request that the Court deny CMO's motion.

August 28, 2008                          BAYARD P.A.

                                         /s/ Stephen B. Brauerman (sb4952)
                                         Richard D. Kirk (rk0922)
                                         Stephen B. Brauerman (sb4952)
                                         222 Delaware Avenue, 9th Floor
                                         P.O. Box 25130
                                         Wilmington, DE 19899-5130
                                         (302) 655-5000
                                         rkirk@bayardfirm.com
                                         *Attorneys for Plaintiffs LG Display Co., Ltd. and*
                                         *LG Display America, Inc.*

OF COUNSEL:

Gaspare J. Bono
R. Tyler Goodwyn, IV
Lora A. Brzezynski
Cass W. Christenson
John W. Lomas, Jr.
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, D.C.  20006
(202) 496-7500

EXHIBIT X

Albany
Atlanta
Brussels
Denver
Los Angeles

# McKenna Long
# &Aldridge LLP
Attorneys at Law

1900 K Street, NW • Washington, DC 20006-1108
Tel: 202.496.7500 • Fax: 202.496.7756
www.mckennalong.com

New York
Philadelphia
Sacramento
San Diego
San Francisco
Washington, D.C.

CASS W. CHRISTENSON
(202) 496-7218

EMAIL ADDRESS
cchristenson@mckennalong.com

August 8, 2008

**VIA EMAIL**

S. Christian Platt, Esq.
Paul, Hastings, Janofsky & Walker LLP
3579 Valley Centre Drive
San Diego, CA 92130

Thomas C. Werner, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA 90067

Re:  *LG Display Co., Ltd. v. Chi Mei Optoelectronics Corporation, et al.;*
C.A Nos. 06-726-JJF and 07-357-JJF

Dear Christian and Tom:

I write in response to Tom's August 6, 2008 letter and Christian's August 1, 2008 letter concerning AUO's and CMO's request that LG Display seek consent to produce certain information from prior cases.

We are preparing an appropriate letter to send to notify counsel in prior cases of the discovery requested by AUO and CMO regarding those cases. We are also discussing this matter with our client and continuing our investigation concerning the extent to which the requested information is available for production, whether consent is needed to produce such information, and the appropriate contact from whom to seek such consent. Nonetheless, we anticipate that we will send notification letters out early next week, and continue to send such letters as appropriate to complete this production. We are also investigating the issues raised in Tom's August 6 letter regarding the documents that we produced this week and whether we have certain related information.

With respect to AUO's position, we have reviewed Christian's August 1 letter. AUO is aware of the types of documents that CMO has requested from prior cases and Christian attended our July 28 teleconference with CMO on this issue, but did not suggest any position on this issue. Further, AUO has not addressed any of my prior letters concerning the scope of this

S. Christian Platt, Esq.
Thomas C. Werner, Esq.
August 8, 2008
Page 2

aspect of LG Display's production.  LG Display continues to maintain its objections to the overly broad requests for discovery from prior cases, which improperly seek burdensome information. As set forth in my August 4, 2008 letter to Tom, we are willing to produce some of the discovery in an effort to avoid unproductive motion practice.  If AUO or CMO intends to press their overly broad document requests, however, we will continue to oppose those requests.  Further, LG Display's document production to AUO includes documents that LG Display produced in the Positive Technologies case and we are checking to determine whether LG Display has produced any additional documents in that case that were not produced in this case.

Finally, CMO's allegation of "prejudicial delay" is incorrect.  LG Display is agreeing to produce discovery that is objectionable and unnecessary.  In any event, AUO and CMO could and may obtain directly from the third parties or their counsel whatever third party information AUO and CMO are attempting to obtain indirectly from LG Display.

I look forward to discussing this further with you when I return from vacation the week of August 18.

Very truly yours,

Cass W. Christenson

CWC:rla
DC:50564391.1