IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LG DISPLAY CO., LTD., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 06-726 (JJF) |
| ) | Civil Action No. 07-357 (JJF) |
| v. ) | |
| ) | CONSOLIDATED CASES |
| CHI MEI OPTOELECTRONICS ) | |
| CORPORATION, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS CHI MEI OPTOELECTRONICS' REPLY BRIEF IN SUPPORT OF
MOTION TO COMPEL PLAINTIFFS LG DISPLAY TO PRODUCE DOCUMENTS
RESPONSIVE TO DOCUMENT REQUEST NO. 98**

OF COUNSEL:

Morgan Chu
Jonathan S. Kagan
Alexander C.D. Giza
Adam Hoffman
Thomas C. Werner
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 N. Market St.
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorneys for Defendant
Chi Mei Optoelectronics Corporation*

Dated: September 5, 2008

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. Infringement And Damages Documents Relating To The LGD Asserted Patents Are Relevant To This Case ................................................................. 2

        1. Infringement Documents ............................................................................ 2

        2. Damages Documents ................................................................................... 4

        3. LGD Should Be Ordered To Produce Evidence Necessary To Evaluate Judicial Estoppel ......................................................................... 6

        4. Unlike the Movant in *Wyeth* CMO Has Shown Substantial and Specific Need for a Discrete Universe of LGD Prior Litigations Materials ..................................................................................................... 7

    B. LGD Has Not Established That It Would Be Unduly Burdensome To Produce Infringement And Damages Documents From The Prior LGD Litigations ............................................................................................................ 7

    C. Third Party Confidentiality Objections Do Not Preclude this Court from Ordering Production of the LGD Prior Litigations Materials. ................... 10

    D. The Court Should Order LGD To Immediately Produce An Index Of Documents From The LGD Prior Litigations .................................................... 11

III. CONCLUSION .................................................................................................................. 13

## TABLE OF CITATIONS

Page(s)

**Cases**

*EEOC v. Outback Steakhouse of Florida, Inc.*,
   2007 WL 3232429 (D. Colo. Oct. 29, 2007) ............................................................... 8

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ..................................................................... 5, 6

*Holmes v. Teer*,
   2006 WL 1550201 (E.D. Cal. May 31, 2006) ............................................................ 8

*Sedona Corp. v. Open Solutions, Inc.*,
   249 F.R.D. 19 (D. Conn. 2008) ............................................................................ 10

*Vitalo v. Cabot Corp.*,
   212 F.R.D. 478 (E.D. Pa. 2002) ............................................................................ 12

*Wyeth v. Impax Labs., Inc.*,
   248 F.R.D. 169 (D. Del. 2006) ............................................................................... 7

I.  **INTRODUCTION**

After months of hounding, and numerous, lengthy meet and confers, Plaintiffs LG Display Co., Ltd. and LG Display America, Inc. ("LGD") finally conceded the obvious: that documents from its prior patent litigations involving the same patents and claims at issue in this lawsuit are at least reasonably calculated to lead to admissible evidence, and are thus subject to discovery. Despite LGD's concession, however, LGD has decided to withhold certain documents from its prior litigations that relate to two discrete subject areas: (1) infringement; and (2) damages. LGD's effort to cherry pick which documents it wants to produce and which it wants to withhold from its prior litigations caused the impasse that led Chi Mei Optoelectronics Corporation and Chi Mei Optoelectronics USA, Inc. ("CMO") to file this Motion.

While CMO appreciates LGD's (somewhat belated) agreement to produce documents from prior litigations involving the LGD Asserted Patents[1] on topics relating to validity issues, LGD's agreement to produce responsive documents relating to validity cannot excuse its refusal to produce other, non-cumulative documents relevant to infringement and damages. This is particularly true in this case, where LGD has attempted to take infringement positions that are inconsistent with the positions it adopted in earlier litigation, and given that LGD produced expert reports and testimony opining on reasonable royalty rates in the LCD industry—the very heart of any damages at issue in this case.

Because LGD continues to refuse to produce admittedly responsive, non-privileged documents in its possession relating to infringement of the LGD Asserted Patents and any resulting damages, CMO respectfully requests that this Court order LGD to produce these highly relevant materials.

---

[1] "LGD Prior Litigations" and "LGD Asserted Patents" are used here as those terms are defined in CMO's motion. D.I. 379.

## II. ARGUMENT

During the lengthy meet and confer process preceding this motion, CMO narrowed its request for prior litigation documents to eight categories of documents, relating only to the LGD Asserted Patents. Notwithstanding CMO's agreement to narrow its requests to encompass only documents relating to the patents LGD is currently asserting against CMO, however, LGD's opposition argues that infringement and damages documents are not relevant. Moreover, even though CMO narrowed the types of litigation documents it is seeking to only eight categories, and that LGD has produced over 2 million pages of documents, LGD's opposition argues that it would be unduly burdensome to produce any infringement or damages documents in these categories. Finally, notwithstanding that the protective orders in each of the prior litigations expressly permits LGD to produce the requested documents in response to a Court Order, LGD argues that this Court should not issue the very type of order that will allow that production to occur. CMO addresses each of LGD's arguments below.

### A. Infringement And Damages Documents Relating To The LGD Asserted Patents Are Relevant To This Case

#### 1. Infringement Documents

Given that LGD has previously asserted against other LCD companies many of the patents LGD is currently asserting against CMO, it is highly likely that many infringement issues that were litigated in these prior cases will emerge in this case. Moreover, it seems extremely likely that LGD may try to take infringement positions in this case that are inconsistent with the positions it took in prior cases. We have already seen evidence of this trend: LGD is currently asserting claim constructions that conflict with those entered in the LGD Prior Litigations. D.I. 383 at 12, 16–17, 24. In fact, LGD has asked this Court to adopt claim constructions in this case that are different from the constructions LGD itself championed in prior litigation before this

Court. *See id.* Thus, there is strong evidence that LGD is refusing to produce infringement-related documents because these documents will reveal that LGD is attempting to take infringement positions in this case that are inconsistent with its prior positions.

LGD appears to be taking inconsistent positions in each of the two steps necessary for an infringement analysis: construing the patent's claims and comparing the accused product with the properly construed claims. For example, LGD's proposed constructions of the '449 Patent's "gate pad" (claim 10) and "source pad" (claim 11) limitations are nearly identical to the constructions in the LGD Prior Litigations, but LGD omits a portion of those constructions from its proposal in this action. *Compare* D.I. 376-03 *with* Ex.[2] 15 at 56 (the former, LGD's proposed constructions in this action, omits "from a gate driving circuit" and "from a data driving circuit," respectively, from the latter, LGD's proposed constructions in the LGD Prior Litigations). The court approved LGD's prior construction of these aspects of claims 10 and 11. Ex. 16. CMO understands that Chunghwa Picture Tubes ("CPT"), one of the litigants in the LGD Prior Litigations, prevailed against LGD's allegations that CPT infringed claims 10 and 11 of the '449 Patent. *See* Ex. 17 (denying LGD's renewed judgment of infringement as a matter of law).[3] LGD's decision to seek a claim construction different than the one it previously advocated for terms reflected in claims of which previously failed to prove infringement raises the distinct possibility that LGD's infringement positions in the LGD Prior Litigations reveal non-infringement and/or design-around arguments that, without access to the LGD Prior Litigations materials, LGD could effectively hide away from CMO. Such LGD Prior Litigations contention

---

[2] Exhibit references are to the exhibits attached to the Declaration of Thomas C. Werner, submitted concurrently herewith in support of this Reply ("Werner Decl."). Exhibit numbers continue from the last Exhibit submitted in support of this Motion's opening brief. References to "LGD Ex." refer to the exhibits attached to LGD's opposition.

[3] The docket in that case reflects substantial motion practice on this issue. *See* Ex. 18 (docket entry 1530 and related entries). However, LGD refuses to produce any of that briefing—or any briefing other than *Markman* briefing—as irrelevant. *See* D.I. 411 at 12.

- 3 -

and expert discovery and testimony is therefore not only relevant circumstantially, but is direct evidence of a weakness in the LGD Asserted Patents that CMO is entitled to exploit.

CMO further believes that, when the jury is asked to evaluate LGD's analysis of how the accused products allegedly practice the claims of LGD's patents, it will be extremely useful for the jury to understand how LGD has changed its infringement theories over time, and to cross examine LGD's witnesses on these inconsistencies. As CMO explained in its opening brief, if LGD took the position in the LGD Prior Litigations that a product did not meet the requirement from claim 1 of the '002 Patent "prior to the completion of a display" until a certain amount of testing occurred, but in this litigation it argues that no testing is required, CMO would be entitled to cross examine LGD about this change. The result of that cross-examination could spell the difference between infringement and non-infringement by CMO. Absent production of the infringement documents from the LGD Prior Litigations, however, CMO will not be able to know the extent of LGD's changes, much less effectively cross examine their witnesses. Given the number of patent terms at issue in this litigation, this case is likely to involve many examples of LGD attempting to take inconsistent positions.

### 2. Damages Documents

LGD does not assert that LGD Prior Litigations materials relating to damages are "irrelevant" or would "serve no purpose" in this action. *See* D.I. 411 at 25–26. Instead, LGD asserts that the documents produced in this action alone—including LGD's selective production of LGD Prior Litigations materials—provide all of the evidence a trier of fact need consider to assess the value of the LGD Asserted Patents, and the alleged damages that flow from any infringement of those patents. According to the well-established precedent on which LGD relies, however, that assertion is incorrect. For example, LGD asserts that its selective production of license agreements provides the evidence required by *Georgia-Pacific Corp. v. U.S. Plywood*

*Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Under *Georgia-Pacific*, however, CMO is entitled to discovery of the LGD Prior Litigations contentions and expert discovery and testimony regarding LGD's license agreements, as this evidence is highly probative regarding what LGD believes an established royalty rate should be and how LGD's license agreements support that conclusion. Industry standard rates, of course, do not depend on a detailed technical analysis of the particular products being accused in any particular case. *See id.* at 1120. Also under *Georgia-Pacific*, LGD Prior Litigations contention and expert discovery and testimony must reflect (or may conspicuously lack) assertions regarding LGD's "established policy and marketing program" regarding the LGD Asserted Patents, the alleged "utility and advantages" of the LGD Asserted Patents, the "nature" of the inventions embodied in those patents, the "character" of the LGD products that LGD claims embody those inventions, and the alleged benefit provided by those inventions. *Id.* None of these assertions, or the evidence underlying them, were bounded by the parties to or products at issue in the LGD Prior Litigations.

Moreover, as LGD admits, the "opinion testimony of qualified experts" is among the evidence a trier of fact must consider in assessing damages for patent infringement. *See* D.I. 411 at 25; *Georgia-Pacific*, 318 F. Supp. at 1120. LGD fails to explain, however, why LGD Prior Litigations contention and expert discovery and testimony should not qualify as such evidence. Indeed, such LGD Prior Litigations materials may incorporate and reflect upon other discovery that LGD has admitted is relevant, such as contention and expert discovery and testimony relating to non-infringing alternatives, secondary considerations of obviousness, and the long-felt unmet need allegedly addressed by the LGD Asserted Patents. These issues are often intertwined with damages issues in patent cases, but LGD asserts that CMO is entitled to them only in the limited context of validity, enforceability, or inventorship. LGD further flatly refuses

to produce any LGD Prior Litigations materials that the *Georgia-Pacific* court deemed directly relevant to damages, i.e., those relevant to the "duration of the patent." Compare D.I. 411 at 11 with *id.* at 13 (LGD refused CMO's request for LGD Prior Litigations materials relating to the term of its patents). LGD's refusal to produce this directly relevant evidence is improper.

### 3. LGD Should Be Ordered To Produce Evidence Necessary To Evaluate Judicial Estoppel

LGD's opposition does not deny that LGD is taking and intends to further take positions in this action that are inconsistent with its positions in the LGD Prior Litigations. Instead, LGD argues that CMO cannot yet *prove* LGD's actions are subject to an estoppel. LGD's circular logic fails to justify its refusal to produce documents. If LGD is permitted to withhold evidence regarding its prior arguments and assertions—to which it is bound and which it may be estopped from contradicting—LGD could cover the very evidence of its estoppel. Perhaps if LGD were to represent to the Court that they have not taken and will not take inconsistent positions, such a self-serving statement might call CMO's requests into question. But LGD nowhere makes that statement, or even suggests that CMO's allegations are inaccurate. Instead, LGD merely asserts that those allegations are "entirely conjecture and not supported by a single example of any actual inconsistency." D.I. 411 at 20. CMO has shown, however, that LGD has in fact taken positions in claim construction that are plainly inconsistent with its prior positions, strongly suggesting its intent to do so on infringement. *See* discussion *supra* part II.A.1. LGD's argument thus boils down to "you can't fight what you can't see," and LGD is intent on keeping the relevant evidence hidden from view. LGD fails to show why CMO's judicial estoppel argument does not justify CMO's requests—because it does justify them.

### 4. Unlike the Movant in *Wyeth* CMO Has Shown Substantial and Specific Need for a Discrete Universe of LGD Prior Litigations Materials

LGD relies heavily on the Court's decision in *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169 (D. Del. 2006). However, LGD's reliance on this Court's reasoning in that case is misplaced. Before the Court there was a request by Impax for "all" documents among many broad and unlimited categories of documents. Ex. 19. Impax made no argument nor showing justifying its request beyond the bare assertion that, because there were patents common to both litigations, all of those documents were relevant. *Id.* This Court therefore held that "Impax has not demonstrated *why* it is entitled to documents from the Teva Litigation," nor had Impax shown *why* the materials it sought were "critical to resolving the issues before the Court." *Wyeth*, 248 F.R.D. at 171 (emphasis added). By contrast, CMO has presented substantial evidence that the LGD Prior Litigations materials are directly relevant and indeed necessary for CMO to effectively defend against LGD's allegations. *See* discussion *supra* Part II.A.1–3. CMO's Document Request No. 98 is reasonably tailored, and this Motion further narrows that Request to contentions and expert discovery and testimony, without which CMO will be denied critical discovery into its non-infringement arguments, and directly relevant evidence of any damages that may accrue from the alleged infringement of the LGD Asserted Patents. This Court's reasoning in *Wyeth* does not preclude the limited relief that CMO seeks, and CMO has provided the evidence of specific need that is necessary to support a request for prior litigations materials. Additional evidence is solely in the possession of LGD, who refuses to provide it.

### B. LGD Has Not Established That It Would Be Unduly Burdensome To Produce Infringement And Damages Documents From The LGD Prior Litigations

Despite having produced over 2 million pages of documents in this case, and despite its agreement to produce documents from the LGD Prior Litigations relating to validity,

enforceability, ownership, inventorship, and claim construction, LGD argues that it would be unduly burdensome for it to produce infringement and damages documents from these same litigations. LGD's naked assertion makes no sense, however, and is not supported by any declaration, affidavit, or other evidence of burden. This Court should therefore reject LGD's mantra of "burden."

LGD's lawyers are experienced counsel at an established law firm. As such, they undoubtedly have procedures in place to organize and arrange documents from litigation. In fact, when it suits LGD's interests to do so, LGD's Litigation counsel seems to have no difficulty finding and citing documents from prior litigations. *See* D.I. 394-5, 394-7.

If LGD seeks to block discovery of responsive, non-privileged documents on the basis of burden, it is LGD's responsibility to establish such burden by introducing evidence to substantiate its claim. *See EEOC v. Outback Steakhouse of Florida, Inc.*, 2007 WL 3232429, *1 (D. Colo. Oct. 29, 2007) (Motion to compel granted because responding party "failed to substantiate their claim and offer no sworn affidavit or description of their record-keeping procedures to justify their conclusory allegation" of undue burden or expense.); *Holmes v. Teer*, 2006 WL 1550201, *2 (E.D. Cal. May 31, 2006) ("Federal courts reject claims of burdensomeness which are not supported by a specific, detailed showing, usually by affidavit, of why weighing the need for discovery against the burden it will impose permits the conclusion that court should not allow it."). Here, LGD has offered no evidence whatsoever to substantiate its claim.

Moreover, LGD mischaracterizes the scope of CMO's request. Neither CMO's motion nor Document Request No. 98 seeks "all documents" from the LGD Prior Litigations. Instead, CMO seeks only those LGD Prior Litigations materials that relate to LGD's assertions and

arguments regarding the LGD Asserted Patents. The LGD Prior Litigations materials are therefore not merely relevant to the subject matter of this action. Rather, they directly relate to LGD's infringement and damages contentions in this action. If LGD has in the past taken a position in discovery or before a court regarding what is required to infringe its patents, or what value should be assigned to those patents if infringed, that is evidence in this action of what is required to infringe its patents, or what value should be assigned to those patents. Similarly, CMO is entitled to the facts on which LGD relied in support of its past positions, including the deposition testimony of its witnesses, and the documents LGD produced in the LGD Prior Litigations. These are the materials that CMO seeks from LGD by its motion—nothing more.

LGD further opposes CMO's requests on the ground that the LGD Prior Litigation materials—while admittedly relevant—bear only some distant, tangential relationship to LGD's prior assertions of infringement of the same claims of the same patents, and resulting alleged damages, in this action. If LGD truly believes that there is no specific need to produce existing evidence regarding LGD's infringement and damages contentions, CMO is hard pressed to understand how LGD can demand that CMO produce ***all experts reports from any past litigation involving CMO, even if it does not involve any CMO patent at all***. LGD served on CMO Document Request No. 95, which seeks "All expert reports served by or on behalf of CMO in any other patent infringement litigation in which CMO was or is a party since January 1, 2003." Ex. 20. LGD thus in one breath asserts the relevance of past discovery regarding litigation over patents that are not even at issue in this litigation, while in the next breath declares the marginal relevance of evidence from past litigations of infringement and damages contentions regarding the same patents asserted in this action. LGD's propensity for taking such inconsistent positions

is simply further evidence of why CMO has petitioned this Court to compel production of the LGD Prior Litigations materials.

### C. Third Party Confidentiality Objections Do Not Preclude this Court from Ordering Production of the LGD Prior Litigations Materials.

LGD contends the LGD Prior Litigations protective orders preclude it from producing the LGD Prior Litigations materials. The terms of those protective orders contradict LGD's assertion. Materials produced in the LGD Prior Litigations subject to those orders are restricted to use in the LGD Prior Litigations "except by consent of all of the parties or order of the Court." LGD Ex. T, ¶ 1(a); LGD Ex. U, ¶ 1(a). Further, under those protective orders, LGD is expressly permitted to produce the LGD Prior Litigations materials it refuses to produce. *See* LGD Ex. T, ¶ 18; LGD Ex. U, ¶ 19 ("The person or party receiving the subpoena or other process or order [to produce materials restricted by the protective orders] shall be entitled to comply with it except to the extent the disclosing party asserting the confidential treatment is successful in obtaining an order modifying or quashing it."). Thus, LGD's refusal to produce the LGD Prior Litigations materials is not supported by the terms of the protective order, given the lack of any order modifying or quashing CMO's request. Moreover, a third party's concerns over confidentiality do not overcome a party's need for relevant discovery. *See, e.g., Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 25 (D. Conn. 2008) (granting motion to compel discovery reflecting movant's competitors' confidential information given that "the parties' stipulated protective order allow[ed] for the limited disclosure of designated materials to outside counsel and independent experts," which was "sufficient to address the [non-movant's] concerns" regarding disclosure of the third party's confidential information). CMO respectfully requests that the Court order the production of the LGD Prior Litigations materials.

### D. The Court Should Order LGD To Immediately Produce An Index Of Documents From The LGD Prior Litigations

Since CMO filed this Motion, LGD has confirmed that in response to Request 98, LGD did absolutely nothing for months. *See* Ex. 21 (confirming that LGD "objected to that request in its entirety and did not produce documents in response to that request."). In light of LGD's belated agreement to produce some responsive documents, LGD has admitted withholding discovery despite knowing that it had an affirmative obligation to produce relevant materials. In the five months that Request 98 has been pending, LGD has produced only the following:

- Four expert reports. LGD claims a fifth report contains third party confidential information, but CMO is unaware of any request by LGD to obtain consent to produce the missing report, which request LGD agreed to copy to CMO. Ex. 22.

- Claim construction briefing and orders that LGD previously refused to produce because they were publicly available, and which CMO itself downloaded from PACER and produced nearly two months ago.

- Four letter briefs and one hearing transcript regarding claim construction in one of the LGD Prior Litigations.

Werner Decl. ¶ 2. LGD has still not produced the vast majority of the limited materials it has said it will produce. *Id.* ¶ 3. Moreover, despite its claims to the contrary, LGD has failed to agree to produce the same scope of prior litigations materials as did the plaintiff in the case on which LGD rests its opposition. *Compare* Ex. 23 (Wyeth agreed to produce without limitation "deposition transcripts of Wyeth's fact witnesses [and] exhibits from those depositions") *with* D.I. 411 at 12 (LGD refuses to produce deposition transcripts unless LGD determines they relate to certain issues, and refuses to produce deposition exhibits). LGD further admits that it has failed to re-produce in this action relevant document productions from the LGD Prior Litigations. D.I. 411 at 33 (after five months, LGD is still "continuing to review its prior productions").

LGD has offered no explanation for its selective production of materials that excludes substantial discovery that LGD agreed in July is relevant. For example, LGD explicitly agreed

- 11 -

well over a month ago to produce "inventor deposition testimony," but has failed to produce the LGD Prior Litigations deposition transcript of Woo Sup Shin, a claimed inventor of the '449 Patent that CMO requested on July 2, 2008. D.I. 411 at 12; Ex. 24. Yet LGD recently submitted Mr. Shin's LGD Prior Litigations testimony in connection with the '449 Patent reexamination proceedings. Ex. 25. LGD's reexamination submission further reflects substantial LGD Prior Litigations materials that LGD is willing and able to submit to the PTO, but refuses to produce to CMO—including briefing regarding a motion for new trial filed by CPT that LGD claims is irrelevant in opposition to this Motion. *See id.* Moreover, LGD continues to maintain baseless objections, including arguing that CMO should pay substantial costs to obtain transcripts that are readily available to LGD. *See Vitalo v. Cabot Corp.*, 212 F.R.D. 478, 479 (E.D. Pa. 2002) ("[I]t is well established that a party cannot object to the production of otherwise discoverable information simply because it may be available elsewhere.")

LGD's refusal to produce what it has agreed to produce has severely prejudiced CMO's ability to conduct claim construction discovery (which is now largely over), has forced CMO to waste substantial resources trying to obtain from LGD what it has already agreed to produce, yet refuses to produce, and has even prejudiced CMO's ability to support this Motion with the relevant evidence that LGD refuses to provide. It is precisely this sort of discovery gamesmanship that justifies CMO's request for an index of the LGD Prior Litigations materials. *See* D.I. 379 at 14–15 (discussing LGD's carefully worded agreement and its notable omissions). CMO must be assured that LGD is not able to continue hiding the ball regarding the LGD Prior Litigations materials.

### III.  CONCLUSION

For the reasons stated above, CMO respectfully requests that the Court order LGD to produce relevant materials that are responsive to Document Request No. 98, as outlined in CMO's submissions on this matter.

OF COUNSEL:

Morgan Chu
Jonathan S. Kagan
Alexander C.D. Giza
Adam Hoffman
Thomas C. Werner
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010

Dated: September 5, 2008
881285

POTTER ANDERSON & CORROON LLP

By: /s/ Philip A. Rovner
Philip A. Rovner (#3215)
Hercules Plaza
1313 N. Market St.
P.O. Box 951
Wilmington, Delaware  19899-0951
(302) 984-6000
provner@potteranderson.com

*Attorneys for Defendant*
*Chi Mei Optoelectronics Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on September 5, 2008, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY CM/ECF, HAND DELIVERY AND E-MAIL**

Richard E. Kirk, Esq.
Ashley Blake Stitzer, Esq.
The Bayard Firm
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardfirm.com
astitzer@bayardfirm.com

**BY CM/ECF, HAND DELIVERY AND E-MAIL**

John W. Shaw, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jshaw@ycst.com
kpascale@ycst.com

I hereby certify that on September 5, 2008 I have sent by E-mail the foregoing document to the following non-registered participants:

Gaspare J. Bono, Esq.
Matthew T. Bailey, Esq.
Lora A. Brzezynski, Esq.
Cass W. Christenson, Esq.
R. Tyler Goodwyn, IV, Esq.
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
gbono@mckennalong.com
mbailey@mckennalong.com
lbrzezynski@mckennalong.com
cchristenson@mckennalong.com
tgoodwyn@mckennalong.com

Vincent K. Yip, Esq.
Peter J. Wied, Esq.
Jay C. Chiu, Esq.
Katherine F. Murray, Esq.
Ms. Denise Esparza
Paul Hastings Janofsky & Walker LLP
515 South Flower Street
Los Angeles, CA 90071
vincentyip@paulhastings.com
peterwied@paulhastings.com
jaychiu@paulhastings.com
katherinemurray@paulhastings.com
deniseesparza@paulhastings.com

| | |
|---|---|
| Ron E. Shulman, Esq.<br>Julie M. Holloway, Esq.<br>Wilson Sonsini Goodrich & Rosati<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>rshulman@wsgr.com<br>jholloway@wsgr.com | M. Craig Tyler, Esq.<br>Brian D. Range, Esq.<br>Wilson Sonsini Goodrich & Rosati<br>8911 Capital of Texas Highway North<br>Westech 360, Suite 3350<br>Austin, TX 78759<br>ctyler@wsgr.com<br>brange@wsgr.com |

/s/ Philip A. Rovner
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

846666