IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG DISPLAY CO., LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-726-JJF |
| | : | |
| AU OPTRONICS CORPORATION; | : | |
| AU OPTRONICS CORPORATION | : | |
| AMERICA; CHI MEI | : | |
| OPTOELECTRONICS CORPORATION; | : | |
| and CHI MEI OPTOELECTRONICS | : | |
| USA, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| AU OPTRONICS CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 07-357-JJF |
| | : | |
| LG DISPLAY CO., LTD. and | : | |
| LG DISPLAY AMERICA, INC., | : | |

Gaspare J. Bono, Esquire; R. Tyler Goodwyn, IV, Esquire; Lora A.
Brzezynski, Esquire and Cass W. Christenson, Esquire of MCKENNA
LONG & ALDRIDGE LLP, Washington, D.C.
Richard D. Kirk, Esquire; Ashley B. Stitzer, Esquire and Stephen
B. Brauerman, Esquire of BAYARD P.A., Wilmington, Delaware.

Attorneys for LG Display Co., Ltd. and LG Display America, Inc.

Vincent K. Yip, Esquire; Peter J. Wied, Esquire and Terry D.
Garnett, Esquire of PAUL HASTINGS JANOFSKY & WALKER LLP, Los
Angeles, California.
Ron E. Shulman, Esquire and Julie M. Holloway, Esquire of WILSON
SONSINI GOODRICH & ROSATI, Palo Alto, California.
M. Craig Tyler, Esquire and Brian D. Range, Esquire of WILSON
SONSINI GOODRICH & ROSATI, Austin, Texas.
Richard H. Morse, Esquire; John W. Shaw, Esquire; Karen L.

Pascale, Esquire and Andrew A. Lundgren, Esquire of YOUNG CONAWAY
STARGATT & TAYLOR LLP, Wilmington, Delaware.

Attorneys for AU Optronics Corporation and AU Optronics
Corporation America.

_____ _____ _____

**MEMORANDUM OPINION**

February *16*, 2010

Wilmington, Delaware.

Farnan, District Judge.

In the first phase of the Bench Trial in this patent
infringement action, Defendants, AUO Optronics Corporation and
AUO Optronics Corporation America (collectively, "AUO"), asserted
four patents and seven claims[1] against Plaintiff, LG Display Co.,
Ltd. ("LGD").  The Court reserved judgment on several evidentiary
objections raised by the parties during the course of the trial.
The parties have briefed their respective positions on the
evidentiary matters raised, and this Memorandum Opinion
constitutes the Court's rulings with regard to the pending
evidentiary matters in Phase I of the Bench Trial.

## I.   AUO's POST-TRIAL EVIDENTIARY OBJECTIONS

### A.   The Opinions Of LGD's Experts on the '160 and '629 Patents

AUO contends that LGD's experts, Mr. Eccles on the '160
patent and Dr. Rubloff on the '629 patent, offered opinions that
were not previously disclosed in their expert reports or during
their depositions.  AUO contends that it was denied the
opportunity to take discovery on these opinions, and therefore,
these opinions should be stricken from the record.

---

[1]      The patents and claims asserted by AUO are:  U.S.
Patent No. 6,778,160 (claims 1 and 3) (the "'160 patent");  U.S.
Patent No. 6,689,629 (claims 7 and 16) (the "'629 patent");  U.S.
Patent No. 7,125,157 (claim 1) (the "'157 patent") and U.S.
Patent No. 7,090,506 (claims 7 and 17) (the "'506 patent").

1

In response, LGD contends that Mr. Eccles' June 4, 2009 trial testimony was proper rebuttal testimony to Dr. Silzar's expert report, because the methodology underlying Dr. Silzar's opinions was not disclosed until his May 1-2, 2009 deposition. Regarding Dr. Rubloff's opinions, LGD contends that his opinions were properly disclosed in his expert reports, and therefore, AUO had adequate notice of LGD's non-infringement positions.

Federal Rule of Civil Procedure 26(a)(2)(B) provides that an expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore." The failure to disclose information required by this Rule may result in the exclusion of evidence based on that information, unless the failure to disclose is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The determination of whether to exclude evidence is committed to the discretion of the Court. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 749 (3d Cir. 1994).

LGD does not dispute that Mr. Eccles' objected to trial opinions were not disclosed by LGD until the third day of trial. Tr. 1039:24-1041:2 (Eccles); Tr. 1363:3-13 (Silzars).[2]  LGD only

---

[2]      With respect to his opinions regarding compressed and decompressed data errors, LGD does not dispute that these opinions were not disclosed in Mr. Eccles's expert report.  Tr. 1363:3-13 (Silzars).  Rather, LGD contends only that AUO knew of the translation of LGD's technical document entitled "Overdrive Circuit (ODC) Presentation" as it was used as its trial exhibit AUOTX 1538.  (D.I. 1406 at .  LGD does not, however, explain how this purported notice to AUO, takes the place of its disclosure obligations, and the Court is not persuaded that this notice of a

2

argues that Mr. Eccles' undisclosed opinions were proper rebuttal to Dr. Silzar's allegedly late disclosed methodology. Specifically, LGD contends that Mr. Eccles did not realize that Dr. Silzar's was using a photodiode with a linear response. In light of the record, however, the Court finds LGD's position untenable.

Mr. Eccles had approximately one month to review Dr. Silzar's expert report before submitting his own rebuttal expert report on March 27, 2009, and another month to review and analyze the testing methodology before his deposition was taken on April 21, 2009. Tr. 1040:5-19, 1041:14-1043:9 (Eccles); see also Tr. 1333:21-1334:7 (Silzars). A review of Dr. Silzar's expert reports reveals that his methodology was disclosed, and Mr. Eccles, as an expert in the field, could have set up his own tests to rebut or verify Dr. Silzar's results. Tr. 1343:10-23, 1335:3-8 (Silzars). Yet, Mr. Eccles ran no such independent tests. In fact, Mr. Eccles admitted at trial that he didn't even "g[e]t into the measurements" of Dr. Silzar's tests or make his own list of what he would have done while directing photometric measurements until the week before trial. Tr. 1044:12-1046:1 (Eccles). Mr. Eccles also conceded that although Dr. Silzar's deposition testimony was the trigger for his new opinions

translation relieves LGD of its obligation to disclose its expert's opinions.

3

regarding the accuracy of Dr. Silzar's data, he "should have noticed [the purported inaccuracies] a couple of months ago." Tr. 1045:22-23 (Eccles). Moreover, the Court notes that LGD never supplemented Mr. Eccles' expert report, even though there was a month between Dr. Silzar's deposition and Mr. Eccles' trial testimony.

LGD contends that AUO had an opportunity to conduct cross-examination and rebut Mr. Eccles' testimony through Dr. Silzar's testimony. However, the fact that Dr. Silzars was able to, on the spot, offer rebuttal to Mr. Eccles' testimony does not, in the Court's view, provide a complete remedy to AUO. AUO and its expert were given no advance notice of Mr. Eccles' testimony, and LGD made no attempt to amend its expert report prior to allowing Mr. Eccles to take the stand and reveal what LGD acknowledges were undisclosed, new opinions. In the Court's view, this is precisely the type of attorney conduct that is prohibited by the Federal Rules of Civil Procedure. Accordingly, the Court concludes that Mr. Eccles' testimony should be stricken from the record, and AUO's objection will be sustained as it pertains to the testimony of Mr. Eccles at Tr. 924:12-926:17, 931:22-942:3, 963:20-966:8 and the related trial exhibit, LGD 1085 at Slides 160-009 through 160-018.

As for the testimony of Dr. Rubloff, the Court will overrule AUO's objection. Though without much detailed analysis, it is

4

apparent that Dr. Rubloff at least identified LT060VI and LT071VI in his expert report as products that give rise to the alleged on-sale bar with respect to the '629 patent. (LGDTX 399 Expert Report of Gary W. Rubloff on Invalidity of '629 Patent (February 27, 2009) at 76-77). AUO contends that Dr. Rubloff's opinion was premised on a finding that these two products were found to infringe the asserted claims, and AUO contends that it did not accuse LT060VI and LT071VI of infringement. However, the Court agrees with LGD that AUO cannot avoid the potential of an on-sale bar by simply not accusing the identified products of infringement in the first instance. The burden to prove the on-sale bar defense rests with LGD, and therefore, LGD must show that the products giving rise to the on-sale bar meet the elements of that defense.

As for the mask file correlation to LT060VI and LT071VI, there appears to be some basis for LGD's assertion that it did not disclose the correct mask file because it was not within the temporal frame of AUO's discovery request. AUO limited the term "LGD and LGDA Product" to "all LCD Modules and LCD Panels made, used, imported, offered for sale, or sold by or for LGD and/or LGDA <u>since December 1, 2000.</u>" (D.I. 1382, Exh. 1 at ¶ 5) (emphasis added). As LGD points out, the time-period for the correlation chart (post December 2000) is not the same for the invalidating sales (1999). However, the Court also notes that

Interrogatory No. 23 requested "all corresponding (a) electronic mask files," and therefore, there is an arguable basis for AUO's argument that LGD did not meet its disclosure obligations. (Id.) (emphasis added). In any event, to the extent there is confusion over the correct mask file or to the extent that the change in mask file suggests modifications to the identified LGD products that preclude them from being prior art, the Court will consider those issues in the context of evaluating the merits of LGD's on-sale bar defense, but will not use these issues as a basis to exclude LGD's evidence regarding the on-sale bar.

As for LGDTX 1080, the Court notes that this document was not explicitly referenced in the reports of Dr. Rubloff, however, the Court is persuaded that the essence of the non-infringement arguments related to this document were sufficiently stated in Dr. Rubloff's report and during the deposition of I.D. Song, so as to constitute disclosure to AUO of the non-infringement opinions at issue. Accordingly, the Court will overrule AUO's objection to Dr. Rubloff's opinions regarding LT060V1 and LT071VI, his trial testimony at Tr. 837:19-842:1, and exhibits LGD-1080, LGD-1097.

B.   The HP iPAQ Products

AUO contends that LGD's expert on infringement and validity for the '506 patent, Mr. Smith-Gillespie, failed to disclose his opinions regarding certain products he identified as prior art,

6

specifically, HP 2210 and HP 2215. In addition, AUO contends
that Mr. Smith-Gillespie's opinions regarding these products as
prior art are unreliable, because they are based upon
inadmissible hearsay, namely the statement of counsel that the
products were on sale during the relevant time so as to raise the
on-sale bar, and unauthenticated documents.

    In response, LGD points out that the Court has previously,
and on multiple occasions denied AUO's motions to preclude LGD
from relying on the HP series of products. LGD also contends
that AUO has been on notice regarding LGD's assertion of these
products as part of its on-sale bar defense.

    With respect to the HP 2210 product, the Court concludes
that AUO's arguments relate more to the reliability of Mr. Smith-
Gillespie's opinions than to the admissibility of that product
and his related opinions. As for the HP 2215 product, Mr. Smith
Gillespie acknowledged at trial that this product was never
discussed in his expert report or deposition and that he did not
see the product until two business days before trial commenced.
Tr. 1176:2-15, 1176:24-1177:5, 1177:21-1178:1 (Smith-Gillespie).
LGD argues that the product was identified in its subpoena duces
tecum on HP and in an exhibit to Mr. Smith-Gillespie's expert
report. However, the Court notes that the product was never
specifically identified as prior art by LGD. Instead, it appears
to the Court that the HP 2215 was singled out by LGD on the

7

second day of trial. This late disclosure notwithstanding,
however, there is some evidence that HP 2215 is similar, if not
identical to, HP 2210 and to the HP 2200 series in general.   Tr.
1142:6-1143:12; LGDTX 1090 at LGD 506-010 (Smith-Gillespie).   In
these circumstances, the Court will allow HP 2215 into evidence
with the caveat that AUO will be permitted to rebut its status as
prior art with its own newly disclosed evidence regarding
reduction to practice and conception dates. Accordingly, the
Court will overrule AUO's objections to evidence and testimony
related to the HP iPAQ products.

C.   LGD's License Defense

AUO contends that LGD should be precluded from advancing a
license defense because it failed to disclose this defense prior
to trial. LGD offers no rebuttal to AUO's contentions regarding
the non-disclosure of this defense in its responsive evidentiary
brief (D.I. 1404), and the Court concludes that the defense was
not disclosed to AUO as required by Fed. R. Civ. P. 26(e).
Accordingly, to the extent LGD maintains a purported license
defense, the Court will sustain AUO's objection and strike this
defense, including the following documents and testimony
pertaining to it:   LGD-406, LGD-419, LGD-428, LGD-1078 and Tr.
1058:12-1064:4 (W. Choi).

8

D.   Exhibits Without An Alleged Sponsoring Witness

AUO lists eighteen LGD exhibits that it contends were admitted without a sponsoring witness as required by the Court during the May 5, 2009 pretrial conference.

In response, LGD contends that three of the eighteen exhibits were inadvertently included on LGD's admitted exhibit list, LGDTX 206, 207 and 1060, and therefore, LGD has agreed to withdraw them. As for the remaining exhibits, LGD has identified sponsoring witnesses for these exhibits, as well as portions of the trial transcript in which many of these exhibits were admitted without objection from AUO. Because LGD has identified sponsoring witnesses for these trial exhibits and/or AUO did not object to the exhibits during their admission into evidence, the Court will overrule AUO's objections.

E.   Expert Reports

AUO contends that both parties' expert reports are inadmissible hearsay, and therefore, all expert reports should be disregarded except when offered for a non-hearsay purpose.   In making this argument, AUO offers no specific objections to any reports improperly used.   LGD has not responded to this argument, and the Court finds no need to issue a decision with respect to AUO's argument because no specific objections have been lodged by AUO.

## II.  LGD's POST-TRIAL EVIDENTIARY OBJECTIONS

A.  The Damages Testimony Of AUO's Expert Witness, Jonathan
    Putnam

LGD contends that the Court should exclude the damages

testimony of AUO's expert witness, Dr. Jonathan Putnam, as

inadmissible and unreliable under Fed. R. Evid. 702 and Daubert

v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).  LGD contends

that Dr. Putnam's methods and analysis fail to comply with

controlling Federal Circuit precedent concerning reasonable

royalty law.  Specifically, LGD contends that Dr. Putnam's

analysis utilizes unreliable assumptions, focuses on patents not

in suit, fails to include a proper analysis of the Georgia-

Pacific factors, and treats certain license agreements

inconsistently.

In response, AUO contends that LGD's argument is irrelevant

to the present case, because Daubert concerns arise in the

context of a jury trial.  Because this action was tried before

the Court, AUO contends that the testimony of Dr. Putnam should

not be stricken.  AUO also makes several arguments regarding the

reliability and propriety of Dr. Putnam's analysis.

As AUO points out, courts in this circuit and others have

acknowledged that the gatekeeping obligation provided for in

Daubert is less pressing in the context of a bench trial.  See

e.g., United States v. Brown, 415 F.3d 1257, 1268 (11th Cir.

2005); Deal v. Hamilton County Bd. of Educ., 392 F.3d 840, 852

10

(6th Cir. 2004); Gibbs v. Gibbs, 210 F.3d 491, 500 (5th Cir. 2000); Gannon v. U.S., 571 F. Supp. 2d 615, 616 (E.D. Pa. 2007). In the Court's view, LGD's objections are more appropriately considered in the context of the weight to be afforded Dr. Putnam's testimony, and therefore, the Court will admit his testimony into evidence so that the Court may consider it in the context of the parties' presentation on damages. At that juncture, the Court will weigh Dr. Putnam's testimony in light of LGD's arguments. Accordingly, the Court will overrule LGD's objection to the testimony of Dr. Putnam.

B. Boru Chen's Testimony Regarding AUO's Licensing Polices And Practices

LGD contends that the testimony of Boru Chen concerning AUO's licensing policies and practices should be stricken from the record, because she lacked personal knowledge as required by Fed. R. Evid. 602 to provide this testimony. Specifically, LGD contends that Ms. Chen did not negotiate the licenses, is not assigned to work on any patent infringement actions, and is not involved in patent prosecution. Rather, LGD contends that Hank Liu was the AUO employee who was primarily responsible for negotiating license. While LGD recognizes that AUO was permitted to designate Ms. Chen as a Rule 30(b)(6) witness during discovery, LGD contends that Ms. Chen's testimony at trial is inadmissible because it does not meet the requirements of Rule 602.

11

In response, AUO points out that the Court previously rejected a motion to compel brought by LGD raising the same lack of personal knowledge arguments. (D.I. 1220). AUO contends that Ms. Chen did not testify regarding the negotiation of particular licenses, and therefore, the fact that she did not personally negotiate the licenses is irrelevant. AUO also contends that Ms. Chen's lack of work in the patent litigation or prosecution area is also irrelevant to her testimony, because she did not testify regarding patent litigation and prosecution.

The Court has reviewed the testimony of Ms. Chen and concludes that her testimony establishes that she had personal knowledge regarding the topic of AUO's licensing and practices, for which she testified. In her position at AUO, Ms. Chen explained that she reviews license and patent agreements, assisted in litigation matters involving AUO and negotiated some of the license agreements. Tr. 48:18-49:3 (B. Chen). Ms. Chen's testimony is correlated to her personal knowledge in these areas. That Ms. Chen also spoke to her supervisor in preparation for her deposition testimony does not, in the Court's view, undercut her own knowledge base from which her testimony was derived. As AUO points out, LGD has not identified a single part of Ms. Chen's testimony that was not derived from her personal knowledge. Accordingly, the Court will overrule LGD's objection to the testimony of Ms. Chen concerning AUO's licensing policies and

12

practices.

C.  Ms. Chen's Testimony Regarding The Chain Of Title
    Between IBM Japan And IBM Corp.

LGD contends that Ms. Chen's testimony regarding her understanding of the chain of title between IBM Japan and IBM Corp. ("IBM") for purposes of establishing ownership of the '629 patent should be excluded from evidence, as well as the documents regarding this chain of title. Specifically, LGD contends that Ms. Chen lacks any personal knowledge regarding the documents, and therefore, her testimony is inadmissible under Rule 602. LGD also contends that AUO violated Fed. R. Evid. 1003, the best evidence rule, by proffering the testimony of Ms. Chen to prove the contents of the chain of title agreements. LGD further contends that the documents at issue are heavily redacted, unreliable, lacking in foundation, and violate the "rule of completeness" expressed in Fed. R. Evid. 106.

In response, AUO contends that the chain of title documents should be admitted into evidence regardless of Ms. Chen's testimony. AUO contends that under Fed. R. Evid. 903, the testimony of a subscribing witness is not necessary to authenticate the documents because the law of the jurisdiction governing the validity of the documents, here New York, does not require such a witness. AUO also contends that the documents are authentic based on their appearance, IBM's custody of the documents, and IBM's production of the documents in response to a

13

subpoena, along with a written declaration (AUO-821) from IBM under Fed. R. Evid. 902(11) establishing their authenticity. According to AUO the redaction of the documents does not affect their admissibility, because the documents are admissible as non-hearsay under Fed. R. Evid. 803(6) requiring trustworthiness in the source and/or method of preparation of the documents, and Fed. R. Evid. 803(16) applying to ancient documents.

"The testimony of a subscribing witness is not necessary to authenticate a writing unless required by the laws of the jurisdiction whose laws govern the validity of the writing." Fed. R. Evid. 903. Authentication by circumstantial evidence, in lieu of testimony, is permissible. McQueeny v. Wilmington Trust Company, 779 F.2d 916, 928 (1985). Circumstantial evidence that may be considered includes, but is not limited to, the source of the document, its appearance, content, substance, internal pattern, distinctive characteristics, and its age. Fed. R. Evid. 901. "The burden of proof for authentication is slight. 'All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be.'" McQueeny, 779 F.2d at 928 (citations omitted).

In this case, the Court concludes that AUO has met its burden of authenticating the documents in question, and the lack of personal knowledge by Ms. Chen concerning the documents does not affect their admissibility into evidence. The documents are

14

governed by New York law, and Ms. Chen's lack of personal
knowledge of the documents is irrelevant to their admissibility.
N.Y.C.P.L.R. 4518 ("All other circumstances of the making of the
memorandum or record, including lack of personal knowledge by the
maker, may be proved to affect its weight, but they shall not
affect its admissibility."). The documents were produced by IBM
in response to a subpoena served on IBM for the purpose of
establishing that IBM had the rights to sell the '629 patent
which is probative of their authenticity. McQueeney, 779 F.2d at
929. In addition, the Court is persuaded that the contents,
appearance and substance of the documents supports their
authenticity. The agreements are signed and attested to by the
parties to the agreements, and in the case of the December 1990
letter, the document appears on the party company's letterhead
and is signed by officers of the relevant companies. Further,
the documents were more than 20 years old and found in a place
where they would likely be kept. Fed. R. Evid. 901(b)(8)
(providing for authentication of ancient document where document
"(A) is in such condition as to create no suspicion concerning
its authenticity, (B) was in a place where it, if authentic,
would likely be, and (C) has been in existence 20 years or more
at the time it is offered").

    LGD suggests that the redactions to the documents affect
their admissibility as ancient documents and under the hearsay

15

exception for such documents, but in light of the foregoing
indicia of authenticity and reliability and in light of the
unredacted portions which speak to the chain of title issue, the
Court is not persuaded that the redactions create suspicion
regarding their authenticity or their trustworthy for
admissibility purposes under the Federal Rules of Evidence.
"'Although [Fed. R. Evid. 901(b)(8)] requires that the document
be free of suspicion, that suspicion does not go to the content
of the document but rather to whether the document is what it
purports to be. . . .' Questions as to the documents' content
and completeness bear upon the weight to be accorded the evidence
and do not affect the threshold question of authenticity."
Threadgill v. Armstrong World Industries, Inc., 928 F.2d 1366,
1375 (3d Cir. 1991). Accordingly, the Court will overrule LGD's
objection to the admission of the chain of title documents.[3]

D.  Dates Of Conception And Reduction To Practice For The
    '506 Patent

LGD objects to the testimony of AUO employee Kuang-Tao Sung
and AUOTX 1544-1546, 1611-1614 regarding dates of conception and
reduction to practice for the '506 patent. LGD contends that AUO

---

[3]     The Court notes that AUO has not responded to LGD's
argument as it pertains to Ms. Chen's testimony concerning the
chain of title documents, but instead focuses its argument on the
admission into evidence of the chain of title documents
themselves. Accordingly, the Court will sustain LGD's objection
to Ms. Chen's testimony concerning her understanding of the chain
of title documents.

16

disclosed December 16, 2003, as the date of conception of the '506 patent, and April 19, 2004, as the date of the '506 patent's reduction to practice in its interrogatory responses. LGD contends that AUO knew since November 2008, that the HP iPaq products were potential prior art, but did not supplement its interrogatory response until June 3, 2009, the second day of trial in an effort to swear behind the November 2003 sales receipt that LGD produced showing a sale of an HP iPAQ h2215 product in the United States. The supplemental interrogatory response changed the date of conception for the '506 patent from December 16, 2003 to January 15, 2003, changed the reduction to practice from constructive to actual, and changed the date of the reduction to practice from April 19, 2004 to July 3, 2003. AUO then called Mr. Sung to testify at trial, even though he was not on the final list of witnesses to be called in person at trial. LGD contends that AUO breached its duty to amend its discovery responses under Rule 26(e)(2), and therefore, the testimony of Mr. Sung should be excluded under Rule 37(c).

In response, AUO contends that it was entitled to offer Mr. Sung's testimony to rebut LGD's belated identification of the HP 2215 product as prior art. AUO contends that prior to the identification of the HP 2215 as prior art, it had no reason to supplement its interrogatory answers, which expressly left open the possibility of AUO claiming an earlier invention date for the

17

'506 patent.  AUO contends that LGD failed to provide it with an opportunity to inspect the HP 2215 product until the evening following the second day of trial and the second of two of the HP2215 products was never produced for AUO's inspection.  AUO contends that it did not attempt to supplement its interrogatory response earlier because discovery had closed, and it relied upon the prior art disclosed by LGD in its invalidity contentions, which at that time did not necessitate AUO attempting to prove an earlier conception date for the '506 patent.

The Court has allowed LGD to assert the HP 2215 product as prior art, despite its late disclosure and AUO's objections, and as discussed infra, the Court will allow AUO an opportunity to rebut LGD's invalidity argument based on this prior art.  The documents upon which AUO relies for its current conception and reduction to practice dates were provided to LGD in 2009, and thus, LGD had, at least, prior access to the documents upon which AUO now relies.  In the Court's view, this disclosure minimizes any undue prejudice to LGD.  Further, the Court notes that LGD was permitted to depose Mr. Sung prior to his trial testimony.  That LGD chose not to ask Mr. Sung any conception questions does not mean that LGD was unduly prejudiced by his testimony at trial concerning this topic.  Accordingly, because the Court has admitted the HP products into evidence as potential prior art despite problems with their disclosure to AUO, the Court will

18

likewise admit AUO's rebuttal evidence concerning reduction to practice and conception so as to provide AUO an opportunity to address that potential prior art.

E.    Other Evidence

LGD also raises objections to:  (1) AUO's trial demonstration regarding a non-public display operating in both the landscape and portrait orientations; (2) AUOTX 80, a specification for an LGD 47 inch television that was not accused of infringement; (3) rebuttal evidence to LGD's on-sale bar testimony for the '629 patent; and (4) deposition testimony read into the record regarding the '737 patent, which was not at issue during trial.

The Court has reviewed the record as it pertains to the cited evidence and concludes that exclusion of the evidence is not warranted.  LGD's arguments primarily concern relevance, the potential for misleading the fact-finder, and questions as to the probative value of the evidence.  Because this case was tried to the Court, the Court is not persuaded that exclusion of this evidence is warranted.  Rather, the Court is persuaded that LGD's arguments are more pertinent to the weight the Court should afford this evidence rather than to its ultimate admissibility.  Accordingly, the Court will overrule LGD's objections to the aforementioned evidence.

19

## III.   CONCLUSION

For the reasons discussed, the Court will overrule and/or sustain the various evidentiary objections lodged by the parties.

An appropriate Order detailing the Court's rulings on these evidentiary matters will be entered.