```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF DELAWARE

LG DISPLAY CO., LTD.,               :
                                    :
          Plaintiff,                :
                                    :
     v.                             : Civil Action No. 06-726-JJF
                                    :
AU OPTRONICS CORPORATION;           :
AU OPTRONICS CORPORATION            :
AMERICA; CHI MEI                    :
OPTOELECTRONICS CORPORATION;        :
and CHI MEI OPTOELECTRONICS         :
USA, INC.,                          :
                                    :
          Defendants.               :
_____:_____
                                    :
AU OPTRONICS CORPORATION,           :
                                    :
          Plaintiff,                :
                                    :
     v.                             : Civil Action No. 07-357-JJF
                                    :
LG DISPLAY CO., LTD. and            :
LG DISPLAY AMERICA, INC.,           :
```

Gaspare J. Bono, Esquire; R. Tyler Goodwyn, IV, Esquire; Lora A.
Brzezynski, Esquire; Cass W. Christenson, Esquire; Adrian P.J.
Mollo, Esquire and Stephen Chippendale, Esquire of MCKENNA LONG &
ALDRIDGE LLP, Washington, D.C.
Richard D. Kirk, Esquire and Stephen B. Brauerman, Esquire of
BAYARD P.A., Wilmington, Delaware.

Attorneys for LG Display Co., Ltd and LG Display America, Inc.

Vincent K. Yip, Esquire; Peter J. Wied, Esquire and Terry D.
Garnett, Esquire of PAUL HASTINGS JANOFSKY & WALKER LLP, Los
Angeles, California.
Lawrence J. Gotts, Esquire of PAUL HASTINGS JANOFSKY & WALKER
LLP, Washington, D.C.
Ron E. Shulman, Esquire of WILSON SONSINI GOODRICH & ROSATI, Palo
Alto, California.
Jule M. Holloway, Esquire of WILSON SONSINI GOODRICH & ROSATI,
San Francisco, California.
M. Craig Tyler, Esquire of WILSON SONSINI GOODRICH & ROSATI,
Austin, Texas.
Richard H. Morse, Esquire; John W. Shaw, Esquire; Karen L.

Pascale, Esquire and Andrew A. Lundgren, Esquire of YOUNG CONAWAY
STARGATT & TAYLOR LLP, Wilmington, Delaware.

Attorneys for AU Optronics Corporation and AU Optronics
Corporation America.

_____

**MEMORANDUM OPINION**

.

March 2, 2010

Wilmington, Delaware.

Farnan, District Judge.

In the second phase of the bench trial in this patent

infringement action, Plaintiff, LG Display Co., Ltd. ("LGD")

asserted four patents and seven claims[1] against Defendants, AUO

Optronics Corporation and AUO Optronics Corporation America

(collectively, "AUO"). The Court reserved judgment on several

evidentiary objections raised by the parties during the course of

the trial. The parties have briefed their respective positions

on the evidentiary matters raised, and this Memorandum Opinion

constitutes the Court's rulings with regard to the pending

evidentiary matters in Phase II of the Bench Trial.

## I. LGD's POST-TRIAL EVIDENTIARY OBJECTIONS

### A. The Burden Of Proof

LGD's first evidentiary objection is not an evidentiary

objection at all, but an argument concerning the burden of proof.

Specifically, LGD contends that it has satisfied the elements of

35 U.S.C. § 295 such that a presumption of infringement by AUO

exists, and therefore, the burden of proof should be shifted to

AUO to rebut this presumption. LGD's argument is inextricably

intertwined with the merits. Accordingly, the Court will not

address the argument here, but in its proper context of the

---

[1]        The patents and claims asserted by LGD are:  U.S.
Patent No. 5,019,002 (claim 8)(the "'002 patent"); U.S. Patent
No. 5,825,449(claims 10 and 11) (the "'449 patent"); U.S. Patent
No. 6,815,321(claims 7, 17 and 19) (the "'321 patent") and U.S.
Patent No. 7,218,374 (claim 9) (the "'374 patent").

parties' post-trial briefing on the merits

B.   The Testimony Of Lawrence Tannas

LGD contends that the Court should disregard the testimony of AUO's expert witness, Lawrence Tannas, regarding the '374 patent.   Specifically, LGD contends that the opinion of Mr. Tannas that AUO does not use auxiliary sealants in its ODF processes is unreliable under Fed. R. Evid. 702 and Daubert.   LGD contends that Mr. Tannas did not examine any AUO sealant patterns himself, but based his opinions on incomplete conversations with Ms. Flora Fu, incomplete documentation, and photos and videos that he did not take and that did not disclose the complete sealant patterns.

In response, AUO contends that it provided the sealant patterns to both LGD and Mr. Tannas in the form of design review boards and videos taken during the manufacturing process.   AUO contends that the materials Mr. Tannas reviewed were not incomplete and that the steps Mr. Tannas undertook in preparation for his testimony support the thoroughness of his analysis.

As the Court noted in its Phase I Memorandum Opinion on the parties' evidentiary objections, Daubert considerations are less pressing in the context of a bench trial.   Further, the Court is persuaded that LGD's arguments go more toward the weight to be afforded Mr. Tannas's testimony than to its admissibility in the first instance, and therefore, the Court will overrule LGD's

objection.

C.  AUO's Advice Of Counsel Defense

LGD next contends that the Court should strike AUO's advice of counsel defense for the '002 and '449 patents.  Specifically, LGD refers to the testimony of AUO employee Kuan Wen ("Frank") Hu and the written opinions at AUOTX 1090 and AUOTX 1092.  LGD contends that these opinions lacked probative value, were untimely disclosed, and do not provide objective legal advice upon which AUO could reasonably rely.

In response, AUO contends that LGD's argument goes to the merits and should be considered in the context of post-trial briefing.  Alternatively, AUO contends that it did not receive notice that LGD intended to assert the '002 and '449 patents until the filing of this action, and therefore, it was reasonable for AUO to secure the opinions of counsel in 2007.  AUO also contends that it disclosed its opinions of counsel on November 26, 2008, two and a half months prior to the close of fact discovery and five months prior to the close of expert discovery.

As LGD acknowledges the Court denied LGD's Motion In Limine No. 3, in which LGD raised the same issues that it raises here.  The Court is not persuaded that its pretrial ruling should be reconsidered.  LGD's arguments primarily go to the weight to be afforded to this evidence, and not to its admissibility.  To the extent LGD challenges the timeliness of AUO's disclosure of this

evidence, the Court finds that the record establishes timely

disclosure by AUO of its opinions of counsel and its intention to

rely upon those opinions. D.I. 1306 at ¶ 5-7 (Declaration of

Daniel Prince). Accordingly, the Court will overrule LGD's

objection.

D.    AUO's ESD Repair Evidence

LGD also contends that AUO's evidence regarding ESD repair

and the related exhibits and testimony should be excluded because

AUO failed to timely disclose the ESD Repair Spreadsheets.  LGD

also contends that AUOTX 1680 is inadmissible under Fed. R. Evid.

1006 related to summaries, because the underlying documents upon

which the summary was based were not made available to it.

As with LGD's previous objection, this issue was raised by

LGD pretrial in its Motion In Limine No. 5, which was denied by

the Court.  The Court finds that the record establishes that,

upon learning of LGD's damages theory, AUO timely disclosed its

ESD repair theory and its calculations in its expert rebuttal

report served on April 3, 2009.  D.I. 1435, Exh. H (Putnam Expert

Report) at ¶¶ 20(e), 35, 37 and Exhs. 3-4.  LGD had the

opportunity to, and did, explore these issues with Dr. Putnam

during his deposition, and therefore, the Court is not persuaded

that LGD has been unduly prejudiced.  Id., Exh. J. (Putnam Dep.)

at 85:21-87:7, 89:22-95:3; 99:2-102:15; 301:9-304:13, 305:13-

306:20, 307:6-309:1.  Further, the Court is not persuaded that

4

Fed. R. 1006 applies to AUO-1680. The document was introduced as a business record under Fed. R Evid. 803(6), and not as a summary for "voluminous writings" under Fed. R. Evid. 1006. AUO-1680 meets the criteria for admissibility under Rule 803(6). Accordingly, the Court finds no basis upon which to strike AUO-1680 or the trial testimony related to ESD repair. Accordingly, the Court will overrule LGD's objection.

E.    Testimony of M.F. Chiang And J.S. Lin

LGD next objects to the trial testimony of M.F. Chiang and J.S. Lin that is allegedly inconsistent with their testimony as AUO's corporate designees. Specifically, LGD contends that M.F. Chiang would not or could not, during his deposition, answer certain questions about AUO's mask files and TFT arrays, yet when he testified at trial, he was able to address, in detail, these items. LGD contends that Mr. Chiang works with mask files on a weekly basis, and therefore, his refusal to answer during the deposition amounts to a lack of cooperation that should result in the striking of his trial testimony.

LGD also contends that the testimony of Jung Hsiang Lin on the topic of sealant patterns should be stricken because, at his deposition, Mr. Lin's personal knowledge of AUO's sealant patterns was limited to his one visit to an AUO fab. However, following his deposition, LGD contends that AUO had Mr. Lin visit every one of AUO's fabs and study additional materials. Because

5

Mr. Lin was not properly prepared for his Rule 30(b)(6)
deposition, LGD contends that any trial testimony he offered
beyond the scope of his deposition should be excluded.

In response, AUO contends that LGD only provided Mr. Chiang
with a portion of the mask files at issue, and that he was unable
to testify about these portions because of their incomplete
and/or illegible nature. AUO contends that LGD's expert, Dr.
Schlam, had similar difficulties when presented with incomplete
information. With respect to Mr. Lin, AUO contends that Mr. Lin
was prepared for his Rule 30(b)(6) deposition, and there was
nothing improper with his decision to become further prepared for
trial. In fact, AUO contends that Mr. Lin was obligated under
Fed. R. Evid 602 to gain personal knowledge for the matters to
which he testified at trial, a requirement that did not apply to
his Rule 30(b)(6) testimony.

The Court has reviewed the deposition and trial testimony of
Mr. Chiang and finds that his trial testimony should not be
excluded on the basis of a failure to cooperate. At trial, Mr.
Chiang explained that he was unable to testify about LGD's print
outs because they were not in the context of the full mask file
and were visually different. Tr. 1344:17-1345:2, 1345:21-1346:4,
1349:11-1350:20 (M.F. Chiang). Indeed, during his deposition,
Mr. Chiang also noted these difficulties. D.I. 1435; Exh. L
(M.F. Chiang Dep.) at 14:7-15, 15:15-16:2, 18:22-19:2, 21:17-

22:19. Accordingly, the Court finds no basis to exclude Mr. Chiang's testimony, and therefore, LGD's objection will be overruled.

As for Mr. Lin, the Court notes that LGD has not identified any topic or question regarding AUO's sealant process that Mr. Lin was unprepared to address and has not identified any inconsistencies between his trial testimony and his deposition testimony. Compare D.I. 1435; Exh. E (Lin Dep.) at 266:4-267:4 with Tr. 947:6-17 (Lin). Mr. Lin complied with his Rule 30(b)(6) obligations by speaking to those in charge of sealant at each of AUO's fabs. His additional site visits were likewise in compliance with his Rule 602 obligations. Accordingly, the Court finds no basis to exclude Mr. Lin's testimony, and therefore, LGD's objection will be overruled.

F. Argument Concerning Whether AUO Fab L3D Is An ODF Facility

LGD requests the Court to preclude AUO from arguing that AUO Fab L3D is an ODF facility and that AUOTX 1210 is the video of a sealant pattern for use with ODF process. LGD contends that all of AUO's production indicated that Fab L3D is an injection facility and not an ODF facility. However, the day before Mr. Tannas's trial testimony, AUO disclosed AUOTX 1210, claiming that it shows that Fab L3D is an ODF facility. Dr. Fan Luo also testified in a similar manner regarding Fab L3D on the last day of trial. LGD contends that this testimony is inconsistent with

7

LDGTX 1157 and the representations of AUO's counsel, and
therefore, the Court should strike AUOTX 1210, Dr. Luo's
testimony regarding that exhibit and AUTOX 1703, which discusses
AUOTX 1210.

    In response, AUO contends that LGD's failure to recognize
that Fab L3D was an ODF facility was the result of its own
expert's failure.  AUO contends that its production documents
show that Fab L3D is an ODF fab, and that LGD's expert, Dr.
Melnik, ignored this information, either by oversight or
intentionally to support his position.  D.I. 1345, Exh. M (LGD-
78) and July 19, 2008 Production Letter); Tr. 1514:6-24 (Luo).
In addition, AUO contends that the video marked AUO-1210 was
produced to LGD on March 27, 2009 as an exhibit to Mr. Tannas's
expert report.  D.I. 1432 (Decl. of Denise Esparza) at ¶¶ 2-4 and
Exh. A-C.

    The Court has reviewed the record as it relates to the
production cited by AUO, and the Court finds that LGD was
provided with documentation indicating that Fab L3D was an ODF
fab.  Accordingly, the Court finds no basis to support LGD's
assertions regarding unfair surprise and undue prejudice, and
therefore, the Court will overrule LGD's objection.

    G.    Professor King Liu's Expert Testimony

    LGD's next objection overlaps with its previous objection to
Mr. Chiang's testimony.  Specifically, LGD contends that

8

Professor King Liu presented her opinions regarding non-infringement of the '449 patent relying on AUO product cross-sections, AUOTX-1709, provided by Mr. Chiang.  LGD contends that these demonstratives were used unfairly, because Professor Liu did not prepare them herself and made no effort to confirm their accuracy.  LGD further contends that Mr. Chiang gave no explanation during his testimony about how the cross-sections were prepared.  LGD contends that the demonstratives are not reliable or accurate, and for the reasons related to its objection to Mr. Chiang's testimony, LGD requests the exclusion of AUOTX-1709 and the related testimony of Professor Liu.[2]

In response, AUO contends that the testimony of Professor Liu demonstrates that AUO-1709 is accurate, and that Professor Liu independently confirmed its accuracy by comparing the exhibit with her knowledge of the corresponding .gds files for the depicted products.  In addition, AUO contends that Professor Liu did not rely on AUO-1709 to form her non-infringement opinion, but rather to rebut Dr. Schlam's assertions that the analyzed models were representative of all products, including products that were not analyzed that LGD accused of infringement.

_____

    [2]    LGD also requests the exclusion of Professor Liu's opinion regarding anticipation of the '449 patent.  That objection will be addressed by separate Memorandum Order due to a problem in the record regarding the admission of Professor Liu's expert report on the '449 patent.

The Court has rejected LGD's arguments as they relate to the testimony of Mr. Chiang, and therefore, the Court finds no basis to exclude AUO-1709 and Professor Liu's testimony on this ground. In addition, the Court has reviewed the testimony of Professor Liu regarding AUO-1709 and finds it to be contrary to LGD's assertions. Professor Liu never stated that the cross-sections in AUO-1709 were inaccurate. She acknowledged that the schematic may not have been drawn to scale, but that the structure was, in fact, accurate. Tr. 1336:6-15 (Liu). The testimony to which LGD refers, in which Professor Liu noted differences in some of the details, is Professor Liu's testimony regarding the accuracy of a demonstrative exhibit shown to her during her direct examination. Tr. 1386:18-1387:8, 1382:15-23 (Liu). Yet, Professor Liu confirmed that the illustrations on the board were "essentially the same [as] what Mr. Chiang showed." Tr. 1382:15-23; 1386:18-1387:1 (Liu).

In addition, Professor Liu testified that she reviewed the .gds files for the models depicted in the cross-sections, and based on her understanding, she confirmed the accuracy of the depictions in AUO-1709. Tr. 1381:21-1382:10 (Liu). Accordingly, the Court finds no basis upon which to strike AUO-1709 and the related testimony of Professor Liu, and therefore, the Court will overrule LGD's objection.

H.  AUOTX 1329 And Dr. Webster Howard's Related Testimony[3]

LGD next objects to AUOTX 1320 and the related testimony of Dr. Webster Howard.  LGD contends that Dr. Howard's expert report did not raise AUOTX 1329, which is a copy of U.S. Patent No. 5,156,986 (the "Wei" reference) in connection with the '321 patent.  Instead, LGD contends that Dr. Howard's report only discusses the Wei reference in connection with the '489 patent, which is not one of the four patents asserted by LGD at trial.

In response, AUO contends that Dr. Howard's report does state that the Wei reference invalidates the asserted claims of the '321 patent.  However, AUO maintains that Dr. Howard clarified at trial that he was not relying on the Wei reference in connection with his invalidity opinion, but only mentioned the Wei reference to show that it was a material reference disclosing the width difference limitation and a double-step structure.  Because Dr. Howard was not relying on the Wei reference for his invalidity opinion, AUO contends that his testimony is consistent with his expert report.

The Court granted LGD's Motion In Limine premised on the same arguments it raises here in its objection.  The Court is not persuaded that its initial decision was erroneous, and therefore, the Court will sustain LGD's objection as it relates to AUO-1329

---

[3]     LGD also sought the exclusion of AUO 1330 in its objection, and AUO has agreed that AUO-1330 should be excluded. Accordingly, LGD's objection is sustained as to AUO-1330.

11

and the related testimony of Dr. Howard.

I.    Dr. Jonathan Putnam's Damages Methodology

LGD reiterates its objection, raised in the Phase I trial,
to the damages testimony of Dr. Putnam during the Phase II trial.
LGD contends that Dr. Putnam used the same flawed and unreliable
methodology during both phases of trial, and therefore, his
testimony should be excluded.

The Court overruled LGD's objection to Dr. Putnam's damages
testimony as it pertained to the Phase I trial.  For the same
reasons given in that decision, the Court will overrule LGD's
objection to Dr. Putnam's Phase II trial testimony on damages.

J.    Dr. Putnam's Testimony Concerning Mr. Cobb's Deposition

LGD also objects to Dr. Putnam's testimony characterizing
the deposition of Mr. Cobb.  LGD contends that the questions and
answers regarding Mr. Cobb's testimony containing a series of
qualifying words like "could," "potentially," and "may" that are
devoid of context and meaningless.  Thus, LGD maintains that Dr.
Putnam's testimony regarding Mr. Cobb's deposition is not
probable.  LGD further contends that "Dr. Putnam's testimony
appears to be an ill-conceived predicate to support a last-ditch
argument that, should the Court adopt Mr. Cobb's royalty rates
for LGD's patents, it should apply the same rates to AUO's
patents."  D.I. 1395 at 46.  However, LGD contends that there is
no evidentiary basis to do this, because "AUO had the opportunity

to examine Mr. Cobb at trial concerning damages with regard to AUO's patents, but chose not to do so." Id.

In response, AUO contends that LGD relies on Mr. Cobb's testimony heavily in its post-trial briefing related to AUO's patents, despite LGD's assertion that Mr. Cobb's testimony is not relevant to royalty rates for AUO's patents. AUO further contends that Dr. Putnam's recitation at trial of Mr. Cobb's testimony was accurate.

In the Court's view, LGD's argument goes more to the weight to be afforded to Dr. Putnam's testimony than to its admissibility in the first instance. Accordingly, the Court will overrule LGD's objection.

## II.  AUO's POST-TRIAL EVIDENTIARY OBJECTIONS

### A.  Testimony Of Dr. Rubloff

AUO objects to the testimony of Dr. Gary Rubloff concerning AUO's alleged infringement of the '321 patent under Fed. R. Evid. 702 and Daubert. AUO contends that Dr. Rubloff's testimony is inherently unreliable. Among the many reasons AUO cites to support its unreliability argument, AUO contends that Dr. Rubloff only analyzed two accused products and did not explain how the products he analyzed were representative of the other accused infringing products. AUO also contends that certain trial testimony of Dr. Rubloff was beyond the scope of his expert report.

In response, LGD argues that its expert's testimony is reliable and in any event, points to AUO's argument in its Phase I evidentiary briefing, that Daubert has little relevance in a bench trial. In addition, LGD contends that Dr. Rubloff's opinions should not be stricken as beyond the scope of his expert report because they are proper extrapolations of his opinions.

AUO's objections to Dr. Rubloff's testimony were considered by the Court in the context of AUO's Motion In Limine No. 1 and were denied by the Court. The Court finds no basis to change its previous ruling. AUO's arguments regarding reliability are appropriately considered by the Court in the context of weighing the evidentiary value of Dr. Rubloff's opinions. Further, the Court is not persuaded by AUO's nondisclosure arguments, and finds at least some basis in Dr. Rubloff's report for the testimony he offered. Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 585 F. Supp. 2d 568, 581 (D. Del. 2008) (noting that "the Court has not required verbatim consistency with the report, but has allowed testimony which is consistent with the report and is a reasonable synthesis and/or elaboration of the opinions contained in the expert's report"). Further and in any event, the Court cannot conclude that AUO was unduly prejudiced by Dr. Rubloff's testimony such that exclusion of his opinions is an appropriate remedy. Accordingly, the Court will overrule AUO's objections.

B.  Testimony Of Dr. Elliot Schlam

AUO next contends that the testimony of LGD's expert, Dr. Schlam, on the '449 and '002 patents should be excluded because it is beyond the scope of his expert report.  AUO contends that Dr. Schlam opined on products he never analyzed without establishing how the products he did analyze were representative of the other accused products, and never revealed the grouping method he was using for the different products.

In response, LGD contends that Dr. Schlam's expert report properly apprised AUO of LGD's infringement contentions and specifically identified all of the alleged infringing products at issue.  LGD further contends that Dr. Schlam's opinions were a proper synthesis and/or elaboration of his expert report.

The Court has reviewed the expert report of Dr. Schlam and the related testimony at issue and cannot conclude that Dr. Schlam's testimony exceeded the scope of his expert report and unduly prejudiced AUO at trial such that the exclusion of the testimony and related evidence is warranted.  The Court will consider AUO's arguments concerning the representative products in the context of determining the appropriate weight to be given to Dr. Schlam's testimony.  Accordingly, the Court will overrule AUO's objection.

C.    Testimony of George A. Melnik

AUO next objects to the testimony of LGD's expert for the
'374 patent, George A. Melnik.  AUO contends that Dr. Melnik's
testimony is inherently unreliable because (1) he only reviewed a
select few AUO panel samples, all of which had been pre-selected
for his review by LGD's counsel, and (2) he based his opinion on
inconclusive findings and ignored the non-infringement of two
other products.  In addition, AUO contends that the Court should
strike Dr. Melnik's testimony regarding the Hitachi and Top
Engineering Equipment because it is beyond the scope of Dr.
Melnik's expert report.

In response, LGD disputes AUO's assertions regarding the
reliability of Dr. Melnik's testimony.  LGD also contends that
AUO cannot claim prejudice based on Dr. Melnik's expanded
explanation at trial of the sealant data storage issue, because
AUO refused to produce certain documentation.  In addition, LGD
contends that AUO had the opportunity to depose Dr. Melnik on
these issues, and Dr. Melnik's description of the sealant
dispensers was based on the testimony of AUO's witnesses and
experts.  Accordingly, LGD contends that AUO was not prejudiced
by Dr. Melnik's testimony, even if it was an expansion of that
which was contained in his expert report.

Notably, the cases upon which AUO relies for the exclusion
of Dr. Melnik's testimony were cases involving a jury trial, not

16

a bench trial. The Court finds that AUO's arguments concerning the reliability of Dr. Melnik's testimony are not grounds for exclusion of his testimony. Rather, the Court will consider AUO's reliability arguments in the context of determining the weight to be afforded to Dr. Melnik's testimony. As for AUO's argument that certain of Dr. Melnik's testimony was beyond the scope of his expert report, the Court cannot conclude that AUO was unduly prejudiced such that exclusion of the evidence is warranted. Dr. Melnik's report does address AUO's use of Hitachi sealant dispensers and AUO deposed Dr. Melnik regarding Top Engineering equipment. Accordingly, the Court will overrule AUO's objection.

D.    Testimony Of Arthur H. Cobb

AUO objects to the testimony of Arthur H. Cobb, LGD's damages expert for the '002, '374, '449 and '321 patents. AUO contends that Mr. Cobb's damages opinion is unreliable. According to AUO, Mr. Cobb bases his opinion on an allayed 5-10% yield increase incurred by AUO's purported practice of the patented processes. However, AUO contends that no reliable basis for the alleged increases exist. AUO also contends that Mr. Cobb did not independently verify the accuracy and methodology underlying the yield increases. Further, AUO contends that Mr. Cobb's 2% running royalty rate is unreliable because it is unsupported by the parties' respective licensing histories.

17

In response, LGD contends that Mr. Cobb's testimony is supported by the evidence. LGD further contends that AUO has mischaracterized Mr. Cobb's testimony and/or the documents upon which he relied.

In the Court's view, AUO's arguments regarding the testimony of Mr. Cobb go to the weight to be afforded to his testimony, rather than its admissibility. Accordingly, the Court will overrule AUO's objection.

E.  Exhibits And Demonstratives Allegedly Irrelevant To The Testimony

AUO objects to 61 numbered exhibits on the grounds that those exhibits were not discussed during live testimony or via deposition designations. Because these exhibits lack a sponsoring witness, AUO contends that they should be excluded from evidence. AUO also objects to certain exhibits which it contends were admitted en masse and were not probative. AUO further objects to all exhibits and demonstratives that were beyond the scope of an expert's testimony; exhibits that are not probative, specifically, LGD-155 and LGD-1150; exhibits and demonstratives that lack foundation, specifically a demonstrative used by Dr. Rubloff, and all foreign language documents for which LGD did not provide a timely translation, specifically, LGD 155 and LGD 1109-1118.

In response, LGD contends that AUO failed to timely object to the admission of many of these documents at trial, and

18

therefore, its objections should be considered waived.
Alternatively, LGD has identified sponsoring witnesses for the
documents.  With respect to the foreign language documents, LGD
contends that many of the documents are AUO documents in the
first instance, and these documents contain a significant amount
of English and/or contain self-explanatory graphs, charts and
pictures that require no translation.

    After reviewing the record, the Court finds that AUO has
either waived its objections to the cited document and/or LGD has
identified sponsoring witnesses.  Further, the Court finds no
reason to exclude the foreign language documents to the extent
that they were used for portions already in English or that were
self-explanatory pictures, charts and graphs.  Accordingly, the
Court will overrule AUO's objections.

## III.  CONCLUSION

    An appropriate Order detailing the Court's rulings on these
evidentiary matters will be entered.

19