IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LG DISPLAY CO., LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-726-JJF |
| | : | |
| AU OPTRONICS CORPORATION; | : | |
| AU OPTRONICS CORPORATION | : | |
| AMERICA; CHI MEI | : | |
| OPTOELECTRONICS CORPORATION; | : | |
| and CHI MEI OPTOELECTRONICS | : | |
| USA, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| AU OPTRONICS CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 07-357-JJF |
| | : | |
| LG DISPLAY CO., LTD. and | : | |
| LG DISPLAY AMERICA, INC., | : | |

Gaspare J. Bono, Esquire; R. Tyler Goodwyn, IV, Esquire; Lora A.
Brzezynski, Esquire and Cass W. Christenson, Esquire of MCKENNA
LONG & ALDRIDGE LLP, Washington, D.C.
Richard D. Kirk, Esquire; Ashley B. Stitzer, Esquire and Stephen
B. Brauerman, Esquire of BAYARD P.A., Wilmington, Delaware.

Attorneys for LG Display Co., Ltd and LG Display America, Inc.

Vincent K. Yip, Esquire; Peter J. Wied, Esquire and Terry D.
Garnett, Esquire of PAUL HASTINGS JANOFSKY & WALKER LLP, Los
Angeles, California.
Ron E. Shulman, Esquire and Julie M. Holloway, Esquire of WILSON
SONSINI GOODRICH & ROSATI, Palo Alto, California.
M. Craig Tyler, Esquire and Brian D. Range, Esquire of WILSON
SONSINI GOODRICH & ROSATI, Austin, Texas.
Richard H. Morse, Esquire; John W. Shaw, Esquire; Karen L.

Pascale, Esquire and Andrew A. Lundgren, Esquire of YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware.

Attorneys for AU Optronics Corporation and AU Optronics Corporation America.

_____

**MEMORANDUM OPINION**

July **9**, 2010

Wilmington, Delaware.

Farnan, District Judge.

By previously entered Opinion and Order, the Court concluded that AUO established that LGD infringes AUO's asserted patents: U.S. Patent No. 6,778,160 (claims 1 and 3) (the "'160 patent"); U.S. Patent No. 6,689,629 (claims 7 and 16) (the "'629 patent"); U.S. Patent No. 7,125,157 (claim 1) (the "'157 patent") and U.S. Patent No. 7,090,506 (claims 7 and 17) (the "'506 patent"). This Memorandum Opinion constitutes the Court's findings and conclusions related to the issues of willful infringement and damages.

## DISCUSSION

### I.  Whether AUO Has Established that LGD Willfully Infringes AUO's Asserted Patents

To establish willful infringement,

> a patentee must show by clear and convincing evidence
> that the infringer acted despite an objectively high
> likelihood that its actions constituted infringement of
> a valid patent. The state of mind of the accused
> infringer is not relevant to this objective inquiry.
> If this threshold objective standard is satisfied, the
> patentee must also demonstrate that this objectively-
> defined risk (determined by the record developed in the
> infringement proceeding) was either known or so obvious
> that it should have been known to the accused
> infringer.

In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (citation omitted). An objectively high likelihood that the infringer's actions constituted infringement of a valid patent equates with a showing of recklessness. Id. In making these determinations, the Court must examine the totality of the

1

circumstances.  Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683,
700 (Fed. Cir. 2008).  Under Seagate, an accused infringer has no
affirmative obligation to obtain an opinion of counsel in order
to avoid liability for willful infringement.  Id.

However, this Court has observed a tension in the case law
since Seagate concerning whether the Court should look to
prelitigation conduct only and/or post-litigation conduct in
determining whether infringement was willful.  In Power
Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc., 585
F. Supp. 2d 583 (D. Del. 2008), the Court described this tension
as follows:

> In Seagate, the Federal Circuit explained, in the
> context of discussing the idea of shielding trial
> counsel from the waiver that stems from the advice of
> counsel defense, that "willfulness will depend on an
> infringer's prelitigation conduct." 497 F.3d at 1374.
> However, following Seagate, the Federal Circuit
> explained in dicta in Black & Decker, Inc. v. Robert
> Bosch Tool Corp., 260 Fed. Appx. 284 (Fed. Cir. 2008),
> that "both legitimate defenses to infringement claims
> and credible invalidity arguments demonstrate the lack
> of an objectively high likelihood that a party took
> actions constituting infringement of a valid patent."
> Id. at 291 (providing guidance to the district court on
> the application of Seagate to willful infringement
> claims, even though such claims were rendered moot on
> appeal by Federal Circuit's decision to vacate
> infringement finding).

Id. at 588.  In ordering a retrial in Power Integrations, the
Court reconciled the Federal Circuit's comments in Black & Decker
with the prelitigation emphasis in Seagate by concluding that the
retrial "must focus on the prelitigation conduct of the accused

2

infringer in the first instance but must also take into account whether the accused infringer maintained plausible or credible defenses to []infringement and invalidity." Id.

In this case, the Court finds that AUO has presented little evidence of LGD's prelitigation conduct. AUO does not dispute LGD's contention that it had no notice, either actual or constructive, of the '506 and '157 patents until AUO filed suit against LGD. As for the '629 and '160 patents, AUO contends that LGD was aware of these patents because LGD "participated in the process by which IBM auctioned off a portfolio of patents that included the now AUO asserted '160 and '629 patents." D.I. 1402 at 521. In the Court's view, however, the degree of LGD's awareness appears to be minimal at best. LGD was not the purchaser of these patents, and the evidence is unclear as to the extent of LGD's interest and involvement in the potential purchase. AUO's primary evidence is a draft Non-Binding Indication of Interest letter between LGD and IBM which listed the '160 and '629 patents among numerous patents. D.I. 1403 at Exh. C. Further, AUO advances the testimony of Paul Shane Carter for the proposition that LGD was involved in the patent sale process; however, Mr. Carter's testimony does not describe in any detail the degree of LGD's participation, and at times, is even uncertain regarding LGD's participation. Id. at Exh. A at 33:5-34:3, 72:16-73:5. However, even if LGD can be said to have had

3

knowledge of AUO's patents, the Court finds that LGD maintained plausible and credible defenses to infringement and plausible and credible arguments concerning invalidity of the asserted patents. Accordingly, the Court cannot conclude that AUO has established, by clear and convincing evidence, that LGD willfully infringed the asserted AUO patents.

## II. Damages

### A. Reasonable Royalty

Upon a finding of infringement of a valid patent, the court shall award to the patentee "damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. The reasonable royalty provision in the statute provides the "floor below which damage awards may not fall." Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1544 (Fed. Cir. 1995). The claimant bears the burden of proof on the issue of damages. See Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568, 1574 (Fed. Cir. 1988).

The Federal Circuit has described a reasonable royalty as "the amount that a person, desiring to manufacture[, use, or] sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make[, use, or] sell the patented article in the market, at a reasonable profit."

4

Applied Med. Res. Corp. v. United States Surgical Corp., 435 F.3d
1356, 1361 (Fed. Cir. 2006).  In the absence of an established
royalty, reasonable royalty is calculated based upon hypothetical
negotiations between a willing licensor and a willing licensee on
the date infringement began.  Despite the willing licensor and
willing licensee characterization, the Federal Circuit has
recognized that "the result has more the character of a forced
settlement where neither party gets all it would wish."  Rite-
Hite, 56 F.3d at 1554.  In using the hypothetical negotiations
model to determine reasonable royalty, the Court may consider
several additional factors as set forth in Georgia-Pacific v.
U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).
Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1393 (Fed.
Cir. 2003).[1]  The determination of a reasonable royalty is based
upon the totality of the evidence, and the factfinder is "not
limited to selecting one or the other of the specific royalty
figures urged by counsel as reasonable."  Smithkline Diagnostics,
Inc. v. Helena Labs. Corp., 926 F.2d 1161, 1168 (Fed. Cir. 1991).
The royalty rate, however, should leave the infringer a
reasonable profit.  See, e.g., Hughes Tool Co. v. Dresser Indus.,

---

[1]     With regard to the Court's reference to the factors by
numbers later in this Memorandum Opinion, the Court has followed
the numbering in the Georgia Pacific opinion.

Inc., 816 F.2d 1549, 1558 (Fed. Cir. 1987).

AUO contends that it is entitled to recover reasonable royalty damages in a lump sum amount in the range of about $300,000 to $7.8 million dollars for LGD's infringement, depending on the Court's aggregate determination as to the commercial advantages and technical advantages of each of the patented inventions.  AUO further contends that its patents have substantial technical and commercial value in the industry such that the Court should adopt a reasonable royalty figure in the higher range of AUO's proposed damages estimate.

LGD contends that Dr. Putnam's methodology for determining a reasonable royalty is improper.  LGD contends that Dr. Putnam improperly used a worldwide portfolio cross-license methodology and did not properly consider the Georgia-Pacific factors.  LGD also challenges Dr. Putnam's alternative methods of analysis, the checks he performed, and many of the assumptions underlying his testimony.  With respect to the commercial significance of AUO's patents, LGD contends that the evidence at trial demonstrates that AUO's patents offer no significant commercial value to LGD.

After considering the parties' arguments in light of the testimony of AUO's damages expert, Dr. Putnam, the Court concludes that AUO is entitled to damages in the lump sum amount of $305,399.  In reaching this conclusion, the Court finds Dr. Putnam's testimony and methodology to be credible and consistent

with Federal Circuit case law and the Georgia Pacific factors, despite LGD's assertions to the contrary. For example, LGD challenges Dr. Putnam's reference to the cross-licensing of entire patent portfolios. However, both LGD's and AUO's corporate representatives agree that cross licensing with a balancing payment is the general policy among LCD makers, and AUO's Ms. Chen in particular explained AUO's views regarding licenses. Tr. 698:6-699:10; Tr. 699:15-700:1 (Putnam); Tr. 60:22-66:11 (B. Chen); Tr. 614:22-615:11; 615:23-620:20; 621:1-623:19; 625:19-626:13, 627:11-629:19 (Joo Sup Kim). In the Court's view, such evidence regarding the licensing practices in the industry and among the parties should not be ignored, and is consistent with Georgia Pacific factors 1-4 and 7. Riles v. Shell Exploration & Prod., 298 F.3d 1302, 1313 (Fed. Cir. 2002). In addition, the Court finds that Dr. Putnam properly considered the Georgia Pacific factors in his analysis to determine how the hypothetical negotiation between LGD and AUO would have played out. Dr. Putnam considered the rate and terms on which the parties would license to each other based on the parties' past practices and the past practice of the industry. Tr. 678:6-679:3, 694:5-20, 695:2-12 (Putnam). He also considered more than 70 industry licenses, with a particular emphasis on 8 cross-licenses between competitors. Tr. 687:5-23, 688:3-689:21; AUO-274; AUO-267; AUO-268; AUO-269; AUO-270. He then used a

regression analysis to summarize his data and determine the terms upon which AUO and LGD would exchange their portfolios in a cross-license and what the balancing payment would be given the particular characteristics of the two parties. Tr. 679:19-680:8 (Putnam). This analysis also included the Georgia Pacific factors, exposed sales, and a "fixed effect" meaning "a systematic factor(s) that follows the parties around from negotiation to negotiation." Tr. 701:6-703:9, 709:1-710:7, 712:24-713:17 (Putnam). Through this analysis, Dr. Putnam arrived at the payments the parties would make to each other as balancing payments. Tr. 719:1-720:10 (Putnam); AUO-1597. With AUO's aggregate claim against LGD assessed, Dr. Putnam then used a method described as "count, rank, and divide" to determine the portion of the claim attributable to the four asserted patents. Tr. 682:7-17; Tr. 683:1-20; Tr. 721:2-10; Tr. 727:18-734:25 (Putnam). This method takes into account Georgia Pacific factors 9-11. Based on the value share of each patent in AUO's portfolio and based on the assumption that these patents are in the top 5% of AUO's portfolio, Dr. Putnam determined that AUO's damages for infringement of all four patents would total $305,399 with the following per patent breakdown:

| Patent | Lump Sum (Damages Amount) Based On the Parties' Past Licensing Practices |
|--------|-------------------------------------------------------------------------|
| '629 patent | $148,000 |
| '160 patent | $130,000 |
| '157 patent | $24,000 |
| '506 patent | $3,500 |

Dr. Putnam then performed a "check" on his calculations to determine if his valuations were consistent with the rates paid when a party was actually licensing only individual patents, as opposed to an entire portfolio. Tr. 749:4-753:12 (Putnam). This check takes into account Georgia Pacific factor 2, which looks at the royalties paid by a defendant for licensing comparable patents. Based on this calculation, Dr. Putnam determined that the amount LGD paid for patents on an individual basis is consistent with his damages estimate.

In addition to the aforementioned method, Dr. Putnam also checked his calculations using a method that apportioned LGD's profits attributable to AUO's patents. In making this determination, Dr. Putnam considered what a buyer would be willing to pay as a share of the total profits that the buyer earns for the use of the infringed patents. Tr. 738:6-740:3 (Putnam). This analysis considered Georgia Pacific factors 6, 8, 12 and 13. Dr. Putnam started with LGD's worldwide profits, and then reduced them to profits in the U.S. based on the accused sales similar to the reductions calculation he made in the first

9

method. Thus, to take into account brand name, advertising and good sales efforts, all of which contribute to patent profitability, Dr. Putnam then attributed half of LGD's profits to its patents. Tr. 740:4-743:11 (Putnam). Thereafter, he performed the "count, rank and divide method" to determine the portion of LGD's profits attributable to LGD's use of only the four asserted AUO patents. Tr. 744:3-746:22 (Putnam). He again assumed that each patent fell within the top 5% of the ranking of all patents. Based on this approach, Dr. Putnam calculated a total damages amount of $7.8 million, broken down among the four patents as follows:

| Patent | Lump Sum Payment (Damages Amount) Based On Profits |
| --- | --- |
| '629 patent | $3,800,000 |
| '160 patent | $3,300,000 |
| '157 patent | $616,000 |
| '506 patent | $89,000 |

LGD's has offered no expert opinion on damages for AUO's patents. LGD's expert, Mr. Cobb, was present during Phase I of the trial but did not testify in LGD's case regarding AUO's patents. Tr. 758:9-12 (Putnam). To the extent Mr. Cobb challenged the methodology used by Dr. Putnam during Phase II of the trial, the Court is not persuaded by Mr. Cobb's testimony.

The Court understands Dr. Putnam to have advanced a plausible, though wide range, of damages for the patents-in-suit.

In determining where on this range to base its damages determination, the Court concludes that the lower end of the damages range as reflected by the numbers calculated according to the parties' past licensing practices is most appropriate. In the Court's view, this analysis is more reflective of the hypothetical negotiations that a willing licensor and licensee would engage in, and the Court is not persuaded that AUO has established commercial value and significance beyond the top 5% assumption used by Dr. Putnam in the first instance, so as to justify a higher amount of damages. Accordingly, the Court will award AUO the lump sum of $305,399 as reasonable royalty damages.

B.    Enhanced Damages And Attorneys' Fees

AUO also requests that the Court award enhanced damages and declare this case exceptional so that attorneys' fees may be awarded. "[A]n award of enhanced damages requires a showing of willful infringement." In re Seagate, 497 F.3d at 1368. The Court has concluded that AUO has failed to establish willful infringement by LGD, and therefore, the Court concludes that enhanced damages are not appropriate.

Pursuant to 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The prevailing party may prove the existence of an exceptional case by showing:  inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad

11

faith litigation; a frivolous suit or willful infringement. Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1034 (Fed. Cir. 2002) (citing Hoffmann-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1365 (Fed. Cir. 2000)). Litigation misconduct and unprofessional behavior are relevant to the award of attorneys' fees, and may suffice, by themselves, to make a case exceptional. Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1574 (Fed. Cir. 1996). The prevailing party must prove an exceptional case by clear and convincing evidence. Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1327 (Fed. Cir. 2003).

The Court of Appeals for the Federal Circuit has cautioned that an award of attorneys' fees under Section 285 is not intended to be an "ordinary thing in patent cases," and that it should be limited to circumstances in which it is necessary to prevent "a gross injustice" or bad faith litigation. Forest Labs., 339 F.3d at 1329; see also Aptix Corp. v. Quickturn Design Sys., Inc., 269 F.3d 1369, 1375 (Fed. Cir. 2001)(affirming an award of attorneys' fees under § 285 for the "extreme litigation misconduct" of falsifying evidence).

After reviewing the record evidence in light of the parties' arguments, the Court concludes that AUO has not established by clear and convincing evidence that this is an exceptional case. The Court has made no finding of willfulness, and the Court is not persuaded that any of the circumstances cited by AUO are so

12

egregious as to rise to the level of conduct required to sustain an exceptional case finding. This litigation was hard fought by both parties, and though extremely contentious at times, the Court cannot conclude that the parties engaged in litigation conduct that was vexatious or in bad faith. Accordingly, the Court declines to award AUO attorneys' fees.

C.  Prejudgment and Postjudgment Interest

As a general matter, prejudgment interest should ordinarily be awarded in patent cases to provide patent owners with complete compensation. General Motors Corp. v. Devex Corp., 461 U.S. 648, 655 (1983). However, the Court has the discretion to limit or deny prejudgment interest where there is some justification for doing so, as is the case "where the patent owner has been responsible for undue delay in prosecuting the lawsuit." Id. at 657. As the Federal Circuit has recognized, "the withholding of prejudgment interest based on delay is the exception, not the rule." Lummus Indus., Inc. v. D.M. & E. Corp., 862 F.2d 267, 275 (Fed. Cir. 1988). This Court has further concluded that litigation delays will not support the denial of prejudgment interest unless those delays cause prejudice. Tristrata Tech., Inc. v. Mary Kay, Inc., 423 F. Supp. 2d 456, 471 (D. Del. 2006).

Postjudgment interest is mandatory under 28 U.S.C. § 1961 which provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court."

Interest on judgments is "computed daily to the date of payment."
28 U.S.C. § 1961(b).

LGD contends that AUO unduly delayed resolution of this
dispute by refusing LGD's attempts to negotiate a business
resolution and withholding its patents to assert them only as a
defensive measure in an attempt to reduce the amount of damages
it would have to pay LGD.  In the Court's view, the circumstances
cited by LGD do not rise to the level of creating undue delay in
the prosecution of this litigation.  Further, LGD has not alleged
any prejudice from the purported delays, and the Court discerns
none from the record.  Accordingly, the Court will award AUO
prejudgment and postjudgment interest.

## CONCLUSION

For the reasons discussed, the Court will award AUO damages
in the amount of $305,399 together with prejudgment interest
compounded quarterly and at the prime rate, and postjudgment
interest from the date of entry of the Final Judgment Order at
the statutory rate.

An appropriate Order will be entered.

14